# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION,<br><br>This document relates to:<br><br>   ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LEILA VESPOLI'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT AND <u>JOINDER IN THE MOTION TO DISMISS OF THE FIRSTENERGY DEFENDANTS</u>**

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

I. Plaintiffs Fail to Plead that Ms. Vespoli Engaged in Any Deceptive Conduct .................. 4

II. Ms. Vespoli Was Not the Maker of Any Allegedly False or Misleading Statements ........ 5

III. Plaintiffs Fail to Create a Strong Inference of Scienter with Respect to Ms. Vespoli........ 7

IV. Plaintiffs Fail to State a Section 20(a) Claim Against Ms. Vespoli.................................... 9

CONCLUSION ................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Capital Anstalt v. Scwell Wimpfheimer & Assoc. LLP*,
   2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) ...................................................................6, 10

*City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*,
   865 F. Supp. 2d 811 (W.D. Mich. 2012) ................................................................................10

*Crutchfield v. Match Grp., Inc.*,
   No. 3:19-CV-2356-S, 2021 WL 1167578 (N.D. Tex. Mar. 26, 2021) ......................................8

*D.E.&J Ltd. P'ship v. Conaway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003)............................................................................10, 11

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018).......................................................................................5

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
   778 F.3d 228 (1st Cir. 2015) ....................................................................................................9

*Herm v. Stafford*,
   663 F.2d 669 (6th Cir. 1981) .................................................................................................10

*In re Braskem S.A. Sec. Litig.*,
   246 F. Supp. 3d 731 (S.D.N.Y. 2017)......................................................................................6

*In re EveryWare Global, Inc. Sec. Litig.*,
   175 F. Supp. 3d 837 (S.D. Ohio 2016) (Marbley, C.J.), *aff'd sub nom. IBEW
   Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir.
   2017) ........................................................................................................................................2

*In re Homestore.com, Inc. Sec. Litig.*,
   252 F. Supp. 2d 1018 (C.D. Cal. 2003), *vacated on other grounds sub nom.
   Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008)...........................................10

*In re Miller Energy Res. Sec. Litig.*,
   No. 3:11-CV-386-TAV-CCS, 2014 WL 415730 (E.D. Tenn. Feb. 4, 2014) ...........................6

*In re Tyson Foods, Inc. Sec. Litig.*,
   275 F. Supp. 3d 970 (W.D. Ark. 2017)....................................................................................8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)..............................................................................................................5, 6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..................................................................................................7

*Lansing Automakers' Fed. Credit Union v. MCG Portfolio Mgmt. Corp.*,
    No. 5:89-CV-52, 1991 WL 238974 (W.D. Mich. Sept. 12, 1991) ..........................................10

*Louisiana Mun. Police Emps. Ret. Sys. v. KPMG, LLP*,
    No. 1:10CV01461, 2012 WL 3903335 (N.D. Ohio Aug. 31, 2012) ........................................6

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) ............................................................................................7, 11

*Sec. & Exch. Comm'n v. AgFeed Indus., Inc.*,
    No. 3:14-CV-00663, 2016 WL 10934942 (M.D. Tenn. July 21, 2016) ...................................6

*Smallen v. Western Union Co.*,
    950 F.3d 1297 (10th Cir. 2020) ...........................................................................................8, 9

*Smith v. Robbins & Myers, Inc.*,
    969 F. Supp. 2d 850 (S.D. Ohio 2013) ..................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................................7

## **Statutes and Other Authorities**

Federal Rule of Civil Procedure 9(b) ..............................................................................................1

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................1

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)......................................1

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ......................... *passim*

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).......................... *passim*

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ............................................................1

Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2) ...........................................1

Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o............................................................1

Rule 10b-5, 17 C.F.R. §240.10b-5...................................................................................................1

Ohio House Bill 6 .................................................................................................................. *passim*

## INTRODUCTION

Defendant Leila L. Vespoli, the former Executive Vice President, Corporate Strategy, Regulatory Affairs and Chief Legal Officer of Defendant FirstEnergy Corp. ("FirstEnergy"), joins in the arguments raised by FirstEnergy and Defendants James F. Pearson, Steven E. Strah, K. Jon Taylor, Jason J. Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, and Leslie M. Turner in their motion to dismiss (the "FirstEnergy Defendants' Motion to Dismiss"), with respect to the claims asserted in the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as well as SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, the only two counts that are asserted against Ms. Vespoli.[1] (¶¶ 268–75.)[2]  In addition to the reasons set forth in the FirstEnergy Defendants' Motion to Dismiss, Ms. Vespoli respectfully submits this memorandum of law to provide supplemental arguments as to why the claims asserted against her in the Complaint should be dismissed with prejudice pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b).

Ms. Vespoli was added as a Defendant at the eleventh hour in the amended Complaint and is not named as a defendant in the criminal proceedings, derivative suits, RICO suits, or any other

---

[1]     The Complaint also seeks relief under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, against other Defendants.

[2]     "¶ __" refers to the paragraphs of the Complaint filed on February 26, 2021 (ECF No. 72); "Callahan Dec. Ex. __" refers to the exhibits attached to the Declaration of Veronica E. Callahan dated May 18, 2021; "FE Br. __" refers to the Memorandum of Law in support of the FirstEnergy Defendants' Motion to Dismiss filed on May 18, 2021 (ECF No. 161).

proceedings arising out of or relating to the alleged Ohio House Bill 6 ("HB6") bribery scheme. The handful of paragraphs—totaling twelve out of 322 paragraphs—in the Complaint that reference Ms. Vespoli by name describe merely her former position with the Company, her compensation, her attendance at a handful of earnings calls during which others allegedly made actionable statements, and two unremarkable stock sales made before the introduction of HB6. (¶¶ 36, 103, 113, 115, 117, 118, 124, 228, 248–51.) Even read in the most generous light, the Complaint fails to state a claim against Ms. Vespoli.

Plaintiffs state that the basis for the Complaint is the "massive corruption scheme, through which [FirstEnergy] drafted, introduced, passed and then defended HB6." (¶ 64.) Ms. Vespoli retired on March 31, 2019 (*see* ¶¶ 248 n.27, 36, 228; *see also* Callahan Dec. Ex. 1 at 3),[3] and the factual allegations belie that she had any involvement with HB6. Although the Complaint alleges that misconduct occurred between February 21, 2017 and July 21, 2020 (the "Purported Class Period"), the lion's share of the allegations relate to the period after April 4, 2019, when Judge Alan Koschik, who presided over the bankruptcy proceedings of FirstEnergy Solutions Corp. and FirstEnergy Nuclear Operating Company, and related entities (collectively, the "Bankruptcy Proceedings"), denied FirstEnergy's indisputably lawful request for a release of liability for decommissioning expenses. (*See* ¶¶ 1, 62.) Plaintiffs allege that Judge Koschik's decision caused FirstEnergy to pivot to a "backup plan": the alleged corrupt scheme that resulted in the introduction of HB6 on April 12, 2019. (¶ 63.) Accordingly, per the timeline set forth in the Complaint, Ms. Vespoli was not employed by FirstEnergy at any point in time when HB6 was drafted, introduced, amended to

---

[3] The Court may take judicial notice of SEC filings and other documents, such as press releases, so long as "their 'existence or contents prove facts whose accuracy cannot be reasonably questioned.'" *In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 850 (S.D. Ohio 2016) (Marbley, C.J.), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017).

2

include a decoupling provision, passed, or defended from referendum by allegedly "saturat[ing the] media markets with a false and misleading advertising campaign." (¶ 3.) Similarly, the "tens of millions" of dollars Plaintiffs allege FirstEnergy funneled to facilitate this scheme occurred after Ms. Vespoli's retirement.[4] (*See* ¶¶ 3, 67, 248 n.27; Callahan Dec. Ex. 1 at 3.)

The allegations that predate Ms. Vespoli's retirement on March 31, 2019—which was publicly announced in July 2018—are equally baseless. (Callahan Dec. Ex. 1.) With respect to Ms. Vespoli, it is paramount that Plaintiffs plead each element of a securities fraud claim with particularity—the who, what, when, where, and how of fraud. Plaintiffs cannot meet this heavy burden. First, Plaintiffs fail to plead that Ms. Vespoli engaged in any improper conduct during the 2017–2018 timeframe, and the Court will similarly search in vain for any particularized fact demonstrating that any of such relatively minor political contributions or strategic decisions made by FirstEnergy in 2017 or 2018 were unlawful. (*See generally* ¶¶ 45–64, 65–67, 137.) Second, Plaintiffs cannot establish falsity because Ms. Vespoli is not the maker of any statements alleged to be false or misleading in the Complaint. (*See generally* ¶¶ 95–142.) Third, Plaintiffs fail to raise even a plausible inference of scienter with respect to Ms. Vespoli based on the compensation that she received as an executive or the stock that she unsurprisingly sold once certain restricted stock units ("RSU") had vested. (*See* ¶¶ 248–51.) Lastly, Plaintiffs fail to plead with particularity that Ms. Vespoli exercised control over any primary violators with respect to its Section 20(a) claim. Thus, for the additional reasons set forth herein, the claims against Ms. Vespoli should be dismissed with prejudice.

---

[4]  Only $2.9 million of the $60 million in political contributions were allegedly made before Ms. Vespoli's departure. (¶¶ 8, 67.)

**ARGUMENT**

I.     **Plaintiffs Fail to Plead that Ms. Vespoli Engaged in Any Deceptive Conduct**

As explained in the FirstEnergy Defendants' Motion to Dismiss, Plaintiffs patently fail to state a claim, either based on fraudulent statements or conduct, with respect to the 2017 and 2018 time period. (*See* FE Br. Section II; *see also* FE Br. Sections I, III-V). Plaintiffs have failed to plead in a particularized fashion that any of the contributions made, directly or indirectly, to political candidates by FirstEnergy during that timeframe were illegal, much less Ms. Vespoli's knowledge of such alleged misconduct. (*See* ¶¶ 67, 137.) Only $2.9 million of the alleged $60 million in political contributions referenced in the Complaint were made during the time period prior to Ms. Vespoli's retirement (¶¶ 8, 67; Callahan Dec. Ex. 1 at 3), and Plaintiffs have failed to plead particularized facts demonstrating that such relatively minor contributions were either improper or otherwise suspicious. Plaintiffs further fail to explain how FirstEnergy's pursuit of its legal right to seek a release for liabilities in the Bankruptcy Proceedings could be deemed to constitute a deceptive act. (*See generally* ¶¶ 45–63.) The Court will not find any particularized allegations that Ms. Vespoli was involved in the purportedly illegal drafting, introduction, or passage of HB6—to the contrary, by describing it as a "backup plan," the Complaint suggests that FirstEnergy decided to pursue this course of action only *after* it failed to secure a release in the Bankruptcy Proceedings. (¶¶ 63, 73.) Given that Ms. Vespoli had already retired before FirstEnergy knew that the indisputably lawful strategy it was pursuing in the Bankruptcy Proceedings would be unsuccessful, she could not have played any role in the decision-making process that resulted in the later introduction and passage of HB6.[5] (*See* ¶¶ 62, 63, 73; Callahan

---

5      Similarly, Samuel Randazzo, who the Complaint alleged "us[ed] his position as PUCO Commissioner to help write and support HB6" (¶ 72), did not commence his term until April 11, 2019, after Ms. Vespoli's retirement. (Callahan Dec. Ex. 2.)

4

Dec. Ex. 1 at 3.) Nor will the Court find any particularized allegation that Ms. Vespoli either engaged in or was aware of any communications with Larry Householder or any of the other alleged accomplices named in the criminal complaint. (*See* ¶¶ 8, 221–223.) In short, even assuming that Plaintiffs have pleaded the existence of a bribery scheme during the 2017 and 2018 timeframe—which they have not—nothing in the Complaint indicates that Ms. Vespoli knew of or participated in any alleged misconduct. Accordingly, the claims against Ms. Vespoli should be dismissed.

**II.      Ms. Vespoli Was Not the Maker of Any Allegedly False or Misleading Statements**

Plaintiffs also fail to allege that any of the purportedly false or misleading statements made prior to Ms. Vespoli's retirement were attributable to her. In stark contrast to certain other Officer Defendants, Plaintiffs fail to provide even one example of an allegedly fraudulent statement made by Ms. Vespoli. Instead, Plaintiffs attempt to create the false impression that Ms. Vespoli's participation in calls during which *other* Defendants made purportedly fraudulent statements gives rise to liability. (*See* ¶¶ 103, 113, 115, 117–18 and 124 (all citing allegedly misleading statements made by Defendants Jones or Pearson).) That is plainly insufficient to meet the pleading standards. *See, e.g., Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 808–09 (S.D.N.Y. 2018) ("statements on earnings calls could not be attributed to any non-speaking Defendants").

Similarly, none of the allegedly false or misleading statements contained in the documents that FirstEnergy filed with the SEC are attributable to Ms. Vespoli because she was not the "maker" of such statements. For 10b-5 purposes, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not

5

its maker." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  In the wake of *Janus*, "courts have consistently held that **only** the signatories of misleading corporate documents (typically corporate CEOs and CFOs), as well as the corporations themselves, can be liable as 'makers.'" *Sec. & Exch. Comm'n v. AgFeed Indus., Inc.*, No. 3:14-CV-00663, 2016 WL 10934942, at *11 (M.D. Tenn. July 21, 2016) (emphasis added); *see also Alpha Capital Anstalt v. Scwell Wimpfheimer & Assoc. LLP*, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) (general counsel who allegedly drafted and reviewed purportedly false statements and "assisted" in their filing did not have ultimate authority over the content of those statements and could not be held liable for them under Section 10(b)); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 762 (S.D.N.Y. 2017) (CEO was not the "maker" of statements in company's SEC filings because he did not sign them and there were no particularized allegations that he was responsible for creating them); *In re Miller Energy Res. Sec. Litig.*, No. 3:11-CV-386-TAV-CCS, 2014 WL 415730, at *8 (E.D. Tenn. Feb. 4, 2014) (the president and vice chairman of a company was not the "maker" of statements because he was "not alleged to have signed any reports, issued any press releases, or made any presentations on the Company's financial status"); *Louisiana Mun. Police Emps. Ret. Sys. v. KPMG, LLP*, No. 1:10CV01461, 2012 WL 3903335, at *2, 5 (N.D. Ohio Aug. 31, 2012) (defendant who prepared SEC filings was not considered the "maker," unlike "corporate officers who sign[ed] statements filed with the SEC").

Plaintiffs fail to plead that, before her retirement, Ms. Vespoli signed or otherwise had "ultimate authority" over any of the allegedly fraudulent statements made in any of FirstEnergy's SEC filings.  It is not alleged that Ms. Vespoli was even a member of the committee that was responsible for drafting and reviewing FirstEnergy's financial statements.  Accordingly, Plaintiffs

6

fail to plead falsity with respect to Ms. Vespoli because she was not the "maker" of any of the alleged misstatements at issue.

### III. Plaintiffs Fail to Create a Strong Inference of Scienter with Respect to Ms. Vespoli

In addition to their failure to plead deceptive conduct or falsity, Plaintiffs fail to establish even a plausible inference of scienter with respect to Ms. Vespoli, much less one that is "strong" and as "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007). In addition to the arguments made in Section III of the FirstEnergy Defendants' Motion to Dismiss, Ms. Vespoli respectfully asks the Court to consider the points below with respect to her individual compensation and stock sales.

First, any inference that Ms. Vespoli was incentivized to engage in a "criminal Bailout Scheme in order to keep [her] executive position[] at FirstEnergy and continue collecting lucrative" compensation (¶ 248) is severely undermined by the fact that she had already announced her retirement in July 2018. Moreover, Plaintiffs must pinpoint "concrete benefits" that an officer stands to gain by engaging in fraudulent conduct; they cannot merely allude to "motives common to . . . executives generally," such as "an executive's desire to protect his position within a company or increase his compensation." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004); *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) ("[A]n allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers"). Plaintiffs fail to establish that Ms. Vespoli stood to realize any "concrete benefits" by engaging in wrongful conduct. In fact, given that FirstEnergy's alleged strategy to avoid the decommissioning costs through the date of her retirement consisted of its lawful actions in the Bankruptcy Proceedings, the outcome of which

7

was still uncertain, Ms. Vespoli had no incentive to take the grave risks associated with engaging in criminal misconduct.

The allegations with respect to Ms. Vespoli's purportedly improper stock sales similarly fail to raise a plausible inference of scienter. (*See* ¶¶ 250, 251.) Plaintiffs contend that Ms. Vespoli sold shares at artificially inflated prices on March 1, 2018 and March 1, 2019 (¶ 250), but the Form 4 filings made in connection with such sales explicitly state that they were made on dates when certain RSU awards granted pursuant to incentive plans from 2007 and 2015 had vested. (Callahan Dec. Exs. 3–4.) "[A] pattern of trading that was tied to the vesting dates of RSUs" does "not support a strong inference of scienter." *Crutchfield v. Match Grp., Inc.*, No. 3:19-CV-2356-S, 2021 WL 1167578, at *20 (N.D. Tex. Mar. 26, 2021); *In re Tyson Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970, 1001 (W.D. Ark. 2017) ("[T]he Court does not believe that stock sold by defendants for tax purposes following the vesting of performance shares is at all probative of scienter."). Any inference of scienter is further diminished by the fact that the stock sales by Ms. Vespoli and the other Defendants cited in the Complaint all took place before the issuance of decision in the Bankruptcy Proceeding or the introduction of HB6, which refutes any suggestion that the sales were timed to capture improper gains based on insider knowledge.

Moreover, Ms. Vespoli's Form 4 filings show that her total stock holdings **nearly tripled** from 78,629.89 to 205,322.98 shares between the start of the Purported Class Period and March 1, 2019. (*Compare* Callahan Dec. Ex. 5 *with* Ex. 4.) The fact that Ms. Vespoli was a net acquirer of FirstEnergy's stock further undercuts any inference of scienter. *See, e.g.*, *Smallen v. Western Union Co.*, 950 F.3d 1297, 1310–11 (10th Cir. 2020) ("Both [defendants] increased their aggregate holdings during the Class Period, and their respective sales yield from the identified transactions constituted only a fraction of their respective holdings. These factors militate against an inference

8

of scienter."); *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 246 (1st Cir. 2015) (9.2% increase in class-period holdings "negate[d] any inference that [the defendant] had a motive to artificially inflate" the company's stock).

And finally, to the extent Plaintiffs seek to plead scienter based on the "magnitude" of the contributions (¶¶ 236–237), the argument fails as to Ms. Vespoli for the additional reason that she had already retired before the time that more than 95% of the $60 million was allegedly contributed.

Far from raising a strong inference of scienter, when viewed holistically, Plaintiffs' allegations support the opposing inference: Ms. Vespoli had no reason to know of any allegedly improper conduct with respect to the introduction or passage of HB6 because she retired before Judge Koschik denied FirstEnergy's lawful and disclosed attempt to seek a release from liabilities associated with decommissioning expenses in the Bankruptcy Proceedings. (*See* ¶¶ 62, 63, 73; Callahan Dec. Ex. 1 at 3.) As described by Plaintiffs, the efforts that resulted in HB6 was a "backup plan" that was introduced only after Judge Koschik's decision. (¶ 63.) And even if any allegedly improper legislative efforts were already underway before April 2019, Plaintiffs have failed to explain why any of the alleged conspirators would have risked alerting a senior legal officer who was on the cusp of retirement that they were engaging in criminal activity. Thus, Plaintiffs fail to raise any inference of scienter with respect to Ms. Vespoli.

### IV. Plaintiffs Fail to State a Section 20(a) Claim Against Ms. Vespoli

As discussed in the FirstEnergy Defendants' Motion to Dismiss, the Complaint fails to state a claim for control person liability under Section 20(a) of the Exchange Act because Plaintiffs fail to plead a primary violation under Section 10(b) of the Exchange Act. (FE Br. Section VII). This failure is particularly glaring for the statements and acts that were made before Ms. Vespoli's

9

retirement, and Ms. Vespoli cannot be held liable for any allegedly fraudulent conduct or statements that occurred on or after April 1, 2019.

Even assuming that the Court concludes that any predicate claims arising before Ms. Vespoli's retirement were properly stated, Plaintiffs still fail to meet the burden of demonstrating with particularity that Ms. Vespoli exercised the requisite control over any alleged wrongdoing or misstatement by a primary violator for Section 20(a) purposes. "A director or officer is not, simply by virtue of his position, a 'controlling person' under the federal securities laws." *Lansing Automakers' Fed. Credit Union v. MCG Portfolio Mgmt. Corp.*, No. 5:89-CV-52, 1991 WL 238974, at *3 (W.D. Mich. Sept. 12, 1991) (citing *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1981)) (dismissing complaint against an officer where the complaint contained no allegations suggesting how he exercised control over the company's bookkeeping practices and merely suggested that he failed properly to supervise the activities of the company's employees); *see also Alpha Capital Anstalt*, 2018 WL 1627266 at *19 (dismissing Section 20(a) claim against general counsel because allegations did not support a showing of control over defendant CEO and defendant chairman of the board); *In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d 1018, 1035 (C.D. Cal. 2003), *vacated on other grounds sub nom. Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) (dismissing Section 20(a) claim against general counsel absent allegations concerning the primary violators over whom general counsel had control).

Additionally, numerous courts within this Circuit have held that to establish Section 20(a) liability, plaintiffs must plead, among other things, "that the controlling person was in some meaningful sense a culpable participant in the primary violation." *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 875 (S.D. Ohio 2013); *City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 835 (W.D. Mich. 2012) (same); *D.E.&J Ltd. P'ship v. Conaway*, 284

F. Supp. 2d 719, 750 (E.D. Mich. 2003) (same). Here, Plaintiffs attempt to establish Section 20(a) liability with respect to Ms. Vespoli solely by virtue of her former position as a senior executive. (¶ 273.) Plaintiffs have failed to describe in a particularized manner the specific wrongdoing that Ms. Vespoli allegedly controlled for purposes of Section 20(a) liability, or that she was a "culpable participant" in the primary violation. Accordingly, the Section 20(a) claim against Ms. Vespoli should be dismissed.[6]

## CONCLUSION

For the reasons stated above and in the FirstEnergy Defendants' Motion to Dismiss, Ms. Vespoli respectfully requests that the claims against her be dismissed with prejudice.

Dated: May 18, 2021

Respectfully submitted,

/s/ Veronica E. Callahan

Veronica E. Callahan (admitted *pro hac vice*)
Aaron F. Miner (admitted *pro hac vice*)
Zheng (Jane) He (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Email: veronica.callahan@arnoldporter.com
Email: aaron.miner@arnoldporter.com
Email: jane.he@arnoldporter.com

David H. Wallace (0037210)
TAFT STETTINIUS & HOLLISTER, LLP
200 Public Square, Suite 3500
Cleveland, OH 44118
Telephone: (216) 241-2838
Email: dwallace@taftlaw.com

*Attorneys for Defendant Leila L. Vespoli*

---

[6] Plaintiffs' Section 20(a) claim should also be dismissed because the Sixth Circuit has cast doubt on whether a plaintiff can simultaneously assert both Section 10(b) and Section 20(a) claims against the same defendant. *See PR Diamonds, Inc.*, 364 F.3d at 697 n.4 (noting that the issue is undecided and collecting cases supporting that plaintiffs cannot).

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on May 18, 2021. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Veronica E. Callahan
Veronica E. Callahan (admitted *pro hac vice*)

*Counsel for Defendant Leila L. Vespoli*