**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson |
| ALL ACTIONS. | ) ) | |
| | ) | ORAL ARGUMENT REQUESTED |

**DEFENDANT CHARLES E. JONES'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES
LAWS AND MEMORANDUM IN SUPPORT**

Defendant Charles E. Jones hereby adopts and joins in FirstEnergy Corporation's (FirstEnergy or the Company) Motion to Dismiss the Consolidated Complaint. As demonstrated in FirstEnergy's motion, plaintiffs have failed to allege plausible claims against any of the defendants in this case.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Jones separately files this Motion to Dismiss Plaintiffs' Consolidated Complaint for Violation of the Federal Securities Laws. In short, the Complaint fails to state a claim against Jones because plaintiffs fail to sufficiently allege facts supporting scienter, a material misrepresentation or omission, and other pleading standards applicable to the claims. This Court should grant this motion and dismiss the claims against Jones with prejudice. A memorandum in support and declaration of Albert G. Lin in support are attached hereto.

Pursuant to Local Rule 7.1(b)(2), Jones joins in FirstEnergy's request for oral argument on the issues raised in these motions. Jones respectfully submits that oral argument may aid the Court in its decision-making process.

Dated: May 18, 2021

Respectfully submitted,

*/s/ Daniel R. Warren*
Daniel R. Warren (0054595)
Carole S. Rendon, Trial Attorney (0070345)
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
216-621-0200
Fax: 216-696-0740
dwarren@bakerlaw.com
crendon@bakerlaw.com

Albert G. Lin (0076888)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
614-228-1541
Fax: 614-462-2616
alin@bakerlaw.com

Justin R. Donoho (*Pro Hac Vice*)
Baker & Hostetler LLPO
One North Wacker Drive, Suite 4500
Chicago, IL 60606
312-416-6200
Fax: 312-416-6201
jdonoho@bakerlaw.com

F. Joseph Warin (*Pro Hac Vice*)
William Scherman (*Pro Hac Vice*)
Jason J. Mendro (*Pro Hac Vice*)
Christopher W.H. Sullivan (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, DC 20036-5306
202.955.8500
Fax: 202.467.0539
fwarin@gibsondunn.com
wscherman@gibsondunn.com
jmendro@gibsondunn.com
csullivan@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

STATEMENT OF ALLEGED FACTS................................................................................ 2

The HB6 Campaign ............................................................................................................. 2

FirstEnergy's Contractual Payment to Sam Randazzo ....................................................... 4

Jones's Statements .............................................................................................................. 4

LAW AND DISCUSSION .................................................................................................. 5

I.     STANDARD OF REVIEW. ...................................................................................... 5

Private securities litigation is "not designed to provide an umbrella cause of action for the review of management practices." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004). To survive a Rule 12 motion, plaintiffs must adequately allege all elements of their Section 10(b) and Rule 10b–5 claims, which are: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014). Plaintiffs also must satisfy the heightened pleading requirements of the PSLRA and Rule 9(b).

II.    PLAINTIFFS FAIL TO PLEAD SCIENTER. ...................................................... 6

       A.    Plaintiffs Must Allege Actual Knowledge of Falsity and Intent To Defraud. .............. 6

Under the PSLRA and Sixth Circuit precedent, a "strong inference" of scienter requires "actual knowledge" of falsity when, as in this case, the alleged omissions constitute soft information like the existence of allegedly illegal conduct. *In re Omnicare*, 769 F.3d at 472. Under this standard, plaintiffs "must plead facts showing that the defendants knowingly misrepresented or omitted" to disclose illegal conduct, and did so "to deceive, manipulate or defraud" the market. *Id.*

       B.    Plaintiffs Have Not Alleged Jones Knew His Statements Were False. ........................ 6

Establishing actual knowledge requires plaintiffs to allege facts showing that Jones knew the conduct he allegedly failed to disclose was illegal. *See In re Omnicare,* 769 F.3d at 481-83. Here, plaintiffs allege no facts showing that anyone told Jones the alleged conduct was illegal or that Jones formed that conclusion on his own. Indeed, determining whether the alleged contributions or payment at issue were illegal would involve an analysis of the First Amendment, campaign finance law, and other specialized areas of law, and would raise difficult and novel legal issues. *In re Axis Cap. Holdings Ltd. Sec. Litig.,* 456 F. Supp. 2d 576, 592 (S.D.N.Y. 2006); *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 946–47 (6th Cir. 2009).

       C.    Plaintiffs Fail to Allege Jones Intended to Defraud Shareholders. .............................. 9

i

Courts in the Sixth Circuit assess intent to defraud the investing public based on the nine *Helwig* factors. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir.2001). Plaintiffs do not sufficiently allege facts supporting any of these factors.

1. Jones's stock sales do not establish fraudulent intent. ........................................ 10

Jones's trading pattern is not consistent with fraudulent intent. *See Campbell v. Lexmark Int'l Inc.*, 234 F. Supp. 2d 680, 686 (E.D. Ky. 2002). He sold his shares at regular intervals timed to equity awards vested, not to market conditions or his alleged misrepresentations. He also acquired more shares during the class period than he sold.

2. Performance-based compensation does not establish fraudulent intent. ............. 12

Plaintiffs' generic allegations that Jones stood to benefit financially from higher stock prices applies to virtually all corporate executives and adds nothing to their theory of scienter. *See Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016).

3. Plaintiffs' other allegations fail to show intent to defraud shareholders. ............ 13

Plaintiffs' remaining allegations, such as purported admissions of wrongdoing by others, also fail to support a strong inference of scienter. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 829 (8th Cir. 2003). Taken as a whole, Jones's lack of a particular motive to commit securities fraud, combined with challenged statements that at most only vaguely relate to the purportedly concealed information, indicate that Jones did not possess the required intent to defraud the market. *See Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 889 (N.D. Ohio 2013), *aff'd sub nom. In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014). The most compelling inference is that Jones believed FirstEnergy was acting in compliance with complex legal regimes for the benefit of FirstEnergy and its shareholders.

III. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE JONES MADE AN ACTIONABLE MISREPRESENTATION OR OMISSION. ............................................ 15

To be actionable for securities fraud, a statement must be a material misrepresentation or omission. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005).

A. The Complaint Does Not Adequately Allege a Direct Nexus between Jones's Statements and the Purported Illegal Conduct ............................................................ 15

The securities laws do not impose a general duty to disclose unadjudicated illegal conduct. *In re United Am. Healthcare Sec. Litig.*, 2007 WL 313491, at *14 (E.D. Mich. Jan. 30, 2007). Rather, a duty to disclose illegal conduct arises only if there is a "direct nexus between the illegal conduct and the challenged statements." *In re Transdigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 767 (N.D. Ohio 2020); *see In re United Am. Healthcare Sec. Litig.*, 2007 WL 313491, at

*11 (E.D. Mich. Jan. 30, 2007), *aff'd Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008). Jones's challenged statements—concerning general legal compliance, internal controls, risk factors, codes of conduct, and seeking "legislative solutions" for nuclear plants—lack the required direct nexus with the allegedly concealed political contributions and contractual payment.

B.   Jones's Statements Are Not Actionable Omissions Because The Determination Of Illegality Is Soft Information. ..................................................................................... 20

Under the circumstances alleged, Jones had no duty to disclose a "prediction[]" or "matter of opinion" that amounts to "soft information," such as the existence of alleged unadjudicated illegality. *City of Monroe,* 399 F.3d at 669. Plaintiffs fail to allege that Jones knew the alleged conduct was illegal, and Jones had no duty to disclose a prediction that others might later reach the disputed legal conclusion that illegality occurred. *See Zaluski*, 527 F.3d at 574-76; *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

C.   The Complaint Does Not Adequately Plead A False Opinion Statement Made By Jones That Satisfies Omnicare v. Laborers................................................................ 22

Opinion statements can give rise to liability only where plaintiffs plead subjective falsity, an untrue statement of fact embedded within the opinion, or where the speaker omitted information that, in context, would conflict with what a reasonable investor would understand from the statement itself. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184-86, 189-90 (2015). Plaintiffs do not allege such facts concerning Jones's challenged opinion statements, which include statements concerning the potential benefits of HB6, internal controls, and risk disclosures.

D.   Jones's Statements In Codes Of Conduct And Other Aspirational Statements Are Not Actionable............................................................................................................ 25

Jones's aspirational statements, corporate cheerleading, and other generic statements on which reasonable investors would not rely are immaterial as a matter of law, and thus cannot form the basis of a securities fraud claim. *See Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014); *In re Transdigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 766 (N.D. Ohio 2020).

IV.   THE RANDAZZO PAYMENT THEORY LACKS LOSS CAUSATION. ....................... 26

To plead loss causation, plaintiffs must plausibly allege "a causal connection between the material misrepresentation and the [economic] loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Plaintiffs do not allege that any facts concerning the Randazzo payment were revealed until four months after the class period ended. Because post-class period disclosures cannot retroactively cause class period losses, plaintiffs have not pleaded loss causation as to their theory based on the Randazzo payment. *See Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013), *aff'd sub nom. IBEW Loc. Union*

*No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015).

V.    PLAINTIFFS' SECURITIES ACT CLAIMS ALSO FAIL. ................................................ 27

Because plaintiffs have failed to allege that Jones made any misleading statement, their claims under Sections 11 and 12(a)(2) of the Securities Act also must be dismissed. Plaintiffs' Section 12(a)(2) claim also fails because plaintiffs fail to allege that Jones was a "statutory seller" who did more than merely sign a registration statement and instead "solicited" their purchase of the FirstEnergy securities at issue. *See In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 868-69 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017).

VI.   PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY CLAIMS. ............ 29

Because plaintiffs' predicate Exchange Act and Securities Act claims fail, the control person claims under Section 20(a) and Section 15 also fail. *See In re EveryWare*, 175 F. Supp. 3d at 861, 873.

CONCLUSION ....................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Tr. v. Am. Elec. Power*,
 334 F.Supp.2d 985 (S.D. Ohio 2004) (Marbley, J.).........................................................17, 19

*In re Almost Family, Inc. Sec. Litig.*,
 2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ...................................................................18, 21

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
 456 F. Supp. 2d 576 (S.D.N.Y. 2006)...............................................................................6, 8

*Beaver Cty. Ret. Bd. v. LCA-Vision Inc.*,
 2009 WL 806714 (S.D. Ohio Mar. 25, 2009) .........................................................................10

*Bondali v. YumA Brands, Inc.*,
 620 Fed. Appx. 483 (6th Cir. 2015)................................................................................24, 25

*Campbell v. Lexmark Int'l Inc.*,
 234 F. Supp. 2d 680 (E.D. Ky. 2002) ..............................................................................10, 11

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
 497 F.3d 546 (5th Cir. 2007) ...............................................................................................11

*Chapman v. Mueller Water Prods.*,
 466 F.Supp.3d 382 (S.D.N.Y. 2020)......................................................................................23

*Cione v. Gorr*,
 843 F. Supp. 1199 (N.D. Ohio 1994) .....................................................................................5

*In re Citigroup, Inc. Sec. Litig.*,
 330 F. Supp. 2d 367 (S.D.N.Y. 2004).....................................................................................5

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
 399 F.3d 651 (6th Cir. 2005) ............................................................................................14, 20

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
 865 F. Supp. 2d 811 (W.D. Mich. 2012) ......................................................................6, 12, 21

*City of Pontiac Policeman's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014)..................................................................................................16

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
 928 F. Supp. 2d 705 (S.D.N.Y. 2013)....................................................................................28

*Craftmatic Sec. Litig. v. Kraftsow*,
 890 F.2d 628 (3d Cir. 1989)..................................................................................................28

*Dailey v. Medlock*,
 551 F. App'x 841 (6th Cir. 2014) ...........................................................................18, 19, 26

*Dempsey v. Vieau*,
 2016 WL 3351081 (S.D.N.Y. June 15, 2016) ......................................................................23

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153 (S.D.N.Y. 2018)...................................................................18, 19

*Doshi v. Gen. Cable Corp.*,
386 F. Supp. 3d 815 (E.D. Ky. 2019) .........................................................13, 20, 24

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) .........................................................................12, 21

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...........................................................................................5, 26

*In re EveryWare Glob., Inc. Sec. Litig.*,
175 F. Supp. 3d 837 (S.D. Ohio 2016) ..........................................................3, 27, 28

*In re Ferro Corp.*,
2007 WL 1691358 (N.D. Ohio June 11, 2007)........................................................11

*Fidel v. Farley*,
392 F.3d 220 (6th Cir. 2004) ....................................................................................9

*Fishbaum v. Liz Claiborne, Inc.*,
1999 WL 568023 (2d Cir. July 27, 1999)..........................................................10, 11

*Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*,
964 F. Supp. 2d 875 (N.D. Ohio 2013)...............................................................13, 14

*In re Ford Motor Co.*,
184 F. Supp. 2d 626 (6th Cir. 2001) .......................................................................23

*Frank v. Dana Corp.*,
547 F.3d 564 (6th Cir. 2008) ....................................................................................5

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018).....................................................................23

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016).......................................................................8

*Grillo v. Tempur-Pedic Int'l, Inc.*,
553 F. Supp. 2d 809 (E.D. Ky. 2008) ................................................................10, 11

*Gruhn v. Tween Brands, Inc.*,
2009 WL 1542795 (S.D. Ohio June 2, 2009) ..........................................................12

*Havenick v. Network Exp., Inc.*,
981 F. Supp. 480 (E.D. Mich. 1997)........................................................................12

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir.2001) ..............................................................................10, 12

*Hertzberg v. Dignity Partners, Inc.*,
191 F.3d 1076 (9th Cir. 1999).................................................................................28

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
Scotland Grp., PLC*,
783 F.3d 383 (2d Cir. 2015).....................................................................................27

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.*
  *Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ....................................................................8, 17, 21, 26

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012) ..........................................................................18

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..........................................................................................14

*In re KBC Asset Mgmt. N.V.*,
  572 F. App'x 356 (6th Cir. 2014) ................................................................................14

*In re Kindred Healthcare, Inc. Sec. Litig.*,
  299 F. Supp. 2d 724 (W.D. Ky. 2004)..........................................................................12

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) .................................................................................11, 12

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ........................................................................................13

*La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*,
  622 F.3d 471 (6th Cir. 2010) .....................................................................................5, 9

*Leykin v. AT&T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006) ..........................................................................27

*Leykin v. AT&T Corp.*,
  216 F. App'x 14 (2d Cir. 2007) ....................................................................................27

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
  2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013)................................................................27

*Lloyd v. CVB Fin. Corp.*,
  2012 WL 12883517 (C.D. Cal. Aug. 21, 2012)............................................................27

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ........................................................................................26

*Lubbers v. Flagstar Bancorp. Inc.*,
  162 F. Supp. 3d 571 (E.D. Mich. 2016).......................................................................18

*Matrixx Init., Inc. v. Siracusano*,
  563 U.S. 27 (2011)...........................................................................................................5

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ........................................................................................28

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ......................................................................................16

*In re Omnicare, Inc. Sec. Litig.*,
  769 F.3d 455 (6th Cir. 2014) ............................................................................... *passim*

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................ *passim*

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) (Alito, J.) ...................................................................16

*Plaisance v. Schiller*,
2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ..........................................................9

*Platsis v. E.F. Hutton & Co.*,
946 F.2d 38 (6th Cir. 1991) ...................................................................................14

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline*,
777 Fed. Appx. 726 (5th Cir. 2019)........................................................................26

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. FXCM Inc.*,
767 F. App'x 139 (2d Cir. 2019) .............................................................................9

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) .................................................................................28

*SEPTA v. Orrstown*,
2015 WL 3833849 (M.D. Pa. June 22, 2015) ........................................................23

*SEPTA v. Orrstown Fin. Servs., Inc.*,
2016 WL 7117455 (M.D. Pa. Dec. 7, 2016)......................................................23, 24

*Shaw v. Dig. Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996)..................................................................................28

*Silverstr and Invs. v. AMAG Pharm., Inc.*,
707 F.3d 95 (1st Cir. 2013)....................................................................................28

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019).....................................................................................25

*In re Sofamor Danek Group, Inc.*,
123 F.3d 394 (6th Cir. 1997) ......................................................................15, 20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................5, 6

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)...................................................................................24

*In re Transdigm Grp., Inc. Sec. Litig.*,
440 F. Supp. 3d 740 (N.D. Ohio 2020)...............................................16, 17, 20, 25

*In re United Am. Healthcare Sec. Litig.*,
2007 WL 313491 (E.D. Mich. Jan. 30, 2007)......................................5, 16, 17, 20

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...............................................................................12

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) .....................................................................22

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
2020 WL 7029134 (S.D.N.Y. Nov. 30, 2020).......................................................27

*Yi Xiang v. Inovalon Holdings, Inc.*,
    254 F. Supp. 3d 635 (S.D.N.Y. 2017).................................................................................28

*Zaluski v. United Am. Healthcare Corp.*,
    527 F.3d 564 (6th Cir. 2008) .................................................................................17, 21

**Statutes**

15 U.S.C. § 77a *et seq.*, Securities Act ...................................................................2, 27, 29

15 U.S.C. § 77k, Securities Act Section 11 .....................................................................2, 27

15 U.S.C. § 77l, Securities Act Section 12(a)(2) ....................................................2, 27, 28, 29

15 U.S.C. §§ 77z-1, 78u-4 to -5, Private Securities Litigation Reform Act
    (PSLRA) ........................................................................................................................5, 9

15 U.S.C. § 78a *et seq.*, Exchange Act ..............................................................................2, 29

18 U.S.C. §§ 1961 *et seq.*, Racketeer Influenced and Corrupt Organizations
    (RICO) .........................................................................................................................1, 7

26 U.S.C. § 501, Internal Revenue Code § 501(c)(4).............................................................3

O.R.C. 3517.10(A)................................................................................................................16

**Rules**

Fed. R. Civ. Proc. 9(b) .......................................................................................................5, 9

Fed. R. Civ. Proc. 12 ...........................................................................................................5

7 C.F.R. § 240.10b–5 ........................................................................................................5, 16

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

In a criminal complaint publicly announced on July 21, 2020, the U.S. Attorney for the Southern District of Ohio charged Ohio House Speaker Larry Householder and several of his compatriots with RICO, bribery, and other criminal violations. The charges related to Householder's efforts to be elected as Speaker and to pass an energy bill known as HB6.

Relying almost entirely on that criminal complaint, plaintiffs have fashioned this securities fraud claim against FirstEnergy Corp. and several of its officers, including former CEO Charles Jones, none of whom are parties to the criminal case.[1] Plaintiffs claim that FirstEnergy's political contributions to Householder and certain issue-advocacy entities promoting HB6 were illegal bribes. Plaintiffs also claim that FirstEnergy paid a bribe to Sam Randazzo prior to his appointment as Chair of the Public Utilities Commission of Ohio—a payment plaintiffs admit was made by FirstEnergy pursuant to a longstanding contract.

The federal securities laws are not meant to compensate shareholders for alleged improprieties in a company's business practices. Instead, the securities laws are concerned with false or misleading statements that misrepresent the value of the company's stock. Thus, to maintain this securities fraud action against Jones, plaintiffs must not only adequately allege that FirstEnergy participated in an underlying scheme to bribe Householder or Randazzo, but also that Jones knowingly made false statements about that alleged scheme with the specific intent to mislead the company's shareholders.

Plaintiffs have not adequately alleged an unlawful bribery scheme to begin with—and for that point, Jones adopts and joins in the arguments set forth in FirstEnergy's motion to dismiss,

---

[1] This case is one of several copycat securities fraud actions, the first of which was filed July 28, 2020, just one week after the announcement of the criminal complaint.

filed contemporaneously herewith. But the claims against Jones in particular also fail for these additional, independent reasons:

**First**, the Complaint fails to adequately allege the essential element of scienter—namely, that Jones intentionally lied and had actual knowledge of the purported underlying illegality. The Complaint here is devoid of any such allegations as to Jones.

**Second**, plaintiffs do not identify a single false or misleading statement about the supposed bribery schemes made by Jones during the class period. Instead, the class-period statements quoted in the Complaint are generic descriptions about FirstEnergy's compliance with the law, effectiveness of FirstEnergy's internal controls, and aspirational codes of conduct. And where Jones did speak about legislative efforts, the Complaint does not adequately plead the required nexus to any purported underlying illegal activity.

**Third**, plaintiffs fail to show loss causation regarding any statements connected to the payment to Randazzo. In fact, that payment was only revealed after the class period closed.

**Fourth**, the Sections 11, 12(a)(2), 15, and 20 claims fail as against Jones for similar reasons. As the Complaint does not adequately allege a material misstatement or omission by Jones, there can be no liability under Sections 11 and 12(a)(2). And plaintiffs' failure to allege predicate Exchange Act and Securities Act violations is fatal to the control-person liability claims under Sections 15 and 20.

## STATEMENT OF ALLEGED FACTS

### The HB6 Campaign

FirstEnergy Corp. is an Akron, Ohio-based electric utility. Jones served as CEO of FirstEnergy until his termination in October 2020. (Compl. ¶¶ 27-28.)

Throughout the purported class period (February 21, 2017 to July 21, 2020), the Complaint alleges that FirstEnergy sought legislative support for two Ohio nuclear plants owned

and operated by FirstEnergy Solutions (FES), a FirstEnergy subsidiary.[2] (Compl. ¶¶ 5, 44, 64–80.) These efforts included lobbying the federal government and supporting two bills in the Ohio General Assembly—namely, the Zero Emission Nuclear Resource Program (ZEN) and HB6. (Compl. ¶¶ 5, 103.)

FirstEnergy supported these legislative efforts with political contributions. According to the Complaint, FirstEnergy made contributions to Ohio Rep. Larry Householder and other candidates supportive of Householder's election as Speaker. (*Id.* ¶ 67.) FirstEnergy also made issue-advocacy contributions to political action committees organized under Internal Revenue Code § 501(c)(4), including Generation Now. (*Id.* ¶¶ 65, 68, 82-84, 137.)

Plaintiffs contend that these contributions were illegal bribes. Based solely on allegations derived from the criminal complaint issued by the U.S. Attorney's Office of the Southern District of Ohio, plaintiffs claim that Householder and four of his compatriots operated a criminal enterprise that funneled money through Generation Now and engaged in honest-services fraud, bribery, and money laundering. (*Id.* ¶ 143.)[3]

Borrowing from the criminal complaint again, the plaintiffs claim that FirstEnergy's contributions were used to fund a variety of political activities, including to support the HB6 campaign and Householder's bid to be elected Speaker (*id.* ¶¶ 70–71, 143), pay for advertising (*id.* ¶ 83) and oppose a voter referendum to repeal HB6. (*Id.* ¶¶ 84–85.) The Complaint further

---

[2] According to the Complaint, FES changed its name to Energy Harbor following a March 2018 bankruptcy and later reorganization. (Compl. ¶ 42 n.1.) FES had an independent board and executive team during this time.

[3] Plaintiffs refer to and rely upon the criminal complaint but do not attach it to the Complaint. It is available at *United States v. Householder*, 20-cr-00077, ECF No. 5 (S.D. Ohio July 21, 2020). (A subsequent indictment was filed on July 30, 2020. *See id.*, ECF No. 22.) The Court may consider it as part of the pleading because it is a "public record[]" and "integral to the complaint." *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 850 (S.D. Ohio 2016) (citations omitted).

alleges that Householder and others used FirstEnergy's contributions for their personal benefit. (*Id.* ¶ 143).

The campaign to pass HB6 was successful. (*Id.* ¶ 78.) In 2021, HB6 was partially repealed. *See* HB128, 134th Gen. Assemb., Reg. Sess. (Ohio 2021) (effective June 30, 2021).

### FirstEnergy's Contractual Payment to Sam Randazzo

The Complaint attempts to construct another bribery scheme around a $4 million payment that FirstEnergy made to Sam Randazzo in early 2019. But plaintiffs plead that this payment related to obligations that preceded Randazzo's appointment to PUCO Chair by years. (*Id.* ¶¶ 11, 190 (alleging the payment related to an agreement "which had been in place since 2013").) Though plaintiffs allege that Randazzo was later appointed to PUCO Chair (*id.* ¶ 190) and then "help[ed] write and support HB6" (*id.* ¶ 72), plaintiffs do *not* allege Jones knew or believed Randazzo would become PUCO Chair at the time FirstEnergy made the payment.

### Jones's Statements

Conspicuously absent from the Complaint is any statement made by Jones during the class period that had any direct connection to FirstEnergy's contributions to Householder or Generation Now, or its contractual payment to Randazzo. Instead, plaintiffs allege that Jones merely made statements to the effect that FirstEnergy was "pursuing legislative or regulatory solutions" for the nuclear plants. (*Id.* ¶¶ 95–96, 103, 112–14, 117–18, 121, 123–24, 127, 129, 132). Plaintiffs also point to instances in which Jones made generic statements—similar to those made commonly by public company CEOs—regarding FirstEnergy's regulatory compliance, internal controls, or codes of conduct. (*Id.* ¶¶ 97-102, 104, 106.) Plaintiffs allege all these statements were misleading because Jones made them without also disclosing the alleged bribery scheme as to HB6, improper campaign contributions, or the purported illegal payment to Randazzo. (*See id.* ¶¶ 4, 11, 70, 135-36, 220.)

It was only *after* the class period expired—and *after* the criminal complaint against Householder was publicly announced—that the Complaint alleges Jones made any statement about the political contributions that are the subject of this case. (*Id.* ¶¶ 151–59.)

## LAW AND DISCUSSION

### I.    STANDARD OF REVIEW.

Private securities litigation is "not designed to provide an umbrella cause of action for the review of management practices." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004); *In re United Am. Healthcare Sec. Litig.*, 2007 WL 313491, at *14 (E.D. Mich. Jan. 30, 2007) (*In re UAHC*) (securities litigation is "not ... an avenue for relief against executives for alleged illegal practices or corporate mismanagement."); *Cione v. Gorr*, 843 F. Supp. 1199, 1205 (N.D. Ohio 1994); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

To survive a Rule 12 motion, plaintiffs must "adequately allege all of the elements of their Section 10(b) and Rule 10b–5 claim." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 485 (6th Cir. 2010). These are: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014) (citing *Matrixx Init., Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)) (*In re Omnicare*).

In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA) sets forth "exacting pleading requirements" for securities fraud class actions, like this one, requiring plaintiffs to state with particularity "both the facts constituting the alleged violation" and the "facts giving rise to a strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007). These claims are also subject to the particularity requirements for pleading fraud under Rule 9(b). *See Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008).

## II.     PLAINTIFFS FAIL TO PLEAD SCIENTER.

### A.     Plaintiffs Must Allege Actual Knowledge of Falsity and Intent To Defraud.

To allege scienter, plaintiffs "must plead facts showing that defendants had a mental state embracing intent to deceive, manipulate, or defraud." *In re Omnicare*, 769 F.3d at 472 (quotation omitted). This usually requires plaintiffs to allege defendants made false statements "with at least recklessness." *Id.* However, the Sixth Circuit has set a "higher scienter requirement" in cases like this one, "when plaintiffs accuse defendants of misrepresenting or omitting soft information." *Id.* at 472, 478. Soft information "includes predictions and matters of opinion," like the disputed legal conclusion that FirstEnergy's political contributions or payment to Randazzo amounted to "non-compliance" with applicable laws. *See id.* at 470–71, 482–83 (quotation omitted); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 822 (W.D. Mich. 2012) ("legality of the defendant's promotion techniques" was "soft information").

Under this heightened requirement, plaintiffs "must plead facts showing that the defendants knowingly misrepresented or omitted" to disclose illegal conduct, and did so "to deceive, manipulate or defraud" the market. *See In re Omnicare*, 769 F.3d at 472. Thus, plaintiffs must allege facts raising a "strong inference" that Jones knew his challenged statements were false and acted with the required fraudulent intent, and this inference must be "at least as compelling as any opposing inference." *Tellabs, Inc.*, 551 U.S. 308, 324 (2007). Plaintiffs fail to meet this standard.

### B.     Plaintiffs Have Not Alleged Jones Knew His Statements Were False.

To establish "actual knowledge" of falsity, plaintiffs must allege facts showing not just that Jones knew FirstEnergy made the alleged payments, but also that Jones knew those payments amounted to "non-compliance." *See In re Omnicare,* 769 F.3d at 481–83; *see also In re Axis Cap. Holdings Ltd. Sec. Litig.,* 456 F. Supp. 2d 576, 592 (S.D.N.Y. 2006) (scienter for

nondisclosure of antitrust violation requires that defendant "knew that the agreements were illegal").

*In re Omnicare* is on point—and demonstrates just how demanding this standard is. The plaintiffs there alleged that Omnicare and its officers, including the CEO, failed to disclose "pervasive [Medicare] fraud," and that statements about the company's "compliance with applicable laws," "financial results," and "root causes of its financial performance" were misleading as a result. 769 F.3d at 462–64. The plaintiffs alleged that internal audits conducted during the class period "revealed pervasive ongoing fraud," but the court found the plaintiffs failed to adequately allege the defendants knew the audit results when making the challenged statements. *Id.* at 482 ("conclusory statement that the results must have been given to them" not sufficient). The court thus held the plaintiffs had not shown "actual knowledge" of falsity, which was "fatal" to their securities fraud claim. *Id.* at 481–83.

The allegations of actual knowledge here are significantly weaker than those found wanting in *In re Omnicare*. Here, there is no allegation that FirstEnergy's internal or external experts concluded that FirstEnergy's political contributions violated applicable laws, much less that Jones was informed of such a conclusion. Indeed, any such conclusion would involve analysis of the First Amendment, campaign finance law, and other specialized areas of law,[4] and would raise difficult legal issues that disinterested experts have described as "novel" and as having the potential to "alter the landscape of corruption law."[5] Absent allegations showing that

---

[4] While Jones disputes that any impropriety occurred here, the question of whether the payments were lawful or not will no doubt be the subject of debate for many months to come in the RICO class action pending before Judge Sargus and the criminal case against Householder.

[5] *See* Peter Koski and Randall Friedland *How Ohio Case May Alter Corruption Law Landscape*, (Sept. 8, 2020), https://www.law360.com/articles/1306531/how-ohio-case-may-alter-corruption-law-landscape ("[D]espite the sensational headlines, the 82-page criminal complaint contains none of the salacious details commonly associated with such bribery schemes. . . . The charging

7

Jones was told FirstEnergy's conduct was illegal or that he formed this conclusion himself, the far more compelling inference is that Jones believed FirstEnergy's contributions to 501(c)(4) entities and contractual payment complied with applicable laws, and that FirstEnergy's professionals in these fields had made reasonable judgments as to their legality.

Plaintiffs' allegation that Jones "was the ultimate head of" FirstEnergy's "pursuit of illicit 'solutions'" to support the FES nuclear plants does not meet the heightened pleading requirement. (Compl. ¶ 220.) Even assuming FirstEnergy's activities are ultimately determined to have violated the law, these allegations do not establish that Jones knew they were illegal during the class period. *See, e.g., In re Axis Cap.*, 456 F. Supp. 2d at 592 (defendants' use of allegedly illegal agreements did not establish defendants knew the agreements "were illegal or, more to the point, knew that the disclosures that are the subject of the complaint were likely fraudulent"); *see also Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 946–47 (6th Cir. 2009) ("[A]lthough three confidential witnesses reported various drug-handling practices that they considered illegal, . . . no allegations establish when the defendants were aware of the wrongdoing[.]") (*Ind. State Dist. Council*).

Plaintiffs also contend that Jones's post-class period statements supposedly "conceal[ing] his personal involvement" in the alleged schemes suggest he knew that illegal conduct occurred. (Compl. ¶¶ 211, 234.) But Jones's after-the-fact statements, regardless of whether they were accurate, do not show that he knew *during the class period* that his statements were false. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 604–05 (S.D.N.Y. 2016) (post-class period statements denying fraud, "even if viewed as deliberately misleading, do not supply a basis to

---

theory in this case raises several novel legal issues. The resolution of these issues may alter the landscape of corruption law for years to come.").

infer, retroactively, that [defendant's] . . . statements over the preceding two years were made with scienter"); *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. FXCM Inc.*, 767 F. App'x 139, 142 (2d Cir. 2019) (subsequent "cover up" did not "make it more likely" that defendants "lied to investors" during the class period (quotation omitted)).

Plaintiffs point to Jones's alleged failure to disclose the Randazzo payment to FirstEnergy's board as indicating he knew that payment was unlawful. (Compl. ¶ 235). But plaintiffs do not explain why Jones was required to report to the board about a payment made pursuant to a longstanding contract if he did not know it was illegal. *See Plaisance v. Schiller*, 2019 WL 1205628, at *30, 32 (S.D. Tex. Mar. 14, 2019) (CEO's scienter could not be inferred from "fail[ure] to disclose [certain loans] to the Board or to the market"; "[a]bsent a duty to disclose, failure to disclose is not capable of raising a strong inference of scienter").

Plaintiffs' contention that Jones's "scienter is also established" by the "magnitude of the alleged activities" and the "disparity between what FirstEnergy paid versus the benefits it received" is also insufficient. (*See* Compl. ¶ 209.) In *In re Omnicare*, the Sixth Circuit held that allegations like these do not meet the "actual knowledge" standard. 769 F.3d at 482 ("speculative reasoning—however persuasive its logic—is not able to overcome the high pleading standards erected by Rule 9(b) and the PSLRA"); *see also La. Sch.*, 622 F.3d at 483–84 ("[T]he magnitude of an accounting fraud cannot be used to bolster a scienter inference."); *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) (same).

### C. Plaintiffs Fail to Allege Jones Intended to Defraud Shareholders.

Plaintiffs also fail to plead scienter because they do not allege Jones intended to "manipulate" FirstEnergy's stock price and "defraud the [investing] public." *See In re Omnicare*, 769 F.3d at 472. The Sixth Circuit has "identified nine, non-exhaustive factors" for determining

4828-7182-5642.9

such intent. *Id.* at 484 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir.2001)).[6] "The more of these [*Helwig*] factors that are present, the stronger the inference" of scienter. *Id.* at 473. Plaintiffs do not sufficiently allege any of these factors.

### 1.   Jones's stock sales do not establish fraudulent intent.

Plaintiffs contend that Jones's class-period stock sales evidence a scheme to profit from misrepresentations intended to inflate FirstEnergy's stock price. (Compl. ¶¶ 213, 250–51.) To advance this theory, "[p]laintiffs have the burden at the pleading stage of explaining why the stock sales were unusual or suspicious." *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 820–21 (E.D. Ky. 2008). Plaintiffs do not meet this burden.

To begin with, Jones's trading pattern is not consistent with someone cashing in after fraudulently inflating a stock price. Jones sold shares at regular intervals—on March 1, 2018 and March 1, 2019 (Compl. ¶ 250)—not in tandem with alleged misrepresentations. *See Fishbaum v. Liz Claiborne, Inc.*, 1999 WL 568023, at *4 (2d Cir. July 27, 1999) (stock "sales would have to be much closer in time to the alleged misstatements to give rise to a suspicion of fraud"); *Beaver Cty. Ret. Bd. v. LCA-Vision Inc.*, 2009 WL 806714, at *23 (S.D. Ohio Mar. 25, 2009) (same). Jones also did not trade at unusually high prices. (*See* Ex. 1 (stock sales were below daily, weekly, and yearly highs).) *See also Campbell v. Lexmark Int'l Inc.*, 234 F. Supp. 2d 680, 686

---

[6] The *Helwig* factors are: "(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs." *In re Omnicare*, 769 F.3d at 473 (quoting *Helwig*, 251 F.3d at 552).

(E.D. Ky. 2002) (stock sale not suspicious because trade was "executed at a per-share price of less than . . . the price at which [defendant] had sold Company stock . . . prior to the class period."). Nor did Jones's stock sales constitute an outsized portion of his compensation. (*See* Compl. ¶¶ 248–50 (alleging class-period stock sales totaling 23.9 percent of compensation).) *See also Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 553 (5th Cir. 2007) (43 percent of compensation not suspicious).

In fact, FirstEnergy's public filings show that Jones's stock sales coincided with his equity awards vesting—providing an obvious, innocent explanation for Jones's trades. (*See* Ex. 2-5 (SEC filings showing Jones's equity awards vested on March 1, 2018 and March 1, 2019)).[7] *See Fishbaum*, 1999 WL 568023, at *4 (trades not suspicious; "stock sales appeared to be part of a periodic divestment plan"); *Campbell*, 234 F. Supp. 2d at 686 (same; "stock sales seem perfectly reasonable in light of the impending expiration of many of his stock options").

Plaintiffs' allegation that Jones's class-period stock sales substantially exceeded his previous sales also do not give rise to indicia of fraud. (*See* Compl. ¶¶ 250–251.) The complaint is "devoid of any circumstances" supporting an inference that Jones intended to defraud investors based solely on the amount he sold. *See In re Ferro Corp.*, 2007 WL 1691358, at *15 (N.D. Ohio June 11, 2007); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 399 (6th Cir. 2009) ("plaintiffs must provide a meaningful trading history for purposes of comparison to the stock sales within the class period" (quotation omitted)).

---

[7] Indeed, Jones sold shares at regular intervals on the same days his share awards vested—on March 1, 2018 and March 1, 2019. (Comp. ¶ 250; *see also* Ex. 2-5 (Form 4s).) This Court can take judicial notice of relevant SEC filings to determine whether an executive's stock sales were unusual or suspicious. *See Grillo*, 553 F. Supp. 2d at 821 n.5.

Plaintiffs' allegation that Jones sold 39 percent of his holdings during the class period also does not establish scienter. (Compl. ¶ 251.) In fact, Jones acquired far more shares during the class period than he sold. (*Compare* Ex. 6 *with* Ex. 7 (SEC filings showing Jones's holdings increased by 492,934.476 shares during the class period).)[8] Moreover, on its face, plaintiffs' allegation makes clear that Jones retained the majority of his holdings. *See, e.g.*, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (sale of 38 percent of holdings not suspicious); *Gruhn v. Tween Brands, Inc.*, 2009 WL 1542795, at *8–9 (S.D. Ohio June 2, 2009) (17 and 32 percent); *Havenick v. Network Exp., Inc.*, 981 F. Supp. 480, 528 (E.D. Mich. 1997) (32 and 40 percent). As the court explained in *In re Diebold Sec. Litigation*, "retaining a bulk of formerly-restricted shares . . . is inconsistent with an inference of scienter." 2008 WL 3927467, at *9 (N.D. Ohio Aug. 22, 2008), *aff'd sub nom. Konkol*, 590 F.3d at 390.

## 2. Performance-based compensation does not establish fraudulent intent.

Plaintiffs also claim that Jones was motivated to fraudulently manipulate FirstEnergy's stock price to increase his performance-based compensation. (Compl. ¶¶ 213, 248–249.) But plaintiffs do not allege, as they must, that Jones had a particular reason for doing this, such as "saving [his] salar[y] or job" or addressing some financial emergency. *See Helwig*, 251 F.3d at 552. Plaintiffs offer only the generic allegation that Jones stood to benefit financially from higher stock prices. Because this is true of virtually any high-ranking corporate executive, it adds nothing to plaintiffs' theory of scienter. *See City of Pontiac*, 865 F. Supp. 2d at 835 (performance-based compensation has "limited probative value as to scienter" because it is "common among executives"); *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724,

---

[8] FirstEnergy Corp.'s Memorandum of Law in Support of the FirstEnergy Defendants' Motion to Dismiss the Consolidated Complaint ("FirstEnergy Br.") at Sec. III(C)(5), p. 47.

741 (W.D. Ky. 2004) (same). In addition, plaintiffs "fail[] to allege that the [alleged] misstatements actually increased incentive compensation." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016).

### 3. Plaintiffs' other allegations fail to show intent to defraud shareholders.

Plaintiffs' remaining scienter allegations also fail to raise the required strong inference that Jones intentionally manipulated FirstEnergy's stock price. Plaintiffs primarily focus on Jones's alleged involvement in the purported bribery schemes. (*See* Compl. ¶¶ 209, 236–237.) But allegations of underlying bribery schemes (assuming they existed) do not establish that Jones intended to commit securities fraud. *See Doshi v. Gen. Cable Corp.*, 386 F. Supp. 3d 815, 837 (E.D. Ky. 2019) ("The widespread bribery in this instance constituted the actual [underlying] FCPA violations. Plaintiff does not explain how this also weighs in favor of scienter in that GC was acting to defraud the [investing] public.").

Likewise, plaintiffs' allegations concerning purported "admissions of wrongdoing" by others do not provide particularized factual allegations connecting Jones to underlying illegal conduct, much less establishing Jones's intent to commit securities fraud.[9] *See, e.g., Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 829 (8th Cir. 2003) (guilty plea entered by defendant's subsidiary did not establish defendant's scienter; "the guilty plea admits nothing more than the limited instances of misconduct specified therein").

For similar reasons, Jones's termination from FirstEnergy does not support an inference of scienter. (Compl. ¶¶ 174, 190, 212, 216.)[10] FirstEnergy's statements concerning alleged weaknesses in internal controls and violations of internal policies (*id*. ¶ 217) did not purport to

---

[9] *See* FirstEnergy Br. at Sec. III(C)(1), p. 37
[10] Indeed, though Jones joins in FirstEnergy's Motion to Dismiss, this does not reflect an acknowledgement or belief that his termination from the Company was warranted or appropriate.

disclose any facts revealing Jones's intent to defraud shareholders,[11] and the mere fact of an executive's termination is not sufficient to plead scienter. *See, e.g., Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 888, 889 (N.D. Ohio 2013) (dismissing for lack of scienter; "Plaintiffs have not alleged facts supporting a plausible inference that [defendants] were terminated . . . for any reason other than . . . mismanage[ment]"), *aff'd sub nom. In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014).

Taken as a whole, the alleged facts do not raise the required strong inference that Jones intended to defraud the market. Jones had no particular motive to commit securities fraud. *See, e.g., id.* at 889 ("[T]he strength of the circumstantial evidence [of scienter] must be correspondingly greater if there is no motive." (quotation omitted)). And the vague, attenuated statements alleged to be misleading do not clearly reflect an intention to lie about tangentially related activities, nor did they create an obvious duty to disclose those activities (even assuming Jones believed they were illegal). *See, e.g., Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 41 (6th Cir. 1991) ("intent to deceive" not established without clear duty to disclose allegedly omitted facts); *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) ("[P]laintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior" without "facts indicating a clear duty to disclose."). The far more compelling inference is that Jones did not intend to defraud the market and believed FirstEnergy was acting in compliance with complex legal regimes for the benefit of FirstEnergy and its shareholders.

---

[11] *See* FirstEnergy Br. at Sec. III(C)(1), pp. 37-40.

III.   **THE COMPLAINT DOES NOT ADEQUATELY ALLEGE JONES MADE AN ACTIONABLE MISREPRESENTATION OR OMISSION.**

To be actionable for securities fraud, a statement must be a material misrepresentation or omission. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005). A misrepresentation is a false affirmative statement, while an omission is a statement that is false or misleading because it "fail[s] to disclose information when [the speaker] had a duty to do so." *In re Omnicare*, 769 F.3d at 470. The Complaint attributes 24 statements to Jones—all alleged to be misleading omissions because they failed to disclose the purported illegal bribery schemes. (*See* Compl. ¶¶ 4, 11, 70, 135–36, 220.)

Jones's challenged statements are not actionable for numerous reasons. **First**, plaintiffs fail to allege the required direct nexus between any statement and the purported illegal conduct. **Second**, the supposedly omitted information—the existence of undisclosed illegality—is "soft information" for which there was no duty to disclose. **Third**, some of the statements express opinions that are not adequately pleaded to be false or misleading under *Omnicare v. Laborers*. And **fourth** some of the statements are not actionable because they are aspirational, puffery, or otherwise immaterial.

A.   **The Complaint Does Not Adequately Allege a Direct Nexus between Jones's Statements and the Purported Illegal Conduct.**

"Before liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure." *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).[12] Here, plaintiffs fail to plead an actionable omission because Jones's challenged statements did not create a duty to disclose FirstEnergy's allegedly illegal activities.

---

[12] In addition, and as set forth in the Company's brief, plaintiffs do not adequately allege scheme liability as to Jones for the underlying misconduct.  *See* FirstEnergy Br. at Sec. IV, pp. 49-65

To begin, Jones had no free-standing duty to disclose the Company's political expenditures. A proposed federal statute to require securities issuers to disclose their political contributions failed in Congress as recently as 2019,[13] and the SEC considered and rejected similar petitions for rulemaking in 2011 and 2014.[14] Furthermore, any campaign finance disclosures filed with the Ohio Secretary of State are required to be filed by the Company; Jones had no independent filing obligations.[15]

Nor is there a general duty under the securities laws to disclose potential illegal conduct. *In re UAHC*, 2007 WL 313491, at *14 ("[T]he non-disclosure of illegal or … potentially illegal conduct is not necessarily misleading in itself."); *City of Pontiac Policeman's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("[D]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." (quotation omitted)).[16]

---

[13] Corporate Political Disclosure Act of 2019, H.R. 1053, 116th Cong. (2019).

[14] Committee on Disclosure of Corporate Political Spending, SEC Rulemaking Petition (Aug. 3, 2011), https://www.sec.gov/rules/petitions/2011/petn4-637.pdf; Citizens for Responsibility and Ethics in Washington, SEC Rulemaking Petition (April 15, 2014), https://www.sec.gov/rules/petitions/2014/petn4-637-2.pdf.

[15] *See* O.R.C. 3517.10(A) (requiring political election contribution disclosures only by "campaign committee, political action committee, legislative campaign fund, political party," and related entities, not individuals or executives); *id.* at § 3599.03(C) (requiring ballot issue contribution disclosures by corporations, not individuals or executives). The Complaint in this case also notes that Ohio Secretary of State Frank LaRose has initiated an administrative action against the Company for "concealing or misrepresenting" its political contributions. (Compl. ¶ 138). But that action did not name any Company executives—because those executives have no individual disclosure obligations with the State. (*See* Compl. to Ohio Elections Comm'n (2020), Ex. 12.)

[16] Nor is there a duty to disclose arising from Item 303 of Regulation S-K. (Compl. ¶¶ 139–42.) As explained in the Company's Motion to Dismiss, "Item 303 does not create a duty to disclose for purposes of Section 10(b) and Rule 10b-5." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014); *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) (Alito, J.).

4828-7182-5642.9

Rather, a duty to disclose illegal conduct arises only if there is a "direct nexus between the illegal conduct and the challenged statements." *In re Transdigm Grp., Inc. Sec. Litig*., 440 F. Supp. 3d 740, 767 (N.D. Ohio 2020). "Merely mentioning a topic" that bears on the alleged illegal conduct is insufficient. *In re UAHC*, 2007 WL 313491, at *11 (collecting cases), *aff'd Zaluski v. UAHC*, 527 F.3d 564 (6th Cir. 2008). Instead, a statement must amount to an "implicit representation[] that would mislead a reasonable investor" to believe the illegal conduct had not occurred. *Id.* at *9.

For example, in *In re UAHC*, 2007 WL 313491, the plaintiffs brought a securities fraud claim based on the alleged failure to disclose that a large state contract could be terminated as a result of $420,000 in allegedly unlawful consulting payments to a state senator. *Id*. at *2–4. The district court dismissed, holding the company's statements regarding the contract, including its renewal and associated revenue, lacked a "direct nexus" with the allegedly improper consulting payments and thus did not create a duty to disclose the purported misconduct. *Id*. at *10–12 (noting the statements did not discuss, for example, "conflicting relationships" or "consulting agreements"); *see also Zaluski*¸ 527 F.3d at 573–74 (affirming that statements regarding state contract did not create duty to disclose risk that improper payments could result in contract termination).

Courts in this circuit repeatedly hold that where there is no direct nexus between the challenged statement and the allegedly omitted illegality, there is no duty to disclose. For example, in *In re TransDigm*, statements about a company's strategy, products, and pricing did not give rise to a duty to disclose alleged illegal "price-gouging" because they "were too vague and generic to constitute an implicit representation that would mislead a reasonable investor to believe that illegal conduct had not occurred." 440 F. Supp. 3d at 767 (quotation marks omitted).

17

The Sixth Circuit has held that a pharmaceutical services company's "generic claim that [it] complied with the law" did not require disclosure of purportedly illegal drug recycling and dosing changes for patients. *Ind. State Dist. Council*, 583 F.3d at 947. And this Court has also emphasized that an actionable omission cannot be based on a duty to disclose "wholly unrelated pieces of information." *Albert Fadem Tr. v. Am. Elec. Power*, 334 F.Supp.2d 985, 1022 (S.D. Ohio 2004) (Marbley, J.).

Many other cases are in accord. *Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014) ("generic claim of legal compliance, absent any specifics … does not require disclosure of allegedly illegal activities"); *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 582-83 (E.D. Mich. 2016) (statements regarding cost reductions and decrease in headcount did not require disclosure of purported "failure to comply with consumer protection regulations" that allegedly motivated the cost reductions); *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 157, 165-66 (S.D.N.Y. 2018) (statements attributing financial results to "robust fish harvest" lacked required "nexus" to undisclosed "violations of environmental laws" pertaining to "[fish] harvesting and production process"); *In re Almost Family, Inc. Sec. Litig.*, 2012 WL 443461, at *6-7 (W.D. Ky. Feb. 10, 2012) (statements attributing financial results to "strategy, success, and management" not misleading despite undisclosed "scheme to manipulate Medicare[]"); *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 576, 579 (S.D.N.Y. 2012) ("Here, there is no direct connection between Defendants' statements regarding the sources of its revenue and enrollment growth and the omitted information regarding ESI's predatory recruitment practices or quota system.").

None of the 24 paragraphs of the Complaint that challenge Jones's class-period statements plead a nexus between those statements and any allegedly illegal activity.

**Generic statements concerning legal compliance, internal controls, risk factors, and codes of conduct.** (Compl. ¶ 97-102, 104, 106–08.) Ten paragraphs do not even mention FirstEnergy's lobbying for nuclear subsidies or its broader government relations strategy. These paragraphs include general statements about legal compliance (*id.* ¶ 97–98), internal controls (*id.* ¶¶ 99–100, 102), risk factors (*id.* ¶ 101), and codes of conduct and aspirational statements (*id.* ¶¶ 104, 106–08).

These statements have no connection to the Company's political activity and thus cannot be implicit representations regarding the legality of that activity. *See Dailey*, 551 Fed. App'x at 849; *Albert Fadem Tr.*, 334 F. Supp. 2d at 1022 (no duty to disclose lack of internal controls on Trade Press reporting where none of the company's challenged statements related to such reporting); *Diehl*, 339 F.Supp. 3d at 164–65 (generic risk disclosures did not negate "risk of future adverse action, including a claim that it had violated the terms of its probation.").

**"Legislative solutions" for nuclear plants.** (Compl. ¶ 95–96, 103, 112-14, 117–18, 121, 123–24, 127, 129, 132.) Eleven paragraphs relate to the Company's pursuit of "legislative solutions" for the nuclear plants unrelated to HB6. These include: (1) **generic statements** that the Company was seeking "legislative or regulatory solutions" and engaging in "meaningful dialogue" (Compl. ¶¶ 95-96, 103); (2) descriptions of **proposed ZEN legislation**[17] as a

---

[17] The ZEN program, S.B. 128, included funding for zero-carbon nuclear resources in Ohio. (*See* Kathleen A. Luikart, S.B. 128, Bill Analysis, Ohio Legislative Service Commission (Apr. 6, 2017), https://www.legislature.ohio.gov/download?key=6933, Ex. 13.) The bill was introduced at the Ohio Senate on April 6, 2017 and referred to the Senate's Public Utilities Committee on April 26, 2017; a companion bill, H.B. 178, was introduced at the Ohio House on April 10, 2017 and referred to the House Public Utilities Committee on 5/1/2017. (*See* S.B. 128 and H.B 178 History, 132nd Ohio General Assembly, Ex. 14, 15.) A second companion bill, H.B. 381, was introduced at the Ohio House on October 17, 2017 and referred to the House Public Utilities Committee on October 17, 2017. (*See* H.B. 381 History, 132nd Ohio General Assembly, Ex. 16.) The ZEN legislation never received a vote.

"thoughtful program" the Company was "working to get [] on the governor's desk" (*id.* ¶ 112–14); and (3) statements made **after ZEN legislation failed**, noting the Company would continue to "advocate" for "solutions" (*id.* ¶¶ 117-118, 121, 123–24).

Three paragraphs relate to the **passage of HB6**. (*Id.* ¶¶ 127, 129, 132.) These include: (1) that Jones "expect[s] to engage and provide our input" on any new nuclear bill (*id.* ¶ 127); (2) that "we believe this legislation is good for our customers because it will contribute to the state's economic success …" and that "I think they came up with an approach that was very strong in terms of looking out for this industry …" (*id.* ¶ 129); and (3) that the decoupling provision "takes about 1/3 of our company and I think it makes [it] somewhat recession proof." (*Id.* ¶ 132.)

None of these paragraphs discuss political contributions, compliance with campaign finance requirements, or consulting payments. Jones's vague and generic statements that he will "advocate" for "legislative solutions" that are a "thoughtful program" and "good for our customers" have no direct nexus with the underlying purported illegal political contributions or improper consulting agreements. *See In re UAHC,* 2007 WL 313491, at *10–11; *In re TransDigm,* 440 F. Supp. 3d at 767. A reasonable investor could not consider these statements as implicit representations that the alleged misconduct had not occurred.

### B.     Jones's Statements Are Not Actionable Omissions Because The Determination Of Illegality Is Soft Information.

Nor is there a duty to disclose a "prediction[]" or "matter of opinion" that amounts to "soft information," such as the existence of alleged unadjudicated illegality. *City of Monroe,* 399 F.3d at 669.[18] The failure to disclose such soft information is "actionable only if it is virtually as certain as hard facts," *id.*, or "the statement was made with knowledge of falsity." *Doshi,* 386

---

[18] "Soft information" is distinguished from "hard information," which is "historical [or] factual information that is objectively verifiable." *In re Sofamor Danek*, 123 F.3d at 401. "Publicly disclosed, hard information is actionable if false and material." *City of Monroe,* 399 F.3d at 669.

F.Supp.3d at 832. As discussed above, plaintiffs do not allege that Jones knew the purported underlying conduct was illegal when the challenged statements were made.[19]

Nor could the existence of illegality, to the extent it depends on predicting determinations by third parties, be "virtually as certain as hard facts." In *Zaluski*, noted above, the Sixth Circuit considered whether UAHC was required to disclose the state's potential termination of a contract due to improper consulting payments. The court held that such potential future consequences "turn on decisions made by actors outside of Defendants' control," which do "not constitute the type of hard information that this Court considers actionable." *Id.* at 575–76; *see also In re Sofamor Danek*, 123 F.3d at 401-02 (FDA warning letter discouraged support of programs that encouraged off-label use of medical screw; company continued support of program that encouraged surgeries with off-label use; disputed "legality" of support was "soft information" not subject to a duty to disclose); *Ind. State Dist. Council*, 583 F.3d at 946–47 ("predictions regarding the actions of third parties, particularly whether fines or other sanctions would be brought based on [] regulatory violations" was soft information and not actionable); *City of Pontiac*, 865 F. Supp. 2d at 826 (FDA notice identified possible regulatory violations at medical device manufacturing facility; no duty to disclose FDA notice because FDA decision was not final, and notice contained only soft information as to the existence of possible violations); *In re Almost Family*, 2012 WL 443461, at *6 (CEO statements "aimed at defending the legality" of company's Medicare reimbursement practices was "soft information" and not actionable); *Doshi,*

---

[19] When challenged statements are alleged to be false or misleading due to the omission of soft information, courts have varied in whether they analyze the defendants' required knowledge of falsity under the misrepresentation element or scienter element (or both). *See In re Omnicare*, 769 F.3d at 470–71 (noting that knowledge of falsity could be—and has been—analyzed under either element, and instructing that the scienter element is more appropriate). In accordance with *In re Omnicare*, we address this argument more fully in Section II, above.

386 F. Supp. 3d at 832–33 (no duty to disclose "potential consequence" of ceasing business if corrupt payments stopped; information was not "virtually certain to occur").

Here, plaintiffs' claims appear to assume Jones had a duty to disclose FirstEnergy's political contributions and contractual payment based on a prediction that the government might later reach the disputed legal conclusion that this conduct was illegal. Such a prediction is "soft information" for which there is no duty to disclose. *See Zaluski*, 527 F.3d at 574-76.

### C. The Complaint Does Not Adequately Plead A False Opinion Statement Made By Jones That Satisfies *Omnicare v. Laborers*.

Some of Jones's challenged statements—those relating to HB6's benefits, adequacy of internal controls, and potential risks facing the Company—are statements of opinion. (Compl. ¶¶ 99–102, 129, 132.) As discussed in the Company's brief, plaintiffs do not meet the standard for pleading a false or misleading statement of opinion set by *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015) (*Omnicare v. Laborers*). Opinion statements give rise to liability: (1) when the speaker does not "actually hold[] the stated belief;" (2) when the statement contains false "embedded statements of fact;" and (3) where the speaker omits material facts about the "inquiry into or knowledge concerning the statement of opinion" that "conflict with what a reasonable investor would take from the statement itself." *Id.* at 184–86, 189. Furthermore, whether an omission is misleading "always depends on context" including "surrounding text," "disclaimers," and "conflicting information." *Id.* at 190. Jones adopts the Company's arguments and provides additional detail below for the challenged opinion statements involving Jones.

**Prefatory language (Compl. ¶¶ 129, 132.)** Two paragraphs include prefatory language: (1) "we believe [HB6] is good for our customers …" and "I think [the state government] came up with an approach that was very strong in terms of looking out for this industry …" (*id.* ¶ 129);

and (2) "[Decoupling] … takes about 1/3 of our company and I think [it] makes it somewhat recession proof" (*id.* ¶ 132). Though prefatory language is not necessarily controlling, these are nonetheless classic opinion statements. *See Omnicare v. Laborers,* 575 U.S. at 183–84 (opinion statements typically include those prefaced by "I think" or "I believe"). Thus, plaintiffs must plead Jones did not believe these opinions or identify an "embedded" untrue fact contained within the statements. *See id.* at 185. Here, neither requirement is satisfied. *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 650 (N.D. Ill. 2020) (plaintiff must plead facts establishing speaker's subjective falsity or untrue embedded fact on which opinion relied); *Chapman v. Mueller Water Prods.*, 466 F.Supp.3d 382, 398-99 (S.D.N.Y. 2020) (plaintiffs did not allege facts plausibly showing that speaker held anything other than "honest belief" in statement of opinion).

Furthermore, these statements cannot be considered misleading by omission because they are corporate puffery and do not purport to state "determinate, verifiable" facts. *See Omnicare v. Laborers,* 575 U.S. at 183-84; *SEPTA v. Orrstown*, 2015 WL 3833849, at *19 (M.D. Pa. June 22, 2015) ("sound credit practices" was mere puffing and not actionable under *Omnicare*); *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp*., 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018) ("our business fundamentals and operational expectations have not changed" conveyed "no meaningful, objective data that an investor would rely upon"); *In re Ford Motor Co.*, 184 F. Supp. 2d 626, 633 (6th Cir. 2001) ("taking across-the-board actions to improve our quality" held vague corporate puffery). Such vague and generalized statements make no reference to the Company's underlying political contributions, and when read in context, could not be taken by a reasonable investor to imply anything about those contributions or payments.

23

**Internal controls.** (Compl. ¶ 99–100, 102.) In three paragraphs, Jones indicated that "internal control over financial reporting" was effective. (*Id.*) Statements concerning the adequacy of internal controls are opinions because they express management's or an auditor's judgments. *See SEPTA v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at *13-14 (M.D. Pa. Dec. 7, 2016) (audit opinion that company "maintained, in all material respects, effective internal control over financial reporting" governed by *Omnicare*); *Dempsey v. Vieau*, 2016 WL 3351081, at *3 (S.D.N.Y. June 15, 2016) (auditor's judgment was an opinion statement subject to *Omnicare*). Plaintiffs do not allege that Jones did not believe these opinions, nor that these statements contained within them an embedded false statement of fact. *SEPTA*, 2016 WL 7117455, at *13–14.

Nor can these opinions on internal controls qualify as a misleading omission under *Omnicare v. Laborers.* These statements were paired with extensive disclaimers, including: "Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements." (FirstEnergy Corp., Annual Report, (Form 10-K) ("10-K") (Feb. 21, 2017) at 120, Ex. 8; 10-K (Feb. 20, 2018) at 118, Ex. 9; 10-K (Feb. 19, 2019) at 87, Ex. 10; 10-K (Feb. 10, 2020) at 74, Ex. 11.) In light of these disclaimers, a reasonable investor would not take these generic opinion statements as guaranteeing the absence of any weakness in the Company's internal controls. *See Omnicare v. Laborers*, 575 U.S. at 190; *Tongue v. Sanofi,* 816 F.3d 199, 211-12 (2d Cir. 2016) ("caveats to the reliability of projections" undermined claim that opinion statement regarding timing of drug approval was actionable).

**Risk disclosures.** (Compl. ¶ 101.) One paragraph describes risk disclosures, which are also opinions. *Bondali v. YumA Brands, Inc.*, 620 Fed. Appx. 483, 491 (6th Cir. 2015) ("Risk disclosures … are inherently *prospective* in nature.") (emphasis in original); *Doshi*, 386 F. Supp.

24

3d at 821, 831 (risk factors were predictive opinions). Plaintiffs do not allege that Jones disbelieved these statements or that they contained false factual statements. *See Omnicare v. Laborers*, 575 U.S. at 184–86, 189. Nor, when read in context, are these risk disclosures misleading omissions. None of these disclosures have any connection to the Company's political activity. Furthermore, they are accompanied by disclaimers, including: "[We] are sometimes subject to investigations and inquiries by various state and federal regulators due to the heavily regulated nature of our industry. Any material inquiry or investigation could potentially result in an adverse ruling against us, which could have a material adverse impact on our financial condition and operating results." (10-K (Feb. 21, 2017) at 35, Ex. 8; 10-K (Feb. 20, 2018) at 35, Ex. 9; 10-K (Feb. 19, 2019) at 29, Ex. 10; 10-K (Feb. 10, 2020) at 25, Ex. 11.) Accordingly, a reasonable investor would not believe these disclosures guaranteed the Company would not be subject to future government investigations. *See Omnicare v. Laborers*, 575 U.S. at 190.

**D.  Jones's Statements In Codes Of Conduct And Other Aspirational Statements Are Not Actionable.**

Five of the twenty-four paragraphs are also not actionable because they are immaterial aspirational statements, statements in codes of conduct, or generic statements of legal compliance.

**Aspirational statements and codes of conduct.** (Compl. ¶¶ 104, 106-08.) In annual reports, Jones made aspirational statements that FirstEnergy's values included "Integrity," "Openness," and "Trust." (*Id.* ¶ 104.) Similarly, Jones adopted the FirstEnergy Code of Conduct, which "guided" employees to act lawfully and ethically. (*Id.* ¶ 106–08.) Such statements are merely "declaration[s] of corporate aspirations"—not guarantees of future adherence. *Bondali*, 620 Fed. Appx. at 490 ("To treat a corporate code of conduct as a statement of what a corporation will do, rather than what a corporation aspires to do, would turn the purpose of a

code of conduct on its head."). Courts routinely hold these statements are not actionable because no reasonable investor would rely on them "as a guarantee that [the company] would at all time remain in compliance with all applicable laws, rules, and regulations." *In re Transdigm*, 440 F. Supp. 3d at 766; *accord Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) ("general declarations about the importance of acting lawfully and with integrity" in code of ethics were "textbook example of 'puffery'").

   **Generic statements of legal compliance.** (Compl. ¶¶ 97–98.) Similarly, in SEC filings, Jones adopted statements to the effect that the Company complied with applicable laws. (*Id.*¶¶ 97–98.) Such generic statements of legal compliance are not actionable and do not create a duty to disclose specific alleged illegality. *See Dailey*, 551 Fed. App'x at 849 ("[A] generic claim of legal compliance, absent any specifics, does not form the basis for a misrepresentation … and does not require disclosure of allegedly illegal activities."); *Ind. State Dist. Council*, 583 F.3d at 947 (same); *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline*, 777 Fed. Appx. 726, 731 (5th Cir. 2019) (statements of "intention to comply with regulations" were immaterial "corporate cheerleading").

## IV.    THE RANDAZZO PAYMENT THEORY LACKS LOSS CAUSATION.

   To plead loss causation, plaintiffs must plausibly allege "a causal connection between the material misrepresentation and the [economic] loss." *Dura*, 544 U.S. at 342. To meet this pleading requirement, plaintiffs must allege facts showing the previously concealed truth behind a misrepresentation was revealed and caused the stock price to drop. *Id.* at 346–47. Plaintiffs must allege these facts for each theory of securities fraud asserted. *See, e.g., Lormand v. US Unwired, Inc.*, 565 F.3d 228, 260 (5th Cir. 2009) (dismissing as to theories lacking loss causation; "These alleged disclosures of relevant truth concern only subscriber growth and the sub-prime credit marketing strategy. . . . [P]laintiff fails to allege any disclosure that relates to

US Unwired's conversion to Type II affiliation or the transfer of core functions to Sprint."). Here, plaintiffs fail to plead loss causation as to the theory that the purported class was harmed by the alleged concealment and subsequent revelation of the Randazzo payment by First Energy.

Plaintiffs do not allege that any facts concerning the Randazzo payment were revealed before FirstEnergy filed its 10-K/A and 10-Q on November 19, 2020—four months after the class period ended. (*See* Compl. ¶ 189–93.) Because post-class period disclosures cannot retroactively cause class period losses, plaintiffs' allegations are inadequate to plead loss causation for this theory. *See Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*, *PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013) (no loss causation because alleged "revelation occurred more than a month *after* the close of the proposed class period"), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015); *Lloyd v. CVB Fin. Corp.*, 2012 WL 12883517, at *26 (C.D. Cal. Aug. 21, 2012) (same); *Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 243-44 (S.D.N.Y. 2006), *aff'd*, 216 F. App'x 14 (2d Cir. 2007) (same).

## V. PLAINTIFFS' SECURITIES ACT CLAIMS ALSO FAIL.

To maintain claims under Sections 11 and 12(a)(2) of the Securities Act, plaintiffs must allege with particularity that Jones made an actionable misrepresentation or omission. (*See* FirstEnergy Br. at Sec. V(B), pp. 62-65.) Because plaintiffs have failed to allege that Jones made any misleading statement, the Securities Act claims must be dismissed. *See* Section III, above.

The Section 12(a)(2) claim fails for the additional reason that plaintiffs do not adequately allege that Jones was a "statutory seller" who "solicited" their purchase of the FirstEnergy securities at issue. *See In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 868-69 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017). Section 12(a)(2) "liability cannot be imposed upon those who merely assist

27

in another's solicitation efforts," and pleading a claim requires plaintiffs to "allege that a defendant did more than merely sign a registration statement or prospectus." *In re Weight Watchers Int'l Inc. Sec. Litig.*, 2020 WL 7029134, at *7 (S.D.N.Y. Nov. 30, 2020) (citations and quotations omitted). In addition, absent facts showing the "role played . . . in the solicitation of the securities at issue," allegations that "high ranking corporate officers . . . made material misrepresentations" do not meet this requirement. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 720 (S.D.N.Y. 2013).

Thus, plaintiffs' allegation that Jones merely signed the registration statement fails to establish, as plaintiffs must, that Jones was a statutory seller. (Compl. ¶ 278.) *See, e.g., In re EveryWare*, 175 F. Supp. 3d at 868-69 (dismissing Section 12(a)(2) claim; "signing and participating in the preparation of the registration statement" not enough); *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996), *superseded by statute on other grounds as stated in Silverstr and Invs. v. AMAG Pharm., Inc.*, 707 F.3d 95, 106 (1st Cir. 2013); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 636 (3d Cir. 1989); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536–37 (9th Cir. 1989); *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 646 (S.D.N.Y. 2017) (all same).

Moreover, even assuming Jones was a statutory seller (he was not), plaintiffs do not allege the privity required to maintain a Section 12(a)(2) claim. By its terms, Section 12(a)(2) requires a direct connection between the plaintiff-buyer and the defendant-seller because it makes the defendant "liable . . . to the person purchasing such security from him." 15 U.S.C. §77l(a)(2); *see Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) ("Congress's decision to use 'from him' in Section 12 but not in Section 11 must mean that

Congress intended a different meaning in the two sections."). For this reason, plaintiffs' Section 12(a)(2) claim fails as to Jones.

## VI.     PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY CLAIMS.

Because plaintiffs' predicate Exchange Act and Securities Act claims fail, the control person claims under Section 20(a) and Section 15 also fail. *See In re EveryWare*, 175 F. Supp. 3d at 861, 873.

## CONCLUSION

For the foregoing reasons, this Court should grant this motion, and dismiss the claims against Charles E. Jones with prejudice.

4828-7182-5642.9

Dated: May 18, 2021                    Respectfully submitted,

*/s/ Daniel R. Warren*
Daniel R. Warren (0054595)
Carole S. Rendon, Trial Attorney (0070345)
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
216-621-0200
Fax: 216-696-0740
dwarren@bakerlaw.com
crendon@bakerlaw.com

Albert G. Lin (0076888)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
614-228-1541
Fax: 614-462-2616
alin@bakerlaw.com

Justin R. Donoho (*Pro Hac Vice*)
Baker & Hostetler LLPO
One North Wacker Drive, Suite 4500
Chicago, IL 60606
312-416-6200
Fax: 312-416-6201
jdonoho@bakerlaw.com

F. Joseph Warin (*Pro Hac Vice*)
William Scherman (*Pro Hac Vice*)
Jason J. Mendro (*Pro Hac Vice*)
Christopher W.H. Sullivan (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, DC 20036-5306
202.955.8500
Fax: 202.467.0539
fwarin@gibsondunn.com
wscherman@gibsondunn.com
jmendro@gibsondunn.com
csullivan@gibsondunn.com
*Attorneys for Defendant Charles E. Jones*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

/s/ *Albert G. Lin*
Albert G. Lin (0076888)

4828-7182-5642.9