# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re FirstEnergy Corp. Securities Litigation, | :<br>: Case No. 2:20-cv-03785<br>:<br>: CHIEF JUDGE ALGENON L. MARBLEY<br>:<br>: Magistrate Judge Jolson<br>: |

## OPINION AND ORDER

Currently before the Court is a Motion to Partially Lift the PSLRA Discovery Stay by Lead Plaintiff Los Angeles County Employees Retirement Association ("LACERA"). (ECF No. 145). Defendants[1] have responded in opposition (ECF No. 154), and LACERA has replied to their response (ECF No. 155). For the reasons articulated below, this Court **GRANTS** LACERA's motion.

## I. BACKGROUND

### A. Facts

This securities class action has been brought against FirstEnergy, certain current and former Company insiders, and the investment banks that underwrote two FirstEnergy debt offerings, for their roles in a large bribery and money-laundering scandal that implicated Ohio politicians. (Pl.'s Consol. Compl. ¶¶ 1–3, ECF No. 72). FirstEnergy shareholders claim massive losses precipitated by the Company's misconduct. (*Id.* ¶ 13).

---

[1] Paul T. Addison; Michael J. Anderson; Steven J. Demetrious; FirstEnergy Corp. ("FirstEnergy" or the "Company"); Julia Johnson; Jason Lisowski; Donald T. Misheff; Thomas N. Mitchell; James F. O'Neil, III; Christopher D. Pappas; James F. Pearson; Sandra Pianalto; Luis A. Reyes; George Smart; Steven E. Strah; K. Jon Taylor; Jerry Sue Thornton; and Leslier Turner (together, "Defendants" or "FirstEnergy Defendants").

FirstEnergy is an Ohio-based utility company that generates and transmits electricity to approximately 6 million customers in seven states throughout the Midwest and Mid-Atlantic regions. (*Id.* ¶¶ 2, 124). According to the Complaint, FirstEnergy sought to procure legislative and regulatory "solutions" from Ohio regulators to offset significant losses the Company incurred from two aging, financially unsustainable Ohio nuclear power plants. (*Id.* ¶ 5). Rather than pursue these solutions legitimately, the Company allegedly engaged in an illicit multi-year campaign to funnel secretly tens of millions of dollars in bribes to Ohio legislators in exchange for passing House Bill 6 ("HB6"), a $1.3 billion bailout funded by Ohio ratepayers. (*Id.* ¶¶ 5, 8).

The campaign began in late 2016, when FirstEnergy faced significant financial strain due to the two obsolete plants, and the Company announced it was pursuing "legislative or regulatory efforts" to resolve the problem. (*Id.* ¶ 44). FirstEnergy met with Larry Householder ("Householder") in January 2017, shortly after he won back his seat in the Ohio House of Representatives, during a flight on a private FirstEnergy jet to former President Trump's inauguration. (*Id.* at ¶ 65). The Company promised to give millions of dollars to Householder to support his bid for Speakership in exchange for his securing the passage of HB6. (*See id.* ¶ 8). Householder's strategist, Jeff Longstreth, established a 501(c)(4) entity called "Generation Now," and FirstEnergy and its subsidiaries began making clandestine quarterly payments of $250,000 to it. (*Id.* ¶ 21). Longstreth has since pled guilty to his involvement in the criminal conspiracy "to conceal the nature, source, ownership, and control of payments made by [FirstEnergy] to GENERATION NOW . . . relating to the passage and preservation of [HB6] that would go into effect and save the operation of [the Nuclear Plants]." (*Id.* ¶ 69). Lobbyist Neil Clark described the appeal of using 501(c)(4) organizations: "Nobody knows the money goes into [Householder's]

2

account . . . it's not recorded." (*Id.* ¶ 233). In 2017 and 2018, FirstEnergy contributed nearly $3 million to Householder via Generation Now and other dark money groups. (*See id.* ¶ 67).

Householder's bid for Speaker was successful, and he introduced HB6 in the Ohio state legislature soon thereafter. (*Id.* ¶ 71). About two weeks after HB6 was officially introduced, FirstEnergy made a $1.5 million payment to Householder organizations. (*Id.* ¶ 67). In May 2019, FirstEnergy made an additional $8 million payment. (*Id.*). House Bill 6 effectively prevented the shutdown of FirstEnergy's two money-losing Ohio nuclear plants by granting a ratepayer-funded subsidy to "clean" energy generation. (*Id.*). FirstEnergy was the primary beneficiary of the bill; it was afforded $1.3 billion in ratepayer-funded subsidies for its nuclear plants. (*Id.* ¶ 74). Additionally, FirstEnergy paid $7 million to buy support in the Ohio Senate for a lucrative "decoupling" provision that was added to HB6 and provided another $100 million to FirstEnergy annually, also at ratepayers' expense. (*Id.* ¶ 75). The Company achieved its aim in July 2019, when HB6 was passed and signed into law. (*Id.* ¶ 78).

The U.S. Attorney's Office for the Southern District of Ohio charged Householder and four other accomplices on July 21, 2020 (the "Criminal Complaint"). (*Id.* ¶ 8). The Criminal Complaint detailed how FirstEnergy (initially identified as "Company A") and its executives "illegally funneled $60 million into the hands of corrupt politicians to get HB6 passed into law and avoid its repeal." (*Id.*). The next day, on July 22, 2020, FirstEnergy stock price fell 45%, causing billions of dollars of investor loss. (*Id.* ¶ 9).

The Criminal Complaint also precipitated a host of criminal and civil investigations, lawsuits, regulatory reviews, and other proceedings. (*Id.* ¶ 239). In addition to the Criminal Complaint and the case sub judice, several derivative actions have been filed, both in the Northern

District and the Southern District of Ohio.[2] The Southern District cases have been consolidated into a single action (the "Derivative Action"). *See Emps. Ret. Sys. of the City of St. Louis v. Jones*, 2:20-cv-4813 (S.D. Ohio) (ECF No. 44). A ratepayer class action alleging a RICO conspiracy and other violations was also filed in the Southern District of Ohio (the "RICO Class Action"). *See Smith v. FirstEnergy Corp.*, No. 2:20-cv-03755 (S.D. Ohio) (ECF No. 1). Additionally, the Ohio Attorney General and the cities of Cincinnati and Columbus successfully secured a preliminary injunction blocking the HB6 nuclear subsidies in December 2020. *See Ohio v. FirstEnergy*, No. 20-CV-06281 (Ct. C.P. Franklin Cnty. Dec. 21, 2021).

### B. Procedural History

On July 28, 2020, Diane Owens filed a securities class action against FirstEnergy on behalf all persons and entities that purchased or acquired FirstEnergy common stock between February 21, 2017 and July 21, 2020 (the "Class Period"). (No. 2:20-cv-03785, ECF No. 1). On August 21, 2020, Chana Frand filed an additional class action against FirstEnergy on behalf of persons and entities that purchased or acquired securities of any type during the Class Period. (ECF No. 1). The actions assert that FirstEnergy and certain current and former executives (collectively, "Defendants") defrauded FirstEnergy investors in violation of § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 14 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, promulgated thereunder. (17 C.F.R. § 240.10b-5). On November 23, 2020, this Court consolidated the two cases, appointed LACERA as Lead Plaintiff, and approved of its selection of counsel. (ECF No. 65).

---

[2] *Miller v. Anderson*, No. 5:20-cv-01743 (N.D. Ohio); *Stavely v. Anderson*, No. 2:20-cv-04598 (S.D. Ohio); *Emps. Ret. Sys. of the City of St. Louis v. Jones*, No. 2:20-cv-04813 (S.D. Ohio); *Beck v. Anderson*, No. 2:20-cv-05020 (S.D. Ohio); *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Anderson*, No. 2:20-cv-05128 (S.D. Ohio); *Sarnelli v. Anderson*, No. 2:20-cv-05192 (S.D. Ohio); and *Mass. Laborers Pension Fund v. Jones*, No. 2:20-cv-05237 (S.D. Ohio).

LACERA filed a Consolidated Complaint on February 26, 2021. (ECF No. 72). On April 7, 2021, LACERA filed a Motion to Partially Lift the PSLRA Discovery Stay. (ECF NO. 145). Defendants responded in opposition on April 28, 2021, and LACERA replied on May 12, 2021. (ECF Nos. 154, 156). Accordingly, this matter is ripe for review.

Subsequently, some Defendants filed a Motion to Dismiss for Failure to State a Claim on May 18, 2021. (ECF No. 160). Several other Defendants filed separate motions to dismiss, including Robert Reffner, John Judge, Michael Dowling, Ty Pine, Dennis Chack, Donald Schneider, Barclays Capital Inc., Leila Vespoli, and Charles E. Jones. (ECF Nos. 160–74). These motions are not yet before the Court; Magistrate Judge Jolson has ordered LACERA to respond by July 2, 2021 and Defendants to reply by August 2, 2021. (ECF No. 142).

## II. LAW & ANALYSIS

The Private Securities Litigation Reform Act ("PSLRA") provides for an automatic stay of discovery "during the pendency of any motion to dismiss" in a private securities fraud action. 15 U.S.C. § 78u-4(b)(3)(B); *see also Ross v. Abercrombie & Fitch Co.*, No. 2:05cv819, 2006 WL 2869588, at *1 (S.D. Ohio Oct. 5, 2006). Congress enacted the PSLRA to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that the corporate defendants will settle those actions rather than bear the high costs of discovery, or that the plaintiffs will find during discovery some sustainable claim not alleged in the complaint." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, MDL No. 1725, 2007 WL 518626, at 6 (E.D. Mich. Feb. 15, 2007) (internal citations omitted); *see also In re Worldcom, Inc. Sec. Litigation*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (noting the purpose of the PSLRA discovery stay is to prevent plaintiffs from filing a complaint to initiate a "fishing expedition" in search of sustainable claims). The statute does, however, expressly provide courts with discretion to allow limited discovery during the stay

5

"upon motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id.*

LACERA maintains that its request is sufficiently particularized and that it will face undue prejudice without a partial lift on the PSLRA discovery stay.

### A. Particularized Discovery

As a preliminary matter, this Court must determine whether the limited discovery LACERA seeks is sufficiently particularized. Under 15 U.S.C. § 78u-4(b)(3)(B), a discovery request is "particularized" if "the party seeking discovery under the exception . . . adequately specifies the target of the requested discovery." *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 WL 2892945, at *2 (S.D. Ohio July 15, 2011) (internal quotations omitted) (quoting *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002)). Whether a discovery request is sufficiently particularized "depends on the nature of the underlying litigation." *Nitchting*, 2011 WL 2892945, at *2 (internal quotations omitted) (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

Here, LACERA asks the Court to lift the PSLRA discovery stay with respect to the following items:

> (a) . . . all documents produced, provided or received [by Defendants] in the course of litigation against FirstEnergy arising out of the HB6 bribery scheme, including any deposition testimony;
>
> (b) . . . all documents that [D]efendants have produced or provided to, or received from, any regulatory or government agency, federal or state law enforcement agency, or legislative body or representative in connection with the HB6 bribery scheme, including any deposition testimony.

6

(ECF No. 145-10). In other words, LACERA requests those materials that have already been produced in legal matters related to the facts of this case. LACERA argues that its request pertains to a "clearly defined universe of documents" and imposes only a small burden on Defendants.

Courts regularly find that specific requests for already-produced discovery satisfy the particularity requirement of the exception to a PSRLA discovery stay. *In re Delphi*, 2007 WL 518626, at *6 (finding that the particularity requirement is satisfied when the plaintiffs "only request[ed] the production of materials that have already been assembled and produced to [the company's] internal investigators and the federal authorities"); *In re Royal Ahold*, 220 F.R.D. at 250 (concluding plaintiffs satisfied the particularly requirement because their motion "describes a 'clearly defined universe of documents,' and the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities"); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (lifting stay as to materials already made available to numerous government agencies); *see also In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (lifting a PSLRA discovery stay in a prior securities fraud case against FirstEnergy partly because the Company "cannot . . . allege any burden from providing documents that it has already reviewed and compiled."). Here, LACERA's specific request for already-produced discovery is sufficiently particularized.

The nature of the underlying litigation also supports the Court's finding that LACERA has articulated a sufficiently particular request. Where, as here, plaintiffs allege a company's fraudulent activity spans multiple years and results in significant shareholder loss, district courts within the Sixth Circuit find that particularized discovery requests are warranted, even when they are voluminous. *In re Delphi Corp.*, 2007 WL 518626, at *5–6. In *Delphi*, plaintiffs requested a

partial lift on a PSLRA stay in order to produce evidence that had already been produced to federal authorities, including all documents, records, investigation results, emails, and database search results produced in conjunction with the SEC, U.S. Postal Inspectors, Department of Justice, and Federal Bureau of Investigation. *Id.* at *3. Because plaintiffs had filed a lengthy complaint detailing "alleged fraudulent activities span[ning] a period of more than five years" that "inflicted billions of dollars of losses on investors," the court found "the volume of requested documents [was] not unreasonable." *Id.* at *5; *see also in re Royal Ahold*, 220 F.R.D. at 250 (finding that the "volume of requested documents [was] not unreasonable in light of" the lengthy complaint and allegations of multibillion-dollar harm). Similarly, LACERA has filed a 130-page Consolidated Complaint that, along with 37 exhibits, alleges years of fraudulent activity on the part of the Company and billions of dollars of shareholder loss. The allegations in LACERA's Complaint also overlap significantly with the extensive allegations laid out in the Criminal Complaint. Accordingly, although LACERA's request may elicit a high volume of documents, its request is warranted.

Furthermore, discovery in other cases against FirstEnergy has already progressed. The criminal investigations into the bribery scandal, which have resulted in numerous indictments, have yielded "voluminous" discovery, as well as the guilty pleas of Jeffrey Longstreth, Juan Cespedes, and Generation Now, Inc. *United States v. Householder*, No. 1:20-cr-00077 (S.D. Ohio) (ECF Nos. 63–64, 78). Likewise, discovery in the related RICO Class Action is progressing, after the defendants' motion to stay was denied in February 2021. *See Smith v. FirstEnergy Corp.*, No. 2:20-cv-03755 (S.D. Ohio) (*See* ECF Nos. 39, 47). Discovery will also now advance in the related Derivative Action. *Emps. Ret. Sys. of the City of St. Louis v. Jones*, 2:20-cv-04813 (S.D. Ohio)

8

(ECF No. 95). Thus, under these circumstances, the Court finds that LACERA's request satisfies the threshold requirement of particularity.

### B. Undue Prejudice

Having found that LACERA's request is sufficiently particularized, the Court next considers whether LACERA has demonstrated undue prejudice. "District courts have construed undue prejudice to mean improper or unfair treatment amounting to something less than irreparable harm." *Nichting*, 2011 WL 2892945, at *3 (quoting *In re Bank of America Corp. Sec. Litig.*, No. 09MDL2058, 2009 U.S. Dist. LEXIS 108322, at *6 (S.D.N.Y. Nov. 16, 2009)). This Court reviews the "broad, undefined terminology of this provision in light of Congress's purpose in passing the PSLRA." *In re Royal*, 220 F.R.D at 251. Accordingly, when a plaintiff files a "strike suit or fishing expedition of the sort Congress sought to discourage," delay in discovery cannot cause undue prejudice, since the delay is exactly what Congress intended to achieve. *See id.* On the other hand, when a plaintiff's case is clearly "far from frivolous," the Court may determine that discovery is necessary. *Id.* (finding that the complaint, which was "supported by quotations [and] citations from documentary evidence," including the Company's own admissions, indicated the "apparent strength" of plaintiff's case and weighed in favor of the need for discovery). As previously described, here LACERA's Consolidated Complaint makes specific and detailed allegations that are supported by the Criminal Complaint and FirstEnergy's own admissions and press statements. Although the question of whether LACERA has adequately stated its claims is not at issue now, the Court is persuaded by the facts and circumstances that this case is far from frivolous.

Undue prejudice has also been found when the plaintiff seeks to discover documents that have already been produced to various government agencies, because "maintaining [a] discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA." *FirstEnergy*, 229 F.R.D. at 545 ("Without discovery of documents already made

available to government entities, Plaintiffs would be unfairly disadvantaged pursuing litigation and settlement strategies."); *see also Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss."); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV. A. H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002) (""[T]he PSLRA's discovery stay was designed to prevent fishing expeditions in frivolous securities lawsuits and was not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case.") (internal quotations omitted).

This is especially true where the plaintiff may be "prejudiced by [its] inability to make informed decisions about [its] litigation strategy in a rapidly shifting landscape." *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004). The prejudice a plaintiff faces must be unique, as opposed to the prejudice that a "garden variety" case presents. *In re Royal*, 2006 WL 2869588, at *2–3 ("[L]ifting a stay of discovery must be premised upon some showing of prejudice which is above and beyond the prejudice which a part suffers simply from being denied access to discovery materials early in a case."). For example, when a plaintiff "would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape," a lift or partial lift of a discovery stay is warranted. *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. at 545 (citing *In re Worldcom*, 234 F. Supp. 2d at 305). In such a situation, the risk of undue prejudice is magnified when a plaintiff "would essentially be the only major interested party in the criminal and civil proceedings against [the company] without access to documents that currently form the core of those proceedings." *Id.; see also Delphia*, 2007 WL 518626, at *8; *Turocy v. El*

10

*Pollo Loco*, 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017) (granting "discovery of documents already made available to federal authorities and to interested parties" in a related action because otherwise plaintiffs "would be unfairly disadvantaged in pursuing litigation and settlement strategy").

LACERA submits that it faces such undue prejudice here, absent the access to discovery Defendants have already produced in related criminal and civil actions and investigations. As LACERA observes, without key documents that have already been produced to government investigators and that soon will be produced by plaintiffs in the RICO Class Action and the Shareholder Action, LACERA could suffer a severe disadvantage in formulating its litigation and settlement strategies—particularly if FirstEnergy intends to settle cases stemming from the bribery scheme quickly, as public reports indicate. (Polychron Decl. Ex. B, ECF No. 145-4). Additionally, without allowing access to already-produced discovery, LACERA could find itself in a significantly different position from most of the other litigants related to this matter.

This case presents additional circumstances that add to the weight of this conclusion. First, one of the key witnesses indicted in the Criminal Complaint, Neil Clark, died from a gunshot wound on or about March 15, 2021. (ECF No. 145 at 3; Polychron Decl. Ex. E, ECF No. 145-7). Mr. Clark was reportedly in the process of publishing a "tell all" book about the bribery scheme at the time of his death. (*Id.*). Before his death, Mr. Clark was also a confidential source for an Ohio reporter, providing "background and context" about the scandal. (ECF No. 145 at 3; Polychron Decl. Ex. F, ECF No. 145-8). Second, FirstEnergy terminated and sued a whistleblower who produced "57 unique files of FirstEnergy's confidential information relating to internal controls" to the SEC. *FirstEnergy Corp. v. Pircio*, No. 1:20-cv-01966-JPC (N.D. Ohio) (ECF No. 14 at 10). As Judge J. Philip Calabrese recently stated in a Show Cause Opinion, "the Court has a grave

11

concern that the actions of FirstEnergy . . . used the Court to obstruct justice, engage in witness tampering, or otherwise interfere with ongoing criminal and civil investigations." *FirstEnergy Corp. v. Pircio*, 2021 WL 1588705, at *4 (N.D. Ohio Apr. 23, 2021) (noting that the court did not draw a conclusion on these issues). Together, these events could have a chilling effect on other potential witnesses. LACERA has therefore demonstrated that is faces unique undue prejudice without having access to documents that have already been produced in other proceedings.

For these reasons, it appears that LACERA faces a risk of undue prejudice within the meaning of the PSLRA.

### III. CONCLUSION

In accordance with the above, the Court **GRANTS** LACERA's Partial Motion to Lift the PSLRA Discovery Stay. (ECF No. 145).

**IT IS SO ORDERED.**

                                             **ALGENON L. MARBLEY**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 14, 2021**