**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, | Case No. 2:20-cv-03785-ALM-KAJ |
| This document relates to: | Chief Judge Algenon L. Marbley |
| ALL ACTIONS. | Magistrate Judge Kimberly A. Jolson |

**THE FIRSTENERGY DEFENDANTS'**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED**
**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Geoffrey J. Ritts, Trial Attorney (0062603)
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  gjritts@jonesday.com
Email:  rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH  43215-2673
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
Email:  mpduffy@jonesday.com
Email:  jbaumann@jonesday.com

*Attorneys for Defendants FirstEnergy Corp.,*
*Steven E. Strah, K. Jon Taylor, Jason J.*
*Lisowski, George M. Smart, Paul T. Addison,*
*Michael J. Anderson, Steven J. Demetriou,*
*Julia L. Johnson, Donald T. Misheff, Thomas*
*N. Mitchell, James F. O'Neil III, Christopher*
*D. Pappas, Sandra Pianalto, Luis A. Reyes,*
*Jerry Sue Thornton, and Leslie M. Turner*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... vi

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    The Entire Complaint Is Subject To Heightened Pleading Standards ...................... 2

All claims are subject to heightened pleading standards.  Plaintiffs do not dispute that the Exchange Act claims must satisfy both the PSLRA and Rule 9(b).  The Securities Act claims are likewise subject to Rule 9(b) because they sound in fraud.  *Davisson v. Ford Motor Co.*, 2014 WL 4377792, at \*8 (S.D. Ohio Sept. 3, 2014).  The Sixth Circuit applies Rule 9(b) where, like here, the Securities Act claims are based on the same factual allegations as the Exchange Act claims.  *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009).

II.   The Complaint Fails To State A Claim As To The 2017-2018 Period ........................ 4

A.    The Complaint Fails To State A Claim For Scheme Liability As To
      The 2017-2018 Period ................................................................................... 5

      1.    The Complaint Fails To Plead That The Alleged Scheme
            Occurred "In Connection With" The Purchase Or Sale Of Any
            Security ............................................................................................... 5

It is not enough for Plaintiffs to allege that a purported scheme impacted the price of a company's securities or had consequences to investors.  Instead, the scheme must involve acts directly relating to the sale of securities or bearing upon a specific securities transaction.  *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 249 (S.D.N.Y. 2018).  Because the Complaint alleges no specific facts about any market activity by any Defendant that was part of the supposed scheme, the scheme liability claim must be dismissed.

      2.    The Complaint Fails To Plead Reliance On Any Inherently
            Deceptive Conduct ............................................................................. 8

Reliance is an essential element of a scheme liability claim.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008).  Courts routinely reject scheme liability claims for lack of reliance where the alleged scheme was not publicly disclosed.  *Id.* at 161.  Under *Stoneridge*, the viability of which the Supreme Court acknowledged in its 2019 decision in *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1103-04 (2019), the Complaint's alleged deceptive acts concealed from the investing public are too remote to satisfy the requirement of reliance.

      3.    The Complaint Fails To Plead With Particularity That Every
            Exchange Act Defendant Knowingly Engaged In An Inherently
            Deceptive Act .................................................................................... 14

# TABLE OF CONTENTS
(continued)

Page

The Complaint must, but does not, plead with particularity that every Exchange Act Defendant acted with actual knowledge or how each Defendant was involved in the scheme. *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 986 (8th Cir. 2012); *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 909, 911 (S.D. Ohio 2008) ("*Nat'l Century II*").

**B.**    **The Complaint Fails To State A Claim For Misstatement Liability During The 2017-2018 Period** ......................................................................... **15**

  **1.**    **The Complaint Fails To Plead Contemporaneous Falsity As To Statements In 2017 And 2018** ............................................................ **15**

Plaintiffs contend that Defendants' acts in subsequent years are relevant to their conduct in 2017 and 2018, but there is no "fraud by hindsight" under the securities laws. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991); *Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014) (both cited at Br. at 24). A statement is actionable only if it was false or misleading at the time it was made, and the Complaint's few allegations that do relate to 2017 or 2018 do not show with particularity that any statement from that period was false or misleading when made. HB6 was not introduced until 2019, and Plaintiffs do not dispute that the Complaint fails to identify any specific law, provision, or regulation that the Defendants violated in 2017 or 2018, as this Circuit requires. *Dailey*, 551 F. App'x at 849.

  **2.**    **The Complaint Fails To Plead Falsity As To Statements Of Opinion Made in 2017 Or 2018** ............................................................ **19**

Opinions can give rise to liability only if the speaker did not hold the belief professed or had specific contradictory information. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183-97 (2015) ("*Omnicare III*"). The alleged statements in 2017 and 2018 about assessments of compliance efforts, the efficacy of internal controls, and corporate aims and policies are all opinions, and the Complaint pleads no specific facts showing that Defendants did not believe them or that the opinions lacked a reasonable basis. *Id.* at 179-80.

  **3.**    **The Complaint Fails To Plead An Actionable Omission In 2017 Or 2018** ......................................................................................................... **21**

The securities laws do not impose a freestanding legal duty to disclose uncharged wrongdoing. Instead, disclosure is required only when necessary to make statements made, in light of the circumstances under which they were made, not misleading. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Because the Complaint fails to plead with particularity a scheme or other illegal acts in 2017 or 2018, it likewise fails to state a claim for not disclosing the purported scheme or illegal acts. *Dailey*, 551 F. App'x at 846.

**TABLE OF CONTENTS**
(continued)

Page

III. **The Complaint Fails To Plead A Strong Inference Of Scienter** ................................. **23**

    A. **To Plead Scienter, The Complaint Must Plead Specific Facts As To Each Exchange Act Defendant's Actual Knowledge** ....................................... **23**

The PSLRA requires a complaint to state with particularity facts giving rise to a strong inference of scienter. 15 U.S.C. § 78u-4(b)(2). The inference must be more than merely plausible or reasonable. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007). Rather, it must be strong and cogent and at least as compelling as any opposing inference of nonfraudulent intent. *Id.* The Complaint does not contain particularized factual allegations giving rise to a strong inference that each Exchange Act Defendant had actual knowledge of fraud.

    B. **The Allegations Purportedly Showing Scienter Fall Short** ............................ **24**

The Complaint lacks particularized facts showing that each Exchange Act Defendant actually knew of the purported scheme or that the challenged statements were false or misleading when made. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 797 (S.D.N.Y. 2018) (cited at Br. at 34). Allegations based on a defendant's position at the company are precisely the type that courts reject as insufficient. *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 828 (8th Cir. 2003).

    C. **The Complaint's Failure To Plead Scienter As To The 2017-2018 Period Is Particularly Glaring** ................................................................. **26**

Of the few allegations in their scienter discussion that Plaintiffs actually address, none establish scienter during 2017 or 2018, far less as to each and every Exchange Act Defendant. *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 972 n.10 (S.D. Ohio 2009).

    D. **The St. Louis Decision Does Not Dictate The Outcome On The Scienter Inference** ................................................................................. **27**

This Court's decision in *St. Louis* does not control the analysis here. In *St. Louis*, this Court held that scienter is not an element of a Section 14(a) claim, but that mere negligence is enough. *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 1890490, at *13 (S.D. Ohio May 11, 2021). The elements of a claim under Rule 10b-5 are distinct from those of a Section 14(a) claim, and do require scienter. *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009).

IV. **The Complaint Fails To State A Claim Against Strah And Taylor** .......................... **28**

    A. **There Are No Particularized Facts To State A Claim As To Strah** .............. **28**

        1. **The Complaint Fails To Plead Scienter As To Strah** .......................... **29**

Allegations relating to Strah's position are insufficient to plead scienter, as are allegations relating to his opinion statement about the Company's "good

# TABLE OF CONTENTS
(continued)

Page

regulatory relationships." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004); *Konkol*, 590 F.3d at 397; *Huntington*, 674 F. Supp. 2d at 972 n.10.  The Complaint is devoid of facts connecting Strah with the contributions to Generation Now or showing that he knew the contributions were improper.  There can be no scienter inference from these allegations, far less a strong, cogent one.  *Konkol*, 590 F.3d at 402.

2.      **The Complaint's Other Failures Require Its Dismissal As To Strah** ..................................................................................... 32

Plaintiffs do not dispute that the Complaint fails to plead particularized facts about Strah's participation in an inherently deceptive act, as is required to state a scheme liability claim.  *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 2006 WL 469468, at *21 (S.D. Ohio Feb. 27, 2006) ("*Nat'l Century I*").  Moreover, Strah's opinion about the quality of FirstEnergy's relationship with its regulators is an inactionable opinion, as the Complaint fails to allege particularized facts showing that Strah did not honestly believe that the relationship was "good" or knew specific contradictory facts.  *Omnicare III*, 575 U.S. at 183.  Likewise, Plaintiffs' attempt to hold Strah liable for signing certifications about internal controls during the class period also falls short.  The statements in those certifications are opinions, and the Complaint fails to allege particularized facts showing that Strah did not honestly believe that the controls were effective when he signed the certifications or that he knew of contradictory information.  *Omnicare III*, 575 U.S. at 183-97; *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 736 (E.D. Mich. 2003).

B.   **There Are No Particularized Facts To State A Claim As To Taylor** ............ 33

1.      **The Complaint Fails To Plead Scienter As To Taylor** ........................ 34

Allegations relating to Taylor's position are insufficient to plead scienter.  *PR Diamonds*, 364 F.3d at 688; *Konkol*, 590 F.3d at 397; *Huntington*, 674 F. Supp. 2d at 972 n.10.  The Complaint's allegations regarding Taylor's statements after the class period also fail to plead scienter.  That Taylor acknowledged past violations of the Company's policies by ex-employees is not a particularized fact showing that, at any earlier time, he actually knew about any violation of FirstEnergy policies.  *Konkol*, 590 F.3d at 402.

2.      **The Complaint's Other Failures Require Its Dismissal As To Taylor** ..................................................................................... 36

Taylor is not even alleged to have been a participant in the purported scheme, requiring dismissal of the scheme liability claim against him.  *Nat'l Century II*, 553 F. Supp. 2d at 909.  The Complaint does not allege particularized facts showing that any alleged misstatement was false when made.  The Complaint did

**TABLE OF CONTENTS**
(continued)

Page

not allege that Taylor certified any SEC filings during the putative class period, and Plaintiffs are not permitted to rewrite their Complaint now.

**V.**     **The Complaint Fails To State A Claim As To The 2019-2020 Period** ...................... **37**

     **A.**     **The Complaint's Failures To State A Claim As To The 2017-2018 Period Also Apply To The 2019-2020 Period** .................................................... **37**

The Complaint fails to plead specific facts to state a scheme liability claim in 2019 and 2020 because the element of reliance is lacking and the "in connection with" requirement is not satisfied. *Cannavest Corp.*, 307 F. Supp. 3d at 249. Most of the challenged statements in 2019 and 2020 are opinions and Plaintiffs do not identify specific facts showing that any FirstEnergy Defendant did not actually believe the opinions or lacked a reasonable basis for believing them. *Omnicare III*, 575 U.S. at 183-97. Moreover, the Complaint fails to identify any specific law, provision, or regulation that the Defendants violated, as this Circuit requires, *Sinay*, 948 F.2d at 1042; *Dailey*, 551 F. App'x at 849, and the Complaint fails to plead scienter as to every Exchange Act Defendant in 2019 and 2020, *Nat'l Century II*, 553 F. Supp. 2d at 909; *Tellabs*, 551 U.S. at 309.

     **B.**     **The Section 12(a)(2) Claim Against The Non-Management Directors Must Be Dismissed** .......................................................................................... **39**

The Section 12(a)(2) claim against the non-management directors must be dismissed because they were not statutory sellers. *In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 859 (S.D. Ohio 2016). Plaintiffs' allegations—that the directors signed the registration statement or were named as directors in the offering documents—are insufficient. *Id.* at 868-69.

**VI.**     **The Complaint Fails To State A Claim For Control Liability**.................................... **40**

The Complaint's failure to state a claim for primary liability requires dismissal of the claims under § 20(a) of the Exchange Act and § 15 of the Securities Act. *IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325, 328 (6th Cir. 2017).

**CONCLUSION** ...................................................................................................................... **40**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albert Fadem Tr. v. Am. Elec. Power Co., Inc.*,
  334 F. Supp. 2d 985 (S.D. Ohio 2004) ...................................................................36

*Allstate Ins. Co. v. Glob. Med. Billing, Inc.*,
  520 F. App'x 409 (6th Cir. 2013) ..........................................................................14

*Bondali v. Yum! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) ..........................................................................22

*CadleRock Joint Venture, L.P. v. Royal Indemnity Co.*,
  872 F. Supp. 2d 592 (N.D. Ohio 2012) ..................................................................16

*Chamberlain v. Reddy Ice Holdings, Inc.*,
  757 F. Supp. 2d 683 (E.D. Mich. 2010) .................................................................30

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
  865 F. Supp. 2d 811 (W.D. Mich. 2012) ................................................................20

*City of Providence v. Bats Glob. Markets, Inc.*,
  878 F.3d 36 (2d Cir. 2017)......................................................................................7

*Commc'ns Workers of Am. Plan for Emps. Pensions & Death Benefits v. CSK
  Auto Corp.*,
  525 F. Supp. 2d 1116 (D. Ariz. 2007) ...................................................................37

*Dailey v. Medlock*,
  551 F. App'x 841 (6th Cir. 2014) .....................................................................17, 18, 21, 22

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018).....................................................................25

*Davisson v. Ford Motor Co.*,
  2014 WL 4377792 (S.D. Ohio Sept. 3, 2014) ..........................................................2

*Emps. Ret. Sys. of City of St. Louis v. Jones*,
  2021 WL 1890490 (S.D. Ohio May 11, 2021) ............................................... *passim*

*Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*,
    2018 WL 7892222 (S.D. Ohio Mar. 30, 2018)...........................................................................9

*Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*,
    501 F. Supp. 3d 503 (S.D. Ohio 2020) ....................................................................................9

*FirstEnergy Corp. Securities Litigation*,
    316 F. Supp. 2d 581 (N.D. Ohio 2004)...............................................................................4, 1

*Forman v. Meridian Bioscience, Inc.*,
    367 F. Supp. 3d 674 (S.D. Ohio 2019) ..................................................................................22

*Frank v. Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) .........................................................................................25, 26

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
    2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011) ....................................................................8

*Gordon v. Royal Palm Real Est. Inv. Fund I*,
    2020 WL 2836312 (E.D. Mich. May 31, 2020)....................................................................12

*Grae v. Corr. Corp. of Am.*,
    2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017)....................................................................5

*Hawaii Ironworkers Annuity Tr. Fund v. Cole*,
    296 F.R.D. 549 (N.D. Ohio 2013) ...................................................................................7, 13

*Heinert v. Bank of Am. N.A.*,
    835 F. App'x. 627 (2d Cir. 2020) .........................................................................................28

*Huff v. FirstEnergy Corp.*,
    972 F. Supp. 2d 1018 (N.D. Ohio 2013)...............................................................................19

*I.B.E.W. v. Limited Brands, Inc.*,
    788 F. Supp. 2d 609 (S.D. Ohio 2011) .................................................................................31

*IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*,
    849 F.3d 325 (6th Cir. 2017) ...............................................................................................40

*In re AT&T/DirecTV Now Sec. Litig.*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)...................................................................................12

*In re Cannavest Corp. Sec. Litig.*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................................................................................6

*In re DVI, Inc. Sec. Litig.*,
  919 F. Supp. 2d 498 (E.D. Pa. 2013) ...................................................................10

*In re Dynagas LNG Partners LP Sec. Litig.*,
  504 F. Supp. 3d 289 (S.D.N.Y. 2020)..................................................................20

*In re EveryWare Global, Inc. Sec. Litig.*,
  175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom.*
  *IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*,
  849 F.3d 325 (6th Cir. 2017) ....................................................................3, 39, 40

*In re Ford Motor Co., Sec. Litig.*,
  381 F.3d 563 (6th Cir. 2004) ...............................................................................20

*In re Huntington Bancshares Inc. Sec. Litig.*,
  674 F. Supp. 2d 951 (S.D. Ohio 2009) ......................................................... *passim*

*In re Kindred Healthcare, Inc. Sec. Litig.*,
  299 F. Supp. 2d 724 (W.D. Ky. 2004)..................................................................31

*In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*,
  553 F. Supp. 2d 902 (S.D. Ohio 2008) ......................................................... *passim*

*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*,
  2006 WL 469468 (S.D. Ohio Feb. 27, 2006).........................................8, 13, 27, 32

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013)...................................................................39

*In re Prison Realty Securities Litigation*,
  117 F. Supp. 2d 681 (M.D. Tenn. 2000)................................................................4

*In re Sofamor Danek Grp., Inc.*,
  123 F.3d 394 (6th Cir. 1997) ...............................................................................20

*In re TransDigm Grp., Inc. Sec. Litig.*,
  440 F. Supp. 3d 740 (N.D. Ohio 2020)..................................................................22

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
  Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ...........................................................................2, 20

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
  2010 WL 1287058 (E.D. Wis. Mar. 30, 2010) .......................................................8

*Jackson County Employees' Retirement System v. Ghosn*,
    2020 WL 7711378 (M.D. Tenn. Dec. 29, 2020)....................................................29, 30, 34, 35

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).................................................................................................37

*Kloss v. RBS Citizens, N.A.*,
    996 F. Supp. 2d 574 (E.D. Mich. 2014)................................................................35

*Konkol v. Diebold, Inc.*,
    590 F.3d 390 (6th Cir. 2009) ...................................................................... *passim*

*Kushner v. Beverly Enterprises, Inc.*,
    317 F.3d 820 (8th Cir. 2003) ...............................................................................24

*Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third*
    *Bancorp*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ...................................................................3

*Lorenzo v. S.E.C.*,
    139 S. Ct. 1094 (2019)......................................................................................11, 12

*Louisiana Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*,
    622 F.3d 471 (6th Cir. 2010) ................................................................................25

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................................................21

*McPherson v. Kelsey*,
    125 F.3d 989 (6th Cir. 1997) ...............................................................................24

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017)...............................................................6, 13

*Mucha v. Volkswagen Aktiengesellschaft*,
    2021 WL 2006079 (E.D.N.Y. May 20, 2021) ......................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)..............................................................................................20

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) ...............................................................28, 29, 31, 34

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
    679 F.3d 972 (8th Cir. 2012) ................................................14

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..................................................3

*S.E.C. v. Narayan*,
    2017 WL 4652063 (N.D. Tex. Aug. 28, 2017)......................15

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996)................................................40

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008)................................................ *passim*

*Teamsters Local 456 Pension Fund v. Universal Health Services*,
    396 F. Supp. 3d 413 (E.D. Pa. 2019) .............................20, 21

*Tellabs, Inc., v. Makor Issues & Rights, Ltd*,
    551 U.S. 308 (2007)................................................23, 26, 32, 39

*United States v. Canale*,
    2015 WL 3767147 (S.D.N.Y. June 17, 2015) .......................16

*United States v. Perry*,
    438 F.3d 642 (6th Cir. 2006) ...............................................16

*West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    845 F.3d 384 (8th Cir. 2016) ...............................................10

**RULES**

Rule 9(b) .................................................................. *passim*

Rule 10-5(a) and (c) ......................................................5

Rule 10b-5 .................................................................. *passim*

Rule 10b-5(a) .................................................11, 14, 32, 38

Rule 10b-5(b) ......................................................5, 15, 37

Rule 10b-5(c) .................................................14, 32, 38

**STATUTES**

17 C.F.R. § 10b5-(a) and (c) ........................................................................................12

17 C.F.R. § 240.10b-5(b) .............................................................................................12

18 C.F.R. § 1c.2(a) .........................................................................................................9

15 U.S.C. § 78u-4(b)(2) ...............................................................................................23

## INTRODUCTION

Plaintiffs' opposition does not engage with or respond to many of the legal arguments in the motion to dismiss, taking instead a scattershot approach that conflates distinct legal issues while ignoring others entirely.  Plaintiffs' apparent belief that the motion to dismiss should be decided on the basis of newspaper articles and bystander commentary (Opp'n at 1) is wrongheaded.  The only question here is whether the particularized allegations within the four corners of the Complaint meet the demanding standards of the PSLRA and Rule 9(b).  That is a purely legal question, and the answer is "no."

The Complaint's failure to plead specific facts as to each element of every claim is particularly stark as to Strah and Taylor.  The Complaint does not allege with particularity that they knowingly participated in a deceptive scheme on which Plaintiffs relied.  Nor does it allege specific facts showing that Strah and Taylor made any statement that was false when made or that they actually knew was false.  The Complaint's failures are similarly glaring as to the 2017 and 2018 period.  To the very limited extent the Complaint sets forth specific factual allegations, they relate to matters occurring in 2019 or 2020, such as the introduction of HB6, its passage into law, and the failed referendum initiative to repeal it.

The recently announced deferred prosecution agreement involving the Company does not short-circuit the need to address the legal sufficiency of the Complaint under the PSLRA and Rule 9(b) as to each claim and as to each Defendant.[1]  The PSLRA and Rule 9(b) did not apply to the deferred prosecution agreement, and the agreement involved a different claim than the

---

[1] *United States of America v. FirstEnergy Corp.*, No. 1:21-cr-00086-TSB (S.D. Ohio), Doc. #3 (filed July 22, 2021).  The arguments herein are aimed solely at the sufficiency of the Complaint.  The FirstEnergy Defendants challenge only whether the Complaint states a claim for violations of the relevant securities laws.  The FirstEnergy Defendants are not contradicting FirstEnergy's acceptance of responsibility as set forth in the Deferred Prosecution Agreement or the facts described in the Statement of Facts.

ones asserted here.  The deferred prosecution agreement does not speak to the question of whether the Complaint adequately alleges every element of Plaintiffs' claims, against every Defendant, with the requisite particularity.  Thus, while FirstEnergy acknowledges the misconduct that occurred in the past, that acknowledgment does not supply answers to the issues raised in the instant motion.

## ARGUMENT

## I.     THE ENTIRE COMPLAINT IS SUBJECT TO HEIGHTENED PLEADING STANDARDS.

There is no dispute as to the heightened pleading standards that apply to the Exchange Act claims; Plaintiffs concede they must satisfy both the PSLRA and Rule 9(b).  (*See* Br. at 7.)[2] Plaintiffs also do not dispute that "[i]t is well-settled that any claim sounding in fraud—not just those alleging a claim of fraud—must meet Rule 9(b)'s pleading standard."  *Davisson v. Ford Motor Co.*, 2014 WL 4377792, at *8 (S.D. Ohio Sept. 3, 2014) (Marbley, C.J.) (cited at Br. at 8.) Nor do they dispute that the Sixth Circuit applies Rule 9(b) where Securities Act claims are based on the same factual allegations as Exchange Act claims, just as most other Circuits do. *E.g.*, *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009) (cited at Br. at 7); Br. at 8 n.3 (citing other Circuits applying the same rule).  Yet Plaintiffs contend that Rule 9(b)'s heighted pleading requirements do not apply to their claims under the Securities Act.  (Opp'n at 78-79.)  Plaintiffs are wrong. Those claims also must satisfy Rule 9(b) because those claims are based on allegedly fraudulent conduct.  (*See* Br. at 7-9.)

---

[2] Capitalized terms have the meanings given to them in the FirstEnergy Defendants' opening brief in support of its Motion to Dismiss (ECF No. 161), which we cite as "Br."  Plaintiffs' omnibus opposition to the Defendants' Motions to Dismiss (ECF No. 176) is referenced as "Opp'n."  Page references in both the Br. and the Opp'n refer to the numbers at the bottom of the page.  Paragraph references are to the Complaint (ECF. No. 72). Internal quotations and citations are omitted and emphases added unless otherwise noted.

Plaintiffs try to disclaim fraud with respect to the Securities Act claims, arguing that it is enough that they "expressly exclude[d]" and "segregated" allegations that sound in fraud and asserting that their "Securities Act claims 'do not mention fraud.'"  (Opp'n at 78.)  But, as the FirstEnergy Defendants explained, courts do not credit such generalized disclaimers or characterizations.[3]  (Br. at 8-9.)  Instead, they look to "the wording and imputations of the complaint" and apply Rule 9(b) to allegations of "misleading," "false," and "untrue" statements, because such allegations are those "classically associated with fraud."  *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (cited at Br. at 8-9).  Those are the very allegations Plaintiffs make here.  (Br. at 9 (citing ¶¶ 291, 293, 295, 297 (all regarding allegedly "materially false" and "misleading" and "untrue" statements in the registration statements); ¶ 292 (alleging failure to disclose "illegal bribery scheme")).)  Plaintiffs have no response.  The Court should therefore disregard Plaintiffs' characterization of the Complaint, because it is inconsistent with the Complaint's allegations.  *See Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp,* 731 F. Supp. 2d 689, 709 (S.D. Ohio 2010) ("Plaintiffs' allegation that their Securities Act claims do not sound in fraud is a legal conclusion that the Court does not have to accept as being true.").

The cases on which Plaintiffs rely to evade Rule 9(b)'s heightened pleading standards are inapposite.  In *In re EveryWare Global, Inc. Securities Litigation*, the plaintiffs alleged only that the defendants for the Securities Act claims "failed to a conduct a reasonable investigation" to ensure the accuracy of the registration statements at issue.  175 F. Supp. 3d 837, 869-70 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d

---

[3] The "FirstEnergy Defendants" are:  FirstEnergy Corp., Steven E. Strah, K. Jon Taylor, Jason J Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald, T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, and Leslie M. Turner.  (Br. at 1 n.1; *see also* ECF No. 177 (Pearson).)

325 (6th Cir. 2017). This Court observed that courts apply Rule 9(b) to Securities Act claims

alleging that "the defendants committed misrepresentations," *id.* at 869, just as here. The

Complaint here alleges that the "Securities Act Defendants" (¶ 284) did much more than merely

not "make a reasonable and diligent investigation" (¶ 315). Instead, the Complaint alleges that

they "issued, promoted, and sold FirstEnergy notes" through prospectuses that contained the

purported misstatements (¶¶ 313-314) and engaged in the other "conduct herein alleged" (¶ 306),

which includes the illegal acts alleged in the Complaint. *In re Prison Realty Securities*

*Litigation*, 117 F. Supp. 2d 681 (M.D. Tenn. 2000), and *FirstEnergy Corp. Securities Litigation*,

316 F. Supp. 2d 581 (N.D. Ohio 2004), likewise do not support Plaintiffs' argument. In

*FirstEnergy*, the court acknowledged that "the heightened pleading standard of Rule 9(b) applies

to [Securities Act] claims premised on allegations of fraud," 316 F. Supp. 2d at 602, and, in

*Prison Realty*, the complaint did not even "mention fraud, except to expressly exclude any

allegations which might sound in fraud," 117 F. Supp. 2d at 688-69. Not so here. Because the

Securities Act claims are based on allegations that sound in fraud, they must satisfy Rule 9(b)'s

heightened pleading requirements.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE 2017-2018 PERIOD.

As Plaintiffs themselves characterize it, "the ***central issue*** in this case is whether

Defendants ***misrepresented*** FirstEnergy's lobbying activities and efforts ***in support of HB6*** in

violation of federal securities laws." (Opp'n at 56; *see also id.* at 30 ("the ***central question*** in

this case [is] whether Defendants accurately disclosed their lobbying efforts and conduct in

connection with HB6 and the Bailout Scheme").) HB6, however, was not introduced until April

2019 (¶ 73), was not enacted into law until July 2019 (¶ 78), and the recall initiative did not

occur until the summer and fall of 2019 (¶¶ 81-87).  The Complaint's sparse allegations as to 2017-2018, well before HB6 existed, fail to state a claim.

### A.    The Complaint Fails To State A Claim For Scheme Liability As To The 2017-2018 Period.

Plaintiffs largely ignore the legal arguments on scheme liability, particularly those relating to allegations about the 2017-2018 period.  In their opening brief, the FirstEnergy Defendants demonstrated in detail that the Complaint does not state a claim for scheme liability under Rule 10-5(a) and (c), for several distinct reasons.  (Br. at 29-30, 49-59.)  In their opposition, Plaintiffs do not grapple with those arguments.  Instead, they oddly assert that "Defendants Do Not Acknowledge, or Challenge, the Complaint's Bailout Scheme Allegations" (Opp'n at 25), and cite a case about how issues that are "unaccompanied by some effort at developed argumentation, are deemed waived" (*id.* at 27).[4]  But, in virtually the same breath, Plaintiffs admit—as they must—that the FirstEnergy Defendants presented "11 pages of arguments" about scheme liability in their opening brief.  (*Id.* at 26.)[5]

Plaintiffs refuse to engage with those 11 pages of legal arguments because they have no good responses.

---

[4] Plaintiffs also conflate scheme liability with liability under Rule 10b-5(b) and incorrectly rely on 10b-5(b) cases in their summary discussion of scheme liability.  (Opp'n at 25 (citing *Grae v. Corr. Corp. of Am.*, 2017 WL 6442145, at *12 (M.D. Tenn. Dec. 18, 2017).)

[5] Plaintiffs even resort to mischaracterization in a transparent effort to avoid a substantive response.  They contend that "no defendant acknowledges" the "methods and means [of the scheme] or challenges their sufficiency" (Opp'n at 27), but ignore that Defendants addressed ¶ 93 at length, which is the same paragraph that Plaintiffs identify as identifying the supposed "methods and means" of the purported scheme.  (*Compare* Opp'n at 25-26 (listing "methods and means" outlined in ¶ 93), *with* Br. at 51 (explaining why the scheme allegations are insufficient and citing ¶ 93).)

## 1.    The Complaint Fails To Plead That The Alleged Scheme Occurred "In Connection With" The Purchase Or Sale Of Any Security.

In their opening brief, the FirstEnergy Defendants demonstrated that the scheme liability claim must be dismissed for failure to satisfy the "in connection with" requirement—that is, the Complaint fails to allege that the purported scheme occurred "in connection with the purchase or sale of any security."  (Br. at 49-52.)  Plaintiffs largely ignore this argument.  Relegating their entire response to two footnotes, Plaintiffs appear to contend that an assertion of materiality satisfies the "in connection with" requirement:

- They say Defendants' argument "would require the Court to find that the fraudulent scheme and misrepresentations were immaterial to investors, which cannot be reconciled with the monumental consequences of their disclosure" (Opp'n at 69-70 n.22); and

- "[T]he Bailout Scheme … [was] viewed as critical to FirstEnergy's financial viability and thus [was] closely monitored by investors and analysts and indisputably impacted the price of FirstEnergy securities during the Class Period" (Opp'n at 73 n.25).

But neither of their footnotes addresses the rule that, to satisfy the "in connection with" requirement, a scheme must involve activity *in the securities market*, such as market manipulation.  (*See* Br. at 49-52.)  It is not enough to allege that a purported scheme impacted the price of a company's securities or had consequences to investors.  (*Id.* at 50.)  Instead, the scheme must involve acts directly relating to the sale of securities or bearing upon a specific securities transaction.  *See, e.g.*, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 249 (S.D.N.Y. 2018) ("requir[ing] a showing that" defendants "engaged in *market activity* aimed at deceiving investors as to how other market participants have valued a security") (emphasis in original); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017) (allegations that defendant "engaged in extensive bribery" failed to state a scheme liability claim

because there was no "necessary link between his deceptive act[s] and the purchase or sale of securities") (both cited at Br. at 49).

Plaintiffs do not grapple with *Cannavest*, *Menaldi*, or the other cases cited in Section IV.A. of Defendants' opening brief, and do not cite any cases that support their assertion that materiality somehow displaces the "in connection with" requirement. The only case Plaintiffs cite, in a footnote, actually underscores the Complaint's failure to plead the "in connection with" requirement. (Opp'n at 73 n.25 (citing *City of Providence v. Bats Glob. Markets, Inc.*, 878 F.3d 36 (2d Cir. 2017).) In *City of Providence*, plaintiffs sued several national securities exchanges, alleging they engaged in manipulative conduct by misleading institutional investors about certain products that the exchanges sold to high-frequency trading firms, which purportedly created a two-tiered trading system favoring those firms at the plaintiffs' expense. 878 F.3d at 40. As the court explained, "manipulative conduct under 10(b) and Rule 10b-5 is virtually a term of art when used in connection with securities markets" and "it refers generally to practices that are intended to mislead investors by artificially affecting ***market activity***." *Id.* at 49. The court held that Rule 10b-5 prohibits "schemes that consist of manipulative or deceptive 'market activity'" and concluded that plaintiffs alleged the exchanges engaged in conduct that manipulated "market activity." *Id.* at 50. Here—as Defendants argued in their opening brief and as Plaintiffs do not dispute—the Complaint does not allege that the supposed scheme included any "market activity." *City of Providence* confirms that failure.

The Complaint's failure to plead the "in connection with" requirement is especially glaring with regard to the 2017-2018 time period. The only conduct alleged in the Complaint relating to the "methods and means" of the scheme that occurred in 2017 and 2018 are: (1) the FirstEnergy Solutions bankruptcy proceedings (¶ 93(a)); (2) the formation of Partners for

Progress and Generation Now (¶¶ 93(d), 65); and (3) a few campaign contributions to 501(c)(4) organizations, including "$2.9 million" of contributions "to the Bailout Scheme" (¶¶ 93(e), 93(f), 67, 137). None of these are "market activity" directly connected to a securities transaction, as required for scheme liability. *See, e.g.*, *Hawaii Ironworkers Annuity Tr. Fund v. Cole*, 296 F.R.D. 549, 553-54 (N.D. Ohio 2013) (Rule 10b-5(a) and (c) claims require "a connection between the deceptive act and the purchase or sale of a security") (cited at Br. at 49). To state a claim for scheme liability, the Complaint must allege some form of market manipulation, such as wash sales, pump-and-dump schemes, or matched orders, but it does not. (Br. at 50 (citing cases).)

The only other allegation about the "methods and means" in 2017 or 2018—the "[c]onceal[ment of] the Bailout Scheme from the investing public and the bankruptcy court presiding over proceedings related to the Nuclear Plants" (Opp'n at 25; ¶ 93(b))—is likewise insufficient. That, too, is not market activity, as Defendants' authorities confirm. *See In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 2006 WL 469468, at *21 (S.D. Ohio Feb. 27, 2006) ("*Nat'l Century I*") (rejecting allegations "that the [defendants] employed a scheme to inflate the market price of [the company's] common stock"); *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, 2010 WL 1287058, at *24 (E.D. Wis. Mar. 30, 2010) (dismissing market manipulation claim where plaintiff alleged that defendants "artificially inflate[d] the market price of [the company's] common stock") (both cited at Br. at 50). Allegations that omissions supposedly artificially inflated the stock price are the subject of the misrepresentation claim under subsection (b) of Rule 10b-5, addressed later in this brief. Accordingly, because the Complaint alleges no specific facts about market activity by any Defendant that was part of the supposed "scheme," the scheme liability claim must be dismissed.

## 2. The Complaint Fails To Plead Reliance On Any Inherently Deceptive Conduct.

The Complaint also fails to plead reliance on any allegedly deceptive conduct. As demonstrated in the opening brief, reliance is "an essential element" of a scheme liability claim. (Br. at 52.)[6] In *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, the Supreme Court rejected a scheme liability claim for lack of reliance where the deceptive acts were not disclosed to the public, determining that the acts were "too remote to satisfy the requirement of reliance." 552 U.S. 148, 161 (2008). In the wake of *Stoneridge*, courts routinely reject scheme liability claims for lack of reliance where the alleged scheme was not publicly disclosed. (Br. at 52-55.) This Court should do the same.

No reliance on a "concealed" scheme. The Complaint fails to allege reliance on the alleged scheme—especially as to 2017 and 2018—because it affirmatively alleges the scheme was not "revealed" until July 21, 2020. (¶¶ 8, 138.) Plaintiffs emphasize this in their opposition: "None of these acts [in 2017 and 2018 supposedly 'in furtherance of the scheme'] were disclosed to investors." (Opp'n at 60. *See also id.* at 8 (contributions to the "Bailout Scheme" were "concealed"); *id.* at 25 (the "methods and means" of the supposed scheme were "[c]onceal[ed]"); *id.* at 33 ("the illicit Bailout Scheme payments" were "concealed").) As to HB6 itself, the Complaint alleges no disclosures or public information about HB6 before 2019. The Complaint alleges that Randazzo helped "write and support HB6" after he became PUCO Commissioner in April 2019 (¶ 72), but does not allege that such drafting or "support" was public. It was not until

---

[6] In fact, the full text from which Plaintiffs excerpt language confirms the necessity of reliance. *See Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2011 WL 1335803, at *45 (M.D. Tenn. Mar. 31, 2011) ("The securities laws reach misleading conduct as well as misleading statements, *so long as there is some mechanism by which that conduct misled investors*.") (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 161 (2008)) (cited at Opp'n at 25).

April 12, 2019 that HB6 was introduced. (¶ 73.)[7] Under *Stoneridge*, these allegedly "deceptive acts … not disclosed to the investing public, are too remote to satisfy the requirement of reliance." 552 U.S. at 161. Plaintiffs do not contest the legal holding of *Stoneridge*, and instead erroneously argue that *Stoneridge* does not apply.[8]

        <u>*Stoneridge* applies despite Plaintiffs' attempt to distinguish it factually.</u> Plaintiffs first attempt to distinguish *Stoneridge* on its facts. They say that *Stoneridge* does not apply because the defendants there were third-party suppliers, rather than the company whose stock price was allegedly artificially inflated or its directors or officers. (Opp'n at 26.) But other courts have rejected that distinction. *E.g.*, *In re DVI, Inc. Sec. Litig.*, 919 F. Supp. 2d 498, 508 (E.D. Pa. 2013) (rejecting attempt to "distinguish[] … *Stoneridge* because" "*Stoneridge* involved allegations against a '*third party*'" whereas defendants were "President, CEO, and Director of" the company) (emphasis in original). The legal principle illuminated in *Stoneridge* is undisturbed by any difference between the facts in *Stoneridge* and the allegations here. As in *Stoneridge*, "[n]o member of the investing public had knowledge, either actual or presumed, of [Defendants]' deceptive acts during the relevant times. [Plaintiffs], as a result, cannot show

---

[7] Even if the Complaint did allege public actions preceding the introduction of HB6, allegations about steps taken to develop the scheme are insufficient in this Circuit. Rather, and contrary to Plaintiffs' suggestion (Opp'n at 60), "the actor must have participated in the **actual execution** of the fraudulent scheme for primary liability to attach." *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 2018 WL 7892222, at *19 (S.D. Ohio Mar. 30, 2018) ("*Coaltrain I*"). As Judge Watson reasoned when analyzing the Federal Energy Regulatory Commission's Anti-Manipulation Rule under 18 C.F.R. § 1c.2(a), which "is identical to SEC Rule 10b-5," *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 530 n.15 (S.D. Ohio 2020), "developing a scheme to defraud is different than using a scheme to defraud" and "the plain language of the statute and rule appear to prohibit only the **execution** of the scheme," *Coaltrain I*, 2018 WL 7892222, at *19.

[8] Notwithstanding the repeated refrain that the alleged scheme was "concealed," Plaintiffs also assert that "[i]t was fundamentally impossible for Defendants' scheme to succeed without investors being deceived because the objectives of the scheme's methods and means were as public-facing as is possible." (Opp'n at 27.) This argument, to the extent comprehensible, fundamentally misunderstands the cases applying scheme liability, which hold that, where the alleged scheme is not publicly disclosed (as the Complaint alleges here), there can be no reliance. (Br. at 53-54 (citing cases).) As demonstrated here and below, *Stoneridge* dictates that conclusion and *Lorenzo* does not disturb it.

reliance upon any of [Defendants'] actions except in an indirect chain that [is] too remote for liability." 552 U.S. at 159.[9] Under *Stoneridge*, the Complaint fails to plead reliance for the scheme liability claim.

*Lorenzo* did not displace *Stoneridge.* Plaintiffs incorrectly suggest that the Supreme Court's decision in *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019), displaced or superseded the stringent reliance requirement addressed in *Stoneridge.* Not so. In *Lorenzo*, the Court decided only whether fraudulent "dissemination"— *i.e.*, the "direct transmission of false statements to prospective investors intended to induce reliance"—is actionable under Rule 10b-5(a) or (c). *Id.* at 1104. Reliance was not at issue in *Lorenzo*: that case was brought by the SEC, and the SEC is not required to establish reliance. *Id.* (stating that "the SEC, "*unlike private parties*, need not show reliance in its enforcement actions"). Like *Stoneridge*, this action is brought by private parties, and, as in *Stoneridge*, the Complaint's allegations fail to clear the reliance hurdle. Far from overturning or superseding *Stoneridge*, the Court in *Lorenzo* actually reaffirmed its holding "that private plaintiffs" cannot "bring suit … based on *undisclosed deceptions* upon which the plaintiffs could not have relied." *Id.* (emphasis in original). Thus, *Lorenzo* left undisturbed the requirement that a private party plead and prove reliance for a scheme liability claim.

*Lorenzo* did not displace pre-*Lorenzo* authority. Rather than engaging with the factual circumstances or legal holding of *Lorenzo* (and its impact—or, rather, lack thereof—on Defendants' cited cases and legal arguments), Plaintiffs simply proclaim that *Lorenzo* "rejected

---

[9] Plaintiffs' citation to *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384 (8th Cir. 2016) does not help them. There, the defendant company was alleged to have manipulated clinical trials by paying physician-authors to conceal adverse effects and overstate the disadvantages of alternative procedures. *Id.* at 394. The court concluded plaintiffs adequately pleaded reliance because the complaint alleged "that investors directly relied on the resulting favorable clinical trials" and that "in speaking with potential investors, [defendant's] CEO specifically emphasized that the company's products' strong clinical trial performance undergirded [defendant's] competitiveness and sustainability." *Id.* The Complaint here contains no such factual allegations relating to Plaintiffs' reliance on the alleged scheme.

efforts to limit the reach of scheme liability." (Opp'n at 26.) That declaration changes nothing, as *Lorenzo*'s application of scheme liability to those who disseminate false statements made by others is irrelevant to the issues here. None of the FirstEnergy Defendants' arguments about scheme liability hinge on the whether fraudulent dissemination can be the subject of a claim under 10b-5(a) or (c), and Plaintiffs do not show otherwise.

Furthermore, the Supreme Court in *Lorenzo* expressly acknowledged the continuing viability of its precedents relating to Rule 10b-5 and scheme liability. *See, e.g.*, 139 S. Ct. at 1103-04 (rejecting petitioner's argument that the majority's opinion would render its previous decisions "a dead letter" and distinguishing, rather than overruling, previous precedents). Accordingly, after *Lorenzo*, courts (including in this Circuit) continue to rely on pre-*Lorenzo* cases in the scheme liability context.[10] *See Gordon v. Royal Palm Real Est. Inv. Fund I*, 2020 WL 2836312, at *1 (E.D. Mich. May 31, 2020) (rejecting plaintiff's argument that *Lorenzo* precluded the court from dismissing scheme liability claim "for want of a fraudulent scheme, separate and apart from the … allegations" relating to alleged misstatements and omissions) (cited at Br. at 57). This Court should too. Plaintiffs' suggestion that the Court should ignore scheme liability cases decided before *Lorenzo* reflects the fact that Plaintiffs have nothing to say in response to those cases, and invites legal error.[11]

Pleading materiality does not cure the failure to plead reliance (or the "in connection with" requirement). Other than their unpersuasive attempt to distinguish *Stoneridge* and

---

[10] Indeed, "there are grounds for arguing that *Lorenzo* may not extend beyond the realm of SEC enforcement, as purpose, precedent, and circumstance weigh against scheme liability's broadened applicability in private securities litigation." Karl A. Mason, *Life after Lorenzo—the Strained Re-Emergence of Scheme Liability*, 48 No. 1 Securities Regulation Law Journal ART 2 (2020).

[11] Plaintiffs' assertion that Defendants did not cite decisions issued after *Lorenzo* (Opp'n at 26) is inaccurate: the FirstEnergy Defendants cited several post-*Lorenzo* scheme-liability cases. (*See, e.g.*, Br. at 56 (citing *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507 (S.D.N.Y. 2020); *id.* at 57 (citing *Gordon*, 2020 WL 2836312, at *1).)

incorrect suggestion that *Lorenzo* somehow supersedes it, Plaintiffs offer only the same non-response that they offered for the "in connection with" requirement:  they say they plead materiality, and that is enough.  (*See* Opp'n at 69 n.22 (lumping together arguments about reliance and the "in connection with" requirement and asserting, without authority, that materiality suffices to plead both); *id.* at 73 n.25 (same).)  But materiality is irrelevant for scheme liability.  *Compare* 17 C.F.R. § 240.10b-5(b) (requiring statement or omission of "a *material* fact"), *with* 17 C.F.R. § 10b5-(a) and (c) (containing no materiality requirement); *see also Nat'l Century I*, 2006 WL 469468, at *21 (listing elements of scheme liability claim and not including materiality).  Moreover, the elements of a Rule 10b-5 claim are distinct and each one of them must be separately pled and proved.  *See, e.g.*, *Stoneridge*, 552 U.S. at 157-58 (listing the elements of a Rule 10b-5 private action—including the "in connection with" and reliance elements—and stating a plaintiff "must satisfy each of the elements or preconditions for liability").

Merely because a scheme allegedly impacted the price of a stock does not suffice to plead that investors relied on the conduct when they purchased securities.  *See, e.g.*, *Menaldi*, 277 F. Supp. 3d at 518 ("Section 10(b) 'does not reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way.'") (quoting *Stoneridge*, 552 U.S. at 162; cited at Br. at 50).  Because Plaintiffs could not have relied on the Defendants' undisclosed and "concealed" actions in 2017 and 2018, the scheme liability claims must be dismissed.  *See, e.g.*, *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 911 (S.D. Ohio 2008) ("*Nat'l Century II*") (dismissing scheme liability claims for failure to allege "deceptive conduct on which Plaintiffs relied"); *Hawaii Ironworkers Annuity Tr.*, 296 F.R.D. at 555 ("Absent disclosure of [a defendant's deceptive] conduct to the public, there is no basis … to

… conclude that the market took the deceptive conduct into account in pricing a security" or that plaintiffs "relied on that conduct when buying or selling the security.").

<u>Public bankruptcy proceedings do not support scheme liability.</u>  The only conduct in 2017 and 2018 that was disclosed—the FirstEnergy Solutions bankruptcy proceeding—does not help Plaintiffs.  Plaintiffs contend that Defendants used "bankruptcy proceedings to try to evade liability for the Nuclear Plants."  (Opp'n at 25; ¶ 93(a).)  But as the FirstEnergy Defendants pointed out, the bankruptcy proceedings initiated in 2018 cannot support a scheme-liability claim because there is nothing "inherently deceptive" about filing for bankruptcy.  (Br. at 30.)  Plaintiffs do not dispute this point.[12]  *See, e.g.*, *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410 (6th Cir. 2013) (affirming dismissal; "From Plaintiff's silence, the district court deemed that assertion undisputed, and it granted Defendants' motion to dismiss.").  By Plaintiffs' own concession, therefore, the Complaint's allegations about the FirstEnergy Solutions bankruptcy proceedings cannot be used to extend the purported scheme liability period back to 2017 or 2018.  *See Nat'l Century II*, 553 F. Supp. 2d at 909 (dismissing scheme liability claim against defendant "because he is not alleged to have engaged in any deceptive conduct").

### 3. The Complaint Fails To Plead With Particularity That Every Exchange Act Defendant Knowingly Engaged In An Inherently Deceptive Act.

As Defendants explained, the Complaint must plead specific facts as to every Exchange Act Defendant to state a scheme liability claim under Rule 10b-5(a) and (c).[13]  (Br. at 58-59.)  Without those allegations, the scheme liability claim must be dismissed as to every Exchange

---

[12] Indeed, Plaintiffs characterize the "fail[ure] to convince the bankruptcy court to grant [FirstEnergy] an express release of liability for the decommissioning expenses" as the impetus for the bailout scheme.  (¶ 63.)  Plaintiffs cannot argue both that the failed bankruptcy *led to* the scheme and that the bankruptcy itself was *part of* the scheme.

[13] "Exchange Act Defendants" refers to FirstEnergy and the "Officer Defendants," as defined in the Complaint, against whom Plaintiffs have asserted claims under the Exchange Act.  (Br. at 1 n.1.)

Act Defendant who is not alleged with particularity to have knowingly participated in the scheme, including Strah and Taylor, as further addressed below. *See infra* at 32, 36. Plaintiffs ignore this argument and, once again, do not grapple with a single one of the cases the FirstEnergy Defendants cited in their opening brief in Section IV.D and do not identify specific facts in the Complaint showing participation in an inherently deceptive act. Because the Complaint "fail[s] to allege with sufficient particularity how … [each defendant was] actually involved," the scheme liability claim must be dismissed. *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 986 (8th Cir. 2012); *see also In re Nat'l Century II*, 553 F. Supp. 2d at 909 (holding that a defendant must personally engage in conduct that is inherently deceptive, "not simply engage in non-deceptive conduct that supports an overall deceptive scheme"); *S.E.C. v. Narayan*, 2017 WL 4652063, at \*9 (N.D. Tex. Aug. 28, 2017) (examining "whether the Complaint adequately pleads that" each defendant "did some deceptive act beyond facilitating or covering up" another's acts).

As demonstrated below, *see infra* at 23-24, the Complaint must, but does not, plead that every Exchange Act Defendant acted with actual knowledge, which Plaintiffs concede is the applicable standard here.

   **B.     The Complaint Fails To State A Claim For Misstatement Liability During The 2017-2018 Period.**

As to the claim for misstatement liability under Rule 10b-5(b), the Complaint's pleading failures are particularly glaring for the 2017-2018 period (Br. at 24-30), consistent with Plaintiffs' own characterization that "the ***central issue*** in this case is whether Defendants ***misrepresented*** FirstEnergy's lobbying activities and efforts ***in support of HB6*** in violation of federal securities laws." (Opp'n at 56; *see also id.* at 30 ("the ***central question*** in this case [is] whether Defendants accurately disclosed their lobbying efforts and conduct in connection with

HB6 and the Bailout Scheme").)  The allegations about support of HB6 relate to events occurring in 2019 and 2020, and those events cannot retroactively render statements in 2017 or 2018 misleading.

### 1. The Complaint Fails To Plead Contemporaneous Falsity As To Statements In 2017 And 2018.

#### (a) There Is No Liability For "Fraud By Hindsight."

Defendants pointed out the paucity of specific factual allegations in 2017 and 2018 to show that any statement during that period was false when made.  (Br. at 24-29.)  In response, Plaintiffs contend that Defendants' acts in "subsequent years" are "relevant" to their conduct in 2017 and 2018, apparently suggesting that such later conduct could retroactively make earlier statements false or misleading.  (Opp'n at 60.)  That argument flies in the face of a fundamental axiom of securities law:  there is no such thing as "fraud by hindsight."  (Br. at 24 (citing cases).)

Ignoring this established principle, Plaintiffs cite inapplicable criminal cases that provide no support for their argument.  In *United States v. Perry*, for instance, the court found that evidence of the defendant's subsequent bank robbery was admissible to establish identity under Fed. R. Evid. 404(b) because it established "modus operandi."  438 F.3d 642, 648 (6th Cir. 2006) (cited at Opp'n at 60-61).  Plaintiffs' reliance on *United States v. Canale*, is equally misplaced. There, the court held that venue was proper because the alleged acts relating to the charged criminal conspiracy occurred in the district.  2015 WL 3767147, at *3 (S.D.N.Y. June 17, 2015) (cited Opp'n at 60-61).  Neither case says anything about pleading contemporaneous falsity in a civil securities lawsuit.

Plaintiffs also cite *CadleRock Joint Venture, L.P. v. Royal Indemnity Co.*, ostensibly for the proposition that Defendants' subsequent acts retroactively render statements made years earlier false or misleading.  *CadleRock*, however, like *Perry*, held only that "[o]ther fraudulent

acts" may be admitted to "prove such matters as motive, intent, and plan" under Rule 404(b).

872 F. Supp. 2d 592, 608 (N.D. Ohio 2012) (cited at Opp'n at 60). The question here is not

whether allegations about "other acts" are admissible under the Federal Rules of Evidence. The

question is whether the Complaint pleads particularized facts that show contemporaneous

falsity—that is, specific allegations about facts that existed at the time a challenged statement

was made and that also contradicted the statement. The answer to that question is no,

particularly as to the 2017-2018 period.

> **(b)** **The Complaint Lacks Particularized Facts Showing That Any Statement In 2017 Or 2018 Was False When Made.**

As explained in the opening brief (Br. at 25-26), there are only a handful of factual

allegations pertaining to 2017 or 2018. The few allegations that do relate to 2017 or 2018 do not

show with particularity that any statement from that period was false when made.

> **(i)** **No Falsity In 2017 Or 2018 Due To HB6**

As the FirstEnergy Defendants pointed out, the Complaint fails to identify a violation of

any specific disclosure requirement due to contributions by FirstEnergy to a campaign or to a

501(c)(4) organization in 2017 or 2018. (Br. at 26-27.) Likewise, the Complaint fails to plead

with particularity that there was a failure to maintain effective controls over financial reporting

that could have been disclosed in 2017 or 2018. (*Id.*) Plaintiffs dispute neither point.

Plaintiffs also do not dispute that the Complaint cannot allege that a statement made in

2017 or 2018 was—or even could be—false due to "FirstEnergy's lobbying activities and efforts

in support of HB6" (*e.g.*, Opp'n at 56), because HB6 was not introduced ***until April 2019*** (Br. at

27). *See Dailey v. Medlock*, 551 F. App'x 841, 846 (6th Cir. 2014) ("One cannot disclose an

event which has not yet occurred.").

-17-

### (ii) No Falsity Due To "Illegal" Act In 2017 Or 2018

None of the Complaint's assertions about "illegal" acts in 2017 or 2018 sufficiently allege that any statement in 2017 or 2018 was false at the time it was made. (Br. at 27-29.) The FirstEnergy Defendants pointed this out and, in response, Plaintiffs emphasize that "the central issue in this case is whether Defendants misrepresented FirstEnergy's lobbying activities and efforts in support of HB6" (Opp'n at 54-56)—tacitly conceding the Complaint's failure to plead with particularity as to 2017 or 2018.

As explained in the opening brief, the Complaint fails to identify any specific law, provision, or regulation that the Defendants violated in 2017 or 2018. (Br. at 11-12 (citing, *e.g.*, *Dailey*, 551 F. App'x at 849 (affirming dismissal where complaint failed to identify laws or regulations defendants purportedly violated)).) Plaintiffs do not dispute that the Complaint does not identify any such specific law, provision, or regulation, or that *Dailey* requires them to do so. In fact, Plaintiffs do not address *Dailey* or any of the other cases reaching the same conclusion (cited at Br. at 11-12) at all. As a recent decision illustrates, the law compels the conclusion that the Complaint must be dismissed in light of its failure to plead with particularity an underlying "illegal" act, which failure starts (and ends) with the failure to identify a specific law supposedly violated. *See Mucha v. Volkswagen Aktiengesellschaft*, 2021 WL 2006079, at *14-15 (E.D.N.Y. May 20, 2021) (dismissing complaint; finding that "[w]hile Plaintiffs' allegations regarding [the defendant's] cooperation with other manufacturers are detailed, they have not identified any specific laws Defendants violated" and observing that "[i]n other cases where securities fraud claims were based on underlying illegal conduct … the plaintiffs at least alleged one or more specific laws that were violated"). Ad hominem references (*e.g.*, Opp'n at 55) do not substitute for the particularized factual allegations that the PSLRA mandates.

Even if the Complaint specified a law allegedly violated, it does not take the next step and plead with specificity all of the elements of the violation, as it must. (Br. at 9-11.) This failure is particularly apparent as to 2017 and 2018. For example, the Complaint alleges that Householder flew on the Company's plane to the January 2017 presidential inauguration (¶ 65), but does not, for instance, allege that Householder failed to reimburse the Company for the cost of travel. Similarly, though Plaintiffs assert that that FirstEnergy's formation of 501(c)(4) entities ran afoul of "campaign finance limits" (Opp'n at 59), the Complaint does not identify any campaign finance provision, regarding either "limits" or disclosure, that was violated in connection with FirstEnergy's formation of 501(c)(4) entities. (*See* Br. at 21.)

Likewise, particularly as to the 2017-2018 period, the four corners of the Complaint do not include particularized facts regarding any specific agreement to exchange contributions to Generation Now for specific official action or the specific terms of such an agreement. (Br. at 14-20.) Plaintiff is wrong in arguing (Opp'n at 60) that the allegations about creating 501(c)(4) entities in *2017 or 2018* suffice to plead with particularity a "corrupted official act" that could in turn render false statements that were issued in 2017 or 2018. That is because the allegations about "official action" relate only to HB6 (¶¶ 171, 205, 215; *see* Opp'n at 56-57), and, as the Complaint alleges, HB6 was not written, introduced, or passed into law until 2019 (¶¶ 72-74). Plaintiffs assert that Defendants' position is that no act is actionable if it "predate[s] a corrupted official act." (Opp'n at 60.) But that is not Defendants' argument. Defendants argue, rather, that the Complaint fails to plead with particularity the elements of an underlying illegal act, during this earlier period, which is what the case law requires. (Br. at 14-16 (citing *Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1034-35 (N.D. Ohio 2013) (granting motion to dismiss where plaintiffs failed to plead sufficient facts "in support of …. conclusory allegation" relating

to campaign contribution)).)  Plaintiffs do not address *Huff* or any of the other cases that make

clear that more is required than what the Complaint provides.  (*See* Br. at 14-16 (citing cases).)

### 2. The Complaint Fails To Plead Falsity As To Statements Of Opinion Made in 2017 Or 2018.

As previously explained (Br. at 59-62), an opinion can give rise to liability under the

securities laws only if the speaker did not hold the belief she professed or if she had in her

possession a specific item of contradictory information that a reasonable person would have

thought undercut the opinion so strongly that the speaker knew it was misleading not to disclose

that information.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575

U.S. 175, 183-97 (2015) ("*Omnicare III*").  The alleged statements in 2017 and 2018 about

assessments of compliance efforts and the efficacy of internal controls, and corporate aims and

policies are all opinions, and the Complaint pleads no specific facts showing that Defendants did

not believe them or that the opinions lacked a reasonable basis.  (Br. at 59-62.)

Plaintiffs counter, without citation to supporting authority, that *Omnicare* does not apply

because the majority of statements were "not qualified as opinions."  (Opp'n at 61.)  But, as

Defendants explained, "the inclusion or exclusion of such language is never dispositive; the

statements must be analyzed in context."  *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F.

Supp. 3d 289, 315 (S.D.N.Y. 2020) (cited at Br. at 60).  Aspirational statements, like the

statement that the Company strives to conduct business "transparently" to build "public trust,"

and its statement that contributions were in the Company's "best interests," are opinions; that is,

they do not "express[] certainty," but rather "rest[] on grounds insufficient for complete

demonstration."  *Omnicare III*, 575 U.S. at 183.  As Defendants' cases show, courts in this

Circuit consistently hold that similar statements about commitments to quality, safety, and

compliance are opinions.  *See, e.g.*, *In re Ford Motor Co., Sec. Litig.*, 381 F.3d 563, 570-71 (6th

Cir. 2004); *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 402 (6th Cir. 1997); *City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 829 (W.D. Mich. 2012) (cited at Br. at 61-62). Plaintiffs respond to none of these cases.

Instead, they rely on *Teamsters Local 456 Pension Fund v. Universal Health Services*, 396 F. Supp. 3d 413, 462 (E.D. Pa. 2019), for the proposition that an "objective statement of fact" is not considered an opinion. (Opp'n at 62.) The statements at issue in *Teamsters*, however, were "categorical[] denials" of the factual conclusions of a news article. 396 F. Supp. 3d at 461 (noting that the defendant "created a website to refute the [article's] claims" and that the website stated that "[the defendant] categorically denies that its affiliates exaggerate symptoms or attempt to coerce patients to admitting to suicidal thoughts or plans in order to justify admission"). Not so here. Defendants' aspirational statements and statements in 2017 and 2018 relating to assessments of compliance efforts in no way involve the outright denial of any factual conclusion, in contrast with the statements at issue in *Teamsters*.

### 3. The Complaint Fails To Plead An Actionable Omission In 2017 Or 2018.

The securities laws do not impose a "freestanding legal duty" to disclose uncharged wrongdoing. (Br. at 63.) Instead, "[d]isclosure is required … only when necessary to make … statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

Plaintiffs argue that the Complaint pleads an actionable omission because the nondisclosure of the alleged underlying acts rendered misleading certain of Defendants' statements about oversight, political contributions, and legislative solutions. (Opp'n at 22.) However, because the Complaint fails to plead with particularity a scheme or other illegal acts in 2017 or 2018, *supra* at 5-19, the Complaint fails to state a claim for not disclosing the "scheme"

or "illegal acts" then.  As explained in the opening brief (Br. at 62), a defendant cannot violate the securities laws by "omitting" to disclose an underlying fact that is not itself pled with particularity.  *See Dailey*, 551 F. App'x at 846 ("One cannot disclose an event which has not … occurred.").  Plaintiffs do not respond to this argument, which is dispositive as to the alleged omissions in 2017 and 2018.

Even if it were not, Plaintiffs' reliance on generalized statements of legal compliance and codes of conduct to plead an omission claim is misplaced.  Plaintiffs ignore Sixth Circuit precedent, which "holds that a generic claim of legal compliance … does not form the basis for a misrepresentation actionable under Rule 10b-5," *Dailey*, 551 F. App'x at 849, and that statements in codes of conduct are "not actionable" as a matter of law because "a code of conduct is not a guarantee that a corporation will adhere to everything set forth in its code of conduct" or "an assertion of objective fact," *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490 (6th Cir. 2015).  Plaintiffs ignore *Dailey* and attempt to distinguish *Bondali* on its facts (Opp'n at 24 n.4), but do not dispute the legal principle it exemplifies.  Plaintiffs also ignore *TransDigm*, which dismissed omission claims based on statements that were "simply too generic and innocuous to have triggered a duty to disclose TransDigm's alleged price-gouging scheme." *In re TransDigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 767 (N.D. Ohio 2020) (cited at Br. at 64).  The statements there were similar to FirstEnergy's statements relating to "the importance of their pursuit of legislative solutions" (Opp'n at 59), which also were "untethered to any kind of objectively measurable standard" and thus did not create an "implicit representation that would mislead an investor." *TransDigm Grp.*, 440 F. Supp. 3d at 767.

Plaintiffs' argument that "FirstEnergy has already admitted the falsity, or at least the misleading incompleteness, of its assurances" (Opp'n at 23), thus rendering the Defendants'

statements "misleadingly incomplete," is nothing more than an attempt to state an omission

claim based on hindsight.  That the Complaint alleges that the Company disclosed known

deficiencies years *after* the alleged omission does not plead with particularity that the earlier

statements were misleading when made.  *See Forman v. Meridian Bioscience, Inc.*, 367 F. Supp.

3d 674, 693 (S.D. Ohio 2019) ("The mere fact that Meridian disclosed a known deficiency in

November 2017 does not, without more, suggest that it knew about the deficiency prior to that

disclosure.").

## III.    THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

In their opening brief, the FirstEnergy Defendants explained in detail why the

Complaint's allegations do not establish the requisite scienter as to each defendant charged with

an Exchange Act violation.  (Br. at 36-48.)  In response, Plaintiffs fail to grapple with the

standard for scienter, dismiss Defendants' authority in unpersuasive footnotes, and repeatedly

rely on this Court's decision in *St. Louis v. Jones*, which is about a different claim, with different

elements and different pleading standards.  Plaintiffs largely ignore the Defendants' arguments

about the Complaint's lack of particularized facts to support a strong scienter inference,

especially as to the 2017-2018 time period.  Because the Complaint fails to plead a strong

inference of scienter for each Exchange Act Defendant, it must be dismissed.

### A.    To Plead Scienter, The Complaint Must Plead Specific Facts As To Each Exchange Act Defendant's Actual Knowledge.

The PSLRA requires a complaint to "state ***with particularity*** facts giving rise to a ***strong***

inference" of scienter.  15 U.S.C. § 78u-4(b)(2).  The scienter inference "must be more than

merely ***plausible or reasonable***."  *Tellabs*, *Inc., v. Makor Issues & Rights, Ltd,* 551 U.S. 308,

309 (2007).  Rather, it must be "***strong***" and "***cogent and at least as compelling as any opposing***

***inference of nonfraudulent intent***."  *Id.*

-23-

In their opening brief, the FirstEnergy Defendants demonstrated that the requisite mental state here is actual knowledge, not recklessness. (Br. at 30-33.) Plaintiffs do not respond to that argument. By and large, they appear to concede that actual knowledge is necessary, arguing only (incorrectly) that the Complaint meets that standard. (*See* Opp'n at 29 (asserting that the "Complaint is replete with factual allegations of actual knowledge"); *id.* at n.8 (arguing that Defendants' statements were "knowingly false when made" and that "intentional or willful conduct" underlies the scheme allegations).) Plaintiffs' occasional attempt to tack on the word "recklessness" in response to arguments about individual defendants' scienter (*e.g.*, *id.* at 53) is insufficient. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (finding issues "unaccompanied by some effort at developed argumentation, are deemed waived").

The only dispute, then, is whether the Complaint contains particularized factual allegations giving rise to a strong inference that each Exchange Act Defendant had actual knowledge of fraud. The Complaint does not clear this high bar.

### B. The Allegations Purportedly Showing Scienter Fall Short.

In their opening brief, the FirstEnergy Defendants demonstrated that the Complaint lacks particularized facts showing that each Exchange Act Defendant actually knew of the purported scheme or that the challenged statements were false or misleading when made. (Br. at 36-48.) Citing numerous decisions, the FirstEnergy Defendants explained that the Complaint's allegations about the following do not plead scienter: (1) after-the-fact admissions, employment actions, and lawsuits; (2) "direct participation" and a "cover-up"; (3) "magnitude" of contributions; (4) capital, credit ratings, and performance-based compensation; and (5) stock trading. (*Id.*)

Despite dedicating 27 pages of their opposition to scienter, Plaintiffs relegate to footnotes their attempts to distinguish Defendants' authorities supporting the above conclusions. None of

those footnotes are persuasive.  Plaintiffs first contend broadly that "Defendants' cited authority lacks the detailed factual allegations regarding the scheme that are present here in abundance." (Opp'n at 30 n.9.)  But contrary to Plaintiffs' contention, the Complaint does not contain detailed factual allegations about what each Exchange Act Defendant knew at the relevant times.  *See, e.g.*, *infra* at 29-32, 34-36 (explaining insufficiency of scienter allegations as to Taylor and Strah).  Allegations based on a defendant's position at the company, such as in the Complaint, are precisely the type that courts reject as insufficient.  *See, e.g.*, *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 828 (8th Cir. 2003) (finding allegation that "someone who may have been involved in the scheme 'reported' to [a defendant] is not specific enough to support a strong inference that he knew of or participated in the fraudulent practice while it was occurring") (cited at Br. at 34, 38).

Plaintiffs attempt to distinguish Defendants' cases by stating, in the context of the alleged magnitude of the scheme, that the authority "merely states that accounting claims standing alone are insufficient to allege scienter."  (Opp'n at 34 n.11.)  But Plaintiffs ignore the full holdings and rationale in those cases.  In *Louisiana School Employees' Retirement System,* for example, the court specifically rejected the plaintiff's argument "that the magnitude of the fraud supports the inference that [defendant] acted with scienter."  *Louisiana Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 483 (6th Cir. 2010) (cited at Br. at 43).  The court found that "accounting errors alone cannot support a finding of scienter," and further held that inferring scienter "from the magnitude of the fraud," as Plaintiffs ask this Court to do, would require "hindsight, speculation, and conjecture."  *Id.* at 484.  So too here.

Finally, Plaintiffs characterize the cases Defendants cite as involving only "lower level employees."  (Opp'n at 35 n.12.)  But Plaintiffs ignore the cases Defendants cite involving high-

level executives. For example, in *Das*, both the company's head of Legal & Regulatory Affairs and the chief executive of the Energy & Minerals Group were terminated in connection with a payment alleged to be a bribe. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 797-98 (S.D.N.Y. 2018) (cited at Br. at 34-35, 37, 39, 41-43). Like in *Das*, the Complaint here fails to allege with sufficient particularity that each Exchange Act Defendant had the requisite scienter. Plaintiffs also wrongly accuse Defendants of advocating for a piecemeal approach. (Opp'n at 28.) Not so. Defendants agree that courts consider the totality of circumstances, *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011), but submit that, after considering "all of the facts alleged, taken collectively," the Court should conclude that, even together, the Complaint's allegations fail to "give rise to a strong inference of scienter," *id.* (citing *Tellabs*, 551 U.S. at 322-23).

### C. The Complaint's Failure To Plead Scienter As To The 2017-2018 Period Is Particularly Glaring.

Of the 25-plus pages they devote to scienter arguments, Plaintiffs devote almost nothing to the 2017 and 2018 time period. Indeed, nowhere do Plaintiffs explicitly argue that the allegations they identify as supposedly establishing scienter also give rise to a strong, cogent, and compelling scienter inference for statements or actions in 2017 and 2018, *before* Householder was elected Speaker in 2019 and *before* HB6 was written, introduced, and enacted in 2019. That implicit concession is, again, consistent with Plaintiffs' characterization of their case as centered on the enactment of HB6 and the defeat of the repeal initiative, both of which occurred in 2019. *See supra* at 15.

Of the few allegations in their scienter discussion that Plaintiffs address, none establish scienter during 2017 or 2018, far less as to each and every Exchange Act Defendant. First, allegations about telephone calls involving Dowling, who is alleged to have been "responsible for FirstEnergy's governmental and regulatory affairs, energy policies, community outreach, and

political action committee," and Pine, a former FirstEnergy lobbyist, and Householder do not suffice. (Opp'n at 42-44.) The Complaint does not allege any specific facts about the contents of the calls, and the scienter inference they ask the Court to draw from the allegations about subsequent contributions is neither "strong" nor "cogent," given the allegations about Dowling and Pine's job duties. Second, allegations that certain Defendants participated in investor calls in which misstatements were allegedly made (Opp'n at 48, 50) do not establish anything about the requisite mental state of any Defendant. *See In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 971 (S.D. Ohio 2009) (a plaintiff must allege "specific facts or circumstances suggestive of [a defendant's] knowledge").

### D. The *St. Louis* Decision Does Not Dictate The Outcome On The Scienter Inference.

In attempting to establish scienter, Plaintiffs repeatedly refer to this Court's decision in a related shareholder derivative case. (Opp'n at 33, 36, 51 (all citing *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 1890490 (S.D. Ohio May 11, 2021)). But this Court's decision in *St. Louis* does not control the analysis here and provides no support for Plaintiffs' scienter inference. That is because, in *St. Louis*, this Court held that scienter is not an element of a Section 14(a) claim, but that mere negligence is enough. 2021 WL 1890490, at *13. The elements of a claim under Rule 10b-5 are, of course, distinct from those of a Section 14(a) claim, and do include scienter (a point Plaintiffs do not dispute). *See, e.g.*, *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009); *Nat'l Century I*, 2006 WL 469468, at *21. Thus, *St. Louis* cannot be dispositive as to whether Plaintiffs have successfully pled scienter under Rule 10b-5.

*St. Louis*'s holding that the complaint pled that a majority of the director defendants in that case knew about or recklessly disregarded purported "red flags" does not apply here for at least two reasons. 2021 WL 1890490, at *20. First, pleading scienter under the PSLRA is

-27-

different from pleading demand futility in a derivative case, and the "strong inference" requirement of the PSLRA does not apply in a derivative case.

Second, *St. Louis* applied a recklessness standard that does not apply here, as explained above. (*See* Br. at 30-33 (explaining why actual knowledge is required to plead scienter under a misstatement theory concerning soft information and under a scheme-liability theory).) The court concluded that there were "red flags" that "put the[] [directors] on notice of possible misconduct," giving rise to an inference that the directors "recklessly disregarded their duties to the Company." *St. Louis*, 2021 WL 1890490, at *20-21; *see also id*. at *20 (characterizing a "red flag" theory as one that turns on directors "recklessly fail[ing] to investigate"). As courts thus recognize, "red flag" theories sound in recklessness and cannot show actual knowledge. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 686 (6th Cir. 2004) (cited in Br. at 31, 40, 45) (explaining that "[d]eliberately ignoring 'red flags'" can "constitute the sort of *recklessness* necessary to support § 10(b) liability"); *Heinert v. Bank of Am. N.A.*, 835 F. App'x. 627, 631 (2d Cir. 2020) ("'[R]ed flags,'… are not the same as actual knowledge.") (collecting cases rejecting attempts to impute actual knowledge based on purported "red flags"). Furthermore, *St. Louis*'s determination regarding the directors' state of mind is not relevant to the non-director Defendants here, including Strah and Taylor, as neither were members of the board during the putative class period. For these reasons, *St. Louis*'s conclusion about the alleged "red flags" is not relevant to the scienter issue here.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST STRAH AND TAYLOR.

For all of the reasons set forth above, the Complaint fails to state a claim as to any FirstEnergy Defendant during any time period. The Complaint's allegations, however, are particularly sparse and insufficient as to Strah and Taylor.

-28-

### A. There Are No Particularized Facts To State A Claim As To Strah.

The Complaint's pleading failures as to Strah are many, and they require that the claims against him be dismissed. In addition to failing to adequately plead that Strah had scienter, the Complaint fails to plead scheme liability against Strah because he is not alleged to have engaged in an inherently deceptive act. The Complaint also fails to plead an actionable misstatement or omission against Strah. It alleges that Strah signed certifications about internal controls and opined about the Company's "good regulatory relationships," but those allegations do not suffice because the Complaint contains no facts showing the statements were false when made or that Strah actually knew they were false at that time.

### 1. The Complaint Fails To Plead Scienter As To Strah.

To start, the Complaint fails to plead a strong inference of scienter as to Strah. In their opposition, Plaintiffs point to only two sets of allegations about him: first, that Strah was a high-level executive during the putative class period who, in his capacity as an officer, signed SEC filings; and second, that he offered an opinion statement in April 2020 about FirstEnergy's regulatory relationships. (Opp'n at 52-53 (citing, *e.g.*, ¶¶ 30, 134, 226).) As demonstrated in our opening brief (Br. at 40-42), those allegations do not give rise to a strong inference of scienter, as they do not show actual knowledge, or even recklessness, on Strah's part.

The first set of allegations—that Strah was a high-ranking executive who signed SEC filings—is an attempt to impute scienter based on his position. The Sixth Circuit forbids such an inference. (*See* Br. at 40 (*citing PR Diamonds*, 364 F.3d at 688; *Konkol*, 590 F.3d at 397; *see also Huntington*, 674 F. Supp. 2d at 972 n.10 ("the signatures on the Sarbanes-Oxley certifications are not probative of scienter" where the complaint fails to plead facts showing or suggesting knowledge of any falsity "at the time they signed the certifications"). Plaintiffs

ignore the impact of these cases on their allegations about Strah, and disregard *Huntington* altogether.

Instead, Plaintiffs cite *Jackson County Employees' Retirement System v. Ghosn*, 2020 WL 7711378 (M.D. Tenn. Dec. 29, 2020), in effort to sidestep their obligation to plead with particularity that Strah knew about the supposed scheme. Their reliance on *Ghosn* to argue that Strah is "presumed" to know about the supposed scheme (Opp'n at 52) tacitly admits that the Complaint's particularized facts do not show Strah's actual knowledge. Furthermore, the Complaint does not set forth specific facts showing that the contributions were "central" to the "business operations" of FirstEnergy as a utility company, in contrast with *Ghosn*. *See Ghosn*, 2020 WL 7711378, at *20 ("The *overall operation* of Nissan's corporate governance and internal controls, including *how director compensation* was set ... was a matter central to Nissan's operations."). An assertion that the legislation was important to FirstEnergy is not a particularized fact showing that Strah, as the Company's then-CFO, had contemporaneous actual knowledge that any contributions were improper.

Even setting aside their unsupported assertion that the alleged scheme was "central to FirstEnergy's business operations," Plaintiffs' argument fails for another reason: this Court has "rejected such general allegations that the receipt of reports or the access to information establishes a strong inference of scienter." *Huntington*, 674 F. Supp. 2d at 971. A complaint "insufficiently plead[s] scienter" where a plaintiff "summarily makes allegations of what the plaintiff ***thinks*** [the information] would have shown." *Id.* That is precisely what Plaintiffs do here, and why they ignore *Huntington*. The Complaint never identifies any specific report or document that Strah received, on any topic. Nor does it plead any facts about what information Strah was or was not provided relating to the Company's political contributions. Nor does it

allege that he ever was warned that any contributions were improper.  Without those allegations, the Complaint cannot establish a strong inference of scienter.  *See, e.g.*, *id.* (scienter cannot be inferred merely from the defendants' positions in the Company and alleged access to information).[14]

The second allegation—that Strah opined about FirstEnergy's stability and regulatory relationships—fares no better to show scienter.  (Opp'n at 52.)  Plaintiffs fail to acknowledge that such allegations may be probative of scienter only when pleaded in conjunction with "contemporaneous facts showing that the Defendants knew … that [their] statements were false." *Konkol*, 590 F.3d at 402.  Here, the Complaint is devoid of specific facts connecting Strah with the contributions to Generation Now or showing that he knew the contributions were improper.  There can be no scienter inference from these allegations, far less a strong, cogent one. *See id.* at 403 ("Without specific allegations showing that the Defendants either knew of or recklessly disregarded the falsity of their own statements at the time the statements were made, the fact that their statements later turned out to be false is irrelevant to a cause of action under the PSLRA.").

Similarly, Plaintiffs' arguments relating to Strah's compensation fall far short of showing that Strah knew of any alleged scheme.  (Opp'n at 53.)  Plaintiffs cite no cases holding that mere allegations about compensation can support a strong inference of scienter.  And for good reason.  In this Circuit, "an executive's desire to protect his position within a company or increase his compensation" does not "comprise a motive for fraud." *PR Diamonds*, 364 F.3d at 690.  Similarly, an assertion that a defendant's compensation was linked to company performance is

---

[14] Plaintiffs' reliance on *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683 (E.D. Mich. 2010), is misplaced.  In that case, the defendant "express[ly] disavow[ed]" any "participation in any agreements with competitors to divide customers or territories, while simultaneously allegedly agreeing with competitors to do just that." *Id.* at 712.  Here, the Complaint fails to identify any "express disavowal" by Strah of the alleged scheme, or any particularized facts connecting him to the contributions to Generation Now at all.

not sufficient to support an inference of scienter, because that is true of most public-company executives. *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 741 (W.D. Ky. 2004); *see also I.B.E.W. v. Limited Brands, Inc.*, 788 F. Supp. 2d 609, 631 (S.D. Ohio 2011) (noting that "courts have rejected the assertion that an inference of fraudulent intent can be drawn from the mere fact that an executive is given an incentive to ensure that his or her corporation succeeds"). Plaintiffs do not dispute that, over the putative class period, Strah's shareholdings ***increased ten-fold*** and that he did not sell any of his FirstEnergy stock (Br. at 47), or that many courts have held that an increase in shareholdings and an absence of insider sales undermines any scienter inference (*id.* (citing cases)). Plaintiffs ignore those critical points.

At base, the Complaint lacks particularized factual allegations showing that, as to Strah, the Plaintiffs' proffered scienter inference is "***strong***" and "***cogent***" and "***at least as compelling*** as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 309. Because the Complaint fails to plead scienter as to Strah, the Exchange Act claims against him must be dismissed.

### 2. The Complaint's Other Failures Require Its Dismissal As To Strah.

Aside from its failure to plead scienter (which is dispositive of the Exchange Act claims against Strah), the Complaint fails in other ways, too, requiring the dismissal of all claims against Strah.

First, as our opening brief showed, the Complaint fails to plead particularized facts about Strah's participation in an inherently deceptive act. (Br. at 59.) Plaintiffs ***do not dispute*** that in their opposition; that concession alone justifies dismissal of the scheme liability claim against Strah. Furthermore, as the opening brief pointed out (Br. at 41), the Complaint asserts only in conclusory fashion that Strah "reviewed and determined the Company's accounting for its payment and political contributions." (¶¶ 225-26.) It does not allege any particularized facts

about Strah's conduct or knowledge, which is required to plead participation in a scheme.  *See Nat'l Century I*, 2006 WL 469468, at *21 (holding that Rule 9(b)'s particularity requirement applies to Rule 10b-5(a) and (c) claims).  Plaintiffs do not dispute that point either.  That too provides an independent basis to dismiss the scheme liability claim.

Second, Strah's opinion about the quality of FirstEnergy's relationship with its regulators (¶ 134) is inactionable under §§ 10(b), 11, or 12(a)(2).  (*See* Br. at 59-62.)  Plaintiffs' opposition underscores this conclusion.  They do not dispute that the statement in paragraph 134 is an opinion (*see* Br. at 61), and they point to no allegations showing that Strah did not honestly believe that FirstEnergy had "very good regulatory relationships" and was "low-risk" (¶ 134), and they identify no particular facts known to Strah that showed otherwise.  None of the arguments Plaintiffs advance to try to show that other opinion statements were not actually believed or lacked a reasonable basis (Opp'n at 62-63) apply to Strah, and Plaintiffs do not argue to the contrary.

Third, the Complaint also fails to plead the contemporaneous falsity of any alleged misstatement by Strah with the requisite particularity.  *See supra* at 15-19.  Plaintiffs contend that the following statement in certifications to SEC filings during the putative class period was false because, in late 2020, FirstEnergy disclosed weakness in its internal controls (¶ 295): "Based on [an evaluation of the effective of their internal control over financial reporting], management concluded that FirstEnergy's internal control over financial reporting was effective as of December 31, 2019."  (¶ 294 (cited at Opp'n at 79).)  But that statement and similar ones as of other dates in 2019 and 2020 are opinions, and the Complaint fails to allege particularized facts showing that Strah did not honestly believe that the controls were effective at any time when he signed the certifications or that he knew of specific contradictory information when he

signed any certification.  (Br. at 61-62.)  Indeed, the Complaint never identifies any document or information that Strah examined that would have shown any weaknesses in the Company's internal controls as of the date of any certification he signed.[15]

Because the Complaint fails in numerous ways to allege the particularized facts necessary to state a claim against Strah, the Complaint must be dismissed in its entirety as to him.

### B.      There Are No Particularized Facts To State A Claim As To Taylor.

The Complaint's claims against Taylor for violation of the Exchange Act also must be dismissed.  (Plaintiffs do not assert claims against Taylor under the Securities Act.)  The Complaint fails to plead a claim for scheme liability, including because the Complaint does not even allege that he was a "participant" in the scheme.  Plaintiffs largely abandon their attempt to hold Taylor liable for signing SEC filings that contained alleged misstatements, and their attempt to hold him liable for his "certi[fication]" of internal controls "during the Class Period" re-writes the Complaint.

### 1.      The Complaint Fails To Plead Scienter As To Taylor.

For the same reasons it fails to plead scienter as to Strah, the Complaint also fails to raise a strong, cogent, compelling scienter inference as to Taylor.  In their opposition, Plaintiffs rely on only two allegations against Taylor:  first, that he was, like Strah, a high-level executive during the alleged class period who signed SEC filings; and second, that he made certain statements after the class period.  (Opp'n at 53 (citing, *e.g.*, ¶¶ 31, 95-96, 179-192).)  Neither comes close to meeting the demanding scienter standard as to Taylor.

---

[15] Even if not an opinion, the Complaint alleges no facts showing that this statement was false when made. It alleges no specifics about Strah's "participation" in the review (¶ 295), and alleges no details about information he reviewed when making the conclusion about internal controls—far less does the Complaint identify any specific piece of information that Strah reviewed that actually showed weakness in controls as of any specific time when he signed certifications.

The first allegation fails for the same reason the similar contentions against Strah do: allegations about a defendant's position are insufficient to plead scienter in the Sixth Circuit. *See supra* at 29; *see also PR Diamonds*, 364 F.3d at 688; *Konkol*, 590 F.3d at 397 (same); *Huntington*, 674 F. Supp. 2d at 972 n.10 (all cited at Br. at 41-42). As with the insufficient allegations about Strah, Plaintiffs' reliance on *Ghosn* to argue that Taylor is "presumed" to know about the supposed scheme (Opp'n at 53) is a tacit admission that the Complaint's particularized facts do not show any such knowledge by him.

Plaintiffs also contend that Taylor "oversaw FirstEnergy's Ohio operations and its financial disclosures to investors" and thus should be presumed to have known about matters central to FirstEnergy's business operations under *Ghosn*. (Opp'n at 53.) This argument is easy to dispense with, as there is no such allegation in the Complaint. Nowhere does the Complaint allege that Taylor "oversaw FirstEnergy's Ohio operations" or that Taylor oversaw "financial disclosures to investors." Plaintiffs cannot rewrite the Complaint through their opposition brief. *See Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 584 (E.D. Mich. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Even if such a conclusory allegation were in the Complaint, it would not be enough. As with Strah, the Complaint never identifies any specific report or document that Taylor examined, or supplies any facts about what Taylor saw or did not see in his purported review of the Company's political contributions or what conclusions he did or did not draw from that information, as is required to establish scienter. *See Huntington*, 674 F. Supp. 2d at 971.

Nor does the Complaint allege any sales of stock, as the FirstEnergy Defendants pointed out. (Br. at 47.) Like Strah, Taylor's holdings significantly ***increased*** during the class period.

(*Id.*)  Plaintiffs do not contest that, just as they cannot dispute the cases that hold that this negates any scienter inference.  (*Id.* at 47-48 (citing cases).)

Finally, Plaintiffs' argument relating to statements Taylor made in November 2020 (four months after the end of the class period) regarding FirstEnergy's October 2020 disclosure of violations of its policy and code of conduct by now-former employees and possible weakness in its internal controls (Opp'n at 53) is a non-starter.  That Taylor acknowledged those violations is not a particularized fact showing that, at any earlier time, he actually knew (or even was reckless in not knowing) about any violation of FirstEnergy policies or code or of any weakness in internal controls.  *See Konkol*, 590 F.3d at 403 ("Without specific allegations showing that the Defendants either knew of or recklessly disregarded the falsity of their own statements at the time the statements were made, the fact that their statements later turned out to be false is irrelevant to a cause of action under the PSLRA.").

Because the Complaint fails to allege particularized facts giving rise to a strong, cogent, and compelling inference of scienter as to Taylor and because Taylor is a defendant as to only the Exchange Act claims, all claims against him must be dismissed.

    **2.**  **The Complaint's Other Failures Require Its Dismissal As To Taylor.**

In addition to failing to plead scienter as to Taylor, the Complaint is deficient in other ways, too.

First, as the FirstEnergy Defendants demonstrated, Taylor is not even alleged to have been a "[d]irect [p]articip[ant]" in the purported scheme.  (Br. at 58; *see also* ¶¶ 219-30 (no allegations about Taylor in the section of the Complaint titled "Defendants' Direct Participation in the Bailout Scheme" section of the Complaint).)  Plaintiffs do not deny that.  That alone requires dismissal of the scheme liability claim against Taylor.  *See In re Nat'l Century II*, 553 F.

Supp. 2d at 909 ("[T]o be liable, a defendant must engage in conduct that is in itself deceptive[.]").

Second, as the FirstEnergy Defendants pointed out (*see* Br. at 58), the Complaint alleges only that Taylor signed SEC filings that contained supposed contained misstatements. But allegations that Taylor signed SEC filings in 2017 and 2018 in which the Company stated that it was pursuing "legislative or regulatory solutions" (¶¶ 95-96) do not state a claim for misstatement liability against him, and neither do the allegations about risk disclosures (¶ 101). Without particularized allegations showing "why the disputed statement was untrue or misleading when made," the Complaint pleads impermissibly fraud by hindsight. *See Albert Fadem Tr. v. Am. Elec. Power Co., Inc.*, 334 F. Supp. 2d 985, 1024 (S.D. Ohio 2004) (cited in Br. at 24-25.)[16] (*See also* Br. at 59-65 (also no liability for opinions, omissions).)

Effectively conceding the insufficiency of the Complaint's allegations to plead a misstatement claim against Taylor, Plaintiffs try to rewrite the Complaint. They now contend that "Taylor *certified* multiple SEC filings during the Class Period" about internal controls and that, "shortly thereafter" those certifications, FirstEnergy disclosed deficiencies in its internal controls. (Opp'n at 53 (citing ¶¶ 95-96, 182-192).) But the Complaint does not allege that Taylor (who did not become CFO until May 2020 (¶ 31)) certified any SEC filings that are at issue in the Complaint (*see* ¶¶ 98, 102). The Complaint against Taylor must therefore be dismissed in its entirety.

---

[16] To the extent Plaintiffs attempt to allege any misstatement liability against Taylor in connection with his participation in earnings calls (¶¶ 103, 113, 118, 152), that effort must be rejected. *See Commc'ns Workers of Am. Plan for Emps.' Pensions & Death Benefits v. CSK Auto Corp.*, 525 F. Supp. 2d 1116, 1121 (D. Ariz. 2007) ("mere participation in conference calls during the Class Period is not sufficient to subject [the participant] to liability"). There are no allegations that Taylor *spoke* during those calls, let alone made any supposed misstatements or omissions. Taylor is therefore not the "maker" of any misstatements and cannot be held liable under Rule 10b-5(b). *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011). This argument applies with equal force to Strah. (*See* ¶¶ 121, 124, 127, 129, 132, 134, 152.)

V.     **THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE 2019-2020 PERIOD.**

A.     **The Complaint's Failures To State A Claim As To The 2017-2018 Period Also Apply To The 2019-2020 Period.**

Plaintiffs' allegations about the 2019-2020 period are insufficient for the same reasons the Complaint fails to state a claim as to 2017 and 2018. First, the Complaint fails to plead specific facts necessary to state a scheme liability claim in 2019 and 2020. Plaintiffs do not dispute (nor can they) that there was no public disclosure of the alleged scheme until after the class period. (*See* Br. at 54.) Because the alleged scheme was concealed from the investing public until July 2020, the critical element of reliance is lacking. (*Id.*; *see also supra* at 9.) Moreover, the scheme, as alleged in the Complaint, consisted of efforts to "draft[], introduce[], pass[], and then defend[] HB6." (¶ 64.) But actions performed in connection with legislation is not market activity as contemplated by Rule 10b-5(a) and (c), and thus the "in connection with" requirement is not satisfied. (*See* Br. at 50-51; *see also supra* at 5-8.)

Second, the Complaint fails to plead a claim under 10b-5(b) in 2019 and 2020. Plaintiffs allege that Defendants' 2019 and 2020 statements were "false and misleading when made" and that "defendants knew or recklessly disregarded" the "true facts" relating to HB6 and political contributions and reporting. (¶ 136.) But, as Defendants pointed out, most of the statements Plaintiffs challenge, including statements about the merits of HB6, are inactionable opinions. (*See* Br. at 59-62; *see also supra* at 19-21.) Plaintiffs fail to identify any allegation in the Complaint showing that any FirstEnergy Defendant did not actually believe these statements or lacked a reasonable basis for believing them. Moreover, and as Plaintiffs do not dispute, the Complaint fails to identify any specific law, provision, or regulation that the Defendants violated, as this Circuit requires. (Br. at 11-12, 62; *see also supra* at 17-19.) That is fatal that misstatement and omission claims.

Finally, the Complaint fails to plead scienter as to every Exchange Act Defendant in 2019 and 2020.  For example, the only allegations in 2019 and 2020 relating to Strah—other than the fact of his employment at FirstEnergy (¶ 30) and compensation for his job (¶¶ 248-49)—are that he signed certifications for SEC filings (¶¶ 98, 102) and participated in earnings calls (¶¶ 127, 129, 132, 134, 152).  Similarly, other than his employment (¶ 31), the Complaint alleges only that Taylor participated in earnings calls.  (¶¶ 152, 179-181, 196).  But signing SEC filings and participating in earnings calls is not inherently deceptive conduct and does not give rise to a strong inference that either Taylor or Strah (or other Defendants) knowingly participated in a deceptive scheme—these are things that any CFO does as an ordinary part of the job.  *See Nat'l Century II*, 553 F. Supp. 2d at 909 (it is not enough to allege that defendants "simply engag[ed] in non-deceptive conduct that supports an overall deceptive scheme"); *St. Louis*, 2021 WL 1890490, at *13 (noting statutory language for creating scheme liability "connote[s] knowing and intentional practices").  Nor do such generic allegations give rise to a strong, compelling, cogent inference that Strah or Taylor (or other Defendants) actually knew that any challenged statement in 2019 or 2020 was false when made.  *See Tellabs*, 551 U.S. at 309.  At bottom, the Complaint, within its four corners, fails to plead particularized facts to give rise to a strong inference of scienter.

### B.  The Section 12(a)(2) Claim Against The Non-Management Directors Must Be Dismissed.

As demonstrated in the opening brief, the Section 12(a)(2) claim against the non-management directors for notes offerings in 2020 must be dismissed because they were not statutory sellers.  (Br. at 65-66.)  Allegations that the directors signed the registration statement or were named as directors in the offering documents are insufficient under this Court's decision in *EveryWare* (cited at Br. at 66).  That is all that is alleged here.  (¶ 281.)  Plaintiffs ignore

*EveryWare*.  Instead, they cite a few cases purporting to show that signing the registration statement and/or being named as directors in offering materials is sufficient.  (*See* Opp'n at 84.)  But Plaintiffs' own case recognizes that "more recent cases . . . have come to the opposite conclusion" and have held that signing a registration statement does not constitute solicitation.  *See In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 402-03 (S.D.N.Y. 2013) (collecting cases).  Moreover, each of the cases cited by Plaintiffs is outside this Circuit and each of them pre-dates this Court's decision in *EveryWare*.  *EveryWare* holds that "merely signing a registration statement is insufficient to show 'solicitation' of purchase."  175 F. Supp. 3d at 868.  That should end the matter.

Plaintiffs' feeble attempt to argue that the Complaint alleges more than the directors' positions and roles in signing the registration statement is unpersuasive.  Asserting that the directors "promoted and sold FirstEnergy notes to Plaintiffs and other members of the Class for their own benefit" (¶ 313) is conclusory and thus insufficient.  *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) ("[P]laintiffs' bald and factually unsupported allegation that the issuer and individual officers of the issuer "solicited" the plaintiffs' securities purchases is not, standing alone, sufficient.").  Plaintiffs' contention that this is a factual dispute not suitable for resolution on a motion to dismiss (Opp'n at 85) also falls flat.  *EveryWare* was decided on a motion to dismiss.  Just as this Court did in *EveryWare*, it should dismiss the Section 12(a)(2) claim against the non-management directors.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL LIABILITY.

For all of the reasons stated herein and in the Defendants' opening brief, the Complaint fails to state a claim for primary liability under the Exchange Act or the Securities Act.  The secondary claims under § 20(a) of the Exchange Act and § 15 of the Securities Act, therefore,

must also be dismissed. *See IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325, 328 (6th Cir. 2017) (affirming dismissal).

## <u>CONCLUSION</u>

For the foregoing reasons, the FirstEnergy Defendants respectfully submit that the Complaint must be dismissed.

Dated:  August 2, 2021                                   Respectfully submitted,

                                                                    s/ Geoffrey J. Ritts
                                                                    Geoffrey J. Ritts, Trial Attorney (0062603)
                                                                    Robert S. Faxon (0059678)
                                                                    JONES DAY
                                                                    North Point
                                                                    901 Lakeside Avenue
                                                                    Cleveland, OH  44114.1190
                                                                    Telephone:  (216) 586-3939
                                                                    Facsimile:  (216) 579-0212
                                                                    Email:  gjritts@jonesday.com
                                                                    Email:  rfaxon@jonesday.com

                                                                    Marjorie P. Duffy (0083452)
                                                                    Jordan M. Baumann (0093844)
                                                                    JONES DAY
                                                                    325 John H. McConnell Boulevard, Suite 600
                                                                    Columbus, OH  43215-2673
                                                                    Telephone:  (614) 469-3939
                                                                    Facsimile:  (614) 461-4198
                                                                    Email:  mpduffy@jonesday.com
                                                                    Email:  jbaumann@jonesday.com

                                                                    *Attorneys for Defendants FirstEnergy Corp.,
                                                                    Steven E. Strah, K. Jon Taylor, Jason J.
                                                                    Lisowski, George M. Smart, Paul T. Addison,
                                                                    Michael J. Anderson, Steven J. Demetriou,
                                                                    Julia L. Johnson, Donald T. Misheff, Thomas
                                                                    N. Mitchell, James F. O'Neil III, Christopher
                                                                    D. Pappas, Sandra Pianalto, Luis A. Reyes,
                                                                    Jerry Sue Thornton, and Leslie M. Turner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will notify all counsel of record.

s/ Geoffrey J. Ritts
_____
Geoffrey J. Ritts, Trial Attorney (0062603)

*One of the Attorneys for Defendants*
*FirstEnergy Corp., Steven E. Strah, K. Jon*
*Taylor, Jason J. Lisowski, George M. Smart,*
*Paul T. Addison, Michael J. Anderson, Steven*
*J. Demetriou, Julia L. Johnson, Donald T.*
*Misheff, Thomas N. Mitchell, James F. O'Neil*
*III, Christopher D. Pappas, Sandra Pianalto,*
*Luis A. Reyes, Jerry Sue Thornton, and Leslie*
*M. Turner*