**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | |
|---|---|
| **IN RE FIRSTENERGY CORP. SECURITIES LITIGATION,**<br><br>**This Document Related to:**<br><br>ONLY Case No. 2:20-cv-03785-ALM-KAJ | : Case No. 2:20-cv-03785-ALM-KAJ<br>: Chief Judge Algenon L. Marbley<br>: Magistrate Judge Kimberly A. Jolson<br>:<br>: **DEFENDANT TY PINE'S REPLY TO**<br>: **PLAINTIFFS' OMNIBUS OPPOSITION**<br>: **TO DEFENDANTS' MOTIONS TO**<br>: **DISMISS**<br>:<br>: <u>**ORAL ARGUMENT REQUESTED**</u><br>:<br>: |

**I.     INTRODUCTION**

While the filings may be voluminous and the issues complicated overall in this case, the Motion to Dismiss of Defendant Ty Pine (Doc. Nos. 166 and 167; "Mr. Pine's Motion"), who was only recently brought into this action by Plaintiffs' February 26, 2021 Consolidated Complaint (Doc. 72; "Complaint"), the only action he has been brought into, is relatively straightforward and demonstrates that the claims against Mr. Pine should be dismissed.

Plaintiffs, by way of improper grouping, and conclusory allegations and inferences, attempt to lump Mr. Pine, a lobbyist, into their claims under Count I (false statements and scheme liability) and Count II (control person liability) in this action. In response to Mr. Pine's Motion, and without apology, Plaintiffs now admit that they included Mr. Pine in their defined grouping of "Officer Defendants" not because he actually was an officer of FirstEnergy but for *their* "ease of reference" and also admit that he was improperly included in Count II—"Plaintiffs are not pursuing control person claims against him." Doc. 176 (Omnibus Opposition to Defendants' Motions to Dismiss ("Opposition")), fn. 23, PageID 4140. Plaintiffs further admit,

despite prevalent overreaching in their group allegations, that they actually only seek a claim against Mr. Pine under a portion of Count I, for scheme liability. Doc. 176, PageID 4140.

As to scheme liability, Plaintiffs argue in their Opposition that they have made "overwhelming allegations the he was a 'central liaison' between FirstEnergy and corrupt Ohio politicians," but those allegations amount to nothing more than that Mr. Pine, a lobbyist, communicated with politicians, and worked with Ohio state legislators to draft and pass HB6 through the legislative process—again, this is precisely what a registered lobbyist advocating his client's legislative position does. The heightened pleading requirements to bring a claim for scheme liability and the protections of the PSLRA exist for a reason—to protect persons such as Mr. Pine from being improperly swept into an action in the absence of specific factual allegations as to each element of the claim specific to him. Plaintiffs, even seven months after their original Complaint and after all of the investigations and media to which they cite, have made no such specific factual allegations as to Mr. Pine. For example, he was not an officer, he was not a director, he is not alleged to have made any act specific to the alleged scheme, he is not alleged to have caused any illicit payment to be made or even to have known of any, and he is not alleged to have had any financial or other motivation to advance the alleged scheme. Plaintiffs fail to demonstrate how the allegation that Mr. Pine, a lobbyist, had a few phone calls with legislators around the time $400,000 out of $60 million in alleged illicit payments were made by others during the alleged scheme meets the elements of their claim against Mr. Pine. Plaintiffs instead overreach again by conclusively arguing *in briefing* that Mr. Pine "committed these acts to advance the Bailout Scheme" and "his central role in FirstEnergy's fraudulent bailout scheme" without any allegation in the Complaint to back up those arguments. This is wholly insufficient to satisfy the applicable heightened pleading standards.

Mr. Pine further incorporates by reference the FirstEnergy Defendants' Reply in Support of Their Motion to Dismiss the Consolidated Complaint For Violations of Federal Securities Laws (Doc. 193) in support of dismissal of the Complaint in general and the claims against him.

Accordingly, Plaintiffs' admission that they are not pursuing control person liability against Mr. Pine requires that their Count II claim as against him must be dismissed and Plaintiffs' wholly unsupported Count I claim for scheme liability as against him must be dismissed, with the result that Mr. Pine should be dismissed from this action.

## II.     PLEADING STANDARDS

Plaintiffs' provision of the pleading standards on which this Court must review Mr. Pine's Motion omits a key qualification: that the Complaint must include *more* than mere conclusory statements and cannot rely on mere labels and defined terms in evaluating plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements"). Further, when a claim is required to meet the heightened pleading requirements of Rule 9(b), such as with a claim for scheme liability under 10b-5(a) and (c), "a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)." *In re Aegean Marine Petroleum Network, Inc.*, No. 18 Civ. 4993 (NRB), 2021 U.S. Dist. LEXIS 59803, at *66 (S.D.N.Y. March 29, 2021) *quoting In re Refco Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007). "The 'failure to isolate key allegations against each defendant supports dismissal under the standards set forth in Twombly and Iqbal.'" *Id.* citing *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ.

3

2837, 2012 U.S. Dist. LEXIS 172208, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012, *aff'd* 530 F. App'x 19 (2d Cir. 2013)).

### III. LAW AND ARGUMENT

For the Court's reference, Plaintiffs' arguments specific to Mr. Pine in their Opposition are located on Opposition pages 32, 44 and 71-72. Doc. 176, PageID 4101, 4113 and 4140-41.

### A. Plaintiffs admit that they did not plead a claim for control liability against Mr. Pine; Mr. Pine should be dismissed from Count II of the Complaint.

Mr. Pine's Motion demonstrates that Plaintiffs failed to plead facts to support a claim for control liability against him; Plaintiffs improperly included Mr. Pine in the definition of "Officer Defendants" and "Exchange Act Defendants" (Doc. 72, PageID 1556 at ¶¶ 34, 39), thereby improperly lumping him into Count II of the Complaint (*Id.* at 1646-47 at ¶ 273). In its Opposition, Plaintiffs admit that they improperly defined Mr. Pine for their convenience and that they have no claim under Count II for control liability against him:

> Pine was included in the definition of Officer Defendants for ease of reference in the Complaint. ¶¶34, 39. However, Pine's position as a First Energy lobbyist is accurately described in ¶¶34 and 223, and Plaintiffs are not pursuing control person claims against him.

Doc. 176, fn. 23, PageID 4140. Accordingly, Mr. Pine's Motion as applicable to Count II should be granted.

### B. Plaintiffs did not plead specific facts to support a claim for scheme liability against Mr. Pine; Mr. Pine should also be dismissed from Count I of the Complaint.

Mr. Pine's Motion further demonstrates that Plaintiffs failed to meet each of the elements of a claim for scheme liability against him. Doc. 167, PageID 2376-81. Though Plaintiffs' Opposition admits "the Complaint does not allege that [Pine] made any actionable statements" (Doc. 176, fn. 23, PageID 4140), they maintain that the Complaint still supports a claim for relief

4

under "10b-5(a) and (c) scheme liability" (*Id.* at PageID 4113 and 4140-41). But Plaintiffs' vague, conclusory and group allegations and arguments of counsel in briefing[1] are insufficient.

"To state a claim under Rule 10b-5(a) or (c), the plaintiff must allege that a defendant (1) committed a deceptive or manipulative act, (2) with <u>scienter</u>, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries." *E.g.*, *Aegean*, 2021 U.S. Dist. LEXIS 59803, *67 (citations omitted) (emphasis in original). Where a plaintiff fails to direct individualized allegations against a defendant, instead lumping that defendant in with other defendants "making only vague allegations about his participation," the heightened pleading standards are not met. *See Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387, 394-395 (Del. 2016) (dismissing 10(b) claim against a defendant to whom plaintiff did not attribute specific statements and did not allege specific facts or circumstances; the allegation that he "collectively prepared and delivered" presentations to management and the board of directors was insufficient). *See also Byrd v. Visalus, Inc.*, No. 17-cv-12626, 2018 U.S. Dist. LEXIS 57826, at *9 (E.D. Mich., April 5, 2018) ("'At a minimum, Plaintiffs must allege the time, place *and contents* of the misrepresentations upon which they relied'" (emphasis added) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008))); and *In re EveryWare Global, Inc. Secs. Litig.*, 175 F. Supp. 3d 837, 850 (S.D. Ohio 2016) (Marbley, C.J.), *aff'd sub nom. IBEW Local No. 58 Annuity Fund v. EveryWare Global, Inc.*, 849 F.3d 325 (6th Cir 2007) ("Plaintiffs' Section 10(b)

---

[1] Arguments of counsel in opposition to a motion to dismiss, even if as to facts, are not permitted to supplement a party's complaint to avoid dismissal and should be ignored. *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 636 (S.D. Ohio 2020) ("additional factual details in [plaintiff's] response brief . . . are not contained in the complaint, and thus, the Court does not consider them for purposes of evaluating the [defendant]'s motion to dismiss") (citing *Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 541-42 (6th Cir. 2012) ("The Court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (quoting in a parenthetical 2 Moore's Federal Practice, § 12.34 (Matthew Bender 3d ed.))).

and Rule 10b-5 claims are subject to the particularity pleading requirements of Rule 9(b), which, in the context of an Exchange Act claim, require a plaintiff to specify the fraudulent statements, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent") (citing *Frank v. Dana Corp.*, 547 F. 3d 564).

Here, Plaintiffs' Opposition fails to demonstrate that the first and second elements of scheme liability (a culpable act and scienter) were sufficiently pled and, with no specific culpable act by Mr. Pine pled, the third and fourth elements[2] also could not have been pled.

      1.     <u>Plaintiffs did not specifically plead facts to support the element of a culpable act by Mr. Pine</u>.

Mr. Pine's Motion demonstrates that Plaintiffs failed to allege that Mr. Pine committed any deceptive or manipulative act. Doc. 167, PageID 2376-79. There are no allegations in the Complaint that Mr. Pine committed any deceptive, manipulative or otherwise illegal act whatsoever. There is not even an allegation that Mr. Pine knew of the alleged scheme. Instead, there are merely allegations that he was a lobbyist, that he had communications with politicians and that he worked on HB6 with legislators. Plaintiffs create the label of "central liaison" and speciously attempt to argue that Mr. Pine *must have* done something wrong because he had calls with politicians around the same time that FirstEnergy (not Mr. Pine) made payments to other entities—but these are either not factual allegations or are not specific to Mr. Pine.

In their Opposition, Plaintiffs merely reiterate that Mr. Pine, a lobbyist, was "in direct contact with co-conspirators to the Bailout Scheme via a multitude of phone calls and other contacts." Doc. 176, PageID 4101-02. The remaining argument of that paragraph relates to what

---

[2] In other words, the only alleged act against Mr. Pine is that he performed his role as a lobbyist in working with the Ohio legislature to pass HB6; that act is not the act claimed to have caused Plaintiffs' injuries. Rather, Plaintiffs allege that the illicit bribery scheme caused their damages and there are no factual allegations against Mr. Pine tying him to that bribery scheme.

6

Mr. Jones said and what standard should apply to "high level executives," which Mr. Pine was not—Plaintiffs' definition of him as an "Officer Defendant" for their "ease of reference" cannot make it so. Further, Plaintiffs string cite to paragraphs in the Complaint as allegations supporting "*his* central role in FirstEnergy's fraudulent bailout scheme" (Doc. 176, PageID 4141; emphasis added), but no such factual allegations *as to Mr. Pine* are actually present:

| Cited Paragraph | Actual Allegation Regarding Mr. Pine in that Paragraph |
|---|---|
| 3 | No allegations regarding Mr. Pine; generic allegations, conclusively alleging "an elaborate network of lobbyists, shell companies and political action committees" |
| 4 | No allegations regarding Mr. Pine; generic allegation that the scheme was overseen by Jones and "numerous other executives" |
| 93 | No allegations regarding Mr. Pine; generic allegation that the scheme involved "[p]aying lobbyists to orchestrate and execute the political corruption" |
| 135 | No allegations regarding Mr. Pine; generic allegations regarding other Defendants' statements |
| 136 | No allegations regarding Mr. Pine; generic allegations regarding other Defendants' statements |
| 137 | No allegations regarding Mr. Pine; generic allegations regarding FirstEnergy's political spending |
| 138 | No allegations regarding Mr. Pine; generic allegations regarding FirstEnergy's political spending |
| 171 | No allegations regarding Mr. Pine; allegations regarding the guilty pleas of Longstreth and Cespedes, a different, retained lobbyist |
| 205 | No allegations regarding Mr. Pine; allegations regarding the guilty plea of Generation Now |
| 215 | No allegations regarding Mr. Pine; generic allegations of "Defendants' scienter," the actions of Generation Now and Longstreth |
| 216 | No allegations regarding Mr. Pine; allegations of terminations by FirstEnergy of its executives for wrongdoing (not including Mr. Pine) |
| 223 | The only paragraph that does actually address Mr. Pine and includes the mere allegations of phone calls with politicians, working on HB6 and working with the Ohio legislature to pass it |

The fact that Plaintiffs cite to eleven wholly irrelevant and non-specific paragraphs to try to keep a claim alive against Mr. Pine demonstrates just how deficient their allegations are against him. *See Gordon v. Elite Consulting Group L.L.C.*, No. 09-CV-10772, 2009 U.S. Dist. LEXIS 108019, at *15-16 (E.D. Mich., Nov. 18, 2009) (reliance on other defendants' fraudulent

7

statements and omissions is insufficient; plaintiffs must prove "reliance upon [the individual defendant]'s *own* alleged deceptive conduct") (emphasis in original).

Plaintiffs further argue in their Opposition that the Court should not view their allegation that Mr. Pine had telephone calls with politicians as part of his job as a lobbyist but that instead the Court should view such allegation as "well-pled allegations that Pine committed these acts to advance the Bailout Scheme, which was intended to and did defraud the Company's investors." Doc. 176, PageID 4140. Such a leap would defy the very tenet of heightened pleading standards that are at the heart of Rule 9(b) and the PSLRA; by this logic, every person that had any role whatsoever related to legislative affairs for FirstEnergy or related to HB6 could be brought in as a defendant based on such connection alone. Plaintiffs make a further impermissible leap when counsel argue that the phone contacts "occurred ***in conjunction with*** payments from First Energy to fund the Bailout Scheme"—there is in fact no factual allegation in the Complaint as to the substance of Mr. Pine's phone calls, that Mr. Pine ever spoke of any payment on such phone calls, that any phone call actually was the basis for any payment, that Mr. Pine caused any payment or that he even had knowledge of the payment. Plaintiffs merely threw a dart at the calendar and happened to find calls around the time others—not Mr. Pine—are alleged to have made and received payments. Plaintiffs are stretching far too far.

Plaintiffs' case law does not aid their argument. Plaintiffs' reliance on *Cardinal Health* for the proposition that "Courts may presume that high-level executives are aware of matters related to their business' operation where the misrepresentations or omissions pertain to 'central, day-to-day operational matters'" is flawed and misplaced. In contrast to other defendants, Mr. Pine is not properly alleged to be a "high-level executive" and lumping him into a definition of "Officer Defendants" without any factual basis for doing so does not make him one. Further, the *Cardinal Health* court dismissed claims against an individual defendant because, unlike the

8

"high-level executive" co-defendants "responsible for day-to-day operations and issues relating to . . . financial performance" who "signed off on . . . corporate disclosure statements or participated in conference calls with analysts and investors," plaintiffs in that case did not plead facts showing that the dismissed defendant "had any involvement in certifying corporate documents to the extent of the other Individual Defendants . . . [or] ever participated in conference calls with analysts and investors." *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 744 (S.D. Ohio 2006) (dismissing an individual defendant even though plaintiffs "alleged facts showing that [she] was a high-level executive"). Similarly, here there are no *factual* allegations that Mr. Pine had any authority or involvement in regard to any allegedly illicit payments.

Plaintiffs also cite *In re ForceField Energy Inc. Sec. Litig.*, 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) with a parenthetical that states "scheme liability adequately pled where inference that Defendant 'authorized and knew of [wire] transfers' was 'just as plausible and compelling' as non-culpable inference." However, the court in *ForceField* made clear that "there is no conspiracy liability in a private right of action brought under Section 10(b) or Rule 10b-5" (*21) and the allegation being evaluated in that case related to the authorization and knowledge of and payments by a small company's three executives, who were the only executives in the small company.³ In contrast, there is no factual allegation here that credibly leads to the conclusion that Mr. Pine, a lobbyist, had any financial authority whatsoever within FirstEnergy to authorize or make payments from the company (he did not).

Similarly, Plaintiffs cite *In re Cognizant Tech. Solutions Corp. Secs. Litig.*, No. 16-6509 (ES) (CLW), 2020 U.S. Dist. LEXIS 98830, at *38 (D.N.J. June 5, 2020) with a parenthetical

---

³ Courts find "special circumstances" exist when a small company is involved. *See Stephens,* 2016 U.S. Dist. LEXIS 91897, *37 citing *Local 731 I.B. v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016).

9

that states "rejecting Defendants' 'attempt[] to debunk plaintiffs theory' because it 'defie[d] logic at the pleading state.'" But the court in *Cognizant* was evaluating actual statements the plaintiff alleged in the complaint that the defendant made versus the defendant's argued explanations for such statements. That is not the situation here; here there is a wholesale lack of factual allegations of culpable acts by Mr. Pine.

> 2. Plaintiffs did not specifically plead facts to support the element of scienter as to Mr. Pine.

Mr. Pine's Motion demonstrates that Plaintiffs failed to allege that Mr. Pine acted with scienter. Doc. 167, PageID 2379-81. The Opposition argues for an inference of scienter against all of the Defendants based on all of the allegations of the overall scheme and specific allegations against other Defendants, but not specific allegations as to Mr. Pine. This is insufficient.

"Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *Aegean,* 2021 U.S. Dist. LEXIS 59803, *98; *see also Stephens v. Uranium Energy Corp.*, 2016 U.S. Dist. LEXIS 91897, *42 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud."). "[S]cienter allegations are analyzed separately for each defendant." *Aegean*, 2016 U.S. Dist. LEXIS 91897, *42 (dismissing claim for scheme liability).

"It is [also] insufficient to impute to each defendant a kind of collective knowledge that all the corporation's officers and employees acquired in their employment." *Stephens,* 2016 U.S. Dist. LEXIS 91897, *35. "The allegations claimed to show scienter on each defendant's part must be analyzed individually to determine whether the complaint sufficiently pleads scienter as to that defendant." *Id.* "[C]ourts may not 'construe allegations contained in the Complaint against the defendants as a group as properly imputable to any particular individual defendant

unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Id.* at *35-36 citing *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

While a strong inference of scienter may be established by alleged facts demonstrating "(1) that defendants had the motive and opportunity to commit fraud,[4] or (2) strong circumstantial evidence of conscious misbehavior or recklessness" (*Aegean,* 2021 U.S. Dist. LEXIS 59803, *69), no such factual allegations are made as to Mr. Pine in the Complaint.

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, [p]laintiff[] must allege that [defendants] 'benefitted in some concrete and personal way from the purported fraud.'" *Aegean,* 2021 U.S. Dist. LEXIS 59803, *69 (finding that where the plaintiff failed to plead that certain individual defendants "benefitted in a concrete and personal way, lead plaintiff has simply failed to plead motive and opportunity arising from the Fraudulent Scheme itself as to" those defendants). Here, while Plaintiffs argue that they have alleged personal gain (*see* Doc. 176, PageID 4101), that is simply not true with regard to Mr. Pine—Mr. Pine was not an officer or director and is not actually included among the allegations of high salaries and bonuses (*see* Doc. 72, PageID 1636-38). There is no allegation that Mr. Pine stood to gain anything "in a concrete and personal way" from the alleged scheme. Hence, Plaintiffs cannot demonstrate that they have alleged scienter as against Mr. Pine by inference based on motive and opportunity.

"Where a plaintiff does not make a showing of motive, 'the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater.'" *Aegean,* 2021 U.S. Dist. LEXIS 59803, *69-70 (citations omitted). The burden is on the

---

[4] "[A]llegations of motive and opportunity standing alone will not suffice . . . ." *Stephens,* 2016 U.S. Dist. LEXIS 91897, *37 citing *Local 731 I.B. v. Diodes, Inc.*, 810 F.3d 951 (5th Cir. 2016).

"plaintiff to prove that an inference of fraud is as compelling as a benign inference…." *Id.* at *114. Titles and proximity are not sufficient. For example, "[a]llegations regarding a defendant's title, Board membership, and/or signatures on documents…are plainly insufficient to allege scienter as to each defendant." *Id.* at *98; *see also Stephens,* 2016 U.S. Dist. LEXIS 91897, *37 ("Without more, 'an officer's position with a company does not suffice to create an inference of scienter.'"). "[A]llegations of a close relationship [with the alleged scheme perpetrator] fail to establish the kind of circumstantial evidence necessary to support a claim of fraudulent or reckless intent." *Aegean,* 2021 U.S. Dist. LEXIS 59803, *123. Allegations of physical proximity are insufficient. *Id.* "Allegations regarding core operations, the size of the fraud, and restated financials are not, on their own, sufficient to allege scienter." *Id.* at 124.

Here, Plaintiffs in their Opposition do not even attempt to contradict Mr. Pine's point that the Complaint fails to allege he knew of the scheme or of the alleged illicit payments. *See* Doc. 176, PageID 4113. The allegations concerning Mr. Pine do not, either individually or collectively, support fraudulent conduct or scienter, because they amount only to the tasks and goals specifically permitted under Ohio lobbying law in his role as a lobbyist.

That Mr. Pine was a liaison between FirstEnergy and the Ohio legislature was his job as a lobbyist. That Mr. "Pine worked closely with Ohio state legislators to draft HB6 on behalf of First Energy and possessed intimate knowledge about the Company's efforts to shepherd the legislation through the Ohio legislature" was also part of his job as a lobbyist. That Mr. Pine had numerous phone calls with Ohio state legislators was also part of his job as a lobbyist. Accepted as true, Plaintiffs' allegations that an Ohio registered lobbyist knew of his employer's desire for specific favorable legislation and helped draft and promote the legislation, the very essence of the entire lobbying system, simply do not constitute the strong showing of circumstantial allegations required to meet the high burden of an inference of scienter as to Mr. Pine. Indeed, to

attach an inference of scienter as to Mr. Pine based on these threadbare allegations would eviscerate the heightened pleading standards of Rule 9(b) and the PSLRA.

Moreover, Plaintiffs do not make any allegation about what Mr. Pine said during his communications with legislators. They merely insinuate that the *only* plausible contents of the communications between a lobbyist and legislators was a nefarious bribery plot based on the theory that in one instance two days after calls on March 12 and 13, 2018, "FirstEnergy wired $300,000" to the entities Plaintiffs allege were part of a "corrupt enterprise." In a second instance, Plaintiffs allege that after five calls between May 1 and May 4, 2018, "FirstEnergy made a $100,000 payment to members of the Bailout Scheme" on an unidentified date. Plaintiffs offer no allegation of any connection whatsoever between Mr. Pine and the alleged payments other than proximity in time of a few calls to two payments. Plaintiffs also offer no reason why an inference of scienter is any more likely than the obvious, non-culpable explanation that FirstEnergy's lobbyist was promoting legislation favorable to FirstEnergy through traditional, direct correspondence with the legislature. *See In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 531 (S.D.N.Y. 2020) (dismissing claim for scheme liability where the "circumstantial evidence . . . [was] not as compelling as the obvious, non-culpable explanation").

Plaintiffs ask this Court to accept their conclusion that the obvious nonculpable explanation—that Mr. Pine "was doing his job honestly and with integrity"—would "require ignoring overwhelming allegations that his actions were key" to FirstEnergy's allegedly illegal contributions. But *their* conclusion is the one that ignores the obvious—if there was a causal connection between the identified phone contacts between Mr. Pine and Ohio legislators and FirstEnergy's $300,000 and $100,000 payments, Plaintiffs do not account for the other $59,600,000 in allegedly illicit payments forming the basis of their claim. Plaintiffs' logic—that because 0.67% of allegedly illegal contributions were made in the days after FirstEnergy's

13

lobbyist had phone contacts with Ohio legislators *must* mean those phone contacts "were key to facilitating" FirstEnergy's bribery scheme—supports neither the conclusion that Mr. Pine participated in the alleged scheme nor that he acted with scienter. By Plaintiffs' logic, scienter would be inferred as to every person who spoke to Ohio legislators within 2-4 days of any alleged payment made by FirstEnergy. This cannot be the case.

Plaintiffs' reliance on *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 U.S. Dist. LEXIS 97942, 2018 WL 2933406, at *9 (M.D. Tenn. Apr. 19, 2018) overreaches. That opinion stresses "Plaintiffs contend that Defendants had the *opportunity* to delay because they were the highest-ranking executives in the companies" (emphasis in original). The *Zwick* court's statement that its "role is not to scrutinize each allegation in isolation, but to assess all the allegations holistically" does not mean a court is permitted to assess *all* allegations against *all* defendants—it is not. *Id.* at *25.

Accordingly, Mr. Pine's Motion should also be granted as to Count I for scheme liability and he should be dismissed from this action given that there are no other claims against him.

## IV. CONCLUSION

It is difficult to understand why Plaintiffs even attempted to add Mr. Pine to this action in the Consolidated Complaint. Plaintiffs have admitted they stretched their group pleading against him too far, even erroneously including him in claims for misstatements and control liability. Their allegations against him are conclusory, generic and innocuous at best—he was a lobbyist doing what a lobbyist does, trying to advance legislation for a client. There are no salacious allegations of massive salaries, bonuses, statements, or actions against him, and certainly none that support the heightened pleading requirements of Rule 9(b) and the PSLRA. Indeed, if the threadbare allegations against Mr. Pine were to pass muster at the Rule 12(b)(6) stage on a claim for scheme liability, the floodgates would open to sue countless people doing their jobs,

14

including essentially anyone communicating with legislators, anyone supporting HB6, legislators, etc. For the reasons set forth in Mr. Pine's Motion and herein, Mr. Pine should be dismissed from this action. Mr. Pine renews his request for oral argument.

                                              Respectfully submitted,

                                              <u>/s/John R. Mitchell</u>
John R. Mitchell, Trial Attorney (#0066759)
Kip T. Bollin (#0065275)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
John.Mitchell@ThompsonHine.com
Kip.Bollin@ThompsonHine.com

Christine M. Haaker (#0063225)
THOMPSON HINE LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342-4934
Telephone: 937.443.6822
Facsimile: 937.443.6635
Christine.Haaker@ThompsonHine.com

*Attorneys for Defendant Ty R. Pine*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF System which shall send notification of such filing to all counsel of record.

/s/ John R. Mitchell
John R. Mitchell
