UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Kimberly A. Jolson |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING INTERLOCUTORY APPEAL

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com


Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com


Class Counsel

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................2

III. DEFENDANTS HAVE FAILED TO JUSTIFY A STAY OF THE LITIGATION ...........7

 A. Movants Do Not Show a Strong Likelihood of Success on the Merits ...................9

  1. Movants Concede Plaintiffs Can Prove Classwide Reliance.......................9

  2. Movants' *Comcast* Argument Is Unlikely to Succeed and Even if It Does, Would Not Result in Decertification ...............................................10

 B. Movants Will Not Suffer Any Irreparable Harm Absent a Stay...........................11

  1. Movants Do Not Identify Any Irreparable Harm ......................................12

  2. The Likelihood of Injury Is Slim to Non-Existent....................................13

 C. A Stay Will Substantially Prejudice Plaintiffs.......................................................16

 D. The Public Interest Weighs Against a Stay............................................................18

IV. CONCLUSION....................................................................................................20

4869-5532-0215.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*,
310 F.3d 927 (6th Cir. 2002) ....................................................................................9

*Beattie v. CenturyTel, Inc.*,
2006 WL 1722207 (E.D. Mich. June 20, 2006).........................................16, 19, 20

*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*,
2023 WL 3004148 (S.D. Ohio Apr. 18, 2023) ...............................................12, 16

*Cosby v. KPMG, LLP*,
2021 WL 1828114 (E.D. Tenn. May 7, 2021)...........................................................10

*Cosby v. KPMG, LLP*,
2021 WL 2668803 (E.D. Tenn. June 29, 2021)....................................................9, 10

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
2020 WL 5250492 (D. Neb. Sept. 3, 2020) .............................................................17

*Daniels v. City of New York*,
138 F. Supp. 2d 562 (S.D.N.Y. 2001).......................................................................18

*Earl v. Boeing Co.*,
21 F.4th 895 (6th Cir. 2021) .....................................................................................13

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) ......................................................................7, 12

*Grae v. Corr. Corp. of Am.*,
2019 WL 1746492 (M.D. Tenn. Apr. 18, 2019).........................................................7

*IBEW Loc. 98 Pension Fund v. Best Buy Co.*,
2014 WL 4540228 (D. Minn. Sept. 11, 2014)..........................................................17

*In re Acadia Healthcare, Inc.*,
2023 WL 3620955 (6th Cir. May 23, 2023) ...............................................................9

*In re Amgen Inc. Sec. Litig.*,
2010 WL 11469044 (C.D. Cal. Feb. 2, 2010)............................................................8

*In re Bancorpsouth, Inc.*,
2017 WL 4125647 (6th Cir. Sept. 18, 2017) ...........................................................10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
208 F.R.D. 1 (D.D.C. 2002)......................................................................................20

4869-5532-0215.v1

**Page**

*In re Petrobras Sec.*,
  193 F. Supp. 3d 313 (S.D.N.Y. 2016) .......................................................................18

*In re Polyurethane Foam Antitrust Litig.*,
  2014 WL 12591692 (N.D. Ohio May 16, 2014) ....................................................16, 18

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  279 F.R.D. 447 (S.D. Ohio 2012) ..............................................................................6

*In re Symington*,
  211 B.R. 520 (Bankr. D. Md. 1997) ..........................................................................18

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ...................................................................................14

*JAC Holding Enters. Inc. v. Atrium Cap. Partners, LLC*,
  997 F. Supp. 2d 710 (E.D. Mich. 2014) ...................................................................15

*Kentucky v. Biden*,
  23 F.4th 585 (6th Cir. 2022) ...................................................................................20

*Lorenzo v. SEC*,
  587 U.S. ___, 139 S. Ct. 1094 (2019) ....................................................................15

*Lyngaas v. Curaden AG*,
  2019 WL 2635966 (E.D. Mich. June 27, 2019) .........................................................18

*Mart v. Tactile Sys. Tech., Inc.*,
  595 F. Supp. 3d 788 (D. Minn. 2022) ......................................................................15

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
  945 F.2d 150 (6th Cir. 1991) ...............................................................................9, 12

*Nieberding v. Barrette Outdoor Living, Inc.*,
  2014 WL 5817323 ..................................................................................................12

*Ohio Env't Council v. U.S. Dist. Ct., S.D. Ohio, E. Div.*,
  565 F.2d 393 (6th Cir. 1977) ...................................................................................16

*Olden v. LaFarge Corp.*,
  383 F.3d 495 (6th Cir. 2004) .....................................................................................9

*Pena v. Taylor Farms Pac., Inc.*,
  2015 WL 5103157 (E.D. Cal. Aug. 31, 2015) ...........................................................12

**Page**

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021) ...............................................................................15

*Shanehchian v. Macy's, Inc.*,
    2011 WL 13157172 (S.D. Ohio Apr. 27, 2011) ...............................................12

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
    2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022) .............................................10

*Strougo v. Tivity Health, Inc.*,
    2023 WL 4830593 (M.D. Tenn. July 27, 2023) ...............................................12

*Tipton v. CSX Transp., Inc.*,
    2017 WL 4583248 (E.D. Tenn. Oct. 13, 2017) ..........................................12, 18

*Todd v. STAAR Surgical Co.*,
    2017 WL 821662 (C.D. Cal. Jan. 5, 2017) .........................................................8

*Willis v. Big Lots, Inc.*,
    2017 WL 11634939 (S.D. Ohio Sept. 19, 2017) ...........................................9, 10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) .................................................................................................................2
    §77k ....................................................................................................................2
    §77k(a) ................................................................................................................2
    §77l(a)(2) ............................................................................................................2
    §77o ....................................................................................................................2
    §78t(a) .................................................................................................................2

Federal Rules of Civil Procedure
    Rule 1 ...............................................................................................................1, 2
    Rule 23 ................................................................................................................8
    Rule 23(b)(3) ..................................................................................................3, 14
    Rule 23(f) ................................................................................................. *passim*

17 C.F.R.
    §240.10b-5 ..........................................................................................................2

4869-5532-0215.v1

## I.     INTRODUCTION

No Court has ever forced a stay of fact and expert discovery for a Rule 23(f) appeal where, as here, the plaintiffs' claims will continue regardless of the outcome on appeal and the defendants have expressly acknowledged that class-certification is inevitable.  Moreover, this appeal will not alter or eliminate a single factual allegation.  Rather, it is limited to: (1) how those factual allegations should be *characterized*; and (2) whether the Court adequately assessed if Plaintiffs' proposed damages methodology is consistent with their theory of liability.  Specifically, the first question is whether Plaintiffs' allegations plead a fraud that primarily concerns information Defendants omitted or primarily information Defendants affirmatively misrepresented.  If it is the former, the *Affiliated Ute* presumption of reliance applies; if it is the latter, the *Basic* presumption applies.  The Movants (FirstEnergy, the Director Defendants, and four Individual Defendants) contend that the Court erred in finding the former, rather than the latter. But either way, Movants concede that a classwide presumption of reliance applies, and the exact same factual allegations will remain regardless of their appeal.  Regarding the second question, Movants do not contend, here or before the Sixth Circuit, there is *no* valid methodology capable of measuring Plaintiffs' Exchange Act damages on a classwide basis.  They simply contend that the Court erred in finding that Plaintiffs have adequately explained their methodology.  But Movants will get exactly what they claim to want as this case progresses because Plaintiffs' experts will provide a detailed application of their damages methodology during expert discovery regardless of the Sixth Circuit's decision.

No aspect of Movants' Rule 23(f) appeal will impact discovery here – not the facts at issue nor the damages Plaintiffs must prove.  As such, Plaintiffs respectfully request that the Court deny the requested stay and get this case back on the "just, speedy, and inexpensive" (*less* expensive is more apt here) track the Federal Rules of Civil Procedure require.  Fed. R. Civ. P. 1.

- 1 -

## II.     BACKGROUND[1]

This case was initiated on July 28, 2020 and Plaintiffs filed the operative Complaint on February 26, 2021.  *Id.*, ECF 72 at PageID 1545-674.   In the Complaint, Plaintiffs brought claims under the Securities Exchange Act of 1934 (the "Exchange Act") for violations of §§10(b) and 20(a) (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5(a)-(c) promulgated thereunder  (17 C.F.R. §240.10b-5), and under the Securities Act of 1933  (the "Securities Act") for violations of §§11, 12(a)(2), and 15 (15 U.S.C. §§77k, 77l(a)(2) and 77o).  *Id.* at PageID 1645-47, 1654-58.[2]  With respect to the Exchange Act claims, Plaintiffs pled that the element of reliance was satisfied pursuant to both the *Basic* and *Affiliated Ute* presumptions of reliance.  *Id.* at PageID 1639-40.[3]

On June 14, 2021, the Court granted Plaintiffs' motion for a partial lift of the statutory stay of discovery in securities fraud actions and ordered FirstEnergy to produce to Plaintiffs whatever materials it was already producing in other proceedings.  Order, ECF 175 at PageID 4052-54.  All other discovery continued to be stayed pending a ruling on Defendants' motions to dismiss.[4]

---

[1]     All terms not otherwise defined herein have the same meaning as set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF 293-1).  Unless otherwise noted, all emphasis is added and citations are omitted. All "Ex(s).__" references are to the exhibits attached to the Declaration of Jason A. Forge, filed concurrently herewith.

[2]     In sum, the Exchange Act claims involve open market transactions in FirstEnergy common stock and bonds and the Securities Act claims involve transactions in FirstEnergy bonds purchased in or traceable to offerings in February and June 2020.  *See* Complaint, ECF 72 at PageID 1640-45 (¶¶258-267), 1649-50 (¶¶285-290).

[3]     There is no reliance element for the Securities Act claims as all individuals who purchase securities in or traceable to offerings are presumed to have relied on the offering documents. *E.g.*, 15 U.S.C. §77k(a) (no reliance requirement for those who have purchased before the Company has issued an earnings statement covering 12 months, and reliance for those aftermarket purchasers may be proven "without proof of the reading of the registration statement by such person").

[4]     One month later, on July 21, 2021, FirstEnergy admitted in a Deferred Prosecution Agreement ("DPA") that it paid millions of dollars to public officials in exchange for specific official action for its benefit, and thus, conspired to commit honest services wire fraud.  *See* DPA, ECF 259-5 at PageID 6000-48.

On March 7, 2022, the Court issued its Opinion & Order (ECF 219) denying Defendants' motions to dismiss with a few minor exceptions.  Order, ECF 219 at PageID 4717-91.  The Court specifically rejected Defendants' contention that Plaintiffs had failed to plead reliance for the Exchange Act scheme liability claim, finding both: (1) "*Basic*'s 'fraud-on-the-market theory,' 485 U.S. at 241, applies here because the Court has found that Defendants made material misrepresentations in their public statements" that "had a purposeful role in the alleged scheme"; and (2) "[t]he *Affiliated Ute* presumption likewise appears appropriate because the Court has found that Defendants made omissions of material fact." *Id.* at PageID 4767.  The Court's denial fully lifted the statutory discovery stay and Defendants did not ask to reimpose it pending class certification.

In accordance with the Court's scheduling orders, Plaintiffs filed their Motion for Class Certification on June 6, 2022.  Plaintiffs moved to certify the Class pursuant to Rule 23(b)(3), setting forth, *inter alia*, the applicability of both the *Affiliated Ute* and *Basic* presumptions of reliance for the Exchange Act claims and the distinct damages methodologies applicable on a classwide basis for Securities Act and Exchange Act claims.  Class Cert. Mot., ECF 293 at PageID 6229-40.  In support of their motion, Plaintiffs submitted expert reports from W. Scott Dalrymple and Cynthia L. Jones who opined on the efficiency of the market and the means of measuring damages under Plaintiffs' theory of liability for, respectively, FirstEnergy common stock and bonds.  Dalrymple Rpt., ECF 293-7 at PageID 6276-352; Jones Report, ECF 293-8 at PageID 6354-460.

After 10 weeks of class certification discovery, Defendants filed their opposition to class certification.  Class Cert. Opp., ECF 339 at PageID 7161-7578.  In sum, Defendants argued: (1) Plaintiffs' Exchange Act damages methodology was insufficient because it did not account for what Defendants called "time-varying inflation" (*id*. at PageID 7182-90) (Defendants did not challenge Plaintiffs' Securities Act damages methodology)); (2) Plaintiffs were not entitled to the *Affiliated Ute* presumption of reliance and that the Court had to apply the *Basic* presumption of reliance to the

- 3 -

claims regardless of whether they were based on a scheme, misrepresentations, or omissions (*id*. at PageID 7191-98); (3) that while the *Basic* presumption applied to FirstEnergy's common stock investors, Plaintiffs had not established the Company's bonds traded in an efficient market and therefore the presumption of reliance did not apply to the Exchange Act claims for bond investors (*id*. at PageID 7198-220); and (4) that three of the four named plaintiffs would not adequately represent the Class.  *Id*. at PageID 7221-27.  Defendants relied on the expert report of Jennifer Marietta-Westberg who criticized Plaintiffs' analysis of the efficiency of the market for FirstEnergy bonds, but did not offer an opinion on whether or not that market was efficient, and argued that the Plaintiffs' experts did not explain how their Exchange Act out-of-pocket damages methodology would account for the possibility of time-varying inflation during the Class Period. Marietta-Westberg Rpt., ECF 339-5 at PageID 7464-541.  Defendants' opposition did not seek to stay discovery, pending the outcome of Plaintiffs' motion.

Plaintiffs filed their reply brief on September 28, 2022, including their experts' rebuttal reports (Class Cert. Reply, ECF 346 at PageID 7606-8346; Jones Rebuttal Rpt., ECF 346-2 at PageID 7704-43; Dalrymple Rebuttal Rpt., ECF 346-3 at PageID 7745-54), and the Court had oral argument on March 17, 2023.  During the argument, the Court focused on the applicability of the *Affiliated Ute* and *Basic* presumptions of reliance and the damages methodology for Plaintiffs' Exchange Act claims, as well as reliance issues for certain Individual Defendants who were not alleged to have made any statements. 3/17/23 Hr'g Tr., ECF 437.  Defendants' arguments focused on the *Affiliated Ute* presumption of reliance and the Exchange Act damages methodology. *E.g.*, *id*. at PageID 9856-60 (13:12-17:18), 9861 (18:15-23), 9873-77 (30:19-34:7), 9881-85 (38:15-42:9). Under questioning from the Court, Defendants acknowledged: "[W]e're not questioning that there is a class that will be certified here at some point." *Id*. at PageID 9837.  Defendants did not ask the Court to stay discovery pending its determination of Plaintiffs' motion.

Two weeks later, on March 30, 2023, the Court issued a 51-page Opinion & Order (ECF 435) ("Class Certification Order"), finding that Plaintiffs satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements and that the Class satisfied the implicit ascertainability requirement. *Id.* at PageID 9794-806.  The Court also held that Plaintiffs had satisfied Rule 23(b)(3)'s "predominance" requirement by: (a) proffering damages methodologies for both the Exchange Act and the Securities Act claims that each showed, in accordance with *Comcast*, damages could be calculated on a classwide basis (*id.* at PageID 9813); and (b) establishing that the Class was entitled not only to the *Affiliated Ute* presumption of classwide reliance because "the communications at issue ***are primarily omissions-based***," but also, in the alternative, by establishing that "[e]ven if this case involved primarily ***misstatements***, Plaintiffs would be entitled to the *Basic* presumption." *Id.* at PageID 9821-25 (second emphasis in original).[5]

Defendants did not seek reconsideration or clarification of the Class Certification Order. Instead, on April 13, 2023, Movants filed Defendant FirstEnergy Corp.'s and Certain Individual Defendants' Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f), (ECF 577-3) (the "Petition"). *Id.*, at PageID 12465-554.  Movants raised two purported bases for overturning the Class Certification Order.  First, Movants claimed Chief Judge Marbley misapplied the *Affiliated Ute* presumption by "suggest[ing]" that *Affiliated Ute* applies to cases "involving both omissions and affirmative misstatements, rather than those that 'primarily involv[e] omissions,'" and thus, improperly applied *Affiliated Ute* "regardless of whether 'Plaintiffs' allegations hinge upon mostly or exclusively omissions.'" *Id.* at PageID 12482-86.  Second, Movants claimed the Court's "damages" findings must be overturned because Chief Judge Marbley: (i) purportedly failed to apply

---

[5]     Following a Motion for Clarification filed by Plaintiffs (ECF 439-1), on April 18, 2023, the Court clarified its Class Certification Order to confirm that it "preclude[d] Plaintiffs from relying on the *Basic* presumption to satisfy the reliance element for the Non-Speaking Defendants." Supplemental Order, ECF 446 at PageID 10139.  Thus, the Court granted Plaintiffs' request to "dismiss Count I as to the Non-Speaking Defendants and dismiss Defendant Ty Pine altogether." *Id.*

"*any* scrutiny" to ensure that Plaintiffs' Exchange Act damages methodology was consistent with their liability theory; and (ii) erroneously based the certification of the Exchange Act class on his "inapposite" Securities Act damages reasoning. *Id.* at PageID 12489-92. Movants' Petition did not ask the Sixth Circuit to stay discovery while it considered, or in the event it granted, the Petition.

On November 16, 2023, just under six months after the Petition was fully briefed (Pltfs' Answer, ECF 577-10 at PageID 12658-94; Reply Pet., ECF 577-11 at PageID 12696-714), the Sixth Circuit granted the Petition. Order, ECF 577-12 at PageID 12716-20. In doing so, the Sixth Circuit panel simply noted that it had "'unfettered' discretion" to grant a Rule 23(f) petition on grounds of "any relevant factor [it] find[s] persuasive," concluding, without explanation or analysis, that "interlocutory review of the district court's order certifying a class action is appropriate." *Id*. at PageID 12716-17. The Sixth Circuit did not *sua sponte* stay discovery, as it had the power to do. *See, e.g.*, *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 279 F.R.D. 447, 447 (S.D. Ohio 2012) ("On July 26, 2011, the Court issued an order in which it *sua sponte* stayed all discovery save for jurisdictional discovery involving Plaintiffs and Defendant Dr. Ing. . . .").

Subsequently, on November 27, 2023, Special Master Judge stated during a teleconference hearing that he intended to grant Plaintiffs' motion to compel FirstEnergy to produce documents related to the Company's internal investigation into the HB6 bribery scheme that had been withheld on the grounds of attorney-client privilege or work-product protection. That order was filed on November 29, 2023 (Order, ECF 571 at PageID 12371-89), and Movants immediately moved to stay any discovery related to the internal investigation. Stay Mot., ECF 574 at PageID 12396-421. Special Master Judge heard oral argument on the motion to stay on the morning of November 30, 2023 and stated on the record that the motion was denied, and then issued an Order summarizing the denial. Order, ECF 575 at PageID 12422-24. Movants filed their present motion to stay all proceedings later the same day. Defs' Mem., ECF 577-1 at PageID 12431-99.

- 6 -

## III.     DEFENDANTS HAVE FAILED TO JUSTIFY A STAY OF THE LITIGATION

Employing their typical hyperbole, Movants profess that "Courts in this Circuit regularly stay proceedings" and "courts across the country routinely do the same" "pending the outcome of Rule 23(f) proceedings."  *See* Defs' Mem., ECF 577-1 at PageID 12443.  Belying this bluster, Movants identify a grand total of one case from within the Sixth Circuit, and not a single case from this District, in which the Court stayed fact discovery pending the outcome of a Rule 23(f) petition in a securities fraud class action.  That lone case, *Grae v. Corr. Corp. of Am.*, presented a highly unusual situation where the District Court had first denied the plaintiff's motion for class certification, only to later grant a motion for reconsideration and certify the class.  2019 WL 1746492, at *2 (M.D. Tenn. Apr. 18, 2019); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 484 (M.D. Tenn. 2019).  The *Grae* court evidenced considerable uncertainty as to whether the case should be certified at all; here, Movants have already conceded they are "not questioning that there is a class that will be certified here at some point."  3/17/23 Hr'g Tr., ECF 437 at PageID 9873.

Despite going back over a decade and scouring the entire country, Movants found only three other courts that stayed fact discovery pending the outcome of a Rule 23(f) petition in a securities fraud class action, and they are all inapt out-of-circuit cases.  *See* Defs' Mem., ECF 577-1 at PageID 12443.  In a textbook example of deception by omission, Movants list *N.J. Carpenters Health Fund v. Residential Cap., LLC*, No. 08-cv-8781-KPF-DCF, ECF 133 (S.D.N.Y. May 12, 2011) among the cases where "courts stay[ed] proceedings . . . in the middle of fact discovery" when a 23(f) appeal was pending.  Defs' Mem., ECF 577-1 at PageID 12443.  While it is literally true that the court in *N.J. Carpenters* stayed fact discovery while a 23(f) appeal was pending, Movants omit the fact that the 23(f) appeal in *N.J. Carpenters* was an appeal of a ***denial*** of class certification and the ***plaintiffs*** had requested the stay, with no opposition from the defendants.  *N.J. Carp. Vac. Fund v. Harborview Mortg. Loan Tr.*, No. 08-cv-05093-LAP-DFC, ECF 164 at 1-2 (S.D.N.Y. May 12, 2011).

Movants' other two out-of-circuit cases are also readily distinguishable.  In *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, No. 11-cv-00429-DWF-FLN (D. Minn. 2014), the district court expressed great uncertainty about its own class certification decision.  *Id.*, ECF 223 at 4 ("the Court acknowledges that the question of certification in this action was difficult and involved evolving and novel issues of law that were material to the Court's decision").  Here, the Court expressed no such reservations and Movants themselves have conceded that class certification is inevitable.  Likewise, in *Amgen*, the parties had stipulated to bifurcate discovery, agreeing to significantly limit the scope of discovery pre-class certification, with an immediate and significant expansion of the scope of discovery following a class being certified.  *In re Amgen Inc. Sec. Litig.*, 2010 WL 11469044, at *1-*3 (C.D. Cal. Feb. 2, 2010).  Here, the parties had no such agreement and discovery was in no way bifurcated; rather, document production is nearly complete and the parties are just about to make the turn for the home stretch of fact discovery.

Confirming the highly unusual nature of the relief Movants seek for a securities fraud class action, Movants wind up citing more non-securities fraud cases than securities fraud cases.  These non-securities fraud cases are inapt because "'securities fraud cases fit Rule 23 'like a glove.'"" *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017).  In contrast, no court has ever reached such a conclusion for the hodgepodge of consumer, labor, and RICO cases that comprise the majority of Movants' authority.

The reality is that Rule 23(f) expressly rejects any notion of presumptive stays when petitions are granted.  Fed. R. Civ. P. 23(f) ("An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.").  Instead, when evaluating whether a stay is warranted, Courts in this Circuit consider four factors:

> (1) [W]hether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies.

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). "The movant bears the burden of proving that the balance of these factors supports a stay." *Cosby v. KPMG, LLP*, 2021 WL 2668803, at *1 (E.D. Tenn. June 29, 2021). "Of course, in order for a reviewing court to adequately consider these four factors, the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). In lieu of identifying any specific facts or providing any affidavits in support of their motion, Movants lean on Judge Jolson's decision in *Willis v. Big Lots, Inc.*, 2017 WL 11634939 (S.D. Ohio Sept. 19, 2017). *E.g.*, Defs' Mem., ECF 577-1 at PageID 12437. But in *Big Lots*, the parties had already completed fact discovery, Judge Jolson required defendants to complete expert discovery, and the appeal concerned a case-dispositive issue – if the Sixth Circuit agreed with Defendants that the plaintiffs' "price maintenance" theory of price impact was not viable (a question of first impression), even the individual plaintiffs would no longer have claims. 2017 WL 11634939, at *3-*4.

A.     **Movants Do Not Show a Strong Likelihood of Success on the Merits**

"'The district court's decision *certifying* the class is subject to a "very limited" review and will be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion."'" *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (emphasis in original).

1.     **Movants Concede Plaintiffs Can Prove Classwide Reliance**

The Sixth Circuit's emphasis on its review of decisions *certifying* classes is a reminder of the unusually limited issues that Movants' 23(f) appeal presents and how Defendants' prior representations make it virtually impossible for Movants to succeed in preventing a Class from being certified here. Many 23(f) appeals challenge predominance findings relating to the reliance element, with defendants arguing that classes should not be certified because plaintiffs cannot establish reliance on a classwide basis. *See, e.g.*, *In re Acadia Healthcare, Inc.*, 2023 WL 3620955, at *2-*3

(6th Cir. May 23, 2023) (defendants claimed plaintiffs were not entitled to either *Basic* presumption of reliance *or Affiliated Ute* presumption); *Cosby*, 2021 WL 2668803, at *2-*3 (discussing defendants' appeal of application of either *Basic* or *Affiliated Ute*); *Big Lots*, 2017 WL 11634939, at *1-*2 (defendants appealed application of *Basic*, which was sole theory of reliance).  Here, however, Movants have **conceded** that Plaintiffs can establish classwide reliance.  This concession means that even if the Sixth Circuit does find that the Court erred in applying the *Affiliated Ute* presumption, the case would still move forward with the exact class the Court certified.  That is because the Court already found, and Movants concede, that the *Basic* presumption of reliance applies to Plaintiffs' Exchange Act claims regardless of whether or not *Affiliated Ute* applies:  "Even if this case involved primarily **misstatements**, Plaintiffs would be entitled to the *Basic* presumption."  Class Certification Order, ECF 435 at PageID 9822 (emphasis in original).[6]  In other words, even assuming Movants completely prevail on their *Affiliated Ute* appeal, it would do nothing to change the size or scope of the Class, let alone lead to decertification.[7]

### 2. Movants' *Comcast* Argument Is Unlikely to Succeed and Even if It Does, Would Not Result in Decertification

Movants' contention before the Sixth Circuit is not that the Plaintiffs' damages methodology is wrong, but simply that, "[b]ecause it remains 'unclear . . . how Plaintiffs plan to engage in the difficult process of' accurately estimating the varying inflation caused by Defendants' alleged

---

[6]      As discussed *supra*, there is no reliance element for Plaintiffs' Securities Act claims.

[7]      The Sixth Circuit could find that both the *Affiliated Ute* **and** *Basic* presumptions of reliance apply.  While Defendants argue that is an impossibility (Reply Pet., ECF 577-11 at PageID 12703-04), the one Sixth Circuit opinion addressing the issue upheld a grant of class certification in which the district court applied both *Basic* and *Affiliated Ute* in finding individualized issues of reliance would not predominate.  *In re Bancorpsouth, Inc.*, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017) (no abuse of discretion where court found *Affiliated Ute* and *Basic* presumptions applied); *see also Cosby v. KPMG, LLP*, 2021 WL 1828114, at *6 (E.D. Tenn. May 7, 2021) (reasoning that both presumptions could potentially apply in the same case); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, at *4, *8 (M.D. Tenn. Sept. 30, 2022) (same).  In the end, whether the *Affiliated Ute* presumption, the *Basic* presumption, or both are applied, this case will proceed as a class action and the scope of the class and the allegations will not change.

[fraud], 'a more precise specification of the damages calculation method is necessary' before a class may be certified." Reply Pet., ECF 577-11 at PageID 12708 (some alteration in original). In other words, Movants concede that this purported shortcoming does not end class certification. Rather, even if correct (it is not), this would merely mean that Plaintiffs' experts would have to provide more information about their damages methodologies. Defs' Mem., ECF 577-1 at PageID 12439. Again, Movants have already conceded the endpoint of this inquiry: "[W]e're not questioning that there is a class that will be certified here at some point, Your Honor." 3/17/23 Hr'g Tr., ECF 437 at PageID 9873.

Rather than bicker over how far down the damages field Plaintiffs must carry the ball and when, the most efficient approach is to get this litigation back on track so the parties may proceed with expert discovery, where both sides agree that Plaintiffs' experts will apply the out-of-pocket damages methodology to the specific factual record here and identify their estimate of per-share or per-bond damages. Resuming the presently paused case management schedule would likely enable the parties to *complete* expert discovery before the Sixth Circuit even considers Movants' arguments about the sufficiency of the information Plaintiffs provided at the class certification stage. This means Movants will get the very relief they claim to want – more information about the application of Plaintiffs' damages methodology – whether they win or lose their appeal. Again, Movants never asked the Court to stay discovery pending its class-certification decision, so it would make no sense to do so now.

### B. Movants Will Not Suffer Any Irreparable Harm Absent a Stay

Because Movants have conceded the inevitability of this case being certified as a class action, there is no risk of any measurable harm. All the same discovery (fact and expert) that Movants currently seek to delay will be completed, with the only question being *when* it will be completed. In evaluating potential irreparable injury courts ""generally look to three factors: (1) the

- 11 -

substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided.'" *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 2023 WL 3004148, at *3 (S.D. Ohio Apr. 18, 2023) (quoting *Mich. Coal.*, 945 F.2d at 154).

### 1.   Movants Do Not Identify Any Irreparable Harm

The only potential harm that Movants claim is the ***possibility*** that they will have to engage in "'costly'" discovery later determined to be unnecessary because their appeal was successful and somehow changed the contours of the case. Defs' Mem., ECF 577-1 at PageID 12447-53. But Movants' entire argument rests on a series of conclusory statements, without identifying a single specific category of discovery or line of examination that will be impacted by the outcome of their appeal. There is none: not one of Plaintiffs' factual allegations is at issue on appeal. Even if there was any risk of additional expense due to potentially unnecessary discovery, that would not amount to irreparable harm: if litigation expenses constituted irreparable harm, "the exception [would] swallow the rule." *Build Realty*, 2023 WL 3004148, at *4; *Tipton v. CSX Transp., Inc.*, 2017 WL 4583248, at *6 (E.D. Tenn. Oct. 13, 2017) ("'irreparable harm requires more than a reference to litigation costs associated with continued district court proceedings, or to settlement pressures [because] [t]he same factors are present in most (if not all) cases' concerning class certification").[8]

---

[8]      Particularly in light of their concession that this case will be properly certified as a class action, Movants' cases are inapposite, and do not support a stay. *See Pena v. Taylor Farms Pac., Inc.*, 2015 WL 5103157, at *6 (E.D. Cal. Aug. 31, 2015) (in Ninth Circuit employment class action, plaintiffs permitted to litigate their individual claims during pendency of appeal because individual claims were outside impact of appeal of class certification); *Nieberding v. Barrette Outdoor Living, Inc.*, 2014 WL 5817323, at *4 (only staying discovery into identity of potential opt-in class members while Defendants' appeal of class certification was pending); *Grae*, 2019 WL 1746492, at *1 (requested stay was narrow, limited to 60 days, and third-party discovery was permitted to continue during pendency of appeal); *Strougo v. Tivity Health, Inc.*, 2023 WL 4830593, at *2 (M.D. Tenn. July 27, 2023) (stay of case pending appeal was appropriate where: (1) class certification had already been successfully appealed once; (2) fact and expert discovery was completed; and (3) the case was two-months away from trial and the court had a criminal trial to schedule during same time); *Shanehchian v. Macy's, Inc.*, 2011 WL 13157172, at *2 (S.D. Ohio Apr. 27, 2011) (staying only decision on summary judgment, which had already been briefed and was pending, in order to

- 12 -

## 2.        The Likelihood of Injury Is Slim to Non-Existent

The second factor, likelihood of injury, also weighs against Movants' claim of irreparable harm.  Although boldly claiming that "[t]he Sixth Circuit's decision likely will shift the focus" of discovery in this case (Defs' Mem., ECF 577-1 at PageID 12450), Movants offer nothing but speculation to substantiate their claim.

***First***, Movants argue that if they succeed on their *Comcast* appeal there is a possibility that all of Plaintiffs' Exchange Act claims would disappear from the case.  *Id*. at PageID 12450-51.  By Movants' reasoning, ***if*** the Sixth Circuit finds that *Comcast* applies to a case like this one, and ***if*** the Sixth Circuit deems Movants' *Comcast* arguments meritorious and remands the case to the district court, and ***if*** the district court elects not to issue a new order addressing any concerns expressed by the Sixth Circuit and certifying the Class based on the existing record regarding damages, and ***if*** the district court becomes the first court in the country to accept Movants' time-varying inflation argument, and ***if*** the district court orders additional expert testimony and briefing on the issue of time-varying inflation, and ***if*** the district court determines that Plaintiffs have failed to put forward any methodology for calculating damages consistent with their theory of liability, then the district court ***might*** not certify a Class for the Exchange Act claims.  The likelihood of that scenario is effectively zero, particularly given Chief Judge Marbley has already indicated his reluctance to allow damages to prevent a Class from being certified:

> THE COURT: . . . I don't want to just look at the damages.  I want to look at all of the other components that would determine whether there is a 23(b) class. Because I don't think that that is sufficient, what you argue, because you're right. They can always modify it because – you're talking about the precise measure of damages.  It's like saying, look, I know that what they did was wrong and I know that it harmed a lot of investors, but because their damages expert didn't get it right, let's just leave them with no recourse.  ***And that's not what's going to happen in this case***.

___

conserve resources); *Earl v. Boeing Co.*, 21 F.4th 895, 899 (6th Cir. 2021) (appeal involved questions of standing, and so would be case dispositive).

4869-5532-0215.v1

3/17/23 Hr'g Tr., ECF 437 at PageID 9865-66.  "Because '[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal,' in 'the mine run of cases, it remains the "black letter rule" that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.'"  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 861 (6th Cir. 2013).

Movants also argue that if they prevail on their *Comcast* appeal "the number of parties facing the class claims in this action **could be** substantially reduced" and "the class period **may be** substantially shortened."  Defs' Mem., ECF 577-1 at PageID 12451-52.  This is pure speculation untethered to anything in the Complaint, the Class Certification Order, any case, or any other form of substantiation.  It is also belied by the fact that not a single Movant ever asked for a discovery stay **prior** to class certification.  There is simply no cognizable scenario under which Plaintiffs' Exchange Act claims disappear, the number of Defendants changes, or the relevant period of discovery regarding Movants' HB6 bribery scheme would be altered.

Movants save their most frivolous argument for last, asserting that if they prevail on their *Affiliated Ute* appeal "the nature of the claims and defenses will change."  Defs' Mem., ECF 577-1 at PageID 12452.  But Movants do not identify any claim that will be altered or what defense would no longer be applicable.  Absent any citation or explanation, Movants argue that "[i]f Plaintiffs must base their Exchange Act claims solely on the *Basic* fraud-on-the-market presumption, they will be forced to establish that [the] challenged statements were material, impacted FirstEnergy's stock price, and caused Plaintiffs' losses."  *Id*.  But regardless of the presumption of reliance applied, Plaintiffs will need to prove materiality, loss causation, and damages (*i.e.*, how Movants' fraud impacted the price of FirstEnergy securities).

More to the point, every single statement and act alleged in the Complaint will remain at issue regardless of what the Sixth Circuit decides.  Movants' *Affiliated Ute* argument on appeal is limited to how those statements and acts should be **characterized**: if they amount to a fraud that primarily concerns information Defendants omitted, the *Affiliated Ute* presumption of reliance applies; if they amount to a fraud that primarily concerns information Defendants affirmatively misrepresented, the *Basic* presumption applies.  Either way, the identical claims will remain, including the scheme liability claims.  The **only** possible impact from the appeal concerns which presumption(s) of reliance will apply at trial.  No elements or evidence will be affected in any way.[9]

No matter how one handicaps Movants' prospects on appeal, it would be irrational to say that this case is less likely to be certified as a class action today than it was before Plaintiffs moved for class certification, Movants conceded class certification is inevitable, and the Court entered its order certifying this case as a class action.  Yet Movants did not seek to stay discovery at **any** of these

---

[9]    During a December 7, 2023 conference before Special Master Judge – but not in their opposition to class certification, Rule 23(f) petition, or the motion to stay – Movants asserted that if Defendants prevailed on their *Affiliated Ute* appeal, Plaintiffs' scheme liability claims would somehow have to be dismissed.  They went so far as to represent that "six other Court of Appeals have taken the view that you can't have that kind of a [scheme] claim in a securities case where you also have misstatements."  Ex. A (12/7/23 Hr'g Tr.) at 31:7-12.  That is just untrue.  No case has ever reached such a holding.  No court in the Sixth Circuit or elsewhere has held that Rule 10b-5 scheme liability claims cannot be brought in a case that also involves misstatements.  Cases involving both scheme liability and misstatements have repeatedly been upheld.  *See, e.g.*, Order, ECF 219 at PageID 4729-30 (recognizing that "[s]cheme liability may rest in part on the same statements or omissions that trigger misstatement liability, or it may embrace separate statements or conduct") (citing *Lorenzo v. SEC*, 587 U.S. ___, 139 S. Ct. 1094, 1102 (2019)); *JAC Holding Enters. Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 735-736 (E.D. Mich. 2014) (upholding complaint that "alleges both (1) false statements in violation of Rule 10b-5(b) and (2) deceptive 'scheme' or 'course of business' violations of 10b-5(a) and (c)"); *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 86-87 (2d Cir. 2021) (reinstating claims based on: (1) misstatement liability; and (2) "manipulative scheme"); *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 828 (D. Minn. 2022) (upholding complaint alleging both misstatement and scheme liability claims).  Assuming Defendants' counsel was referring to the six (or sometimes they say seven) Circuit Court cases that they point to as addressing the application of *Affiliated Ute*, not one of those opinions held that a plaintiff could not bring a scheme claim in a case that also involved affirmative misstatements, and none of those opinions held the *Basic* presumption of reliance could not be used with scheme claims.

milestones. That is because they have recognized that class certification is inevitable, and the scope of the case will not be impacted by this inevitability. And even if class certification were not an option, Plaintiffs would continue pursuing their claims (just as the opt-out plaintiffs have been pursuing theirs). *Beattie v. CenturyTel, Inc.*, 2006 WL 1722207, at *5 (E.D. Mich. June 20, 2006) (refusing to stay discovery where "a reversal by the court of appeals is not likely to cause the case to terminate [because] this Court still will be faced with the individual plaintiffs' claims"). The bottom line is that the full scope of relevant discovery has never changed, and it will not change irrespective of the Sixth Circuit's decision. Movants are simply seizing this opportunity to try to maneuver a highly technical and largely academic Rule 23(f) appeal into a prejudicial discovery delay.

### C. A Stay Will Substantially Prejudice Plaintiffs

Courts in this Circuit recognize that unnecessary delays such as the one Movants request here cause substantial harm to plaintiffs because "a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct.*, *S.D. Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). Delay will be particularly prejudicial at this stage of the case, when a substantial number of depositions have been scheduled in the next few months, which is no mean feat in a case involving dozens of parties and well over 100 attorneys. Witnesses have already testified to forgetting details of the years-old events of this case. *See, e.g.*, Ex. B (Dowling Depo. Tr. Vol. 1) at 23:13-24:2, 57:13-16; Ex. C (Lisowski Depo. Tr. Vol. 2) at 512:9-513:10; Ex. D (Pearson Depo. Tr. Vol. 1) at 43:7-10, 64:20-65:6; Ex. E (Strah Depo. Tr. Vol. 2) at 495:23-25; 570:12-16, 572:2-12. "Further delay could substantially harm Plaintiffs in that witnesses move, parties die, and memories fade . . . rais[ing] the risk of limiting Plaintiffs' ability to successfully prosecute their claims." *Build Realty*, 2023 WL 3004148, at *4; *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 12591692, at *4 (N.D. Ohio May 16, 2014) (Noting that at trial, "proof will include witness

- 16 -

testimony.  The longer a merits adjudication is delayed, the more likely it is (according to the old axiom) that witness memories will fade.").

Already, since the initiation of this litigation, one key figure in the underlying events, Neil Clark, has committed suicide and multiple others are under criminal investigation, have been convicted, or are under indictment.  Third-party Samuel C. Randazzo was indicted just last week. Further delay will only exacerbate the likelihood that witnesses will not remember key facts and events at the center of this litigation, or that one of the myriad ongoing government investigations will result in disruption of Plaintiffs' development of its case.  Moreover, despite a 2022 deadline for substantially completing production of relevant documents, FirstEnergy is still in the process of searching for and producing documents (which will now include documents regarding the Company's internal investigation that were improperly withheld) and supposedly in the process of correcting deficiencies with its privilege logs, and numerous third parties are in the middle of complying with, defying, or appealing the Special Master's orders and Plaintiffs' subpoenas.  For all of this to grind to a halt pending an appeal that will not decertify the Class or change the claims or defenses will undoubtedly prejudice Plaintiffs.

Although Movants generically assert that "it is 'reasonable for the Court to assume' the Sixth Circuit will resolve the appeal 'in a timely manner,'" (Defs' Mem., ECF 577-1 at PageID 12454), there is significant evidence to the contrary.  In Movants' cases, *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, 2020 WL 5250492 (D. Neb. Sept. 3, 2020) and *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 2014 WL 4540228 (D. Minn. Sept. 11, 2014), neither of which are from this Circuit, it took 12 and 20 months, respectively, from the appeal's docketing to remand. Plaintiffs' analysis of 10 of the most recent Rule 23(f) appeals in the Sixth Circuit shows that the average time from grant of a Rule 23(f) petition to resolution of the appeal is nearly 11 months.  *See* Ex. F.  Waiting to resolve Movants' appeal would mean an expected wait of almost a year, an

- 17 -

inordinate delay given the virtual certainty that this resolution will have no impact on discovery in this case, and discovery could be completed in less time.

### D. The Public Interest Weighs Against a Stay

The public interest also weighs against further delaying the resolution of this 2020 case. "The public has an interest in prompt resolution of the cases that will be tried." *Polyurethane Foam*, 2014 WL 12591692, at *4. "Especially in a case that has been pending for more than two years, the public interest strongly demands as prompt and efficient a resolution of the controversy as possible." *Tipton*, 2017 WL 4583248, at *7; *see also Lyngaas v. Curaden AG*, 2019 WL 2635966, at *3 (E.D. Mich. June 27, 2019) ("[T]his case has already been pending for more than two years. The Court finds that this fourth factor also weighs against issuing a stay.").

Securities fraud class actions relating to underlying bribery allegations, as this case does, are of "such obvious public interest" that the "public interest is served by the speedy and effective administration of justice," rather than staying proceedings pending the outcomes of Rule 23(f) appeals. *In re Petrobras Sec*., 193 F. Supp. 3d 313, 318 (S.D.N.Y. 2016). *See also Daniels v. City of New York*, 138 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (refusing to stay discovery pending appeal of class-certification order due in part to greater public interest in expeditious resolution of "a controversial matter of serious public concern" (alleged racial profiling); *In re Symington*, 211 B.R. 520, 522 (Bankr. D. Md. 1997) (public interest in "the right to know the truth about allegations of corruption" against public officials outweighed stay of discovery-related orders).

FirstEnergy has admitted that it corrupted multiple state public officials and deceived a federal regulatory agency in what has been called the most elaborate and extensive bribery scandal in the history of Ohio politics.[10] But unlike most public corruption cases, where the public detriment is

---

[10] Stephanie Haney, *Explaining the FirstEnergy bribery scandal as the Larry Householder trial continues: Legally Speaking with Stephanie Haney*, WKYC Studios (Apr. 4, 2023), https://www.wkyc.com/article/life/legally-speaking/explaining-firstenergy-bribery-scandal-larry-

largely limited to the intangible harm to public trust, this case concerns over $1 billion of direct harm to tens of thousands of ratepayers and even greater damages to thousands more investors.[11]  The State Teachers Retirement System of Ohio is a significant class member (Ohio STRS Mot., ECF 32 at PageID 684, 691 (identifying losses of over $1.6 million)), and thousands of other Ohio individuals and entities are likely members of the Class.  As an editorial in the *Toledo Blade* recently remarked about this case: "It's regrettable but not surprising that investors damaged by the FirstEnergy scandal are more aggressively investigating [the conspiracy to pass HB6] than Ohio lawmakers."[12]  Indeed, hardly a week goes by where there is not a prominent story in the Ohio media about the HB6 bribery scandal and, by Plaintiffs' count, there have been more than one hundred articles and posts specifically regarding this litigation.  As one of Movants' counsel remarked during a hearing on the necessity to keep certain information under seal, "in this case, there has been an endless stream of . . . media reporting driven solely by filings on the public docket."  Ex. G (10/5/23 Hr'g Tr.) at 15:1-3; *see Beattie*, 2006 WL 1722207, at *8 (denying stay and finding "the public interest favors allowing the case to proceed in light of this Court's finding that some illegal activity has occurred").  Accordingly, expeditious resolution of this action is very much in the public

---

householder-trial-legally-speaking-ohio-politics-bribery-matt-borges-trial/95-16d119a7-510f-44bf-9b52-4c5fbab80f47; Jaclyn Diaz, *Energy Company Behind A Major Bribery Scandal In Ohio Will Pay A $230 Million Fine*, NPR and KPBS (July 23, 2021), https://www.npr.org/2021/07/23/1019567905/an-energy-company-behind-a-major-bribery-scandal-in-ohio-will-pay-a-230-million-; Jake Zukerman, *FirstEnergy to pay $3.9m fine for withholding lobbying info from federal regulators*, Clevaland.com (Jan. 3, 2023), https://www.cleveland.com/open/2023/01/firstenergy-to-pay-39m-fine-for-withholding-lobbying-info-from-federal-regulators.html.

[11]     Kathiann M. Kowalski, *HB 6 costs go well beyond claimed harm to public trust in Ohio*, Energy News Network (Sept. 3, 2020), https://energynews.us/2020/09/03/hb-6-costs-go-well-beyond-claimed-harm-to-public-trust-in-ohio/.

[12]     *See* Editorial: *Gov., Lt. Gov. on hot seat*, The Blade (Dec. 5, 2023), https://www.toledoblade.com/opinion/editorials/2023/12/05/editorial-gov-lt-gov-hot-seat/stories/20231204006.

4869-5532-0215.v1

interest, as the Court has recently confirmed by directing the parties to **shorten** their proposed pre-trial schedule **by two months**.

Movants' efforts to gin up a public interest in staying the case are unavailing. There is no basis for asserting that this case cannot proceed "'***proper*[*ly*]'" absent a stay. Defs' Mem., ECF 577-1 at PageID 12454. Nor do Movants' cases suggest one. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 4, 6 (D.D.C. 2002) (successful appeal on debatable matter of first impression in the circuit would be case dispositive, justifying short stay requested following oral argument on the appeal).[13] *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022) (public interest factor neutral where rights of citizens not to get COVID-19 vaccine were at issue, as incorrect application of law would result in potentially coercive vaccination). And if staying a case in discovery every time that a Rule 23(f) petition was granted furthered the "very purpose of Rule 23(f)" (Defs' Mem., ECF 577-1 at PageID 12455) then the Rule would have been so written. Instead, it explicitly states that there is **no** automatic stay, and a stay may only be granted by the district or appeal court upon the movant upholding a significant burden. Fed. R. Civ. P. 23(f). Unsurprisingly, Movants have no authority or evidence that supports their position.

## IV. CONCLUSION

Because Movants fail to meet their burden to establish that a stay is warranted, their request to halt all proceedings in this action pending resolution of their Rule 23(f) appeal should be denied.

DATED: December 19, 2023                     Respectfully submitted,

s/ Joseph F. Murray
_____
JOSEPH F. MURRAY

---

[13]     The *Beattie* Court, which is in the Sixth Circuit, specifically distinguished *Lorazepam*, noting "this case presents differently than *Lorazepam*. Litigation in this case will proceed even if the court of appeals reverses this Court's class certification decision." 2006 WL 1722207, at *8 (As noted: "The plaintiffs seek to hold a company accountable for deceptive . . . practices. . . . Further, the case will proceed in some form even if the Court is reversed on appeal. . . . [Therefore], it is not clear that the public interest is threatened such that a stay of all discovery is necessary.").

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
JASON A. FORGE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com
jforge@rgrdlaw.com

Class Counsel

4869-5532-0215.v1