**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: FIRSTENERGY CORP. | ) | No: 2:20-cv-03785-ALM-KAJ |
| SECURITIES LITIGATION | ) | |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| | ) | Judge Algenon L. Marbley |
| _____ | | Magistrate Judge Kimberly A. Jolson |

This Document Relates to:

    ALL ACTIONS

**JOINT MOTION FOR FACT DEPOSITION PROTOCOL**

**I.**    <u>**INTRODUCTION**</u>

For over a month, the Parties have been negotiating the terms of a Fact Deposition Protocol (the "Protocol") (attached as Ex. A).  The purpose of the Protocol is to provide a uniform procedure regarding the following aspects of fact depositions contemplated in the above-captioned case:

(A) Number of Depositions;

(B) Time Allotment for questioning;

(C) Coordination with opt-out litigation;

(D) Noticing Depositions;

(E) Selecting Deposition Dates;

(F) Location and Means of Attendance for fact depositions;

(G) Conduct at Depositions;

(H) Video Depositions; and

(I)  Expense.

After extensive discussions during multiple meet and confers, the Parties have reached consensus on Subparts (D) through (I) of the Protocol.  However, the Parties are at an impasse regarding the terms of Subparts (A) through (C).

Accordingly, this Joint Motion briefs the Court on the Parties' various positions and respectfully requests the issuance of an Order resolving such disagreement.

Lead Plaintiffs request a hearing regarding this Motion.

Defendants do not believe a hearing is necessary for adjudication of this Joint Motion. However, if a remote or in person hearing would be helpful to the Court, Defendants would look forward to presenting their various positions.

The Parties have limited their respective positions to 3,000 words for Plaintiffs, and 3,000 words for Defendants.

## II.    SUBPART A: NUMBER OF DEPOSITIONS

### A.    Lead Plaintiff's Position

#### 1.    *A Broken Meet-and-Confer Process Is Impeding This Litigation*

As the Court knows, Lead Plaintiff embraced the strict Scheduling Order (ECF 255 at 2) and diligently sought to arrange depositions. FirstEnergy resisted these efforts, leading to several discovery disputes. In response, the Court repeatedly ordered the parties to meet-and-confer (*see, e.g.*, ECFs 257, 267, and 271), but this has simply created a new source of delay. Twenty percent of the period for fact discovery has elapsed and the parties have yet to complete a single deposition. The hindsight from these two-plus months confirms the imperative for meet-and-confer ground rules. At a minimum, there must be completion deadlines and a requirement for participants to have authority to negotiate and agree to compromises. Other courts routinely impose such standards.[1] They are essential here. For example, under the guise of meeting and conferring,

---

[1] *See, e.g.*, *Guzman v. Chipotle Mexican Grill, Inc.*, 2018 WL 6092730, at *1 (N.D. Cal. Nov. 21, 2018) (lead trial counsel required for meet-and-confer and discovery letter due within five business days of the "'meet and confer session'") (citation omitted); *De Ramirez v. Select Portfolio Servicing, Inc.*, 2015 WL 12832102, at *1 (C.D. Cal. June 29, 2015) (declarations due "[w]ithin 3 days of the meet and confer"); *Henderson v. Emory Univ.*, 2020 WL 10708751, at *2 (N.D. Ga. Jan. 29, 2020) (10 days to meet and confer); *In re St. Jude Med., Inc.*, 2001 WL 1663818, at *1

FirstEnergy has delayed production of documents and privilege logs that had already been produced in other litigation and prolonged negotiations over custodians and search terms.

Likewise, FirstEnergy thwarted Lead Plaintiff's plan to jump-start discovery with a comprehensive Rule 30(b)(6) deposition by: (1) convincing the Court to postpone the deposition to give time to prepare the witness (ECF 261); and (2) failing to produce a prepared witness, notwithstanding the Court's accommodation of the full amount of time FirstEnergy had requested and *weeks* of meeting and conferring about the scope of the deposition.  FirstEnergy intentionally chose a witness with no personal knowledge of the topics so it could script her testimony, meaning the parties waited two months for FirstEnergy to produce a witness who used lawyer-furnished written scripts throughout the deposition, which were themselves incomplete in terms of both the scope of topics and depth of information.  Three parties examined the witness over the course of two days; all three parties concluded that the witness was not adequately prepared.  Weeks of meeting and conferring preceded this delayed deposition, yet FirstEnergy still produced an unprepared witness, and now the parties have spent weeks more meeting and conferring – all over a single deposition that Lead Plaintiff first noticed back in March.

Although FirstEnergy has agreed to an additional Rule 30(b)(6) deposition, no details have been worked out.  Again, the meet-and-confer process has been unnecessarily protracted.  One reason is because weeks after the deposition, FirstEnergy's spokesperson for the parties' meet-

---

(D. Minn. Nov. 23, 2001) (14 days to meet and confer); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2019 WL 13126350, at *1 (N.D. Fla. Oct. 22, 2019) (motion due within 14 days of "the meet and confer"); *Johnson v. Fed. Bureau of Prisons*, 2017 WL 5197143, at *5 (E.D.N.Y. Nov. 9, 2017) ("An attorney for the defendant with authority to negotiate the terms of a protective order shall attend the meet-and-confer."); *United States v. Burga*, 2019 WL 3859157, at *7 (N.D. Cal. Aug. 16, 2019) ("The meet and confer sessions are to be in person or by phone and conducted by counsel with authority to negotiate and compromise.").

and-confer acknowledged that he had not attended the deposition nor read the transcript and therefore could not "confer" at all.

Likewise, it has taken over a month just to get the disputes over this deposition protocol before the Court. It would not be fair to say the parties have been meeting-and-conferring for over a month because over two weeks passed with Defendants simply not responding to Lead Plaintiff's proposals. The status quo is not working.

2.    *One Deposition Per Defendant, as Well as Defendants Themselves, Is Modest*

Against this backdrop of a broken meet-and-confer process, is a case of the utmost public interest and importance, involving 42 Defendants, with billions of dollars at stake. If we have learned anything from the last three months, it is that we must try to minimize the opportunity for discovery disputes. To that end, Lead Plaintiff submits it is eminently reasonable to allow 84 fact depositions without having to seek leave of court, as that amounts to only one deposition per Defendant, in addition to Defendants themselves. Naturally, FirstEnergy urges less than one-half a non-party deposition per Defendant without having to seek leave of court, which would virtually guarantee disputes over dozens of witnesses that would each take weeks (or months at the current pace) to resolve.[2] This is untenable and unnecessary, as cases with less public significance, fewer defendants, and smaller financial stakes regularly allow 80 to over 300 depositions. *See, e.g.*, *In*

---

[2] Defendants Jones and Dowling essentially concur with Lead Plaintiff on the number of depositions, but they would impose a July 15, 2022 deadline to identify the non-party witnesses Lead Plaintiff intends to depose. Such an arbitrary deadline – before substantial completion of document production and before the completion of a single deposition – would serve only to prejudice Lead Plaintiff's investigation and gathering of evidence for trial. As alleged (and admitted by FirstEnergy), Jones and Dowling were the primary perpetrators of FirstEnergy's crimes of corruption, so of course they know "where the bodies are buried." But Lead Plaintiff is playing catch-up. Lead Plaintiff has committed to providing Defendants with reasonable notice before subpoenaing any non-party witnesses for deposition. That will allow the parties to plan accordingly without giving one side an advantage over the other.

*re Wash. Pub. Power Supply Sys. Sec. Litig*., 779 F. Supp. 1063, 1094 (D. Ariz. 1990), *vacated in part*, 19 F.3d 1291 (9th Cir. 1994), and *aff'd in part sub nom*., *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ($757 million settlement after over 300 fact and expert depositions); *United States v. Blue Cross Blue Shield of Mich.*, No. 2:10-cv-14155-DPH-MKM, ECF 177 at 1 (E.D. Mich. May 29, 2012) (one plaintiff; one defendant; 170 depositions per side); *In re Williams Sec. Litig.*, No. 02-cv-72-SPF-FHM, ECF 1600 at 3 (N.D. Okla. Jan. 12, 2007) ($311 million settlement; 170 depositions).

In addition to the total number of depositions, the parties also disagree about the number of Underwriter Defendant depositions and the time allotment per deposition. Lead Plaintiff submits that the Court may wish to resolve all these disputes by simply giving each side 588 hours (7 hours x 84) to spend however they see fit. *See In re Pfizer Sec. Litig.*, 2010 WL 11728259, at *1 (S.D.N.Y. Aug. 20, 2010) (finding plaintiffs were entitled to at least "600 hours of fact deposition discovery," and noting the time provision "provide[s] [an] adequate incentive for all parties to conduct depositions as expeditiously as possible"). This will reward efficiency and discourage redundant questioning or otherwise unnecessary depositions. Nevertheless, Lead Plaintiff sets forth below its positions on the Underwriter depositions and time allotment per deposition.

> 3.     *Presumptively Precluding Lead Plaintiff from Deposing "Non-Lead" Underwriter Defendants Would Be Unprecedented and Wholly Unjustifiable*

The Court should reject the Underwriter Defendants' proposed "additional term" – that Lead Plaintiff be permitted to depose only the lead underwriters before having to meet-and-confer about whether it can depose the non-lead underwriters. The non-lead underwriters are Defendants in this case, and Lead Plaintiff intends to depose them. While counsel for the Underwriters has asserted that the non-leads did not perform any due diligence in connection with the Offerings at

issue, the non-leads have nonetheless asserted a due diligence defense in their Answers. The law is clear that non-leads cannot prevail on a due diligence defense by blindly relying on the work performed by the lead underwriters. *See, e.g.*, *NCUA Bd. v. UBS*, 2017 WL 411338, at *11 (D. Kan. Feb. 31, 2017). Rather, the law requires that, at a minimum, non-leads monitor and assess the due diligence work performed by the lead underwriters. *See, e.g.*, SEC Release 9671, 1972 WL 125474, at *6 (July 27, 1972) (A non-lead "must satisfy himself that the managing underwriter makes the kind of investigation the participant would have performed if he were manager." Accordingly, non-leads must assure themselves not only that the lead's program of investigation is adequate, but also that the lead's actual investigative performance is adequate.); *see also NCUA Bd.*, 2017 WL 411338, at *11. Lead Plaintiff has the right to test the non-leads' defense at deposition.

The Underwriter Defendants' insistence that they receive special treatment regarding "Time Allotment" is also unwarranted. Contrary to the Federal Rules of Civil Procedure, the Underwriter Defendants insist that if Lead Plaintiff seeks to take a Rule 30(b)(6) deposition of an Underwriter Defendant, and later seeks to depose in an individual capacity the same person whom the Underwriter Defendant happened to have used as a Rule 30(b)(6) deponent, the length of the 30(b)(6) deposition would be deducted from the seven hours for the individual deposition. The law is clear, however, that """the depositions of an individual who is noticed as an individual witness pursuant to Fed. R. Civ. P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) are presumptively subject to independent seven-hour time limits.""" *YYGM S.A. v. Hanger 221 Santa Monica Inc.*, 2015 WL 12660401, at *1 (C.D. Cal. July 24, 2015) (citations omitted) (same).

6

### B.     <u>All Defendants' Position Regarding Number Of Depositions</u>

Defendants limit their submission to their respective positions as to the three disputed issues presented to the Court in connection with this proposed fact deposition protocol. To the extent any additional information about the status of discovery more generally or other matters would be of assistance to the Court, Defendants would be happy to supply such information.

*     *     *

Plaintiffs' "cross-notice" requirement is inconsistent with the Rules, is administratively burdensome with no corresponding benefits, and would unfairly deprive Defendants of their rights to question witnesses. Despite weeks of negotiation, Plaintiffs never provided their written proposal before yesterday, before which time Defendants were forced to negotiate about a "cross-notice" requirement that has been a moving, vague target.

As to where the parties conceptually agree: the parties agree that, for planning and scheduling purposes, a party who does not notice a deposition but intends to ask questions must indicate its intention to do so (whether through a "cross-notice" or by providing a notice of intent). *See* Protocol Subpart B.2. (Defendants' position). The parties thus agree that such parties must identify themselves, to facilitate discussion of duration of a deposition and allocation of time. Defendants' proposal, however, also accounts for a third, necessary category: parties who wish only to reserve their right to question a witness but otherwise have no affirmative plans to examine a witness. The difference between the parties' positions is not without distinction.

Plaintiffs have repeatedly stated during meet and confers that any party who does not serve a "cross-notice" has no right to ask even a single question during any deposition. Plaintiffs' position is inconsistent with the rules and this Court's decisions. Rule 30 provides that "[t]he examination and cross-examination of deponent proceed as they would at trial." Fed. R. Civ. P. 30(c)(1). This Court has expressly interpreted Rule 30(c)(1) to mean that "counsel for both parties

7

of a civil action are permitted to question witnesses during depositions, *regardless of which party noticed the deposition*." *Longino v. City of Cincinnati*, 2013 WL 831738, at *5 (S.D. Ohio Mar. 6, 2013) (rejecting plaintiff's argument that defense counsel acted improperly by questioning a witness during a deposition noticed by plaintiff). "In a multi-party lawsuit, one party may notice the deposition and other parties may attend and cross-examine the deponent *without also having to notice the deposition*." *F.C.C. v. Mizuho Medy Co.*, 257 F.R.D. 679, 682 (S.D. Cal. 2009) (cited by *Longino*); *Loop AI Labs Inc v. Gatti*, 2015 WL 5522166, at *4 (N.D. Cal. Sept. 18, 2015) (citing *Longino*; holding that "Defendants may question [the witness] at his deposition without having to separately notice his deposition").

This makes sense. If each of the 40-plus Defendants here were required to "cross-notice" every deposition simply to preserve the right to question a witness, every Defendant would be forced to "cross-notice" every deposition or else forfeit the right to ask even a single question. Such a serious consequence, when combined with limitations on the number of depositions, would unfairly and significantly prejudice Defendants in their defense of the case.

Even if multiple "cross-notices" by Defendants of the same deposition would count as only one deposition, Defendants would use all of their depositions "cross-noticing" Plaintiffs' depositions—for fear that they otherwise would not be permitted to ask any questions of any witness noticed by Plaintiffs. That means that Defendants would, in effect, be limited to only those depositions that Plaintiffs notice. That too, would prejudice Defendants in defense of their case.

Finally, Plaintiffs' proposal imposes administrative burdens with no corresponding benefit. Under Plaintiffs' proposal, every deposition is almost certainly to be met with formal service of dozens of "cross-notices" that will be unhelpful to determine duration of the deposition and allocation of time. In contrast, Defendants' proposal is less administratively burdensome and will

elicit more meaningful information that will be helpful to inform duration and allocation issues. Moreover, Defendants' proposal protects a party's right to ask questions and appropriately balances that right against practical considerations.

### C. FirstEnergy Defendants, Schneider, Judge, Chack, Vespoli, Pine, and Reffner's Position

Lead Plaintiff seeks 84 depositions per side, each lasting for two days (so long as supported by a "good faith argument" though the Rule requires a showing of "good cause"), which yields potentially up to 336 days of depositions. Even conservatively assuming that each side's 84 depositions are completely identical, that still would yield up to 168 days of testimony. There are, however, only (and at most) 160 business days between when Lead Plaintiff intends to begin taking deposition (no earlier than September 1, 2022) and the close of fact discovery (April 28, 2023). Even assuming some limited number of permissible double-tracked depositions (*see* Section E.9), it would be nearly impossible to comply with the current case schedule.

All Defendants agree that each side shall be permitted to depose all other parties without seeking leave of Court. This proposal also provides 20 non-party fact depositions to each side. This will allow the parties to meaningfully advance discovery and, in the event either or both sides determine that additional depositions are necessary to complete fact discovery, nothing prevents them from seeking leave of the Court. Limiting non-party discovery (still, generously to twice the number permitted by Rule) means that—so long as each party deposition does not last two days— discovery could be completed within the deadlines set forth in the current case schedule.

### D. Defendants Jones and Dowling's Position

Defendants Jones and Dowling propose a two-step process that requires collaboration between the parties to better determine the total number of depositions likely needed in this complex multi-party case.

First, Jones and Dowling propose that Plaintiffs, on the one hand, and Defendants, on the other hand, exchange their lists of non-party deponents, not to exceed 40 witnesses. These lists will be combined into one consolidated list of deponents.

Second, shortly after the consolidated list is prepared, the parties will meet and confer to negotiate an additional number of non-party deponents per side that may be noticed through the end of fact discovery. These "reserve" depositions will permit the parties to develop additional facts that arise from deposing the parties and witnesses on the consolidated list. It will also permit the parties the opportunity to depose new witnesses identified during the discovery period.

This process encourages a number of efficiencies. Because collaboration is required, the parties will be able to anticipate the total number of depositions to be taken. Early identification of the most important witnesses allows for better planning regarding deposition preparation and the order of witnesses. And prejudice is less likely as the "reserve" depositions allow parties to follow-up on unanticipated factual issues.

Finally, Jones and Dowling note that their proposed deadlines of July 15 and July 22 to exchange lists and confer can be adjusted based on the timing of the Court's Order regarding this Protocol.

### E.  **Underwriter Defendants Position (with which all Defendants agree)**

Plaintiffs do not assert any intent-based claims against the Underwriter Defendants. Their claims arise solely out of the Underwriter Defendants' participation as underwriters in FirstEnergy's February and June 2020 notes offerings (the "Offerings"). The primary issue as to the Underwriter Defendants is thus whether they exercised due diligence and reasonable care in their work on the Offerings. 15 U.S.C. § 77k(b)(3)(A). As is typical for securities offerings of this nature, the communications through which the underwriters conducted due diligence would

10

have been done on a group-wide basis, with the non-lead underwriters relying heavily on the lead underwriters.

Discovery from the nine non-lead underwriters is likely to be duplicative and cumulative of the testimony from the seven lead underwriters. Plaintiffs are unlikely to need 16 depositions about the very same diligence communications that the underwriters, led by the seven lead underwriters, had with FirstEnergy.

The Underwriter Defendants therefore propose that Plaintiffs commence with one deposition of each of the seven lead Underwriter Defendants, after which the parties can meet and confer concerning the necessity of deposing any or all of the remaining nine non-lead underwriters (and for what amount of time), in order to help reasonably avoid unnecessarily duplicative testimony. The parties may or may not have any disputes then, but if they do, they will be informed by concrete testimony rather than speculation regarding the need for 16 full-day depositions.[3]

## III. **SUBPART B: TIME ALLOTMENT FOR QUESTIONING**

### A. **Lead Plaintiffs' Position**

### 1. *Lead Plaintiff Is Entitled to Seven Hours of Examination for Each Deposition*

Federal Rule of Civil Procedure 30(d)(1) provides as follows:

Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

Fed. R. Civ. P. 30(d)(1).

---

[3] Indeed, Plaintiffs could still obtain discovery regarding the role of non-lead underwriters prior to deposing any of the non-leads because two of the Underwriter Defendants were lead underwriters in the June Offering and non-lead underwriters in the February Offering.

On its face, Rule 30 says nothing about one party splitting this seven hours with another party (let alone a non-party); nor does it prohibit additional parties from deposing the same witness a different party deposed. Lead Plaintiff's "request" for seven hours for each of its depositions merely asserts that to which Lead Plaintiff is entitled under the Federal Rules of Civil Procedure. It is Defendants who unjustifiably and prejudicially seek to **shorten** Lead Plaintiff's examination time.

Recently, Magistrate Judge Deavers characterized as "remarkable" and "high stakes" a case with approximately $103 million in claims at issue. *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, 2022 WL 293516, at \*1-\*2, and \*4 (S.D. Ohio Feb. 1, 2022). That case involved the construction of four separate hydroelectric power plants and featured one plaintiff and one defendant. *Id.* at \*1. This case, which has claims in the billions of dollars, concerns the largest documented state political corruption scheme in history and involves almost 50 plaintiffs and defendants. If the *Voith* case is "remarkable" and "high stakes," this case is clearly off the charts. As such, it is plainly unreasonable for Defendants to ask the Court to **shorten** Lead Plaintiff's time to depose each witness. *See id.* at \*1, \*5 (allowing the defendant 14 hours to depose a single witness **in addition** to 14 hours of deposition time for the same individual as a Rule 30(b)(6) witness).

Throughout all the parties' meet-and-confer emails and conversations, Defendants failed to identify a single case of similar magnitude to this one in which a court lowered the plaintiff's examination time to **less than** the seven hours provided under Rule 30. Moreover, as set forth above, the Court could ensure all parties are fully incentivized to examine each witness as quickly and efficiently as possible by providing each side with a total number of hours (588), rather than a total number of depositions. In any event, Defendants have not come close to carrying the burden

of what would effectively be a protective order ***decreasing*** the examination time Lead Plaintiff has with each witness.

### B.     All Defendants' Position

To aid scheduling and planning, all Defendants agree that a party who intends to question a witness must provide notice of that intention, to allow each side to confer and allocate time among themselves although a party who seeks only to reserve the right to question a witness but has no affirmative plans to examine the witness need not provide notice of an intent to examine. For the reasons set forth above, all Defendants agree that Plaintiffs' "cross-notice" requirement should be rejected as inconsistent with the Rules and this Court's rulings and as prejudicial to Defendants.

### C.     FirstEnergy Defendants, Schneider, Judge, Chack, Vespoli, Pine, and Reffner's Position

The FirstEnergy Defendants and those joining in this proposal do not agree that a "one-size-fits-all" approach to time allocation is appropriate for this case, given the fact that different defendants are differently situated. These Defendants agree that time in excess of the 7 hours permitted by rule must be supported by a showing of ***good cause*** (as that is what the Rule requires, not simply a "good faith argument" as Plaintiffs and Jones/Dowling suggest). Non-employee defendants—i.e., current and former outside directors—should be required to provide no more than 8 hours of testimony in a single day. That reflects the fact that the directors are named as defendants only with respect to claims under the 1933 Act (i.e., by virtue of signing a registration statement in 2018 pursuant to which two series of notes were later issued in 2020). Employee defendants could be deposed for up to 10 hours of testimony over two consecutive days—again, subject to a showing of good cause.

This approach is tailored to the needs of the case and balances the interests of all parties.

## D.     **Defendants Jones and Dowling's Position**

Defendants Jones and Dowling propose a process for time allotment which evenly divides deposition time between Plaintiffs and Defendants. Jones and Dowling propose a default position that deposition time is limited to 10 hours on the record, with Plaintiffs and Defendants each receiving 5 hours of questioning time.  Exceptions to this default rule can be made by agreement or by court order.

Jones and Dowling submit expanded deposition time is required in this factually complex multi-party case.  Jones and Dowling agree with Plaintiffs' proposal in that deposition time should be evenly divided between Plaintiffs and Defendants. However, this proposal is less burdensome to witnesses than the 14-hour time limit offered by Plaintiffs.  This proposal allows for the completion of a deposition in a single day while Plaintiffs' proposal with the 14-hour time limit essentially guarantees a two-day deposition.

Jones and Dowling also propose a streamlined procedure for dispute resolution regarding deposition length and time allocation.  Meet and confers are limited to 30 minutes.  If agreement cannot be reached, the parties will submit a joint filing to the Court with each respective position limited to 250 words or less.  Jones and Dowling believe these limits will encourage the parties to resolve their disputes extrajudicially, with less burden imposed on the Court if agreement cannot be reached.

## E.     **Underwriter Defendants Position**

The Underwriter Defendants are differently situated than other defendants because of their discrete role in connection with the underlying allegations and the fact that Plaintiffs do not assert any intent-based claims against them.  Their claims arise solely out of the Underwriter Defendants' participation as underwriters in the Offerings, and the primary focus of these depositions will likely be whether they exercised due diligence and reasonable care in their work on the Offerings.  That

is a discrete issue—particularly where, as here, there is no allegation and could be no allegation that underwriters on a bond offering should have uncovered an alleged bribery scheme.

Accordingly, as to the Underwriter Defendants, there is no basis for an across-the-board expansion of the presumptive seven-hour limit for depositions under FRCP 30(d)(1). In the unlikely event that, following the completion of document discovery, Plaintiffs can persuasively justify why more than seven hours is necessary for any of the underwriter depositions, the parties can meet and confer. But absent any factual basis, there is no reason to expect that more than seven hours would be necessary, much less that more than seven hours would be necessary for seven different lead underwriters who would have participated in the same calls or meetings as part of the same group-wide due diligence process (not to mention the nine non-lead underwriters).

## IV.   SUBPART C: COORDINATION WITH OPT-OUT LITIGATION

### A.   Lead Plaintiffs' Position

#### 1.   *Adding Outside Parties and Lawyers Would Violate the PSLRA, Raise a Potential Conflict of Interest, and Make a Difficult Situation Worse*

Given the struggles with expeditiously addressing discovery and scheduling matters, the last thing this case needs is a group of plaintiffs and lawyers from outside this case, whom no court has vetted or appointed here, being forced upon Lead Plaintiff and Lead Counsel to add more schedules and more preferences to juggle. Doing so would be all the more inappropriate because the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires a rigorous process for vetting and appointing lead plaintiffs and lead counsel to oversee cases such as this one. 15 U.S.C. §78u-4. Chief Judge Marbley entertained multiple rounds of briefs and held a lengthy hearing, all of which culminated in a 32-page written order, appointing Los Angeles County Employees Retirement Association as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP and Murray Murphy Moul + Basil LLP as Lead and Liaison Counsel. ECF 65. The Lead Plaintiff that Judge

Marbley appointed had submitted a certification and a declaration, and it has extensive experience overseeing complex litigation, as well as in-house counsel with corresponding experience. The Lead Counsel that Chief Judge Marbley vetted and appointed include several former Assistant U.S. Attorneys, several lawyers who have each prepared and conducted multiple federal jury trials, lawyers who have prepared and conducted dozens of federal criminal trials, several lawyers who recently prepared and conducted a federal jury trial under the PSLRA, and their collective experience includes the investigation and prosecution of two of the most significant federal public corruption cases in history. This prosecution team was specifically assembled for this case.

Disregarding the PSLRA's stringent requirements and Chief Judge Marbley's thorough vetting, Defendants seek to saddle the putative Class with plaintiffs and counsel no court has vetted and whose qualifications are unknown. In fact, about the only thing we know about them is that they appear highly deferential to Defendants, which raises serious concerns about their intentions, aggravating the risks associated with their lack of vetting. It is curious that the opt-out plaintiffs withdrew from a putative Class led by a sophisticated and experienced large municipal fund and by sophisticated and experienced lawyers who specialize not just in securities fraud cases, but in conducting trials and criminal cases, including specifically public corruption cases. A plaintiff cannot maximize its recovery in a case such as this if it cannot expertly prepare the case for trial and, if necessary, try it.

The economics of most opt-out cases simply do not support the same investment of human and financial capital as class cases do. As a result, opt-out counsel often lack trial experience, do not meaningfully prepare to prove their cases at trial, and because they do not pose a realistic trial threat and are not subject to judicial oversight, they often settle cases for sub-optimal amounts that complicate efforts to maximize the recovery for class members because they set lower expectations

16

for defendants and their insurers. In many instances, the selling point for opt-out plaintiffs is a quicker settlement, which also contributes to lower settlement amounts. And what happens if there are additional opt-out cases? Does everything pause for additional unvetted plaintiffs and counsel to get up to speed? Here, opt-out counsel's deference to Defendants and apparent desire to rely on Lead Counsel's work product, combined with the complete lack of vetting all point to a high risk of a quick sub-optimal settlement, which would be detrimental to the Class. Moreover, outside counsel examining witnesses in a complex corruption case would mean Lead Counsel would have to reserve time to mitigate any damage, which would reduce Lead Counsel's time for its primary examinations and be detrimental to the Class.

Forcing Lead Plaintiff and Lead Counsel effectively to assist the opt-out plaintiffs and counsel in potentially selling out the Class is just one of two conflicts of interest such forced coordination would present. The other concerns the fact that both the opt-out plaintiffs and the putative Class are pursuing recoveries from largely the same pool of money and insurance. Therefore, each dollar recovered by the opt-outs is one less dollar available to the Class, and vice-versa. This is why courts routinely recognize the conflict of interest that would be presented by concurrent representation of individual plaintiffs and class members separately suing the same defendants. *See, e.g.*, *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) ("Every decision to hasten or delay the litigation on behalf of one set of plaintiffs could alternately harm or benefit the other set of plaintiffs."); *see also Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) ("In light of Plaintiffs' counsel's obligation to zealously represent other class interests with a very real possibility of impairing this class' ability to recover, this Court concludes that Plaintiffs have failed to demonstrate that they 'will vigorously prosecute the interests of the requested class through qualified counsel.'") (citation omitted). Forcing Lead Counsel to

"coordinate" with opt-out counsel would present the same conflict of interest because Lead Counsel would effectively be assisting attorneys whose clients are competing against the putative Class members Lead Counsel represents.

With billions of dollars at stake in this case, it is worth the equivalent of well over 10 average civil cases, so even if certain witnesses wind up being deposed twice, on a relative basis, that is still quite efficient – and far better than further complicating an already-complicated discovery process and triggering significant conflicts of interest, potentially prejudicing hundreds of millions of dollars in recoveries for Class members. Lastly, because Chief Judge Marbley vetted and appointed Lead Plaintiff, as well as Lead and Liaison Counsel, this potentially prejudicial maneuver should not be undertaken without Chief Judge Marbley's consideration and approval.

**B.**     **All Defendants' Position**

There is no dispute—nor could there be—that the claims in the individual actions, *MFS* and *Brighthouse*, are essentially identical to the 1934 Act claims Lead Plaintiff asserts here. This Court should exercise its inherent authority to coordinate fact discovery, as coordination would promote party and judicial efficiency. Absent coordination, numerous witnesses (both parties and non-parties) would be deposed twice about the same issues, which would be neither efficient nor fair to those witnesses. Coordination also would be consistent with this Court's prior statements regarding coordination of discovery across HB6-related matters. *See also* Doc. #274.

Lead Plaintiff objects to coordination as somehow violative of the PSLRA's provisions regarding appointment of lead plaintiff and lead counsel. Defendants requested that Lead Plaintiff supply authority to support its assertion. Lead Plaintiff has been unable to do so, and Defendants are unaware of any such authority in any Circuit.

To the extent there is any such authority, counsel for Lead Plaintiff has selectively disregarded it before. Robbins Geller, when representing individual/opt-out plaintiffs, such as the

18

plaintiffs in *MFS* and *Brighthouse*, previously has coordinated with court-appointed class counsel. Such coordination has included the "full right of participation [by the individual plaintiffs] in the fact witness depositions." *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-cv-9449 (D.N.J.), Doc. #133; *In re Mylan N.V. Sec. Litig.*, No. 1:16-cv-07926 (S.D.N.Y), Doc. #150; *Roofers' Pension Fund v. Papa, et al. (Perrigo)*, No. 2:16-cv-2805 (D.N.J.), Doc. #148; *see also Harel Pension and Provident Ltd., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-00656 (D. Conn.), Doc. #55 (requesting coordination with the class case). Likewise, Robbins Geller, as class counsel, has had "no objection to coordinating" with 30 individual suits. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-cv-07658 (D.N.J.), Doc. #369. Here, Lead Plaintiff opposes coordination with only two.

Lead Plaintiff contends that coordination would be too "challenging" because of the number of parties involved. Defendants disagree, and submit that Lead Plaintiff's refusal thus far to engage in meaningful discussion of coordination should not subject Defendants or the Court to inefficient use of resources and duplicative efforts. Defendants also note that, when the plaintiffs in the civil RICO actions relating to HB6 affirmatively sought coordination of discovery with this case, Lead Plaintiff knew of such efforts and yet made no objection. Lead Plaintiff here, however, now objects to coordination of discovery with other plaintiffs who assert *the same claims*.

Discovery in these indisputably related action should be coordinated, and the Court should direct the parties to confer with the plaintiffs in *MFS/Brighthouse* and submit a coordination protocol within 10 business days of the Court's decision. Defendants note that the above-referenced cases supply several examples of coordination protocols to which Robbins Geller previously has agreed and so presumably would serve as a good starting point for productive, cooperative discussions here that would be consistent with achieving both party and judicial

efficiency and also would aid compliance with the Court's expectations as set forth in this District's statement of civility.

## V.    <u>CONCLUSION</u>

A fact deposition protocol will help clarify deposition procedure in this complicated multi-party action. The Parties have met and conferred extensively and reached agreement on a number of areas. The Parties respectfully request this Court to issue an Order resolving the remaining areas of disagreement.

Respectfully Submitted,

Dated: July 1, 2022

/s/ *Jason A. Forge via authorization*
Joseph F. Murray, Trial Attorney (0063373)
MURRAY MURPHY MOUL
    + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
Telephone:  (614) 488-0400
Facsimile: (614) 488-0401
Email:  murray@mmmb.com

*Liaison Counsel*

Darren J. Robbins (admitted *pro hac vice*)
Mark Solomon (admitted *pro hac vice*)
Jason A. Forge (admitted *pro hac vice*)
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile: (619) 231-7423
Email:  darrenr@rgrdlaw.com
Email:  marks@rgrdlaw.com
Email: jforge@rgrdlaw.com

*Attorneys for Lead Plaintiff*

Respectfully submitted,

/s/ *Albert G. Lin*
Carole S. Rendon, Trial Attorney (0070345)
Douglas L. Shively (0094065)
Daniel R. Warren (0054595)
Jeremy Steven Dunnaback (0098129)
Baker & Hostetler LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH  44114
Telephone:  (216) 621-0200
Facsimile: (216) 696-0740
Email:  crendon@bakerlaw.com
Email:  dshively@bakerlaw.com
Email:  dwarren@bakerlaw.com
Email:  jdunnaback@bakerlaw.com

Albert G. Lin (0076888)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH  43215
Telephone:  (614) 228-1541
Facsimile: (614) 462-2616
Email:  alin@bakerlaw.com

George A. Stamboulidis (admitted *pro hac vice*)
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

20

Telephone: (212) 589-4211
Facsimile: (212) 589-4201
Email: gstamboulidis@bakerlaw.com

William S. Scherman (admitted *pro hac vice*)
Jason J. Mendro (admitted *pro hac vice*)
Jason R. Meltzer (admitted *pro hac vice*)
Robert K. Hur (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
Email: wscherman@gibsondunn.com
Email: jmendro@gibsondunn.com
Email: jmeltzer@gibsondunn.com
Email: rhur@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

/s/ *John F. McCaffrey via authorization*
John F. McCaffrey (0039486)
John A. Favret (0080427)
Hannah M. Smith (0090870)
TUCKER ELLIS LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.mccaffrey@tuckerellis.com
Email: john.favret@tuckerellis.com
Email: hannah.smith@tuckerellis.com

Steve Grimes (*pro hac vice* pending)
Dan K. Webb (*pro hac vice* pending)
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: SGrimes@winston.com
Email: DWebb@winston.com

/s/ *Marjorie P. Duffy via authorization*
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
Corey A. Lee (99866)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com
Email: calee@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com

21

*Attorneys for Defendant Michael J. Dowling*

Email:  jbaumann@jonesday.com

*Attorneys for Defendants FirstEnergy Corp., Steven E. Strah, K. Jon Taylor, Jason J. Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, and Leslie M. Turner*

/s/ *Andrew C. Johnson via authorization*
James E. Arnold (0037712)
Gerhardt A. Gosnell II (0064919)
ARNOLD & CLIFFORD LLP
115 W. Main St., Fourth Floor
Columbus, OH 43215
Telephone:  (614) 460-1600
Facsimile:  (614) 469-1093
Email:  jarnold@arnlaw.com
Email:  ggosnell@arnlaw.com

Veronica E. Callahan (*pro hac vice*)
Aaron F. Miner (*pro hac vice*)
Zheng (Jane) He (*pro hac vice*)
Andrew C. Johnson (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER
250 West 55th Street
New York, NY  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
Email:  aaron.miner@arnoldporter.com
Email:  veronica.callahan@arnoldporter.com
Email:  jane.he@arnoldporter.com
Email: andrew.johnson@arnoldporter.com
*Attorneys for Defendant Leila L. Vespoli*

/s/ *Laura H. McNally via authorization*
Douglas M. Mansfield (0063443)
Lape Mansfield Nakasian & Gibson, LLC
9980 Brewster Lane, Suite 150
Powell, OH 43065

/s/ *Paul M.G. Helms via authorization*
John C. Fairweather (0018216)
Lisa S. DelGrosso (0064938)
BROUSE McDOWELL
388 South Main Street, Suite 500
Akron, OH  44311
Telephone:  (330) 535-5711
Facsimile:  (330) 253-8601
Email:  jfairweather@brouse.com
Email:  ldelgrosso@brouse.com

Stephen S. Scholes (*pro hac vice*)
Paul M.G. Helms (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL  60606-0029
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700
Email:  sscholes@mwe.com
Email:  phelms@mwe.com
*Attorneys for Defendant Robert P. Reffner*

/s/ *Andrew P. Guran via authorization*
Victor A. Walton, Jr. (0055241)
Joseph M. Brunner (0085485)
VORYS, SATER, SEYMOUR & PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH  45202
Telephone:  (513) 723-4000
Facsimile:  (513) 723-4056

Telephone: (614) 763-2316
Facsimile: (614) 467-3704
Email: dmansfield@lmng-law.com

Michael L. Kichline (*pro hac vice*)
Laura H. McNally (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Email: michael.kichline@morganlewis.com
Email: laura.mcnally@morganlewis.com

*Attorneys for Defendant Dennis M. Chack*

/s/ *Michael J. Zbiegien via authorization*
John R. Mitchell (0066759), Trial Attorney
Michael J. Zbiegien, Jr. (0078352)
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Telephone: (216) 706-3909
Facsimile: (216) 241-3707
Email: jmitchell@taftlaw.com
Email: mzbiegien@taftlaw.com

*Attorneys for Defendant Ty R. Pine*

/s/ *Joshua N. Shibrot via authorization*
Robert W. Trafford (0040270), Trial Attorney
David S. Bloomfield, Jr. (0068158)
Porter, Wright, Morris & Arthur LLP
41 South High Street, Suite 2900
Columbus, Ohio 43215-6194
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
Email: rtrafford@porterwright.com
Email: dbloomfield@porterwright.com

Brian S. Weinstein (*pro hac vice*)
Eric M. Kim (*pro hac vice*)

Email: vawalton@vorys.com
Email: jmbrunner@vorys.com

Andrew P. Guran (0090649)
VORYS, SATER, SEYMOUR & PEASE LLP
106 South Main Street, Suite 1100
Akron, OH 44308-1471
Telephone: (330) 208-1000
Facsimile: (330) 208-1001
Email: apguran@vorys.com

*Attorneys for Defendant John Judge*

/s/ *Adam Miller via authorization*
Brian P. O'Connor (0086646)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
Telephone: (513) 721-4450
Facsimile: (513) 852-5994
Email: bpo@santenhughes.com

Preston Burton (pro hac vice)
Adam Miller (pro hac vice)
Bree Murphy (pro hac vice)
BUCKLEY LLP
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
Email: khall@buckleyfirm.com
Email: pburton@buckleyfirm.com
Email: amiller@buckleyfirm.com
Email: bmurphy@buckleyfirm.com

*Attorneys for Defendant Donald R. Schneider*

23

Joshua N. Shinbrot (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (202) 450-4000
Email:  brian.weinstein@davispolk.com
Email:  eric.kim@davispolk.com
Email:  joshua.shinbrot@davispolk.com


*Attorneys for the Underwriter Defendants*

4880-5677-5206.10

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on July 1, 2022.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Albert G. Lin
Albert G. Lin  (0076888)