**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: FIRSTENERGY CORP. SECURITIES LITIGATION | Case No. 2:20-cv-03785-ALM-KAJ |
| | <u>CLASS ACTION</u> |
| | Chief Judge Algenon L. Marbley |
| This Document Relates To: | Magistrate Judge Kimberly A. Jolson |
| ALL ACTIONS. | |

**DEFENDANTS JONES AND DOWLING'S MOTION TO COMPEL SECOND
RULE 30(B)(6) DEPOSITION OF FIRSTENERGY**

Defendants Charles Jones and Michael Dowling respectfully move this Court for an order compelling Defendant FirstEnergy Corp. ("FirstEnergy") to appear for a second Rule 30(b)(6) deposition pursuant to Federal Rules of Civil Procedure 37(a)(1) and (d)(1)(A).

Because FirstEnergy failed to prepare its corporate representative to testify on the matters of examination set forth in the notice issued for its deposition on May 20, 2022, Jones and Dowling request that the Court issue an order reopening the deposition of FirstEnergy, with no less than seven hours allocated to Jones and Dowling and with one or more witnesses who are adequately prepared in accordance with Rule 30(b)(6) on the topics and issues previously agreed to by the parties. The grounds for this motion are set forth in the accompanying memorandum in support.

Dated: July 22, 2022

Respectfully submitted,

*/s/ John F. McCaffrey*
John F. McCaffrey (0039486)
John A. Favret (0080427)
Hannah M. Smith (0090870)
TUCKER ELLIS LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.mccaffrey@tuckerellis.com
Email: john.favret@tuckerellis.com
Email: hannah.smith@tuckerellis.com

Steve Grimes (*pro hac vice* pending)
Dan K. Webb (*pro hac vice* pending)
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: SGrimes@winston.com
Email: DWebb@winston.com

*Attorneys for Michael J. Dowling*

*/s/ Carole S. Rendon*
Carole S. Rendon (0070345), *Trial Attorney*
Daniel R. Warren (0054595)
Douglas L. Shively (0094065)
Jeremy S. Dunnaback (0098129)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dwarren@bakerlaw.com
Email: crendon@bakerlaw.com
Email: dshively@bakerlaw.com
Email: jdunnaback@bakerlaw.com

George A. Stamboulidis (*admitted pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: gstamboulidis@bakerlaw.com

Albert G. Lin (0076888)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: (614) 462-4732
Facsimile: (614) 462-2616

William S. Scherman (*admitted pro hac vice*)
Robert K. Hur (*admitted pro hac vice*)
Jason J. Mendro (*admitted pro hac vice*)
Jason R. Meltzer (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
E-mail: wscherman@gibsondunn.com
E-mail: rhur@gibsondunn.com
E-mail: jmendro@gibsondunn.com
E-mail: jmeltzer@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

**MEMORANDUM IN SUPPORT OF DEFENDANTS JONES AND DOWLING'S
MOTION TO COMPEL SECOND RULE 30(B)(6) DEPOSITION OF FIRSTENERGY**

Defendant FirstEnergy Corp. ("FirstEnergy") was required under Federal Rule of Civil Procedure 30(b)(6) to prepare representatives to testify on "all the relevant information known or reasonably available" to the company and to "answer fully, completely, unevasively, the questions posed" on topics noticed for its deposition. *Smith v. Gen. Mills, Inc.*, 2006 WL 7276959, at *3, *5 (S.D. Ohio Apr. 13, 2006) (citation omitted). FirstEnergy failed to fulfill these obligations.

Rather than participate in the Rule 30(b)(6) process in good faith, FirstEnergy designated a single witness who personally knew nothing about the topics in Jones and Dowling's notice and prepared her to do little more than recite passages from the company's Deferred Prosecution Agreement ("DPA"). The result was seven hours of superficial testimony all but devoid of substance. In fact, during Jones and Dowling's examination of FirstEnergy on May 20, 2022, the corporate designee responded over 100 times that she did not know or was not prepared to answer questions on agreed-upon topics. Moreover, the representative made clear that her preparation was limited to the information and materials that she was provided by counsel and that counsel did not share with her, based on an improper assertion of privilege, squarely relevant facts that FirstEnergy identified during its internal investigation.

The remedy for this failure is straightforward. The Court should compel FirstEnergy under Rule 37(d) to do what the company should have done the first time: present one or more witnesses who are properly prepared to testify on the topics agreed upon during the meet-and-confer process. Anything less would allow FirstEnergy to flout its discovery obligations and severely prejudice Jones and Dowling, who have been subjected to accusations and other adverse actions that are central to the claims in this case—often without any meaningful explanation. The Federal Rules entitle all parties to a fair opportunity to discover evidence that is critical to their claims and

defenses. FirstEnergy's failure to produce a witness who could meaningfully testify on the agreed topics deprived Jones and Dowling of that opportunity and must be redressed.

## BACKGROUND

The arrest of Larry Householder, the former Speaker of the Ohio House of Representatives, in July 2020 set off a wave of securities litigation involving FirstEnergy and its current and former executives. Several months later, and following an internal investigation, the company announced it was terminating Jones and Dowling's employment based on violations of unspecified policies. (*See* Compl. ¶ 172, ECF No. 72.) Jones and Dowling deny that they violated any FirstEnergy policies and dispute that their terminations were warranted or appropriate.

In July 2021, FirstEnergy entered into a DPA through which it admitted to a conspiracy to commit honest services wire fraud in connection with payments made to entities affiliated with Householder and Samuel Randazzo, the former Chairman of the Public Utilities Commission of Ohio ("PUCO").[1] Attached to the DPA is a Statement of Facts that touches on nearly every factual issue in this case, including the purpose of payments made to Householder and Randazzo-affiliated entities. Jones and Dowling dispute many of the assertions in that Statement of Facts.

Jones and Dowling served a deposition notice on FirstEnergy on April 12, 2022. (**Ex. 3**.) The notice identifies fifteen topics for examination, which include FirstEnergy's relationship with Householder and Randazzo; the knowledge and participation of the company's counsel, officers, and board with respect to those relationships; decoupling policy and legislation; nuclear subsidies; the basis for Jones and Dowling's terminations; executive compensation policies; events described in the DPA; and FirstEnergy's decision to enter into the DPA.

After FirstEnergy served objections (**Ex. 4**), the parties held a meet and confer on April 29,

---

[1] *United States v. FirstEnergy Corp.*, 1:21-cr-86 (S.D. Ohio), ECF No. 3.

2022. During the call, counsel for Jones and Dowling extensively discussed their notice topic-by-topic and identified documents (by date, type, custodian, or number), communications, witnesses, and issues that would be the subject of examination.

Jones and Dowling memorialized the parties' discussion in a letter dated May 3, 2022. (**Ex. 5**.) Enclosed with that letter was a chart that reproduced the details and issues discussed for each topic. (**Ex. 6**.) For example, for Topic 1, the chart reflects that counsel for Jones and Dowling intended to question FirstEnergy about its "relationship with [Randazzo], Sustainability Funding Alliance ('SFA'), and Industrial Energy Users-Ohio ('IEU-Ohio')." (*Id.*, Row 1.) The chart also reflects that counsel would seek testimony on three agreements with SFA and IEU-Ohio, including how those agreements were negotiated, how payments under those agreements were accounted for, and why the agreements were structured the way they were. (*Id.*) The chart provides similar detail for all other topics and is attached as Exhibit 6 to this motion. (*Id.*).

After further discussion, FirstEnergy agreed to produce a witness on Topics 1-6 and 8-13 "as memorialized in the Meet and Confer Tracking Chart" with little or no reservations. (**Ex. 7**, 5/9/22 Ltr.) The company also agreed to prepare a witness on certain aspects of Topic 7, which concerned the events and circumstances described or referenced in the DPA. (*Id.* at 2.) FirstEnergy maintained its objections to Topics 14 and 15. (*Id.* at 3.)[2]

On May 20, 2022, Tracy Ashton, an assistant controller, appeared as FirstEnergy's sole representative on the topics noticed by Jones and Dowling. Ashton brought to the deposition an annotated version of the DPA, which included the documents and names of individuals referenced in the DPA, and an 84-page script prepared by counsel. The script, which ███████████████

---

[2] Topic 14 focused on the company's discovery responses in this and other related actions. Topic 15 concerned the deposition topics noticed by other parties in this action.

██████████████████████████████████████████████████

████████ [3] In preparation for her testimony, Ashton reviewed only these materials and the deposition notice and spoke to no one other than counsel. (**Ex. 1**, Dep. Tr. 307:19-309:1, 465:10-466:23.) Ashton relied heavily on her script and the DPA to testify and often was unable to answer substantive questions, responding with a variation of "I don't know" or "I'm not prepared" over 100 times during Jones and Dowling's examination. (*See generally id.* at 210:22-499:10.)

After the deposition, Jones and Dowling promptly requested a meet and confer to discuss whether FirstEnergy would appear for a second deposition with one or more witnesses who are properly prepared to address the agreed-upon topics. On June 9, 2022, the parties conferred, but FirstEnergy's lead spokesperson at the meeting had neither attended the deposition nor read the transcript at the time, and would not commit to a position in response to Jones and Dowling's request. Instead, counsel indicated that FirstEnergy would respond in writing on whether and to what extent it would agree to appear for another deposition. (**Ex. 8**, M&C Email, 5.) On June 29, 2022, counsel for FirstEnergy wrote that "Ashton was adequately prepared on the topics identified in Jones and Dowling's deposition notice" and that the company "declines to make a representative available for 7 hours on the topics" in their notice. (**Ex. 9**, 6/29/22 Ltr., 1, 3.)

---

[3] The transcript of the May 20 deposition of FirstEnergy and the 84-page script utilized by Ashton are attached to this motion as Exhibits 1 and 2. The various sections of the script were introduced as separate exhibits during Lead Plaintiff's examination of FirstEnergy on May 19. FirstEnergy designated as confidential under the Stipulated Protective Order ("SPO") (ECF No. 203) a large portion of the May 20 transcript and the entire 84-page script. It also designated as confidential Exhibits 10 and 11 to this motion. In accordance with the SPO, Jones and Dowling have redacted this motion on the docket to the extent it discusses or quotes information in Exhibits 1, 2, 10, or 11 that has been marked as confidential. (*See* SPO § 8, ECF No. 203, at 12) (requiring "appropriate action to ensure" protection of confidential information and providing for submission of materials "solely for in camera review" in context of "discovery and evidentiary motions").) Jones and Dowling are submitting an unredacted version of the motion and exhibits for *in camera* review. (*See id.*)

On June 30, 2022, the parties conferred on whether FirstEnergy would appear for a second deposition on any topic noticed by Jones and Dowling. Except for Topic 9, which concerned the termination of Jones, Dowling, and others, FirstEnergy refused to reopen its testimony as to any topic. Rather, the company stated it would consider making a witness available only for specific questions or issues and only after taking additional time to consider such a request. Regarding Topic 9, counsel for FirstEnergy stated that testimony about the terminations of Jones and Dowling would be limited largely to information provided in the DPA and suggested that its representative would not testify about facts the company learned during its investigation. At the close of the call, counsel for Jones and Dowling stated that they would seek to compel a second deposition on all topics the parties had agreed upon in their prior meet and confers.

## LAW & ARGUMENT

### I.  FirstEnergy Failed to Satisfy Its Obligations Under Rule 30(b)(6) When It Presented a Witness Who Could Not Testify to the Topics Noticed by Jones and Dowling.

Under Rule 30(b)(6), corporate entities must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Because the witness represents the entity, his or her "answers bind the entity and he [or she] is responsible for providing all the relevant information known or reasonably available to the entity." *Oro BRC4, LLC v. Silvertree Apartments*, 2021 WL 2373667, at *3 (S.D. Ohio June 10, 2021) (citation omitted). The rule was designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it[.]" *Id.* (quoting Fed. R. Civ. P. 30(b)(6) advisory committee's notes to 1970 amendment).

5

So long as the topics for examination are identified with reasonable particularity, the entity "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Smith*, 2006 WL 7276959, at *2-3 (internal quotation marks and citations omitted). The representative also must be prepared to "state the organization's position, knowledge, subjective beliefs, and opinions on identified topics." *In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *7 (D.N.J. Jan. 25, 2011) (citations omitted), *aff'd*, 2011 WL 2357793 (D.N.J. June 9, 2011).

FirstEnergy was fully apprised of Jones and Dowling's deposition topics; in fact, it agreed to produce a witness knowledgeable on nearly every topic and issue covered in their Rule 30(b)(6) notice. (**Ex. 7**, 5/9/22 Ltr.) Yet the company's representative was anything but prepared to testify on those same topics and issues, as evidenced for three reasons. One, FirstEnergy failed to prepare Ashton to do little more than recite what was in her counsel-prepared script and, as a result, could not answer a significant number of substantive questions posed. Two, FirstEnergy failed to have Ashton take readily available steps to ensure she was prepared on topics and issues that went beyond the DPA. Three, FirstEnergy withheld from Ashton, based on an improper claim of privilege, facts pertaining to its termination of Jones and Dowling.

### A. FirstEnergy Could Not Provide Substantive Information Beyond What Was Scripted by Counsel on Any Topic Examined During Its Deposition.

FirstEnergy approached its deposition on the assumption that it could answer questions on a range of topics that Ashton, its sole designee, personally knew nothing about by having her scroll through an 84-page script that the company's counsel provided to her. The results were predictable: Ashton was only able to recite the information scripted for her and could not answer fundamental questions on the topics examined.

6

Courts in similar circumstances have had held that a company's preparation and testimony fell well short of what is required under Rule 30(b)(6). In *Newmark Group, Inc. v. Avison Young (Canada) Inc.*, 2022 WL 1157476, at *2, *6 (D. Nev. Apr. 19, 2022), the court held that plaintiff failed to properly prepare its designee despite having provided him a 91-page outline prepared by counsel. Because the designee could do little more than read from the outline and often failed to answer questions on the noticed topics, the court ordered a second deposition during which the designee's "need to refer to an outline should be the exception, not the rule." *Id.* at *6. Similarly, in *In re Neurontin Antitrust Litigation*, 2011 WL 253434, at *8-10, the court found a designee's preparation to be inadequate where his testimony "primarily consisted of reciting an outline of responses [that] counsel prepared" and "usually answered no or some variation of 'not at this time'" when asked if he could expand on information in his outline.

The transcript here is replete with examples in which Ashton could say no more than what counsel prepared for her, often resulting in her being unable to say anything substantive at all. At seemingly every turn—whether asked about the company's interactions with Randazzo-affiliated entities, Generation Now, or Partners for Progress; the termination of Jones, Dowling, and others; or the DPA—Ashton was tied to her script and could not give straightforward answers on topics and issues that were clearly noticed, agreed to, and relevant to this litigation.

### 1. FirstEnergy's Interactions with Randazzo-Affiliated Entities.

Lead Plaintiff alleges that Jones and Dowling facilitated "an illicit $4 million payment to Randazzo" in 2019 in exchange for Randazzo taking official actions as PUCO Chairman. (Compl. ¶¶ 11, 72, 136(e), 220-22, 296.) Two issues that are being litigated are the purpose of the $4 million payment and whether FirstEnergy was required to make the payment under a contract with SFA. In disclosures filed in 2020 and 2021, FirstEnergy stated that it made the payment "in connection with the termination of a purported consulting agreement" (*see id.* ¶¶ 189-90), and that the payment

7

"may have been for purposes other than those represented within the consulting agreement," (*see id.* ¶ 206). FirstEnergy later stated in the DPA that it "was under no legal obligation to make the payment" in early 2019. (**Ex. 3**, Notice Ex. B (DPA), 35.)

Jones and Dowling issued Topics 1 and 2 to examine the factual basis for these assertions. Topic 1 focused on the company's "relationship with, communications with, interactions with, obligations to, and payments to" Randazzo and the entities he controlled or was affiliated with. (*Id.* at Ex. A, 3.) Topic 2 focused on the $4 million payment itself. (*Id.*)

Prior to the deposition, counsel made clear that they intended to ask about FirstEnergy's relationship with SFA and IEU-Ohio, including "the 2010 consulting agreement with SFA, the 2013 consulting agreement with SFA, and the 2015 settlement and/or side agreement with IEU-Ohio," and the "internal accounting of any payments made to these entities." (**Ex. 6**, Chart, Row 1.) Counsel also explained that they intended to question FirstEnergy about the "basis for the decision to make the [$4 million] payment," its "understanding of the purpose of the payment before and after it was made, and before and after the termination of Jones and Dowling," and its efforts, which included the $4 million payment, to "move expenses from future years into 2018 due to above-plan financial results." (*Id.*, Row 2.) FirstEnergy agreed to prepare on these and other issues under Topics 1 and 2. (**Ex. 7**, 5/9/22 Ltr. 1.)

Despite this in-depth preview, Ashton could not provide substantive information on these issues beyond what was written in her script or the DPA. Her testimony about ██████████ illustrates this point. ███████████████████████████████ ████████████ (**Ex. 10**, JD Dep. Ex. 4.) When asked ████████████████ Ashton simply ██████████████████████████████████ ██████████████████████████████████

█████████████████████████████████████████████████ (**Ex. 1**, Dep. Tr. 233:19-24; **Ex. 2**, Script, 27; **Ex. 10**, JD Dep. Ex. 4.) Ashton admitted, however, that she ████ ████████████████████████ (**Ex. 1**, Dep. Tr. 233:25-234:1.)

In the same vein, Ashton was able to confirm, ███████████████████ ████████████████████████████████████ (*Id.* at 234:4-18; **Ex. 2**, Script, 28.) But she could not █████████████████████ ██████████████████████████████ (**Ex. 1**, Dep. Tr. 236:5-11.)

Ashton could not ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ (*Id.* at 258:24-260:12, 269:23-270:7, 284:13-20.)

Nor was Ashton prepared to discuss a fundamental issue in this case—████████████ █████████████████████████████ When asked: ████████ █████████████████████████████ Ashton responded: ██ █████████████████████████ (*Id.* at 347:14-348:7.)

Ashton could not provide specifics about ████████████████████ █████████████████████████████ Ashton was unable to ████████████████████████████████████████ █████████████████ (*Id.* at 320:9-321:23, 324:1-325:12.) Nor could she ████ ████████████████████████████████████████ ██████ (*Id.* at 322:13-323:7, 325:13-23.)

Ashton also admitted ███████████████████████ ████████████████████████████████████████

███████████████████████████████ (*Id.* at 354:23-355:9.) And she was ████████████████

█████████████████████████████████████████████████████████████████████████████

██████████████████████ (*Id.* at 356:25-357:6, 366:18-367:3; *see also* **Ex. 6**, Chart, Row 2.)

> ### 2. FirstEnergy's Interactions with Householder, Generation Now, and Partners for Progress.

Lead Plaintiff also claims that Jones and Dowling helped direct contributions to Generation Now, directly and through Partners for Progress, in exchange for official actions by Householder. (Compl. ¶¶ 68, 205, 233.) Jones and Dowling noticed several topics to rebut these assertions. This includes Topic 3, which concerned FirstEnergy's interactions with the so-called Householder Enterprise; Topic 4, which concerned interactions with Generation Now and Partners for Progress; Topic 5, which concerned the decoupling policy and legislation that, according to the DPA, was among the official action sought from Householder (and Randazzo); and Topics 11, 12, and 13, which encompassed the awareness and approval of events described in the DPA among FirstEnergy's directors, executives, and lawyers. (**Ex. 3**, Notice Ex. A, 4-5.)

Here again, counsel detailed the issues they intended to cover. In particular, counsel stated that they would inquire about FirstEnergy's dealings with "members of the so-called Householder Enterprise . . . from 2016 through 2020" vis à vis "nuclear subsidies, HB6, and/or Randazzo"; the "formation and purpose of Partners for Progress[] and Generation Now[];" FirstEnergy's understanding of the purpose of payments made to those entities and its "interactions with Calfee" in connection with those payments; FirstEnergy's "actions and communications regarding decoupling policy and legislation"; FirstEnergy's knowledge of "any misuse by Householder or others of those funds for illegal purposes"; "what the Executive Council knew about" these topics; and whether the board "was active in discussing these topics or in expressing approval or disapproval . . . regarding these topics." (**Ex. 6**, Chart, Rows 3-5, 11-13.) With minor reservations,

FirstEnergy agreed to produce a witness on these issues and represented that it would "undertake a reasonable inquiry, which will include the review of documents," and would "be prepared to discuss the information provided to the Board[.]" (**Ex. 7**, 5/9/22 Ltr., 1-3.)

Here again, Ashton was unable to answer basic questions on these issues. She did not know



(**Ex. 1**, Dep. Tr. 475:11-476:20.) Ashton could not ███████████████████

███████████████████████████████████

█████████████████████████████

██████ (*Id.* at 487:8-491:24.)

Ashton lacked information on Partners for Progress and Generation Now. She had no knowledge of ███████████████████████████████

███████████████████████████████████

███████████████████████████ (*Id.* at 420:8-12.)[4] And she did not

███████████████████████████████████

███████████████████████████████

████████████████████ (*Id.* at 422:19-423:14.)

Ashton was unfamiliar with █████████████████ and could not ██████

███████████████████████ (*Id.* at 420:19-421:4.) With respect to ███████, Ashton ██████████████████████████████

███████████████████████████████████

_____

[4] Generation Now and Partners for Progress are organizations whose contributions, gifts, grants and similar amounts paid are exempt from tax such that its expenditures relate to and promote social welfare within the meaning of Section 501(c)(4) of the Internal Revenue Code.

██████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* at 434:15-436:21, 443:8-

444:15, 447:15-21, 453:14-455:12, 492:20-493:4.)

### 3. Termination and Separation of FirstEnergy Executives.

Ashton's lack of knowledge about the termination and separation of former executives was

an egregious example of FirstEnergy's failure to prepare. Topic 9 covered "FEC's termination of

[] Jones' and [] Dowling's employment and the separation of Robert Reffner, Ebony Yeboah-

Amankwah, Eileen Mikkelsen, Brad Bingaman, Justin Biltz, Joel Bailey, Ty Pine, [and] Mark

Hayden[.]" (**Ex. 3**, Notice, 4.) In response, FirstEnergy agreed to prepare "testimony regarding the

factual basis for terminating Jones and Dowling" along with "similar information" for the other

executives, "with an emphasis on what was communicated to those persons" and the "factual basis

for [their] termination or separation." (**Ex. 6**, Chart, Row 9; **Ex. 7**, 5/9/22 Ltr., 2.)

Put simply, FirstEnergy failed to live up to its agreement. Ashton admitted ████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████ (**Ex. 1**, Dep. Tr. 384:3-9, 385:8-24; **Ex. 2**, Script, 78.) Ashton could not answer

even the most basic follow-up questions:

████████████████████████████████████

████████████████

██████████████████████████████████████████████

████████████████

███████████████████████████████████████

████████████████

██████████████████████████████████████████████



(**Ex. 1**, Dep. Tr. 382:7-18, 384:14-385:7.)

Ashton also could not ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ (*Id.* at 385:25-388:17, 392:22-394:5, 397:9-401:21; *see* **Ex. 2**, Script, 79-81.)[5]

### 4. Statements in, and Decision to Enter into, the DPA.

Ashton's lack of preparation even extended to the DPA itself, through which the company

admits to facts that are in dispute, including the purpose of payments to Generation Now and

Randazzo-affiliated entities. The DPA, its accuracy, the facts FirstEnergy relied upon to conclude

---

[5] FirstEnergy's preparation of Topic 10 (executive compensation policies) was just as problematic. Among other issues, the company agreed to prepare a representative on "the application of [its] compensation policies, practices, and obligations to Jones and/or Dowling." (**Ex. 6**, Chart, Row 10; **Ex. 7**, 5/9/22 Ltr., 2.) Yet, Ashton ████████████████████████████████████████
████████████████████████████████████████████████████████████████ (**Ex. 1**, Dep Tr. 410:24-412:13.)
Nor did Ashton's script ████████████████████████████████████████████████████████
████████████████████████████ (**Ex. 2**, Script, 74-77.)

the DPA was accurate, and FirstEnergy's financial and operational motives to enter the DPA are thus relevant lines of inquiry for Jones and Dowling to defend themselves in this litigation.

Counsel for Jones and Dowling stated during meet and confers that Topic 8 seeks testimony concerning FirstEnergy's "decision to enter into the DPA," as well as "the business implications of doing so." (**Ex. 6**, Chart, Row 8.) They further explained that, because the company has sworn to "the accuracy of all statements in the DPA, which is a central document in this case," its witness "should be prepared to discuss the basis for the statements in the DPA" in connection with Topic 7. (*Id.*, Row 7.) FirstEnergy agreed to prepare a designee on "the truthfulness of the statements in the DPA," "any specific part of the DPA that has been identified," "the reasons for approving the DPA" and "[its] understanding of which persons engaged in criminal behavior in relation to the events described in the DPA." (**Ex. 7**, 5/9/22 Ltr., 2.)

Beyond reciting the superficial information in her lawyer-prepared script, Ashton admitted:



(**Ex. 1**, Dep. Tr. 403:16-404:1.) Nor did she

(*Id.* at 404:8-16, 405:5-8.) Indeed, Ashton did not

(*Id.* at 406:17-24, 407:20-408:7; **Ex. 11**, JD Dep. Ex. 25, at 3.) When asked,

(**Ex. 1**, Dep. Tr. 408:2-7.)

Ashton could not                                        She could not

14



███████████████ (*Id.* at 358:15-359:11; **Ex. 3**, Notice Ex. B (DPA), 36.) And she could

not ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ (**Ex. 1**, Dep. Tr. 371:7-373:1; **Ex. 3**, Notice Ex. B (DPA), 32.)

FirstEnergy's contention that it need only limit its preparation to the DPA statements that

were identified in the deposition notice are meritless. (**Ex. 7**, 5/9/22 Ltr., 2.) FirstEnergy agreed

that its "representative will be prepared to testify about the truthfulness of the statements in the

DPA[.]" (*Id.*) That is not surprising given that the statements were made under oath. But it is

meaningless to have a witness simply repeat that belief without further context. It also runs counter

to purpose of Rule 30(b)(6), which is to prevent the "bandying" of the discovering party among

individuals who profess ignorance of facts clearly known by the entity. *Janko Enters. v. Long John

Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *15, *19-20 (W.D. Ky. Apr. 3, 2014) (admonishing

witness who selectively reviewed documents and gave generic answers for displaying "inadequate

preparation and evasiveness reminiscent of the very problems" that led to rule's adoption).

> **B.** **FirstEnergy Failed to Take Readily Available Steps to Prepare on Topics and Issues that Went Beyond the DPA.**

Ashton admitted ██████████████████████████████████

████████████████████████ (**Ex. 1**, Dep. Tr. 308:14-309:1.) Even setting to one side that

"the use of an outline created entirely by litigation counsel contradicts the purpose of Rule

30(b)(6)" and wrongly turns the witness into "a mere document-gatherer," *In re Neurontin*, 2011

WL 253434, at *10, the outline here does not provide "all the relevant information known or

reasonably available to" FirstEnergy, *Oro*, 2021 WL 2373667, at *3 (citation omitted).

Indeed, the script provides little or no new information and largely ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████ (*E.g.*, **Ex. 2**, Script, 1, 3, 5.) ████████████████████████

████████████████████████████████████████████████████████████████

███████████ (*See, e.g., id.* at 27; *see also* **Ex. 1**, Dep. Tr. 253:9-

16, 255:13-256:1, 309:15-19.)

The script also omits plainly relevant information that FirstEnergy and Ashton did nothing

to fill in. For example, FirstEnergy agreed to prepare a witness to provide testimony on "the

Executive Council meeting on or about December 19, 2018, in which Jones disclosed the [$4

million] payment[.]" (**Ex. 6**, Chart, Row 12; **Ex. 7**, 5/9/22 Ltr. 3.) Per the script: ████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ (**Ex. 2**, Script, 83.) Ashton did not ████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ (**Ex. 1**, Dep. Tr. 342:11-

344:7.) FirstEnergy also agreed to produce a witness on other issues that are not covered in the

script, including "why the [2015] settlement and/or side agreement was not disclosed to the

PUCO," the "effort to move expenses from future years into 2018," "the Company's understanding

. . . of the rules governing 501(c)(4) entities," and "Leila Vespoli's presentation [to the board] as

to the settlement of ESP IV." (**Ex. 6**, Chart, Rows 1, 2, 4, 11; **Ex. 7**, 5/9/22 Ltr. 1-3.)

The script also contains ██████████████████████████████████████

███████████████████ For example, the script ███████████████████████████

████████████████████████████████████████████████████████████████

16

███████████████████████████████████████████████████████████████

████████████████████████ (**Ex. 2,** Script, 31-32.) That cannot be right. FirstEnergy ████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████

Given the glaring holes in her 84-page script, Ashton's failure to undertake any preparation besides reviewing the information provided to her by counsel was inadequate. *See Newmark Grp.*, 2022 WL 1157476, at *6 ("[I]t is not enough that the 91 page Outline was prepared and documents associated therewith were provided to [the] deponent, the deponent, as a representative of the corporation, had the obligation to review and prepare for the testimony on the topics covered.").

Nor can FirstEnergy evade its obligations by claiming that it would have been burdensome or unreasonable to take additional steps to prepare Ashton. "Preparation of a Rule 30(b)(6) witness is an active process" that requires "designees to review all matters known or reasonably available to the corporation[.]" *Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, 2016 WL 4468000, at *13 (N.D. Ohio Aug. 23, 2016). And that is so "even if the documents are voluminous and burdensome to review[,]" *id.*, and the corporation must "interview employees with personal knowledge" to obtain relevant information, *Oro*, 2021 WL 2373667, at *3.

Moreover, there are myriad examples where Ashton failed to take readily available steps to educate herself on issues within the company's knowledge. Ashton admitted ████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ (**Ex.**

**1**, Dep. Tr. 303:10-17, 315:24-316:7 (emphasis added); **Ex. 6**, Chart, Row 1.) She also testified

that, ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████ (**Ex. 1**, Dep. Tr. 301:20-303:17, 316:8-317:4, 321:6-11.) Nor did she ████████

████████████████████████ (*Id.* at 223:22-224:3.) As a result, and as set out above,

Ashton could not ████████████████████████████████████████

*See Lutz v. St. Paul Fire & Marine Ins. Co.*, 2005 U.S. Dist. LEXIS 12568, at *10-11 (S.D. Ohio

May 26, 2005) (holding representative was unprepared where he failed "to review all corporate

documentation that might have had a bearing on [the listed] topics," including the insurance policy

identified in notice); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 1835439,

at *3 (S.D.N.Y. Aug. 8, 2002) ("The corporation must provide its interpretation of documents and

events.") (citation omitted).

    **C.**    **FirstEnergy Withheld from Its Representative, Based on an Improper Claim of Privilege, Facts about Its Executive Terminations.**

    Ashton's preparation was deficient for yet another reason: Based on an improper claim of

privilege, FirstEnergy withheld from Ashton relevant facts that it supposedly uncovered during its

investigation. When asked to ████████████████████████████████

████████████████████████████████████████████

████████████████ That is because she ████████████████████████████

████████████████████ (**Ex. 1**, Dep Tr. 389:19-390:14, 395:24-396:13; **Ex. 2**,

Script, 78-81.)

    That assertion of privilege is simply incorrect. It is well settled that *facts* learned during a

counsel-led investigation are not privileged, regardless of whether the company learned those facts

during an investigation. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege . . .

does not protect disclosure of the underlying facts by those who communicated with the

attorney[.]"). Moreover, FirstEnergy cannot reasonably claim that it is unable to share with its

designee *facts* that are learned by counsel. Courts hold that a representative "must be prepared to

recite the facts" known to the entity "even though those facts may have been provided to [the entity] by [its] lawyers." *Smith*, 2006 WL 7276959, at *4; *see also In re Ohio Execution Protocol Litig.*, 2018 WL 6177169, at *2 (S.D. Ohio Nov. 27, 2018) ("[T]he Court does not accept the proposition that a deponent can avoid revealing the factual and legal bases of a position taken in a case because those bases rest in part on what the deponent has learned from his attorneys.").

Even if the decision to terminate Jones and Dowling was based on the advice of counsel, that does not render the factual basis for the board's decision off-limits from discovery. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 453 (N.D. Ill. 2006) (holding that presence of counsel at board meeting did not extend privilege to factual discussions "regarding Plaintiff's work history" or "[employer's] reasons for moving to terminate Plaintiff"). Thus, FirstEnergy's decision to withhold from Ashton relevant facts concerning its termination of Jones and Dowling further demonstrates that the company is seeking to shunt Jones and Dowling from "pillar to post." *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986).

## II. The Court Should Order FirstEnergy to Appear for a Second Deposition with One or More Properly Prepared Witnesses.

Courts in this district hold that a failure to adequately prepare a witness under Rule 30(b)(6) is "tantamount to a failure to appear" for a deposition under Rule 37(d). *Oro*, 2021 WL 2373667, at *4 (citing in-district cases). Rule 37(d) permits a court to impose "a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony[.]" *Id.* (quoting *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017)). Courts have "wide discretion in determining an appropriate sanction under Rule 37." *Id.*; *accord In re Neurontin*, 2011 WL 253434, at *13 (discussing same under Rules 30 and 37).

"The remedy in this situation is quite straightforward:" Because FirstEnergy failed to prepare on topics it negotiated with Jones and Dowling, it should be compelled to appear for a

second deposition on the same topics with witnesses who are actually prepared to testify. *Prosonic Corp. v. Stafford*, 2008 WL 2323528, at *5 (S.D. Ohio June 2, 2008) (requiring deponent to "act in compliance with the rule and produce . . . one or more witnesses who possess [the entity's] knowledge about the subjects listed in the notice"). Indeed, courts regularly order the reopening of 30(b)(6) depositions where a company fails to make a good-faith effort to prepare its designee. *See Oro*, 2021 WL 2373667, at *4 (ordering second Rule 30(b)(6) deposition where designee "was not adequately prepared as a corporate representative to discuss ***any*** of the Noticed Topics beyond his personal knowledge") (emphasis in original); *In re Neurontin*, 2011 WL 253434, at *19 (witness could not testify beyond counsel-made script); *LabXpress, LLC v. Lab'y Corp. of Am.*, 2011 WL 1099283, at *3 (W.D. Okla. Mar. 22, 2011) (witness "unable to answer questions regarding numerous topics and even admitted to his unpreparedness"); *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 169, 173-74 (D.D.C. 2003) (witness unable to testify to accuracy or factual basis of company statements produced in submissions to government in criminal matter).

Anything short of reopening the deposition with prepared witnesses would prejudice Jones and Dowling's ability to defend this action and would reward FirstEnergy for its failure to comply with Rule 30(b)(6).

## CONCLUSION

For the foregoing reasons, the Court should grant Jones and Dowling's motion to compel and order FirstEnergy to appear for a second deposition, with no less than seven hours allocated to Jones and Dowling and with one or more witnesses who are properly prepared in accordance with Rule 30(b)(6) on the topics previously agreed to by the parties, including with respect to facts that FirstEnergy learned during its internal investigation.

20

Dated: July 22, 2022

*/s/ John F. McCaffrey*
John F. McCaffrey (0039486)
John A. Favret (0080427)
Hannah M. Smith (0090870)
TUCKER ELLIS LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.mccaffrey@tuckerellis.com
Email: john.favret@tuckerellis.com
Email: hannah.smith@tuckerellis.com
Steve Grimes (*admitted pro hac vice*)
Dan K. Webb (*attended pro hac vice*)
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: SGrimes@winston.com
Email: DWebb@winston.com

*Attorneys for Michael J. Dowling*

Respectfully submitted,

*/s/ Carole S. Rendon*
Carole S. Rendon (0070345), *Trial Attorney*
Daniel R. Warren (0054595)
Douglas L. Shively (0094065)
Jeremy S. Dunnaback (0098129)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dwarren@bakerlaw.com
Email: crendon@bakerlaw.com
Email: dshively@bakerlaw.com
Email: jdunnaback@bakerlaw.com

George A. Stamboulidis (*admitted pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: gstamboulidis@bakerlaw.com

Albert G. Lin (0076888)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: (614) 462-4732
Facsimile: (614) 462-2616
Email: alin@bakerlaw.com

William S. Scherman (*admitted pro hac vice*)
Robert K. Hur (*admitted pro hac vice*)
Jason J. Mendro (*admitted pro hac vice*)
Jason R. Meltzer (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
E-mail: wscherman@gibsondunn.com
E-mail: rhur@gibsondunn.com
E-mail: jmendro@gibsondunn.com
E-mail: jmeltzer@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

## <u>CERTIFICATION UNDER FED. R. CIV. P. 37(a)(1)</u>

Counsel for Defendants Charles Jones and Michael Dowling certify in accordance with Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37.1 that they have in good faith conferred with counsel for Defendant FirstEnergy Corp. on the issues set forth in this motion in an effort to reach agreement on a second Rule 30(b)(6) deposition of FirstEnergy without court action.

*/s/ John F. McCaffrey*
*Attorney for Michael J. Dowling*

*/s/ Carole S. Rendon*
*Attorney for Defendant Charles E. Jones*

## **CERTIFICATE OF SERVICE**

The undesigned hereby certifies that on July 22, 2022, a copy of the foregoing document was served on all parties of record via the Court's electronic filing system.

/s/ Carole S. Rendon
*Attorney for Defendant Charles E. Jones*