**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE FIRSTENERGY CORP.
SECURITIES LITIGATION,

This document relates to:           Civil Action 2:20-cv-3785
                                                  Chief Judge Algenon L. Marbley
                                                  Magistrate Judge Jolson
        ALL ACTIONS.

## OPINION AND ORDER

This matter is before the Court on the Motion to Compel Second Rule 30(b)(6) Deposition of FirstEnergy (Doc. 319), submitted by Defendants Charles E. Jones and Michael Dowling. For the following reasons, the Motion is **GRANTED**. Defendant FirstEnergy Corp. ("FirstEnergy") is **ORDERED** to make available one or more corporate representatives for a second Rule 30(b)(6) deposition, for which Jones and Dowling may have the seven hours for questioning contemplated by the Rule. Additionally, FirstEnergy is **ORDERED** to pay Jones's and Dowling's reasonable costs and expenses associated with attending the second deposition, including court reporter costs, as well as Jones's and Dowling's reasonable attorney's fees associated with preparing the instant motion. Finally, the Court adopts a new procedure for resolving discovery disputes, as explained in the Conclusion of this Opinion and Order.

**I.  BACKGROUND**

This case is a consolidated class action brought on behalf of all purchasers of securities in FirstEnergy between February 21, 2017 and July 21, 2020. (Doc. 72, ¶ 1). Plaintiffs seek relief under the Securities Act of 1933 and the Securities Exchange Act of 1934 against FirstEnergy, certain of its current and former employees, and "the investment banks which underwrote two FirstEnergy debt offerings during the Class Period." (*Id.*). Two of the Defendant former

employees, Charles E. Jones and Michael Dowling, bring the present motion against FirstEnergy. (Doc. 319).

On April 12, 2022, Jones and Dowling served a notice of a 30(b)(6) deposition on FirstEnergy, which listed fifteen topics for examination. (Doc. 319-4 at 10–12). Though FirstEnergy sent responses and objections to the notice (Doc. 319-5), it ultimately agreed to produce a witness on twelve topics (Doc. 319-8), some of which had been narrowed through the conferral process (*see* Docs. 319-6, 319-7). On May 20, 2022, Tracy Ashton, an assistant controller, appeared as FirstEnergy's corporate representative. (Doc. 319 at 5; Doc. 320 at 3–4).

Jones and Dowling found her testimony lacking. During and after her testimony, they asserted that Ashton was unprepared to answer questions posed on most of the noticed topics, and, ultimately, they took the position that FirstEnergy must appear for a second 30(b)(6) deposition. (Doc. 319-9 at 9). After the parties went back and forth, FirstEnergy stood firm that Ashton was adequately prepared for the deposition; she gave sufficient testimony; and a second deposition was unwarranted. (Doc. 319-10).

Later, however, FirstEnergy slightly amended its position to allow for its redeposition on only one topic—Jones's and Dowling's terminations. (Doc. 319 at 7; Doc. 320 at 5). Jones and Dowling rejected the proposal, brought the dispute before the Court (Doc. 314), and filed the instant motion to compel additional 30(b)(6) testimony. (Doc. 319). The motion is fully briefed and ripe for consideration. (Docs. 320, 322).

II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 30(b)(6) permits a party to name a corporate entity as a deponent, and, relevant here, provides:

> The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf;

2

> and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). Significantly, the rule requires knowledgeable witnesses—those individuals with the ability to testify about information known or reasonably available to the entity. So it is the entity's responsibility both to designate a capable individual or individuals in the first instance, and then "to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *3 (S.D. Ohio Apr. 13, 2006) (quoting *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989)).

Proper preparation allows a designee to testify beyond personal knowledge, "to all matters reasonably known by the corporation." *Oro BRC4, LLC v. Silvertree Apartments*, No. 19-cv-4907, 2021 WL 2373667, at *3 (S.D. Ohio June 10, 2021) (quoting *Painter-Payne v. Vesta W. Bay, LLC*, No. 2:12-cv-00912, 2014 WL 1588505, at *3 (S.D. Ohio Apr. 21, 2014)). The corporate entity must make a good faith effort to identify which relevant facts it possesses, and is thus required "to collect information, review documents, and interview employees with personal knowledge . . . ." *Id.* (quoting *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 WL 13334451, at *3 (N.D. Ohio Sept. 15, 2011)). At base, a corporate entity cannot circumvent its duties under Rule 30(b)(6) by producing a witness who is not prepared to testify knowledgably about the matters for examination. *See Painter-Payne*, 2014 WL 1599505, at *3.

## III. DISCUSSION

Jones and Dowling ask the Court to reopen FirstEnergy's 30(b)(6) deposition, allowing up to seven hours of additional testimony. (Doc. 319 at 1). They maintain FirstEnergy did not participate in the first deposition in good faith, and instead prepared its designee "to do little more than recite passages from the company's Deferred Prosecution Agreement ('DPA')." (*Id.* at 3).

3

Particularly, they represent that the "designee responded over 100 times that she did not know or was not prepared to answer questions on agreed-upon topics." (*Id.*). This lack of preparation, they say, is "tantamount to a failure to appear" for the deposition, and reopening the deposition is the most appropriate remedy. (*Id.* at 21) (quoting *Oro*, 2021 WL 2373667, at *4).

FirstEnergy responds that Ashton was adequately prepared—emphasizing that "[s]he met with counsel over half a dozen times[,]" and reviewed "the entire 49-page DPA and its 30-page statement of facts, all 70-plus documents referred to in the DPA, and an 84-page, single-spaced testifying aid on dozens of wide-ranging topics." (Doc. 320 at 1). FirstEnergy says that preparation was enough (*id.* at 6–10), and further suggests that Jones and Dowling are holding the witness to a standard of "absolute perfection[,]" which is not required of a 30(b)(6) witness (*id.* at 10–18). Finally, it says additional testimony is not necessary given that Jones and Dowling have submitted written discovery requests to FirstEnergy on some of the at-issue topics. (*Id.* at 18).

The Court concludes that Ashton's preparation and testimony fell short of the requirements of Rule 30(b)(6), and Jones and Dowling are therefore entitled to an additional deposition of FirstEnergy.

Beginning with FirstEnergy's description of its witness preparation—and the Court's independent review of the witness's testifying aid and testimony—it is clear that Ashton's preparation was overly narrow. As FirstEnergy states, Ashton's preparation was centered on the DPA and its supporting documents. (Doc. 320 at 6–7). While it maintains that her testifying aid prepared her to testify about numerous topics (*id.*), because the aid was predominated by quotations and references to the DPA, it truly only prepared her to testify about what the DPA already represented about each topic.

4

For instance, one of the significant topics noticed for deposition was a $4.3 million payment FirstEnergy made to Sam Randazzo, the Chairman of the Public Utilities Commission of Ohio ("PUCO"). (Doc. 319-4 at 10). The DPA set forth that FirstEnergy entered into a series of consulting agreements with Randazzo between 2010 and 2019, and the $4.3 million payment made in January 2019 represented the remaining payment amounts designated in the most recently amended consulting agreement. (*Id.* at 30–31, 47–48). When Ashton testified about the $4.3 million payment, she was only prepared to share what the DPA already stated. In fact, the section of her testifying aid related to the payment merely quotes the DPA and cross-references other portions of the aid, which themselves primarily quote the DPA and the consulting agreements. (Doc. 319-3 at 35–36) (cross-referencing *id.* at 27–34, 41–46). So her testimony went in circles, always returning to the DPA's and consulting agreements' language. And, when questioned about the facts underlying those representations and agreements, she had little to offer.

This included, for example: (1) Ashton quoting language from the consulting agreements describing their purpose, conceding that she did not understand what the language meant, and then confirming that she did not undertake any additional inquiry to learn the reason for entering the agreements (Doc. 319-2, 233:9–236:20); (2) Ashton's inability to state who authorized payments to the consulting companies prior to the $4.3 million payment (*id.*, 258:6–260:12); (3) inability to explain why the consulting payments changed as the consulting agreements were amended through the years (*id.*, 269:12–270:7); and (4) inability to explain why FirstEnergy represented in the DPA that it was not under any legal obligation to make the $4.3 million payment (*id.*, 347:14–348:7).

And that is not all. In their briefing, Jones and Dowling identify several moments during the deposition when Ashton revealed a lack of preparation to discuss the $4.3 million payment. (Doc. 319 at 9–12). They also exhaustively trace times when Ashton was unable, due to lack of

preparation, to answer questions about: FirstEnergy's involvement with Larry Householder, Generation Now, and Partners for Progress (*id.* at 12–14); the termination and separation of FirstEnergy executives, including Jones and Dowling themselves (*id.* at 14–15); the basis for the company's statements in the DPA, and the decision-making that supported the company's choice to enter into the DPA (*id.* at 15–17). FirstEnergy fails to show that this information is not reasonably known to the company, and common sense says otherwise.

In another attempt to salvage the testimony, FirstEnergy asserts that—while Ashton responded that she did not know the answer to a question over 100 times—such a response is reasonable where questions are argumentative, call for legal conclusions, or are otherwise improper. (Doc. 320 at 13–14) (citing *Runnels v. Norcold, Inc.*, No. 1:16-cv-713, 2017 WL 3026915, at *2 (E.D. Va. Mar. 30, 2017)). Yet, from its review of the deposition testimony, the Court finds that the vast majority of the questions posed to Ashton were proper, and her reason for asserting that she did not know was simply that she had not reviewed relevant facts prior to the deposition. Ashton herself admitted she was uninformed, not that the questioning was improper. And, unlike several of the other cases upon which FirstEnergy relies, this is not a case where the movants failed to use record support to establish concrete examples of lack of preparation. *See Wicker v. Lawless*, No. 1:15-cv-00237, 278 F. Supp.3d 989, 1001 (S.D. Ohio 2007). Nor is this a matter in which the 30(b)(6) witness testified capably on all topics, but merely failed to answer "every question" posed. *See Freedom's Path at Dayton v. Dayton Metro. Hous. Auth.*, No. 3:16-cv-466, 2018 WL 2948021, at *11 (S.D. Ohio June 13, 2018). Nor did this witness testify fully and completely with the aid of her preparation file. *See Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8–9 (W.D. Ky. July 18, 2017).

Ashton's repeated inability to testify is significant, and is not merely a case of Jones and Dowling unfairly holding FirstEnergy's designee to an unrealistic standard of "absolute perfection." To be sure, "absolute perfection" is not required of a 30(b)(6) designee. *Wicker*, 278 F. Supp.3d at 1000. But a designee must be able to testify fully, completely, and candidly to all matters reasonably known by the corporation. To accept that Ashton was fully prepared would lead to a series of untenable conclusions. For instance, when asked about the purpose behind the consulting agreements, Ashton only read the language from the contracts. To accept this as adequately prepared testimony, the Court would have to conclude that FirstEnergy does not reasonably know anything, outside of the four corners of the contracts, about its own purpose for entering into the consulting agreements.

The Court understands FirstEnergy's representation that many of the individuals with knowledge of these agreements are former employees who are themselves Defendants in this action and thus unavailable for informal questioning by FirstEnergy's counsel and its designee. (Doc. 320 at 8–9). But FirstEnergy makes no representation that it even attempted to interview current employees, some of whom may possess similar knowledge. Nor did FirstEnergy undertake other reasonable means of informing Ashton. For instance, she testified she had not reviewed any accounting records, aside from those related to the ultimate $4.3 million payment, to prepare for the deposition, despite the series of preceding payments at issue in the deposition. (Doc. 319-2, 260:20–261:1). This oversight is particularly unreasonable given that, as an assistant controller, she is uniquely qualified to understand and interpret the company's financial records.

In essence, Ashton's preparation made her adept at summarizing the DPA, recognizing which portions of it relied upon particular supporting documents, summarizing those documents, and identifying the persons named in the DPA by pseudonym. In other words, it made her adept

7

at restating the generalized information FirstEnergy already disclosed publicly, which could be gleaned from media reports. But the agreed-upon deposition topics call for information that is deeper and more specific than those high-level admittances. And such information is surely within FirstEnergy's reasonable knowledge. Accordingly, the Court finds that FirstEnergy inadequately prepared its 30(b)(6) witness for the deposition.

The straightforward remedy here is to order a reopening of the 30(b)(6) deposition to which Jones and Dowling were entitled. *Prosonic Corp. v. Stafford*, No. 2:07-CV-0803, 2008 WL 2323528, at *5 (S.D. Ohio June 2, 2008). FirstEnergy argues that other available means of discovery, including recently served interrogatories, render the 30(b)(6) deposition unnecessary. (Doc. 320 at 18). But depositions and interrogatories serve distinct functions in the discovery process, *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2019 WL 11851135, at *4 (S.D. Ohio Aug. 23, 2019), and FirstEnergy has not shown good cause for prohibiting its appearance at a deposition, *see Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 479–80 (S.D. Ohio 2014). In addition, "producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanction under Fed. R. Civ. P. 37(d)." *Wicker*, 278 F. Supp.3d at 1000. That Rule states, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

The Court accordingly **GRANTS** Jones and Dowling's Motion to Compel (Doc. 319), and **ORDERS** FirstEnergy to make available one or more corporate representatives for a second Rule 30(b)(6) deposition, for which Jones and Dowling may have the seven hours for questioning contemplated by the Rule. The Court further finds that FirstEnergy's failure to produce a prepared

8

witness or witnesses was not substantially justified. Rather, it appears that FirstEnergy made little effort to prepare its witness to testify as to anything outside of what was already disclosed in the DPA, even after a conferral process where the parties negotiated deposition topics. Accordingly, the Court **ORDERS** FirstEnergy to pay Jones's and Dowling's reasonable costs and expenses associated with attending the second deposition, including court reporter costs, as well as Jones's and Dowling's reasonable attorney's fees associated with preparing the instant motion.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Compel Second Rule 30(b)(6) Deposition of FirstEnergy (Doc. 319) is **GRANTED**. Defendant FirstEnergy Corp. ("FirstEnergy") is **ORDERED** make available one or more corporate representatives for a second Rule 30(b)(6) deposition, for which Jones and Dowling may have the seven hours for questioning contemplated by the Rule. Additionally, FirstEnergy is **ORDERED** to pay Jones's and Dowling's reasonable costs and expenses associated with attending the second deposition, including court reporter costs, as well as Jones's and Dowling's reasonable attorney's fees associated with preparing the instant motion.

The Court further notes that this latest dispute is not an aberration. It instead appears to be part of a developing pattern of disputes which threaten to unduly slow the progress of discovery. Indeed, Court intervention was required several times to establish the basic parameters under which the 30(b)(6) deposition would occur in the first instance. (Docs. 261, 269, 271). Additionally, the parties recently represented to the Court that they reached an impasse regarding the designation of documents and testimony under the protective order. The Court therefore finds it necessary to adopt a new procedure for dealing with discovery disputes in this case.

The parties are **ORDERED** to appear before the Court for an in-person status conference on **Thursday, September 8, 2022, at 11:00am in Courtroom 203**. A joint status report on the progress of discovery, which outlines any active disputes, will be due on **Tuesday, September 7, 2022**. Thereafter, there will be a presumptive in-person status conference every three weeks, with a joint status report due three business days prior. Unless there is unanimous agreement in the preceding status report that no disputes warrant the Court's immediate attention, the presumptive hearings will proceed, with costs assessed against non-prevailing parties. Additionally, the Court may consider other appropriate sanctions, including the personal attendance of parties. Because the parties are now required to submit status reports every three weeks, they are no longer required to submit the status reports required every forty-five days by the Scheduling Order (Doc. 255).

IT IS SO ORDERED.

Date:  August 19, 2022                          /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE