UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson |
| ALL ACTIONS. | ) ) ) | |

CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE MAGISTRATE JUDGE'S AGGREGATION ORDER AND REQUEST TO STAY PENDING RESOLUTION OF CLASS PLAINTIFFS' OBJECTION

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com


Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com

Lead Counsel for Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................................................1

II.  RELEVANT BACKGROUND ................................................................................2

    A.  This Court Held that Lead Plaintiff and Lead Counsel Should Not Be Forcibly Aggregated with a Co-Lead Plaintiff and Co-Lead Counsel ...................2

    B.  Opt-Out Counsel Seek to Rely on Class Plaintiffs and Lead Counsel to Do Their Work for Them.........................................................................................2

    C.  The Aggregation Order ......................................................................................3

        1.  The Magistrate Judge Was Aware Opt-Out Counsel Are Unidentified and Unvetted............................................................................3

        2.  The Magistrate Judge Was Aware of This Court's Prior Decision and the Conflicts Forced Aggregation Would Pose.......................................5

        3.  The Aggregation Order and Decision Not to Consider Clarification .........6

III.  LEGAL STANDARDS ...........................................................................................7

IV.  ARGUMENT ..........................................................................................................8

    A.  The Aggregation Order Improperly Overrules This Court's Rejection of Forced Aggregation ...........................................................................................8

    B.  The Aggregation Order's Forced Imposition of Opt-Out Counsel upon the Class Is Clearly Erroneous and Contrary to Law.................................................9

        1.  Each Side in Each Case Should Get Equal Deposition Time ...................10

        2.  Testimony Elicited by Opt-Out Counsel or by Defendants During the Opt-Out Portion of Depositions Should Be Inadmissible in the Class Case .............................................................................................12

        3.  Each Deposition Should Be Counted Against the Total Number of Depositions of Only the Side that Notices the Deposition in Each Respective Case .....................................................................................13

        4.  The Class Should Share in Any Opt-Out Recoveries to Whatever Extent This Court Determines ................................................................14

        5.  The Aggregation Order Should Not Apply to Expert Discovery .............16

    C.  Staying the Aggregation Order Pending Resolution of Class Plaintiffs' Objection Would Avoid Unnecessary Prejudice ..................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Azami v. Ohio Nat'l Life Assurance Corp.*,
  2020 WL 8512312 (C.D. Cal. Oct. 7, 2020) ................................................................9

*Ballan v. Upjohn Co.*,
  159 F.R.D. 473 (W.D. Mich. 1994) ..........................................................................10

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
  333 F.R.D. 60 (S.D.N.Y. 2019) *on reconsideration in part*,
  439 F. Supp. 3d 169 (S.D.N.Y. 2020) .......................................................................8.

*Dopson-Troutt v. Novartis Pharms. Corp.*,
  2014 WL 408050 (M.D. Fla. Feb. 3, 2014) ................................................................9

*In re City of New York*,
  2011 WL 7145228 (E.D.N.Y. Dec. 2, 2011) ............................................................15

*Kuper v. Quantum Chem. Corp.*,
  145 F.R.D. 80 (S.D. Ohio 1992) .................................................................................6

*Kurczi v. Eli Lilly & Co.*,
  160 F.R.D. 667 (N.D. Ohio 1995) ..............................................................................6

*Parchman v. SLM Corp.*,
  2019 WL 13169737 (W.D. Tenn. Oct. 18, 2019) ......................................................10

*R.F.M.A.S., Inc. v. So*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010) .........................................................................8

*Taylor v. Nat'l Grp. of Cos., Inc.*,
  765 F. Supp. 411 (N.D. Ohio 1990) ............................................................................8

*Teradata Corp. v. SAP SE*,
  2020 WL 12894418 (N.D. Cal. Apr. 7, 2020) .............................................................9

*Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*,
  99 F. Supp. 3d 791 (S.D. Ohio 2015) .......................................................................15

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 72 .......................................................................................................................8
  Rule 72(a) ...................................................................................................................8

## I.    INTRODUCTION

As the Court is aware, there were six movants for lead plaintiff in this putative class action (the "Class Case") and each submitted one or more law firms to serve as lead counsel. Lead Plaintiff Order, ECF 65 at PageID 1493. One movant asked to be added as co-lead plaintiff and have its counsel serve as co-lead counsel. *Id*. at PageID 1493, 1518. Eventual lead plaintiff Los Angeles County Employees Retirement Association ("LACERA" or "Lead Plaintiff") opposed this request, and the Court flatly rejected the notion of ***forcing*** such an aggregation. *Id*. at PageID 1522-23.

Over a year later, 2 sets of related funds (the "Opt-Out Plaintiffs") filed 2 copycat lawsuits (the "Opt-Out Cases"), alleging 2 of the 5 claims against 8 of the 42 defendants charged in this Class Case. While LACERA and Plaintiffs Amalgamated Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund ("Class Plaintiffs") have diligently prosecuted this Class Case, Opt-Out Counsel have elected to rely on the putative class and Lead Counsel to do all the work and bear all the expenses, rather than prosecute their own cases.

Opt-Out Plaintiffs eventually aligned with defendants to ask the Magistrate Judge to overrule this Court's rejection of forced aggregation by creating what are effectively co-lead plaintiff and counsel roles for every single fact deposition. Over Class Plaintiffs' objection, the Magistrate Judge granted this request, forcing the Class to pay for Lead Counsel to do nearly all the work for Opt-Out Plaintiffs, with a single unexplained justification: "in the interest of justice and efficiency." October 18, 2022 Order, ECF 355 ("Aggregation Order") at PageID 8696. Respectfully, it could always be argued that it is more "efficient" to force one set of lawyers to represent all plaintiffs or all defendants in all related cases, but "efficiency" is neither a license to overrule a District Judge nor a panacea for the resulting conflicts of interest. And compelling one set of plaintiffs to pay for another's representation is unjust. Class Plaintiffs object to the Aggregation Order.

## II. RELEVANT BACKGROUND

### A. This Court Held that Lead Plaintiff and Lead Counsel Should Not Be Forcibly Aggregated with a Co-Lead Plaintiff and Co-Lead Counsel

On November 23, 2020, after weeks of litigation, over a dozen briefs, and a lengthy hearing, the Court entrusted this prosecution to LACERA as Lead Plaintiff, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel, and Murray Murphy Moul + Basil LLP ("Murray Murphy") as Liaison Counsel. Lead Plaintiff Order, ECF 65 at PageID 1517-18. After having realized that it did not possess the largest financial interest in the Class Case, one of the movants pivoted and asked the Court to appoint it co-lead plaintiff and its counsel co-lead counsel. *Id.* at PageID 1493, 1502, 1518. LACERA opposed this request. *Id.* at PageID 1521. The Court explained that it had previously appointed co-lead plaintiffs where they moved together, but the Court refused to *force* such an aggregation upon LACERA. *Id.* at PageID 1522-23. After the Court appointed LACERA as Lead Plaintiff, Class Plaintiffs filed a comprehensive consolidated amended complaint with 5 claims against 42 defendants.

### B. Opt-Out Counsel Seek to Rely on Class Plaintiffs and Lead Counsel to Do Their Work for Them

More than a year after Class Plaintiffs had filed their consolidated complaint, after Class Plaintiffs had successfully sought to partially lift the PSLRA discovery stay, and after Class Plaintiffs had fully briefed oppositions to 10 motions to dismiss, Opt-Out Plaintiffs filed 2 copycat lawsuits alleging only 2 of the 5 claims against only 8 of the 42 defendants in the Class Case. *See* dockets for the Opt-Out Cases: *MFS Series Trust I, et al. v. FirstEnergy Corp., et al.*, No. 2:21-cv-05839 (S.D. Ohio); and *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp.*, et al., No. 2:22-cv-00865 (S.D. Ohio). Based on the respective dockets in the Class Case versus the Opt-Out Cases, it appears that Opt-Out Counsel have done nothing meaningful to prosecute their cases but have instead focused their efforts on trying to ensure that Class Plaintiffs

and Lead Counsel do all Opt-Out Counsel's work for them.  *See* comparative table attached hereto as Ex. 1 (Appendix A) to the Declaration of Jason A. Forge ("Forge Decl."), filed concurrently herewith.

**C.     The Aggregation Order**

**1.     The Magistrate Judge Was Aware Opt-Out Counsel Are Unidentified and Unvetted**

On July 6, 2022, the Magistrate Judge issued an order in this Class Case on the parties' Joint Motion For Fact Deposition Protocol, which allocated seven hours of deposition time to Class Plaintiffs and seven hours of deposition time to defendants.  Deposition Protocol Order, ECF 309 at PageID 6731-32.  At defendants' insistence, the parties' joint motion also addressed the idea of "coordinating" the discovery in this Class Case with the completely separate but related Opt-Out Cases involving the subset of claims against a small subset of defendants.  Class Plaintiffs explained this Court had already decided to appoint one Lead Counsel, that this case demanded extensive criminal-law expertise, that the putative Class had assembled a prosecution team with the requisite experience, that forcing Opt-Out Plaintiffs and Counsel upon the Class would create conflicts of interest, that Opt-Out Counsel were completely unvetted, and "this potentially prejudicial maneuver should not be undertaken without Chief Judge Marbley's consideration and approval."  Joint Motion For Fact Deposition Protocol, ECF 306 at PageID 6691-94.

Nevertheless, without addressing this Court's prior rejection of forced aggregation, the resulting conflicts, or identifying, let alone vetting, the Opt-Out Counsel actually prosecuting the Opt-Out Cases, the Magistrate Judge held that, "in the interest of party and judicial efficiency, the parties must attempt to coordinate the fact depositions conducted in the Action with those conducted in the related opt-out cases."  Deposition Protocol Order, ECF 309 at PageID 6732.

Consistent with this directive, following the Deposition Protocol Order Lead Counsel asked Opt-Out Counsel,

> [W]ould you please identify all attorneys who are working an average of at least 15 hours per week on behalf [of the Opt-Out] Plaintiffs in your matters and for how long they've been doing so? This information will be helpful for our meet and confer, as well as for whatever submissions to Judge Jolson and Chief Judge Marbley may become necessary.

Status Report by Plaintiffs, Defendants and Non-Party Opt-Out Plaintiffs, ECF 354 at PageID 8593 (quoting ECF 354-1 (Aug. 26, 2022 email from J. Forge to M. Miarmi)) at PageID 8621. Opt-Out Counsel could not, or would not, identify any attorneys who are working an average of at least 15 hours per week on the Opt-Out Cases.

The dockets for the Opt-Out Cases identify only nine lawyers representing Opt-Out Plaintiffs. The bios for these lawyers on their firm's respective websites reference no criminal law experience for any of them. And Opt-Out Counsel have refused to identify any of these nine lawyers, or any other lawyers, who are actually spending meaningful time prosecuting cases in which they bear the burden of proof against nine law *firms* and no fewer than 31 lawyers, including several with extensive criminal-experience. *See* dockets for Opt-Out Cases. These numbers would be even more lopsided if Opt-Out Counsel were forced upon Class Plaintiffs in this case, where Opt-Out Counsel would face 19 law *firms* and no fewer than 56 lawyers, including several with extensive criminal-law experience. *See* Class Case docket. Yet, Opt-Out Counsel and defendants continued to push for Opt-Out Counsel to be forced upon the Class and for Lead Counsel to be forced to do Opt-Out Counsel's work for them, which led to an October 17, 2022 joint status report from Class Plaintiffs, defendants, and Opt-Out Plaintiffs.

Class Plaintiffs proffered that,

- They had "planned for the many unique aspects of this Action by selecting and overseeing a prosecution team that includes ***multiple*** former federal prosecutors and over a dozen lawyers with extensive experience investigating and prosecuting large complex securities class actions."

- "Lead and Liaison Counsel have already devoted to this Action tens of thousands of hours and hundreds of thousands in out-of-pocket expenses, with many more of each to come."

Status Report by Plaintiffs, Defendants, and Non-Party Opt-Out Plaintiffs, ECF 354 at PageID 8593 (emphasis in original). In contrast, Class Plaintiffs explained Opt-Out Counsel's refusal to identify what, if any, lawyers were consistently spending meaningful time prosecuting the Opt-Out Cases and apparent failure to prosecute their cases:

> Opt-Out Counsel refused to provide this basic information, which heightens concerns about: (1) the apparent failure to prosecute the Opt-Out Cases, as demonstrated by their dockets; (2) the resources Opt-Out Counsel are committing to the Opt-Out Cases; and (3) the experience and preparedness of whatever lawyers could take time currently allocated to Plaintiffs.

*Id.*

Class Plaintiffs also explained that the need for criminal-law expertise in this case is further heightened by the criminal-law specialists representing defendants. For example, regarding the two defendants (Charles Jones and Michael Dowling) with whom FirstEnergy has admitted it conspired, "counsel for defendant Jones, Carole Rendon, is the former U.S. Attorney for the Northern District of Ohio, and counsel for defendant Dowling, John McCaffrey, is a former Special Assistant U.S. Attorney and FBI Special Agent." *Id.* at PageID 8592.

### 2. The Magistrate Judge Was Aware of This Court's Prior Decision and the Conflicts Forced Aggregation Would Pose

In addition to explaining that there was no indication that Opt-Out Counsel had the criminal-law expertise this Class Case demands, that they have been actively prosecuting their own cases, or that they are adequately staffed, Class Plaintiffs explained that this Court had already carefully considered multiple lead-plaintiff movants and had selected LACERA as Lead Plaintiff, with Robbins Geller and Murray Murphy as Lead and Liaison Counsel, respectively. *Id.* at PageID 8592-93. Class Plaintiffs further emphasized that this Court had already expressly rejected the notion of forcing upon the putative class a co-lead plaintiff or co-lead counsel. *Id.*

Class Plaintiffs likewise explained the conflicts that aggregation would pose (in every case on which Opt-Out Plaintiffs relied, the Courts had merely accepted the parties' agreements – none

- 5 -

analyzed, let alone resolved, the unique demands of this Class Case or the conflicts aggregation would pose here):

> Allowing Opt-Out Counsel to access and rely on Lead Counsel's deposition examinations would likewise have the practical effect of forcing Lead Counsel to work on behalf of Out-Out Plaintiffs, which presents a clear conflict of interest. *See e.g.*, *Kurczi v. Eli Lilly & Co*., 160 F.R.D. 667, 679 (N.D. Ohio 1995) (holding that potential conflict existed where class counsel was also counsel for individual plaintiffs against the same defendant); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) (finding potential conflict of interest where class counsel represented plaintiffs in two different class actions).

*Id.* at PageID 8594.

Last, Class Plaintiffs explained the tremendous human and technical resources dedicated to this massive case and the obvious inequities forced aggregation would inflict:

> If Opt-Out Counsel were to enjoy the fruits of all this experience, work, and expenditures, while refusing to specify who has committed what to their cases, or to justify the glaring docket disparities, that would be the equivalent of forcing the Class to subsidize Opt-Out Counsel, which would raise potential unjust enrichment issues. Unless and until Opt-Out Counsel establish that they have similarly experienced attorneys prosecuting the Opt-Out Cases and are dedicating comparable time and resources, it would be unjust to allow Opt-Out Counsel access to any of Lead Counsel's deposition examinations in this Action.

*Id.* at PageID 8594-95.

### 3. The Aggregation Order and Decision Not to Consider Clarification

The joint status report concerning these issues was filed on October 17, 2022. Status Report by Plaintiffs, Defendants, and Non-Party Opt-Out Plaintiffs, ECF 354. The next day, without a hearing or telephonic conference, the Magistrate Judge issued the Aggregation Order. The Aggregation Order's analysis consists of the following: "Having considered the parties' competing proposals, and in the interest of justice and efficiency . . . ." Aggregation Order, ECF 355 at PageID 8636.

To mitigate the error and prejudice from the Aggregation Order, on October 20, 2022, Class Plaintiffs informed defendants and Opt-Out Plaintiffs of five requested points of clarification and

- 6 -

asked to discuss them during an October 25, 2022 meet-and-confer call. *See* Forge Decl., Ex. 2 at 1-2 (Oct. 26, 2022 email from J. Murray). During the meet-and-confer call, and the day after, defendants and Opt-Out Plaintiffs insisted that Class Plaintiffs file an objection, rather the give the Magistrate Judge the opportunity to clarify the Aggregation Order. *Id.* at 1-2. Class Plaintiffs instead asked the Magistrate Judge to hold a telephonic conference and consider the five points of clarification prior to the deadline for filing this Objection:

- Each side in each case gets equal deposition time (seven hours per side in the Class Action and two hours per side in the Opt-Out Cases (assuming Class-Action Plaintiffs go "first" among the plaintiffs in the three cases, which is a very safe assumption));

- Opt-Out Plaintiffs may attend, and use testimony and accompanying documents elicited during Class-Action Plaintiffs' examinations, but testimony and accompanying documents elicited by Opt-Out Counsel or by defendants during Opt-Out portions of depositions are inadmissible in the Class Case;

- Each deposition shall be counted against the total number of depositions of whichever side notices the deposition in each respective case;

- Chief Judge Marbley shall determine the extent to which the Class should share in any Opt-Out recoveries; and

- The Aggregation Order does not apply to expert discovery.

*See id.* at 1.

Less than 24 hours later, without a telephonic conference or hearing, the Magistrate Judge declined to consider Class Plaintiffs' requests for clarification prior to the filing deadline for this Objection. Oct. 27, 2022 Order, ECF 358.

## III.    LEGAL STANDARDS

It is well established that "Section 636 of the Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior

rulings of a district judge in referred cases." *Taylor v. Nat'l Grp. of Cos., Inc.*, 765 F. Supp. 411, 413-14 (N.D. Ohio 1990). Likewise,

> Rule 72 provides that when a party timely objects to a magistrate judge's order regarding a non-dispositive pretrial matter, the district judge "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' if the reviewing court is left with the definite and firm conviction that a mistake has been committed." *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (citation omitted). "Similarly, a finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* "Therefore, pursuant to these standards, a magistrate judge's determinations on discovery matters are entitled to substantial deference." *Id.* The party seeking to overturn such determinations bears a "heavy burden." *Id.*

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019), *on reconsideration in part*, 439 F. Supp. 3d 169 (S.D.N.Y. 2020).

## IV.   ARGUMENT

### A.   The Aggregation Order Improperly Overrules This Court's Rejection of Forced Aggregation

There is no denying that when this Court appointed LACERA Lead Plaintiff, it expressly rejected the notion that another party and its counsel could force their way into an aggregation as co-lead plaintiff and co-lead counsel. Lead Plaintiff Order, ECF 65 at PageID 1522-23. It also cannot be reasonably disputed that the 42 party depositions and 46 third-party depositions allotted in this case will comprise most of the testimonial evidence through summary judgment and possibly at trial. These fact depositions are likely the single most important component of this litigation. Limiting Class Plaintiffs to only seven hours to examine witnesses versus nine hours for defendants is clearly erroneous, as courts routinely hold that each side receives equal deposition time. And critically, by leaving Opt-Out Counsel to represent Class Plaintiffs' interests for two hours of each fact deposition, the Aggregation Order effectively grants Opt-Out Plaintiffs and their counsel co-lead plaintiff and co-lead counsel status for what is likely the single most important component of this case. Doing so over Class Plaintiffs' objection and without an established track record of Class

- 8 -

Plaintiffs and Opt-Out Plaintiffs working together directly conflicts with this Court's Lead Plaintiff Order, and therefore, exceeds the Magistrate Judge's authority.

### B. The Aggregation Order's Forced Imposition of Opt-Out Counsel upon the Class Is Clearly Erroneous and Contrary to Law

As set forth above, the Magistrate Judge's Deposition Protocol Order had allocated equal deposition time for each side in this Class Case. This equality was consistent with the case law. *See, e.g.*, *Azami v. Ohio Nat'l Life Assurance Corp.*, 2020 WL 8512312, at *6 (C.D. Cal. Oct. 7, 2020) (granting defendants leave to reopen a deposition and holding that "[t]he parties are allotted up to three hours to conduct her second deposition, with each side given equal time."); *Teradata Corp. v. SAP SE*, 2020 WL 12894418, at *2 (N.D. Cal. Apr. 7, 2020) (in the context of letters rogatory, holding that "SAP's request for equal time to cross-examine witnesses during depositions is GRANTED . . ."); *Dopson-Troutt v. Novartis Pharms. Corp.*, 2014 WL 408050, at *1 (M.D. Fla. Feb. 3, 2014) (Granting the plaintiffs' motion for leave to take deposition of doctor and holding that "[t]he deposition shall be limited to no more than two hours with both parties having equal time.").

Yet, the Aggregation Order limits Class Plaintiffs to only seven hours to examine witnesses, while allowing nine hours for defendants – leaving Opt-Out Counsel to represent Class Plaintiffs' interests for two hours of each fact deposition (over 20% of the time allotted to Class Plaintiffs). As the cases cited above demonstrate, it is contrary to law and clearly erroneous to give the side that bears the burden of proof *less* deposition time than the opposing side. Class Plaintiffs are aware of no prior case imposing such a facially inequitable allocation.

Moreover, it is well established that,

> Assessing the qualifications, competency, and adequacy of class counsel is important because class certifications have far-reaching implications. Thus "a court must in the broadest sense be satisfied that the fiduciary duties and responsibilities of . . . the class counsel will be conscientiously, fairly, and justly discharged in order to protect the interests of the class."

*Parchman v. SLM Corp.*, 2019 WL 13169737, at * 6 (W.D. Tenn. Oct. 18, 2019) (alteration in original) (quoting *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 479 (W.D. Mich. 1994)). As such, it is also clearly erroneous and contrary to law for the Aggregation Order to force Class Plaintiffs to rely on Opt-Out Counsel for over 20% of each fact deposition **without** even being able to ascertain the identities of the Opt-Out Counsel who are actually prosecuting the Opt-Out Cases, let alone the extent of their criminal-law experience, the financial investment they have made in the Opt-Out Cases, or how they can possibly be expected to effectively protect the interests of the Class during their allocated deposition time in this case when they are facing 19 law firms and no fewer than 56 lawyers, including several with extensive criminal-law experience.

When Class Plaintiffs asked the Magistrate Judge to consider two simple clarifications to correct these clear errors of law, however, the Magistrate Judge declined to consider them.

### 1. Each Side in Each Case Should Get Equal Deposition Time

The Aggregation Order expressly requires that the nine hours allocated to all plaintiffs be split among them such that, absent agreement of the parties or a Court order, no plaintiffs in any case may examine any witness for the full nine hours. Rather, Class Plaintiffs (presuming they go first) are limited to seven hours and Opt-Out Plaintiffs are limited to two hours. The Aggregation Order, however, does not expressly impose any parallel limits on the number of hours defendants may examine witnesses in any case, which means if Opt-Out Plaintiffs decline to use all, or any, of their two hours, Class Plaintiffs would still be stuck at seven hours of examination, whereas defendants would enjoy nine hours – almost 30% more time than Class Plaintiffs, who bear the burden of proof.

In an effort to address this issue, Class Plaintiffs suggested that under the Aggregation Order, each side in each case would receive equal deposition time. This would mean that for depositions Class Plaintiffs notice, Class Plaintiffs would conduct their examination, defendants would conduct their examination, and to the extent either side reserved time, the examinations would continue until

- 10 -

each side has completed up to seven hours of examination (for depositions defendants notice, the order of examination would change accordingly) – all in the presence of Opt-Out Plaintiffs.  After completion of the Class Case deposition, Opt-Out Plaintiffs would have the opportunity to conduct their examination to be followed by defendants' examination, and to the extent either side reserved time, they continue their examination until both sides have each completed up to two hours of examination (again, for depositions defendants notice, the order of examination would change accordingly).

Unable to articulate a single downside to separating the depositions, Opt-Out Plaintiffs opposed doing so seemingly just to remain in lockstep with defendants.  For their part, defendants were literally unable to maintain a straight face when explaining their opposition to this interpretation:  that somehow 7 hours + 7 hours, followed by 2 hours + 2 hours would result in 3 days of deposition testimony, whereas 7 hours + 2 hours, followed by 9 hours would be completed in only 2 days of deposition testimony.  Defense counsel audibly laughed when Lead Counsel pointed out the arithmetical absurdity of defendants' position, which is doubly absurd because their $7 + 7 + 2 + 2 > 7 + 2 + 9$ formula ignores the fact that all participants will likely reserve time for re-examinations, so the allocated hours will not be used nearly as neatly as defendants suggested under either scenario.  The only explanation for defendants' nonsensical opposition is that they want 30% more examination time than Class Plaintiffs receive in the Class Case.  That disparity would be plainly inequitable and legally indefensible.  Accordingly, Class Plaintiffs respectfully ask the Court to overrule the Aggregation Order to the extent it provides Defendants more examination time than Class Plaintiffs receive in the Class Case.

4857-0971-6028.v2

2.    **Testimony Elicited by Opt-Out Counsel or by Defendants During the Opt-Out Portion of Depositions Should Be Inadmissible in the Class Case**

Defendants and Opt-Out Counsel interpret the Aggregation Order in a way that would unambiguously usurp this Court's authority by appointing Opt-Out Counsel as co-counsel to Lead Counsel for the purpose of fact depositions, such that everything Opt-Out Counsel do is attributed to Class Plaintiffs and thousands of putative Class members, not just the few Opt-Out Plaintiffs. If these attorneys for a few funds ask bad questions, get bad answers, and do a bad job responding, according to defendants and Opt-Out Counsel, all the resulting bad testimony would be admissible against all members of the putative Class. If Opt-Out Counsel demonstrate poor judgment by noticing depositions of unhelpful witnesses, those depositions would count against the total number of depositions Lead Counsel can take on behalf of the Class. Of course, what is "bad" testimony and "poor" judgment is in the eye of the beholder and that is the rub here. Under Opt-Out Counsel and defendants' interpretation, Class Plaintiffs' and Lead Counsel's vision and prosecution plan for the Class would not enjoy the exclusivity this Court ordered. Instead, Opt-Out Counsel would determine testimony ***and*** witnesses ***for the entire Class*** at summary judgment and at trial. Such a result cannot stand for it is neither warranted nor just to impose a relationship that would mean unidentified, unvetted, and apparently understaffed Opt-Out Counsel would be representing the interests of the Class.

In addition to conflicting with this Court's Lead Plaintiff Order, it is clearly erroneous and contrary to law for the Aggregation Order to force the Class to rely on unidentified, unvetted and understaffed Opt-Out Counsel. There is also no reason to do so. As such, Class Plaintiffs sought clarification that each Class Case deposition should end when Class Plaintiffs and defendants have used their allotted times of up to seven hours, at which point Class Plaintiffs would no longer be

permitted to attend or participate in the deposition and any deposition testimony or accompanying documents elicited in the Opt-Out Cases would be inadmissible in the Class Case.

Once again, Opt-Out Plaintiffs were unable to articulate any basis to oppose this clarification, as were defendants.  Defendants are clearly hoping Opt-Out Plaintiffs will elicit, or open the door to, bad testimony, or at least testimony that is inconsistent with Class Plaintiffs' themes.  That way defendants can use *against* Class Plaintiffs, testimony Class Plaintiffs neither elicited nor had the opportunity to correct.  It is hard to imagine a clearer violation of this Court's Lead Plaintiff Order appointing counsel for the putative Class, which expressly rejected forced aggregation, than to allow unidentified, unvetted, and understaffed counsel from completely separate cases to elicit testimony that can then be used against Class Plaintiffs, as if Class Plaintiffs' chosen counsel had elicited it.  Accordingly, because there is no legitimate justification for rejecting Class Plaintiffs' request for clarification No. 2, Class Plaintiffs respectfully ask this Court to overrule the Aggregation Order to the extent it renders testimony elicited by Opt-Out Counsel or by defendants during the opt-out portions of the depositions admissible in the Class Case.

### 3. Each Deposition Should Be Counted Against the Total Number of Depositions of Only the Side that Notices the Deposition in Each Respective Case

The Aggregation Order does not expressly address how depositions will be counted against the 23 third-party depositions Class Plaintiffs are allowed to take.  But because the Aggregation Order erroneously *combines* Class Plaintiffs with Opt-Out Plaintiffs, and the Magistrate Judge declined to consider clarifying this point, Class Plaintiffs must ask this Court for relief.  For all the reasons set forth above, it would be clearly erroneous and contrary to law for depositions noticed by the unappointed Opt-Out Plaintiffs, acting through unidentified, unvetted, and understaffed Opt-Out Counsel, in *separate cases* to count against Class Plaintiffs' 23 third-party depositions.  It would be equally erroneous and contrary to law for depositions noticed by defendants to count against Class

- 13 -

Plaintiffs' 23 third-party depositions. It also appears that it would be unprecedented, as Class Plaintiffs are unaware of any prior instance in which defendants were able to dictate the deponents of plaintiffs, or the plaintiffs in one case were permitted to dictate the deponents of the plaintiffs in a separate case. With little imagination, it is easy to see here how such a scenario would be ripe for abuse, or even innocently inflicted harm, as defendants could dictate all of the Class Plaintiffs' deponents by simply noticing depositions before Lead Plaintiff notices their own depositions. The same potential prejudice would apply to any depositions noticed by the Opt-Out Plaintiffs, as Class Plaintiffs are prosecuting over twice the number of claims against over five times as many defendants. It is essential that each side in each case be able to choose the deponents they determine give them the best chance to succeed.

Accordingly, Class Plaintiffs respectfully ask the Court to overrule the Aggregation Order to the extent that it does not allow Class Plaintiffs alone to choose the 23 third-party deponents authorized for Class Plaintiffs.

**4.    The Class Should Share in Any Opt-Out Recoveries to Whatever Extent This Court Determines**

The following facts were undisputed in the Joint Status Conference Report:

- litigating this case requires specialized experience and almost unprecedented resources;

- Class Plaintiffs had requested that Opt-Out Plaintiffs identify all attorneys working meaningful hours on the Opt-Out Cases, but Opt-Out Plaintiffs did not identify any; and

- Lead Counsel and Liaison Counsel have devoted to this Action tens of thousands of hours and hundreds of thousands in out-of-pocket expenses, with many more of each to come, whereas Opt-Out Counsel have not and will not provide any information concerning the human and financial resources they have dedicated to the Opt-Out Cases.

It is apparent that the Opt-Out Plaintiffs are depending on Class Plaintiffs to take the depositions the Opt-Out Plaintiffs will use to build their cases, as they appear understaffed for their

own cases, let alone over 20% of the depositions in this case. And the Aggregation Order empowers the Opt-Out Plaintiffs to force Class Plaintiffs to conduct most of the fact deposition examinations and expressly allows the Opt-Out Plaintiffs to use all the results of these efforts.

The Aggregation Order forces the Class to either pay for Lead Counsel to build cases for however many opt-outs seek a free ride, or to rely on unidentified, unvetted, and understaffed Opt-Out Counsel (instead of Class Plaintiffs' chosen counsel) to build the Class Case. In fact, the Aggregation Order expressly empowers Opt-Out Counsel to refuse to take the lead in any fact deposition (not that Class Plaintiffs would ask them to do so) and force Lead Counsel to do their job for them. Aggregation Order, ECF 355 at PageID 8637 ("In the event the Plaintiffs cannot agree on an order of questioning, the Class Action Plaintiffs will conduct questioning first and the Direct Action Plaintiffs will conduct questioning second.").

By empowering Opt-Out Plaintiffs to force Lead Counsel to do Opt-Out Counsel's work for them, the Aggregation Order gives Opt-Out Plaintiffs the direct benefits of the expenses and fees Class Plaintiffs will bear. Yet the Aggregation Order fails to provide that the Class will share in the resulting benefits, *i.e.*, the recoveries in the Opt-Out Cases. This is clearly erroneous and contrary to law. *See, e.g.*, *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 99 F. Supp. 3d 791, 807 (S.D. Ohio 2015) ("The doctrine of quantum meruit is 'derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another.'"); *see also In re City of New York,* 2011 WL 7145228, at *3 (E.D.N.Y. Dec. 2, 2011), report and recommendation adopted (Jan. 19, 2012) ("The 'common fund doctrine' rests on a theory of unjust enrichment and holds that those who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched by the successful litigant's success . . . .").

This is a particularly problematic error here, where the opt-out period has yet to even commence. Yet, if allowed to stand, the Aggregation Order would invite more free-riding opt-outs,

which would compound the resulting inequity and prejudice by unjustly enriching opt-outs at the expense of fewer class members left to pick up their tab, so to speak, meaning each remaining class member would bear a greater *pro rata* share of the expenses.[1]  Accordingly, Class Plaintiffs urge the Court to order that any opt-outs who gain access to the depositions in this Class Case (by attending, receiving transcripts, etc.) *will* pay to the Class a portion of any recoveries from defendants in an amount to be determined by the Court.

### 5. The Aggregation Order Should Not Apply to Expert Discovery

While the Aggregation Order provides that it addresses a dispute about how "to coordinate the fact depositions" (Aggregation Order, ECF 355 at PageID 8636), Class Plaintiffs respectfully request that the Court expressly order that: (1) it does not apply to expert discovery; (2) Opt-Out Plaintiffs are prohibited from receiving or relying on any opinions (including reports) and/or testimony of any of the Class Plaintiffs' experts and Class Plaintiffs are prohibited from receiving or relying on any testimony (including reports) of any of the Opt-Out Plaintiffs' experts; and (3) any opinions (including reports) and/or testimony of any Opt-Out Plaintiffs' expert shall be inadmissible in the in the Class Case, and any opinions (including reports) and/or testimony of any Class Plaintiffs' expert shall be inadmissible in the in the Opt-Out Cases.  This seemed to be the Magistrate Judge's intention, but by declining to clarify this point and with Opt-Out Plaintiffs refusing to agree to it, this may be another area where they hope to force the Class to pave the way for them.

---

[1]     By failing to account for the fact that the opt-out period for this Class Case has yet to commence, the Aggregation Order fails to anticipate the possibility of additional opt-outs, and thus fails to address how they would be accommodated.  For example, if additional putative class members opt-out, will they also be entitled to over 20% of Class Plaintiffs' deposition time?

**C.** **Staying the Aggregation Order Pending Resolution of Class Plaintiffs' Objection Would Avoid Unnecessary Prejudice**

As the Aggregation Order is clearly erroneous and contrary to law, Class Plaintiffs respectfully request that this Court sustain Class Plaintiffs' Objection.  That said, resolving Class Plaintiffs' Objection may take weeks and the Aggregation Order "remains in full force and effect unless and until it is (1) stayed by the Magistrate Judge or a District Judge, or (2) overruled by a District Judge."  S.D. Ohio L.R. 72.3.  As such, Class Plaintiffs respectfully request that this Court stay the Aggregation Order pending resolution of their Objection.

Opt-Out Counsel have demanded to attend Class Plaintiffs' depositions of Underwriter Defendants – who are ***not defendants in the Opt-Out Cases*** – concerning claims that are ***not raised in the Opt-Out Cases.***  ECF 354 at PageID 8590.  Class Plaintiffs have noticed the depositions of three Underwriter Defendants for December 7, 12, and 14.  If the Aggregation Order remains in effect, Opt-Out Counsel will essentially be unvetted co-lead counsel at these upcoming depositions and entrusted to examine witnesses who are not defendants in the Opt-Out Cases regarding claims the Opt-Out Cases do not allege.  Moreover, defendants will enjoy nearly 30% more deposition time than Class Plaintiffs with no possible justification for such a disparity.  A stay would prevent this clearly unjust result and would not prejudice anyone, as the upcoming depositions are irrelevant to the Opt-Out Cases.  Accordingly, Class Plaintiffs respectfully ask this Court to stay the Aggregation Order pending resolution of their Objection.

DATED:  November 1, 2022                            Respectfully submitted,

                                                                       MURRAY MURPHY MOUL + BASIL LLP
                                                                       JOSEPH F. MURRAY, Trial Attorney (0063373)


                                                                                   s/ Joseph F. Murray
                                                                       JOSEPH F. MURRAY

- 17 -

1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
JASON A. FORGE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com|
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff Los Angeles
County Employees Retirement Association and
Plaintiffs Amalgamated Bank, City of Irving
Supplemental Benefit Plan, and Wisconsin
Laborers' Pension Fund

4857-0971-6028.v2

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify under penalty of perjury that on November 1, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left: 45%;">

s/ Joseph F. Murray
_____
JOSEPH F. MURRAY

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

Email:  murray@mmmb.com

</div>

# Mailing Information for a Case 2:20-cv-03785-ALM-KAJ Owens v. FirstEnergy Corp. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Edward Arnold**
  jarnold@arnlaw.com,7489829420@filings.docketbird.com,tashby@arnlaw.com,ablosser@arnlaw.com

- **David L. Axelrod**
  axelrodd@ballardspahr.com,mangiaracinaj@ballardspahr.com

- **Daniel E. Barenbaum**
  dbarenbaum@bermantabacco.com,sfservice@bermantabacco.com

- **Jordan M. Baumann**
  jbaumann@jonesday.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **David S Bloomfield , Jr**
  dbloomfield@porterwright.com,mruyf@porterwright.com

- **Joseph Michael Brunner**
  jmbrunner@vorys.com,tlschwarz@vorys.com

- **Preston Burton**
  pburton@buckleyfirm.com,lschwartz@buckleyfirm.com

- **Veronica E. Callahan**
  veronica.callahan@arnoldporter.com,edocketscalendaring@arnoldporter.com,veronica-callahan-
  1417@ecf.pacerpro.com,maosdoh@arnoldporter.com

- **Shanaye Y. Carvajal**
  shanaye.carvajal@davispolk.com

- **Matthew A Chiricosta**
  mchiricosta@calfee.com,litdocket@calfee.com

- **Rachel Ann Cocalis**
  rcocalis@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,mlydon@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com

- **Desiree Cummings**
  dcummings@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **James Rubin Cummins**
  jcummins@cumminslaw.us,hpoindexter@cumminslaw.us,docket@cumminslaw.us

- **Lisa S Del Grosso**
  ldelgrosso@brouse.com,sslabaugh@brouse.com

- **Marjorie P Duffy**
  mpduffy@jonesday.com,rfargabrite@jonesday.com,erector@jonesday.com

- **Jeremy Steven Dunnaback**
  jdunnaback@bakerlaw.com

- **John C Fairweather**
  jcf@brouse.com,sslabaugh@brouse.com

- **John A Favret , III**
  jfavret@tuckerellis.com,darlene.hudeck@tuckerellis.com,Chelsea.croy@tuckerellis.com

- **Robert Stephen Faxon**
  rfaxon@jonesday.com

- **Samantha L Fenton**
  sfenton@mwe.com

- **Jason A. Forge**
  JForge@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Christopher Thomas Gilroy**
  cgilroy@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Gerhardt A Gosnell , II**
  ggosnell@arnlaw.com,1524359420@filings.docketbird.com,tashby@arnlaw.com

- **Steven Grimes**
  SGrimes@winston.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com,ckopko@rgrdlaw.com

- **Andrew Paul Guran**
  apguran@vorys.com

- **M. Ryan Harmanis**
  rharmanis@jonesday.com,nafickle@jonesday.com

- **Paul Helms**
  phelms@mwe.com

- **Kelsey Hughes-Blaum**
  khughesblaum@taftlaw.com

- **Robert K. Hur**
  rhur@gibsondunn.com

- **Andrew W Hutton**
  dhutton@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Steve Michael Jodlowski**
  sjodlowski@rgrdlaw.com,E_File_SD@rgrdlaw.com,SusanM@rgrdlaw.com

- **Andrew C. Johnson**
  Andrew.Johnson@arnoldporter.com

- **C. Chad Johnson**
  chadj@rgrdlaw.com

- **Francis Paul Karam**
  fkaram@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Daniel Richard Karon**
  dkaron@karonllc.com,cgood@karonllc.com,bhollowell@karonllc.com

- **Timothy D. Katsiff**
  katsifft@ballardspahr.com

- **John M Kelley**
  jkelley@rgrdlaw.com

- **Ashley M. Kelly**
  akelly@rgrdlaw.com,E_File_SD@rgrdlaw.com,AKellyRGRD@ecf.courtdrive.com

- **Michael L. Kichline**
  michael.kichline@morganlewis.com

- **Eric Kim**
  eric.kim@davispolk.com

- **Emily S. Kimmelman**
  emily.kimmelman@morganlewis.com

- **Nicole Lavallee**
  nlavallee@bermantabacco.com,sfservice@bermantabacco.com

- **Corey Anthony Lee**
  calee@jonesday.com

- **Albert Grant Lin**
  alin@bakerlaw.com,phubbard@bakerlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Douglas M Mansfield**
  dmansfield@lmng-law.com

- **John F McCaffrey**
  John.McCaffrey@tuckerellis.com,christen.wilk@tuckerellis.com

- **Laura Hughes McNally**
  laura.mcnally@morganlewis.com,carole.griffin@morganlewis.com

- **McNees Wallace & Nurick**
  kschneider@mcneeslaw.com

- **Francisco J Mejia**
  FMejia@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jason R. Meltzer**
  jmeltzer@gibsondunn.com

- **Jason J. Mendro**
  JMendro@gibsondunn.com

- **Adam B. Miller**
  amiller@buckleyfirm.com,testad@buckleyfirm.com,autodocket@buckleyfirm.com,docket@buckleyfirm.com

- **Aaron F. Miner**
  aaron.miner@arnoldporter.com

- **Jonathan P. Misny**
  misny@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,misny@ecf.courtdrive.com

- **David W Mitchell**
  davidm@rgrdlaw.com,slandry@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **John R Mitchell**
  jmitchell@taftlaw.com,LUdovicic@taftlaw.com,ewerner@taftlaw.com,CLE_Docket_Assist@taftlaw.com

- **Thomas N Mitchell**
  mpduffy@jonesday.com

- **Geoffrey J Moul**
  moul@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,moul@ecf.courtdrive.com

- **Adrienne Marie Ferraro Mueller**
  afmueller@jonesday.com

- **Bree Murphy**
  bmurphy@buckleyfirm.com,wbusch@buckleyfirm.com

- **Brian K Murphy**
  murphy@mmmb.com,tiffany@mmmb.com,murphy@ecf.courtdrive.com,tiffany@ecf.courtdrive.com

- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,murray@ecf.courtdrive.com

- **Danielle S. Myers**
  DMyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Brian Patrick O'Connor**
  bpo@santen-hughes.com,sla@santen-hughes.com

- **Lucas Freeman Olts**
  lolts@rgrdlaw.com,E_File_SD@rgrdlaw.com,lolts@ecf.courtdrive.com

- **Steven Wayne Pepich**
  stevep@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Daniel J. Pfefferbaum**
  dpfefferbaum@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Karen Pieslak Pohlmann**
  karen.pohlmann@morganlewis.com

- **Sara B. Polychron**
  spolychron@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Emily Mae Rector**
  erector@jonesday.com

- **Carole Schwartz Rendon**
  crendon@bakerlaw.com

- **Darren J Robbins**
  tedp@rgrdlaw.com

- **Scott B. Scheinberg**
  sscheinberg@jonesday.com

- **William Scherman**
  wscherman@gibsondunn.com

- **Steven S. Scholes**
  sscholes@mwe.com

- **Kevin Shen Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,E_File_SD@rgrdlaw.com,tdevries@rgrdlaw.com

- **Victoria Lynn Serrani**
  vlserrani@bmdllc.com

- **Yiqing Shi**
  yiqing.shi@arnoldporter.com

- **Joshua N. Shinbrot**
  joshua.shinbrot@davispolk.com

- **Jessica Tally Shinnefield**
  jshinnefield@rgrdlaw.com,E_File_SD@rgrdlaw.com,ChristC@rgrdlaw.com,JShinnefield@ecf.courtdrive.com

- **Douglas L. Shively**
  dshively@bakerlaw.com

- **Hannah M. Smith**
  hannah.smith@tuckerellis.com,christen.wilk@tuckerellis.com

- **Mark Soloman**
  marks@rgrdlaw.com

- **Stephen G Sozio**
  sgsozio@jonesday.com

- **Hillary Bryn Stakem**
  hstakem@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **George A. Stamboulidis**
  gstamboulidis@bakerlaw.com

- **Joseph J. Tabacco, Jr.**
  jtabacco@bermantabacco.com

- **Jeremy R Teaberry**
  teaberryj@ballardspahr.com

- **Robert Ward Trafford**
  rtrafford@porterwright.com,tmagley@porterwright.com

- **Emilia McKee Vassallo**
  mckeevassalloe@ballardspahr.com

- **Robert J. Wagoner**
  bob@dwslaw.com,bob@wagonerlawoffice.com

- **Victor A Walton , Jr**
  vawalton@vorys.com,kjwooldridge@vorys.com

- **Daniel Rubin Warren**
  dwarren@bakerlaw.com

- **Lesley Weaver**
  lweaver@bfalaw.com

- **Dan K Webb**
  dwebb@winston.com

- **Brian S. Weinstein**
  brian.weinstein@davispolk.com,shanaye.carvajal@davispolk.com,ecf.ct.papers@davispolk.com

- **Brittany Marie Wilson**
  wilsonbm@ballardspahr.com

- **Jill Winter**
  jwinter@buckleyfirm.com,wbusch@buckleyfirm.com

- **Michael J. Zbiegien , Jr**
  mzbiegien@taftlaw.com,aoverly@taftlaw.com,cle_docket_assist@taftlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)