**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION, | ) Case No. 2:20-CV-03785-ALM-KAJ )  ) **CLASS ACTION** ) |
| This document relates to: | ) ) Judge Algenon L. Marbley |
| ALL ACTIONS | ) ) Magistrate Judge Kimberly A. Jolson ) |

**NON-PARTY PARTNERS FOR PROGRESS INC.'S
SUPPLEMENTAL BRIEF PURSUANT TO
THE MAGISTRATE JUDGE'S NOVEMBER 18, 2022 OPINION AND ORDER [ECF NO. 378]**

### I. SUMMARY OF REMAINING DISPUTES

Partners for Progress Inc. ("Partners for Progress") respectfully submits this Supplemental Brief pursuant to the Court's November 18, 2022 Opinion and Order [ECF No. 378] (the "Order").[1] The Order directed Dowling, Plaintiffs, and Partners for Progress to endeavor to extra-judicially resolve any remaining disputes between December 17, 2022 and January 6, 2023. But as explained below, rather than resolving existing disputes, Dowling and Plaintiffs are instead adding new ones, and adding more time and costs overall to this one piece of discovery.

Partners for Progress initially notes that, to date, it has now received four separate document subpoenas from various parties. Three came from the parties to this action—Dowling, Plaintiffs, and James Pearson. The fourth was issued in December 2022 by the Plaintiffs in the "Opt-Out Litigations" also pending before the Court.[2] Partners for Progress respectfully notes that the dueling or overlapping demands and obligations imposed by these subpoenas (and any future subpoenas that parties to these litigations may issue) are materially increasing the expense on Partners for Progress. Partners for Progress respectfully submits that third-party discovery should be streamlined with due consideration given to these significant, mounting expenses.

More importantly, it seems that the expected discovery is now expanding, rather being compromised or concluded. After the Order was issued, Partners for Progress diligently searched email accounts belonging to the two current Partners for Progress officers and directors that were not previously searched, McKenzie Davis and Scott Davis. On the Order's December 7, 2022 deadline, Partners for Progress produced an additional 2,750 pages of responsive, non-privileged documents from those accounts.

---

[1] All ECF No. references are to the PACER docket numbers in Case No. 2:20-cv-03785.

[2] S.D. Ohio Case Nos. 2:21-cv-05839 and 2:22-cv-00865.

On December 14, 2022, Dowling's counsel emailed a list of questions and "concerns," including asking Partners for Progress to: (a) confirm it had not supplemented its privilege log for the reasons outlined in its then-pending Objection; (b) advise if it searched for "responsive documents" from each of Scott Davis, McKenzie Davis, and Dan McCarthy; (c) advise if it searched for "responsive documents from Calfee custodians (other than M. VanBuren) (for example, other lawyers who did worked on PFP matters)?"; and (d) for the documents produced on December 7, "specify where these came from, including… the custodian(s) searched (for example, Scott Davis), the source(s) searched from (for example, email account of Scott Davis), the time period applied to the search(es), the search terms used if any, and any criteria used to determine a document was non-responsive."  Dowling's counsel further noted that

> Our initial concerns are that PFP has not produced a supplemental privilege log, PFP has not produced unredacted Calfee invoices (for the relevant information which PFP is not claiming privilege), it appears PFP did not search/obtain documents from D. McCarthy, and it appears that PFP did not search/obtain documents from other Calfee custodians/lawyers (other than M. VanBuren) that did work on PFP matters…

*See* 12/14/22 Email from J. Favret, **Ex. A**.

On December 15, 2022, counsel for Partners for Progress responded that:

- The December 7 production did not contain a supplemental privilege log because it was the subject of its then-pending Objection.

- The December 7 production consisted of emails from the specified email accounts of the Davises, the other two directors and officers.

- Partners for Progress searched those email accounts using 88 discrete search terms, each of which was provided in the letter.

- Partners for Progress did not search for documents in former director and officer Dan McCarthy's personal possession, custody, or control for the reasons outlined in the Objection.

2

- Partners for Progress did not search the email accounts of outside lawyers at Calfee, Halter & Griswold LLP ("Calfee") who performed legal services for Partners for Progress other than Attorney VanBuren.

- Partners for Progress did not produce unredacted Calfee invoices.

*See* 12/15/22 Letter from M. Chiricosta, **Ex. B**.

On December 16, 2022, Plaintiffs' counsel responded for Plaintiffs and Dowling, objecting to Partners for Progress's positions on the privilege log, Dan McCarthy documents, Calfee email custodians, and the purported "use of certain overly-narrow search terms to identify relevant materials." *See* 12/16/22 Letter from D. Mitchell, **Ex. C**, at p. 1. They demanded that Partners for Progress run several more search terms through its document repositories—including terms as broad as "FirstEnergy," "First Energy," and FirstEnergy's email domain. *Id.* at pp. 1-2. Notably, despite issuing their subpoenas in May 2022 and raising many "discovery issues" since, this was the first time they ever proposed or sought to negotiate any search terms with Partners for Progress.

On December 21, 2022, Partners for Progress's counsel responded, reiterating its position on the privilege log, Calfee invoices, Dan McCarthy documents, and Calfee custodians issues. As for the new request for more search terms, Partners for Progress objected to its tardiness and overbreadth. However, Partners for Progress indicated its willingness to do additional searches and document review if Plaintiffs and Dowling agreed to bear the costs, per the mandatory cost-shifting provisions of Federal Rule of Civil Procedure 45(d)(2)(B)(ii). *See* 12/21/22 Letter from M. Chiricosta, **Ex. D**.

Counsel for Plaintiffs declined Partners for Progress's cost-shifting proposal and stated their belief that the parties were at an impasse on the privilege log and documents, Calfee invoices and custodians, and McCarthy documents. *See* 1/3/23 Email from K. Sciarani, **Ex. E**.

In response, counsel for Partners for Progress agreed the parties were at an impasse on the latter issues and again invited Plaintiffs and Dowling to agree to bear the costs of running their new, belatedly-proposed search terms. *See* 1/5/23 Email from M. Chiricosta, **Ex. E**. The impasse—and Plaintiffs' and Dowling's continued refusal to bear any costs—were confirmed in subsequent emails, thus necessitating this Supplemental Brief. *Id.*

Throughout the dispute resolution period recounted above, Partners for Progress responded to all of Plaintiffs' and Dowling's correspondence in a timely and organized fashion. There have been several exchanges. Plaintiffs and Dowling have not compromised on any of their concerns. Moreover, before the motion to compel practice, the parties had a number of oral meet-and-confers that were time-consuming and unproductive. Thus, Partners for Progress has opted since to respond promptly and in writing to their inquiries. If Plaintiffs and Dowling suggest that Partners for Progress failed to engage them in trying to resolve these issues, the written record refutes such assertion.

On January 10, 2023, the District Judge overruled Partners for Progress's Objection. *See* ECF No. 399 (the "Objection Order"). Partners for Progress accordingly tailors its position on the matters addressed there in this filing.

## II. ARGUMENT

### A. Plaintiffs and Dowling should bear the costs of any additional search terms or custodians.

Plaintiffs and Dowling issued their subpoenas in May 2022. Despite raising to Partners for Progress various discovery "concerns" throughout, they did not propose or otherwise negotiate over any search terms until some seven months later in December 2022—*after* a motion to compel ruling and *after* Partners for Progress's supplemental document review and production in accordance with the Order. Consequently, on its own, Partners for Progress

4

endeavored to do a reasonably diligent search for responsive documents by applying 88 of its own search terms.  By way of limited example, these terms included, among other things, Boolean and natural-language terms aimed at encompassing the names of individuals and entities mentioned in the subpoenas and other FirstEnergy personnel, Boolean and natural-language searches aimed at encompassing the names of entities to which Partners for Progress made monetary contributions, and House Bill 6 (including acronyms and abbreviations).  *See* **Ex. B** at pp. 1-3 (letter listing those terms).  As a result, including the December 7 supplemental production, Partners for Progress produced 6,481 pages of documents from the email accounts of its three current directors and officers (VanBuren and the Davises) and its paper corporate books and records.

This apparently is still not enough for Plaintiffs and Dowling—hence their proposed search terms.  As detailed above, these proposed terms include ones as broad as "FirstEnergy," "First Energy," and the FirstEnergy email domain name (which would encompass any email to or from anybody with a FirstEnergy email address).  *See* **Ex. C** at pp. 1-2.  Plaintiffs and Dowling want these terms to be run through the business email accounts belonging to a lawyer (VanBuren) and lobbyist (McKenzie Davis), whose respective firms worked with or represented FirstEnergy on many discrete, unrelated matters over many years.  Thus, even leaving aside the privilege implications of such a request, such terms would yield many "false positives" with no relevance to the issues here and would substantially increase the time and cost of any associated document review.  *See, e.g.*, *Antoine v. Sch. Bd. of Collier Cnty., Fla.*, No. 2:16-cv-379, 2019 WL 4453081, at *2 (M.D. Fla. Jan. 16, 2019) ("The Court declines Plaintiffs' request to order Defendants to utilize specific search terms [for emails and electronic data]… because the Court finds that Plaintiffs' proposed search terms are highly likely to return irrelevant or false-positive

5

document hits and there is no indication that Defendants' chosen search methodologies are, have been, or will be inadequate."). This problem of scope would be exacerbated if other Calfee email custodians were included, *see* Section II(B), below.

If the Court is inclined to indulge Plaintiffs' and Dowling's requests for any additional search terms or custodians, it should shift the costs under Civil Rule 45(d)(2)(B)(ii). Under Rule 45(d)(2)(B)(ii), "if an objection is made and the court orders the non-party to comply, the court ***must*** protect a non-party from significant expenses resulting from compliance." *In re: Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018) (emphasis added).[3] Rule 45(d)(2)(B)(ii) "make[s] cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena." *Am. Muni. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 1084605, at *2 (S.D. Ohio Mar. 22, 2021); *Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2012 WL 13005370, at *2 (E.D. Mich. Apr. 2, 2012) (same). While cost-shifting does not "necessarily mean that the party issuing the subpoena must bear the entire cost of compliance," the court must "protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant." *Am. Muni Power, Inc.*, 2021 WL 1084605 at *2. "Expenses incurred complying with a subpoena must also be reasonable," as determined in the court's discretion and considering factors such as "whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." *Id.*

Between the May 2022 issuance of Plaintiffs' and Dowling's subpoenas and September 2022, before motion to compel practice commenced, Partners for Progress has, conservatively estimated, incurred legal fees exceeding $40,000 complying with the subpoenas, meeting-and-

---

[3] Partners for Progress timely objected to the subpoenas. *See* 5/18/22 and 6/6/22 Letters, **Exs. F** and **G**.

conferring with Plaintiffs and Dowling and responding to their ever-evolving and escalating discovery demands, and reviewing and producing documents.[4] And because of the seizure of the money that was in its bank accounts in 2021 under FirstEnergy's Deferred Prosecution Agreement, Partners for Progress's ability to pay is restricted. *See* DPA, **Ex. H**, § 5(C) (describing the forfeiture of monies from two Partners for Progress bank accounts). Based on the costs of responding to the subpoenas so far, Partners for Progress estimates that the costs of any additional searches and reviews would be in the low to mid-five figure range (and more than that if additional custodians beyond the three current directors were required).

Moreover, if Plaintiffs and Dowling wanted certain terms, they should have asked in May or early June 2022, when Partners for Progress first objected. Plaintiffs and Dowling instead focused on other concerns between May 2022 and the time the Court issued the Order. And even after the Order directed Partners for Progress to search for and produce additional documents by December 7, 2022, which the Magistrate Judge acknowledged was a "relatively quick… turnaround," *see* Order at 8 [ECF No. 378 at 9011], Plaintiffs and Dowling still did not propose search terms. Accordingly, Partners for Progress worked swiftly to comply with the Order's directive, spending significant additional time and money searching and reviewing documents. In short, if Plaintiffs and Dowling wanted to propose their own search terms, they should have asked much sooner than *after* the deadline for the supplemental production.

Under these circumstances, it is appropriate to shift costs to Plaintiffs and Dowling if they insist on additional search terms. Notably, Partners for Progress advised Plaintiffs and Dowling throughout the recent post-Order dispute resolution period that it is willing to run each search term they proposed—even overbroad ones such as "FirstEnergy"—if they bear the costs.

---

[4] Partners for Progress also incurred significant additional expense since September 2022, including conducting its supplemental review and production of the Davises' email accounts. Partners for Progress is willing to further substantiate the costs incurred under seal and *in camera* if the Court deems it helpful.

But they have been categorically unwilling to do so.  *See* **Exs. D** and **E**.  Courts can and do shift costs in situations such as these, as required by Rule 45(d)(2)(B)(ii).  *In re: Modern Plastics Corp.*, 890 F.3d at 249-52 (Sixth Circuit affirming cost-shifting order as "a means of enforcing counsel's duty to mitigate the burden of discovery on non-parties"); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184-85 (9th Cir. 2013) (holding that district court should have ordered cost-shifting if the cost of additional review/production was "significant" and that additional costs of $20,000 were "significant" enough); *Williams v. Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998) (estimated costs of $9,000 "significant" enough); *Linglong Americas Inc. v. Horizon Tire, Inc.*, No. 1:15-cv-1240, 2018 WL 1631341, at *4 (N.D. Ohio Apr. 4, 2018) (same outcome for amounts ranging from $15,338 to $24,567).  If the Court is inclined to entertain Plaintiffs' and Dowling's requests for more searches and review, it should require them to bear the costs.

> **B.** **Plaintiffs and Dowling cannot belatedly require Partners for Progress to search Calfee lawyers' email accounts for documents.**

In the post-Order discovery correspondence, Plaintiffs and Dowling also made another brand-new, burdensome demand: that Partners for Progress search for responsive documents in *Calfee* email accounts belonging to Calfee lawyers who did legal work for Partners for Progress other than Attorney VanBuren.  There are several issues with this belated request.

*First,* it comes too late under the circumstances.  Before December 16, Plaintiffs and Dowling never demanded that Calfee custodians beyond Attorney VanBuren be searched.  In fact, their original, big-picture complaint about custodians was that Partners for Progress had not searched "the files of 3 of its 4 directors for documents responsive to the subpoena"—*i.e.*, those other than Attorney VanBuren.  *See* Status Rep. at 4, ECF No. 335-1; *id.* at 6 ("Partners for Progress should be ordered to collect and produce documents for each its directors."); *id.* at 1 (demanding that Partners for Progress "pursue responsive documents directly from three of

8

PFP's four directors"); Mtn. to Compel at 14 [ECF No. 350 at 8378] ("It is likely that PFP custodians S. Davis, M. Davis, and D. McCarthy possess responsive materials that have not been requested or searched…").[5] They did not previously assert that Partners for Progress should search the email accounts of other Calfee lawyers beyond Attorney VanBuren. But now that they got emails from the Davises, they have pivoted to requesting Calfee custodians be searched. Their ever-shifting demands underscore that in actuality, they are on a "fishing expedition," no matter the burden or cost to Partners for Progress. *Marsden v. Nationwide Biweekly Admin., Inc.*, No. 3:14-cv-00399, 2016 WL 471364, at *1 (S.D. Ohio Feb. 8, 2016) ("In determining the proper scope of discovery, a district court balances a party's right to discovery with the need to prevent fishing expeditions.").

***Second,*** the request is contrary to the Joint Protocol for Production of Documents and Electronically Stored Information, which provides that "outside counsel for the parties shall not be deemed custodians for purposes of discovery served on their client(s)." *See* Privilege Log Supplement to Joint Protocol, § VIII(D), ECF No. 204 at p. 3.[6] If Plaintiffs and Dowling suggest that Partners for Progress is entitled to demand "client files" from Calfee to produce in discovery, that ignores the proportionality problems detailed in the next paragraph and the legal reality that not every document or communication a law firm maintains belongs even to the ***client***. *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn*, 689 N.E.2d 879, 883 (N.Y. 1997) (holding that a law firm need not provide to its client documents "intended for internal law office review and use").

---

[5] ECF No. 335-1 in Case No. 2:20-cv-03785 bears the PACER file-stamp from Case No. 2:20-cv-04287, where it was filed as ECF No. 132-1.

[6] ECF No. 204 in Case No. 2:20-cv-03785 bears the PACER file-stamp from Case No. 2:20-cv-04287, where it was filed as ECF No. 112.

9

***Third,*** the demand is not proportional to the needs of the case, particularly given the discovery already provided. As detailed above, Partners for Progress already produced more than 6,000 pages of emails and paper corporate books and records from its three current officers and directors and its paper records. One of those directors is Attorney VanBuren, who is a Calfee lawyer. Because of his multiple roles (attorney, officer, and director), his Calfee emails were searched, and documents solely relating to Partners for Progress business matters (as opposed to involving legal advice) were produced. This strikes the right, proportional balance between conducting a reasonably diligent search for responsive records and protecting Partners for Progress against the unreasonable cost burdens posed by this new, eleventh-hour request.

### C. Partners for Progress's proposal on the privilege log and substantive privilege issues.

The Objection Order overruled Partners for Progress's partial Objection on supplementation of its privilege log. Partners for Progress, accordingly, is preparing a supplemental privilege log and will produce it to Plaintiffs and Dowling by January 23, 2023 and advised Plaintiffs and Dowling of that before filing this Brief.

That said, Partners for Progress respectfully notes that it continues to be concerned that no amount of supplemental description—short of providing the body of the privileged communication—will satisfy Plaintiffs' and Dowling's demands. Partners for Progress also recognizes that the Court observed that "there are significant, fact-intensive questions regarding whether VanBuren was acting in his capacity as a director rendering business advice, or as an attorney rendering legal advice, when he engaged in those communications." *See* Order at 9 [ECF No. 378 at 9012]. While Partners for Progress does not wish to unnecessarily burden the Court, Partners for Progress anticipates that resolving the substantive privilege issues will inevitably require an *in camera* review and ruling. Accordingly, Partners for Progress notes that

10

it is ready and willing to provide the documents to the Court for an *in camera* inspection and ruling upon request if and when the Court believes it appropriate.

**D.     Partners for Progress's status update on Dan McCarthy documents.**

The Objection Order appears to require Partners for Progress to inquire with Dan McCarthy to determine whether he has responsive documents.[7]  While Partners for Progress is currently endeavoring to do so, Partners for Progress deems it worth noting that it has no control over McCarthy and no legal means to compel him to respond to its inquiries or to turn over documents or devices for inspection and review.  He is a former director who has no contractual or legal duty to respond to Partners for Progress's inquiries, let alone turn over personal devices or accounts to Partners for Progress.  And, as a non-party to these litigations, Partners for Progress cannot subpoena him or use any other compulsory process to compel him to do so.

Partners for Progress also notes that the search terms used for the three current directors' emails included terms for the email addresses known to belong to McCarthy and his name (with a Boolean connector).  *See* **Ex. B** at pp. 2-3, Search Term Nos. 37, 84-88.  Partners for Progress has done what it feasibly can do to find and produce non-privileged documents involving McCarthy that are within Partners for Progress's possession, custody, or control.  If Plaintiffs and Dowling want to pursue additional materials from McCarthy, they have subpoena power to do so.

## III.  CONCLUSION

Plaintiffs' and Dowling's discovery demands continue to evolve in an increasingly burdensome manner.  In addition, Partners for Progress is being subjected to discovery demands

---

[7] Plaintiffs and Dowling, if they so choose, could inquire with McCarthy (or his personal counsel, if any) without the consent of Partners for Progress and its counsel because he is a ***former*** director and officer. *See* Ohio Prof. Cond. R. 4.2, cmt. 7 ("Consent of the organization's lawyer is not required for communication with a former constituent.  If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.").

11

from multiple parties in multiple litigations. Partners for Progress has complied with reasonable diligence and at significant expense. Partners for Progress respectfully asks that the Court narrow the wide-ranging, moving targets of Plaintiffs' and Dowling's discovery demands by (a) rejecting their belated demands on search terms and Calfee custodians or by requiring them to bear the costs of any additional review associated with those requests; and (b) establishing a protocol for *in camera* review of the documents over which privilege claims are maintained.

Respectfully submitted,

/s/ *Matthew A. Chiricosta*
Fritz E. Berckmueller (0081530)
Matthew A. Chiricosta (0089044)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
FBerckmueller@Calfee.com
MChiricosta@Calfee.com

*Attorneys for Non-Party, Partners for Progress Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing, *Non-Party Partners for Progress Inc.'s Supplemental Brief Pursuant to the Magistrate Judge's November 18, 2022 Opinion and Order [ECF No. 378]*, has been filed electronically on January 13, 2023 with the United States District Court for the Southern District of Ohio. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

/s/ *Matthew A. Chiricosta*
One of the Attorneys for Partners for Progress