IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE FIRSTENERGY CORP.
SECURITIES LITIGATION,

This document relates to:   Civil Action 2:20-cv-3785
                            Chief Judge Algenon L. Marbley
                            Magistrate Judge Jolson
ALL ACTIONS.

## ORDER

This matter is before the Court on the Joint Motion to Compel (Doc. 420) brought by Plaintiffs and Defendant Michael Dowling (collectively, "Movants").  Movants ask the Court to compel the production of documents which non-party Partners for Progress, Inc. ("PFP") has withheld or redacted on the basis of attorney-client privilege. (*Id.* at 4–11).  Additionally, they say that PFP's production thus far has been deficient in two regards: (1) it employed a limited search-term protocol to identify responsive documents; and (2) it failed to search for documents which were created or received by the attorneys at Calfee, Halter & Griswold ("Calfee") representing PFP.  (*Id.* at 11–15).

Recognizing that the exchange of discovery has already been slowed by conferral and significant litigation, the Court issues this interim ruling on the completeness of PFP's production so that additional documents may now be identified and exchanged—or, if necessary, logged for privilege.  A subsequent order on the at-issue privilege disputes is forthcoming.

On November 18, 2022, the Court ordered PFP to supplement its limited initial production to Movants' subpoenas by conducting "a diligent search" for all responsive documents within its possession, custody, or control, producing non-privileged documents, and logging documents withheld on the basis of privilege.  (Doc. 378 at 1).  By December 7, 2022, PFP made its

supplemental production, and—after inquiry from Movants—explained its search protocol. (*See* Doc. 400-2). Movants then responded with purported deficiencies in the search protocol, including the failure to search Calfee custodians and under-inclusive search terms. (Doc. 400-3). Movants proposed additional search terms (*id.*), but PFP refused to perform the search with these additional terms unless Movants paid the costs associated with the search (Doc. 400-4). And PFP renewed earlier objections that searching Calfee custodians would be unduly burdensome and would result only in privileged material. (*Id.*; Doc. 400-2 at 5).

   A. *Search Terms*

Movants say the search-term protocol employed by PFP was insufficient; notably, it "failed to include 'FirstEnergy' (along with variations) as a stand-alone search term." (Doc. 420 at 12). Movants further say their proposed additional terms are reasonable and targeted to return discovery related to key entities and individuals identified in the subpoenas. (*Id.*). PFP has represented that these additional terms will result in "over 1,000 unique additional documents to review, which will impose significant additional costs on PFP[.]" (Doc. 407-3 at 4). PFP says the Court should not enforce the additional search terms because they were only raised after the supplemental production was made and because they are unduly burdensome. (Doc. 423 at 9–10). Alternatively, it says if the Court does enforce the search terms, it should shift the costs of the corresponding search and review to Movants, under Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure. (*Id.* at 10–11).

First, the Court does not find, as PFP suggests, that Movants are solely responsible for the belated conferral on the search protocol. Ideally, both the requesting parties and the responding party would have conferred on search terms before the initial search and review was conducted. But having been presented with the search protocol only after the supplemental production was

2

made, Movants were warranted in raising their concerns with the protocol's design.

Further, the Court finds there are legitimate concerns about deficiencies in PFP's protocol, and the proposed search terms reasonably address those concerns. For example, though Dowling's subpoena requested "Documents relating to Communications between and among FirstEnergy and [PFP,]" (Doc. 350-2 at 11), no variant of "FirstEnergy" was included as a search term (Doc. 400-2 at 2–4). Similar oversights occurred regarding organizations like Generation Now, Inc. and the Public Utilities Commission of Ohio. (*See* Doc. 350-3 at 17; Doc. 400-2 at 2–4). Additionally, to ensure a complete return of relevant documents, the proposed search terms add known email addresses for key individuals identified in the subpoena requests, like Jeff Longstreth and Sam Randazzo. (Doc. 400-3 at 2–4).

PFP says the Court cannot credit "bare assertions" of deficiency by the Movants. But the omission of several at-issue organizations from the original set of search terms is patently deficient. Moreover, PFP's reliance on *Hausauer v. TrustedSec*, 1:20-mc-101, 2020 WL 6826368 (N.D. Ohio Nov. 20, 2020) is not well-founded. (Doc. 423 at 10). That court, ruling on a motion to compel, found that the movants had to make a showing of specific documents and information they were missing, because the movants themselves had proposed the search terms they later claimed were deficient. *Hausauer*, 2020 WL 6826368, at *9. Clearly, that case is distinct from the case at bar, in which the responding party, PFP, unilaterally designed the search protocol. Nor is the Court asking PFP to engage in an "indefinite cooperative process" of refining its search. (Doc. 423 at 10) (quoting *Hausauer*, 2020 WL 6826368, at *9) (internal quotation marks omitted). Rather, this would be the first cooperative attempt regarding search terms among the requesting parties and the responding party. All told, the proposed additional search terms reasonably address the deficiencies in the original search protocol and are targeted to identify relevant discovery.

3

Finally, PFP asks that if it is ordered to employ the additional search terms, the Court shift the costs associated with the additional production to the Movants. (Doc. 423 at 10–11). If an objection is made to a Rule 45 subpoena, and a court orders a non-party to comply with the subpoena, it "must protect a non-party from significant expenses resulting from compliance." *In re: Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018); Fed. R. Civ. P. 45(d)(2)(B). It is within the discretion of the Court to determine what expenses are significant. *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 1084605, at *2 (S.D. Ohio Mar. 22, 2021). And in deciding how much, if any, of the expenses the requesting party must bear, the Court considers factors including "whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." *Id.* (citations omitted).

PFP represents that it has "incurred legal fees exceeding $40,000 complying with the subpoenas, meeting-and-conferring with Plaintiffs and Dowling . . . , and reviewing and producing documents." (Doc. 401 at 7–8). To what extent this figure includes the costs associated with the significant litigation surrounding its attempts to not comply with the subpoena is unclear. Nonetheless, PFP further "estimates that the costs of any additional searches and reviews would be in the low to mid-five figure range . . . ." (*Id.* at 8). Turning to the cost-shifting factors, the Court does not find that Movants should bear any of the costs of production.

Both PFP's own interest in the outcome of the case and the public importance of the litigation weigh against mitigation of PFP's compliance expenses. As the Court has previously observed, PFP was funded and controlled by FirstEnergy Corp. ("FirstEnergy"), the first named Defendant in this action. (Doc. 378 at 5–6). And now, PFP maintains that it shared a common legal interest with FirstEnergy. (Doc. 359 at 12–14). It follows that its interest in the outcome of

4

this litigation is greater than that of a usual non-party, and the need for cost mitigation—an appropriate protection for a disinterested non-party—is lesser.

Similarly, this litigation is of public importance. This is a class action comprising potentially thousands of Plaintiffs who say they were harmed by FirstEnergy's participation in "one of the largest corruption and bribery schemes in U.S. history." (Doc. 72, ¶¶ 3, 18). PFP has an obligation to the public and a particular obligation to potential class members to fairly and fully disclose the non-privileged information within its possession, custody, or control.

Whether the Movants or PFP can more readily bear the costs of the production is a relatively neutral factor. All parties in this action are seemingly well resourced. And the Court has been given no reason to believe that the costs are particularly onerous for PFP to bear. Though PFP notes that some money from its banking accounts was subject to forfeiture under FirstEnergy's Deferred Prosecution Agreement with the government (Doc. 401 at 8), it has been capable of expending substantial resources litigating its compliance with this subpoena (*see, e.g.,* Doc. 359, 388, 401, 423), including objections to discovery orders which the Chief Judge found "meritless" and exemplary of the "wasteful expenditure" of resources in this litigation (Doc. 399 at 7–8).

Accordingly, PFP is **ORDERED** to employ the Movants' proposed additional search terms and bear the costs of the associated production. PFP shall produce any non-privileged documents and prepare and produce a privilege log for any withheld documents **on or before April 21, 2023**.

B. *Calfee Custodians*

PFP has, to date, searched the email accounts of three of its current officers and directors, including Michael VanBuren. VanBuren is also an attorney at Calfee, the law firm which represents PFP. Movants now ask the Court to compel PFP to search the email accounts of other

5

Calfee custodians. (Doc. 420 at 13–15). In particular, they note that PFP's production thus far shows other Calfee lawyers provided services for PFP. (Doc. 428 at 8). And because "PFP has not disclaimed that Calfee support staff provided business, administrative, and document keeping functions for PFP[,]" they say this means other Calfee staff may hold non-privileged material which PFP has a right to access. (*Id.* at 8–9). PFP says the request to search additional custodians is belated and conflicts with the parties' Joint Protocol for Production of Documents and Electronically Stored Information. (Doc. 401 at 9–11). Further, it says that "any non-privileged email communications between Calfee and PFP constituents presumably would be encompassed and produced in PFP's searches and reviews of its directors' emails[,]" and any other communications would be exclusively internal communications among Calfee lawyers about the representation, which PFP itself may not be entitled to obtain. (Doc. 423 at 11–12).

Briefly, the Court notes that it does not share PFP's concerns regarding the timing of Movants' request, nor about compliance with the Joint Protocol. Movants represent they did not have reason, before PFP made its initial supplementation, to know that "Calfee attorneys, lobbyists and paralegals other than VanBuren worked on the PFP engagement." (Doc. 420 at 13) (citing Doc. 400-5) (a portion of the production submitted under seal and *in camera* to the Court, which demonstrates inclusion of other Calfee staff). So the timing of their request followed naturally from this new information. Further, the Joint Protocol is of limited applicability here, as it was agreed to by the parties to this action and by its explicit terms only governs the production of discovery "by a party to this Action," which does not include non-parties like PFP. (Doc. 204 at 1).

Turning to the other arguments, it does not follow, as PFP suggests, that any relevant, non-privileged communications or documents held or created by Calfee staff would necessarily have

been shared with the three PFP directors who were included in the initial supplementation. (*See* Doc. 423 at 11). That may be the case, but if so PFP needs to confirm that by a search of relevant custodians and declare it non-speculatively. Similarly, PFP maintains—without confirming by search—that any other material belonging to those custodians must be internal Calfee communications subject to privilege. (*Id.* at 11–12). But Movants have reason to believe that other Calfee attorneys, like VanBuren, provided non-legal business advice and services to PFP. (Doc. 420 at 14–15). Again, both accounts are plausible, but can be confirmed only by a search which has yet to take place.

PFP has reasonable concerns that the search protocol designed for the directors will not be sufficiently narrow for the Calfee custodians. For instance, it notes that the "FirstEnergy" terms proposed by Movants for the directors' search will be unwieldy for Calfee custodians, because "Calfee represented FirstEnergy and its affiliates in many matters over multiple decades." (Doc. 423 at 12). But, presumably, PFP is aware—or can learn—which members of the Calfee staff were assigned to the PFP account, which may somewhat limit the overlap with other accounts. And Movants represent that the search can be limited to "the relevant time period" and that they are further "willing to help narrow the search." Put simply, Movants and PFP have more work to do—PFP cannot avoid a search of Calfee custodians altogether, but Movants should collaborate to reasonably limit the search to responsive material.

Accordingly, PFP and Movants are **ORDERED** to negotiate search terms for relevant Calfee custodians and file a notice on the public docket of the agreed-upon search terms **on or before March 31, 2023**. PFP shall conduct the search, and if the resulting hit report reveals an unreasonable number of documents, may confer with Movants to further narrow the search terms. PFP shall produce any non-privileged documents and prepare and produce a privilege log for any

7

withheld documents **on or before April 21, 2023**.

C. *Rule 502(d) Order*

Finally, PFP asks that the Court enter an order under Rule of Evidence 502(d), which will allow it to produce disputed Calfee invoices and certain emails to Movants with fewer redactions without waiving privilege. (Doc. 423 at 6–8). Movants say the claw-back provision of the current protective order governing this action is sufficient to protect PFP's interests. (Doc. 428 at 5). The Court finds it sensible to adopt the Rule 502(d) order if it will promote the exchange of discovery between Movants and PFP. Accordingly, PFP is **ORDERED** to provide a copy of the proposed Rule 502(d) order (Doc. 423-3) to the Court at jolson_chambers@ohsd.uscourts.gov. The Court intends to sign and docket the order shortly thereafter.

IT IS SO ORDERED.


Date: March 24, 2023                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE