# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION, | ) No. 2:20-cv-03785-ALM-KAJ )  ) CLASS ACTION ) ) Judge Algenon L. Marbley  ) Magistrate Judge Kimberly A. Jolson )  ) **ORAL ARGUMENT REQUESTED** |
| This Document Relates To: | |
| ALL ACTIONS. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CHARLES JONES AND MICHAEL DOWLING'S MOTION FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

ANALYSIS............................................................................................................................ 7

      I.      The First and Second Factors Strongly Favor a Limited Stay of Jones's and Dowling's Depositions Because the Issues in this Case Significantly Overlap with the Ongoing Criminal Investigation.................................................. 8

      II.     The Remaining Factors Heavily Favor a Limited Stay of Jones's and Dowling's Depositions Because Plaintiffs, the Public and the Court will Suffer No Prejudice, while the Absence of a Stay will Substantially Prejudice Jones and Dowling................................................................................. 10

CONCLUSION.................................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Chao v. Fleming*,
    498 F. Supp. 2d 1034 (W.D. Mich. 2007) ................................................................7, 8, 9, 11

*Coley v. Lucas Cnty., Ohio*,
    No. 3:09 CV 0008, 2011 WL 5838190 (N.D. Ohio Nov. 18, 2011) ......................................14

*Cranel, Inc. v. Pro Image Consultants Grp., LLC*,
    No. 2:13-CV-00766, 2013 WL 6440197 (S.D. Ohio Dec. 9, 2013)........................................10

*Eagle v. Hurley Med. Ctr.*,
    292 F.R.D. 466 (E.D. Mich. 2013) ...........................................................................................7

*Eastwood v. United States*,
    No. 2:06-CV-164, 2008 WL 5412857 (E.D. Tenn. Nov. 14, 2008).......................................10

*F.T.C. v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014) .......................................................................................7, 8, 10

*Goodwin v. City of Cleveland, Ohio*,
    No. 1:15 CV 27, 2016 WL 2588174 (N.D. Ohio May 4, 2016).............................................11

*Mason v. Bloom-Carroll Loc. Sch. Dist.*,
    No. 2:22-CV-3668, 2023 WL 423511 (S.D. Ohio Jan. 26, 2023)............................................8

*McGee v. Madison Cnty., Tenn.*,
    No. 1:15-CV-01069, 2015 WL 3648986 (W.D. Tenn. June 10, 2015) ..................................14

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984)....................................................................................................................7

*Sherrod v. Williams*,
    No. 3:14-CV-454, 2015 WL 10742766 (S.D. Ohio Dec. 31, 2015), *objections
    overruled*, 2016 WL 11608824 (S.D. Ohio Mar. 2, 2016) ............................................. passim

*Sikon v. Carroll Cnty., Ohio*,
    No. 5:20-CV-0674, 2020 WL 8838043 (N.D. Ohio June 12, 2020) ......................................14

*Swink v. Montgomery Cnty. Bd. of Comm'rs*,
    No. 3:16-CV-392, 2017 WL 2349712 (S.D. Ohio May 31, 2017)......................................9, 13

*United States v. Larry Householder et al.*,
    No. 1:20-cr-00077-TSB .................................................................................................. passim

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*,
    7 F. Supp. 2d 523 (D.N.J. 1998) ............................................................................................14

**Other Authorities**

Fed. R. Civ. P. 26(c)(1) ...................................................................................................................7

Fed. R. Civ. P. 26(c)(1)(A) .............................................................................................................7

Fed. R. Civ. P. 26(c)(1)(B) .............................................................................................................7

Fed. R. Civ. P. 30(b)(6) ................................................................................................................13

U.S. Const. amend. V ............................................................................................................ *passim*

## INTRODUCTION

As the Court knows, this securities fraud case spawned directly from the criminal complaint and indictment filed in this district in *United States v. Larry Householder et al.*, No. 1:20-cr-00077-TSB. Plaintiffs' complaint—initially filed within a week of the unsealing of the *Householder* complaint—relies almost exclusively on that criminal complaint to allege that FirstEnergy Corp. ("FirstEnergy") made illegal bribes to Larry Householder via political contributions to 501(c)(4)s that supported House Bill 6 ("HB6"). Plaintiffs allege a separate bribe payment to Sam Randazzo, prior to his appointment as Chairman of the Public Utilities Commission of Ohio ("PUCO"). Almost immediately after a jury returned a guilty verdict against Larry Householder and Matt Borges, Plaintiffs sought to depose Jones and Dowling in this case.

While nothing prevented the Plaintiffs from relying on allegations from a criminal case to form the basis of their civil suit, the existence of a parallel criminal investigation requires that additional considerations be weighed in determining how to proceed with discovery, given the Fifth Amendment implications of a directly related criminal investigation. Because the core factual allegations in this action significantly overlap with the allegations in the *Householder* prosecution and the parallel, ongoing federal investigation, proceeding with depositions would put Jones and Dowling in an inherently prejudicial Catch-22 scenario wherein they must choose between surrendering their Fifth Amendment rights or face the very real possibility of adverse inferences that could compromise their ability to defend against these claims. *See Sherrod v. Williams*, No. 3:14-CV-454, 2015 WL 10742766, at *1 (S.D. Ohio Dec. 31, 2015), *objections overruled*, 2016 WL 11608824 (S.D. Ohio Mar. 2, 2016) ("In considering requests for a stay during the pendency or *impendency* of criminal proceedings, courts must be cognizant that simultaneous criminal and civil cases involving the same or closely related facts may give rise to

Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings.") (internal quotation marks and citations omitted, emphasis added).

The government focused significant and detailed attention on Jones and Dowling during the recent *Householder* trial, implicitly labeling them as co-conspirators and the alleged architects of the "Bailout Scheme" that forms the basis for Plaintiffs' claims in this case. As a result, the Fifth Amendment implications of Jones and Dowling being noticed for deposition are now clearly apparent. In its effort to convict Householder and Borges, the government introduced numerous exhibits concerning Jones and Dowling, including statements provided by FirstEnergy (which Plaintiffs received during discovery in this case). Moreover, Plaintiffs have acknowledged that the government's work is not done, referencing "the government's ongoing investigation" in a recent joint stipulation with FirstEnergy. Dkt. 432.[1] In light of the risk of prejudice against Jones and Dowling by moving forward with these depositions and forcing them to choose between their Fifth Amendment rights or an adverse inference, Jones and Dowling respectfully request that the Court issue a protective order deferring their depositions until no earlier than September 8, 2023.

Granting such a narrow and limited request will not prejudice Plaintiffs. Plaintiffs already sought and received numerous extensions related to discovery, including a recent extension of fact discovery until October 20, 2023. *See* Dkt. 317, 318, 370, 372, 410, 413, 432, 433. Even with a protective order staying just these two depositions until at least September 8, 2023, Plaintiffs will still have time to depose Jones and Dowling before the fact discovery cut-off. Further, postponing these depositions will not impede Plaintiffs' ability to proceed with discovery of other parties and non-parties. Currently, Plaintiffs have scheduled ten (10) days of depositions before May 23, 2023, with several others noticed for upcoming depositions.

---

[1] Curiously, even though they are defendants here, Jones and Dowling were not consulted about the agreement between Plaintiffs and FirstEnergy.

2

In addition, a temporary stay will allow time for Jones and Dowling to obtain documents that they currently do not possess to prepare for their depositions—namely, the *Householder* trial exhibits, documents improperly withheld by FirstEnergy for privilege, and the documents this Court recently ordered Randazzo and Sustainability Funding Alliance of Ohio ("SFA") to produce relating to the $4.3 million payment. *See* Dkt. 440. Many of these documents are important to Jones and Dowling being able to accurately testify regarding the timing of key events, the content of various written communications, and discussions with others regarding events at issue in this litigation. Balancing the interests of those involved—Jones, Dowling, Plaintiffs, the Court, and the public—favors granting the limited relief Jones and Dowling seek.

For these reasons, Jones and Dowling request that this Court issue a protective order staying their depositions until no earlier than September 8, 2023.

## **BACKGROUND**

On July 21, 2020, an 80-page criminal complaint in *Householder* was unsealed. *See* Dkt. 5, No. 1:20-cr-00077-TSB. While Jones and Dowling were not directly named in the criminal complaint, it contains references to individuals identified by their same job titles while at FirstEnergy, directly implicating them in the alleged bribery scheme related to the passage of HB6. Within a week of unsealing the *Householder* complaint, Plaintiffs filed their initial complaint in this action, relying almost entirely on, and repeatedly referencing, the criminal complaint. *See* Dkt. 1.

One year later, FirstEnergy entered into a Deferred Prosecution Agreement ("DPA"). *See* Dkt. 3, No. 1:21-cr-00086-TSB. In the DPA's 30-page "Statement of Facts," FirstEnergy stipulated to detailed allegations concerning both the alleged bribe payments in furtherance of HB6, and the alleged bribe payment to Randazzo. The Statement of Facts includes repeated references to both "Executive 1" and "Executive 2"—Jones and Dowling, respectively—directly

3

implicating both in the alleged bribery schemes with numerous references to communications they allegedly had in furtherance of these schemes. *Id.*

On March 9, 2023, following a seven-week trial, a jury returned a guilty verdict against Householder and Borges on charges of violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"). Jones's and Dowling's names were referenced almost every day of the seven-week trial by both the government and its witnesses. Numerous communications with Jones or Dowling were introduced by the government as evidence of the alleged RICO conspiracy. Indeed, the government put Jones and Dowling at the center of the HB6 bribery scheme by alleging that they hatched the plot with Householder and others during the January 2017 inauguration week in Washington D.C. As the government summarized during closing arguments:

> [T]here was a dinner on January 18th, Mike Dowling was there, Jeff Longstreth was there, Chuck Jones was there, and Mr. Longstreth and Mr. Dowling talked about the issues. They talked about the fact that Longstreth needed FirstEnergy to be supportive and Mr. Dowling said FirstEnergy would be very supportive of the Speaker. But they need to get moving on this, they need to set up an organization where they could receive undisclosed unlimited contributions.
>
> The next night or the night after, there's a dinner with Householder and Longstreth and Chuck Jones and Mike Dowling and Tony George. Householder's team at the time and the top brass at FirstEnergy. In that meeting, in that dinner, Householder laid out his plan for becoming Speaker, recruit candidates, raise money, get elected, and have them vote for him for Speaker.
>
> *At that same dinner, FirstEnergy executives laid out what they needed. They weren't profitable, they needed a solution, and they needed it at the federal level and the state level, but they were going to need legislation, and they laid out the problems with the [plants]*. Now, remember, Mr. Longstreth testified that the whole reason for the inauguration trip was so that they could raise money, that was why they were there. *So Chuck Jones and Mike Dowling knew that the Speaker needed money, they knew what he needed money for, and Mr. Householder knew they needed that—that FirstEnergy needed legislative help*.

March 7, 2023 Trial Transcript 3796:24–3797:21 (Exhibit A) (emphases added).

4

From these purported meetings and dinners in D.C., the government argued that Jones and Dowling entered into a corrupt "agreement" with Householder and others to funnel payments to entities controlled by Householder in exchange for assistance with legislation that would benefit FirstEnergy:

> ***So on the same day that Chuck Jones and Larry Householder are talking about legislation, they created Generation Now and emailed Mike Dowling about funding Generation Now***.
>
> A month later, it's approved, $1 million in four $250,000 increments. The documents and evidence paint a pretty clear picture, ***FirstEnergy paid the money to Householder so that he could help them with legislation***.
>
> And the text messages and documents backed that up. ***Within a month later, several months later, Householder—or Longstreth testified—text Mike Dowling: Let me know if there's anything that we can do for you guys. And how did he respond: I know that you guys are there for us. How did he know they were there for us? Because they had talked about it, because they've already entered the agreement***.

*Id.* at 3800:13–3801:2 (emphases added).

As the government set forth in its trial brief, the alleged "corrupt agreement" with FirstEnergy "executives"—an unmistakable reference to Jones and Dowling—continued even after the passage of HB6:

> After House Bill 6 was signed by the governor, a campaign to overturn House Bill 6 through a ballot initiative began. ***Continuing the corrupt agreement, Defendant Householder and FirstEnergy executives discussed the steps Defendant Householder would take to defeat the ballot campaign. In response, FirstEnergy Serv. Co. paid Defendant Householder over $38 million through Generation Now***—some of which FirstEnergy first paid through its own secret 501(c)(4) account—in return for Householder and the enterprise's efforts to defeat the ballot campaign through official action by Defendant Householder, paying off employees and agents of the ballot campaign to prevent the campaign from collecting signatures, and a media offensive and "placebo" initiative to defeat the ballot campaign, among other tactics. This also included creating corporate entities to funnel FirstEnergy-to-Generation-Now money before spending it to advance the enterprise's efforts.

Dkt. 177 at 3, No. 1:20-cr-00077-TSB (emphasis added).

5

Although the defendants in *Householder* have been found guilty (but are yet to be sentenced) and charges have not yet been brought against Jones or Dowling, there can be no doubt that the government's investigation into Jones and Dowling remains ongoing. This is consistent with the stipulation to amend the scheduling order filed on March 24, 2023, where Plaintiffs and FirstEnergy agreed to postpone or otherwise resolve their "disputes to avoid interference with the government's ongoing investigation." Dkt. 432 at 3. Indeed, in meet-and-confers on March 27 and 29, 2023, counsel for Lead Plaintiff stated that he believed Jones and Dowling would be indicted. Moreover, in separate proceedings before the PUCO, the government as recently as February 23, 2023, sought an additional **six-month** stay of multiple PUCO proceedings, including a stay of *all* discovery, because the United States Attorney's Office "is conducting an ongoing investigation into corruption relating to [HB6] and action through the [PUCO]."[2] *See* Exhibit B. The government informed the PUCO that its proceedings "involve issues related to the U.S. Department of Justice of the United States' investigation, and the United States believes that continued discovery in the PUCO Proceedings may directly **interfere with or impede the United States' ongoing investigation**." *Id.* (emphasis added). On March 8, 2023, the PUCO entered an order staying the proceedings "in their entirety," including all discovery and motion practice, an additional six months, through early September 2023. *See* Exhibit C.

Within days of the verdicts being issues in the *Householder* trial and the PUCO discovery stay order, Plaintiffs contacted the undersigned seeking to schedule both Jones's and Dowling's depositions.

---

[2] The government had previously sought a six-month stay in the PUCO proceedings on August 15, 2022, which was also entered by PUCO.

6

## ANALYSIS

Rule 26(c)(1) of the Federal Rules of Civil Procedure grants courts discretion to enter a protective order upon merely a showing of "good cause" to protect an individual from "annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). By conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," the Court is specifically permitted to forbid disclosure or discovery or specify terms for disclosure or discovery. *Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 478 (E.D. Mich. 2013) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also* Fed. R. Civ. P. 26(c)(1)(A)–(B). This inherent power extends to the Court's ability to stay proceedings, with the decision of whether to do so resting soundly within its discretion. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014). Indeed, the Court has "broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." *Id.* at 627 (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)). "In considering requests for a stay during the pendency or impendency of criminal proceedings, courts must be cognizant that simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Sherrod*, 2015 WL 10742766 at *1.

District courts generally analyze and balance a variety of factors when considering a request to stay civil proceedings where there is an ongoing criminal investigation or impending proceedings, including the following:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (quoting *Chao*, 498 F. Supp. 2d at 1037).

In addition to these factors, district courts must consider the extent to which a defendant's Fifth Amendment rights will be implicated absent a stay. *Id.* Applying these factors to this case demonstrates that a protective order temporarily staying Jones's and Dowling's depositions is warranted and will not adversely impact the interests of Plaintiffs, the Court, or the public.

### I. The First and Second Factors Strongly Favor a Limited Stay of Jones's and Dowling's Depositions Because the Issues in this Case Significantly Overlap with the Ongoing Criminal Investigation

The first factor—the extent to which the issues in the criminal investigation overlap with those in this case—clearly favors a stay. Courts have regarded this first factor as "the most important factor" since "[i]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay." *Mason v. Bloom-Carroll Loc. Sch. Dist.*, No. 2:22-CV-3668, 2023 WL 423511, at *3 (S.D. Ohio Jan. 26, 2023) (quoting *Chao*, 498 F. Supp. 2d at 1039).

There can be no dispute that this securities case involves identical issues to the ongoing criminal investigation and the recently concluded *Householder* trial. Plaintiffs filed the initial complaint within a week of the criminal complaint in *Householder* being unsealed, and the allegations therein arise directly from the allegations set forth in the *Householder* criminal charges. Plaintiffs' complaint regarding the alleged HB6 bribery scheme mirrors the allegations the government made in *Householder*. In addition, Plaintiffs' allegations relating to the alleged bribe payment to Sam Randazzo are virtually identical to the allegations in portions of FirstEnergy's DPA concerning the alleged bribe payment to "Public Official B," i.e., Mr. Randazzo. *See* Dkt. 3 at 35–43, No. 1:21-cr-00086-TSB. Thus, the issues presented in the ongoing criminal investigation are coextensive with the issues in this case.

As to the second factor, although courts have found that requests for a stay are strongest where criminal charges have been returned against the defendant, "a stay should not be

8

categorically denied solely because the defendant has not yet been indicted." *Chao*, 498 F. Supp. 2d at 1038. "In fact, stays of discovery have been granted in instances where the Government is conducting an active parallel criminal investigation." *See Sherrod*, 2015 WL 10742766, at *2 (granting motion for limited stay where no indictment had been returned but a federal criminal investigation was ongoing); *Swink v. Montgomery Cnty. Bd. of Comm'rs*, No. 3:16-CV-392, 2017 WL 2349712, at *2, n. 2 (S.D. Ohio May 31, 2017) (stating same, and granting motion for limited stay with respect to one defendant where there was evidence of a "potential criminal investigation" into that defendant's conduct).

As recently as February 23, 2023, the government sought an additional ***six-month*** stay—through early September 2023—of all discovery in the related proceedings before the PUCO because it "is conducting an ongoing investigation into corruption relating to [HB6] and action through the [PUCO]," i.e., the alleged bribe payment to Sam Randazzo. *See* Ex. B. During the *Householder* trial, the government and witnesses referenced Jones's and Dowling's names daily, and numerous exhibits containing their communications were introduced as evidence of the alleged HB6 bribery scheme. Moreover, the government's theory for the bribery plot centered on an alleged corrupt "agreement" by Jones, Dowling, Householder and others to funnel payments to Householder-controlled entities so that he could take official action in support of FirstEnergy. *See* Ex. A at 3800:13–3801:2.

Because the core factual allegations in this action completely overlap with the allegations in the ongoing criminal investigation, and Jones and Dowling remain a central part of the investigation, the first and second factors weigh in favor of staying their depositions.

9

## II. The Remaining Factors Heavily Favor a Limited Stay of Jones's and Dowling's Depositions Because Plaintiffs, the Public and the Court will Suffer No Prejudice, while the Absence of a Stay will Substantially Prejudice Jones and Dowling.

The remaining factors call for the Court to weigh the interests of all parties involved in the request for a stay: Plaintiffs' interests in pursuing this case expeditiously against the limited prejudice they would experience as a result of a temporary stay of just two depositions; the interests of, and burden on, Jones and Dowling; the interests of the Court; and the public interest. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 627. Balancing these interests demonstrates that Plaintiffs, the Court, and the public will experience no meaningful prejudice from a limited, temporary stay of Jones's and Dowling's depositions, while Jones and Dowling will bear the brunt of prejudice moving forward in parallel to the criminal investigation.

Specifically, in the absence of a limited stay, Jones and Dowling will be forced to choose between invoking their Fifth Amendment right against self-incrimination, which will undermine their defense of the securities claims, or waiving their Fifth Amendment rights and testifying in the midst of an on-going criminal investigation covering the same allegations. *See Eastwood v. United States*, No. 2:06-CV-164, 2008 WL 5412857, at *4 (E.D. Tenn. Nov. 14, 2008) (stating that "civil parties subject to a criminal indictment (or investigation) must often choose between waiving their Fifth Amendment rights … or asserting the privilege and losing the civil case") (internal quotation marks and citations omitted). The starkness of that choice became more apparent following the *Householder* trial, given the government's proof that repeatedly referenced Jones and Dowling. Other courts, when assessing the balance for other similarly situated individuals, regularly have concluded that the correct balance to strike rests with protecting Fifth Amendments interests, even when matters are still at an investigatory stage. *See Cranel, Inc. v. Pro Image Consultants Grp., LLC*, No. 2:13-CV-00766, 2013 WL 6440197, at *3 (S.D. Ohio Dec.

10

9, 2013) (granting partial stay and recognizing that two defendants under criminal investigation had "great" interests "given their Fifth Amendment right against self-incrimination"); *Goodwin v. City of Cleveland, Ohio*, No. 1:15 CV 27, 2016 WL 2588174, at *1 (N.D. Ohio May 4, 2016) (recognizing defendants' "desire to protect their Fifth Amendment rights in association with the criminal investigation").

Striking the balance this way is unsurprising because forcing a deposition in these circumstances would irreparably harm and burden Jones and Dowling. Either they risk adverse inferences and imperil their ability to defend this case on the merits, or they risk their statements being used against them in a possible future criminal proceeding if they waive their Fifth Amendment rights. *See Chao*, 498 F. Supp. 2d at 1039 (granting a stay and recognizing that even in the absence of a pending criminal case, "requiring Defendants to choose between asserting their Fifth Amendment rights (thereby subjecting themselves to the very real possibility of adverse inferences) and defending themselves in this action imposes a substantial burden upon Defendants"); *Sherrod*, 2016 WL 11608824, at *4 (affirming magistrate judge's grant of limited stay of depositions due to the "significant consequences faced by Defendants if they are deposed during the ongoing federal criminal investigation").

On the other hand, a protective order staying Jones's and Dowling's depositions will not prejudice Plaintiffs, or impact the Court's and public's interests. Plaintiffs and FirstEnergy recently stipulated to, and this Court entered, an amended scheduling order extending the fact discovery cut-off date to October 20, 2023, with dispositive motions not due until May 2024. *See* Dkts. 432, 433. In fact, part of Plaintiffs' and FirstEnergy's stipulation to extend the fact discovery cutoff date to late October 2023 was to "avoid interference with the government's ongoing investigation." Dkt. 432 at 3. While Defendants Jones and Dowling were excluded from

11

participating in the discussions leading up to this bilateral agreement, the candor of that statement strongly favors a limited stay. A limited stay of Jones's and Dowling's depositions until after September 8, 2023, will not impact any deadlines in the amended Scheduling Order, or any future trial date (which has not been set).

Additionally, for reasons that are unclear to Jones and Dowling, Plaintiffs recently abandoned their pursuit of documents being withheld by FirstEnergy due to privilege. *Id.* Many documents withheld for privilege relate to both HB6 and payments made by FirstEnergy to SFA, Mr. Randazzo's entity. In the wake of the Plaintiffs abandoning this issue, Jones and Dowling recently raised these improper privilege claims with FirstEnergy. They cannot adequately prepare for their depositions without having an opportunity to review relevant documents related to the two alleged bribe schemes, which have been improperly withheld from production. For instance, internal and external FirstEnergy communications regarding key events at issue in this litigation have been withheld as privileged. Those communications are essential to Jones and Dowling being able to accurately testify regarding events that happened six or seven years ago.

In addition, Jones and Dowling have not yet obtained the *Householder* trial exhibits, which are not yet available to the public. As just one example of the importance of these exhibits to Jones's and Dowling's deposition preparation, during the trial Special Agent Blane Wetzel testified regarding telephone records of conversations alleged to have taken place between Jones, Dowling, Householder, Jeffrey Longstreth and others in the winter and spring of 2017. Telephone records supporting his testimony appear to have been admitted into evidence in bulk exhibits. Yet, FirstEnergy has never produced complete telephone records for Jones's or Dowling's FirstEnergy telephones for February and portions of March 2017. Those records are important to Jones and Dowling being able to accurately recall and testify regarding conversations, meetings and related

12

events during that time period. Moreover, this Court recently ordered third parties Randazzo and SFA to "produce any documents regarding the $4.3 million payment within their possession, custody, control." Dkt. 440 at 2. Clearly those records are important to Jones's and Dowling's ability to accurately testify regarding that payment, which is a central allegation in Plaintiffs' complaint. Both sets of documents are undoubtedly critical for Jones and Dowling to prepare for their depositions, and they should not be required to testify before those documents are available.

Plaintiffs can still engage in all other discovery efforts even with a limited stay, including gathering relevant documents and written discovery from all defendants, and deposing other parties and non-parties. Indeed, Plaintiffs have already noticed several depositions: Non-Parties Anna Lippincott and Ballard Spahr; individual Defendants Steven Strah, Paul T. Addison, Julia L. Johnson, and Thomas N. Mitchell; representatives from Defendant entities CIBC World Markets Corp., KeyBanc Capital Markets Inc., MUFG Securities Americas Inc., PNC Capital Markets LLC, RBC Capital Markets, LLC, Santander Investment Securities Inc., SMBC Nikko Securities America, Inc., TD Securities (USA) LLC, U.S. Bancorp Investments, Inc., and Barclays Capital Inc.[3] A limited stay of two individual depositions simply will not prejudice Plaintiffs' ability to prosecute this case expeditiously.

Notably, courts in this district have entered similar orders staying depositions in other civil cases with parallel, ongoing criminal investigations where discovery and trial deadlines were not impacted. *See Swink*, 2017 WL 2349712, at *3 (granting 90-day stay of deposition of single defendant who was under criminal investigation where discovery cutoff deadline was six months

---

[3] Plaintiffs can also reconvene the deposition of FirstEnergy's Rule 30(b)(6) representative now that they have abandoned their objections to FirstEnergy's non-production of materials relating to its internal investigation and communications with the government. *See* Dkt. 432. In addition, Plaintiffs already have the benefit of FirstEnergy's guilty plea, the Statement of Facts that underlie the DPA, and the *Householder* trial transcripts—all of which contain a detailed roadmap as to both alleged bribery schemes.

13

away and "Plaintiff can still engage in other discovery efforts"); *Sherrod*, 2015 WL 10742766, at *2 (granting 90-day stay of defendants' depositions who were under criminal investigation, and finding that a "limited stay does not significantly impede upon Plaintiffs' interests in expeditiously prosecuting this case" because the limited stay "will not result in a continuance of the current discovery deadline or delay the trial date"); *see also Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527–29 (D.N.J. 1998) (granting five-month stay of defendants' depositions while ongoing criminal investigation proceeded); *Sikon v. Carroll Cnty., Ohio*, No. 5:20-CV-0674, 2020 WL 8838043, at *4 (N.D. Ohio June 12, 2020) (granting stay of all proceedings for 120 days while ongoing criminal investigation proceeded); *McGee v. Madison Cnty., Tenn.*, No. 1:15-CV-01069, 2015 WL 3648986, at *4 (W.D. Tenn. June 10, 2015) (granting 60-day stay of all proceedings while ongoing criminal investigation proceeded).

Since a limited stay until September 8, 2023, will not impact any of the deadlines set forth in the amended Scheduling Order, neither the Court's nor the public's interests in judicial efficiency and an expeditious resolution will be impacted by granting a protective order. Indeed, a temporary stay is most likely to conserve judicial resources because, by entering such an order, this Court will not need to consume time determining the "precise contours of Defendants' Fifth Amendment rights" assuming they were invoked. *Coley v. Lucas Cnty., Ohio*, No. 3:09 CV 0008, 2011 WL 5838190, at *4 (N.D. Ohio Nov. 18, 2011).

Overall, the balance of all these factors weighs strongly in favor of granting a limited stay of Jones's and Dowling's depositions until no earlier than September 8, 2023. By then, Jones and Dowling will undoubtedly have access to the documents described above. In addition, the government's request for a six-month stay of the PUCO proceedings will be near its end, and both

14

the parties and the Court will likely be in a better position to evaluate the status of the government's ongoing criminal investigation.

## CONCLUSION

For the foregoing reasons, Charles Jones and Michael Dowling respectfully request that this Court enter a protective order staying their depositions until at least September 8, 2023.

Dated: April 17, 2023

Carole S. Rendon (0070345)
Douglas Shively (0094065)
Daniel R. Warren (0054595)
Jeremy Steven Dunnaback (0098129)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216-621-0200
Fax: 216-696-0740
crendon@bakerlaw.com
dshively@bakerlaw.com
dwarren@bakerlaw.com
jdunnaback@bakerlaw.com

Albert G. Lin (0076888)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: 614-228-1541
Fax: 614-462-2616
alin@bakerlaw.com

George A. Stamboulidis (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4211
Fax: 212-589-4201
gstamboulidis@bakerlaw.com

*Attorneys for Defendant Charles E. Jones*

Respectfully submitted,

/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
John A. Favret (0080427)
Hannah M. Smith (0090870)
Michael J. Ruttinger (0083850)
TUCKER ELLIS LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113
216-592-5000
Fax: 216-592-5009
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com
hannah.smith@tuckerellis.com
michael.ruttinger@tuckerellis.com

Dan K. Webb (admitted *pro hac vice*)
Steven Grimes (admitted *pro hac vice*)
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
Fax: 312-558-5700
dwebb@winston.com
sgrimes@winston.com

*Attorneys for Defendant Michael J. Dowling*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
One of the Attorneys for Defendant
Michael J. Dowling
