IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE FIRSTENERGY CORP.
SECURITIES LITIGATION,

This document relates to:

ALL ACTIONS.

Civil Action 2:20-cv-3785
Chief Judge Algenon L. Marbley
Magistrate Judge Jolson

**OPINION AND ORDER**

This matter is before the Court on the Joint Motion to Compel brought by Plaintiffs and Defendant Michael Dowling (collectively "Movants") against Partners for Progress, Inc. ("PFP"). (Doc. 420). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. PFP must produce documents consistent with the discussion below within fourteen days of this Opinion and Order.

I.     **BACKGROUND**

This case is a consolidated class action brought on behalf of all purchasers of securities in FirstEnergy Corp. ("FirstEnergy") between February 21, 2017 and July 21, 2020. (Doc. 72, ¶ 1). Plaintiffs seek relief under the Securities Act of 1933 and the Securities Exchange Act of 1934 against FirstEnergy, certain of its current and former employees, and "the investment banks which underwrote two FirstEnergy debt offerings during the Class Period." (*Id.*). Movants bring the instant Motion to compel documents withheld by PFP on the basis of attorney-client privilege.

Movants issued subpoenas to PFP in May 2022, requesting information about the formation and operation of PFP, and communications related to its receipt and expenditure of funds. (Doc. 350 at 10–11). These subpoenas have been the source of much objection, conferral, and Court intervention. Movants first sought relief from the Court because they said PFP's search was not

diligent, it had not produced a privilege log, and its claims of privilege were not substantiated or had otherwise been waived. (Doc. 350). The Court agreed that PFP had not conducted a diligent search for documents, nor produced an appropriate privilege log—and ordered it to do both. (Doc. 378). But the Court held questions of privilege in abeyance to allow for additional production, proper cataloguing of documents in a privilege log, further conferral by the parties, and supplemental briefing. (*Id.*).

The parties submitted such briefing (Docs. 400, 401), but the disputes had shifted significantly over time and that conferral was still ongoing (Doc. 408). Accordingly, the parties were allowed additional time to confer, and a briefing schedule was set for a renewed Motion to Compel. (*Id.*). That Motion was filed and fully briefed. (Docs. 420, 423, 428). In a prior Order, the Court issued an interim ruling on questions raised in the Motion about the completeness of PFP's production, so that document production would not be further delayed. (Doc. 431). The Court also entered an Order under Rule of Evidence 502(d), so that PFP could produce unredacted law firm invoices and attorney service narrative statements to Movants. (Doc. 433).

Now, the Court has conducted an *in camera* review of the documents PFP withheld on the basis of privilege (*see* Doc. 443) and resolves the remainder of the Joint Motion to Compel.

## II.   STANDARD OF REVIEW

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 45, for its part, provides that when a subpoena has been objected to, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The Court's prior Orders have considered the scope of the subpoenas and the

2

relevancy of the material sought. Now, the only dispute is whether there is nonprivileged matter in the withheld documents and communications that Movants can compel through this Motion.

Because this case is before the Court on federal question jurisdiction, federal law governs questions regarding the attorney-client privilege. *Talismanic Properties, LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 493 (S.D. Ohio 2017) (citing *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992)). The party withholding discovery bears the burden to establish privilege. *New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 918 (6th Cir. 210). Information is protected by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8), unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998).

## III. DISCUSSION

The present Motion centers on whether PFP has properly withheld and redacted documents on the basis of attorney-client privilege. As a threshold matter, Movants say that PFP has waived privilege regarding all documents shared with FirstEnergy executives. (Doc. 420 at 5–7). Next, Movants say that documents authored by Michael VanBuren—who serves in a dual-role as the director and treasurer of PFP and as an attorney at Calfee Halter & Griswold LLP ("Calfee"), the law firm which represents PFP and formerly represented FirstEnergy—may only be withheld if the predominant purpose of those communications was to render legal advice. (*Id.* at 7–8). Finally, Movants say that PFP has over-redacted certain emails and invoices (*id.* at 8–11), though this dispute has been substantially narrowed by recent unredacted production under the Court's Rule 502(d) Order (*see* Doc. 451).

> A. *The common interest between FirstEnergy and PFP precludes a finding of third-party waiver.*

Many communications on PFP's privilege log were shared with FirstEnergy employees. (*See* Doc. 420-3). Movants say these communications should be categorically produced because—regardless of any underlying existence of attorney-client privilege—such privilege was between PFP and Calfee, and was waived by disclosure to third parties at FirstEnergy. (Doc. 420 at 5–7). PFP responds that it shared a common legal interest with FirstEnergy and thus was permitted to share privileged communications without endangering attorney-client privilege. (Doc. 423 at 8–9). Namely, it says that PFP "was formed and operated through conversations with certain FirstEnergy employees and received contributions from FirstEnergy or its affiliates[,]" and the two organizations shared "the legal interest of operating [PFP] in compliance with law . . . ." (Doc. 359 at 12).

Typically, purposeful disclosure of attorney-client communications to a third party results in waiver. *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999) (citing *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996)). Under some circumstances, however, these communications remain protected. The common-interest exception to the third-party disclosure rule "operates to protect information disclosed to other parties, expanding coverage of the attorney-client privilege to include situations in which two or more clients with a common interest in a matter agree to exchange information regarding the matter." *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (citing *Reed*, 134 F.3d at 357 (6th Cir. 1998)). To share a common legal interest, it is not necessary that the parties be engaged in the same "legal action; it is possible for two or more parties to share a common interest without becoming parties to the same litigation." *Id.* (citing *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-

4

cv-2347, 2006 WL 314435, at *6 (N.D. Ohio Feb. 9, 2006), *rev'd in part on other grounds*, 258 Fed. App'x 318 (Fed. Cir. 2007)).

Regarding PFP, FirstEnergy disclosed in its Deferred Prosecution Agreement ("DPA") with the government that:

> Although Partners for Progress appeared to be an independent 501(c)(4) on paper, in reality, it was controlled in part by certain former FirstEnergy Corp. executives, who funded it and directed its payments to entities associated with public officials. For example, FirstEnergy Corp. executives directed the formation of Partners for Progress and decided to incorporate the entity in Delaware, rather than Ohio, because Delaware law made it more difficult for third parties to learn background information about the entity. Certain FirstEnergy Corp. executives were also involved in choosing the three directors of Partners for Progress, two of whom were FirstEnergy Corp. lobbyists. Before Partners for Progress was formally organized, Executive 2 directed that $5 million be designated for an unnamed 501(c)(4) in December 2016.
>
> FirstEnergy Corp. exclusively funded Partners for Progress through payments from FirstEnergy Service, which totaled approximately $25 million between 2017 and 2019, approximately $15 million of which was paid to Generation Now. Certain former FirstEnergy Corp. executives directed Partners for Progress to make payments in 2018, 2019, and 2020, including payments to Generation Now, which helped conceal FirstEnergy Corp. as the source of the payments from the public.

(Doc. 401-8 at 16–17). In other words, PFP was an extension of FirstEnergy formed and controlled under the direction of FirstEnergy executives. And FirstEnergy handpicked directors for PFP that it knew would agree to direct concealed funds from FirstEnergy to Generation Now. Legal considerations were at the heart of this mutual enterprise. As noted by FirstEnergy in the DPA, legal advice informed the earliest events of this shared plan—beginning with the choice to incorporate in Delaware because its laws most favored non-disclosure. So, the agreement to exchange information to pursue a common interest was immediate and clear from the inception of PFP.

The Court's *in camera* review demonstrates that this agreement continued. The communications shared with FirstEnergy reflect a legal interest in distributing funds through PFP

5

in accordance with laws governing 501(c)(4)s and political contributions, such that financial distributions could be made through PFP without disclosing FirstEnergy's involvement. Movants suggest this common interest is undermined because FirstEnergy and PFP were "counterparties (donor and recipient) in their business transactions[.]" (Doc. 420 at 7). But this business arrangement does not meaningfully affect their shared legal interest. Nor does it accurately capture the reality of the financial exchange, in which FirstEnergy was the donor, PFP was a proxy, and other organizations were the recipients. Regardless, for the common-interest exception to apply, parties need not "be in agreement on every point;" rather, they must "have agreed to work toward a mutually beneficial goal, even if [they] are in conflict on some points." *Cooey*, 269 F.R.D. at 652. The communications between First Energy and PFP demonstrate that they were in pursuit of a common goal, and relied upon legal advice to "avoid pitfalls that might otherwise impair their progress toward their shared objective." *Libbey Glass*, 197 F.R.D. at 348.

Thus, the common-interest exception precludes a finding of third-party waiver with regard to communications exchanged between PFP and FirstEnergy. But this is merely a threshold consideration. The underlying communications themselves must contain advice protected by the attorney-client privilege to be withheld from production. To this point, Movants question whether the predominant purpose of Michael VanBuren's communications with PFP and FirstEnergy was to provide legal advice.

> B. *Some of Michael VanBuren's communications had the predominant purpose of providing legal advice, but many predominately concerned his role as director and treasurer of PFP.*

Movants say that notes and communications authored by Michael VanBuren regarding PFP "likely contain non-privileged business information[,]" because VanBuren was not only a Calfee attorney, but also the director and treasurer of PFP. (Doc. 420 at 7–8). To the extent that he was rendering general business advice, they say, the communications should not be protected by

6

attorney-client privilege. (*Id.*). PFP, however, says it has only withheld communications with the predominant purpose of rendering legal advice. (Doc. 359 at 3–7). Here, the distinction is significant because every document submitted for *in camera* review was created by, or involves communication to or from, VanBuren.

"When communications contain both legal advice and non-legal considerations, a court must consider 'whether the predominant purpose of the communication is to render or solicit legal advice.'" *Cooey*, 269 F.R.D. at 650 (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d. Cir. 2007)). This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d at 419).

As described above, FirstEnergy and PFP had a mutual interest in directing funds through PFP without disclosing that FirstEnergy was the true source of those funds. This required legal knowledge regarding 501(c)(4)s and political contributions. Thus, several of the communications surrounding donations by PFP—which Movants characterize as having a general business purpose—involved the soliciting and rendering of legal advice about how such donations would comply (or not) with laws governing how 501(c)(4)s may disburse funds. In particular, there was a preoccupation, as suggested by FirstEnergy in the DPA, that certain contributions would require disclosure of PFP's source of funding and reveal FirstEnergy's involvement. FirstEnergy and PFP relied on VanBuren's legal advice in navigating these decisions. Having conducted *in camera* review, the Court finds that the following documents have a predominately legal purpose and are therefore properly withheld: PFP_PAPER-000273, PFP_PAPER-000274, PFP_PAPER-000380,

PFP_PAPER-000413, PFP_PAPER-000931, PFP_PAPER-000933, PFP_PAPER-000935, PFP_PAPER-000958, PFP_PAPER-000966, PFP_PAPER-000986, PFP_PAPER-001014, PREPROD_00000375, PREPROD_00000435, PREPROD_00000445, PREPROD_00000457, PREPROD_00000490, PREPROD_00000505, PREPROD_00000524, PREPROD_00000539, PREPROD_00000545, PREPROD_00000548, PREPROD_00000556, PREPROD_00000558, PREPROD_00000641, PREPROD_00000649, PREPROD_00000657, PREPROD_00000853, PREPROD_00000885, PREPROD_00000901, PREPROD_00000923, PREPROD_00000933, PREPROD_00000947, PREPROD_00000959, PREPROD_00001024, PREPROD_00001049, PREPROD_00001085, PREPROD_00001138, PREPROD_00001155, PREPROD_00001178, PREPROD_00001223, PREPROD_00001232, PREPROD_00001284, PREPROD_00001288, PREPROD_00001302, PREPROD_00001412, PREPROD_00001442, PREPROD_00001453, PREPROD_00001469, PREPROD_00001923, PREPROD_00001924, PREPROD_00003762. Additionally, for the following documents, handwritten notations by VanBuren containing legal advice may be redacted so that the rest of the document may be produced: PFP_PAPER-000340, PFP_PAPER-000347.

This conclusion is not universal, however. Many of the withheld documents show VanBuren acting predominately as a director and treasurer of PFP. When VanBuren provided updates about tax filing, billing, and the flow of money in and out of PFP, he was not rendering the type of advice that can be furnished only by a lawyer. Accordingly, the Court finds that all other documents withheld for privilege and produced for *in camera* review—aside from those specifically enumerated above—must be produced to Movants. PFP is **ORDERED** to produce these documents to Movants within fourteen days.

> C. *PFP has produced unredacted invoices and attorney client service statements. To the extent it continues to redact attorney-client advice from certain emails, those emails are not presently before the Court.*

Movants say that PFP made overbroad redactions to Calfee invoices and emails regarding provision of Calfee's services to PFP. (Doc. 420 at 8–11). Previously, the Court granted PFP's request to enter an order under Rule of Evidence 502(d), so that it could produce unredacted invoices and emails to Movants without waiving privilege. (Doc. 431 at 8; Doc. 434). The Court then asked for a joint status report by Movants and PFP to clarify how—if at all—that production narrowed this dispute. (Doc. 447). The parties now represent that PFP produced certain emails and invoices without redactions, but is continuing "to assert privilege on redacted emails where PFP asserts that legal advice was rendered[.]" (Doc. 451 at 1).

Because these emails were logged on the portion of PFP's privilege log entitled Documents Produced with Redactions (as opposed to those Documents Withheld for Privilege), they were not produced to the Court for *in camera* inspection. However, given the rulings the Court has made in the present Opinion and Order, PFP should have sufficient guidance to distinguish what constitutes legal advice and can be properly redacted from what must be produced in its entirety. Accordingly, PFP is **ORDERED** to review the redactions consistent with the rulings in this Opinion and Order and produce any unredacted emails as necessary to Movants within fourteen days.

IV. **CONCLUSION**

For the foregoing reasons, Movants' Joint Motion to Compel (Doc. 420) is **GRANTED in part and DENIED in part**. PFP must produce documents consistent with the discussion above within fourteen days of this Opinion and Order.

IT IS SO ORDERED.

Date:  May 9, 2023                                           <u>/s/ Kimberly A. Jolson</u>
                                                             KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE