**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE FIRSTENERGY CORP.**
**SECURITIES LITIGATION,**

**This document relates to:**

**ALL ACTIONS.**

**Civil Action 2:20-cv-3785**
**Chief Judge Algenon L. Marbley**
**Magistrate Judge Jolson**

## OPINION AND ORDER

This matter is before the Court on the Motion for Protective Order (Doc. 444) filed by Defendants Charles E. Jones and Michael Dowling (collectively, "Movants"). For the following reasons, the Motion—and Movants' request therein for oral argument on the Motion—is **DENIED**. Movants' depositions must take place within the target period recently identified by Plaintiffs.

## I. BACKGROUND

This case is a consolidated class action brought on behalf of all purchasers of securities in FirstEnergy Corp. ("FirstEnergy") between February 21, 2017 and July 21, 2020. (Doc. 72, ¶ 1). Plaintiffs seek relief under the Securities Act of 1933 and the Securities Exchange Act of 1934 against FirstEnergy, certain of its current and former employees, and "the investment banks which underwrote two FirstEnergy debt offerings during the Class Period." (*Id.*). Broadly, Plaintiffs say that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history[,]" to influence Ohio elections and secure a $1.3 billion bailout for two of its failing nuclear plants, as well as $700 million in subsidized revenues for the company, through passage of Ohio House Bill 6 ("HB6"). (*Id.,* ¶¶ 3, 5). When FirstEnergy's role in this

scheme was brought to light, the price of its stock fell sharply, resulting in "billions of dollars of losses" for FirstEnergy investors. (*Id.*, ¶ 9).

Relevant here, Plaintiffs say that Defendant Charles E. Jones, the former Chief Executive Officer of FirstEnergy, personally oversaw this scheme and "orchestrated the payment of tens of millions of dollars from the corporate treasury of FirstEnergy to finance" it. (*Id.*, ¶¶ 4, 220–21). Plaintiffs also allege that Jones was in frequent contact with Larry Householder, who—with FirstEnergy's financial backing—was elected to serve as the Speaker of the Ohio House of Representatives, and shortly thereafter introduced the HB6 legislation. (*Id.*, ¶¶ 70–80, 221). Similarly, Defendant Michael Dowling, the former Senior Vice President of External Affairs at FirstEnergy, is alleged to have interfaced with Householder and other conspirators in the scheme, as well as to have facilitated a $4 million payment to Sam Randazzo ahead of his appointment as the Chairman of the Public Utilities Commission of Ohio ("PUCO"). (*Id.*, ¶ 222). Plaintiffs say this too was part of a *quid pro quo*, as Randazzo later drafted portions of HB6 and publicly supported the bill through his role at PUCO. (*Id.*, ¶ 11).

Parallel to this litigation, the government has pursued criminal charges against several defendants alleged to have participated in this scheme, including Householder. *United States v. Larry Householder, et al.*, No. 1:20-cr-00077-TSB (S.D. Ohio). On March 9, 2023, a jury found Householder and co-defendant Matthew Borges guilty on charges of conspiracy under the Racketeer Influenced and Corrupt Organizations Act. *Id.*, at Doc. 240. During this jury trial, the government highlighted Jones's and Dowling's purported relationships with Householder and involvement in the conspiracy. (*See* Doc. 444-2) (trial transcript from March 7, 2023, including government's closing argument). And recent representations before this Court suggest that FirstEnergy's cooperation with government investigations is ongoing. (Doc. 457 at 2–3).

Knowing all this, Movants fear they are next in line for indictment. (Doc. 444-1 at 10) (noting that while "charges have not yet been brought against Jones and Dowling, there can be no doubt that the government's investigation into Jones and Dowling remains ongoing").

Movants bring the instant Motion to stay depositions originally noticed by Plaintiffs for May 23 and 31, 2023. (Doc. 444). During the pendency of this Motion, Plaintiffs voluntarily pushed back the target period for the depositions, so the parties would have adequate time to prepare for depositions following resolution of the Motion. Still, Movants' position remains unchanged that the depositions should be stayed "until no earlier than September 8, 2023." (Doc. 444-1 at 7). The Motion has been fully briefed and is ripe for consideration. (Docs. 448, 453).

## II. STANDARD OF REVIEW

In order to protect a party from annoyance, embarrassment, oppression, or undue expense, and upon a finding of good cause, a court can issue a protective order under Rule 26. Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . ."). "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *1–2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To show good cause, a movant must be "able to demonstrate that the requested discovery, if not excluded or materially modified, would cause a clearly defined and serious injury." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *2 (W.D. Ky. June 29, 2016) (citations omitted); *see also Smith*, 2006 WL 7276959, at *1–2 (citing *Nix*, 11 F. App'x at 500) ("To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.").

Here, the Movants suggest that the clearly defined and serious injury they face is having to choose between waiving their Fifth Amendment rights in a potential criminal prosecution and suffering adverse inferences in the present action should they decline to give testimony. They ask that their depositions be stayed so they do not have to make this difficult choice.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket[.]" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quotation marks and citation omitted). Notably "nothing in the Constitution requires a civil action to be stayed . . . pending the outcome of criminal proceedings." *Id.* (quotation marks and citations omitted). Instead, courts balance six factors when exercising their "broad discretion in determining whether to stay":

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* (quotation marks and citation omitted).

Also relevant is "'the extent to which the defendant's fifth amendment rights are implicated.'" *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). Importantly, "[t]he case for a stay is strongest where the defendant has already been indicted, whereas pre-indictment requests for a stay . . . are usually denied." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (collecting cases). At base, the party seeking the stay bears "the burden . . . to show that there is a pressing need for the delay[.]" *E.M.A. Nationwide*, 767 F.3d at 627–28 (quotation marks and citation omitted).

## III. DISCUSSION

At the outset, the Court notes that Movants have requested oral argument on the Motion. Because the Court finds the briefing sufficient to make its ruling—and because scheduling oral argument would further delay resolution of the matter—the request is **DENIED**. Working through the factors for consideration of a criminal stay, the Court finds that a stay is not warranted here.

### *A. Overlapping Issues*

Movants say that the present case "involves identical issues to the ongoing criminal investigation and the recently concluded *Householder* trial." (Doc. 444-1 at 12). Plaintiffs, on the other hand, note that none of the elements of their securities fraud claim requires the commission of a crime. (Doc. 448 at 20). This argument, however, is formalistic. While the securities fraud claim and the RICO conspiracy provision may not contain identical elements, both primarily rely upon the same operative facts and alleged wrongdoing. One can imagine, for example, how a single act by either Movant could be viewed in the criminal context as an act in furtherance of the RICO conspiracy and in the civil context as a "deceptive or manipulative act" in furtherance of a securities fraud scheme. (Doc. 219 at 14) (describing the elements of the securities fraud claim).

While the degree of overlapping issues does still require some degree of speculation—because no indictment has yet been filed against either Movant—the contours of the *Householder* case provide enough support to find "a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues[.]" *McCullaugh v. Krendick*, No. 5:07CV2341, 2009 WL 2929306, at *2 (N.D. Ohio Sept. 9, 2009) (citation omitted). Accordingly, this factor favors Movants. While Movants repeatedly emphasize that this is the "most important factor" in the analysis (*see, e.g.*, Doc. 453 at 7), the Court clarifies that it is "considered the most important *threshold* issue in determining whether or not to grant a stay[,]" because "[a]bsent an overlap of facts and/or issues, there is no danger of self-incrimination,

prejudice or need for a stay." *McCullaugh*, 2009 WL 2929306, at *2 (emphasis added) (citation omitted). In other words, this factor is most significant because in its absence, a stay would rarely be appropriate—not because when the factor is demonstrated a stay is always proper. Here, the other elements demonstrate that a stay is not warranted.

*B. Status of the Criminal Case*

Under this factor, "'[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct[.]'" *Id*. at 628 (quoting *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). This makes sense. "'[T]he likelihood that a defendant may make incriminating statements is greatest after an indictment has issued,'" and any prejudice to the civil plaintiffs "'is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.'" *E.M.A. Nationwide*, 767 F.3d at 628 (quoting *Transworld Mech.*, 886 F. Supp. at 1139).

Movants have not been indicted. They say that the government's representations that its investigation is ongoing, coupled with "numerous statements" about the Movants in the *Householder* trial, suggest that they are subject to ongoing criminal investigation. (Doc. 453 at 7–8). Even still, "'a stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy' that is not generally granted in the absence of an indictment." *Kirby Dev., LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2018 WL 6075071, at *4 (S.D. Ohio Nov. 20, 2018) (quoting *E.M.A. Nationwide*, 767 F.3d at 627–28). Accordingly, the Court finds that this factor weighs against a stay.

*C. Interests of and Prejudice to Plaintiffs*

The third factor favors Plaintiffs. The Court must balance Plaintiffs' "'interest in proceeding expeditiously against the prejudice that a delay would cause.'" *Johnson, next friend of C.P.S. v. Hamilton Cty. Gov't*, No. 1:19-CV-329, 2020 WL 6479558, at *3 (E.D. Tenn. Feb. 26, 2020) (*quoting In re Flint Water Cases*, No. 5:16-cv-10444, 2019 WL 5802706, at *3 (E.D. Mich.

Nov. 7, 2019)). Movants say their request, "a temporary stay of just two depositions[,]" is unlikely to prejudice Plaintiffs, who would otherwise be free to obtain discovery from other sources. (Doc. 444-1 at 14–19). This characterization, however, downplays the disruptive effect a stay would have at this stage of the litigation.

First, though Movants say the stay is temporary, their grounds supporting the stay could extend for months or even years. Presently, they request that the depositions be delayed until at least September 8, 2023. (Doc. 444-1 at 7). Movants have chosen this date because it is the first date on which investigations and proceedings conducted by PUCO might resume—after a third six-month stay of those proceedings was recently granted at the request of the government. (Doc. 444-4). It seems unlikely that Movants will feel differently about sitting for depositions in September if the government again requests a lengthy stay of the PUCO proceedings. Indeed, should the government continue to focus its attention on sentencing in the *Householder* case—and probable appeals thereafter—the parties and the Court are likely to find themselves in a situation in September in which little has changed: that is, the government continues to ask for stays in the PUCO proceedings, has yet to move to indict other criminal defendants, and Movants continue to fear indictment for the same reasons they do now. The stay proposed by Movants could stretch out indefinitely. For good reason, indefinite stays are disfavored. *See Newell v. Cty. of Wayne*, No. 12-CV-14928, 2013 WL 4613613, at *5 (E.D. Mich. Aug. 29, 2013) (finding that an indefinite stay "would be tantamount to a denial of [the plaintiff's] day in court.").

Still more, these are not just any two depositions. Movants were the CEO and a Senior Vice President of FirstEnergy. They were the only two executives identified particularly by FirstEnergy in its deferred prosecution agreement with the government, under the monikers Executive 1 and Executive 2. (Doc. 444-1 at 7–8). And many other Defendants to this litigation

purportedly worked in conjunction with, or at the direction of, Movants. Their testimony is central to developing the facts of the alleged securities fraud and contextualizing the testimony of other deponents. An inability to record their testimony, therefore, is likely to have a greater impact on the progress of discovery than they suggest. This factor too weighs against a stay.

*D. Interests of and Prejudice to Defendants*

Next, the Court must consider Movants' interests and any prejudice they might suffer without a stay. Most significantly, they say that, absent a stay, they "will be forced to choose between invoking their Fifth Amendment right against self-incrimination, which will undermine their defense of the securities claims, or waiving their Fifth Amendment rights and testifying in the midst of an on-going criminal investigation covering the same allegations." (Doc. 444-1 at 14). Indeed, courts often stay a civil case where the defendant "may be compelled to answer questions in the civil case that he would have the right to refuse to answer in the criminal case." *Coats v. Grant Blanc Cmty. Schs.*, No. 18-cv-12162, 2018 WL 63212916, at *2 (E.D. Mich. Dec. 3, 2018). While the Fifth Amendment rights of Movants must be considered seriously, those rights must be contextualized against the countervailing interests of Plaintiffs, the Court, and the public.

This is not a case in which a stay can be granted for a limited time while a parallel criminal proceeding reaches its conclusion. *See Coats*, 2018 WL 63212916, at *2 (granting stay where criminal trial was set to start two months later, and stay could be lifted once trial had concluded). Rather, this is a case in which no charges have been brought against Movants. While this does not preclude a finding that a stay is appropriate, neither is it "in and of itself, a sufficient basis to justify an extended stay of civil proceedings." *Goodwin v. City of Cleveland, Ohio*, No. 1:15 CV 27, 2016 WL 2588174, at *1 (N.D. Ohio May 4, 2016); *see also Chao*, 498 F. Supp. 2d at 1040 (granting stay where no indictment had yet issued against defendants, but "it [was] likely that any delay w[ould] not be substantial."). Here, the requested stay—for almost four months, and unlikely to end there—is substantial.

This case has been pending for nearly three years. Discovery is set to close in October 2023. (Doc. 458). And while the Court has granted several extensions to the case schedule in hopes that certain privilege disputes may be narrowed or mooted by the conclusion of the *Householder* case, it recently represented that it was disinclined from granting further extensions. (*Id.*). This case must proceed. And Movants' interests in staying this litigation to protect their Fifth Amendment rights—interests which have no foreseeable conclusion—will bring the progress of this case to a halt.

Movants' other arguments for prejudice are less availing. Namely, they say that certain documents they have been unable to obtain—those withheld by FirstEnergy on the basis of privilege and exhibits used by the government at the *Householder* trial which have not been made available to the public—are necessary for them to "accurately testify" at their depositions. (Doc. 444-1 at 16–17). The Movants' personal knowledge and the other extensive discovery already produced in this litigation should enable them to testify accurately.

All told, the interests of and prejudice to Movants cannot support a stay in the face of competing interests of Plaintiffs, the Court, and the public.

*E. Interests of the Court and the Public*

The remaining two factors are also in Plaintiffs' favor. "'The convenience of the courts is best served when motions to stay proceedings are discouraged.'" *Mooney by & through Mooney v. Wallace*, No. 04-1190-T-P, 2005 WL 8156550, at *2 (W.D. Tenn. Apr. 1, 2005) (quoting *Gala Enter., Inc. v. Hewlett Packard Co.*, No. 96 CIV. 4864 DC, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996)). Even more so here—where Movants essentially ask to stay these proceedings indefinitely, and "this matter would languish on the [C]ourt's docket." *Id.* Likewise, the public has a strong interest "in expeditious litigation." *Id.* Because this is a class action, an indefinite stay of this case harms the public interest. *See, e.g.*, *Johnson*, 2020 WL 6479558, at *3 (recognizing that, because the public had an interest in the alleged claims, a stay would harm their interest).

* * *

In sum, there is substantial overlap between the issues in this case and the criminal investigation surrounding the *Householder* case. And Movants are faced with legitimate concerns regarding the invocation of their Fifth Amendment rights. But the balance of factors cannot support a stay. A stay of these key depositions at this moment—with no clear end in sight—would throw a wrench into the works of discovery and impede or even halt the litigation. It would privilege the interests of Movants above those of Plaintiffs, the public (whose interests are particularly implicated given that this is a class action), and the Court. Accordingly, Movants' Motion for Protective Order (Doc. 444) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Movants' Motion for Protective Order (Doc. 444) and request therein for oral argument on the Motion are **DENIED**. Movants' depositions must take place within the target period recently identified by Plaintiffs.

IT IS SO ORDERED.

Date: May 19, 2023

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE