UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley |
| ALL ACTIONS. | ) ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| MFS Series Trust I, et al., | ) | Case No. 2:21-cv-05839-ALM-KAJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FirstEnergy Corp., et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FirstEnergy Corp., et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF THE MOVING PARTIES' MOTION TO
COMPEL DISCOVERY REGARDING FIRSTENERGY'S INTERNAL INVESTIGATION
**[REDACTED]**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   RELEVANT FACTS ...........................................................................................3

      A.    Underlying Criminal Allegations and Convictions....................................3

      B.    FirstEnergy's Most Urgent Need for the Internal Investigation Was the
            Business Purpose of Obtaining Its Outside Auditor's Sign-Off.............5

      C.    FirstEnergy Publicly Revealed Additional Information from Its Internal
            Investigation................................................................................................7

            1.    All Termination-Related Information FirstEnergy Revealed Came
                  from Its Internal Investigation ....................................................7

            2.    All the Information Set Forth in the DPA Came from FirstEnergy's
                  Internal Investigation ..................................................................8

      D.    FirstEnergy Continues to Reveal Information from Lawyers and
            Additional Investigative Conclusions Selectively ...................................9

III.  RELEVANT LAW AND ARGUMENT .........................................................12

      A.    FirstEnergy Cannot Meet Its Burden ..................................................12

As the party asserting attorney-client privilege, FirstEnergy bears the burden of not only establishing the existence of the privilege, but also that it has not waived the protection. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (enumerating privilege elements, including element of nonwaiver). FirstEnergy has failed to meet its burden.

      B.    The Primary Purposes of FirstEnergy's Internal Investigation Were
            Business-Related................................................................................13

FirstEnergy's internal investigation was primarily conducted for business purposes, which are not afforded protection under the attorney-client privilege or the work-product doctrine. "To be privileged, the communication must have the 'primary purpose of soliciting legal, rather than business advice.'" *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007). Here, the primary business purposes of the internal investigation were to: (1) assuage PwC in connection with the Company's required SEC filings, and evaluate the effectiveness of the Company's internal controls; (2) gather facts to make human-resources decisions (including the retention or termination of employees); (3) protect FirstEnergy's access to outside capital at manageable rates; and (4) gather facts to use as a bargaining chip with the government. FirstEnergy has not met its burden of establishing that the primary purpose of its investigation was anything other than business in nature.

**Page**

C. FirstEnergy's Nearly Complete Disclosure of Its Internal Investigation
Waived Any Attorney-Client Privilege or Work-Product Protections .................18

"Attorney-client privilege is not absolute, and 'if a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels.'" *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 2023 WL 3258586, at *3 (S.D. Ohio May 4, 2023). Reflecting this overarching principle, "[a]s a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Waiver of work-product protection occurs when "the original disclosure . . . [is] to an 'adversary.'" *Id.* at 306 n.28. Accordingly, even if information relating to FirstEnergy's internal investigation were privileged or otherwise protected, FirstEnergy waived those protections by disclosing facts concerning the internal investigation to numerous third parties.

1. FirstEnergy's Disclosures to PwC Waived Any Protections ....................19

FirstEnergy's nearly complete disclosure of the internal investigation to its outside auditor undermines both attorney-client privilege and the work-product protection. *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5867268, at *10 (W.D. Tenn. Oct. 5, 2016); *In re King Pharm., Inc. Sec. Litig.*, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005). "[A]ny information provided to [PwC] cannot have been furnished 'in anticipation of litigation' but was furnished to [PwC] in its capacity as an outside auditor." *First Horizon*, 2016 WL 5867268, at *10. The fact that FirstEnergy not only failed to properly safeguard the purportedly privileged material, but instead voluntarily revealed that material to PwC, eviscerates any possible protection FirstEnergy had concerning the internal investigation.

2. FirstEnergy's Additional Disclosures in This Litigation Waived
Any Protections Related to the Internal Investigation ..............................20

Testimony scripts created by counsel and produced by FirstEnergy in this litigation revealed extensive information from its internal investigation, including apparent quotes from investigative materials and witness interviews, numerous facts, and most importantly, the lawyers' ultimate conclusions and inferences regarding employees' intent, knowledge, candor, and violations of corporate policy. Revealing "examples" of supposedly privileged information is the antithesis of treating such information "'like jewels—if not crown jewels.'" *LifeBio*, 2023 WL 3258586, at *3. FirstEnergy's numerous disclosures eliminate any possible nonwaiver argument; *see also Columbia/HCA Healthcare*, 293 F.3d at 302 ("we reject the concept of selective waiver, in any of its various forms"); *United States v. Paulus*, 2021 WL 4494607, at *4 (E.D. Ky. Sept. 30, 2021) ("[Third-party's] partial disclosure of the consultant's findings waives any privilege to those findings and necessitates disclosure of the balance of the findings.").

**Page**

3.      FirstEnergy's Counsel's Conflicting Positions During Depositions Further Demonstrate the Implausibility of the Company's Privilege Assertions ................................................................................................. 23

FirstEnergy's counsel has not only provided contradictory instructions to deponents during the course of depositions, but have wrongly claimed that facts conveyed by counsel are privileged. "'[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.'"  *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).  The arbitrariness of what FirstEnergy has revealed and what it has withheld, both during depositions and through the meet-and-confer process, demonstrates the implausibility of its privilege assertions.

D.      Having Wielded the Internal Investigation as a Sword, FirstEnergy Cannot Now Shield It from Discovery ............................................................................. 25

"'[L]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case' or, more simply, cannot use the privilege as 'a shield and a sword.'" *In re United Shore Fin. Servs.*, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (quoting *In re Lott*, 424 F.3d 446, 452–53 (6th Cir. 2005)).  Yet, FirstEnergy is attempting to do exactly that. "When a party reveals privileged communications or otherwise waives the protections of the attorney-client privilege, 'that party waives the privilege as to all communications on the same subject matter.'" *Mooney ex rel. Mooney v. Wallace*, 2006 WL 8434638, at *8 (W.D. Tenn. July 12, 2006) (quoting *United States v. Skeddle*, 989 F. Supp. 905, 908 (N.D. Ohio 1997)).  Accordingly, any attorney-client privilege concerning the subject matter is waived in its entirety.  *See, e.g.*, *Crestwood Farm Bloodstock LLC v. Everest Stables Inc.*, 2011 WL 13156795, at *3 (E.D. Ky. Jan. 25, 2011) (where plaintiff's attorney had obtained information only from plaintiff regarding whether agreement permitted an exception, plaintiff could not rely on that information "without opening discovery on other communications to and from [the attorney] on the [exception issue]," as the situation "present[ed] the classic sword and shield privilege metaphor") (citing *Lott*, 424 F.3d at 454).

IV.     CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*,
  240 F.R.D. 96 (S.D.N.Y. 2007) ...................................................................14, 18

*Antoine v. Atlas Turner, Inc.*,
  66 F.3d 105 (6th Cir. 1995) .............................................................................24

*Calendar Rsch. LLC v. StubHub, Inc.*,
  2019 WL 11558873 (C.D. Cal. July 25, 2019)....................................................13

*Cheryl & Co. v. Krueger*,
  2019 WL 6521956 (S.D. Ohio Dec. 4, 2019) .....................................................12

*First Horizon Nat'l Corp. v. Houston Cas. Co.*,
  2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016)................................................5, 19

*Futhey v. United Transp. Union Ins. Ass'n*,
  2015 WL 2446169 (N.D. Ohio May 20, 2015).....................................................13

*Hilton-Rorar v. State & Fed. Commc'ns Inc.*,
  2010 WL 1486916 (N.D. Ohio Apr. 13, 2010).....................................................24

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
  293 F.3d 289 (6th Cir. 2002) .................................................................. *passim*

*In re Grand Jury Subpoena, 93-2-1-01*,
  9 F.3d 107, 1993 WL 453395 (6th Cir. 1993) ................................................25, 26

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y. 1996) ......................................................................14

*In re King Pharms., Inc. Sec. Litig.*,
  2005 WL 8142328 (E.D. Tenn. Sept. 21, 2005) ..................................................19

*In re Lott*,
  424 F.3d 446 (6th Cir. 2005) .......................................................................25, 26

*In re OM Sec. Litig.*,
  226 F.R.D. 579 (N.D. Ohio 2005) ..............................................................14, 21, 22

*In re United Shore Fin. Servs, LLC*,
  2018 WL 2283893 (6th Cir. Jan. 3, 2018) ..........................................................25

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 2587784 (D.N.J. June 24, 2021) ..........................................................15

4872-2946-3147.v2

**Page**

*In re VisionAmerica, Inc. Sec. Litig.*,
    2002 WL 31870559 (W.D. Tenn. Dec. 18, 2002) .................................................................12

*Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*,
    217 F.R.D. 525 (D. Kan. 2003)..........................................................................................24

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
    295 F.R.D. 28 (E.D.N.Y. 2013),
    *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014)..................................................................13, 15

*LifeBio, Inc. v. Eva Garland Consulting, LLC*,
    2023 WL 3258586 (S.D. Ohio May 4, 2023) .................................................................18, 20

*McNeil v. Mount Carmel Health Sys.*,
    2021 WL 5235103 (S.D. Ohio Nov. 10, 2021).................................................................13, 14

*Mooney ex rel. Mooney v. Wallace*,
    2006 WL 8434638 (W.D. Tenn. July 12, 2006) .................................................................25

*Reed v. Baxter*,
    134 F.3d 351 (6th Cir. 1998) ...............................................................................................12

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)..............................................................................................25

*United States v. Dakota*,
    197 F.3d 821 (6th Cir. 1999) ...............................................................................................12

*United States v. Paulus*,
    2021 WL 4494607 (E.D. Ky. Sept. 30, 2021),
    *mandamus denied by*, 31 F.4th 520 (6th Cir. 2022)
    .................................................................................................................................................21

*United States v. Skeddle*,
    989 F. Supp. 905 (N.D. Ohio 1997)......................................................................................25

*Zigler v. Allstate Ins. Co.*,
    2007 WL 1087607 (N.D. Ohio Apr. 9, 2007).......................................................................13

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 30(b)(6).............................................................................................................9, 20, 24, 26

Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund, as well as Direct Action Plaintiffs (collectively, the "Plaintiffs"), together with defendants Michael J. Dowling ("Dowling") and Charles E. Jones ("Jones") (collectively, the "Moving Parties"),[1] respectfully submit this memorandum of law in support of their Motion to Compel Discovery Regarding FirstEnergy's Internal Investigation.[2]

## I.     INTRODUCTION

In July 2020, FirstEnergy Corp. ("FirstEnergy" or the "Company") commenced an internal investigation into the matters raised in the Criminal Complaint and supporting 80-page affidavit, primarily for business, not legal, purposes.[3]  FirstEnergy has strategically alternated between sharing

---

[1]    Pursuant to the Court's Order (ECF 474) and as agreed by the parties to be the most efficient way to present their privilege disputes (ECF 473), Mr. Jones and Mr. Dowling join in this consolidated omnibus motion's requests for relief and the substantive legal arguments in this supporting memorandum only.  Mr. Jones and Mr. Dowling do not adopt the factual assertions in this memorandum.

[2]    "Direct Action Plaintiffs" consist of Plaintiffs in *MFS Series Trust I, et al. v. FirstEnergy Corp., et al.*, No. 2:21-cv-05839-ALM-KAJ, and *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp., et al.*, No. 2:22-cv-00865-ALM-KAJ.  Counsel for Jones and Dowling and Direct Action Plaintiffs continue in good faith the meet-and-confer process with counsel for FirstEnergy as it pertains to deficiencies with FirstEnergy's privilege logs along with other related privilege issues.  Pursuant to the Court's prior Order (ECF 474), since those meet-and-confers have not yet concluded, counsel for Jones and Dowling and Direct Action Plaintiffs do not raise those issues herein and hereby reserve their right to bring these disputes to the Court pursuant to the Court's established joint status report protocol (ECF 333), to the extent necessary should the meet-and-confer process with counsel for FirstEnergy conclude with ongoing disputes.

[3]    *See* Defendant Donald R. Schneider's Reply in Support of Motion to Dismiss ("MTD Reply"), Ex. A (*United States v. Householder*, No. 1:20-cr-00077, Affidavit in Support of a Criminal

or withholding information concerning that investigation. When it needed its external auditor's imprimatur for the Company's SEC Form 10-Q filing in August 2020, FirstEnergy revealed to PricewaterhouseCoopers LLP ("PwC") virtually everything from the internal investigation – including interview memoranda and mental impressions about the reliability of its executives. When FirstEnergy sought a deal with the government to resolve the criminal proceedings, the Company assured the government it had conducted a thorough internal investigation and agreed to disclose any information the government requested. And when it wanted to portray itself as a good corporate citizen cleaning house, FirstEnergy publicly disclosed facts and conclusions from its internal investigation to proclaim Company policies were violated and bad actors eliminated. And in this litigation, FirstEnergy has drawn from its internal investigation to partially inculpate Jones and Dowling while attempting to partially exculpate itself and others by asserting the purported absence of any evidence against others at the Company.

At bottom, FirstEnergy's varied privilege and work-product assertions regarding its internal investigation fail because it cannot meet its burden of establishing that these protections apply and have not been waived. Rather than exclusively or primarily seeking legal advice or preparing for litigation, FirstEnergy conducted its internal investigation primarily for business purposes. Indeed, in light of the nature of the issues addressed in the investigation, FirstEnergy's statements concerning the investigation, and the Company's course of conduct, it is clear FirstEnergy would have conducted the investigation for business reasons regardless of actual or potential legal proceedings. For this and other reasons, information relating to or purportedly uncovered during the internal investigation is not protected by the attorney-client privilege or the work-product doctrine. Even if that information had been protected, FirstEnergy repeatedly waived any protections through

---

Complaint, ECF 5 ("Criminal Complaint") (S.D. Ohio July 21, 2020)), ECF 192-2 at PageID 4344-425.

its many deliberate disclosures and affirmative uses of information and conclusions from the investigation, including by freely revealing critical aspects of the internal investigation to third parties and the public. Accordingly, as set forth below, the Moving Parties respectfully request that the Court enter an order holding: (1) FirstEnergy's internal investigation is not entitled to attorney-client privilege or work-product protections in the first place; (2) even if FirstEnergy's internal investigation had been entitled to any such protections, FirstEnergy has waived them; and (3) FirstEnergy must produce all previously withheld documents, witnesses must answer all questions (past and future) related to the internal investigation, and FirstEnergy must withdraw all asserted protections that are reflected in PwC's document productions.

## II.    RELEVANT FACTS

### A.    Underlying Criminal Allegations and Convictions

The Court is well aware of the underlying facts here, and the Moving Parties will not belabor the relevant criminal allegations, guilty pleas, and recent guilty verdicts, other than: (1) to remind the Court of the exceptionally detailed Criminal Complaint that the government unsealed on July 21, 2020; and (2) to highlight the striking parallels between the Criminal Complaint and the Statement of Facts that FirstEnergy admitted as part of its Deferred Prosecution Agreement ("DPA"). *See* MTD Reply, Ex. A (Criminal Complaint), ECF 192-2 at PageID 4348-424; Status Report, Ex. B to Ex. 5 (*United States v. FirstEnergy Corp.*, No. 1:21-cr-00086, DPA, ECF 3 (S.D. Ohio July 22, 2021)), ECF 259-5 at PageID 6013-43 (both identifying a bailout for FirstEnergy's nuclear plants as the primary motive for the Larry Householder ("Householder") corruption; both identifying HB6's decoupling provision as guaranteeing fixed revenues for FirstEnergy entities as an additional motive; both identifying Generation Now as a Householder-controlled 501(c)(4) entity; both identifying approximately $59 million in dark money payments from FirstEnergy entities to Generation Now as primary funding for the corrupt enterprise; both relying extensively on text messages to and from

- 3 -

Householder; both quoting FirstEnergy's HB6-related statements in SEC filings; both quoting Jones's HB6-related public statements).[4]  The only real distinction between the documents is that the text messages quoted in the Criminal Complaint involved individuals charged in the criminal proceedings and the text messages quoted in the DPA involved individuals (Jones and Dowling) through whom FirstEnergy admitted it committed its crime.  MTD Reply, Ex. A (Criminal Complaint), ECF 192-2 at PageID 4348-424; Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6013-43.

The exceptional details in the government's Criminal Complaint, and the supporting evidence readily available to FirstEnergy (primarily bank records, phone records, text messages, and emails), distinguish this situation from nearly all other alleged corporate crimes.  For white-collar crimes, it is highly unusual, if not unprecedented, for the government to present such extensive evidence prior to a single indictment or plea.  In response, FirstEnergy conducted an investigation, but its statements and actions show that it did so primarily for business reasons, or at a minimum would have done so for business reasons regardless of any possible litigation.  Specifically, the primary purposes for its internal investigation were business-related: retaining or firing employees, assuaging outside auditors, preserving access to capital, and creating a bargaining chip with the government.

### B. FirstEnergy's Most Urgent Need for the Internal Investigation Was the Business Purpose of Obtaining Its Outside Auditor's Sign-Off

FirstEnergy's second financial quarter ended on June 30, 2020, only three weeks before the government unsealed its Criminal Complaint.  This meant FirstEnergy's first priority was

---

[4]    Unless otherwise noted, all "Ex._" references are to the exhibits attached to the Declaration of Jason A. Forge in Support of the Moving Parties' Motion to Compel Discovery Regarding FirstEnergy's Internal Investigation, filed concurrently herewith.  References to "JD_" are to exhibits introduced by defendants Jones and Dowling.  Additionally, unless otherwise noted, emphasis is added and citations are omitted.

- 4 -

convincing its independent auditor, PwC, to bless the Company's SEC Form 10-Q disclosures surrounding the criminal allegations.  This was no mean feat given the circumstances, and it required several critical (and some quite questionable) representations to PwC:





On August 13, 2020, FirstEnergy's investigation team advised PwC ███████████████ ███████████████████████ *Id.* at -017. On August 14, 2020, defendant Donald T. Misheff (Chairman of the "Special Investigation Committee" and member of the Audit Committee) confirmed for PwC that FirstEnergy's Special Investigation Committee ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* at -020. On August 16, 2020, PwC told Misheff and FirstEnergy executive defendants K. Jon Taylor and Jason J. Lisowski ████████████████████████████████████████████████████████████ ███████████████████████. The next day, on August 17, 2020, FirstEnergy filed its SEC Form 10-Q for the quarter ending June 30, 2020.

On October 29, 2020, two months after concluding its investigative procedures and assuring PwC that there was no reason it would be inappropriate to rely on representations by Jones, FirstEnergy fired Jones, Dowling, and defendant Dennis M. Chack, and disclosed: "During the course of the Company's previously disclosed internal review related to the government

investigations, the Independent Review Committee of the Board determined that these executives violated certain FirstEnergy policies and its code of conduct."[5]

### C. FirstEnergy Publicly Revealed Additional Information from Its Internal Investigation

#### 1. All Termination-Related Information FirstEnergy Revealed Came from Its Internal Investigation

On November 8, 2020, less than two months after deploying Reffner to assure PwC in connection with FirstEnergy's August 2020 Form 10-Q, the Company "separated" him along with Ebony Yeboah-Amankwah ("Yeboah-Amankwah"), the Company's General Counsel and Chief Ethics Officer, along with several other employees and in-house counsel. ¶184.[6] Shortly thereafter, on November 19, 2020, FirstEnergy disclosed certain conclusions its lawyers had reached regarding Reffner, Yeboah-Amankwah, and others. Specifically, FirstEnergy disclosed that these individuals "did not reasonably ensure that relevant information was communicated within our organization and not withheld from our independent directors, our Audit Committee, and our independent auditor." ¶190. FirstEnergy further revealed that this undisclosed relevant information related to a $4.3 million payment to the incoming Chairman of the Public Utilities Commission of Ohio ("PUCO"), Samuel C. Randazzo ("Randazzo"). *Id.* Although this information was not expressly attributed to FirstEnergy's lawyers at the time, defendant Julia Johnson ("Johnson") – a former director and member of the Special Investigation Committee – later confirmed during her deposition that all this information had come from FirstEnergy's lawyers, not its Board of Directors: "That information was provided to us as a part of the special investigation committee and the information was provided by

---

[5] *See* Press Release, FirstEnergy, FirstEnergy Announces Leadership Transition (Oct. 29, 2020), https://investors.firstenergycorp.com/investor-materials/news-releases/news-details/2020/FirstEnergy-Announces-Leadership-Transition/default.aspx.

[6] Unless otherwise noted, all "¶_" or "¶¶_" citations are to the Consolidated Complaint for Violations of the Federal Securities Laws, ECF 72 at PageID 1545-674.

lawyers . . . ."  Ex. 3 (Johnson Tr. Vol. II) at 546:11-13; 558:17-18 ("My position is that the facts

that were provided to us by our lawyers pursuant to what my lawyer [today] had said is privileged.").

In fact, Johnson confirmed that the firings of Jones, Dowling, and others for violations of Company

policies were based solely on information lawyers had provided:

> [CLASS COUNSEL:] Q.  Was this text – the text messages set forth here, were they
> a basis for the termination of Mr. Jones?
>
> [FIRSTENERGY'S COUNSEL:] Objection.  I instruct you not to answer and reveal
> the privileged information or discussions with counsel.  If you can answer outside of
> the internal investigation, go ahead.
>
> [THE WITNESS:] A.   All the information that I received in making our
> determination was a part of that investigation.

*Id.* at 508:7-25; *see also id*. at 541:17-543:13.

## 2.  All the Information Set Forth in the DPA Came from FirstEnergy's Internal Investigation

Less than a year after completing its internal investigation, FirstEnergy entered into the DPA

with the United States Attorney's Office for the Southern District of Ohio (the "USAO-SDOH").

Among other things, the agreement set forth a series of obligations, many of which concerned

FirstEnergy's past and anticipated cooperation, which the agreement described as "substantial,"

including an assurance that FirstEnergy had "conduct[ed] a thorough internal investigation," a

commitment to disclose "any information . . . requested by the government," and agreement to a

detailed Statement of Facts that largely paralleled the Criminal Complaint that the government had

unsealed almost exactly a year earlier.  Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6002,

6013.

FirstEnergy's Board authorized FirstEnergy to enter into the DPA, including all the many

facts and admissions that FirstEnergy chose to disclose in it.  Ex. 3 (Johnson Tr. Vol. II) at 510:19-

22.  Former FirstEnergy director Johnson, admitted that all the information FirstEnergy disclosed to

its adversary (the USAO-SDOH) and to the general public came from its internal investigation, on

which FirstEnergy relied as the basis to instruct Johnson (and other witnesses) not to answer any questions about this information:

> [CLASS COUNSEL:] Q.  And are you aware of the admissions of wrongdoing that FirstEnergy made in this DPA?
>
> [THE WITNESS:] A.  Yes.
>
> [CLASS COUNSEL:] Q.  And what is your understanding of those admissions?
>
> [FIRSTENERGY'S COUNSEL]: Object, I object and instruct you to leave out from your answer any understandings that you gained from communications with counsel.
>
> [THE WITNESS:] A.  Everything that I know about the DPA is information that I obtained from discussions with our lawyers.

Ex. 3 (Johnson Tr. Vol. II) at 482:1-11.  Further, Johnson acknowledged that the investigation used lawyers not so much as legal advisors, but more as fact finders so the Board could make the above-referenced business decisions to terminate employees and enter into the DPA:

> [THE WITNESS:] A.  As a board member and an independent review committee member, all of the questions that I had were directed to the lawyers.
>
> [DOWLING'S COUNSEL:] Q.  For what purpose did you direct your questions to the lawyers?
>
> [THE WITNESS:] A.  So that they could do the fact-finding on whatever the issue was. I did not independently do the fact-finding.

*Id.* at 397:7-15.

### D. FirstEnergy Continues to Reveal Information from Lawyers and Additional Investigative Conclusions Selectively

On May 19-20, 2022, and December 6-7, 2022, FirstEnergy provided deposition testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the December dates were necessitated by FirstEnergy's lack of preparedness for the May deposition (Opinion and Order, ECF 333 at PageID 7122-31)).  The testimony from both 30(b)(6) witnesses relied on scripted answers FirstEnergy's lawyers had given them to then share with Plaintiffs and all other parties. *See, e.g.*, Ex. 4 (Ashton Tr. Vol. I) at 24:24-25:17; 27:10-23; 137:7-21; 138:24-139:3.  In fact, FirstEnergy

intentionally chose a 30(b)(6) witness with no personal knowledge of the deposition topics so the only information she could provide would be the information FirstEnergy's lawyers had scripted for her. *Id.* at 33:22-34:4; 76:22-77:2. Less than two years after representing in August 2020 to PwC ████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████, FirstEnergy's lawyers told the witness to share the investigative conclusion that Jones and Dowling had each conspired with FirstEnergy to commit honest services wire fraud. Ex. 4 (Ashton Tr. Vol. I) at 54:18-55:20.

Among the materials FirstEnergy's lawyers created for FirstEnergy's witnesses to use to answer questions regarding topics about which they had no personal knowledge were two documents that presented extensive conclusions and selected allegedly supporting facts regarding

█████████████████████████████████████████████████████████████████████

█████ – again, according to former FirstEnergy director Johnson all this information came from FirstEnergy's internal investigation. Ex. 3 (Johnson Tr. Vol. II) at 508:23-25 ("All the information that I received in making our [termination and separation] determination[s] was a part of that investigation."). According to the scripts prepared by FirstEnergy's lawyers, this extensive revelation of information elicited by the internal investigation included:





FirstEnergy selectively chose to disclose other information from its internal investigation to

cast the Company and its Board in a better light, stating:



This self-described ████████ to terminate Jones and Dowling appears irreconcilable with the internal investigators' representations to PwC in August 2020 ████████████████

████████████████████████████████. FirstEnergy is nonetheless invoking its internal investigation to defend its actions by asserting what the Board learned for the first time "during the course of the Company's internal review related to the government investigations."

## III.   RELEVANT LAW AND ARGUMENT

### A.   FirstEnergy Cannot Meet Its Burden

Though Moving Parties bring this motion, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

> The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). Likewise, "federal courts in this Circuit require the proponent of the privilege to carry the burden of showing nonwaiver as an element of attorney-client privilege. *See In re VisionAmerica, Inc. Sec. Litig.*, 2002 WL 31870559, at *1-*2 (W.D. Tenn. Dec. 18, 2002) (collecting cases and noting that the Sixth Circuit has favorably cited cases holding that the party claiming privilege must also show nonwaiver); *Cheryl & Co. v. Krueger*, 2019 WL 6521956, at *2 (S.D. Ohio Dec. 4, 2019).

As the Sixth Circuit has repeatedly observed, "[c]laims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289,

- 12 -

294 (6th Cir. 2002) (some alterations in original). Accordingly, "[t]he privilege 'applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice.'" *Id*.

### B. The Primary Purposes of FirstEnergy's Internal Investigation Were Business-Related

A "'communication is not privileged simply because it is made by or to a person who happens to be an attorney.' To be privileged, the communication must have the '*primary* purpose of soliciting legal, rather than business, advice.'" *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) (emphasis in original). This same principle applies to internal investigations. *See, e.g.*, *Calendar Rsch. LLC v. StubHub, Inc*., 2019 WL 11558873, at *4 (C.D. Cal. July 25, 2019) ("courts have declined to extend the protections of the attorney-client privilege where the purpose of a due diligence investigation was to obtain factual data for a business purpose"). In this regard, "[d]espite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc*., 295 F.R.D. 28, 44-46 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).

In addition, to constitute work-product protected by Federal Rule of Civil Procedure 26(b)(3), FirstEnergy "bears the burden of showing that the investigation and report were created in anticipation of litigation and not just for business purposes." *Futhey v. United Transp. Union Ins. Ass'n*, 2015 WL 2446169, at *1-*2 (N.D. Ohio May 20, 2015). The inquiry "centers on whether documents were 'prepared or obtained because of the prospect of litigation[,]' as opposed to those 'prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes[.]" *McNeil v. Mount Carmel Health Sys.*, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021) (Jolson, M.J.) (alterations in original). Accordingly, "'if the item would have been prepared in substantially the same manner, regardless of the anticipated

litigation, the [work-product] doctrine does not apply.'" *Id.*; *see also In re OM Sec. Litig.*, 226 F.R.D. 579, 585-87 (N.D. Ohio 2005) (documents prepared in connection with audit committee's investigation of corporation's inventory problems, which began after shareholder litigation had commenced, would have been prepared regardless of the possibility of additional litigation, and therefore documents were not protected by work-product doctrine).[7]

FirstEnergy has not attempted to establish, let alone succeeded in establishing, that the primary purpose of its internal investigation was obtaining legal advice, as opposed to gathering facts for a series of predominantly business purposes and decisions. Similarly, FirstEnergy has not demonstrated that it would ***not*** have conducted the internal investigation were it not for the prospect of litigation. Here, as in *Kidder Peabody*, the investigation was instead required for pressing business purposes and would have been undertaken regardless of whether litigation or criminal proceedings were threatened or had commenced.[8]

The first purpose of the internal investigation was to assuage PwC so FirstEnergy could complete its required SEC filings, as well as to comply with the Company's obligation to assess the sufficiency of its internal controls. This is squarely within the scope of its regularly conducted business activities. Just like in *OM*, FirstEnergy's audit committee needed the information gathered

---

[7]   *See also Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*, 240 F.R.D. 96, 106-109 (S.D.N.Y. 2007) (documents created by law firm hired to investigate alleged foreign currency trading scheme and make recommendations for changes were not protected by the work-product doctrine where party asserting privilege failed to present any testimony that the documents would not have been prepared without the threat of litigation); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 463, 466 (S.D.N.Y. 1996) (documents generated during internal investigation of defendant corporation regarding scheme by trader to inflate earnings reports were not protected work-product since the documents were not created principally or exclusively to assist in contemplated or ongoing litigation; inquiry was required for pressing business purposes and thus would have been undertaken regardless of whether litigation was threatened).

[8]   Because the considerations for assessing privilege and work-product protection overlap considerably, though they are not identical, Moving Parties address them together.

in the internal investigation, and PwC's resulting cooperation, regardless of the possibility of litigation.

That FirstEnergy later admitted to deficiencies in its internal controls following revelations of its unlawful conduct further demonstrates the internal investigation would have occurred regardless of any litigation.  In its Form 10-Q issued on November 19, 2020 – three months after FirstEnergy represented to PwC that the Company's investigation was "complete" – FirstEnergy admitted "its disclosure controls and procedures were not effective as of September 30, 2020" because the Company "did not maintain an effective control environment as our senior management failed to set an appropriate tone at the top."  As FirstEnergy was *required* to evaluate the effectiveness of its internal controls, the Company no doubt would have undertaken an investigation into the facts in connection with the Criminal Complaint *regardless* of any anticipated or actual legal proceedings. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 2587784, at *11 (D.N.J. June 24, 2021) ("[I]rrespective of pending litigation against the Company, and even irrespective of malfeasance at the top of the organization, Valeant, had it discovered financial irregularities (even in the absence of investigations or media scrutiny), would have taken – and was obligated to take – the same steps.").

The second purpose of the internal investigation was to gather facts for a series of human resource decisions, starting with whether to retain or fire the Company's Chief Executive Officer ("CEO"), Jones.  As in *Koumoulis*, this human resource work is clearly part of the day-to-day operation of a business, as opposed to a privileged legal activity.  And similar to *Calendar Research*, FirstEnergy director and Independent Review Committee ("IRC") member Johnson (who was also a member of the Special Investigation Committee) has already testified that the █████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████.  Another FirstEnergy director and Committee member,

defendant Thomas N. Mitchell ("Mitchell"), testified ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.

This Court has already reminded the parties that "[a] party asserting privilege must provide sufficient information to allow a court to determine whether the communications in question were in fact confidential communications relating to legal advice." Opinion and Order, ECF 378 at PageID 9011. Yet, throughout two full days of testimony, Johnson never identified a single category of legal *advice* that the Board sought from the internal investigation. Even the many instructions not to answer questions were completely untethered to any indication or condition that the answer would reveal a communication *concerning legal advice*: "I'm going to object and I'm going to instruct you to leave out any communications or information you received from your lawyers." Ex. 3 (Johnson Tr. Vol. II) at 348:21-23.[9] In fact, over the course of four days of testimony from two directors, the only time legal advice was a condition of an instruction not to answer was during questioning about a meeting that occurred the week after Householder and several of his alleged coconspirators were arrested – before formation of the IRC. ██████████████████████████.

The third and fourth purposes of the internal investigation were intertwined. The third is that FirstEnergy ████████████████████████████████████████████

██████████████████████████, which is clearly a business purpose. To accomplish this crucial objective, FirstEnergy needed to strike a deal with the government, so the fourth purpose of the investigation was to gather evidence and facts to use as a bargaining chip with the government. Indeed, FirstEnergy expressly used its internal investigation as a bargaining chip with the government, so much so that the very first form of "substantial cooperation" listed in the DPA was

---

[9]   *See also id.* at 359:16-18; 365:1-5; 365:12-14; 392:7, 15, 20; 393:1, 10, 17; 394:1-2; 395:2-5; 398:18, 23; 472:19-21; 482:6-8; 501:16-17; 502:24-503:1, 17-18; 507:7-16; 508:4-5, 10-14, 19-22; 541:12-15; 541:24-542:1; 543:8-10; 545:3-6; 546:8-10; 549:9-14; 553:9-12; 554:12-15; 558:5-9.

"conducting a thorough internal investigation."  Status Report, Ex, 5 (DPA), ECF 259-5 at PageID at 6002.  Therefore, this was also predominantly a business purpose.

Two final indications that the primary purpose of FirstEnergy's internal investigation was not legal advice are that: (1) FirstEnergy shared with others essential information from it, which, as set forth below, is completely inconsistent with a privileged investigation; and (2) FirstEnergy seemingly made no effort to recuse from the investigation several of the very people involved in the actions being investigated, which would be of paramount significance in an investigation for legal purposes.  For example, on or about February 23, 2021, ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████.  Yet, only three months later, FirstEnergy fired ████████████████████████████████████████ ███████████████████████████████████████████████████████████████.  Also, as mentioned above, ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████.  Only three months later, FirstEnergy "separated" ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  These facts further demonstrate that the business purpose of obtaining PwC's sign-off as quickly as possible was the primary reason for FirstEnergy's internal investigation, as this urgency led to such a hasty assembly of an investigation team that there was no effort to exclude from the team the very individuals whose own actions fell within the scope of the investigation.

- 17 -

At bottom, FirstEnergy cannot carry its burden to establish that *the* primary purpose of its internal investigation was legal advice because that simply was not *the* primary purpose.  Further, with or without possible litigation, FirstEnergy had to conduct its internal investigation to satisfy its outside auditor and comply with SEC filing requirements, as well as to determine which employees to retain and which to fire – all prototypical business purposes.  As the court in *Allied Irish Banks* observed, "the use to which the [investigative] Report was ultimately put provides further evidence of why it would have been generated in the same manner irrespective of the potential for litigation." 240 F.R.D. at 108.  Specifically:

> According to AIB's Group Chief Executive, the AIB board intended the Report to be used to "address[] culpability, accountability, control systems and organizational issues."  As noted, the Board publicly fired six individuals identified in the Report as "directly responsible for oversight of [inculpated foreign currency trader] Mr. Rusnak. . . . "[C]onsistent with the findings and recommendations of the report," the Board also adopted a series of "organisational changes" to its "strategy and group structure" as well as to its corporate governance.  These actions evidence the importance of the . . . Ludwig investigation as a corporate management tool, not as a mechanism to assist in expected litigation.

*Id.* (certain alterations in original and added).  So too, here.

Under the circumstances here, any legal purpose for the internal investigation was a distant second to these business considerations.

### C.    FirstEnergy's Nearly Complete Disclosure of Its Internal Investigation Waived Any Attorney-Client Privilege or Work-Product Protections

"Attorney-client privilege is not absolute, and 'if a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels.'" *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 2023 WL 3258586, at *3 (S.D. Ohio May 4, 2023). "As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *Columbia/HCA*, 293 F.3d at 294. Waiver of work-product protection occurs when "the original disclosure . . . [is] to an 'adversary.'"

- 18 -

*Id.* at 306 n.28. FirstEnergy waived both attorney-client privilege and work-product protection by disclosing to third parties information relating to the internal investigation.

### 1. FirstEnergy's Disclosures to PwC Waived Any Protections

Rather than safeguard any privileged material (assuming for argument's sake it was privileged), FirstEnergy freely, and strategically, shared nearly all information from its internal investigation with its outside auditor, as well as critical aspects of it with the public and the Company's adversaries here. Thus, even if the internal investigation had a primarily legal purpose (which it demonstrably did not) or was conducted because of ongoing or anticipated litigation (which it demonstrably was not), FirstEnergy waived any otherwise applicable protections. Though cases outside the Sixth Circuit are mixed on whether disclosure of protected information to an outside auditor waives both attorney-client privilege and work-product protection, the only two district courts within the Sixth Circuit to address this issue both unequivocally held that disclosure of privileged communications to outside auditors renders both inapplicable. *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5867268, at *10 (W.D. Tenn. Oct. 5, 2016); *In re King Pharms., Inc. Sec. Litig.*, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005). The court in *King Pharmaceuticals*, for example, determined the company's disclosure of information to its outside auditor (PwC) was not protected by the work-product doctrine, as "King furnished documents to PWC ostensibly to enable PWC to prepare accurate audit reports and financial statements which in turn would have been publicly disseminated . . . ." 2005 WL 8142328, at *3.

Here, just as in *King Pharmaceuticals* and *First Horizon*, "any information provided to [PwC] cannot have been furnished 'in anticipation of litigation' but was furnished to [PwC] in its capacity as an outside auditor." *First Horizon*, 2016 WL 5867268, at *10. Equally important, this was not a superficial or summary-level disclosure, but rather a virtually complete reveal, spanning the most critical aspects of any investigation, █████████████████████████

- 19 -



. The fact that FirstEnergy is asserting that large swaths of information it shared with PwC are purportedly privileged ██████████ ████████████████████████████████████████) confirms that FirstEnergy made precisely the kinds of extensive disclosures to an independent auditor that eviscerate any possible protections regarding the internal investigation, and also demonstrates the unreasonableness of FirstEnergy's privilege assertions regarding *PwC's* materials.  At the same time, the fact that FirstEnergy withheld information (albeit only eight documents) from PwC further confirms that PwC was *not* assisting in the rendering of any *legal advice*.

### 2. FirstEnergy's Additional Disclosures in This Litigation Waived Any Protections Related to the Internal Investigation

As set forth above, FirstEnergy's Rule 30(b)(6) testimony scripts revealed extensive information from its internal investigation, including apparent quotes from investigative materials and witness interviews, numerous facts, and most importantly, the lawyers' ultimate conclusions and inferences regarding employees' intent, knowledge, candor, and violations of corporate policy – all of which FirstEnergy's 30(b)(6) witnesses and directors testified came from counsel.  FirstEnergy even used the phrase "████████████" when revealing such information: ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████.  Revealing ████████████ of supposedly privileged information is the antithesis of treating such information "'like jewels – if not crown jewels.'"  *LifeBio*, 2023 WL 3258586, at *3.  It is simply not a luxury one can enjoy and keep the privilege.  *See also Columbia/HCA*, 293 F.3d at 302 ("we reject the concept of selective waiver, in any of its various

forms"); *United States v. Paulus*, 2021 WL 4494607, at *4 (E.D. Ky. Sept. 30, 2021) ("[Third-party's] partial disclosure of the consultant's findings waives any privilege to those findings and necessitates disclosure of the balance of the findings."), *mandamus denied by*, 31 F.4th 520 (6th Cir. 2022).

The same goes for FirstEnergy's disclosures of its lawyers' conclusions that 

. FirstEnergy also disclosed its lawyers' conclusions regarding

. Any one of these disclosures would be sufficient to waive any applicable protections for FirstEnergy's internal investigation. Collectively (and these are just a few examples), they overwhelmingly eliminate any possibility of FirstEnergy meeting its burden of demonstrating non-waiver.

The *OM* court's analysis regarding the scope of waiver is instructive here.  In *OM*, the investigation at issue was an audit committee investigation for presentation to the defendants company's board of directors.   226 F.R.D. at 584.  Outside accountants were ***part*** of the investigation team, not the recipients of the investigation for business purposes.  Moreover, unlike here, the *OM* defendants did not use the investigative materials to attempt to exonerate themselves and "did not disclose snips and quotes of employee interviews from the underlying documents to a third party in order to obtain an unqualified audit opinion."  *Id.* at 593.  In fact, the *OM* court determined the audit committee's "substantial, intentional, and deliberate" disclosure "to OMG's Board" was particularly salient.  *Id.*  The court further explained that "[t]here is no reason

Defendants, who voluntarily disclosed substantial information about an investigation ***that led to a public announcement*** that OMG anticipated a restatement of earnings, should now be able to withhold information that would allow Plaintiff to review the whole picture." *Id*.  Accordingly, the court held that the defendants had broadly waived all protections to all underlying information related to the audit committee's presentation to the Board (though not information generated after the presentation). *Id*.

FirstEnergy's disclosures and use of the investigation materials go well beyond those in *OM*. Unlike the single PowerPoint presentation to the board in *OM*, FirstEnergy's disclosures to PwC ███████████████████████████████████████████████████████ ██████████████████████████████████████. Likewise, FirstEnergy's investigation led to multiple public announcements that were more detailed than the mere mention of an anticipated earnings restatement in *OM*.  FirstEnergy's public announcements not only include firings and separations of multiple employees, but also the several ***reasons*** for the firings, which are all attributable to the internal investigation.  Moreover, unlike in *OM*, where there was no affirmative use of information attributable to the investigation to exonerate anyone, FirstEnergy repeatedly used such information to attempt to exonerate its Board and select employees and thus itself as to any vicarious liability related to such individuals.  And whereas, in *OM*, the defendant company "did not disclose snips and quotes of employee interviews from the underlying documents to a third party," that is exactly what FirstEnergy did – both with PwC (which received far more than snips and quotes) and with Moving Parties.  *OM*, 226 F.R.D. at 583.

3.     **FirstEnergy's Counsel's Conflicting Positions During Depositions Further Demonstrate the Implausibility of the Company's Privilege Assertions**

During the depositions of two of the director-members of the IRC, FirstEnergy's own lawyers couldn't keep straight what was supposedly privileged and what was not, leading to indefensibly contradictory instructions such as during the deposition of Julia Johnson:

> [THE WITNESS:] A. I believe I received [testimony script Ex. 5 (Dep. Ex. JD 39)].
>
> [CLASS COUNSEL:] Q. Right. And the information contained within here in this document was the basis for the termination or at least some part of the basis for the termination of Mr. Jones and Mr. Dowling; isn't that correct?
>
> [THE WITNESS:] A. Yes.

Ex. 3 (Johnson Tr. Vol. II) at 528: 7-12. Not long after that exchange, FirstEnergy's counsel asserted a privilege objection and instructed Johnson not to confirm information set forth in FirstEnergy's own Form 10-K, which she had authorized, about Jones's and Dowling's terminations. *Id.* at 544:1-546:19. Soon thereafter, counsel asserted a privilege objection and instructed Johnson not to answer nearly the same questions about Deposition Exhibit JD 39 (attached hereto as Ex. 5) that she had answered minutes earlier, thus completely shutting down the questioning regarding the reasons for Jones's termination:

> [CLASS COUNSEL:] Q. Let me ask you this. So with respect to the information that was disclosed to the public, are you refusing to answer whether or no – whether or not the facts set forth in Exhibit 39 were part of the reasons why Mr. Jones and Mr. Dowling were terminated? Is that your position?
>
> [FIRSTENERGY'S COUNSEL:] Objection. I'm instructing you not to answer and reveal any communications or discussions you had with counsel related to the internal investigation and the terminations of Mr. Jones and Mr. Dowling.
>
> *             *             *
>
> [THE WITNESS:] A. My position is that the facts that were provided to us by our lawyers pursuant to what my lawyer has said is privileged.

*Id.* at 557:24-558:19.

By the time of the deposition of the next director-member of the IRC, Mitchell, FirstEnergy's counsel openly admitted what its instructions at the prior deposition had implied: FirstEnergy had adopted the untenable position that facts become privileged simply by being conveyed by counsel:

> [DIRECT ACTION PLAINTIFFS' COUNSEL:] Q. Are you saying that facts conveyed by counsel are privileged?
>
> [FIRSTENERGY'S COUNSEL:] A. Yes.

Ex. 6 (Mitchell Tr. Vol. I) at 189:4-6.

Contrary to FirstEnergy's counsel's perspective and repeated instructions not to answer, "'[i]t is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *see also Hilton-Rorar v. State & Fed. Commc'ns Inc.*, 2010 WL 1486916, at *7 (N.D. Ohio Apr. 13, 2010) (same and citing *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 528 (D. Kan. 2003), for the principle that "privilege does not apply to facts that an attorney communicates to her client"). Worse, even if facts were privileged (which they plainly are not), their disclosure in public SEC filings and in deposition transcripts such as Ex. 5 (Dep. Ex. JD 39) would have waived any protections. FirstEnergy's position is doubly indefensible because its counsel is instructing witnesses not to answer questions about facts from the Company's internal investigation that it has repeatedly chosen to disclose in other contexts.

The arbitrariness (though consistently self-serving in nature) of what FirstEnergy chose to reveal and what it insisted on withholding is further demonstrated by two discrete inquiries relating to employee terminations/separations. Despite the Court's order finding FirstEnergy had failed to provide an adequately prepared witness for its Rule 30(b)(6) deposition, even during the second deposition FirstEnergy's witness was unprepared to answer certain basic questions regarding the terminations/separations. As indicated above, in its deposition scripts FirstEnergy revealed ██

██████████████████████████████████████████

██████████████████████████████████████████

████████████████. Yet FirstEnergy's witness was still unprepared to identify what relevant information these employees had failed to ensure was produced in connection with the internal investigation. *See, e.g.,* ████████████████████████ Ex. 11 (Storsin Tr. Vol. II) at 381:12-382:9. Likewise, regarding former CEO defendant Steven Strah's ("Strah") "retirement," FirstEnergy's witness was only prepared to testify that "the board's offer [was] that Mr. Strah retire," but he was completely unprepared to testify as to what the alternative was if Strah declined the "offer." Ex. 11 (Storsin Tr. Vol. II) at 385:13-387:21. Despite raising no privilege objections to these questions during the deposition, when meeting and conferring about this lack of preparation, FirstEnergy asserted that the answers to these questions were privileged.

### D. Having Wielded the Internal Investigation as a Sword, FirstEnergy Cannot Now Shield It from Discovery

"'[L]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case' or, more simply, cannot use the privilege as 'a shield and a sword.'" *In re United Shore Fin. Servs, LLC*, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)). "When a party reveals privileged communications or otherwise waives the protections of the attorney-client privilege, 'that party waives the privilege as to all communications on the same subject matter.'" *Mooney ex rel. Mooney v. Wallace*, 2006 WL 8434638, at *8 (W.D. Tenn. July 12, 2006) (quoting *United States v. Skeddle*, 989 F. Supp. 905, 908 (N.D. Ohio 1997)). "The privilege may be implicitly waived when the holder of the privilege asserts a claim that requires examination of protected communications." *In re Grand Jury Subpoena, 93-2-1-01*, 9 F.3d 107 (Table), 1993 WL 453395, at *2 (6th Cir. 1993) (Guy, J., concurring) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). That is precisely what FirstEnergy is doing in these proceedings.

In particular, FirstEnergy offered the following unsolicited self-exculpatory testimony during its second Rule 30(b)(6) deposition:

> [THE WITNESS:] A.  FirstEnergy is aware of no evidence suggesting that any outside director knew of payments or contributions in exchange for specific official action for FirstEnergy's benefit and . . . FirstEnergy is aware of no evidence suggesting that any current officer or Mr. Strah knew of payments or contributions in exchange for specific official action for FirstEnergy's benefit.

Ex. 10 (Storsin Tr. Vol. I) at 32:15-23.  The Company echoed this claim and added another █████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████ .

The court encountered a very similar situation in *Crestwood Farm Bloodstock LLC*.  There, in a breach of contract action, the plaintiff elicited testimony from its transactional attorney that no one had discussed an exception at issue prior to the case, so the "implication [wa]s that . . . the Agreement did not contemplate such an exception." *Id.* at *3.  Since the attorney had obtained his information only from his client, the court ruled that the plaintiff could not create such an implication "without opening discovery on other communications to and from [the attorney] on the [exception issue]," as the situation "present[ed] the classic sword and shield privilege metaphor." *Id.* (citing *Lott*, 424 F.3d at 454).

Here, the roles are reversed but the analysis and necessary consequence are identical.  In fact, FirstEnergy's testimony went further than the mere "implication" in *Crestwood*.  Since FirstEnergy's lawyers comprised FirstEnergy's only source of information about purported evidence (or lack thereof) of its directors' and officers' knowledge, FirstEnergy cannot claim it is aware of no such evidence "without opening discovery on other communications to and from [the attorneys] on the [issue]." *Id.* at *3.  Accordingly, this is another basis for finding waiver regarding all information related to FirstEnergy's internal investigation.

## IV.    CONCLUSION

For all the foregoing reasons, Moving Parties respectfully request that the Court enter an order granting their motion and determining the following: (1) FirstEnergy's internal investigation is not entitled to attorney-client privilege or work-product protections in the first place; (2) even if FirstEnergy's internal investigation had been entitled to any such protections, FirstEnergy has waived them; and (3) FirstEnergy must produce all previously withheld documents, witnesses must answer all questions (past and future) related to the internal investigation, and FirstEnergy must withdraw all asserted protections that are reflected in PwC's document productions.

DATED: June 30, 2023                                  Respectfully submitted,

s/ Joseph F. Murray
JOSEPH F. MURRAY

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
JASON A. FORGE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com
jforge@rgrdlaw.com

4872-2946-3147.v2

Lead Counsel for Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund

DATED:  June 30, 2023

BAKER & HOSTETLER LLP
CAROLE S. RENDON, Trial Attorney (0070345)

s/ Carole S. Rendon (with permission)
CAROLE S. RENDON

DOUGLAS L. SHIVELY (0094065)
DANIEL R. WARREN (0054595)
JEREMY STEVEN DUNNABACK (0098129)
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH  44114
Telephone:  216/621-0200
216/696-0740 (fax)
crendon@bakerlaw.com
dshively@bakerlaw.com
dwarren@bakerlaw.com
jdunnaback@bakerlaw.com

BAKER & HOSTETLER LLP
GEORGE A. STAMBOULIDIS (*pro hac vice*)
45 Rockefeller Plaza
New York, NY  10111
Telephone:  212/589-4211
212/589-4201 (fax)
gstamboulidis@bakerlaw.corn

Attorneys for Defendant Charles E. Jones

DATE: June 30, 2023

TUCKER ELLIS LLP
JOHN F. MCCAFFREY, Trial Attorney (0039486)
JOHN A. FAVRET (0080427)
HANNAH M. SMITH (0090870

s/ John F. McCaffrey (with permission)
JOHN F. MCCAFFREY

950 Main Avenue, Suite 1100
Cleveland, OH  44113
Telephone:  216/592-5000
216/592-5009 (fax)
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com
hannah.smith@tuckerellis.com

WINSTON & STRAWN, LLP
STEVE GRIMES (*pro hac vice*)
DAN K. WEBB (*pro hac vice*)
35 W. Wacker Drive
Chicago, IL  60601
Telephone:  312/558-5600
312/558-5700 (fax)
sgrimes@winston.com
dwebb@winston.com

Attorneys for Defendant Michael J. Dowling

DATED: June 30, 2023

ICE MILLER LLP
MATTHEW L. FORNSHELL, Trial Attorney
(0062101)
NICOLE R. WOODS (0084865)

s/ Matthew L. Fornshell (with permission)
_____
MATTHEW L. FORNSHELL

250 West Street, Suite 700
Columbus, OH 43215-7509
Telephone: 614/ 462-1061
614/ 222-3692 (fax)
matthew.fornshell@icemiller.com
nicole.woods@icemiller.com

LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
STEVEN E. FINEMAN (*pro hac vice*)
DANIEL P. CHIPLOCK (*pro hac vice*)
MICHAEL J. MIARMI (*pro hac vice*)
JOHN T. NICOLAOU (*pro hac vice*)
GABRIEL A. PANEK (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212/355-9500
(212) 355-9592 (fax)
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
jnicolaou@lchb.com
gpanek@lchb.com


LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
RICHARD M. HEIMANN (*pro hac vice*)
BRUCE W. LEPPLA (*pro hac vice*)
MICHAEL K. SHEEN (*pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415/956-1000
415/956-1008 (fax)
rheimann@lchb.com
bleppla@lchb.com
msheen@lchb.com

Attorneys for Direct Action Plaintiffs

4872-2946-3147.v2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on June 30, 2023. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joseph F. Murray*
Joseph F. Murray (0063373)

4872-2946-3147.v2

## Mailing Information for a Case 2:20-cv-03785-ALM-KAJ Owens v. FirstEnergy Corp. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Edward Arnold**
  jarnold@arnlaw.com,7489829420@filings.docketbird.com,tashby@arnlaw.com,ablosser@arnlaw.com

- **David L. Axelrod**
  axelrodd@ballardspahr.com,mangiaracinaj@ballardspahr.com

- **Daniel E. Barenbaum**
  dbarenbaum@bermantabacco.com,sfservice@bermantabacco.com

- **Jordan M. Baumann**
  jbaumann@jonesday.com

- **Elizabeth Benshoff**
  ebenshoff@jonesday.com

- **Katherine T. Berger**
  kberger@jonesday.com,rlmiller@jonesday.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **David S Bloomfield , Jr**
  dbloomfield@porterwright.com,mruyf@porterwright.com

- **Joseph Michael Brunner**
  jmbrunner@vorys.com,tlschwarz@vorys.com

- **Preston Burton**
  pburton@orrick.com,nreeber@orrick.com,lschwartz@orrick.com

- **Veronica E. Callahan**
  veronica.callahan@arnoldporter.com,edocketscalendaring@arnoldporter.com,veronica-callahan-1417@ecf.pacerpro.com,maosdoh@arnoldporter.com

- **Matthew A Chiricosta**
  mchiricosta@calfee.com,litdocket@calfee.com

- **Rachel Ann Cocalis**
  rcocalis@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,mlydon@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com

- **Desiree Cummings**
  dcummings@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **James Rubin Cummins**
  jcummins@cumminslaw.us,rrhein@cumminslaw.us,docket@cumminslaw.us,elosier@cumminslaw.us

- **Lisa S Del Grosso**
  ldelgrosso@brouse.com,sslabaugh@brouse.com

- **Marjorie P Duffy**
  mpduffy@jonesday.com,rfargabrite@jonesday.com

- **Jeremy Steven Dunnaback**
  jdunnaback@bakerlaw.com

- **Thomas E Egler**
  TE@rgrdlaw.com

- **John C Fairweather**
  jcf@brouse.com,sslabaugh@brouse.com

- **John A Favret , III**
  jfavret@tuckerellis.com,darlene.hudeck@tuckerellis.com,Chelsea.croy@tuckerellis.com

- **Robert Stephen Faxon**
  rfaxon@jonesday.com

- **Samantha L Fenton**
  sfenton@mwe.com

- **Jason A. Forge**
  JForge@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Christopher Thomas Gilroy**
  cgilroy@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Robert J. Giuffra , Jr**
  giuffrar@sullcrom.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Gerhardt A Gosnell , II**
  ggosnell@arnlaw.com,1524359420@filings.docketbird.com,tashby@arnlaw.com

- **Shalini Beth Goyal**
  sgoyal@jonesday.com

- **Steven Grimes**
  SGrimes@winston.com

- **Tor Gronborg**
  torg@rgrdlaw.com,TomE@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com,ckopko@rgrdlaw.com,ckopko@ecf.courtdrive.com

- **Andrew Paul Guran**
  apguran@vorys.com

- **M. Ryan Harmanis**
  rharmanis@jonesday.com,nafickle@jonesday.com

- **Paul Helms**
  phelms@mwe.com

- **Kelsey Hughes-Blaum**
  khughesblaum@taftlaw.com

- **Robert K. Hur**
  rhur@gibsondunn.com

- **Andrew W Hutton**
  dhutton@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Rachael L. Israel**
  risrael@bakerlaw.com,geigenbrod@bakerlaw.com

- **Steve Michael Jodlowski**
  sjodlowski@rgrdlaw.com,E_File_SD@rgrdlaw.com,SusanM@rgrdlaw.com

- **Andrew C. Johnson**
  Andrew.Johnson@arnoldporter.com

- **C. Chad Johnson**
  chadj@rgrdlaw.com

- **Francis Paul Karam**
  fkaram@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Daniel Richard Karon**
  dkaron@karonllc.com,cgood@karonllc.com,bhollowell@karonllc.com

- **Timothy D. Katsiff**
  katsifft@ballardspahr.com

- **John M Kelley**
  jkelley@rgrdlaw.com

- **Ashley M. Kelly**
  akelly@rgrdlaw.com,E_File_SD@rgrdlaw.com,AKellyRGRD@ecf.courtdrive.com

- **Michael L. Kichline**
  michael.kichline@morganlewis.com

- **Eric Kim**
  eric.kim@davispolk.com

- **Emily S. Kimmelman**
  emily.kimmelman@morganlewis.com

- **Nicole Lavallee**
  nlavallee@bermantabacco.com,sfservice@bermantabacco.com

- **Corey Anthony Lee**
  calee@jonesday.com

- **Albert Grant Lin**
  alin@bakerlaw.com,phubbard@bakerlaw.com

- **Marion H Little**
  little@litohio.com,thompson@litohio.com,hogan@litohio.com

- **Ting H. Liu**
  tliu@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Douglas M Mansfield**
  dmansfield@lmng-law.com

- **John F McCaffrey**
  john.mccaffrey@tuckerellis.com,susan.becker@tuckerellis.com

- **Laura Hughes McNally**
  laura.mcnally@morganlewis.com,carole.griffin@morganlewis.com

- **McNees Wallace & Nurick**
  kschneider@mcneeslaw.com

- **Francisco J Mejia**
  FMejia@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Adam B. Miller**
  adam.miller@orrick.com,dcmanagingattorneysoffice@ecf.courtdrive.com

- **Aaron F. Miner**
  aaron.miner@arnoldporter.com

- **Jonathan P. Misny**
  misny@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,misny@ecf.courtdrive.com

- **David W Mitchell**
  davidm@rgrdlaw.com,slandry@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **John R Mitchell**
  jmitchell@taftlaw.com,LUdovicic@taftlaw.com,ewerner@taftlaw.com,CLE_Docket_Assist@taftlaw.com

- **Thomas N Mitchell**
  mpduffy@jonesday.com

- **Geoffrey J Moul**
  moul@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,moul@ecf.courtdrive.com

- **Adrienne Marie Ferraro Mueller**
  afmueller@jonesday.com

- **Bree Murphy**
  bmurphy@orrick.com,dcmanagingattorneysoffice@orrick.com

- **Brian K Murphy**
  murphy@mmmb.com,tiffany@mmmb.com,murphy@ecf.courtdrive.com,tiffany@ecf.courtdrive.com

- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,murray@ecf.courtdrive.com

- **Danielle S. Myers**
  DMyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon Leigh Nelles**
  Nelless@sullcrom.com

- **Brian Patrick O'Connor**
  bpo@santen-hughes.com,emp@santenhughes.com,sla@santen-hughes.com

- **Lucas Freeman Olts**
  lolts@rgrdlaw.com,E_File_SD@rgrdlaw.com,lolts@ecf.courtdrive.com

- **Steven Wayne Pepich**
  stevep@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Daniel J. Pfefferbaum**
  dpfefferbaum@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Karen Pieslak Pohlmann**
  karen.pohlmann@morganlewis.com

- **Sara B. Polychron**
  spolychron@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **David Maxwell James Rein**
  reind@sullcrom.com

- **Carole Schwartz Rendon**
  crendon@bakerlaw.com

- **Geoffrey J. Ritts**
  gjritts@jonesday.com,docketnortheast@jonesday.com

- **Darren J Robbins**
  tedp@rgrdlaw.com

- **Michael J. Ruttinger**
  michael.ruttinger@tuckerellis.com

- **Scott B. Scheinberg**
  sscheinberg@jonesday.com

- **Steven S. Scholes**
  sscholes@mwe.com

- **Kevin Shen Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,E_File_SD@rgrdlaw.com,tdevries@rgrdlaw.com

- **Victoria Lynn Serrani**
  vlserrani@bmdllc.com

- **Yiqing Shi**
  yiqing.shi@arnoldporter.com

- **Kamil Elaine Shields**
  shieldska@sullcrom.com

- **Joshua N. Shinbrot**
  joshua.shinbrot@davispolk.com

- **Jessica Tally Shinnefield**
  jshinnefield@rgrdlaw.com,E_File_SD@rgrdlaw.com,ChristC@rgrdlaw.com,JShinnefield@ecf.courtdrive.com

- **Douglas L. Shively**
  dshively@bakerlaw.com

- **Hannah M. Smith**
  hannah.smith@tuckerellis.com,susan.becker@tuckerellis.com

- **Mark Soloman**
  marks@rgrdlaw.com

- **Stephen G Sozio**
  sgsozio@jonesday.com

- **Hillary Bryn Stakem**
  hstakem@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **George A. Stamboulidis**
  gstamboulidis@bakerlaw.com

- **Jonathan R Streeter**
  jonahan.streeter@dechert.com

- **Joseph J. Tabacco, Jr.**
  jtabacco@bermantabacco.com

- **Jeremy R Teaberry**
  teaberryj@ballardspahr.com

- **Tasha Nicolette Thompson**
  thompsontas@sullcrom.com

- **Robert Ward Trafford**
  rtrafford@porterwright.com,tmagley@porterwright.com

- **Emilia McKee Vassallo**
  mckeevassalloe@ballardspahr.com

- **Robert J. Wagoner**
  bob@dwslaw.com,bob@wagonerlawoffice.com

- **Victor A Walton , Jr**
  vawalton@vorys.com,kjwooldridge@vorys.com

- **Daniel Rubin Warren**
  dwarren@bakerlaw.com

- **Thomas David Warren**
  tom.warren@warrenterzian.com

- **Lesley Weaver**
  lweaver@bfalaw.com

- **Dan K Webb**
  dwebb@winston.com

- **Brian S. Weinstein**
  brian.weinstein@davispolk.com,shanaye.carvajal@davispolk.com,ecf.ct.papers@davispolk.com

- **Hilary M. Williams**
  williamsh@sullcrom.com

- **Brittany Marie Wilson**
  wilsonbm@ballardspahr.com

- **Jill Winter**
  jwinter@orrick.com,dcmanagingattorneysoffice@orrick.com

- **Nicole Rene Woods**
  nicole.woods@icemiller.com,thyrza.skofield@icemiller.com

- **Michael J. Zbiegien , Jr**
  mzbiegien@taftlaw.com,aoverly@taftlaw.com,cle_docket_assist@taftlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)