UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| ) | CLASS ACTION |
| ) ) | |
| This Document Relates To: ) ) | Judge Algenon L. Marbley |
| ALL ACTIONS. ) ) ) | Magistrate Judge Kimberly A. Jolson |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH THE COURT'S APRIL 5, 2023 ORDER FROM NON-PARTIES SAMUEL C. RANDAZZO AND SUSTAINABILITY FUNDING ALLIANCE OF OHIO, INC.

**[REDACTED]**

MURRAY MURPHY MOUL
 + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
 & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com

Lead Counsel for Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT BACKGROUND AND PROCEDURAL HISTORY | | 2 |
| III. | LEGAL STANDARD | | 4 |
| IV. | ARGUMENT | | 5 |
|  | A. | The Defined Time Period Includes Discovery from November 21, 2020 through August 31, 2021 | 5 |
|  | B. | Randazzo Should Collect His 2019 Emails | 6 |
|  | C. | Randazzo and SFAO Should Bear the Costs of Any Additional Collections, Searches, and Productions | 7 |
| V. | CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
   2016 WL 6892113 (N.D. Ala. Oct. 17, 2016),
   *report and recommendation adopted*,
   2016 WL 6897798 (N.D. Ala. Nov. 22, 2016) ........................................................................8

*B.L. v. Schuhmann*,
   2020 WL 3145692 (W.D. Ky. June 12, 2020) ..........................................................................8

*Cahoo v. SAS Inst. Inc.*,
   2019 WL 4139152 (E.D. Mich. Aug. 30, 2019) ...................................................................7, 9

*Fleisher v. Phoenix Life Ins. Co.*,
   2012 WL 6732905 (S.D.N.Y. Dec. 27, 2012) ..........................................................................8

*In re FirstEnergy Corp. Sec. Litig*,
   2023 WL 2633675 (S.D. Ohio Mar. 24, 2023) ...............................................................7, 8, 9

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*,
   2018 WL 3631984 (E.D. Mich. July 31, 2018) .......................................................................9

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*,
   364 F. Supp. 3d 758 (E.D. Mich. 2018) ...................................................................................6

*Taylor v. Universal Auto Grp. I, Inc.*,
   2015 WL 1810316 (S.D. Ohio Apr. 17, 2015) ........................................................................6

*Wilson v. ThyssenKrupp Elevator Corp.*,
   2022 WL 2314713 (S.D. Ohio June 28, 2022) .......................................................................4

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 26(b)(1) ............................................................................................................................4
   Rule 45 .....................................................................................................................................4

Class Plaintiffs and Direct Action Plaintiffs (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Compel Discovery and Compliance with the Court's April 5, 2023 Order from Non-Parties Samuel C. Randazzo ("Randazzo") and Sustainability Funding Alliance Of Ohio, Inc. ("SFAO").[1]

## I. INTRODUCTION

FirstEnergy Corp. ("FirstEnergy") has admitted that it paid Randazzo (through his two shell entities, including SFAO) over $22 million to do nothing – and that money is on top of Randazzo's earnings from his decades-long career as a lawyer. Actually, FirstEnergy has admitted that the final $4,333,333 it paid Randazzo was to do something – something illegal by selling out his position as Chairman of the Public Utilities Commission of Ohio ("PUCO"). This Court has unequivocally ordered Randazzo and SFAO "to produce *any* documents regarding the $4.3 million payment within their possession, custody, or control." 4/5/23 Order, ECF 440 at PageID 10059-60 ("April 5 Order"). Nevertheless, and despite two subsequent orders, they continue to obstruct this process and are now refusing to abide by the April 5 Order unless Class Plaintiffs: (1) accept their self-selected shortened cutoff date; and (2) pay the costs of them doing what they should have done months ago. To avoid burdening the Court with more briefing, Class Plaintiffs even compromised on the originally defined time period (which the April 5 Order did *not* shorten) and offered to advance the

---

[1] Class Plaintiffs are Lead Plaintiff Los Angeles County Employees Retirement Association and named plaintiffs Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund (collectively, the "Class Plaintiffs"). The Direct Action Plaintiffs are plaintiffs from the related actions captioned *MFS Series Trust I v. FirstEnergy Corp.*, No. 2:21-cv-05839 (S.D. Ohio), and *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp.*, No. 2:22-cv-00865 (S.D. Ohio). Unless otherwise noted, citations are omitted and emphasis is added.

collection and production expenses for Randazzo and SFAO's belated compliance, even though there was no obligation to do so. Randazzo and SFAO still refused.

Accordingly, Plaintiffs respectfully request that the Court Order Randazzo and SFAO to: (1) search for and produce documents responsive to the April 5 Order for the period from November 21, 2020 to August 31, 2021; (2) collect Randazzo's 2019 emails from server-stored locations versus limited local-storage locations; and (3) bear any corresponding costs, as well as the reasonable costs and fees for this motion to compel.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The Court is very familiar with background facts, so they will not be repeated here. On July 22, 2021, FirstEnergy admitted in a Deferred Prosecution Agreement ("DPA") that "the $4.3 million payment to SFAO was a *quid pro quo* exchange in furtherance of the fraud scheme at the center of Class Plaintiffs' allegations." 4/5/23 Order, ECF 440 at 10059-60 (citing Status Report, ECF 438 at PageID 9894-900; ¶¶6, 72, 194, 207).[2] After Randazzo and SFAO refused to comply with valid subpoenas, the Court found that the discovery sought was "clearly relevant," and "**ORDERED** [Randazzo and SFAO] to produce any documents regarding the $4.3 million payment within their possession, custody, or control to Class Plaintiffs." 4/5/23 Order, ECF 440 at PageID 10059-60 (emphasis in original).

Nevertheless, Randazzo and SFAO's defiance continued, resulting in another Court Order:

> Their ***position is not consistent with the Court's prior Order***, which, as stated, ordered them "to produce any documents regarding the $4.3 million payment within their possession, custody, or control to Class Plaintiffs." (Doc. 440 at 2)." Further, ***their reluctance to be transparent about their search methodology does not suggest good-faith compliance with their discovery obligations***.

---

[2] Unless otherwise noted, all "Ex._" references are to the exhibits attached to the declaration of Rachel A. Cocalis, filed concurrently herewith and all "¶_" or "¶¶_" citations are to the Consolidated Complaint for Violations of the Federal Securities Laws, ECF 72 at PageID 1545-674.

> Accordingly, [the Court Orders] that Randazzo and SFAO comply with the Court's prior Order and file declarations to the public docket by May 29, 2023 certifying: (1) that they have made reasonable efforts to locate and produce "any documents regarding the $4.3 million payment within their possession, custody, or control" and that all such documents of which they are aware have been produced; (2) the specific steps taken to identify responsive documents, including locations and email accounts searched, and inquiries made of others; and (3) the search methodology utilized to comply with the Court's April 5 Order.

5/16/23 Order, ECF 460 at PageID 10314.

Despite two Court Orders, their obstruction continued with incomplete and vague declarations that: (1) confirmed they were continuing to rely on the same documents produced by other non-parties that the Court previously found insufficient to satisfy their discovery obligations; (2) merely referenced, without detailing, search efforts purportedly undertaken over two years ago to produce documents responsive to the Court's April 5, 2023 Order; (3) revealed they had unilaterally cutoff the time period to end on November 20, 2020 ("Shortened Time Period") rather than the December 31, 2021, the earliest end date set forth in the subpoenas (the "Defined Time Period"); and (4) failed to identify their full search methodology to Class Plaintiffs, instead submitting the purported "methodology" *in camera*.  Declaration of Roger P. Sugarman, ECF 464 ("Sugarman Declaration") at PageID 10330-31.

This led to a ***third*** Court Order, holding that Randazzo and SFAO's failure to provide their search methodology was "***impermissible***," that its own review confirmed there were "***no legitimate*** concerns about attorney-client privilege or work product," and ordered Randazzo and SFAO "to provide the search terms, protocol, and methodology" to Plaintiffs.  5/31/23 Order, ECF 470 at PageID 10353-54.  Subsequent meet-and-confer efforts were not productive as they yielded only a series of unhelpful emails from ***2021*** between himself, Randazzo, and TCDI, their ESI vendor, purportedly identifying the "search methodology."  While woefully incomplete, the emails confirmed that Plaintiffs concerns regarding the adequacy of the search parameters were warranted. For example, Randazzo's emails were collected from his devices, not their cloud sources, and the

- 3 -

search terms did not include fundamental terms such as FirstEnergy, IEU-Ohio, its members, or $4.3 million. Status Report, ECF 477 at PageID 10384. On June 16, 2023, the Parties filed a Joint Status Report. ECF 477. On June 20, 2023, the Court ordered Plaintiffs to file a motion to compel regarding any issues that the parties were unable to resolve. Notation Order, ECF 478.

Since then, Plaintiffs have further compromised by narrowing the time period to run their proposed search terms, provided a number of solutions to reduce costs, and even offered to advance Randazzo and SFAO's ESI vendor's costs related to document productions Randazzo and SFAO should have completed long ago. Ex. 1 (7/6/23 Letter). Conversely, Randazzo and SFAO have refused to utilize the Defined Time Period or Plaintiffs' compromised time period, absent cost-shifting. Rather than make further compromises in good faith, they have abused the meet-and-confer process to regress the parties' efforts and delay the production of relevant discovery that this Court ordered them to produce nearly three months ago.

### III. LEGAL STANDARD

"[N]on-parties are not alleviated from participating in discovery. Indeed, the function of Rule 45 is to require the compliance of non-parties in discovery, including the right to command a non-party to produce documents." 11/18/22 Opinion and Order, ECF 378 at PageID 9008. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Further, "[r]elevant information need not be itself admissible. 'Relevance for discovery purposes is extremely broad.'" *Wilson v. ThyssenKrupp Elevator Corp.*, 2022 WL 2314713, at *3 (S.D. Ohio June 28, 2022). In addition, "'the scope of discovery is within the sound discretion of the trial court.'" 11/18/22 Opinion and Order, ECF 378 at PageID 9007.

IV.  ARGUMENT

    A.  **The Defined Time Period Includes Discovery from November 21, 2020 through August 31, 2021**

Randazzo and SFAO's unilaterally shortened November 20, 2020 cut-off date is improper, as it would have required a protective order, which they did not timely seek. Nor would they have had a credible basis for dramatically shortening the time period for document searches so as to exclude a number of critical dates. It is clear that documents from November 21, 2020 to August 31, 2021 are reasonably likely to lead to the discovery of admissible evidence. Randazzo and SFAO still possessed and/or controlled and moved approximately $1 million of the $4.3 million in 2021, and Randazzo's bank accounts were not frozen until August of 2021. *See* Plaintiffs' Response, ECF 468 at PageID 10338. Underscoring Plaintiffs' claims is the fact that the Ohio Attorney General, Dave Yost, was compelled to request that Randazzo's bank accounts be frozen in ***August of 2021*** because Randazzo was still moving ***millions*** of dollars of the alleged bribery money.[3] Indeed, mere weeks ago, on June 28, 2023,

> [t]he [Ohio] state's attorney told [Ohio Supreme Court] justices that Sam Randazzo was "spending down criminal proceeds" when Republican Attorney General Dave Yost moved in to freeze his assets [in August 2021].
>
> [The Ohio state attorney further argued that Randazzo] receive[d] these criminal proceeds, bribe money, as an employee of the state to take action that benefited FirstEnergy for billions of dollars, and he just wants to take that money, run off with it, spend it down, use it, move it around . . . .
>
> Yost made the request after Randazzo . . . appeared to be scrambling to unload personal assets. He transferred a home worth $500,000 to his son and liquidated

---

[3]     *See* Press Release, Ohio Attorney General, Attorney General Yost Seizes Randazzo's Assets to Preserve Them for Collection (August 13, 2021), https://www. ohioattorneygeneral.gov/Media/News-Releases/August-2021/Attorney-General-Yost-Seizes-Randazzo-s-Assets-to (last visited July 14, 2023); *see also* Jake Zukerman, DocumentCloud, https://www.documentcloud.org/documents/23075983-schwab-letter-re-randazzo (last visited July 14, 2023) (August 13, 2021 letter from Charles Schwab & Co., Inc. to Franklin County Common Pleas Court detailing the nearly $3 million held by Randazzo and his wife in their bank accounts).

- 5 -

other properties worth a combined $4.8 million, sending some $3 million of the proceeds to his lawyers in . . . Ohio.[4]

Moreover, critical events concerning FirstEnergy's $4.3 million payment to Randazzo occurred *after* November 2020. For example, on July 22, 2021, FirstEnergy admitted in the DPA that it "paid $4.3 million dollars to [Randazzo] . . . in return for [him] performing official action in his capacity as PUCO Chairman to further FirstEnergy Corp.'s interests relating to passage of nuclear legislation" while "under no legal obligation to make the payment at that time." Status Report (attaching DPA, thereto) at PageID 6016, 6034. It necessarily follows that any of Randazzo's communications concerning FirstEnergy's ***July 2021*** admission regarding the $4.3 million payment would undoubtedly be relevant and responsive to this Court's April 5 Order.[5]

### B. Randazzo Should Collect His 2019 Emails

Randazzo's email collection was deficient due to limiting his efforts to the computer and phone from which he accessed his various email accounts, ***rather than collecting and searching the email accounts from the source: his cloud-based (i.e. web-based or server-based) accounts***. Collecting from local hardware is less reliable because there would be gaps in the email available on his devices as opposed to the email directly accessible from his email if Randazzo's email accounts

---

[4] Associated Press, Ohio Froze an Ex-Utility Regulator's $8 Million in Assets. Lawyers Disagree Over Whether It's Legal, *U.S. News* (June 28, 2023), https://www.usnews.com/news/best-states/ohio/articles/2023-06-28/ohio-froze-an-ex-utility-regulators-8-million-in-assets-lawyers-disagree-over-whether-its-legal (last visited July 14, 2023).

[5] Even if the Court found that Randazzo and SFAO had not waived any objections to the time period (they have), they have not satisfied their burden "'to show that to produce the information would be unduly burdensome.'" 11/18/22 Opinion and Order, ECF 378 at PageID 9010. Randazzo and SFAO have refused, absent cost shifting, to provide any hit reports for the requested period – despite telling this Court they would – and simply claim that the search would add a few thousand dollars in costs to collect documents. *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018) ("it is clear that 'undue burden' for purposes of nonparty discovery does not mean no burden at all[,]" and recipients of subpoenas should "[b]e prepared to support allegations of undue burden with detailed cost and time calculations, supported by knowledgeable declarations") (alterations in original); *see also Taylor v. Universal Auto Grp. I, Inc.*, 2015 WL 1810316, at *6 (S.D. Ohio Apr. 17, 2015).

were not fully synced with his devices. Here, there is ample evidence of gaps. For example, according to Randazzo's vendor, the amount of  Moreover, emails produced by other Parties confirm that responsive emails dated in 2019 were not captured by Randazzo and SFAO's deficient collection, including emails . Ex. 2 (FE_CIV _SEC_0017219); Ex. 3 (FE_CIV _SEC_0197266-68); Ex. 4 (FE_CIV _SEC_0197331-34); Ex. 5 (FE_CIV _SEC_0197339-42); Ex. 6 (FE_CIV _SEC_0197436-44); Ex. 7 (FE_CIV_SEC_0197347-57). These gaps in Randazzo's communications in 2019 are critically important. As such, Plaintiffs respectfully ask the Court to include this additional collection in its Order compelling the production of documents.

      **C.**    **Randazzo and SFAO Should Bear the Costs of Any Additional Collections, Searches, and Productions**

This Court previously outlined the relevant legal standard for shifting "significant" expenses upon refusing Partners for Progress's ("PFP") request to shift costs:

> It is within the discretion of the Court to determine what expenses are significant. And in deciding how much, if any, of the expenses the requesting party must bear, the Court considers factors including "whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance."

*In re FirstEnergy Corp. Sec. Litig*, 2023 WL 2633675, at *2 (S.D. Ohio Mar. 24, 2023).

Before addressing these factors, Randazzo and SFAO's withholding of documents responsive to this Court's Order and Plaintiffs' subpoenas on cost-shifting grounds is improper. *See, e.g.*, *Cahoo v. SAS Inst. Inc.*, 2019 WL 4139152, at *4 (E.D. Mich. Aug. 30, 2019) ("cost-sharing disputes are not a valid basis to withhold producing documents responsive to a subpoena"). Moreover, they cannot demonstrate that the expenses of complying with Plaintiffs' subpoenas or this Court's Order are "significant" – $3,150-$4,450, when Randazzo and SFAO have been paid tens of

millions of dollars by FirstEnergy is hardly significant and insufficient to "m[e]et [their] burden to require the Court to impose cost-shifting in this matter." *B.L. v. Schuhmann*, 2020 WL 3145692, at *6 (W.D. Ky. June 12, 2020). Likewise, these modest costs are primarily the result of Randazzo and SFAO's own failures to cooperate or comply with their discovery obligations. For example, Randazzo and SFAO repeatedly refused – and are now "unable to" – share their final search parameters with Plaintiffs. 5/31/23 Order, ECF 470 at PageID 10354; *see also* Ex. 8 (7/12/23 email). *FirstEnergy*, 2023 WL 2633675, at *2 (denying PFP's similar request, noting PFP's costs associated with running a second search could have been avoided by PFP who, like Randazzo and SFAO, "unilaterally designed the search protocol").

Turning to the relevant factors, none supports the shifting of expenses. Randazzo is an interested party by virtue of his close connection to the case and defendants. *See, e.g.*, *FirstEnergy*, 2023 WL 2633675, at *3 (finding PFP, which was also funded by FirstEnergy and involved in the underlying conduct, was an interested non-party); *see also Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2016 WL 6892113, at *5 (N.D. Ala. Oct. 17, 2016), *report and recommendation adopted*, 2016 WL 6897798 (N.D. Ala. Nov. 22, 2016) (collecting cases holding an interested non-party is an entity with an "underlying connection to the case and, typically, some sort of . . . reputational stake in the litigation's outcome."). Here, Randazzo and SFAO, like PFP, are not run-of-the-mill third parties as "FirstEnergy executives broadened the reach of the Bailout Scheme by buying the support of soon-to-be PUCO Chairman Randazzo with an illicit $4 million payment" and "[b]etween 2010 and January 2, 2019" paid Randazzo "over $22 million." ¶72, Status Report (attaching DPA, thereto), ECF 259-5 at PageID 6015-16.

Further, Randazzo and SFAO's arguments regarding relative ability to pay improperly cite **Class Counsel's** fee awards from cases from 2005 to 2018. Ex. 8 (7/12/13 email). *Cf. Fleisher v. Phoenix Life Ins. Co.*, 2012 WL 6732905, at *4 (S.D.N.Y. Dec. 27, 2012) (refusing to "include the

resources of counsel in this analysis" of this factor). Indeed, Randazzo and SFAO, who received over $22 million from FirstEnergy, have demonstrated that they can readily bear the costs of litigating discovery that this Court found was "clearly relevant" for months. *See, e.g.*, 4/5/23 Order, ECF 440 at PageID 10059; 5/16/23 Order, ECF 460 at PageID 10314; 5/31/23 Order, ECF 470 at PageID 10353-54. Nevertheless, they even rejected Class Counsel's proposal to advance payment to TCDI for ***TCDI's costs*** of the collecting and running terms for the proposed time period, subject to reimbursement. Ex. 1 (7/6/2023 Letter).

The final factor weighs heavily against any cost shifting, as this Court previously held:

> [T]his litigation is of public importance. This is a class action comprising potentially thousands of Plaintiffs who say they were harmed by FirstEnergy's participation in "one of the largest corruption and bribery schemes in U.S. history." (Doc. 72, ¶¶3, 18). PFP [a relevant non-party, like Randazzo and SFAO,] has an obligation to the public and a particular obligation to potential class members to fairly and fully disclose the non-privileged information within its possession, custody, or control.

*FirstEnergy*, 2023 WL 2633675, at *3.

Accordingly, Plaintiffs respectfully submit that any request to shift costs be denied as unjustifiable under the law and facts.[6]

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting their motion and order Randazzo and SFAO to: (1) search for and produce documents responsive to the April 5 Order for the period from November 21, 2020 to August 31, 2021; (2) produce such documents and any corresponding privilege log(s) on a rolling basis; (3) collect

---

[6] To the extent that the Court disagrees, any costs associated with a relevance or privilege review should not be borne by Plaintiffs. *See Cahoo*, 2019 WL 4139152, at *4 ("[I]t has been well recognized that a subpoenaed party cannot seek reimbursement for costs of privilege review."); *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 2018 WL 3631984, at *2 (E.D. Mich. July 31, 2018) (noting privilege review costs should be borne by the responding party).

Randazzo's 2019 email from its cloud-based sources; and (4) bear any corresponding costs, as well as the reasonable costs and fees for this motion to compel.

DATED: July 14, 2023

Respectfully submitted,

<u>       s/ Joseph F. Murray       </u>
JOSEPH F. MURRAY

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
RACHEL A. COCALIS (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com
rcocalis@rgrdlaw.com

Lead Counsel for Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund

DATED: July 14, 2023

ICE MILLER LLP
MATTHEW L. FORNSHELL, Trial Attorney (0062101)
NICOLE R. WOODS (0084865)

<u>    s/ Matthew L. Fornshell (with permission)    </u>
MATTHEW L. FORNSHELL

- 10 -

250 West Street, Suite 700
Columbus, OH 43215-7509
Telephone: 614/ 462-1061
614/ 222-3692 (fax)
matthew.fornshell@icemiller.com
nicole.woods@icemiller.com

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
STEVEN E. FINEMAN (*pro hac vice*)
DANIEL P. CHIPLOCK (*pro hac vice*)
MICHAEL J. MIARMI (*pro hac vice*)
JOHN T. NICOLAOU (*pro hac vice*)
GABRIEL A. PANEK (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212/355-9500
(212) 355-9592 (fax)
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
jnicolaou@lchb.com
gpanek@lchb.com


LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
RICHARD M. HEIMANN (*pro hac vice*)
BRUCE W. LEPPLA (*pro hac vice*)
MICHAEL K. SHEEN (*pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415/956-1000
415/956-1008 (fax)
rheimann@lchb.com
bleppla@lchb.com
msheen@lchb.com

Attorneys for Direct Action Plaintiffs

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on July 14, 2023. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                                                      s/ Joseph F. Murray
                                                                      JOSEPH F. MURRAY (0063373)

4870-6615-5632.v1