# EXHIBIT 1

## Robbins Geller
## Rudman & Dowd LLP

| Boca Raton | Melville | San Diego |
|---|---|---|
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Rachel A. Cocalis
rcocalis@rgrdlaw.com

July 6, 2023

<u>VIA EMAIL</u>

Roger Sugarman
65 E. State Street, #1800
Columbus, OH  43215

   Re: *In re FirstEnergy Corp. Sec. Litig.*,
     No. 2:20-cv-03785-ALM-KAJ (S.D. Ohio)

Dear Roger:

   Thank you for speaking with us today.  I write with regard to Mr. Samuel Randazzo's ("Randazzo") and Sustainability Funding Alliance's ("SFAO") document production in response to the Plaintiffs' subpoenas and the Court's April 5, 2023 Order (ECF 440 ("April 5 Order")), and to confirm a number of matters discussed during our meet-and-confer today.

   As an initial matter, Defendant Charles Jones's deposition is scheduled for July 24-25, 2023 and Defendant Michael Dowling's deposition is scheduled for August 15-16, 2023.  As such, while Plaintiffs continue to remain open to any proposed compromises, they must move to compel documents responsive to their subpoenas and the Court's April 5 Order (ECF 440 ("April 5 Order")), if necessary, as soon as possible.  Accordingly, Plaintiffs request that Randazzo/SFAO begin producing responsive documents on a rolling basis and that Randazzo/SFAO provide any outstanding responses to Plaintiffs by ***Monday, July 10, 2023, at 12:00 pm Eastern Daylight Time*** ("EDT").

   ***First***, with regard to Plaintiffs' prior proposals, we understand that you are still considering Plaintiffs' offers that (1) TCDI log into each email account and determine the volume of email on the cloud for 2019, prior to determining whether a new collection is necessary, to reduce costs, and (2) SFAO/Randazzo produce any additional documents in native format to reduce the costs of production.[1]  Further, during the meet-and-confer, Randazzo/SFAO declined Plaintiffs' proposal that they produce documents that hit on search terms without conducting a relevance review and clawback any privileged documents, if necessary.  *See* R. Cocalis 7.5.23 Email.  Further, you stated that you do not think it would be possible to further narrow the terms in a mutually agreeable manner.  Plaintiffs reiterate, however, that they remain open to modifying the proposed terms to exclude non-responsive documents, such as documents concerning PUCO matters that are irrelevant to Plaintiffs' subpoenas.

---

[1] To the extent that TCDI identifies a deficiency in the 2019 timeframe upon logging into the cloud email accounts, or to the extent you believe it is prudent to follow TCDI's recommendation to entirely recollect from the cloud versus what was originally collected, this collection should be done at the same time as any other collection or recollection to avoid duplicative costs.

**Robbins Geller**
**Rudman & Dowd** LLP

Roger Sugarman
July 6, 2023
Page 2

*See, e.g.*, *id.* Lastly, you declined Plaintiffs' proposal to limit the number of voicemails collected and reviewed, given that the 85 voicemails were often only seconds long. If our understanding is incorrect, please let us know by Monday at 12:00 pm EDT.

**Second**, as previously requested and discussed, please provide the final and comprehensive search parameters, including the final list of search terms, the domains included or excluded, and how TCDI "use[d] [] a specific list of domains" by Monday at 12:00 pm EDT. *See* R. Cocalis 7.5.23 email.

**Third**, Plaintiffs understand from your email yesterday and the meet-and-confer today, that of the 495 email domains that hit on the 2021 terms, only those documents hitting on approximately 39 of these email domains were included for review. During the meet-and-confer, you stated that you believed that this did not mean that any documents were excluded as a result of their domain, but that you would confirm your understanding. Further, you confirmed that no email domains were excluded for the 2023 search terms. Please confirm this understanding by Monday at 12:00 pm EDT.

While Plaintiffs appreciate that email domains were not excluded for the 2023 terms, we disagree that any domain for McNees, Wallace & Nurick LLC ("McNees"), such as MWNCMH.Com, MWN.Com, or McNeesLaw.com, should be excluded from the review and production. It is precisely because Randazzo utilized this domain as his primary email that it should be included, not excluded. Accordingly, Plaintiffs request that Randazzo/SFAO produce any responsive documents that hit on the 2021 search terms and includes a McNees domain. Moreover, documents that hit on the 2021 search terms and IEU-Ohio members' email domains, such as the domains for Brakey Energy, The Lincoln Electric Company, Appvion Inc., Wayne Trail Technologies Inc., Ashta Chemicals Inc., Plastipak, and Mathahon Petroleum, should be included and produced if responsive. Please let us know by Monday at 12:00 pm EDT if Randazzo/SFAO will include and produce these documents.

**Fourth**, with regard to the relevant time period, we understand that Randazzo/SFAO's main objection to extending the original time period to August 31, 2021, is that they believe the costs of doing so outweighs the number of documents that are likely to be found responsive. Further, they believe that Plaintiffs should bear the costs of extending the time period because Randazzo/SFAO's "funds have been attached/frozen by the State of Ohio for nearly 2 years, including the retainer in my IOLTA account." R. Sugarman 7.5.23 Email. In addition, Jeff Corcoran, your co-counsel, inquired as to whether all of the 2021 and 2023 search terms would need to be run for the additional nine-month period. As Plaintiffs explained, on June 14, 2023, Plaintiffs further narrowed the list of terms for this nine month period. Randazzo/SFAO, however, rejected Plaintiffs' proposal to run even a narrowed list of terms over the additional time period, absent cost-shifting.

For the reasons previously explained in the June 16, 2023 Status Report (ECF 477) and during our meet-and-confers, the original time period is unjustifiable and cost-shifting is inappropriate in

Robbins Geller
Rudman & Dowd LLP

Roger Sugarman
July 6, 2023
Page 3

these circumstances.  Indeed, this litigation is of public importance and Randazzo is not a disinterested party as he received tens of millions of dollars from FirstEnergy and unilaterally decided upon this narrowed time period before responding to Plaintiffs' subpoenas and the April 5 Order.  Nevertheless, in a further, and final, effort to compromise absent burdening the court with motion practice, Plaintiffs agree to further limit the proposed terms for the period from November 21, 2020 to August 31, 2021. *See* Ex. A.  Moreover, in an effort to address Randazzo/SFAO's objection to the costs of complying with the original relevant time period on the grounds that Randazzo/SFAO's "funds have been attached/frozen by the State of Ohio for nearly 2 years, including the retainer in my IOLTA account," Plaintiffs propose the following:

- (1) So long as TCDI's charges for collecting, preserving, and analyzing the documents that hit on the proposed terms for the period from November 21, 2020 to August 31, 2021 do not exceed the $3,150-$4,450 range quoted in your June 29, 2023 email, upon receipt of the resulting documents and a valid invoice, Robbins Geller (on behalf of Plaintiffs) will advance payment to TCDI, subject to reimbursement by Randazzo and/or SFAO; and

- (2) Within 14 calendar days of the unfreezing of any of Randazzo/ SFAO's funds, Randazzo/SFAO will reimburse Robbins Geller for these costs.

To be clear, however, Plaintiffs (and Robbins Geller) do not agree to advance or pay the costs of any attorney review.  Please let us know by Monday at 12:00 pm EDT whether Randazzo/SFAO agree to Plaintiffs' proposed compromise.

*Fifth*, please identify the "various sources" that Randazzo/SFAO maintain are not reasonably accessible, pursuant to Rule 45, and the basis for such assertion.  *See* R. Sugarman 7.5.23 Email. Please provide Randazzo/SFAO's response by Monday at 12:00 pm EDT.

I am available for a call prior to Monday if you have any questions.

Best regards,

RACHEL A. COCALIS

RAC:cac

# Exhibit A

1.  (FirstEnergy or FE or FEC or FES or FESC or (First w/2 Energy))

2.  (IEU or "Industrial Energy Users*" or IEU-Ohio*) w/30 (object* or withdraw* or oppos* or settl* or side* or check* or wire* or transfer* or payout* payoff* or disburse* or deposit*)

3.  (SFA or SFAO or (Sustain* w/2 fund) (Sustain* w/3 alliance) or ("Sustainability Funding")) w/30 (agree* or contract* or consult*)

4.  (ESP w/3 (IV or 4)) or ("electric security plan" w/3 (IV or 4)) or "14-1297" or 14297

5.  4333333 or ("4.3" w/2 million) or 4.3m or "4,333,330"

6.  1383333 or ("1.3" w/2 million) or 1.3m or "1,383,333"

7.  (Uncommitted w/30 Dollars) and (Sustainability or SFAO or IEU or "Industrial Energy Users*" or IEU-Ohio*)

8.  "Sustainability Agreement"

9.  ((Chuck w/5 hurricane) or CEJ or "Chuck Jones" or "Jonesc@Firstenergycorp.com" or "+13304726068" or (Chuck W/3 Jones) or "Charles Jones" or (Charles W/3 Jones))

10. ("2024 Rate Case")

11. (Dowling or "Dowlingm@Firstenergy.Com" or "+13302831180")

12. (Householder)

13. (Yeboah or "Eyeboah@Firstenergycorp.Com" or "+13303845969")

# EXHIBIT 2

[Submitted *In Camera* Pursuant to §8 of the
Amended Stipulated Protective Order (ECF 411)]

# EXHIBIT 3

[Submitted *In Camera* Pursuant to §8 of the
Amended Stipulated Protective Order (ECF 411)]

# EXHIBIT 4

[Submitted *In Camera* Pursuant to §8 of the
Amended Stipulated Protective Order (ECF 411)]

# EXHIBIT 5

[Submitted *In Camera* Pursuant to §8 of the
Amended Stipulated Protective Order (ECF 411)]

# EXHIBIT 6

**From:** Mike Dawson <mikedawson2023@gmail.com>
**To:** Matt Evans <matt@boich.com>, "Michael J. Dowling"
        <dowlingm@firstenergycorp.com>, Sam Randazzo <sam@mwncmh.com>
**Subject:** [EXTERNAL] Ohio Citizen Action – Ohioans deserve an end to PUCO shill game
**Date:** Fri, 1 Feb 2019 05:38:03 -0500
**Importance:** Normal

# Ohioans deserve an end to PUCO shill game



Sam Randazzo has fought the development of wind power in Ohio as a lobbyist and attorney
for Greenwich Neighbors United, an anti-wind group that refers to climate change as a
"hoax" on its website.

Lawmakers created the PUCO Nominating Council for a reason, and understanding
that reason helps to understand the current conflict-of-interest controversy surrounding

PUCO nominee Sam Randazzo, a long-time former lobbyist and general counsel for Industrial Energy Users-Ohio.

**Ohio Citizen Action actively opposes Mr. Randazzo joining the Commission on the grounds that:**

- **Lawmakers created the Nominating Council and designed its makeup specifically to ensure that various competing interests were represented on the Commission;**
- **Utility representation on the Nominating Council and the Commission is already secured; and**
- **Mr. Randazzo's history indicates he would vote reliably in the utilities' interest.**

*A timely update from an Ohio Citizen Action report originally released Feb. 12, 2007  Sandy Buchanan, Executive Director (1993-2013)*

*Updated January, 2019 by Rachael Belz, Executive Director (2013-Present)*

# History lends context

In 1911, Ohio began regulating telephone, electric, gas, and water companies through a three-person commission appointed by the governor with the advice and consent of the Senate. There was no Nominating Council.

By the 1970s, the Commission had stopped regulating. Governor Jim Rhodes, whose political base was the coal industry and electric utilities, appointed commissioners who were certain to approve whatever the electric utilities wanted.

For example, Ohio's electric utilities wanted to go on a nuclear power plant construction spree. Rhodes' Commission agreed and then allowed utilities to charge their customers for electricity that had not yet been produced, through the notorious "construction work in progress" charges.

This rubber-stamp regulation hit consumers hard. In 1981 alone, the cost of gas, electricity, and telephone for the typical Ohio family climbed 14.5%. The next year, 1982, it jumped 27.7%.

Ohio consumers did not take this lying down, and there were years of conflict:

- **1976:** Consumer activists put three utilities measures on the Ohio ballot: to establish procedures for legislative hearings and approval of nuclear power plants safety features, to provide for representation of residential utility consumers before the Commission, and to limit the rates which may be charged to residential consumers for fixed amounts of gas and electricity. Proponents could not afford an effective ballot campaign, so the utilities' "No" campaign crushed these proposals.
- **1978:** Cincinnati Gas and Electric (now Duke Energy) canceled the Zimmer 2 nuclear power plant (Zimmer 1 was canceled in 1984).
- **1978:** CEI (now FirstEnergy) and local banks threw the City of Cleveland into financial default to try to force the city to sell its municipal electric system to CEI.
- **1979:** Clevelanders voted two-to-one to keep the city's public power system after a mid-winter door-to-door campaign led by Citizen Action, United Auto Workers, community groups, and Mayor Dennis Kucinich.
- **1979:** The Three Mile Island nuclear power plant in Harrisburg, Pennsylvania, suffered a partial core meltdown, the worst accident in US commercial nuclear power history. For the next 28 years, no utility would be licensed to build a new commercial US nuclear plant.
- **1980:** Ohio Edison (now FirstEnergy) canceled the Erie 1 and 2 nuclear power plants near Sandusky.
- **1981:** Toledo Edison (now FirstEnergy) canceled the Davis-Besse 2 and 3 nuclear power plants near Sandusky.
- **1982:** Consumer activists put a measure on the statewide ballot requiring the direct election of commissioners. Again, utility money defeated the proposal.

Commonly, during ballot issue campaigns, legislators propose bills on the same topic. This confuses voters and enable opponents to argue, "There is no problem to solve. The legislature has already dealt with it." It can also, however, be a way to extract progress out of a defeated ballot campaign.

So, for example, a byproduct of the defeated 1976 ballot issues was the legislated creation of the Ohio Consumers' Counsel.

Similarly, a byproduct of the defeated 1982 ballot campaign for direct election of commissioners was the legislated creation of the PUCO Nominating Council and expansion of the Commission from three to five members.

**In sum, the PUCO Nominating Council was created for an express purpose: to stop the conflicts of interest that can emerge when any governor has a free hand to appoint commissioners.**

This is not just a Columbus insider "good government" issue. It is a statewide pocketbook issue. The 1983 creation of the Nominating Council, curbing "construction work in progress," and other reforms by the incoming governor, Richard Celeste, made a big difference for Ohio families.

| Gas, electricity and telephone utility rates for a typical Ohio family | | | | |
| --- | --- | --- | --- | --- |
| 1981 | 1982 | 1983 | 1984 | 1985 |
| +14.5% | +27.7% | +3.3% | +2.7% | -1.9% |

To serve its intended purpose, the new law required that the 12 member Nominating Council be broadly based, with members chosen as follows: one appointee each by the Ohio house speaker and the Ohio senate president, three appointees by the governor representing regulated utilities, the business community, and organized labor, and representatives of the Ohio Consumers' Counsel Governing Board, Accountancy Board, State Board of Registration for Professional Engineers and Surveyors, Ohio State Bar Association, Ohio Municipal League, Ohio Department of Development, and Ohio Department of Aging.

So far, so good. Regulated utilities have one representative out of 12 on the panel, so they have a voice but can't skew the outcome.

Of course, without a commitment to the spirit as well as the letter of the law, nothing is foolproof. Over time, the process has gone haywire.

# In 2007, one utility representative became five

Had all concerned followed the spirit of the law, utilities would have been represented on the Nominating Council by one person. In 2007, that person was Marvin Resnick of

American Electric Power, chosen by Governor Ted Strickland in the regulated utility category. Instead, other choices by the governor, house speaker, senate president, and Ohio Bar Association created a five-member utility bloc on the Council of that time:

- House Speaker Jon Husted chose Dan Helmick, lobbyist for Embarq and First Communications (FirstEnergy).
- Ohio Senate President Bill Harris chose Thomas Green, lobbyist for AT&T and Columbia Gas.
- Governor Ted Strickland chose as the representative of the business community Christie Angel, an AT&T lobbyist.
- Ohio State Bar Association President John Stith was an attorney for the Porter Wright law firm. He chose as his representative fellow Porter Wright attorney Dan Conway, who represented American Electric Power.

This trend has consistently overrepresented utility interests in Commission decisions, undermined public representation and must not continue.

## Controversial Commissioners can do real damage for many years

Todd Snitchler, nominated by Governor Kasich and PUCO Chair from 2011-2014, was a climate change denier who adamantly and publicly opposed to renewable energy projects. It's no surprise that renewable projects were stymied during his tenure, at the same time the Ohio legislature attempted numerous efforts to kill the state's energy efficiency and renewable energy standards.

*Columbus Dispatch, Jan 12, 2013*

*"The Public Utilities Commission of Ohio's ruling this week against a solar-energy project may not have come as a surprise to anyone following Chairman Todd Snitchler's Twitter account.*

*The former lawmaker from Uniontown, Ohio, frequently shares material critical of solar, wind and "green" energy, even re-tweeting a story called "Elites of West have cranked up myth of Global Warming" from* Pravda*, a Communist Party-connected newspaper in Russia, calling it "interesting."*

*Among more than 1,000 tweets from the past year, Snitchler did not once share anything positive about renewable energy. Instead, he tweeted about how "clean-energy aid racks up losses" and "the Himalayas and nearby peaks have lost no ice in past 10 years, study shows"; shared the conservative website Drudge Report's "complete list of green energy failures" and conservative political commentator Laura Ingraham's "windbag & greeniac update"; and re-tweeted "electric cars pose environmental threat," "after Sandy no one lined up for wind turbines" and that the "'green' religion is taking over from Christian religion."*

## In 2016 the Ohio Senate rejected Governor Kasich's nomination on the grounds of perceived "conflicts of interest"

In 2016, Howard Petricoff, a Columbus lawyer, was nominated by Governor Kasich to the PUCO. However, the Ohio Senate rejected Petricoff's nomination, ironically in part, due to Mr. Randazzo's opposition from within the Nominating Council, as outlined in Dave Anderson of the Energy and Policy Institute's January 28 blog:

*"Emails sent by Randazzo in 2016, when he was himself a member of the PUCO Nominating Council, show how he opposed two earlier candidates for the commission on the grounds that they would have to recuse themselves from cases due to possible conflicts of interest involving their former clients and law firms.*

*In the emails, Randazzo targeted then-PUCO candidate Howard Petricoff over Petricoff's past work for wind farm developers, as well as tech companies like Amazon that are known for supporting renewable energy. Randazzo argued that Petricoff would have to "recuse himself from many cases" before the PUCO.*

*"... once you do that kind of stuff, you can't then vote on the issues for the commission in cases in which he participated," Randazzo later told Columbus Business First.*

*Randazzo could face similar recusal concerns as he seeks appointment to PUCO, given his long record of work for IEU-Ohio and other clients before the commission."*

And then the Senate, led by then Senate President Keith Faber and Senator Bill Seitz, did Randazzo's bidding:

*Statehouse News Bureau*, December 1, 2016:

*"Months of tension between the Senate and Gov. Kasich over his nomination of Columbus lawyer Howard Petricoff to the Public Utilities Commission of Ohio reached a tipping point when a committee voted to reject Petricoff.*

*The Senate is called to advise and consent on gubernatorial nominations. Usually these committee votes are just a formality and most appointments go through unscathed.*

*But Republican Senate President Keith Faber, of Celina, has said Petricoff would have too many conflicts of interest as a commissioner because of his time advocating for different energy groups.*

*Fellow Republican Senator Bill Seitz of Cincinnati echoed that sentiment during the committee meeting.*

*"There were concerns about the process by which this has come to us and there were concerns about the number of recusals that he would have to be engaged in by the important business of the Public Utilities Commission," said Seitz."*

## Two utility representatives already serve on the Commission, no need for a third

Former utility representatives already occupy two of the four remaining seats on the Commission:

- Governor Kasich appointed Lawrence Friedeman to the PUCO in 2017. He served as vice president of regulatory affairs for IGS Energy, an independent supplier of gas and electricity and formerly with Columbia Gas of Ohio.

- Kasich also appointed Daniel Conway to the PUCO in 2017. Prior to joining the PUCO, Conway represented public utilities, primarily electric, natural gas utilities and telecommunications companies in cases before the PUCO, in appeals to the Ohio Supreme Court and in actions in the federal courts. Throughout his career he also represented utility customers in PUCO proceedings, and advised industrial and commercial clients on energy and regulatory matters.

# The Nominating Council announced finalists on January 31, 2019

- Dennis Deters (Republican), First District Court of Appeals judge, who garnered 7 of 11 affirmative Nominating Council votes.
- Gene Krebs (Republican), a former lawmaker and past chairman of the Ohio Consumers' Counsel Governing Board, with 8 of 11 Nominating Council affirmative votes.
- Bryce McKenney (Republican), an attorney examiner and administrative law judge for the PUCO, with 6 of 11 Nominating Council votes.
- Sam Randazzo (Independent), a lobbyist and general counsel for Industrial Energy Users-Ohio, who was the only nominee to garner 11 of 11 affirmative votes.

- Shannon Jones was not in attendance, and is the 12th member of the PUCO Nominating Council that conducted the interviews.

## Consumers and customers deserve a better choice than Mr. Randazzo

The Energy and Policy Institute January 28 blog also outlined some of the most important reasons why Mr. Randazzo's nomination is so bad for Ohio consumers:

- As a lobbyist for the Industrial Energy Users of Ohio (IEU-Ohio), Randazzo helped to draft controversial legislation aimed at rolling back Ohio's renewable energy and energy efficiency standards.
- He has represented individual IEU-Ohio member companies like Marathon Petroleum Company before the PUCO as they seek approval for so-called "reasonable arrangements" with utilities. These deals allow some industrial ratepayers to pay lower rates for energy, at the expense of residential consumers.
- Randazzo has also fought the development of wind power in Ohio as a lobbyist and attorney for Greenwich Neighbors United, an anti-wind group that refers to climate change as a "hoax" on its website.

## There are better choices

Ohio need not end up with what utility shills like Sam Randazzo offer.

1. Governor DeWine could choose one of the other recommended applicants now before him who do not have such conflicts.
2. "Nothing in this section shall prevent the governor in the governor's discretion from rejecting all of the nominees of the council and reconvening the council in order to select four additional nominees" (*ORC* 4901.021(F)).
3. If Governor DeWine chooses one of the conflicted candidates, the Ohio Senate could block the appointment, just as they did with Petricoff. "Each appointment by the governor shall be subject to the advice and consent of the senate" *(ORC* 4901.021(F)). In this particular political climate and divisive legislature, that would be very unlikely to happen in Mr. Randazzo's case.
4. Governor DeWine has thirty days to decide.

Sent from my iPad

# EXHIBIT 7

[Submitted *In Camera* Pursuant to §8 of the
Amended Stipulated Protective Order (ECF 411)]

# EXHIBIT 8

| | |
|---|---|
| **From:** | Roger P. Sugarman |
| **To:** | Rachel Cocalis |
| **Cc:** | Jeff Corcoran; Ting Liu; Christine Milliron; Lea Bays; "Nicolaou, John T." |
| **Subject:** | Re: FirstEnergy Litigation |
| **Date:** | Wednesday, July 12, 2023 9:04:26 AM |

EXTERNAL SENDER

Dear Rachel,

I write in reference to your July 6 letter addressing my clients' responses to the Plaintiffs' subpoena(s).

**First**, as already explained, the burden of reviewing documents post-dated November 20, 2020, far outweighs the potential benefit of identifying responsive and relevant documents. Still, in an effort to compromise and move forward, we propose the following protocol for searching and reviewing post-November 20, 2020, documents:

- TCDI generates a hit report for the terms you've proposed for the 4-month period November 21, 2020, to April 30, 2021.  We don't agree to run searches for documents generated after April 30, 2021, through August 31, 2021 as Plaintiffs have requested that we run at our cost.  That would require TCDI to obtain a new collection from Mr. Randazzo's electronic devices because those previously collected by TCDI ended in April 2021. Plaintiffs have declined to pay the costs associated with any such collection.

- The parties review the domain list for the search results and identify the domains that may have been used to exchange emails that are relevant to the case. Alternatively, Plaintiffs provide a list of email accounts they believe, in good faith, may have been used to exchange relevant emails.

- The parties create an appropriate list of exclusionary terms (e.g., rogerpsugarman@gmail.com) for the search.

- The parties split the cost for collection and review.

This proposal and protocol represent a reasonable compromise that will allow Plaintiffs to search for and obtain potentially relevant documents while also bearing a portion of the cost for this fishing expedition.

By contrast, under the Plaintiffs' proposal, our clients will shoulder the entire cost, as any funds advanced by Robbins Geller are to be repaid after my IOLTA account is unfrozen. Robbins Geller should have no trouble bearing these expenses. The firm is estimated to have received approximately $1.64 billion in legal fees from securities class action cases between 2005 and 2018, and its extraordinary profitability has been the subject of academic analysis. *See* Choi, Stephen J. and Erickson, Jessica and Pritchard, Adam C., The Business of Securities Class Action Lawyering (May 11, 2023).  Plaintiffs' proposal does not address the cost burden or appropriate cost-shifting under these circumstances.

The Plaintiffs' other burden-related proposals are also problematic.  Mr. Randazzo, an attorney during the relevant period, cannot simply agree to turn over his privileged and confidential communications with clients (in native format or otherwise) without reviewing and determining whether those communications are privileged and/or relevant to the FirstEnergy Securities Litigation. The Plaintiffs' proposal—that we forego a "relevance review and claw back any privileged documents, if necessary"—is untenable.

Please advise whether the proposal and protocol for the review of post-November 20, 2020, documents are acceptable.

**Second**, TCDI has advised that it cannot determine the volume of the email on the cloud for 2019 prior to and without first collecting the emails.  So too, in order to run proper searches, TCDI would need to collect the emails first.  If Plaintiffs believe that collecting emails from the cloud would be beneficial, then Plaintiffs should bear the costs incurred for this collection.

We're not withholding information relating to the parameters for the 2021 search.  As previously explained, the TCDI employee (Marie Perry) responsible for those searches is no longer with the company, and TCDI does not have access to her emails.  Further, searches in TCDI's system are only saved for 45 days, so TCDI can't go back and view the exact parameters for prior searches.

We are therefore providing you the best information we have regarding the search. Our understanding is that the original number of documents on Mr. Randazzo's computer (after de-duplication) was approximately 140,000.  (Page 1 of In-Camera Submission.)  The number was reduced to roughly 51,000 through a date filter.  (*Id.*)  Then, TCDI applied the search terms we've shared with you, which reduced the number of documents to about 16,000.  (Page 5 of In-Camera Submission.)  After the search terms were applied, we noticed that there were still documents outside the relevant date range.  (*See* 2021/05/01 Email at 7:37am.)  TCDI advised that there was an error in the date filter, and after the error was corrected, there were only 2,522 documents retrieved by the search.  (*See* 2021/05/01 Email from Marie Perry at 11:35pm.)  On May 5, 2021, TCDI advised that the total would be reduced to 2308 by removing (1) a January 2010 email and its attachments and (2) JPEG, GIF, PNG, and BMP files.

We have been unable to confirm or determine how the total was reduced to 1785. However, we still have access to those 1785 documents, and we can run searches against those documents to determine if specific domains were excluded.  We have confirmed, for example, that there were McNees documents (mwncmh.com) included among those 1785 documents.

If there were relevant documents that weren't captured by the "2021 search", those documents are now being captured by utilizing Plaintiff's 13 terms in the "2023 search."  As you know, the 2023 search includes the broad terms covering documents relating to (among other things) FirstEnergy, the Sustainability agreement, the $4.3 million payment, IEU Ohio, and ESP IV.  Even were one to assume the 2021 search was somehow inadequate, which we don't, Plaintiffs will still be receiving self-identified, relevant documents that in the possession, custody, or control of Mr. Randazzo and SFAO.

**Third**, confirmed.

**Fourth**, with regard to the relevant time period, see our various responses above. In addition, we have asked TCDI to run a "hit count" for the proposed terms contained in Exhibit A to your July 6 letter for the period November 20, 2020, through April 30, 2021. This report may inform, to a certain extent, the benefit of searching for relevant documents at least for 4 months post-November 20, 2020.

**Fifth**, you've asked about the sources of documents that are not reasonably accessible.  We believe that based upon discussions with TCDI that the emails in the cloud and backup documents meet this standard.

We too remain open to modifying the proposed terms from the Plaintiffs to exclude non-responsive documents, such as documents concerning PUCO matters that are irrelevant to Plaintiffs' subpoenas. Plaintiffs' likely receipt and review of hundreds of thousands of documents through discovery in this litigation should provide Plaintiffs a better lens as to the terms that yield (and exclude) non-responsive documents.

Finally, we believe that producing documents on a rolling basis would be counterproductive.  Our goal is to complete the entire review as soon as possible.  We don't want to slow down the review process by periodically stopping to push out productions.  While rolling productions may make sense when the number of discoverable documents is significant (and the receiving party will need time to review those documents), as we've previously advised based upon our review to date (most documents are not responsive, privileged or both) we don't anticipate that to be the case here.

Regards,

Roger

Roger P. Sugarman
rogerpsugarman@gmail.com
614.578.6456

**From:** Rachel Cocalis <RCocalis@rgrdlaw.com>
**Date:** Thursday, July 6, 2023 at 8:15 PM
**To:** 'Roger P. Sugarman' <rogerpsugarman@gmail.com>
**Cc:** Jeff Corcoran <corcoran@asnalaw.com>, Ting Liu <TLiu@rgrdlaw.com>, Christine Milliron
<CMilliron@rgrdlaw.com>, Lea Bays <LBays@rgrdlaw.com>, 'Nicolaou, John T.'
<jnicolaou@lchb.com>
**Subject:** FirstEnergy Litigation

Roger,

Thank you for conferring with us today. Please see the attached correspondence.

Best,
Rachel

NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as
attorney work product, or by other applicable privileges.  Any
unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.