**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE FIRSTENERGY CORP.
SECURITIES LITIGATION,

This document relates to:

ALL ACTIONS.

Case No. 2:20-cv-3785

Chief Judge Algenon L. Marbley

Magistrate Judge Kimberly A. Jolson

STATE OF OHIO,

COUNTY OF FRANKLIN, SS:

## FED. R. CIV. P. 53(b)(3)(A) AFFIDAVIT OF SHAWN K. JUDGE REGARDING DISQUALIFICATION AS SPECIAL MASTER AND AGREEMENT TO BE BOUND BY AMENDED STIPULATED PROTECTIVE ORDER

Shawn Kincade Judge, having been first duly sworn, deposes and says:

1.      I am an attorney at law duly licensed to practice in the State of Ohio (Bar # 0069493) and have been Counsel with the law firm of Gibbs Law Group LLP since February 2021.

2.      I am providing this Affidavit pursuant to Federal Rule of Civil Procedure 53(b)(3)(A), 28 U.S.C. § 455, and the Court's August 23, 2023 Order (ECF No. 534) in the above-captioned case for the purposes of determining whether there are grounds for disqualification from my appointment as a Special Master and whether I will comply with the requirements of the Amended Stipulated Protective Order (ECF No. 411).

3.      In addition to consulting Federal Rule of Civil Procedure 53, 28 U.S.C. § 455, and the Court's August 23, 2023 Order (ECF No. 534), I have consulted the Federal Judicial Center's publication *Judicial Disqualification: An Analysis of Federal Law* (3d ed. 2020) to research potential grounds for disqualification or perceived conflicts.  I have also consulted case law included but not limited to the cases expressly cited herein.  Finally, I have consulted with outside

ethics counsel to Gibbs Law Group LLP regarding my reasoning and conclusions, as well as the construction of ethical walls as necessary to ensure no future conflicts or disqualifying facts or circumstances.

### Background

4.      I am a graduate of the College of Wooster (B.A. with honors, English, 1993), Wright State University (M.A., English, 1995), and The Ohio State University Moritz College of Law (J.D. with honors, 1998). In addition, I have received post-degree mediator training at Straus Institute for Dispute Resolution, Pepperdine University School of Law (2009) and the Harvard Negotiation Institute, Harvard Law School (2018).

5.      In addition to being a member of the Ohio Bar since 1998, I am admitted to the permanent bar of the following Courts: United States District Court for the Southern District of Ohio (1999); United States District Court for the Northern District of Ohio (2000); United States Court of Appeals for the Sixth Circuit (2001); United States Supreme Court (2002); United States Court of Appeals for the Fourth Circuit (2018); and United States Court of Federal Claims (2022).

6.      From May 2016 to February 2021, I was previously Of Counsel with the law firm of Isaac Wiles Burkholder & Teetor, LLC.

7.      From March 2003 to May 2016, I was employed as a career law clerk with the United States District Court for the Southern District of Ohio.

8.      From August 2000 to March 2003, I was employed as a judicial clerk at the Supreme Court of Ohio.

9.      From July 1998 to June 2000, I was employed as a judicial clerk at the Court of Appeals of Ohio, Ninth Judicial District.

10. From October 2016 to May 2018, I served as a compensated Bar Examiner on the Ohio Board of Bar Examiners.

11. Since September 2005 to present, I have been a compensated independent contractor providing editorial consulting services to the Ohio Judicial Conference's Ohio Jury Instructions Committee.

12. Periodically from 1999 to 2016, I served as a compensated adjunct professor or adjunct instructor at The Ohio State University Moritz College of Law, Capital University Law School, and Ohio Northern University Pettit College of Law.

13. From 2018 until 2021, I previously served as a member of the S.D. Ohio Local Rules Committee. Since 2017, I have served as the chair of the S.D. Ohio Alternative Dispute Resolution Committee for the Columbus seat of the Court. I also serve as chair of the Federal Rule of Civil Procedure 71.1 commissions in *Columbia Gas Transmission, LLC v. 171.54 Acres of Land*, S.D. Ohio Case No. 2:17-cv-70 and *Rover Pipeline LLC v. Kanzigg*, S.D. Ohio Case No. 2:17-cv-105, as well as a volunteer mediator to the United States District Court for the Southern District of Ohio. I am a Life Member of the Sixth Circuit Judicial Conference.

## Conflict Inquiry and Conclusions

14. Pursuant to Federal Rule of Civil Procedure 53(a)(2), I understand that as a potential Special Master I must not have a relationship to the parties, attorneys, action, or Court that would require disqualification under 28 U.S.C. § 455 unless the parties, with the Court's approval, consent to my appointment after disclosure of any potential grounds for disqualification.

15. I have conducted a standard conflict check within Gibbs Law Group LLP and have found no conflicts to disclose.

3

16.     I am unaware of any facts or circumstances that might cause my impartiality in the captioned case to be reasonably questioned so as to warrant disqualification of service as a Special Master pursuant to 28 U.S.S. § 455(a) and (e). I note that both I and attorneys at my current firm sometimes serve as co-counsel with or opposing counsel to attorneys from firms that have appeared in this matter; for example, I was co-counsel years ago with attorneys from Vorys Sater Seymour & Pease LLP, which has appeared in this matter with different attorneys involved. I do not believe that any of these circumstances would affect my impartiality in this matter.

17.     I am unaware of any facts or circumstances that would necessitate mandatory or automatic disqualification of service as a Special Master pursuant to 28 U.S.S. § 455(b) and (e).

18.     I have no personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning this proceeding. *See* 28 U.S.C. § 455(b)(1).

19.     I have not served as counsel in this matter, and to my knowledge no attorney with whom I have previously practiced law at any law firm has served or serves as counsel in this matter. *See* 28 U.S.C. § 455(b)(2).

20.     Neither I nor any attorney with whom I have previously practiced law at any law firm has been or is likely to be a material witness concerning this matter. *See* 28 U.S.C. § 455(b)(2).

21.     I did not participate in this matter in any way during my employment with the federal or state governments and have expressed no opinion concerning the merits of this matter. *See* 28 U.S.C. § 455(b)(3).

22.     I do not, individually or as a fiduciary, have a financial interest in the subject matter in controversy or in a party to this proceeding, or any other interest that could be substantially affected by the outcome of this proceeding. *See* 28 U.S.C. § 455(b)(4).

4

23.     I have no spouse or children and therefore do not have a spouse or minor child with a financial interest in the subject matter in controversy or in a party to this proceeding, or any other interest that could be substantially affected by the outcome of this proceeding.  *See* 28 U.S.C. § 455(b)(4).

24.     I am not a party to this proceeding, or an officer, director, or trustee of a party; I am not acting as an attorney for any party in this proceeding; to my knowledge, I have no interest that could be substantially affected by the outcome of the proceeding; and I am not likely to be a material witness in the proceeding.  *See* 28 U.S.C. § 455(b)(5).

25.     To my knowledge, no person within the third degree of relationship is a party to this proceeding, or an officer, director, or trustee of a party; is acting as an attorney for any party in this proceeding; has an interest that could be substantially affected by the outcome of the proceeding; and is likely to be a material witness in the proceeding.  *See* 28 U.S.C. § 455(b)(5).

26.     In arriving at the immediately preceding conclusion, I relied upon *Judicial Disqualification: An Analysis of Federal Law* (3d ed. 2020)  and the definition of a possible third-degree relationships reproduced therein from the Checklist of Financial and Other Conflicts contained within the Code of Conduct for United States Judges: "parent, child, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece, and nephew."  *Judicial Disqualification* at 67.

27.     I conducted this research because my deceased father had a first or second cousin, also now deceased, who had a son named John Judge.  I have no relationship with this individual and have not seen him in several decades.  In reviewing the docket and conducting my conflict check, I noted that one of the parties has the name "John Judge."  If this individual is the son of

my father's first or second cousin, he is not within the third degree of relationship to me as calculated according to the civil law system. *See* 28 U.S.C. § 455(b)(5) and (d)(2).

28.     I have discussed conflict issues with my firm's management and our outside ethics counsel, and during the course of service as Special Master in this matter, appropriate ethical walls will be erected as necessary to screen me from any new matters that arise that could present conflicts or could cause my impartiality to be reasonably questioned, including but not limited to cases involving counsel or parties that are involved in the captioned case.

## Defendants' Submission

29.     On August 30, 2023, the Court provided me with a Submission by Defendants that contained information presented to assist the Court and me in considering the 28 U.S.C. § 455 concerns. I have reviewed this submission and examined the three sets of facts or circumstances raised in connection with my potential appointment as Special Master in the captioned case. I discuss each of these sets below.

30.     The first potential concern identified is whether my service as part of a team of counsel representing the State of Ohio, various state agencies, and the Attorney General in his official capacity would affect my impartiality as Special Master in the captioned case so as to warrant disqualification under 28 U.S.C. § 455(a). It would not.

31.     I am part of a Gibbs Law Group LLP litigation team that serves as delegated counsel to attorneys appointed as outside counsel to litigate a case brought by the State of Ohio against opioids manufacturers in the Ross County Court of Common Pleas. *See State of Ohio ex rel. Dave Yost v. Purdue Pharma L.P.*, No. CV-17 CI 000261. This litigation is currently stayed.

32.     According to Defendants' Submission, Attorney General Yost has filed a state court action against various defendants, including FirstEnergy, that asserts claims predicated upon the

alleged bribery scheme involved in the captioned case. I was unaware of the existence of this action until I read Defendant's Submission. I know nothing about this case other than the information contained in Defendants' Submission. According to Defendants, the Special Master's decisions in the captioned case can impact discovery in the state case.

33.     In my capacity as outside counsel in the opioids litigation, I have no involvement whatsoever in any litigation, investigation, or discussion conducted by Attorney General Yost or his staff outside of the opioids litigation. I have no interest in any litigation, investigation, or discussion conducted by Attorney General Yost or his staff outside of the opioids litigation. My duties to the State of Ohio in the opioids litigation are wholly separate and distinct from the Special Master duties owed to the Court, the parties, and the law in the captioned case. The proposition that there is or could be any direct, indirect, or inherent pressure on me to rule in a way that would favor one party over the other in the captioned case is incorrect. Neither Attorney General Yost nor any other client could exert influence on me to affect my decision making in the captioned case.

34.     There is no § 455(a) basis for disqualification based on my representation in the opioids litigation because a reasonable and objective person, knowing all of the facts, should not harbor doubts concerning my impartiality.

35.     The second potential concern identified is whether there are grounds for disqualification under § 455(a) or § 455(b)(2) because lawyers at my prior firm of Isaac Wiles represented an entity known as Ohioans for Energy Security in H.B. 6-related matters during my employment at that firm. Defendants note that in Isaac Wiles invoice and time entries, I appear in a time entry related to an amicus brief submitted in the case in which Isaac Wiles attorneys such as Donald Brey litigated on behalf of Ohioans for Energy Security.

36. I cannot recall working with Attorney Brey on any case, have no knowledge of his files from Isaac Wiles, and know nothing about his representation of Ohioans for Energy Security beyond that discussed in Defendants' Submission.

37. Case law indicates recognizes that "[f]riends, former associates, and even foes of judges appear before them routinely. The circumstances surrounding such appearances vary widely. But such associations certainly do not automatically require a judge to disqualify himself." *Old Republic Nat'l Title Ins. Co. v. Warner*, No. 1:12CV91, 2013 WL 2403597, at *7 (N.D. W.Va. May 31, 2013) (quoting *Alberts v. Wheeling Jesuit Univ.*, No. 5:09cv109, 2010 WL 1928255, at *3 (N.D. W.Va. May 10, 2010). Here, I have no personal or professional relationship with Attorney Brey beyond our having worked at the same firm. Attorney Brey's representation would have no influence on my impartial service as Special Master.

38. 28 U.S.C. § 455(a) points to disqualification if my impartiality might reasonably be questioned based on these facts and circumstances.

39. I did not believe that I ever did any work in the referenced case and was therefore surprised to see my name listed as having a "conference" with an Isaac Wiles partner and an associate on October 9, 2019. I have no memory of this conference. Because the billing entry simply indicates a conference and the block-billing in which the clause is contained sets forth no details, I consulted my calendar for that day and have no conference listed; this may have been an impromptu in-person meeting or a phone call.

40. I was often asked to participate in litigation in which I declined to participate while at Isaac Wiles. I do not know whether this conference consisted of such a request. As a former federal law clerk, I was also often asked questions by Isaac Wiles attorneys regarding procedure, local rules, and best practices. My general practice in such instances was (a) to bill a client for my

8

response if it required any substantive work on my part or (b) to bill a client if the question was annoying but something that I could answer off the top of my head. I rarely billed for brief questions of a general nature that I could simply answer. In the invoice presented here, I did not author the billing entry, am not listed as having ever again been involved with the file, and did not bill any time to the file. I do not think that I ever provided any legal services in connection with the file, the client, or the lead billing attorney, Donald Brey.

41. While at Isaac Wiles, I recall going to lunch once with Attorney Brey to cordially discuss my having expressed that I did not want to work on any of his cases. Although I did some defense work while at Isaac Wiles, the focus of my work was on building a plaintiff-side class action and mass torts practice, which was largely if not wholly incompatible with the often-political litigation and governmental litigation with which Attorney Brey was involved.

42. There is no § 455(a) basis for disqualification based on Isaac Wiles because a reasonable and objective person, knowing all of the facts, should not harbor doubts concerning my impartiality.

43. 28 U.S.C. § 455(b)(2) mandates disqualification "[w]here in private practice [I] served as lawyer in the matter in controversy, or a lawyer with whom [I] previously practiced law served during such association as a lawyer concerning the matter, or [I] or such lawyer has been a material witness concerning it."

44. The extant question of whether the foregoing facts trigger mandated disqualification under § 455(b)(2) mandates discussion of what "matter in controversy" means.

45. Based upon my research, there is a minority view expressed in the case law that would support disqualification here based upon an expansive reading of "matter in controversy." This view has not been adopted by the Sixth Circuit and is not controlling in this jurisdiction.

46. The majority view is that "matter in controversy" should be interpreted narrowly. *See Fogleman v. Hubbard*, No. 1:20-CV-12-HSO-RPM, 2020 WL 138151136, at *2 (S.D.Miss. Dec. 16, 2020) ("Most circuits have interpreted Section 455(b)(2)'s 'matter in controversy' language very narrowly.").

47. This more narrow interpretation of "matter in controversy" is aligned with Chief Judge Marbley's holding that "[t]he term 'matter in controversy' refers 'to the actual case that is pending before the Court.'" *United States v. Scherer*, No. 2:19-cv-03634, 2019 WL 5064686, at *1 (S.D. Ohio Sept. 17, 2019) (quoting *Jones v. Philadelphia Parking Auth.*, No. CIV.A. 11-4699, 2011 WL 4901291, at *2 (E.D. Pa. Oct. 14, 2011)).

48. There is ample support that Chief Judge Marbley is correct. One federal district judge has similarly explained:

> This Court holds that the term "matter in controversy" as set forth in § 455(b)(2) should be given a restrictive reading; that is, ***it should be read as applying only to the case that is before the Court as defined by the docket number attached to that case and the pleadings contained therein*** (the answer and any third party pleadings that may be filed in the case, for example). This is, essentially, the interpretation given to § 455(b)(2) by the Eighth Circuit Court of Appeals in the cases discussed above. If the judge, while in practice, or an attorney with whom he or she was associated in practice, served as a lawyer in the matter in controversy, as so defined, the judge is required to recuse himself or herself regardless of whether the judge is actually biased or whether there is a reasonable perception of impartiality.

*Blue Cross & Blue Shield of Rhode Island v. Delta Dental of Rhode Island*, 248 F. Supp. 2d 39, 46 (D.R.I. 2003) (emphasis added).

49. Other federal judges have recognized the same interpretation of "matter in controversy," and the leading treatise on federal practice tracks this understanding of the clause.

*See Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.,* 307 F.3d 617, 621 (7th Cir.2002); 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3544.

50. Multiple other courts have expressed the same holding succinctly. *See, e.g., Di Giustino v. SmarteCarte Co.*, No. CV 16-00192 LEK-KSC, 2018 WL 1440214, at \*4 (D. Haw. Mar. 22, 2018) ("More importantly, the undersigned [judge] never served as a lawyer in this matter, nor has a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." (emphasis added and original emphasis omitted)); *Pitrolo v. County of Buncombe, N.C.*, No. 06cv199, 2013 WL 588753, at \*5 (W.D.N.C. Feb. 13, 2013) (citing approvingly the definition of "matter in controversy" in *Blue Cross & Blue Shield*).

51. Under the definition of "matter in controversy" discussed above, disqualification under § 455(b)(2) is not triggered because I have not served as lawyer in the matter in controversy—in the captioned case—and no lawyer with whom I previously practiced law served during my time at Isaac Wiles as a lawyer in the captioned case. Moreover, neither I nor such a lawyer has been a material witness in the captioned case.

52. I note that Defendants' Submission suggests that Chief Judge Marbley's language in *Scherer* regarding a "palpable nexus" between a prior action and the matter in controversy (the captioned case is significant. Isaac Wiles' filing an amicus brief in the course of its representation does not appear to constitute the sort of overlap of substance with the captioned case to present a sufficient nexus for disqualification.

53. I reach the foregoing conclusion because, even crediting a broad reading of the "palpable nexus" language, or, similarly, even applying a broader definition some courts give to "matter in controversy" – i.e., looking to the *substance of the issues argued and decided* in the two proceedings – the *substantive* issues in the captioned case and in the Isaac Wiles' Ohioans for

11

Energy Security work are not sufficiently related to mandate disqualification. *See Kondaur Capital Corp. v. Matsuyoshi*, No. CAAP-19-0000696, 2021 WL 1331001, at *21 (Ct. App. Hawai'i Apr. 9, 2021) ("The touchstone for determining the "matter in controversy" is the case currently pending before the court, *i.e.*, the case in which recusal is raised. The "matter in controversy" also encompasses matters so closely related to the case at bar as to present an objective basis to conclude that the judge's impartiality might reasonably be questioned. Determining the relatedness of such matters presents an issue of judgment and degree based on the circumstances.").

54.      "The fact that two suits or issues have facts in common does not control whether they qualify as the same matter in controversy. And, some tangential, attenuated connection between two suits or issues does not make them sufficiently related to constitute the same matter in controversy." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 860 (E.D. Va. 2012).

55.      Disqualification § 455(b)(2) is not triggered because I did not personally serve as a lawyer in the matter in controversy; no Isaac Wiles lawyer is or has been involved in this matter in controversy; and there is no suggestion that I or any Isaac Wiles attorney is a material witness in this matter. *See Rx.Com v. Hruska*, No. CIV.A. H-05-4148, 2006 WL 3044461, at *2 (S.D. Tex. Oct. 20, 2006) (no disqualification because "[t]he undersigned did not personally serve as a lawyer in the matter in controversy (no matter how broadly "matter in controversy" might be construed); no Fulbright lawyer is or has been involved in this matter in controversy; nor is there any suggestion that the undersigned or any Fulbright attorney is a material witness in this matter." (footnote omitted)).

56. The third potential concern identified is the fact that Isaac Wiles attorney Samuel Pipino represents Daniel McCarthy, the President of Partners for Progress. Defendants' Submission indicates that McCarthy was served with subpoenas on July 29, 2022, and December 9, 2022, and that Attorney Pipino represents him in regard to both subpoenas. The questions are whether this representation existed during my employment at Isaac Wiles and, regardless of whether it began, would it affect my impartiality.

57. With Magistrate Judge Jolson's permission, I telephoned Attorney Pipino on August 30, 2023, explained that I was being considered for a Special Master appointment in the captioned case, and explained that a party had noted the representation as a possible area of concern. I asked Attorney Pipino when his representation of McCarthy had begun, and he answered that it had begun in approximately August 2022.

58. I left Isaac Wiles as of February 5, 2021, well before the representation of McCarthy commenced. Accordingly, there is no prior representation under § 455(b)(2) to trigger disqualification.

59. I have no personal or professional relationship with Attorney Pipino beyond our having worked at the same firm. Attorney Pipino's presence in the captioned case or other representation of McCarthy would have no influence on my impartial service as Special Master. Accordingly, a reasonable and objective person, knowing all of the facts, should not harbor doubts concerning my impartiality and ability to serve as Special Master so as to trigger § 455(a).

60. If appointed as Special Master in the captioned case, I would impartially and fairly discharge my duties and apply the law to the facts before me without bias, passion, or prejudice and free from any influences or considerations aside from the neutral application of the law.

13

## Compliance with Amened Stipulated Protective Order

61. I have reviewed the Amended Stipulated Protective Order (ECF No. 411) that governs this matter and I agree to be bound by its provisions. An executed copy of Attachment A to the Amended Stipulated Protective Order is attached hereto as Exhibit 1.

FURTHER AFFIANT SAYETH NOT.

Shawn K. Judge (0069493)
**GIBBS LAW GROUP LLP**
1554 Polaris Parkway, Suite 325
Columbus, OH 43240
Telephone:    (510) 340-4217
Facsimile:    (510) 350-9701
skj@classlawgroup.com

Sworn to before me and subscribed in my presence this ___5___ day of September 2023.

SHANIYA PALMER
(Printed Name)

(Signature of Notary Public)
Notary Public, State of Ohio

My Commission Expires: __12/01/2027__



14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2023, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Shawn K. Judge
Shawn K. Judge (0069493)