UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Kimberly A. Jolson |

JOINT DISCOVERY STATUS REPORT

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com



Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com



Class Counsel

Pursuant to the Court's August 19, 2022 Opinion and Order (ECF 333), the parties submit this joint discovery status report. Plaintiffs[1] and Defendant FirstEnergy Corp.'s ("FirstEnergy") positions on the three active discovery disputes are set forth below.

## I.  DISCOVERY DISPUTES

### A.  Plaintiffs' Position

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Further, "[r]elevant information need not be itself admissible. 'Relevance for discovery purposes is extremely broad.'"[2] *Wilson v. ThyssenKrupp Elevator Corp.*, 2022 WL 2314713, at *3 (S.D. Ohio June 28, 2022). FirstEnergy has unnecessarily delayed the resolution of long outstanding issues, withholding plainly relevant discovery and obstructing the discovery process, impacting depositions and Plaintiffs' prosecution of their claims. Plaintiffs respectfully request the Court compel FirstEnergy to produce the discovery sought.[3]

---

[1]    Plaintiffs refer to Class Representatives Los Angeles County Employees Retirement Association, Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund (collectively, the "Plaintiffs"). Opt-Out Plaintiffs in *MFS Series Trust I, et al. v. FirstEnergy Corp., et al.*, No. 2:21-cv-05839-ALM-KAJ (S.D. Ohio), and *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp., et al.*, No. 2:22-cv-00865-ALM-KAJ (S.D. Ohio), join in Plaintiffs' arguments.

[2]    Unless otherwise noted, all "¶_" or "¶¶_" citations are to the Consolidated Complaint for Violations of the Federal Securities Laws, ECF 72 at PageID 1545-674 (the "Complaint"). Additionally, citations are omitted, and emphasis is added.

[3]    Today, FirstEnergy advised Plaintiffs that it does not believe that the Parties have reached an impasse on these issues and that a response is forthcoming. As discussed in more detail below, FirstEnergy has repeatedly delayed the timely resolution of these issues by falsely assuring Plaintiffs, for months in some instances, that a response is forthcoming. These issues have been raised in emails, letters, and during various Court-Ordered weekly meet and confer calls. As Plaintiffs advised FirstEnergy ten days ago, because key depositions have already occurred or are

- 1 -

**1.    FirstEnergy Should Review Documents Concerning Samuel Randazzo That Were Purportedly Non-Responsive**

Plaintiffs respectfully request that the Court order FirstEnergy to review all those documents that hit on the term "Randazzo" and were withheld on the basis of being non-responsive to Plaintiffs' document requests because information concerning Samuel C. Randazzo ("Randazzo"), a central participant in FirstEnergy's admitted corruption scheme, is plainly relevant and there are evident gaps in FirstEnergy's document production.

**a.    Relevant Background and Argument**

Plaintiffs allege "FirstEnergy executives broadened the reach of the Bailout Scheme by buying the support of soon-to-be [Public Utilities Commission of Ohio ("PUCO")] PUCO Chairman Randazzo with an illicit $4 million payment." ¶72, *see also* ¶¶11, 136, 193-194, 199, 202, 206-207, 211, 216, 222, 224.  FirstEnergy has admitted in a Deferred Prosecution Agreement ("DPA") that its "$4.3 million payment to [Randazzo's shell entity, Sustainability Funding Alliance of Ohio, Inc. ("SFAO")] was a *quid pro quo* exchange in furtherance of the fraud scheme at the center of Class Plaintiffs' allegations."  4/5/23 Order, ECF 440 at 10059-60 (citing Status Report, ECF 438 at PageID 9894-900; ¶¶6, 72, 194, 207).  Defendants Charles E. Jones ("Jones") and Michael J. Dowling ("Dowling") were the "FirstEnergy executives" responsible for this illicit payment.  Status Report, ECF 438 at PageID 9895.  Nevertheless, they and other individual defendants "have denied the illicit purpose of the payment."  4/5/23 Order, ECF 440 at 10060.[4]

---

occurring in the upcoming weeks, Plaintiffs must raise these issues with the Court now.  Ex. 15 (Thompson 9/18/23 email).

[4]    *See also* defendant Jones' Answer, ECF 245 at PageID 5839, 5859 ("Jones denies that the $4 million payment was made to an individual and denies that the payment was illicit or a bribe."); defendant Dowling's Answer, ECF 236 at PageID 5086 (Dowling denying that "FirstEnergy executives broadened the reach of the Bailout Scheme by buying the support of soon-to-be PUCO Chairman Randazzo with an illicit $4 million payment."); defendant Reffner's Answer, ECF 241 at PageID 5574 (Reffner denying same).

4854-8451-2896.v1

Instead, they have tried to portray the payment as a settlement for the benefit of the Industrial Energy Users-Ohio ("IEU-Ohio") trade group in recent depositions. Status Report, ECF 438 at PageID 9896-97. In sum, discovery concerning Randazzo, including information regarding IEU-Ohio and FirstEnergy's consulting agreement with SFAO, is undoubtedly relevant to the parties' claims and defenses.

Thus, upon identifying gaps in FirstEnergy's document production based on documents produced by Randazzo in May of 2023, Plaintiffs requested that FirstEnergy review all documents that hit on the term "Randazzo" and were purportedly non-responsive. Ex. 1 (Cocalis 5/10/23 email) (Identifying a critical communication between Randazzo and Dowling about the relevant consulting agreement that FirstEnergy did not produce). On June 2, 2023, Plaintiffs noted additional missing communications between Dowling and Randazzo, and "reiterate[d] [their] May 10 request that FirstEnergy re-review all documents that hit on the term Randazzo and were purportedly non-responsive" and "identify how many documents hit on the term 'Randazzo.'" Ex. 2 (Cocalis 6/2/23 email).[5]

Three months (and more unanswered emails) later, Defendants refused Plaintiffs' request on the grounds that: (1) "many [of these] documents" would be irrelevant as Randazzo was "an active participant in the energy industry for many years, including as counsel to Industrial Energy Users-Ohio"; and (2) the review would be unduly burdensome. Ex. 3 (Menillo 9/1/23 letter) at 3. Both arguments fail. First, as noted above, Randazzo's purported work for IEU-Ohio – while he was simultaneously being paid by FirstEnergy (an adverse party) to do nothing but illegally sell

---

[5] Since then, Plaintiffs have identified further missing communications with Randazzo in 2019. Further, Plaintiffs concerns have been validated by FirstEnergy's September 15, 2023 document production, which included additional Randazzo documents.

4854-8451-2896.v1

out his role as PUCO Chairman – is relevant to the Parties' claims and defenses.[6] Second, FirstEnergy has not made *any* showing of undue burden. In fact, FirstEnergy has failed to even identify the volume of documents that would need to be reviewed. *See, e.g.*, Ex. 4 (Plaintiffs 9/5/23 letter) at 1. As such, Plaintiffs respectfully request that the Court order FirstEnergy to identify the number of documents that hit on the term "Randazzo" and re-review all those documents that were withheld on the basis of being non-responsive.

### 2. Communications and Documents Facilitating or Concealing FirstEnergy's Admitted Criminal Conduct with Randazzo Are Subject to the Crime-Fraud Exception

FirstEnergy must also produce seven documents that FirstEnergy is improperly withholding on attorney-client privilege grounds because communications assisting, facilitating, or concealing FirstEnergy's fraudulent scheme with Randazzo and SFAO are subject to the crime-fraud exception.[7]

### a. Legal Standard

"A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997). The party asserting a crime-fraud exception must establish: (1) a "'prima facie showing that a sufficiently serious crime or fraud occurred'"; and (2) "'some relationship between the communication at issue and the prima facie violation.'" *Id.*; *see also In re Antitrust Grand Jury*, 805 F.2d 155, 164-66 (6th Cir. 1986) (holding that the moving party need only establish a "reasonable basis to suspect" a crime was committed). Plaintiffs have readily satisfied this test.

---

[6] That FirstEnergy would make this claim only heightens Plaintiffs' concerns regarding the sufficiency of their relevance review.

[7] The seven challenged documents are: FE_Priv Log_03965; FE_Priv Log_03966; FE_Priv Log_03967; FE_Priv Log_03968; FE_Priv Log_03969 (*see* Ex. 5 (excerpt of FirstEnergy's privilege logs)); FE_CIV_SEC_0487181 (Ex. 6); and FE_CIV_SEC_0136294 (Ex. 7).

#### b.     Relevant Background and Argument

This is the quintessential case where the crime-fraud exception to the attorney-client privilege and work-product doctrine applies. First, FirstEnergy has admitted that:

- "Although [its] amended [Randazzo-related consulting] agreement does not appear to have been executed, from 2015 through June 2018, FirstEnergy Corp. paid into the Company 1 account pursuant to the terms of the [consulting] agreement with [Randazzo]. Invoices from [FirstEnergy] were structured to bypass FirstEnergy Corp.'s Level of Signature Authority levels for purposes of internal approval of the payments." (Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6034.

- It paid Randazzo "$4.3 million dollars . . . through his consulting company [SFAO] in return for [Randazzo] performing official action in his capacity as PUCO Chairman to further FirstEnergy Corp.'s interests" and that "it was under no legal obligation to make the payment . . ." (*Id.* at PageID 6016, 6034);

- It "continues to believe that payments under the [Randazzo-related] consulting agreement may have been for purposes other than those represented within the consulting agreement" Ex. 8 (Cocalis 8/25/23 letter at 1); and

- Its in-house counsel "approved payments to Randazzo under the SFA consulting contract [from the legal department's budget] and knew those payments were payments to Randazzo; also knew that SFA did not provide consulting services to the legal team[; and] knew he was being paid 'every month to do nothing'" Ex. 9 (JD Ex. 39) at 23.

Second, the withheld communications plainly relate to FirstEnergy's admitted criminal conduct. For example, the redacted communications concern the fraudulent consulting agreement's invoices. *See, e.g.*, Ex. 6 (FE_CIV_SEC_0487181); Ex. 7 (FE_CIV_SEC_0136294); Ex. 5 (excerpt of FirstEnergy's privilege logs). And the withheld communications – mere months before the $4.3 million payment – concern the "[SFAO] agreement renewal." Ex. 5. Because Plaintiffs have readily satisfied the applicable standard and FirstEnergy has failed to provide *any* contrary argument (nor could it), Plaintiffs request that the Court order FirstEnergy to produce the

seven disputed documents as well as any others in which FirstEnergy was assisting, facilitating, or concealing its admitted criminal conduct.[8]

### 3.    FirstEnergy Must Modify Its Search Methodology

Issues remain concerning the search methodology used to identify documents relevant to the approximately $60 million paid by FirstEnergy to "Ohio's former Speaker of the House Larry Householder [("Householder")], the former Chairman of [PUCO] Sam Randazzo, and others, via a web of lobbyists, shell companies, and political action committees," in exchange for a multi-billion dollar legislative bailout for FirstEnergy's failing nuclear plants.  3/7/2022 Opinion & Order, ECF 219 at PageID 4718.  Relevant here, Plaintiffs have waited months for FirstEnergy to cooperate and engage in meaningful discussions concerning additional search terms and custodians proposed by Plaintiffs.

### a.    Additional Limited Search Terms

On September 16, 2022, after months of negotiations, Plaintiffs and FirstEnergy arrived at a list of agreed upon search terms and custodians to be used by FirstEnergy for the collection and production of electronically stored information ("ESI") in response to Plaintiffs' Second Set of Requests for Production of Documents.  Plaintiffs and FirstEnergy agreed that FirstEnergy was to substantially complete production of responsive documents by November 18, 2022.  In the months that followed, Plaintiffs diligently undertook to review the documents produced.  During the course of their review and the depositions that have taken place to date, Plaintiffs identified additional search terms that Plaintiffs believed would be likely to yield additional relevant ESI.

---

[8]    Plaintiffs requested that FirstEnergy produce these documents more than three weeks ago, but FirstEnergy has yet to provide ***any*** response or attempt to meet-and-confer with Plaintiffs.  *E.g.*, Ex. 8 (Cocalis 8/25/23 letter) at 1; Ex. 4 (Plaintiffs 9/5/23 letter) at 1.

The Joint Protocol for Production of Documents and Electronically Stored Information ("ESI Protocol") entered in this case expressly allows the parties to amend and utilize additional search terms by agreement or Court Order.  ECF 204 at PageID 4649.  Accordingly, on June 6, 2023, Plaintiffs provided to FirstEnergy a list of 29 additional proposed terms.[9]  Ex. 10 (Kelly 6/6/23 letter).  Despite continued assurances (including during the Court-ordered weekly meet and confer conferences and via email) that a response from FirstEnergy was forthcoming, it was not until three months later, on September 1, 2023, that FirstEnergy responded to Plaintiffs' request, claiming that "Plaintiffs' request [for additional search terms] is long overdue."  Ex. 3 (Menillo 9/1/23 letter) at 7.  Nevertheless, FirstEnergy agreed to eight of the additional proposed terms, and has committed to producing ESI responsive to those terms to Plaintiffs.[10]  As to the other terms, FirstEnergy refused to produce responsive documents on the grounds that the terms are "untimely, overboard, unduly burdensome, and not proportional to the needs of the case."  *Id.* at 8.  FirstEnergy likewise refused to provide any counter-proposal to minimize whatever purported burden was caused by the additional proposed terms.

In an effort to reach a compromise and reduce the number of hits on the remaining terms, on September 5, 2023, Plaintiffs revised their proposed search terms and provided a counter-proposal, which modified or removed certain of the remaining 20 terms, leaving just the following seven terms:

---

[9]   One of the proposed search terms was: "data room" OR "dataroom" OR "Donnelley" OR *dfnsolutions.com, which was designed to target diligence-related documents for the Company's 2020 bond offerings.  Plaintiffs indicated that it was reviewing that term and reserved their right to pursue it in the future. Ex. 4 (Plaintiffs 9/5/23 letter) at 3 n.1.

[10]   Plaintiffs have not yet received that production.

| Search Term Proposed by Plaintiffs in June 2023 | Revised Proposal – September 5, 2023 |
|---|---|
| "the speaker" | "the speaker" and "the farm" |
| SLH | Include as proposed; SLH refers to Speaker Larry Householder |
| OES | OES and (Schweitzer or ads or advert* or mailer* or "tv spot*" or commercial* or radio or media or signature* or blocker* or conflict) |
| Pat* w/3 (Tully or tulley) | Time period: 1/1/2019 to 11/1/2019 |
| "Charlie Palmer" or "the Palm" | Time period: 12/1/2016- 3/31/2017 |
| SFAO[11] | Time period: 1/1/2014- 12/31/2020 |
| "Sustainability Agreement" | Time period: 1/1/2014- 12/31/2020 |

Ex. 4 (Plaintiffs 9/5/23 letter) at 3-4.

Consistent with the ESI Protocol, Plaintiffs asked that FirstEnergy provide a hit report

broken out by custodian for any of the remaining terms to which it continued to object within seven

---

[11] While Defendants have agreed to utilize the terms "SFAO" and "Sustainability Agreement," they have only agreed to do so for the period from January 1, 2017 to December 31, 2020. Given that FirstEnergy's consulting agreement with SFAO was signed in 2013, this shortened time period is unacceptable. Further, FirstEnergy cannot have a legitimate concern regarding undue burden as the terms collectively hit on only *15* documents during Plaintiffs' requested time period. Ex. 3 (Menillo 9/1/23 letter) at 11.

4854-8451-2896.v1

days. *Id.* at 3; *see also* ESI Protocol, ECF 204 at PageID 4648-49. FirstEnergy has failed to provide a revised hit report, and has also failed to engage with Plaintiffs in an effort to minimize any purported burden on FirstEnergy in producing the requested discovery.

As this Court has recognized:

> "Designing search terms to be used to produce . . . electronically stored information requires "careful thought, quality control, testing, and cooperation with opposing counsel.'" Input from the producing party is particularly important, as that party is most familiar with its own records and thus has insight on how to craft search terms efficiently. If the producing party finds the requested search terms overly burdensome, it has an obligation to "narrow[ ] the offending search terms in a way that address [its] concerns while still retrieving as many of the relevant documents targeted by the disputed search terms are possible."

*Cohen v. Allegiance Admins., LLC*, 2022 WL 325027, at *2 (S.D. Ohio Feb. 3, 2022) (Jolson, M.J.) (alterations in original). FirstEnergy's lack of cooperation the past three months has caused unnecessary delay and jeopardizes Plaintiffs' ability to obtain and review relevant documents prior to key depositions.

"[T]he relevant inquiry is simply whether the discovery sought is relevant to Plaintiffs' claims, and whether it will be overly burdensome for Defendant to produce." *Id.* at *3. To date, FirstEnergy has not objected to any of the remaining terms on relevancy grounds, but for the sake of completeness, the relevance of the requested terms is abundantly clear.

- "the Speaker" and "SLH" – Plaintiffs allege that FirstEnergy "unfairly and clandestinely influence[d] elections by buying the loyalty of Householder and other public officials to get HB6 written, considered and passed into law," and that FirstEnergy money was used to "successfully plac[e] in office candidates who supported Householder's bid to become Ohio's Speaker of the House, and, ultimately, pass HB6." ¶70. FirstEnergy has admitted that it paid nearly $60 million in bribes to Generation Now, a Householder-controlled 501(c)(4) entity, in exchange for a legislative bailout for FirstEnergy's nuclear power plants. These proposed terms are aimed at capturing documents related to Householder (*i.e.*, "SLH") that may not have been captured by use of other terms used to refer to Householder. Though FirstEnergy previously agreed to inclusion of the term "SLH" as part of the parties' negotiations in the spring and summer of 2022, it was inadvertently included in Plaintiffs' June 6, 2023 request. Ex. 10 (Kelly 6/6/23 letter) at 5. Nevertheless, on September 1, 2023, FirstEnergy revealed that the term "SLH" resulted in nearly 1,448 additional, unique documents (including family attachments) for the time period January 1, 2014 through December 31, 2020, that have not been produced. Ex. 3 (Menillo 9/1/23

letter) at 10. FirstEnergy should be compelled to produce these additional, unique documents for "the Speaker" and "SLH."

- "OES" – shell company Ohioans for Energy Security (also referred to as "OES") received $23.5 million of FirstEnergy's and FirstEnergy Solutions' ("FES") funds funneled through Generation Now (Complaint, ECF 72 at PageID 1570), and paid the relevant advertising companies and signature collecting firms in the anti-referendum efforts. Ex. 11 (Gov't Ex. 153); Ex. 12 (Gov't Ex. 154). More specific searches are warranted here because participants in the anti-referendum efforts were ordered to delete all materials after the anti-referendum efforts were completed. *See, e.g.*, Ex. 13 (*United States v. Householder*, No. 1:20-CR-0077 (S.D. Ohio) ("*Householder* Criminal Trial") Day 11 Tr. at 1798:20-1799:5. Jeff Longstreth, who was a strategist for Householder and maintained the bank accounts for Generation Now (¶171), was aware of these activities as he testified to it in the *Householder* Criminal Trial. Ex. 14 (*Householder* Criminal Trial Day 16 Tr.) at 16-2679:1-12.

- Pat* w/3 (Tully or tulley) – Pat Tully, who testified during the *Householder* Criminal Trial, was described as Householder's energy expert. Tully testified that he "was charged with helping draft, manage, oversee, provide recommendations, research, talk to the sponsors, the chair, the Speaker . . . dealing with House Bill 6." *Id.* at 16-2515:20-23. Tully also testified that, "Mr. Householder asked me to draft an amendment basically to say that House Bill 6 was a tax. . . .[m]y understanding is that if that is considered a tax, it would not be subject to referendum." *Id.* at 16-2518:7-13. Plaintiffs allege that the anti-referendum efforts were aimed at fighting against the repeal of HB6. ¶¶81-83. Communications by and among, or relating to Pat Tully by FirstEnergy custodians are relevant to the legislative fix and anti-referendum measures.

- "Charlie Palmer" or "the Palm" – Plaintiffs allege the genesis of the bribery scandal occurred during January 2017 discussions between Jones and Dowling, Householder, and Jeffrey Longstreth, and others, during a trip to Washington, D.C. on FirstEnergy's corporate jet for President Trump's inauguration ceremony. ¶65. Longstreth, who has pled guilty to the RICO charges against him in connection with the HB6 conspiracy (¶171), testified during the *Householder* Criminal Trial that he, together with Jones and Dowling, and Householder had a dinner reservation at the Charlie Palmer Steak House in Washington, DC, during which the formation of a 501(c)(4) would be set up, and that FirstEnergy "[was] going to be supportive financially for Mr. Householder to become Speaker." Ex. 14 (*Householder* Criminal Trial Day 16 Tr.) at 16-2601:2-16-2602:13. Longstreth further testified that during the same trip, Defendants Jones and Dowling, Householder, Tony George, and Longstreth also met at the Palm restaurant during a more intimate dinner to discuss Householder's Speaker race. There, "Mr. Householder laid out the entire plan of how he was going to get elected Speaker for Mr. Jones," and the "federal solution" FirstEnergy needed for its unprofitable nuclear plants. *Id.* at 16-2603:2-16-2604:24. Thus, these terms are aimed at identifying ESI that go toward the participants and discussions at these two key locations.

- "SFAO" and "Sustainability Agreement" – As noted above, discovery concerning SFAO and its consulting agreement with FirstEnergy is plainly relevant. As the Court previously recognized, FirstEnergy has admitted in the Deferred Prosecution Agreement that "the $4.3

- 10 -

million payment to SFAO was a *quid pro quo* exchange in furtherance of the fraud scheme at the center of Class Plaintiffs' allegations." 4/5/23 Order, ECF 440 at PageID 10059-60 (citing Status Report, ECF 438 at PageID 9894-900; ¶¶6, 72, 194, 207).

The relevance of the additional terms cannot reasonably be disputed; and, by failing to produce the requested revised hit reports in the manner contemplated by the ESI Protocol, FirstEnergy has failed to articulate the purported undue burden of producing responsive documents that hit on those terms. Accordingly, FirstEnergy must be compelled to produce responsive documents hitting on those terms without further delay.[12]

### b. Custodians

The process of identifying proposed custodians, like the process of identifying search terms, was an iterative one, spanning the course of several months. In support of each individual's inclusion as custodian, Plaintiffs provided justifications, including the individual's title at FirstEnergy, if known.

During negotiations, FirstEnergy (through Jones Day), objected to the inclusion of certain proposed custodians on various grounds. Relevant here, FirstEnergy objected to the inclusion of Brian Knipe, Carmen Siminski, Carole Carthew, Deirdre Rudd, Diane Francis, Hans Rosebrock, Jennifer Spricigo, Judy Proffit, Kimberly Pelc, Mark Kanz, Misty Everson, Tracy Mayse, and Wanlu/William Wang, claiming that these individuals did not have information responsive to Plaintiffs' requests. In reliance on that representation, Plaintiffs agreed to reserve a determination as to the inclusion of those custodians for the collection of ESI.

On May 30, 2023, Plaintiffs became aware that FirstEnergy (now represented by Sullivan & Cromwell LLP) agreed to **_include_** two of the previously **_excluded_** custodians, Carole Carthew

---

[12] To be clear, Plaintiffs' additional proposed terms seek only unique, non-duplicative documents. To the extent a duplicative document has already been produced, Plaintiffs do not seek its reproduction.

and Judy Proffit, as custodians of documents potentially responsive to Jones' document requests. Plaintiffs are operating at an extreme informational disadvantage compared to Jones, who is alleged to have personally overseen the scheme to funnel approximately $60 million to Householder, Randazzo, and others in exchange for favorable legislation.

Plaintiffs were justifiably concerned that FirstEnergy's prior representation regarding proposed custodians not having responsive materials was incorrect given Jones' request, and FirstEnergy's agreement, to include certain of those individuals as custodians.  Accordingly, Plaintiffs sought confirmation from FirstEnergy about whether ESI associated with the previously excluded custodians did or did not contain potentially responsive materials.  Ex. 10 (Kelly 6/6/23 letter) at 6-7; Ex. 4 (Plaintiffs 9/5/23 letter) at 4.  FirstEnergy has now informed Plaintiffs that application of the agreed upon search terms to the custodial files of Carthew and Proffit resulted in over 300 un-reviewed, ***unique*** documents that have not been produced by any of the other agreed upon custodians in this case.  FirstEnergy has committed to reviewing those documents for responsiveness, but Plaintiffs have yet to receive any production.  Ex. 3 (Menillo 9/1/23 letter) at 8-9.

The question remains as to whether Plaintiffs can comfortably continue to rely upon FirstEnergy's prior representation that the remaining 11 proposed custodians have no responsive information, given the fact that it is likely Carthew and Proffit ***do*** have responsive information. Accordingly, Plaintiffs asked FirstEnergy to confirm whether it continues to object to the inclusion of these proposed custodians based on its prior representations.  Again, FirstEnergy has failed to respond to this basic request.[13]  FirstEnergy should be required to immediately run all agreed upon

---

[13]   Sullivan & Cromwell LLP was not involved in any search term or custodian negotiations prior to the time Jones Day withdrew as counsel for FirstEnergy in May 2023.  Unopposed Motion for Leave to Withdraw as Counsel for Defendant FirstEnergy Corp. and Substitution of Trial Attorney, ECF 463 at PageID 10326 (confirming Jones Day's withdrawal and that Sullivan & Cromwell

terms (and the remaining seven proposed terms, above) across these individuals' ESI and identify whether any unique hits result.

### B.     Defendant FirstEnergy's Position

Plaintiffs' request for Court intervention is premature and unfounded.  Plaintiffs' request is based on two letters that they recently sent FirstEnergy—dated August 25 and September 5—containing multiple new requests to FirstEnergy on eight separate discovery-related topics.  In their September 5 letter, Plaintiffs demanded responses by September 8.  Given the large amount of work necessary to respond accurately to these detailed requests, FirstEnergy informed Plaintiffs that it would not be in a position to respond by that unreasonable deadline, but that FirstEnergy was actively evaluating the requests and would respond promptly.  FirstEnergy has since repeatedly told Plaintiffs that it anticipates responding fully to Plaintiffs' requests this week and fully intends to do so.  There is no reason for Plaintiffs to demand Court intervention.

Despite FirstEnergy's assurance that it would respond this week, Plaintiffs included four topics from the August 25 and September 5 letters in this status report, which Plaintiffs have mischaracterized as part of a "months long delay" by FirstEnergy.  Specifically:  (i) Plaintiffs' September 5 request that FirstEnergy state the number of documents that hit on the term "Randazzo" and re-review those documents; (ii) Plaintiffs' August 25 challenge to FirstEnergy's withholding of certain documents described as "legal advice regarding legal department cost forecast and expenditures" or purportedly related to Samuel Randazzo and Sustainability Funding Alliance of Ohio, Inc.; (iii) Plaintiffs' September 5 request for FirstEnergy to run seven search

---

LLP would represent FirstEnergy).  To the extent the lack of cooperation and continued delays are a product of FirstEnergy's change in counsel, Plaintiffs should not be penalized.

terms across more than 60 custodians, and review and produce resulting hits; and (iv) Plaintiffs' September 5 request that FirstEnergy search and review documents for eleven new custodians.[14]

As an initial matter, there has not been any "months long delay," which is a gross mischaracterization of the record.  As Plaintiffs are aware, Plaintiffs received multiple responses concerning the five elaborate, multi-part requests in their June 2 email and the thirteen elaborate, multi-part requests in their seven page June 6 letter, as well as many other requests from Plaintiffs and other parties addressing yet more purported issues. For example, among other things, Plaintiff's June 6 letter requested that FirstEnergy (i) run 29 new search terms, (ii) add six new custodians, and (iii) investigate and confirm the sufficiency of FirstEnergy's document reviews and productions related to due diligence documents, market and due diligence calls, and communications with underwriters' counsel based on documents produced by non-parties in the litigation.  These requests were made more than six months after FirstEnergy had substantially completed its document productions in November 2022.

Also, in the period between Plaintiffs' June 2 and June 6 requests and FirstEnergy's September 1 consolidated response, FirstEnergy continued to produce voluminous documents and diligently investigated Plaintiffs' many requests.  FirstEnergy has spent significant resources investigating each of Plaintiffs' requests to be able to provide confirmation or a proposed compromise.  FirstEnergy conducted targeted searches across the more than 875,000 pages of documents it has produced, searched the relevant non-party productions, and determined whether any of the documents that Plaintiffs identified in their letter suggested defects in FirstEnergy's

---

[14]  FirstEnergy was not provided a copy of Plaintiffs' proposed position statement until thirty minutes before Plaintiffs stated they were filing it, and prepared the position statement herein based on Plaintiffs' representations earlier in the day that only these four topics would be addressed.

productions, as well as ensured that FirstEnergy could provide the several substantive confirmations that Plaintiffs requested.

On September 1, 2023, FirstEnergy provided a detailed, nine-page response letter, with an appendix providing hit counts, addressing each of the concerns that Plaintiffs raised.  Moreover, while gathering the information for its September 1 response, FirstEnergy also completed more than a dozen productions to Plaintiffs, met and conferred with Plaintiffs on several occasions, briefed privilege issues that Plaintiffs raised, and sent rolling responses to all parties, including Plaintiffs, which addressed several issues raised by Plaintiffs.

On August 25 and September 5, Plaintiffs sent new letters.  Plaintiffs are wasting the parties' and the Court's time by raising issues from these letters in this status report before even receiving FirstEnergy's response to those letters this week.  Indeed, FirstEnergy and Plaintiffs have not met and conferred about any of the topics in these new letters since Plaintiffs sent them.  The letters address more than the four topics that Plaintiffs have raised in this status report, and FirstEnergy expects to provide Plaintiffs with a complete response this week.  With respect to each of the four issues that Plaintiffs have raised, FirstEnergy provides the relevant background and describes the steps it has taken or is taking below.

***Plaintiffs' Request to Re-Review "Randazzo" Hits.***  There is a long history to Plaintiffs' repeated attempts to manufacture a gap in FirstEnergy's production of communications with Samuel Randazzo where none exists.

*First*, in a May 10, 2023 email, Plaintiffs demanded that FirstEnergy re-review documents hitting on the term "Randazzo."  The basis for that request was a single December 21, 2016 email produced by non-party Samuel Randazzo that reflected a communication with Michael Dowling, using his FirstEnergy email address, that FirstEnergy had not produced.  FirstEnergy investigated the issue and, on May 25, 2023, after extensive review and investigation, informed Plaintiffs that

- 15 -

the December 21, 2016 email—which was outside the time period the parties agreed upon in the first place and years earlier than any document retention obligation came into effect—was not in FirstEnergy's possession, custody, or control, and likely had been deleted before the implementation of a legal hold in this matter.  FirstEnergy explained that FirstEnergy's failure to produce a document it does not have is not a deficiency in FirstEnergy's productions, and FirstEnergy thus declined the request to re-review all documents hitting on the term "Randazzo."

*Second*, on June 2, 2023, Plaintiffs again asked FirstEnergy via email to re-review documents hitting on the term "Randazzo," this time on the basis that there were references in some produced emails to other correspondence that had not been produced.  FirstEnergy extensively reviewed documents in its possession to identify any communications corresponding to communications in the emails that Plaintiffs identified, again without success.  In any event, all of those communications were again from 2016, *i.e.*, outside of the agreed-upon time period and long before any retention obligation, and would not have been identified using the agreed-upon search parameters.  FirstEnergy explained to Plaintiffs, again, that the documents were not within the scope of FirstEnergy's searches in the first place, and that, accordingly, Plaintiffs had failed to identify a deficiency in FirstEnergy's review and production.  FirstEnergy thus again declined to re-review documents hitting on the term "Randazzo" that it had previously determined were not responsive.

On September 5, Plaintiffs again demanded that FirstEnergy re-review all documents that hit on the term "Randazzo" that FirstEnergy had previously deemed nonresponsive, and asked for the volume of such documents.  This time, as a purportedly "new" basis for this re-review, Plaintiffs pointed out that although FirstEnergy had produced screenshots and texts quoting communications between Mr. Dowling and Mr. Randazzo, certain of the underlying communications between the two of them were missing from FirstEnergy's productions.

- 16 -

FirstEnergy again conducted an extensive review of the documents it has, and on September 14, informed Plaintiffs via email that the underlying communications screenshotted or quoted in the examples provided by Plaintiffs are not in FirstEnergy's possession, custody, or control.

FirstEnergy is currently in the process of working with its discovery vendor to determine the volume of documents that would need to be re-reviewed, in response to Plaintiffs' request, and considering the burden of doing so in connection with Plaintiffs' other new requests.

***August 25 Request to Produce Documents Described on Privilege Logs As "Legal Advice Regarding Legal Department Cost Forecast and Expenditures" and Seven Additional Documents Plaintiffs Claim Are Related to Mr. Randazzo and Sustainability Funding Alliance of Ohio, Inc.*** In their August 25 letter, Plaintiffs demanded for the first time that FirstEnergy produce these documents or revise the associated privilege log entries, purportedly on the basis of the crime-fraud exception. FirstEnergy is evaluating each of these claims and is in the process of identifying and re-reviewing each of these documents for privilege, as well as the privilege descriptions for each.

***September 5 Request to Run Modified Search Terms.*** In FirstEnergy's September 1 letter, it agreed, as a compromise, to review and produce responsive documents for eight of Plaintiffs' 28 new proposed search terms that were not contained in the discovery protocol previously agreed by the parties. In so doing, FirstEnergy provided "hit count" data to Plaintiffs for all 28 terms to explain its position. On September 5, Plaintiffs demanded that FirstEnergy review and produce documents using another seven search terms, three of which are unchanged from Plaintiffs' initial proposal and four of which are modified terms from the original proposal. FirstEnergy is working diligently with its document vendor to run the new terms for 64 custodians and assessing the corresponding burden of the additional proposed review, and anticipates providing Plaintiffs with "hit count" data and its position this week.

***September 5 Request for Additional Custodians.***  In FirstEnergy's September 1 letter, it agreed, as a compromise, to review and produce any responsive documents from two additional custodians who were not included in the parties' agreed-upon discovery protocol.  On September 5, Plaintiffs asked FirstEnergy to run the original search term parameters over the documents of an additional eleven custodians who FirstEnergy had indicated were not likely to have responsive information during the initial discovery protocol negotiations.  FirstEnergy is considering this request and anticipates providing a response this week.

*          *          *

All the issues raised in Plaintiffs' recent letters require a significant amount of analysis of document collections and datasets, reviews, and productions.  FirstEnergy is employing the extensive resources necessary to provide full and accurate responses to Plaintiffs, and, as noted, expects to be able to do so this week.

FirstEnergy has consistently been willing to reach compromise in an effort to avoid burdening the Court unnecessarily, and remains willing to meet and confer with Plaintiffs in good faith on these most recent topics.  This Court has previously denied a motion to compel when parties "were in the midst of attempting to come to a workable solution regarding their discovery disputes" and the parties "ha[d] not exhausted all extrajudicial means for resolving their differences," leaving the Court unconvinced "that the parties' dispute has reached impasse." *Netjets Ass'n of Shared Aircraft Pilots* v. *NetJets, Inc.*, 2016 WL 5928791, at *2 (S.D. Ohio Oct. 12, 2016) (Jolson, M.J.).  The same is true here.  FirstEnergy respectfully requests that the Court defer addressing these issues until FirstEnergy has gathered the information sought by Plaintiffs and, after the parties discuss the information, the parties determine that they are unable to resolve any disputes.

Respectfully submitted,

| | |
|---|---|
| s/ Joseph F. Murray | s/ Thomas D. Warren (with permission) |

Joseph F. Murray, Trial Attorney (0063373)

MURRAY MURPHY MOUL
  + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

*Liaison Counsel*

Darren J. Robbins (admitted *pro hac vice*)
Mark Solomon (admitted *pro hac vice*)
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com

*Class Counsel*

Thomas D. Warren, Trial Attorney (0077541)

WARREN TERZIAN LLP
30799 Pinetree Rd., Suite 345
Pepper Pike, OH  44124
Telephone:  213/410-2620
tom.warren@warrenterzian.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Sharon L. Nelles (admitted *pro hac vice*)
David M.J. Rein (admitted *pro hac vice*)
Hilary M. Williams (admitted *pro hac vice*)
Beth D. Newton (admitted *pro hac vice*)
Nicholas F. Menillo (admitted *pro hac vice*)
Tasha N. Thompson (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  212/58-4000|
212/558-3588 (fax)
giuffrar@sullcrom.com
nelless@sullcrom.com
reind@sullcrom.com
williamsh@sullcrom.com
newtonb@sullcrom.com
menillon@sullcrom.com
thompsontas@sullcrom.com

Kamil R. Shields (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Ave., N.W., Suite 7000
Washington, DC  20006
Telephone:  202/956-7040
202/293-6330 (fax)
shieldska@sullcrom.com
*Attorneys for Defendant FirstEnergy Corp.*

| | |
|---|---|
| s/ Carole S. Rendon (with permission) | s/ Geoffrey J. Ritts (with permission) |

Carole S. Rendon, Trial Attorney (0070345)

Geoffrey J. Ritts (0062603)

4854-8451-2896.v1

Douglas L. Shively (0094065)
Daniel R. Warren (0054595)
Jeremy Steven Dunnaback (0098129)
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216/621-0200
216/696-0740 (fax)
crendon@bakerlaw.com
dshively@bakerlaw.com
dwarren@bakerlaw.com
jdunnaback@bakerlaw.com


Albert G. Lin
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
614-228-1541
Fax: 614-462-2616
alin@bakerlaw.com

George A. Stamboulidis (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212/589-4211
212/589-4201 (fax)
gstamboulidis@bakerlaw.corn

*Attorneys for Defendant Charles E. Jones*

Robert S. Faxon (0059678)
Corey A. Lee (0099866)
Stephen G. Sozio (0032405)
Adrienne F. Mueller (0076332)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: 216/586-3939
216/579-0212 (fax)
gjritts@jonesday.com
rfaxon@jonesday.com
calee@jonesday.com
sgsozio@jonesday.com
afmueller@jonesday.com


Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
M. Ryan Harmanis (0093642)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Telephone: 614/469-3939
614/461-4198 (fax)
mpduffy@jonesday.com
jbaumann@jonesday.com
rharmanis@jonesday.com

4854-8451-2896.v1

s/ Douglas M. Mansfield (with permission)

Douglas M. Mansfield (0063443)
LAPE MANSFIELD NAKASIAN
   & GIBSON, LLC
9980 Brewster Lane, Suite 150
Powell, OH  43065
Telephone:  614/763-2316
614/467-3704 (fax)
dmansfield@lmng-law.com

Michael L. Kichline (admitted *pro hac vice*)
Laura H. McNally (admitted *pro hac vice*)
Emily S. Kimmelman (admitted *pro hac vice*)
Karen Pieslak Pohlmann (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921

Telephone:  215/963-5000
215/963-5001 (fax)
michael.kichline@morganlewis.com
laura.mcnally@morganlewis.com
emily.kimmelman@morganlewis.com
karen.pohlmann@morganlewis.com

*Attorneys for Defendant Dennis M. Chack*

s/ Brian P. O'Connor (with permission)
Brian P. O'Connor (0086646)

Scott B. Scheinberg (admitted *pro hac vice*)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514
Telephone:  412/391-3939
412/394-7959 (fax)
sscheinberg@jonesday.com
*Attorneys for Defendants Steven E. Strah, K. Jon Taylor, Jason J. Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, and Leslie M. Turner*

s/ John F. McCaffrey (with permission)
John F. McCaffrey (0039486)

- 21 -

4854-8451-2896.v1

SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, OH  45202
Telephone:  513/721-4450
513/852-5994 (fax)
bpo@santenhughes.com

Preston Burton (admitted *pro hac vice*)
Adam Miller (admitted *pro hac vice*)
Bree Murphy (admitted *pro hac vice*)
Jill Winter (admitted *pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE
2001 M Street NW, Suite 500
Washington, DC  20036
Telephone:  202/349-8000
202/349-8080 (fax)
pburton@orrick.com
adam.miller@orrick.com
bmurphy@orrick.com
jwinter@orrick.com

*Attorneys for Defendant Donald R. Schneider*

s/ James E. Arnold (with permission)
James E. Arnold (0037712)
Gerhardt A. Gosnell II (0064919)
ARNOLD & CLIFFORD LLP
115 W. Main St., Fourth Floor
Columbus, OH  43215
Telephone:  614/460-1600
614/469-1093 (fax)
jarnold@arnlaw.com
ggosnell@arnlaw.com

Veronica E. Callahan (admitted *pro hac vice*)
Aaron F. Miner (admitted *pro hac vice*)
Yiqing Shi (admitted *pro hac vice*)
ARNOLD & PORTER KAYE
  SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone:  212/836-8000
212/836-8689 (fax)
aaron.miner@arnoldporter.com
veronica.callahan@arnoldporter.com
yiqing.shi@arnoldporter.com

John A. Favret (0080427)
Hannah M. Smith (0090870)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113
Telephone:  216/592-5000
216/592-5009 (fax)
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com
hannah.smith@tuckerellis.com

Steve Grimes (admitted *pro hac vice*)
Dan K. Webb (admitted *pro hac vice*)
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL  60601
Telephone:  312/558-5600
312/558-5700 (fax)
sgrimes@winston.com
dwebb@winston.com

*Attorneys for Defendant Michael J. Dowling*

s/ Timothy D. Katsiff (with permission)
Jeremy R. Teaberry (0082870)
Timothy D. Katsiff (admitted *pro hac vice*)
David L. Axelrod (admitted *pro hac vice*)
Emilia McKee Vassallo (admitted *pro hac vice*)
Brittany M. Wilson (admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone:  215/665-8500
215/864-8999 (fax)
teaberryj@ballardspahr.com
katsifft@ballardspahr.com
axelrodd@ballardspahr.com
mckeevassalloe@ballardspahr.com
wilsonbm@ballardspahr.com

*Attorneys for Defendant James F. Pearson*

- 22 -

4854-8451-2896.v1

Andrew C. Johnson (admitted *pro hac vice*)
ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202/942-5631
andrew.johnson@arnoldporter.com

*Attorneys for Defendant Leila L. Vespoli*

s/ John R. Mitchell (with permission)
John R. Mitchell (0066759)
Michael J. Zbiegien Jr. (0078352)
Kelsey Hughes-Blaum (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Telephone: 216/706-3909
216/241-3707 (fax)
jmitchell@taftlaw.com
mzbiegien@taftlaw.com
khughesblaum@taftlaw.com

*Attorneys for Defendant Ty R. Pine*

s/ Andrew P. Guran (with permission)
Andrew P. Guran (0090649)
VORYS, SATER, SEYMOUR
  & PEASE LLP
50 South Main Street, Suite 1200
Akron, OH 44308-1471
Telephone: 330/208-1000
330/208-1001 (fax)
apguran@vorys.com

Victor A. Walton, Jr. (0055241)
Joseph M. Brunner (0085485)
VORYS, SATER, SEYMOUR
  & PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
Telephone: 513/723-4000
513/723-4056 (fax)
vawalton@vorys.corn
jmbrunner@vorys.com

*Attorneys for Defendant John Judge*

s/ John C. Fairweather (with permission)
John C. Fairweather (0018216)
Lisa S. DelGrosso (0064938)
BROUSE McDOWELL
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330/535-5711
330/253-8601 (fax)
jfairweather@brouse.com
ldelgrosso@brouse.com

Stephen S. Scholes (admitted *pro hac vice*)
Paul M.G. Helms (admitted *pro hac vice*)
Samantha L. Fenton (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60606-0029
Telephone: 312/372-2000
312/984-7700 (fax)
sscholes@mwe.com
phelms@mwe.com
sfenton@mwe.com

*Attorneys for Defendant Robert P. Reffner*

- 23 -

4854-8451-2896.v1

s/ Robert W. Trafford (with permission)
Robert W. Trafford, Trial Attorney (0040270)
David S. Bloomfield, Jr. (0068158)
PORTER, WRIGHT, MORRIS
   & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH  43215-6194
Telephone:  614/227-2000
614/227-2100 (fax)
rtrafford@porterwright.com
dbloomfield@porterwright.com

Brian S. Weinstein (admitted *pro hac vice*)
Eric M. Kim (admitted *pro hac vice*)
Joshua N. Shinbrot (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017
Telephone:  202/450-4000
brian.weinstein@davispolk.com
eric.kim@davispolk.com
joshua.shinbrot@davispolk.com

*Attorneys for the Underwriter Defendants
Barclays Capital Inc., BofA Securities, Inc.,
Citigroup Global Markets Inc., J.P. Morgan
Securities LLC, Morgan Stanley & Co. LLC,
Mizuho Securities USA LLC, PNC Capital
Markets LLC, RBC Capital Markets, LLC,
Santander Investment Securities Inc., Scotia
Capital (USA) Inc., SMBC Nikko Securities
America, Inc., CIBC World Markets Corp.,
KeyBanc Capital Markets Inc., TD Securities
(USA) LLC, U.S. Bancorp Investments, Inc.,
and MUFG Securities Americas Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically on September 18, 2023.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Joseph F. Murray*
Joseph F. Murray (0063373)

4854-8451-2896.v1