**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson |
| MFS Series Trust I, et al., | ) ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendant. | ) ) ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiff(s), | ) ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendant. | ) ) | |

**FIRSTENERGY'S SUBMISSION REGARDING QUESTIONS RAISED**
**AT THE SEPTEMBER 28, 2023 STATUS CONFERENCE**

**[REDACTED]**

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ................................................................................................. 1

**ARGUMENT** ............................................................................................................................ 3

I.     FIRSTENERGY MAY PROPERLY INSTRUCT WITNESSES NOT TO
REVEAL INFORMATION LEARNED SOLELY THROUGH PRIVILEGED
OR PROTECTED COMMUNICATIONS ........................................................................ 3

II.    MOVANTS HAVE NO BASIS TO DEPOSE FIRSTENERGY'S COUNSEL ................ 8

**OFFER OF COMPROMISE** ................................................................................................... 10

**CONCLUSION** ....................................................................................................................... 10

**APPENDIX A** ......................................................................................................................... 13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Buford* v. *Holladay*,
    133 F.R.D. 487 (S.D. Miss. 1990) ............................................................2

*Dzierbicki* v. *Twp. of Oscoda*,
    2009 WL 1491116 (E.D. Mich. May 26, 2009)......................................4

*E.E.O.C.* v. *Texas Hydraulics, Inc.*,
    246 F.R.D. 548 (E.D. Tenn. 2007)..........................................................2

*FTC* v. *Boehringer Ingelheim Pharms., Inc.*,
    892 F.3d 1264 (D.C. Cir. 2018) ..............................................................4

*Hilton-Rorar* v. *State & Fed. Commc'ns Inc.*,
    2010 WL 1486916 (N.D. Ohio Apr. 13, 2010).......................................4

*Kennedy* v. *City of Zanesville*,
    2006 WL 8442130 (S.D. Ohio Oct. 20, 2006)........................................5

*In re Lott*,
    424 F.3d 446 (6th Cir. 2005) ..................................................................6

*Melea Ltd.* v. *All. Gas Sys.*,
    2005 WL 8154557 (E.D. Mich. May 26, 2005)......................................4

*Mine Safety Appliances Co.* v. *N. River Ins. Co.*,
    2012 WL 12930313 (W.D. Pa. Apr. 21, 2012)........................................3

*Nationwide Mut. Ins. Co.* v. *Home Ins. Co.*,
    278 F.3d 621 (6th Cir. 2002) ...............................................................3, 8

*Ohio Ass'n of Elementary Sch. Adm'rs* v. *Educ. Impact, Inc.*,
    2012 WL 3731487 (S.D. Ohio Aug. 28, 2012).......................................8

*Peralta* v. *Cendant Corp.*,
    190 F.R.D. 38 (D. Conn. 1999)...............................................................3

*Summers* v. *Rockwell Int'l Corp.*,
    1993 WL 1480622 (S.D. Ohio 1993)......................................................4

*United States* v. *Sadler*,
24 F.4th 515 (6th Cir. 2022) ...................................................................................4

*Upjohn Co.* v. *United States*,
449 U.S. 383 (1981) ...............................................................................................5, 8

**Rules**

Fed. R. Civ. P. 26 .............................................................................................................6

**Other Authorities**

Jerome G. Snider, Howard A. Ellins, & Michael S. Flynn, *Corporate Privileges &
Confidential Information* § 3.08 (2023) ..................................................................8

Paul F. Rothstein & Sydney A. Beckman, *Federal Testimonial Privileges* § 2:10
(2022) .......................................................................................................................3

## PRELIMINARY STATEMENT

At the September 28, 2023 conference, the Special Master requested supplemental briefing on two questions: (i) whether it is appropriate to "tell witnesses not to answer questions if the facts that would be responsive to the question came from a lawyer"; and (ii) if yes, whether Movants could "depose [FirstEnergy's] attorneys" to obtain that same information. (Ex. 1 (Sept. 28, 2023 Hr'g Tr.) at 70:15–25.)[1] For the reasons below, the answer to the first question is yes, if the lawyer was the sole source of that information, and the answer to the second is no.

*First*, it was entirely proper for the Company's present and former directors and employees to be cautioned not to reveal information that they learned *solely* from counsel. It is true that underlying facts conveyed to a lawyer do not become immune from discovery. But that is not the issue here. Movants contend that they are entitled to question directors and employees about their communications with counsel to discover factual information that those persons know *only* because it was conveyed to them by FirstEnergy's or the Board's lawyers as part of their legal representation. Under established law, Movants are not.

Lawyers for plaintiffs and defendants regularly develop information in the course of representing clients. Lawyers investigate facts, interview employees, review documents, conduct research, and analyze evidence to provide legal advice and prepare for litigation. Here, for example, FirstEnergy's lawyers conducted an internal investigation and presented information they developed to the Company's Board of Directors and Independent Review Committee ("IRC") in order to provide legal advice about H.B. 6-related matters, including about assessing criminal and civil liability, entering into the Deferred Prosecution Agreement ("DPA") with the U.S. Department of Justice ("DOJ"), employment actions, and preparing for litigation. It is black-letter

---

[1] "Ex." refers to Exhibits to the Declaration of Hilary M. Williams, submitted herewith.

law that communications between clients and lawyers about information are privileged to the extent that the information is intertwined with legal advice. *See infra* at 3–4. Requiring witnesses to testify about information obtained solely from their lawyer also would reveal the lawyer's work product, including the lawyer's assessment of the relevance of information, the reliability of evidence, and the conclusions drawn from the lawyer's review of evidence. *See infra* at 5.

The parties must play by the same rules in this action. FirstEnergy is not entitled to information that named Plaintiffs learned solely from *their* lawyers' investigation in advance of filing the complaint. As courts have held with respect to both pleadings and internal investigations, the "mere fact that the end product of an attorney-client relationship is a [public] document" (or public statement) does not waive privilege as to underlying attorney-client communications. *Buford* v. *Holladay*, 133 F.R.D. 487, 492 (S.D. Miss. 1990); *see E.E.O.C.* v. *Texas Hydraulics, Inc.*, 246 F.R.D. 548, 557 (E.D. Tenn. 2007) (investigation context). Moreover, Movants have full access to the underlying facts through non-privileged sources, including FirstEnergy's production of more than 1,000,000 pages of documents, *and witnesses who actually do have personal, contemporaneous knowledge*, including many of the same people who were interviewed in connection with the internal investigations. *See infra* at 6.

*Second*, deposing counsel about information that counsel learned or identified in their internal investigations of the events underlying the complaint is not permitted, just as deposing Plaintiffs' counsel regarding the information learned or identified in the process of developing the facts underlying the complaint would be impermissible. Such depositions plainly would reveal (i) the privileged legal advice counsel provided to its client, (ii) the contents of privileged communications in which counsel learned the information, and (iii) counsel's mental processes and assessment of the evidence, which is protected work product. Under the stringent

Sixth Circuit test, opposing counsel can be deposed only if "(1) no other means exist to obtain the information"; "(2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co.* v. *Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002). Movants have made no such showing.

## ARGUMENT

## I. FIRSTENERGY MAY PROPERLY INSTRUCT WITNESSES NOT TO REVEAL INFORMATION LEARNED SOLELY THROUGH PRIVILEGED OR PROTECTED COMMUNICATIONS.

During depositions, counsel for FirstEnergy has properly instructed directors and employees not to reveal information learned solely through their privileged communications with the Company's or Board's counsel. *See, e.g.*, *Mine Safety Appliances Co.* v. *N. River Ins. Co.*, 2012 WL 12930313, at *4 (W.D. Pa. Apr. 21, 2012) (sustaining objection "to a question about information conveyed by inside counsel to [the witness]"); *Peralta* v. *Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999) (similar); Paul R. Rothstein & Sydney A. Beckman, *Federal Testimonial Privileges* § 2:10 n.21 (Oct. 2022) ("[I]nformation known only as the result of a confidential communication" is "ordinarily privileged."). That information is subject to both the attorney-client privilege and work product.

*First*, requiring FirstEnergy directors and employees to testify about facts that they learned solely from counsel in connection with obtaining legal advice would violate the attorney-client privilege. Here, Movants seek to discover what counsel told the Board and the Company about the findings of their internal investigation. But counsel shared that information while giving legal advice, including about potential liability and entering into the DPA. The privilege extends to such communications *about* facts because those facts, or assessments of developing information, are intertwined with privileged legal advice. Courts have recognized this distinction and rejected similar attempts to obtain purportedly "factual" information that clients learned solely from their

counsel in connection with obtaining such legal advice. *See, e.g.*, *Dzierbicki* v. *Twp. of Oscoda*, 2009 WL 1491116, at *1, *3 (E.D. Mich. May 26, 2009) (sustaining instruction not to answer questions about plaintiff's termination "if the only basis for [the deponent's] answers is to recall a conversation [he] had . . . in the presence of counsel"); *Summers* v. *Rockwell Int'l Corp.*, 1993 WL 1480622, at *5 (S.D. Ohio Apr. 9, 1993) (second alteration in original) (ordering counsel to "emphasize to each employee interviewed that no information learned by that employee as a result of communications with counsel . . . should be disclosed"). Movants have likewise given similar instructions in this litigation. *See* App'x A (citing examples).

   *Second*, requiring FirstEnergy witnesses to reveal information solely learned from counsel risks revealing the contents of a *second* privileged conversation in which *counsel* learned that information. Lawyers brought in to investigate are not eyewitnesses; investigation counsel learned information as their investigations developed—such as from FirstEnergy employees, documents provided by their client to obtain legal advice, or independent research. While contemporaneous facts known to a client are not privileged, client communications sharing facts with a lawyer to obtain or facilitate the provision of legal advice are privileged. *See FTC* v. *Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) (although "underlying facts and data" possessed by employees are discoverable, "transmission of factual information" from employees to counsel to assess possible settlement is privileged); *Melea Ltd.* v. *All. Gas Sys.*, 2005 WL 8154557, at *3 (E.D. Mich. May 26, 2005) (similar).[2]

---

[2]  In *United States* v. *Sadler*, the Sixth Circuit held that "communications are not protected when an attorney conveys to his client facts acquired *from other persons or sources*," but did not suggest that no privilege applies when the information comes from the client. 24 F.4th 515, 557 (6th Cir. 2022) (emphasis added); *see also Hilton-Rorar* v. *State & Fed. Commc'ns Inc.*, 2010 WL 1486916, at *7 (N.D. Ohio Apr. 13, 2010) ("the privilege does not protect an attorney's statements to his client when the attorney is only acting as a conduit"). Here, FirstEnergy's counsel were not merely "acting as a conduit" and "relaying" bare facts learned from third-party, non-client sources.

*Third*, requiring FirstEnergy witnesses to testify to information learned from counsel, in addition to violating attorney-client privilege, would impermissibly reveal counsel's protected judgments about the reliability and relevance of that information, thereby violating the work product doctrine. Lawyers conducting a corporate investigation must "sif[t] through the facts with an eye to the legally relevant." *Upjohn Co.* v. *United States*, 449 U.S. 383, 390–91 (1981). For example, when counsel advised the Company's Board, their advice was based on developing information that the lawyers determined was significant, reliable, and relevant. Revealing that information to opposing counsel would invade protected work product. *Kennedy* v. *City of Zanesville*, 2006 WL 8442130, at *5–6 (S.D. Ohio Oct. 20, 2006) (denying request for counsel deposition because investigation, including "factual basis for some of the conclusions," is work product); *see Upjohn*, 449 U.S. at 390–91 (relevance assessments entail "professional judgment").

*Fourth*, to arrive at their understanding of a "fact," lawyers must often make credibility judgments and reconcile imperfect, inconsistent, or contradictory evidence identified during their investigation. Although Movants couched their questions as seeking "facts," they often actually sought counsel's evaluation of evidence identified in their internal investigation. For example, during FirstEnergy's 30(b)(6) deposition, Plaintiffs asked the witness to identify the "facts . . . [that a Board] committee ha[d] *that supported its recommendation* . . . to replace [the Company's then-CEO]." (Ex. 9 (Storsin Tr.) at 62:22–65:19 (emphasis added).) Answering that question would invade the attorney-client privilege and "reveal [FirstEnergy's] attorneys' mental process in evaluating" documents and testimony during the internal investigations. *Upjohn*, 449 U.S. at 401; *see also Kennedy*, 2006 WL 8442130, at *4–6 (S.D. Ohio Oct. 20, 2006) ("[C]ounsel's examination of the facts, his sifting through them, and the reasons/facts supporting his recommendations to his client are not discoverable, core attorney work product.").

*Finally*, with narrow exceptions, the attorney-client privilege is an absolute protection. *See In re Lott*, 424 F.3d 446, 451 (6th Cir. 2005) ("With privileged communications . . . one may simply refuse to reveal the confidences communicated to an attorney."). Because none of those narrow exceptions applies here, *see* FirstEnergy's Opposition to Motion to Compel, ECF No. 510 at 13–27, there is no need to evaluate whether Plaintiffs have a basis to overcome the work product protection applicable to FirstEnergy's internal investigation.

Even if privilege did not apply, Plaintiffs could not show a "substantial need for the materials" *and* that no "substantial equivalent" evidence is available. Fed. R. Civ. P. 26(b)(3)(A). FirstEnergy has produced more than 1,000,000 pages of documents, including emails, text messages, local files, board materials, presentations, talking points, and calendar entries. Other parties and third parties have produced hundreds of thousands more. Movants have taken or noticed depositions of over fifty witnesses, most of whom must make themselves available for up to *eighteen hours of record time over two days*. ECF No. 355 at 1–2. Movants have also had the benefit of discovery conducted by the DOJ, the U.S. Securities and Exchange Commission, the Federal Energy Regulatory Commission, the Ohio Attorney General, and the Public Utilities Commission of Ohio into the same subject matter at issue in this action. FirstEnergy has produced to Movants *all* discovery that it has provided to those agencies. The DOJ investigation also resulted in a DPA between DOJ and FirstEnergy in which FirstEnergy admitted to a detailed statement of facts describing conduct relevant to Plaintiffs' complaint. In short, Movants have not met their burden of showing a "substantial need" to rummage through the files of FirstEnergy's counsel or that no "substantial equivalent" evidence is available.

To cite some examples, when a former FirstEnergy director was asked about a 501(c)(4) entity called Generation Now, she responded that everything she knew about that entity

"was a result of conversations with my lawyers." (Ex. 2 (Johnson Tr.) at 64:5–21.) Answering the question otherwise would not reveal first-hand knowledge, but instead information about Generation Now that counsel developed in the investigations and judged relevant to share in providing privileged legal advice. But Movants can depose witnesses with first-hand knowledge about Generation Now, such as Michael Dowling, Joel Bailey, or Michael Van Buren.

Likewise, FirstEnergy's counsel instructed ████████████████████



████ Answering the question would have revealed both privileged communications and counsel's work product. Notably, FirstEnergy did not prevent Plaintiffs from asking ████

Plaintiffs are also wrong to complain that FirstEnergy's privilege instructions are creating a "horribly misleading record," because witnesses supposedly are being told "put out of your mind anything you ever learned from any lawyer" and are answering "no" when asked if they are "aware of any information that Chuck Jones violated FirstEnergy's code of conduct." (Ex. 1 at 20:7–22.) There is nothing "horribly misleading" about protecting privileged advice about whether certain facts constituted violations of law or internal policies. Moreover, FirstEnergy has produced extensive documents relating to Mr. Jones's conduct, and Plaintiffs may ask witnesses about their contemporaneous knowledge of his conduct. And Plaintiffs are more than capable of obtaining such opinion testimony (however irrelevant and otherwise objectionable it may be) from

witnesses without personal knowledge by simply laying a foundation or asking the witness to assume whatever facts Plaintiffs think are relevant.  Indeed, Plaintiffs have done exactly that. ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

## II.    MOVANTS HAVE NO BASIS TO DEPOSE FIRSTENERGY'S COUNSEL.

Permitting opposing counsel to depose one another would be improper and unworkable and would substantially delay the progress of this already-complex action.  In the Sixth Circuit, deposing counsel is an extraordinary remedy that is prohibited unless "(1) no other means exist to obtain the information"; "(2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co.*, 278 F.3d at 628.  Movants fail at every step of that required showing.

The rare cases allowing counsel depositions limit those depositions to testimony as to non-privileged information known to the lawyer in his capacity as a contemporaneous fact witness (where no other witness is available), not, as here, as after-the-fact investigative counsel. *See Ohio Ass'n of Elementary Sch. Adm'rs* v. *Educ. Impact, Inc.*, 2012 WL 3731487, at *2 (S.D. Ohio Aug. 28, 2012) (allowing counsel deposition as to non-privileged communications *with the opponent* where communications were "crucial" to counterclaim and "unobtainable otherwise").

Here, investigative counsel had no contemporaneous knowledge of the underlying facts relevant to the complaint.  Counsel's information was developed from reviewing documents, interviewing witnesses, and conducting independent research.  In litigation, a claimant is entitled to evidence, but discovery is "hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Upjohn*, 449 U.S. at 396; *see also* Jerome G. Snider, Howard A. Ellins, & Michael S. Flynn, *Corporate Privileges & Confidential Information*

§ 3.08 n.61 (2023) ("[A]n attorney [generally] cannot be deposed to obtain information regarding the attorney's knowledge, legal theories, or opinions of the merits of the action.").

Movants have not identified any particular topic for which opposing counsel's testimony is "relevant," "non-privileged," "crucial" and "otherwise unavailable." Their motion papers and argument at the September 28 conference suggest they are focused on the topics below, all of which fail to meet the Sixth Circuit's stringent test.

1. ***Employment Actions***. FirstEnergy's and the IRC's post-class period termination or separation decisions were made through extensive deliberations with counsel in privileged communications. *See, e.g.*, Ex. 2 (Johnson Tr.) at 205:24–208:16 (IRC made employment decisions after "receiving information from the lawyers, analyzing that information . . . [and having] conversations with the lawyers"). Deposing counsel thus fails the Sixth Circuit's requirement that the information sought be "nonprivileged." Nor is FirstEnergy (or any other defendant) raising post-class period actions as a defense. And the contemporaneous conduct of employees who were terminated or separated *is* fully subject to discovery—it is only privileged communications, and counsel's work product, about later employment actions that are protected.

2. ***Public Disclosures and DPA***. Communications among FirstEnergy's Board, executives, and counsel in preparing public disclosures and entering into the DPA are privileged. Moreover, the facts in the DPA have been admitted by FirstEnergy, and Movants can test those facts through the massive documentary and testimonial record in this case, including all documents that FirstEnergy provided to the DOJ prior to entering into the DPA.

3. ***Information Underlying the Testimonial Aid***. FirstEnergy's deliberations over the preparation of the Testimonial Aid used for FirstEnergy's second, court-ordered 30(b)(6) deposition took place through privileged communications with counsel and also reflect counsel's

work product.  The Testimonial Aid itself contained facts and conclusions, and the parties were provided a copy in advance of the deposition so they could probe those facts and conclusions. Movants can further test those statements through the documentary and testimonial record in this case; indeed, they have chosen to use the Testimonial Aid as deposition exhibits to do just that.

Finally, allowing depositions of counsel in this action would be unworkable.  If Movants were entitled to depose opposing counsel, FirstEnergy would have every right to depose (at a minimum) Class Plaintiffs' attorneys regarding the facts underlying the operative complaint, about which named Plaintiffs have admitted they know nothing.  Ex. 5 (Innes Tr.) at 81:3–6; 85:13–86:25 (corporate representative of named Plaintiff "d[id]n't know" what Plaintiff's understanding was of the claims in the complaint, and testified that no one "other than Robbins Geller [] perform[ed] an investigation" into various allegations).  *All* such depositions (on both sides) would likely draw motions to quash and objections to the district court, regardless of which party prevails.  And if a lawyer deposition were to go forward, as the Special Master noted at the September 28 conference, "I think I would just have to go to the depo because I think you guys would be calling me every five minutes."  (Ex. 1 at 67:16–19.)

## OFFER OF COMPROMISE

In the interest of finding a practical path forward, FirstEnergy respectfully proposes that Movants inquire through interrogatories about any specific, relevant information to which Movants believe they lack access.  If FirstEnergy cannot identify non-privileged sources of responsive information, the parties can raise those specific issues at a future status conference. This proposal will narrow any disputes to facts that cannot otherwise be discovered.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Respectfully,

*/s/ Thomas D. Warren*
Thomas D. Warren, Trial Attorney (0077541)
WARREN TERZIAN LLPs
30799 Pinetree Road, Suite 345
Pepper Pike, OH  44124
Telephone:  (213) 410-2620
tom.warren@warrenterzian.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
Tasha N. Thompson (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone:  (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

## DECLARATION OF SERVICE

I certify that the foregoing was filed electronically on October 5, 2023.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Thomas D. Warren*
Thomas D. Warren (0077541)

*Counsel for Defendant FirstEnergy Corp.*

**Appendix A**
**Movants' Privilege Instructions And Objections[3]**

| Deposition Cite | Deponent Title/Affiliation | Questioning/Defending Attorney (Lawyer, Law Firm) | Instruction/Objection |
|---|---|---|---|
| Eleanor Innes Tr. (Ex. 5) at 193:9–194:10 | Senior Vice President, Chief Trust Officer, Amalgamated Bank | Counsel for Plaintiffs (Tor Gronborg, Robbins Geller) (defending the witness). | MS. COLEMAN. *Do you know whether Robbins Geller conducted its own investigation* on Amalgamated Bank's behalf related to the allegations in the lawsuit?<br>MR. GRONBORG: And I'll just counsel Ms. Innes, you can -- *actually, I'm not sure there's any way to answer that without disclosing attorney/client communications, so I'm going to instruct the witness not to answer.*<br>MS. COLEMAN: So, Tor, this is do you know. So it would be a yes or no as to whether or not the investigation occurred, not the substance of the investigation.<br>MR. GRONBORG: *I just don't know how she would know that outside of communications with counsel.*<br>MS. COLEMAN: Okay. So you're --<br>MR. GRONBORG: You're asking for basically the substance of a communication.<br>MS. COLEMAN: So this is what Amalgamated Bank knows occurred on its behalf, so if you're instructing the witness not to answer, I'll move on.<br>MR. GRONBORG: Yeah. I just, *I don't know how the witness can answer without it disclosing attorney/client communication.* |

---

[3] All emphasis added. Plaintiff Movants are in red cells. Defendant Movants are in blue.

| Deposition Cite | Deponent Title/Affiliation | Questioning/Defending Attorney (Lawyer, Law Firm) | Instruction/Objection |
|---|---|---|---|
| Julia Johnson Tr. (Ex. 2) at 348:1–10 | Former Member of Board of Directors, FirstEnergy | Counsel for Dowling (John McCaffrey, Tucker Ellis) (questioning the witness). | [Q.] Throughout this entire deposition, *I don't want you to testify to any information that you have learned exclusively through a communication with a lawyer*. If you learned of a communication with a lawyer, but you also learned of it through another source, I want to know that information. But *if you've learned of it exclusively through a communication with a lawyer, then don't -- don't, you know, provide that information, don't disclose that*. |
| Julia Johnson Tr. (Ex. 2) at 400:8–17 | Former Member of Board of Directors, FirstEnergy | Counsel for Jones (Rachael Israel, BakerHostetler) (questioning the witness). | I want to make clear from the outset that *I am not at any time during my questioning seeking communications between yourself and your counsel*. Ms. Duffy will, of course, caution you as she feels appropriate, but I wanted to let you know that that is not my intention. If there is a question that I ask you that would solicit communications that you believe to be privileged, you shouldn't share those. You should consult with your counsel. |
| Thomas Mitchell Tr. (Ex. 6) at 75:11–14 | Former Member of Board of Directors, FirstEnergy | Counsel for Plaintiffs (Francis Karam, Robbins Geller) (questioning the witness). | [Q.] I'm going to be asking you about events in this paper, but *I'm going to be asking you not what you learned from the lawyers, but whether you knew about them at the time*. |
| Thomas Mitchell Tr. (Ex. 6) at 311:1–4 | Former Member of Board of Directors, FirstEnergy | Counsel for Jones (Rachael Israel, BakerHostetler) (questioning the witness). | [Q.] I want to let you know that *it is not my intention at any time to seek testimony regarding your communications with counsel*. |

| Deposition Cite | Deponent Title/Affiliation | Questioning/Defending Attorney (Lawyer, Law Firm) | Instruction/Objection |
|---|---|---|---|
| Thomas Mitchell Tr. (Ex. 6) at 354:6–12 | Former Member of Board of Directors, FirstEnergy | Counsel for Jones (Rachael Israel, BakerHostetler) (questioning the witness). | [Q.] So let me ask you a series of questions based on a specific premise, okay, and that premise is that I am looking for the information or knowledge that you have today, but *I am not seeking any information that you learned in communications with your counsel.* Do you understand the premise? |
| John Schmitt Tr. (Ex. 7) at 209:15–210:11 | Former Chairman of the Board, Wisconsin Laborers' Pension Fund | Counsel for Plaintiffs (Hillary Stakem, Robbins Geller) (defending the witness). | Q. Do you know if the contingency fee was negotiated between Robbins Geller and Wisconsin Laborers? MS. STAKEM: Objection to form. Don't answer that one, John. MR. LEE: And what's your basis for him not answering? MS. STAKEM: That you're asking about communications that our client had with Robbins Geller. MR. LEE: Okay. And I just want to make sure. I'm not asking for the content of any communications. I'm asking if a communication took place. Is it your -- you're objecting to whether or not he can answer if a communication occurred? MS. STAKEM: Well, you're asking about whether a communication about a particular topic occurred, at which point -- I mean, it's kind of implied. You can't ask about whether a communication on a specific topic occurred without invading the privilege. |

| Deposition Cite | Deponent Title/Affiliation | Questioning/Defending Attorney (Lawyer, Law Firm) | Instruction/Objection |
|---|---|---|---|
| ███ | ███ | ███ | ███ |
| | | | ███ |

| Deposition Cite | Deponent Title/Affiliation | Questioning/Defending Attorney (Lawyer, Law Firm) | Instruction/Objection |
|---|---|---|---|
| Jerry Sue Thornton Tr. (Ex. 8) at 219:21–220:2 | Former Member of Board of Directors, FirstEnergy | Counsel for Jones (Jeremy Dunnaback, BakerHostetler) (questioning the witness). | [Q.] In my questioning today, *I'm not seeking any information that your counsel, Ms. Duffy or otherwise, may have given to you in preparation for this deposition or otherwise. And everything that I ask you, I'm looking for just your personal knowledge, not what your counsel may have related;* does that make sense? |