**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE FIRSTENERGY CORP.<br>SECURITIES LITIGATION, | Case No. 2:20-cv-3785 |
| This document relates to: | Chief Judge Algenon L. Marbley |
| ALL ACTIONS. | Magistrate Judge Kimberly A. Jolson |

## <u>ORDER BY SPECIAL MASTER</u><br><u>ON MOTION FOR PROTECTIVE ORDER (ECF NO. 552)</u>

This matter is before the undersigned for consideration of the November 1, 2023 Motion for Protective Order to Stay or Limit the November 7-8, 2023 Deposition of Non-Party Ebony Yeboah-Amankwah (ECF No. 552). The motion came on for an oral hearing on November 2, 2023, and at the conclusion of that hearing the undersigned **DENIED** the motion. This Order memorializes that oral decision and sets forth the rationale pursuant to Federal Rule of Civil Procedure 53(d).

## <u>BACKGROUND</u>

Yeboah-Amankwah is a former employee of Defendant FirstEnergy Corp. who served as General Counsel and Chief Ethics Officer. Her employment extended into the 2020 time period of the internal investigation at FirstEnergy Corp. that presents the privilege dispute also pending before the Court and, by extension, before the undersigned. She has been subpoenaed for a two-day deposition set for November 7-8, 2023.

Given the unresolved state of the privilege dispute, Plaintiffs and Yeboah-Amankwah met and conferred over her deposition dates; she apparently sought to reschedule or to obtain an agreement that Plaintiffs would not seek to re-open her deposition on the internal investigation should Plaintiffs prevail on the privilege issue. The parties were unable to come to an agreement.

On November 1, 2023, just six days before her deposition is scheduled to begin, Yeboah-Amankwah filed the instant motion for a protective order.  (Motion, ECF No. 552.)  She seeks an order staying her deposition until after resolution of the privilege dispute and offers to meet and confer with Plaintiffs to set a new deposition date after resolution of the privilege dispute.  Alternatively, she asks that if her deposition proceeds on November 7, 2023, she obtain an order preventing Plaintiffs from re-opening her deposition to elicit testimony related to the internal investigation.[1]

---

[1]  Yeboah-Amankwah has submitted a proposed filing styled as a Report and Recommendation as opposed to an Order.  The undersigned reads the Court's September 12, 2023 Order Appointing Special Master as permitting any of a number of filings as appropriate: orders, reports, and report and recommendations.  Order, ECF No 541 at PageID 11687 (delineating filings as "order," "finding," "report," or "recommendation" and "orders, reports or recommendations").

Moreover, in the list of the Special Master duties, the Court granted the undersigned the authority to "direct and supervise the production of discovery," to "review and attempt to resolve informally any discovery conflicts," and to "generally supervise formal discovery and any informal exchanges of information."  *Id.* at 11684.  These are all phrased as implementing active control as opposed to merely recommending action to the Court (e.g., "direct and supervise the production of discovery" versus "recommending how the Court should direct and supervise the production of discovery").  This language is in contrast to other duties that unquestionably contemplate a report or report and recommendation.  *See id.* at 11685 ("Make recommended findings of fact and conclusions of law on any substantive non-dispositive motion(s)").

In other words, orders will be non-case dispositive decisions subject to Court review, but not requiring formal adoption absent objection, while reports and recommendations will necessitate Court action and may involve recommendations on dispositive issues with which the undersigned is directed to assist.

The difference between an order and a report and recommendation is ultimately immaterial if there is an objection, given that the same 21-day period applies to whatever the undersigned files.  The undersigned notes the distinction between types of filings here simply (1) to avoid crowding the Court's docket with unobjected-to report and recommendations that should have been filed as orders because they did not necessitate action by the Court and (2) to explain to the parties and the Court why different filings by the undersigned will bear different titles.

Shortly after Yeboah-Amankwah filed her motion, Plaintiffs' counsel emailed the undersigned and opposing counsel what is essentially an email brief consisting of seven core points and discussion, as well as an attachment consisting of copies of the emails exchanged regarding the deposition. The undersigned has elected to treat this material as a memorandum in opposition.

By necessity, the planned video status conference with the parties already set for November 2, 2023 became an on-the-record oral argument on Yeboah-Amankwah's motion.[2] Both sides presented their arguments in regard to the motion. During the hearing, the undersigned informed the parties that an issue on the privilege dispute would be field on November 6, 2023, the day prior to the scheduled deposition. Yeboah-Amankwah's counsel argued that if the undersigned were to find no privilege existed, her client would not be able to testify on the issues by the next day. If the undersigned found that privilege existed, counsel argued, Plaintiffs would have 21 days to object and the parties could be in the same position they are now, facing a deposition with uncertainty over its scope and whether it would be re-opened later. Accordingly, Yeboah-Amankwah requested that her deposition be stayed until after the 21-day objection period.

At the conclusion of the hearing, the undersigned took the motion under advisement. By the parties' request, the undersigned issued an oral decision denying Yeboah-Amankwah' motion for a protective order, with a statement that this Order was to follow on November 6, 2023.[3]

---

[2]    Liaison counsel has provided the undersigned with a copy of the November 2, 2023 hearing transcript. The party with control over the transcript is ordered to file a complete, reporter-certified copy of the transcript on the docket within five business days of this Order. Although the transcript Bears the designation "Confidential under the Protective Order," it does not appear that this designation is warranted. The parties should first meet and confer as to whether the transcript should be so designated and whether it needs to be filed under seal.

[3]    Subsequent to the hearing, liaison counsel emailed the Special Master that counsel for Yeboah-Amankwah has informed the parties that she has elected to sit for her deposition on November 30 and December 1, 2023.

## <u>STANDARD INVOLVED</u>

Pursuant to the Court's September 12, 2023 Order Appointing Special Master, the Special Master "shall have the authority to address pretrial matters, including but not limited to the following: . . . [e]stablish discovery and other schedules; direct and supervise the production of discovery including electronically stored information; review and attempt to resolve informally any discovery conflicts, including issues such as discoverability of particular information, privilege, confidentiality, and access to trade secrets and other records; and generally supervise formal discovery and any informal exchanges of information."  Order, ECF No. 541 at PageID 11684.

The standard for addressing a motion for a protective order under Federal Rule of Civil Procedure 26(c)(1)(A) provides that "any person from whom discovery is sought may move for a protective order" and that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The party seeking the protective order must establish one or more of these harms will occur in the absence of such an order.  *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016).

Similarly, Rule 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Rule 45(d)(3)(A)(iv) provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  In regard to Rule 45, the Sixth Circuit has explained that "[u]ndue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"  *In re: Mod.*

*Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). The court of appeals has also explained that the need for discovery must be balanced against the burden imposed on the person ordered to produce documents, with the status of the person as a non-party a factor to be considered. *Id.*

## DISCUSSION

Yeboah-Amankwah must establish that her deposition imposes an undue burden on her to obtain the protective order she seeks. In her briefing, she appears to emphasize the possibility of sitting for a second deposition (beyond the two days) as the requisite undue burden; there is scant discussion of preparation as constituting undue burden. Then, at the November 2, 2023 hearing, the following exchange took place between counsel and the undersigned on the undue burden issue:

> [MS. LAPE, counsel for Yeboah-Amankwah]: Fifth, we feel like plaintiffs' offer to try to minimize the burdens to Ms. Yeboah-Amankwah if there would be a second deposition are insufficient to overcome the well-established principle that bars non-party witnesses from sitting for multiple-day depositions. Federal Rule of Civil Procedure 45 really requires that a party not place an undue burden on a non-party, and finally –
>
> SPECIAL MASTER JUDGE: Explain to me in detail what the burden would be here.
>
> MS. LAPE: The burden for Ms. Yeboah-Amankwah?
>
> SPECIAL MASTER JUDGE: Yes.
>
> MS. LAPE: Well, the deposition in the first instance here, as you know, is quite rare to have a two-day deposition with 18 hours multiple parties asking her questions. Ms. Yeboah-Amankwah has, is not employed by FirstEnergy. She's the vice president of compliance and ethics at another publicly traded company, so she is already taking off significant time from work in order to prepare for the deposition.
>
> SPECIAL MASTER JUDGE: How much time?

MS. LAPE: Well, probably it will be a full week between prep sessions and the two days of deposition, so five full days taking off work already for the two-day deposition now and then if she's required to sit for a second deposition and there's additional documents that are produced and that will require additional topics that she can be questioned about, that will require us to prepare her once again and for her to take off additional time from her job.

SPECIAL MASTER JUDGE: Has she already sat for several days of prep?

MS. LAPE: She has sat for some prep sessions and we have additional prep sessions set for the next couple days.

Hrg. Tr. at 21:3-25 to 22:1-22. In light of her briefing and counsel's argument, Yeboah-Amankwah has failed to establish a sufficient undue burden here.

At least six reasons lead to this conclusion.

First, it should be noted that, although not required, Yeboah-Amankwah failed to submit an affidavit or declaration—she did not submit any actual evidence in any form—demonstrating a specific undue burden here. This matters because "[g]eneral assertions that compliance with discovery 'would present a substantial burden' do not meet the Rule 26(c) standard when, "[i]nstead, the moving party must provide some evidence, typically in the form of affidavits or declarations, which demonstrate the specific harm." *Loomis v. Unum Corp.*, 338 F.R.D. 225, 229 (E.D.Tenn. 2021).

Second, given the scope of this case, the volume of information and parties involved, and Yeboah-Amankwah's likely importance as a deponent, sitting for a two-day deposition is not unique, much less an undue burden. If a slight inconvenience to a witness whose deposition had little chance of proving beneficial can constitute good cause for a protective order under Rule 26(c)(1)(A), then the converse is also necessarily true; a deponent such as Yeboah-Amankwah is likely valuable enough to warrant a greater degree of permissible inconvenience. *Cf. Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 257 (6th Cir. 2023). Given her prior position(s), Yeboah-

6

Amankwah will be a key figure in this litigation. The parties dispute whether she ranks as first or third in her area of importance, but the difference is immaterial: she was a key actor and may or may not possess valuable discovery. *See French v. United Van Lines, LLC*, No. 1:21-0027, 2001WL 11677267, at *6 (M.D.Tenn. Oct. 22, 2021) (non-party protective order denied because deponent was key to the case and would "help define and clarify the issues"). Given the number of plaintiffs involved, a two-day deposition is a reasonable compromise and not an undue burden. Notably, Yeboah-Amankwah appears to only count these days as constituting a burden when added to *possible* additional deposition time.

Third, the mere possibility that Plaintiffs may eventually seek to re-open a deposition that has not even occurred yet does not constitute an undue burden. The mere possibility of multiple rounds of discovery has been rejected by courts as "speculative" with he claimed harm constituting "stereotyped and conclusory statements." *Loomis v. Unum Corp.*, 338 F.R.D. at 229. There is no guarantee whatsoever that Plaintiffs would be allowed additional deposition days; Plaintiffs proceed to deposition in advance of perhaps necessary discovery at their peril, with an inherent risk they could fail to obtain subsequent leave for additional deposition time. They must first demonstrate good cause. Yeboah-Amankwah in turn would be able to seek a protective order at that juncture, arguing specific facts as they have developed and not making a premature, contingent, and hypothetical argument as she does here.

Fourth, Yeboah-Amankwah's decision to devote an unspecified amount of time to preparing for her deposition does not constitute an undue burden, even as a non-party. She is not a Federal Rule Of Civil Procedure 30(b)(6) deponent with a duty to prepare. Instead, it is solely her decision to prepare at all, much less for days. Her counsel was unable or unwilling to state specifically how much time Yeboah-Amankwah is in fact devoting to this deposition. In response

to the undersigned's questioning, counsel suggested a full week would be lost, which includes the two days of deposition itself.  Counsel suggested multiple days of preparation had already taken place and that multiple days were forthcoming, which throws the five-day number off.  The ultimate number is immaterial, however, given that it is a self-imposed burden.

Fifth, the fact that Plaintiffs and Yeboah-Amankwah have now agreed to move the deposition to November 30 and December 1, 2023, also weighs against a protective order.  The move affords her additional weeks and enables her to avoid engaging in multiple deposition preparation sessions now *and* for later questioning on the 2020 investigation.

Sixth, the needs of this litigation and the desire to keep this action on track outweigh any minimal inconvenience to Yeboah-Amankwah.  If a stay were to issue to preclude her deposition until after the Court rules on objections that have not even yet been filed, it would unnecessarily impose on the Court a ticking countdown—the discovery deadline would be approaching each day, but the needs of this case cannot always prevail and demand the Court's attention over all other cases on its civil and criminal docket.

In other words, waiting until the Court is able to rule on objections to even set a deposition date (noting that this deposition logically predates other depositions) risks running up against the discovery deadline or pulling the Court from other equally time-sensitive, it not even more time-critical, cases.  There is no compelling need to complicate case management here or to ignore the public interest in keeping this litigation driving toward a resolution.  Magistrate Judge Jolson noted in her May 19, 2023 Opinion and Order that "[]his case has been pending for nearly three years. . . . And while the Court has granted several extensions to the case schedule . . ., it recently represented that it was disinclined from granting further extensions.  This case must proceed."  Order, ECF No. 461 at PageID 10323.

In sum, Yeboah-Amankwah has presented a vague, conclusory, and unpersuasive assertion of undue burden instead of presenting sufficient, persuasive evidence and argument that such a burden exists so as to entitle her to a protective order.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Special Master **DENIES** the motion for a protective order (ECF No. 552).

All entities are reminded of the Court's September 12, 2023 Order Appointing Special Master, which provides in relevant part: "Pursuant to Rule 53(f)(2), any party may file an objection to the Special Master's orders, reports or recommendations within 21 days of the date it is electronically filed. All such objections shall be directed to Chief Judge Marbley and Magistrate Judge Jolson simultaneously. Failure to meet these deadlines results in permanent waiver of any objection to the Special Master's orders, reports, or recommendations." (Order, ECF No. 541 at PageID 11687.)

 **IT IS SO ORDERED.**


 _/s/ Shawn K. Judge_____
 SHAWN K. JUDGE (0069493)
 SPECIAL MASTER

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 6, 2023, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Shawn K. Judge*
Shawn K. Judge (0069493)