# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, | Case No. 2:20-cv-3785 |
| This document relates to: | Chief Judge Algenon L. Marbley |
| ALL ACTIONS. | Magistrate Judge Kimberly A. Jolson |

## ORDER BY SPECIAL MASTER
## ON MOTION TO COMPEL (ECF NO. 496)

This matter is before the undersigned for consideration of the July 14, 2023 Motion to Compel Discovery and Compliance with the Court's April 5, 2023 Order from Non-Parties Samuel C. Randazzo and Sustainability Funding Alliance of Ohio, Inc. (ECF No. 496.) For the reasons that follow, the undersigned **GRANTS** the motion.

## BACKGROUND

This case is a consolidated class action brought on behalf of all purchasers of securities in FirstEnergy Corp. ("FirstEnergy") between February 21, 2017 and July 21, 2020. (Amended Complaint, ECF No. 72 ¶ 1.) Plaintiffs seek relief under the Securities Act of 1933 and the Securities Exchange Act of 1934 against FirstEnergy, certain of its current and former employees, and "the investment banks which underwrote two FirstEnergy debt offerings during the Class Period." (*Id.*).

The crux of Plaintiffs' claims is that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history" to influence Ohio elections and secure a $1.3 billion bailout for two of its failing nuclear plants, as well as $700 million in subsidized revenues for the company, through passage of Ohio House Bill 6 ("HB6"). (*Id.* ¶¶ 3, 5.) The theory behind the claims is that when FirstEnergy's role in this scheme was brought to

light, the price of its stock fell sharply, resulting in "billions of dollars of losses" for FirstEnergy investors. (*Id.* ¶ 9.)

Parallel to this litigation, the government has pursued criminal charges against several defendants alleged to have participated in this scheme, including Householder. *See United States v. Larry Householder, et al.*, No. 1:20-cr-00077-TSB (S.D. Ohio). On March 9, 2023, a jury found Householder and co-defendant Matthew Borges guilty on charges of conspiracy under the Racketeer Influenced and Corrupt Organizations Act. (*Id.* at ECF No. 240.) During this jury trial, the government highlighted Jones's and Dowling's purported relationships with Householder and involvement in the conspiracy. (Transcript, ECF No. 444-2) (trial transcript from March 7, 2023, including government's closing argument). And multiple representations before the Court suggest that FirstEnergy's cooperation with government investigations is ongoing. (ECF No. 457 at 2–3.)

All of this has led to multiple discovery disputes and orders. Of particular relevance here is a subpoena dispute discussed in Magistrate Judge Jolson's April 5, 2023 Order. (Order, ECF No, 440.) In that Order, Magistrate Judge Jolson stated:

> . . . Class Plaintiffs have identified deficiencies in document production from third parties Samuel C. Randazzo and Sustainability Funding Alliance of Ohio, Inc. ("SFAO"). (Doc. 438 at 2–9). Namely, Class Plaintiffs say that the third parties have not produced any discovery regarding what happened to a $4.3 million payment that Defendant FirstEnergy Corp. ("FirstEnergy") made to SFAO. (*Id.* at 2). The third parties challenge these deficiencies based upon a belief that the documents sought "are neither relevant to the claim or defense of any party, nor discovery reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at 9). The Court, however, finds that the discovery sought is clearly relevant and reasonably calculated to lead to the discovery of admissible evidence.
>
> As Class Plaintiffs highlight, FirstEnergy has represented that the $4.3 million payment to SFAO was a quid pro quo exchange in furtherance of the fraud scheme at the center of Class 2 Plaintiffs' allegations. (Doc. 438 at 2–7); (*see, e.g.*, Doc. 72, ¶¶ 6, 72, 194, 207). Additionally, Class Plaintiffs have alleged that several of the individual Defendants in this action had direct involvement with the payment. (*Id.*, ¶¶ 11, 211, 216, 222, 224). But those Defendants have denied the illicit purpose of the payment. (Doc. 438 at 4–5). So, information

2

> from the third parties regarding how the payment was used and disbursed will make the respective positions of the Class Plaintiffs and the Defendants more or less reasonable, and the liability of Defendants for the alleged harm to Class Plaintiffs therefore more or less likely. This tendency is the cornerstone of relevance. Randazzo and SFAO are **ORDERED** to produce any documents regarding the $4.3 million payment within their possession, custody, or control to Class Plaintiffs.

(*Id.* at PageID 10059-10060 (footnote omitted).) Despite the clarity of the Order, this was not the end of the dispute.

Plaintiffs again brought the issues to the Court, arguing that Randazzo and SFAO had failed to comply with the Court's April 5, 2023 Order. In a May 16, 2023 Order, Magistrate Judge Jolson reasoned as follows:

> The present dispute "concerns non-parties Samuel C. Randazzo ("Randazzo") and Sustainability Funding Alliance of Ohio Inc.'s ("SFAO") compliance with the Court's April 5, 2023 Order." (Doc. 459 at 2). In that prior Order, the Court found that subpoenas served on Randazzo and SFAO were requesting clearly relevant information about a $4.3 million payment that FirstEnergy Corp. made to SFAO. (Doc. 440). The Court ordered the non-parties "to produce any documents regarding the $4.3 million payment within their possession, custody, or control to Class Plaintiffs." (*Id.* at 2).
>
> Since that Order, Randazzo and SFAO have purportedly produced only nine documents, and have refused to detail (or employ at all) a search protocol to identify responsive information. (Doc. 459 at 4–5). Randazzo and SFAO maintain that, because certain bank and tax records have been produced, no further production is required. (*Id.* at 7–12). They rely on an overly narrow interpretation of the Court's prior Order to say they were only required to produce information about how the payment was "used and disbursed." And they further say that the receipts of credits and debits from these various bank accounts provide that complete picture. In other words, they seem to suggest that because they have collected certain quantitative information about the payment, they are under no obligation to produce other qualitative information "regarding" the payment, like emails discussing the payment. And beyond that, they claim to have identified all relevant quantitative information without disclosing their search protocol—if any—for doing so. Their position is not consistent with the Court's prior Order, which, as stated, ordered them "to produce any documents regarding the $4.3 million payment within their possession, custody, or control to Class Plaintiffs." (Doc. 440 at 2). Further, their reluctance to be transparent about their search methodology does not suggest good-faith compliance with their discovery obligations.

3

Order, ECF No. 460 at PageID 10313-10314. Magistrate Judge Jolson then issued a second Order to Randazzo and SFAO:

> Accordingly, it is **ORDERED** that Randazzo and SFAO comply with the Court's prior Order and file declarations to the public docket by May 29, 2023 certifying: (1) that they have made reasonable efforts to locate and produce "any documents regarding the $4.3 million payment within their possession, custody, or control" and that all such documents of which they are aware have been produced; (2) the specific steps taken to identify responsive documents, including locations and email accounts searched, and inquiries made of others; and (3) the search methodology utilized to comply with the Court's April 5 Order.

(*Id.* at PageID 10314.) Despite the clarity of this Order and its enumerated steps for compliance, the discovery dispute still continued.

After additional briefing, Magistrate Judge Jolson issued yet another decision on the ongoing dispute. In a May 31, 2023 Order, Magistrate Judge Jolson stated:

> Yet, Plaintiffs now represent that Randazzo and SFAO have failed to identify their search methodology to Plaintiffs. (Doc. 468 at 3–4). The Court agrees with Plaintiffs that this is impermissible. Typically, it is a matter of course that parties voluntarily exchange information that documents and validates a discovery protocol—particularly when there have been specific questions regarding deficiency raised by the requesting party. Further, the Court is satisfied from its own in camera review that no legitimate concerns about attorney-client privilege or work product preclude sharing the details of the search terms, protocol, and methodology with Plaintiffs. Accordingly, Randazzo and SFAO are **ORDERED** to provide the search terms, protocol, and methodology previously provided to the Court to Plaintiffs on or before June 2, 2023.
>
> In their response, Plaintiffs further identify purported deficiencies in Randazzo and SFAO's production and ask that the Court give them leave to depose Sugarman regarding compliance with the Court's Order. (*See* Doc. 468). The Court will not make any rulings on these issues in the present Order. There is more work to be done by the parties, which will begin with the production of the above protocol. Aided by this additional information, the parties must confer regarding the sufficiency of the production and attempt to resolve any disputes. The parties are **ORDERED** to file a joint status report on or before June 16, 2023, updating the Court on the progress of their conferral and which—if any—disputes remain at an impasse.

Order, ECF No. 470 at PageID 10353-10354.  Pursuant to the Order, Plaintiffs and Randazzo and SFAO filed a Joint Status Report on June 16, 2023.  (Report, ECF No. 477.)  That document identified two extant issues in need of resolution: "(1) the relevant time period for Plaintiffs' document requests; and (2) who should bear the costs of this additional search." (*Id.* at PageID 10383.)  Other issues were still in the meet-and-confer stage: "(1) the sufficiency of the email collections; (2) unidentified culling other than search terms; (3) a new export of cell phone data that is being prepared; (4) the identification of relevant voicemails on Randazzo's phone; and (5) whether the computer was checked for backups (*e.g.*, iTunes)." (*Id.* fn.2.)

Thereafter, on June 20, 2023, Magistrate Judge Jolson afforded the entities involved additional time to resolve the issues and directed Plaintiffs to file a motion to compel if agreements could not be reached.  (Notation Order, ECF No. 478.)  To likely no one's surprise, this resulted in Plaintiffs filing the July 14, 2023 motion to compel that is now before the undersigned.[1]  In that motion, Plaintiffs assert that Randazzo and SFAO have sought to modify their obligations under the discovery rules and Magistrate Judge Jolson's Orders by, among other things, changing the end search date involved.  Randazzo and SFAO have also failed to disclose to Plaintiffs their full search methodology and to search for Randazzo emails in the cloud as opposed to on his devices.

The relevant entities completed briefing on the motion (ECF Nos. 496, 514, 516, 521, 523, 526), and the motion came on for an oral hearing on October 19, 2023.[2]  At the conclusion of the argument, the undersigned took the motion under advisement.  (Hrg. Tr. at 100:18-19.)

---

[1] "Plaintiffs" means Class Plaintiffs (the plaintiffs from S.D. Ohio Case No. 2:20-cv-03785) and Opt-Out Plaintiffs (the Direct Action Plaintiffs from S.D. Ohio Case Nos. 2:21-cv-05839 and 2:22-cv-00865).

[2] Liaison counsel has provided the undersigned with a copy of the transcript.  The party with control over the transcript is ordered to file a complete, reporter-certified copy of the transcript on the docket within five business days of this Order.

5

## **STANDARD INVOLVED**

Pursuant to the Court's September 12, 2023 Order Appointing Special Master, the Special Master "shall have the authority to address pretrial matters, including but not limited to the following: . . . [e]stablish discovery and other schedules; direct and supervise the production of discovery including electronically stored information; review and attempt to resolve informally any discovery conflicts, including issues such as discoverability of particular information, privilege, confidentiality, and access to trade secrets and other records; and generally supervise formal discovery and any informal exchanges of information." (Order, ECF No. 541 at PageID 11684.)

Plaintiffs have filed a motion to compel. In response, Randazzo and SFAO invoke Federal Rule of Civil Procedure 45(d)(1), which provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(3)(A)(iv) provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."

In regard to Rule 45, the Sixth Circuit has explained that "[u]ndue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). The court of appeals has also explained that the need for discovery must be balanced against the burden imposed on the person ordered to produce documents, with the status of the person as a non-party a factor to be considered. *Id.*

## **DISCUSSION**

Litigation is not a game, and the Court's Order are directives to be followed, not mere suggestions either to be ignored or to be chipped away at through subsequent attempts to raise arguments that were previously rejected or left unasserted. Despite these simple truths, non-parties Randazzo and SFAO are again before the Court for their failure to meet not only their discovery obligations but also for their wanton disregard of Magistrate Judge Jolson's clear and direct April 5, 2023 Order (ECF No. 459) and May 16, 2023 Order (ECF No. 460).

To excuse their disregard for the Court and the obligation imposed on them, Randazzo and SFAO raise multiple arguments. They assert that they have fulfilled their discovery obligations and have complied with the Court's Orders, that the relief Plaintiffs seek would impose an undue burden and excessive costs on them. In addition, Randazzo and SFAO argue that Plaintiffs have not established good cause for granting the motion to compel. All of these arguments are not well taken for at least six reasons.

**First,** there are multiples holes in the compliance argument now advanced by Randazzo and SFAO. For example, the reasonableness of the search conducted by Randazzo and SFAO is suspect. At oral argument, Plaintiffs' counsel explained:

> Next, they talk about the complex search terms that Plaintiffs had them run. We just asked them to simply run the term "FirstEnergy." The fact that they submitted declarations attesting that they conducted a reasonable search for any document regarding the 4.3 million and didn't even include the term "FirstEnergy" or any version of 4.3 million speaks volumes.

(Hrg. Tr. at 93:208.) The undersigned agrees. Moreover, the argument that discovery over the $4.3 million is not necessary because Plaintiffs know where it went warrants little discussion beyond noting that it is best characterized as just silly; Plaintiffs are entitled to production.

7

Another example of noncompliance exists in the conclusory representations regarding privileged documents. Randazzo and SFAO argue that a compelled search would yield few, if any, non-privileged documents. But Plaintiffs' counsel again noted the lack of actual support for this contention at the oral argument, stating:

> Separately, they talked about how all the documents are going to be exclusively privileged.
>
> First, when you make arguments regarding undue burden, it is your burden to explain how that's true. They have submitted no declaration saying that they are exclusively privileged. They didn't say, Hey, I ran a sample of documents, and ten out of ten came back privileged. Nothing. Rather, they produced a privilege log where less than 8 percent of the documents that they have produced in this litigation they were claiming are privileged. So from Plaintiffs' perspective, there's no reason to believe that all of these documents are going to be privileged. Further, that privilege log covers documents from November 2020 and from the time where Mr. Sugarman had already been hired. So, again, there's no basis for them to claim that all of these are exclusively privileged. That's simply their conjecture. Further, they have not explained how this time period, when Mr. Randazzo was not acting as an attorney -- he had resigned as an attorney from a firm years ago to pursue nonlegal work about a payment that was not made -- that was not about a legal payment -- would be privileged.

*Id.* at 93:16-25 to 94:1-19. Again, the undersigned agrees.

A third example of noncompliance exists in the failure of Randazzo and SFAO to search cloud-based servers for 2019 emails. Plaintiffs' counsel stated at oral argument that only 10% of the 2019 emails have been collected as compared to the prior four years and only 2.5% as compared to 2020. (Hr. Tr. at 99:14-20.) Counsel for Randazzo and SFAO did not dispute these numbers or Plaintiffs' counsel's representation that even one of the non-parties' attorneys thought those numbers to be "strange." (*Id.* at 99:21-23.) The issue of whether Randazzo synched his devices and whether any unproduced 2019 emails reside on cloud-based servers or elsewhere can and should be readily resolved.

Actual evidence can be credited.  Statistically significant sampling can be persuasive.  Simple conjecture or unsupported argument are rarely persuasive, especially where, as here, the issues under consideration are less theoretical and are grounded in ascertainable numbers that can support or disprove the arguments involved.

**Second,** Randazzo and SFAO have waived, or forfeited, their recent objections.  There is no substantive need to dismantle each argument made by Randazzo and SFAO piece by piece because the overarching waiver principle proves dispositive here.  Plaintiffs' counsel concisely and correctly explained how during the October 19, 2023 oral argument:

> These new objections and demands are long overdue and waived. Mr. Randazzo and SFAO did not raise these objections pursuant to Rule 45 when they responded to Plaintiffs' subpoena. They did not raise these objections when Plaintiffs moved to compel the documents.  They did not raise these objections and new demands to Judge Jolson before her April 5th order.
>
> When Judge Jolson issued her April 5th order, they did not file an objection; they did not file a motion for reconsideration; they did not seek clarification based on any of these new grounds and demands. Same with the May 16 order.

(Hrg. Tr. at 69:3-16.)  Randazzo and SFAO had multiple opportunities to make their arguments and elected to forego them.  This strategic choice has consequences.

**Third,** one consequence of the history of the issues involved here is that, even if Randazzo and SFAO could raise their arguments now, the doctrine of law of the case would weigh against declining to enforce Magistrate Judge Jolson's April 5, 2023 Order and May 16, 2023 Order.  Chief Judge Marbley has explained the doctrine as follows:

> According to the law of the case doctrine, "a legal decision made at one stage of a civil or criminal case ... becomes the law of the case for future stages of the same litigation." *United States v. Bell,* 988 F.2d 247, 250 (citing *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir.1987); *United States v. Duchi,* 944 F.2d 391, 393 (8th Cir.1991)); *see also United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994). Once a decision has been made, the doctrine "precludes a court from 'reconsideration of identical issues.' " *Hanover*

> *Ins. Co. v. American Engineering Co.,* 105 F.3d 306 (6th Cir.1997) (quoting *Petition of United States Steel Corp.,* 479 F.2d 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). Important policy concerns support this doctrine, including "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *Bell,* 988 F.2d at 250 (quoting *United States v. Rivera–Martinez,* 931 F.2d 148, 151 (1st Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991)).

*United States v. Faulkenberry*, 759 F. Supp. 2d 915, 919–20 (S.D. Ohio 2010), *aff'd*, 461 F. App'x 496 (6th Cir. 2012). In other words, settled matters remain settled.

As Chief Judge Marbley has acknowledged, the doctrine is qualified. He has explained:

> Application of the doctrine is not mandatory but discretionary; nonetheless, courts should generally avoid reopening an already decided issue in the absence of extraordinary circumstances. *Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc.*, No. 2:09-CV-00403, 2010 WL 1009777, at *2 (S.D. Ohio Mar. 15, 2010) (Marbley, J.). Such extraordinary circumstances include "where substantially different evidence is presented, or where controlling legal authority has changed, or where the initial decision was clearly erroneous and would work a manifest injustice." *McCready v. Michigan State Bar Standing Comm. on Character & Fitness*, 926 F. Supp. 618, 621 (W.D. Mich. 1995), *aff'd*, 100 F.3d 957 (6th Cir. 1996).

*Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, No. 2:19-CV-4262, 2023 WL 2018775, at *9 (S.D. Ohio Feb. 15, 2023). None of the scenarios constituting extraordinary circumstances exist here.

As discussed below, Randazzo and SFAO have failed to present substantially different evidence; in fact, a damning characteristic of their presentation is its lack of substantive evidence. Nor do Randazzo and SFAO argue that controlling legal authority has changed. Instead, Randazzo and SFAO assert that Magistrate Judge Jolson's initial decision was wrong—perhaps an attempt meeting the "clearly erroneous" hurdle to then argue that a manifest injustice can be prevented. But Magistrate Judge Jolson addressed the core issues in this litigation in her April 5, 2023 Order

10

and her May 16, 2023 Order. She has made well-reasoned legal decisions on identical issues that, even if other judicial officers might disagree, her decisions cannot reasonably be said to be "clearly erroneous." Law of the case thus dictates that her decisions carry controlling force to today. There is no qualifying reason to disturb these settled decisions.

**Fourth,** Randazzo and SFAO are substantively wrong. Even if law of the case did not compel today's result, the undersigned wholly agrees with Magistrate Judge Jolson's reasoning in her April 5, 2023 Order and May 16, 2023 Order and would reach the same result on the substantive issues presented here.

**Fifth,** even if the undersigned were willing to entertain the costs of compliance as an argument perhaps arising from newly changed circumstances or newly discovered evidence (so as to constitute "extraordinary circumstances"), Randazzo and SFAO wholly failed to support their conclusory assertions of "too expensive/too unfair" with *any* actual evidence. The following exchange took place between the undersigned and counsel for Randazzo and SFAO during the October 19, 2023 argument:

> [Counsel for Randazzo and SFAO, MR CORCORAN:] So, again, I think, when you look at the relative burden -- or excuse me -- the relative ability to pay here, I think that factor weighs very, very heavily in favor of cost-shifting.
>
> MR. JUDGE: What are your client's liquid assets? How much cash on hand? If you're talking about 13,000 for re-imaging and the search to do the cloud-based search plus attorney time, how much are we talking? You know, what does your client have available?
>
> MR. CORCORAN: Well, I don't know, you know, down to the penny of what my client has. Like I said, the big thing that I know about are the things that I just referenced, that the plaintiffs have been referencing, you know, the $3 million that's gone into trust accounts. Part of that's frozen, and part of it's not accessible.
>
> MR. JUDGE: No, I am not asking what's unavailable. I'm asking what's available.

> MR. CORCORAN: I can't speak to that myself right now. Mr. Sugarman, perhaps, has more knowledge on that issue.
>
> MR. SUGARMAN: Well, let me just start -- on our filing, we estimated the cost of compliance with the motion to compel, paragraph 30 of my declaration, Your Honor, to be 20 roughly -- you know, a range -- 25- to $31,000.
>
> MR. JUDGE: I mean, I appreciate that that's -- within other people's resources. How can I evaluate whether it's fair to ask your client to pay all of that, a portion of that, or none of that when I don't know your client's circumstances?
>
> MR. SUGARMAN: Sure. I don't want to speculate, which is what I'd exactly have to do to be responsive. If you would want us to supplement what we filed with some financial information to address that point, we could certainly do that in a timely fashion. Otherwise, I'm just guessing, frankly, because I don't know.

(*Id.* at 88:18-25 to 90:1-9.) This lack of evidence is problematic for Randazzo and SFAO.

At the argument, the undersigned noted the problem to counsel for Randazzo and SFAO:

[SPECIAL MASTER JUDGE:]

> Frankly, from the evidence submitted by both sides, I have no idea how much Mr. Randazzo -- money he has or does not have. That hurts you. That hurts him, the fact that I don't know that.
>
> And, you know, I don't think it's a surprise, you know, today's decision. I'm going to take it under advisement. I'll issue a decision.
>
> Where I'm lea[n]ing right now -- I need to do a little bit of research -- is not in his favor, in part, because of the dearth of information in front of me.
>
> Today was the day to submit that information. There's been ample briefing and opportunity for oral argument. And I'm not going to extend the period to learn that information if he didn't care to present it to me now.

(*Id.* at 101:21-25 to 102:1-13.)

It does not make sense to argue proportionality and that the cost of compliance will be too steep for Randazzo and SFAO when not even counsel for Randazzo and SFAO cannot tell you the costs of compliance or the ability of their clients to shoulder that cost. It also does not make sense to wait until after the issues have been briefed for literally months to wait until the day of oral

12

argument and then suggest that these numbers could be investigated and submitted. The time for preparing the case to support the arguments has passed.

**Sixth,** the proposed "compromise" relief Randazzo and SFAO suggest is inherently flawed. Despite the fifth point above, the undersigned was still interested in what Randazzo and SFAO would now propose as a fair split of costs to alleviate any unproven burden. Consequently, the following exchange also took place during the October 19, 2023 argument:

> MR. CORCORAN: Sure. With regard to the cost-shifting issue, to wrap it up, you know, it's fairly easy to request something if you don't think that it's going to cost you anything. And that's what the plaintiffs have done. They've basically said they want us to bear all costs that are connected with this. Frankly, I think, if the plaintiffs had to the bear the costs in connection with reviewing a bunch of privileged documents that are almost to certain to not really yield anything, I think that they'd reconsider it. And so that's really what we want, Your Honor, is we think it should be the plaintiffs that actually have to bear some costs associated with trying to go through e-mails from, you know, November 2020 onward when Mr. Randazzo had counsel, and the communications are almost certainly going to be privileged.
>
> MR. JUDGE: So what's your opinion of a fair percentage that they would need to bear?
>
> MR. CORCORAN: A fair percentage?
>
> MR. JUDGE: Yes.
>
> MR. CORCORAN: Well, Your Honor, we've asked for all of it.

(*Id.* at 90:12-25 to 91:1-11.) Counsel went on to explain that Randazzo and SFAO had previously proposed a 50-50 split of the costs with Plaintiffs, but that was not the position adopted at the argument.

The unusual "all of it" strategy is not well taken. Even if the proportionality and cost argument were not waived, even if the argument is susceptible to some evidence-based assessment rather than brazen speculation as to numbers, the issue still presents a lopsided request from Randazzo and SFAO that their own reasoning seems to counter. If fundamental fairness would

13

require some degree of cost-sharing (as they appear to argue), then suggesting that Plaintiffs pay for everything runs contrary to the very animating principle that would justify splitting costs either equally or on a lopsided ratio.

In sum, Magistrate Judge Jolson's prior Orders were not ambiguous. They were clear, direct, and well reasoned. Randazzo and SFAO did not fully comply with these Orders, and they have failed to offer any viable justification for why. Accordingly, the undersigned must enforce the Orders and impose the appropriate consequences.

## CONCLUSION

For the foregoing reasons, the Special Master **GRANTS** the motion to compel (ECF No. 496) and **ORDERS** as follows:

(1) Non-parties Randazzo and SFAO will search for and produce any documents regarding the $4.3 million payment within their possession, custody, or control, including for the period from November 21, 2020 to August 31, 2021, to Plaintiffs;

(2) Non-parties Randazzo and SFAO will produce such documents and any corresponding privilege log(s) on a rolling basis;

(3) Non-parties Randazzo and SFAO will collect Randazzo's 2019 email from its cloud-based sources; and

(4) Non-parties Randazzo and SFAO will bear (a) the costs of complying with this Order; (b) the reasonable costs and fees Plaintiffs incurred in connection with the recent related motion briefing; (c) Plaintiffs' reasonable fees and costs for preparing for and participating in the relevant portion of the October 19, 2023 oral argument; and (d) the costs billed by the Special Master for the relevant portion of the October 19, 2023 oral argument and the preparation of this Order, as designated in the upcoming invoice. If Plaintiffs and non-parties Randazzo and SFAO are unable to agree on (a)-(c) within 14 days from the date of filing of this Order, Plaintiffs shall file for these fees and costs to be awarded by the Special Master, providing supporting authority and a proposed order for such an award.

All entities are reminded of the Court's September 12, 2023 Order Appointing Special Master, which provides in relevant part: "Pursuant to Rule 53(f)(2), any party may file an objection

to the Special Master's orders, reports or recommendations within 21 days of the date it is electronically filed. All such objections shall be directed to Chief Judge Marbley and Magistrate Judge Jolson simultaneously. Failure to meet these deadlines results in permanent waiver of any objection to the Special Master's orders, reports, or recommendations." (Order, ECF No. 541 at PageID 11687.)

   **IT IS SO ORDERED.**

_/s/ Shawn K. Judge_
SHAWN K. JUDGE (0069493)
SPECIAL MASTER

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 6, 2023, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ Shawn K. Judge*
        Shawn K. Judge (0069493)