IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, | Case No. 2:20-cv-3785 |
| This document relates to: | Chief Judge Algenon L. Marbley |
| ALL ACTIONS. | Magistrate Judge Kimberly A. Jolson |

### ORDER BY SPECIAL MASTER
### ON MOTION TO COMPEL (ECF NO. 489)

This matter is before the undersigned for consideration of the June 30, 2023 Motion to Compel Discovery Regarding FirstEnergy's Internal Investigation.[1] (Motion, ECF No. 489.) For the reasons that follow, the undersigned **GRANTS** the motion.

### BACKGROUND

This case is a consolidated class action brought on behalf of all purchasers of securities in FirstEnergy Corp. ("FirstEnergy") between February 21, 2017 and July 21, 2020. (Amended Complaint, ECF No. 72 ¶ 1.) Class Plaintiffs seek relief under the Securities Act of 1933 and the Securities Exchange Act of 1934 against FirstEnergy, certain of its current and former employees, and "the investment banks which underwrote two FirstEnergy debt offerings during the Class Period." (*Id.*).

---

[1] Movants are the "Class Plaintiffs" (Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund) from Case No. 2:20-cv-03785, the "Direct Action Plaintiffs" from S.D. Ohio Case Nos. 2:21-cv-05839 and 2:22-cv-00865, and Defendants Michael J. Dowling and Charles E. Jones. (Mot., ECF No. 489 at PageID 10447.)

The crux of Plaintiffs' claims is that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history" to influence Ohio elections and secure a $1.3 billion bailout for two of its failing nuclear plants, as well as $700 million in subsidized revenues for the company, through passage of Ohio House Bill 6 ("HB6"). (*Id.* ¶¶ 3, 5.) The theory behind the claims is that when FirstEnergy's role in this scheme was brought to light, the price of its stock fell sharply, resulting in "billions of dollars of losses" for FirstEnergy investors. (*Id.* ¶ 9.)

Parallel to this litigation, the government has pursued criminal charges against several defendants alleged to have participated in this scheme, including Householder. *See United States v. Larry Householder, et al.*, No. 1:20-cr-00077-TSB (S.D. Ohio). On March 9, 2023, a jury found Householder and co-defendant Matthew Borges guilty on charges of conspiracy under the Racketeer Influenced and Corrupt Organizations Act. (*Id.* at ECF No. 240.) During this jury trial, the government highlighted Jones's and Dowling's purported relationships with Householder and involvement in the conspiracy. (Transcript, ECF No. 444-2) (trial transcript from March 7, 2023, including government's closing argument). And multiple representations before the Court suggest that FirstEnergy's cooperation with government investigations is ongoing. (ECF No. 457 at 2–3.)

Against this backdrop, multiple discovery disputes have arisen. Today's dispute is between Movants and FirstEnergy regarding the internal investigation (consisting of two phases conducted separately by two different law firms) into the company's degree of involvement in the Householder conspiracy. Movants sought documents and information related to the internal investigation, and FirstEnergy invoked the protections of the attorney-client privilege and work-product doctrine to shield material from discovery. The parties were unable to agree on a resolution of their dispute, which led to the filing of the motion to compel.

In the briefing on that motion, Movants summarize their argument as follows:

> At bottom, FirstEnergy's varied privilege and work-product assertions regarding its internal investigation fail because it cannot meet its burden of establishing that these protections apply and have not been waived. Rather than exclusively or primarily seeking legal advice or preparing for litigation, FirstEnergy conducted its internal investigation primarily for business purposes. Indeed, in light of the nature of the issues addressed in the investigation, FirstEnergy's statements concerning the investigation, and the Company's course of conduct, it is clear FirstEnergy would have conducted the investigation for business reasons regardless of actual or potential legal proceedings. For this and other reasons, information relating to or purportedly uncovered during the internal investigation is not protected by the attorney-client privilege or the work-product doctrine. Even if that information had been protected, FirstEnergy repeatedly waived any protections through its many deliberate disclosures and affirmative uses of information and conclusions from the investigation, including by freely revealing critical aspects of the internal investigation to third parties and the public.

(Motion, ECF No. 489-1 at PageID 10464-10465.)  Movants seek an order directing FirstEnergy to produce all previously withheld documents related to the internal investigation, witnesses to answer all questions related to the internal investigation, and the withdraw by FirstEnergy of all asserted protections reflected in PricewaterhouseCoopers LLP's document productions.

FirstEnergy in turn argues that the attorney-client privilege and work-product doctrine preclude discovery into the internal investigation.  The company summarizes its position as follows:

> To respond to the criminal subpoenas, develop its legal strategy, and defend against the newly filed and anticipated civil actions, an independent committee of FirstEnergy's Board of Directors and FirstEnergy itself each immediately retained their own outside counsel to conduct internal investigations.  Over the course of many months, those outside counsel interviewed witnesses, reviewed numerous documents, developed their legal analyses, and presented their recommendations, strategy, and findings to their respective clients.  Those activities are within the heartland of conduct protected by the attorney-client privilege and the work product doctrine.

(Memo. in Opp., ECF No. 510 at PageID 10898.)  Thus asserting that the investigation is entitled to such protections because it was conducted for the purpose of obtaining legal advice in the face

3

of civil and criminal litigation and because the company has not waived its protections, FirstEnergy asks that the motion to compel be denied.

The motion has been fully briefed. *See* Briefing, ECF Nos. 489 (motion/memorandum/supporting affidavit/exhibits), 510 (memorandum in opposition), 511 (supporting affidavit/exhibit), 529 (reply/supporting affidavit/exhibits by movants other than Jones and Dowling), and 530 (supplemental statement by movants Jones and Dowling).[2] On September 28, 2023, the motion came on for an oral hearing before the undersigned. Counsel for Movants and counsel for FirstEnergy presented oral argument. At the conclusion of the hearing, the undersigned took the motion under advisement and requested limited supplemental briefing, which the entities involved provided (ECF Nos. 549, 550). In subsequent discussions with the parties, including during a November 28, 2023 status conference, the undersigned issued a preliminary, non-binding decision that informed the parties that the motion to compel would be granted. The instant Order memorializes the rationale for and finalizes the granting of the motion to compel.

## **STANDARD INVOLVED**

Pursuant to the Court's September 12, 2023 Order Appointing Special Master, the Special Master "shall have the authority to address pretrial matters, including but not limited to the following: . . . [e]stablish discovery and other schedules; direct and supervise the production of discovery including electronically stored information; review and attempt to resolve informally any discovery conflicts, including issues such as discoverability of particular information, privilege, confidentiality, and access to trade secrets and other records; and generally supervise

---

[2] Defendants Jones and Dowling join Class Plaintiffs and Direct Action Plaintiffs as Movants in seeking the relief requested in the motion to compel, but do not join in the reply because they disagree with the characterization of the facts presented in the reply. *See* Supp. Statement, ECF No. 530.

formal discovery and any informal exchanges of information." Order, ECF No. 541 at PageID 11684.

The Court has previously recognized that under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-3785, 2022 WL 17075838, at *2, *4 (S.D. Ohio Nov. 18, 2022) (citing *Ball v. Kasich*, 2018 WL 6242230, at *3 (S.D. Ohio Nov. 29, 2018) (alteration in original)). Where, as here, privilege is at issue, the Sixth Circuit has explained that "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

## **DISCUSSION**

Resolution of the instant dispute turns on a nuanced technicality that proves dispositive in light of the applicable standards involved. It is therefore necessary to emphasize at the outset that as the party invoking the protections of attorney-client privilege and the work-product doctrine, FirstEnergy bears the burden of proof here.

The components of the attorney-client privilege are well settled:

[T]he elements of the privilege are . . .

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

[*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998)] (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). The party asserting the privilege bears the burden of establishing the existence of the privilege. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

*Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010).

5

Similarly, the contours of the work-product doctrine are long established:

> The work-product doctrine "protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *United States v. Roxworthy,* 457 F.3d 590, 593 (6th Cir. 2006). The burden of proving that an item is prepared in anticipation of litigation rests with the party asserting the privilege. *Id.* The Sixth Circuit adopted the "because of" test to determine whether this standard is met; that is, the asserting party must prove that the item was "prepared or obtained *because of* the prospect of litigation." *Id.* (quoting *United States v. Adlman (Adlman II),* 134 F.3d 1194, 1202 (2d Cir.1998)). Items that are "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes," are not protected by the work-product doctrine. *Roxworthy,* 457 F.3d at 593. Thus, if the item would have been prepared in substantially the same manner, regardless of the anticipated litigation, the doctrine does not apply. *Id.* at 593–94.
>
> Furthermore, the "because of" test includes both a subjective inquiry and an objective inquiry into the reasonableness of the party's actions. A court considering the matter must consider "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594.

*Cooey*, 269 F.R.D. at 647. *See also Futhey v. United Transp. Union Ins. Ass'n*, No. 1:14 CV 463, 2015 WL 2446169, at *2 (N.D. Ohio May 20, 2015) (explaining that the party relying on the work-product doctrine "bears the burden of showing that the investigation and report were created in anticipation of litigation and not just for business purposes").

The consequent question is thus "whether documents were 'prepared or obtained because of the prospect of litigation,' as opposed to those 'prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes[.]" *McNeil v. Mt. Carmel Health Sys.*, No. 2:20-cv-258, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021) (Jolson, M.J.). Again, "'if the item would have been prepared in substantially the same manner,

6

regardless of the anticipated litigation, the [work-product] doctrine does not apply." *Id.* (quoting *Cooey*, 269 F.R.D. at 647).

The undersigned must consider the evidence in the record against this backdrop of legal standards. Looking at FirstEnergy's proffered evidence leads to the nuanced technicality that proves dispositive in light of the applicable standards involved.

To support its argument that the investigation was motivated by and implemented because of concerns over anticipated civil and criminal litigation, FirstEnergy relies on the proffered declaration of a member of the company's Board of Directors, James F. O'Neil, III. *See* O'Neil Decl., ECF No. 511-1. At oral argument, FirstEnergy emphasized the importance of this document to the company's argument:

> And what we have done here is provide you with an affidavit from one of the outside directors who oversaw that Squire investigation. And he testifies why they did an investigation. He explains that it was because of the potential criminal liability and because of the onslaught of civil litigation. And so, you know, this is not just us speculating about that.

(9/28/23 Hrg. Tr. at 26:4-11.) By implication, however, the converse is also true: without the affidavit, FirstEnergy is speculating about the why behind its actions and is inviting the undersigned and the Court to do so as well.

Despite counsel's oral-argument characterization of the document at issue as an affidavit, the O'Neil Declaration is not an affidavit because it is not sworn and notarized; it is intended to be a declaration under 28 U.S.C. § 1746.

A timely submitted declaration that meets the requirements of the statute is sufficient for consideration under the Court's Local Civil Rules. S.D. Ohio Civil Rule 7.2(e) "provides that evidence in support or opposition to a motion shall be presented in the form of 'affidavits, declarations pursuant to 28 U.S.C. § 1746, admissions, verified interrogatory answers, and other

7

documentary exhibits." *Enigwe*, 2008 WL 11352583, at *1. The problem for FirstEnergy is that the O'Neil Declaration fails to constitute a 28 U.S.C. § 1746 declaration.

> That statute provides:
>
> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
>> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".
>>
>> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Despite this statutory language, the O'Neil Declarations contains the following introductory line:

> I, James F. O'Neil, III, hereby declare under penalty of perjury as follows:

(O'Neil Decl., ECF No. 511-1 at PageID 10938.) Thirty numbered paragraphs of factual allegations follow before the declaration ends with the following:

> Executed on July 26, 2023.
>
> /s/ James F. O'Neil, III

8

(*Id.* at PageID 10943.) Note that although the declaration provides it is "under of penalty of perjury," bears the execution date, and is signed, the declaration never states anywhere that its contents are declared *as true*.

This deficiency renders the document just a document and not a declaration constituting evidence that a factfinder and a federal court can credit under 28 U.S.C. § 1746. The omission is damning to the purpose and utility of the document. It places the document outside the scope of what evidence a federal court can consider and specifically outside the scope of Local Civil Rule 7.2(e).

Although the Sixth Circuit has not expressly opined on this exact issue, language from the court of appeals suggests it would deem the O'Neil Declaration deficient. For example, in *Bonds v. Cox*, 20 F.3d 697 (6th Cir. 1994), the court of appeals addressed whether multiple unsworn affidavits met the standard of declarations under 28 U.S.C. § 1746. The appellate court held:

> Unsworn declarations are permitted to be used as evidence only if "subscribed ... as true under penalty of perjury, *and dated* [.]" 28 U.S.C. § 1746 (emphasis added). Although [the] additional affidavits were subscribed under penalty of perjury, they were undated. Given the explicit language of the statute, they must therefore be excluded from consideration.

*Id.* at 702. Thus, the Sixth Circuit identified four core elements to a declaration under 28 U.S.C. § 1746: (1) it must be signed, (2) it must declare its contents to be true, (2) it must acknowledge that it is under penalty of perjury, and (4) it must be dated. The failure to meet the fourth component caused the document to not qualify as worthy of consideration in *Bonds*. Applying the same analysis here, the failure to meet the second component excludes the O'Neil Declaration from consideration.

9

*Bonds*' progeny within the Circuit supports rejecting the O'Neil Declaration. *See, e.g., Sfakianos v. Shelby Cty. Gov't.*, No. 08-02172, 2010 WL 11493114, at *10 (W.D.Tenn. Dec. 30, 2010) (citing *Bonds* in rejecting consideration of "technically deficient" unsworn affidavit).

Persuasive authority from within this District weighs against the O'Neil Declaration. *See, e.g., Enigwe v. Diversity City Media*, No. 2:07-CV-250, 2008 WL 11352583, at * (S.D. Ohio June 2, 2008) (Graham, J.) ("Plaintiff's purported declaration fails because it is not made in the form of an affidavit of facts separate from the motion and is also not signed and dated.").

Multiple Circuits would similarly reject the O'Neil Declaration. The Second Circuit, for example, has explained as follows:

> Parsing the declaration provided in [28 U.S.C. § 1746] reveals its substantive elements: the declarant must (1) "declare (or certify, verify, or state)," (2) "under penalty of perjury," (3) that the matter sworn to is "true and correct." *Id.* The substitution of "subject to punishment" for "under penalty of perjury" is a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute.

*In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013). Thus, the Second Circuit stated that "[w]e hold that 28 U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury. Any other result would be contrary to the plain language of the statute and the objective sought to be advanced by it." *Id.* at 489.

Other Circuits agree. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022) ("In short, § 1746 has these statutory requirements for an unsworn statement to substitute for a sworn affidavit: The declarant must (1) date and sign the document, and (2) subscribe its content as 'true,' (3) under 'penalty of perjury,' (4) in substantially the above-quoted pattern language."); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("Kline's affidavit is not in substantial conformity with either formula because, as drafted, it allows the affiant to circumvent

10

the penalties for perjury in signing onto intentional falsehoods.  Kline never declared her statement to be true and correct; therefore, her affidavit must be disregarded as summary judgment proof.").

Similarly, numerous district courts nationwide have issued cases weighing against the O'Neil Declaration.  Some of these cases expressly rejected a document as a sufficient declaration because it failed to include 28 U.S.C. § 1746's "true" requirement.  *See, e.g., In re Muscatell*, 106 B.R. 307, 309 (M.D.Fla. 1989) (disregarding unsworn declaration made under the penalty of perjury because declarant never declared his statement to be true and correct).

Still other district court cases reject a document for failing to meet the other requirements of 28 U.S.C. § 1746.  These cases support today's reasoning by analogy.  *See, e.g., Grand Fabrics Int'l Ltd. v. Melrose Textile, Inc.*, No. CV 18-00748 DSF (AFMx), 2018 WL 6118439, at *7 (C.D.Ca. May 9, 2018) (striking declaration because it did not identify where declarant was located at time of signing and because it was undated); *Wheeler v. Baxter Healthcare Corp.*, No. 4:11CV00263 JLH, 2011 WL 5402446, at *2 (E.D.Ark. Nov. 8, 2011) (citing *Bonds* in excluding declaration from consideration due to lack of signature and dating).

A minority of courts reviewed might accept the O'Neil Declaration.  *See, e.g., Callahan v. Emory Healthcare, Inc.*, No. 1:18-CV-4856-WMR-JSA, 2019 WL 12405937, at *2-3 (N.D.Ga. Dec. 20, 2019) (finding the absence of "true and correct" language was not fatal to a declaration); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (same). Such cases failed to credit sufficiently the nuance of 28 U.S.C. § 1746 and risk distorting "substantially the following form" into a game of horseshoes compliance so as to render the statutory requirements meaningless.

The undersigned finds these cases less persuasive.  They often read out the "true" requirement of 28 U.S.C. § 1746, deeming it subsumed or inherent in the "under penalty of perjury"

11

requirement. This is a strained and conflation that appears to be born more from pragmatism than adherence to the statute and settled canons of construction. 28 U.S.C. § 1746 does not present an example where words (*i.e.*, "true") should be rejected as surplusage because they appear to have been inadvertently inserted or are repugnant to the rest of the statute. *See Chicksaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 535 (2001). Instead, the statute presents an example where the canon of statutory interpretation requiring a court to give effect to each word, if possible, applies. *Id.* at 84, 122 S. Ct. at 535.

This is because the "true" verification and the "under penalty of perjury" verification convey two related but distinct concepts: a declarant can state falsehoods while recognizing he or she is under penalty of perjury because the declarant has not declared the statement to be true—but when the declarant declares a statement to be true while concurrently recognizing the consequence—by declaring him or herself to be under penalty of perjury—the recognition of the consequences of lying takes on real meaning as risk attaches. The Sixth Circuit has explained that "[c]ourts avoid constructions of statues that would render Congress's chosen words superfluous. Instead, courts 'must give effect, if possible, to every clause and word of a statute.'" *United States v. Wilkes*, 78 F.4th 272, 280 (6th Cir. 2023) (quoting *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, (2000)). Interpreting 28 U.S.C. § 1746 so that "true" and "under penalty of perjury" are two requirements with their own meanings honors that precedent.

Thus construed, 28 U.S.C. § 1746 is clear: its requirements are mandated, while the wording of those requirements can be effectuated in multiple ways—so long as the requirements *are* expressed. In other words, each ingredient can be expressed in different ways, but the recipe for a sufficient declaration remains fixed and includes that a declarant expressly state that he or

she is alleging the contents of the declaration *to be true* while acknowledging he or she risks the legal consequences of committing perjury.

The requirements for a proper declaration under 28 U.S.C. § 1746 are neither onerous nor complicated, and both sides have repeatedly demonstrated they are capable of compliance.  In contrast to the deficient O'Neil Declaration, multiple other declarations filed in connection with the internal investigation dispute contain variations of the required content.

For example, in her memorandum in opposition declaration submitted on behalf of FirstEnergy, attorney Hilary Williams states that she "declare[s] under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York on July 26, 2023."  (Williams Decl., ECF No. 511 at PageID 10935.)  In a second declaration submitted with FirstEnergy's post-oral argument supplemental briefing, Williams similarly ends her declaration with the statement that she "declare[s] under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York on October 5, 2023."  (Williams Suppl. Decl., ECF No. 550-1 at PageID 11911.)

Plaintiffs in turn have submitted three declarations by attorney Jason Forge, all of which similarly contain a form of the required content.  *See* Forge Decl., ECF No. 489-2 at PageID 10501 ("I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 30, 2023, at San Diego, California."); Forge Reply Decl., ECF No. 529-1 at PageID 11454 ("I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 9, 2023, at San Diego, California."); Forge Suppl. Decl., ECF No. 549-1 at PageID 11837 ("I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 5, 2023 at San Diego, California.").

Because O'Neil's declaration fails to constitute a declaration under 28 U.S.C. § 1746 and therefore fails to fall within permissible timely evidence under Local Civil Rule 7.2(e), the undersigned must necessarily exclude it from the record evidence. Accordingly, the undersigned cannot credit all the factual representations set forth in FirstEnergy's briefing that rely solely on the O'Neil Declaration. This leaves FirstEnergy bereft of sufficient persuasive support for meeting its burden of proving that the internal investigation is protected from discovery.

This leaves uncontroverted Movants' evidence contextualizing the phase of the investigation conducted by Squire Patton Boggs. *See, e.g.,* Reply, ECF No. 529 at PageID 11437-11438. Plaintiffs present an analytic chain that firmly and predominantly grounds the early investigation in the business necessity and human resources/public relations arena, even if those same issues also logically overlap with anticipated litigation. *See id.* at PageID 11440. Thus, Plaintiffs' assessment of the investigation rings true: "FirstEnergy has failed to carry its burden to demonstrate it would not have commissioned substantially similar investigations to determine which employees were involved in a massive criminal corruption scheme but for the possibility of litigation." (Reply, ECF No. 529 at PageID 11441.)

The FirstEnergy investigation and many of the uses of the investigation results thus adhere to that seen in *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007). The record evidence presented by Plaintiffs in their briefing (and not always Defendant Jones and Dowling) supports that the internal investigation was conducted for audit/SEC filing purposes and for human resources decisions/public relations benefit, even if those decisions and the facts involved in both purposes also would likely inform litigation preparation. To conclude otherwise and credit FirstEnergy's insufficiently supported litigation-preparation argument would be to engage in impermissible speculation and elevate guesswork over crediting evidence. It would assume the

validity of the representations of the O'Neil Declaration without any piece of actual evidence making or suggesting those representations.

Although FirstEnergy abstractly invokes "common sense" as supporting the premise that the internal investigation was executed in anticipation of litigation, no reasonable interpretation of the evidence permits the conclusion that the investigation was not just for business purposes or equally for business purposes. Crediting that the documents sought "were prepared because of these non-litigation purposes" leads to the conclusion that "[w]hile those same non-litigation purposes may have important legal implications for Defendants, they remain implications, and not the driving force behind the preparation of each requested document." *McNeil*, 2021 WL 5235103, at *5 (internal quotations marks omitted).

Stated simply: FirstEnergy's argument falls apart without the O'Neil Declaration. The company's job here was to present persuasive evidence establishing that the investigation's purpose made it protected, and the lack of sufficient persuasive evidence left the company's factual allegations almost totally unsupported—and therefore unconvincing. In contrast, Movants presented evidence of a business purposes and human resources purposes that lead to the conclusion that the investigation would have occurred even in the absence of anticipated civil and criminal litigation.

The evidence in the record suggests that the investigation was at least prepared in the ordinary course of business pursuant to SEC public requirements unrelated to litigation and for non-litigation human resources/public relations purposes. And to a lesser extent, the evidence suggests that the investigation would have been prepared in substantially the same manner, regardless of the anticipated litigation.

Three conclusions and two observations flow from this analytic chain.

First, the undersigned must conclude that the attorney-client privilege does not apply to render the discovery sought unreachable.

Second, the undersigned also cannot conclude that the work-product doctrine attaches to the discovery sought.

Third, because neither attorney-client privilege nor the work-product doctrine renders the discovery sought privileged matter under Rule 26(b)(1), Movants may obtain discovery of this nonprivileged matter as sought in the motion to compel.

This leads to the first observation, which is that the foregoing three conclusions moot the need to opine here on Movants' alternative argument that, if the investigation was once protected, FirstEnergy waived such protection. The relevant waiver arguments by both sides are left unaddressed at this time.

The second observation is that both sides—even FirstEnergy, despite counsel's belated oral argument characterization of the investigations as two investigations (9/28/23 Hrg Tr. at 24: 5-6, 25:6-7, 17-18, 46:6)—have repeatedly bundled the two law firms' investigations into one investigation composed of phases, and no one requested any sort of in camera review of any of the material sought or review of portions of the individual selections of the material sought. Instead, both sides have appeared to adopt an all-or-nothing approach in which everything is discoverable or nothing is. Despite this arguably unusual approach, the undersigned examined the internal investigation as both one, multiple-phases investigation and two distinct investigations. The undersigned has little doubt that the Squire phase of the investigation (roughly to August 2020) readily falls outside the realm of protected material. The second investigation or second phase of the investigation, conducted by Jones Day, presents a closer call for the undersigned, but the inescapable hole left by striking the O'Neil Declaration still proves dispositive. Under either

analysis, there is a dearth of evidence without the O'Neil Declaration to support that either phase or either investigation was not predominantly for a business purpose and/or human resources/public relations purposes. Ultimately, the undersigned has credited the parties' essentially "all or nothing approach," and today's order aligns with that perhaps atypical approach.

## CONCLUSION

For the foregoing reasons, the Special Master **GRANTS** the motion to compel (ECF No. 489) and **ORDERS** as follows:

(1) FirstEnergy's internal investigation is not entitled to attorney-client privilege or work-product protections.

(2) FirstEnergy must produce all previously withheld documents related to the internal investigation.

(3) Witnesses must answer all fact-related questions (past and future) related to the internal investigation (*i.e.*, FirstEnergy cannot shield *facts* from disclosure just because a witness learned those facts from the investigation). The parties should meet and confer on which depositions, if any, must necessarily be reopened; if the parties cannot agree, they should promptly contact the Special Master. Movants' suggestion that any reopened deposition be limited to two hours is well taken, and FirstEnergy shall bear the reopened deposition costs. If the parties cannot agree on costs, they should promptly contact the Special Master.

(4) Movants **cannot** take the depositions of any of the attorney-investigators at this time. The necessity and propriety of such unlikely action will be determined, if warranted, upon renewed request only after Movants have had a chance to conduct depositions in which non-attorney-investigators can testify to the facts as permitted above.

(5) FirstEnergy must withdraw all asserted protections that are reflected in the PricewaterhouseCoopers LLP document productions.

(6) Costs of the Special Master's work on the motion to compel are to be born equally by the parties.

All entities are reminded that "the Special Master's discovery orders are effective immediately upon being entered and remain in effect unless and until a party obtains a stay from the Court or the Court sustains an objection." (Order, ECF No. 570 at PageID 12370.) Note that

17

the Court's September 12, 2023 Order Appointing Special Master provides in relevant part that "[p]ursuant to Rule 53(f)(2), any party may file an objection to the Special Master's orders, reports or recommendations within 21 days of the date it is electronically filed. All such objections shall be directed to Chief Judge Marbley and Magistrate Judge Jolson simultaneously. Failure to meet these deadlines results in permanent waiver of any objection to the Special Master's orders, reports, or recommendations." (Order, ECF No. 541 at PageID 11687.)

**IT IS SO ORDERED.**

                                                                                   /s/ Shawn K. Judge
                                                                                   SHAWN K. JUDGE (0069493)
                                                                                   SPECIAL MASTER

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 29, 2023, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          */s/ Shawn K. Judge*
                                          Shawn K. Judge (0069493)