**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson Special Master Shawn K. Judge |
| | ) | |
| *MFS Series Trust I, et al.,* | ) ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| *FirstEnergy Corp., et al.,* | ) ) | |
| Defendants. | ) ) | |
| | ) | |
| *Brighthouse Funds Trust II – MFS Value Portfolio, et al.,* | ) ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| *FirstEnergy Corp., et al.,* | ) ) | |
| Defendants. | ) ) | |

**FIRSTENERGY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY THE SPECIAL MASTER'S NOVEMBER 29, 2023 ORDER PENDING FINAL ADJUDICATION OF FIRSTENERGY'S OBJECTIONS**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................- 1 -

    A.    The MTC............................................................................................- 5 -

    B.    The Privilege Decision.......................................................................- 6 -

    C.    FirstEnergy's Notice of Objection to the Privilege Decision ...................- 7 -

ARGUMENT ............................................................................................................- 8 -

I.     A STAY IS WARRANTED BECAUSE OF THE SEVERE AND IRREPERABLE HARM TO FIRSTENERGY FROM ENFORCEMENT OF THE PRIVILEGE DECISION PENDING ADJUDICATION OF ITS OBJECTIONS ........................- 8 -

    A.    Absent a Stay, FirstEnergy Will Suffer Severe and Irreparable Harm From the Forced Disclosure of Its Privileged Material and Work Product to Its Litigation Opponents ............................................................................................- 8 -

    B.    FirstEnergy Is Likely to Succeed on the Merits of Its Objections, Which Indisputably Raise Serious Questions..................................................- 10 -

    C.    A Stay Will Not Injure Any Other Party ..............................................- 14 -

    D.    The Public Interest Favors a Stay .......................................................- 17 -

II.    AS AN ALTERNATIVE BASIS FOR STAYING THE EFFECT OF THE PRIVILEGE DECISION, THE SPECIAL MASTER SHOULD CONVERT THE DECISION TO A REPORT AND RECOMMENDATION.........................- 18 -

CONCLUSION ......................................................................................................- 18 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey* v. *Lafler*,
    2016 WL 9343177 (W.D. Mich. Nov. 22, 2016) ...................................................11

*Clardy* v. *Pounds*,
    2023 WL 5498054 (M.D. Tenn. Aug. 24, 2023) ...................................................11

*Comcast Corp.* v. *Behrend*,
    569 U.S. 27 (2013) ...................................................15

*Enigwe* v. *Diversity City Media*,
    2008 WL 11352583 (S.D. Ohio June 2, 2008) ...................................................13

*Esurance Prop. & Cas. Ins. Co.* v. *Kyle*,
    2021 WL 11527778 (N.D. Ohio Feb. 10, 2021) ...................................................2

*Fed. Deposit Ins. Corp. for Integra Bank, N.A.* v. *Fid. & Deposit Co. of Maryland*,
    2013 WL 12301536 (S.D. Ind. Nov. 26, 2013) ...................................................9

*In re FirstEnergy Corp.*,
    No. 23-00303 (6th Cir. Apr. 14, 2023) ...................................................15

*Fox* v. *Brown Mem. Home, Inc.*,
    2010 WL 4983153 (S.D. Ohio Dec. 2, 2010) ...................................................12

*In re Grand Jury*,
    No. 21-1397 (Jan. 23, 2023) ...................................................14

*Green Party of Tennessee* v. *Hargett*,
    493 F. App'x 686 (6th Cir. 2012) ...................................................3, 11, 13

*Hickman* v. *Taylor*,
    329 U.S. 495 (1947) ...................................................2

*Hilton* v. *Braunskill*,
    481 U.S. 770 (1987) ...................................................4, 8, 17

*Itskin* v. *Gibson*,
    2011 WL 5326165 (S.D. Ohio Nov. 7, 2011) ...................................................10

*In re Kellogg Brown & Root, Inc.*,
    796 F.3d 137 (D.C. Cir. 2015) ...................................................14

*KPH Healthcare Servs., Inc.* v. *Mylan, N.V.*,
  2022 WL 16527244 (D. Kan. Oct. 28, 2022) .........................................................16

*LaBoeuf Lamb* v. *Worsham*,
  185 F.3d 61 (2d Cir. 1999).........................................................................12–13

*In re Lott*,
  139 F. App'x 658 (6th Cir. 2005) .................................................................1, 9, 17

*Michigan Coal. of Radioactive Material Users, Inc.* v. *Griepentrog*,
  945 F.2d 150 (6th Cir. 1991) ........................................................................ *passim*

*In re Muscatell*,
  106 B.R. 307 (M.D. Fla. 1989) ..........................................................................12

*Nissho-Iwai Am. Corp.* v. *Kline*,
  845 F.2d 1300 (5th Cir. 1988) ....................................................................12–13

*Orchestrate HR, Inc.* v. *Blue Cross & Blue Shield of Kansas, Inc.*,
  2020 WL 5593837 (D. Kan. Sept. 18, 2020) .........................................................11

*In re Perrigo Co.*,
  128 F.3d 430 (6th Cir. 1997) .....................................................................2, 9, 10

*Ross* v. *City of Dublin*,
  2016 WL 7117389 (S.D. Ohio Dec. 7, 2016) ....................................................3, 12

*In re Search Warrant Issued June 13, 2019*,
  942 F.3d 159 (4th Cir. 2019), *as amended* (Oct. 31, 2019)...................................10

*Upjohn Co.* v. *United States*,
  449 U.S. 383 (1981)..................................................................................5, 17

**Statutes and Rules**

28 U.S.C. § 1746...............................................................................................3, 7

Fed. R. Civ. P. 53(f)(2) ............................................................................................7

## PRELIMINARY STATEMENT

On November 29, 2023, the Special Master granted a motion to compel disclosure of *all* materials withheld by Defendant FirstEnergy Corp. under the attorney-client privilege and work product doctrine concerning internal investigations conducted by external counsel for the Company and its independent directors. Those investigations concerned the very same allegations underlying this securities case. Because of the extraordinary nature of this order, FirstEnergy now seeks to stay that decision (the "Privilege Decision," ECF No. 571) to forestall the severe and irreparable harm to the Company from its enforcement pending final resolution of FirstEnergy's objections to the Privilege Decision. Recognizing the significance of the Privilege Decision and the forthcoming objections, the Special Master indicated during the status conference held in this action on November 28, 2023 that he believed that a stay was warranted here pending final judicial resolution of FirstEnergy's objections.

Consistent with the Special Master's comments, all four factors considered by courts favor a stay: (i) a stay is needed to prevent FirstEnergy from suffering severe and irreparable harm through disclosure of its privileged materials and attorney work product concerning the core issues in this case; (ii) FirstEnergy is likely to succeed on the merits of its objections under the governing standard; (iii) a stay would not harm any interested parties; and (iv) the public interest strongly favors a stay. *See In re Lott*, 139 F. App'x 658, 660 (6th Cir. 2005) (listing factors and citing *Grutter* v. *Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001) and *Michigan Coal. of Radioactive Material Users, Inc.* v. *Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

*First*, and critically, if forced to disclose privileged information before a final resolution of its objections to the Privilege Decision, FirstEnergy will face severe and irremediable injury. "Once privileged matter is disclosed, that bell cannot be unrung." *Esurance Prop. & Cas. Ins. Co.* v. *Kyle*, 2021 WL 11527778, at *4 (N.D. Ohio Feb. 10, 2021). The "forced disclosure of

privileged material may bring about irreparable harm" in any context, *see In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997), but that harm will be particularly acute here. The Privilege Decision requires disclosure of FirstEnergy's attorney communications and work product regarding ***the core issues in this case***. As witness testimony has confirmed, this action was one of the proceedings that prompted the internal investigations addressed in the Privilege Decision. FirstEnergy would suffer irreparable harm if it were forced to hand over to its adversaries its advice and work product about this very matter. *See*, *e.g.*, *Hickman* v. *Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.").

There is no question that absent a stay, the harm to FirstEnergy will be both "certain and immediate." *Griepentrog*, 945 F.2d at 154. In addition to requiring disclosure of thousands of pages of privileged communications and work product, the parties that filed the motion to compel ("MTC")—Plaintiffs and Defendants Charles Jones and Michael Dowling (together, "Movants")—are collectively scheduled to depose at least five witnesses before the end of the year, all of whom have knowledge of the internal investigations at issue in the Privilege Decision. Absent a stay, Movants will seek to elicit testimony from those witnesses regarding privileged aspects of the investigations. The Company needs a stay to forestall that result while its significant objections are pending.

Where, as here, the harm resulting from enforcement of a decision is especially severe, the other factors concerning a stay are proportionally less significant. *See id.* at 153 ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay."). Nonetheless, those other factors also counsel in favor of a stay here.

*Second*, FirstEnergy is likely to succeed on the merits of its objections to the Privilege Decision. Under Sixth Circuit law, that standard is satisfied as long as FirstEnergy's objections raise "at least serious questions." *Green Party of Tennessee* v. *Hargett*, 493 F. App'x 686, 689 (6th Cir. 2012) (citation omitted). FirstEnergy easily passes that test. The Privilege Decision turns on a technical issue that FirstEnergy will argue is legally inconsequential concerning a declaration submitted by FirstEnergy director James O'Neil ("O'Neil Declaration") substantiating that the Company's Board of Directors ("Board") initiated the internal investigations at issue to obtain legal advice and prepare for litigation regarding the allegations underlying Plaintiffs' claims. (*See* Privilege Decision at PageID 12375.) The Privilege Decision holds that that declaration was inconsistent with the requirements of 28 U.S.C. § 1746 because, although the declaration included Mr. O'Neil's signature, the date, and a declaration under penalty of perjury, it did not also explicitly state that the declaration's contents were "true." (*Id.* at PageID 12379.) That reasoning gives rise to several serious questions to be resolved on appeal.

As an initial matter, that the issue identified by the Special Master was, at most, inadvertent is confirmed by the fact that, as observed by the Special Master, the other declarations submitted by FirstEnergy in connection with the pending motion conform to the format that the Special Master believes is required. (*See id.* at PageID 12383.) And as this Court has held, where a party submits a declaration with an easily addressed technical issue, the party should be allowed to file an amended declaration. For example, in *Ross* v. *City of Dublin, Ohio*, 2016 WL 7117389 (S.D. Ohio Dec. 7, 2016), Chief Judge Marbley denied a motion to strike a declaration that omitted the execution date and did not certify that it was "true and correct." *Id.* at *8. The Court permitted the proponent "to amend his declaration to cure . . . technical deficiencies." *Id.* FirstEnergy intends

-3-

to seek the same opportunity here and file a revised version of the O'Neil Declaration obviating the basis for the Privilege Decision.

In any event, even absent any revision, whether the issue identified by the Special Master is a sufficient basis to strike a declaration has not been addressed in the Sixth Circuit, as the Privilege Decision recognizes. Indeed, although the Privilege Decision notes authority that the Special Master deems supportive of the outcome, the Decision also recognizes contrary case law, including a published opinion of the Second Circuit holding that when a declaration stated it was made "[u]nder penalty of perjury," even though it did "not contain the exact language of Section 1746 nor state that the contents [we]re 'true and correct,' it substantially complie[d] with these statutory requirements, which is all that this Section requires." *LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999); (*see* Privilege Decision at PageID 12381.) Given that divergence of authority, FirstEnergy's forthcoming objections raise serious questions warranting a stay.

*Third*, no other party to this litigation will be "substantially injure[d]" by a stay. *Hilton* v. *Braunskill*, 481 U.S. 770, 776 (1987). The only impact of the requested relief on Movants is that they would face delay in their ability to obtain documents and information FirstEnergy regards as privileged. That hardly amounts to substantial injury, especially in the context of this case. As an initial matter, on November 16, 2023, the Sixth Circuit granted Defendants' petition to take an interlocutory appeal of the Court's March 30, 2023 order granting class certification. (*See* ECF No. 559.) The ruling on that appeal likely will significantly impact the scope of both expert and fact discovery. As a result, FirstEnergy will shortly seek a stay of ***all*** trial court proceedings pending resolution of its appeal. Any delay occasioned by a stay of the Privilege Decision would have no incremental impact if FirstEnergy obtains that relief.

-4-

Even if discovery proceeds notwithstanding Defendants' interlocutory appeal, a stay of the Privilege Decision will not injure Movants.  A stay is consistent with the schedule in this action—to which all parties, ***including Movants***, previously stipulated—whereby all discovery deadlines are to be "continued" based on time needed to reach "***final resolution . . . [of the MTC], including any appellate proceedings***."  (June 5, 2023 Order ¶ 2, ECF No. 474 at PageID 10374 (emphasis added).)  Thus, all parties previously contemplated postponing any discovery resulting from Movants' motion until after the motion is finally resolved.  Movants cannot now claim to be prejudiced by a stay that accomplishes a comparable result.

*Fourth*, the public interest supports a stay.  The attorney-client privilege "promote[s] . . . public interests in the observance of law and administration of justice," *See Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981).  Uncertainty in the application or protection of the privilege undermines those interests.  Preserving FirstEnergy's privilege pending resolution of its objections will avoid such uncertainty.

## BACKGROUND

### A.    The MTC

On June 30, 2023, Movants filed the MTC, seeking to compel blanket production of materials withheld as privileged or work product regarding FirstEnergy's internal investigations, conducted by external counsel, into the matters underlying this action.  (*See* ECF No. 489-1.)  Movants maintained that either (i) FirstEnergy conducted the internal investigations "primarily for business, not legal, purposes," such that they were not protected by privilege or the work product doctrine in the first place (*id.* at PageID 10463); or (ii) in the alternative, the

Company "waived any protections" through supposed "disclosures and affirmative uses of information and conclusions from the investigation" (*id.* at PageID 10464–65).

On July 26, 2023, FirstEnergy opposed the motion. (*See* ECF No. 510.) Among a large set of exhibits reflecting record evidence supporting its position, the Company submitted the hand-signed declaration of Mr. O'Neil, who was a member of the independent Board committees that directed the investigations. Mr. O'Neil affirmed that "the investigations were conducted because FirstEnergy was facing ***sudden and extraordinary legal risk from government investigations and litigation***"—*i.e.*, that they were performed for a predominantly legal purpose. (*Id.* at PageID 10900 (emphasis added) (citing O'Neil Declaration, ¶¶ 5–11, 29, ECF No. 511-1 at PageID 10938–40, 10942–43).) Nor, FirstEnergy explained, were those protections waived.

Movants filed a reply brief, and the motion was fully submitted to the Court on August 9, 2023. (ECF No. 529.) On September 12, 2023, the Court entered an order appointing the Special Master ("Appointment Order"). (ECF No. 541.) On September 28, 2023, the Special Master heard oral argument on the motion. On October 5, 2023, the parties filed supplemental briefs at the request of the Special Master. (ECF Nos. 549, 550.)

### B. The Privilege Decision

On November 29, 2023, the Special Master entered the Privilege Decision, which granted Movants' motion to compel. (ECF No. 571.) The basis of the Privilege Decision is that the O'Neil Declaration is technically deficient and thus cannot be accepted as competent evidence in support of FirstEnergy's arguments. This issue was not raised by Movants or called to the parties' attention by the Special Master prior to issuance of the Privilege Decision. Specifically, although the Privilege Decision recognizes that the declaration "provides it is 'under penalty of perjury,' bears the execution date, and is signed," the Decision deems the declaration inconsistent

with the applicable statutory requirements because it does not also expressly state that Mr. O'Neil's statements are "true."  (*Id.* at 12379  (citing the following form language set forth in 28 U.S.C. § 1746:  "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).  (Signature).").)

The Privilege Decision cites other circumstances that make plain that this discrepancy was at most inadvertent.  In particular, the decision notes that the attorney declarations submitted by FirstEnergy in connection with the motion to compel were in the format the Special Master finds is required.  (Privilege Decision at PageID 12383.)  The Privilege Decision nonetheless declines to accept the O'Neil Declaration and instead credits entirely "Movants' evidence . . . ground[ing] the early investigation in the business necessity and human resources/public relations arena, even if those same issues also logically overlap with anticipated litigation."  (*Id.* at PageID 12384.)  The Privilege Decision concludes that neither the attorney-client privilege nor the work product doctrine applies to documents or testimony concerning the investigations.  (*Id.* at PageID 12386.)  The Decision accordingly grants the motion to compel and directs disclosure of attorney-client privileged communications and work product through documents and testimony.  (*Id.* at PageID 12387.)

C.    **FirstEnergy's Notice of Objection to the Privilege Decision**

On November 29, 2023, FirstEnergy filed a notice stating that it objects to the Privilege Decision and will submit a brief in support of its objections on or before the deadline of December 20, 2023.  (ECF No. 572; *see* Appointment Order § II.D; Fed. R. Civ. P. 53(f)(2).)

# ARGUMENT

I. **A STAY IS WARRANTED BECAUSE OF THE SEVERE AND IRREPERABLE HARM TO FIRSTENERGY FROM ENFORCEMENT OF THE PRIVILEGE DECISION PENDING ADJUDICATION OF ITS OBJECTIONS.**

FirstEnergy is entitled to a stay of the Privilege Decision under the four-factor test established by the Supreme Court: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. As the Sixth Circuit has explained, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Griepentrog*, 945 F.2d at 153. The Privilege Decision easily clears that bar under the *de novo* review standard, particularly given the severe and irreversible harm FirstEnergy will suffer if the Privilege Decision is enforced prior to adjudication of the Company's objections, that balance tilts decidedly in favor of a stay.

A. **Absent a Stay, FirstEnergy Will Suffer Severe and Irreparable Harm From the Forced Disclosure of Its Privileged Material and Work Product to Its Litigation Opponents.**

If FirstEnergy is compelled to comply with the Privilege Decision, it will be forced to disclose information to its opponents at the core of the attorney-client privilege and the work product protection regarding internal investigations into the same facts underlying this case. The resulting harm is all but certain to occur (including at upcoming depositions) and will be severe and irreversible. Accordingly, FirstEnergy will plainly suffer irreparable harm within the meaning of the governing standard absent a stay. *See Griepentrog*, 945 F.2d at 154–55 (interpreting irreparable harm prong as requiring evaluation of "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided" to substantiate the claimed injury).

*First*, it is settled law that "forced disclosure of privileged material may bring about irreparable harm." *In re Perrigo Co.*, 128 F.3d at 437; *see also In re Lott*, 139 F. App'x at 662 ("[I]nherent harmfulness result[s] from the discovery of privileged communications."); *Fed. Deposit Ins. Corp. for Integra Bank, N.A.* v. *Fid. & Deposit Co. of Maryland*, 2013 WL 12301536, at \*2 (S.D. Ind. Nov. 26, 2013) ("[A party] is necessarily harmed by [an adversary's] possession of . . . privileged information.").

The harm threatening FirstEnergy is even more severe than the typical harm that would befall a party from forced disclosure of privileged or work product-protected information. That is because the contemplated disclosure here would implicate protected materials *concerning the very claims underlying this action*. Indeed, this lawsuit was one of the legal proceedings whose filing spurred FirstEnergy's Board to commence the internal investigations. The O'Neil Declaration—which provides competent, compelling evidence that should be credited, as described below and as FirstEnergy will set forth in more detail in its forthcoming objections—states that "within weeks" of the unsealing of a criminal complaint against former Speaker of the Ohio House of Representatives Larry Householder, "[n]umerous legal proceedings were commenced . . . ***including this lawsuit*** . . . all of which stemmed from the allegations in the Householder Complaint." (ECF No. 511-1 (O'Neil Declaration) ¶ 6 at PageID 10939 (emphasis added).) The Board then initiated internal investigations into those allegations. (*Id.* ¶ 13 at PageID 10940.) The investigations probed many of the same payments and other events underlying Plaintiffs' claims that Defendants engaged in a "scheme to defraud" and made misstatements to investors.

Accordingly, by seeking discovery into the internal investigations, Movants attempt to invade privileged advice and work product that inform FirstEnergy's defense against

Plaintiffs' own claims.  The harm to FirstEnergy from this disclosure would be unprecedented and severe.  Indeed, the very "purpose of the work-product doctrine is to protect the relevant work *from falling into the hands of an adversary*."  *Itskin* v. *Gibson*, 2011 WL 5326165, at *5 (S.D. Ohio Nov. 7, 2011) (emphasis added) (internal quotation marks omitted); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019), *as amended* (Oct. 31, 2019) ("[A]n adverse party's review of privileged materials seriously injures the privilege holder." (citing *In re Perrigo Co.*, 128 F.3d at 437)).

   *Second*, the irreparable harm to FirstEnergy from enforcement of the Privilege Decision is not just "likely" to occur absent a stay—it is "certain and immediate."  *See Griepentrog*, 945 F.2d at 154.  Before the end of the year, Movants are scheduled to depose at least five witnesses, including current and former FirstEnergy Board members, the Company's current CFO, and its former Chief Legal Officer.  Each of those witnesses possesses protected information concerning FirstEnergy's internal investigations.  Following the issuance of the Privilege Decision, Movants confirmed that they will seek to elicit testimony regarding that information.  FirstEnergy now needs immediate relief in the form of a stay to forestall that harm.

   Because FirstEnergy's strong showing of irreparable harm lightens its burden to demonstrate application of the other stay factors, the Special Master could end the analysis here. *See id.* at 154 154 ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay.").  Nonetheless, the other factors also weigh in favor of a stay, for the reasons set forth next.

  **B.** **FirstEnergy Is Likely to Succeed on the Merits of Its Objections, Which Indisputably Raise Serious Questions.**

   To conclude that FirstEnergy has demonstrated a likelihood of success on its objections under the *Hilton* standard, the Special Master need not agree that the Privilege Decision

is wrong or that it is likely to be overturned. Instead, the Special Master must determine only that the MTC raises "at least serious questions." *Hargett*, 493 F. App'x at 689 (citation omitted); *see also Clardy* v. *Pounds*, 2023 WL 5498054, at *2 (M.D. Tenn. Aug. 24, 2023) ("To establish a likelihood of success on the appeal, the [movant] must demonstrate more than a negligible possibility of success on appeal, but it need not establish that success is more likely than not . . . . Courts construe this factor as requiring, at a minimum, that the [movant] demonstrate a substantial case on the merits, meaning that serious legal questions are raised." (internal quotation marks and citations omitted)).[1] The Privilege Decision easily clears that bar—particularly given the *de novo* standard of review that will apply to consideration of FirstEnergy's objections. *See* Appointment Order at PageID 11687–88 (Order Appointing Special Master providing that the Court "shall review" "de novo" both "conclusions of law" and "issue[s] of fact" determined by Special Master).

The Privilege Decision turns on the conclusion that the O'Neil Declaration is not acceptable evidence because, although Mr. O'Neil averred that all statements in the declaration were made "under penalty of perjury," he did not also expressly aver that those statements were "true." As the Privilege Decision implicitly recognizes, there is, at a minimum, ample room for a reviewing court to disagree with that conclusion.

As an initial matter, this Court and other courts in this District typically permit parties to amend minor issues with declarations. *See*, *e.g.*, *Ross* v. *City of Dublin,* 2016 WL 7117389, at *8 (S.D. Ohio Dec. 7, 2016) (Marbley, C.J.) (denying motion to strike declaration that omitted "true and correct" certification and granting proponent leave to amend "to cure . . .

---

[1] *See also Bailey* v. *Lafler*, 2016 WL 9343177, at *2 (W.D. Mich. Nov. 22, 2016) (stay favored as long as "serious legal questions are raised" (citing *Leiva–Perez* v. *Holder*, 640 F.3d 962, 967 (9th Cir. 2011))); *Orchestrate HR, Inc.* v. *Blue Cross & Blue Shield of Kansas, Inc.*, 2020 WL 5593837, at *1 (D. Kan. Sept. 18, 2020) (magistrate judge granting stay pending district court review notwithstanding that magistrate "remained convinced that her Order . . . was correct").

technical deficiencies); *Fox* v. *Brown Mem. Home, Inc*., 2010 WL 4983153, at *2 (S.D. Ohio Dec. 2, 2010) (denying motion to strike and granting plaintiffs leave to file amended affidavit, on the ground that permitting amendment "serves the interest of justice in resolving this case on its merits").

In any event, the Privilege Decision acknowledges that the Sixth Circuit "has not expressly opined" on the issue identified by the Special Master. (*See* Privilege Decision at PageID 12379.) Nor does the Privilege Decision identify any Southern District of Ohio case that has addressed the question. The Privilege Decision finds persuasive *In re Muscatell*, 106 B.R. 307, 309 (M.D. Fla. 1989), which is a non-binding bankruptcy court opinion that rejected a declaration for failure to include a statement that it was "true." However, *LaBoeuf Lamb* v. *Worsham*, 185 F.3d 61 (2d Cir. 1999), which the Privilege Decision also cites, reached a contrary conclusion. There, the Second Circuit held that when a declarant did not expressly state "that the contents [of a declaration we]re 'true and correct," but, like Mr. O'Neil, did aver that the statement was made "[u]nder penalty of perjury," the declaration "substantially complie[d]" with Section 1746, "which is all that this Section requires." 185 F.3d at 65–66.

*LaBoeuf* also explains why *Nissho-Iwai Am. Corp.* v. *Kline*, 845 F.2d 1300, 1305–06 (5th Cir. 1988), another case on which the Privilege Decision relies, did not change that conclusion. As the Second Circuit explained, the declaration in *Nissho-Iwai* (on which *Muscatell* relies) was "***neither*** sworn ***nor*** its contents stated to be true and correct ***nor*** stated under penalty of perjury." *LaBoeuf*, 185 F.3d at 66 n.2. The Second Circuit concluded that "[b]y listing these requirements in the disjunctive, the Fifth Circuit indicated that a party need not satisfy all of them in order for a court to consider the affidavit." *Id.* The other cases discussed in the Privilege Decision did not address a declaration that is made under "penalty of perjury" but does not include

-12-

the word "true."[2]  Given the disagreement in the case law recognized in the Privilege Decision, there is "at least [a] serious question[]" as to whether the Privilege Decision reaches the correct result.  *Hargett*, 493 F. App'x at 689 (citation omitted).

The Privilege Decision also satisfies the "serious questions" standard on the basis of the issues raised in the parties' briefing and arguments that were not addressed in the Special Master's decision but that will need to be addressed on appeal if the District Court declines to adopt the Special Master's conclusion concerning Mr. O'Neil's declaration.  Those issues include the extent to which FirstEnergy must demonstrate that a communication served a legal purpose in order for privilege to attach and the circumstances under which the attorney-client privilege and work product protection may be waived in the context of an internal investigation.  The parties contested these questions through detailed substantive briefs and lengthy argument, and they are unquestionably "serious."  Indeed, the Supreme Court recently heard argument in a case presenting the former question regarding the required demonstration of a communication's purpose, but it then dismissed the writ of *certiorari* as improvidently granted.  *See In re Grand Jury*, 143 S. Ct. 543 (2023) (No. 21-1397).

Not only are the issues addressed in the parties' briefing "serious," but they also raise broader precedential questions bearing on the conduct of internal investigations.  As FirstEnergy did here, companies commonly perform internal investigations through counsel in

---

[2]  For example, in some of those cases, as in *Nissho-Iwai*, the declaration was deficient in nearly *every* respect.  *See Nissho-Iwai Am. Corp.*, 845 F.2d at 1305–06; *see also Sfakianos* v. *Shelby Cty. Gov't.*, 2010 WL 11493114, at *10 (W.D. Tenn. Dec. 30, 2010) (declaration was not notarized, signed under penalty of perjury, or dated); *Enigwe* v. *Diversity City Media*, 2008 WL 11352583, at *2 (S.D. Ohio June 2, 2008) (declaration was not signed or dated).  In others, the proponent had an opportunity to correct the issue and declined to do so, *see Nissho-Iwai*, 845 F.2d at 13006 n.10,, or the declaration failed to "set forth specific facts"—as opposed to "conclusory statements"— "made on the basis of personal knowledge, *see Enigwe*, 2008 WL 11352583, at *2.

response to criminal and regulatory inquiries, under the belief that their attorneys' investigative work will be protected by the attorney-client privilege and the work product doctrine. Movants' contentions in the briefing and argument of the Privilege Decision, if adopted, would threaten to disincentivize the prompt investigation of alleged corporate misconduct—and the remedial measures, including cooperation with government authorities, that such investigation facilitates— because companies would lack the necessary certainty that their attorneys' investigative work would remain confidential. *See*, *e.g.*, *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 140, 151 (D.C. Cir. 2015) (rulings that "inject[] uncertainty into application of attorney-client privilege and work product protection to internal investigations" "would ring alarm bells in corporate general counsel offices throughout the country"). For this reason, too, the Privilege Decision implicates "serious questions" warranting a stay.

### C. A Stay Will Not Injure Any Other Party.

A stay pending final resolution of FirstEnergy's objections to the Privilege Decision would not prejudice any other party to this action. Movants will undoubtedly complain that a stay will delay them from taking discovery regarding FirstEnergy's internal investigations, but that argument fails for at least three reasons.

*First*, the Sixth Circuit's grant of Defendants' Rule 23(f) petition likely will necessitate a complete overhaul of the scope and timing of discovery in this action. Defendants' appeal could result in decertification of the class certified by the Court and could necessitate significant changes to Plaintiffs' approach to discovery. For example, the Sixth Circuit has agreed to consider whether the Court misconstrued *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 35 (2013), by failing to require Plaintiffs to submit a methodology capable of measuring damages classwide as a prerequisite to class certification. *See* Def. FirstEnergy Corp.'s and Certain Individual Defs.' Pet. for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) at 5–6, *In re*

*FirstEnergy Corp.*, No. 23-00303 (6th Cir. Apr. 14, 2023), ECF No. 1-2.  If the Sixth Circuit agrees that the Court erred in that regard, Plaintiffs will be unable to obtain class certification for their securities fraud claims unless they present a damages methodology meeting the Supreme Court's requirements.

Defendants' interlocutory appeal thus could trigger an upheaval of the scope and schedule of this action that is far beyond any modest timing implications of a stay of the Privilege Decision.  FirstEnergy is moving to stay ***all*** trial court proceedings pending the Sixth Circuit's ruling.  There is no reason to force FirstEnergy to divulge privileged information in service of racing to complete fact discovery when the Sixth Circuit's intervention is substantially likely to render that effort futile.

*Second*, even if discovery proceeds notwithstanding the grant of the Rule 23(f) petition, a stay of the Privilege Decision pending resolution of FirstEnergy's objections would be consistent with the Court's and parties' longstanding expectation about the case schedule.  Under the governing schedule entered by Magistrate Judge Jolson, the fact discovery deadline automatically extends until after "final resolution" of the MTC, "*including any appellate proceedings*."  (June 5, 2023 Order ¶ 2 at PageID 10374 (emphasis added) (deadlines are "continued for half the number of days between the filing of [the MTC] and final resolution thereof, including any appellate proceedings").)  The stay sought here would mirror that approach by remaining in effect only until final resolution of appellate proceedings regarding the Privilege Decision.

*Third*, any harm to Movants from a delay caused by a stay of the Privilege Decision would be, at most, "relatively slight" in comparison to the severe and irreparable injury that FirstEnergy would suffer from improper compelled disclosure of its privileged attorney

communications and work product. *See Griepentrog*, 945 F.2d at 155. There has not been any shortage of discovery in this action. Movants have taken more than 30 depositions and scheduled an additional 30. In addition, FirstEnergy has produced documents totaling more than ***1.1 million pages***, and continues to respond to document requests and interrogatories on myriad topics. *See KPH Healthcare Servs., Inc.* v. *Mylan, N.V.*, 2022 WL 16527244, at *1 (D. Kan. Oct. 28, 2022) (no substantial harm to plaintiffs from "brief delay in receiving" allegedly privileged documents "in light of [defendant's] production of millions of pages to date with more forthcoming").

Critically, the discovery provided by FirstEnergy to date has included wide-ranging disclosure of the same facts that the Company probed during its internal investigations. The millions of pages produced by FirstEnergy to Movants include every discovery document that the Company has produced as a result of those investigations to a litany of government agencies, including the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the Federal Energy Regulatory Commission, the Ohio Attorney General, and the Public Utilities Commission of Ohio. Nor has the Company instructed a single witness not to answer questions regarding his or her firsthand knowledge of the conduct addressed in the internal investigations. FirstEnergy's instructions to deponents concerning the investigations have instead been limited to questions seeking information that the witnesses learned second-hand, "solely through . . . privileged communications with the Company's or Board's counsel." (FirstEnergy's Supplemental MTC Brief, ECF No. 550, at 11894–99.) Against that discovery record, Movants will not face any injury if they are prevented from obtaining the materials FirstEnergy believes are privileged until the Company's objections to the Privilege Decision have been finally resolved.

D.    **The Public Interest Favors a Stay.**

Like the first three stay factors, the fourth factor—"where the public interest lies"—strongly favors a stay.  481 U.S. at 776.  As the Supreme Court has held, protection of the attorney-client privilege serves the "broader public interest[]."  *See Upjohn Co.*, 449 U.S. at 389 (privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice").  In order to fulfill that interest, courts must "clearly delineate the creation, scope, and dissolution of" the attorney-client privilege and the work product doctrine to provide certainty about when those protections apply.  *In re Lott*, 139 F. App'x at 662.  Absent such certainty, parties cannot communicate openly with their attorneys or strategize freely regarding legal proceedings.  *See id.* ("An uncertain privilege—or one which purports to be certain, but rests in widely varying applications by the courts—is little better than no privilege." (quoting *Rhone-Poulenc Rorer Inc.* v. *Home Indem. Co.*, 32 F.3d 851, 862–63 (3d Cir. 1994))).

As explained above, *see infra*, the issues addressed during the briefing and argument of this motion could generate significant uncertainty regarding the application of the attorney-client privilege and the work product protection to corporate internal investigations.  Although the Special Master did not reach those issues, they will be addressed on appeal if the Court agrees with FirstEnergy's position regarding Mr. O'Neil's declaration.  Whether corporations are protected in conducting investigations is critical to their attempts to identify misconduct and conduct remediation, including by cooperating with government authorities.  The public interest in consistent privilege law counsels decisively in favor of a stay here to avoid calling the privilege into question before those issues are fully resolved.

## II.    AS AN ALTERNATIVE BASIS FOR STAYING THE EFFECT OF THE PRIVILEGE DECISION, THE SPECIAL MASTER SHOULD CONVERT THE DECISION TO A REPORT AND RECOMMENDATION.

A stay of the effect of the Privilege Decision should be entered on the alternative basis that the ruling should be construed under the Appointment Order as a report and recommendation, the effectiveness of which depends on the resolution of FirstEnergy's forthcoming objections. Under the Appointment Order, "the court may refer any motion . . . to the Special Master for a report and recommendation." (Appointment Order § II.A; *see also id.* § Section II.A.4.) The motion to compel was filed with the District Court before the Special Master's appointment (*See* ECF No. 489) and then referred by the District Court to the Special Master. Because the Appointment Order provides for referral of motions to the Special Master only "for a report and recommendation," and not for an order, converting the Privilege Decision to a report and recommendation would be most consistent with the Appointment Order. This clarification would also have the effect of staying the effectiveness of the Privilege Decision pending adjudication of an appeal.[3]

### CONCLUSION

For the foregoing reasons, FirstEnergy respectfully requests that the Special Master stay the effectiveness of the Privilege Decision pending final resolution of FirstEnergy's appeal of that decision. Alternatively, the Special Master should convert the Privilege Decision to a report

---

[3] The Appointment Order also authorizes the Special Master to "assist with legal analysis of the parties' motions or other submissions, and make recommended findings of fact and conclusions of law on any substantive non-dispositive motion(s)" (*id.* § II.A.4), such as the instant motion. As the Special Master has recognized, this section of the Appointment Order "unquestionably contemplate[s] a report and recommendation." (Order Denying Non-Party Ebony Yeboah-Amankwah's Motion for Protective Order, ECF No. 553 at 11985 n.1.)

and recommendation to the Court, the effectiveness of which similarly depends on the final adjudication of objections.

Respectfully,

*/s/ Thomas D. Warren*
Thomas D. Warren, Trial Attorney (0077541)
WARREN TERZIAN LLPs
30799 Pinetree Road, Suite 345
Pepper Pike, Ohio  44124
Telephone:  (213) 410-2620
tom.warren@warrenterzian.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
Tasha N. Thompson (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

**DECLARATION OF SERVICE**

I certify that the foregoing was filed electronically on November 30, 2023.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Thomas D. Warren
Thomas D. Warren (0077541)

*Counsel for Defendant FirstEnergy Corp.*