**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | | <u>CLASS ACTION</u> |
| | | **ORAL ARGUMENT REQUESTED** |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) | Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson |
| MFS Series Trust I, et al., | ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY**
**PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND** .......................................................................................................4

**ARGUMENT** ...........................................................................................................7

**I.** **BECAUSE THE PENDING RULE 23(F) APPEAL PRESENTS "SERIOUS QUESTIONS," DEFENDANTS CLEARLY MEET THE "LIKELIHOOD OF SUCCESS" STANDARD** ............................................8

**II.** **THE BALANCE OF HARMS STRONGLY FAVORS A STAY PENDING APPEAL**.............................................................................................11

    A.  Continued Litigation Will Impose Irreparable Harm on Defendants. .........................13

    B.  At a Minimum, the Court Should Stay Expert Discovery. ...........................................17

    C.  There Is No Cognizable Harm to Plaintiffs. .................................................................18

**III.** **THE PUBLIC INTEREST FAVORS A STAY**.................................................18

**IV.** **THE *MFS* AND *BRIGHTHOUSE* OPT-OUT ACTIONS SHOULD ALSO BE STAYED** ........................................................................................19

**CONCLUSION** ......................................................................................................20

**STATEMENT REQUESTING HEARING**..............................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abell* v. *Potomac Ins. Co.*,
858 F.2d 1104 (5th Cir. 1988) ..............................................................10

*Abercrombie & Fitch, Co.* v. *ACE Eur. Grp. Ltd.*,
2014 WL 4915269 (S.D. Ohio Sept. 30, 2014) .....................................9

*Affiliated Ute Citizens of Utah* v. *United States*,
406 U.S. 128 (1972)..........................................................................*passim*

*In re Amgen Inc. Sec. Litig.*,
2010 WL 11469044 (C.D. Cal. Feb. 2, 2010)........................................7

*Bailey* v. *Lafler*,
2016 WL 9343177 (W.D. Mich. Nov. 22, 2016)....................................9

*Baker* v. *Adams Cnty./Ohio Valley Sch. Bd.*,
310 F.3d 927 (6th Cir. 2002) ................................................................8

*In re Big Lots, Inc. et al*,
No. 17-00303 (6th Cir. 2017) ...............................................................2

*In re BP p.l.c. Sec. Litig.*,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)........................................11

*Brown* v. *Wal-Mart Stores, Inc.*,
2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) .......................................8

*Comcast Corp.* v. *Behrend*,
569 U.S. 27 (2013)............................................................................*passim*

*Custom Hair Designs by Sandy, LLC* v. *Cent. Payment Co., LLC*,
2020 WL 5250492 (D. Neb. Sept. 3, 2020)....................................7, 18

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ................................................................9

*In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*,
2022 WL 4149090 (6th Cir. Sept. 9, 2022) ......................................1, 9

*Earl* v. *Boeing Co.*,
21 F.4th 895 (5th Cir. 2021) ...........................................................7, 17

*In re FirstEnergy Corp.*,
    No. 23-0303 (6th Cir.) ................................................................1

*In re Flint Water Cases*,
    627 F. Supp. 3d 734 (E.D. Mich. 2022)..........................................18

*In re Goldman Sachs Group, Inc. Securities Litigation*,
    No. 1:10-cv-03461 (S.D.N.Y.) ......................................................13

*Grae* v. *Corr. Corp. of Am.*,
    2019 WL 1746492 (M.D. Tenn. Apr. 18, 2019)..........................7, 13

*Green Party of Tenn.* v. *Hargett*,
    493 F. App'x 686 (6th Cir. 2012) ..............................................2, 9

*Hicks* v. *State Farm Fire & Cas. Co.*,
    No. 14-cv-00053 (E.D. Ky. July 15, 2019)....................................13

*IBEW Loc. 98 Pension Fund* v. *Best Buy Co.*,
    2014 WL 4540228 (D. Minn. Sept. 11, 2014)...........................18, 19

*IBEW Loc. 98 Pension Fund* v. *Best Buy Co.*,
    No. 11-cv-00429 (D. Minn. Oct. 22, 2014) ....................................7

*In re Interbank Funding Corp. Sec. Litig.*,
    629 F.3d 213 (D.C. Cir. 2010)......................................................10

*Johnston* v. *HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001).........................................................10

*Joseph* v. *Wiles*,
    223 F.3d 1155 (10th Cir. 2000) ....................................................10

*Kentucky* v. *Biden*,
    23 F.4th 585 (6th Cir. 2022) ........................................................19

*Leiva –Perez* v. *Holder*,
    640 F.3d 962 (9th Cir. 2011) ........................................................10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    208 F.R.D. 1 (D.D.C. 2002)..........................................................19

*Martinez* v. *United States*,
    2014 WL 4446924 (M.D. Tenn. Sept. 9, 2014).............................10

*Michigan Coal. of Radioactive Material Users, Inc.* v. *Griepentrog*,
    945 F.2d 150 (6th Cir. 1991) ......................................................8, 9

*N.J. Carpenters Health Fund* v. *Residential Cap., LLC*,
No. 08-cv-8781 (S.D.N.Y May 12, 2011) ..................................................................7

*Nieberding* v. *Barrette Outdoor Living, Inc.*,
2014 WL 5817323 (D. Kan. Nov. 10, 2014) ......................................................8, 13

*Nken* v. *Holder*,
556 U.S. 418 (2009)...................................................................................................8

*Pannek* v. *U.S. Bank Nat'l Ass'n*,
2021 WL 5533749 (S.D. Ohio July 21, 2021).........................................................15

*Pena* v. *Taylor Farms Pacific, Inc.*,
2015 WL 5103157 (E.D. Cal. Aug. 31, 2015)..............................................8, 13, 14

*In re Petrobras Sec.*,
No. 16-1914 (2d Cir. Aug. 2, 2016).........................................................................7

*In re Polyurethane Foam Antitrust Litig.*,
2014 WL 12591692 (N.D. Ohio May 16, 2014) ......................................................9

*Ohio Pub. Emps.' Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)......................................................11

*Romero* v. *Securus Techs., Inc.*,
383 F. Supp. 3d 1069 (S.D. Cal. 2019)....................................................................8

*Shanehchian* v. *Macy's, Inc.*,
2011 WL 13157172 (S.D. Ohio Apr. 27, 2011) .....................................................14

*Strougo* v. *Tivity Health, Inc.*,
2023 WL 4830593 (M.D. Tenn. July 27, 2023) ..........................................7, 12, 13

*Tarrify Properties, LLC* v. *Cuyahoga Cnty.*,
2021 WL 164217 (N.D. Ohio Jan. 19, 2021)..........................................................13

*In re Tivity Health, Inc.*,
No. 23-00504 (6th Cir. June 22, 2023) ...................................................................12

*Vervaecke* v. *Chiles, Heider & Co.*,
578 F.2d 713 (8th Cir. 1978) ..................................................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2 F.4th 1199 (9th Cir. 2021) ...................................................................................10

*Waggoner* v. *Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)......................................................................................10

*Waggoner, et al.* v. *Barclays PLC, et al.*,
  No. 16-1912 (2d Cir. Sept. 7, 2016) .....................................................................7

*Ward* v. *Apple Inc.*,
  784 F. App'x 539 (9th Cir. 2019) ........................................................................11

*Whitlock* v. *FSL Mgmt., LLC*,
  2012 WL 6675124 (W.D. Ky. Dec. 21, 2012).......................................................18

*Widdis* v. *Marathon Petrol. Corp., LP*,
  No. 13-cv-12925 (E.D. Mich. Jan. 20, 2015) ......................................................13

*Willis* v. *Big Lots, Inc.*,
  2017 WL 11634939 (S.D. Ohio Sept. 19, 2017) ...........................................*passim*

## Other Authorities

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Fed. R. Civ. P. 26(b)(1)........................................................................................15

## PRELIMINARY STATEMENT

On November 16, 2023, the Sixth Circuit granted Defendants'[1] petition for interlocutory appeal of this Court's March 30, 2023 class certification order (the "Certification Order").  The grant of interlocutory review under Federal Rule of Civil Procedure 23(f) is an "extraordinary procedure."  *In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*, 2022 WL 4149090, at *2 (6th Cir. Sept. 9, 2022).[2]  Because there is a substantial likelihood that the Sixth Circuit's upcoming decision will substantially impact the matters in dispute in this action, rendering continued proceedings during the pending appeal wasteful and prejudicial, Defendants respectfully request that the Court stay further proceedings in this Court pending the outcome of Defendants' appeal.[3]

Courts in this Circuit and around the country regularly stay proceedings, particularly in securities class actions, pending the outcome of a Rule 23(f) appeal, even over a party's objection.  *See* cases cited *infra* at 7–8, 11–18.  To cite one example, in *Willis* v. *Big Lots, Inc.*, Magistrate Judge Jolson stayed a securities class action pending a Rule 23(f) appeal that raised class certification issues similar to those presented here, namely, that Plaintiffs "did not proffer a damages methodology that, as required by *Comcast*, 'measures only those damages' resulting from their actionable theory of fraud."  2017 WL 11634939, at *4 (S.D. Ohio Sept. 19,

---

[1]    "Defendants" include the parties that petitioned the Sixth Circuit for interlocutory review in *In re FirstEnergy Corp.*, No. 23-0303 (6th Cir.).  For the Court's convenience, we enclose a set of the briefs filed with the Sixth Circuit in connection with that petition.  (*See* Exhibits to the Declaration of David M.J. Rein.)

[2]    Plaintiffs have acknowledged that the Sixth Circuit "doesn't routinely accept interlocutory appeals," and it is a "rare occasion [that] it does."  (Ex. 8 at 1 ("Pls.' 23(f) Resp.").)

[3]    Defendants Dennis Chack, John Judge, James Pearson, Robert Reffner, Donald Schneider, Leila Vespoli, and Underwriter Defendants join in the requested relief.

2017) (order staying "remaining expert discovery and the summary judgment deadline"); Rule 23(f) Pet. at 2, *In re Big Lots, Inc. et al*, No. 17-00303 (6th Cir. Mar. 31, 2017), ECF No. 1-2.  In doing so, Magistrate Judge Jolson correctly recognized that where, as here, an interlocutory appeal of a class certification decision "may define the contours of this case going forward" and "absent a stay . . . significant costs and judicial resources may be expended unnecessarily," the case should be stayed pending adjudication of the Rule 23(f) appeal. *Big Lots, Inc.,* 2017 WL 11634939, at *4.

When deciding motions to stay pending interlocutory appeal, courts weigh the "serious questions going to the merits and irreparable harm" to the movants absent a stay against the "harm that will be inflicted on others if a stay is granted." *Green Party of Tenn.* v. *Hargett*, 493 F. App'x 686, 689 (6th Cir. 2012) (citation omitted).  In granting Defendants' Rule 23(f) petition, the Sixth Circuit expressly considered (i) whether Defendants are "likely to succeed on appeal," (ii) "whether the case presents a novel or unsettled question of law," and (iii) "the cost of continuing the litigation." (Ex. 10 at 1–2.)  These factors all support a stay pending appeal.

The novel or unsettled questions of law that the Sixth Circuit will decide include the scope and applicability of the two Supreme Court doctrines central to the Court's certification of a class here:  (1) the requirements for asserting a classwide presumption of investor reliance on alleged omissions under *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128, 153–54 (1972); and (2) the requirement that Plaintiffs present a methodology capable of measuring classwide damages under *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33–35 (2013). The Sixth Circuit's resolution of those issues on appeal will substantially impact this action, including whether Plaintiffs can maintain any fraud-based class claims under the Securities Exchange Act of 1934 (the "Exchange Act").

Allowing this litigation to proceed in this Court while Defendants' Rule 23(f) appeal is pending would be wasteful because the Sixth Circuit's ruling will almost certainly impact the core issues in this case, including (i) the scope of any permissible class claims, (ii) which parties will remain subject to class claims, (iii) the scope of the issues to be addressed through document discovery, written discovery and witness testimony, (iv) the available defenses, and (v) the scope of expert testimony. For example, if Plaintiffs cannot obtain certification of their Exchange Act claims, eight defendants will no longer be subject to any class claims, the relevant class period will be shortened by almost three years, and scienter will no longer be an issue in the case, rendering discovery about any party's state of mind irrelevant. And if Plaintiffs cannot invoke the *Affiliated Ute* presumption of reliance on Defendants' alleged failure to disclose a "corruption scheme," the focus of the case will be narrowed to the 46 statements Plaintiffs challenge, and whether any of those statements impacted FirstEnergy's stock price and caused Plaintiffs' alleged losses, rather than on the impact of some open-ended failure to disclose a "corruption scheme" on that stock price.

At a minimum, the Court should stay expert discovery because the outcome of the appeal will clearly impact the scope of expert opinions on loss causation, materiality, and damages. For example, if the Sixth Circuit agrees that the *Affiliated Ute* presumption cannot apply here, the experts will not have to opine on whether Defendants' alleged failure to disclose a "corruption scheme" impacted FirstEnergy's stock price and caused investor losses. And if the appeals court concludes that Plaintiffs' proffered damages methodology does not satisfy *Comcast*, then their experts will need to propose a new methodology, and to address different theories of damages and potentially loss causation, assuming Plaintiffs can propose any satisfactory methodology at all in a case over qualitative disclosures about contingent events, such as the passage of H.B. 6.

Finally, the Court should stay the largely duplicative discovery in the *MFS* and *Brighthouse* opt-out actions[4] because, as this Court has recognized, proceeding with a separate opt-out discovery track would be inefficient, including forcing parties and nonparties to sit for depositions twice on the same issues and litigating issues in the opt-out actions without the input of the additional parties in the class action, with the likelihood of having to re-litigate those issues after the Sixth Circuit issues its decision.  For example, because both *MFS* and *Brighthouse* rely on the *Affiliated Ute* presumption of reliance, the Sixth Circuit's ruling on the applicability of that presumption here will directly impact their claims as well.

Plaintiffs in both the class and opt-out actions have informed Defendants that they oppose the relief sought in this motion.

## BACKGROUND

On July 21, 2020, the U.S. Attorney's Office for the Southern District of Ohio and the Federal Bureau of Investigation announced the arrest of then-Ohio House Speaker Larry Householder on bribery charges, and filed a criminal complaint that alleged involvement by FirstEnergy Corp.  (Consolidated Compl. ("Compl."), ECF No. 72 at PageID 1549.)  A week later, on July 28, 2020, Diane Owens filed a case on behalf of a putative class of purchasers of FirstEnergy securities against FirstEnergy and individual defendants alleging violations of federal securities laws.  (Owens Compl., ECF No. 1.)  On February 26, 2021, Plaintiffs filed the operative complaint, which includes five counts of alleged violations of federal securities laws against overlapping groups of 42 different defendants.  (Compl. at PageID 1554–56, 1645–58.)  Plaintiffs generally allege that 46 public statements made by FirstEnergy over a three-and-a-half year period

---

[4]      The two opt-out actions are *MFS Series Trust I, et al.* v. *FirstEnergy Corp., et al.*, No. 21-cv-05839 (S.D. Ohio) (the "*MFS* opt-out action") and *Brighthouse Funds II - MFS Value Portfolio, et al.* v. *FirstEnergy Corp., et al.*, No. 22-cv-00865 (S.D. Ohio) (the "*Brighthouse* opt-out action").

were false or misleading for failing to disclose FirstEnergy executives' alleged bribery of Ohio public officials.  (Compl. at PageID 1576–96.)

        While Defendants' motions to dismiss were pending, certain plaintiffs opted not to pursue class claims and, instead, filed individual actions.  Both opt-out actions assert Exchange Act claims, premised on the same underlying allegations as the class action claims, against FirstEnergy and seven of the same individual defendants as the class Exchange Act claims (Charles Jones, Michael Dowling, James Pearson, Steven Strah, K. Jon Taylor, Donald Schneider and John Judge).  (*See* Compl., *MFS* opt-out action, ECF No. 1; Compl, *Brighthouse* opt-out action, ECF No. 1.)  Because of the overlap between the class and opt-out actions, this Court ordered the coordination of discovery between the class and opt-out actions and tied the case schedule in the opt-out actions to the case schedule in the class action.  (*See, e.g.*, Order on Joint Mot. For Fact Dep. Protocol, ECF No. 309 (ordering coordination of fact depositions); *MFS* opt-out action, Order on Joint Mot. and Stipulation Regarding Case Schedule, *MFS* opt-out action, ECF No. 90 at PageID 849 (ordering, if deadlines are continued in the class action, "the corresponding deadlines in the [opt-out] Actions shall be deemed to be continued by the same amount of time").)

        On March 7, 2022, the Court granted in part and denied in part the motions to dismiss in the class action, and found that the "*Affiliated Ute* presumption . . . appears appropriate because the Court has found that Defendants made omissions of material fact."  (Order on Mot. to Dismiss,  ECF No. 219 at PageID 4767.)[5]  Then, on March 30, 2023, this Court granted Plaintiffs' motion to certify a class of purchasers of FirstEnergy common stock and certain debt securities between February 21, 2017 and July 21, 2020, asserting claims under the Exchange Act.

---

[5]     In so doing, this Court acknowledged that "[i]t is unsettled whether a plaintiff alleging both misrepresentation and omissions case engage both the *Basic* and *Affiliated Ute* presumptions simultaneously."  (Order on Mot. to Dismiss, ECF No. 219 at PageID 4767.)

(Certification Order, ECF No. 435 ("Certification Order") at PageID 9781.) The Court held, *inter alia*, that (i) the "communications at issue are primarily omissions-based," and thus "the application of *Affiliated Ute* is appropriate here"; and (ii) "predominance exists with respect to damages for the same reasons" because both Plaintiffs' Securities Act and Exchange Act claims are based on the existence of a "statutory formula" for damages. (*Id.* at PageID 9810–13, 9819–22.)[6] The Court also certified claims brought by purchasers of certain debt securities under the Securities Act of 1933 (the "Securities Act") for notes offerings that occurred in February 2020 and June 2020. (*Id.* at PageID 9782, 9790–91.) Eight defendants are named in the Exchange Act claims, but not the Securities Act claims. (Compl. at PageID 1554–56, 1645–58.)

On April 13, 2023, Defendants then filed their petition to the Sixth Circuit for permission to appeal the class certification order. The petition raised two questions for the Sixth Circuit's review: (1) whether the "district court misconstrued the narrow *Affiliated Ute* presumption" in certifying a class asserting omissions-based securities fraud claims, notwithstanding that the complaint alleged Defendants made statements constituting so-called "half-truths" to investors; and (2) whether the "district court misapplied the Supreme Court's decision in *Comcast*" in determining that Plaintiffs had met the class certification requirement that Plaintiffs' "damages are capable of measurement on a classwide basis" and are "consistent with their liability case." (Ex. 1 at 1–2 ("Rule 23(f) Pet.").)

Recognizing the importance of the issues raised, multiple *amici* supported FirstEnergy's petition, including the U.S. Chamber of Commerce, the Securities Industry and

---

[6]     In its order certifying the class here, this Court again acknowledged that the application of *Affiliated Ute* was unsettled, stating that although "some courts have held that *Affiliated Ute* applies solely to cases primarily involving omissions," there was "no binding authority" in the Sixth Circuit on the issue. (Certification Order at PageID 9820–21.)

Financial Markets Association, Edison Electric Institute, and a group of former SEC officials and law professors. (Exs. 6–7.) On November 16, 2023, the Sixth Circuit granted interlocutory review. (Ex. 10 at 2.)

## ARGUMENT

Courts in this Circuit regularly stay proceedings in securities class actions, including over a party's objection, pending the outcome of Rule 23(f) appeals. *See, e.g.*, *Strougo* v. *Tivity Health, Inc.*, 2023 WL 4830593, at *3 (M.D. Tenn. July 27, 2023) (granting stay pending outcome of Rule 23(f) appeal in securities litigation); *Big Lots, Inc.*, 2017 WL 11634939, at *4 (same). Indeed, courts across the country routinely do the same in securities class actions. *See, e.g.*, Mot. Order at 1, *Waggoner, et al.* v. *Barclays PLC, et al.*, No. 16-1912 (2d Cir. Sept. 7, 2016), ECF No. 109 (staying district court proceedings pending Rule 23(f) appeal); Mot. Order at 1, *In re Petrobras Sec.*, No. 16-1914 (2d Cir. Aug. 2, 2016), ECF No. 169 (same); Mot. Order at 3, *IBEW Loc. 98 Pension Fund* v. *Best Buy Co.*, No. 11-cv-00429 (D. Minn. Oct. 22, 2014), ECF No. 235 (same); Endorsement at 4, *N.J. Carpenters Health Fund* v. *Residential Cap., LLC*, No. 08-cv-8781 (S.D.N.Y May 12, 2011), ECF No. 133 (same); *In re Amgen Inc. Sec. Litig.*, 2010 WL 11469044, at *4–5 (C.D. Cal. Feb. 2, 2010) (same).

When proceedings are stayed pending 23(f) appeals, courts stay proceedings in the district court regardless of when the appeal is granted, including in the middle of fact discovery. *See Grae* v. *Corr. Corp. of Am.*, 2019 WL 1746492, at *1–2 (M.D. Tenn. Apr. 18, 2019) (staying fact discovery in securities class action pending 23(f) appeal); Mot. Order at 3, *IBEW Loc. 98 Pension Fund*, No. 11-cv-00429, ECF No. 235 (same); *N.J. Carpenters Health Fund*, No. 08-cv-8781, ECF No. 133 (same); *cf. Earl* v. *Boeing Co.*, 21 F.4th 895, 898–900 (5th Cir. 2021) (same in civil RICO class action); *Custom Hair Designs by Sandy, LLC* v. *Cent. Payment Co., LLC*, 2020 WL 5250492, at *3 (D. Neb. Sept. 3, 2020) (same in civil RICO class action); *Romero* v. *Securus*

*Techs., Inc.*, 383 F. Supp. 3d 1069, 1077 (S.D. Cal. 2019) (same in class action alleging privacy

act violations); *Pena* v. *Taylor Farms Pacific, Inc.*, 2015 WL 5103157, at *1, *5 (E.D. Cal. Aug.

31, 2015) (same in labor law class action); *Nieberding* v. *Barrette Outdoor Living, Inc.*, 2014 WL

5817323, at *1, *3 (D. Kan. Nov. 10, 2014) (same in products liability class action); *Brown* v.

*Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4–5 (N.D. Cal. Nov. 15, 2012) (same in labor law

class action).

        In deciding whether to stay proceedings pending appeal, courts apply "a balancing

test using the following four factors:  (1) whether the defendants are likely to succeed on the merits;

(2) whether the defendants will be harmed irreparably without a stay; (3) whether the issuance of

a stay will cause substantial harm to other parties; and (4) whether the public interest would be

served by the issuance of the stay." *Big Lots, Inc.*, 2017 WL 11634939, at *1 (citing *Michigan*

*Coal. of Radioactive Material Users, Inc.* v. *Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)); *Nken*

v. *Holder*, 556 U.S. 418, 426 (2009) (explaining these factors are the "traditional stay factors").

These factors are not a checklist.  Instead, "[t]hese factors are to be balanced.  The strength of the

likelihood of success on the merits that needs to be demonstrated is inversely proportional to the

amount of irreparable harm that will be suffered if a stay does not issue."  *Baker* v. *Adams*

*Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).  Here, the balance is clear:  all four

factors weigh strongly in favor of staying proceedings until the Sixth Circuit appeal is resolved.

**I.**     **BECAUSE THE PENDING RULE 23(F) APPEAL PRESENTS "SERIOUS QUESTIONS," DEFENDANTS CLEARLY MEET THE "LIKELIHOOD OF SUCCESS" STANDARD.**

        When seeking a stay pending interlocutory appeal of a class certification order,

"Defendants' burden with respect to a showing a likelihood of success on the merits is two-fold:

Defendants must show a likelihood that the Rule 23(f) petition will be granted, and that the Sixth

Circuit will reverse the certification decision." *Big Lots, Inc.*, 2017 WL 11634939, at *3 (internal quotation marks omitted) (quoting *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 12591692, at *1 (N.D. Ohio May 16, 2014)). Here, Defendants have satisfied the first step, which is no small feat. As the Sixth Circuit has recognized, "Rule 23(f) appeals will be the exception, not the norm." *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002); *see also In re E.I. DuPont de Nemours*, 2022 WL 4149090, at *2 ("[I]nterlocutory review of a class-certification decision is an extraordinary procedure."). And Plaintiffs themselves admit that it is a "rare occasion" that the Sixth Circuit "accept[s an] interlocutory appeal[]." (Pls.' 23(f) Resp. at 1–3.)

Defendants also satisfy the second part of the test. In granting Defendants' Rule 23(f) appeal, the Sixth Circuit expressly considered "whether the petitioner is likely to succeed on appeal," and "whether the case presents a novel or unsettled question of law." (Ex. 10 at 2.) Importantly, because "[n]o court is likely to find that an appellant has a high probability of succeeding on the merits of an appeal from its own judgment," the question before the Court in determining whether to stay its proceedings is whether the appeal raises "serious questions going to the merits." *Abercrombie & Fitch, Co.* v. *ACE Eur. Grp. Ltd.*, 2014 WL 4915269, at *9 (S.D. Ohio Sept. 30, 2014) (citation omitted) (recognizing that "probability of success is somewhat misleading language"); *see also Hargett*, 493 F. App'x at 689 (movant need only "demonstrate at least serious questions going to the merits" (citation omitted)); *Griepentrog*, 945 F.2d at 154 (movant must show "at a minimum, serious questions going to the merits" (internal quotation marks omitted)); *Bailey* v. *Lafler*, 2016 WL 9343177, at *2 (W.D. Mich. Nov. 22, 2016) (factor weighs in favor of stay when "serious legal questions are raised" (quoting *Leiva –Perez* v. *Holder*, 640 F.3d 962, 967 (9th Cir. 2011)); *Martinez* v. *United States*, 2014 WL 4446924, at *3 (M.D. Tenn. Sept. 9, 2014) (same).

Here, as the Sixth Circuit's grant of discretionary review and the *amicus* support demonstrate, Defendants' appeal plainly presents "serious questions." As to whether Plaintiffs can pursue an omissions-based theory of liability, Defendants pointed out in their petition (Rule 23(f) Pet. at 11–18) that, although district courts within the Sixth Circuit are divided on this issue, every appellate court—which includes the Second, Third, Fifth, Eighth, Ninth, Tenth, and D.C. Circuits—has rejected Plaintiffs' position and agreed that "[t]he *Affiliated Ute* presumption does not apply to . . . . half-truths." *Waggoner* v. *Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017) (internal quotation marks omitted).[7] Here, Plaintiffs challenge 46 allege misstatements as half-truths.

The issue on appeal of whether Plaintiffs met their burden under *Comcast* to propose a methodology capable of measuring classwide damages under their Exchange Act liability theory presents a similarly "serious question." (Rule 23(f) Pet. at 18–23.) Other courts have recognized that, as a prerequisite to certification, plaintiffs must "provide a workable method for classwide determination of the impact of the alleged" violation. *See, e.g.*, *Ward* v. *Apple Inc.*, 784 F. App'x 539, 540 (9th Cir. 2019). Under that standard, it "is not enough" for a plaintiff's

---

[7]     *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1208 (9th Cir. 2021) (rejecting presumption for "affirmative statements" allegedly "rendered misleading by an omission" to disclose corporate wrongdoing); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 219 (D.C. Cir. 2010) ("failure to disclose the Ponzi scheme" not "an omission" because defendant "affirmatively misrepresented the accuracy of [financial] statements"); *Johnston* v. *HBO Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001) (claims were "based on misrepresentations, rather than omissions," where "the omission alleged would have no impact absent the misrepresentation"); *Joseph* v. *Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000) (*Affiliated Ute* applies in "nondisclosure cases, but not in falsehood or distortion cases"); *Abell* v. *Potomac Ins. Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988) (*Affiliated Ute* does not apply "where the plaintiffs allege either that the defendant has made false statements or has distorted the truth by making true but misleading incomplete statements."); *Vervaecke* v. *Chiles, Heider & Co.*, 578 F.2d 713, 717 & n.2 (8th Cir. 1978) (*Affiliated Ute* does not apply to "misrepresentations" or "omissions in the nature of misrepresentations (misleading statements, half-truths)").

-10-

expert to "merely assert[] that he would be able to develop a model at some point in the future," as Plaintiffs' expert did here. *Id.*

Unless plaintiffs can present a classwide damages methodology that "will incorporate—and, if necessary, respond to—the various theories of liability," a court cannot "certify [] litigation for class action treatment." *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013); *see also Ohio Pub. Emps.' Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) (declining to certify class under *Comcast* where Plaintiffs' proposed approach "fails to account for issues presented by [their] theor[y] of damages"). As the Sixth Circuit has recognized by granting interlocutory review, whether Plaintiffs met their burden under *Comcast* to identify a common damages methodology—including a methodology that accounts for the dozens of qualitatively different alleged misstatements and contingent events over the three-and-a-half year class period of their Exchange Act claims—is a "serious question" satisfying the likelihood of success standard.

## II.   THE BALANCE OF HARMS STRONGLY FAVORS A STAY PENDING APPEAL.

As Magistrate Judge Jolson has recognized, where "the Sixth Circuit's decision may define the contours of th[e] case going forward," and "significant costs and judicial resources may be expended unnecessarily" in the trial court during the appeal, the balance of harms warrants a stay. *Big Lots, Inc.*, 2017 WL 11634939, at *4 (continued proceedings after Rule 23(f) appeal granted is "counter to the interests of the parties, this Court, and the public"). Here, the Sixth Circuit's decision likely will substantially impact the contours of this case, including the scope of any remaining class claims, the identity of the parties, the issues that must be proven and decided, the available defenses, and the scope and topics of issues to be presented in expert testimony. Proceeding with this litigation while the Sixth Circuit resolves these important issues would waste

extensive judicial, party, and nonparty resources, including by forcing parties and nonparties to prepare for and participate in dozens of potentially unnecessary depositions, and forcing the Court to adjudicate related disputes.

Courts regularly stay securities class actions to avoid potentially unnecessary expenditures of the significant resources such actions require. Just four months ago, a district court within this Circuit stayed a securities class action pending the outcome of a Rule 23(f) appeal, because "practical considerations" such as the court's "need to efficiently manage its docket and fairly spread its limited resources across its sprawling caseload . . . highly favor[ed] a stay." *Tivity Health*, 2023 WL 4830593, at *2–3 (internal quotation marks omitted). The petition in *Tivity Health* raised similar issues to those that Defendants have raised in the appeal here, specifically, that the district court (i) "never determined . . . whether reliance on a scheme could be discerned on a classwide basis," and (ii) "failed to isolate alleged damages to Plaintiff's separate claims" under *Comcast*. Rule 23(f) Pet. at 4, 6, *In re Tivity Health, Inc.*, No. 23-00504 (6th Cir. June 22, 2023), ECF No. 1-2. The district court held that it "makes sense to enter a stay while the case is on appeal," because "[i]mplementing a stay will allow the parties to conserve their resources until the full nature of the dispute crystallizes," *i.e.*, whether the case will be an "individual claim" or "a class action that encompass[es] one, some, or all of the" various claims. *Tivity Health*, 2023 WL 4830593, at *2–3. As noted above, Magistrate Judge Jolson similarly stayed a securities class action pending the outcome of a Rule 23(f) appeal that also raised questions regarding the appropriate application of the *Basic* presumption of reliance because proceeding before resolving

that issue could result in "significant costs and judicial resources" being "expended unnecessarily." *Big Lots, Inc.*, 2017 WL 11634939, at *4.[8]

### A. Continued Litigation Will Impose Irreparable Harm on Defendants.

Ongoing proceedings in this large class action will impose significant burdens on the Court and parties that "would prove both costly and premature in the event of remand." *Pena*, 2015 WL 5103157, at *1, *5 (stay of class action alleging wage and hour violations); *Nieberding*, 2014 WL 5817323, at *4 (products liability class action stayed because continuing discovery would "incur significant costs in proceedings that may result in duplicative and wasteful litigation"). In granting interlocutory review, the Sixth Circuit here expressly recognized the costs associated with continued litigation, noting that it has considered whether "the cost of continuing the litigation for either party" rendered subsequent review unlikely. (Ex. 10 at 2.) As recognized by another district court in this Circuit, a stay is warranted where it "is unlikely to injure [Plaintiff] or any third party, and the harms [Defendants] would face from potentially unnecessary, invasive and burdensome discovery are of legitimate concern." *Grae* v. *Corr. Corp. of Am.*, 2019 WL 1746492, at *1 (M.D. Tenn. Apr. 18, 2019); *see also Tivity Health*, 2023 WL 4830593, at *2

---

[8]  Recognizing the reasons that stays pending Rule 23(f) appeals are warranted, plaintiffs often consent to stay proceedings pending the appeal. For example, in *In re Goldman Sachs Group, Inc. Securities Litigation*, Plaintiffs' counsel here consented to stay district court proceedings three times pending Rule 23(f) appeals. *See* No. 1:10-cv-03461 (S.D.N.Y.), ECF Nos. 177, 239, 267. *See also, e.g.*, *Tarrify Props., LLC* v. *Cuyahoga Cnty.*, 2021 WL 164217, at *5 (N.D. Ohio Jan. 19, 2021) (granting "parties' joint motion to stay pending litigation deadlines" in class action alleging Fifth Amendment takings violations); *Hicks* v. *State Farm Fire & Cas. Co.*, No. 14-cv-00053 (E.D. Ky. July 15, 2019), ECF Nos. 203, 206 (granting defendants' unopposed motion to stay class action alleging violations of consumer protection statute, which cited "the expenses, time, and resources that will be required to meet" upcoming deadlines); *Widdis* v. *Marathon Petrol. Corp., LP*, No. 13-cv-12925 (E.D. Mich. Jan. 20, 2015), ECF Nos. 58, 59 (so-ordering stay upon stipulation of all parties on motion citing potential for "substantial and unnecessary discovery costs to all parties" in class action alleging negligence claims).

("[W]hen the stakes are [this] large. . . an appeal under Rule 23(f) is in order . . . as [is] a stay of proceedings in the district court.").

The parties are currently in the middle of wide-ranging and resource-intensive fact discovery.  For example, the Court has entered a deposition protocol and related order permitting at least 65 depositions per side of 18 hours each.  (Order Re: Protocol for Fact Depositions, ECF No. 309 at PageID 6731; Order Re: 354, ECF No. 355 at PageID 8636–37.)  At this stage, 33 of these 130 depositions have been taken.  Plaintiffs have served nearly 1,000 discovery requests on Defendants and the parties communicate at least weekly, and often multiple times per week, on the scope of appropriate discovery.  The "number and frequency of discovery disputes" in this litigation requires such a "substantial commitment of time and attention" that the Court deemed it necessary to appoint a Special Master, in addition to the district and magistrate judges already assigned to the matter.  (Order Appointing Special Master, ECF No. 541 at PageID 11683.)

The Sixth Circuit's decision likely will shift the focus of this massive discovery.  In a "complex, multifaceted case" like this one, in which the parties "repeatedly contest[] the permissible scope of discovery and one another's compliance with discovery orders," the "costs of pretrial litigation, incurred unnecessarily, would constitute irreparable harm."  *Pena*, 2015 WL 5103157, at *5.  A stay would "best serve[] judicial economy" and conserve resources. *Shanehchian* v. *Macy's, Inc.*, 2011 WL 13157172, at *2 (S.D. Ohio Apr. 27, 2011) (stay of ERISA class action pending 23(f) appeal).

1.     ***Plaintiffs' Fraud-Based Class Claims May Not Proceed.***  The Exchange Act claims are Plaintiffs' sole securities fraud claims.  If Defendants succeed on the *Comcast* issue on appeal, and the Sixth Circuit agrees that Plaintiffs must propose a damages methodology that is consistent with their liability theory, Plaintiffs would then need to propose a damages

methodology that meets *Comcast*'s requirements, which they may not be able to do.  If Plaintiffs'

Exchange Act claims are not certified, evidence of, for example, scienter will not be relevant to

any class claims.  (*See* Compl. at PageID 1647 (Securities Act claims section "expressly disavows

all averments of fraud . . . as [Securities Act] claims do not require a showing of fraud or

scienter").)  As a result, all of the document discovery and hours of deposition testimony about

who knew what and when, as well as discovery disputes over those topics, would be wasted.

Plaintiffs' fraud-based claims here also comprise the vast majority of the alleged

damages.  As a result, whether discovery is proportionate depends on whether those claims remain

in the case.  Fed. R. Civ. P. 26(b)(1) (parties may only "obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case."); *Pannek* v. *U.S. Bank Nat'l Ass'n*, 2021 WL 5533749, at *19 (S.D. Ohio July 21,

2021) (requested information "not subject to discovery because it is not relevant to []claims or

[]defenses, and is not proportional to the needs of the case").

> **2.** ***The Number of Defendants in the Case May Be Reduced.***  If Defendants

prevail on the *Comcast* issue on appeal, the number of parties facing the class claims in this action

could be substantially reduced.  Specifically, Defendants Dennis Chack, Michael Dowling, John

Judge, James Pearson, Robert Reffner, Donald Schneider, K. Jon Taylor, and Leila Vespoli could

face no class claims at all because they are solely named as defendants in the Exchange Act claims.

(*See* Compl. at PageID 1554–56 (defining "Exchange Act Defendants"); *id.* at PageID 1647–48

(defining "Securities Act Defendants").)  The burdens and costs of proceeding through discovery

against parties who may not belong in this class case are substantial.  For example, each has their

own separate counsel, and each participates in all hearings and depositions.  Proceeding with

potentially unnecessary parties imposes burdens not only on those parties, but also on the Court

and all other parties. For example, Defendant Dowling alone has taken hours of deposition testimony of parties and nonparties alike, has filed discovery motions, and has noticed six non-party depositions.

> **3.     *The Relevant Period for Discovery May Be Substantially Shortened.***

Without a certified class for Plaintiffs' Exchange Act claims, the class period will be substantially narrowed. The class period for Plaintiffs' Exchange Act claims is February 21, 2017 through July 21, 2020, a period of almost three-and-a-half years. (Compl. at PageID 1546, 1576.) By contrast, Plaintiffs' Securities Act claims arise from bond offerings in February and June 2020. (*See id*. at PageID 1649–50, 1654–55.) Therefore, if the class proceeds solely as to the Securities Act claims, the class period may be substantially shortened—*i.e.*, at most February 19, 2020 to July 21, 2020. There is no reason to incur the costs of discovery, and disputes about discovery scope and proportionality, for a period spanning more than three years if post-appeal discovery will largely be limited to 2020.

> **4.     *The* Affiliated Ute *Issue on Appeal Will Fundamentally Impact the Claims, Defenses and Relevant Proof.*** If the Sixth Circuit agrees that Plaintiffs may not bring

class claims based on alleged "omissions" under *Affiliated Ute*, the nature of the claims and defenses will change. In an *Affiliated Ute* case, "the jury instructions and verdict form [would] address whether some *omission* was false, material, and caused the investor loss." (Ex. 1 at 17 (emphasis in original).) If Plaintiffs must base their Exchange Act claims solely on the *Basic* fraud-on-the-market presumption, they will be forced to establish that each of the 46 challenged statements were material, impacted FirstEnergy's stock price, and caused Plaintiffs' losses. This statement-by-statement analysis of the challenged statements will define the proof needed to prove

or defend the claims, including, for example, relevant evidence of what information was material to investors, and the structure of damages modeling by expert witnesses.

<div align="center">*     *     *</div>

In sum, the burden of continued proceedings, despite the pending appeal that is likely to fundamentally change this case, presents irreparable harm. *See Boeing Co.*, 21 F.4th at 899 (granting stay in RICO class action after Rule 23(f) petition was granted where "[p]laintiffs' escalating discovery demands will impose millions more in unrecoverable costs . . . discovery has become more contentious . . . [a]nd it is undisputed that [defendants'] discovery costs will be unrecoverable even if the class certification is reversed on appeal.").

### B.    At a Minimum, the Court Should Stay Expert Discovery.

The *Comcast* issue to be decided by the Sixth Circuit will decide whether Plaintiffs, through their expert, have presented a classwide damages methodology satisfying the Supreme Court's standards. If Plaintiffs have not met those standards, then Plaintiffs may not be able to proceed with classwide Exchange Act claims, or, at the very least, will need to propose a new methodology and demonstrate that it meets *Comcast*'s standards. Under either scenario, expending substantial time and resources on expert reports and discovery, and potentially *Daubert* motions, concerning a damages methodology that may be mooted by the Sixth Circuit would be wasteful.

The *Affiliated Ute* issue will similarly impact any expert reports and discovery. Experts on any core issue—including loss causation, damages and materiality—will need to know whether they are opining on alleged omissions or alleged misstatements before they can provide their analysis. For instance, the experts—in both the class action and the opt-out actions—will need to connect either an amorphous, undisclosed "corruption scheme," or specific alleged misstatements, which occurred on specific days, to purported inflation in the stock price.

Requiring that experts opine on alleged "omissions," when that theory may be deemed impermissible by the Sixth Circuit would be a waste of Court and party resources.

### C. There Is No Cognizable Harm to Plaintiffs.

By contrast, "a stay would at most delay the Plaintiffs' recovery of damages for a past harm," as Plaintiffs do not allege any ongoing injury. *Whitlock* v. *FSL Mgmt., LLC*, 2012 WL 6675124, at *3 (W.D. Ky. Dec. 21, 2012) (delaying plaintiffs' recovery does not weigh against stay pending Rule 23(f) appeal in class action alleging wage and hour violations). Moreover, that delay should benefit all parties, as interlocutory appeals are intended to provide "quick resolution of . . . clean question[s] of law [that] could meaningfully speed up the litigation." *In re Flint Water Cases*, 627 F. Supp. 3d 734, 737 (E.D. Mich. 2022) (discussing interlocutory appeals under 28 U.S.C. § 1292(b)).

In any event, it is "reasonable for the Court to assume" the Sixth Circuit will resolve the appeal "in a timely manner." *Custom Hair Designs by Sandy, LLC*, 2020 WL 5250492, at *3 (staying civil RICO class action pending outcome of Rule 23(f) appeal after petition to appeal was granted); *see also Best Buy Co.*, 2014 WL 4540228, at *3 (staying a securities class action pending a Rule 23(f) petition to appeal because "[t]here is no reason to think that the Eighth Circuit will not resolve Defendants' petition in a timely manner").

## III. THE PUBLIC INTEREST FAVORS A STAY.

For at least three reasons, the public interest factor weighs in favor of a stay. *First*, absent a stay, "significant costs and judicial resources may be expended unnecessarily, which is counter to the interests of . . . this Court[] and the public." *Big Lots*, 2017 WL 11634939, at *4.

*Second*, "the public interest really is rooted in the *proper* resolution of the important issues raised in this case," and so a brief "stay to conserve the resources of all parties and the Court, resulting in no real prejudice to anyone, in order to ensure the proper legal result in this case is

best aligned with that interest." *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) (emphasis in original) (granting stay of antitrust class action pending outcome of Rule 23(f) appeal); *see also Kentucky* v. *Biden*, 23 F.4th 585, 612 (6th Cir. 2022) ("[T]he public's true interest lies in the correct application of the law.").

*Third*, entering a stay will further the very purpose of Rule 23(f) by avoiding forcing Defendants to "incur the costs of defending" a potentially erroneously certified class action where Defendants have "appeal-worthy certification issues." Fed. R. Civ. P. 23 advisory committee's notes to 1998 amendment; *see Best Buy Co.*, 2014 WL 4540228, at * 1 (granting stay of securities class action pending outcome of Rule 23(f) petition to appeal and stating that "[t]he purpose of Rule 23(f) is to allow appellate review of class certification decisions and to protect parties from the expenditure of resources on a class action that may be substantially altered on appeal").

## IV.    THE *MFS* AND *BRIGHTHOUSE* OPT-OUT ACTIONS SHOULD ALSO BE STAYED.

The parties in the opt-out actions and this Court have repeatedly recognized that coordinating discovery between the opt-out actions and the class action is "in the interest of party and judicial efficiency." (Order Re: Protocol for Fact Depositions, ECF No. 309 at PageID 6732 (ordering coordination of fact depositions in deposition protocol); *see also* Order Re: 354, ECF No. 355 at PageID 8637 (ordering further discovery coordination, including attendance at court conferences and weekly meet-and-confers).) The schedule in the opt-out actions is already directly tied to the schedule in the class action. *See MFS* opt-out action, Order Regarding Case Schedule, ECF No. 90 at PageID 849 (if deadlines are continued in the class action, "the corresponding deadlines in the Direct Actions shall be deemed to be continued by the same amount of time").

Allowing the opt-out actions to proceed while the class action is stayed will not serve judicial efficiency because the opt-out and class plaintiffs are relying on the same discovery

and fact witnesses to support their claims.  Consistent with this Court's order coordinating fact depositions, the plaintiffs in the opt-out actions have not noticed their own fact depositions, but instead have participated in depositions noticed by the parties to the class action.  But if the opt-out actions proceed while the class action is stayed, the same deponents will need to be deposed twice—once for the opt-out actions and again once the Sixth Circuit rules on the Rule 23(f) appeal—in contravention of this Court's objective to coordinate fact discovery.

Moreover, the opt-out plaintiffs have also alleged that both the *Basic* and *Affiliated Ute* presumptions of reliance apply to their claims, and that the same supposed misstatements cited by the class plaintiffs over a three-and-a-half year period caused losses to MFS and Brighthouse too.  (Complaint, *MFS* opt-out action, No. 21-cv-05839, ECF No. 1 at PageID 20–25, 28–31, 68, 84; Complaint, *Brighthouse* opt-out action, No. 22-cv-00865, ECF No. 1 at PageID 18–22, 26–31, 65–66, 81.)  Accordingly, the Sixth Circuit's decision will inevitably impact the scope and nature of the claims and defenses in the opt-out actions and provide guidance on the appropriate methodology for determining loss causation and damages based on the same facts.

## CONCLUSION

For the foregoing reasons, in light of the Sixth Circuit's grant of review of the Certification Order, Defendants respectfully request that the proceedings in this Court be stayed pending resolution of the interlocutory appeal.  At a minimum, the Court should stay expert discovery in all actions.

## STATEMENT REQUESTING HEARING

Given the complex issues presented in this motion, Defendants request oral argument pursuant to Local Rule 7.1(b)(2).  Defendants submit that, given the complexity of the legal issues presented on appeal and the impact of those issues in this matter, oral argument may aid the Court's consideration of this motion.

Respectfully,

<div style="display:flex">
<div>

*/s/ Geoffrey J. Ritts*
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
Corey A. Lee (0099866)
Stephen G. Sozio (0032405)
Adrienne F. Mueller (0076332)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com
Email: calee@jonesday.com
Email: sgsozio@jonesday.com
Email: afmueller@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
M. Ryan Harmanis (0093642)
Shalini B. Goyal (0096743)
Elizabeth A. Benshoff (0098080)
Katherine T. Berger (0098872)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com
Email: jbaumann@jonesday.com
Email: rharmanis@jonesday.com
Email: sgoyal@jonesday.com
Email: ebenshoff@jonesday.com
Email: kberger@jonesday.com

Scott B. Scheinberg (admitted *pro hac vice*)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: sscheinberg@jonesday.com

*Attorneys for Defendants Steven E. Strah, K.*

</div>
<div>

*/s/ Thomas D. Warren*
Thomas D. Warren, Trial Attorney (0077541)
WARREN TERZIAN LLP
30799 Pinetree Road, Suite 345
Pepper Pike, OH 44124
Telephone: (213) 410-2620
tom.warren@warrenterzian.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
Tasha N. Thompson (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
giuffrar@sullcrom.com
nelless@sullcrom.com
reind@sullcrom.com
newtonb@sullcrom.com
menillon@sullcrom.com
williamsh@sullcrom.com
thompsontas@sullcrom.com

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Ave., N.W.
Suite 7000
Washington, DC 20006
Telephone: (202) 956-7040
Facsimile: (202) 293-6330
shieldska@sullcrom.com

*Counsel for Defendant FirstEnergy Corp.*

</div>
</div>

*Jon Taylor, Jason J. Lisowski, George M.
Smart, Paul T. Addison, Michael J.
Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Misheff, Thomas N.
Mitchell, James F. O'Neil III, Christopher D.
Pappas, Sandra Pianalto, Luis A. Reyes,
Jerry Sue Thornton, and Leslie M. Turner*

## DECLARATION OF SERVICE

I certify that the foregoing was filed electronically on November 30, 2023.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/ Thomas D. Warren*
Thomas D. Warren (0077541)

*Counsel for Defendant FirstEnergy Corp.*