IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | Case No. 2:20-cv-03785-ALM-KAJ |
| This Document Relates To: | ) ) ) | Chief Judge Algenon L. Marbley |
| ALL ACTIONS | ) ) ) ) ) | Magistrate Judge Kimberly A. Jolson |

**NON-PARTY ENERGY HARBOR'S OBJECTIONS TO ORDER
BY SPECIAL MASTER ON MOTION TO COMPEL (ECF NO. 560)**

ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr. (0042679)
The Huntington Center
41 S. High Street
Suite 3500
Columbus, Ohio 43215
(614) 365-9900

DECHERT LLP
Jonathan R. Streeter (*pro hac vice*)
Matthew L. Mazur (*pro hac vice*)
Tamer Mallat (*pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

Peter J. McGinley *(pro hac vice* pending)
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for Non-Party Energy Harbor*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND ............................................................................................................................ 3
I.      RELEVANT FACTS ........................................................................................................ 3
II.     PROCEDURAL HISTORY .............................................................................................. 4
       A.      Plaintiffs' Class Action Lawsuit Against FirstEnergy .......................................... 4
       B.      Plaintiffs' Rule 45 Subpoena to Energy Harbor ...................................................5
       C.      Plaintiffs' Motion to Compel.................................................................................6
       D.      The Special Master's Order...................................................................................6
ARGUMENT .................................................................................................................................. 7
I.      STANDARD OF REVIEW .............................................................................................. 7
II.     THE SPECIAL MASTER MISCONSTRUED THE LAW ON CRIME-FRAUD
       AND MADE INCORRECT FINDINGS OF FACT ......................................................... 8
       A.      Plaintiffs Did Not Establish a *Prima Facie* Crime or Fraud by Energy
               Harbor..................................................................................................................... 8
       B.      There Is No Evidence that Energy Harbor Intended to Facilitate or Conceal a
               Crime or Fraud .................................................................................................... 11
CONCLUSION............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Antitrust Grand Jury*,
 805 F.2d 155 (6th Cir. 1986) .......................................................................................9, 12

*EEOC v. Waffle House, Inc.*,
 534 U.S. 279 (2002)............................................................................................................11

*LG.Philips LCD Co. v. Tatung Co.*,
 243 F.R.D. 133 (D. Del. 2007) ...........................................................................................7

*Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*,
 No. 21-cv-02085, 2023 WL 4991718 (N.D. Ohio Aug. 4, 2023)..............................8

*Murray Energy Corp. v. Cassidy, Cogan, Chappell & Vogelin, L.C.*,
 No. 18-cv-440, 2019 WL 2240245 (S.D. Ohio May 24, 2019), *op. & order
 adopted*, 2019 WL 3406543 (S.D. Ohio July 29, 2019) ....................................8, 9, 12

*In re Napster Inc.*,
 479 F.3d 1078 (9th Cir. 2007), *abrogated on other grounds by Mohawk
 Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)..............................................................9

*Quantum Sail Design Grp., LLC v. Jannie Reuvers Sails, Ltd.*,
 827 F. App'x 485 (6th Cir. 2020) .....................................................................................8

*Slorp v. Lerner, Sampson & Rothfuss*,
 No. 12-cv-498, 2016 WL 1252980 (S.D. Ohio Mar. 31, 2016) ..............................12

*Sports Rehab Consulting LLC v. Vail Clinic, Inc.*,
 No. 19-CV-02075, 2022 WL 1619683 (D. Colo. Mar. 30, 2022) ............................7

*United States v. Collis*,
 128 F.3d 313 (6th Cir. 1997) .............................................................................................8

*United States v. Skeddle*,
 989 F. Supp. 890 (N.D. Ohio 1997)................................................................................12

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
 765 F.3d 625 (6th Cir. 2014) ...........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 53(f)(1) .................................................................................................................8

Fed. R. Civ. P. 53(f)(3)–(4).........................................................................................................7

Non-party Energy Harbor Corp. ("Energy Harbor") respectfully objects, pursuant to Federal Rule of Civil Procedure 53(f), to the November 20, 2023 Order by Special Master Shawn K. Judge (the "Order" or "ECF No. 560") granting Class Plaintiffs' ("Plaintiffs") July 7, 2023 Motion to Compel Discovery from Non-Party Energy Harbor (the "Motion to Compel" or "ECF No. 491"). For the reasons below, the Court should reverse the Order in part.

## PRELIMINARY STATEMENT

Non-party Energy Harbor was once a subsidiary of Defendant FirstEnergy Corp. ("FirstEnergy") known as FirstEnergy Solutions ("FES"). But on March 31, 2018, FES went into bankruptcy and began the process of separating from FirstEnergy. After the bankruptcy filing, FES had its own board of directors, its own employees, and its own legal and government affairs divisions, but it also obtained certain "shared services" from FirstEnergy. Two years later, on February 27, 2020, it emerged from bankruptcy as Energy Harbor, a completely independent company. In 2018 and 2019, during the bankruptcy and while it was in the process of separating from FirstEnergy but still its subsidiary, FES made approximately $43 million in contributions to Generation Now, a 501(c)(4) entity, to fund a media campaign supporting House Bill 6 ("H.B. 6") and to fund efforts opposing the subsequent referendum seeking H.B. 6's repeal.

Energy Harbor has already produced an extensive set of documents in response to Plaintiffs' Rule 45 subpoena. The productions comprise documents from over 30 different custodians, including board materials, payment records, and many tens of thousands of emails and text messages involving FES and Energy Harbor employees, during a nearly four-year period from September 1, 2016, to July 20, 2020, the date of a grand jury subpoena sent to Energy Harbor. They include the 84,663 documents Energy Harbor produced to the Department of Justice ("DOJ"), additional documents produced to the Securities and Exchange Commission

("SEC"), and a set of documents specifically requested by Plaintiffs and produced in November 2022—for a total of nearly half a million pages of discovery.

The Special Master's Order now compels Energy Harbor to search for, review, and produce many thousands of additional documents, namely: (1) documents from the nearly six-month period between July 21, 2020, and December 31, 2020 (the "Extended Time Period"), after Larry Householder's arrest and service of the grand jury subpoena; and (2) privileged legal advice FES received about 501(c)(4) entities and draft clean energy legislation. The Order compels discovery of documents in the second category under the "crime-fraud exception" to the attorney-client privilege, which the Special Master called an "extremely close call," concluding that Plaintiffs had "just" met their burden and emphasizing that he had not determined that Energy Harbor did anything wrong. Order, ECF No. 560 at PageID 12233–34.

On the privilege question, the Special Master made several mistakes of fact and errors of law, requiring *de novo* review and reversal by the Court.[1]

*First*, the Special Master erred in finding that Plaintiffs had established a *prima facie* crime or fraud by Energy Harbor. **Energy Harbor has not been charged with any crime.** And Plaintiffs' exhibits establish nothing more than that Energy Harbor intended to pay Generation Now for advocacy advertising and anti-referendum efforts, not as part of any quid pro quo. While Energy Harbor may have played an unwitting role in FirstEnergy's bribery scheme, none of the exhibits suggests FES intended to bribe Larry Householder. There was accordingly insufficient basis from which the Special Master could reasonably infer that Energy Harbor committed a crime or fraud.

---

[1] Although it believes the Special Master erred in compelling Energy Harbor to produce documents from the Extended Time Period, Energy Harbor has elected not to file an objection on this issue.

*Second*, and similarly, the Special Master erred in finding that Energy Harbor sought legal advice about 501(c)(4) entities and clean energy legislation in order to facilitate or conceal a crime or fraud.  To the contrary, Energy Harbor contributed to Generation Now, after consulting with lawyers, with the clear understanding that the funds would be used for a media campaign in support of H.B. 6 and, later, to defeat the referendum.  In addition, Energy Harbor sought and obtained advice from lawyers about proposed language in draft legislation that was important to the company, which is perfectly lawful.  In short, the evidence shows that Energy Harbor prudently and properly consulted with its lawyers to determine how to make contributions and advocate for legislation in a legal way, not to help it commit a crime.  There is no evidence from which the Special Master could reasonably infer that Energy Harbor's communications with its lawyers were intended to facilitate or conceal a crime or fraud.

The Special Master's Order should therefore be reversed in part.

## BACKGROUND

**I. Relevant Facts**

Non-party Energy Harbor, formerly FES, was once a subsidiary of defendant FirstEnergy and the operator of FirstEnergy's two nuclear power plants in Ohio.  On March 31, 2018, FES filed for bankruptcy as part of a plan to separate from its parent.  For the next two years, Energy Harbor and FirstEnergy were in the process of separating.  During this time, Energy Harbor remained a FirstEnergy subsidiary and relied on FirstEnergy for certain "shared services," but it had its own board of directors and its own legal and government affairs departments, separate from FirstEnergy's.  Declaration of Rick Giannantonio ("Giannantonio Decl."), ECF No. 506-2 at PageID 10881 ¶ 3, 10882 ¶ 7.  On February 27, 2020, FES emerged from bankruptcy as a new, entirely independent company, Energy Harbor.

In 2018 and 2019, FES had a legitimate interest in the clean energy legislation that would become H.B. 6 and the defeat of the subsequent referendum seeking to overturn that bill. Namely, FES sought a subsidy that would assist its nuclear energy plants. *Id.* at PageID 10883 ¶ 10. With guidance from its outside lawyers and government affairs specialists, including at Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), one of the most prominent government affairs law firms in the world, FES made a series of contributions to Generation Now, a 501(c)(4) entity associated with Larry Householder. FES and its employees believed that these contributions would be used lawfully for advertising in support of H.B. 6 and, later, in opposition to the referendum to defeat H.B. 6. No one at FES knew or intended that any part of its contributions would be taken for Householder's, or anyone else's, personal use.

Before making its 501(c)(4) contributions, FES also sought legal advice from lawyers at Calfee, Halter & Griswold LLP ("Calfee"). Calfee sent a memo about 501(c)(4) contributions (the "501(c)(4) Memo") to FES's General Counsel on August 9, 2018. *Id.* at PageID 10883 ¶ 14, 10885 (Ex. A). The following year, FES again sought Calfee's advice regarding proposed language in energy legislation that ultimately became H.B. 6. Calfee prepared two memos discussing the draft legislation (collectively, the "Clean Air Memos"), which a Calfee attorney emailed directly to various FES recipients on March 11, 2019, and March 15, 2019, respectively. *Id.* at PageID 10883 ¶ 16, 10887–88 (Exs. C, D).

**II. Procedural History**

    **A. Plaintiffs' Class Action Lawsuit Against FirstEnergy**

Plaintiffs have asserted claims on behalf of a class of purchasers of FirstEnergy securities between February 21, 2017, and July 21, 2020, against FirstEnergy and its former officers. The lawsuit, filed on July 28, 2020, alleges that these defendants secretly orchestrated a massive bribery scheme in favor of H.B. 6, which they failed to disclose to investors. Plaintiffs claim

they suffered losses when the market learned about FirstEnergy's fraudulent statements and material omissions following the public announcement of the DOJ investigation into the bribery scheme on July 21, 2020.

**B. Plaintiffs' Rule 45 Subpoena to Energy Harbor**

On June 6, 2022, Plaintiffs served a Rule 45 subpoena on Energy Harbor, seeking a broad range of documents relating to H.B. 6. In response, Energy Harbor produced: (a) 84,663 documents comprising 470,903 pages that Energy Harbor produced in response to the DOJ subpoena; (b) a list of custodians from whom documents were collected; (c) the search terms used to identify responsive documents; (d) a detailed privilege log identifying 12,906 documents that had been redacted or withheld from that production; and (e) an additional production of documents made to the SEC. Declaration of Jonathan R. Streeter ("Streeter Decl."), ECF No. 506-1 at PageID 10875 ¶ 11. These documents spanned a nearly four-year period, from September 1, 2016, to July 20, 2020. *Id.* at PageID 10875 ¶ 11.

Energy Harbor also produced the 501(c)(4) Memo and the Clean Air Memos after determining that they were not protected from disclosure by the attorney-client privilege. *Id.* at PageID 10877 ¶ 21. Although the memos convey legal advice, they were shared contemporaneously with a FirstEnergy employee in 2018 and 2019, after the formal separation of FirstEnergy's and FES's legal departments, and thus had not been treated as confidential and privileged. Giannantonio Decl., ECF No. 506-2 at PageID 10882 ¶¶ 5, 7; Streeter Decl., ECF No. 506-1 at PageID 10877 ¶¶ 17–21. They were therefore produced to the DOJ, and later to the SEC and the Plaintiffs in this case.

In total, Energy Harbor collected approximately 1.9 million documents and reviewed well over 500,000 documents for responsiveness and privilege. Streeter Decl., ECF No. 506-1 at PageID 10874 ¶ 8. In November 2022, after an extensive meet and confer process, Energy

Harbor ran additional search terms requested by Plaintiffs and reviewed and produced an additional 812 documents comprising 1,168 pages, as well as a detailed privilege log for that production. *Id.* at PageID 10875 ¶ 12.

### C. Plaintiffs' Motion to Compel

Months after Energy Harbor completed its productions, Plaintiffs moved to compel even more discovery from Energy Harbor, which is not a party in this case. *See* Plaintiffs' Motion to Compel, ECF No. 491. First, Plaintiffs sought documents from the Extended Time Period between July 21, 2020, and December 31, 2020, which is after the date of the grand jury subpoena served on Energy Harbor and after the class period in this matter. This Extended Time Period is almost a year after H.B. 6 passed the Ohio legislature, approximately nine months after the referendum effort seeking to repeal it failed, and almost five months after Energy Harbor separated completely from FirstEnergy. In other words, the Extended Time Period is long after any events in this case in which FES/Energy Harbor had involvement. No other party in any civil or criminal matter has requested documents from Energy Harbor from this Extended Time Period, such that it requires Energy Harbor to engage an entirely new collection and review of documents. Second, Plaintiffs sought privileged documents relating to legal advice Energy Harbor received about 501(c)(4) contributions and clean energy legislation. Plaintiffs argued that Energy Harbor must produce these privileged materials based on (1) the crime-fraud exception, and (2) a subject matter waiver.

### D. The Special Master's Order

On November 20, 2023, the Special Master issued an Order granting Plaintiffs' Motion to Compel in its entirety. Order, ECF No. 560.

*First*, the Order granted Plaintiffs' request for discovery during the Extended Time Period, concluding that Energy Harbor's involvement in the underlying bribery scheme made it

reasonable to require discovery after the class period and after the arrest of Householder. *Id.* at PageID 12226–30.

*Second*, the Special Master found that Plaintiffs had made a sufficient showing that Energy Harbor sought legal advice about contributions to 501(c)(4) entities in furtherance of the illegal bribery scheme. Despite acknowledging that "[t]he crime-fraud exception issue presents an extremely close call, especially given the protections afforded the attorney-client privilege," *id.* at Page ID 12233, and that the "decision is *not* that FirstEnergy Solutions did anything wrong," the Special Master concluded that "Plaintiffs have just met their burden" of showing legal advice relating to 501(c)(4) contributions and draft clean energy legislation was not protected by privilege, *id.* at PageID 12234.

Accordingly, the Special Master ordered (1) that Energy Harbor produce responsive documents for the Extended Time Period and (2) that Energy Harbor produce documents "concerning the subject matter of donations to relevant 501(c)(4) entities and the drafting of clean energy legislation" pursuant to the crime-fraud exception. *Id.* at PageID 12236. The Special Master denied Energy Harbor's request that Plaintiffs bear its costs incurred for collecting, reviewing, logging, and producing documents from the Extended Time Period. *Id.*

Energy Harbor now files this timely objection to the Order with respect to its conclusion that Energy Harbor must produce privileged documents under the crime-fraud exception.

## ARGUMENT

### I. Standard of Review

The Special Master's findings of fact and conclusions of law are reviewed *de novo*. Fed. R. Civ. P. 53(f)(3)–(4); *see also Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, No. 19-CV-02075, 2022 WL 1619683, at *2 (D. Colo. Mar. 30, 2022) (applying *de novo* review to reverse in part special master's report regarding discovery); *LG.Philips LCD Co. v. Tatung Co.*, 243 F.R.D.

133, 135, 139 (D. Del. 2007) (reviewing defendants' objections *de novo* and reversing special master's decision). After review, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1); *see also Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 21-cv-02085, 2023 WL 4991718, at *1 (N.D. Ohio Aug. 4, 2023) ("In this respect, the ultimate decision rests with the Court and must be its own." (citing *Quantum Sail Design Grp., LLC v. Jannie Reuvers Sails, Ltd.*, 827 F. App'x 485, 491 (6th Cir. 2020))).

## II. The Special Master Misconstrued the Law on Crime-Fraud and Made Incorrect Findings of Fact

The crime-fraud exception applies to communications with an attorney "undertaken *for the purpose* of committing or continuing a crime or fraud." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) (emphasis added). The party invoking the crime-fraud exception must satisfy two elements: "(1) that the client was engag[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *Murray Energy Corp. v. Cassidy, Cogan, Chappell & Vogelin, L.C.*, No. 18-cv-440, 2019 WL 2240245, at *3 (S.D. Ohio May 24, 2019), *op. & order adopted*, 2019 WL 3406543 (S.D. Ohio July 29, 2019) (alteration in original). The focus is, therefore, on the state of mind of Energy Harbor—not FirstEnergy. Neither element was satisfied here. In reaching his determination that the exception applied, the Special Master made errors of law and fact, each of which provides an independent basis warranting reversal.

### A. Plaintiffs Did Not Establish a *Prima Facie* Crime or Fraud by Energy Harbor

Initially, the Special Master found that "[w]ithout question, there is a reasonable basis to conclude that fraud occurred." Order, ECF No. 560 at PageID 12232. But to justify the

discovery of privileged materials under the crime-fraud exception, there must be evidence showing not just that a crime occurred, but that *Energy Harbor* engaged in or planned the crime or fraud. *Murray Energy Corp.*, 2019 WL 2240245, at *3 (the "privilege challenger" must present evidence that "*the client* was engag[ed] in (or was planning) criminal or fraudulent activity" (alteration in original) (emphasis added)). "The evidence produced by [Plaintiffs] must raise more than a strong suspicion that a crime was committed[, although] it need not be as strong as that needed to effect an arrest or secure an indictment." *In re Antitrust Grand Jury*, 805 F.2d 155, 165 (6th Cir. 1986) (citation omitted). Plaintiffs' burden, "[is] to make a sufficient showing that a 'prudent person would have a reasonable basis to suspect'" that Energy Harbor was committing or planning to commit a crime or fraud at the time it sought legal advice from its attorneys. *Id.* at 166.

In this case, no such evidence exists. In contrast to FirstEnergy, Energy Harbor has never been charged with any crime. As Energy Harbor explained in its Opposition to the Motion to Compel and at oral argument, Energy Harbor contributed to Generation Now on the recommendation of government affairs advisors at Akin Gump, and with the blessing of lawyers from that firm and others, with the understanding that the funds would be used for a media campaign in support of H.B. 6 and, later, to defeat the referendum. Energy Harbor's Opposition, ECF No. 506 at PageID 10856; Conf. Tr. 37:25–38:6. The Special Master's Order does not address, much less acknowledge, these important considerations. *See In re Napster Inc.*, 479 F.3d 1078, 1093 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v.*

*Carpenter*, 558 U.S. 100 (2009) (requiring that courts must consider evidence favorable to "the party seeking to preserve the privilege" in civil cases "where outright disclosure is requested").

Instead, the Special Master pointed to "[t]he exhibits submitted with the motion to compel" as evidence of a bribery scheme without identifying specific exhibits or statements that support this finding. Order, ECF No. 560 at PageID 12232. But any reasonable reading of the text messages and emails that Plaintiffs submitted as exhibits supports the opposite conclusion: that Energy Harbor made contributions to Generation Now in order to fund the purchase of advertisements to support the passage of H.B. 6. And—once H.B. 6 passed the legislature in July 2019—to fund efforts to thwart signature gathering initiatives in favor of a referendum and to run anti-referendum advertisements. Conf. Tr. 37:25–38:6. Contrary to the Special Master's decision, each of the communications involving Energy Harbor executives proffered by Plaintiffs shows just that. For example, several exhibits evidence Energy Harbor supporting a pro-H.B. 6 media campaign via donations to Generation Now. *E.g.*, Plaintiffs' Exs., ECF No. 491-3 at PageID 10601, 10608–10, 10695, 10742 (Exs. 6, 8, 29, 36); Plaintiffs' Exs., ECF No. 237-2 at PageID 5700–02, 5735–36 (Exs. 40, 49).[2] Others show that Energy Harbor executives met or spoke with Householder about H.B. 6 and the subsequent referendum. *E.g.*, Plaintiffs' Exs., ECF No. 491-3 at PageID 10615–17 (Ex. 10); Plaintiffs' Exs., ECF No. 237-2 at PageID 5694–702, 5717–18, 5722–24, 5731–34 (Exs. 38, 39, 40, 43, 45, 48). But there was nothing illegal about meeting or communicating with lawmakers to explain why H.B. 6 should become law or to discuss ways to prevent its repeal through referendum. Nor is it a crime for lawyers to help draft proposed legislation that is helpful to a client. Plaintiffs' Exs., ECF No. 491-3 at PageID 10690–

---

[2] In support of their Motion to Compel, Plaintiffs provided Exhibits 6, 21–29, 31–32, 35–36, and 46 *in camera* pursuant to § 8 of the Amended Stipulated Protective Order, ECF No. 411, because they had been designated confidential. Energy Harbor will provide any of those Exhibits for *in camera* review at the Court's request.

91 (Exs. 24–25). None of Plaintiffs' exhibits show that Energy Harbor had any idea Householder was personally benefitting from contributions that were supposed to be spent on advertising and anti-referendum efforts, or that Energy Harbor had any reason to believe there was a quid-pro-quo.

The Special Master's reliance on the "deferred prosecution agreement" as evidence of Energy Habor's role in the bribery scheme is also misplaced. Order, ECF No. 560 at PageID 12232. The deferred prosecution agreement was negotiated and entered into by FirstEnergy and the DOJ on July 20, 2021. Energy Harbor was never consulted about the deferred prosecution agreement, played no role in its negotiation, and had no knowledge of it until it was publicly announced. As a non-signatory to that agreement, Energy Harbor cannot be bound by its terms, nor can FirstEnergy's admissions be imputed to Energy Harbor. *See W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014) ("[I]t goes without saying that a contract cannot bind a nonparty." (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002))). Finally, the deferred prosecution agreement contains no actual evidence that anyone at Energy Harbor had intent to bribe Householder.

In sum, there is no reasonable basis to support an inference that Energy Harbor knowingly engaged in a criminal scheme. Accordingly, the first step of the crime-fraud analysis was not met and the Special Master should have rejected Plaintiffs' attempt to pierce the attorney-client privilege.

### B. There Is No Evidence that Energy Harbor Intended to Facilitate or Conceal a Crime or Fraud

The Special Master also erred in finding that circumstantial evidence supported a reasonable inference Energy Harbor sought legal advice in order to facilitate or conceal a crime or fraud. The Special Master found that "[t]he 2018 memorandum and the 2019

memoranda . . . provide analysis and advice that ultimately effectuate a component of the apparent fraud," and speculated that FES may have sought legal advice about 501(c)(4) contributions in order "to cover quid pro quo transactions with a smear of propriety." Order, ECF No. 560 at PageID 12232–34. Here, too, the Special Master's findings have no support in the record.

First, no reasonable reading of the 501(c)(4) Memo or the Clean Energy Memos can support the inference that they "effectuate[d]" a component of the fraud. As the Sixth Circuit has explained, "merely because some communications may be related to a crime is not enough to subject that communication to disclosure; the communication must have been made with an intent to further the crime." *In re Antitrust Grand Jury*, 805 F.2d at 168. Here, the Calfee memo from 2018 simply summarized the law concerning corporate donations to 501(c)(4) entities. Giannantonio Decl., ECF No. 506-2 at PageID 10883 ¶ 14, 10884 ¶ 15, 10885–86 (Exs. A, B). And the 2019 Calfee memos gave comments on draft legislation. *Id.* at PageID 10884 ¶ 16, 10887–88 (Exs. C, D). This advice was clearly obtained to determine how to stay well within the bounds of the law, or how to advocate for and structure legislation that would help the company, not to facilitate or conceal any crime. *See Murray Energy Corp.*, 2019 WL 2240245, at *8; *Slorp v. Lerner, Sampson & Rothfuss*, No. 12-cv-498, 2016 WL 1252980, at *5 (S.D. Ohio Mar. 31, 2016) (plaintiffs failed to proffer evidence "that the communications at issue were made with an intent to further a crime or fraud"). Quite the opposite, the documents show that FES sought legal advice in good faith to ensure it acted legally, and that any crimes at issue here occurred without Energy Harbor's knowledge. *See United States v. Skeddle*, 989 F. Supp. 890, 901 (N.D. Ohio 1997) ("Good-faith consultations with attorneys by clients who are uncertain

about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper.").

Second, the Special Master insists that "[c]ontextualization places Energy Harbor's on-its-face lawful conduct into a broader course of conduct that a reasonable person may find damning" and "conduct that is wholly lawful in most circumstances might be unlawful here." Order, ECF No. 560 at PageID 12233.  Specifically, he found that "the text messages of FirstEnergy employees suggest a criminal purpose underlying the contributions and lobbying that, coupled with the then-interdependence of FirstEnergy and FirstEnergy Solutions, reasonably imply FirstEnergy Solutions knowingly engaged in criminal conduct and obtained legal advice to cover quid pro quo transactions with a smear of propriety." *Id.* at PageID 12233–34.  The problem with this analysis, however, is that not a single one of the communications by an Energy Harbor employee suggests a nefarious intent, and there is also no evidence that legal advice was used "*as the means* to facilitate or conceal intended criminal activity (fraud, bribery)." *Id.* at PageID 12233.  As discussed above, all the communications proffered by Plaintiffs confirm that FES sought legal advice to pay for legitimate political advertisements in support of H.B. 6 and to draft favorable clean energy legislation.

In addition, the Special Master overlooked the fact that many of the communications submitted to the Cout reflect that many lawyers and government affairs specialists were intimately involved in FES's activities during the relevant time period—a fact that significantly weighs against a finding of criminal intent. *E.g.*, Plaintiffs' Exs., ECF No. 491-3 at PageID 10688, 10690–93, 10695, 10742 (Exs. 22, 24–27, 29, 36).  Indeed, Plaintiffs' supposedly most damning evidence—the hand delivery of a $400,000 check to Householder—was done on the specific advice and at the direction of Akin Gump, one of the most prominent government affairs

law firms in the world. Conf. Tr. 63:9–65:6. And an Akin Gump government affairs specialist was there at that meeting with Householder. *Id.*

There is no evidence from which the Special Master could have reasonably inferred that Energy Harbor's communications with its lawyers concerning making contributions to Generation Now or clean energy legislation were intended to facilitate or conceal a bribery scheme.

## CONCLUSION

For the foregoing reasons, the Special Master's Order compelling discovery from non-party Energy Harbor based on the crime-fraud exception to the attorney client privileged should be reversed.

Dated: Columbus, Ohio  
December 11, 2023

Respectfully submitted,

ZEIGER, TIGGES & LITTLE LLP

DECHERT LLP

By: */s/ Marion H. Little, Jr.*

Marion H. Little, Jr. (0042679)  
The Huntington Center  
41 S. High Street  
Suite 3500  
Columbus, OH 43215  
(614) 365-9900

Jonathan R. Streeter (*pro hac vice*)  
Matthew L. Mazur (*pro hac vice*)  
Tamer Mallat (*pro hac vice*)  
Three Bryant Park  
1095 Avenue of the Americas  
New York, New York 10036  
(212) 698-3500

Peter J. McGinley (*pro hac vice* pending)  
2929 Arch Street  
Philadelphia, PA 19104  
(215) 994-4000

*Attorneys for Non-Party Energy Harbor*

- 15 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will cause notice of its filing to be served electronically upon all attorneys of record in this matter.

                                                */s/ Marion H. Little, Jr.*
                                                Marion H. Little, Jr. (0042679)