**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) Case No. 2:20-cv-03785-ALM-KAJ<br>)<br>) <u>Class Action</u><br>) Judge Algernon L. Marbley<br>) Magistrate Judge Kimberly A. Jolson<br>) |

**FIRSTENERGY AND CERTAIN OTHER DEFENDANTS' MEMORANDUM OF LAW INSUPPORT OF THEIR MOTION TO EXCLUDE PLAINTIFFS' EXPERT W. SCOTT DALRYMPLE**

January 9, 2026

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ...............................................................................................................3

LEGAL STANDARD ........................................................................................................7

ARGUMENT .....................................................................................................................8

I.  MR. DALRYMPLE'S ORIGINAL OPINION FAILS UNDER RULE 702
    BECAUSE HE DOES NOT EXPLAIN HOW HIS SO-CALLED METHODOLOGY
    WOULD APPLY TO THE FACTS AS ALLEGED IN THE COMPLAINT .............9

II. THE OPINIONS THAT MR. DALRYMPLE FIRST DISCLOSED AT THE
    DECEMBER 12 HEARING ARE IMPERMISSIBLE UNDER RULE 702 AND
    UNTIMLEY UNDER RULES 26 AND 37 ...................................................................13

    A.  By Regurgitating Plaintiffs' Newly-Minted "Criminal Enterprise" Theory,
        Mr. Dalrymple Relies on Implausible Attorney Assumptions that
        Contradict the Complaint........................................................................................13

    B.  The Opinions First Disclosed by Mr. Dalrymple at the December 12
        Hearing Are Inadmissible Under Rules 26 and 37 .................................................16

CONCLUSION ...............................................................................................................19

**PRELIMINARY STATEMENT**

The Sixth Circuit has specifically tasked this Court with excluding expert testimony that is "insufficiently reliable to satisfy *Daubert* [v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]" at "the class-certification stage." *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 253 (6th Cir. 2024). That gatekeeping function is critical here. The Sixth Circuit reversed the Court's initial class certification order with specific instructions to conduct a "rigorous analysis" of Plaintiffs' proposed damages methodology under *Comcast Corp.* v. *Behrend*, 569 U.S. 25, 35 (2013). Plaintiffs' damages methodology rests exclusively on the deeply flawed and unreliable opinions of W. Scott Dalrymple, whose testimony was rejected less than a year ago by another court in this circuit. *See Strougo* v. *Tivity Health, Inc.*, 2025 WL 1415896, at *2 (M.D. Tenn. May 15, 2025). *Daubert* and Federal Rule of Evidence 702 compel the same result here.

*First*, Mr. Dalrymple fails to identify a methodology that he can "reliabl[y] appl[y]" "to the facts" as alleged in the Complaint. Fed. R. Evid. 702(d). At the December 12 hearing, after refusing to commit to a specific damages methodology, Mr. Dalrymple testified that he expects to measure share price inflation using an event study created and disclosed for an entirely different purpose—assessing market efficiency. He further maintained that he would use "this . . . or that [unspecified] scaling factor" to account for any changes in inflation in FirstEnergy's stock price over the 860 trading days of the 3.5-year proposed class period. (Dec. 12 Tr., ECF No. 936 at PageID 24226, 86:5-9, PageID 24283-24284, 143:17-144:7, PageID 24312, 172:11-21.)

Mr. Dalrymple's failure to do the necessary work is fatal here, where Plaintiffs allege continuously evolving conduct over the class period. For example, they allege that political contributions by FirstEnergy and FirstEnergy Solutions grew from only $250,000 in early 2017 to more than *$55 million* by late 2019; that Defendants spent the majority of the proposed class period

"launching" their alleged "Bailout Scheme" or holding it in reserve in case their lawful efforts to reduce FirstEnergy's exposure to its nuclear liabilities did not succeed; and that whether the "scheme" proceeded past the "launch" phase turned on multiple contingent events not certain to occur, such as the election of Larry Householder as Speaker of the Ohio House of Representatives in 2019. Mr. Dalrymple thus impermissibly evades the critical question: how his method would "appl[y] . . . to the facts" as alleged in the Complaint. *See* Fed. R. Evid. 702(d).

*Second*, Mr. Dalrymple's most recent testimony violates Rule 702 because it relies on lawyer argument and is inconsistent with Plaintiffs' Complaint. Plaintiffs now maintain that FirstEnergy converted into a "criminal enterprise" with no "legitimate business" in early 2017. (Nov. 6 Tr., ECF No. 914 at PageID 23812-23813, 42:23-43:1.) They claim that from then through July 21, 2020, inflation in the company's stock price held constant at "about $20" per share—*i.e.*, the approximate sum of the price drops following the alleged corrective disclosures in 2020. (*Id*. at PageID 23814, 44:4.) At the December 12 hearing, Mr. Dalrymple regurgitated Plaintiffs' theory, after initially disclaiming any opinion on whether inflation in FirstEnergy's stock price varied or was constant over the 860 trading days of the proposed class period. Notably, he provided no economic analysis to support that new "opinion," nor does any such analysis appear anywhere in his written reports.

Plaintiffs' new theory forced Mr. Dalrymple to accept absurd conclusions that cannot be reconciled with Plaintiffs' own pleadings, including that (i) FirstEnergy's share price was inflated by *more than 60%* of the company's value on the first day of the class period (before any allegedly unlawful payments and years before Mr. Householder was elected Speaker); and (ii) FirstEnergy's share price was somehow impacted by misstatements concealing improper payments *before* those payments were made. Because an expert may not "offer[] his client's

-2-

opinion as his own," *Ask Chems., LP* v. *Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. Dec. 10, 2014), or "ignore[] the plain allegations of the consolidated pleading," *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 767 F. Supp. 3d 495, 513 (E.D. Mich. 2025), Mr. Dalrymple's testimony must be excluded. As in *Tivity*, this Court should reject his testimony as "inadmissible *ipse dixit*" because there is no "bridge between his opinion" and any supporting "analytical framework." 2025 WL 1415896, at *7.

*Last*, Mr. Dalrymple's last-minute testimony violates Rules 26 and 37. At the December 12 hearing, Mr. Dalrymple testified to new opinions that Plaintiffs failed to disclose at any point previously: (i) his expectation that he would use his market efficiency event study to measure damages; and (ii) his opinions, plainly tailored to support Plaintiffs' new "criminal enterprise" theory, that share price inflation from the alleged curative events totaled "roughly" $20 per share, and that he would "expect" inflation to be constant throughout the class period because the "particular details" of a company's criminal conduct make no difference to the "economic substance." (ECF No. 936 at PageID 24194, 54:15-16, PageID 24291-92, 151:21-152:1, PageID 24296, 156:20-25.) Those belated disclosures violate Rule 26, which requires parties to disclose "a complete statement of all opinions the witness will express" by the deadline for exchanging expert reports. Fed. R. Civ. P. 26(a)(2)(B)(i). That violation was neither "justified" nor "harmless," *see* Fed. R. Civ. P. 37(c)(1). Plaintiffs sandbagged Defendants with Mr. Dalrymple's new opinions at a live hearing, after Defendants repeatedly sought to establish a process for pre-hearing disclosure of any new opinions and Plaintiffs refused.

## BACKGROUND

The undersigned Defendants incorporate by reference the description of Plaintiffs' allegations, Mr. Dalrymple's reports and testimony, and the posture of this litigation in FirstEnergy

Corp. and Certain Defendants' Supplemental Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification. Defendants provide here a brief summary of the background most relevant to this motion.

Mr. Dalrymple has testified that he would measure damages in this action using the "out-of-pocket [] methodology," *i.e.*, the difference between (i) share price inflation at the time of purchase; and (ii) share price inflation at the time of sale after one or more curative events (or after the last curative event if the shares were held until that point). (Expert Report of W. Scott Dalrymple, CFA, June 6, 2022, ECF No. 293-7 at PageID 6304, ¶ 109.) Mr. Dalrymple says that he could measure that amount by (i) "estimat[ing] inflation at the time of the curative events," and (ii) "us[ing] that estimate to estimate inflation on every day" of the proposed class period. (ECF No. 936 at PageID 24264, 124:9-15.) Mr. Dalrymple belatedly tried to propose a methodology to conduct the first step of his proposed analysis, but failed altogether to propose a coherent methodology for the second step. (*Id*. at PageID 24299, 159:3.)

In his written reports, Mr. Dalrymple barely began to sketch out a damages methodology and made no attempt to account for the evolving conduct and risk alleged in the Complaint. Most of Mr. Dalrymple's June 6, 2022 opening report concerned whether FirstEnergy's stock traded in an efficient market during the proposed class period. (ECF No. 293-7 at PageID 6286-6302.) The *only* event study that Mr. Dalrymple has designed in this action was addressed to that question—not damages. (*See id.* at PageID 6294, ¶ 69.)

In the 1.5-page section of his opening report addressing potential damages methodologies, Mr. Dalrymple opined vaguely that he could measure share price inflation "using widely accepted valuation and economic techniques," which he declined to specify. (*Id.* at PageID 6303, ¶ 104.) Using language copied almost verbatim from his reports in other cases, he claimed that he could

-4-

use "standard financial analysis and valuation tools," such as "income and market approaches," to address any "issues complicating" that quantification, such as "changes in share price inflation levels over time." (*Id*. at PageID 6303-04, ¶¶ 107-08; *compare*, *e.g.*, Expert Report of W. Scott Dalrymple in *Indiana Public Ret. Sys.* v. *Cartwright*, ECF No. 886-3 at 21092, ¶ 92, 94.) Neither Mr. Dalrymple's opening report nor his rebuttal explained *how* he would use his "tools" and "techniques" to assess the amount of share price inflation in FirstEnergy's stock price on each day of the proposed class period in light of the complex, evolving conduct alleged by Plaintiffs.

At the December 12 hearing, recognizing that Mr. Dalrymple's disclosed opinions did not state a methodology sufficient to satisfy *Comcast*, Plaintiffs tried to repurpose Mr. Dalrymple's event study on market efficiency as a damages event study. Mr. Dalrymple asserted that he could use a damages event study "very similar" to, "if not the same" as, the one he used to assess market efficiency to determine how FirstEnergy's "share price reacted to, in this case, the curative or corrective events." (ECF No. 936 at PageID 24190, 50:4-24; see also PageID 24256-57, 116:22-25-117:1.)

Mr. Dalrymple's newly disclosed opinion explained how he might "estimate[] inflation at the time of the curative events," but not how he would "use that estimate to estimate inflation on every day" of the proposed 3.5-year class period. (ECF No. 936 at PageID 24264, 124:9-15.) At the hearing, Mr. Dalrymple identified four "techniques" that he "would use" to measure inflation during the proposed class period—an "event study, [discounted cash flow ('DCF')] methodology," "scaling factors," and a "market multiples analysis"—but then left wiggle room to change course, offering the tautology that he would "apply[] all of the tools available to [him] that are applicable." (*Id*. at PageID 24229-24230, 89:20-90:9; PageID 24226, 86:2-4.)

Critically, Mr. Dalrymple further admitted that he has not decided how to determine "the

extent to which inflation varied over the 860-day trading period of the proposed class." (*Id*. at PageID 24256, 116:1-4.)  Nor has he considered "whether . . . [Defendants' relevant] conduct changed over the course of the class period." (*Id*. at Page ID 24317, 177:18-23.)  Despite naming "scaling factors" as a tool that would allow him to account for such variation, Mr. Dalrymple similarly has not "proposed a scaling factor in this case," or identified how he will do so, because that is "a fact-intensive determination" and he has not "looked at the record." (*Id.* at PageID 24314-15, 174:10-175:3.)

At the December 12 hearing, Mr. Dalrymple signaled his intent to evade  these issues altogether by providing his imprimatur for a new theory of liability concocted by Plaintiffs on remand.  At the November 6 oral argument, Plaintiffs debuted the implausible theory that at the start of the proposed class period, FirstEnergy became "a criminal enterprise" with no "legitimate business services." (ECF No. 914 at PageID 23812, 42:11-15 (emphasis added).)  According to Plaintiffs, once FirstEnergy underwent that "conver[sion]" in February 2017—before making a single unlawful payment—"*inflation [wa]s the same*" at "about $20" per share over the next 3.5 years.  (*Id*. at PageID 23812-13, 42:23-43:2, PageID 23814, 44:4 (emphasis added).)

Mr. Dalrymple parroted Plaintiffs' assertions in his December 12 testimony.  During redirect examination, he claimed for the first time that he had applied his market efficiency event study to the alleged curative events and "calculated" dissipated inflation of "roughly" $20.  (*Id*. at PageID 24350-51, 210:13-211-16.)  Even worse, he directly contradicted himself on cross-examination, when he testified that (i) he had *not* "measured inflation on any day in the class period" (*id.* at 116:5-9); and (ii) he "d[id not] believe" he had "provide[d] plaintiffs with a calculation of about $20 of constant inflation throughout the class period" (*id*. at PageID 24322, 182:4-6).

On redirect, Mr. Dalrymple also agreed with Plaintiffs that, subject to potential unspecified "adjustments," he "expect[s]" inflation to "remain the same" over the 860 trading days of the proposed class period (*id*. at PageID 24349, 209:10-23). During cross-examination, by contrast, he (i) disclaimed any opinion on "the extent to which inflation varied" over the class period (*id*. at PageID 24256, 116:1-4); (ii) conceded that "we've talked about a couple of different reasons this morning as to why the stock price inflation might be different in 2020 versus 2017" (*id.* at PageID 24292, 152:2-9); and (iii) agreed that "the economic substance of what was or was not conveyed to the market will affect the amount of inflation in a company's stock price" (*id.* at PageID 24267, 127:2-8). Mr. Dalrymple attributed his new "expectation" of constant inflation to his view that "the share price decline is driven more by the fact" of FirstEnergy's misconduct than by the "particular detail" of the size of unlawful payments. (*Id*. at PageID 24291, 151:17-25.)

## LEGAL STANDARD

In November 2024—while the class certification appeal here was pending—the Sixth Circuit held that "[i]f challenged expert testimony is material to a class certification motion, the district court must demonstrate the expert's credibility under *Daubert*." *Nissan*, 122 F.4th at 253. *Daubert* and its progeny charge the Court with "acting as [a] gatekeeper[] to exclude unreliable" expert evidence. *Rose* v. *Truck Ctrs., Inc.*, 388 Fed. App'x 528, 532-33 (6th Cir. Aug. 6, 2010).

To satisfy *Daubert* and Rule 702, Plaintiffs must affirmatively "demonstrate[] . . . that it is more likely than not" that Mr. Dalrymple's testimony (a) will "help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "is based on sufficient facts or data"; (c) "is the product of reliable principles and methods"; *and* (d) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Plaintiffs fail to make that showing with respect to Mr. Dalrymple.

"One major determinant" under *Daubert* is whether the expert "has justified the application of a general theory to the facts of the case." *Numatics, Inc.* v. *Balluff, Inc.*, 66 F. Supp. 3d 934, 959 (E.D. Mich. 2014) (internal quotation marks omitted). Courts also must exclude expert opinions, like Mr. Dalrymple's, that are "connected to existing data only by the *ipse dixit* of the expert," *see In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345-46 (6th Cir. 2024), or that "ignore[] the plain allegations of the consolidated pleading," *In re Chrysler*, 767 F. Supp. 3d at 513.

## ARGUMENT

Mr. Dalrymple's opinions fall into two categories: (i) the opinions he originally expressed in his reports and attempted to elaborate on at the December 12 hearing; and (ii) his newfound opinions, expressed for the first time at the hearing, that he "expect[s]" inflation to "stay the same" at "roughly" $20 per share over the 860 trading days of the proposed class period (subject to potential "adjustments" that he has not yet identified). (ECF No. 914 at PageID 24321-22, 181:25-182:3, 209:22-23.) Neither category is admissible. Mr. Dalrymple's reports fail to identify a damages methodology at all, instead gesturing vaguely to unspecified "valuation and economic techniques." (Report ¶ 104.) Mr. Dalrymple's testimony about those general "techniques" at the December 12 hearing did not meaningfully improve on his reports because he conceded that he failed to assess the critical issue: how his methodology would account for Plaintiffs' allegations of continually evolving conduct.

Mr. Dalrymple's new opinions do not save him, for two reasons. *First*, they fail under Rule 702 because they rely on attorney argument and contradict "the plain allegations of the consolidated pleading." *In re Chrysler*, 767 F. Supp. 3d at 513. *Second*, Mr. Dalrymple disclosed

those opinions (and others, as specified below) for the first time at the December 12 hearing, in violation of Rules 26 and 37.

**I. MR. DALRYMPLE'S ORIGINAL OPINION FAILS UNDER RULE 702 BECAUSE HE DOES NOT EXPLAIN HOW HIS SO-CALLED METHODOLOGY WOULD APPLY TO THE FACTS AS ALLEGED IN THE COMPLAINT.**

Under Federal Rule of Evidence 702(d), the Court should exclude Mr. Dalrymple's opinions describing his proposed damages methodology because Plaintiffs have failed to show that his analysis "reflects a reliable application" of any "principles and methods to the facts" alleged in the Complaint. In urging the Court to accept Mr. Dalrymple's opinions, Plaintiffs rely on (i) his credentials, and (ii) that he has named several "techniques"—an event study, a DCF analysis, a market multiples analysis, and "scaling factors"—that Plaintiffs say are standard methodologies for measuring damages. But Defendants are not disputing Mr. Dalrymple's qualifications or claiming that event studies are categorically unreliable. The problem here is that Mr. Dalrymple has not provided anything *in this case* beyond surface-level, *ipse dixit* assurances that he can design a model that would sufficiently grapple with the known complexities of the action.

Even if an expert's methodology "may very well be capable of calculating damages," the mere "assurance that he can build a model to" do so is "so incomplete as to be inadmissible as irrelevant" under Rule 702. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (excluding expert who provided only such "assurance"); *see also*, *e.g.*, *Multimatic, Inc.* v. *Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 655 (6th Cir. 2009) (excluding expert despite use of reliable "economic principle" where expert had not shown "reliability of . . . [his] *application* of" that principle (emphasis added)); *Ward* v. *Apple Inc.*, 784 F. App'x 539, 540 (9th Cir. 2019) (rejecting expert who "merely asserted that he would be able to develop a model at some point in the future").

Mr. Dalrymple fails to satisfy that standard.  His copy-and-paste reports lifted from his reports in other cases do not articulate any damages methodology, much less one that can be applied reliably here.  At the December 12 hearing, Plaintiffs strained to identify such a methodology by claiming that Mr. Dalrymple's *market efficiency* event study was "convenient by way of an example to show how that methodology would work for damages."  (ECF No. 936 at PageID 24185, 45:6-8.)  That disclosure was improperly belated, *see infra* Section II, and in any event is insufficient.  As the Court rightly commented, "you're going to need more than that.  You are going to have to be able to show to me how that event study supports your theory of liability." (*Id.* at 45:9-11.)

Plaintiffs fail to do so.  Critically, while Mr. Dalrymple claimed on redirect examination to have calculated dissipated inflation of "roughly" $20 following the alleged curative events, *see supra* page 6, he admitted that he has *not* determined how to measure "share price inflation during the class period"—which he concedes is a "key input for measuring damages."  (ECF No. 936 at PageID 24243-44, 103:23-104:2.)  When asked how he would account for the impact on FirstEnergy's share price of the evolving conduct and risk alleged by Plaintiffs, Mr. Dalrymple repeatedly asserted that he could apply "some scaling factor."  (*Id.* at PageID 24311, 171:12-15.)[1] But he conceded that he has not even begun to identify applicable scaling factors, much less constructed any such factors.  (*Id.* at PageID 24314-15, 174:10-175:3.)  When pressed on cross-examination, he provided another impenetrable non-answer, asserting that scaling factors would be "derived from fundamental economic principles," which would be "reflected in the tools and

---

[1] *See also*, *e.g.*, ECF No. 936 at PageID 24312, 172:15-21 (model would account for variation in amount of unlawful payments "through a scaling factor"); *id.* at PageID 24345, 205:9-14 (evidence suggesting that "the degree of that illegal activity would have affected the ramifications . . . is evidence that I could take into consideration using something like a scaling factor").

techniques that I discussed earlier." (*Id*. at PageID 24315-16, 175:12-176:5.)

The other two "techniques" Mr. Dalrymple identified, however—DCF and market-multiple analyses—are simply methods "to corroborate a finding in valuation." (*Id.* at PageID 24230, 91:2-3.)  He did not explain how either approach would account for the complexity of Plaintiffs' allegations of a political corruption conspiracy, instead testifying that those methods would "confirm" the results of the event study as a "redundancy." (*Id.* at PageID 24226, 86:5-9, PageID 24230-31, 90:12-91:11, PageID 24318-19; 178:18-179:4.)

In *Ohio Public Employees Retirement System* v. *Federal Home Loan Mortgage Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018), another securities litigation, Judge Pearson excluded nearly identical testimony *at class certification* on the same grounds urged by Defendants here.  In *OPERS*, plaintiff's damages expert, Dr. Feinstein, testified that he would use "valuation tools" to create a damages model, 2018 WL 3861840, at *19, just like Mr. Dalrymple said he could use four "valuation tools" to measure inflation here.  (ECF No. 936 at PageID 24225, 85:22.)  Just like Mr. Dalrymple has not "settled on a specific technique" for measuring damages (*id.* at PageID 24252, 112:19), Dr. Feinstein testified that he had "not yet determined" "the specifics of exactly which model [he] would use."  2018 WL 3861840, at *19.  And just like Mr. Dalrymple tried to hedge his bets by testifying that he "anticipate[s] applying all of the tools available to [him] that are applicable" (ECF No. 936 at PageID 24226, 86:2-4), Dr. Feinstein asserted that he would "have at [his] disposal all valuation models that other analysts have used to value [the issuer] and other companies [as well as] the event study."  2018 WL 3861840, at *19.

Judge Pearson correctly excluded Dr. Feinstein's testimony under *Daubert* because his "vague" description "amount[ed] to no damages model at all."  *Id.* at *19, *20.  This Court should exclude Mr. Dalrymple's largely indistinguishable testimony for the same reason.  *See also*, *e.g.*,

*In re E. Palestine Train Derailment*, 2025 WL 326040, at *4 (N.D. Ohio Jan. 29, 2025) (excluding opinion where expert engineer "fail[ed] to provide proper explanation of his methodology and facts" and "obfuscated rather than answer[ed] directly questions about the facts and methodology that led to his opinion"); *Jones* v. *ConAgra Foods, Inc.*, 2014 WL 2702726, at *20 (N.D. Cal. June 13, 2014) (expert testimony "deeply flawed" where expert failed to specify "variables," "data," or "competing and complementary products" to be used as comparators).

Another court in this circuit recently rejected an event study prepared by Mr. Dalrymple on similar grounds. In *Tivity*, 2025 WL 1415896, at *7, the court concluded that Mr. Dalrymple "d[id] not provide any bridge between his opinion" regarding purported corrective disclosures and an "analytical framework supporting" that opinion. As a result, his testimony was "merely inadmissible *ipse dixit*." *See id.*

Plaintiffs cannot avoid the obvious flaws in Mr. Dalrymple's testimony by falling back on their assertion that event studies are "universally" reliable (ECF No. 914 at PageID 23788, 18:8-11). In many cases accepting event studies, courts have specifically found that the expert, unlike Mr. Dalrymple here, provided a detailed explanation of how the study "would be applied to the facts of th[e] case," *Willis* v. *Big Lots, Inc.*, 2017 WL 1074048, at *6 (S.D. Ohio Mar. 17, 2017), or "dedicate[d] ten pages of his proposed expert report to explaining his event study's methodology and showing how the event study *is tailored to the facts alleged.*" *Shupe* v. *Rocket Companies, Inc.*, 752 F. Supp. 3d 689, 722 (E.D. Mich. 2024) (emphasis added). Mr. Dalrymple's failure to provide any such explanation supports excluding his conclusory opinions.

Nor can Mr. Dalrymple cure his failure by deferring his analysis until he has "looked at the record" following fact discovery. (ECF No. 936 at PageID 24314, 174:10-175:3.) The complexity

of the alleged evolving conduct in this case is apparent from the face of the Complaint, which he has had for years.  For example:

- Plaintiffs chose to allege that the "Bailout Scheme" evolved during the class period from a "launch[]" phase, through demotion to a "backup plan" during the FES bankruptcy, and then to "execut[ion]" (Compl., ECF No. 72 at PageID 1565, ¶ 63, PageID 1592-93 ¶¶ 135-36), and that the amount of the alleged unlawful payments increased exponentially between 2017 and 2019 (*id.* at PageID 1594, ¶ 137).  Mr. Dalrymple must propose a methodology capable of accounting for those changes.

- Plaintiffs chose to allege 46 misstatements, and the Sixth Circuit has rejected their attempt to ignore those statements by relying on their omissions-based liability theory.  Mr. Dalrymple thus must explain how he will measure the price inflation attributable to the alleged misstatements in light of the evolving conduct and risk the statements allegedly concealed.

- Plaintiffs chose to allege that Defendants' conduct "posed an *extreme, undisclosed **risk** of reputational, legal and financial harm* to the Company and its investors."  (*Id.* at PageID 1638, ¶ 252 (emphasis added).)  Mr. Dalrymple must devise a method to measure how FirstEnergy's stock price would have reacted if the market had learned of those alleged risks during the class period.

By failing to engage with the Complaint's complex allegations, Mr. Dalrymple is impermissibly "leav[ing] the hard questions for later," *Speerly*, 143 F.4th at 324, rendering his opinions unhelpful to the Court in conducting the rigorous *Comcast* analysis directed by the Sixth Circuit, *see* Fed. R. Evid. 702.

## II.    THE OPINIONS THAT MR. DALRYMPLE FIRST DISCLOSED AT THE DECEMBER 12 HEARING ARE IMPERMISSIBLE UNDER RULE 702 AND UNTIMLEY UNDER RULES 26 AND 37.

### A.    By Regurgitating Plaintiffs' Newly-Minted "Criminal Enterprise" Theory, Mr. Dalrymple Relies on Implausible Attorney Assumptions that Contradict the Complaint.

The Court must exclude Mr. Dalrymple's opinions repeating Plaintiffs' implausible new theory that inflation in FirstEnergy's stock price held constant at "about $20" per share throughout

-13-

the class period because FirstEnergy supposedly became a "criminal enterprise" with no "legitimate business" in early 2017. (ECF No. 914 at PageID 23812-14, 42-44.) At the December 12 hearing, Mr. Dalrymple "cloak[ed]" that theory "in the authority of" expert testimony. *Ask Chems*, 593 F. App'x at 510. After acknowledging that he had not "done the analysis," Mr. Dalrymple then testified on redirect examination that, subject to unspecified "adjustments," he "would not expect" Plaintiffs' $20-per-share dissipated inflation amount "to adjust substantially" over time. (ECF No. 936 at PageID 24296, 156:10-24.)

That opinion is inadmissible. *First*, an expert may not "merely offer[] his client's opinion as his own." *Ask Chems*, 593 F. App'x at 510. Here, as in *Tivity*, Mr. Dalrymple violated that rule by making assumptions "to align with Lead Plaintiff's theory of liability." 2025 WL 1415896, at *5. After purporting to disclaim "an obligation to support something that plaintiffs' counsel said" (ECF No. 936 at PageID 24331-32, at 191:25-192:1), he did exactly that. His testimony stuck to Plaintiffs' illogical new theory to the point of absurdity. For example, he refused to agree that a $250,000 alleged improper political contribution necessarily carried less risk for FirstEnergy's stock price than did $50 million in total contributions. (*Id.* at PageID 24296, 156:10-24.) According to Mr. Dalrymple, "once a company commits a crime," that "carries a lot of weight with investors." (*Id.* at PageID 24296, 156:17-20.) Thus, he "would not expect [the price impact] to adjust substantially" based on "particular details" like a roughly *200-fold* difference in the size of the payments. (*Id.* at PageID 24296, 156:22-23.)

Despite making a throwaway reference to "economic principles" (*id.* at PageID 24296, 156:17), Mr. Dalrymple did not actually identify any "method or principle" that would support his "expect[ation]" of constant inflation. (*Id.* at 209:22-23.) *See Tivity*, 2025 WL 1415896, at *5. His

-14-

so-called opinions on this point amount to improper *ipse dixit* and, as in *Tivity*, should be rejected.[2]

*Second*, even worse, Mr. Dalrymple recited assumptions at the December 12 hearing that were often directly at odds with Plaintiffs' own allegations. Expert opinion testimony is inadmissible where it "ignores the plain allegations of the consolidated pleading." *In re Chrysler*, 767 F. Supp. 3d at 513. That rule applies with extra force to experts proffered by plaintiffs, whose "[f]actual assertions in pleadings . . . unless amended, are considered judicial admissions." *Kay* v. *Minacs Grp. (USA), Inc.*, 580 Fed. App'x 327, 331 (6th Cir. Sept. 5, 2014); *see also Greenwell* v. *Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999) ("Judicial admissions of fact preclude the introduction of contradictory evidence as to the admitted facts."); *Bricklayers & Trowel Trades Int'l Pension Fund* v. *Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 89, 91 (1st Cir. 2014) (affirming exclusion of event study given "complete disconnect between the event study and the complaint").[3]

There is such a "disconnect" here. The Complaint refutes any suggestion that FirstEnergy converted to a "criminal enterprise" with no "legitimate business" in early 2017. Plaintiffs allege—and Mr. Dalrymple conceded—that FirstEnergy has at all relevant times been an "electric utility company" with billions in annual revenue that "serv[es] more than six million customers," including in five states outside of Ohio where Plaintiffs do not allege it engaged in *any* unlawful

---

[2] Where courts have denied *Daubert* challenges to Mr. Dalrymple's testimony, the movants did not raise issues comparable to those in *Tivity* and here. In *St. Clair County Employees' Retirement System* v. *Acadia Healthcare Co., Inc.*, 2025 WL 2810495 (M.D. Tenn. Oct. 1, 2025), for example, the court noted that the defendants "[did] not show that Dalrymple's opinions are 'so fundamentally unsupported that it can offer no assistance to the [trier of fact].'" *Id.* at *3. Here, where Mr. Dalrymple accepted Plaintiffs' outlandish premises without any supporting analysis, that test is clearly satisfied.

[3] Even when denying *Daubert* motions over the factual sufficiency of an expert's analysis, this Court has reiterated that there must be "a reasonable factual basis for the expert's opinion." *Kirkbride* v. *Kroger Co.*, 349 F.R.D. 160, 177 (S.D. Ohio 2025) (Marbley, J.); *see also Davis* v. *Sig Sauer, Inc.*, 126 F.4th 1213, 1224 (6th Cir. 2025) (same).

-15-

activity.  (ECF No. 72 at PageID 1554, ¶ 27; ECF No. 936 at PageID 24235-36, 95:20-96:9.)

Plaintiffs' allegations are also incompatible with Mr. Dalrymple's "expect[ation]" of constant inflation.  (ECF No. 936 at PageID 24296, 156:10-24.)  As described above, the "scheme" that Plaintiffs allege Defendants concealed evolved continuously during the 3.5-year proposed class period.  FirstEnergy supposedly paid widely differing amounts to benefit different officials at different times, while relying to differing degrees on the possibility of achieving multiple different "legislative and regulatory" outcomes.  (*See*, *e.g.*, ECF No. 72 at PageID 1558-65, 1568, 1570, ¶¶ 45-63, 72, 75, 82.)

As explained in Section I, Mr. Dalrymple cannot avoid these issues by claiming that he might make "adjustments" to account for Plaintiffs' allegations of evolving conduct in the future.  (ECF No. 936 at PageID 24321-22, 181:25-182:3.)  Before a class can be certified, he must decide *now* whether such adjustments are necessary and, if so, explain what they are and how he will make them.

**B.      The Opinions First Disclosed by Mr. Dalrymple at the December 12 Hearing Are Inadmissible Under Rules 26 and 37.**

Federal Rules of Civil Procedure 26 and 37 provide an additional ground to exclude the opinions that Mr. Dalrymple first asserted at the December 12 hearing.  The report of a testifying expert must include "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  A party that violates that provision "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

"[C]ourts have routinely rejected attempts to add new analyses, opinions, or theories under the guise of supplementation."  *Bentley* v. *Highlands Hosp. Corp.*, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) (citing cases).  As this Court has explained, while "error correction" is

permissible supplementation, "a substantive transformation in theories of liability, methodology, conclusion, or the report in its entirety," is not. *McNamee* v. *Nationstar Mortgage LLC*, 2021 WL 4355549, at *8 (S.D. Ohio Sept. 24, 2021) (Marbley, J.) (permitting supplemental report to correct inadvertent citation to incorrect document in initial report).

The opinions that Mr. Dalrymple newly disclosed at the December 12 hearing clearly fall on the wrong side of that line. Those opinions included (i) his "roughly" $20-per-share price inflation measurement (*id.* at PageID 24350-51, 210:13-211-2); (ii) his opinion that inflation should "stay the same" throughout the class period (unless he makes unspecified adjustments), because the commission of a crime "carries a lot of weight with investors" and the "particular details" of the criminal conduct make no difference to the "economic substance" (*id*. at PageID 24296, 156:15-24, PageID 24349, 209:15-23); and (iii) his attempt to repurpose his market efficiency event study to measure damages (ECF No. 936 at PageID 24256-57; 116:14-25-117:1).

In his written reports, Mr. Dalrymple expressly *disclaimed* offering any opinion on these issues.[4] His new opinions, which take the opposite approach, are not mere supplementation of disclosed opinions. At the December 12 hearing, Mr. Dalrymple pointed to a single passing reference to "an event study approach" in the damages section of his opening report (at ECF No. 293-7 at PageID 6303, ¶ 105), but an expert may not "conduct[] a new analysis to provide new support for a briefly stated opinion in the initial report." *United States v. EES Coke Battery, LLC*, 2025 WL 1621296, at *13 (E.D. Mich. June 9, 2025); *see also Aetna, Inc.* v. *Blue Cross Blue*

---

[4] *See* Expert Rebuttal Report of W. Scott Dalrymple, CFA, September 28, 2022, ECF No. 346-3, at PageID 7751, ¶ 16 ("I have not been asked to offer, nor do I provide, an opinion on the quantification of damages in this matter."); *id.* ¶ 18 ("I have not determined whether inflation should be constant or variable during the proposed Class Period . . . ."); *id.* at PageID 7752, ¶ 22 ("[I]t would be premature to present a specific technique or model relevant to a particular claim . . . .").

*Shield of Michigan*, 2015 WL 1646464, at *14 (E.D. Mich. Apr. 14, 2015) (holding that "expert[] cannot testify to the $80-$100 million impact" of allegedly anti-competitive contract provisions on insurance company's rates, "because this calculation and the underlying document were not identified in his expert report").

Rule 26 also does not permit "an opinion based on an entirely different theory of recovery than that set forth in [the] expert report." *Antioch Co. Litig. Tr.* v. *McDermott Will & Emery, LLP*, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016). But that is exactly what Mr. Dalrymple has done here. His new $20-price-impact and likely-constant-inflation opinions repeat the "criminal enterprise" theory that Plaintiffs first raised at the November 6 hearing. The Court should not permit Mr. Dalrymple to retrofit his opinions to match that theory.

This Court should exclude Mr. Dalrymple's previously undisclosed testimony because Plaintiffs' belated disclosures were neither "justified" nor "harmless," *see* Fed. R. Civ. P. 37(c)(1). The Sixth Circuit analyzes that standard by reference to five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe* v. *City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (internal citation omitted). Those factors plainly do not excuse Plaintiffs' blatant end-run of Rule 26.

*First*, Plaintiffs surprised Defendants by sandbagging them with Mr. Dalrymple's new opinions at a live hearing. *Second*, Defendants could not cure the surprise because they had no opportunity to prepare to cross-examine Mr. Dalrymple regarding his new opinions. *Third*, the evidence at issue relates to one of the key questions facing this Court on remand from the Sixth Circuit—whether, in order to satisfy *Comcast*, Plaintiffs must propose a damages methodology that accounts for the complexity of their own allegations. And *fourth*, Plaintiffs have not offered

any explanation for their belated disclosures.

It would be especially unfair to excuse Plaintiffs' violation of Rule 26 when Defendants repeatedly sought Plaintiffs' consent to a process for pre-hearing disclosure of any new opinions of Mr. Dalrymple, and Plaintiffs refused. (Nov. 21, 2025 Letter to Jason Forge, ECF No. 924-4 at PageID 23952.) In fact, after Defendants sought an order imposing a disclosure deadline, the Court deemed that unnecessary, directing that the Court "w[ould] not permit Plaintiffs or Mr. Dalrymple to provide a new opinion" at the hearing. (Order re: Procedures, ECF No. 928 at PageID 24020.) Yet Plaintiffs turned around and did just that.

Finally, Plaintiffs view expert supplementation in this action as a one-way street. When Defendants properly sought to supplement the expert record by motion, Plaintiffs opposed, claiming that Defendants should be limited to the expert opinions they disclosed more than three years ago when the parties first litigated class certification. (Opposition, ECF No. 921 at PageID 23898.) Plaintiffs cannot have it both ways, holding Defendants to a three-year-old record, while introducing their own new expert opinions whenever they please. This Court should exclude Mr. Dalrymple's new opinions. (ECF No. 928 at PageID 24020.)

## CONCLUSION

For the reasons stated above, the undersigned Defendants respectfully ask this Court to exclude the reports and testimony of Mr. Dalrymple.

Dated:  January 9, 2026

/s/ Geoffrey J. Ritts (with permission)
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
Corey A. Lee (0099866)
Adrienne F. Mueller (0076332)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
gjritts@jonesday.com
rfaxon@jonesday.com
calee@jonesday.com
afmueller@jonesday.com

Marjorie P. Duffy (0083452)
M. Ryan Harmanis (0093642)
Shalini B. Goyal (0093642)
Elizabeth A. Benshoff (0098080)
JONES DAY
325 John H. McConnell Boulevard,
Suite 600
Columbus, Ohio  43215
Telephone:  (614) 469-3939
mpduffy@jonesday.com
rharmanis@jonesday.com
sgoyal@jonesday.com
ebenshoff@jonesday.com

Jordan M. Walsh (*pro hac vice*)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania  15219
Telephone:  (412) 391-3939
jmwalsh@jonesday.com

*Counsel for Defendants Steven E. Strah, K.*
*Jon Taylor, Jason J. Lisowski, George M.*
*Smart, Paul T. Addison, Michael J. Anderson,*
*Steven J. Demetriou, Julia L. Johnson,*
*Donald T. Misheff, Thomas N. Mitchell,*
*James F. O'Neil III, Christopher D. Pappas,*
*Sandra Pianalto, Luis A. Reyes, Jerry Sue*
*Thornton, and Leslie M. Turner*

Respectfully submitted,

/s/ Paul J. Schumacher
Paul J. Schumacher, Trial Attorney (0014370)
DICKIE, MCCAMEY & CHILCOTE, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio  44114
Telephone:  (216) 685-1827
pschumacher@dmclaw.com

Richard J. Silk, Jr. (0074111)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 W. Broad Street, Suite 1950
Columbus, Ohio  43215
Telephone:  (614) 258-6000
rsilk@dmclaw.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

/s/ Laura H. McNally (with permission)
Douglas M. Mansfield (0063443)
LAPE MANSFIELD NAKASIAN & GIBSON, LLC
9980 Brewster Lane, Suite 150
Powell, Ohio  43065
Telephone:  (614) 763-2316
dmansfield@lmng-law.com

-20-

*/s/ Brian P. O'Connor (with permission)*
Brian P. O'Connor (0086646)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio  45202
Telephone:  (513) 721-4450
bpo@santenhughes.com

Preston Burton (*pro hac vice*)
Adam Miller (*pro hac vice*)
Jill Winter (*pro hac vice*)
Whitney Alcorn (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C.  20037
Telephone:  (202) 349-8000
pburton@orrick.com
adam.miller@orrick.com
jwinter@orrick.com
walcorn@orrick.com

*Counsel for Defendant Donald R.
Schneider*

*/s/ James E. Arnold (with permission)*
James E. Arnold (0037712)
Gerhardt A. Gosnell II (0064919)
ARNOLD & CLIFFORD LLP
115 W. Main St., Fourth Floor
Columbus, Ohio  43215
Telephone:  (614) 460-1600
jarnold@arnlaw.com
ggosnell@arnlaw.com

Veronica E. Callahan (*pro hac vice*)
Aaron F. Miner (*pro hac vice*)
Yiqing Shi (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York  10019
Telephone:  (212) 836-8000
aaron.miner@arnoldporter.com
veronica.callahan@arnoldporter.com
yiqing.shi@arnoldporter.com

Michael L. Kichline (*pro hac vice*)
Eric W. Sitarchuk (*pro hac vice*)
Laura H. McNally (*pro hac vice*)
Karen Pieslak Pohlmann (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, Pennsylvania  19103
Telephone:  (215) 963-5000
michael.kichline@morganlewis.com
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

*Counsel for Defendant Dennis M. Chack*

*/s/ Derek P. Hartman (with permission)*
Derek P. Hartman (0087869)
CAVITCH FAMILO & DURKIN CO., L.P.A
1300 East Ninth Street, 20th Floor
Cleveland, Ohio  44114
Telephone:  (216) 621-7860
dhartman@cavitch.com

David L. Axelrod (*pro hac vice*)
M. Norman Goldberger (*pro hac vice*)
Laura E. Krabill (*pro hac vice*)
Hannah L. Welsh (*pro hac vice*)
Erin K. Fountaine (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103
Telephone:  (215) 665-8500
axelrodd@ballardspahr.com
goldbergerm@ballardspahr.com
krabilll@ballardspahr.com
welshh@ballardspahr.com
fountainee@ballardspahr.com

*Counsel for Defendant James F. Pearson*

*/s/ John C. Fairweather (with permission)*
John C. Fairweather (0018216)
ROETZEL & ANDRESS, LPA
222 South Main Street, Suite 400
Akron, Ohio  44308
Telephone:  (330) 376-2700
jfairweather@ralaw.com

-21-

*Counsel for Defendant Leila L. Vespoli*

*/s/ Andrew P. Guran (with permission)*
Andrew P. Guran (0090649)
VORYS, SATER, SEYMOUR & PEASE LLP
50 South Main Street, Suite 1200
Akron, Ohio  44308
Telephone:  (330) 208-1000
apguran@vorys.com


Victor A. Walton, Jr. (0055241)
Joseph M. Brunner (0085485)
VORYS, SATER, SEYMOUR & PEASE LLP
Great American Tower
301 East Fourth Street, Suite 3500
Cincinnati, Ohio  45202
Telephone:  (513) 723-4000
vawalton@vorys.com
jmbrunner@vorys.com


Emily J. Taft (0098037)
VORYS, SATER, SEYMOUR & PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216
Telephone:  (614) 464-5432
ejtaft@vorys.com

*Counsel for Defendant John Judge*

David Sporar (0086640)
ROETZEL & ANDRESS, LPA
600 Superior Avenue East, Suite 1600
Cleveland, Ohio  44114
Telephone:  (216) 623-0150
dsporar@ralaw.com


Stephen S. Scholes (*pro hac vice*)
Paul M.G. Helms (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Chicago, Illinois  60606
Telephone:  (312) 372-2000
sscholes@mwe.com
phelms@mwe.com
eotoole@mwe.com


*Counsel for Defendant Robert P. Reffner*

*/s/ Robert W. Trafford (with permission)*
Robert W. Trafford, Trial Attorney (0040270)
David S. Bloomfield, Jr. (0068158)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, Ohio  43215
Telephone:  (614) 227-2000
rtrafford@porterwright.com
dbloomfield@porterwright.com


Brian S. Weinstein (*pro hac vice*)
Eric M. Kim (*pro hac vice*)
Joshua N. Shinbrot (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
brian.weinstein@davispolk.com
eric.kim@davispolk.com
joshua.shinbrot@davispolk.com


*Counsel for Defendants Barclays Capital Inc.,
BofA Securities, Inc., Citigroup Global
Markets Inc., J.P. Morgan Securities LLC,
Morgan Stanley & Co. LLC, Mizuho
Securities USA LLC, PNC Capital Markets
LLC, RBC Capital Markets, LLC, Santander*

-22-

*Investment Securities Inc., Scotia Capital (USA) Inc., SMBC Nikko Securities America, Inc., CIBC World Markets Corp., KeyBanc Capital Markets Inc., TD Securities (USA) LLC, U.S. Bancorp Investments, Inc., and MUFG Securities Americas Inc.*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

/s/ Paul J. Schumacher
Paul J. Schumacher, Trial Attorney (0014370)
DICKIE, MCCAMEY & CHILCOTE, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio  44114
Telephone:  (216) 685-1827
pschumacher@dmclaw.com

Richard J. Silk, Jr. (0074111)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 W. Broad Street, Suite 1950,
Columbus, Ohio  43215
Telephone:  (614) 258-6000
rsilk@dmclaw.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone:  (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

-24-

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

/s/ Paul J. Schumacher
Paul J. Schumacher, Trial Attorney (0014370)
DICKIE, MCCAMEY & CHILCOTE, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio 44114
Telephone: (216) 685-1827
pschumacher@dmclaw.com

Richard J. Silk, Jr. (0074111)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 W. Broad Street, Suite 1950,
Columbus, Ohio 43215
Telephone: (614) 258-6000
rsilk@dmclaw.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*