# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | No. 2:20-cv-03785-ALM-KAJ |
| | CLASS ACTION |
| This Document Relates To: | Judge Algenon L. Marbley |
| ALL ACTIONS | Magistrate Judge Kimberly A. Jolson |
| MFS Series Trust I, et al., | Case No. 2:20-cv-03785-ALM-KAJ |
| Plaintiff, | |
| vs. | |
| FirstEnergy Corp., et al., | |
| Defendant. | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | Case No. 2:20-cv-03785-ALM-KAJ |
| Plaintiffs, | |
| vs. | |
| FirstEnergy Corp., et al., | |
| Defendant. | |

**DECLARATION OF JAMES F. O'NEIL, III**

I, James F. O'Neil, III, hereby declare under penalty of perjury as follows:

1. I am an independent director serving on FirstEnergy Corp.'s Board of Directors. I have been a member of the Board since January 17, 2017.

2. I am currently the Chair of the Board's Compensation Committee and have been since May 2019, and I have been a member of the Board's Audit Committee since May 2022. I was also a member of the Audit Committee from May 2017 to May 2019. I previously served as the Chair of the Board's Audit Committee from May 2018 to May 2019, and I was a member of the Board's Operations and Safety Oversight Committee (formerly, the Nuclear Committee) from May 2017 to May 2022.

## I. Householder Criminal Complaint and the Legal Actions Against FirstEnergy

3. On July 21, 2020, the United States Department of Justice (DOJ) arrested former Speaker of the Ohio House of Representatives Larry Householder and unsealed a criminal complaint (the "Householder Complaint") alleging that Householder was a member of a criminal enterprise that helped pass Ohio House Bill 6, known as H.B. 6, in exchange for payments from an unnamed company. The Householder Complaint alleged that senior officers of that unnamed company had participated in this criminal enterprise. This was brought to the attention of directors rapidly because FirstEnergy management, as well as financial analysts and the media, understood that the unnamed company referred to FirstEnergy.

4. The same day, FirstEnergy received grand jury subpoenas in connection with the DOJ's criminal investigation into Householder and the alleged criminal enterprise concerning H.B. 6.

5. After the DOJ unsealed the Householder Complaint, Board members and FirstEnergy anticipated that the Company would face government investigations, civil litigation, and regulatory proceedings related to the Company's role in the alleged events described in the

-2-

Householder Complaint. By the next day, July 22, 2020, the price of FirstEnergy's common stock had declined by 34%. Board members and FirstEnergy anticipated that the drop in FirstEnergy's stock price would trigger the filing of claims under the federal securities laws, as commonly occurs when public companies experience sharp stock declines following negative news.

6. Numerous legal proceedings were commenced within weeks of the unsealing of the Householder Complaint, including this lawsuit and the lawsuits described below, all of which stemmed from the allegations in the Householder Complaint. Some examples of these legal proceedings are described below.

7. On July 26, 2020, stockholders of FirstEnergy filed a shareholder derivative action against FirstEnergy directors and officers in Ohio state court, alleging, among other things, breaches of fiduciary duty.

8. On July 27, 2020, utilities customers of FirstEnergy filed a class action asserting civil Racketeer Influenced and Corrupt Organizations Act claims against FirstEnergy in federal court.

9. On July 28, 2020, a stockholder of FirstEnergy filed a class action lawsuit asserting that FirstEnergy and its senior executives violated federal securities fraud laws, which I understand was the first-filed complaint in this action. On July 28, 2020, I also received a notification that FirstEnergy had instituted a litigation hold for documents related to the allegations in the Householder Complaint.

10. By August 7, 2020, as FirstEnergy publicly disclosed, eight civil lawsuits were already pending against FirstEnergy in state and federal courts relating to the allegations in the Householder Complaint and the DOJ's investigation into H.B. 6.

11. On August 10, 2020, FirstEnergy received a formal order of investigation from the U.S. Securities and Exchange Commission (SEC) relating to the allegations in the Householder Complaint.

## II. The Squire Investigation for the Special Investigation Committee and the Independent Review Committee

12. In late July 2020, the Board held several special meetings to discuss the Company's response to the DOJ criminal investigation and litigation filed against FirstEnergy.

13. By July 25, 2020, the Board had decided to retain Squire Patton Boggs LLP to conduct an internal investigation into the allegations in the Householder Complaint. The Board chose Squire because it did not regularly engage in legal work for FirstEnergy and because Squire had substantial experience conducting internal investigations. Joseph Walker, the lead partner on the Squire investigation team, was a former criminal prosecutor with the DOJ and, as a partner at Squire, had led numerous internal investigations for large institutions.

14. Shortly thereafter, on or around July 28, 2020, the Board authorized the formation of a Special Investigation Committee ("SIC").

15. The Board formed the SIC to provide independent oversight over Squire's internal investigation of the allegations in the Householder Complaint.

16. The members of the SIC were all independent directors (*i.e.*, directors who were not part of FirstEnergy management). I was one of the ten independent directors who were members of the SIC.

17. On or around July 28, 2020, the SIC formally engaged Squire to conduct the internal investigation. The SIC met frequently with Squire to discuss Squire's investigative findings, legal analyses, and assessments of potential criminal and civil liability.

18. On or around September 8, 2020, after the SIC had completed its work on the initial phase of the internal investigation, the Board formed the Independent Review Committee ("IRC").

19. Like the SIC, the IRC was exclusively comprised of independent directors, and I was one of the twelve independent directors that comprised the IRC. The IRC was formed to provide ongoing independent oversight of counsel's investigative work and ongoing review and assessment of the legal risks associated with the allegations in the Householder Complaint, the DOJ criminal investigation, the SEC investigation, and other pending and anticipated legal proceedings.

20. The IRC engaged Squire to continue its investigative work and to advise the IRC on the risks described above.

21. The IRC met frequently with Mr. Walker and other Squire attorneys to discuss Squire's investigative findings, legal analyses, and assessments of potential criminal and civil liability. Squire continued to advise the IRC until at least June 2021.

### III. The Jones Day Investigation for FirstEnergy

22. On or around July 22, 2020, FirstEnergy retained Jones Day to advise the Company on its response to the DOJ criminal investigation and to conduct an internal investigation into the allegations in the Householder Complaint.

23. Stephen Sozio led the Jones Day team. Prior to joining Jones Day, Mr. Sozio spent ten years as an investigating prosecutor for the Organized Crime Strike Force Unit of the U.S. Attorney's Office for the Northern District of Ohio. As a partner at Jones Day, Mr. Sozio had conducted numerous internal investigations in response to federal and state criminal and regulatory investigations.

24. The Jones Day internal investigation was independent of and separate from the Squire investigation.

25. FirstEnergy also retained Jones Day to represent the Company in many of the lawsuits related to the allegations in the Householder Complaint and to advise the Company on its response to the SEC investigation.

### IV. The Reasons for the Investigations

26. I understand that Plaintiffs in this action, plaintiffs in other related lawsuits against FirstEnergy, and two defendants in this action (Charles Jones, FirstEnergy's former Chief Executive Officer, and Michael Dowling, FirstEnergy's former Senior Vice President of External Affairs) (together, "Movants") have claimed that the internal investigations by FirstEnergy and its Board committees were not undertaken because of the DOJ criminal investigation and the pending and anticipated litigation, but that instead the investigations were undertaken for various business reasons.

27. This is not correct. Squire was retained by the SIC and the IRC, and Jones Day was retained by FirstEnergy, to conduct internal investigations in response to the DOJ criminal investigation and the pending and anticipated litigation matters described above, which include this securities class action. These investigations were not undertaken to appease PwC or because of concerns about raising capital, as I understand Movants suggest.

28. As the internal investigations unfolded, the information and facts that Squire and Jones Day discovered through their investigative work were used to help inform employment decisions, and those firms also provided legal advice to assist the IRC in making legally sound employment decisions. But any employment-related issues were ancillary and not the primary reason for engaging these firms or for their investigatory work.

29. Were it not for the DOJ criminal investigation and pending litigation in late July 2020—and further anticipated litigation and regulatory proceedings, which later materialized—the internal investigations would not have been undertaken. The internal investigations were

undertaken because the Company was directly responding to the very significant legal risk it suddenly faced and that rapidly expanded over the course of a few days, and then continued to grow over the coming weeks and months. FirstEnergy's independent board committees and management relied heavily on the work and expertise of Squire and Jones Day to navigate and manage these risks.

30. During the internal investigations, neither Squire nor Jones Day was authorized to waive attorney-client privilege or work product protection. Squire and Jones Day were authorized to respond to inquiries from FirstEnergy's auditor, PricewaterhouseCoopers ("PwC"), but without waiver of attorney-client privilege or work product protection. As an independent auditor, PwC is required to assess the adequacy of the Company's internal controls over financial reporting and the Company's public disclosures on those matters in its financial statements. PwC's evaluation was necessarily intertwined with matters raised in the DOJ criminal investigation related to H.B. 6 and the ensuing litigation. The Board committees and FirstEnergy understood that responses to PwC's inquiries could require confidential disclosure to PwC of information uncovered in the investigations or, if necessary, confidential disclosure of attorney work product from the investigations, without waiving work product protection.

Executed on July 26, 2023.

/s/ *[signature]*
James F. O'Neil, III

# Exhibit 2

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) No. 2:20-cv-03785-ALM-KAJ <br> ) <br> ) CLASS ACTION <br> ) |
| This Document Relates To: <br><br> ALL ACTIONS | ) Judge Algenon L. Marbley <br> ) Magistrate Judge Kimberly A. Jolson <br> ) |
| MFS Series Trust I, et al., <br><br> Plaintiff, <br><br> vs. <br><br> FirstEnergy Corp., et al., <br><br> Defendant. | ) Case No. 2:20-cv-03785-ALM-KAJ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FirstEnergy Corp., et al., <br><br> Defendant. | ) Case No. 2:20-cv-03785-ALM-KAJ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF JAMES F. O'NEIL, III**

I, James F. O'Neil, III, hereby declare under penalty of perjury that the following is true and correct:

1. I am an independent director serving on FirstEnergy Corp.'s Board of Directors. I have been a member of the Board since January 17, 2017.

2. I am currently the Chair of the Board's Compensation Committee and have been since May 2019, and I have been a member of the Board's Audit Committee since May 2022. I was also a member of the Audit Committee from May 2017 to May 2019. I previously served as the Chair of the Board's Audit Committee from May 2018 to May 2019, and I was a member of the Board's Operations and Safety Oversight Committee (formerly, the Nuclear Committee) from May 2017 to May 2022.

## I. Householder Criminal Complaint and the Legal Actions Against FirstEnergy

3. On July 21, 2020, the United States Department of Justice (DOJ) arrested former Speaker of the Ohio House of Representatives Larry Householder and unsealed a criminal complaint (the "Householder Complaint") alleging that Householder was a member of a criminal enterprise that helped pass Ohio House Bill 6, known as H.B. 6, in exchange for payments from an unnamed company. The Householder Complaint alleged that senior officers of that unnamed company had participated in this criminal enterprise. This was brought to the attention of directors rapidly because FirstEnergy management, as well as financial analysts and the media, understood that the unnamed company referred to FirstEnergy.

4. The same day, FirstEnergy received grand jury subpoenas in connection with the DOJ's criminal investigation into Householder and the alleged criminal enterprise concerning H.B. 6.

5. After the DOJ unsealed the Householder Complaint, Board members and FirstEnergy anticipated that the Company would face government investigations, civil litigation,

and regulatory proceedings related to the Company's role in the alleged events described in the Householder Complaint. By the next day, July 22, 2020, the price of FirstEnergy's common stock had declined by 34%. Board members and FirstEnergy anticipated that the drop in FirstEnergy's stock price would trigger the filing of claims under the federal securities laws, as commonly occurs when public companies experience sharp stock declines following negative news.

6. Numerous legal proceedings were commenced within weeks of the unsealing of the Householder Complaint, including this lawsuit and the lawsuits described below, all of which stemmed from the allegations in the Householder Complaint. Some examples of these legal proceedings are described below.

7. On July 26, 2020, stockholders of FirstEnergy filed a shareholder derivative action against FirstEnergy directors and officers in Ohio state court, alleging, among other things, breaches of fiduciary duty.

8. On July 27, 2020, utilities customers of FirstEnergy filed a class action asserting civil Racketeer Influenced and Corrupt Organizations Act claims against FirstEnergy in federal court.

9. On July 28, 2020, a stockholder of FirstEnergy filed a class action lawsuit asserting that FirstEnergy and its senior executives violated federal securities fraud laws, which I understand was the first-filed complaint in this action. On July 28, 2020, I also received a notification that FirstEnergy had instituted a litigation hold for documents related to the allegations in the Householder Complaint.

10. By August 7, 2020, as FirstEnergy publicly disclosed, eight civil lawsuits were already pending against FirstEnergy in state and federal courts relating to the allegations in the Householder Complaint and the DOJ's investigation into H.B. 6.

11. On August 10, 2020, FirstEnergy received a formal order of investigation from the U.S. Securities and Exchange Commission (SEC) relating to the allegations in the Householder Complaint.

**II. The Squire Investigation for the Special Investigation Committee and the Independent Review Committee**

12. In late July 2020, the Board held several special meetings to discuss the Company's response to the DOJ criminal investigation and litigation filed against FirstEnergy.

13. By July 25, 2020, the Board had decided to retain Squire Patton Boggs LLP to conduct an internal investigation into the allegations in the Householder Complaint. The Board chose Squire because it did not regularly engage in legal work for FirstEnergy and because Squire had substantial experience conducting internal investigations. Joseph Walker, the lead partner on the Squire investigation team, was a former criminal prosecutor with the DOJ and, as a partner at Squire, had led numerous internal investigations for large institutions.

14. Shortly thereafter, on or around July 28, 2020, the Board authorized the formation of a Special Investigation Committee ("SIC").

15. The Board formed the SIC to provide independent oversight over Squire's internal investigation of the allegations in the Householder Complaint.

16. The members of the SIC were all independent directors (*i.e.*, directors who were not part of FirstEnergy management). I was one of the ten independent directors who were members of the SIC.

17. On or around July 28, 2020, the SIC formally engaged Squire to conduct the internal investigation. The SIC met frequently with Squire to discuss Squire's investigative findings, legal analyses, and assessments of potential criminal and civil liability.

18. On or around September 8, 2020, after the SIC had completed its work on the initial phase of the internal investigation, the Board formed the Independent Review Committee ("IRC").

19. Like the SIC, the IRC was exclusively comprised of independent directors, and I was one of the twelve independent directors that comprised the IRC. The IRC was formed to provide ongoing independent oversight of counsel's investigative work and ongoing review and assessment of the legal risks associated with the allegations in the Householder Complaint, the DOJ criminal investigation, the SEC investigation, and other pending and anticipated legal proceedings.

20. The IRC engaged Squire to continue its investigative work and to advise the IRC on the risks described above.

21. The IRC met frequently with Mr. Walker and other Squire attorneys to discuss Squire's investigative findings, legal analyses, and assessments of potential criminal and civil liability. Squire continued to advise the IRC until at least June 2021.

### III. The Jones Day Investigation for FirstEnergy

22. On or around July 22, 2020, FirstEnergy retained Jones Day to advise the Company on its response to the DOJ criminal investigation and to conduct an internal investigation into the allegations in the Householder Complaint.

23. Stephen Sozio led the Jones Day team. Prior to joining Jones Day, Mr. Sozio spent ten years as an investigating prosecutor for the Organized Crime Strike Force Unit of the U.S. Attorney's Office for the Northern District of Ohio. As a partner at Jones Day, Mr. Sozio had conducted numerous internal investigations in response to federal and state criminal and regulatory investigations.

24. The Jones Day internal investigation was independent of and separate from the Squire investigation.

25. FirstEnergy also retained Jones Day to represent the Company in many of the lawsuits related to the allegations in the Householder Complaint and to advise the Company on its response to the SEC investigation.

### IV. The Reasons for the Investigations

26. I understand that Plaintiffs in this action, plaintiffs in other related lawsuits against FirstEnergy, and two defendants in this action (Charles Jones, FirstEnergy's former Chief Executive Officer, and Michael Dowling, FirstEnergy's former Senior Vice President of External Affairs) (together, "Movants") have claimed that the internal investigations by FirstEnergy and its Board committees were not undertaken because of the DOJ criminal investigation and the pending and anticipated litigation, but that instead the investigations were undertaken for various business reasons.

27. This is not correct. Squire was retained by the SIC and the IRC, and Jones Day was retained by FirstEnergy, to conduct internal investigations in response to the DOJ criminal investigation and the pending and anticipated litigation matters described above, which include this securities class action. These investigations were not undertaken to appease PwC or because of concerns about raising capital, as I understand Movants suggest.

28. As the internal investigations unfolded, the information and facts that Squire and Jones Day discovered through their investigative work were used to help inform employment decisions, and those firms also provided legal advice to assist the IRC in making legally sound employment decisions. But any employment-related issues were ancillary and not the primary reason for engaging these firms or for their investigatory work.

29. Were it not for the DOJ criminal investigation and pending litigation in late July 2020—and further anticipated litigation and regulatory proceedings, which later materialized— the internal investigations would not have been undertaken. The internal investigations were

undertaken because the Company was directly responding to the very significant legal risk it suddenly faced and that rapidly expanded over the course of a few days, and then continued to grow over the coming weeks and months. FirstEnergy's independent board committees and management relied heavily on the work and expertise of Squire and Jones Day to navigate and manage these risks.

30. During the internal investigations, neither Squire nor Jones Day was authorized to waive attorney-client privilege or work product protection. Squire and Jones Day were authorized to respond to inquiries from FirstEnergy's auditor, PricewaterhouseCoopers ("PwC"), but without waiver of attorney-client privilege or work product protection. As an independent auditor, PwC is required to assess the adequacy of the Company's internal controls over financial reporting and the Company's public disclosures on those matters in its financial statements. PwC's evaluation was necessarily intertwined with matters raised in the DOJ criminal investigation related to H.B. 6 and the ensuing litigation. The Board committees and FirstEnergy understood that responses to PwC's inquiries could require confidential disclosure to PwC of information uncovered in the investigations or, if necessary, confidential disclosure of attorney work product from the investigations, without waiving work product protection.

31. On July 26, 2023, I executed a declaration identical to this one, except for this paragraph and the two sentences following this paragraph, as well as the lead-in clause to the declaration. I declared all statements in my July 26, 2023 declaration to be made "under penalty of perjury," which I understood to mean that I was declaring all of those statements to be true and correct. All of the statements in my July 26, 2023 declaration were true and correct when made, and remain true and correct today.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Houston, Texas on December 7, 2023.

                                                                          James F. O'Neil, III

-8-