Page 1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
2                  EASTERN DIVISION
3                   - - - - -
4    IN RE: FIRSTENERGY CORP        ) CIVIL ACTION NO.
            SECURITIES LITIGATION  ) 2:20-cv-3785
5                                   )
                                     )
6    THIS DOCUMENT RELATES TO:      )
     ALL ACTIONS                    )
7
8
9
10     Remote Status Conference held before
            Special Counsel Shawn Judge
11
12
13
14        Thursday, September 28, 2023
                11:00 a.m. EDT
15
16
17
18
19
20     Reporter:  Kristin Wegryn, RMR, CRR
21
22
23             Job No. 6128283
24
25

```
 1   REMOTE APPEARANCES:
 2       On behalf of Class Plaintiffs:
             JASON A. FORGE, ESQ.
 3           KEVIN S. SCIARANI, ESQ.
             HILARY STAKEM, ESQ.
 4           STEVEN PEPICH, ESQ.
             Robbins Geller Rudman & Dowd LLP
 5           655 West Broadway
             Suite 1900
 6           San Diego, California 92101
             619.231.1058
 7           jforge@rgrdlaw.com
             ksciarani@rgrdlaw.com
 8           hstakem@rgrdlaw.com
             stevep@rgrdlaw.com
 9               and
             THOMAS EGLER, ESQ.
10           Robbins Geller Rudman & Dowd LLP
             3424 Peachtree Road, NE
11           Suite 1650
             Atlanta, Georgia 30326
12           619.231.1058
             tegler@rgrdlaw.com
13               and
             ANDREW W. HUTTON, ESQ.
14           Robbins Geller Rudman & Dowd LLP
             58 South Service Road
15           Suite 200
             Melville, New York 11747
16           619.231.1058
             dhutton@rgrdlaw.com
17               and
             JOSEPH F. MURRAY, ESQ.
18           Murray Murphy Moul + Basil LLP
             1114 Dublin Road
19           Columbus, Ohio 43215
             614.488.0400
20           murray@mmmb.com
21       On behalf of Defendant Dennis M. Chack:
             MICHAEL K. KICHLINE, ESQ.
22           KAREN POHLMANN, ESQ.
             Morgan, Lewis & Bockius LLP
23           1701 Market Street
             Philadelphia, Pennsylvania 19103
24           215.963.5000
             michael.kichline@morganlewis.com
25           karen.pohlmann@morganlewis.com
```

```
                                                    Page 3
 1    REMOTE APPEARANCES:  (Continued)
 2       On behalf of Defendant Dennis M. Chack:
               DOUGLAS M. MANSFIELD, ESQ.
 3             Lape Mansfield Nakasian & Gibson, LLC
               9980 Brewster Lane
 4             Suite 150
               Powell, Ohio 43065
 5             614.763.2316
               dmansfield@lmng-law.com
 6
 7       On behalf of Direct Action Plaintiffs:
               MICHAEL J. MIARMI, ESQ.
 8             Lieff Cabraser Heimann & Bernstein, LLP
               250 Hudson Street
 9             8th Floor
               New York, New York 10013
10             212.355.9500
               mmiarmi@lchb.com
11                  and
               RICHARD HEIMANN, ESQ.
12             Lieff Cabraser Heimann & Bernstein, LLP
               275 Battery Street
13             29th Floor
               San Francisco, California 94111
14             415.956.1000
               rheimann@lchb.com
15                  and
               MATTHEW L. FORNSHELL, ESQ.
16             Ice Miller LLP
               250 West Street
17             Columbus, Ohio 43214
               614.462.2319
18             matthew.fornshell@icemiller.com
19       On behalf of Defendant FirstEnergy Corp:
               DAVID M.J. REIN, ESQ.
20             TASHA N. THOMPSON, ESQ.
               ROBERT J. GIUFFRA, JR., ESQ.
21             SHARON L. NELLES, ESQ.
               Sullivan & Cromwell LLP
22             125 Broad Street
               New York, New York 10004
23             212.558.4000
               reind@sullcrom.com
24             thompsontas@sullcrom.com
               giuffrar@sullcrom.com
25             nelless@sullcrom.com
```

```
                                                Page 4
 1   REMOTE APPEARANCES: (Continued)
 2       On behalf of Defendant FirstEnergy Corp:
             THOMAS D. WARREN, ESQ.
 3           Warren Terzian LLP
             30799 Pinetree Road
 4           Suite 345
             Pepper Pike, Ohio 44124
 5           216.304.4970
             tom.warren@warrenterzian.com
 6
 7       On behalf of Defendant Donald R. Schneider:
             BRIAN P. O'CONNOR, ESQ.
 8           Santen & Hughes
             600 Vine Street
 9           Suite 700
             Cincinnati, Ohio 45202
10           513.721.4450
             bpo@santenhughes.com
11                 and
             PRESTON BURTON, ESQ.
12           Orrick, Herrington & Sutcliffe LLP
             1152 15th Street NW
13           Columbia Center
             Washington, D.C. 20005
14           202.349.8065
             pburton@orrick.com
15
16       On behalf of Defendant Robert P. Reffner:
             JOHN C. FAIRWEATHER, ESQ.
17           Brouse McDowell
             388 South Main Street
18           Suite 500
             Akron, Ohio 44311
19           330.535.5711
             jfairweather@brouse.com
20
21
22
23
24
25
```

```
                                                    Page 5

 1    REMOTE APPEARANCES: (Continued)
 2        On behalf of Defendant Charles E. Jones:
                CAROLE RENDON, ESQ.
 3              DANIEL R. WARREN, ESQ.
                RACHAEL L. ISRAEL, ESQ.
 4              DOUGLAS L. SHIVELY, ESQ.
                Baker & Hostetler LLP
 5              127 Public Square
                Suite 2000
 6              Cleveland, Ohio 44114
                216.621.0200
 7              crendon@bakerlaw.com
                dwarren@bakerlaw.com
 8              risrael@bakerlaw.com
                dshively@bakerlaw.com
 9
10        On behalf of Defendant James E. Pearson:
                DAVID L. AXELROD, ESQ.
11              TIMOTHY D. KATSIFF, ESQ.
                Ballard Spahr LLP
12              1735 Market Street
                51st Floor
13              Philadelphia, Pennsylvania 19103
                215.665.8500
14              axelrodd@ballardspahr.com
                katsifft@ballardspahr.com
15
16        On behalf of Defendant John Judge:
                ANDREW P. GURAN, ESQ.
17              Vorys, Sater, Seymour and Pease LLP
                50 South Main Street
18              Suite 1200
                Akron, Ohio 44308
19              330.208.1000
                apguran@vorys.com
20
21        On behalf of Defendant Donald R. Schneider:
                EMILY J. TAFT, ESQ.
22              Vorys Sater Seymour and Pease LLP
                52 East Gay Street
23              Columbus, Ohio 43215
                614.464.6250
24              ejtaft@vorys.com
25
```

```
 1   REMOTE APPEARANCES: (Continued)
 2       On behalf of Defendants Jason J. Lisowski,
         George M. Smart, Paul T. Addison, Michael J.
 3       Anderson, Steven J. Demetriou, Julia L.
         Johnson, Donald T. Misheff, Thomas N.
 4       Mitchell, James F. O'Neil III, Christopher D.
         Pappas, Sandra Pianalto, Luis A. Reyes, Jerry
 5       Sue Thornton, Leslie M. Turner, Steven E.
         Strah, and K. John Taylor:
 6             MARJORIE P. DUFFY, ESQ.
               Jones Day
 7             325 John H. McConnell Boulevard
               Suite 600
 8             Columbus, Ohio 43215
               614.281.3655
 9             mpduffy@jonesday.com
                   and
10             GEOFFREY J. RITTS, ESQ.
               Jones Day
11             North Point
               901 Lakeside Avenue
12             Cleveland, Ohio 44114
               216.586.3939
13             gjritts@jonesday.com
14       On behalf of Defendant Leila L. Vespoli:
               ANDREW C. JOHNSON, ESQ.
15             Arnold & Porter
               601 Massachusetts Avenue, NW
16             Washington, D.C. 20001
               202.942.5631
17             andrew.johnson@arnoldporter.com
                   and
18             AARON F. MINER, ESQ.
               VERONICA E. CALLAHAN, ESQ.
19             Arnold & Porter
               250 West 55th Street
20             New York, New York 10019
               212.836.7123
21             aaron.miner@arnoldporter.com
               veronica.callahan@arnoldporter.com
22
23
24
25
```

Page 7

```
 1   REMOTE APPEARANCES: (Continued)
 2      On behalf of Defendant Robert Reffner:
             PAUL M.G. HELMS, ESQ.
 3           McDermott Will & Emery LLP
             444 West Lake Street
 4           Suite 4000
             Chicago, Illinois 60606
 5           312.984.5380
             phelms@mwe.com
 6
 7      On behalf of Underwriter Defendants:
             JOSHUA SHINBROT, ESQ.
 8           ERIC M. KIM, ESQ.
             Davis Polk & Wardwell LLP
 9           450 Lexington Avenue
             11th Floor
10           New York, New York 10017
             212.450.3976
11           joshua.shinbrot@davispolk.com
                   and
12           DAVID S. BLOOMFIELD, JR., ESQ.
             ROBERT W. TRAFFORD, ESQ.
13           Porter, Wright, Morris & Arthur LLP
             41 South High Street
14           Suite 2900
             Columbus, Ohio 43215
15           614.227.2000
             dbloomfield@porterwright.com
16           rtrafford@porterwright.com
17   On behalf of Defendant Michael Dowling:
             JOHN A. FAVRET III, ESQ.
18           JOHN MCCAFFREY, ESQ.
             Tucker Ellis LLP
19           950 Main Avenue
             Suite 1100
20           Cleveland, Ohio 44113
             216.696.2678
21           john.favret@tuckerellis.com
             john.mccaffrey@tuckerellis.com
22
23
24
25
```

Page 8

1    REMOTE APPEARANCES: (Continued)
2       On behalf of Defendant FirstEnergy:
              MICHAEL KOSLEN, ESQ.
3             FirstEnergy Service Company
              76 South Main Street
4             Akron, Ohio 44308
              330.690.4496
5             koslenm@firstenergy.com
6                   - - - - -
7    ALSO PRESENT:
8             Erika Ostrowski, In-House Counsel
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1              P R O C E E D I N G S
 2           MR. FORGE:  And I just want to make
 3  sure -- I don't want to speak out of turn.  Do
 4  you want me to address the confidentiality
 5  designation issue, or are we going to wait on
 6  that one until -- I don't know who is present.
 7           MR. JUDGE:  Why don't we wait on that
 8  one for a period to see how much time we have to
 9  see who is present and to see if we need
10  briefings.  There was a request for some
11  additional briefing on it that we could discuss
12  at the end.
13           MR. FORGE:  Okay.
14           MR. JUDGE:  If we have time, I'd like to
15  get to it a little bit today, but I view that as
16  a secondary issue of sorts.
17           So it's September 28th, 2023.  It's
18  11:18.  We're currently on the record.  We're in
19  the matter of In Re: FirstEnergy Corp Securities
20  Litigation, case number 2:20-cv-3785.  It's a
21  proceeding before the Special Master Shawn Judge
22  in which we're going to entertain an oral
23  argument in some of the various pending motions
24  to compel.
25           Plaintiff, please identify yourself for
```

1    purposes of the record and if you would proceed.

2         MR. FORGE:  Thank you.  This is Jason

3    Forge on behalf of the plaintiffs.

4         The first motion I want to address is

5    the motion concerning the FirstEnergy internal

6    investigation.

7         As we laid out in the papers, the

8    essence of the issue is twofold:  Number one, it

9    is apparent that the -- at least the initial

10   internal investigation was directed for a

11   primarily business purpose.  Specifically,

12   FirstEnergy delayed releasing its financial

13   results for the second quarter of 2020 because of

14   the arrests of Larry Householder and others.

15        We have testimony from multiple

16   witnesses in addition to documents that confirm

17   that one of the essential prerequisites to

18   issuing that 10-Q was getting sign-off from the

19   outside auditor, PricewaterhouseCoopers, which

20   I'll refer to as PwC.

21        It is, it is apparent from the scope of

22   the investigation and the duration of the

23   investigation -- I'm using "investigation" in

24   this context in air quotes -- that the principal

25   purpose was not to get to the bottom of what

1    happened, not to prepare for litigation, but to

2    assuage PwC.

3            And I say that for multiple reasons:

4    First and foremost, there's -- just on practical

5    terms, there's no way an investigation into these

6    issues could be completed in a matter of a few

7    weeks, which is what FirstEnergy and its outside

8    counsel, Squire Patton, represented to PwC.

9            After only a few weeks, they told PwC

10   the investigation was complete.  And the only

11   additional information that they may have going

12   forward would be information provided by the

13   government.

14           They revealed extensive investigation

15   results and work product to PwC for the purpose

16   of getting that comfort assurance from PwC.  And

17   when I say that, I refer to witness interviews,

18   summaries of witness interviews, attorney

19   conclusions regarding whether there was actually

20   any unlawful conduct.

21           So the disclosure to PwC was nearly

22   complete.  I say "nearly" because there was an

23   exception of I believe seven documents, just a

24   handful of documents, that that was all that was

25   withheld from PwC.  But even that aspect, the

1    fact that they withheld documents from PwC,
2    demonstrates that PwC was not part of this actual
3    endeavor.  They were not assisting the
4    investigators; they were not assisting
5    FirstEnergy.  If they were, then FirstEnergy
6    wouldn't have withheld any documents from PwC as
7    being privileged.  They would have been part of
8    the privilege, but they weren't.
9            And so at least as to this first part of
10   the investigation, the extent of the disclosure
11   to PwC and the purpose both speak to a lack of
12   attorney-client privilege, a lack of work product
13   privilege.  And if there ever was one, a waiver
14   as to both.
15           I'm happy to move on to the next -- to
16   the broader scope, but I want to pause here in
17   case the Special Master has any questions for me.
18           MR. JUDGE:  Please proceed.
19           MR. FORGE:  Okay.  As we move on to the
20   broader and more ongoing internal investigation,
21   we are, once again, confronted by the reality
22   that FirstEnergy -- there's, there's a "but for"
23   test here when we're talking about whether it's a
24   primarily legal purpose.
25           FirstEnergy has to establish -- and it

1    is their burden.  They have to establish that

2    they would not have conducted either the initial

3    investigation, which is primarily retained and

4    listed by the board, or the broader investigation

5    involving Jones Day, they would not have done

6    either investigation but for the threat of

7    litigation.  And they simply have failed to do

8    that.  And, once again, I think we're aided by

9    common sense when we're assessing that assertion.

10           This was and, frankly, remains a huge

11   public scandal.  There's no question.  I think

12   everyone would agree that the publicity

13   surrounding the arrests of Larry Householder and

14   others was front-page news for days and remained

15   news for months.  And, as Mr. Jones's counsel

16   points out in a different context, it remains

17   front-page news from time to time today.

18           So FirstEnergy, whose business revolves

19   around dealing with either local, state, or

20   federal regulators, politicians, has to be keenly

21   aware and keenly concerned with the perception of

22   their corporate culture, with the perception of

23   the way they do business.

24           So the notion that if they had just been

25   given immunity from all civil and criminal suits

1 on day two, on July 21st, 2020, the notion that
2 they would have just shut down or not even
3 started any investigations, it just isn't
4 realistic.
5          They had to conduct an internal
6 investigation.  They had to determine who needed
7 to be terminated, who could be retained.  These
8 were HR purposes.  Yes, these are extreme HR
9 circumstances, but they're still HR purposes,
10 which the cases hold uniformly are business
11 purposes.
12          They also still have their SEC filings
13 that they have to deal with.  That's also a
14 business purpose.  So investors are also
15 concerned about this.  They have to obtain or
16 secure outside access to capital.  That is also a
17 business purpose.
18          They simply have failed to establish
19 that.  But for the threat of litigation, they
20 wouldn't have cared at all about public
21 perception, regulator perception, investor
22 perception, or access to capital.  And they can't
23 establish those things.
24          So the investigation certainly had a
25 dual purpose.  We are not -- I'm not here to tell

1    you or try to convince you that the investigation

2    wasn't related to legal purposes.  It certainly

3    was.  But it does not pass the "but for" test.

4            Even if it did, however, the waivers,

5    the disclosures to the government here -- first

6    of all, they committed to the government to

7    provide any information the government wanted.

8    Yes, they had a line in the Deferred Prosecution

9    Agreement that they aren't waiving their

10   privilege, but they simultaneously agreed to

11   provide the government with any information they

12   wanted, including information about the

13   investigation.

14           Now, the fact that the government may or

15   may not have taken them up on that offer really

16   is not the issue.  We're talking about privilege,

17   because one of the elements for privilege is that

18   the confidentiality has to be all reasonable

19   steps have to be taken to maintain the

20   confidentiality of the privilege.  Well, it's the

21   opposite of reasonable a step to maintain the

22   confidentiality when you offer to a third party

23   to disclose the information.  But beyond the

24   government, the disclosures in this case have

25   been extensive.  But what's more of a concern to

Page 16

1    us is they have been selective.

2            And this occurred just recently, just

3    last week in a deposition.  One of the party

4    defendants, Mr. Pearson, testified, and when he

5    was asked on cross-examination whether his

6    communications with counsel regarding one aspect

7    of their investigation, HR-related issues,

8    whether he was seeking legal advice, he said, No,

9    I wasn't seeking legal advice.

10            Perhaps sensing that that was going to

11   be used by us, FirstEnergy then took a break,

12   obviously, conferred with the witness, came back,

13   and then they chose to ask the witness questions.

14            One of the questions they asked

15   Mr. Pearson was whether the investigation

16   involved legal issues.  Not whether it was

17   primary, but whether it involved legal issues.

18            He said, Yes, it did.

19            Then we got up again and asked him:

20   That information FirstEnergy just elicited from

21   you that this investigation involved legal

22   issues, from whom did you obtain that

23   information?

24            And his answer was:  I obtained it from

25   counsel.

1          And what we confirmed there -- he then
2     said, confirmed for us.
3          So FirstEnergy's counsel just elicited
4     from you and asked you to tell us about
5     information that you obtained from counsel; is
6     that right, sir?
7          And he confirmed that that was correct.
8          So yet time and again -- and you've seen
9     it in the papers.  Time and again, FirstEnergy is
10    improperly instructing this witness that if they
11    obtained information from counsel, they're not
12    allowed to discuss it.  And even though they are
13    repeatedly disclosing information provided by
14    counsel, we've established that virtually the
15    entire Statement of Facts from the Deferred
16    Prosecution Agreement was provided by counsel,
17    yet time and again, FirstEnergy is instructing
18    witnesses not to disclose that very same
19    information to us because they obtained it from
20    counsel.
21         And what they're effectively doing here
22    is playing both sides of this issue.  They are
23    appeasing the government by making these
24    admissions, but they are complicating our efforts
25    at discovery in this case by silencing these

Page 18

1   witnesses, and they're doing it improperly.

2           So they can't have it both ways.  If

3   this information is privileged, well, they've

4   disclosed it and they have a waiver.  If it's not

5   privileged, then they're not entitled to instruct

6   these witnesses not to answer questions

7   concerning it.  Even within the same depositions,

8   they are taking contrary positions on that very

9   issue.

10          In the testifying aids, which I refer to

11  as scripts because they're given to witnesses who

12  have no personal knowledge of the information, in

13  these scripts, FirstEnergy discloses conclusions

14  that were drawn by lawyers.  That is -- those are

15  mental impressions from lawyers.  That is classic

16  work product that they are openly disclosing and

17  using in this case, mental impressions about

18  candor of witnesses, mental impressions about

19  what witnesses knew and didn't know.  I'll give

20  you a couple examples:

21          Bradley Bingaman, a FirstEnergy

22  employee, is described as knowing that

23  FirstEnergy was paying Sam Randazzo for years to

24  do nothing.  That is a mental impression.

25          It's not enough to say, well, there's an

Page 19

1    email that supports it.  That's true, there is an

2    email that supports it.  The statement was not

3    "there's an email in which Bradley Bingaman says

4    X."  The statement was:  Bradley Bingaman was

5    aware that FirstEnergy was paying Sam Randazzo to

6    do nothing.

7           So we have also extensive disclosures of

8    mental impressions and conclusions by the

9    lawyers.  So there really -- it's impossible to

10   draw the line or to identify the line that

11   FirstEnergy is drawing here so we can determine

12   what the witnesses can disclose and what the

13   witness can't disclose.

14          Early on, they were disclosing freely,

15   including in these scripts, a wealth of

16   information provided by lawyers.  Once the

17   possibility of attacking the privilege arose, now

18   the very same information they're not allowing

19   the witnesses to discuss with us.

20          And so that's improper on two fronts:

21   One, they're asserting privilege over something

22   that's already been waived, if it ever was

23   privileged; but then, number two, what they're

24   effectively doing is deeming facts to be

25   privileged if those facts were provided by a

Page 20

1    lawyer.

2          And I want to be clear.  We're not

3    asking these witnesses, tell me about the

4    conversation with the lawyer when you learned

5    this information.  We are simply asking about

6    this information.

7          And, look, whether you want to say to

8    their credit or not, some defendants are really

9    exploiting this because what they're telling

10   these witnesses is, okay, I want you to put out

11   of your mind anything you ever learned from any

12   lawyer.  So just erase that from your memory.

13         Are you aware of any information that

14   Chuck Jones violated FirstEnergy's code of

15   conduct?

16         And then the witness says no.  It's

17   creating a horribly misleading record because all

18   of these witnesses do have information supporting

19   the DPA, supporting FirstEnergy's terminations of

20   employees, but they are being handcuffed by this

21   instruction to not disclose or even rely on

22   information that was provided by lawyers.

23         And so, by essentially walling off

24   facts, we are winding up with a highly misleading

25   record here and, for that reason, we think it is

Page 21

1    really important to confirm that none of these

2    facts, whether they're provided by lawyers or

3    otherwise, are privileged.  And if they were by

4    some means that I'm not aware of, any privileges

5    have been waived.

6          MR. JUDGE:  Do I have any portion of the

7    Pearson depo last week, the transcripts in front

8    of me?

9          MR. FORGE:  No, you don't, Your Honor,

10   or Mr. Special Master, but I can provide that to

11   you.

12         MR. JUDGE:  Yeah, if you would, please.

13         MR. FORGE:  And, actually, I stand

14   corrected.  It was defendant Strah where that

15   occurred.  But it was still -- but we can, we can

16   provide that today.  No problem.

17         MR. JUDGE:  I have some of the Strah

18   deposition transcripts, but --

19         MR. FORGE:  Even while we're on -- I can

20   get that and share that while we're still going

21   on with the hearing.  It won't take me long.

22         MR. JUDGE:  That would be great.

23         So it was Strah who we're talking about.

24         MR. FORGE:  Yes, who was, who was

25   acting, acting and an actual confirmed CEO.

```
                                              Page 22

 1            MR. AXELROD:  Mr. Judge, this is Dave
 2    Axelrod.  I represent Jim Pearson.  I just want
 3    to clarify for the record that Mr. Pearson never
 4    made any such testimony.  He was, in fact, gone
 5    by the company -- gone from the company by the
 6    time that investigation took place.  So I --
 7    Mr. Forge has admitted he was mistaken, but I
 8    just want to make sure, because this is being
 9    transcribed, that the record is correct.
10            MR. JUDGE:  I appreciate that.  Thank
11    you.
12            Yeah, if you would get that to me,
13    please, as soon as you can, either during this or
14    right after.
15            Okay.  Any other points you want to
16    make?
17            MR. FORGE:  No, I don't.  I'm happy to
18    address any questions you have or anything that
19    comes up when FirstEnergy speaks.
20            And, also, I should say, although they
21    didn't join in the actual paper of our reply,
22    defendants Jones and Dowling are also a part of
23    this motion, so I should -- as are the opt-out
24    counsel.  So I don't want to hog the mic if any
25    of them have something to add.
```

1          MR. JUDGE:  I appreciate that.

2          Any of those individuals have anything

3   to add before we turn this over to David?

4          MR. MCCAFFREY:  Nothing to add.  This is

5   John McCaffrey on behalf of defendant Michael

6   Dowling.  Nothing to add to what Mr. Forge has

7   already stated.  Thank you.

8          MR. JUDGE:  Thank you.

9          MR. MIARMI:  And for the direct action

10  plaintiffs, Your Honor.

11         MR. JUDGE:  Thank you.

12         MS. RENDON:  And same for counsel for

13  Mr. Jones.

14         MR. JUDGE:  Thank you.  I appreciate it.

15         David, your ball.

16         MR. REIN:  Thank you.

17         First of all, I would encourage you to

18  interrupt me with questions or thoughts.  I

19  certainly want to make sure we're being

20  responsive to what is on your mind and that we're

21  being, you know, most helpful as we present here.

22         I think it would be useful just to take

23  one step back as to what is going on, right?

24  Because, you know, we all know there's basic

25  principle.  Of course, we've got one lawyer who

Page 24

1    doesn't get to look in the files of the other

2    side.

3         And what the movants are asking for here

4    is wholesale production of all documents, all

5    communications from two lengthy internal

6    investigations conducted by their adversary's

7    counsel.  The focus today is on a lot of sort of

8    niche parts of that and small parts of that or

9    smaller parts of that, but what the motion seeks

10   is absolutely everything without distinction.

11        There is no case they have cited to

12   where that has happened, right?  They cite to

13   cases that talk about particular documents and

14   whether they should be produced because they're

15   not work product, or where investigations were

16   not conducted by lawyers.  And, in those cases,

17   they're not privileged.  But they don't cite to

18   anything that's the same as this, and I think

19   that's quite telling.

20        Because when companies face serious

21   allegations like what has happened here, like

22   what Mr. Forge was just describing to you, it's a

23   very common response for a board to hire lawyers

24   to analyze it and advise the board, as well as

25   lawyers to advise the company.  And that's what

Page 25

1    happened here after the fact.

2           And when that news broke on June 21,

3    that's exactly what they did, right?  The

4    independent directors hired the Squire law firm,

5    led by a former US Attorney.  The company hired

6    Jones Day, and they both conducted lengthy

7    investigations.

8           If it were true that, you know, these

9    things get turned over in the types of situations

10   described here, you would certainly see cases

11   where that has happened, but we don't.  And

12   taking that approach, obviously, would change

13   what companies do, because companies would not

14   then be able to conduct those kinds of

15   investigations, get to the bottom of things, and

16   get advice.

17          You know, here the -- both

18   investigations, just at the outset, are things

19   that are plainly covered by privilege, you know,

20   and by work product.  They're privileged

21   because -- they are because of litigation.

22   That's the Sixth Circuit test in Roxworthy

23   because of litigation.  And you heard here today

24   from Mr. Forge that there wouldn't have been an

25   investigation but for the fact that there was a

Page 26

1    DOJ grand jury subpoena, you know, media reports.
2    It wasn't just anticipated litigation; it was
3    actual litigation.
4         And what we have done here is provide
5    you with an affidavit from one of the outside
6    directors who oversaw that Squire investigation.
7    And he testifies why they did an investigation.
8    He explains that it was because of the potential
9    criminal liability and because of the onslaught
10   of civil litigation.  And so, you know, this is
11   not just us speculating about that.
12        Now, you heard a fair amount from
13   Mr. Forge about the initial phase of the Squire
14   investigation for the board, and he tells you
15   that this was done -- you know, that they were,
16   you know, retained in order to assuage PwC.
17        So, you know, first of all, we have
18   Mr. O'Neil's testimony as to why they were
19   retained, why Squire was retained, and he tells
20   you that it's because of the DOJ action because
21   of the onslaught of litigation.  And he explains
22   that Squire provided advice and analysis to the
23   board, and he says that but for the DOJ
24   investigation, this wouldn't have happened.
25   There would not have been the -- this internal

Page 27

1   investigation.

2          Mr. Forge said, well, maybe the form

3   would have been different if there had been some

4   sort of immunity deal on day two.  Now, that

5   didn't happen, of course.  We have to look at

6   what the real world was where that didn't happen.

7          But what Mr. O'Neil testified is that

8   the shape of the investigation was based on what

9   the company actually faced.  So they were getting

10  advice on what was, on what was actually

11  unfolding.

12         The issue of, well, did they -- you

13  know, was there some sort of rushed thing just to

14  satisfy PwC and, therefore, a business purpose.

15         It wasn't, but let's just step back to

16  the standard for a moment, right?  Because for

17  privilege, the question is what is the

18  predominant purpose, right?  There can be

19  other -- if there are other purposes, that's

20  okay.  That's what, that's what Magistrate/Judge

21  Jolson said in Abingdon Emerson.  That doesn't

22  waive privilege.

23         And Mr. Neil -- Mr. O'Neil specifically

24  testified the purpose was not to assuage PwC.  He

25  literally says that in his affidavit, paragraph

Page 28

1  27.

2          What is really ignored, I think, by the

3  movants here is that this was an initial phase of

4  the investigation.  Again, this is explained by

5  Mr. O'Neil.  He says how the investigation

6  continued for months.  In fact, it went for about

7  a year where they were getting advice, analysis

8  from Squire for over a year.  He says that in

9  paragraph 21 of his declaration.

10         There's nothing unusual about getting,

11 you know, results as the thing goes along, having

12 different phases.  There's nothing unusual about

13 that.  A board cannot just sit on its hands and

14 await, you know, a yearlong investigation in the

15 face of this barrage of criminal and civil

16 potential liability.  They had to do things and

17 they had to start to reach conclusions, even if

18 they were conclusions that would develop and

19 change over time.

20         So, you know, Mr. Forge said, well, no

21 reasonable investigation would do that within 17

22 days.

23         Look, the reality is, no reasonable

24 investigation, no reasonable client could just

25 sit around and wait for all of that time as

Page 29

1    things play out.

2           And --

3           MR. JUDGE:  Talk to me a little bit

4    about FirstEnergy withholding documents from

5    their own auditor.

6           MR. REIN:  So a couple of points on

7    that.

8           First of all, the law is settled that

9    work product is not waived when it's shared with

10   an auditor, right?  So a lot of what Mr. Forge is

11   talking about is work product, potential work

12   product, right?  Because that's -- it's not

13   waived because an auditor is not your adversary,

14   right?  And they say that in their opposition,

15   that that's the standard.  And I think the law is

16   very settled on that question.

17          Privilege.  The company did not provide

18   privileged information to PwC, the auditor.

19   Mr. O'Neil testifies to that.  He says that both

20   Squire and Jones Day were not authorized to

21   provide privileged information to PwC.

22          So I think what's going on here is we're

23   sort of mixing up the concepts between, you know,

24   privilege and between work product.  So to the

25   extent any work product was shared with PwC as an

1  auditor, that is not -- you know, that's not a

2  waiver of anything.

3          And the fact that information was shared

4  with PwC as an auditor is also not something that

5  is unusual.  In fact, that has to happen in every

6  case involving potential liabilities, especially

7  potential material liabilities.  Companies will

8  always have to have discussions with their

9  auditor on that question.

10          If that, if that was what caused waiver,

11  if that is some sort of notice that something is

12  not privileged or not work product, then every

13  time there's an internal investigation, every

14  time a company is dealing with these kinds of

15  significant issues, you'd be seeing waiver every

16  single time.  The fact that we don't I think is,

17  again, you know, very, very telling as to what's,

18  you know, going on here.

19          You know, Mr. Forge said to you, well,

20  the -- you know, the allegations that came up in

21  this Householder complaint, you know, they would

22  have had a significant impact on the company and,

23  therefore, they would have investigated anyway,

24  even if there was -- regardless of whether there

25  was some sort of criminal proceeding going on or

Page 31

```
 1   if they settled it or something.

 2           You know, this is totally speculative,

 3   right?  Because I think the test that's in front

 4   of you is what actually happened.  What actually

 5   happened here.  They couldn't really be the same

 6   allegations and the same, you know, government

 7   actions going on and no litigation risk at all.

 8   When faced with those kinds of allegations,

 9   plainly, there's litigation risk.  So, you know,

10   we're really sort of talking about an artificial

11   universe.

12           And I think one key concept to remember

13   here is when Mr. Forge talks about, well, would

14   the investigation have been in the same form,

15   what the cases are typically talking about -- in

16   fact, almost all talking about is would a

17   document have been created in the same form but

18   for litigation, right?  Not, not whether an

19   investigation would have been in the same form

20   but for litigation, would a document have been.

21           But this motion is so broad, it doesn't

22   talk about specific documents and whether they

23   would have been in the same form, and so it

24   doesn't really align with the case law which is

25   really talking about specific documents and
```

Page 32

1    specific communications.

2            And so, you know, it's really something

3    that's quite different.  And if we look at the

4    types of the cases they actually rely on, they're

5    nothing like this case.

6            So take, you know, Valiant, for example.

7    They rely on that quite heavily.  That was a

8    nonlawyer, the consulting firm FDI doing work

9    about a restatement, right?  So they created the

10   fine -- the financial reporting that was used for

11   a restatement.

12           So it wasn't privileged to begin with.

13   And yes, that would have -- a restatement would

14   have happened anyway because the company was

15   obligated to issue new financial statements.

16           So that's the type of thing that is

17   going on.  And when we talk about an alternative

18   universe and would something have been done the

19   same way, yes, they would have done the

20   restatement the same way because they're

21   obligated to restate their financials.  That's

22   very different.  That sort of targeted issue is

23   very different to saying, well, an entire

24   investigation over two years would somehow have

25   been different.

1        Now, he also talked to you about the

2    employment decision issue.  And in Mr. O'Neil's

3    testimony, he explains that, well, the employment

4    decisions that were made were really ancillary --

5    that's the term he uses -- to the purposes of the

6    investigation.

7        The purpose is responding to the

8    criminal and civil liability.  But, of course, if

9    the board learns things, you know, in the course

10   of that and makes employment decisions, they're

11   going to do that.  That's how things develop over

12   time.  That doesn't change an investigation

13   because of litigation, right?  It's just an

14   ancillary part of it.  That doesn't change

15   things.

16       In fact, some of those employment

17   decisions were even made because of conduct in

18   the investigation.  So some employees didn't

19   cooperate in the investigation or were

20   insufficiently cooperative.  The chronology of

21   that is that the investigation itself couldn't

22   have been to figure out who wouldn't cooperate

23   with an investigation.  That wouldn't quite make

24   sense.

25       So yes, employment decisions happened,

Page 34

1   but that doesn't render anything -- it doesn't

2   render an investigation not protected by

3   privilege or work product.  He mentioned about,

4   well, outside capital.  A company needed to raise

5   capital, and that was a business purpose.

6            But if you, if you sort of dig into the

7   brief, what that's really based on is sort of

8   essentially one line in a board presentation and

9   an undated board presentation.  It doesn't say

10  the investigation is -- you know, it doesn't

11  actually talk about a purpose of an

12  investigation.  It just says something to the

13  effect of if the investigation is resolved by

14  December 2021, the company will still have to

15  make material changes to its credit agreements.

16  That doesn't really tell you anything about, you

17  know, why the investigation was done and it

18  doesn't sort of add anything to this.

19            You know, on waiver, we've talked about

20  how, you know, providing information, providing

21  work product to an auditor confidentially is not

22  waiver.  And, by the way, the auditor must keep

23  it confidential because, otherwise, they'd be in

24  breach of their ethical standards.  So, you know,

25  we would know that they would keep the

Page 35

1    information confidential.

2          And if they truly were an adversary,

3    then they would have had to resign because an

4    auditor can't be adverse to the company that's

5    auditing.  But they didn't resign.

6          So they're not --

7          MR. JUDGE:  Talk to me, talk to me about

8    the Department of Justice waiver.  If we assume

9    for the sake of argument privilege here, you

10   know, the materials -- quite a bit was apparently

11   turned over to the Department of Justice.

12         MR. REIN:  Yeah, but we didn't provide

13   privileged information to the Department of

14   Justice.

15         One of the document requests in this

16   case is to provide documents that have been

17   provided to the Department of Justice.  We've

18   done that.  In fact, the company continues to do

19   that, as well as to, you know, documents provided

20   to other regulators, too.  We're not doing that

21   and we're not blocking that.

22         And, by the way, the reason we're not

23   blocking that sort of gets to a point that

24   Mr. Forge made, which is they are -- we are

25   absolutely allowing access to the facts to what

```
 1  happened here.  We're not holding that back.
 2  That's why they have, at this point now, over a
 3  million pages of documents.  Because you want to
 4  find out what happened at the time, absolutely,
 5  right?  We've provided that.  They have many,
 6  many documents.  Not holding that back.  They
 7  have, at this point, dozens of depositions,
 8  dozens more to come.  We're not doing that,
 9  right?
10          What, what -- I think the -- what
11  Mr. Forge has been talking about is, well, can
12  you also ask about privileged things.  If
13  you've -- your discussions with your lawyer about
14  things.
15          Whatever it is in the Strah deposition,
16  that's obviously not in the papers as something
17  they're raising today for the first time.  And
18  whatever that may be, I think the remedy for an
19  improper objection to a deposition question is a
20  direction to answer the question, right?  That's
21  how we deal with those types of things.
22          If we got that wrong, we can deal with
23  it that way.  We can discuss it with plaintiffs
24  if they think we're wrong.  Sometimes they raise
25  privilege issues with us and we've agreed with
```

1  them.  That can happen when you're making

2  decisions on the fly.

3         But that isn't a whole- -- that doesn't

4  mean that there's some sort of wholesale -- this

5  requires sort of a wholesale production of two

6  lengthy internal investigations.  That would be

7  an extraordinary remedy for, you know, sort of

8  getting a deposition instruction wrong.

9         These instructions have generally been

10  along the lines of, you know, you caution the

11  witness, don't testify to something you've

12  learned from your lawyer.  Don't testify to a

13  communication with your lawyer.  You know, we put

14  that in our brief.

15         In fact, Mr. Dowling, one of the movants

16  here, his counsel said the same thing to one of

17  the witnesses.  I'm not asking you to testify to

18  what you learned from a lawyer.  Okay.  We're not

19  blocking facts.  What we're blocking is

20  communications with lawyers.

21         MR. JUDGE:  Communications.  So mental

22  impressions or advice, you know, learned from a

23  lawyer, fine.  Yeah, of course, that's

24  privileged.  But facts learned from a lawyer

25  you're saying are not involved here, not an issue

1   or they're privileged, as well?

2           MR. REIN:  I think it gets more

3   complicated.

4           So let's -- to be clear, facts are not

5   privileged, right?  We are not taking that

6   position.

7           MR. JUDGE:  Okay.

8           MR. REIN:  That's absolutely clear.

9           But sometimes you have a communication

10  with a lawyer where, you know, there are facts

11  that are discussed in that communication.  It

12  doesn't mean that we sort of, you know, produce

13  some sort of redacted version of the

14  back-and-forth with the lawyer -- here's sort of

15  the noun but we're not giving you the verb.

16          That's not really how one could do this,

17  right?  So there's no facts about what has

18  happened that we're hiding or something like

19  that.  Because, you know, these were lawyer

20  communications.  That's not, that's not what

21  we're doing.  We're just saying -- you know,

22  we're talking really now about the after-the-fact

23  communications; that where you're advising people

24  and talking, you know, with clients about -- you

25  know, they're asking you things or you're

Page 39

1    discussing with them.

2            And it's impossible that you could

3    really -- you know, that two humans could have a

4    conversation and no factual content enters into

5    that communication.  So, you know, it gets

6    tricky.  I accept that.  But I just want to be

7    clear because I think there's some sort of

8    suggestion here that we're saying facts get

9    protected because, you know, they're part of

10   lawyer communications.

11           No, facts are not protected.  They can

12   learn about facts.  You know, go ahead, ask

13   witnesses about facts.  Get documents about

14   facts, right?  That's the facts that happened,

15   right, leading up to this indictment and, you

16   know, the revelation of the allegations, right?

17   All of these underlying facts, we are not

18   blocking that at all.

19           MR. JUDGE:  So the facts -- they can

20   inquire at a depo of a witness about facts that

21   the witness learned from an attorney?

22           MR. REIN:  I think if you've learned

23   from an attorney, I think then we're getting

24   into, you know, the legal advice issues, right?

25   Because, at that point, you're not really talking

1    about the person's preexisting knowledge.  What

2    did you know in 2020?  What did you know in 2019,

3    right?  You're having a discussion with your

4    lawyer about, about other things.  You know, what

5    did the company do?  What -- if there's some

6    context that you need in order to advise a

7    client, you may have to, you know, talk about

8    facts with a client.

9           But that doesn't render, you know, that

10   discussion somehow, you know, not privileged

11   anymore because there's a fact in the discussion.

12   It remains a privileged discussion and it remains

13   protected by work product because it's -- those

14   discussions are coming up in the context of

15   defending claims, right?  Defending civil claims

16   here or defending, you know, criminal claims,

17   whatever it may be.  Responding to regulators,

18   all of those things are in the work product

19   world, and so this is coming up, you know,

20   through that.

21           If the witness knew facts from, you

22   know, their involvement at the time, they

23   should -- we're not blocking the testimony on

24   that.  You know, and that's, of course, what

25   matters in the case, right?  It's not the

Page 41

1   lawyer's analysis after the fact that matters;
2   it's what happened at the time.  And, you know,
3   all parties couldn't build their claims and
4   defenses, whatever else, based on that.
5           And, you know, our aim is to be
6   entirely, you know, cooperative and making sure
7   we provide that while, at the same time, you
8   know, protecting what are privileged and work
9   product communications.
10          The testimonial waiver -- sorry.
11  Testimonial waiver was the way Mr. Forge
12  described it.  The testimonial aid is something
13  else that he raised and said that, you know, this
14  was waiver.
15          And, you know, this was, you know, a --
16  as commonly happens, the 30(b)(6) witness had a
17  testimonial aid that was then provided to all
18  parties, because it's very hard for one person to
19  remember all the details.  And so that was
20  something that was provided and provided to all
21  parties.
22          The plaintiffs and movants point to four
23  statements in that about employment decisions,
24  and they say, well, those were, those were a
25  waiver.

1           Now, just sort of at the threshold, if

2    those somehow were a waiver, that's not a waiver

3    of an entire, you know, investigation, right?

4    That's sort of a waiver on the specific point and

5    not some, you know, broad waiver as to absolutely

6    everything.

7           But, you know, these statements in this

8    testimonial aid were not privileged and were not

9    work product and they weren't revealing any of

10   that.  So there wasn't, you know, any waiver to

11   begin with.  Because what they -- you know, what

12   they talked about was things that were either,

13   you know, already in the record or that were, you

14   know, sort of ultimate conclusions of the

15   investigation, which is not a waiver.

16          You know, just to give, you know, an

17   example, I think Mr. Forge talked about, you

18   know, the knowledge of an individual.

19          You know, if someone, a 30(b)(6)

20   witness, talks about state of mind, he says,

21   that's a waiver, right?  So -- and he said -- you

22   know, we pointed to documents that show that

23   person's state of mind and he says, well, that

24   can't count because, you know, it's a waiver.

25   You've talked about state of mind.  You can't

Page 43

1    know that from a document.

2            You know, look, one of the statements

3    they point to is by someone called Mark Hayden.

4    And, you know, he said the statement is basically

5    along the lines of, you know, Mr. Hayden approved

6    some payments and knew that these payments were

7    for no purpose at all.

8            This literally comes from a

9    nonprivileged email on which, you know,

10   Mr. Hayden is on talking about exactly what is in

11   the testimonial aid.  There's not some -- you're

12   not revealing some secret thing here.  We're just

13   simply providing what is already in the

14   testimonial aid.

15           And to the extent that there are some

16   conclusions in the testimonial aid, you know, the

17   law is clear that a conclusion from an

18   investigation is not some kind of waiver.  That

19   the Texas Hydraulics case, for example, said that

20   where, you know, there it was evidence summaries

21   and ultimate conclusions.

22           And the Court said, well, because you're

23   not -- you didn't give the underlying rationale

24   by the lawyer, the communications with the

25   lawyer, that's not a waiver.

1           And so, you know, this is no different

2    to cases like that.  And we cite a number:

3    Dayco, Schroeder, that fall along those kinds of

4    lines.

5           And, finally, I want to point out, there

6    also has not been any kind of selective

7    disclosure here, all right?  This is not a

8    situation where we have come in and said, well,

9    you know, we win because the internal

10   investigation found this, right?  That would be a

11   classic selective disclosure.  You're trying to

12   get -- you're using it to -- for purposes of

13   establishing your defense or, for that matter,

14   your claim.  That's a selective waiver.

15          That's not what we've done.  And they

16   haven't, you know, pointed to anything like that

17   at all.  You know, at most, they're saying, you

18   know, there's -- the testimonial aid said

19   something like, you know, the board took decisive

20   action.  You know, that's not our defense.  We've

21   never said the board taking decisive action is

22   some sort of -- you know, is our defense here.

23          And it's just -- it really is not even

24   close to some sort of selective waiver case,

25   right?  The selective waiver cases talk about the

Page 45

```
 1   sword and the shield, right?  And the sword
 2   being -- using the privileged things
 3   affirmatively to win.
 4           We haven't done that.  We're not doing
 5   that.  It's not what the internal investigation
 6   is for.  It's not -- we haven't used it in the
 7   case that way to get any kind of litigation
 8   benefit.
 9           So, you know, the bottom line is, we
10   think these investigations are very clearly
11   covered by attorney-client privilege, covered by
12   work product.  We don't think there's any waiver
13   at all.  And we think what is being requested
14   here is really extraordinary.  There's no case
15   like it where anything like this has been
16   granted, certainly not in such an extreme way.
17           And we think we fully substantiated the
18   basis for the privilege, the basis for the work
19   product, and the reasons why none of these
20   grounds for supposed waiver apply.
21           You know, in the end -- you know, we
22   said this last week.  This is an important issue
23   to us, and I'm sure -- because -- and I'm sure,
24   you know, it is to all parties in this kind of
25   situation.  These are our lawyers' advice, our
```

Page 46

1    lawyers' analysis.  No party wants to hand over

2    its lawyers' communications and its lawyers'

3    analysis.  That isn't how litigation works.  And

4    if that, you know, were to happen, obviously, it

5    would be very complicated even physically to do

6    it over, you know, two investigations, including

7    one law firm that's not involved in this case,

8    each over at least a year, and, you know, likely

9    will lead to more disputes.

10           If it would have happened, plaintiffs

11   have said it's going to lead to reopening of

12   depositions.  Maybe there will be more discovery

13   requests.  I don't know.  But it certainly would

14   needlessly complicate the case, needlessly add to

15   what's going on here in discovery.

16           And it's just -- and just as a practical

17   matter, completely unnecessary in circumstances

18   where we are providing the underlying

19   information.  We're providing what has happened.

20   We're not standing in the way of that at all.

21   And we think the case should be focused on that,

22   not on trying to get the adversary's legal

23   analysis and communications.

24           So thank you.  Happy to address any

25   questions.

Page 47

1          MR. JUDGE:  Thank you, Mr. Rein.

2          Mr. Forge?

3          MR. FORGE:  Thank you, Mr. Judge.

4          We -- I think you actually got to the

5    heart of the issue regarding the facts.

6    Everything was going along swimmingly.  According

7    to Mr. Rein, facts are not privileged, even

8    though they literally said the opposite of that

9    during a deposition.  Facts are not privileged.

10   Of course they're not privileged.  We all agree

11   they're not privileged.

12          And then you basically said, oh, okay,

13   so then they can ask witnesses about facts even

14   if they learned them from lawyers.

15          Whoa, whoa, whoa.  Hold on a second.

16   No, they can't do that.

17          This is exactly my point.  They are

18   disclosing facts that came from lawyers.  It's in

19   the DPA.  They are in those 30(b)(6) scripts.

20   If -- and yet Mr. Rein has now said that's all

21   privileged information.

22          Well, they've disclosed it.  That is a

23   waiver.  They can't take the facts that came from

24   lawyers and disclose them to the world and then

25   tell the witnesses who received the same exact

Page 48

1    facts from the same exact source that you can't

2    discuss it.  That is exactly what we're talking

3    about here, and you got to the heart of it with

4    that question.

5            The bottom line on this issue is, they

6    used lawyers for nonlegal purposes.  They used

7    them to gather facts precisely for this purpose,

8    not to, not to render legal advice.  The legal

9    advice is when you take those facts, process it,

10   and come up with a conclusion.  For example,

11   Chuck Jones knew that there was no justification

12   for money going to Tony George.

13           Now, I'm going to actually carry Chuck

14   Jones's water for a little bit here.  And Carole

15   can, you know, correct me if I'm not doing a good

16   enough job.  But let's look at things from his

17   perspective and how it works out in this case.

18           FirstEnergy says publicly that Chuck

19   Jones violated its code of conduct.  FirstEnergy

20   says publicly that Chuck Jones violated

21   FirstEnergy's policies.  That -- those

22   conclusions came from lawyers and they've

23   revealed it.

24           Mr. Rein is just wrong on this notion

25   that, oh, you could say what the lawyer

Page 49

1   concluded.  That doesn't, that doesn't waive

2   anything.  That's not true.  That is -- I don't

3   know how you can get a more quintessential mental

4   impression than a lawyer taking facts and then

5   processing those facts and reaching a legal

6   conclusion as to whether or not policies or codes

7   of conduct were being violated.

8         The notion that they can just disclose

9   that conclusion -- and I know -- I'll just say it

10  for Carole.  Mr. Jones is not conceding that

11  point.  The fact that they can disclose that

12  conclusion but then hide behind the privilege or

13  whether it's privilege or work product protection

14  to justify it just doesn't square with the cases.

15        I agree this case is highly unusual, if

16  not unprecedented, by virtue of the extent of the

17  disclosures.  Typically, when you have these

18  types of disclosures, it's to wrap up the entire

19  case.  They've made all these disclosures during

20  this litigation.  And in terms of specific

21  points, Mr. Rein said that the law is settled

22  regarding work product not waived to share with

23  the auditor.

24        That's not true.  The only two district

25  courts in the Sixth Circuit to address that issue

Page 50

1    we identified was the First Horizon case and the

2    King Pharmaceuticals case from the I'd say

3    Western District and the Eastern District of

4    Tennessee respectively.  They both said the

5    opposite.  Disclosure to an auditor does waive

6    work product protections.  So if there's no

7    dispute, there's no dispute that in the Sixth

8    Circuit it is a waiver.

9              The contention that the selective waiver

10   doesn't apply because all they said was the board

11   took decisive action simply is not accurate.

12   What they said was the board and others weren't

13   aware of this conduct and took decisive action

14   immediately upon, you know, being informed of

15   this conduct.

16             So that's two representations that

17   they're making.  Number one, they're making a

18   very broad representation that none of the boards

19   or -- none of the board members or other officers

20   were aware of this information prior to a period

21   after the arrests.

22             Well, that is an affirmative

23   representation to -- in their own defense.

24   That's defending the board members.  That's

25   defending their other officers, which is the same

1   exact thing as defending themselves.  So it is

2   the equivalent of a witness saying I didn't know

3   any of this information until after July of 2020.

4   And as soon as I learned of that information, I

5   took decisive action.

6           Well, that is -- that's sword and shield

7   right there, because the board -- or not being

8   aware of the information, that is a conclusion

9   from the lawyers for the lawyers to say we

10  conducted this extensive investigation and we are

11  concluding that the board wasn't aware of it.

12          So during all these points where you

13  have allegations during the class period, the

14  board and the other officers weren't aware of

15  anything, how can you get more of a conclusion, a

16  legal, a mental impression than that conclusion?

17  They're using that affirmatively to defend

18  themselves because their liability is vicarious.

19  It's vicarious through the board.  It's vicarious

20  through their officers.  And they are saying both

21  of those categories of people were not aware of

22  this information.  That conclusion did not come

23  from the individuals.  That came from FirstEnergy

24  based exclusively on its lawyers' conclusions.

25          And Mr. Rein -- and I appreciate --

Page 52

1   corrected me.  It was Mark Hayden, not Bradley
2   Bingaman about whom the -- they revealed their
3   lawyers' conclusions.  Again, the statement in
4   the 30(b)(6) script was not in, in an email from
5   2015.  Mark Hayden wrote X.  No.  The statement
6   was an affirmative statement that one of the
7   reasons why this individual was separated from
8   the company was because he facilitated, was
9   complicit in payments to Sam Randazzo even though
10  he knew Sam Randazzo was doing nothing for the
11  company.  That's a conclusion.
12          And you heard it time and time again
13  when Mr. Rein was speaking.  There's -- you can't
14  make any sense of their position because they
15  take different -- depending on whether they
16  disclose something, it's not a mental impression
17  that witnesses weren't candid?  There were
18  multiple witnesses in that attorneys -- Ebony
19  Yeboah, Robert Reffner, he's a defendant in this
20  case.  These are individuals in this case who
21  they're stating weren't candid.  That's a mental
22  impression.
23          So I don't understand how Mr. Rein is
24  possibly saying these ultimate conclusions -- you
25  know, first of all, they're, they're individual

Page 53

1   conclusions.  They're individual assessments.
2   What would be -- what, what would be a mental
3   impression -- if your impression about what
4   somebody knew or somebody's candor is not a
5   mental impression, what is?  That is, that is the
6   quintessential mental impression.  This witness
7   can't be trusted.  That's -- you know, that's
8   going back, you know, decades in Supreme Court.
9   That's Hickman kind of stuff that we're talking
10  about.
11          And I want to just -- along those same
12  lines, you know, they did the same thing with
13  Chuck Jones, as I mentioned earlier, you know,
14  with the payment to Tony George; that Chuck
15  George -- Chuck Jones knew there was no support
16  for this payment to Tony George.  There was a
17  $900,000 payment to Tony George that they put in
18  their script, disclosed to us, and had the
19  witness testify that Chuck Jones approved of the
20  payment even though he knew there was no support
21  for it.  Well, I know Chuck Jones didn't tell
22  them that.  So they're not repeating something
23  Chuck Jones said.
24          So, once again, that is a conclusion
25  that a lawyer reached that they have disclosed.

Page 54

1    That's a waiver.

2            And Mr. Special Master, I have the --

3    just to drive home the point you were making

4    regarding these facts, let me just read to you

5    from the Strah deposition.  These are questions

6    about the reason for Dennis Chack's firing from

7    FirstEnergy.

8            And just for the record, I'm talking

9    about now -- I'm referring to page 53 of the

10   rough transcript of the September 22nd, 2023,

11   deposition of Steven Strah.

12           And the question was asked:  Prior to

13   you being named as acting CEO, you were informed

14   by FirstEnergy internal counsel the reason for

15   Mr. Chack's firing; is that correct?

16           And then counsel objects; says, to be

17   clear, that interaction, interaction with

18   internal counsel provided underlying facts

19   associated with Mr. Chack.

20           Then the question is asked:  What were

21   the underlying facts that were told to you about

22   the reason for Mr. Chack's firing?

23           Objection and instruct the witness not

24   to answer.

25           Then there's an exchange between

Page 55

 1   counsel.

 2            You're instructing him not to answer the

 3   question on behalf -- of what were the underlying

 4   facts?

 5            Response from FirstEnergy:  That were

 6   conveyed to him by counsel, yes, if that's the

 7   sole source of his knowledge of those facts.

 8            Now, keep in mind, Mr. Strah was the

 9   acting CEO at this time, so he is endorsing and

10   making human resource decisions.  So there are

11   decisions being made at FirstEnergy based on

12   these facts.

13            So then when he's asked whether he was

14   seeking legal advice -- is this communication

15   which you were told facts about Mr. Chack's

16   firing, were you seeking legal advice when those

17   facts were conveyed to you?

18            He's told that's just a yes-or-no

19   question.

20            Answer:  No, he was not seeking legal

21   advice.

22            So you were being told of the fact of

23   this firing and the reasons therein, but you

24   weren't asking the lawyers for any advice, right?

25            And then he says no, but -- no, he

Page 56

1  wasn't acting on advice.

2          Were you seeking any legal advice as

3  part of a communication on which you were told

4  the facts of Mr. Chack's firing?

5          Answer:  No.

6          So then, again, as I mentioned earlier,

7  sensing, sensing there was a problem, that same

8  lawyer for FirstEnergy then asks him if the

9  review of employee conduct involved legal issues,

10  and he says yes.

11          So now I'm skipping ahead to 263 of that

12  rough transcript.  When -- now we're on re-cross.

13  When Ms. Newton was asking you questions, she

14  asked you, she said:  But, as far as you knew,

15  did that review of employee conduct involve legal

16  issues?

17          Do you remember that testimony a moment

18  ago?

19          Yes.

20          What were those legal issues that the

21  review of employee conduct involved?

22          And to the -- and this is the objection:

23  To the extent the witness's understanding of the

24  specifics of this with counsel, he should not

25  disclose that.

```
                                           Page 57

 1             Okay.  So this is a question just asked
 2     to you by FirstEnergy's lawyer, correct?  She
 3     solicited that testimony; is that right?
 4             I answered her question, yes.
 5             Well, did you know that the internal
 6     review related to the legal issues from anyone
 7     other than a FirstEnergy lawyer?
 8             No.
 9             So when you told us that the review
10     involved legal issues, you were telling us
11     something you learned from a FirstEnergy lawyer
12     containing all relevant facts.  Do you remember
13     that question?
14             Yes.
15             So, so here we have just last week, sir,
16     they're playing both sides of this issue.  When
17     we ask for facts that were communicated to the
18     witness by a lawyer, they shut it down and
19     wouldn't let him answer the question.  But when
20     they ask for facts that were communicated by the
21     lawyer, it's fine.
22             So this is just -- and the only reason
23     I'm bringing it up, it's not because it's the
24     most egregious; it's just the most recent.  And
25     it is also typical.  That is what is happening
```

Page 58

1   time and time again.  Facts they obtain from

2   lawyers are disclosed, but when we ask them about

3   it, they're off limits.

4          MR. JUDGE:  Anything else, Mr. Forge?

5          MR. FORGE:  No.  But, again, I would

6   just invite any of the others who are a part of

7   this motion if they have something that I missed,

8   I'd be happy to address it or let them address

9   it.

10          MR. JUDGE:  Does any other counsel have

11   any additional information they would like to

12   add?

13          MR. MCCAFFREY:  Nothing on behalf of

14   Mr. Dowling.

15          MR. JUDGE:  Thank you.

16          MS. RENDON:  Not on behalf of Mr. Jones.

17   Thank you.

18          MR. JUDGE:  Thank you.

19          THE REPORTER:  Who was that?

20          MS. RENDON:  I'm sorry.  That was Carole

21   Rendon on behalf of Mr. Jones.  Sorry, Kristin.

22          THE REPORTER:  Thank you.

23          MR. MIARMI:  And not on behalf of the

24   direct action plaintiffs.  This is Michael

25   Miarmi.

1          MR. JUDGE:  Thank you, Mr. Miarmi.

2          Mr. Forge -- yeah, go ahead.

3          MR. REIN:  If you have more questions

4   for Mr. Forge, please go ahead.  I was going to

5   ask if I could respond briefly.

6          MR. JUDGE:  Go ahead.  Yeah, you go

7   ahead.

8          MR. REIN:  Okay.  And I will be brief,

9   but I do want to address some points that

10  Mr. Forge made.

11         You know, I think most of that response

12  was about the issue of sort of, you know, when is

13  a fact disclosable, you know, when discussed with

14  a lawyer, and I think it's two -- at least two

15  points I would make on that.

16         Number one is if there's an issue with

17  an instruction such as the colloquy that

18  Mr. Forge is describing, then the remedy is to

19  address that instruction if it's incorrect.  But

20  that is not -- the remedy is not just hand over

21  every communication with your lawyer or all of

22  your lawyers' files.  That's not -- that

23  wouldn't -- and that's not relief they've sought

24  here.  And they haven't -- you know, they haven't

25  even, of course, raised this most recent colloquy

Page 60

1    in any motion paper at all.  So, you know,
2    totally new.
3            But let's just sort of put it into a
4    more practical way of thinking about this, which
5    is, you know, as lawyers, we all speak with
6    clients and, you know, sometimes you could say to
7    a client, you know, I need to advise you, you
8    face potential liability because of facts A, B,
9    and C.
10            And, you know, that's sort of
11   after-the-fact discussion with a lawyer, and it
12   doesn't mean that A, B, and C, now the person who
13   has been having that discussion with their lawyer
14   maybe didn't know about A, B, and C or did not
15   know.  In fact, did not know about A, B, and C
16   beforehand, that they then have to disclose A, B,
17   and C to the other side.
18            Now, we're not blocking getting A, B,
19   and C if you can -- you know, allowing all -- you
20   know, get those communications about what
21   happened at the time, the documents about what
22   happened at the time.  We're not saying facts A,
23   B, and C are privileged.  What we're saying is
24   the communication with the lawyer.
25            And if that's how you exclusively

1    learned of the fact, that's why that

2    communication is privileged, because it's the

3    context that counts there.  It doesn't immunize

4    the fact from discovery.  We're not saying that.

5              And then, you know, secondarily, I think

6    Mr. Forge is suggesting that we're then using

7    this as some sort of sword, but we're not.

8    Right?  All of these things he's referred to, you

9    know, employment actions, whatever else, we're

10   not -- those are not things that we've said, oh,

11   you know, we should win the case because of some

12   finding in an investigation or any of these

13   points he's referring to.  They're somewhat, you

14   know, arcane issues, really.  You know, I'm sure

15   they're important to the individuals involved,

16   but they're not, they're not, you know, where

17   we're using it as some sort of sword to win our

18   claim or anything like that.

19             And so, you know, the facts that these

20   things get, you know, revealed in a deposition

21   can then be used as leverage.  And I think one

22   important context of that is that this -- there

23   were two rounds of 30(b)(6) deposition.  There

24   was a first round, and the judge said it needs to

25   be more specific; needs to be -- you know,

Page 62

```
 1    FirstEnergy should give more information about
 2    its knowledge.  We're ordered to do that, and so
 3    we did that.
 4             And this deposition they're referring
 5    to -- not the Strah one, the one where they're
 6    saying we made -- you know, used the testimonial
 7    aid and so on.  This was because we were ordered
 8    to give more information about FirstEnergy's
 9    knowledge.  And then we do that and they turn
10    around and say, well, you've spoken about
11    FirstEnergy's knowledge, now there's waiver.
12             And, you know, this feels like a gotcha
13    game.  And, you know, we're trying to be
14    cooperative.  We're trying to give information
15    about knowledge but, at the same time, you know,
16    we don't think that the way this should work is
17    that we do so and all of a sudden this is, you
18    know, some giant waiver when now they get to get
19    to all of the lawyers' files.
20             And just to sort of turn to one other
21    point raised by Mr. Forge.  You know, he said
22    that the case law -- he doesn't agree with the
23    case law on sharing of work product with
24    auditors, not waiving work product.  You know,
25    the Deloitte case is very clear on that.  It was
```

Page 63

1   then cited by the Sixth Circuit with approval in

2   the new Phoenix case.

3          So the Sixth Circuit has, you know,

4   addressed this.  And I think across the country,

5   actually, in every circuit that I'm aware of,

6   the, you know, circuits agree with this on

7   auditor work product issues.

8          The cases he is referring to are

9   situations where the information provided to an

10  auditor was itself public.  We're obviously not

11  saying public information is privileged, right?

12  That's not what we're saying.  If something is

13  out there in the public, of course, you know,

14  that's not privileged.  That's not what we're

15  saying.  But, you know, sharing confidentially

16  with an auditor, you know, that is protected by

17  work product, and I think the law is very solid

18  on that question.

19          So, you know, happy to address any other

20  questions.

21          MR. JUDGE:  I appreciate that.  And I

22  appreciate both sides' arguments here.

23          I will say, Mr. Rein, the issue of when

24  a fact is discoverable and how that fact came

25  into the knowledge of the recipient, I

Page 64

1   understood -- I think I understood your argument

2   a lot better in your last rebuttal here than I

3   did your first time around.  Not a criticism of

4   you.  I know you were just presented with the

5   Strah depo transcript today and, you know, you're

6   thinking on your feet as you go.

7           Well, one thing that -- God help me --

8   your comment a moment ago -- this made me think

9   because you said there was no opportunity for

10  briefing on this issue.  They just raised it now.

11          You know, the last thing in the world I

12  want to do is add to the pile of -- I think it's

13  five briefs on this issue.  But I will say this:

14  My first impression of your argument, your

15  response to that, it seemed very lawyerly to the

16  extent that I was not sure exactly what you were

17  saying.

18          I think, having heard your rebuttal, I'm

19  much more clear on your position.  I'm not saying

20  I agree with that position or disagree with that

21  position, but I think I understand it more.  But

22  I also want to afford the parties time for

23  thoughtful consideration, too.

24          I know I'm going to regret this because

25  it opens the door to a lot of nonsense later on,

Page 65

1    but if I were to have each side brief that simple

2    issue for me, the fact issue as discussed today

3    and as within the contours of the new evidence

4    that was raised today, how many pages do you need

5    to do that and how soon could you get it to me?

6              MR. FORGE:  Mr. Judge, can I --

7              THE REPORTER:  I can't hear you.

8              MR. JUDGE:  You're on mute, sir.

9              MR. FORGE:  Sorry.

10             May I make a suggestion that might avoid

11   the need for any additional briefing?

12             MR. JUDGE:  By all means.

13             MR. FORGE:  Let's -- I'm going to take

14   Mr. Rein's statement at face value.  He said the

15   facts are not privileged.  The only thing that's

16   privileged is the communication from the lawyer

17   to the client about those facts.

18             Why don't we just depose the lawyers?

19   We'll depose the lawyers about the facts which

20   are not privileged.

21             MR. REIN:  Well --

22             MR. FORGE:  And we won't discuss

23   anything about their communications of those

24   facts to the client.  Just the facts.

25             MR. JUDGE:  David?

1    MR. REIN:  Information developed through

2 a work product investigation unknown to a lawyer

3 is something protected by work product, right?

4 That's classic work product.  You know, what does

5 a lawyer know.

6    A lawyer isn't a party.  A lawyer is not

7 a witness to what happened.  Right?  We're

8 talking about people who have come in.  Squire

9 was actually chosen because they had had no

10 involvement with FirstEnergy, or virtually none.

11    And so, you know, they're not witnesses.

12 They're lawyers.  It would be like me saying,

13 well, I'm just going to depose Jason about facts

14 he knows about the case that he's developed.  You

15 know, that's not privileged.  That's not work

16 product.  I mean, that, that plainly falls within

17 classic privilege, classic work product.  That is

18 not a solution.

19    I mean, we're certainly happy to, you

20 know, address this now or a question.  If that's

21 what this motion is now boiling down to, sort of

22 a question of, you know, what is a proper

23 instruction with respect to, you know, how a

24 deponent should address information learned from

25 counsel and exclusively from counsel, you know,

Page 67

```
 1   we're happy to, to brief that.  And, you know,
 2   I'm glad if that's -- you know, I think that's a
 3   constructive way to try to, you know, advance
 4   things.  We're certainly happy to do that and to
 5   do it in relatively short briefs.  Obviously, the
 6   plaintiff is the proponent of that.  So if they
 7   tell us they need X pages, I'm sure, you know,
 8   we're likely to agree to the same.  But, you
 9   know, I think that's, you know, a constructive
10   avenue for trying to move this forward.
11            MR. JUDGE:  Mr. Forge, my reaction to
12   your proposal, as much as I'd like to bind to
13   something to avoid any additional briefing and
14   reading on my part, my gut reaction is nice try.
15   But I, I could not imagine what that depo would
16   look like if you're deposing the lawyers.  I
17   think I would just have to go to the depo because
18   I think you guys would be calling me every five
19   minutes.
20            MR. FORGE:  Well, I think it would be,
21   it would be a matter of -- and we're talking
22   about facts.  Again, we're talking about facts
23   that they've disclosed.  So it would be a matter
24   of -- and, again, they're saying these facts are
25   not privileged.  So it would be a matter of just
```

Page 68

1    simply laying the foundation for these facts.

2           Again, they're playing both sides of

3    this thing.  And by doing it this way, they're

4    essentially taking these facts out of the case

5    because they're saying we can't, we can't

6    question the people who discovered these facts

7    and we can't question the people with whom they

8    shared these facts, so what else are we left

9    with?  I mean, what else can we do?  You know,

10   they have to give us somebody because they've

11   certainly disclosed these facts.

12          So either they give us the people who

13   received these facts or they give us the people

14   who uncovered these facts.  But I don't see how

15   they can -- you know, I'm happy to submit

16   additional briefing, but I don't think we really

17   need to because I think we've reached a point now

18   where they've got to pick.  Either get the people

19   who received -- either give us the people who

20   received the facts, and they could discuss those

21   facts with us, or give us the people who

22   generated those facts and they could discuss

23   those facts with us.

24          But, otherwise, they're saying we're not

25   entitled to ask anybody about the facts.

Page 69

1          MR. REIN:  This is just absolutely not

2    correct, right?  They are entitled to ask people

3    about the facts, and they have done so.  They've

4    been doing this consistently.  There's no

5    blocking of the facts.  They have the documents

6    and can ask the documents [sic] about the facts.

7    They have witnesses and they can ask witnesses

8    about the facts.  And they've spent many hours

9    asking witnesses about the facts and learning

10   about the facts that way, right?  That's how

11   lawyers build cases.  That's what they've done.

12          Saying you go to the next level and you

13   ask the lawyer about the facts, that's not how

14   it's done.  If I want to depose Jason's client, I

15   can ask the client about facts, but I don't go to

16   Jason and depose Jason about what he's learned

17   from his client about the facts, right, because

18   that is classic work product.  It's classic

19   privilege.

20          And so we're very happy to brief this

21   issue.  I think it sounds like it would be very

22   helpful in just crystalizing the issue, and I'm

23   sure we could do so rapidly and I'm sure we could

24   do so quickly, as I know you are keen to resolve

25   this, you know, rightly and to do so promptly.

Page 70

1    And, you know, we're very happy to do that.

2          I mean, I'd suggest maybe, say, ten

3    pages a side and, you know, some fairly, you

4    know, a rapid briefing schedule.  And we can, you

5    know, put all of this in front of you, crystalize

6    the issues on that and join issue.

7          MR. JUDGE:  My thought was -- I was

8    thinking less than ten pages, but sure, ten pages

9    per side.  I think concurred briefing with the

10   same deadline.  No response permitted.  And I

11   think -- how soon, how soon do you need?  How

12   long?

13         MR. FORGE:  I don't know what we're

14   briefing.  My only -- my issue on this front is

15   very simple:  Are they allowed to tell witnesses

16   not to answer questions if the facts that would

17   be responsive to the question came from a lawyer.

18         MR. JUDGE:  That's part one of your

19   brief.

20         MR. FORGE:  Yeah.  So okay.  So if

21   that's --

22         MR. JUDGE:  Yeah.  Part two of your

23   brief, if you want to raise the issue, would be,

24   well, if we're not allowed to ask those

25   witnesses, can we depose the attorneys.

```
                                            Page 71

  1            MR. FORGE:  Okay.  You got it.

  2            MR. JUDGE:  So yeah.  I mean, it's --

  3    those were the two issues that sort of developed

  4    today.  I think they could both be addressed

  5    within ten pages.  These are not -- you're not

  6    going to find a lot out there, I think, on these

  7    issues, you know, in terms of case law, but I

  8    would be interested in any case law and any

  9    secondary sources you can find.

 10            But I would want a clear articulation of

 11    each party's position.  I think I understand you

 12    well, but I want it in writing and I want some

 13    considered thought into it.

 14            Because it seems to me that, you know,

 15    if it's as easy an overlap as everyone is

 16    suggesting, you know, a series of stipulations

 17    can take care of a number of these issues, you

 18    know.  Some agreement between the parties can

 19    take care of some of these issues.

 20            But, you know, my inclination, my -- let

 21    me try to couch this carefully.  My overarching

 22    inclination at this point is that somebody has to

 23    answer to the facts, and asking counsel about

 24    them is a very novel proposition to me.  And

 25    questioning the witnesses involved, sure, but
```

1   when the witnesses learn the facts only from
2   counsel involved, it gets a little more murky.
3           You know, Mr. Rein's original answer to
4   me was more -- murkier than I hoped in clearing
5   it up, but I understand his position a little
6   better now.  I will understand I think the
7   position much better when everyone has time to
8   put it to writing and think about it and polish
9   it.
10          So for ten-page briefs, concurrent
11  briefs on the issue, how quickly can you get it
12  to me?  And give yourself enough time that -- you
13  know, I don't want you to abuse your associates
14  with their working, you know, overnight on this.
15  A realistic timetable, but promptly, how soon?
16          MR. REIN:  Could I, could I suggest --
17  and I'm a bit worried that we won't join issue
18  with one another and that we'll be ships passing
19  in the night to a degree; although, your
20  articulation of the two questions was helpful.
21          Could I suggest instead we do staggered
22  but do so quickly?  So, for example, you know,
23  plaintiffs get a week, we respond in a week?
24          MR. JUDGE:  No.  Concurrently.
25          MR. FORGE:  One week is fine for both

1   sides.  And I think, you know, Mr. Judge, you

2   just stated the two issues.  We're not going to

3   pass in the night.  We're going to address those

4   two, those two questions.

5          MR. JUDGE:  Yeah.  If, in reviewing your

6   notes of this hearing and all the attorneys

7   involved and looking at the expedited transcript

8   that you would likely order, if there's a lack of

9   clarity as to what the two issues are, contact

10  me, copying both sides, and we will discuss that.

11  We can jump on a call and we can hash it out.

12          But I think the issues are fairly clear;

13  the answers are less clear.  But, to me at least,

14  the issues are pretty simple issues.  It's a

15  pretty simple issue, but it's going to be

16  difficult to research, I think, however.

17          So but ten days.  There's ten pages

18  within you said a week.  So by next Thursday,

19  close of business, the briefs could be in to me?

20          MR. FORGE:  Yes for plaintiffs.

21          MR. JUDGE:  And I want to be fully

22  transparent with you.  My goal would be to get a

23  decision out by that Monday or Tuesday.  So the

24  briefs are going to be due on the 5th.  I'm

25  getting my COVID vaccine on the 6th.  Everybody

1    tells me I will be dead on the 7th and then

2    suddenly spring back to life sometime on Sunday

3    after the vaccine.  So I hope to get something

4    out to you that Monday.  If it takes until

5    Tuesday or, God forbid, even Wednesday, it's not

6    that I've forgotten about you or you've slid down

7    the rank of importance; it's simply because I'm

8    down and out on my back for a day on the couch.

9            In terms of our next -- and I thank you

10   for your arguments today.  This has been helpful

11   and illuminating, and I think we're going to be

12   able to knock out, you know, at least five of the

13   pending briefs, you know, pretty, pretty quickly

14   here.

15           We do have the issues with Energy Harbor

16   and the motion to compel from the nonparties, as

17   well, that we need to deal with, as well as the

18   issues raised in the joint status report.

19           Let's go off the record now.

20           THE REPORTER:  Okay.  Off the record.

21        (Discussion off the record.)

22      (Conference concluded at 12:55 p.m.)

23                 - - - - -

24

25

Page 75

1                    CERTIFICATE
2
3  The State of Ohio,    )
4                        )        SS:
5  County of Cuyahoga.   )
6
7         I, Kristin Wegryn, a Notary Public
   within and for the State of Ohio, duly
8  commissioned and qualified, do hereby certify
   that the proceedings given was by me reduced to
9  stenotypy, afterwards transcribed, and that the
   foregoing is a true and correct transcription of
10 the proceedings given.
11        I do further certify that this
   proceeding was taken remotely at the time and
12 place in the foregoing caption specified and was
   completed without adjournment.  I do further
13 certify that I am not a relative, counsel or
   attorney for either party, or otherwise
14 interested in the event of this action.
15        IN WITNESS WHEREOF, I have hereunto set
   my hand and affixed my seal of office at
16 Cleveland, Ohio, on this 29th day of September
   2023.
17
18
19
20
21
22
23
24        Kristin Wegryn, RMR, CRR
          Notary Public State of Ohio
25        Commission expiration:  July 23, 2028

**[& - 600]**                                                          Page 1

| & |
|---|
| **&** 2:4,10,14,22 3:3,8,12,21 4:8 4:12 5:4 6:15 6:19 7:3,8,13 |

| 1 |
|---|
| **10** 10:18 |
| **10004** 3:22 |
| **10013** 3:9 |
| **10017** 7:10 |
| **10019** 6:20 |
| **1100** 7:19 |
| **1114** 2:18 |
| **1152** 4:12 |
| **11747** 2:15 |
| **11:00** 1:14 |
| **11:18** 9:18 |
| **11th** 7:9 |
| **1200** 5:18 |
| **125** 3:22 |
| **127** 5:5 |
| **12:55** 74:22 |
| **150** 3:4 |
| **15th** 4:12 |
| **1650** 2:11 |
| **17** 28:21 |
| **1701** 2:23 |
| **1735** 5:12 |
| **1900** 2:5 |
| **19103** 2:23 5:13 |

| 2 |
|---|
| **200** 2:15 |

**2000** 5:5
**20001** 6:16
**20005** 4:13
**2015** 52:5
**2019** 40:2
**202.349.8065** 4:14
**202.942.5631** 6:16
**2020** 10:13 14:1 40:2 51:3
**2021** 34:14
**2023** 1:14 9:17 54:10 75:16
**2028** 75:25
**21** 25:2 28:9
**212.355.9500** 3:10
**212.450.3976** 7:10
**212.558.4000** 3:23
**212.836.7123** 6:20
**215.665.8500** 5:13
**215.963.5000** 2:24
**216.304.4970** 4:5
**216.586.3939** 6:12
**216.621.0200** 5:6

**216.696.2678** 7:20
**21st** 14:1
**2232** 75:21
**22nd** 54:10
**23** 75:25
**250** 3:8,16 6:19
**263** 56:11
**27** 28:1
**275** 3:12
**28** 1:14
**28th** 9:17
**2900** 7:14
**29th** 3:13 75:16
**2:20** 1:4 9:20

| 3 |
|---|
| **30** 41:16 42:19 47:19 52:4 61:23 |
| **30326** 2:11 |
| **30799** 4:3 |
| **312.984.5380** 7:5 |
| **325** 6:7 |
| **330.208.1000** 5:19 |
| **330.535.5711** 4:19 |
| **330.690.4496** 8:4 |
| **3424** 2:10 |
| **345** 4:4 |
| **3785** 1:4 9:20 |
| **388** 4:17 |

| 4 |
|---|
| **4000** 7:4 |
| **41** 7:13 |
| **415.956.1000** 3:14 |
| **43065** 3:4 |
| **43214** 3:17 |
| **43215** 2:19 5:23 6:8 7:14 |
| **44113** 7:20 |
| **44114** 5:6 6:12 |
| **44124** 4:4 |
| **44308** 5:18 8:4 |
| **44311** 4:18 |
| **444** 7:3 |
| **450** 7:9 |
| **45202** 4:9 |

| 5 |
|---|
| **50** 5:17 |
| **500** 4:18 |
| **513.721.4450** 4:10 |
| **51st** 5:12 |
| **52** 5:22 |
| **53** 54:9 |
| **55th** 6:19 |
| **58** 2:14 |
| **5th** 73:24 |

| 6 |
|---|
| **6** 41:16 42:19 47:19 52:4 61:23 |
| **600** 4:8 6:7 |

**[601 - aim]**                                                    Page 2

| | a | | |
|---|---|---|---|
| **601** 6:15 | | 66:9 | 55:14,16,21,24 |
| **60606** 7:4 | **a.m.** 1:14 | **add** 22:25 23:3 | 56:1,2 |
| **6128283** 1:23 | **aaron** 6:18 | 23:4,6 34:18 | **advise** 24:24,25 |
| **614.227.2000** | **aaron.miner** | 46:14 58:12 | 40:6 60:7 |
| 7:15 | 6:21 | 64:12 | **advising** 38:23 |
| **614.281.3655** | **abingdon** 27:21 | **addison** 6:2 | **affidavit** 26:5 |
| 6:8 | **able** 25:14 | **addition** 10:16 | 27:25 |
| **614.462.2319** | 74:12 | **additional** 9:11 | **affirmative** |
| 3:17 | **absolutely** | 11:11 58:11 | 50:22 52:6 |
| **614.464.6250** | 24:10 35:25 | 65:11 67:13 | **affirmatively** |
| 5:23 | 36:4 38:8 42:5 | 68:16 | 45:3 51:17 |
| **614.488.0400** | 69:1 | **address** 9:4 | **affixed** 75:15 |
| 2:19 | **abuse** 72:13 | 10:4 22:18 | **afford** 64:22 |
| **614.763.2316** | **accept** 39:6 | 46:24 49:25 | **ago** 56:18 64:8 |
| 3:5 | **access** 14:16,22 | 58:8,8 59:9,19 | **agree** 13:12 |
| **619.231.1058** | 35:25 | 63:19 66:20,24 | 47:10 49:15 |
| 2:6,12,16 | **accurate** 50:11 | 73:3 | 62:22 63:6 |
| **655** 2:5 | **acting** 21:25,25 | **addressed** 63:4 | 64:20 67:8 |
| **6th** 73:25 | 54:13 55:9 | 71:4 | **agreed** 15:10 |
| | 56:1 | **adjournment** | 36:25 |
| **7** | **action** 1:4 3:7 | 75:12 | **agreement** 15:9 |
| **700** 4:9 | 23:9 26:20 | **admissions** | 17:16 71:18 |
| **76** 8:3 | 44:20,21 50:11 | 17:24 | **agreements** |
| **7th** 74:1 | 50:13 51:5 | **admitted** 22:7 | 34:15 |
| **8** | 58:24 75:14 | **advance** 67:3 | **ahead** 39:12 |
| **8th** 3:9 | **actions** 1:6 | **adversary** | 56:11 59:2,4,6 |
| **9** | 31:7 61:9 | 29:13 35:2 | 59:7 |
| **900,000** 53:17 | **actual** 12:2 | **adversary's** | **aid** 41:12,17 |
| **901** 6:11 | 21:25 22:21 | 24:6 46:22 | 42:8 43:11,14 |
| **92101** 2:6 | 26:3 | **adverse** 35:4 | 43:16 44:18 |
| **94111** 3:13 | **actually** 11:19 | **advice** 16:8,9 | 62:7 |
| **950** 7:19 | 21:13 27:9,10 | 25:16 26:22 | **aided** 13:8 |
| **9980** 3:3 | 31:4,4 32:4 | 27:10 28:7 | **aids** 18:10 |
| | 34:11 47:4 | 37:22 39:24 | **aim** 41:5 |
| | 48:13 63:5 | 45:25 48:8,9 | |

[air - b]

**air** 10:24
**akron** 4:18
  5:18 8:4
**align** 31:24
**allegations**
  24:21 30:20
  31:6,8 39:16
  51:13
**allowed** 17:12
  70:15,24
**allowing** 19:18
  35:25 60:19
**alternative**
  32:17
**amount** 26:12
**analysis** 26:22
  28:7 41:1 46:1
  46:3,23
**analyze** 24:24
**ancillary** 33:4
  33:14
**anderson** 6:3
**andrew** 2:13
  5:16 6:14
**andrew.johns...**
  6:17
**answer** 16:24
  18:6 36:20
  54:24 55:2,20
  56:5 57:19
  70:16 71:23
  72:3
**answered** 57:4
**answers** 73:13

**anticipated**
  26:2
**anybody** 68:25
**anymore** 40:11
**anyway** 30:23
  32:14
**apguran** 5:19
**apparent** 10:9
  10:21
**apparently**
  35:10
**appearances**
  2:1 3:1 4:1 5:1
  6:1 7:1 8:1
**appeasing**
  17:23
**apply** 45:20
  50:10
**appreciate**
  22:10 23:1,14
  51:25 63:21,22
**approach**
  25:12
**approval** 63:1
**approved** 43:5
  53:19
**arcane** 61:14
**argument** 9:23
  35:9 64:1,14
**arguments**
  63:22 74:10
**arnold** 6:15,19
**arnoldporter....**
  6:17,21,21

**arose** 19:17
**arrests** 10:14
  13:13 50:21
**arthur** 7:13
**articulation**
  71:10 72:20
**artificial** 31:10
**asked** 16:5,14
  16:19 17:4
  54:12,20 55:13
  56:14 57:1
**asking** 20:3,5
  24:3 37:17
  38:25 55:24
  56:13 69:9
  71:23
**asks** 56:8
**aspect** 11:25
  16:6
**asserting** 19:21
**assertion** 13:9
**assessing** 13:9
**assessments**
  53:1
**assisting** 12:3,4
**associated**
  54:19
**associates**
  72:13
**assuage** 11:2
  26:16 27:24
**assume** 35:8
**assurance**
  11:16

**atlanta** 2:11
**attacking** 19:17
**attorney** 11:18
  12:12 25:5
  39:21,23 45:11
  75:13
**attorneys** 52:18
  70:25 73:6
**auditing** 35:5
**auditor** 10:19
  29:5,10,13,18
  30:1,4,9 34:21
  34:22 35:4
  49:23 50:5
  63:7,10,16
**auditors** 62:24
**authorized**
  29:20
**avenue** 6:11,15
  7:9,19 67:10
**avoid** 65:10
  67:13
**await** 28:14
**aware** 13:21
  19:5 20:13
  21:4 50:13,20
  51:8,11,14,21
  63:5
**axelrod** 5:10
  22:1,2
**axelrodd** 5:14

| b |
| --- |

**b** 41:16 42:19
  47:19 52:4
  60:8,12,14,15

**[b - case]**

60:16,18,23
61:23
**back** 16:12
23:23 27:15
36:1,6 38:14
53:8 74:2,8
**baker** 5:4
**bakerlaw.com**
5:7,7,8,8
**ball** 23:15
**ballard** 5:11
**ballardspahr....**
5:14,14
**barrage** 28:15
**based** 27:8 34:7
41:4 51:24
55:11
**basic** 23:24
**basically** 43:4
47:12
**basil** 2:18
**basis** 45:18,18
**battery** 3:12
**behalf** 2:2,21
3:2,7,19 4:2,7
4:16 5:2,10,16
5:21 6:2,14 7:2
7:7,17 8:2 10:3
23:5 55:3
58:13,16,21,23
**believe** 11:23
**benefit** 45:8
**bernstein** 3:8
3:12

**better** 64:2
72:6,7
**beyond** 15:23
**bind** 67:12
**bingaman**
18:21 19:3,4
52:2
**bit** 9:15 29:3
35:10 48:14
72:17
**blocking** 35:21
35:23 37:19,19
39:18 40:23
60:18 69:5
**bloomfield**
7:12
**board** 13:4
24:23,24 26:14
26:23 28:13
33:9 34:8,9
44:19,21 50:10
50:12,19,24
51:7,11,14,19
**boards** 50:18
**bockius** 2:22
**boiling** 66:21
**bottom** 10:25
25:15 45:9
48:5
**boulevard** 6:7
**bpo** 4:10
**bradley** 18:21
19:3,4 52:1
**breach** 34:24

**break** 16:11
**brewster** 3:3
**brian** 4:7
**brief** 34:7
37:14 59:8
65:1 67:1
69:20 70:19,23
**briefing** 9:11
64:10 65:11
67:13 68:16
70:4,9,14
**briefings** 9:10
**briefly** 59:5
**briefs** 64:13
67:5 72:10,11
73:19,24 74:13
**bringing** 57:23
**broad** 3:22
31:21 42:5
50:18
**broader** 12:16
12:20 13:4
**broadway** 2:5
**broke** 25:2
**brouse** 4:17
**brouse.com**
4:19
**build** 41:3
69:11
**burden** 13:1
**burton** 4:11
**business** 10:11
13:18,23 14:10
14:14,17 27:14
34:5 73:19

**c**

**c** 4:16 6:14 9:1
60:9,12,14,15
60:17,19,23
**cabraser** 3:8,12
**california** 2:6
3:13
**call** 73:11
**callahan** 6:18
**called** 43:3
**calling** 67:18
**candid** 52:17
52:21
**candor** 18:18
53:4
**capital** 14:16
14:22 34:4,5
**caption** 75:12
**care** 71:17,19
**cared** 14:20
**carefully** 71:21
**carole** 5:2
48:14 49:10
58:20
**carry** 48:13
**case** 9:20 12:17
15:24 17:25
18:17 24:11
30:6 31:24
32:5 35:16
40:25 43:19
44:24 45:7,14
46:7,14,21
48:17 49:15,19
50:1,2 52:20

[case - company]                                                    Page 5

52:20 61:11
62:22,23,25
63:2 66:14
68:4 71:7,8
**cases** 14:10
24:13,16 25:10
31:15 32:4
44:2,25 49:14
63:8 69:11
**categories**
51:21
**caused** 30:10
**caution** 37:10
**center** 4:13
**ceo** 21:25 54:13
55:9
**certainly** 14:24
15:2 23:19
25:10 45:16
46:13 66:19
67:4 68:11
**certificate** 75:1
**certify** 75:8,11
75:13
**chack** 2:21 3:2
54:19
**chack's** 54:6,15
54:22 55:15
56:4
**change** 25:12
28:19 33:12,14
**changes** 34:15
**charles** 5:2
**chicago** 7:4

**chose** 16:13
**chosen** 66:9
**christopher** 6:4
**chronology**
33:20
**chuck** 20:14
48:11,13,18,20
53:13,14,15,19
53:21,23
**cincinnati** 4:9
**circuit** 25:22
49:25 50:8
63:1,3,5
**circuits** 63:6
**circumstances**
14:9 46:17
**cite** 24:12,17
44:2
**cited** 24:11
63:1
**civil** 1:4 13:25
26:10 28:15
33:8 40:15
**claim** 44:14
61:18
**claims** 40:15,15
40:16 41:3
**clarify** 22:3
**clarity** 73:9
**class** 2:2 51:13
**classic** 18:15
44:11 66:4,17
66:17 69:18,18
**clear** 20:2 38:4
38:8 39:7

43:17 54:17
62:25 64:19
71:10 73:12,13
**clearing** 72:4
**clearly** 45:10
**cleveland** 5:6
6:12 7:20
75:16
**client** 12:12
28:24 40:7,8
45:11 60:7
65:17,24 69:14
69:15,17
**clients** 38:24
60:6
**close** 44:24
73:19
**code** 20:14
48:19
**codes** 49:6
**colloquy** 59:17
59:25
**columbia** 4:13
**columbus** 2:19
3:17 5:23 6:8
7:14
**come** 36:8 44:8
48:10 51:22
66:8
**comes** 22:19
43:8
**comfort** 11:16
**coming** 40:14
40:19

**comment** 64:8
**commission**
75:25
**commissioned**
75:8
**committed** 15:6
**common** 13:9
24:23
**commonly**
41:16
**communicated**
57:17,20
**communication**
37:13 38:9,11
39:5 55:14
56:3 59:21
60:24 61:2
65:16
**communicati...**
16:6 24:5 32:1
37:20,21 38:20
38:23 39:10
41:9 43:24
46:2,23 60:20
65:23
**companies**
24:20 25:13,13
30:7
**company** 8:3
22:5,5 24:25
25:5 27:9
29:17 30:14,22
32:14 34:4,14
35:4,18 40:5
52:8,11

**[compel - course]** Page 6

**compel** 9:24
74:16
**complaint**
30:21
**complete** 11:10
11:22
**completed** 11:6
75:12
**completely**
46:17
**complicate**
46:14
**complicated**
38:3 46:5
**complicating**
17:24
**complicit** 52:9
**conceding**
49:10
**concept** 31:12
**concepts** 29:23
**concern** 15:25
**concerned**
13:21 14:15
**concerning**
10:5 18:7
**concluded** 49:1
74:22
**concluding**
51:11
**conclusion**
43:17 48:10
49:6,9,12 51:8
51:15,16,22
52:11 53:24

**conclusions**
11:19 18:13
19:8 28:17,18
42:14 43:16,21
48:22 51:24
52:3,24 53:1
**concurred** 70:9
**concurrent**
72:10
**concurrently**
72:24
**conduct** 11:20
14:5 20:15
25:14 33:17
48:19 49:7
50:13,15 56:9
56:15,21
**conducted** 13:2
24:6,16 25:6
51:10
**conference**
1:10 74:22
**conferred**
16:12
**confidential**
34:23 35:1
**confidentiality**
9:4 15:18,20
15:22
**confidentially**
34:21 63:15
**confirm** 10:16
21:1
**confirmed** 17:1
17:2,7 21:25

**confronted**
12:21
**consideration**
64:23
**considered**
71:13
**consistently**
69:4
**constructive**
67:3,9
**consulting** 32:8
**contact** 73:9
**containing**
57:12
**content** 39:4
**contention** 50:9
**context** 10:24
13:16 40:6,14
61:3,22
**continued** 3:1
4:1 5:1 6:1 7:1
8:1 28:6
**continues**
35:18
**contours** 65:3
**contrary** 18:8
**conversation**
20:4 39:4
**conveyed** 55:6
55:17
**convince** 15:1
**cooperate**
33:19,22
**cooperative**
33:20 41:6

62:14
**copying** 73:10
**corp** 1:4 3:19
4:2 9:19
**corporate**
13:22
**correct** 17:7
22:9 48:15
54:15 57:2
69:2 75:9
**corrected** 21:14
52:1
**couch** 71:21
74:8
**counsel** 1:10
8:8 11:8 13:15
16:6,25 17:3,5
17:11,14,16,20
22:24 23:12
24:7 37:16
54:14,16,18
55:1,6 56:24
58:10 66:25,25
71:23 72:2
75:13
**count** 42:24
**country** 63:4
**counts** 61:3
**county** 75:5
**couple** 18:20
29:6
**course** 23:25
27:5 33:8,9
37:23 40:24
47:10 59:25

[course - difficult]                                    Page 7

63:13
**court** 1:1 43:22
53:8
**courts** 49:25
**covered** 25:19
45:11,11
**covid** 73:25
**created** 31:17
32:9
**creating** 20:17
**credit** 20:8
34:15
**crendon** 5:7
**criminal** 13:25
26:9 28:15
30:25 33:8
40:16
**criticism** 64:3
**cromwell** 3:21
**cross** 16:5
56:12
**crr** 1:20 75:24
**crystalize** 70:5
**crystalizing**
69:22
**culture** 13:22
**currently** 9:18
**cuyahoga** 75:5
**cv** 1:4 9:20

**d**

**d** 4:2 5:11 6:4
9:1
**d.c.** 4:13 6:16
**daniel** 5:3

**dave** 22:1
**david** 3:19 5:10
7:12 23:3,15
65:25
**davis** 7:8
**davispolk.com**
7:11
**day** 6:6,10 13:5
14:1 25:6 27:4
29:20 74:8
75:16
**dayco** 44:3
**days** 13:14
28:22 73:17
**dbloomfield**
7:15
**dead** 74:1
**deadline** 70:10
**deal** 14:13 27:4
36:21,22 74:17
**dealing** 13:19
30:14
**decades** 53:8
**december**
34:14
**decision** 33:2
73:23
**decisions** 33:4
33:10,17,25
37:2 41:23
55:10,11
**decisive** 44:19
44:21 50:11,13
51:5

**declaration**
28:9
**deeming** 19:24
**defend** 51:17
**defendant** 2:21
3:2,19 4:2,7,16
5:2,10,16,21
6:14 7:2,17 8:2
21:14 23:5
52:19
**defendants** 6:2
7:7 16:4 20:8
22:22
**defending**
40:15,15,16
50:24,25 51:1
**defense** 44:13
44:20,22 50:23
**defenses** 41:4
**deferred** 15:8
17:15
**degree** 72:19
**delayed** 10:12
**deloitte** 62:25
**demetriou** 6:3
**demonstrates**
12:2
**dennis** 2:21 3:2
54:6
**department**
35:8,11,13,17
**depending**
52:15
**depo** 21:7
39:20 64:5

67:15,17
**deponent** 66:24
**depose** 65:18
65:19 66:13
69:14,16 70:25
**deposing** 67:16
**deposition** 16:3
21:18 36:15,19
37:8 47:9 54:5
54:11 61:20,23
62:4
**depositions**
18:7 36:7
46:12
**described**
18:22 25:10
41:12
**describing**
24:22 59:18
**designation** 9:5
**details** 41:19
**determine** 14:6
19:11
**develop** 28:18
33:11
**developed** 66:1
66:14 71:3
**dhutton** 2:16
**diego** 2:6
**different** 13:16
27:3 28:12
32:3,22,23,25
44:1 52:15
**difficult** 73:16

**dig** 34:6
**direct** 3:7 23:9
  58:24
**directed** 10:10
**direction** 36:20
**directors** 25:4
  26:6
**disagree** 64:20
**disclosable**
  59:13
**disclose** 15:23
  17:18 19:12,13
  20:21 47:24
  49:8,11 52:16
  56:25 60:16
**disclosed** 18:4
  47:22 53:18,25
  58:2 67:23
  68:11
**discloses** 18:13
**disclosing**
  17:13 18:16
  19:14 47:18
**disclosure**
  11:21 12:10
  44:7,11 50:5
**disclosures**
  15:5,24 19:7
  49:17,18,19
**discoverable**
  63:24
**discovered**
  68:6
**discovery**
  17:25 46:12,15

61:4
**discuss** 9:11
  17:12 19:19
  36:23 48:2
  65:22 68:20,22
  73:10
**discussed** 38:11
  59:13 65:2
**discussing** 39:1
**discussion** 40:3
  40:10,11,12
  60:11,13 74:21
**discussions**
  30:8 36:13
  40:14
**dispute** 50:7,7
**disputes** 46:9
**distinction**
  24:10
**district** 1:1,1
  49:24 50:3,3
**division** 1:2
**dmansfield** 3:5
**document** 1:6
  31:17,20 35:15
  43:1
**documents**
  10:16 11:23,24
  12:1,6 24:4,13
  29:4 31:22,25
  35:16,19 36:3
  36:6 39:13
  42:22 60:21
  69:5,6

**doing** 17:21
  18:1 19:24
  32:8 35:20
  36:8 38:21
  45:4 48:15
  52:10 68:3
  69:4
**doj** 26:1,20,23
**donald** 4:7 5:21
  6:3
**door** 64:25
**douglas** 3:2 5:4
**dowd** 2:4,10,14
**dowling** 7:17
  22:22 23:6
  37:15 58:14
**dozens** 36:7,8
**dpa** 20:19
  47:19
**draw** 19:10
**drawing** 19:11
**drawn** 18:14
**drive** 54:3
**dshively** 5:8
**dual** 14:25
**dublin** 2:18
**due** 73:24
**duffy** 6:6
**duly** 75:7
**duration** 10:22
**dwarren** 5:7

**e**

**e** 5:2,10 6:5,18
  9:1,1

**earlier** 53:13
  56:6
**early** 19:14
**east** 5:22
**eastern** 1:2
  50:3
**easy** 71:15
**ebony** 52:18
**edt** 1:14
**effect** 34:13
**effectively**
  17:21 19:24
**efforts** 17:24
**egler** 2:9
**egregious**
  57:24
**either** 13:2,6,19
  22:13 42:12
  68:12,18,19
  75:13
**ejtaft** 5:24
**elements** 15:17
**elicited** 16:20
  17:3
**ellis** 7:18
**email** 19:1,2,3
  43:9 52:4
**emerson** 27:21
**emery** 7:3
**emily** 5:21
**employee** 18:22
  56:9,15,21
**employees**
  20:20 33:18

**employment**
33:2,3,10,16,25
41:23 61:9
**encourage**
23:17
**endeavor** 12:3
**endorsing** 55:9
**energy** 74:15
**enters** 39:4
**entertain** 9:22
**entire** 17:15
32:23 42:3
49:18
**entirely** 41:6
**entitled** 18:5
68:25 69:2
**equivalent** 51:2
**erase** 20:12
**eric** 7:8
**erika** 8:8
**especially** 30:6
**esq** 2:2,3,3,4,9
2:13,17,21,22
3:2,7,11,15,19
3:20,20,21 4:2
4:7,11,16 5:2,3
5:3,4,10,11,16
5:21 6:6,10,14
6:18,18 7:2,7,8
7:12,12,17,18
8:2
**essence** 10:8
**essential** 10:17
**essentially**
20:23 34:8

68:4
**establish** 12:25
13:1 14:18,23
**established**
17:14
**establishing**
44:13
**ethical** 34:24
**event** 75:14
**everybody**
73:25
**evidence** 43:20
65:3
**exact** 47:25
48:1 51:1
**exactly** 25:3
43:10 47:17
48:2 64:16
**examination**
16:5
**example** 32:6
42:17 43:19
48:10 72:22
**examples** 18:20
**exception**
11:23
**exchange** 54:25
**exclusively**
51:24 60:25
66:25
**expedited** 73:7
**expiration**
75:25
**explained** 28:4

**explains** 26:8
26:21 33:3
**exploiting** 20:9
**extensive** 11:14
15:25 19:7
51:10
**extent** 12:10
29:25 43:15
49:16 56:23
64:16
**extraordinary**
37:7 45:14
**extreme** 14:8
45:16

**f**

**f** 2:17 6:4,18
**face** 24:20
28:15 60:8
65:14
**faced** 27:9 31:8
**facilitated** 52:8
**fact** 12:1 15:14
22:4 25:1,25
28:6 30:3,5,16
31:16 33:16
35:18 37:15
38:22 40:11
41:1 49:11
55:22 59:13
60:11,15 61:1
61:4 63:24,24
65:2
**facts** 17:15
19:24,25 20:24
21:2 35:25

37:19,24 38:4
38:10,17 39:8
39:11,12,13,14
39:14,17,19,20
40:8,21 47:5,7
47:9,13,18,23
48:1,7,9 49:4,5
54:4,18,21
55:4,7,12,15,17
56:4 57:12,17
57:20 58:1
60:8,22 61:19
65:15,17,19,24
65:24 66:13
67:22,22,24
68:1,4,6,8,11
68:13,14,20,21
68:22,23,25
69:3,5,6,8,9,10
69:13,15,17
70:16 71:23
72:1
**factual** 39:4
**failed** 13:7
14:18
**fair** 26:12
**fairly** 70:3
73:12
**fairweather**
4:16
**fall** 44:3
**falls** 66:16
**far** 56:14
**favret** 7:17

**fdi** 32:8
**federal** 13:20
**feels** 62:12
**feet** 64:6
**figure** 33:22
**files** 24:1 59:22
  62:19
**filings** 14:12
**finally** 44:5
**financial** 10:12
  32:10,15
**financials**
  32:21
**find** 36:4 71:6,9
**finding** 61:12
**fine** 32:10
  37:23 57:21
  72:25
**firing** 54:6,15
  54:22 55:16,23
  56:4
**firm** 25:4 32:8
  46:7
**first** 10:4 11:4
  12:9 15:5
  23:17 26:17
  29:8 36:17
  50:1 52:25
  61:24 64:3,14
**firstenergy** 1:4
  3:19 4:2 8:2,3
  9:19 10:5,12
  11:7 12:5,5,22
  12:25 13:18
  16:11,20 17:9

17:17 18:13,21
18:23 19:5,11
22:19 29:4
48:18,19 51:23
54:7,14 55:5
55:11 56:8
57:7,11 62:1
66:10
**firstenergy's**
  17:3 20:14,19
  48:21 57:2
  62:8,11
**firstenergy.c...**
  8:5
**five** 64:13
  67:18 74:12
**floor** 3:9,13
  5:12 7:9
**fly** 37:2
**focus** 24:7
**focused** 46:21
**forbid** 74:5
**foregoing** 75:9
  75:12
**foremost** 11:4
**forge** 2:2 9:2,13
  10:2,3 12:19
  21:9,13,19,24
  22:7,17 23:6
  24:22 25:24
  26:13 27:2
  28:20 29:10
  30:19 31:13
  35:24 36:11
  41:11 42:17

47:2,3 58:4,5
59:2,4,10,18
61:6 62:21
65:6,9,13,22
67:11,20 70:13
70:20 71:1
72:25 73:20
**forgotten** 74:6
**form** 27:2
  31:14,17,19,23
**former** 25:5
**fornshell** 3:15
**forth** 38:14
**forward** 11:12
  67:10
**found** 44:10
**foundation**
  68:1
**four** 41:22
**francisco** 3:13
**frankly** 13:10
**freely** 19:14
**front** 13:14,17
  21:7 31:3 70:5
  70:14
**fronts** 19:20
**fully** 45:17
  73:21
**further** 75:11
  75:12

**g**
**g** 9:1
**game** 62:13
**gather** 48:7

**gay** 5:22
**geller** 2:4,10,14
**generally** 37:9
**generated**
  68:22
**geoffrey** 6:10
**george** 6:2
  48:12 53:14,15
  53:16,17
**georgia** 2:11
**getting** 10:18
  11:16 27:9
  28:7,10 37:8
  39:23 60:18
  73:25
**giant** 62:18
**gibson** 3:3
**giuffra** 3:20
**giuffrar** 3:24
**give** 18:19
  42:16 43:23
  62:1,8,14
  68:10,12,13,19
  68:21 72:12
**given** 13:25
  18:11 75:8,10
**giving** 38:15
**gjritts** 6:13
**glad** 67:2
**go** 39:12 59:2,4
  59:6,6 64:6
  67:17 69:12,15
  74:19
**goal** 73:22

[god - impossible]

**god** 64:7 74:5
**goes** 28:11
**going** 9:5,22
  11:11 16:10
  21:20 23:23
  29:22 30:18,25
  31:7 32:17
  33:11 46:11,15
  47:6 48:12,13
  53:8 59:4
  64:24 65:13
  66:13 71:6
  73:2,3,15,24
  74:11
**good** 48:15
**gotcha** 62:12
**government**
  11:13 15:5,6,7
  15:11,14,24
  17:23 31:6
**grand** 26:1
**granted** 45:16
**great** 21:22
**grounds** 45:20
**guran** 5:16
**gut** 67:14
**guys** 67:18

**h**

**h** 6:7
**hand** 46:1
  59:20 75:15
**handcuffed**
  20:20
**handful** 11:24

**hands** 28:13
**happen** 27:5,6
  30:5 37:1 46:4
**happened** 11:1
  24:12,21 25:1
  25:11 26:24
  31:4,5 32:14
  33:25 36:1,4
  38:18 39:14
  41:2 46:10,19
  60:21,22 66:7
**happening**
  57:25
**happens** 41:16
**happy** 12:15
  22:17 46:24
  58:8 63:19
  66:19 67:1,4
  68:15 69:20
  70:1
**harbor** 74:15
**hard** 41:18
**hash** 73:11
**hayden** 43:3,5
  43:10 52:1,5
**hear** 65:7
**heard** 25:23
  26:12 52:12
  64:18
**hearing** 21:21
  73:6
**heart** 47:5 48:3
**heavily** 32:7
**heimann** 3:8,11
  3:12

**held** 1:10
**helms** 7:2
**help** 64:7
**helpful** 23:21
  69:22 72:20
  74:10
**hereunto** 75:15
**herrington**
  4:12
**hickman** 53:9
**hide** 49:12
**hiding** 38:18
**high** 7:13
**highly** 20:24
  49:15
**hilary** 2:3
**hire** 24:23
**hired** 25:4,5
**hog** 22:24
**hold** 14:10
  47:15
**holding** 36:1,6
**home** 54:3
**honor** 21:9
  23:10
**hope** 74:3
**hoped** 72:4
**horizon** 50:1
**horribly** 20:17
**hostetler** 5:4
**hours** 69:8
**house** 8:8
**householder**
  10:14 13:13
  30:21

**hr** 14:8,8,9 16:7
**hstakem** 2:8
**hudson** 3:8
**huge** 13:10
**hughes** 4:8
**human** 55:10
**humans** 39:3
**hutton** 2:13
**hydraulics**
  43:19

**i**

**ice** 3:16
**icemiller.com**
  3:18
**identified** 50:1
**identify** 9:25
  19:10
**ignored** 28:2
**iii** 6:4 7:17
**illinois** 7:4
**illuminating**
  74:11
**imagine** 67:15
**immediately**
  50:14
**immunity**
  13:25 27:4
**immunize** 61:3
**impact** 30:22
**importance**
  74:7
**important** 21:1
  45:22 61:15,22
**impossible** 19:9
  39:2

**impression**
18:24 49:4
51:16 52:16,22
53:3,3,5,6
64:14
**impressions**
18:15,17,18
19:8 37:22
**improper**  19:20
36:19
**improperly**
17:10 18:1
**inclination**
71:20,22
**including**  15:12
19:15 46:6
**incorrect**  59:19
**independent**
25:4
**indictment**
39:15
**individual**
42:18 52:7,25
53:1
**individuals**
23:2 51:23
52:20 61:15
**information**
11:11,12 15:7
15:11,12,23
16:20,23 17:5
17:11,13,19
18:3,12 19:16
19:18 20:5,6
20:13,18,22

29:18,21 30:3
34:20 35:1,13
46:19 47:21
50:20 51:3,4,8
51:22 58:11
62:1,8,14 63:9
63:11 66:1,24
**informed**  50:14
54:13
**initial**  10:9
13:2 26:13
28:3
**inquire**  39:20
**instruct**  18:5
54:23
**instructing**
17:10,17 55:2
**instruction**
20:21 37:8
59:17,19 66:23
**instructions**
37:9
**insufficiently**
33:20
**interaction**
54:17,17
**interested**  71:8
75:14
**internal**  10:5
10:10 12:20
14:5 24:5
26:25 30:13
37:6 44:9 45:5
54:14,18 57:5

**interrupt**  23:18
**interviews**
11:17,18
**investigated**
30:23
**investigation**
10:6,10,22,23
10:23 11:5,10
11:14 12:10,20
13:3,4,6 14:6
14:24 15:1,13
16:7,15,21
22:6 25:25
26:6,7,14,24
27:1,8 28:4,5
28:14,21,24
30:13 31:14,19
32:24 33:6,12
33:18,19,21,23
34:2,10,12,13
34:17 42:3,15
43:18 44:10
45:5 51:10
61:12 66:2
**investigations**
14:3 24:6,15
25:7,15,18
37:6 45:10
46:6
**investigators**
12:4
**investor**  14:21
**investors**  14:14
**invite**  58:6

**involve**  56:15
**involved**  16:16
16:17,21 37:25
46:7 56:9,21
57:10 61:15
71:25 72:2
73:7
**involvement**
40:22 66:10
**involving**  13:5
30:6
**israel**  5:3
**issue**  9:5,16
10:8 15:16
17:22 18:9
27:12 32:15,22
33:2 37:25
45:22 47:5
48:5 49:25
57:16 59:12,16
63:23 64:10,13
65:2,2 69:21
69:22 70:6,14
70:23 72:11,17
73:15
**issues**  11:6 16:7
16:16,17,22
30:15 36:25
39:24 56:9,16
56:20 57:6,10
61:14 63:7
70:6 71:3,7,17
71:19 73:2,9
73:12,14,14
74:15,18

**[issuing - know]**

issuing   10:18

**j**

**j**   3:7,20 5:21
  6:2,2,3,10
**james**   5:10 6:4
**jason**   2:2 6:2
  10:2 66:13
  69:16,16
**jason's**   69:14
**jerry**   6:4
**jfairweather**
  4:19
**jforge**   2:7
**jim**   22:2
**job**   1:23 48:16
**john**   4:16 5:16
  6:5,7 7:17,18
  23:5
**john.favret**
  7:21
**john.mccaffrey**
  7:21
**johnson**   6:3,14
**join**   22:21 70:6
  72:17
**joint**   74:18
**jolson**   27:21
**jones**   5:2 6:6,10
  13:5 20:14
  22:22 23:13
  25:6 29:20
  48:11,19,20
  49:10 53:13,15
  53:19,21,23
  58:16,21

**jones's**   13:15
  48:14
**jonesday.com**
  6:9,13
**joseph**   2:17
**joshua**   7:7
**joshua.shinbrot**
  7:11
**jr**   3:20 7:12
**judge**   1:10 5:16
  9:7,14,21
  12:18 21:6,12
  21:17,22 22:1
  22:10 23:1,8
  23:11,14 27:20
  29:3 35:7
  37:21 38:7
  39:19 47:1,3
  58:4,10,15,18
  59:1,6 61:24
  63:21 65:6,8
  65:12,25 67:11
  70:7,18,22
  71:2 72:24
  73:1,5,21
**julia**   6:3
**july**   14:1 51:3
  75:25
**jump**   73:11
**june**   25:2
**jury**   26:1
**justice**   35:8,11
  35:14,17
**justification**
  48:11

**justify**   49:14

**k**

**k**   2:21 6:5
**karen**   2:22
**karen.pohlma...**
  2:25
**katsiff**   5:11
**katsifft**   5:14
**keen**   69:24
**keenly**   13:20,21
**keep**   34:22,25
  55:8
**kevin**   2:3
**key**   31:12
**kichline**   2:21
**kim**   7:8
**kind**   43:18 44:6
  45:7,24 53:9
**kinds**   25:14
  30:14 31:8
  44:3
**king**   50:2
**knew**   18:19
  40:21 43:6
  48:11 52:10
  53:4,15,20
  56:14
**knock**   74:12
**know**   9:6 18:19
  23:21,24,24
  25:8,17,19
  26:1,10,15,16
  26:17 27:13
  28:11,14,20
  29:23 30:1,17

30:18,19,20,21
31:2,6,9 32:2,6
33:9 34:10,17
34:19,20,24,25
35:10,19 37:7
37:10,13,22
38:10,12,19,21
38:24,25 39:3
39:5,9,12,16,24
40:2,2,4,7,9,10
40:16,19,22,24
41:2,5,6,8,13
41:15,15 42:3
42:5,7,10,11,13
42:14,16,16,18
42:19,22,24
43:1,2,4,5,9,16
43:20 44:1,9
44:16,17,18,19
44:20,22 45:9
45:21,21,24
46:4,6,8,13
48:15 49:3,9
50:14 51:2
52:25 53:7,8
53:12,13,21
57:5 59:11,12
59:13,24 60:1
60:5,6,7,10,14
60:15,15,19,20
61:5,9,11,14,14
61:16,19,20,25
62:6,12,13,15
62:18,21,24
63:3,6,13,15,16

63:19 64:4,5
64:11,24 66:4
66:5,11,15,20
66:22,23,25
67:1,2,3,7,9,9
68:9,15 69:24
69:25 70:1,3,4
70:5,13 71:7
71:14,16,18,20
72:3,13,14,22
73:1 74:12,13
**knowing** 18:22
**knowledge**
18:12 40:1
42:18 55:7
62:2,9,11,15
63:25
**knows** 66:14
**koslen** 8:2
**koslenm** 8:5
**kristin** 1:20
58:21 75:7,24
**ksciarani** 2:7

**l**

**l** 3:15,21 5:3,4
5:10 6:3,14
**lack** 12:11,12
73:8
**laid** 10:7
**lake** 7:3
**lakeside** 6:11
**lane** 3:3
**lape** 3:3
**larry** 10:14
13:13

**law** 25:4 29:8
29:15 31:24
43:17 46:7
49:21 62:22,23
63:17 71:7,8
**law.com** 3:5
**lawyer** 20:1,4
20:12 23:25
36:13 37:12,13
37:18,23,24
38:10,14,19
39:10 40:4
43:24,25 48:25
49:4 53:25
56:8 57:2,7,11
57:18,21 59:14
59:21 60:11,13
60:24 65:16
66:2,5,6,6
69:13 70:17
**lawyer's** 41:1
**lawyerly** 64:15
**lawyers** 18:14
18:15 19:9,16
20:22 21:2
24:16,23,25
37:20 45:25
46:1,2,2 47:14
47:18,24 48:6
48:22 51:9,9
51:24 52:3
55:24 58:2
59:22 60:5
62:19 65:18,19
66:12 67:16

69:11
**laying** 68:1
**lchb.com** 3:10
3:14
**lead** 46:9,11
**leading** 39:15
**learn** 39:12
72:1
**learned** 20:4,11
37:12,18,22,24
39:21,22 47:14
51:4 57:11
61:1 66:24
69:16
**learning** 69:9
**learns** 33:9
**led** 25:5
**left** 68:8
**legal** 12:24
15:2 16:8,9,16
16:17,21 39:24
46:22 48:8,8
49:5 51:16
55:14,16,20
56:2,9,15,20
57:6,10
**leila** 6:14
**lengthy** 24:5
25:6 37:6
**leslie** 6:5
**level** 69:12
**leverage** 61:21
**lewis** 2:22
**lexington** 7:9

**liabilities** 30:6
30:7
**liability** 26:9
28:16 33:8
51:18 60:8
**lieff** 3:8,12
**life** 74:2
**likely** 46:8 67:8
73:8
**limits** 58:3
**line** 15:8 19:10
19:10 34:8
45:9 48:5
**lines** 37:10 43:5
44:4 53:12
**lisowski** 6:2
**listed** 13:4
**literally** 27:25
43:8 47:8
**litigation** 1:4
9:20 11:1 13:7
14:19 25:21,23
26:2,3,10,21
31:7,9,18,20
33:13 45:7
46:3 49:20
**little** 9:15 29:3
48:14 72:2,5
**llc** 3:3
**llp** 2:4,10,14,18
2:22 3:8,12,16
3:21 4:3,12 5:4
5:11,17,22 7:3
7:8,13,18

| | | | |
|---|---|---|---|
| **lmng** 3:5 | **making** 17:23 | 70:2 71:2 | **missed** 58:7 |
| **local** 13:19 | 37:1 41:6 | **means** 21:4 | **mistaken** 22:7 |
| **long** 21:21 | 50:17,17 54:3 | 65:12 | **mitchell** 6:4 |
| 70:12 | 55:10 | **media** 26:1 | **mixing** 29:23 |
| **look** 20:7 24:1 | **mansfield** 3:2,3 | **melville** 2:15 | **mmiarmi** 3:10 |
| 27:5 28:23 | **marjorie** 6:6 | **members** 50:19 | **mmmb.com** |
| 32:3 43:2 | **mark** 43:3 52:1 | 50:24 | 2:20 |
| 48:16 67:16 | 52:5 | **memory** 20:12 | **moment** 27:16 |
| **looking** 73:7 | **market** 2:23 | **mental** 18:15 | 56:17 64:8 |
| **lot** 24:7 29:10 | 5:12 | 18:17,18,24 | **monday** 73:23 |
| 64:2,25 71:6 | **massachusetts** | 19:8 37:21 | 74:4 |
| **luis** 6:4 | 6:15 | 49:3 51:16 | **money** 48:12 |
| **m** | **master** 9:21 | 52:16,21 53:2 | **months** 13:15 |
| | 12:17 21:10 | 53:5,6 | 28:6 |
| **m** 2:21 3:2,2 | 54:2 | **mentioned** 34:3 | **morgan** 2:22 |
| 6:2,5 7:8 | **material** 30:7 | 53:13 56:6 | **morganlewis....** |
| **m.g.** 7:2 | 34:15 | **miarmi** 3:7 | 2:24,25 |
| **m.j.** 3:19 | **materials** 35:10 | 23:9 58:23,25 | **morris** 7:13 |
| **made** 22:4 33:4 | **matter** 9:19 | 59:1 | **motion** 10:4,5 |
| 33:17 35:24 | 11:6 44:13 | **mic** 22:24 | 22:23 24:9 |
| 49:19 55:11 | 46:17 67:21,23 | **michael** 2:21 | 31:21 58:7 |
| 59:10 62:6 | 67:25 | 3:7 6:2 7:17 | 60:1 66:21 |
| 64:8 | **matters** 40:25 | 8:2 23:5 58:24 | 74:16 |
| **magistrate** | 41:1 | **michael.kichl...** | **motions** 9:23 |
| 27:20 | **matthew** 3:15 | 2:24 | **moul** 2:18 |
| **main** 4:17 5:17 | **matthew.forn...** | **miller** 3:16 | **movants** 24:3 |
| 7:19 8:3 | 3:18 | **million** 36:3 | 28:3 37:15 |
| **maintain** 15:19 | **mccaffrey** 7:18 | **mind** 20:11 | 41:22 |
| 15:21 | 23:4,5 58:13 | 23:20 42:20,23 | **move** 12:15,19 |
| **make** 9:2 22:8 | **mcconnell** 6:7 | 42:25 55:8 | 67:10 |
| 22:16 23:19 | **mcdermott** 7:3 | **miner** 6:18 | **mpduffy** 6:9 |
| 33:23 34:15 | **mcdowell** 4:17 | **minutes** 67:19 | **multiple** 10:15 |
| 52:14 59:15 | **mean** 37:4 | **misheff** 6:3 | 11:3 52:18 |
| 65:10 | 38:12 60:12 | **misleading** | **murkier** 72:4 |
| **makes** 33:10 | 66:16,19 68:9 | 20:17,24 | |

murky 72:2
murphy 2:18
murray 2:17,18
2:20
mute 65:8
mwe.com 7:5

**n**

n 3:20 6:3 9:1
nakasian 3:3
named 54:13
ne 2:10
nearly 11:21,22
need 9:9 40:6
60:7 65:4,11
67:7 68:17
70:11 74:17
needed 14:6
34:4
needlessly
46:14,14
needs 61:24,25
neil 27:23
nelles 3:21
nelless 3:25
never 22:3
44:21
new 2:15 3:9,9
3:22,22 6:20
6:20 7:10,10
32:15 60:2
63:2 65:3
news 13:14,15
13:17 25:2
newton 56:13

nice 67:14
niche 24:8
night 72:19
73:3
nonlawyer 32:8
nonlegal 48:6
nonparties
74:16
nonprivileged
43:9
nonsense 64:25
north 6:11
notary 75:7,24
notes 73:6
notice 30:11
notion 13:24
14:1 48:24
49:8
noun 38:15
novel 71:24
number 9:20
10:8 19:23
44:2 50:17
59:16 71:17
nw 4:12 6:15

**o**

o 9:1
o'connor 4:7
o'neil 6:4 27:7
27:23 28:5
29:19
o'neil's 26:18
33:2
objection 36:19
54:23 56:22

objects 54:16
obligated 32:15
32:21
obtain 14:15
16:22 58:1
obtained 16:24
17:5,11,19
obviously
16:12 25:12
36:16 46:4
63:10 67:5
occurred 16:2
21:15
offer 15:15,22
office 75:15
officers 50:19
50:25 51:14,20
oh 47:12 48:25
61:10
ohio 1:1 2:19
3:4,17 4:4,9,18
5:6,18,23 6:8
6:12 7:14,20
8:4 75:3,7,16
75:24
okay 9:13
12:19 20:10
22:15 27:20
37:18 38:7
47:12 57:1
59:8 70:20
71:1 74:20
once 12:21 13:8
19:16 53:24

ongoing 12:20
onslaught 26:9
26:21
openly 18:16
opens 64:25
opportunity
64:9
opposite 15:21
47:8 50:5
opposition
29:14
opt 22:23
oral 9:22
order 26:16
40:6 73:8
ordered 62:2,7
original 72:3
orrick 4:12
orrick.com
4:14
ostrowski 8:8
outset 25:18
outside 10:19
11:7 14:16
26:5 34:4
overarching
71:21
overlap 71:15
overnight
72:14
oversaw 26:6
own 29:5 50:23

[p - potential]

| p | | | |
|---|---|---|---|
| **p** 4:7,16 5:16 6:6 9:1 | **pause** 12:16 | **personal** 18:12 | **pohlmann** 2:22 |
| **p.m.** 74:22 | **paying** 18:23 19:5 | **perspective** 48:17 | **point** 6:11 35:23 36:2,7 |
| **page** 13:14,17 54:9 72:10 | **payment** 53:14 53:16,17,20 | **pharmaceutic...** 50:2 | 39:25 41:22 42:4 43:3 44:5 |
| **pages** 36:3 65:4 67:7 70:3,8,8 71:5 73:17 | **payments** 43:6 43:6 52:9 | **phase** 26:13 28:3 | 47:17 49:11 54:3 62:21 68:17 71:22 |
| **paper** 22:21 60:1 | **pburton** 4:14 | **phases** 28:12 | **pointed** 42:22 44:16 |
| **papers** 10:7 17:9 36:16 | **peachtree** 2:10 | **phelms** 7:5 | **points** 13:16 22:15 29:6 |
| **pappas** 6:4 | **pearson** 5:10 16:4,15 21:7 22:2,3 | **philadelphia** 2:23 5:13 | 49:21 51:12 59:9,15 61:13 |
| **paragraph** 27:25 28:9 | **pease** 5:17,22 | **phoenix** 63:2 | **policies** 48:21 49:6 |
| **part** 12:2,7,9 22:22 33:14 39:9 56:3 58:6 67:14 70:18,22 | **pending** 9:23 74:13 | **physically** 46:5 | **polish** 72:8 |
| **particular** 24:13 | **pennsylvania** 2:23 5:13 | **pianalto** 6:4 | **politicians** 13:20 |
| **parties** 41:3,18 41:21 45:24 64:22 71:18 | **people** 38:23 51:21 66:8 68:6,7,12,13,18 68:19,21 69:2 | **pick** 68:18 | **polk** 7:8 |
| **parts** 24:8,8,9 | **pepich** 2:4 | **pike** 4:4 | **porter** 6:15,19 7:13 |
| **party** 15:22 16:3 46:1 66:6 75:13 | **pepper** 4:4 | **pile** 64:12 | **porterwright....** 7:15,16 |
| **party's** 71:11 | **perception** 13:21,22 14:21 14:21,22 | **pinetree** 4:3 | **portion** 21:6 |
| **pass** 15:3 73:3 | **period** 9:8 50:20 51:13 | **place** 22:6 75:12 | **position** 38:6 52:14 64:19,20 64:21 71:11 72:5,7 |
| **passing** 72:18 | **permitted** 70:10 | **plainly** 25:19 31:9 66:16 | **positions** 18:8 |
| **patton** 11:8 | **person** 41:18 60:12 | **plaintiff** 9:25 67:6 | **possibility** 19:17 |
| **paul** 6:2 7:2 | **person's** 40:1 42:23 | **plaintiffs** 2:2 3:7 10:3 23:10 36:23 41:22 46:10 58:24 72:23 73:20 | **possibly** 52:24 |
| | | **play** 29:1 | **potential** 26:8 28:16 29:11 |
| | | **playing** 17:22 57:16 68:2 | |
| | | **please** 9:25 12:18 21:12 22:13 59:4 | |

30:6,7 60:8
**powell**  3:4
**practical**  11:4
46:16 60:4
**precisely**  48:7
**predominant**
27:18
**preexisting**
40:1
**prepare**  11:1
**prerequisites**
10:17
**present**  8:7 9:6
9:9 23:21
**presentation**
34:8,9
**presented**  64:4
**preston**  4:11
**pretty**  73:14,15
74:13,13
**pricewaterho...**
10:19
**primarily**
10:11 12:24
13:3
**primary**  16:17
**principal**  10:24
**principle**  23:25
**prior**  50:20
54:12
**privilege**  12:8
12:12,13 15:10
15:16,17,20
19:17,21 25:19
27:17,22 29:17

29:24 34:3
35:9 36:25
45:11,18 49:12
49:13 66:17
69:19
**privileged**  12:7
18:3,5 19:23
19:25 21:3
24:17 25:20
29:18,21 30:12
32:12 35:13
36:12 37:24
38:1,5 40:10
40:12 41:8
42:8 45:2 47:7
47:9,10,11,21
60:23 61:2
63:11,14 65:15
65:16,20 66:15
67:25
**privileges**  21:4
**problem**  21:16
56:7
**proceed**  10:1
12:18
**proceeding**
9:21 30:25
75:11
**proceedings**
75:8,10
**process**  48:9
**processing**  49:5
**produce**  38:12
**produced**
24:14

**product**  11:15
12:12 18:16
24:15 25:20
29:9,11,12,24
29:25 30:12
34:3,21 40:13
40:18 41:9
42:9 45:12,19
49:13,22 50:6
62:23,24 63:7
63:17 66:2,3,4
66:16,17 69:18
**production**
24:4 37:5
**promptly**  69:25
72:15
**proper**  66:22
**proponent**  67:6
**proposal**  67:12
**proposition**
71:24
**prosecution**
15:8 17:16
**protected**  34:2
39:9,11 40:13
63:16 66:3
**protecting**  41:8
**protection**
49:13
**protections**
50:6
**provide**  15:7,11
21:10,16 26:4
29:17,21 35:12
35:16 41:7

**provided**  11:12
17:13,16 19:16
19:25 20:22
21:2 26:22
35:17,19 36:5
41:17,20,20
54:18 63:9
**providing**
34:20,20 43:13
46:18,19
**public**  5:5
13:11 14:20
63:10,11,13
75:7,24
**publicity**  13:12
**publicly**  48:18
48:20
**purpose**  10:11
10:25 11:15
12:11,24 14:14
14:17,25 27:14
27:18,24 33:7
34:5,11 43:7
48:7
**purposes**  10:1
14:8,9,11 15:2
27:19 33:5
44:12 48:6
**put**  20:10 37:13
53:17 60:3
70:5 72:8
**pwc**  10:20 11:2
11:8,9,15,16,21
11:25 12:1,2,6
12:11 26:16

**[pwc - remedy]**

Page 19

27:14,24 29:18
29:21,25 30:4

**q**

**qualified** 75:8
**quarter** 10:13
**question** 13:11
27:17 29:16
30:9 36:19,20
48:4 54:12,20
55:3,19 57:1,4
57:13,19 63:18
66:20,22 68:6
68:7 70:17
**questioning**
71:25
**questions** 12:17
16:13,14 18:6
22:18 23:18
46:25 54:5
56:13 59:3
63:20 70:16
72:20 73:4
**quickly** 69:24
72:11,22 74:13
**quintessential**
49:3 53:6
**quite** 24:19
32:3,7 33:23
35:10
**quotes** 10:24

**r**

**r** 4:7 5:3,21 9:1
**rachael** 5:3

**raise** 34:4
36:24 70:23
**raised** 41:13
59:25 62:21
64:10 65:4
74:18
**raising** 36:17
**randazzo** 18:23
19:5 52:9,10
**rank** 74:7
**rapid** 70:4
**rapidly** 69:23
**rationale** 43:23
**reach** 28:17
**reached** 53:25
68:17
**reaching** 49:5
**reaction** 67:11
67:14
**read** 54:4
**reading** 67:14
**real** 27:6
**realistic** 14:4
72:15
**reality** 12:21
28:23
**really** 15:15
19:9 20:8 21:1
28:2 31:5,10
31:24,25 32:2
33:4 34:7,16
38:16,22 39:3
39:25 44:23
45:14 61:14
68:16

**reason** 20:25
35:22 54:6,14
54:22 57:22
**reasonable**
15:18,21 28:21
28:23,24
**reasons** 11:3
45:19 52:7
55:23
**rebuttal** 64:2
64:18
**received** 47:25
68:13,19,20
**recent** 57:24
59:25
**recently** 16:2
**recipient** 63:25
**record** 9:18
10:1 20:17,25
22:3,9 42:13
54:8 74:19,20
74:21
**redacted** 38:13
**reduced** 75:8
**refer** 10:20
11:17 18:10
**referred** 61:8
**referring** 54:9
61:13 62:4
63:8
**reffner** 4:16 7:2
52:19
**regarding**
11:19 16:6
47:5 49:22

54:4
**regardless**
30:24
**regret** 64:24
**regulator** 14:21
**regulators**
13:20 35:20
40:17
**rein** 3:19 23:16
29:6 35:12
38:2,8 39:22
47:1,7,20
48:24 49:21
51:25 52:13,23
59:3,8 63:23
65:21 66:1
69:1 72:16
**rein's** 65:14
72:3
**reind** 3:23
**related** 15:2
16:7 57:6
**relates** 1:6
**relative** 75:13
**relatively** 67:5
**releasing** 10:12
**relevant** 57:12
**relief** 59:23
**rely** 20:21 32:4
32:7
**remained** 13:14
**remains** 13:10
13:16 40:12,12
**remedy** 36:18
37:7 59:18,20

**remember**
  31:12 41:19
  56:17 57:12
**remote** 1:10 2:1
  3:1 4:1 5:1 6:1
  7:1 8:1
**remotely** 75:11
**render** 34:1,2
  40:9 48:8
**rendon** 5:2
  23:12 58:16,20
  58:21
**reopening**
  46:11
**repeatedly**
  17:13
**repeating**
  53:22
**reply** 22:21
**report** 74:18
**reporter** 1:20
  58:19,22 65:7
  74:20
**reporting**
  32:10
**reports** 26:1
**represent** 22:2
**representation**
  50:18,23
**representations**
  50:16
**represented**
  11:8
**request** 9:10

**requested**
  45:13
**requests** 35:15
  46:13
**requires** 37:5
**research** 73:16
**resign** 35:3,5
**resolve** 69:24
**resolved** 34:13
**resource** 55:10
**respect** 66:23
**respectively**
  50:4
**respond** 59:5
  72:23
**responding**
  33:7 40:17
**response** 24:23
  55:5 59:11
  64:15 70:10
**responsive**
  23:20 70:17
**restate** 32:21
**restatement**
  32:9,11,13,20
**results** 10:13
  11:15 28:11
**retained** 13:3
  14:7 26:16,19
  26:19
**revealed** 11:14
  48:23 52:2
  61:20
**revealing** 42:9
  43:12

**revelation**
  39:16
**review** 56:9,15
  56:21 57:6,9
**reviewing** 73:5
**revolves** 13:18
**reyes** 6:4
**rgrdlaw.com**
  2:7,7,8,8,12,16
**rheimann** 3:14
**richard** 3:11
**right** 17:6
  22:14 23:23
  24:12 25:3
  27:16,18 29:10
  29:12,14 31:3
  31:18 32:9
  33:13 36:5,9
  36:20 38:5,17
  39:14,15,16,24
  40:3,15,25
  42:3,21 44:7
  44:10,25 45:1
  51:7 55:24
  57:3 61:8
  63:11 66:3,7
  69:2,10,17
**rightly** 69:25
**risk** 31:7,9
**risrael** 5:8
**ritts** 6:10
**rmr** 1:20 75:24
**road** 2:10,14,18
  4:3

**robbins** 2:4,10
  2:14
**robert** 3:20
  4:16 7:2,12
  52:19
**rough** 54:10
  56:12
**round** 61:24
**rounds** 61:23
**roxworthy**
  25:22
**rtrafford** 7:16
**rudman** 2:4,10
  2:14
**rushed** 27:13

**s**

**s** 2:3 7:12 9:1
**sake** 35:9
**sam** 18:23 19:5
  52:9,10
**san** 2:6 3:13
**sandra** 6:4
**santen** 4:8
**santenhughes...**
  4:10
**sater** 5:17,22
**satisfy** 27:14
**saying** 32:23
  37:25 38:21
  39:8 44:17
  51:2,20 52:24
  60:22,23 61:4
  62:6 63:11,12
  63:15 64:17,19
  66:12 67:24

**[saying - sort]**

68:5,24 69:12

**says** 19:3 20:16
26:23 27:25
28:5,8 29:19
34:12 42:20,23
48:18,20 54:16
55:25 56:10

**scandal** 13:11

**schedule** 70:4

**schneider** 4:7
5:21

**schroeder** 44:3

**sciarani** 2:3

**scope** 10:21
12:16

**script** 52:4
53:18

**scripts** 18:11
18:13 19:15
47:19

**seal** 75:15

**sec** 14:12

**second** 10:13
47:15

**secondarily**
61:5

**secondary** 9:16
71:9

**secret** 43:12

**secure** 14:16

**securities** 1:4
9:19

**see** 9:8,9,9
25:10 68:14

**seeing** 30:15

**seeking** 16:8,9
55:14,16,20
56:2

**seeks** 24:9

**seemed** 64:15

**seems** 71:14

**seen** 17:8

**selective** 16:1
44:6,11,14,24
44:25 50:9

**sense** 13:9
33:24 52:14

**sensing** 16:10
56:7,7

**separated** 52:7

**september** 1:14
9:17 54:10
75:16

**series** 71:16

**serious** 24:20

**service** 2:14 8:3

**set** 75:15

**settled** 29:8,16
31:1 49:21

**seven** 11:23

**seymour** 5:17
5:22

**shape** 27:8

**share** 21:20
49:22

**shared** 29:9,25
30:3 68:8

**sharing** 62:23
63:15

**sharon** 3:21

**shawn** 1:10
9:21

**shield** 45:1
51:6

**shinbrot** 7:7

**ships** 72:18

**shively** 5:4

**short** 67:5

**show** 42:22

**shut** 14:2 57:18

**sic** 69:6

**side** 24:2 60:17
65:1 70:3,9

**sides** 17:22
57:16 63:22
68:2 73:1,10

**sign** 10:18

**signature** 75:21

**significant**
30:15,22

**silencing** 17:25

**simple** 65:1
70:15 73:14,15

**simply** 13:7
14:18 20:5
43:13 50:11
68:1 74:7

**simultaneously**
15:10

**single** 30:16

**sir** 17:6 57:15
65:8

**sit** 28:13,25

**situation** 44:8
45:25

**situations** 25:9
63:9

**sixth** 25:22
49:25 50:7
63:1,3

**skipping** 56:11

**slid** 74:6

**small** 24:8

**smaller** 24:9

**smart** 6:2

**sole** 55:7

**solicited** 57:3

**solid** 63:17

**solution** 66:18

**somebody** 53:4
68:10 71:22

**somebody's**
53:4

**somewhat**
61:13

**soon** 22:13 51:4
65:5 70:11,11
72:15

**sorry** 41:10
58:20,21 65:9

**sort** 24:7 27:4
27:13 29:23
30:11,25 31:10
32:22 34:6,7
34:18 35:23
37:4,5,7 38:12
38:13,14 39:7
42:1,4,14

**[sort - taft]**

44:22,24 59:12
60:3,10 61:7
61:17 62:20
66:21 71:3
**sorts** 9:16
**sought** 59:23
**sounds** 69:21
**source** 48:1
55:7
**sources** 71:9
**south** 2:14 4:17
5:17 7:13 8:3
**southern** 1:1
**spahr** 5:11
**speak** 9:3 12:11
60:5
**speaking** 52:13
**speaks** 22:19
**special** 1:10
9:21 12:17
21:10 54:2
**specific** 31:22
31:25 32:1
42:4 49:20
61:25
**specifically**
10:11 27:23
**specifics** 56:24
**specified** 75:12
**speculating**
26:11
**speculative**
31:2
**spent** 69:8

**spoken** 62:10
**spring** 74:2
**square** 5:5
49:14
**squire** 11:8
25:4 26:6,13
26:19,22 28:8
29:20 66:8
**ss** 75:4
**staggered**
72:21
**stakem** 2:3
**stand** 21:13
**standard** 27:16
29:15
**standards**
34:24
**standing** 46:20
**start** 28:17
**started** 14:3
**state** 13:19
42:20,23,25
75:3,7,24
**stated** 23:7
73:2
**statement**
17:15 19:2,4
43:4 52:3,5,6
65:14
**statements**
32:15 41:23
42:7 43:2
**states** 1:1
**stating** 52:21

**status** 1:10
74:18
**stenotypy** 75:9
**step** 15:21
23:23 27:15
**steps** 15:19
**steven** 2:4 6:3,5
54:11
**stevep** 2:8
**stipulations**
71:16
**strah** 6:5 21:14
21:17,23 36:15
54:5,11 55:8
62:5 64:5
**street** 2:23 3:8
3:12,16,22 4:8
4:12,17 5:12
5:17,22 6:19
7:3,13 8:3
**stuff** 53:9
**submit** 68:15
**subpoena** 26:1
**substantiated**
45:17
**sudden** 62:17
**suddenly** 74:2
**sue** 6:5
**suggest** 70:2
72:16,21
**suggesting** 61:6
71:16
**suggestion** 39:8
65:10

**suite** 2:5,11,15
3:4 4:4,9,18
5:5,18 6:7 7:4
7:14,19
**suits** 13:25
**sullcrom.com**
3:23,24,24,25
**sullivan** 3:21
**summaries**
11:18 43:20
**sunday** 74:2
**support** 53:15
53:20
**supporting**
20:18,19
**supports** 19:1,2
**supposed** 45:20
**supreme** 53:8
**sure** 9:3 22:8
23:19 41:6
45:23,23 61:14
64:16 67:7
69:23,23 70:8
71:25
**surrounding**
13:13
**sutcliffe** 4:12
**swimmingly**
47:6
**sword** 45:1,1
51:6 61:7,17

| t |
|---|

**t** 6:2,3
**taft** 5:21

| | | | |
|---|---|---|---|
| **take** 21:21 | 57:10 | **texas** 43:19 | 67:2,9,17,18,20 |
| 23:22 32:6 | **tells** 26:14,19 | **thank** 10:2 | 68:16,17 69:21 |
| 47:23 48:9 | 74:1 | 22:10 23:7,8 | 70:9,11 71:4,6 |
| 52:15 65:13 | **ten** 70:2,8,8 | 23:11,14,16 | 71:11 72:6,8 |
| 71:17,19 | 71:5 72:10 | 46:24 47:1,3 | 73:1,12,16 |
| **taken** 15:15,19 | 73:17,17 | 58:15,17,18,22 | 74:11 |
| 75:11 | **tennessee** 50:4 | 59:1 74:9 | **thinking** 60:4 |
| **takes** 74:4 | **term** 33:5 | **thing** 27:13 | 64:6 70:8 |
| **talk** 24:13 29:3 | **terminated** | 28:11 32:16 | **third** 15:22 |
| 31:22 32:17 | 14:7 | 37:16 43:12 | **thomas** 2:9 4:2 |
| 34:11 35:7,7 | **terminations** | 51:1 53:12 | 6:3 |
| 40:7 44:25 | 20:19 | 64:7,11 65:15 | **thompson** 3:20 |
| **talked** 33:1 | **terms** 11:5 | 68:3 | **thompsontas** |
| 34:19 42:12,17 | 49:20 71:7 | **things** 14:23 | 3:24 |
| 42:25 | 74:9 | 25:9,15,18 | **thornton** 6:5 |
| **talking** 12:23 | **terzian** 4:3 | 28:16 29:1 | **thought** 70:7 |
| 15:16 21:23 | **test** 12:23 15:3 | 33:9,11,15 | 71:13 |
| 29:11 31:10,15 | 25:22 31:3 | 36:12,14,21 | **thoughtful** |
| 31:16,25 36:11 | **testified** 16:4 | 38:25 40:4,18 | 64:23 |
| 38:22,24 39:25 | 27:7,24 | 42:12 45:2 | **thoughts** 23:18 |
| 43:10 48:2 | **testifies** 26:7 | 48:16 61:8,10 | **threat** 13:6 |
| 53:9 54:8 66:8 | 29:19 | 61:20 67:4 | 14:19 |
| 67:21,22 | **testify** 37:11,12 | **think** 13:8,11 | **threshold** 42:1 |
| **talks** 31:13 | 37:17 53:19 | 20:25 23:22 | **thursday** 1:14 |
| 42:20 | **testifying** 18:10 | 24:18 28:2 | 73:18 |
| **targeted** 32:22 | **testimonial** | 29:15,22 30:16 | **time** 9:8,14 |
| **tasha** 3:20 | 41:10,11,12,17 | 31:3,12 36:10 | 13:17,17 17:8 |
| **taylor** 6:5 | 42:8 43:11,14 | 36:18,24 38:2 | 17:9,17 22:6 |
| **tegler** 2:12 | 43:16 44:18 | 39:7,22,23 | 28:19,25 30:13 |
| **tell** 14:25 17:4 | 62:6 | 42:17 45:10,12 | 30:14,16 33:12 |
| 20:3 34:16 | **testimony** | 45:13,17 46:21 | 36:4,17 40:22 |
| 47:25 53:21 | 10:15 22:4 | 47:4 59:11,14 | 41:2,7 52:12 |
| 67:7 70:15 | 26:18 33:3 | 61:5,21 62:16 | 52:12 55:9 |
| **telling** 20:9 | 40:23 56:17 | 63:4,17 64:1,8 | 58:1,1 60:21 |
| 24:19 30:17 | 57:3 | 64:12,18,21 | 60:22 62:15 |

**[time - vorys.com]**

| | | | |
|---|---|---|---|
| 64:3,22 72:7 72:12 75:11 | **true** 19:1 25:8 49:2,24 75:9 | **u** | **used** 16:11 32:10 45:6 |
| **timetable** 72:15 | **truly** 35:2 | **ultimate** 42:14 | 48:6,6 61:21 |
| **timothy** 5:11 | **trusted** 53:7 | 43:21 52:24 | 62:6 |
| **today** 9:15 | **try** 15:1 67:3 | **uncovered** | **useful** 23:22 |
| 13:17 21:16 | 67:14 71:21 | 68:14 | **uses** 33:5 |
| 24:7 25:23 | **trying** 44:11 | **undated** 34:9 | **using** 10:23 |
| 36:17 64:5 | 46:22 62:13,14 | **underlying** | 18:17 44:12 |
| 65:2,4 71:4 | 67:10 | 39:17 43:23 | 45:2 51:17 |
| 74:10 | **tucker** 7:18 | 46:18 54:18,21 | 61:6,17 |
| **told** 11:9 54:21 | **tuckerellis.com** | 55:3 | |
| 55:15,18,22 | 7:21,21 | **understand** | **v** |
| 56:3 57:9 | **tuesday** 73:23 | 52:23 64:21 | **vaccine** 73:25 |
| **tom.warren** 4:5 | 74:5 | 71:11 72:5,6 | 74:3 |
| **tony** 48:12 | **turn** 9:3 23:3 | **understanding** | **valiant** 32:6 |
| 53:14,16,17 | 62:9,20 | 56:23 | **value** 65:14 |
| **took** 16:11 22:6 | **turned** 25:9 | **understood** | **various** 9:23 |
| 44:19 50:11,13 | 35:11 | 64:1,1 | **verb** 38:15 |
| 51:5 | **turner** 6:5 | **underwriter** | **veronica** 6:18 |
| **totally** 31:2 | **two** 14:1 19:20 | 7:7 | **veronica.call...** |
| 60:2 | 19:23 24:5 | **unfolding** | 6:21 |
| **trafford** 7:12 | 27:4 32:24 | 27:11 | **version** 38:13 |
| **transcribed** | 37:5 39:3 46:6 | **uniformly** | **vespoli** 6:14 |
| 22:9 75:9 | 49:24 50:16 | 14:10 | **vicarious** 51:18 |
| **transcript** | 59:14,14 61:23 | **united** 1:1 | 51:19,19 |
| 54:10 56:12 | 70:22 71:3 | **universe** 31:11 | **view** 9:15 |
| 64:5 73:7 | 72:20 73:2,4,4 | 32:18 | **vine** 4:8 |
| **transcription** | 73:9 | **unknown** 66:2 | **violated** 20:14 |
| 75:9 | **twofold** 10:8 | **unlawful** 11:20 | 48:19,20 49:7 |
| **transcripts** | **type** 32:16 | **unnecessary** | **virtually** 17:14 |
| 21:7,18 | **types** 25:9 32:4 | 46:17 | 66:10 |
| **transparent** | 36:21 49:18 | **unprecedented** | **virtue** 49:16 |
| 73:22 | **typical** 57:25 | 49:16 | **vorys** 5:17,22 |
| **tricky** 39:6 | **typically** 31:15 | **unusual** 28:10 | **vorys.com** 5:19 |
| | 49:17 | 28:12 30:5 | 5:24 |
| | | 49:15 | |

| w | | | |
|---|---|---|---|
| **w** 2:13 7:12 | **wanted** 15:7,12 | **west** 2:5 3:16 | **work** 11:15 |
| **wait** 9:5,7 | **wants** 46:1 | 6:19 7:3 | 12:12 18:16 |
| 28:25 | **wardwell** 7:8 | **western** 50:3 | 24:15 25:20 |
| **waive** 27:22 | **warren** 4:2,3 | **whereof** 75:15 | 29:9,11,11,24 |
| 49:1 50:5 | 5:3 | **whoa** 47:15,15 | 29:25 30:12 |
| **waived** 19:22 | **warrenterzia...** | 47:15 | 32:8 34:3,21 |
| 21:5 29:9,13 | 4:5 | **wholesale** 24:4 | 40:13,18 41:8 |
| 49:22 | **washington** | 37:4,5 | 42:9 45:12,18 |
| **waiver** 12:13 | 4:13 6:16 | **win** 44:9 45:3 | 49:13,22 50:6 |
| 18:4 30:2,10 | **water** 48:14 | 61:11,17 | 62:16,23,24 |
| 30:15 34:19,22 | **way** 11:5 13:23 | **winding** 20:24 | 63:7,17 66:2,3 |
| 35:8 41:10,11 | 32:19,20 34:22 | **withheld** 11:25 | 66:4,15,17 |
| 41:14,25 42:2 | 35:22 36:23 | 12:1,6 | 69:18 |
| 42:2,4,5,10,15 | 41:11 45:7,16 | **withholding** | **working** 72:14 |
| 42:21,24 43:18 | 46:20 60:4 | 29:4 | **works** 46:3 |
| 43:25 44:14,24 | 62:16 67:3 | **witness** 11:17 | 48:17 |
| 44:25 45:12,20 | 68:3 69:10 | 11:18 16:12,13 | **world** 27:6 |
| 47:23 50:8,9 | **ways** 18:2 | 17:10 19:13 | 40:19 47:24 |
| 54:1 62:11,18 | **we've** 17:14 | 20:16 37:11 | 64:11 |
| **waivers** 15:4 | 23:25 34:19 | 39:20,21 40:21 | **worried** 72:17 |
| **waiving** 15:9 | 35:17 36:5,25 | 41:16 42:20 | **wrap** 49:18 |
| 62:24 | 44:15,20 61:10 | 51:2 53:6,19 | **wright** 7:13 |
| **walling** 20:23 | 68:17 | 54:23 57:18 | **writing** 71:12 |
| **want** 9:2,3,4 | **wealth** 19:15 | 66:7 75:15 | 72:8 |
| 10:4 12:16 | **wednesday** | **witness's** 56:23 | **wrong** 36:22,24 |
| 20:2,7,10 22:2 | 74:5 | **witnesses** 10:16 | 37:8 48:24 |
| 22:8,15,24 | **week** 16:3 21:7 | 17:18 18:1,6 | **wrote** 52:5 |
| 23:19 36:3 | 45:22 57:15 | 18:11,18,19 | x |
| 39:6 44:5 | 72:23,23,25 | 19:12,19 20:3 | **x** 19:4 52:5 |
| 53:11 59:9 | 73:18 | 20:10,18 37:17 | 67:7 |
| 64:12,22 69:14 | **weeks** 11:7,9 | 39:13 47:13,25 | y |
| 70:23 71:10,12 | **wegryn** 1:20 | 52:17,18 66:11 | **yeah** 21:12 |
| 71:12 72:13 | 75:7,24 | 69:7,7,9 70:15 | 22:12 35:12 |
| 73:21 | **went** 28:6 | 70:25 71:25 | 37:23 59:2,6 |
| | | 72:1 | |

70:20,22 71:2
73:5
**year**   28:7,8
46:8
**yearlong**   28:14
**years**   18:23
32:24
**yeboah**   52:19
**york**   2:15 3:9,9
3:22,22 6:20
6:20 7:10,10