1             IN THE UNITED STATES DISTRICT COURT

2               FOR THE SOUTHERN DISTRICT OF OHIO

3                       EASTERN DIVISION

4

5    IN RE: FIRSTENERGY CORP.              CIVIL ACTION NO.

6         SECURITIES LITIGATION           2:20-cv-3785

7    THIS DOCUMENT RELATES TO:

8    ALL ACTIONS.

9

            ---------------------------------------------

10

11

12

13              TRANSCRIPT OF REMOTE PROCEEDINGS

14             BEFORE SPECIAL MASTER SHAWN JUDGE

15               THURSDAY, JANUARY 4, 2024

16

17

18

19

20

21   Reported by:

22   Lena Mescall, CSR No. 13018, RPR

23   Job No. 6354188

24   Reported Remotely from Irvine, California

25   PAGES 1 - 79

                                           Page 1

```
1   APPEARANCES OF COUNSEL:
2   FOR THE CLASS PLAINTIFFS:
3       ROBBINS GELLER RUDMAN & DOWD, LLP
4       BY:  JASON FORGE, ESQ.
             KEVIN S. SCIARANI, ESQ.
5            FRANCIS KARAM, ESQ.
             CHRISTOPHER GILROY, ESQ.
6            LUKE OLTS, ESQ.
7       655 West Broadway
8       San Diego, California 92101
9       jforge@rgrdlaw.com
        ksciarani@rgrdlaw.com
10      fkaram@rgrdlaw.com
        cgilroy@rgrdlaw.com
11      lolts@rgrdlaw.com
12
13      MURRAY MURPHY MOUL & BASIL, LLP
14      BY:  BRIAN MURPHY, ESQ.
15      1114 Dublin Road
16      Columbus, Ohio 43215
17      murphy@mmmb.com
18
19  FOR THE DIRECT-ACTION PLAINTIFFS:
20      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
21      BY:  RICHARD HEIMANN, ESQ.
             MICHAEL MIARMI, ESQ.
22
        250 Hudson Street, 8th Floor
23
        New York, New York 10013
24
        rheimann@lchb.com
25      mmiarmi@lchb.com
```

Page 2

```
 1    APPEARANCES OF COUNSEL: (CONTINUED)
 2    FOR DEFENDANTS STEVEN STRAH; K. JON TAYLOR; JASON J.
      LISOWSKI; GEORGE M. SMART; PAUL T. ADDISON; MICHAEL J.
 3    ANDERSON; STEVEN J. DEMETRIOU; JULIA L. JOHNSON;
      DONALD T. MISHEFF; THOMAS N. MITCHELL; JAMES F. O'NEIL
 4    III; CHRISTOPHER D. PAPPAS; SANDRA PIANALTO; LUIS A.
      REYES; JERRY SUE THORNTON AND LESLIE M. TURNER:
 5
          JONES DAY
 6
          BY:  GEOFFREY J. RITTS, ESQ.
 7
          901 Lakeside Avenue
 8
          Cleveland, Ohio 44114
 9
          gjritts@jonesday.com
10
11        BY:  MARJORIE P. DUFFY, ESQ.
12        325 John H. McConnell Boulevard, Suite 600
13        Columbus, Ohio 43215
14        mpduffy@jonesday.com
15
16        WARREN TERZIAN, LLP
17        BY:  THOMAS D. WARREN, ESQ.
18        30799 Pinetree Road, Suite 345
19        Pepper Pike, Ohio 44124
20
21
22
23
24
25
                                             Page  3
```

```
 1    APPEARANCES OF COUNSEL: (CONTINUED)
 2    FOR DEFENDANT FIRSTENERGY:
 3         SULLIVAN & CROMWELL, LLP
 4         BY:  DAVID M.J. REIN, ESQ.
                ROBERT J. GIUFFRA, ESQ.
 5              THOMAS McIVER, ESQ.
 6         125 Broad Street
 7         New York, New York 10004
 8         reind@sullcrom.com
           giuffrar@sullcrom.com
 9         mcivert@sullcrom.com
10
11
12    FOR DEFENDANT CHARLES E. JONES:
13         BAKER & HOSTETLER
14         BY:  CAROLE S. RENDON, ESQ.
                TERA COLEMAN, ESQ.
15
           Key Tower Suite 2000
16
           127 Public Square
17
           Cleveland, Ohio 44114
18
           crendon@bakerlaw.com
19
20
21
22
23
24
25
```

Page  4

```
 1   APPEARANCES OF COUNSEL: (CONTINUED)
 2   FOR DEFENDANT DONALD SCHNEIDER:
 3        ORRICK HERRINGTON & SUTCLIFFE, LLP
 4        BY:  PRESTON BURTON, ESQ.
              JILL WINTER, ESQ.
 5
          1152 15th Street NW
 6
          Columbia Center
 7
          Washington, D.C. 20005
 8
          pburton@orrick.com
 9        jwinter@orrick.com
10
11        SANTEN & HUGHES
12        BY:  BRIAN P. O'CONNOR, ESQ.
13        600 Vine Street, Suite 700
14        Cincinnati, Ohio 45202
15        bpo@santenhughes.com
16
17   FOR DEFENDANT MICHAEL DOWLING:
18        TUCKER ELLIS, LLP
19        BY:  JOHN F. MCCAFFREY, ESQ.
              JOHN A. FAVRET, ESQ.
20
          950 Main Avenue, Suite 1100
21
          Cleveland, Ohio 44113
22
          john.mccafrey@tuckerellis.com
23        john.favret@tuckerellis.com
24
25
```

                                                        Page 5

```
 1    APPEARANCES OF COUNSEL: (CONTINUED)

 2

 3   FOR DEFENDANT LEILA VESPOLI:

 4        ARNOLD & PORTER

 5        BY:  AARON F. MINER, ESQ.

 6        250 West 55th Street

 7        New York, New York 10019

 8        aaron.miner@arnoldporter.com

 9

10   FOR DEFENDANT JOHN JUDGE:

11        VORYS SATER SEYMOUR & PEASE, LLP

12        BY:  ANDREW P. GURAN, ESQ.

13        50 South Main Street, Suite 1200

14        Akron, Ohio 44308

15        aguran@vorys.com

16

17   FOR DEFENDANT DENNIS CHACK:

18        MORGAN, LEWIS & BOCKIUS, LLP

19        BY:  KAREN POHLMANN, ESQ.
                LAURA McNALLY, ESQ.

20        1701 Market Street

21        Philadelphia, Pennsylvania 19103

22        karen.pohlmann@morganlewis.com

23

24

25
```

Page 6

```
 1    APPEARANCES OF COUNSEL: (CONTINUED)
 2    FOR THE UNDERWRITER DEFENDANTS:
 3         DAVIS POLK & WARDWELL, LLP
 4         BY:  JOSHUA SHINBROT, ESQ.
 5         450 Lexington Avenue
 6         New York, New York 10017
 7         joshua.shinbrot@davispolk.com
 8
 9         PORTER WRIGHT MORRIS & ARTHUR, LLP
10         BY:  DAVID S. BLOOMFIELD, JR., ESQ.
11         41 South High Street, Suite 2900
12         Columbus, Ohio 43215
13         dbloomfield@porterwright.com
14
      FOR DEFENDANT ROBERT REFFNER:
15
           MCDERMOTT WILL & EMERY, LLP
16
           BY:  SAMANTHA L. FENTON, ESQ.
17
           444 West Lake Street, Suite 4000
18
           Chicago, Illinois 60606
19
           sfenton@mwe.com
20
21         BROUSE MCDOWELL
22         BY:  JOHN C. FAIRWEATHER, ESQ.
23         388 South Main Street, Suite 500
24         Akron, Ohio 44311
25         jfairweather@brouse.com
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    ALSO PRESENT:
 2    MICHAEL KOLSEN
      KATHIANN KOWALSKI
 3    PETE McGINLEY
      DAVID AXELROD
 4    ERIKA OSTROWSKI
      ANDREW JOHNSON
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 8

```
 1                      I N D E X

 2    WITNESS          DIRECT   CROSS   REDIRECT   RECROSS

 3
                              (None)
 4

 5

 6    EXHIBITS

 7    NUMBER          MARKED AND RECEIVED

 8                          (None)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page  9

1          REPORTED REMOTELY FROM IRVINE, CALIFORNIA;

2        THURSDAY, JANUARY 4, 2024, 8:04 A.M. TO 9:43 A.M.

3

4          SPECIAL MASTER JUDGE:  It is January 4th, 2024,

5    11:05.  We're here in the FirstEnergy case,

6    2:20-cv-3785; as well as the MFS Series Trust I

7    litigation, Case No. 221-cv-5839; and Brighthouse Funds

8    Trust II litigation, Case No. 2:22-cv-865, before the

9    Special Master by reference for report and

10   recommendation as to motion for a stay pending the

11   interlocutory 26(f) appeal.  The motion for a stay is by

12   FirstEnergy.

13         Counsel, if you would introduce yourselves and

14   then move into it.  The floor will be yours.

15         MR. GIUFFRA:  Okay.  Good morning, Special

16   Master Judge.  Robert Giuffra with Sullivan & Cromwell

17   for the Defendants.

18         MR. FORGE:  Good morning.  This is Jason Forge

19   for the Class Plaintiffs.

20         MR. HEIMANN:  And good morning, your Honor.

21   Richard Heimann for the Opt-Out or Direct Action

22   Plaintiffs.

23         SPECIAL MASTER JUDGE:  Thank you, all, and

24   welcome.

25         Mr. Giuffra, whenever you're ready.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1          MR. GIUFFRA:  Okay.  Mr. Judge, as I think it's

2     been laid out in the papers fairly well, the grant of a

3     23(f) interlocutory appeal is a significant step in any

4     securities case.  In fact, it's a rare step.  And that's

5     Plaintiffs' own words in opposing the grant in this

6     case.

7          Now, we went back and looked, and the Sixth

8     Circuit has granted 23(f) appeal and securities cases

9     four times in the last ten years, including in this

10    case.

11         In the three other cases, besides this case,

12    District Courts granted stays of those cases, including

13    Magistrate Judge Jolson, because of the significant

14    implications of a 23(f) appeal.

15         Now, it's quite clear that the 23(f) appeal in

16    this case could significantly change the shape of the

17    case.  We provided you with copies of our petition, the

18    opposition briefs, the reply, as well as the amicus

19    briefs that were filed by prominent law professors and

20    SEC officials.

21         There are two claims in this case.  The most

22    significant claim, clearly, is the Section 10(b) fraud

23    claim the Plaintiffs had brought under the Exchange Act

24    on behalf of stockholders in FirstEnergy.  The Court

25    certified a class for three-and-a-half years and

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    Plaintiffs claim approximately $8 billion in losses over

2    that three-and-a-half-year class period.

3            The other claim that remains in the case is a

4    Section 11/Section 12 case under the Securities Act and

5    it's on behalf of bondholders.  That claim has

6    completely different standards that need to be shown.

7    For example, you've got to show scienter in a 10(b)

8    case.  No scienter obligation in a bondholder

9    Section 11/Section 12 case, just a material

10   misstatement.

11           The class period in the bondholder case is

12   only -- is less than a year, and the losses are, at

13   most, about $200 million.

14           Now, the 23(f) petition goes directly at the

15   10(b) case, the 10(b) claims.  And that's, again, if

16   the -- if the Sixth Circuit rules the way we think it

17   should, as laid out in our petition, there won't be a

18   10 -- a Section 10(b) case in this case.  It'll be

19   dismissed.  Well, there'll be no class that will be

20   certified.

21           They may get the chance to remand back to the

22   District Court, try to file another class certification

23   motion.  There have been other cases we've been involved

24   in with Mr. Forge's firm.  This has gone on literally

25   three times.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1           But there may not be a certifiable 10(b) case
2      following the motion that we have made -- the
3      application we have made.  And with a 10(b) case, the
4      Plaintiffs have to prove class-wide reliance.  They've
5      got to show that all of the stockholders in the class
6      relied upon the alleged misstatements or omissions.
7           Now, in order to establish reliance in a
8      securities case, the Supreme Court has adopted two
9      presumptions.  One is something called Affiliated Ute,
10     which we talk about in our papers, and the other is
11     Basic.
12          In most securities cases involving public
13     companies -- in fact, all that I'm aware of -- Courts
14     rely upon the Basic presumption.
15          Now, here Plaintiffs have alleged -- and I was
16     glad that Mr. Forge put the brief in front of -- put it
17     before you -- the complaint before you last night.  They
18     principally allege that Defendants did not disclose they
19     were engaged in a political corruption scheme.
20          They also allege approximately 42 -- I think it
21     is 42 -- misstatements and they -- those statements --
22     you know, is a different case.  You don't have to rely
23     upon Basic.
24          Now, it's a lot easier to establish and to
25     certify a class based on Affiliated Ute than under

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1   Basic.  There are different standards, and those
 2   standards are much harder to -- to meet.
 3         Now, we've raised both the question of whether
 4   Plaintiffs can rely upon Affiliated Ute and Basic in
 5   certifying a class in this case and whether they can
 6   have a claim that's based on the nondisclosure of this
 7   alleged political corruption scheme.  We don't think
 8   they can do that.  Seven Courts of Appeals have gone our
 9   way.  The Sixth Circuit has not addressed this issue at
10   all.  In fact, there have been -- you know, there have
11   been cases where the Sixth Circuit, prior to this case,
12   had denied 23(f) petitions in securities cases seeking
13   review of this question of whether Affiliated Ute and
14   Basic can be applied in the same case.
15         Chief Judge Marbley, in his class certification
16   order, recognized that this was a question that had not
17   been decided by the Sixth Circuit and it's an important
18   legal question.  And clearly, the Sixth Circuit, you
19   know, is going to review that issue.
20         The second issue that we presented in our
21   petition is equally important and perhaps more so.  The
22   Supreme Court in the case called Comcast -- it's a
23   relatively recent Supreme Court case -- said that
24   Plaintiffs must be able to propose a damages methodology
25   that is capable of measuring damages on a class-wide
```

Page 14

```
 1   basis.
 2          One of the issues in this case is that, over
 3   the three-and-half years, if you just look at the 42
 4   misstatements, different misstatements were made at
 5   different times.  And what the misstatement was or
 6   wasn't had different effects.  Because when you're
 7   dealing with something -- you know, in the typical
 8   securities case, if a company says, well, we're going to
 9   have, you know, a billion dollars in earnings and they
10   announce that the stock price goes up, and then it turns
11   out that it was a bankrupt company and the stock price
12   goes down, it's pretty easy to assess what the impact
13   was of the misstatement.
14          In a case like this, when Plaintiffs are
15   relying upon statements like "we endeavor to comply with
16   the law" and the issue is, well, you didn't disclose you
17   were engaged in purported corruption conduct at various
18   points in time.  Obviously, what was going on at
19   different points time was -- were different.
20          So, for example, if you just take the facts of
21   this case, the fact that, you know, FirstEnergy was
22   providing political contributions to Mr. Householder
23   before he became a speaker of the -- of the Ohio house,
24   was, obviously, something that would have had less of an
25   impact on the stock price than, for example, if he was
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    the speaker, which happened later on, or if HB6 was

2    passed or if the repeal was going to happen.

3           So the inflation in FirstEnergy's stock price

4    was different, varying over the course of the

5    three-and-a-half-year class period.  And the statements

6    themselves were what I would call qualitative

7    misstatements; meaning, they weren't statements going to

8    financial metrics, but they were going to statements

9    about what the company was endeavoring to do in terms of

10   things like legal compliance.

11          And trying to measure the amount of inflation

12   in the stock price because of such qualitative

13   statements in the context of an alleged political

14   corruption scheme over three-and-a-half years is quite

15   different than being able to, in a financial

16   misstatement case, look at, well, what was the statement

17   that was made with respect to earnings?  The stock price

18   went up ten points.  Then it turned out the earnings

19   were not going to be hit, stock price went down ten

20   points.  That's a much simpler methodological problem

21   for a damages expert.

22          Now, in this particular case, what happened was

23   the Plaintiffs submitted what we call a cookie-cutter

24   expert report from another case where, in fact, I

25   believe that the class cert wasn't even -- it -- there

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    were issues with respect to class cert in that case,

2    where the expert basically identified a series of

3    methodologies that could be used to measure damages in a

4    securities case.

5            The expert didn't attempt to propose a

6    methodology that would apply in this case.  They didn't

7    even pick a particular methodology that he would apply.

8    Now, he promised, at some point down the road, he could

9    do so.  Now, Chief Judge Marbley in his decision, did

10   not apply Comcast.  He didn't engage in the rigorous

11   analysis that was required by Comcast.  And instead he

12   thought that, well, since, under the Securities Act,

13   there was a statutory formula for calculating damages

14   and the expert was going to be applying that statutory

15   formula in calculating the bondholder damages, that same

16   methodology could be applied in this case, in the -- in

17   the stockholder case.

18           In fact, there is no statutory damages

19   methodology under the Exchange Act.  And, you know, I

20   think this was clear.  The fact that the damage -- the

21   expert did not propose a damages methodology that worked

22   or the fact that Chief Judge Marbley didn't do the

23   required analysis or the fact that there is no statutory

24   damages method proposed -- laid out in the -- in the

25   Exchange Act for 10(b) claims --

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1              SPECIAL MASTER JUDGE:  Let me ask you this:  Is
2       there a methodology that's capable of measuring the
3       claim damages here?
4              MR. GIUFFRA:  We don't know.  It hasn't been
5       proposed.  And, in fact, that's the issue that the Sixth
6       Circuit will have to decide.  And if the Sixth Circuit
7       agrees with us, that what Plaintiffs have done in this
8       case is not sufficient, the case will be sent back to
9       Chief Judge Marbley.  I assume the Plaintiffs will have
10      an opportunity to try to propose a damage methodology
11      that works in the complicated case that we're dealing
12      with about qualitative misstatements over a
13      three-and-a-half-year period involving, you know,
14      different kinds of political activities.  Because, as we
15      all know, you know, obviously, someone could be running
16      for office, but when they get in office and if you're
17      paying them bribes, it has a different value in terms of
18      the benefit that you can get.  And if someone is trying
19      to get a bill passed -- right -- it's not certain it's
20      going to happen.  And if the bill gets passed, then
21      there's repeal attempt.
22             So all those events had different inflationary
23      effects on the stock price.  Plaintiffs have not taken
24      any of that into account and have not proposed a damages
25      methodology that works.  So --
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1          SPECIAL MASTER JUDGE:  Can you point me to any

2     Court that's ever applied this kind of inflationary

3     theory?

4          MR. GIUFFRA:  Yes.  I believe we cite them in

5     our papers.  There are multiple cases where Courts have

6     held that classes cannot be certified because the

7     Plaintiff have -- has not been able to put forward a

8     damages methodology that can measure damages on a

9     class-wide basis.  So it's something that Courts have

10    done and the Sixth Circuit is going to look at the

11    allegations in this case and make an assessment.

12         So if the Sixth Circuit agrees with us and

13    remands the case back down, there won't be a

14    Section 10(b) case, which is the main case we're dealing

15    with here, where all the discovery is being taken, where

16    we're going to purport -- you know, start planning for

17    expert reports, and there may not be a Section 10(b)

18    case at all here.  And so --

19         SPECIAL MASTER JUDGE:  Explain to me why

20    subclasses wouldn't work.  I mean, if we're going to

21    look at this as a component of damages depending upon

22    the position of Householder at the time and his

23    influence at the time and everything, why isn't that

24    ripe for breaking it down into compartmentalized

25    approach?

                                              Page 19

```
 1            MR. GIUFFRA:  That's something that would have
 2    to be assessed following a remand by the Sixth Circuit,
 3    by Chief Judge Marbley.  The Plaintiff would have to
 4    able to come forward with a damages methodology that
 5    works for a subclass.  The subclass, obviously, would be
 6    a much smaller class with smaller damages than in this
 7    case.  The economic stakes would be lower.  So when you
 8    look at things like, you know, what are the stakes in
 9    the litigation and what discovery should go forward, we
10    look at it differently.  We don't know.
11            And, look, we raised these issues on class
12    certification.  The Plaintiffs went forward with what
13    was a cookie-cutter, basically, just listing of
14    different methodologies that can be used to assess
15    damages in security cases.  They did not do the work
16    that was necessary, did not reflect the issues in this
17    case, the difficulties of this case.
18            This is not a case like, say, Enron or
19    Worldcom, like I said at the beginning, where a company
20    makes a financial misstatement about its earnings and it
21    turns out it's not true.  You can see exactly how much
22    the stock price went up when they made the full
23    financial disclosure and how much it went down when it
24    turned out the truth came out.  That is not this case.
25    It's a much more nuanced case.  And in those types of
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    cases, you've got to do the work and it was not done.
 2            Another issue that will happen in this --
 3            SPECIAL MASTER JUDGE:  Explain to me, though,
 4    because, I mean, what's before the Sixth Circuit,
 5    they're going to look at whether certification was
 6    appropriate and whether it needs to be remand -- you
 7    know, decertification on a remand.
 8            You know, I assume they would not extend beyond
 9    decertification, because it's not really before them,
10    where they would say there is no methodology.  They're
11    not going to opine on that ultimate issue.
12            I mean, you're -- this is a convoluted
13    question.  So let me try to ask it in two parts, and you
14    can address either one first.  The takeaway from -- one
15    of the takeaways from all the briefing is -- I think
16    Mr. Forge would call it hyperbolic.  I call it just
17    unfinished or not flushed out enough.
18            You had some conclusory statements of, you
19    know, some of the Defendants are likely to get tossed
20    out of the case.  You know, they're -- yeah.  I -- I'm
21    not so certain that you've given me the analytic cane
22    for each of those conclusions.  So perhaps --
23            MR. GIUFFRA:  All right.  Let me try to do
24    that.
25            SPECIAL MASTER JUDGE:  And here's the other
```

Page 21

1    component to that.  As part of that same -- let's assume
2    you're absolutely right -- and I'm not expressing an
3    opinion -- we're just assuming for the sake of argument
4    that you're absolutely right, then the remedy in the
5    Sixth Circuit is decertification and remand, I'm
6    assuming.  You're not suggesting that they're going to
7    say certification is impossible because there is no
8    methodology.  I think that would be going beyond what's
9    in front of them.
10            MR. GIUFFRA:  I think that's correct.  But I
11    think the -- but the issue would then be, okay, there
12    would be no class.  All the discovery that's being
13    taken, you know, first based on our Affiliated Ute
14    theory that we think will be thrown out.  All the
15    discovery that's being taken based on the claim that
16    while why they can -- there -- the judge didn't do the
17    proper Comcast analysis.
18            And so, you know, what we're basically saying
19    is you've got to pause the case because the -- whether
20    there is a certifiable Section 10(b) case in this case
21    is now being called into question.  And until, you know,
22    the Sixth Circuit rules -- the Sixth Circuit rules
23    however it rules, if they remand and send the case back,
24    there won't be a cert -- a Section 10(b) claim.  If we
25    won on both grounds, it will be decertified.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1            And then Plaintiffs will have to try to get a
 2    case certified before Chief Judge Marbley.  He may or
 3    may not agree with them.  We would have the ability
 4    again to bring another 23(f) case.  There have been -- I
 5    can give two examples.  One of which I was involved in
 6    with Mr. Forge's law firm involving Goldman Sachs.  We
 7    went -- had three 23(f) appeals, including one that went
 8    to the US Supreme Court.  And the Halliburton case,
 9    which also went to the Supreme Court, there were three
10    23(f) appeals.
11            These securities cases are complicated and this
12    is one where -- and in each of those cases, discovery
13    was stayed, pending the 23(f) appeals.
14            So what we're saying here is that, even on a
15    remand, Chief Judge Marbley would have to reassess all
16    the issues related to class certification, which would
17    be -- if they're trying to move on, on the basis of
18    misstatements at that point, there are issues related to
19    whether the statements had any price impact, whether the
20    statements match up, the statements with the corrective
21    disclosure.  The only corrective disclosure they point
22    to is the fact that there was disclosure of the
23    Householder indictment.  Well, that's different than
24    those statements and whether the statements were or were
25    not accurate.
```

Page 23

1           Now, because of the significant impact of a
2      23(f) on a securities case -- and, again, this is only
3      the fourth one that the Sixth Circuit has granted in ten
4      years, and in every one them, District Courts -- the
5      other three, District Courts have stayed discovery,
6      including Magistrate Judge Jolson, in the Big Lots case.
7      And Courts have stayed discovery irrespective of the
8      status of the case.  Was it a fact discovery, expert
9      discovery -- they stayed it.

10          Now, Plaintiffs put up a bunch of cases, and I
11     want to just talk about them briefly.  They cited six
12     cases where parties moved to stay discovery, but no
13     23(f) petition had been granted.  They moved in the
14     District Court to stay discovery.

15          I would -- if we had moved in the District
16     Court before either you or before Chief Judge Marbley,
17     you would have denied it.  You would have said we don't
18     know whether the -- we don't know whether you have a
19     strong or weak 23(f) petition.  In Chief Judge Marbley's
20     view, it would be, "I think my class certification
21     decision is correct."

22          Of the six cases that they cite, in the one
23     case, which is called Daniels, which is a Second Circuit
24     case, District Court denied the stay before the 23(f)
25     petition was granted.  But then when the 23(f) petition

                                          Page 24

1    was granted, the case was stayed.

2           Plaintiffs cite a case called Petrobras,

3    another Second Circuit case that I'm quite familiar

4    with.  The District Court denied the stay, but then the

5    Second Circuit granted the stay following the grant of

6    the 23(f) petition.  And then the other two cases that

7    the Plaintiffs cite are not even 23(f) cases, much less

8    securities cases.

9           So the standard for a stay -- there are four

10   factors that need to considered, and I'll just tick

11   through them quickly.  The first one is likelihood of

12   success.

13          Now, that requires a showing only that an

14   appeal raises, quote, "serious questions going to the

15   merits."  And we cite that case, Abercrombie.  It's a

16   Southern District of Ohio case for that proposition.

17          Well, the Sixth Circuit in this case has

18   already recognized that there are serious questions

19   going to the merits by granting the petition.  In fact,

20   in its order, the Sixth Circuit said that, you know, it

21   had considered, quote, "whether the Petitioner is likely

22   to succeed on the appeal," close quote.  And, also,

23   quote, "whether the case presents novel or unsettled

24   questions of law," close quote.

25          So that's the one thing we know.  We know

Page 25

```
 1    that's what was considered by the Sixth Circuit in
 2    granting the petition.  And clearly, that's sufficient
 3    to meet the serious questions going to the merits
 4    standard.  And, again, the questions here are serious
 5    questions that could lead to the decertification of the
 6    10(b) case entirely.  And that -- and so, you know, if
 7    Plaintiffs can't satisfy Comcast, there won't be a
 8    Section 10(b) class action case.  The alleged losses
 9    will just be those under the bondholder case, which is
10    truly the tag -- the tail wagging a very big dog.
11            And the Ute -- the Ute ruling will have a
12    significant impact on the scope of the case because
13    Mr. Forge will then have to litigate about each
14    misstatement, the impact of the statement on the price,
15    whether there was loss causation, whether there was
16    scienter with respect to each statement.  And that's a
17    different exercise than being able to allege an
18    amorphous nondisclosure of a political corruption
19    scheme.  And it's going to be a much harder case to go
20    forward with involving different discovery than what
21    he's dealing with now.
22            In terms of the balance of harms, favoring a
23    stay, clearly because the Sixth Circuit decision may
24    change the contours of this action, continued
25    proceedings based on theories that may well be thrown
```

Page  26

1   out would be wasteful, wasteful of judicial resources,
2   wasteful of party resources. There are lots of parties
3   on these Zoom calls. There are many parties who go to
4   the depositions. The parties are spending hundreds of
5   thousands, if not into the many millions of dollars,
6   litigating this case. And as in other cases where 23(f)
7   petitions have been granted, it makes good sense to halt
8   the proceedings until we know what the scope of the case
9   will be.
10          Because, again, class certification is the --
11  probably the most significant aspect of any securities
12  case. If you can certify a class, you can go forward.
13  If you can't, you can't. And the value of the case for
14  all purposes is affected by your ability to certify a
15  class.
16          And, again, in Big Lots, Chief Magistrate
17  Judge Jolson recognized that and recognized, as in this
18  case, that the fact that the 23(f) petition could change
19  the contours of the case warranted a stay.
20          SPECIAL MASTER JUDGE: Let me ask you about --
21  about the harm issue here. You know, the -- the drain
22  on judicial resources is limited in this case,
23  especially since the appointment of special masters --
24  special master.
25          The, you know, impact on the parties fiscally

Page 27

```
 1   is the most obvious thing.  But if some of the theories
 2   fall by the wayside, that, certainly, I think, would
 3   affect, arguably, the expert reports.  I get that.
 4         What I have a harder time seeing is how much of
 5   the fact discovery that could be completed in the
 6   interim.  You know, it's -- one of the things here that,
 7   you know, jumps out at you is to split the baby and, you
 8   know, stay expert discovery, wrap up fact discovery.
 9   Because the fact discovery, the facts are what the facts
10   are.  There's already the risk in demonstrated actual
11   witnesses saying, "I don't remember."  And then if we
12   wait another year, we wait another two years, you know,
13   that may only get worse.
14         So if we permit fact discovery to go forward,
15   but stay the expert component of the case, you know, the
16   theories that are applied to those facts may evolve, may
17   change, my fall away.  But the facts are what the facts
18   are.  Why should we pause the facts right now when, for
19   the most part, they're going to remain the same and
20   they're going to remain necessary to discovery at some
21   point?
22         MR. GIUFFRA:  That's an excellent question.
23   And let me explain why.
24         If the Sixth Circuit rules for us on the
25   Comcast issue, then there will be no Section 10(b) claim
```

Page 28

```
 1    in the case.  All that will be left will be the

 2    Section 11 and the 12 cases.  And this, obviously,

 3    assumes that they have to go to back in -- they'll go

 4    back to Marbley, but -- and then they'll try to certify

 5    with a damages expert report.

 6          But right now, if the Comcast -- if we win on

 7    the Comcast issue, there will not be a certified

 8    Section 10(b) case.  If there is only a Section 11 and

 9    Section 12 case on behalf of the bondholders and that's

10    all the case is about, it's a completely different case.

11          So, for example, scienter, fraudulent intent,

12    will not be an issue in the case any longer.  It

13    makes -- you know, all the discovery that's going on now

14    is about witnesses and what they knew and what they

15    didn't know.  Discovery about state of mind is

16    irrelevant in a Section 11, Section 12 Securities Act

17    claim.

18          In addition, the class period will be

19    substantially shortened.  It's now three-and-a-half

20    years.  It will be down to less than a year, if it's

21    just a securities case.  Eight of the Defendants in the

22    case, including people who haven't been deposed yet,

23    would be out of the case.

24          Dozens of the challenge statements that they

25    are focused on now, to the extent they were not made in
```

Page 29

1    the bond offering or prospectus, will not be relevant in
2    the case any longer.
3            The alleged damages in the case will be limited
4    to the bonds.  Nothing else.  The market cap loss that
5    they're alleging under -- under the 10(b) case is -- you
6    know, and this is from their complaint Section --
7    paragraph 258 is $7.6 billion.  Under the -- under
8    the -- just the bondholder case, you know, we're
9    probably talking about 200 million.  It's a completely
10   different case.
11           And so from a -- purely from the standpoint of
12   fact discovery, fact discovery on the Section 11 and
13   Section 12 cases will be substantially shorter,
14   substantially more limited, won't involve all the
15   discovery about state of mind and fraudulent intent.
16   And you'll need a lot less discovery.
17           So our position -- and then -- and then if we
18   are dealing with -- if it's a Ute case, the Ute part of
19   the case is out and it's actually just a case about
20   misstatements, the case will look completely different.
21           The way Mr. Forge is litigating the case now is
22   to establish that there was a political corruption
23   scheme that was not disclosed and it was known to people
24   inside of FirstEnergy.
25           Well, if that claim is no longer in the case,

Page 30

1    the discovery will have to focus on each one of the
2    statements.  And what statements actually get certified
3    for class, if any, will have to be determined after the
4    remand when it goes down to Chief Judge Marbley.  And so
5    we would be able to say, well, what's the damages
6    methodology that your expert is proposing for this
7    statement, that statement, and the next statement?
8    Given that some of the qualitative statement -- they're
9    all pretty much qualitative statements about different
10   events at different times, where the inflation was
11   varying.  And they haven't put forward any methodology
12   to deal with that.
13        You're correct that the expert discoveries
14   phase would clearly change, but there's no question that
15   Courts have repeatedly found that conducting wasteful
16   discovery that may not be necessary because a Plaintiff
17   cannot certify a class, because they can't satisfy, for
18   example, Comcast, is something that's -- that meets the
19   balance of harm standard and warrants a stay.
20        The other thing that, you know, Plaintiffs had
21   focused on a little bit is, you know, well, the fact
22   that the appeal may take some time.  We're not rushing
23   the appeal.  We haven't sought an extension of our time
24   to file the brief.  We still don't know when it'll be
25   done, because there are multiple parties that filed

Page 31

```
 1    23(f) petitions and we made a motion to consolidate all
 2    those -- all of those appeals so it would be simplified.
 3            But we're -- we -- I can represent to the -- to
 4    you and to the Court, we have no intention of delaying,
 5    seeking extensions.  We're ready to go full speed ahead
 6    in the Sixth Circuit.
 7            In addition, in every single one of these, you
 8    know, 23(f) grants, there's always a risk that witnesses
 9    will -- their memories will fade, but Courts still grant
10    the stays.
11            And in terms of the public interest, which is
12    the last factor, the public interest is served by
13    correct application of the law, not having a case where
14    we're going to be spending millions of dollars in
15    discovery when the case may not be one that can be
16    certified as a class because the Plaintiff can't propose
17    a damages methodology that satisfies Comcast.
18            One other point that Plaintiffs raise was,
19    well, we need to have discovery to get the facts out
20    there.  Well, the facts about the HB6 scandal are fairly
21    well out in the -- in the public domain.  We had
22    Mr. Householder's trial.  That was -- that was a public
23    trial.  In addition, FirstEnergy, as part of its -- for
24    a prosecution agreement admitted to various facts in
25    its -- in a fact statement.  All of that is public.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1          So what we're urging you to sort of sum up
2     would be this is a significant moment in this case.
3     Under Plaintiffs' own recognition, these 23(f) petitions
4     are granted very rarely or rarely.  And in the three
5     other times in the Sixth Circuit in the last ten years,
6     District Courts have recognized that you stop the case.
7     You pause the case.  And the issues that we're talking
8     about go directly to whether there's a cognizable,
9     certifiable Section 10(b) claim in this case.  And until
10    the Sixth Circuit rules and then it goes back to
11    Chief Judge Marbley and we might be back to the Sixth
12    Circuit, it makes little sense to go forward with a
13    litigation on a 10(b) case that may not be one that can
14    be certified as a class.  So we strongly urge that a
15    stay be -- that you recommend a stay be issued here.
16          SPECIAL MASTER JUDGE:  Thank you, sir.
17          Mr. Forge?
18          MR. FORGE:  Thank you, Mr. Judge.  I will try
19    to focus on the actual aspects of this case that point
20    towards the unmistakable conclusion that no stay should
21    be granted.  But as I have to do every time after
22    FirstEnergy speaks of rights, I have to correct a few
23    misstatements.  Starting with one that Mr. Giuffra has
24    repeated multiple times that the three other 23(f)
25    grants all resulted in the District Court staying

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    discovery.  That is false.

2           The truth is the three 23(f) grants, over the

3    past ten years in the Sixth Circuit, comprise three

4    cases.  In the Big Lots case before Magistrate Judge

5    Jolson, fact discovery had been completed.  So there was

6    no stay of fact discovery.

7           Judge Jolson denied the request to stay written

8    expert discovery which consists of expert reports.  So

9    Judge Jolson ordered the expert reports to proceed.

10          The only thing Judge Jolson stayed was other

11   expert discovery, which, as we all know, would consist

12   only of the expert decisions.  So all the fact discovery

13   was complete and Judge Jolson ordered the expert reports

14   to be completed.

15          In the BancorpSouth case, that's even worse.

16   The discovery was not stayed when a 23(f) petition had

17   been granted.  When the case returned to the District

18   Court after the 23(f) had been resolved, on remand, the

19   Magistrate Judge stayed discovery only while the

20   District Court revisited the class certification motion

21   and expressly denied the request to stay discovery

22   pending an appeal in the event that the District Court

23   granted class certification.  So the Magistrate Judge

24   refused to prospectively stay discovery pending appeal.

25          In the third of the three cases, the Tivity

                                                    Page 34

1    Health case, both fact and expert discovery was

2    complete, and so there really was no choice but for the

3    Court to stay proceedings.  Because once there is a

4    certified class, in order for the trial to be binding on

5    everyone, there has to be class notice sent and an

6    opportunity to opt out.  So all of discovery had been

7    completed.

8           So literally not a single one of the cases does

9    what Mr. Giuffra wants you to do, even though he said

10   all of them did what he wants you to do.

11          Now, I want to move on to another misstatement

12   in FirstEnergy's reply brief and it was also woven

13   throughout Mr. Giuffra's lengthy statement, which

14   essentially read their brief.

15          At page 12 of their reply --

16          SPECIAL MASTER JUDGE:  Hold on one second,

17   please.

18          MR. FORGE:  Okay.

19          SPECIAL MASTER JUDGE:  As you guys can imagine,

20   I have quite a few documents open here.

21          MR. FORGE:  Well, I will say there's one

22   advantage of the Zoom format, that we can have a lot

23   more landscape in front of us.

24          SPECIAL MASTER JUDGE:  Okay.  Please go ahead.

25          MR. FORGE:  Okay.  At page 12, about one-third

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    of the way down the page, they write, "In their

2    omissions case, Plaintiffs must conduct fact discovery

3    focused (as they have done to date) on establishing an

4    amorphous undisclosed corruption scheme that was

5    material and caused investor loss."

6            Now, in reality, I know Mr. Giuffra has -- I

7    don't think he said a word on the record actually in the

8    discovery in this case. So I don't know if he's

9    actually watched any of the depositions, but for those

10   of us who have actually participated in the depositions

11   and actually taken the depositions, we know that is a

12   completely erroneous characterization.

13           If you turn to the complaint itself and

14   specifically at page 29, paragraphs 93 and 94, you can

15   see just how deceptive that description is. At page 29,

16   beginning with the heading "The Numerous Methods and

17   Means of Defendants' Bailout Scheme," we have, at

18   paragraph 93 and subparagraphs A through I, all

19   different methods and means of the bailout scheme that

20   don't involve statements at all.

21           So we have numerous methods and means. And

22   this is all -- for those of us who have prosecuted fraud

23   cases, both civilly and criminally, for our entire

24   careers, there's nothing unusual about this. This is

25   not amorphous, and it's, obviously, disclosed. This is

                                                    Page 36

1    the way schemes are alleged.  You've alleged methods and
2    means of the scheme, you describe those methods and
3    means, and then, at least in the civil case, you take
4    discovery to prove or, in the Defendants' case, disprove
5    those allegations.
6         So we have nine specifically delineated methods
7    and means that don't involve statements.  Then when you
8    turn to paragraph 94, you see in the complaint it says,
9    "In addition to these methods and means, Defendants also
10   executed a bail -- the bailout scheme through a series
11   of materially false and misleading statements, including
12   statements about the following topics."
13        And what's important there, Mr. Judge, is the
14   combination of materially false and misleading public
15   statements.  What you will see throughout this entire
16   complaint is that we have never -- the complaint never
17   says this statement is false.  This statement is an
18   omission.  It's always all of these statements are
19   alleged to be false and misleading.
20        There's not a single statement, not one, not a
21   single statement that is alleged in this complaint that
22   will be impacted at all by this appeal.  Not even
23   potentially, not a single one.
24        So you can see examples -- if you turn to
25   page 6 of the complaint, in paragraph 15, it's just a

Page 37

1    venue allegation, but we're talking about omissions and

2    false and misleading statements in the same paragraph.

3            If you turn to page 31, the heading that really

4    begins the description of all the statements,

5    "Defendants' Materially False and Misleading Statements

6    and Omissions During the Class Period," this is a theme

7    that carries on throughout the entire complaint.  You

8    can turn to any reference to omission or omit and you'll

9    see misstatement also being alleged, or untrue

10   statement.

11           The very next page, page 32, Footnote 12,

12   quoting the Sarbanes-Oxley certification, the

13   certification is that the annual report did not contain

14   any untrue statement of material fact or omit to state a

15   material fact necessary to make the statements made in

16   the light of the circumstances on which they are --

17   under which they are made not misleading.  This is

18   throughout the entire complaint.

19           So this is a completely false representation

20   that the substance of the case will be impacted at all,

21   at all, by this appeal.

22           SPECIAL MASTER JUDGE:  I mean, I think the

23   logical extent in what you're saying to connect the dots

24   is, this is why Chief Judge Marbley said you're either

25   going to have the Affiliated Ute presumption or you're

Page 38

```
 1     going to have the Basic presumption.
 2               MR. FORGE:  Exactly.  And along those lines,
 3     Mr. Judge, I'll tell you, there's only one paragraph in
 4     the entire complaint that will be impacted potentially
 5     by this appeal.  That's paragraph 256 at page 95.
 6     That's the only one.  And because that's the paragraph
 7     that alleges the Affiliated Ute presumption.  And what
 8     Chief Judge Marbley said, in addition to you're either
 9     going to have one or the other, was that the damages
10     issue is not going to derail class certification in this
11     case, period.  He's going to certify -- if he has to
12     certify just for liability, that's going to happen.
13               But we're not even close to that point.  We're
14     not even close to Judge Marbley having to consider that
15     kind of a scenario, and I submit we're never going to
16     reach that point, because, number one, there's never
17     been a case like this.  And they have failed to cite a
18     single one where a class is not certified because the
19     inflation, in the Defendants' view, varies over time.
20     Never happened before.
21               SPECIAL MASTER JUDGE:  Well, I think I tried to
22     ask that of Mr. Giuffra during his argument in a poorly
23     worded question.  And he said -- he cited me to a number
24     of cases, the Daniels case, I believe, where he said,
25     you know, yes, they've applied the theory, that the
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    theory existed.
2           I take from what you're telling me and from
3    your briefing, it's never been applied.
4           MR. FORGE:  It's never been applied to reject a
5    certified class for damages --
6           SPECIAL MASTER JUDGE:  On the front end --
7           MR. FORGE:  -- because -- because of a claim --
8    because of a claim that the damages varied over time.
9           SPECIAL MASTER JUDGE:  Yes.
10          MR. FORGE:  And which is their claim.
11          And let me just give you a quick example to
12   show just how easily this could be done without getting
13   into the nuts and bolts of the methodology.
14          As Mr. Giuffra mentioned, at the time of the
15   disclosures in this case, there was a market cap drop of
16   approximately $8 billion.  What was exposed at that time
17   was that FirstEnergy had effectively become a criminal
18   enterprise.  The market cap dropped $8 billion.
19          That fact that FirstEnergy had become a
20   criminal enterprise was true the first day they started
21   their criminal activities all the way through to the
22   last day.
23          Even if you say a portion of that drop was
24   probably the market figuring that, down the road, these
25   benefits from HB6 were going to be lost and that is what
```

Page 40

```
1    varied over time, because the likelihood of getting
2    those benefits varied over time.  Before Mr. Householder
3    was the speaker of the house, it was here.  Once he was
4    speaker of the house, it was here.  Once they passed
5    HB6, it was here.  And then once they criminally
6    defeated the referendum, it was up here.  So it varies
7    over time.  Fine.
8              The problem with that argument in trying to
9    throw the baby out with the bath water here is that's
10   just a small component of the damages, because the
11   present value of those benefits, as of July 21st, 2020,
12   was not over a billion dollars.
13             So even if -- even if we ultimately said, you
14   know what, we're not even going to mess with the
15   variable portion of the damages, we're just going to go
16   with the portion that we can see the market took out of
17   this stock price, when it found out that this company
18   had been a criminal enterprise for, you know, the past
19   three years, fine.  We're still talking about $7 billion
20   of damages that don't vary over time.
21             Now, they can make whatever arguments they
22   want, that, oh, it wasn't -- it was a really bad
23   criminal enterprise in 2019, but it was less of a bad
24   criminal enterprise in 2017.  That's all argument.
25   That's not a Comcast argument.  That's just argument.
```

Page 41

1       We have cases where every day Plaintiffs pursue

2    and obtain damages for pain and suffering.  If pain and

3    suffering can be handled -- if a jury can figure out

4    what a dollar value is for pain and suffering, they can

5    easily, especially with the assistance of an expert, do

6    the math in figuring out how the market valued this

7    corruption scheme.  Because we know how much value the

8    market took out of FirstEnergy's share price when it was

9    finally exposed.

10       So what we come back to, once we recognize

11   that, number one, this case is never going away -- and

12   when I say "this case," I mean the entire case.  There

13   will be a 10b-5 case, no matter what.  There's no

14   circumstance under which there will not be a 10b-5 case

15   going forward.

16       There is also no circumstance in which the full

17   scope of this 10b-5 case will not go forward.  And

18   that's why it's -- it really is an unusual application

19   of the four factors here, because FirstEnergy has

20   absolutely no chance of success if we're measuring the

21   likelihood of success being wiping out or even changing

22   the 10b-5 aspect of this case.  They have no chance

23   whatsoever.

24       Number one, the Class Plaintiffs themselves are

25   not going away.  Number two, we have an opt-out or

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1   direct-action case that is a class action itself.

2   They're not going away.  Number three, we have the

3   presiding judge in this case of saying not only are --

4   okay.  That's fine.  Not only going forward

5   individually, if I didn't certify the class, but I'm

6   going to certify the class, irrespective of damages.

7   That is happening.

8           So no matter what, the 10b-5 case is going to

9   proceed and it's going to proceed exactly the way it's

10  alleged and exactly the way it has been investigated

11  throughout discovery.  That's not going to change.  So

12  there's absolutely no chance of saving any money, which

13  the Courts have fairly consistently said is not a form

14  of irreparable harm.  And more importantly, this is why

15  FirstEnergy never asked to stay discovery before,

16  because they know it's inevitable.

17          You see in the BancorpSouth case, which they

18  cite for the, you know, false assertion that the

19  District Court stayed discovery pending a 23(f) appeal,

20  but in that BancorpSouth case, Mr. Judge, the Defendants

21  moved to bifurcate fact and class discovery in its case

22  management order.  The Court did not bifurcate.  Then

23  they moved to bifurcate fact and class discovery.  The

24  Court denied that request.  They were consistent in that

25  case of essentially taking the position that the whole

Page 43

```
1    case might get knocked out on this class certification
2    issue, so we shouldn't move forward with fact discovery.
3    They lost, but at least they were consistent.
4         Here we have FirstEnergy never even raises the
5    possibility of bifurcating discovery.  Not in a case
6    management order, not in a motion to bifurcate
7    discovery, not when they oppose class certification, not
8    when they are waiting for Judge Marbley to issue his
9    class certification decision, not after Judge Marbley
10   issues his class certification, not even when they filed
11   the 23(f) petition did they include or request that the
12   Sixth Circuit stay discovery.
13        That all speaks to the fact that there can't be
14   irreparable harm here, because if there is, then they
15   committed malpractice by not asking to avoid that
16   irreparable harm at any time prior to now.
17        So it's really just an opportunistic argument.
18   It's not a substantive argument.  It's not backed up by
19   the realities of the allegations in this case.  It's not
20   supported by the way the fact discovery has been pursued
21   in this case.  It's just an opportunistic
22   sound-bite-based argument.
23        And to drive home that point, I want to point
24   out that, in the rule itself, in 23(f) itself, it
25   expressly states that granting of a petition does not
```

Page 44

1    mean staying the proceedings.

2           Now, every one of Mr. Giuffra's arguments, when

3    they're actually corrected, every one of his arguments

4    essentially would support staying every case when a

5    23(f) petition is granted.  Yet that is exactly the

6    opposite of what the rule says.  The rule says it's

7    not -- every case is not stayed.

8           I want to -- you know, the very first appellate

9    argument I had as a prosecutor -- the panel asked me a

10   question that I always think about every time when I

11   have an oral argument and -- because it's such a great

12   question, is which one case do you think best supports

13   your position?  Which one case?

14          For us, in this case, I think it's the Beattie

15   case.  That is 2006 Westlaw 172207.  I think that case

16   best supports our position here for several reasons.

17   First of all, it specifically reminds the parties that

18   Rule 23(f) specifically notes that an appeal does not

19   stay proceedings in a District Court unless the District

20   Judge or the Court of Appeals so orders.

21          Second, when it talks about whether a

22   substantial question is presented, it talks about

23   whether the -- there's a question presented that could

24   end the case.  It's not a substantial question if

25   FirstEnergy has a reasonable likelihood of prevailing on

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1   what is effectively a technicality.
 2          This Affiliated Ute issue -- and Mr. Giuffra is
 3   dead wrong when he says that there's six courts or seven
 4   courts or any number of courts that have ever held that
 5   a mixed case is, per se, not allowed to proceed as an
 6   Affiliated Ute case.  When I say "a mixed case," I mean
 7   a case that alleges both false statements and omissions.
 8   What all of the cases say is what is important is
 9   whether the case, in essence, is primarily a false
10   statements case or primarily an omissions case.
11          But either way, they've already conceded that
12   the basic presumption of alliance applies here.  So
13   there's no chance that the case is going to go away.
14   And so there isn't a substantial question presented here
15   in the sense of a question that is actually going to
16   impact the discovery we're talking about resuming here,
17   which is what we need to do.
18          And the second fact of the Beattie case talks
19   about costs not being irreparable harm, and there the
20   only cost that the Court was willing to preserve would
21   be the cost of sending out class notice.  And,
22   obviously, we're not going to do that until class
23   certification is finally adjudicated here.
24          The third, the Court talks about the prejudice
25   to the other side by, you know, delaying resolution.  So
```

Page 46

```
1    that's prejudice to us here, you know, Plaintiffs by
2    delaying resolution.  As you accurately pointed out,
3    we've already had instances of memories fading.  We've
4    actually had an instance of a witness dying.  But, look,
5    do memories fade if you delay proceedings?  Of course.
6    Does that mean you cannot, as a rule, stay proceedings?
7    No, it doesn't.
8            I'm not -- I'm not here to tell you, Mr. Judge,
9    or Chief Judge Marbley, that, you know, you -- it is,
10   per se, improper to stay discovery when a 23(f) petition
11   is filed.  But I am here to say that, under these
12   circumstances, we're -- we're already several years down
13   the road from when the case was filed.  We're already,
14   you know, well down the road in completing fact
15   discovery.  To lose all of that momentum and to wait
16   what is probably going to be a year to resume fact
17   discovery -- that would unquestionably prejudice us.
18           Does that alone mean it should not be stayed?
19   That alone?  Probably not.  But it is yet another factor
20   that supports denying the request for the stay.
21           SPECIAL MASTER JUDGE:  That leads into the
22   question I asked Mr. Giuffra about letting fact
23   discovery go forward but staying any expert discovery
24   and expert reports and such.  I'm assuming you're going
25   to tell me that's a bad idea.
```

Page 47

```
 1              MR. FORGE:  Well, here's -- here's -- yes, your
 2    assumption is correct, but here's why.  And this is not
 3    an instance where, as you, I think, elicited through
 4    your questions -- this is not an instance where our
 5    expert says damages can be calculated using this
 6    methodology and their expert says damages cannot be
 7    calculated.  And we want the Sixth Circuit to say
 8    damages cannot be calculated.  That's not the case here.
 9              The case here is our expert says damages can be
10    calculated using this methodology.  And they say that's
11    not a -- that's not enough of a description for us to
12    really test it one way or the other.
13              Maybe they can be calculated.  Maybe they can't
14    be, but we don't know enough from this description.
15    Because that is the argument they're making in the Sixth
16    Circuit, and Mr. Giuffra conceded this.
17              At most, the case is going to come back down
18    for them to get more information about our damages
19    methodology.  That is the absolute best-case scenario
20    for them on the contest issue.  Most -- most that can
21    possibly happen is we have to provide them with more
22    information.  Well, that's exactly what's going to
23    happen if we proceed with the expert discovery.
24              So -- so that's right.  It's not just because I
25    want to get through the expert discovery.  It's because
```

Page 48

```
 1   we're actually going to provide the very information
 2   they purport to want if we go forward.  So there --
 3   there is -- and, you know, the other -- the last thing I
 4   want to come back to with the Beattie case is,
 5   throughout all of Court's analysis, it emphasizes the
 6   fact that the case is going to go forward.  The case
 7   will still proceed.  And that really distinguishes this
 8   case from any other in which, you know, there's been a
 9   stay of proceedings.
10          This case is not going away.  The Plaintiffs
11   have made it clear in the class case.  The Plaintiffs
12   have made that clear in the opt-out or direct-action
13   case, and Judge Marbley has made it clear in his own
14   statements.
15          And the last component of Beattie which is
16   relevant here is the public interest.  And what the
17   Court said there was the Plaintiffs likely have an equal
18   argument that the public interest favors allowing the
19   case to proceed.  The Plaintiffs seek to hold a company
20   accountable for deceptive billing practices.
21          If deceptive billing practices was enough to,
22   you know, get a public interest factor for the
23   Plaintiffs there, clearly in this case, we have a strong
24   public interest in the case moving forward.
25          You can -- it doesn't take more than 30 seconds
```

Page 49

1    to find an article online in which some reporter is

2    asking why don't we -- you know, why haven't we gotten

3    the full picture of this case?  Why don't we know who on

4    the FirstEnergy side is responsible?

5            We just had Sam Randazzo indicted last month.

6    So the case is far from over just on the criminal side

7    of things.  So the public has an extreme interest in

8    this case moving forward and us completing discovery so

9    we can present the public with that complete picture.

10           And with that, I would -- I would love to

11   answer any questions you might have.

12           SPECIAL MASTER JUDGE:  I think I'm good for

13   now.  I may circle back to something.  I want to see

14   what Mr. Giuffra says about it on his rebuttal.

15           MR. FORGE:  All right.

16           SPECIAL MASTER JUDGE:  But, no, I appreciate

17   the argument.  Thank you.

18           MR. FORGE:  Thank you.

19           MR. GIUFFRA:  Okay.  Why don't I start off with

20   the -- with the same point, which is that whether the

21   Section 10(b) claim goes forward or not is not dependent

22   on whether Plaintiffs want it to go forward or whether

23   Chief Judge Marbley wants it to go forward.  It's going

24   to depend on what the Sixth Circuit says about whether

25   that claim can go forward.  And what Plaintiff did not

Page 50

```
1    dispute was that if they can't come up with a damages
2    methodology that satisfies Comcast, then presumably the
3    Sixth Circuit will say what's required to be a damages
4    methodology that satisfies Comcast.  The Section 10(b)
5    case, which is their principal claim, does not go
6    forward.
7              SPECIAL MASTER JUDGE:  Let me stop you right
8    there.  If the Sixth Circuit lays out what would satisfy
9    Comcast, you know, the likely avenue is not they're
10   going to say somebody can get it right in the future.
11   They're going to remand it here so these guys can get it
12   right now.
13             So you're not telling me they're going to -- I
14   mean, on one hand, I think you're telling me they're
15   going to foreclose the claim, 10(b) claims, and they're
16   out.  I can't -- explain to me how that's going to
17   happen, because what I see at worst-case scenario for
18   the Plaintiffs -- and do not hesitate to tell me where
19   I'm thinking of this incorrectly -- but worst-case
20   scenario for the Plaintiff is, you know, the Sixth
21   Circuit provides guidance, even in dicta, on what a
22   Comcast methodology would work here, remands it, and
23   then we have guidance for the expert.
24             MR. GIUFFRA:  That's absolutely correct.  I
25   agree with you 100 percent.  That's -- that's what would
```

Page 51

 1    happen in the Sixth Circuit.  The Sixth Circuit would
 2    say -- it would look at the allegations in this
 3    complaint, it would look at the damages methodology that
 4    was proposed, which was a, you know, literally
 5    off-the-rack just listing possible damages methodology,
 6    say it's not acceptable, say what you would need to do
 7    in this case.  Perhaps.  It might not do that much.
 8    They might say, look, just what they did was not enough,
 9    but they could give some -- they could give some
10    guidance.
11          It would go back to Chief Judge Marbley.  The
12    Plaintiffs would have to make another class
13    certification motion on the Section 10(b) claim.  They'd
14    have to come up with a new expert report.  We might have
15    to take discovery with respect to that expert report,
16    and then Chief Judge Marbley would have the ability to
17    certify a class.  If he certified a class based upon the
18    damages methodology that was proposed, we would have the
19    ability to file another 23(f) petition, and the case
20    could go back up to the Sixth Circuit.
21          And as I indicated before, there's a case that
22    I was involved in with Mr. Forge's firm that that
23    happened three times in the Second Circuit, the Goldman
24    Sachs case.  In the Halliburton case, it happened three
25    times.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1              But that is the way it would go.  I'm not
 2     saying that the Sixth Circuit will preclude Plaintiffs
 3     from having the ability to certify a Section 10(b)
 4     claim.  What the Sixth Circuit could do, though, is say
 5     what you've done so far is not enough, and decertify the
 6     Section 10(b) claim.  And what Mr. Forge is saying is,
 7     well, let's go forward with discovery like nothing
 8     happened, like the 23(f) petition didn't happen.
 9              And, remember, the Sixth Circuit had a choice.
10     It could have just taken the Ute issue, or it could have
11     taken the Comcast issue.  It took both issues and said
12     that it assessed -- likelihood of success in granting
13     the petition.
14              You know, one thing that was said before, which
15     it's just -- and I don't like to say that opposing
16     counsel, you know, is wrong, but with respect to
17     Affiliated Ute, there are literally seven Courts of
18     Appeals that have held you can't have an Affiliated Ute
19     claim based on an undisclosed scheme.
20              One of those cases, I argued in the Sixth and
21     the Seventh -- in the Ninth Circuit, excuse me -- which
22     was the Volkswagen case.  And, you know, while this is,
23     obviously, a big fraud, you know, case and, obviously,
24     there's wrongdoing that was done by people like
25     Householder, et cetera, the Volkswagen emissions case
```

Page 53

1   was clearly a global fraud case.  And in that case, what

2   had happened was the company in its -- in its

3   disclosures had not disclosed it was cheating on

4   emissions with respect to cars for, you know, 10 million

5   cars around the world.

6           The District Court judge, Judge Breyer,

7   actually adopted the same reasoning that Chief Judge

8   Marbley did in this case, but then he certified the

9   issue under 1292 and it went to the Ninth Circuit, and

10  the Ninth Circuit said that, when you have a case which

11  is primarily a misstatement case -- and in that case,

12  there were 50 misstatements.  Here we have 42 -- the

13  fact that the claim is that there was a half truth --

14  i.e., that the statement did not fully disclose all of

15  the facts -- still meant that you could not rely upon

16  Affiliated Ute.  And there were other cases like that.

17  I'm quite confident that the portion of this decision

18  dealing with Affiliated Ute is wrong, at least under the

19  law of seven circuits, and it will change what this case

20  looks like going forward.

21          But on the Comcast issue, there's no question

22  that we're dealing with a situation where -- and there

23  are other cases that I can talk to about the question of

24  whether have there ever been a case involving varying

25  inflation?  Well, the Comcast case itself was a case

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    where the Supreme Court held that the damages theory did
2    not match the liability theory, including because of the
3    fact that there were issues with respect to how you --
4    how you calculate the damages.
5           A case that, I think, is a very important one,
6    where we actually prevailed and our firm handled it, was
7    the BP Securities litigation, which is 2013 Westlaw
8    638840, and this is at *17, Southern District of Texas,
9    December 6th, 2013.  And the Plaintiffs in that case --
10   and it didn't go to the -- it did not go to the Fifth
11   Circuit, because this was at the District Court level --
12   the Court held that the damages methodology was
13   insufficient, and that was a case where there were
14   disclosures made by BP at various moments in time about
15   safety with respect to oil rig situations.
16          And it was, obviously, different points in time
17   when the disclosures were made and it was a case where,
18   you know, you had sort of -- you have disclosures that
19   were made before the spill and disclosures that were
20   made after the spill.  And the Plaintiffs -- the -- the
21   Court held that you couldn't rely upon what's called the
22   constant-dollar-damages methodology, which is what
23   Plaintiffs are doing here, where they're essentially
24   just looking at what was the stock price of the bidding
25   in of the class period, what was the stock price at the

Page 55

```
 1    end of the class period, and saying, voilà, that's the
 2    damages.  And since you have to take into account the
 3    varying inflation that occurs at moments in time and the
 4    constant-dollar approach, which was one of the
 5    methodologies that was adverted to in the, shall I say,
 6    like, two-page damage report that was put forward by
 7    Plaintiffs' expert did not, you know, rely -- it
 8    referenced that as being a potential method, but that
 9    method doesn't work when you have a case where you have
10    different representations that are made over -- at
11    different moments in time and you can't have constant
12    inflation in a case like -- like this one, where, you
13    know, it deals with, you know, alleged political acts
14    that were all very contingent.
15            In the -- in the Beattie case, which was
16    referenced, the Defendant failed to identify every --
17    any portion where there isn't challenging issues with
18    respect to class, and that's at 2006 Westlaw 172207 at
19    *4 (sic) and *9 -- let me read that back, because I was
20    reading quickly.  2006 Westlaw 172207 at *7, *9.
21            And then a point that was raised, you know, I
22    think which -- I think is an important one, is that, you
23    know, what are the cases where Courts have held that
24    classes can't be certified because of damages
25    methodology hasn't been put forward but satisfies
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    Comcast.  One is the BP case, which I dare say is a

2    major, you know, issue in the world.  I mean, a big -- a

3    big securities case.  And the second one is a case

4    called Nypl versus JPMorgan.  That's 2022 Westlaw 819771

5    at *7.  That's Southern District of New York, March 18,

6    2022, and the Court dismissed in that case because a

7    reliable damages methodology had not been proposed.

8            Now, in the -- let me go back to the Beattie

9    case.  In that case, that was a situation where, in

10   filing the appeal for the 23(f) -- that was one of these

11   cases where someone, I believe, filed -- you know, this

12   was -- this was before the 23(f) had been granted, and

13   the District Court said that it's seeking a stay.  The

14   Defendant had, quote, asserted that substantial

15   questions are present because Courts of Appeals were,

16   you know, and that -- and that they hadn't identified in

17   the -- in moving for the stay, there wasn't -- there was

18   a grant in that case, but the -- the problem was that

19   the Plaintiff, unlike what we're doing, hadn't

20   identified, well, what were the bases and how would the

21   23(f) petition, which was granted in the Beattie case,

22   how would that affect the case going forward.

23           So I think of one of the things we certainly

24   have done in this, you know, in this argument and in our

25   papers is explain why we think the 23(f) could be

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    significant here, and clearly, since the Comcast issue
2    is before the Sixth Circuit and could result in the
3    decertification of the 10(b) claim, that's a real issue.
4              Now, on the issue of fact versus expert
5    discovery, I think it would be a huge, huge, huge
6    mistake to allow expert discovery to go forward in this
7    case before we let the Sixth Circuit actually say
8    whether -- that what sort of a damages methodology is
9    necessary in this case.  Makes no sense.  Why wouldn't
10   we wait for the Sixth Circuit to address that issue?
11   Again, the Sixth Circuit took review on both issues.
12   And, again, the Beattie case, the Plaintiff is not
13   pointing out -- did not point out to the District
14   Court -- the Defendants did not point out to the
15   District Court why the 23(f) petition could
16   significantly impact this -- the case, and I think
17   Mr. Forge would have to concede that if -- if the
18   Plaintiffs are unable to propose a damages methodology,
19   and we might have to go back to Chief Judge Marbley and
20   then back up to the Sixth Circuit, that could lead to
21   the decertification of the Section 10(b) claim.
22             They may say, well, that's a wishful thinking
23   by us, but it's still a real -- it's still a possibility
24   and a reason why a stay should be necessary -- should
25   be -- should be granted here.
```

Page 58

1          Now, the beginning of Mr. Forge's argument, he
2    talked about, oh, we're misstating what the cases are.
3    Let me go through the law on this.  In the Big Lots
4    case, which is Magistrate Judge Jolson's case, the stay
5    was granted, expert discovery as soon as the 23(f)
6    petition was granted, and she wrote an opinion that you
7    have.  You -- that's cited by both sides.  In that case,
8    the Defendants did not object to doing the expert
9    reports and filing -- and filing them.  I think they may
10   have already been done at that point, and so that's a
11   different fact pattern than this case.
12          In the other two cases, which is BancorpSouth
13   and a case called Tivity -- in that case, unlike this
14   one, the 23(f) petition was granted, and then the case
15   was remanded in the same order.  So that the class
16   certification error must have been so egregious that the
17   Sixth Circuit said, well, we're remanding -- we're just
18   sending it right back and -- and even at that point,
19   okay, the District Court still granted a stay of
20   proceeding.
21          Now, the case was back in the District Court,
22   but -- but in that case, the District Court granted --
23   and this is BancorpSouth -- granted a stay of discovery
24   pending the District Court's decision on class cert
25   following remand.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1             Okay.  So that would be us going to Chief Judge
 2    Marbley following a remand and asking for a stay.  And
 3    in Tivity, the Court granted the stay, pending the
 4    outcome of the petition, and that was another case where
 5    there was a petition and it got remanded and then there
 6    was a stay.
 7             There are cases which we cited, and let me give
 8    you those.  Lannett, L-a-n-n-e-t-t, which is -- this is
 9    a case we cited in our -- in our brief, and then the
10    other case would be IBEW Local 98.  These are cases that
11    are cited at page 4, Footnote 1, of our reply brief,
12    along with others, where cases were stayed, in fact,
13    discovery.  The status of where the case is, is really
14    not the question.  The question is, is the case one --
15    and I think Mr. Forge is correct.  Let's talk about the
16    Beattie case.
17             Has the Defendant articulated reasons why the
18    decision of the Sixth Circuit -- could the decision of
19    the Sixth Circuit result in the decertification of the
20    class here?  The answer to that question is clearly
21    true.  In addition -- it's clearly true.  And in
22    addition, you know, that could have significant impacts
23    on discovery, including who the parties are in the case
24    and the like.  I like Mr. Forge's example, what's your
25    best case.  Here's one for us.  This is the Lannett
```

Page 60

1    case, which I mentioned.

2            And that's a case where the Third Circuit

3    after -- after a -- and I think this is where we can end

4    up here potentially -- the Third Circuit stayed

5    discovery pending a 23(f) appeal in a securities case in

6    the middle of fact discovery after the District Court

7    denied the stay, recognizing that, you know, in -- in

8    these types of cases, where a 23(f) petition is

9    addressing issues that go to the, you know, the central

10   issues in the case, it makes sense to stay discovery.

11   So we urge you to do that, but clearly to allow expert

12   discovery to go forward here, when the very issue that's

13   before the Sixth Circuit will impact the scope of expert

14   discovery, what the experts might be doing and we might

15   be back and forth to the Sixth Circuit several times on

16   the expert reports and what's satisfactory and what's

17   not, those wouldn't make any sense.

18            I recognize that, obviously, you know,

19   Mr. Forge is for Plaintiffs.  Plaintiffs want to keep

20   push, push, push, push, push, but you still got to deal

21   with the fact that a 23(f) grant in a securities case is

22   a major event.  And he hasn't cited any cases where, you

23   know, Courts at least in -- in this district have just

24   said, you know, go full-blown with fact discovery.  It

25   just so happens that this is the one where there's a

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    grant where we're in the middle of fact discovery.

2            So we urge -- we urge the Court to stay

3    discovery where the case stands.  We will represent that

4    we will move as expeditiously as possible to brief this

5    Sixth Circuit appeal, and we -- we want to get the case

6    wrapped up just as much as Mr. Forge does.

7            SPECIAL MASTER JUDGE:  Thank you.

8            Mr. Forge, I hesitate to ask, but any -- any

9    brief rebuttal?

10           MR. FORGE:  The only thing I would point out is

11   a couple -- couple of additional mistakes.  The VW case,

12   Mr. Giuffra started out with a, you know, a lot of

13   bluster about how that -- that's the case that proves

14   that these mixed misrepresentation cases and omission

15   cases categorically cannot be done under Affiliated Ute,

16   and then he slipped up and acknowledged that what the

17   Court's analysis turned on was whether it's primarily an

18   omissions case or primarily a misrepresentations case,

19   which is exactly what I said.  I would point out that

20   the VW case, I believe, there were nine pages of alleged

21   misrepresentations in the complaint, and that is what

22   convinced the Ninth Circuit that that was primarily

23   and -- misrepresentation, a misrepresentations case, not

24   an omissions case.

25           More importantly, the case went forward and

Page 62

1    resulted in a multibillion dollar resolution.  So, you

2    know, more power to Mr. Giuffra if he wants to, you

3    know, land this flight similarly to the VW case.  The

4    Beattie case -- initially, he said that the 23(f) was

5    denied, but, again, thankfully, he corrected himself and

6    acknowledged that the Beattie case, the Court denied the

7    stay after the 23(f) was granted.  And everything else,

8    I think, is just him repeating earlier arguments that

9    I've already responded to.

10            MR. GIUFFRA:  Mr. Judge, can I just make one

11   point, because I think it's important.  In the VW case,

12   it was the bondholder case, and in that case, the class

13   was decertified, pending motion for summary judgment to

14   dismiss the claim of the named Plaintiff.  So I think

15   this is the securities case, not the -- not the consumer

16   class action.  And so the winning on the Affiliated Ute

17   effectively ended that case, because the only ground

18   that the Plaintiff had tried to get class certified was

19   Affiliated Ute.  The Basic issue, they couldn't do

20   because of the bondholder case, and there wasn't an

21   efficient market for the bonds.

22            In addition, like in VW, like in this case,

23   this is a case where there's 42 misstatements.  When he

24   started his argument, Mr. -- Mr. Forge talked about all

25   the misstatements in the case, and so when cases were --

Page 63

1    Plaintiffs are relying on, you know, 40 or more

2    misstatements, you can't also bring a Ute case.

3              SPECIAL MASTER JUDGE:  Thank you.  Thank you

4    both for your arguments.  They were very helpful.  The

5    motion's taken under advisement.  My report and

6    recommendation will issue shortly, briefly, hopefully,

7    soon.

8              Mr. Giuffra, do you want a -- do you need or

9    want a break of any length before we jump into the

10   opt-out case arguments?

11             MR. GIUFFRA:  I'm happy to -- I'm happy to deal

12   with it right now so we can get this all -- I mean, if

13   you want to have a break -- if you'd like to have a

14   break for a few minutes, that would probably be fine

15   with me.

16             SPECIAL MASTER JUDGE:  I'm fine.  I have those

17   documents teed up as well.  I'm ready to jump into that.

18   I think this will be very short, but I -- you know, I

19   know we've been going for an hour and 24 minutes, and I

20   don't know if you need a break or not.

21             MR. GIUFFRA:  I can just keep going.  It won't

22   be -- it's not going to be a very long argument.

23             SPECIAL MASTER JUDGE:  Please proceed.

24             MR. GIUFFRA:  I think, you know, we also think

25   the opt-out cases should be stayed.  You know, the

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    opt-outs have, obviously, throughout this whole process
 2    sought the same discovery as the class action.  They're
 3    participating in the same depositions, they're sharing
 4    discovery back and forth.  Chief Judge Marbley made the
 5    sensible decision to set a schedule that had the class
 6    action going first and then the opt-outs going second.
 7             The issues on the appeal will expect the
 8    opt-outs both alleged Affiliated Ute in terms of
 9    alleging reliance, and so that issue will be important
10    in both cases, the citation for that.  In the MFS
11    complaint, it would be paragraphs 178 to 182; in
12    Brighthouse, it's 166, 270.
13             In addition, the MFS and the Brighthouse
14    Plaintiffs assert losses, the same losses as in the
15    class case, and -- and so how the Sixth Circuit rules on
16    what damages methodology is used to actually figure out
17    damages will impact their cases as well, including on
18    issues like loss causation.
19             So, you know, these cases have been tied
20    together.  It doesn't make any sense to separate them.
21    The issues are largely the same, and so, I think, the
22    same analysis applies to both.
23             SPECIAL MASTER JUDGE:  Thank you.
24             Mr. Heimann, I know you've been waiting
25    patiently.  Your ball.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1        MR. HEIMANN:  Oh, I hate to spill more

2    metaphysical ink in these arguments, but the key point,

3    I think, in response is we did not argue, as the

4    Defendant apparently construed our brief, that we should

5    not be stayed despite a stay in the class case.  While

6    I'm perfectly prepared or would be perfectly prepared to

7    proceed forward with discovery, as I think we ought to,

8    I don't think it's an efficient use of judicial

9    resources, in the event that the class case were to be

10   stayed, to allow our case to proceed.  And so I would

11   concede if, in effect, that if the class case is stayed

12   for purposes of discovery, that our case should be

13   stayed as well.

14        But I want to emphasize that I disagree

15   completely with the notion that in the event Affiliated

16   Ute were to be removed from the case, that would have

17   any material impact on the discovery that would be taken

18   in this case.  I don't want to repeat what we said in

19   our brief, but essentially, this case, the gravamen of

20   this case is the contention that FirstEnergy engaged in

21   a bribery scheme and concealed that scheme.  In terms of

22   interpreting that in terms of a 10b-5 claim, there are

23   two theories that have been asserted by both the class

24   and the opt-out case.

25        The first is the company made multiple

1    misstatements or statements, I should say, about its

2    political contribution practices, and those statements

3    were all expressly or implied to the effect that the

4    company's political contributions were lawful and

5    legitimate. And the assertion in the 10b-5 cases that

6    those statements were uniformly false because, in fact,

7    the company was engaged in making political

8    contributions in a bribery scheme. In addition to that

9    claim that the statements were false, both complaints

10   also assert if those statements were misleading, because

11   they failed to disclose the truth about the engagement

12   in the bribery scheme.

13          So it is completely wrong for counsel to argue,

14   as he did, that the case cannot be based on omissions.

15   It can be based on omissions, it is based on omissions,

16   in terms of a 10b-5 basic case for presumption of

17   reliance, because we're asserting both of the statements

18   were false and that they were misleading. And that

19   means that the discovery that we had been taking and

20   will take in the future is going to be exactly the same

21   with respect to the basic questions in the case, whether

22   Affiliated Ute is part of the case or not.

23          SPECIAL MASTER JUDGE: That goes to my earlier

24   question that, you know, Chief Judge Marbley said that

25   either the Affiliated Ute applies or Basic applies, but

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1     it's just the application of the theory to the same

2     underlying discovery; right?

3              MR. HEIMANN:  Precisely.

4              SPECIAL MASTER JUDGE:  Yeah, okay.  Thank you.

5              Mr. Heimann, you get the gold star today for

6     being concise.

7              MR. HEIMANN:  Thank you.

8              SPECIAL MASTER JUDGE:  Mr. Giuffra, any

9     response?

10             MR. GIUFFRA:  Other than I think what

11    Mr. Heimann said, which is that, you know, how you rule

12    on the class issue should determine how you rule on the

13    opt-outs, we agree with that.

14             SPECIAL MASTER JUDGE:  All right.  That's easy

15    enough.  Thank you.  I'm glad we didn't take a break.

16             The motions will be taken under advisement.  If

17    the parties would supply me, as you've done in the past,

18    with a copy of the transcript, it will help me a great

19    deal in getting the report and recommendation out.  I

20    hope to have a boatload of report and recommendations

21    out and have gifts for everyone in the new year very

22    quickly.

23             Any other matters that we need to attend to or

24    discuss regarding these motions before we discuss last

25    night's email exchanges?  Mr. Giuffra?

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1              MR. GIUFFRA:  No.
 2              SPECIAL MASTER JUDGE:  Mr. Forge?
 3              MR. FORGE:  No.  Thank you.
 4              SPECIAL MASTER JUDGE:  All right.  Gentlemen,
 5    do you want this next portion to be on the record as
 6    well, or, I mean, we might as well if we have a court
 7    reporter here, I guess.
 8              MR. FORGE:  Yes.  I think that's fine.
 9              SPECIAL MASTER JUDGE:  Yeah.
10              And, Lena, are you doing okay?  Do you want a
11    break?
12              THE REPORTER:  I'm okay.  Thank you.
13              SPECIAL MASTER JUDGE:  All right.  Thank you.
14              All right.  Last night, I was copied on a
15    series of communications regarding a possible proposed
16    order that the parties were negotiating, which took me
17    by surprise, since I came home from the Ohio State
18    basketball game and found that this was being
19    contemplated.  And what made me laugh, as I came back
20    from the game -- let me pull this up -- to finish my
21    preparation for today, and I read that ECF No. 613, the
22    last paragraph of which stated, in relevant part, the
23    order appointing the Special Master did not delegate to
24    Plaintiffs the authority to draft report and
25    recommendations.  Plaintiffs point to no authority
```

Page 69

1    suggesting that they may draft judicial opinions for the

2    Court or the Special Master.  In fact, Courts repeatedly

3    reject this practice as improper.

4            So explain to me why the parties are

5    negotiating a proposed order to clarify an order that I

6    don't think needs clarification.

7            MR. GIUFFRA:  I think we were focused on

8    there -- and, by the way, I was glad to see that -- glad

9    to see that Ohio State won yesterday.  So it was -- I

10   went to Princeton.  Princeton beat Rutgers too.

11           SPECIAL MASTER JUDGE:  Nice.

12           MR. GIUFFRA:  Yeah.  But college basketball --

13   I actually prefer more of the NBA myself.

14           But -- but basically the -- the reference we're

15   making is to the fact that the Plaintiffs, in the issue

16   we're just dealing with, the stay application, had

17   actually drafted up an opinion for you to write a report

18   and recommendation, and we wanted to make the point that

19   we thought that was improper.  We're not saying you're

20   going to do it.  We just -- that was our way of dealing

21   with it.

22           SPECIAL MASTER JUDGE:  Right.

23           MR. GIUFFRA:  The only issue we have to deal

24   with now is not -- it's a stipulation of what we're

25   proposing and then you just -- where you could sign it,

                                                  Page 70

1   would be as, I think, we talked at the least hearing

2   when -- when you entered your order on December 19th,

3   which was a question about whether we had to meet and

4   confer and whether things could be filed without your

5   approval, and I raised at the December 21 hearing our

6   concern that we didn't want that to be construed to

7   prohibit Defendants from making a motion if, you know,

8   we actually had a discussion with you and you said, "Why

9   are you filing this stupid motion," and we wanted to do

10   so anyway in order to make a record or preserve an issue

11   for appeal, and then, you know, went back and looked at

12   it, and you said -- and this is at page 43, and this is

13   why it's good to have the transcript of that hearing on

14   the 21st -- you said, quote, "We're going to let you

15   file what you're allowed to file.  We're going to let

16   you file what you need to file.  We're going to let you

17   file stuff, even if you shouldn't file it and it's

18   strategically dumb.  We'll still let you do it, and

19   you're going -- we're going to consider it because

20   that's what I get paid to read it and make a decision

21   best I can," close quote.

22         Now, after that, we then drafted something

23   because there was concern on our end.  We wanted to make

24   sure it was actually in an order that we could file

25   motions even to the extent they were authorized by the

1    federal rules, local rules, or the Court's orders.  And
2    all we wanted to do was to, you know, make it clear that
3    we could do that.  The deadline for us to, you know,
4    file an objection to the order, which at least, on its
5    face, seems to suggest that maybe, you know, we can only
6    file motions, if the Special Master agrees, we can file
7    motions is, I believe, next Tuesday.

8           And so we provided Mr. Forge a draft of this
9    proposed, you know, order.  He objected to it, but he
10   did make certain concessions.  I mean, what he sort of
11   indicated was, which was sort of consistent with what
12   you said, which is that if we're allowed -- authorized
13   by the federal rules, by the local rules or the Court's
14   orders, we can file something even if, following a
15   conferral process, you don't think we should do it.  And
16   so we sent an email to him yesterday and said we were
17   going to raise this issue at today's conference and, you
18   know, that's -- that's really it.  We just want to try
19   to, you know, eliminate any question that our ability to
20   file orders -- to file motions, excuse me -- that are
21   allowed for under the federal rules, the local rules, or
22   the -- one of the Court's orders can be filed, even if,
23   you know, following the conferral process, you don't
24   think that's a smart idea for us to file it.

25          The only case -- and I mentioned this the last

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1     time -- from when I was a law clerk, and this was a long
2     time ago, there is a very famous case called In Re
3     Martin-Trigona, wherein there was a vexatious litigant
4     and was filing complaints in, you know, all sorts of
5     matters in New York, including in -- in divorce
6     proceedings involving federal judges.  And the Courts
7     basically blocked him from filing any more motions
8     without leave.  That's, obviously, not what's going on
9     here, and it would be a significant step to prevent a
10    party from filing a motion that it was authorized to
11    file under the federal rules because, during a conferral
12    process, the Special Master said we couldn't do it.  So
13    that's all we wanted to clarify.
14          SPECIAL MASTER JUDGE:  I think, in our previous
15    status conference, I think I even indicated to you that
16    I'm not going to declare you a vexatious litigator, even
17    if it will shorten my paperwork.  But, you know,
18    gentlemen, the meet-and-confer without a -- don't file
19    non-ministerial motions without leave of Court is to get
20    you to talk to me.  You know, I indicated in my prior
21    order that, you know, after you meet and confer and talk
22    to one another, you know, then we would talk and that
23    you could file with leave of Court.  You don't need to
24    submit to me or should negotiate a proposed order or a
25    stipulation in which I agree to follow the law.  That is
```

Page 73

1    sort of inherent in the job duties assigned to me by

2    Magistrate Judge Jolson and Chief Judge Marbley.

3            As a Special Master, as I indicated, we are

4    not -- it's not my job, it's not the Court's intent to

5    prohibit you from filing anything.  You know, this is

6    the American court system.  You could file whatever you

7    want no matter how good, how bad, or how stupid.  And it

8    all gets considered.  So you don't need that.  I don't

9    need to agree to it, because it could not be more

10   implicit in the function of what we're doing here.  I'm

11   simply saying talk to one another first, talk to me.  I

12   may opine, you know, Counsel, that is the dumbest motion

13   that any human being could ever file in a court case.

14   Have at it.  And I will -- I'm not going to tell you no,

15   ever.  Because you get to file and litigate your case

16   how you want, but it's simply we're erecting a gateway

17   so you talk to me before you file something.

18           MR. GIUFFRA:  I think that obviates the issue.

19           SPECIAL MASTER JUDGE:  Good.  Thank you.

20           I did get a kick out of the email exchange and

21   the attachments yesterday, and I thought, if nothing

22   else, these gentlemen and these ladies are thorough, you

23   know.

24           Mr. Forge, anything to add?

25           MR. FORGE:  No.  I never thought it was

                                              Page 74

```
 1   necessary in the first place, just like you, so --
 2          SPECIAL MASTER JUDGE:  Oh, don't suck up.
 3   Don't suck up now.
 4          MR. FORGE:  I'm not.  I didn't agree to it.
 5   This is not my idea, and I thought it was silly, and
 6   that's all there is to it.
 7          SPECIAL MASTER JUDGE:  You know, I think it's
 8   unnecessary, but I won't characterize it as silly,
 9   because I can see a cautious client saying, what the
10   hell, we can't file something, and an attorney wanting
11   to provide comfort.  So --
12          MR. FORGE:  Right.  Although I do want to -- I
13   do want to raise a related issue.
14          SPECIAL MASTER JUDGE:  Yeah.
15          MR. FORGE:  And -- and that is, you know, we do
16   have a process in place that requires, you know, once
17   we've met and conferred and then I think it's, you know,
18   the following Monday, the proponent of, you know, that's
19   seeking relief is supposed to provide a position paper.
20   The opponent, by the next Tuesday, at close of business,
21   is supposed to provide it -- their position, and then
22   Wednesday the two are combined and submitted to you.
23   And I -- the one thing I don't want to do is abandon
24   that, because that enables -- that is a written
25   submission.  That -- you know, that enables us to
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    present issues, not just for your blessing to file, but
2    hopefully for resolution.
3              SPECIAL MASTER JUDGE:  Yeah.
4              MR. FORGE:  Obviously, either side could -- you
5    know, whatever side is disappointed could file an
6    objection, but at least -- but we would get, you know,
7    the hope is -- and I think the reason why Magistrate
8    Judge Jolson instituted this originally and then you
9    adapted it into your mandate -- the hope is that these
10   issues can be resolved quickly, not -- not so we have to
11   set up briefing schedules and, you know, initial motions
12   and oppositions and reply briefs and do all of that.
13   The hope is that we can resolve these quickly without
14   having to go through that full-blown process.
15             So the only -- my only comment is I don't want
16   to abandon that process, and I don't want -- I don't
17   want this -- us to, you know, just kind of default into
18   this new procedure, where FirstEnergy sends you a letter
19   and then we talked and you say, well, it doesn't seem
20   like a good idea, but they just go ahead and start a
21   five-week briefing process on a motion that could have
22   been resolved in two days.
23             SPECIAL MASTER JUDGE:  No.  The ideal in my
24   thought is, you know, eventually, I think that our
25   status conferences, you know, whenever there is no stay

```
1    in effect, whether it's sooner or later, our status
2    conferences will not necessarily be needed on a weekly
3    basis.
4            When we're going to have one, I want written
5    submissions by the parties, teeing up for me what the
6    agenda would be and what the positions are so we can
7    have a productive -- most productive conference.  In the
8    interim, whenever things are either in the off weeks or
9    whenever something comes up that's not on that
10   scheduling that's more of an emergency, just pick up the
11   phone then.  But if everybody starts abusing the phone
12   privilege, then we're going to have to have -- you know,
13   just use common sense, but I like the written agenda,
14   the written submission, and we're not going to abandon
15   that, because it's helpful for me, it was helpful for
16   Magistrate Judge Jolson, and, you know, it's helpful
17   just for keeping everything straight in my mind and
18   probably your minds as well.  So look at the leave of
19   Court thing as supplementing that, certainly not
20   replacing it.
21           MR. FORGE:  Okay.
22           MR. GIUFFRA:  We agree that efficiency is
23   important, and we should, you know, try to eliminate all
24   the -- any unnecessary filings and papers.
25           SPECIAL MASTER JUDGE:  Great.  Good.  I like
```

Page 77

```
 1    it.
 2            All right.  Ladies and gentlemen, I think I
 3    have more research to do and quite a bit of drafting to
 4    do.  Let's keep, at least tentatively, next week's
 5    conference on the books, because if nothing else, we may
 6    have the aftermath of some orders to discuss.  It will
 7    be subject to being canceled, if it proves unnecessary.
 8    If anything comes up in the meantime, in the interim,
 9    certainly reach out to me, as our usual course, and we
10    will have an emergency contact, as necessary.
11            Please get the transcript to me as soon as
12    possible, and I will get busy drafting, so you guys can
13    get some decisions here, and report and recommendations
14    upward on the food chain.
15            MR. FORGE:  Thank you.
16            MR. GIUFFRA:  Thank you very much.
17            SPECIAL MASTER JUDGE:  Thank you, all, for your
18    work today.
19            We are off the record.
20            (The proceedings concluded at 9:42 A.M.)
21                              *   *   *
22
23
24
25
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1   STATE OF CALIFORNIA        )

                                )    ss.

 2   COUNTY OF ORANGE           )

 3

 4          I, Lena Mescall, Certified Shorthand Reporter,

 5   Certificate No. 13018, for the State of California,

 6   hereby certify:

 7          I am the person that stenographically recorded

 8   the transcript of proceedings held on Thursday,

 9   January 4, 2024.

10          The foregoing transcript is a true record of

11   said proceedings.

12

13

14   Dated: January 5, 2024

15

16

17                          Lenafmescall

18

19

20

21

22

23

24

25
```

**[& - 5839]**

| & |
|---|
| **&** 2:3,13,20 4:3 4:13 5:3,11 6:4 6:11,18 7:3,9 7:15 10:16 |

| 1 |
|---|
| **1** 1:25 60:11 |
| **10** 11:22 12:7 12:15,15,18,18 13:1,3 17:25 19:14,17 22:20 22:24 26:6,8 28:25 29:8 30:5 33:9,13 50:21 51:4,15 52:13 53:3,6 54:4 58:3,21 |
| **100** 51:25 |
| **10004** 4:7 |
| **10013** 2:23 |
| **10017** 7:6 |
| **10019** 6:7 |
| **10b** 42:13,14 42:17,22 43:8 66:22 67:5,16 |
| **11** 12:4,9 29:2,8 29:16 30:12 |
| **1100** 5:20 |
| **1114** 2:15 |
| **1152** 5:5 |
| **11:05** 10:5 |
| **12** 12:4,9 29:2,9 29:16 30:13 35:15,25 38:11 |

**1200** 6:13
**125** 4:6
**12638** 79:18
**127** 4:16
**1292** 54:9
**13018** 1:22 79:5
**15** 37:25
**15th** 5:5
**166** 65:12
**17** 55:8
**1701** 6:20
**172207** 45:15 56:18,20
**178** 65:11
**18** 57:5
**182** 65:11
**19103** 6:21
**19th** 71:2

| 2 |
|---|
| **200** 12:13 30:9 |
| **2000** 4:15 |
| **20005** 5:7 |
| **2006** 45:15 56:18,20 |
| **2013** 55:7,9 |
| **2017** 41:24 |
| **2019** 41:23 |
| **2020** 41:11 |
| **2022** 57:4,6 |
| **2024** 1:15 10:2 10:4 79:9,14 |
| **21** 71:5 |
| **21st** 41:11 71:14 |

**221** 10:7
**23** 11:3,8,14,15 12:14 14:12 23:4,7,10,13 24:2,13,19,24 24:25 25:6,7 27:6,18 32:1,8 33:3,24 34:2,16 34:18 43:19 44:11,24 45:5 45:18 47:10 52:19 53:8 57:10,12,21,25 58:15 59:5,14 61:5,8,21 63:4 63:7
**24** 64:19
**250** 2:22 6:6
**256** 39:5
**258** 30:7
**26** 10:11
**270** 65:12
**29** 36:14,15
**2900** 7:11
**2:20** 1:6 10:6
**2:22** 10:8

| 3 |
|---|
| **30** 49:25 |
| **30799** 3:18 |
| **31** 38:3 |
| **32** 38:11 |
| **325** 3:12 |
| **345** 3:18 |
| **3785** 1:6 10:6 |

**388** 7:23

| 4 |
|---|
| **4** 1:15 10:2 56:19 60:11 79:9 |
| **40** 64:1 |
| **4000** 7:17 |
| **41** 7:11 |
| **42** 13:20,21 15:3 54:12 63:23 |
| **43** 71:12 |
| **43215** 2:16 3:13 7:12 |
| **44113** 5:21 |
| **44114** 3:8 4:17 |
| **44124** 3:19 |
| **44308** 6:14 |
| **44311** 7:24 |
| **444** 7:17 |
| **450** 7:5 |
| **45202** 5:14 |
| **4th** 10:4 |

| 5 |
|---|
| **5** 42:13,14,17 42:22 43:8 66:22 67:5,16 79:14 |
| **50** 6:13 54:12 |
| **500** 7:23 |
| **55th** 6:6 |
| **5839** 10:7 |

Page 1

**[6 - akron]**

| 6 | a |
|---|---|
| **6** 37:25 | **a.m.** 10:2,2 |
| **600** 3:12 5:13 | 78:20 |
| **60606** 7:18 | **aaron** 6:5 |
| **613** 69:21 | **aaron.miner** |
| **6354188** 1:23 | 6:8 |
| **638840** 55:8 | **abandon** 75:23 |
| **655** 2:7 | 76:16 77:14 |
| **6th** 55:9 | **abercrombie** |

| 7 | |
|---|---|
| **7** 41:19 56:20 | 25:15 |
| 57:5 | **ability** 23:3 |
| **7.6** 30:7 | 27:14 52:16,19 |
| **700** 5:13 | 53:3 72:19 |
| **79** 1:25 | **able** 14:24 |
| | 16:15 19:7 |

| 8 | |
|---|---|
| **8** 12:1 40:16,18 | 20:4 26:17 |
| **819771** 57:4 | 31:5 |
| **865** 10:8 | **absolute** 48:19 |
| **8:04** 10:2 | **absolutely** 22:2 |
| **8th** 2:22 | 22:4 42:20 |
| | 43:12 51:24 |

| 9 | |
|---|---|
| **9** 56:19,20 | **abusing** 77:11 |
| **901** 3:7 | **acceptable** 52:6 |
| **92101** 2:8 | **account** 18:24 |
| **93** 36:14,18 | 56:2 |
| **94** 36:14 37:8 | **accountable** |
| **95** 39:5 | 49:20 |
| **950** 5:20 | **accurate** 23:25 |
| **98** 60:10 | **accurately** 47:2 |
| **9:42** 78:20 | **acknowledged** |
| **9:43** 10:2 | 62:16 63:6 |
| | **act** 11:23 12:4 |
| | 17:12,19,25 |
| | 29:16 |

**action** 1:5 2:19
10:21 26:8,24
43:1,1 49:12
63:16 65:2,6
**actions** 1:8
**activities** 18:14
40:21
**acts** 56:13
**actual** 28:10
33:19
**actually** 30:19
31:2 36:7,9,10
36:11 45:3
46:15 47:4
49:1 54:7 55:6
58:7 65:16
70:13,17 71:8
71:24
**adapted** 76:9
**add** 74:24
**addison** 3:2
**addition** 29:18
32:7,23 37:9
39:8 60:21,22
63:22 65:13
67:8
**additional**
62:11
**address** 21:14
58:10
**addressed** 14:9
**addressing**
61:9
**adjudicated**
46:23

**admitted** 32:24
**adopted** 13:8
54:7
**advantage**
35:22
**adverted** 56:5
**advisement**
64:5 68:16
**affect** 28:3
57:22
**affected** 27:14
**affiliated** 13:9
13:25 14:4,13
22:13 38:25
39:7 46:2,6
53:17,18 54:16
54:18 62:15
63:16,19 65:8
66:15 67:22,25
**aftermath** 78:6
**agenda** 77:6,13
**ago** 73:2
**agree** 23:3
51:25 68:13
73:25 74:9
75:4 77:22
**agreement**
32:24
**agrees** 18:7
19:12 72:6
**aguran** 6:15
**ahead** 32:5
35:24 76:20
**akron** 6:14
7:24

**[allegation - attachments]**

| | | | |
|---|---|---|---|
| **allegation** 38:1 | **announce** | **apply** 17:6,7,10 | **arthur** 7:9 |
| **allegations** | 15:10 | **applying** 17:14 | **article** 50:1 |
| 19:11 37:5 | **annual** 38:13 | **appointing** | **articulated** |
| 44:19 52:2 | **answer** 50:11 | 69:23 | 60:17 |
| **allege** 13:18,20 | 60:20 | **appointment** | **asked** 43:15 |
| 26:17 | **anyway** 71:10 | 27:23 | 45:9 47:22 |
| **alleged** 13:6,15 | **apparently** | **appreciate** | **asking** 44:15 |
| 14:7 16:13 | 66:4 | 50:16 | 50:2 60:2 |
| 26:8 30:3 37:1 | **appeal** 10:11 | **approach** | **aspect** 27:11 |
| 37:1,19,21 38:9 | 11:3,8,14,15 | 19:25 56:4 | 42:22 |
| 43:10 56:13 | 25:14,22 31:22 | **appropriate** | **aspects** 33:19 |
| 62:20 65:8 | 31:23 34:22,24 | 21:6 | **assert** 65:14 |
| **alleges** 39:7 | 37:22 38:21 | **approval** 71:5 | 67:10 |
| 46:7 | 39:5 43:19 | **approximately** | **asserted** 57:14 |
| **alleging** 30:5 | 45:18 57:10 | 12:1 13:20 | 66:23 |
| 65:9 | 61:5 62:5 65:7 | 40:16 | **asserting** 67:17 |
| **alliance** 46:12 | 71:11 | **arguably** 28:3 | **assertion** 43:18 |
| **allow** 58:6 | **appeals** 14:8 | **argue** 66:3 | 67:5 |
| 61:11 66:10 | 23:7,10,13 32:2 | 67:13 | **assess** 15:12 |
| **allowed** 46:5 | 45:20 53:18 | **argued** 53:20 | 20:14 |
| 71:15 72:12,21 | 57:15 | **argument** 22:3 | **assessed** 20:2 |
| **allowing** 49:18 | **appearances** | 39:22 41:8,24 | 53:12 |
| **american** 74:6 | 2:1 3:1 4:1 5:1 | 41:25,25 44:17 | **assessment** |
| **amicus** 11:18 | 6:1 7:1 | 44:18,22 45:9 | 19:11 |
| **amorphous** | **appellate** 45:8 | 45:11 48:15 | **assigned** 74:1 |
| 26:18 36:4,25 | **application** | 49:18 50:17 | **assistance** 42:5 |
| **amount** 16:11 | 13:3 32:13 | 57:24 59:1 | **assume** 18:9 |
| **analysis** 17:11 | 42:18 68:1 | 63:24 64:22 | 21:8 22:1 |
| 17:23 22:17 | 70:16 | **arguments** | **assumes** 29:3 |
| 49:5 62:17 | **applied** 14:14 | 41:21 45:2,3 | **assuming** 22:3 |
| 65:22 | 17:16 19:2 | 63:8 64:4,10 | 22:6 47:24 |
| **analytic** 21:21 | 28:16 39:25 | 66:2 | **assumption** |
| **anderson** 3:3 | 40:3,4 | **arnold** 6:4 | 48:2 |
| **andrew** 6:12 | **applies** 46:12 | **arnoldporter....** | **attachments** |
| 8:4 | 65:22 67:25,25 | 6:8 | 74:21 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[attempt - break]**

**attempt** 17:5
18:21
**attend** 68:23
**attorney** 75:10
**authority** 69:24
69:25
**authorized**
71:25 72:12
73:10
**avenue** 3:7 5:20
7:5 51:9
**avoid** 44:15
**aware** 13:13
**axelrod** 8:3

**b**

**b** 11:22 12:7,15
12:15,18 13:1,3
17:25 19:14,17
22:20,24 26:6,8
28:25 29:8
30:5 33:9,13
50:21 51:4,15
52:13 53:3,6
58:3,21
**baby** 28:7 41:9
**back** 11:7
12:21 18:8
19:13 22:23
29:3,4 33:10,11
42:10 48:17
49:4 50:13
52:11,20 56:19
57:8 58:19,20
59:18,21 61:15
65:4 69:19

71:11
**backed** 44:18
**bad** 41:22,23
47:25 74:7
**bail** 37:10
**bailout** 36:17
36:19 37:10
**baker** 4:13
**bakerlaw.com**
4:18
**balance** 26:22
31:19
**ball** 65:25
**bancorpsouth**
34:15 43:17,20
59:12,23
**bankrupt**
15:11
**based** 13:25
14:6 22:13,15
26:25 44:22
52:17 53:19
67:14,15,15
**bases** 57:20
**basic** 13:11,14
13:23 14:1,4,14
39:1 46:12
63:19 67:16,21
67:25
**basically** 17:2
20:13 22:18
70:14 73:7
**basil** 2:13
**basis** 15:1 19:9
23:17 77:3

**basketball**
69:18 70:12
**bath** 41:9
**beat** 70:10
**beattie** 45:14
46:18 49:4,15
56:15 57:8,21
58:12 60:16
63:4,6
**beginning**
20:19 36:16
59:1
**begins** 38:4
**behalf** 11:24
12:5 29:9
**believe** 16:25
19:4 39:24
57:11 62:20
72:7
**benefit** 18:18
**benefits** 40:25
41:2,11
**bernstein** 2:20
**best** 45:12,16
48:19 60:25
71:21
**beyond** 21:8
22:8
**bidding** 55:24
**bifurcate** 43:21
43:22,23 44:6
**bifurcating**
44:5
**big** 24:6 26:10
27:16 34:4

53:23 57:2,3
59:3
**bill** 18:19,20
**billing** 49:20,21
**billion** 12:1
15:9 30:7
40:16,18 41:12
41:19
**binding** 35:4
**bit** 31:21 78:3
**bite** 44:22
**blessing** 76:1
**blocked** 73:7
**bloomfield** 7:10
**blown** 61:24
76:14
**bluster** 62:13
**boatload** 68:20
**bockius** 6:18
**bolts** 40:13
**bond** 30:1
**bondholder**
12:8,11 17:15
26:9 30:8
63:12,20
**bondholders**
12:5 29:9
**bonds** 30:4
63:21
**books** 78:5
**boulevard** 3:12
**bp** 55:7,14 57:1
**bpo** 5:15
**break** 64:9,13
64:14,20 68:15

Page 4

**[break - cases]**

| | | | |
|---|---|---|---|
| 69:11 | calculated 48:5 | 19:13,14,14,18 | 51:5,17,19 52:7 |
| breaking 19:24 | 48:7,8,10,13 | 20:7,17,17,18 | 52:19,21,24,24 |
| breyer 54:6 | calculating | 20:24,25 21:20 | 53:22,23,25 |
| brian 2:14 5:12 | 17:13,15 | 22:19,20,20,23 | 54:1,1,8,10,11 |
| bribery 66:21 | california 1:24 | 23:2,4,8 24:2,6 | 54:11,19,24,25 |
| 67:8,12 | 2:8 10:1 79:1,5 | 24:8,23,24 25:1 | 54:25 55:5,9,13 |
| bribes 18:17 | call 16:6,23 | 25:2,3,15,16,17 | 55:17 56:9,12 |
| brief 13:16 | 21:16,16 | 25:23 26:6,8,9 | 56:15 57:1,3,3 |
| 31:24 35:12,14 | called 13:9 | 26:12,19 27:6,8 | 57:6,9,9,18,21 |
| 60:9,11 62:4,9 | 14:22 22:21 | 27:12,13,18,19 | 57:22 58:7,9,12 |
| 66:4,19 | 24:23 25:2 | 27:22 28:15 | 58:16 59:4,4,7 |
| briefing 21:15 | 55:21 57:4 | 29:1,8,9,10,10 | 59:11,13,13,14 |
| 40:3 76:11,21 | 59:13 73:2 | 29:12,21,22,23 | 59:21,22 60:4,9 |
| briefly 24:11 | calls 27:3 | 30:2,3,5,8,10 | 60:10,13,14,16 |
| 64:6 | canceled 78:7 | 30:18,19,19,20 | 60:23,25 61:1,2 |
| briefs 11:18,19 | cane 21:21 | 30:21,25 32:13 | 61:5,10,21 62:3 |
| 76:12 | cap 30:4 40:15 | 32:15 33:2,6,7 | 62:5,11,13,18 |
| brighthouse | 40:18 | 33:9,13,19 34:4 | 62:18,20,23,24 |
| 10:7 65:12,13 | capable 14:25 | 34:15,17 35:1 | 62:25 63:3,4,6 |
| bring 23:4 64:2 | 18:2 | 36:2,8 37:3,4 | 63:11,12,12,15 |
| broad 4:6 | careers 36:24 | 38:20 39:11,17 | 63:17,20,22,23 |
| broadway 2:7 | carole 4:14 | 39:24 40:15 | 63:25 64:2,10 |
| brought 11:23 | carries 38:7 | 42:11,12,12,13 | 65:15 66:5,9,10 |
| brouse 7:21 | cars 54:4,5 | 42:14,17,22 | 66:11,12,16,18 |
| brouse.com | case 10:5,7,8 | 43:1,3,8,17,20 | 66:19,20,24 |
| 7:25 | 11:4,6,10,11,16 | 43:21,25 44:1,5 | 67:14,16,21,22 |
| bunch 24:10 | 11:17,21 12:3,4 | 44:19,21 45:4,7 | 72:25 73:2 |
| burton 5:4 | 12:8,9,11,15,18 | 45:12,13,14,15 | 74:13,15 |
| business 75:20 | 12:18 13:1,3,8 | 45:15,24 46:5,6 | cases 11:8,11 |
| busy 78:12 | 13:22 14:5,11 | 46:6,7,9,10,10 | 11:12 12:23 |
| **c** | 14:14,22,23 | 46:13,18 47:13 | 13:12 14:11,12 |
| c 7:22 | 15:2,8,14,21 | 48:8,9,17,19 | 19:5 20:15 |
| cabraser 2:20 | 16:16,22,24 | 49:4,6,6,8,10 | 21:1 23:11,12 |
| calculate 55:4 | 17:1,4,6,16,17 | 49:11,13,19,23 | 24:10,12,22 |
| | 18:8,8,11 19:11 | 49:24 50:3,6,8 | 25:6,7,8 27:6 |

**[cases - claims]**

29:2 30:13
34:4,25 35:8
36:23 39:24
42:1 46:8
53:20 54:16,23
56:23 57:11
59:2,12 60:7,10
60:12 61:8,22
62:14,15 63:25
64:25 65:10,17
65:19 67:5
**categorically**
62:15
**causation**  26:15
65:18
**caused**  36:5
**cautious**  75:9
**center**  5:6
**central**  61:9
**cert**  16:25 17:1
22:24 59:24
**certain**  18:19
21:21 72:10
**certainly**  28:2
57:23 77:19
78:9
**certifiable**  13:1
22:20 33:9
**certificate**  79:5
**certification**
12:22 14:15
20:12 21:5
22:7 23:16
24:20 27:10
34:20,23 38:12

38:13 39:10
44:1,7,9,10
46:23 52:13
59:16
**certified**  11:25
12:20 19:6
23:2 29:7 31:2
32:16 33:14
35:4 39:18
40:5 52:17
54:8 56:24
63:18 79:4
**certify**  13:25
27:12,14 29:4
31:17 39:11,12
43:5,6 52:17
53:3 79:6
**certifying**  14:5
**cetera**  53:25
**cgilroy**  2:10
**chack**  6:17
**chain**  78:14
**challenge**  29:24
**challenging**
56:17
**chance**  12:21
42:20,22 43:12
46:13
**change**  11:16
26:24 27:18
28:17 31:14
43:11 54:19
**changing**  42:21
**characterizati...**
36:12

**characterize**
75:8
**charles**  4:12
**cheating**  54:3
**chicago**  7:18
**chief**  14:15
17:9,22 18:9
20:3 23:2,15
24:16,19 27:16
31:4 33:11
38:24 39:8
47:9 50:23
52:11,16 54:7
58:19 60:1
65:4 67:24
74:2
**choice**  35:2
53:9
**christopher**  2:5
3:4
**cincinnati**  5:14
**circle**  50:13
**circuit**  11:8
12:16 14:9,11
14:17,18 18:6,6
19:10,12 20:2
21:4 22:5,22,22
24:3,23 25:3,5
25:17,20 26:1
26:23 28:24
32:6 33:5,10,12
34:3 44:12
48:7,16 50:24
51:3,8,21 52:1
52:1,20,23 53:2

53:4,9,21 54:9
54:10 55:11
58:2,7,10,11,20
59:17 60:18,19
61:2,4,13,15
62:5,22 65:15
**circuits**  54:19
**circumstance**
42:14,16
**circumstances**
38:16 47:12
**citation**  65:10
**cite**  19:4 24:22
25:2,7,15 39:17
43:18
**cited**  24:11
39:23 59:7
60:7,9,11 61:22
**civil**  1:5 37:3
**civilly**  36:23
**claim**  11:22,23
12:1,3,5 14:6
18:3 22:15,24
28:25 29:17
30:25 33:9
40:7,8,10 50:21
50:25 51:5,15
52:13 53:4,6,19
54:13 58:3,21
63:14 66:22
67:9
**claims**  11:21
12:15 17:25
51:15

Page 6

**[clarification - conduct]**

| | | | |
|---|---|---|---|
| **clarification** 70:6 | **clearly** 11:22 14:18 26:2,23 31:14 49:23 54:1 58:1 60:20,21 61:11 | **comes** 77:9 78:8 | 38:19 66:15 67:13 |
| **clarify** 70:5 73:13 | | **comfort** 75:11 | **completing** 47:14 50:8 |
| **class** 2:2 10:19 11:25 12:2,11 12:19,22 13:4,5 13:25 14:5,15 14:25 16:5,25 17:1 19:9 20:6 20:11 22:12 23:16 24:20 26:8 27:10,12 27:15 29:18 31:3,17 32:16 33:14 34:20,23 35:4,5 38:6 39:10,18 40:5 42:24 43:1,5,6 43:21,23 44:1,7 44:9,10 46:21 46:22 49:11 52:12,17,17 55:25 56:1,18 59:15,24 60:20 63:12,16,18 65:2,5,15 66:5 66:9,11,23 68:12 | **clerk** 73:1 | **comment** 76:15 | **compliance** 16:10 |
| | **cleveland** 3:8 4:17 5:21 | **committed** 44:15 | **complicated** 18:11 23:11 |
| | **client** 75:9 | **common** 77:13 | **comply** 15:15 |
| | **close** 25:22,24 39:13,14 71:21 75:20 | **communicati...** 69:15 | **component** 19:21 22:1 28:15 41:10 49:15 |
| | **cognizable** 33:8 | **companies** 13:13 | |
| | **coleman** 4:14 | **company** 15:8 15:11 16:9 20:19 41:17 49:19 54:2 66:25 67:7 | **comprise** 34:3 |
| | **college** 70:12 | | **concealed** 66:21 |
| | **columbia** 5:6 | | **concede** 58:17 66:11 |
| | **columbus** 2:16 3:13 7:12 | **company's** 67:4 | **conceded** 46:11 48:16 |
| | **combination** 37:14 | **compartment...** 19:24 | **concern** 71:6 71:23 |
| | **combined** 75:22 | **complaint** 13:17 30:6 36:13 37:8,16 37:16,21,25 38:7,18 39:4 52:3 62:21 65:11 | **concessions** 72:10 |
| | **comcast** 14:22 17:10,11 22:17 26:7 28:25 29:6,7 31:18 32:17 41:25 51:2,4,9,22 53:11 54:21,25 57:1 58:1 | | **concise** 68:6 |
| | | | **concluded** 78:20 |
| **classes** 19:6 56:24 | | **complaints** 67:9 73:4 | **conclusion** 33:20 |
| | **come** 20:4 42:10 48:17 49:4 51:1 52:14 | **complete** 34:13 35:2 50:9 | **conclusions** 21:22 |
| **clear** 11:15 17:20 49:11,12 49:13 72:2 | | **completed** 28:5 34:5,14 35:7 | **conclusory** 21:18 |
| | | **completely** 12:6 29:10 30:9,20 36:12 | **conduct** 15:17 36:2 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[conducting - damages]**

conducting
  31:15
confer  71:4
  73:18,21
conference
  72:17 73:15
  77:7 78:5
conferences
  76:25 77:2
conferral  72:15
  72:23 73:11
conferred
  75:17
confident  54:17
connect  38:23
consider  39:14
  71:19
considered
  25:10,21 26:1
  74:8
consist  34:11
consistent
  43:24 44:3
  72:11
consistently
  43:13
consists  34:8
consolidate
  32:1
constant  55:22
  56:4,11
construed  66:4
  71:6
consumer
  63:15

contact  78:10
contain  38:13
contemplated
  69:19
contention
  66:20
contest  48:20
context  16:13
contingent
  56:14
continued  3:1
  4:1 5:1 6:1 7:1
  26:24
contours  26:24
  27:19
contribution
  67:2
contributions
  15:22 67:4,8
convinced
  62:22
convoluted
  21:12
cookie  16:23
  20:13
copied  69:14
copies  11:17
copy  68:18
corp  1:5
correct  22:10
  24:21 31:13
  32:13 33:22
  48:2 51:24
  60:15

corrected  45:3
  63:5
corrective
  23:20,21
corruption
  13:19 14:7
  15:17 16:14
  26:18 30:22
  36:4 42:7
cost  46:20,21
costs  46:19
counsel  2:1 3:1
  4:1 5:1 6:1 7:1
  10:13 53:16
  67:13 74:12
county  79:2
couple  62:11,11
course  16:4
  47:5 78:9
court  1:1 11:24
  12:22 13:8
  14:22,23 19:2
  23:8,9 24:14,16
  24:24 25:4
  32:4 33:25
  34:18,20,22
  35:3 43:19,22
  43:24 45:19,20
  46:20,24 49:17
  54:6 55:1,11,12
  55:21 57:6,13
  58:14,15 59:19
  59:21,22 60:3
  61:6 62:2 63:6
  69:6 70:2

  73:19,23 74:6
  74:13 77:19
court's  49:5
  59:24 62:17
  72:1,13,22 74:4
courts  11:12
  13:13 14:8
  19:5,9 24:4,5,7
  31:15 32:9
  33:6 43:13
  46:3,4,4 53:17
  56:23 57:15
  61:23 70:2
  73:6
crendon  4:18
criminal  40:17
  40:20,21 41:18
  41:23,24 50:6
criminally
  36:23 41:5
cromwell  4:3
  10:16
cross  9:2
csr  1:22
cutter  16:23
  20:13
cv  1:6 10:6,7,8

**d**

d  3:4,17 9:1
d.c.  5:7
damage  17:20
  18:10 56:6
damages  14:24
  14:25 16:21
  17:3,13,15,18

Page 8

**[damages - disclosed]**

17:21,24 18:3
18:24 19:8,8,21
20:4,6,15 29:5
30:3 31:5
32:17 39:9
40:5,8 41:10,15
41:20 42:2
43:6 48:5,6,8,9
48:18 51:1,3
52:3,5,18 55:1
55:4,12,22 56:2
56:24 57:7
58:8,18 65:16
65:17
**daniels** 24:23
39:24
**dare** 57:1
**date** 36:3
**dated** 79:14
**david** 4:4 7:10
8:3
**davis** 7:3
**davispolk.com**
7:7
**day** 3:5 40:20
40:22 42:1
**days** 76:22
**dbloomfield**
7:13
**dead** 46:3
**deadline** 72:3
**deal** 31:12
61:20 64:11
68:19 70:23

**dealing** 15:7
18:11 19:14
26:21 30:18
54:18,22 70:16
70:20
**deals** 56:13
**december** 55:9
71:2,5
**deceptive** 36:15
49:20,21
**decertification**
21:7,9 22:5
26:5 58:3,21
60:19
**decertified**
22:25 63:13
**decertify** 53:5
**decide** 18:6
**decided** 14:17
**decision** 17:9
24:21 26:23
44:9 54:17
59:24 60:18,18
65:5 71:20
**decisions** 34:12
78:13
**declare** 73:16
**default** 76:17
**defeated** 41:6
**defendant** 4:2
4:12 5:2,17 6:3
6:10,17 7:14
56:16 57:14
60:17 66:4

**defendants** 3:2
7:2 10:17
13:18 21:19
29:21 36:17
37:4,9 38:5
39:19 43:20
58:14 59:8
71:7
**delay** 47:5
**delaying** 32:4
46:25 47:2
**delegate** 69:23
**delineated** 37:6
**demetriou** 3:3
**demonstrated**
28:10
**denied** 14:12
24:17,24 25:4
34:7,21 43:24
61:7 63:5,6
**dennis** 6:17
**denying** 47:20
**depend** 50:24
**dependent**
50:21
**depending**
19:21
**deposed** 29:22
**depositions**
27:4 36:9,10,11
65:3
**derail** 39:10
**describe** 37:2
**description**
36:15 38:4

48:11,14
**despite** 66:5
**determine**
68:12
**determined**
31:3
**dicta** 51:21
**diego** 2:8
**different** 12:6
13:22 14:1
15:4,5,6,19,19
16:4,15 18:14
18:17,22 20:14
23:23 26:17,20
29:10 30:10,20
31:9,10 36:19
55:16 56:10,11
59:11
**differently**
20:10
**difficulties**
20:17
**direct** 2:19 9:2
10:21 43:1
49:12
**directly** 12:14
33:8
**disagree** 66:14
**disappointed**
76:5
**disclose** 13:18
15:16 54:14
67:11
**disclosed** 30:23
36:25 54:3

**[disclosure - emphasize]**

disclosure
20:23 23:21,21
23:22
disclosures
40:15 54:3
55:14,17,18,19
discoveries
31:13
discovery 19:15
20:9 22:12,15
23:12 24:5,7,8
24:9,12,14
26:20 28:5,8,8
28:9,14,20
29:13,15 30:12
30:12,15,16
31:1,16 32:15
32:19 34:1,5,6
34:8,11,12,16
34:19,21,24
35:1,6 36:2,8
37:4 43:11,15
43:19,21,23
44:2,5,7,12,20
46:16 47:10,15
47:17,23,23
48:23,25 50:8
52:15 53:7
58:5,6 59:5,23
60:13,23 61:5,6
61:10,12,14,24
62:1,3 65:2,4
66:7,12,17
67:19 68:2

discuss 68:24
68:24 78:6
discussion 71:8
dismiss 63:14
dismissed
12:19 57:6
disprove 37:4
dispute 51:1
distinguishes
49:7
district 1:1,2
11:12 12:22
24:4,5,14,15,24
25:4,16 33:6,25
34:17,20,22
43:19 45:19,19
54:6 55:8,11
57:5,13 58:13
58:15 59:19,21
59:22,24 61:6
61:23
division 1:3
divorce 73:5
document 1:7
documents
35:20 64:17
dog 26:10
doing 55:23
57:19 59:8
61:14 69:10
74:10
dollar 42:4
55:22 56:4
63:1

dollars 15:9
27:5 32:14
41:12
domain 32:21
donald 3:3 5:2
dots 38:23
dowd 2:3
dowling 5:17
dozens 29:24
draft 69:24
70:1 72:8
drafted 70:17
71:22
drafting 78:3
78:12
drain 27:21
drive 44:23
drop 40:15,23
dropped 40:18
dublin 2:15
duffy 3:11
dumb 71:18
dumbest 74:12
duties 74:1
dying 47:4

**e**

e 4:12 9:1 60:8
earlier 63:8
67:23
earnings 15:9
16:17,18 20:20
easier 13:24
easily 40:12
42:5

eastern 1:3
easy 15:12
68:14
ecf 69:21
economic 20:7
effect 66:11
67:3 77:1
effectively
40:17 46:1
63:17
effects 15:6
18:23
efficiency 77:22
efficient 63:21
66:8
egregious 59:16
eight 29:21
either 21:14
24:16 38:24
39:8 46:11
67:25 76:4
77:8
elicited 48:3
eliminate 72:19
77:23
ellis 5:18
email 68:25
72:16 74:20
emergency
77:10 78:10
emery 7:15
emissions 53:25
54:4
emphasize
66:14

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[emphasizes - fact]**

**emphasizes**
49:5
**enables**  75:24
75:25
**endeavor**  15:15
**endeavoring**
16:9
**ended**  63:17
**engage**  17:10
**engaged**  13:19
15:17 66:20
67:7
**engagement**
67:11
**enron**  20:18
**entered**  71:2
**enterprise**
40:18,20 41:18
41:23,24
**entire**  36:23
37:15 38:7,18
39:4 42:12
**entirely**  26:6
**equal**  49:17
**equally**  14:21
**erecting**  74:16
**erika**  8:4
**erroneous**
36:12
**error**  59:16
**especially**
27:23 42:5
**esq**  2:4,4,5,5,6
2:14,21,21 3:6
3:11,17 4:4,4,5

4:14,14 5:4,4
5:12,19,19 6:5
6:12,19,19 7:4
7:10,16,22
**essence**  46:9
**essentially**
35:14 43:25
45:4 55:23
66:19
**establish**  13:7
13:24 30:22
**establishing**
36:3
**et**  53:25
**event**  34:22
61:22 66:9,15
**events**  18:22
31:10
**eventually**
76:24
**everybody**
77:11
**evolve**  28:16
**exactly**  20:21
39:2 43:9,10
45:5 48:22
62:19 67:20
**example**  12:7
15:20,25 29:11
31:18 40:11
60:24
**examples**  23:5
37:24
**excellent**  28:22

**exchange**  11:23
17:19,25 74:20
**exchanges**
68:25
**excuse**  53:21
72:20
**executed**  37:10
**exercise**  26:17
**exhibits**  9:6
**existed**  40:1
**expect**  65:7
**expeditiously**
62:4
**expert**  16:21,24
17:2,5,14,21
19:17 24:8
28:3,8,15 29:5
31:6,13 34:8,8
34:9,11,12,13
35:1 42:5
47:23,24 48:5,6
48:9,23,25
51:23 52:14,15
56:7 58:4,6
59:5,8 61:11,13
61:16
**experts**  61:14
**explain**  19:19
21:3 28:23
51:16 57:25
70:4
**exposed**  40:16
42:9
**expressing**  22:2

**expressly**  34:21
44:25 67:3
**extend**  21:8
**extension**  31:23
**extensions**  32:5
**extent**  29:25
38:23 71:25
**extreme**  50:7

**f**

**f**  3:3 5:19 6:5
10:11 11:3,8,14
11:15 12:14
14:12 23:4,7,10
23:13 24:2,13
24:19,24,25
25:6,7 27:6,18
32:1,8 33:3,24
34:2,16,18
43:19 44:11,24
45:5,18 47:10
52:19 53:8
57:10,12,21,25
58:15 59:5,14
61:5,8,21 63:4
63:7
**face**  72:5
**fact**  11:4 13:13
14:10 15:21
16:24 17:18,20
17:22,23 18:5
23:22 24:8
25:19 27:18
28:5,8,9,14
30:12,12 31:21
32:25 34:5,6,12

**[fact - forward]**

35:1 36:2
38:14,15 40:19
43:21,23 44:2
44:13,20 46:18
47:14,16,22
49:6 54:13
55:3 58:4
59:11 60:12
61:6,21,24 62:1
67:6 70:2,15
**factor** 32:12
47:19 49:22
**factors** 25:10
42:19
**facts** 15:20 28:9
28:9,16,17,17
28:18 32:19,20
32:24 54:15
**fade** 32:9 47:5
**fading** 47:3
**failed** 39:17
56:16 67:11
**fairly** 11:2
32:20 43:13
**fairweather**
7:22
**fall** 28:2,17
**false** 34:1 37:11
37:14,17,19
38:2,5,19 43:18
46:7,9 67:6,9
67:18
**familiar** 25:3
**famous** 73:2

**far** 50:6 53:5
**favoring** 26:22
**favors** 49:18
**favret** 5:19
**federal** 72:1,13
72:21 73:6,11
**fenton** 7:16
**fifth** 55:10
**figure** 42:3
65:16
**figuring** 40:24
42:6
**file** 12:22 31:24
52:19 71:15,15
71:16,16,17,17
71:24 72:4,6,6
72:14,20,20,24
73:11,18,23
74:6,13,15,17
75:10 76:1,5
**filed** 11:19
31:25 44:10
47:11,13 57:11
71:4 72:22
**filing** 57:10
59:9,9 71:9
73:4,7,10 74:5
**filings** 77:24
**finally** 42:9
46:23
**financial** 16:8
16:15 20:20,23
**find** 50:1
**fine** 41:7,19
43:4 64:14,16

69:8
**finish** 69:20
**firm** 12:24 23:6
52:22 55:6
**first** 21:14
22:13 25:11
40:20 45:8,17
65:6 66:25
74:11 75:1
**firstenergy** 1:5
4:2 10:5,12
11:24 15:21
30:24 32:23
33:22 40:17,19
42:19 43:15
44:4 45:25
50:4 66:20
76:18
**firstenergy's**
16:3 35:12
42:8
**fiscally** 27:25
**five** 76:21
**fkaram** 2:10
**flight** 63:3
**floor** 2:22
10:14
**flushed** 21:17
**focus** 31:1
33:19
**focused** 29:25
31:21 36:3
70:7
**follow** 73:25

**following** 13:2
20:2 25:5
37:12 59:25
60:2 72:14,23
75:18
**food** 78:14
**footnote** 38:11
60:11
**foreclose** 51:15
**foregoing** 79:10
**forge** 2:4 10:18
10:18 13:16
21:16 26:13
30:21 33:17,18
35:18,21,25
39:2 40:4,7,10
48:1 50:15,18
53:6 58:17
60:15 61:19
62:6,8,10 63:24
69:2,3,8 72:8
74:24,25 75:4
75:12,15 76:4
77:21 78:15
**forge's** 12:24
23:6 52:22
59:1 60:24
**form** 43:13
**format** 35:22
**formula** 17:13
17:15
**forth** 61:15
65:4
**forward** 19:7
20:4,9,12 26:20

Page 12

**[forward - granted]**

27:12 28:14
31:11 33:12
42:15,17 43:4
44:2 47:23
49:2,6,24 50:8
50:21,22,23,25
51:6 53:7
54:20 56:6,25
57:22 58:6
61:12 62:25
66:7
**found** 31:15
41:17 69:18
**four** 11:9 25:9
42:19
**fourth** 24:3
**francis** 2:5
**fraud** 11:22
36:22 53:23
54:1
**fraudulent**
29:11 30:15
**front** 13:16
22:9 35:23
40:6
**full** 20:22 32:5
42:16 50:3
61:24 76:14
**fully** 54:14
**function** 74:10
**funds** 10:7
**future** 51:10
67:20

**g**

**game** 69:18,20
**gateway** 74:16
**geller** 2:3
**gentlemen** 69:4
73:18 74:22
78:2
**geoffrey** 3:6
**george** 3:2
**getting** 40:12
41:1 68:19
**gifts** 68:21
**gilroy** 2:5
**giuffra** 4:4
10:15,16,25
11:1 18:4 19:4
20:1 21:23
22:10 28:22
33:23 35:9
36:6 39:22
40:14 46:2
47:22 48:16
50:14,19 51:24
62:12 63:2,10
64:8,11,21,24
68:8,10,25 69:1
70:7,12,23
74:18 77:22
78:16
**giuffra's** 35:13
45:2
**giuffrar** 4:8
**give** 23:5 40:11
52:9,9 60:7

**given** 21:21
31:8
**gjritts** 3:9
**glad** 13:16
68:15 70:8,8
**global** 54:1
**go** 20:9 26:19
27:3,12 28:14
29:3,3 32:5
33:8,12 35:24
41:15 42:17
46:13 47:23
49:2,6 50:22,23
50:25 51:5
52:11,20 53:1,7
55:10,10 57:8
58:6,19 59:3
61:9,12,24
76:14,20
**goes** 12:14
15:10,12 31:4
33:10 50:21
67:23
**going** 14:19
15:8,18 16:2,7
16:8,19 17:14
18:20 19:10,16
19:20 21:5,11
22:6,8 25:14,19
26:3,19 28:19
28:20 29:13
32:14 38:25
39:1,9,10,11,12
39:15 40:25
41:14,15 42:11

42:15,25 43:2,4
43:6,8,9,11
46:13,15,22
47:16,24 48:17
48:22 49:1,6,10
50:23 51:10,11
51:13,15,16
54:20 57:22
60:1 64:19,21
64:22 65:6,6
67:20 70:20
71:14,15,16,19
71:19 72:17
73:8,16 74:14
77:4,12,14
**gold** 68:5
**goldman** 23:6
52:23
**good** 10:15,18
10:20 27:7
50:12 71:13
74:7,19 76:20
77:25
**gotten** 50:2
**grant** 11:2,5
25:5 32:9
57:18 61:21
62:1
**granted** 11:8
11:12 24:3,13
24:25 25:1,5
27:7 33:4,21
34:17,23 45:5
57:12,21 58:25
59:5,6,14,19,22

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[granted - improper]**

59:23 60:3
63:7
**granting** 25:19
26:2 44:25
53:12
**grants** 32:8
33:25 34:2
**gravamen**
66:19
**great** 45:11
68:18 77:25
**ground** 63:17
**grounds** 22:25
**guess** 69:7
**guidance** 51:21
51:23 52:10
**guran** 6:12
**guys** 35:19
51:11 78:12

**h**

**h** 3:12
**half** 11:25 12:2
15:3 16:5,14
18:13 29:19
54:13
**halliburton**
23:8 52:24
**halt** 27:7
**hand** 51:14
**handled** 42:3
55:6
**happen** 16:2
18:20 21:2
39:12 48:21,23
51:17 52:1

53:8
**happened** 16:1
16:22 39:20
52:23,24 53:8
54:2
**happening** 43:7
**happens** 61:25
**happy** 64:11,11
**harder** 14:2
26:19 28:4
**harm** 27:21
31:19 43:14
44:14,16 46:19
**harms** 26:22
**hate** 66:1
**hb6** 16:1 32:20
40:25 41:5
**heading** 36:16
38:3
**health** 35:1
**hearing** 71:1,5
71:13
**heimann** 2:20
2:21 10:20,21
65:24 66:1
68:3,5,7,11
**held** 19:6 46:4
53:18 55:1,12
55:21 56:23
79:8
**hell** 75:10
**help** 68:18
**helpful** 64:4
77:15,15,16

**herrington** 5:3
**hesitate** 51:18
62:8
**high** 7:11
**hit** 16:19
**hold** 35:16
49:19
**home** 44:23
69:17
**honor** 10:20
**hope** 68:20
76:7,9,13
**hopefully** 64:6
76:2
**hostetler** 4:13
**hour** 64:19
**house** 15:23
41:3,4
**householder**
15:22 19:22
23:23 41:2
53:25
**householder's**
32:22
**hudson** 2:22
**huge** 58:5,5,5
**hughes** 5:11
**human** 74:13
**hundreds** 27:4
**hyperbolic**
21:16

**i**

**i.e.** 54:14
**ibew** 60:10

**idea** 47:25
72:24 75:5
76:20
**ideal** 76:23
**identified** 17:2
57:16,20
**identify** 56:16
**ii** 10:8
**iii** 3:4
**illinois** 7:18
**imagine** 35:19
**impact** 15:12
15:25 23:19
24:1 26:12,14
27:25 46:16
58:16 61:13
65:17 66:17
**impacted** 37:22
38:20 39:4
**impacts** 60:22
**implications**
11:14
**implicit** 74:10
**implied** 67:3
**important**
14:17,21 37:13
46:8 55:5
56:22 63:11
65:9 77:23
**importantly**
43:14 62:25
**impossible** 22:7
**improper** 47:10
70:3,19

Page 14

[include - judge]

include  44:11
including  11:9
    11:12 23:7
    24:6 29:22
    37:11 55:2
    60:23 65:17
    73:5
incorrectly
    51:19
indicated  52:21
    72:11 73:15,20
    74:3
indicted  50:5
indictment
    23:23
individually
    43:5
inevitable
    43:16
inflation  16:3
    16:11 31:10
    39:19 54:25
    56:3,12
inflationary
    18:22 19:2
influence  19:23
information
    48:18,22 49:1
inherent  74:1
initial  76:11
initially  63:4
ink  66:2
inside  30:24
instance  47:4
    48:3,4

instances  47:3
instituted  76:8
insufficient
    55:13
intent  29:11
    30:15 74:4
intention  32:4
interest  32:11
    32:12 49:16,18
    49:22,24 50:7
interim  28:6
    77:8 78:8
interlocutory
    10:11 11:3
interpreting
    66:22
introduce
    10:13
investigated
    43:10
investor  36:5
involve  30:14
    36:20 37:7
involved  12:23
    23:5 52:22
involving  13:12
    18:13 23:6
    26:20 54:24
    73:6
irrelevant
    29:16
irreparable
    43:14 44:14,16
    46:19

irrespective
    24:7 43:6
irvine  1:24 10:1
issue  14:9,19
    14:20 15:16
    18:5 21:2,11
    22:11 27:21
    28:25 29:7,12
    39:10 44:2,8
    46:2 48:20
    53:10,11 54:9
    54:21 57:2
    58:1,3,4,10
    61:12 63:19
    64:6 65:9
    68:12 70:15,23
    71:10 72:17
    74:18 75:13
issued  33:15
issues  15:2 17:1
    20:11,16 23:16
    23:18 33:7
    44:10 53:11
    55:3 56:17
    58:11 61:9,10
    65:7,18,21 76:1
    76:10
it'll  12:18 31:24

**j**

j  3:2,2,3,6 4:4
james  3:3
january  1:15
    10:2,4 79:9,14
jason  2:4 3:2
    10:18

jerry  3:4
jfairweather
    7:25
jforge  2:9
jill  5:4
job  1:23 74:1,4
john  3:12 5:19
    5:19 6:10 7:22
john.favret
    5:23
john.mccafrey
    5:22
johnson  3:3 8:4
jolson  11:13
    24:6 27:17
    34:5,7,9,10,13
    74:2 76:8
    77:16
jolson's  59:4
jon  3:2
jones  3:5 4:12
jonesday.com
    3:9,14
joshua  7:4
joshua.shinbrot
    7:7
jpmorgan  57:4
jr  7:10
judge  1:14 6:10
    10:4,16,23 11:1
    11:13 14:15
    17:9,22 18:1,9
    19:1,19 20:3
    21:3,25 22:16
    23:2,15 24:6,16

**[judge - lexington]**

| | k | 46:25 47:1,9,14 | **land** 63:3 |
|---|---|---|---|
| 24:19 27:17,20 | | 48:14 49:3,8,22 | **landscape** |
| 31:4 33:11,16 | **k** 3:2 | 50:2,3 51:9,20 | 35:23 |
| 33:18 34:4,7,9 | **karam** 2:5 | 52:4 53:14,16 | **lannett** 60:8,25 |
| 34:10,13,19,23 | **karen** 6:19 | 53:22,23 54:4 | **largely** 65:21 |
| 35:16,19,24 | **karen.pohlm...** | 55:18 56:7,13 | **laugh** 69:19 |
| 37:13 38:22,24 | 6:22 | 56:13,21,23 | **laura** 6:19 |
| 39:3,8,14,21 | **kathiann** 8:2 | 57:2,11,16,24 | **law** 11:19 15:16 |
| 40:6,9 43:3,20 | **keep** 61:19 | 60:22 61:7,9,18 | 23:6 25:24 |
| 44:8,9 45:20 | 64:21 78:4 | 61:23,24 62:12 | 32:13 54:19 |
| 47:8,9,21 49:13 | **keeping** 77:17 | 63:2,3 64:1,18 | 59:3 73:1,25 |
| 50:12,16,23 | **kevin** 2:4 | 64:19,20,24,25 | **lawful** 67:4 |
| 51:7 52:11,16 | **key** 4:15 66:2 | 65:19,24 67:24 | **lays** 51:8 |
| 54:6,6,7 58:19 | **kick** 74:20 | 68:11 71:7,11 | **lchb.com** 2:24 |
| 59:4 60:1 62:7 | **kind** 19:2 39:15 | 72:2,3,5,9,18 | 2:25 |
| 63:10 64:3,16 | 76:17 | 72:19,23 73:4 | **lead** 26:5 58:20 |
| 64:23 65:4,23 | **kinds** 18:14 | 73:17,20,21,22 | **leads** 47:21 |
| 67:23,24 68:4,8 | **knew** 29:14 | 74:5,12,23 75:7 | **leave** 73:8,19 |
| 68:14 69:2,4,9 | **knocked** 44:1 | 75:15,16,17,18 | 73:23 77:18 |
| 69:13 70:11,22 | **know** 13:22 | 75:25 76:5,6,11 | **left** 29:1 |
| 73:14 74:2,2,19 | 14:10,19 15:7,9 | 76:17,24,25 | **legal** 14:18 |
| 75:2,7,14 76:3 | 15:21 17:19 | 77:12,16,23 | 16:10 |
| 76:8,23 77:16 | 18:4,13,15,15 | **known** 30:23 | **legitimate** 67:5 |
| 77:25 78:17 | 19:16 20:8,10 | **kolsen** 8:2 | **leila** 6:3 |
| **judges** 73:6 | 21:7,8,19,20 | **kowalski** 8:2 | **lena** 1:22 69:10 |
| **judgment** | 22:13,18,21 | **ksciarani** 2:9 | 79:4 |
| 63:13 | 24:18,18 25:20 | l | **length** 64:9 |
| **judicial** 27:1,22 | 25:25,25 26:6 | | **lengthy** 35:13 |
| 66:8 70:1 | 27:8,21,25 28:6 | **l** 3:3 7:16 60:8 | **leslie** 3:4 |
| **julia** 3:3 | 28:7,8,12,15 | **ladies** 74:22 | **letter** 76:18 |
| **july** 41:11 | 29:13,15 30:6,8 | 78:2 | **letting** 47:22 |
| **jump** 64:9,17 | 31:20,21,24 | **laid** 11:2 12:17 | **level** 55:11 |
| **jumps** 28:7 | 32:8 34:11 | 17:24 | **lewis** 6:18 |
| **jury** 42:3 | 36:6,8,11 39:25 | **lake** 7:17 | **lexington** 7:5 |
| **jwinter** 5:9 | 41:14,18 42:7 | **lakeside** 3:7 | |
| | 43:16,18 45:8 | | |

Page 16

**[liability - master]**

| | | | |
|---|---|---|---|
| **liability** 39:12 55:2 | **local** 60:10 72:1 72:13,21 | **made** 13:2,3 15:4 16:17 | **mandate** 76:9 |
| **lieff** 2:20 | **logical** 38:23 | 20:22 29:25 | **marbley** 14:15 17:9,22 18:9 |
| **light** 38:16 | **lolts** 2:11 | 32:1 38:15,17 | 20:3 23:2,15 |
| **likelihood** 25:11 41:1 | **long** 64:22 73:1 | 49:11,12,13 | 24:16 29:4 |
| 42:21 45:25 | **longer** 29:12 30:2,25 | 55:14,17,19,20 | 31:4 33:11 |
| 53:12 | **look** 15:3 16:16 | 56:10 65:4 | 38:24 39:8,14 |
| **likely** 21:19 | 19:10,21 20:8 | 66:25 69:19 | 44:8,9 47:9 |
| 25:21 49:17 | 20:10,11 21:5 | **magistrate** | 49:13 50:23 |
| 51:9 | 30:20 47:4 | 11:13 24:6 | 52:11,16 54:8 |
| **limited** 27:22 | 52:2,3,8 77:18 | 27:16 34:4,19 | 58:19 60:2 |
| 30:3,14 | **looked** 11:7 | 34:23 59:4 | 65:4 67:24 |
| **lines** 39:2 | 71:11 | 74:2 76:7 | 74:2 |
| **lisowski** 3:2 | **looking** 55:24 | 77:16 | **marbley's** |
| **listing** 20:13 | **looks** 54:20 | **main** 5:20 6:13 | 24:19 |
| 52:5 | **lose** 47:15 | 7:23 19:14 | **march** 57:5 |
| **literally** 12:24 | **loss** 26:15 30:4 | **major** 57:2 | **marjorie** 3:11 |
| 35:8 52:4 | 36:5 65:18 | 61:22 | **marked** 9:7 |
| 53:17 | **losses** 12:1,12 | **make** 19:11 | **market** 6:20 |
| **litigant** 73:3 | 26:8 65:14,14 | 38:15 41:21 | 30:4 40:15,18 |
| **litigate** 26:13 | **lost** 40:25 44:3 | 52:12 61:17 | 40:24 41:16 |
| 74:15 | **lot** 13:24 30:16 | 63:10 65:20 | 42:6,8 63:21 |
| **litigating** 27:6 | 35:22 62:12 | 70:18 71:10,20 | **martin** 73:3 |
| 30:21 | **lots** 24:6 27:2 | 71:23 72:2,10 | **master** 1:14 |
| **litigation** 1:6 | 27:16 34:4 | **makes** 20:20 | 10:4,9,16,23 |
| 10:7,8 20:9 | 59:3 | 27:7 29:13 | 18:1 19:1,19 |
| 33:13 55:7 | **love** 50:10 | 33:12 58:9 | 21:3,25 27:20 |
| **litigator** 73:16 | **lower** 20:7 | 61:10 | 27:24 33:16 |
| **little** 31:21 | **luis** 3:4 | **making** 48:15 | 35:16,19,24 |
| 33:12 | **luke** 2:6 | 67:7 70:15 | 38:22 39:21 |
| **llp** 2:3,13,20 | | 71:7 | 40:6,9 47:21 |
| 3:16 4:3 5:3,18 | **m** | **malpractice** | 50:12,16 51:7 |
| 6:11,18 7:3,9 | **m** 3:2,4 | 44:15 | 62:7 64:3,16,23 |
| 7:15 | **m.j.** 4:4 | **management** | 65:23 67:23 |
| | | 43:22 44:6 | 68:4,8,14 69:2 |

Page 17

**[master - momentum]**

69:4,9,13,23
70:2,11,22 72:6
73:12,14 74:3
74:19 75:2,7,14
76:3,23 77:25
78:17
**masters** 27:23
**match** 23:20
55:2
**material** 12:9
36:5 38:14,15
66:17
**materially**
37:11,14 38:5
**math** 42:6
**matter** 42:13
43:8 74:7
**matters** 68:23
73:5
**mccaffrey** 5:19
**mcconnell** 3:12
**mcdermott**
7:15
**mcdowell** 7:21
**mcginley** 8:3
**mciver** 4:5
**mcivert** 4:9
**mcnally** 6:19
**mean** 19:20
21:4,12 38:22
42:12 45:1
46:6 47:6,18
51:14 57:2
64:12 69:6
72:10

**meaning** 16:7
**means** 36:17,19
36:21 37:2,3,7
37:9 67:19
**meant** 54:15
**measure** 16:11
17:3 19:8
**measuring**
14:25 18:2
42:20
**meet** 14:2 26:3
71:3 73:18,21
**meets** 31:18
**memories** 32:9
47:3,5
**mentioned**
40:14 61:1
72:25
**merits** 25:15,19
26:3
**mescall** 1:22
79:4
**mess** 41:14
**met** 75:17
**metaphysical**
66:2
**method** 17:24
56:8,9
**methodological**
16:20
**methodologies**
17:3 20:14
56:5
**methodology**
14:24 17:6,7,16

17:19,21 18:2
18:10,25 19:8
20:4 21:10
22:8 31:6,11
32:17 40:13
48:6,10,19 51:2
51:4,22 52:3,5
52:18 55:12,22
56:25 57:7
58:8,18 65:16
**methods** 36:16
36:19,21 37:1,2
37:6,9
**metrics** 16:8
**mfs** 10:6 65:10
65:13
**miarmi** 2:21
**michael** 2:21
3:2 5:17 8:2
**middle** 61:6
62:1
**million** 12:13
30:9 54:4
**millions** 27:5
32:14
**mind** 29:15
30:15 77:17
**minds** 77:18
**miner** 6:5
**ministerial**
73:19
**minutes** 64:14
64:19
**misheff** 3:3

**misleading**
37:11,14,19
38:2,5,17 67:10
67:18
**misrepresent...**
62:14,23
**misrepresent...**
62:18,21,23
**misstatement**
12:10 15:5,13
16:16 20:20
26:14 35:11
38:9 54:11
**misstatements**
13:6,21 15:4,4
16:7 18:12
23:18 30:20
33:23 54:12
63:23,25 64:2
67:1
**misstating** 59:2
**mistake** 58:6
**mistakes** 62:11
**mitchell** 3:3
**mixed** 46:5,6
62:14
**mmiarmi** 2:25
**mmmb.com**
2:17
**moment** 33:2
**moments** 55:14
56:3,11
**momentum**
47:15

Page 18

**[monday - omission]**

| | | | |
|---|---|---|---|
| **monday** 75:18 | 66:25 | 68:21 73:5 | **obligation** 12:8 |
| **money** 43:12 | **murphy** 2:13 | 76:18 | **obtain** 42:2 |
| **month** 50:5 | 2:14,17 | **nice** 70:11 | **obviates** 74:18 |
| **morgan** 6:18 | **murray** 2:13 | **night** 13:17 | **obvious** 28:1 |
| **morganlewis....** | **mwe.com** 7:19 | 69:14 | **obviously** 15:18 |
| 6:22 | **n** | **night's** 68:25 | 15:24 18:15 |
| **morning** 10:15 | **n** 3:3 9:1 60:8,8 | **nine** 37:6 62:20 | 20:5 29:2 |
| 10:18,20 | **named** 63:14 | **ninth** 53:21 | 36:25 46:22 |
| **morris** 7:9 | **nba** 70:13 | 54:9,10 62:22 | 53:23,23 55:16 |
| **motion** 10:10 | **necessarily** | **non** 73:19 | 61:18 65:1 |
| 10:11 12:23 | 77:2 | **nondisclosure** | 73:8 76:4 |
| 13:2 32:1 | **necessary** | 14:6 26:18 | **occurs** 56:3 |
| 34:20 44:6 | 20:16 28:20 | **notes** 45:18 | **offering** 30:1 |
| 52:13 63:13 | 31:16 38:15 | **notice** 35:5 | **office** 18:16,16 |
| 71:7,9 73:10 | 58:9,24 75:1 | 46:21 | **officials** 11:20 |
| 74:12 76:21 | 78:10 | **notion** 66:15 | **oh** 41:22 59:2 |
| **motion's** 64:5 | **need** 12:6 25:10 | **novel** 25:23 | 66:1 75:2 |
| **motions** 68:16 | 30:16 32:19 | **nuanced** 20:25 | **ohio** 1:2 2:16 |
| 68:24 71:25 | 46:17 52:6 | **number** 9:7 | 3:8,13,19 4:17 |
| 72:6,7,20 73:7 | 64:8,20 68:23 | 39:16,23 42:11 | 5:14,21 6:14 |
| 73:19 76:11 | 71:16 73:23 | 42:24,25 43:2 | 7:12,24 15:23 |
| **moul** 2:13 | 74:8,9 | 46:4 | 25:16 69:17 |
| **move** 10:14 | **needed** 77:2 | **numerous** | 70:9 |
| 23:17 35:11 | **needs** 21:6 70:6 | 36:16,21 | **oil** 55:15 |
| 44:2 62:4 | **negotiate** 73:24 | **nuts** 40:13 | **okay** 10:15 |
| **moved** 24:12 | **negotiating** | **nw** 5:5 | 11:1 22:11 |
| 24:13,15 43:21 | 69:16 70:5 | **nypl** 57:4 | 35:18,24,25 |
| 43:23 | **never** 37:16,16 | **o** | 43:4 50:19 |
| **moving** 49:24 | 39:15,16,20 | **o'connor** 5:12 | 59:19 60:1 |
| 50:8 57:17 | 40:3,4 42:11 | **o'neil** 3:3 | 68:4 69:10,12 |
| **mpduffy** 3:14 | 43:15 44:4 | **object** 59:8 | 77:21 |
| **multibillion** | 74:25 | **objected** 72:9 | **olts** 2:6 |
| 63:1 | **new** 2:23,23 4:7 | **objection** 72:4 | **omission** 37:18 |
| **multiple** 19:5 | 4:7 6:7,7 7:6,6 | 76:6 | 38:8 62:14 |
| 31:25 33:24 | 52:14 57:5 | | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[omissions - pete]**

| | | | |
|---|---|---|---|
| **omissions** 13:6 36:2 38:1,6 46:7,10 62:18 62:24 67:14,15 67:15 | **oral** 45:11 | **pages** 1:25 62:20 | **party** 27:2 73:10 |
| **omit** 38:8,14 | **orange** 79:2 | **paid** 71:20 | **passed** 16:2 18:19,20 41:4 |
| **once** 35:3 41:3 41:4,5 42:10 75:16 | **order** 13:7 14:16 25:20 35:4 43:22 44:6 59:15 69:16,23 70:5,5 71:2,10,24 72:4 72:9 73:21,24 | **pain** 42:2,2,4 | **past** 34:3 41:18 68:17 |
| **online** 50:1 | **panel** 45:9 | **patiently** 65:25 |
| **open** 35:20 | **paper** 75:19 | **pattern** 59:11 |
| **opine** 21:11 74:12 | **papers** 11:2 13:10 19:5 57:25 77:24 | **paul** 3:2 |
| **opinion** 22:3 59:6 70:17 | **paperwork** 73:17 | **pause** 22:19 28:18 33:7 |
| **opinions** 70:1 | **ordered** 34:9 34:13 | **pappas** 3:4 | **paying** 18:17 |
| **opponent** 75:20 | **orders** 45:20 72:1,14,20,22 78:6 | **paragraph** 30:7 36:18 37:8,25 38:2 39:3,5,6 69:22 | **pburton** 5:8 |
| **opportunistic** 44:17,21 | **originally** 76:8 | **pease** 6:11 |
| **opportunity** 18:10 35:6 | **orrick** 5:3 | **paragraphs** 36:14 65:11 | **pending** 10:10 23:13 34:22,24 43:19 59:24 60:3 61:5 63:13 |
| **oppose** 44:7 | **orrick.com** 5:8 5:9 | **part** 22:1 28:19 30:18 32:23 67:22 69:22 | |
| **opposing** 11:5 53:15 | **ostrowski** 8:4 | **participated** 36:10 | **pennsylvania** 6:21 |
| **opposite** 45:6 | **ought** 66:7 | **participating** 65:3 | **people** 29:22 30:23 53:24 |
| **opposition** 11:18 | **outcome** 60:4 | | **pepper** 3:19 |
| **oppositions** 76:12 | **outs** 65:1,6,8 68:13 | **particular** 16:22 17:7 | **percent** 51:25 |
| **opt** 10:21 35:6 42:25 49:12 64:10,25 65:1,6 65:8 66:24 68:13 | **own** 11:5 33:3 49:13 | **parties** 24:12 27:2,3,4,25 31:25 45:17 60:23 68:17 69:16 70:4 77:5 | **perfectly** 66:6,6 |
| | **oxley** 38:12 | | **period** 12:2,11 16:5 18:13 29:18 38:6 39:11 55:25 56:1 |
| | **p** | | |
| | **p** 3:11 5:12 6:12 | | **permit** 28:14 |
| | **page** 35:15,25 36:1,14,15 37:25 38:3,11 38:11 39:5 56:6 60:11 71:12 | **parts** 21:13 | **person** 79:7 |
| | | | **pete** 8:3 |

Page 20

**[petition - price]**

| | | | |
|---|---|---|---|
| **petition** 11:17 12:14,17 14:21 24:13,19,25,25 25:6,19 26:2 27:18 34:16 44:11,25 45:5 47:10 52:19 53:8,13 57:21 58:15 59:6,14 60:4,5 61:8 | 18:7,9,23 20:12 23:1 24:10 25:2,7 26:7 31:20 32:18 33:3 36:2 42:1 42:24 47:1 49:10,11,17,19 49:23 50:22 51:18 52:12 53:2 55:9,20,23 56:7 58:18 | 26:18 30:22 56:13 67:2,4,7 **polk** 7:3 **poorly** 39:22 **porter** 6:4 7:9 **porterwright....** 7:13 **portion** 40:23 41:15,16 54:17 56:17 69:5 | **preparation** 69:21 **prepared** 66:6 66:6 **present** 8:1 41:11 50:9 57:15 76:1 **presented** 14:20 45:22,23 46:14 |

**petitioner** 25:21

**petitions** 14:12 27:7 32:1 33:3

61:19,19 64:1 65:14 69:24,25 70:15

**position** 19:22 30:17 43:25 45:13,16 75:19 75:21

**presents** 25:23

**preserve** 46:20 71:10

**petrobras** 25:2

**phase** 31:14

**planning** 19:16

**please** 35:17,24 64:23 78:11

**positions** 77:6

**possibility** 44:5 58:23

**presiding** 43:3

**preston** 5:4

**philadelphia** 6:21

**pohlmann** 6:19

**point** 17:8 19:1 23:18,21 28:21 32:18 33:19 39:13,16 44:23 44:23 50:20 56:21 58:13,14 59:10,18 62:10 62:19 63:11 66:2 69:25 70:18

**possible** 52:5 62:4 69:15 78:12

**presumably** 51:2

**phone** 77:11,11

**pianalto** 3:4

**pick** 17:7 77:10

**picture** 50:3,9

**pike** 3:19

**pinetree** 3:18

**place** 75:1,16

**possibly** 48:21

**potential** 56:8

**potentially** 37:23 39:4 61:4

**presumption** 13:14 38:25 39:1,7 46:12 67:16

**presumptions** 13:9

**pretty** 15:12 31:9

**prevailed** 55:6

**plaintiff** 19:7 20:3 31:16 32:16 50:25 51:20 57:19 58:12 63:14,18

**pointed** 47:2

**pointing** 58:13

**points** 15:18,19 16:18,20 55:16

**power** 63:2

**practice** 70:3

**practices** 49:20 49:21 67:2

**prevailing** 45:25

**prevent** 73:9

**previous** 73:14

**plaintiffs** 2:2 2:19 10:19,22 11:5,23 12:1 13:4,15 14:4,24 15:14 16:23

**political** 13:19 14:7 15:22 16:13 18:14

**precisely** 68:3

**preclude** 53:2

**prefer** 70:13

**prejudice** 46:24 47:1,17

**price** 15:10,11 15:25 16:3,12 16:17,19 18:23 20:22 23:19 26:14 41:17

Page 21

**[price - raised]**

42:8 55:24,25
**primarily** 46:9
46:10 54:11
62:17,18,22
**princeton**
70:10,10
**principal** 51:5
**principally**
13:18
**prior** 14:11
44:16 73:20
**privilege** 77:12
**probably** 27:11
30:9 40:24
47:16,19 64:14
77:18
**problem** 16:20
41:8 57:18
**procedure**
76:18
**proceed** 34:9
43:9,9 46:5
48:23 49:7,19
64:23 66:7,10
**proceeding**
59:20
**proceedings**
1:13 26:25
27:8 35:3 45:1
45:19 47:5,6
49:9 73:6
78:20 79:8,11
**process** 65:1
72:15,23 73:12
75:16 76:14,16

76:21
**productive**
77:7,7
**professors**
11:19
**prohibit** 71:7
74:5
**prominent**
11:19
**promised** 17:8
**proper** 22:17
**proponent**
75:18
**propose** 14:24
17:5,21 18:10
32:16 58:18
**proposed** 17:24
18:5,24 52:4,18
57:7 69:15
70:5 72:9
73:24
**proposing** 31:6
70:25
**proposition**
25:16
**prosecuted**
36:22
**prosecution**
32:24
**prosecutor**
45:9
**prospectively**
34:24
**prospectus**
30:1

**prove** 13:4 37:4
**proves** 62:13
78:7
**provide** 48:21
49:1 75:11,19
75:21
**provided** 11:17
72:8
**provides** 51:21
**providing**
15:22
**public** 4:16
13:12 32:11,12
32:21,22,25
37:14 49:16,18
49:22,24 50:7,9
**pull** 69:20
**purely** 30:11
**purport** 19:16
49:2
**purported**
15:17
**purposes** 27:14
66:12
**pursue** 42:1
**pursued** 44:20
**push** 61:20,20
61:20,20,20
**put** 13:16,16
19:7 24:10
31:11 56:6,25

**q**

**qualitative** 16:6
16:12 18:12
31:8,9

**question** 14:3
14:13,16,18
21:13 22:21
28:22 31:14
39:23 45:10,12
45:22,23,24
46:14,15 47:22
54:21,23 60:14
60:14,20 67:24
71:3 72:19
**questions** 25:14
25:18,24 26:3,4
26:5 48:4
50:11 57:15
67:21
**quick** 40:11
**quickly** 25:11
56:20 68:22
76:10,13
**quite** 11:15
16:14 25:3
35:20 54:17
78:3
**quote** 25:14,21
25:22,23,24
57:14 71:14,21
**quoting** 38:12

**r**

**rack** 52:5
**raise** 32:18
72:17 75:13
**raised** 14:3
20:11 56:21
71:5

Page 22

**[raises - representation]**

| | | | |
|---|---|---|---|
| **raises** 25:14 44:4 | **recognize** 42:10 61:18 | **reject** 40:4 70:3 | **reminds** 45:17 |
| **randazzo** 50:5 | **recognized** 14:16 25:18 | **related** 23:16 23:18 75:13 | **remote** 1:13 |
| **rare** 11:4 | 27:17,17 33:6 | **relates** 1:7 | **remotely** 1:24 10:1 |
| **rarely** 33:4,4 | **recognizing** 61:7 | **relatively** 14:23 | **removed** 66:16 |
| **reach** 39:16 78:9 | **recommend** 33:15 | **relevant** 30:1 49:16 69:22 | **rendon** 4:14 |
| **read** 35:14 56:19 69:21 71:20 | **recommendat...** 10:10 64:6 68:19 70:18 | **reliable** 57:7 | **repeal** 16:2 18:21 |
| **reading** 56:20 | **recommendat...** 68:20 69:25 78:13 | **reliance** 13:4,7 65:9 67:17 | **repeat** 66:18 |
| **ready** 10:25 32:5 64:17 | **record** 36:7 69:5 71:10 78:19 79:10 | **relied** 13:6 | **repeated** 33:24 |
| **real** 58:3,23 | **recorded** 79:7 | **relief** 75:19 | **repeatedly** 31:15 70:2 |
| **realities** 44:19 | **recross** 9:2 | **rely** 13:14,22 14:4 54:15 55:21 56:7 | **repeating** 63:8 |
| **reality** 36:6 | **redirect** 9:2 | **relying** 15:15 64:1 | **replacing** 77:20 |
| **really** 21:9 35:2 38:3 41:22 42:18 44:17 48:12 49:7 60:13 72:18 | **reference** 10:9 38:8 70:14 | **remain** 28:19 28:20 | **reply** 11:18 35:12,15 60:11 76:12 |
| **reason** 58:24 76:7 | **referenced** 56:8 56:16 | **remains** 12:3 | **report** 10:9 16:24 29:5 38:13 52:14,15 56:6 64:5 68:19,20 69:24 70:17 78:13 |
| **reasonable** 45:25 | **referendum** 41:6 | **remand** 12:21 20:2 21:6,7 22:5,23 23:15 31:4 34:18 51:11 59:25 60:2 | **reported** 1:21 1:24 10:1 |
| **reasoning** 54:7 | **reffner** 7:14 | **remanded** 59:15 60:5 | **reporter** 50:1 69:7,12 79:4 |
| **reasons** 45:16 60:17 | **reflect** 20:16 | **remanding** 59:17 | **reports** 19:17 28:3 34:8,9,13 47:24 59:9 61:16 |
| **reassess** 23:15 | **refused** 34:24 | **remands** 19:13 51:22 | **represent** 32:3 62:3 |
| **rebuttal** 50:14 62:9 | **regarding** 68:24 69:15 | **remedy** 22:4 | **representation** 38:19 |
| **received** 9:7 | **rein** 4:4 | **remember** 28:11 53:9 | |
| **recent** 14:23 | **reind** 4:8 | | |
| **recognition** 33:3 | | | |

**[representations - second]**

| | | | |
|---|---|---|---|
| **representations** 56:10 | **returned** 34:17 | 68:11,12 | 38:23 43:3 |
| **request** 34:7,21 | **review** 14:13 | **rules** 12:16 | 53:2,6 56:1 |
| 43:24 44:11 | 14:19 58:11 | 22:22,22,23 | 70:19 74:11 |
| 47:20 | **revisited** 34:20 | 28:24 33:10 | 75:9 |
| **required** 17:11 | **reyes** 3:4 | 65:15 72:1,1,13 | **says** 15:8 37:8 |
| 17:23 51:3 | **rgrdlaw.com** | 72:13,21,21 | 37:17 45:6,6 |
| **requires** 25:13 | 2:9,9,10,10,11 | 73:11 | 46:3 48:5,6,9 |
| 75:16 | **rheimann** 2:24 | **ruling** 26:11 | 50:14,24 |
| **research** 78:3 | **richard** 2:21 | **running** 18:15 | **scandal** 32:20 |
| **resolution** | 10:21 | **rushing** 31:22 | **scenario** 39:15 |
| 46:25 47:2 | **rig** 55:15 | **rutgers** 70:10 | 48:19 51:17,20 |
| 63:1 76:2 | **right** 18:19 | | **schedule** 65:5 |
| **resolve** 76:13 | 21:23 22:2,4 | **s** | **schedules** 76:11 |
| **resolved** 34:18 | 28:18 29:6 | **s** 2:4 4:14 7:10 | **scheduling** |
| 76:10,22 | 48:24 50:15 | **sachs** 23:6 | 77:10 |
| **resources** 27:1 | 51:7,10,12 | 52:24 | **scheme** 13:19 |
| 27:2,22 66:9 | 59:18 64:12 | **safety** 55:15 | 14:7 16:14 |
| **respect** 16:17 | 68:2,14 69:4,13 | **sake** 22:3 | 26:19 30:23 |
| 17:1 26:16 | 69:14 70:22 | **sam** 50:5 | 36:4,17,19 37:2 |
| 52:15 53:16 | 75:12 78:2 | **samantha** 7:16 | 37:10 42:7 |
| 54:4 55:3,15 | **rights** 33:22 | **san** 2:8 | 53:19 66:21,21 |
| 56:18 67:21 | **rigorous** 17:10 | **sandra** 3:4 | 67:8,12 |
| **responded** 63:9 | **ripe** 19:24 | **santen** 5:11 | **schemes** 37:1 |
| **response** 66:3 | **risk** 28:10 32:8 | **santenhughes...** | **schneider** 5:2 |
| 68:9 | **ritts** 3:6 | 5:15 | **sciarani** 2:4 |
| **responsible** | **road** 2:15 3:18 | **sarbanes** 38:12 | **scienter** 12:7,8 |
| 50:4 | 17:8 40:24 | **sater** 6:11 | 26:16 29:11 |
| **result** 58:2 | 47:13,14 | **satisfactory** | **scope** 26:12 |
| 60:19 | **robbins** 2:3 | 61:16 | 27:8 42:17 |
| **resulted** 33:25 | **robert** 4:4 7:14 | **satisfies** 32:17 | 61:13 |
| 63:1 | 10:16 | 51:2,4 56:25 | **se** 46:5 47:10 |
| **resume** 47:16 | **rpr** 1:22 | **satisfy** 26:7 | **sec** 11:20 |
| **resuming** 46:16 | **rudman** 2:3 | 31:17 51:8 | **second** 14:20 |
| | **rule** 44:24 45:6 | **saving** 43:12 | 24:23 25:3,5 |
| | 45:6,18 47:6 | **saying** 22:18 | 35:16 45:21 |
| | | 23:14 28:11 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[second - sought]**

46:18 52:23
57:3 65:6
**seconds** 49:25
**section** 11:22
  12:4,4,9,9,18
  19:14,17 22:20
  22:24 26:8
  28:25 29:2,8,8
  29:9,16,16 30:6
  30:12,13 33:9
  50:21 51:4
  52:13 53:3,6
  58:21
**securities** 1:6
  11:4,8 12:4
  13:8,12 14:12
  15:8 17:4,12
  23:11 24:2
  25:8 27:11
  29:16,21 55:7
  57:3 61:5,21
  63:15
**security** 20:15
**see** 20:21 36:15
  37:8,15,24 38:9
  41:16 43:17
  50:13 51:17
  70:8,9 75:9
**seeing** 28:4
**seek** 49:19
**seeking** 14:12
  32:5 57:13
  75:19
**seem** 76:19

**seems** 72:5
**send** 22:23
**sending** 46:21
  59:18
**sends** 76:18
**sense** 27:7
  33:12 46:15
  58:9 61:10,17
  65:20 77:13
**sensible** 65:5
**sent** 18:8 35:5
  72:16
**separate** 65:20
**series** 10:6 17:2
  37:10 69:15
**serious** 25:14
  25:18 26:3,4
**served** 32:12
**set** 65:5 76:11
**seven** 14:8 46:3
  53:17 54:19
**seventh** 53:21
**several** 45:16
  47:12 61:15
**seymour** 6:11
**sfenton** 7:19
**shape** 11:16
**share** 42:8
**sharing** 65:3
**shawn** 1:14
**shinbrot** 7:4
**short** 64:18
**shorten** 73:17
**shortened**
  29:19

**shorter** 30:13
**shorthand** 79:4
**shortly** 64:6
**show** 12:7 13:5
  40:12
**showing** 25:13
**shown** 12:6
**sic** 56:19
**side** 46:25 50:4
  50:6 76:4,5
**sides** 59:7
**sign** 70:25
**signature** 79:18
**significant** 11:3
  11:13,22 24:1
  26:12 27:11
  33:2 58:1
  60:22 73:9
**significantly**
  11:16 58:16
**silly** 75:5,8
**similarly** 63:3
**simpler** 16:20
**simplified** 32:2
**simply** 74:11
  74:16
**single** 32:7 35:8
  37:20,21,23
  39:18
**sir** 33:16
**situation** 54:22
  57:9
**situations**
  55:15

**six** 24:11,22
  46:3
**sixth** 11:7
  12:16 14:9,11
  14:17,18 18:5,6
  19:10,12 20:2
  21:4 22:5,22,22
  24:3 25:17,20
  26:1,23 28:24
  32:6 33:5,10,11
  34:3 44:12
  48:7,15 50:24
  51:3,8,20 52:1
  52:1,20 53:2,4
  53:9,20 58:2,7
  58:10,11,20
  59:17 60:18,19
  61:13,15 62:5
  65:15
**slipped** 62:16
**small** 41:10
**smaller** 20:6,6
**smart** 3:2 72:24
**somebody**
  51:10
**soon** 59:5 64:7
  78:11
**sooner** 77:1
**sort** 33:1 55:18
  58:8 72:10,11
  74:1
**sorts** 73:4
**sought** 31:23
  65:2

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[sound - stupid]**

| | | | |
|---|---|---|---|
| **sound** 44:22 | **spill** 55:19,20 | 23:20,24,24 | 66:5,10,11,13 |
| **south** 6:13 7:11 | 66:1 | 29:24 31:2,2,9 | **staying** 33:25 |
| 7:23 | **split** 28:7 | 36:20 37:7,11 | 45:1,4 47:23 |
| **southern** 1:2 | **square** 4:16 | 37:12,15,18 | **stays** 11:12 |
| 25:16 55:8 | **ss** 79:1 | 38:2,4,5,15 | 32:10 |
| 57:5 | **stakes** 20:7,8 | 46:7,10 49:14 | **stenographic...** |
| **speaker** 15:23 | **standard** 25:9 | 67:1,2,6,9,10 | 79:7 |
| 16:1 41:3,4 | 26:4 31:19 | 67:17 | **step** 11:3,4 73:9 |
| **speaks** 33:22 | **standards** 12:6 | **states** 1:1 44:25 | **steven** 3:2,3 |
| 44:13 | 14:1,2 | **status** 24:8 | **stipulation** |
| **special** 1:14 | **standpoint** | 60:13 73:15 | 70:24 73:25 |
| 10:4,9,15,23 | 30:11 | 76:25 77:1 | **stock** 15:10,11 |
| 18:1 19:1,19 | **stands** 62:3 | **statutory** 17:13 | 15:25 16:3,12 |
| 21:3,25 27:20 | **star** 68:5 | 17:14,18,23 | 16:17,19 18:23 |
| 27:23,24 33:16 | **start** 19:16 | **stay** 10:10,11 | 20:22 41:17 |
| 35:16,19,24 | 50:19 76:20 | 24:12,14,24 | 55:24,25 |
| 38:22 39:21 | **started** 40:20 | 25:4,5,9 26:23 | **stockholder** |
| 40:6,9 47:21 | 62:12 63:24 | 27:19 28:8,15 | 17:17 |
| 50:12,16 51:7 | **starting** 33:23 | 31:19 33:15,15 | **stockholders** |
| 62:7 64:3,16,23 | **starts** 77:11 | 33:20 34:6,7,21 | 11:24 13:5 |
| 65:23 67:23 | **state** 29:15 | 34:24 35:3 | **stop** 33:6 51:7 |
| 68:4,8,14 69:2 | 30:15 38:14 | 43:15 44:12 | **strah** 3:2 |
| 69:4,9,13,23 | 69:17 70:9 | 45:19 47:6,10 | **straight** 77:17 |
| 70:2,11,22 72:6 | 79:1,5 | 47:20 49:9 | **strategically** |
| 73:12,14 74:3 | **stated** 69:22 | 57:13,17 58:24 | 71:18 |
| 74:19 75:2,7,14 | **statement** | 59:4,19,23 60:2 | **street** 2:22 4:6 |
| 76:3,23 77:25 | 16:16 26:14,16 | 60:3,6 61:7,10 | 5:5,13 6:6,13 |
| 78:17 | 31:7,7,7,8 | 62:2 63:7 66:5 | 6:20 7:11,17,23 |
| **specifically** | 32:25 35:13 | 70:16 76:25 | **strong** 24:19 |
| 36:14 37:6 | 37:17,17,20,21 | **stayed** 23:13 | 49:23 |
| 45:17,18 | 38:10,14 54:14 | 24:5,7,9 25:1 | **strongly** 33:14 |
| **speed** 32:5 | **statements** | 34:10,16,19 | **stuff** 71:17 |
| **spending** 27:4 | 13:21 15:15 | 43:19 45:7 | **stupid** 71:9 |
| 32:14 | 16:5,7,8,13 | 47:18 60:12 | 74:7 |
| | 21:18 23:19,20 | 61:4 64:25 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[subclass - think]**

| | | | |
|---|---|---|---|
| **subclass** 20:5,5 | **suite** 3:12,18 | **takeaway** | **tentatively** 78:4 |
| **subclasses** | 4:15 5:13,20 | 21:14 | **tera** 4:14 |
| 19:20 | 6:13 7:11,17,23 | **takeaways** | **terms** 16:9 |
| **subject** 78:7 | **sullcrom.com** | 21:15 | 18:17 26:22 |
| **submission** | 4:8,8,9 | **taken** 18:23 | 32:11 65:8 |
| 75:25 77:14 | **sullivan** 4:3 | 19:15 22:13,15 | 66:21,22 67:16 |
| **submissions** | 10:16 | 36:11 53:10,11 | **terzian** 3:16 |
| 77:5 | **sum** 33:1 | 64:5 66:17 | **test** 48:12 |
| **submit** 39:15 | **summary** 63:13 | 68:16 | **texas** 55:8 |
| 73:24 | **supplementing** | **talk** 13:10 | **thank** 10:23 |
| **submitted** | 77:19 | 24:11 54:23 | 33:16,18 50:17 |
| 16:23 75:22 | **supply** 68:17 | 60:15 73:20,21 | 50:18 62:7 |
| **subparagraphs** | **support** 45:4 | 73:22 74:11,11 | 64:3,3 65:23 |
| 36:18 | **supported** | 74:17 | 68:4,7,15 69:3 |
| **substance** | 44:20 | **talked** 59:2 | 69:12,13 74:19 |
| 38:20 | **supports** 45:12 | 63:24 71:1 | 78:15,16,17 |
| **substantial** | 45:16 47:20 | 76:19 | **thankfully** 63:5 |
| 45:22,24 46:14 | **supposed** 75:19 | **talking** 30:9 | **theme** 38:6 |
| 57:14 | 75:21 | 33:7 38:1 | **theories** 26:25 |
| **substantially** | **supreme** 13:8 | 41:19 46:16 | 28:1,16 66:23 |
| 29:19 30:13,14 | 14:22,23 23:8,9 | **talks** 45:21,22 | **theory** 19:3 |
| **substantive** | 55:1 | 46:18,24 | 22:14 39:25 |
| 44:18 | **sure** 71:24 | **taylor** 3:2 | 40:1 55:1,2 |
| **succeed** 25:22 | **surprise** 69:17 | **technicality** | 68:1 |
| **success** 25:12 | **sutcliffe** 5:3 | 46:1 | **thing** 25:25 |
| 42:20,21 53:12 | **system** 74:6 | **teed** 64:17 | 28:1 31:20 |
| **suck** 75:2,3 | **t** | **teeing** 77:5 | 34:10 49:3 |
| **sue** 3:4 | **t** 3:2,3 60:8,8 | **tell** 39:3 47:8 | 53:14 62:10 |
| **suffering** 42:2 | **tag** 26:10 | 47:25 51:18 | 75:23 77:19 |
| 42:3,4 | **tail** 26:10 | 74:14 | **things** 16:10 |
| **sufficient** 18:8 | **take** 15:20 | **telling** 40:2 | 20:8 28:6 50:7 |
| 26:2 | 31:22 37:3 | 51:13,14 | 57:23 71:4 |
| **suggest** 72:5 | 40:2 49:25 | **ten** 11:9 16:18 | 77:8 |
| **suggesting** 22:6 | 52:15 56:2 | 16:19 24:3 | **think** 11:1 |
| 70:1 | 67:20 68:15 | 33:5 34:3 | 12:16 13:20 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[think - unfinished]**

14:7 17:20 21:15 22:8,10 22:11,14 24:20 28:2 36:7 38:22 39:21 45:10,12,14,15 48:3 50:12 51:14 55:5 56:22,22 57:23 57:25 58:5,16 59:9 60:15 61:3 63:8,11,14 64:18,24,24 65:21 66:3,7,8 68:10 69:8 70:6,7 71:1 72:15,24 73:14 73:15 74:18 75:7,17 76:7,24 78:2

**thinking** 51:19 58:22

**third** 34:25 35:25 46:24 61:2,4

**thomas** 3:3,17 4:5

**thornton** 3:4

**thorough** 74:22

**thought** 17:12 70:19 74:21,25 75:5 76:24

**thousands** 27:5

**three** 11:11,25 12:2,25 15:3

16:5,14 18:13 23:7,9 24:5 29:19 33:4,24 34:2,3,25 41:19 43:2 52:23,24

**throw** 41:9

**thrown** 22:14 26:25

**thursday** 1:15 10:2 79:8

**tick** 25:10

**tied** 65:19

**time** 15:18,19 19:22,23 28:4 31:22,23 33:21 39:19 40:8,14 40:16 41:1,2,7 41:20 44:16 45:10 55:14,16 56:3,11 73:1,2

**times** 11:9 12:25 15:5 31:10 33:5,24 52:23,25 61:15

**tivity** 34:25 59:13 60:3

**today** 68:5 69:21 78:18

**today's** 72:17

**together** 65:20

**took** 41:16 42:8 53:11 58:11 69:16

**topics** 37:12

**tossed** 21:19

**towards** 33:20

**tower** 4:15

**transcript** 1:13 68:18 71:13 78:11 79:8,10

**trial** 32:22,23 35:4

**tried** 39:21 63:18

**trigona** 73:3

**true** 20:21 40:20 60:21,21 79:10

**truly** 26:10

**trust** 10:6,8

**truth** 20:24 34:2 54:13 67:11

**try** 12:22 18:10 21:13,23 23:1 29:4 33:18 72:18 77:23

**trying** 16:11 18:18 23:17 41:8

**tucker** 5:18

**tuckerellis.com** 5:22,23

**tuesday** 72:7 75:20

**turn** 36:13 37:8 37:24 38:3,8

**turned** 16:18 20:24 62:17

**turner** 3:4

**turns** 15:10 20:21

**two** 11:21 13:8 21:13 23:5 25:6 28:12 42:25 56:6 59:12 66:23 75:22 76:22

**types** 20:25 61:8

**typical** 15:7

**u**

**ultimate** 21:11

**ultimately** 41:13

**unable** 58:18

**under** 11:23 12:4 13:25 17:12,19 26:9 30:5,5,7,7 33:3 38:17 42:14 47:11 54:9,18 62:15 64:5 68:16 72:21 73:11

**underlying** 68:2

**underwriter** 7:2

**undisclosed** 36:4 53:19

**unfinished** 21:17

Page 28

**[uniformly - willing]**

| uniformly 67:6 | **v** | **w** | way 12:16 14:9 |
|---|---|---|---|
| united 1:1 | | | 30:21 36:1 |
| unmistakable | value 18:17 | wagging 26:10 | 37:1 40:21 |
| 33:20 | 27:13 41:11 | wait 28:12,12 | 43:9,10 44:20 |
| unnecessary | 42:4,7 | 47:15 58:10 | 46:11 48:12 |
| 75:8 77:24 | valued 42:6 | waiting 44:8 | 53:1 70:8,20 |
| 78:7 | variable 41:15 | 65:24 | wayside 28:2 |
| unquestionably | varied 40:8 | want 24:11 | we've 12:23 |
| 47:17 | 41:1,2 | 35:11 41:22 | 14:3 47:3,3 |
| unsettled 25:23 | varies 39:19 | 44:23 45:8 | 64:19 75:17 |
| untrue 38:9,14 | 41:6 | 48:7,25 49:2,4 | weak 24:19 |
| unusual 36:24 | various 15:17 | 50:13,22 61:19 | wednesday |
| 42:18 | 32:24 55:14 | 62:5 64:8,9,13 | 75:22 |
| upward 78:14 | vary 41:20 | 66:14,18 69:5 | week 76:21 |
| urge 33:14 | varying 16:4 | 69:10 71:6 | week's 78:4 |
| 61:11 62:2,2 | 31:11 54:24 | 72:18 74:7,16 | weekly 77:2 |
| urging 33:1 | 56:3 | 75:12,13,23 | weeks 77:8 |
| use 66:8 77:13 | venue 38:1 | 76:15,16,17 | welcome 10:24 |
| used 17:3 20:14 | versus 57:4 | 77:4 | went 11:7 |
| 65:16 | 58:4 | wanted 70:18 | 16:18,19 20:12 |
| using 48:5,10 | vespoli 6:3 | 71:9,23 72:2 | 20:22,23 23:7,7 |
| usual 78:9 | vexatious 73:3 | 73:13 | 23:9 54:9 |
| ute 13:9,25 | 73:16 | wanting 75:10 | 62:25 70:10 |
| 14:4,13 22:13 | view 24:20 | wants 35:9,10 | 71:11 |
| 26:11,11 30:18 | 39:19 | 50:23 63:2 | west 2:7 6:6 |
| 30:18 38:25 | vine 5:13 | wardwell 7:3 | 7:17 |
| 39:7 46:2,6 | voilà 56:1 | warranted | westlaw 45:15 |
| 53:10,17,18 | volkswagen | 27:19 | 55:7 56:18,20 |
| 54:16,18 62:15 | 53:22,25 | warrants 31:19 | 57:4 |
| 63:16,19 64:2 | vorys 6:11 | warren 3:16,17 | whatsoever |
| 65:8 66:16 | vorys.com 6:15 | washington 5:7 | 42:23 |
| 67:22,25 | vw 62:11,20 | wasteful 27:1,1 | wide 13:4 14:25 |
| | 63:3,11,22 | 27:2 31:15 | 19:9 |
| | | watched 36:9 | willing 46:20 |
| | | water 41:9 | |

Page 29

**[win - zoom]**

| | |
|---|---|
| **win** 29:6 | **wrong** 46:3 |
| **winning** 63:16 | 53:16 54:18 |
| **winter** 5:4 | 67:13 |
| **wiping** 42:21 | **wrongdoing** |
| **wishful** 58:22 | 53:24 |
| **witness** 9:2 | **wrote** 59:6 |
| 47:4 | **x** |
| **witnesses** 28:11 | **x** 9:1 |
| 29:14 32:8 | **y** |
| **won** 22:25 70:9 | **yeah** 21:20 68:4 |
| **word** 36:7 | 69:9 70:12 |
| **worded** 39:23 | 75:14 76:3 |
| **words** 11:5 | **year** 12:2,12 |
| **work** 19:20 | 16:5 18:13 |
| 20:15 21:1 | 28:12 29:20 |
| 51:22 56:9 | 47:16 68:21 |
| 78:18 | **years** 11:9,25 |
| **worked** 17:21 | 15:3 16:14 |
| **works** 18:11,25 | 24:4 28:12 |
| 20:5 | 29:20 33:5 |
| **world** 54:5 57:2 | 34:3 41:19 |
| **worldcom** | 47:12 |
| 20:19 | **yesterday** 70:9 |
| **worse** 28:13 | 72:16 74:21 |
| 34:15 | **york** 2:23,23 |
| **worst** 51:17,19 | 4:7,7 6:7,7 7:6 |
| **woven** 35:12 | 7:6 57:5 73:5 |
| **wrap** 28:8 | **z** |
| **wrapped** 62:6 | **zoom** 27:3 |
| **wright** 7:9 | 35:22 |
| **write** 36:1 | |
| 70:17 | |
| **written** 34:7 | |
| 75:24 77:4,13 | |
| 77:14 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127