# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

## ORDER & OPINION

This matter is before the Court on Samuel C. Randazzo and Sustainability Funding Alliance of Ohio, Inc.'s ("SFAO") (collectively, the "Non-Parties") objections (Doc. 563) to the Special Master's Order (Doc. 554). For the reasons that follow, the Non-Parties' objections regarding the Special Master's application of the law of the case doctrine, the Special Master's finding of waiver, the Special Master's ordered scope of discovery, and the Special Master's assessment of the cost of compliance are not well-taken and are **OVERRULED**. The Special Master is **ORDERED** to convert the portions of his Order that address assessing costs and fees and his compensation against the Non-Parties into a Report and Recommendation. The Court **LIFTS** the Partial Stay of the Special Master's Order. (Doc. 570).

### I. Background

Elsewhere, the Court has explained this case's factual background and procedural history. (*See* Docs. 219, 435, 440). Relevant here, Plaintiffs issued subpoenas requesting the production of documents on the Non-Parties. (*See generally* Doc. 438-1). But Plaintiffs informed the Court in a joint status report that the Non-Parties refused to produce the documents. (Doc. 438 at 2). On April 5, 2023, the Court ordered the Non-Parties to produce discovery regarding "what happened to a $4.3 million payment that Defendant FirstEnergy Corp. . . . made to SFAO" ("April 5 Order"). (Doc. 440

at 1). The Court ordered the Non-Parties "to produce any document regarding the $4.3 million payment within their possession, custody, or control." (*Id*. at 2).

But that was not the end of it. Plaintiffs notified the Court that the Non-Parties interpreted the April 5 Order narrowly, and the Court ordered the Non-Parties to certify:

> (1) that they that they have made reasonable efforts to locate and produce "any documents regarding the $4.3 million payment within their possession, custody, or control" and that all such documents of which they are aware have been produced; (2) the specific steps taken to identify responsive documents, including locations and email accounts searched, and inquiries made of others; and (3) the search methodology utilized to comply with the Court's April 5 Order.

("May 16 Order"). (Doc. 460 at 2).

The Non-Parties partially did so, although it was necessary for the Court to order them to provide to Plaintiffs search terms, protocol, and methodology. (Docs. 464, 465; *see* Docs. 467, 468, 469, 470). At that point, the parties informed the Court that they disagreed on the time period of the electronic search for relevant documents, any additional search terms the Non-Parties should use, and who should bear the cost of the additional search. (Doc. 477 at 2, 8). The Court then directed Plaintiffs to file a motion to compel if the parties were unable to resolve those remaining issues. (Doc. 478). Accordingly, on July 14, 2023, Plaintiffs filed a Motion to Compel Discovery and Compliance with the April 5 Order from the Non-Parties (Doc. 496), and the parties subsequently briefed the matter. (Docs. 514, 516, 521, 523, 526).

On September 12, 2023, the Court, under Rule 53 of the Federal Rules of Civil Procedure, appointed Shawn K. Judge as Special Master in this proceeding. (Doc. 541); Fed. R. Civ. P. 53. On October 19, 2023, the Special Master heard oral argument on the Motion. (*See* Doc. 555). Then, on November 6, 2023, the Special Master granted Plaintiffs' Motion to Compel. (Doc. 554). The Special Master ordered the Non-Parties to act as follows:

> (1) Non-parties Randazzo and SFAO will search for and produce any documents

2

> regarding the $4.3 million payment within their possession, custody, or control, including for the period from November 21, 2020 to August 31, 2021, to Plaintiffs;
>
> (2) Non-parties Randazzo and SFAO will produce such documents and any corresponding privilege log(s) on a rolling basis;
>
> (3) Non-parties Randazzo and SFAO will collect Randazzo's 2019 email from its cloud-based sources; and
>
> (4) Non-parties Randazzo and SFAO will bear (a) the costs of complying with this Order; (b) the reasonable costs and fees Plaintiffs incurred in connection with the recent related motion briefing; (c) Plaintiffs' reasonable fees and costs for preparing for and participating in the relevant portion of the October 19, 2023 oral argument; and (d) the costs billed by the Special Master for the relevant portion of the October 19, 2023 oral argument and the preparation of this Order, as designated in the upcoming invoice. If Plaintiffs and non-parties Randazzo and SFAO are unable to agree on (a)-(c) within 14 days from the date of filing of this Order, Plaintiffs shall file for these fees and costs to be awarded by the Special Master, providing supporting authority and a proposed order for such an award.

(Doc. 554 at 14).

Yet, this was still not the end of it. The Non-Parties informed the Court of their intent to object to the Special Master's Order. (Doc. 561). The Court granted a partial stay of the Special Master's Order pending the consideration and resolution of the Non-Parties' objections. (Doc. 570; *see* Doc. 541 at 6–7). The Non-Parties' objections are now ripe for review. (Docs. 563, 576, 579).

**II.     Standard of Review**

Under the Court's Order of Appointment and Rule 53, the Court reviews *de novo* all of the Special Master's findings of fact and conclusions of law and will set aside a ruling on a procedural matter only for an abuse of discretion. (Doc. 541 at 6–7); Fed. R. Civ. P. 53(f)(3)–(5). The scope of permissible discovery is a procedural matter that the Court reviews for abuse of discretion. *See Ciccio v. SmileDirectClub, LLC.*, 2022 WL 2182301, at *1 (M.D. Tenn. June 16, 2022).

3

### III. The Non-Parties' Objections

The Non-Parties submit several objections to the Special Master's Order. The Court considers each *seriatim*.

### A. Law of the Case Doctrine

The Non-Parties first take issue with the Special Master's application of the law of the case doctrine. (Doc. 563 at 13; *see* Doc. 554 at 9–11). They say that the Court's April 5 and May 16 Orders do not require them to produce the discovery that Plaintiffs seek to compel. (Doc. 563 at 14). The Non-Parties argue that the April 5 Order—which arose when Plaintiffs requested the Court to "order Randazzo to produce documents revealing what happened to the $4.3 million" after the Non-Parties submitted limited production (Doc. 438 at 7; Doc. 438-1)—resolved only the discovery's relevance, not the discovery's scope or cost. (Doc. 563 at 14–15). So, they argue, the limited discovery they produced fulfills their discovery obligations and complies with the Court's Orders. (*Id.*). But when they made a similar argument on the Motion, the Special Master disagreed and applied the law of the case doctrine, observing that the April 5 and May 16 Orders "addressed the core issues in this litigation." (Doc. 554 at 9–10, citing *United States v. Faulkenberry*, 759 F. Supp. 2d 915, 919–20 (S.D. Ohio 2010), *aff'd*, 461 F. App'x 496 (6th Cir. 2012) ("According to the law of the case doctrine, a legal decision made at one stage of a civil or criminal case … becomes the law of the case for future stages of the same litigation. Once a decision has been made, the doctrine precludes a court from reconsideration of identical issues." (internal citations and quotation marks omitted))).

In essence, the Non-Parties argue that this doctrine is inappropriately applied because the Special Master's interpretation of the word "any" in the April 5 and May 16 Order is overly broad. (Doc. 563 at 15). This objection is not well-taken. As the author of the April 5 and May 16 Orders, this Court is uniquely situated to affirm the Special Master's understanding of those Orders. The

4

Orders' purpose was to address the Non-Parties failure to produce "any discovery regarding what happened to a $4.3 million payment that Defendant First Energy Corp. . . . made to [the Non-Parties]" in response to the subpoena, not merely to resolve that such discovery is relevant. (Doc. 440 at 1). The Non-Parties' hyperbolic argument that the Court, under the Special Master's reading, has ordered them to marinate "all the salmon in the universe" is off base. (*See* Doc. 563 at 14–15, citing *Russell v. Citigroup, Inc.*, 748 F.3d 667, 681 (6th Cir. 2014)). The Court's Orders did not instruct Plaintiff to "scour the universe for literally 'every document' related to FirstEnergy's $4.3 million bribe" in order to comply with the subpoena. (Doc. 579 at 12). Rather, the Court ordered the Non-Parties to fulfill their discovery obligations by "produc[ing] any document regarding the $4.3 million payment within their possession, custody, or control." (Doc. 440 at 2). This encompasses the discovery ordered in the Special Master's Order.

Accordingly, the Special Master's application of the law of the case doctrine was not in error, and the objection is **OVERRULED**. And to the extent that the remainder of the Non-Parties' objections rely on a contrary assumption, those arguments are similarly not well-taken. As the Special Master aptly put it, "settled matters remain settled." (Doc. 554 at 10).

### B. Waiver of Objections

The Non-Parties also object to the Special Master's finding that the Non-Parties waived or forfeited their right to make certain objections. (Doc. 563 at 16–17). The Non-Parties argue that they preserved objections to the defined time period of and cost of compliance with the subpoenas at issue by serving written responses to Plaintiff's subpoenas and by working with Plaintiffs to resolve their objections. (*Id.*). The Special Master noted that Plaintiffs' counsel explained the waiver of these objections during oral argument: the Non-Parties did not raise them under Rule 45 in responding to the subpoena; they did not raise them when Plaintiffs moved to compel the documents; they did not

5

raise them before the April 5 Order; they did not raise them in a filed objection to the April 5 Order; they did not raise them in a motion for reconsideration; and they did not seek clarification of the April 5 Order. (Doc. 554 at 9, citing Doc. 555 at 69: 3–16).

The record shows that the Special Master's summary is accurate. While the Non-Parties objected to the subpoena, the objections were untimely and non-specific. Plaintiffs served the subpoena at issue on June, 29, 2022, but the Non-Parties served their objections on August 4, 2022—thirty-six days after service of the subpoena and over three weeks beyond the deadline imposed by Rule 45. Fed. R. Civ. P. 45(d)(2)(B) ("A person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection. . . The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); (*see* Doc. 438-1 at 103–109, 111–116). Courts have held that this violation of Rule 45 can constitute waiver. *See, e.g.*, *Anwalt Energy Holdings, LLC v. Falor Cos.*, Inc., 2008 WL 2268316, at *1 (S.D. Ohio June 2, 2008) ("Generally, the failure to serve written objections to a subpoena within the time specified by Rule 45 constitutes a waiver of such objections."); *Hartford Cas. Ins. Co. v. Calcot, Ltd.*, 2009 WL 10699695, at *4 (W.D. Tenn. Apr. 7, 2009) (objection forty days after service waived). Moreover, even if the objections were timely, the Non-Parties did not specifically object to either the defined time period in the subpoena (Doc. 438-1 at 14 ("All requests herein refer to the period from February 1, 2016 through December 31, 2021)), or the cost to comply with the subpoena. (*See* Doc. 438-1 at 103–109, 111–116). It is axiomatic that "the party opposing discovery must state its objections with particularity." *Johnson v. Home Tech Servs. Co.*, 2005 WL 8156698, at *2 (W.D. Tenn. Mar. 1, 2005). Put another way, "[w]hen objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited." *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D.

Mich. Jan. 11, 2018). Yet, the Non-Parties' general objection used broad, boilerplate language, saying, "Mr. Randazzo objects to the Subpoena to the extent it is overly broad, unduly burdensome, premature, and/or seeks information beyond the scope of discovery under the applicable rules." (*See* Doc. 438-1 at 104). They did not set forth the grounds of the objection nor the harm that would result in complying with the relevant time period or paying to comply. On both these points, then, the Special Master was under no obligation to consider the recently raised objections as preserved nor was he required to excuse the Non-Parties' failure.

The Special Master did not err in finding that the Non-Parties waived or forfeited their objections to the defined time period or cost of compliance with the subpoenas at issue. The Non-Parties' objection on this issue is **OVERRULED**.

### C. Burden and Expense of Discovery

The Non-Parties next object to having to search for and produce documents from November 21, 2020 to August 31, 2021. (Doc. 563 at 19). They say the burden and expense of collecting, reviewing, and producing the documents with accompanied privilege log outweighs discovery's value. (*Id.* at 19–20); *see* Fed. R. Civ. P. 45(e)(1)(D) ("The person responding [to a subpoena] need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost."). Their argument rests on their assertion that the discovery is inaccessible because they cannot afford the ordered "expensive collection." (Doc. 563 at 20; *see id.* at 28 (estimating the cost of compliance as $22,625 to $27,015 at minimum)).

Even had the Non-Parties not waived this objection, the Special Master noted that during oral argument the Non-Parties were unable to "support their conclusory assertions of 'too expensive/too unfair' with *any* actual evidence," thereby frustrating the Special Master's evaluation of the proportionality of compliance. (Doc. 554 at 11). Indeed, despite multiple opportunities, the Non-

7

Parties' counsel were unable to describe accurately the Non-Parties' financial circumstances. (Doc. 555 at 88: 18–25 to 90: 1–9; *see* Doc. 554 at 11–12).  At one point, counsel said he was "just guessing" as to the amount of money the Non-Parties had available to them. (*Id.*).

The Non-Parties also argue that they would be overly burdened because a majority of the documents during the contested time period would be privileged. (Doc. 563 at 20–24). The Special Master again observed that the Non-Parties failed to present sufficient support. (Doc. 554 at 8 (agreeing with Plaintiffs' assertion that the privilege argument is conjecture as the Non-Parties did not submit a declaration that the documents are exclusively privileged), citing Doc. 555 at 93:16–25 to 94: 1–19). Yet still, the Non-Parties contend that a privilege log they produced in September 2023, detailing that less than 8% of the documents produced so far were privileged, should be taken with a grain of salt, as most (if not all) documents sought under the relevant period would be privileged under an attorney-client relationship that began in November 2020. (Doc. 563 at 22–23; *see* Doc. 579-3). But this is mere speculation. Accordingly, the Special Master was reasonable in his assumption that at least some documents produced during the relevant time period would not be privileged and are relevant to the resolution of this litigation.

The Court finds that the Special Master did not abuse his discretion in weighing the benefits of production as greater than the burdens, granting the Motion to Compel, and ordering the scope of discovery to include the search for and production of documents during the time period of November 21, 2020, to August 31, 2021. The Non-Parties' objection on this issue is **OVERRULED**.

### D.  Costs and Fees and the Special Master's Compensation.

The Non-Parties' next two objections address the Special Master's authority to assess against them costs and fees associated with the Motion to Compel and his authority to assess his own compensation against them. (Doc. 563 at 24–27). Unlike Plaintiffs' assertion (*see* Doc. 579 at 18–

20), the Court does not view the Special Master's Order to hold the Non-Parties in contempt. (*See* Doc. 583). Still, under Rule 53 and this Court's Order Appointing the Special Master, the Special Master "may by order impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty." Fed. R. Civ. Pro. 53(c)(2); (*see* Doc. 541 at 9). As such, the Special Master is **ORDERED** to convert these parts of his Order (Doc. 554) into a Report and Recommendation for the Court's consideration. In his converted Report and Recommendation, the Special Master should explain his authority for imposing sanctions on the Non-Parties. The Court will consider the Non-Parties' objections on these issues after reviewing the Special Master's Report and Recommendation. Alternatively, the Court gives the Special Master the opportunity to withdraw these aspects of his Order. The Non-Parties are not responsible for Plaintiffs' reasonable fees and costs for preparing for and participating in the relevant portion of the October 19, 2023, oral argument nor the costs billed by the Special Master for the relevant portion of the October 19, 2023, oral argument and the preparation of his Order until this issue is resolved.

### E.  Cost of Compliance

The Non-Parties' final objection to the Special Master's order is that they bear the costs of compliance with the subpoena, arguing that the costs should be shifted to Plaintiffs. (Doc. 563 at 27–30). They argue that under Rule 45, cost shifting is required to protect them from significant expense, and the expense of compliance at issue is significant. (*Id.* at 28 (estimating the cost of compliance between $22,625 and $27,015 at minimum)). The Special Master notes that at the hearing, the Non-Parties argued a fair percentage for Plaintiffs to bear was not for some of the cost of compliance but rather all of the cost of compliance. (Doc. 554 at 13, citing Doc. 555 at 90:12–25 to 91:1–11). But even taking the Non-Parties' argument in their objections that they would take a 50/50 split (*see* Doc.

563 at 30), and notwithstanding that the Court concluded that the Non-Parties waived this argument, the Non-Parties failed to show that the Special Master abused his discretion in this matter. "[I]n deciding how much, if any, of the expenses the requesting party must bear, the Court considers factors including 'whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance.'" *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 2633675, at *2–*3 (S.D. Ohio Mar. 24, 2023) (citing *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 1084605, at *2 (S.D. Ohio Mar. 22, 2021)).

Here, the Special Master was well within his discretion to assess the Non-Parties as interested, as other non-parties not bound by the case were found to be interested by way of a payment from Defendant FirstEnergy. *See In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2023 WL 2633675 (S.D. Ohio Mar. 24, 2023). And "[m]any courts have declined to shift all the costs of compliance to the requesting party when the nonparty has an interest in the litigation." *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-CV-708, 2023 WL 3624783, at *11 (S.D. Ohio May 24, 2023) (finding costs only in excess of $500,000 unreasonable to shift to an interested nonparty) (collecting cases). Further, the Non-Parties failed to provide the Special Master with the means to assess their financial ability to comply with the Motion to Compel. Finally, this Court has noted that as "one of the largest corruption and bribery schemes in U.S. history," this case is of public importance. *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2023 WL 2633675, at *3 (S.D. Ohio Mar. 24, 2023). Consequently, the Non-Parties have "an obligation to the public" to "fairly and fully disclose the non-privileged information within its possession, custody, or control." *See id.* The balance, therefore, is not clearly on the side of the Non-Parties' argument that the Special Master's assessment was in error.

The Court finds that the Special Master did not abuse his discretion in ordering the Non-Parties to bear the costs of complying with the Motion to Compel. The Non-Parties' objection on this issue is **OVERRULED**.

### F.  Pending Stays

Finally, two different stays currently affect this dispute: the Partial Stay of the Special Master's Order (Doc. 570) and Court's December 1, 2023, Order (Doc. 578), staying all discovery pending the outcome of Defendants' Motion to Stay Proceedings Pending Interlocutory Appeal (Doc. 577). With the understanding that discovery is otherwise stayed under the latter, the Court **LIFTS** the Partial Stay of the Special Master's Order. (Doc. 570). The Court expects the Non-Parties to comply promptly with the Special Master's Order when discovery resumes.

### IV.  CONCLUSION

For the foregoing reasons, the Non-Parties' objections (Doc. 563) regarding the Special Master's application of the law of the case doctrine, the Special Master's finding of waiver, the Special Master's ordered scope of discovery, and the Special Master's assessment of the cost of compliance are not well-taken and are **OVERRULED**. The Special Master is **ORDERED** to convert the portions of his Order (Doc. 554) that address assessing costs and fees and his compensation against the Non-Parties into a Report and Recommendation. The Court **LIFTS** the Partial Stay of the Special Master's Order (Doc. 570).

**IT IS SO ORDERED.**

Date: January 11, 2024

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE


/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE