# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

## ORDER & OPINION

This matter is before this Court on Plaintiffs' Motion to Compel Discovery from Non-Party Energy Harbor. (Doc. 491). For the reasons that follow, Energy Harbor's objections (Doc. 589) to the Special Master's Order granting the Motion are not well-taken and are **OVERRULED**.

### I. BACKGROUND

The Special Master sufficiently recites the factual background of this matter in his order granting the Motion. (Doc. 560 at 1–3). Relevant to the current objections, Plaintiffs issued a subpoena to non-party Energy Harbor (formerly known as FirstEnergy Solutions), which led to various discovery disputes. (*Id.* at 3). This Court attempted but failed to have the parties resolve their disputes extrajudicially. (*See* Doc. 481). Ultimately, this Court directed Plaintiffs to file a motion to compel. (Doc. 482). In their Motion, they ask this Court to compel Energy Harbor to: "(1) produce documents responsive to Class Plaintiffs' subpoena for the time period July 21, 2020 through December 31, 2020 . . . ; and (2) produce documents improperly withheld on the basis of attorney-client privilege concerning the subject matter of donations to 501(c)(4) entities and draft energy legislation." (Doc. 491). The parties fully briefed the Motion. (*See* Docs. 506, 515).

After the Motion was briefed, the Court appointed Shawn K. Judge as Special Master in this case and referred the Motion to him. (Doc. 541); *see* Fed. R. Civ. P. 53. The Special Master heard

oral argument on the Motion and granted Plaintiffs' Motion to Compel. (Docs. 555, 560). He ordered:

> (1) Within 30 days from entry of this Order, Energy Harbor shall produce all documents responsive to Class Plaintiffs' subpoena for the time period July 21, 2020 through December 31, 2020.
>
> (2) If necessary, Class Plaintiffs and Energy Harbor shall meet and confer on the issue of which 501(c)(4) entities and draft energy legislation are to be involved in the mandated production, with the directive that only relevant 501(c)(4) entities and draft energy legislation matter.
>
> (3) Energy Harbor shall produce documents improperly withheld on the basis of attorney-client privilege concerning the subject matter of donations to relevant 501(c)(4) entities and the drafting of clean energy legislation.
>
> (4) Attorney's fees and costs of Energy Harbor's production are to be born by Energy Harbor.
>
> (5) Costs of the Special Master's work on this Energy Harbor dispute are to be born equally by the parties.

(*Id.* at 15).

Energy Harbor objected, and Plaintiffs responded. (Docs. 589, 609).

## II.  STANDARD OF REVIEW

Rule 53 of the Federal Rules of Civil Procedure provides that a reviewing court must consider *de novo* all objections to findings of fact and conclusions of law made or recommended by a special master and may set aside a "ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(3)–(5). The Court's Order of Appointment adopts Rule 53's standard of review language in full. (Doc. 541 at 6–7).

Here, the parties dispute the Special Master's findings. Energy Harbor contends that the Special Master made factual findings and made a legal conclusion. So, says Energy Harbor, the Court must review the matter *de novo*. (Doc. 589 at 10–11). For support, Energy Harbor cites out-of-circuit cases wherein a special master's discovery order has been reviewed *de novo*. (*Id.*, citing *Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, No. 19-CV-02075-WJM-GPG, 2022 WL 1619683, at *2 (D.

2

Colo. Mar. 30, 2022) (reviewing *de novo* objections to the special master's report and recommendation that a party provide more information about a produced document); *LG.Philips LCD Co. v. Tatung Co.*, 243 F.R.D. 133, 135, 139 (D. Del. 2007) (reviewing *de novo* objections to the special master's report and recommendation that an "advice of counsel" defense must be affirmatively pled and that discovery should not be bifurcated)).

Plaintiffs respond that abuse of discretion review applies because, within the Sixth Circuit, a special master's discovery order is reviewed for abuse of discretion. (Doc. 609 at 11). Generally speaking, the Court agrees with Plaintiffs. The Court will review the Special Master's orders, reports, and recommendations that relate to procedural matters, like the scope of discovery, for abuse of discretion. *See Ciccio v. SmileDirectClub, LLC.*, 2022 WL 2182301, at *1 (M.D. Tenn. June 16, 2022) ("Because a special master's ruling on the scope of permissible discovery is considered a procedural matter . . . the Court reviews for abuse of discretion." (internal citation omitted)); *Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 1:21-CV-02085, 2023 WL 4991718, at *2 (N.D. Ohio Aug. 4, 2023) ("A special master's discovery ruling presents a procedural matter." (citation omitted)). "This is similar to the scope of review of a district court's discovery orders by the circuit court." *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:18-CV-1729, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). Indeed, courts in this circuit have reviewed a wide range of discovery matters addressed by a special master under this standard. *See, e.g.*, *Liberty Ford Lincoln Mercury, Inc.*, 2023 WL 4991718, at *2–3 (order limiting discovery requests and removing an Attorneys' Eyes Only designation from documents after a risk analysis); *Emergency Pro. Servs., Inc. v. Aetna Health, Inc.*, No. 1:19-CV-1224, 2023 WL 1987307, at *2 (N.D. Ohio Feb. 14, 2023) (order allowing discovery on five categories of information); *Ravin Crossbows, LLC*, 2020 WL 7706257, at *2 (order requiring specific information

be exchanged in preparation for mediation). As have courts in other circuits. *See, e.g.*, *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (order compelling production of documents); *Chevron Corp. v. Donzinger*, No. 11 CIV. 0691 LAK, 2013 WL 3270339, at *2 (S.D.N.Y. June 27, 2013) (order directing defendant to testify at a deposition).

But the Special Master's application of the crime-fraud exception to attorney-client privilege presents a more nuanced question. The Sixth Circuit, at times, has recognized that issues of attorney-client privilege go beyond procedure, noting that "whether the attorney-client privilege applies is a mixed question of law and fact, subject to *de novo* review." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517–518 (6th Cir. 2014) (citing *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006) (citation omitted)) (reviewing *de novo* a district court's conclusion that a party had not shown a good faith basis to believe that an *in camera* review of emails would show the crime-fraud exception should apply); *see also In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293–294 (6th Cir. 2002); *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). Yet, at other times, the Sixth Circuit has treated questions of attorney-client privilege as nondispositive or evidentiary, subject to a lower standard of review. *See Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 391–392 (6th Cir. 2017) (reviewing a district court's decision to not apply the crime-fraud exception and exclude attorney-client privilege protected emails from evidence for an abuse of discretion); *Chesher v. Allen*, 122 F. App'x 184, 187–188 (6th Cir. 2005) (remanding to the district court to apply a more deferential standard of review when the district court reviewed a magistrate judge's nondispostive finding that the crime-fraud exception did not apply *de novo*); *see also Ciccio*, 2022 WL 2182301, at *1 (reviewing a special master's order that documents were improperly withheld on the basis of attorney-client privilege as a procedural matter).

Erring on the side of caution, the Court reviews the Special Master's application of the crime-fraud exception *de novo*. But the standard of review is doing little work here. Regardless of which standard applies, Energy Harbor's objections are not well-taken.

### III. OBJECTIONS

As noted, Energy Harbor objects to the Special Master's application of the crime-fraud exception to attorney-client privilege. (Doc. 589 at 5–6; *see* Doc. 560 at 15). "The crime-fraud exception applies to communications between attorney and client 'made for the purpose of getting advice for the commission of a fraud or crime.'" *Slorp v. Lerner*, No. 2:12-CV-498, 2016 WL 1252980, at *3 (S.D. Ohio Mar. 31, 2016) (internal quotation marks omitted) (citing *United States v. Zolin*, 491 U.S. 554, 563 (1989)). In his Order, the Special Master explained that "[t]he exception requires 'the party seeking to pierce the privilege must present evidence (1) that the client was engaged in or planning the misconduct when the attorney-client communications took place; and (2) that those communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.'" (Doc. 560 at 10, citing *Murray Energy Corp. v. Cassidy, Cogan, Chappell & Voegelin, L.C.*, No. 2:18-CV-440, 2019 WL 2240245, at *7 (S.D. Ohio May 24, 2019) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 2:18-CV-440, 2019 WL 3406543 (S.D. Ohio July 29, 2019)). Because the parties did not move for the Special Master to conduct an *in camera* review of the allegedly privileged documents, the Special Master relied on record evidence and the parties' oral arguments to conclude that the crime-fraud exception applies to documents concerning the subject matter of donations to relevant 501(c)(4) entities and the drafting of clean energy legislation. (Doc. 560 at 10–11, citing *Slorp*, 2016 WL 1252980, at *5). Energy Harbor's objections against the Special Master's conclusion are two-fold.

5

### A. Engagement in or Plan to Commit Fraud

Energy Harbor first argues that the Special Master "erred in finding that Plaintiffs had established a *prima facie* crime or fraud by Energy Harbor." (Doc. 589 at 5, 11–14). It contends that the Special Master's Order does not appreciate that Energy Harbor has not been charged with any crime or that the money it contributed to former Speaker of the Ohio House of Representatives Larry Householder's 501(c)(4), Generation Now, was purportedly not intended for a nefarious purpose. (Doc. 589 at 12; *see* Doc. 555 at 37:25–38:6). But Energy Harbor need not be facing criminal charges for the crime-fraud exception to apply. *See In re Antitrust Grand Jury*, 805 F.2d 155, 165 (6th Cir. 1986) ("The evidence produced by the government . . . need not be as strong as that needed to effect an arrest or secure an indictment." (internal citation omitted)). And the Special Master did not find that Energy Harbor "ultimately had the intent or knowledge to engage in fraud." (Doc. 560 at 11). Rather, as the Special Master correctly stated, "[m]eeting the crime-fraud exception requires 'evidence . . . . such that a prudent person [would] have a reasonable basis to suspect the perpetration of a crime [or] fraud.'" (Doc. 560 at 12, citing *Slorp*, 2016 WL 1252980, at *3 (citing *United States v. Collins*, 128 F.3d 313, 321 (6th Cir. 1997)); *see also United States v. Skeddle*, 989 F. Supp. 890, 901 (N.D. Ohio 1997) ("The government is not, however, required to establish the 'fraudulent nature of the objective . . . definitively [and] there need only be presented a reasonable basis for believing that the objective was fraudulent.'" (citation omitted)).

The Special Master determined "[w]ithout question, there is a reasonable basis to conclude that fraud occurred." (Doc 560 at 11). He explained that a deferred prosecution agreement (the "DPA")—agreed to by FirstEnergy Corp. and the U.S. Attorney's Office for the Southern District of Ohio—supports the conclusion that "FirstEnergy Solutions was a direct participant in the

execution of . . . fraud." (*Id.*; *see* Doc. 259-5 at 16–64). Further, he cited the exhibits submitted with the Motion to Compel and Juan Cespedes' guilty plea admission that he made targeted payments on behalf of FirstEnergy Solutions[1] as support. (Doc. 560 at 11; *see* Docs. 491, 491-3 at 25–31, 506, 515). While true the Special Master's Order fails to provide more specific citation to the record, the Undersigned agrees with his assessment.

Though Energy Harbor argues that it cannot be bound by the terms of the DPA, as Energy Harbor was not involved in its negotiation (*see* Doc. 589 at 14), the Special Master did not bind Energy Harbor to the DPA; rather, he used the facts in the DPA's terms to inform his analysis of whether a reasonable basis exists to suspect that fraud occurred. (Doc. 560 at 11); *cf. In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2022 WL 17075838, at *3 (S.D. Ohio Nov. 18, 2022), *objections overruled*, No. 2:20-CV-3785, 2023 WL 142078 (S.D. Ohio Jan. 10, 2023) (referring to facts contained in the DPA at issue to inform the Court's analysis of a non-party's discovery obligations). And Energy Harbor's objections do not undermine the fact that FirstEnergy Solutions was mentioned over fifty times in the DPA in relation to FirstEnergy's quid pro quo payments, including being noted as paying a majority of the money to Generation Now. (*see generally* Doc. 259-5 at 15–64).

Energy Harbor contends that "any reasonable reading of the text messages and emails that Plaintiffs submitted as exhibits supports" the conclusion that Energy Harbor's contributions to Generation Now were meant to support advertising. (Doc. 589 at 12). Yet on independent review,

---

[1] Concerning Juan Cespedes's admission, the Special Master briefly summarized the relevant facts Plaintiffs submitted in their briefing, highlighting:

> [First Energy Solution's] lobbyist, Juan Cespedes . . . met with [Larry] Householder in October 2018 to deliver a $400,000 check made out to Householder's 501(c)(4) entity Generation Now. Cespedes then coordinated weekly million-dollar payments from FirstEnergy Solutions to Generation Now to fund the anti-referendum efforts. Cespedes has since pled guilty in the criminal proceedings.

(Doc. 560 at 3).

7

several exhibits submitted with the Motion can be read as supporting a reasonable basis of fraud. (S*ee, e.g.*, Doc. 491-3 at 17:2–15 (Cespedes's testimony about delivery of a check to Householder), 34–36 (text messages about delivery of $400k to Householder), 45–46 (Cespedes email seeking FirstEnergy Solutions' approval for a Generation Now contribution he received on behalf of FirstEnergy Solutions), 48–50 (contributions to Generation Now), 55–56 (text messages about payment to Generation Now); 60–62 (same), 64–66 (same)).

As such, the Special Master did not err in concluding that a prudent person would have a reasonable basis to suspect that Energy Harbor was engaged in or was planning to commit fraud when the attorney-client communications at issue took place. Therefore, the Court **OVERRULES** this objection.

### B. Solicitation of Advice From Counsel

Energy Harbor next argues that the Special Master "erred in finding that Energy Harbor sought legal advice about 501(c)(4) entities and clean energy legislation to facilitate or conceal a crime or fraud." (Doc. 589 at 6,14–17). In his Order, the Special Master explains that there was "sufficient evidence that suggests that FirstEnergy Solutions used counsel in furtherance of the commission of fraud," citing a 2018 memorandum and 2019 memoranda, submitted *in camera*, that "all provide analysis and advice that ultimately effectuate a component of the apparent fraud." (Doc. 560 at 11; *see* Doc. 491-3, Exs. 22, 24, 25). The Special Master went on to say,

> Circumstantial evidence suggests the reasonable inference of a quid pro quo, and the text messages of FirstEnergy employees suggest a criminal purpose underlying the contributions and lobbying that, coupled with the then-interdependence of FirstEnergy and FirstEnergy Solutions, reasonably imply FirstEnergy Solutions knowingly engaged in criminal conduct and obtained legal advice to cover quid pro quo transactions with a smear of propriety.

(Doc. 560 at 12–13).

In its objection, Energy Harbor says that rather than supporting an inference that the cited memoranda effectuated a component of fraud, the 2018 memorandum merely "summarized the law concerning corporate donations to 501(c)(4) entities" (*see* Doc. 491-3, Ex. 22), and the 2019 memoranda simply "gave comments on draft legislation" (*see* Doc. 491-3, Exs. 24, 25). (Doc. 589 at 15). In essence, Energy Harbor argues that it sought good faith legal advice on these topics to ensure that it was following the law, not to understand how it could break the law. (*Id.* at 15–16, citing *Skeddle*, 989 F. Supp. at 901 ("Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper." (citation omitted))).

But, as the Special Master acknowledged, the crime-fraud exception does not apply when a client obtains advice regarding a legal course of action. (Doc. 560, at 12, citing *Murray Energy Corp*, 2019 WL 2240245, at *8 (citations omitted)). The Special Master determined this tenet inapplicable because of the context of the advice Energy Harbor sought: "lawful conduct (contributions, lobbying) . . . can easily be regarded *as the means* to facilitate or conceal intended criminal activity (fraud, bribery) . . . . Contextualization places Energy Harbor's on-its-face lawful conduct into a broader course of conduct that a reasonable person may find damning." (Doc. 560 at 12). The Court agrees with this assessment. Moreover, even if Energy Harbor had a legitimate purpose in seeking the legal advice in the memorandums, that does not cure a concurrent illegitimate purpose. (Doc. 609 at 14–15); *see Skeddle*, 989 F. Supp. at 901 ("The cloak of legitimacy which [defendants] wished to place over their illegal plans could not and did not make those plans lawful."). The same is true even if Energy Harbor's counsel blessed its actions. *Id.* at 902 ("Unawareness on the lawyer's part of the client's unlawful purpose or desire does not matter.").

And, contrary to Energy Harbor's contention that the record simply cannot be read to support the Special Master's conclusion on this issue (*see* Doc. 589 at 16–17), on independent review the Court finds that there is, indeed, sufficient "circumstantial evidence" in the record, in addition to the "the then-interdependence of FirstEnergy [Corp.] and FirstEnergy Solutions," supporting a reasonable basis to suspect that Energy Harbor "knowingly engaged in criminal conduct and obtained legal advice to cover" it. (Doc. 560 at 12–13; *see, e.g.*, Docs. 259-5 at 16–64 (deferred prosecution agreement); 491-3 at 17:2–15 (Cespedes's testimony about delivery of a check to Householder), 25–31 (Cespedes's guilty plea), 34–36 (text messages about delivery of $400k to Householder), 45–46 (Cespedes email seeking FirstEnergy Solutions' approval for a Generation Now contribution he received on behalf of FirstEnergy Solutions), 48–50 (contributions to Generation Now), 55–56 (text messages about payment to Generation Now); 60–62 (same), 64–66 (same)).

Consequently, the Special Master did not err in concluding there is a reasonable basis to suspect that the attorney-client communications at issue were intended by Energy Harbor to facilitate or conceal criminal or fraudulent activity. As such, the Court **OVERRULES** this objection.

\*\*\*

The Special Master concluded his analysis by reiterating that his Order did not resolve whether Energy Harbor "did anything wrong," as his decision was not a merits decision meant to "opine on the ultimate issues in this litigation." (Doc. 560 at 13). Instead, the Special Master explained that his Order was "expressly limited . . . [to] whether Class Plaintiffs have met their burden of presenting sufficient evidence that FirstEnergy Solutions was engaged in or planning criminal conduct when the attorney-client communications took place and that FirstEnergy

10

Solutions intended those communications to facilitate or conceal the criminal activity." (*Id.*). This Court finds no basis on which to overturn the Special Master's limited finding. Accordingly, Energy Harbor's objections are not well-taken, and the Special Master's Order (Doc. 560) stands.

## IV. CONCLUSION

For the foregoing reasons, Energy Harbor's objections (Doc. 589) to the Special Master's Order granting the Motion are **OVERRULED**.

**IT IS SO ORDERED.**

Date: February 13, 2024

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE


/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE