### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

## ORDER & OPINION

This matter is before this Court on Defendant FirstEnergy Corp.'s ("FirstEnergy") Notice of Objections to the Special Master's Orders Dated November 29, 2023, and November 30, 2023 (Doc. 607); FirstEnergy's and Individual Defendants' Objections to the Special Master's Report and Recommendation on FirstEnergy's Motion to Stay (Docs. 643, 644); FirstEnergy's Objections to the Order by the Special Master Denying Motion for Reconsideration (Doc. 645); and FirstEnergy's Objections to the Special Master's Order Denying Leave to File a Reply (Doc. 640). For the following reasons, the Objections and the request for oral argument on the Objections are **OVERRULED.**

### I.        Background

This Court has previously summarized the facts giving rise to this action.  (*See* Docs. 175, 219, 461).  Relevant here, Plaintiffs allege that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history," and once FirstEnergy's role was revealed, "the price of FirstEnergy stock plummeted."  (Doc. 72 at ¶ 3, 9).  On July 21, 2020, Former Ohio House Speaker Larry Householder was arrested for his part in the scheme.  (*Id.* at ¶ 8).  After his arrest, FirstEnergy conducted internal investigations.  (Doc. 607-1 at 13; Doc. 571 at 2).  One investigation, conducted by Squire Patton Boggs ("Squire"), began on July 28, 2020.  (*See* Doc. 529

at 6; *see also* Doc. 489-1 at 12). Another investigation by Jones Day also began within days of Larry Householder's arrest. (Doc. 510 at 18; Doc. 607-1 at 22). Yet, as noted by the Special Master, the parties often treated the two investigations as one in their briefing on this Motion. (Doc. 571 at 16).

Movants, consisting of Plaintiffs and Defendants Michael J. Dowling and Charles E. Jones, moved to compel documents and information related to the internal investigations. (*See* Doc. 489). Movants argued that these investigations were motivated primarily by business and human resources purposes, and Defendant FirstEnergy could not meet its burden of establishing that the materials sought were privileged or protected by work-product doctrine. (Doc. 489 at 2). FirstEnergy responded that the investigations were protected, because they were conducted for the purpose of obtaining legal advice and to "defend against the newly filed and anticipated civil actions" and criminal charges. (Doc. 510 at 10).

In support of its arguments, FirstEnergy presented a declaration from Defendant James O'Neil ("the O'Neil Declaration"). (Doc. 511-1 at 1–7). O'Neil serves on FirstEnergy's Board of Directors and has held that position since January 17, 2017. (*Id.* at 2). His declaration asserted that "the investigations were conducted because FirstEnergy was facing sudden and extraordinary legal risk from government investigations and litigation." (Doc. 510 at 12). Other than this declaration, First Energy offered little evidence of the motivations behind the investigations, other than general references to lawsuits against the company and its cooperation with government entities. (*See* Doc. 510 at 21–26; *see also* Doc. 607-1 at 64–67).

The parties fully briefed the Motion. (*See* Docs. 489, 510, 511, 529, 530). Then, the Court appointed Shawn K. Judge as Special Master and referred the Motion to him. (Doc. 541); Fed. R. Civ. P. 53. The parties participated in oral argument in front of the Special Master and completed limited supplemental briefing. (*See* Docs. 549, 550, 612). During a November 28, 2023, status

conference, the Special Master issued a preliminary decision, which he then memorialized in a written order dated November 29, 2023. (Doc. 571). Before this order, neither the parties nor the Special Master raised any deficiency with the O'Neil Declaration.

The Special Master's November 29 Order granted the Motion (Doc. 489) and found that the internal investigations were not privileged or protected by work-product doctrine. In doing so, the Special Master pointed out a fatal flaw in the O'Neil Declaration: it failed to fulfill the requirements of 28 U.S.C. § 1746. (Doc. 571 at 8). The Special Master explained that "although the declaration provides it is 'under of penalty of perjury,' bears the execution date, and is signed, the declaration never states anywhere that its contents are declared *as true*." (*Id.* at 9 (emphasis in original)). Accordingly, the Special Master said the O'Neil Declaration was "just a document" and not evidence that could be considered under precedent and the local rules. (*Id.*; *see also id.* at 9–13 (citing cases in support)). After considering the dearth of evidence otherwise submitted by FirstEnergy, the Special Master found that FirstEnergy failed to meet its burden. (*Id.* at 14–17). As such, the Special Master granted the motion to compel and "left unaddressed" the parties' waiver of privilege arguments. (Doc. 571 at 16).

Defendant then filed a motion requesting a stay "pending final judicial resolution of FirstEnergy's objections" to the Special Master's decision. (Docs. 573, 574). FirstEnergy also argued that the Special Master should have allowed them to file an amended version of the O'Neil Declaration, citing *Ross v. City of Dublin*, No. 2:14-cv-2724, 2016 WL 7117389 (S.D. Ohio Dec. 7, 2016). (Doc. 574 at 7–8). Yet FirstEnergy never filed a separate motion seeking leave to amend the declaration. On November 30, 2023, after oral argument, the Special Master issued another order denying FirstEnergy's "oral motion for leave to belatedly supplement [the O'Neil Declaration] to the extent that FirstEnergy's argument can be construed as making such a motion." (Doc. 575 at 2).

FirstEnergy subsequently filed its objections to the Special Master's order granting the motion to compel and his order denying the amendment. (Doc. 607). Movants responded, (Doc. 614, 615), and FirstEnergy's objections are now ripe for review.

## II.    Standard of Review

Under the Court's Order of Appointment and Rule 53, the Court reviews *de novo* all of the Special Master's findings of fact and conclusions of law and will set aside a ruling on a procedural matter only for an abuse of discretion. (Doc. 541 at 6–7); Fed. R. Civ. P. 53(f)(3)–(5). "This is similar to the scope of review of a district court's discovery orders by the circuit court." *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:18-cv-1729, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). The scope of permissible discovery, the issue at hand, is a procedural matter that the Court reviews for abuse of discretion. *See Ciccio v. SmileDirectClub, LLC*, 2022 WL 2182301, at *1 (M.D. Tenn. June 16, 2022) ("Because a special master's ruling on the scope of permissible discovery is considered a procedural matter . . . the Court reviews for abuse of discretion."). Courts in this circuit and other circuits have reviewed a special master's various discovery orders for abuse of discretion. *See, e.g.*, *Emergency Pro. Servs., Inc. v. Aetna Health, Inc.*, No. 1:19-cv-1224, 2023 WL 1987307, at *2 (N.D. Ohio Feb. 14, 2023) (order allowing discovery on five categories of information); *Ravin Crossbows, LLC*, 2020 WL 7706257, at *2 (order requiring specific information be exchanged for mediation); *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (order compelling production of documents).

"An abuse of discretion occurs where the reviewing court has a definite and firm conviction that a clear error of judgment has occurred." *Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 1:21-cv-02085, 2023 WL 4991718, at *2 (N.D. Ohio Aug. 4, 2023) (citation omitted).

Furthermore, "[a] ruling that is arbitrary, unjustifiable, or clearly unreasonable constitutes an abuse of discretion." *Id.* "In practice, this standard results in upholding a decision that falls within a broad range of permissible choices even where the reviewing court might not reach the same result." *Id*.

But there is another wrinkle. Parts of FirstEnergy's objections concern attorney-client privilege. Because "[t]he question of whether the attorney client privilege applies is a mixed question of law and fact," the Sixth Circuit primarily guides that such decisions are "subject to *de novo* review." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293–94 (6th Cir. 2002). Yet this guidance has not always been consistent, and the Sixth Circuit has, at times, reviewed privilege issues under a more deferential standard. *See Stone Surgical LLC v. Stryker Corp.*, 858 F.3d 383, 391–92 (6th Cir. 2017) (reviewing a court's decision to exclude emails due to attorney-client privilege as an evidentiary matter subject to abuse of discretion); *Chesher v. Allen*, 122 F. App'x 184, 187–88 (6th Cir. 2005) (remanding for consideration under a "clearly erroneous" standard, where a district court reviewed an issue involving the crime-fraud exception to attorney-client privilege *de novo*).

Therefore, erring on the side of caution, the Court reviews the Special Master's determinations regarding attorney-client privilege *de novo* and reviews procedural matters for abuse of discretion.

### III.    FirstEnergy's Objections

FirstEnergy submitted numerous objections to the Special Master's orders. The Court addresses each in turn.

### A.  The Exclusion of the O'Neil Declaration

The company first argues that the Special Master erred in concluding that the O'Neil Declaration did not comply with 28 U.S.C. § 1746. In doing so, FirstEnergy asserts that the declaration met the Sixth Circuit's "substantial compliance" standard for 28 U.S.C. § 1746. (Doc.

607-1 at 29–34). Alternatively, FirstEnergy argues that even if the O'Neil Declaration did not comply with Section 1746, Federal Rule of Evidence 104(a) allows courts to consider affidavits "that bear indicia of reliability even if unsworn, defective, or otherwise inadmissible," and the Special Master erred in not doing so. (Doc. 607-1 at 34–35).

### 1. Requirements of 28 U.S.C. § 1746

Evidentiary issues, such as the decision to strike an unsworn declaration, are reviewed for abuse of discretion. *See Counts v. Kraton Polymers, U.S. LLC*, 260 F. App'x 825, 829 (6th Cir. 2008) (reviewing the district court's decision to strike undated, unsworn declarations under 28 U.S.C. § 1746 for abuse of discretion). Therefore, FirstEnergy's footnote arguing for *de novo* review is unpersuasive since the Sixth Circuit has said otherwise. (Doc. 607 at 29 n.6 (citing cases where courts review procedural matters *de novo*)); *Counts*, 260 F. App'x at 829 (reviewing the district court for abuse of discretion, even where the party argued that Sixth Circuit precedent did not require strict compliance with 28 U.S.C. § 1746). But nonetheless, under either standard, the outcome would be the same, and FirstEnergy's objection is not well-taken.

At issue is the language of 28 U.S.C. § 1746. While the statute allows a declaration's language "substantially" to follow a set form, the Special Master found that Section 1746 explicitly requires a declarant to state that the information contained in the declaration is "true." 28 U.S.C. § 1746. And the Special Master's reading of the statute has support from the Sixth Circuit. The Sixth Circuit held in *Bonds v. Cox* that a declaration under Section 1746 is permitted to be used as evidence "only if subscribed as true under penalty of perjury and dated." 20 F.3d 697, 702 (6th Cir. 1994) (internal quotations omitted) (emphasis omitted). The language of Section 1746, as well as the language in *Bonds*, makes clear that an unsworn declaration under 28 U.S.C. § 1746 has four requirements: unsworn declarations can be used as evidence "only if" they are "subscribed as true," sworn under

penalty of perjury, dated, and signed. *Bonds*, 20 F.3d at 702; *see also Counts,* 260 F. App'x at 829, n.1 (rejecting a party's argument that other courts have found Section 1746 not to require such a "rigid approach").

FirstEnergy says the Sixth Circuit held that Section 1746 "require[s] only substantial compliance" and that the O'Neil Declaration substantially fulfilled the requirements laid out in the statute. (Doc. 607-1 at 30, citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002)). But the authority FirstEnergy cites says no such thing. *See generally Peters,* 285 F.3d at 475–76 (stating nowhere that Section 1746 "require[s] only substantial compliance"). Nonetheless, *Peters* is unpersuasive here. In *Peters*, the plaintiff challenged an unsworn declaration because it was undated, not because it was not declared as true. 285 F.3d at 475. The Sixth Circuit narrowly held that undated declarations can be considered as long as "extrinsic evidence [can] demonstrate the period when the document was signed." *Id.* (internal quotation omitted). In no way did the Sixth Circuit modify the requirement that an unsworn declaration's contents must be subscribed as true. *Id.* And in *Peters*, the defendant remedied the deficiency by filing a second affidavit before the court made its decision, which FirstEnergy did not do. *Id.* at 476. Still more, the Sixth Circuit has expressly rejected FirstEnergy's argument that *Peters* overruled *Bonds* or changed what is required for an unsworn declaration under Section 1746. *Counts*, 260 F. App'x at 829.

Additionally, the "declared as true" requirement is key because, as the Special Master thoughtfully reasoned:

> [A] declarant can state falsehoods while recognizing he or she is under penalty of perjury because the declarant has not declared the statement to be true—but when the declarant declares a statement to be true while concurrently recognizing the consequence—by declaring him or herself to be under penalty of perjury—the recognition of the consequences of lying takes on real meaning as risk attaches.

(Doc. 571 at 12).

The Court agrees with the Special Master that unsworn declarations, under the language of the statute and Sixth Circuit precedent, must be "subscribed as true." *Bonds,* 20 F.3d at 702. Following this logic, the Special Master did not err in rejecting the O'Neil Declaration. The declaration lacked an essential element, and the Special Master properly followed the law and the local rules in disregarding it. *See* S.D. Ohio Civ. R. 7.2(e) (setting out the requirements of evidence used in support of any motion in this district). While FirstEnergy cites out-of-circuit cases where courts accepted declarations that omitted the "true and correct" language, these are simply examples of courts "exercising their discretion." *Counts,* 260 F. App'x at 829 n.1; *Liberty Ford Lincoln Mercury, Inc.*, 2023 WL 4991718 at *2 (finding that courts might reach different results without an abuse of discretion). As such, the Special Master did not abuse his discretion, and FirstEnergy's objection is **OVERRULED.**

### 2. Rule 104(a)

Notwithstanding FirstEnergy's failures under Section 1746, FirstEnergy argues that the Special Master should have considered the O'Neil Declaration under Federal Rule of Evidence 104(a). (Doc. 607-1 at 34). Notably, FirstEnergy never made this argument. (*See* Docs. 612). As such, FirstEnergy potentially has waived this argument. *See NOCO Co., Inc. v. Shenzhen Changxinyang Tech. Co., Ltd.*, No. 1:17-cv-2210, 2019 WL 1723358, at *6 (N.D. Ohio Apr. 18, 2019) (finding, when reviewing objections, that a party waived an argument because they never raised it with the special master); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 130 (D. N.J. 1998) (holding that a party waives its right to object when they fail to make arguments concerning Rule 104(a) before the trial court).

Still, FirstEnergy argues that courts often consider "affidavits under Rule 104(a) that bear indicia of reliability" even if they are deficient in other ways. (Doc. 607-1 at 34). But unlike the cases

FirstEnergy cites, the O'Neil Declaration does not bear indicia of reliability. For example, Mr. O'Neil is a defendant in this case, not a former coworker who is not a party to the action. *See Tarochione v. Roberts Pipeline, Inc.*, 62 F. Supp.3d 821, 823 (N.D. Ill. 2014). Nor is he a former attorney who unexpectedly failed to appear to testify. *United States v. Straker*, 596 F. Supp.2d 80, 84 (D.C. 2009). Further, as the Special Master noted, FirstEnergy failed to offer any other evidence besides "common sense" and references to ongoing litigation to corroborate Mr. O'Neil's statements. (*See* Doc. 571 at 15; Doc. 607-1 at 64–67); *cf. United States v. Johnson*, No. 2:12-cr-67, 2012 WL 7761544, at *19 (D. Nev. Dec. 26, 2012) (deciding not to exclude a declaration because the statements contained within it were corroborated by other evidence); *see United States v. Alahmedalabdaloklah*, No. 12-cr-1263, 2017 WL 3172875, at *2 (D. Ariz. July 26, 2017) ("Although Rule 104(a) of the Federal Rules of Evidence provides that a court is not bound by evidence rules in deciding certain preliminary questions . . . a declaration or affidavit is relevant only to the extent it is reliable[.]").

These facts suggest that the O'Neil Declaration may be unreliable, and as such, Rule 104(a) cannot be used to cure FirstEnergy's failure to provide a proper declaration. FirstEnergy's objection is **OVERRULED.**

### B. The Special Master's *Sua Sponte* Striking of the Declaration

FirstEnergy next argues that Movants waived any objection to the O'Neil Declaration, and the Special Master should not have *sua sponte* addressed the declaration's deficiency. FirstEnergy also contends that the Special Master's decision to strike the O'Neil Declaration *sua sponte*, without giving the company an opportunity to be heard, was an abuse of discretion.

Courts have the power to exclude evidence *sua sponte. Ondo v. City of Cleveland,* 795 F.3d 597, 604 (6th Cir. 2015) (citing *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 2034 (6th Cir. 2003)). This includes unsworn declarations and affidavits, and courts have done so

without offering parties a chance to be heard or to cure their mistakes. *See Enigwe v. Diversity City Media*, No. 2:07-cv-250, 2008 WL 11352583, at *2 (S.D. Ohio June 2, 2008) (*sua sponte* striking an unsworn declaration that did not comply with 28 U.S.C. § 1746); *Jennings v. Nat'l R.R. Passenger Corp.*, No. 97-c-6385, 1998 WL 460270, at *7 (N.D. Ill. July 30, 1998) (stating that because the affidavits were undated and did not say the subject matter was true and correct, "[t]he court would be justified in striking" them); *Mitchel v. Buncich,* No. 2:11-cv-91, 2013 WL 275592, at *4 (N.D. Ind. Jan. 24, 2013) (striking *sua sponte* an undated affidavit without a motion); *Tripati v. Corizon Inc.*, No. 18-cv-66, 2020 WL 673490, at *8 (D. Ariz. Feb. 11, 2020) (striking *sua sponte* a declaration without giving plaintiff an opportunity to fix the alleged deficiency).

And like a court, "[d]uring the performance of his duties, a master is functionally indistinguishable from a trial judge." *Accusoft Corp. v. Palo*, 237 F.3d 31, 58 (1st Cir. 2001). So, like a trial court, the Special Master had the authority to strike evidence *sua sponte*, and this Court reviews his decision for abuse of discretion. *See HDM Flugservice GmbH*, 332 F.3d at 1034 (holding that the decision to *sua sponte* exclude evidence is within a trial court's discretion).

Because the Court agrees that the O'Neil Declaration was deficient, the Court cannot say that the Special Master clearly erred in rejecting it. *Werner v. Young*, 22-5197, 2023 WL 639103, *9 (6th Cir. Jan. 27, 2023) (finding the district court did not abuse its discretion in *sua sponte* striking portions of an affidavit). And FirstEnergy should not have been caught off guard. Throughout their briefing, Movants raised challenged to the O'Neil Declaration. (Doc. 615 at 36, n.5 (summarizing Movants' challenges to the O'Neil Declaration, based on O'Neil's status as a defendant and conclusory statements within his declaration)). Accordingly, FirstEnergy had notice and opportunity to present evidence of the motivations behind the internal investigation. (*See* Docs. 510, 511, 550, 587, 612 (briefing on the motion to compel and oral argument by FirstEnergy)). FirstEnergy chose not to

bolster the record. Therefore, this objection is **OVERRULED.**

### C. Denial of FirstEnergy's Request to Amend the O'Neil Declaration

FirstEnergy also objects to the Special Master's denial of its request to amend the O'Neil Declaration and the standard he used in doing so. (Doc. 607 at 37). The Court reviews the Special Master's decision for an abuse of discretion. *See Moore v. United States Dep't of Agric.*, No. 17-5363, 2018 WL 1612299, at *3 (6th Cir. Jan. 31, 2018) (reviewing a court's decision to not allow an amended affidavit after summary judgment was granted for an abuse of discretion).

At the outset, the Court notes that FirstEnergy never filed a motion to amend the O'Neil Declaration. On November 30, 2023, the Special Master held an emergency status conference at the parties' request after granting the motion to compel. (*See* Doc. 587 (transcript of the November 30, 2023, status conference)). During that status conference, FirstEnergy relied upon *Ross v. City of Dublin* to argue that it should have an opportunity to amend the Declaration. (*Id.* at 9, 12–13). No. 2:14-cv-2724, 2016 WL 7117389 (S.D. Ohio Dec. 7, 2016).

The Special Master responded:

\*\*\* In *Ross*, as FirstEnergy pointed out, Chief Judge Marbley allowed the offending party to file an amended or supplemental replacement declaration to correct what was deemed a technical deficiency.

. . . . No party has suggested to me that *Ross* stands for and my re-reading of *Ross* a moment ago does not indicate any basis that a party is entitled to amend. There's a difference between a permissive you can file an amendment with this Court versus you're entitled to file an amendment with leave of Court. This is a procedural question subject to [abuse] of discretion. . . . In other words, I view FirstEnergy as not having a right to correct its error in this regard.

It's a substantive error. There is no procedural entitlement, however, to correct that. . . . I don't have a motion in front of me to file an amended declaration. In *Ross*, there was a pending motion that was filed that was concurrently pending before the Court before the related summary judgment was decided. So in other words, you had a declaration that was supporting a motion that had not been decided and there was a motion to amend the declaration.

That's not the scenario we had here. Here, there was a declaration filed to support the motion to compel briefing. There was a decision reached in that and only then did FirstEnergy come forward and say, "We would like to correct the deficiency."

> So I think *Ross* is distinguishable. *Ross* doesn't create an entitlement here. The local rules call for a motion when you want the Court to act and therefore, when you want to delegate an authority of the Special Master to be imposed, you have to file a motion. There is no motion here.

(Doc. 587 at 27–28).

Nonetheless, even though FirstEnergy never filed a motion to amend the O'Neil Declaration, the Special Master construed FirstEnergy's arguments as an oral motion, which he then denied for a lack of "good cause" shown.  (*Id.* at 28–29).

As Movants note, neither side has cited a case setting forth the legal standard for amending declarations after the motions to which they are attached have been decided.  (Doc. 615 at 33). FirstEnergy argues that the standard is whether the amendment would have prejudiced Movants and whether the amendment would serve the interests of justice.  (Doc. 607-1 at 37, citing *Fox v. Brown Mem'l Home, Inc.*, No. 2:09-cv-915, 2010 WL 4983153, at * 2 (S.D. Ohio Dec. 2, 2010)).  For their part, Movants argue that the Special Master used the proper standard of "good cause," as is used for motions for leave.  (Doc. 615 at 33).

The Court agrees with Movants that the good cause standard applied by the Special Master is appropriate here.[1]  In the past, this Court used a good cause standard in finding that parties should seek leave to file additional evidence in support of motions for protective orders.  *See Stillwagon v. City of Delaware*, No. 2:14-cv-807, 2016 WL 6248956, at *3 (S.D. Ohio Oct. 26, 2016) (denying a

---

[1] This Court notes that perhaps FirstEnergy's burden to amend the O'Neil Declaration should be even higher.  Here, FirstEnergy sought to amend its deficient declaration only after losing a motion to compel.  This situation is analogous to that in which a plaintiff seeks to amend a complaint after losing a motion to dismiss under Rule 12(b)(6) or where a party seeks relief from an adverse decision under Rule 60 or Rule 59.  *See, e.g.*, *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615–16 (6th Cir. 2010) ("When a party seeks to amend a complaint after an adverse judgment, it thus must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60."); *Grant v. Target Corp.*, No. 2:10-cv-823, 2013 WL 5366201 (S.D. Ohio Sept. 24, 2013) (finding a court may only grant a Rule 59(e) motion if there was a "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice" and refusing to do so where a plaintiff failed to timely provide enough evidence to the court to support his motions to compel and motions for summary judgment).  But because FirstEnergy did not satisfy even a "good cause" standard, the Court leaves this determination for another day.

defendant's request to "come forward with more evidence" supporting his inability to be deposed and noting that he never sought leave to do so). In *Stillwagon*, the plaintiff sought to depose a defendant, who filed a motion for a protective order and argued that his medical condition prevented him from being deposed. *Id.* at *2. In support of his motion, the defendant offered only a letter, which did not conform to the requirements of an affidavit or a declaration under Section 1746. *Id.* at *3. Before the Court's decision, the defendant suggested that the Court should allow him to collect additional evidence to support his arguments, which the Court rejected. *Id.* The Court reasoned that the defendant should have filed his evidence sooner and faulted him for not seeking leave. *Id.*

It is clear that precedent and the local rules instruct a party to seek leave when wanting to file belated evidence in support of a motion. *See also Price v. United States*, No. 2:18-cv-949, 2019 WL 13161447, at *2 (S.D. Ohio Aug. 14, 2019) ("[I]f Plaintiff wishes to offer additional evidence in relation to USA's Motion to Dismiss, he would first require leave of Court because briefing on that motion has already closed[.]");S.D. Ohio Civ. R. 7.2(a)(2) (stating that "[n]o additional memoranda beyond those enumerated" can be filed without leave of court for "good cause shown"); S.D. Ohio Civ. R. 7.2(d) (stating that evidence necessary to support a motion must be attached to the primary memorandum of the party relying on that evidence); S.D. Ohio Civ. R. 7.2(e) ("Unless already of record, such evidence shall be attached to the memorandum. . . . All evidence shall be submitted within the time limit set forth [in the local rules].").

In his decision, the Special Master stated that FirstEnergy showed "no good cause. . . other than it was simply not done correctly and no one brought it to [the Special Master's attention] until after an adverse decision was filed." (Doc. 587 at 28). This Court agrees with the Special Master and finds that even if the O'Neil Declaration's deficiency was simply a mistake, the Special Master did not abuse his discretion in denying an amendment after his decision was made. *See Moore*, 2018 WL

1612299, at *3 (finding no abuse of discretion where the district court denied plaintiff's motion to submit an amended affidavit after a magistrate judge granted summary judgment, even though plaintiff "relied primarily" on the affidavit in his briefing).

As the Special Master reasoned, FirstEnergy's attorneys were elsewhere capable of crafting a compliant declaration under Section 1746, and the statute's requirements are not "onerous nor complicated." (Doc. 571 at 13). While FirstEnergy leans on this Court's decision in *Ross* to allow such an amendment, *Ross* is simply an example of the Court using its discretion and does not require a FirstEnergy win here. 2016 WL 7117389, at *8. Finally, FirstEnergy cites no cases in which a reviewing court found an abuse of discretion where an amended declaration was denied after the underlying motion was decided.

Therefore, the Special Master did not abuse his discretion, and FirstEnergy's objection is **OVERRULED.**

### D. The Special Master's Analysis of the Record, Privilege, and Work-Product Doctrine

FirstEnergy's next three objections deal with the Special Master's evaluation of evidence and, consequently, his decisions concerning attorney-client privilege and work product doctrine. At the outset, the Court must note the somewhat unusual way that the parties have litigated these issues. The parties agreed to forgo privilege logs for "communications, documents, or work product" exchanged between FirstEnergy and its outside counsel "concerning the litigations set out in Exhibit A that are dated after July 21, 2020 [the date of Larry Householder's arrest]."[2] (Doc. 295 at 2–3, 10; *see also* Doc. 510 at 20 n.5 (discussing the parties' agreement)). Moreover, during the pendency of this

---

[2] FirstEnergy included in its response to the motion to compel a "privilege log prepared by PricewaterhouseCoopers, dated May 1, 2023." (Doc. 511 at 23). But the parties never cite or rely upon this two-page privilege log. The parties also do not explain the relevance of any of the logged documents to the internal investigation or to the motion to compel. And FirstEnergy also notes in its briefing that the parties agreed "that privileged communications and work product concerning H.B. 6-related matters 'dated after July 21, 2020' did not need to be logged." (Doc. 607-1 at 20, n.5). As such, the Court is unable to determine the relevancy of FirstEnergy's Exhibit Four and whether this log encompasses the materials sought by Movants.

Motion, neither party requested *in camera* review of any investigation materials.  (*See* Doc. 571 at

16).  And finally, as the Special Master explained, the parties often bundled the two investigations

into one, seemingly taking an all-or-nothing approach.  (Doc. 571 at 16).  As such, in determining

whether materials are privileged or protected by work-product doctrine, the Court necessarily relies

on the record as presented by the parties.

### 1.  Other Evidence in the Record

FirstEnergy argues that the Special Master ignored "overwhelming evidence" besides the

O'Neil Declaration and erred in deciding FirstEnergy did not meet its burden for establishing

attorney-client privilege and work product protection.  (Doc. 607-1 at 40).

Again, FirstEnergy has the burden here.  *See Cooey v. Strickland,* 269 F.R.D. 643, 647–48

(S.D. Ohio 2010).  To meet the burden, FirstEnergy must assert the privilege or work-product

protection "with particularity for each document, or category of documents" it seeks to withhold.  *In

re Haynes*, 577 B.R. 711, 740 (E.D. Tenn. 2017) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*,

250 F.R.D. 251, 266–67 (D. Md. 2008)); *see also* Fed. R. Civ. P. 26(b)(5) (stating that when a party

withholds materials as privileged, they must describe the materials being withheld so "other parties

can assess the claim").  FirstEnergy must then provide evidence "by way of affidavits, depositions,

or equivalent proof" that the materials are privileged or protected.  *In re Behr Dayton Thermal

Products, LLC*, 298 F.R.D. 369, 72 (S.D. Ohio 2013) (citing *Biegas v. Quickway Carriers, Inc.*, 573

F.3d 365, 381–82 (6th Cir. 2009)); *see Erickson v. Hocking Tech. Coll.*, No. 2:17-cv-360, 2018 WL

9414018, at *3 (S.D. Ohio Mar. 27, 2018) ("Simply asserting that information is privileged is

insufficient to meet the burden." (internal quotation omitted)).

In a footnote, FirstEnergy suggests that the Court should simply accept the Amended O'Neil

Declaration into evidence under Federal Rule of Civil Procedure 53(f)(1).  (*Id.* at 40 n.17).  The Court

has discretion under this rule to receive evidence "[i]n acting on a master's order." Fed. R. Civ. P. 53(f)(1). But the Court declines to do so here. *See In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-c-5944, 2016 WL 945981, at *2 (N.D. Cal Mar. 14, 2016) ("Although the Court may have the power to consider for the first time evidence never considered by the Special Master, it is a power that should be exercised rarely and cautiously."). To accept the amended O'Neil Declaration now would "defeat [the] purpose" of appointing a Special Master and deprive the Court of his expertise. *Id.* Plus, accepting evidence and documents not considered by the Special Master would prolong and expand litigation, rather than resolve issues expeditiously. *See id.* at *2 (citing *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1131 (Fed. Cir. 2011)); (*See* Doc. 541 at 2 ("[T]he Court finds that appointment of a Special Master will assist the Court in both effectively and expeditiously facilitating the exchange of information and discovery between the parties, including resolving any discovery disputes and preparing this case for dispositive motions and trial.").

Turning to the heart of the objection, FirstEnergy contends that other evidence in the record supports the notion that the materials sought by Movants are protected by attorney-client privilege and work-product doctrine. (Doc. 607-1 at 40–42). But in its objections, FirstEnergy still offers scant evidence to support its arguments. (Doc. 607-1 at 41–42). In its briefs, FirstEnergy highlights documents stating that the company was conducting internal investigations related to "ongoing government investigations," that the Department of Justice was interested in the outcome of those investigations, and that FirstEnergy faced many potential lawsuits. (*Id.* at 42; *see also id.* at 64–67). But little of this evidence was highlighted in FirstEnergy's response to the motion to compel. (*See* Doc. 510; Doc. 607-1 at 66–67); *Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2008 WL 4793355, at *2 (E.D. Mich. Nov. 3, 2008) (stating that a court is not required to search the entire record to find evidence to support a party's claims). And FirstEnergy provides no support for its

assertion that the Special Master did not consider all the evidence in the record, other than its belief that he decided the matter incorrectly. *See Laethem Equip. Co.*, 2008 WL 4793355, at *2 (overruling an objection that a magistrate judge failed to consider all the evidence where the objection was seemingly "premised on the defendant's belief that the magistrate judge would have reached a different conclusion had he reviewed" certain evidence cited by the defendant).

But even if FirstEnergy had more emphatically highlighted the other evidence mentioned in its objections, and even if the Special Master had more clearly cited it, the outcome would have been the same, because none of it directly addresses the crux of the issue: FirstEnergy's intentions behind the internal investigations. As the Special Master stated, FirstEnergy had the burden of establishing that the materials sought were protected by attorney-client privilege and work-product doctrine. (Doc. 571 at 14–15). Without the O'Neil Declaration, FirstEnergy provides no persuasive evidence that speaks to the investigation's purposes, such as whether withheld documents contained legal advice or were created in anticipation of litigation.

As such, FirstEnergy's objection is **OVERRULED**, and the Court turns now to the Special Master's analysis of attorney-client privilege and work-product doctrine.

### 2. Attorney-Client Privilege

FirstEnergy objects to the standard used by the Special Master in analyzing whether the investigations were protected by attorney-client privilege. (Doc. 607-1 at 42–43).

The Court reviews *de novo* the Special Master's decision on whether attorney-client privilege exists. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293–94 (6th Cir. 2002). "Where a client seeks legal advice from a professional legal advisor, the communications relating to that purpose made in confidence are protected by the attorney-client privilege." *In re OM Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) (citing *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th

Cir. 1998)). Claims of attorney-client privilege are "narrowly construed," since the privilege "reduces the amount of information discoverable during the course of a lawsuit." *In re Columbia*, 293 F.3d at 294 (internal quotation omitted). Accordingly, attorney-client privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)). Said differently, only disclosures "necessary to obtain informed legal advice" and which "might not have been made absent the privilege" are protected. *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Notably, the burden of establishing attorney-client privilege rests on the party asserting it. *In re Grand Jury Investigation*, 723 F.2d at 450. And the privilege is not unlimited. For example, an attorney's mere participation in business meetings does not establish the privilege. *Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-cv-613, 2014 WL 12651191, at *3 (S.D. Ohio June 19, 2014) (collecting cases). Still, the "fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Zigler v. Allstate Ins. Co.*, No. 1:06-cv-2112, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) (internal quotation omitted). The relevant test is "whether the predominant purpose of the communication is to render or solicit legal advice." *Cooey*, 269 F.R.D. at 650.

In deciding the internal investigation was not privileged, the Special Master concluded that the internal investigation "was at least prepared in the ordinary course of business pursuant to SEC public requirements unrelated to litigation and for non-litigation human resources/public relations purposes." (Doc. 571 at 15). FirstEnergy asserts that this "ordinary course of business" purpose "bears on work-product, *not* attorney-client privilege." (Doc. 607-1 at 43) (emphasis in original). But FirstEnergy's argument is misguided. In deciding whether the privilege applied, the Special Master was required to ascertain if the "predominant purpose" of the internal investigation was to conduct

business or to solicit or render legal advice. *Cooey*, 269 F.R.D. at 650.

FirstEnergy responds that having a business purpose does not "undercut" a claim of privilege, since legal advice is necessarily given in business organizations and during internal investigations. (Doc. 607-1 at 43–44). That is true. *See Alomari*, 2014 WL 12651191, at *3. But FirstEnergy again misses the ultimate issue. Whether the internal investigation's purpose was primarily business or human resources-related is crucial in determining whether the privilege exists, because the investigation's predominant purpose must be legal for the privilege to apply. And ultimately, the burden of proving that legal purpose rests on FirstEnergy.

As the Court discussed above, FirstEnergy failed to provide sufficient evidence to meet its burden. FirstEnergy provided no direct evidence of the motivations behind the internal investigation other than the deficient O'Neil Declaration, which the Special Master properly rejected. FirstEnergy's general references to lawsuits it faced and its cooperation with the government are not persuasive enough to show that communications within the internal investigation are privileged. That is because parties invoking the privilege have an "obligation to identify with particularity the privileged documents" and why these documents are privileged. *In re Rospatch Sec. Litig.*, Nos. 1:90-cv-805, 806, 807, 1:91-cv-085, 1991 WL 574963, at *8 (W.D. Mich. Mar. 14, 1991). Communications are not privileged "simply because [they are] made by or to a person who happens to be an attorney. . . The attorney receiving or providing privileged communication[s] must be acting as an attorney and not as a business advisor." *Id.* (internal citations omitted). Consequently, pointing to impending lawsuits does not establish that individual communications and documents are privileged because, within those materials, attorneys could be acting as business or human resources advisors and not as legal advisors. Indeed, FirstEnergy acknowledges that they used the internal investigations for many purposes, including business and employment decisions. (Doc. 510 at 20, 25–26). Yet FirstEnergy

does not clarify what materials, if any, contain only confidential communications for the predominant purpose of rendering legal advice, and which materials were primarily made for other reasons.

Instead, FirstEnergy broadly asserts, without providing details, that because the company faced several lawsuits and eventually cooperated with the government, all the investigations' materials must be privileged. (Doc. 510 at 24 (relying on the O'Neil Declaration, "common sense," and the existence of "legal risk" to show that the investigations must be privileged); Doc. 607-1 at 42 (providing other evidence besides the O'Neil Declaration to establish privilege, which included "pending and threatened legal proceedings," but no information on the company's motivations individual communications)). Again, FirstEnergy fails to provide any descriptions of "specific document[s] being withheld or redacted" or "detail sufficient. . . to assess a claim of privilege." *Casale v. Nationwide Child.'s Hosp.*, 2:11-cv-1124, 2013 WL 12203243, at *3 (S.D. Ohio Sept. 13, 2013). Said simply, FirstEnergy did not provide specifics on "when, where, how, to whom, and in what manner" legal advice was communicated during the internal investigations and therefore failed to meet its burden. *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 104 (S.D. N.Y. 2007)*; see also In re Rospatch Sec. Litig.*, 1991 WL 574963, at *5 ("It is the burden of the asserter of the privilege to establish that each document in question involves a communication made in confidence."); *Cooey*, 269 F.R.D. at 649 ("[M]erely conclusory statements may not be enough" to establish whether the privilege applies.).

FirstEnergy also agreed not to keep more extensive privilege logs, which could have helped the Special Master determine the nature of communications created during the internal investigation. (*See* Doc. 295); *see also In re Columbia*, 293 F.3d at 307 (discussing that strategic decisions, like disclosing communications to the government, may have consequences, like a waiver of privilege). Without a log or the opportunity for *in camera* review, the Special Master could not independently

20

determine whether materials were made with a predominant purpose of soliciting or rendering legal advice. *Raab v. New England Fin.*, No. 2:10-cv-186, 2011 WL 12614881, at *2 (S.D. Ohio Apr. 8, 2011) (finding that parties asserting the privilege must "provide[] sufficient information to establish the factual predicates for the assertion of the privilege or protection") (citing Fed. R. Civ. P. 26(b)(5)); *cf. Zigler*, 2007 WL 1087606, at *2–4 (finding, after *in camera* review, that the requested documents were "properly shielded" by the privilege). The Special Master rightly considered only the record and arguments before him. FirstEnergy failed to meet its burden of proving that the predominant purpose of the internal investigation was legal. Accordingly, this objection is **OVERRULED.**

### 3. Work-Product Doctrine

Turning to work-product doctrine, FirstEnergy similarly argues that the Special Master applied the wrong standard. (Doc. 607-1 at 44). According to FirstEnergy, the Special Master erred in using a "primary or sole purpose" test rejected by the Sixth Circuit in *United States v. Roxworthy*, 457 F.3d 590, 598–99 (6th Cir. 2006). (*Id.* at 46). The Court reviews the Special Master's decisions on work-product doctrine for abuse of discretion because the Sixth Circuit instructs that, unlike attorney-client privilege, such matters fall within the scope of discovery. *Roxworthy,* 457 F.3d at 592, n.1.

Work-product doctrine protects documents prepared "in anticipation of litigation." *Id.* at 594. To show that a document was prepared in anticipation of litigation, a party must establish that: (1) the document was prepared because of a party's subjective anticipation of litigation, "as contrasted with ordinary business purpose[s]"; and (2) the party's subjective anticipation was objectively reasonable. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). Documents produced "to assist with a business decision" do not lose work-product protection "unless the documents would have been created in essentially similar form irrespective of the litigation." *Id.* at 598–99. Said differently, while

a document can be used both in the ordinary course of business and in anticipation of litigation without losing work-product protection, a court's inquiry "centers on whether documents were prepared or obtained because of the prospect of litigation." *McNeil v. Mount Carmel Health Sys.*, No. 2:20-cv-258, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021) (citing *Cooey*, 269 F.R.D. at 647). Again, FirstEnergy, as the party asserting work-product protection, bears the burden of proving that each document withheld was created because of litigation. *Id.* (internal quotation omitted).

Contrary to FirstEnergy's arguments, the Special Master applied the correct standard. (Doc. 571 at 6). Under Sixth Circuit precedent, the Special Master was tasked with determining if the materials sought were made "because of" litigation or if they "would have been prepared in substantially the same manner" regardless of litigation. (Doc. 571 at 6–7) (citing cases). And without the O'Neil Declaration, the Special Master found that FirstEnergy had not shown the internal investigation was conducted because of litigation, and not because of employment decisions and business concerns. (*Id.* at 14 ("Thus, Plaintiffs' assessment of the investigation rings true: FirstEnergy has failed to carry its burden to demonstrate it would not have commissioned substantially similar investigations to determine which employees were involved in a massive criminal corruption scheme but for the possibility of litigation." (internal quotation omitted))). Upon review, this Court cannot say the Special Master abused his discretion in finding so.

In its objections, FirstEnergy offers various lawsuits against the company as proof that the materials sought were produced for litigation purposes. (Doc. 607-1 at 45). But FirstEnergy's general references fail to satisfy its burden. Movants claimed that FirstEnergy conducted the internal investigation to satisfy its auditor, PricewaterhouseCoopers, so the company could file its necessary Form 10-Q; to evaluate which executives should be terminated; and to avoid a "declaration of default" by lenders "by striking a deal with the government." (Doc. 607-1 at 56, citing Doc. 529 at 7, 10–12).

And while FirstEnergy argues that these interests overlap with concerns over litigation, the company provided no direct evidence that materials created during the internal investigation were created because of litigation, and not for these other reasons. *In re Pros. Direct Ins.Co.*, 578 F.3d at 439 (finding that a party's general arguments that documents were both for business purposes and for litigation purposes were not enough to satisfy their burden); *see also Allied Irish Banks*, 240 F.R.D. at 107 (finding no work-product protection where a party failed to provide evidence of what it would have done without the threat of litigation).

FirstEnergy again relies on the rejected O'Neil Declaration as evidence "that the investigations would not have been undertaken absent then-pending and anticipated legal proceedings against the Company." (Doc. 607-1 at 48). But putting aside the O'Neil Declaration's deficiency, this too is a conclusory statement that does not help FirstEnergy meet its burden. "Affidavits supporting work-product protection must be specific and detailed to indicate that the documents were prepared in anticipation of litigation . . . . [a]nd application of work-product protection will be rejected where the only basis for the claim is an affidavit containing conclusory statements." *McNeil*, 2021 WL 5235103, at *4 (internal citations and quotations omitted); *see also Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381–82 (6th Cir. 2009) ("Quickway did not come forward with any affidavits or similar proof demonstrating that Dailey's statement was prepared in anticipation of litigation, much less the kind of specific and detailed evidentiary material that would be sufficient to meet this burden." (internal quotation omitted)). FirstEnergy did not provide specific, non-conclusory evidence to establish that litigation was the "driving force behind the preparation" of the disputed materials. *Roxworthy*, 457 F.3d at 595. And again, FirstEnergy did not submit documents to the Special Master for *in camera* review, so the Special Master could not independently determine their purposes.

As such, FirstEnergy has not established that the materials created during the internal

investigation are entitled to work-product protection, and its objection is **OVERRULED.**

### E. Order to Disclose

Next, FirstEnergy argues that the Special Master erred in ordering deposition witnesses to answer "all fact-related questions (past and future) related to the internal investigation." (Doc. 607-1 at 52). Because the Special Master's order is "within the scope of discovery," the Court reviews it for abuse of discretion. *See Ciccio*, 2022 WL 2182301, at *1; *see also Humble v. Mountain State Const. Co.*, 441 F.2d 816, 818–19 (6th Cir. 1971) (reviewing the court's "failure to order the plaintiff" to answer written and oral questions for abuse of discretion).

In his November 29 order, the Special Master instructed witnesses to "answer all fact-related questions," even if they learned of those facts due to the internal investigation. (Doc. 571 at 17). During the November 30 status conference, the Special Master clarified this order:

> [D]iscovery of the facts is permissible. Discovery of the attorneys at this point is not. Discovery of the attorneys' legal conclusions derived from those facts or thought processes to produce those facts is not discoverable. But the fact that a witness learned of a factual allegation or representation or statement of fact from an investigator or as a result of the investigation is fair game for discovery under my order.

(Doc. 587 at 23–24).

"Neither the attorney-client privilege nor the work product doctrine applies to prevent the disclosure of underlying facts, regardless of who obtained those facts." *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). Consequently, facts communicated from a lawyer to a witness are not protected. *See Smith v. Gen. Mills, Inc.*, No. 2:04-cv-705, 2006 WL 7276959, at *4 (S.D. Ohio Apr. 13, 2006) (finding a witness must disclose facts, even though the facts were conveyed to her by attorneys). Work-product and privilege concerns arise only if the inquiring party asks questions about attorneys' mental impressions of facts, attorneys' advice, or attorneys' "view as to

the significance or lack thereof of particular facts." *Smith*, 2006 WL 7276959, at *4.

Seemingly, FirstEnergy argues that all facts about the internal investigation are privileged or protected because, at some point, these facts were communicated by lawyers to various individuals. Time and again, courts have rejected this type of argument. While communications between attorneys and clients are privileged, facts are not. *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (citing *Upjohn Co.*, 449 U.S. at 395). And facts do not become privileged or protected because they were provided to witnesses by attorneys or acquired in anticipation of litigation. *See, e.g.*, *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989) ("There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel."); *United States v. BAE Sys. Tactical Vehicle Sys., LP*, No. 15-12225, 2017 WL 1457493, at *5–6 (E.D. Mich. Apr. 25, 2017); *Basulto v. Netflix, Inc.*, No. 22-21796, 2023 WL 3197655, at *2–3 (S.D. Fl. May 2, 2023) ("[F]act-oriented discovery is permitted even if the witness learned about the facts from her attorneys."); *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09-cv-169, 2011 WL 13334451, at *6 (N.D. Ohio Sept. 15, 2011). So too here. Facts related to the internal investigation are not shielded simply because they were funneled through attorneys to witnesses.

To the extent FirstEnergy asserts that the Special Master's order allows privileged information to be disclosed, FirstEnergy misreads the order. The Special Master clearly stated that privileged or protected information is not discoverable. For example, the Special Master said that while facts are discoverable, "[d]iscovery of the attorneys. . . is not." (Doc. 587 at 23). The Special Master further clarified that "[d]iscovery of the attorneys' legal conclusions derived from those facts or thought processes to produce those facts is not discoverable." (*Id.* at 23–24). Thus, FirstEnergy's objection is **OVERRULED**.

### F.  Waiver of Privilege and Work-Product Protections

Finally, FirstEnergy objects to the Special Master's characterization that the parties took an "all or nothing approach" to the internal investigation.  (Doc. 607-1 at 59–61).  In his order, the Special Master observed that the parties "repeatedly bundled" the Squire and Jones Day investigations into one, multi-phase effort, seemingly taking the stance that "everything is discoverable or nothing is." (Doc. 571 at 16).  FirstEnergy contends that this Court should reject that approach and instead "order additional logging of privileged documents or sampling of documents for *in camera* review" to determine what materials are privileged or protected.  (Doc. 607-1 at 60–61).

FirstEnergy's request is too little, too late.  It is not this Court's role belatedly to help FirstEnergy cure the consequences of its strategic decisions.  FirstEnergy claims they objected to Movants' "general" request for the internal investigation's materials, but FirstEnergy only did so in a footnote.  (*See* Doc. 510 at 20, n.5); *see, e.g.*, *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) ("An argument contained only in a footnote does not preserve an issue for our review.").  FirstEnergy also made the decision not to maintain privilege logs for materials "concerning H.B. 6" "dated after July 21, 2020."  (Doc. 510 at 20, n.5).  Consequently, that choice resulted in the Special Master lacking detailed logs to distinguish between the Squire and Jones Day portions of the investigation.  The company also never requested *in camera* review of any materials. (Doc. 607-1 at 61; Doc. 571 at 16).  Because of FirstEnergy's decisions, the Special Master had to rely on the parties' arguments and representations of what the withheld materials contained and why they were created.  (*See* Doc. 571 at 16 (recognizing this unusual approach by the parties)).

And as the Special Master said, throughout the extensive briefing on the motion to compel, the parties seemingly bundled the Squire and Jones Day investigations into one.  For example, in its response to the motion to compel, FirstEnergy discussed the investigations together, without making

26

significant arguments that each phase was privileged or protected.  (*See, e.g.*, Doc. 510 at 18, n.4 ("The internal investigations undertaken by Squire on behalf of the SIC and IRC, and the internal investigation undertaken by Jones Day, are referred to collectively herein as the 'Investigations.'"); *Id.* at 24–26 (discussing the investigations and their purposes together); *Id.* at 35–39 (same)).  While FirstEnergy made a belated attempt to separate the two investigations during oral argument, the company failed to provide evidence other than the O'Neil Declaration to support its position.  (Doc. 612 at 25, 37, 46; Doc. 571 at 16–17); *see also United States v. Huntington Nat. Bank*, 574 F.3d 329, 332–33 (6th Cir. 2009) ("To raise an argument, a litigant must provide some minimal argumentation in favor of it.").

Even though the parties conflated the investigations, the Special Master also analyzed the investigations separately before granting the motion to compel.  (Doc. 571 at 16–17).  Either way, the Special Master found that FirstEnergy failed to meet its burden to establish privilege or work-product protection.  (*Id.* at 16–17).  The Court finds no error in this approach or conclusion.

As previously discussed, without the O'Neil Declaration, FirstEnergy presented no persuasive evidence of the motivations behind each investigation.  Even though FirstEnergy objects to the Special Master's "all or nothing" characterization, he still analyzed each investigation individually and concluded that FirstEnergy failed to present sufficient evidence that either investigation was protected.  (Doc. 571 at 16–17).  Accordingly, the Special Master did not err, and this objection is **OVERRULED.**

As a final note, the parties extensively briefed additional issues regarding waiver of privilege and work-product doctrine.  (Doc. 607-1 at 54–61; Doc. 614 at 10–17; Doc. 615 at 43–56).  But the Special Master did not reach these questions.  (Doc. 571 at 16).  The Court agrees that the Special Master did not need to address them, having correctly found that attorney-client privilege and work-

product doctrine do not protect the sought materials. (*Id.*). Likewise, the Court finds it unnecessary to decide those questions now. Therefore, any objections made by FirstEnergy concerning waiver are **OVERRULED.**

## IV.    Other Motions

In the aftermath of the Special Master's granting of the Motion to Compel, (Doc. 489), FirstEnergy filed a flurry of motions, including a Motion to Stay the Special Master's November 29, 2023, Order (Docs. 573, 574); a Motion for Reconsideration of the Special Master's November 29 and November 30 Orders (Doc. 592); and a Motion for Leave to File a Reply to FirstEnergy's Objections (Doc. 622). The Special Master denied or recommended denying the Motions. (*See* Docs. 634 (recommending denying FirstEnergy's motion for a stay), 636 (denying FirstEnergy's motion for reconsideration), 635 (denying FirstEnergy's motion for leave to file a reply)). Defendants objected to all of the rulings. (Doc. 643 (certain individual Defendants' objections to the Special Master's Order denying a stay); Doc. 644 (FirstEnergy's objections to the Special Master's denial of the motion to stay); Doc. 645 (FirstEnergy's objections to the Special Master's denial of its motion for reconsideration); Doc. 640 (FirstEnergy's objections to the denial of leave to file a reply)). These matters are largely moot under this Order. Nonetheless, the Court briefly addresses each below.

### A.  Order Denying FirstEnergy's Motion to Stay

After the Special Master granted the Motion to Compel, FirstEnergy moved to stay that decision "pending resolution of its objections." (Doc. 574 at 9). Because this Order has overruled those objections, FirstEnergy's Motion to Stay is now **MOOT.**

Yet Defendants[3] raise additional concerns about the Special Master's comments on

---

[3] Individual defendants Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Jason J. Lisowski, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, George M. Smart, Steven E. Strah, K. Jon Taylor, Jerry Sue Thornton, Leslie M. Turner, and James F.

depositions in this case.  (*See* Doc. 643 at 2–3; Doc. 644 at 13–14).  Specifically, Defendants take issue with the Special Master's statement that Plaintiffs may reserve time for depositions and resume them after the objections concerning the internal investigation materials are resolved.  (*See id.*; *see also* Doc. 587 at 31–32 (granting Plaintiff's request to reserve time)).  Defendants say this procedure burdens witnesses and effectively modifies the deposition protocol for this case.  (Doc. 643 at 2–3; Doc. 644 at 13–14).  The record is not clear on whether depositions have occurred since the Special Master's Order granting the Motion to Compel.  If no depositions have taken place, this issue is now moot because this Order overrules FirstEnergy's objections regarding the internal investigation materials.

Regardless, Defendants' arguments are not persuasive.  The Special Master's statement did not modify the deposition protocol in this case.  The deposition protocol allows for "up to eighteen hours for each fact deposition, divided evenly between Plaintiffs and Defendants."  (Doc. 355 at 1–2).  The protocol also states that witnesses may be deposed only once "[a]bsent agreement of the Parties or order of the Court."  (*Id.* at 2).  At the time of this deposition protocol, no special master had been appointed.  Now, under his Appointment Order, the Special Master is charged with "address[ing] pretrial matters," including establishing discovery schedules, resolving discovery disputes, overseeing docket management, and generally supervising formal discovery.  (*See* Doc. 541 at 3–4).  Managing depositions is soundly within his duties.  (*See id.* at 541 (stating the Special Master has the authority from the Court to carry out these duties)); *see also Accusoft Corp.*, 237 F.3d at 58 ("During the performance of his duties, a master is functionally indistinguishable from a trial judge.").  Thus, the Special Master has the authority to manage depositions.  Defendant's objections on this

---

Pearson joined in FirstEnergy's objections to the Special Master's Order on the Motion to Stay.  (*See* Docs. 643, 644). As such, this Court refers to this collective as "Defendants" for the purposes of this section regarding the Motion to Stay.

point—to the extent that they are not moot—are **OVERRULED**.

### B.  Order Denying FirstEnergy's Motion for Reconsideration

Next, this Court has reviewed FirstEnergy's objections to the Special Master's Order denying its Motion for Reconsideration (Doc. 645).  In its objections, FirstEnergy relies on its previous and extensive briefing.  (Doc. 645 at 2 (citing previous filings)).  This Order **MOOTS** the Motion for Reconsideration, and FirstEnergy's objections (Doc. 645) are **OVERRULED**.

### C.  Order Denying FirstEnergy's Reply

Finally, FirstEnergy objects to the Special Master's Order denying its motion for leave to file a reply brief to its objections.  (Doc. 640).  Because of this Order, this issue is **MOOT**.  But again, FirstEnergy challenges the Special Master's authority.

As stated above, the Special Master is tasked with overseeing management of the docket in this action, as well as directing and supervising implementation of and compliance with this Court's orders.  (Doc. 541 at 4).  This Court previously ordered that the parties "will not have the opportunity to file a reply to the response [to objections] unless otherwise ordered by the Court."  (Doc. 576 at 2).  Said differently, this Order means that no reply briefs shall be filed for objections, unless the Court orders otherwise.  Here, the Court did not order a reply brief to FirstEnergy's objections concerning the Motion to Compel.  Rather, FirstEnergy sought leave to file such a reply.  The Special Master, carrying out his duty to manage the docket and comply with this Court's orders, properly denied FirstEnergy's motion.  Any objection to the Special Master's Order denying a reply is therefore **OVERRULED**.

### V.    Conclusion

For the foregoing reasons, FirstEnergy's objections (Doc. 607) to the Special Master's Order granting the Motion are not well-taken and are **OVERRULED**.  Furthermore, Defendants'

objections concerning FirstEnergy's motion for a stay, motion for reconsideration, and motion for a reply (Docs. 640, 643, 644, 645) are **OVERRULED**.  The Clerk is **DIRECTED** to terminate FirstEnergy's Motion to Stay (Doc. 573), which is **MOOT** under this Order.

       IT IS SO ORDERED.


Date:  May 6, 2024

                              ALGENON L. MARBLEY
                              CHIEF UNITED STATES DISTRICT JUDGE


                              /s/ Kimberly A. Jolson
                              KIMBERLY A. JOLSON
                              UNITED STATES MAGISTRATE JUDGE