**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson |
| MFS Series Trust I, et al., | ) ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) | |

**FIRSTENERGY'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**FOR CERTIFICATION OF AN ORDER FOR INTERLOCUTORY APPEAL**
**UNDER 28 U.S.C. § 1292(b) AND FOR STAY PENDING APPELLATE REVIEW**

# TABLE OF CONTENTS

I.     THE COURT'S ORDER PRESENTS SEVERAL CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ............................................................4

    A.    Whether declarants must aver that their statements are "*true and correct under penalty of perjury*" or whether "under penalty of perjury" is sufficient under 28 U.S.C. § 1746....................................................................................4

    B.    Whether work product created by outside counsel during an internal investigation prompted by government enforcement actions and the filing of numerous lawsuits loses work-product protection if the client also later relies on some of those materials to make business decisions................................8

    C.    Whether attorney-client communications made during the course of an internal investigation to facilitate legal advice lose their privileged status if the request for legal advice was also motivated by business purposes.................12

II.    AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION.....................................16

III.   THE COURT SHOULD STAY ITS ORDER PENDING APPELLATE REVIEW ................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abreu* v. *Davis Cnty.*,
2024 WL 327335 (D. Utah Jan. 29, 2024)....................................................................6

*Arabian Motors Grp. W.L.L.* v. *Ford Motor Co.*,
2017 WL 2222552 (E.D. Mich. May 22, 2017)...........................................................10

*In re Baker & Getty Fin. Servs., Inc.*,
954 F.2d 1169 (6th Cir. 1992) ......................................................................................4

*Bonds* v. *Cox*,
20 F.3d 697 (6th Cir. 1994) .......................................................................................7, 8

*Callahan* v. *Emory Healthcare, Inc.*,
2019 WL 12405937 (N.D. Ga. Dec. 20, 2019).............................................................6

*Carhartt, Inc.* v. *Innovative Textiles, Inc.*,
333 F.R.D. 113 (E.D. Mich. 2019) .........................................................................14, 15

*Cave Consulting Grp., Inc.* v. *OptumInsight, Inc.*,
2016 WL 7475581 (N.D. Cal. Dec. 29, 2016)...............................................................2

*Coleman* v. *Sterling*,
2012 WL 12952831 (S.D. Cal. Feb. 21, 2012) ..........................................................1, 5

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
293 F.3d 289 (6th Cir. 2002) ...................................................................................1, 10

*Decker* v. *Chubb Nat'l Ins. Co.*,
2015 WL 5954584 (S.D. Ohio Oct. 14, 2015)............................................................12

*Delano* v. *Mastec, Inc.*,
2011 WL 1557863 (M.D. Fla. Apr. 25, 2011) ..............................................................6

*Elec. Data Sys. Corp.* v. *Steingraber*,
2003 WL 21653414 (E.D. Tex. 2003) ........................................................................16

*Family Trust Found. of Ky., Inc.* v. *Ky. Judicial Conduct Comm'n*,
388 F.3d 224 (6th Cir. 2004).......................................................................................17

*Fletcher* v. *ABM Bldg. Value*,
2017 WL 1536059 (S.D.N.Y. Apr. 18, 2017)..............................................................15

*FTC* v. *Boehringer Ingelheim Pharms., Inc.*,
    892 F.3d 1264 (D.C. Cir. 2018) ...................................................................................16

*Gionis* v. *Javitch, Block & Rathbone*,
    405 F. Supp. 2d 856 (S.D. Ohio 2005) ...................................................................17

*Henriquez-Disla* v. *Allstate Prop. & Cas. Ins. Co.*,
    2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) .................................................1, 5, 17

*irth Sols., LLC* v. *Windstream Commc'ns, LLC*,
    2018 WL 1870140 (S.D. Ohio Apr. 19, 2018) ...........................................1, 5, 16

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ...........................................................14, 15, 18

*LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham*,
    185 F.3d 61 (2d Cir. 1999).....................................................................................6

*In re Lott*,
    139 F. App'x 658 (6th Cir. 2005) ...................................................................18, 20

*In re LTV Sec. Litig.*,
    89 F.R.D. 595 (N.D. Tex. 1981) ...........................................................................16

*Miami Valley Fair Hous. Ctr. Inc.* v. *Metro Dev. LLC*,
    2017 WL 10980458 (S.D. Ohio May 16, 2017) ...................................................12

*Middlesex Cnty. Retirement Sys.* v. *Semtech Corp.*,
    2010 WL 11523599 (C.D. Cal. May 17, 2010) .....................................................1

*Mohawk Indus., Inc.* v. *Carpenter*,
    558 U.S. 100 (2009)......................................................................................*passim*

*Montgomery* v. *Ruxton Health Care, IX, LLC*,
    2006 WL 3746145 (E.D. Va. Dec. 15, 2006) .........................................................6

*Pace-O-Matic, Inc.* v. *Eckert, Seamans Cherin & Mellott, LLC*,
    2023 WL 7491133 (3d Cir. Nov. 13, 2023)............................................................2

*In re Profs. Direct. Ins. Co.*,
    578 F.3d 432 (6th Cir. 2009) ................................................................................18

*Rodrigues* v. *Jackson Cnty.*,
    2015 WL 404577 (D. Or. Jan. 29, 2015) ...............................................................6

*Sandra T.E.* v. *S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ..........................................................................12, 15

*In re Somberg*,
    31 F.4th 1006 (6th Cir. 2022) ................................................................................16

*Traylor* v. *United Servs. Auto. Ass'n*,
    2022 WL 20840917 (S.D. Ohio Jan. 14, 2022) ......................................................17

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017) ...........................................................................3, 12

*United States* v. *Roxworthy*,
    457 F.3d 590 (6th Cir. 2006) ...........................................................................8, 11

*United States* v. *Stephens*,
    118 F.3d 479 (6th Cir. 1997) ..................................................................................4

*West Tenn. Chapter of Associated Builders and Contractors* v. *City of Memphis*,
    138 F. Supp. 2d 1015 (W.D. Tenn. 2000)..............................................................16

*Wilson* v. *Russo*,
    2022 WL 911271 (N.D. Ohio Mar. 29, 2022) .......................................................12

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................... *passim*

28 U.S.C. § 1746............................................................................................. *passim*

Fed. R. Civ. P. 23(f) ...............................................................................................19

**Other Authorities**

16 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* (3d ed.
    2023) ......................................................................................................................16

Paul R. Rice et al., *Primary Purpose of Consultation, Generally*, 1 Attorney-Client
    *Privilege in the U.S.* (Dec. 2023) .........................................................................14

## PRELIMINARY STATEMENT

In its May 6, 2024 Order, this Court upheld the Special Master's ruling compelling FirstEnergy and its directors to provide testimony and turn over documents related to two internal investigations, prompted by government enforcement actions and the filing of numerous lawsuits, conducted by their outside counsel at Jones Day and Squire Patton Boggs. (Order Overruling FirstEnergy's Objections, ECF No. 653 ("Order"); *see* Order on Motion to Compel, ECF. No. 571 at PageID 12387 ("SM Order").)  The Court and Special Master concluded that neither the attorney-client privilege nor work-product doctrine protected communications made or materials created during either law firm's investigation because those investigations were also motivated by, and advanced, business purposes, such as employment decisions.

FirstEnergy respectfully requests that the Court certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b).  In language on point here, the Supreme Court has instructed that, after issuing a "particularly injurious" privilege determination that "is of special consequence" to the parties, a district court "should not hesitate to certify an interlocutory appeal" under Section 1292(b).  *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110–11 (2009).  In keeping with that principle, courts both in and out of this Circuit routinely certify significant privilege decisions for interlocutory appeal.[1]  This Court should do the same.  As explained below,

---

[1]     *See, e.g.*, *irth Sols., LLC* v. *Windstream Commc'ns, LLC*, 2018 WL 1870140, at *2 (S.D. Ohio Apr. 19, 2018) (certifying order for interlocutory appeal that compelled disclosure of privileged materials after finding inadvertent waiver notwithstanding clawback agreement); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293 (6th Cir. 2002) (deciding interlocutory appeal of order compelling disclosure of privileged materials and work product under theory of selective waiver); *Middlesex Cnty. Retirement Sys.* v. *Semtech Corp.,* 2010 WL 11523599, at *2 (C.D. Cal. May 17, 2010) (certifying order compelling disclosure of privileged materials and work product under theory of selective waiver); *Henriquez-Disla* v. *Allstate Prop. & Cas. Ins. Co.,* 2014 WL 3887750, at *5 (E.D. Pa. Aug. 7, 2014) (certifying order compelling disclosure based on theory that claims investigative work is not privileged); *Coleman* v. *Sterling*, 2012 WL 12952831, at *1 (S.D. Cal. Feb. 21, 2012) (certifying order compelling disclosure of

beyond its extraordinary impact on FirstEnergy and its directors' ability to protect confidential legal assistance and advice, the Order plainly meets the Section 1292(b) criteria. The Order resolves several critical legal questions in a manner that is open to reasonable dispute, and review now will prevent wasted party and judicial resources and hasten the termination of this litigation.

Whether or not it grants this Motion to certify, the Court should ensure that the Order remains stayed until the Sixth Circuit has had a chance to review the critical legal questions implicated here. Staying the Order's effectiveness pending such review will avoid the obvious prejudice to FirstEnergy that would result from irreversible disclosure under a decision that may be later overturned. It will also serve the public interest by ensuring that the Sixth Circuit has the opportunity to clarify the application of both the work-product doctrine and attorney-client privilege—as to which, respectfully, this Court's Order has created doubt and uncertainty—in the context of corporate internal investigations. Like FirstEnergy, public companies routinely conduct internal investigations in response to government investigations and private lawsuits, and do so with the expectation that the attorney-client privilege and work product doctrine will protect the substance of those investigations from disclosure.

## ARGUMENT

Certification under Section 1292(b) is appropriate if, as here, the order in question involves (i) at least one "controlling question of law," (ii) "as to which there is substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance

---

privileged materials under crime-fraud exception); *Pace-O-Matic, Inc.* v. *Eckert, Seamans Cherin & Mellott, LLC*, 2023 WL 7491133, at *1 (3d Cir. Nov. 13, 2023) (deciding interlocutory appeal of order compelling disclosure of allegedly privileged material under the doctrine of judicial estoppel); *Cave Consulting Grp., Inc.* v. *OptumInsight, Inc.*, 2016 WL 7475581, at *2–3 (N.D. Cal. Dec. 29, 2016) (certifying order compelling disclosure of privileged material based on finding of waiver during corporate merger).

the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). The Order clearly satisfies those criteria.

*First*, the Order meets the first two requirements, as it rests on three controlling questions of law on which there is substantial ground for disagreement:

- Whether declarants must aver that their statements are "*true and correct* under penalty of perjury" or whether "under penalty of perjury" is sufficient under 28 U.S.C. § 1746;

- Whether work product created by outside counsel during an internal investigation prompted by government enforcement actions and the filing of numerous lawsuits loses work-product protection if the client also later relies on some of those materials to make business decisions; and

- Whether attorney-client communications made during the course of an internal investigation to facilitate legal advice lose their privileged status if the request for legal advice also was motivated by business purposes.

*Second*, immediate appellate review of the Order would materially advance this litigation, including by avoiding prejudicial disclosures that cannot be undone and by saving significant party and judicial resources.[2]

---

[2]     Although a court of appeals has discretion whether to accept an order certified for interlocutory appeal by the district court under Section 1292(b), the Sixth Circuit has accepted the vast majority of certified orders in recent years.

I.   **THE COURT'S ORDER PRESENTS SEVERAL CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION.**

A.   **Whether declarants must aver that their statements are "*true and correct* under penalty of perjury" or whether "under penalty of perjury" is sufficient under 28 U.S.C. § 1746.**

In upholding the Special Master's exclusion of the Declaration of FirstEnergy director James O'Neil, this Court agreed with the Special Master that 28 U.S.C. § 1746 "has four requirements":  declarations must be "subscribed as true," submitted "under penalty of perjury, dated, and signed."  (Order at PageID 14250–51; *see* SM Order at PageID 12379.)  Although Section 1746 requires only that declarations be "substantially" in the form set out in the statute, the Court applied Section 1746's requirements strictly and concluded that a signed and dated declaration made under penalty of perjury must be "disregard[ed]" if it does not include the phrase "true and correct."  (Order at PageID 14252; *see* SM Order at PageID 12382, 12384 (declaration "must necessarily [be] exclude[d]" if any one of Section 1746's four "ingredient[s] is missing).)  That strict holding rests on a pure question of law on which there is substantial ground for disagreement.

1.   *First,* there is no dispute that what constitutes compliance with Section 1746 is a question of law.  "[T]he interpretation of a statute . . . presents a quintessential pure question of law."  *United States* v. *Stephens*, 118 F.3d 479, 481 (6th Cir. 1997).  And as this Court recognized, it was interpreting "the language of the statute and Sixth Circuit precedent" in concluding that declarations "must be subscribed as true."  (Order at PageID 14252.)

That question of law is controlling.  "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court."  *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d

1169, 1172 n.8 (6th Cir. 1992) ("The resolution of an issue need not necessarily terminate an action . . . to be 'controlling.'"); *see Henriquez-Disla*, 2014 WL 3887750, at *5 ("A controlling issue of law is one . . . which either, if decided erroneously, would lead to reversal on appeal, or is serious to the conduct of the litigation either practically or legally.").

Here, the Special Master's and this Court's privilege and work-product determinations rested on their reading of Section 1746 to exclude the O'Neil Declaration. (*See* Order at PageID 14250, 14261.) As the Special Master put it, "Stated simply: FirstEnergy's argument falls apart without the O'Neil Declaration." (PageID 12384–85.) That privilege ruling compels FirstEnergy to give testimony about and turn over documents created during internal investigations into the same allegations that underpin Plaintiffs' claims, providing FirstEnergy's adversaries insights into its attorneys' factual and legal analyses of the issues in this litigation— including those of Jones Day, which has served as counsel to FirstEnergy in this very action.

As other courts have recognized, "at the discovery phase, disclosure of allegedly privileged information is serious to the conduct of the litigation" and is thus a "controlling issue of law." *Henriquez-Disla,* 2014 WL 3887750, at *5; *see irth Sols.*, 2018 WL 1870140, at *1 (question "involved[] a controlling question of law" because it could lead to "[p]roduction of [possibly privileged] documents" and thus could "affect the course of the litigation, both practically and on the legal merits"); *Coleman*, 2012 WL 12952831, at *3 ("The persisting prejudice that may result from an erroneous privilege ruling is quite likely to affect the further course of litigation."). Indeed, the Special Master himself concluded that the discovery issues he resolved "are very important" and "in some sense . . . may be case dispositive." (Dec. 21, 2023 Conference Tr., ECF No. 610 at PageID 13291.) Under the Supreme Court's decision in *Mohawk*, a "privilege ruling" of such "special consequence" satisfies the "controlling question of law"

prerequisite, and in such cases "district courts should not hesitate to certify an interlocutory appeal." 558 U.S. at 110–11.

        2.    *Second*, there is considerable ground for difference of opinion on whether a declaration fails to comply with Section 1746 if it merely lacks the words "true and correct," but is subscribed under penalty of perjury. Section 1746 provides that declarations must be worded in "*substantially* the . . . form" the statute requires. 28 U.S.C. § 1746 (emphasis added). Thus, as this Court acknowledged, many other courts "have accepted declarations that omitted the 'true and correct' language," reasoning that Section 1746 imposes a substantial rather than strict compliance standard. (Order at PageID 14252.) Most prominently, in the only on-point decision from a court of appeals, the Second Circuit accepted a declaration that "d[id] not contain the exact language of Section 1746 nor state that the contents [were] 'true and correct,'" explaining that the declaration "substantially complie[d] with the[] statutory requirements, which is all that th[e] Section requires." *LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999). Numerous other courts have agreed, explaining that a declaration submitted under penalty of perjury "necessarily represent[s] that what [the declarant] was saying was true," and therefore "is in substantial compliance with the requirements set forth" in Section 1746. *Callahan* v. *Emory Healthcare, Inc.*, 2019 WL 12405937, at *3 (N.D. Ga. Dec. 20, 2019).[3]

---

[3]    *See also, e.g.*, *Abreu* v. *Davis Cnty.*, 2024 WL 327335, at *3 (D. Utah Jan. 29, 2024) (holding that "the absence of the words 'true and correct' in Plaintiff's declaration—which he signed 'swear[ing] under penalty of perjury'" did not mean that the declaration failed to "'substantially' follow the form in § 1746"); *Rodrigues* v. *Jackson Cnty.*, 2015 WL 404577, at *2 (D. Or. Jan. 29, 2015) (considering declarations that did "not include the phrase 'true and correct'" because "both declarations state[d] that they [were] made 'under penalty of perjury'"); *Delano* v. *Mastec, Inc.*, 2011 WL 1557863, at *1 (M.D. Fla. Apr. 25, 2011) (agreeing with "several courts [that] have held that omission to state that the matters declared are 'true and correct' is not fatal"); *Montgomery* v. *Ruxton Health Care, IX, LLC*, 2006 WL 3746145, at *3 (E.D. Va. Dec. 15, 2006) ("[A]n unsworn declaration is not invalid under § 1746 simply because it lacks the words 'true and correct.'").

In this very case, Plaintiffs were permitted to rely on a declaration that lacked the words "true and correct." (*See* FirstEnergy's Notice Of Supplemental Authority and Record Citations, ECF No. 649-2 at PageID 14230.) Plaintiffs also submitted three other declarations that were not subscribed under penalty of perjury, again without issue. (*Id.* at PageID 14230–32.) True, Defendants did not object to these declarations. But neither did Plaintiffs object to the O'Neil Declaration before the Special Master *sua sponte* ruled it inadmissible. The unfairness is yet another reason to allow the Sixth Circuit to conclusively resolve the requirements of that provision.

In the Order, the Court distinguished the many cases discussed above by deeming them "simply examples of courts exercising their discretion" to accept a declaration. (Order at PageID 14252 (citing *Counts* v. *Kraton Polymers*, *U.S. LLC*, 260 F. App'x 825, 829 n.1 (6th Cir. 2008)).) But the proper construction of Section 1746 is a legal question, not a discretionary one. Indeed, the Court here concluded that the Special Master "properly followed *the law* . . . in disregarding" the O'Neil Declaration, because the "declaration lacked an essential element" "under the language of the statute." (*Id.* (emphasis added).)

The Court also relied heavily on *Bonds* v. *Cox*, 20 F.3d 697 (6th Cir. 1994). (Order at PageID 14250–52.) But *Bonds* did not hold, as the Court stated, that a declaration "must be 'subscribed as true'" to satisfy Section 1746. (*Id*. at PageID 14252.) Rather, the Sixth Circuit was merely quoting the statutory language without weighing in on what amounts to substantial compliance under the statute. The issue in *Bonds* was about an entirely different element, namely the statute's requirement that declarations be dated.[4] Unlike a declaration that is submitted under

---

[4]     Likewise, the Sixth Circuit's decision in *Milczak* v. *General Motors, LLC*, No. 23-1462 (6th Cir. May 21, 2024), handed down only yesterday, affirmed the district court's rejection of the declaration at issue because it was not made under penalty of perjury and therefore did not "substantially comply" with Section 1746. Slip op. at 6.

penalty of perjury but omits the words "true and correct," a declaration that gives no indication of when its statements were made cannot be substantially compliant with the statute, since a court cannot assess the reliability of an undated statement. If anything, *Bonds* undermines this Court's decision on the "true and correct" issue. *Bonds* noted that the declarations before it satisfied the "subscribed as true under penalty of perjury" element because they "were subscribed under penalty of perjury." 20 F.3d at 702. By using that shorthand, *Bonds* implicitly accepted the commonsense point that making a declaration under penalty of perjury is equivalent to averring that the statements therein are true and correct.

**B.** **Whether work product created by outside counsel during an internal investigation prompted by government enforcement actions and the filing of numerous lawsuits loses work-product protection if the client also later relies on some of those materials to make business decisions.**

Even if the O'Neil Declaration were properly excluded, the Court's Order still directly implicates another controlling question of law regarding the contours of the work-product doctrine: whether materials created in anticipation of (or in response to actual) litigation, including by counsel in that litigation, lose work-product protection if some of those materials are later used to inform business decisions.

To determine whether a document is protected by the work-product doctrine, courts ask whether it was "created because of a party's . . . anticipation of litigation, as contrasted with an ordinary business purpose." *United States* v. *Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Here, the following facts are undisputed: beginning the same day as the unsealing of a criminal complaint against then-Ohio House Speaker Larry Householder, FirstEnergy (i) was served a DOJ subpoena; (ii) received a formal investigation notice from the SEC; and (iii) learned that nine law firms planned to imminently file investor suits. (*See* App. A to FirstEnergy's Opp. Br., ECF No. 510 at PageID 10930–32; Exs. 12–20 to July 26, 2023 Williams Decl., ECF No. 511-2 at PageID

11000–21.)  FirstEnergy and its board separately retained Jones Day and Squire Patton Boggs, respectively, shortly thereafter to investigate the underlying facts and circumstances.  (*See* FirstEnergy's Objections, ECF No. 607-1 at PageID 13179, 13200–01 & 13221–24 (identifying relevant record evidence); Ex. 2 to Oct. 5, 2023 Williams Decl., ECF No. 550-2 at PageID 11919– 20 (Julia Johnson Dep. Tr.); DPA, ECF No. 259-5 at PageID 6002, 6012.)  Both outside firms promptly commenced their investigations, with Jones Day continuing to represent the company in connection with the DOJ litigation *and this litigation*.  (*See* App. A to FirstEnergy's Opp. Br., ECF No. 510 at PageID 10930.)  Thus, even without the O'Neil Declaration, the undisputed evidence—and basic common sense in light of the timeline of events—established that both the Jones Day and Squire investigations were undertaken "because of" enforcement actions and numerous pending and anticipated lawsuits.

This Court, however, affirmed the Special Master's approach of looking at FirstEnergy's eventual "uses of the investigation" in the "human resources/public relations arena"—for example, FirstEnergy's later decision to terminate certain executives—to conclude that the investigations had "business purposes and human resources purposes," and therefore "would have occurred even in the absence of anticipated . . . litigation."  (SM Order at PageID 12384–85; *see* Order at PageID 14266–67.)  The Court explained that it could not "say the Special Master abused his discretion in finding" that "the internal investigation[s] [were] conducted . . . because of [those] employment decisions and business concerns."  (Order at PageID 14266.)  The Court thus left in place the Special Master's erroneous legal framework, under which FirstEnergy's eventual business "uses of the investigation[s]" meant that they were not conducted in anticipation of litigation, even though those business uses involved "issues [that] logically overlap[ped] with anticipated litigation."  (SM Order at PageID 12384.)

-9-

To be sure, at one point the Court correctly recognized that "a document can be used both in the ordinary course of business and in anticipation of litigation without losing work-product protection." (Order at PageID 14265–66.) But the Special Master took the exact opposite approach, and in finding that he did not abuse his discretion, the Court in substance adopted his flawed framework. The Court's Order thus stands for the proposition that a document's later use for a business purpose *does* cause it to lose work-product protection, and FirstEnergy should be allowed to seek appellate review of that legal determination.

Like this Court's approach to the requirements of Section 1746, the legal framework that this Court adopted for deciding work-product questions satisfies the requirements for interlocutory appeal.

1. *First*, the Court's conclusion involves a controlling question of law: whether, as the Special Master concluded, an internal investigation prompted by the initiation of multiple actual litigations and enforcement proceedings does not result in protected work product if the fruits of that investigation are later used to inform business decisions. That issue presents a "pure question of law," as it is "something the court of appeals could decide quickly and cleanly without having to study the record." *Arabian Motors Grp. W.L.L.* v. *Ford Motor Co.*, 2017 WL 2222552, at *3 (E.D. Mich. May 22, 2017). And that question of law is "controlling" here for the same reasons given above, *see supra* at 4–6—again, in the Special Master's words, "these are important issues and they matter to this case in particular a great deal and the related cases a great deal." (Dec. 21, 2023 Conference Tr., ECF No. 610 at PageID 13312.) *See Mohawk*, 558 U.S. at 111; *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 293 (explaining that case turning on the proper standard for waiver of attorney-client and work-product protections involved a "controlling question of law").

2.     *Second*, there is substantial ground for disagreement with the Special Master's approach to work product.  As the Sixth Circuit held in *Roxworthy*, documents "do not lose their work product privilege merely because [they were] created in order to assist with a business decision, unless the documents would have been created in essentially similar form irrespective of the litigation."  457 F.3d at 598–99 (alteration in original).  But the Special Master treated the fact that the investigations "assist[ed] with a business decision," *id.*, as conclusive proof that the documents here would have been created regardless of the fact that FirstEnergy was facing litigation.  That approach would render both *Roxbury* and the work-product doctrine itself a dead letter.  Every company that faces government enforcement and litigation risks (and hires outside counsel to investigate) must at the same time address the business implications of the underlying conduct—such as whether to terminate any officers or employees.  Yet on the Special Master's theory, upheld by this Court, the only way that FirstEnergy could have enjoyed work-product protection here would have been to do nothing at all with the information their outside counsel uncovered.

There is more.  As discussed above, it is undisputed that FirstEnergy retained Jones Day to represent the company in this very securities-fraud litigation, and that Jones Day conducted its investigation to facilitate that representation, among others.  (*See* App. A to FirstEnergy's Opp. Br., ECF No. 510 at PageID 10930–32 (citations for docket entries reflecting notices of appearance by Jones Day on behalf of the company both in this action and more than 20 related actions).)  Yet the Special Master's approach still led him to conclude that Jones Day's work product related to the investigation is not protected.

This Court's affirmance of the Special Master's hindsight-based approach to determining the purpose of an internal investigation is not merely a conclusion as to which

"reasonable jurists might disagree"—it is one "where they have already disagreed." *In re Trump*, 874 F.3d at 952. Many courts have rejected the Special Master's view of the work-product doctrine, holding that documents created in response to litigation receive protection notwithstanding the "fact that the[y] also serve[d] another purpose," such as "providing advice on [a] coverage decision." *Decker* v. *Chubb Nat'l Ins. Co.*, 2015 WL 5954584, at *6 (S.D. Ohio Oct. 14, 2015), *adopted*, 2015 WL 6872937 (S.D. Ohio Nov. 9, 2015); *see Wilson* v. *Russo*, 2022 WL 911271, at *4–7 (N.D. Ohio Mar. 29, 2022) (although report "may have resulted in personnel decisions and police policy changes," it was protected from disclosure because the author "was retained, and the [r]eport prepared," "in response to" incident expected to result in litigation) ("[T]he investigation was *not strictly* an 'internal review' performed for the business purpose of informing personnel and policy matters.") (emphasis added); *Miami Valley Fair Hous. Ctr. Inc.* v. *Metro Dev. LLC*, 2017 WL 10980458, at *2 (S.D. Ohio May 16, 2017) (Jolson, M.J.) (document "was prepared because of this litigation" notwithstanding its use in "due diligence"); *Sandra T.E.* v. *S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) ("The chronology of events confirms that Sidley was hired to conduct the District 100 investigation not merely in anticipation of *likely* litigation but in response to the *actual* filing of this lawsuit. True, the Board had other motivations as well—it *was* responding to the public distress about the allegations, the possible complicity of the school principal, and the urgent need to implement prospective protective measures—but this does not remove the investigation from the protection of the work-product doctrine.").

C. **Whether attorney-client communications made during the course of an internal investigation to facilitate legal advice lose their privileged status if the request for legal advice was also motivated by business purposes.**

Finally, this Court's Order implicates a third controlling question of law on which there is again substantial ground for disagreement: whether an internal "investigation's

-12-

predominant purpose must be legal for the [attorney-client] privilege to apply" to attorney-client communications related to the investigation.  (Order at PageID 14263.)

The Special Master concluded that communications in connection with the Jones Day and Squire investigations are not privileged because those investigations were "prepared in the ordinary course of business pursuant to SEC public requirements unrelated to litigation and for non-litigation human resources/public relations purposes."  (Order at PageID 14262 (quoting SM Order at PageID 12385).)  The Special Master thus applied the same test for assessing the work-product issue to the separate attorney-client privilege question; indeed, his analysis did not distinguish the two.  (*See* SM Order at PageID 12384–86.)  As FirstEnergy argued, however, the tests are different.  For attorney-client privilege, so long as a communication relates to the provision of legal advice, it does not matter *why* that advice was sought—whether for litigation reasons, business reasons, or some other reason.  That has long been black-letter law.  *See infra* at 14–16.

This Court rejected that argument as "misguided," agreeing with the Special Master that there was no real difference between the test for work-product and attorney-client privilege in this context, because the "Special Master was required to ascertain if the 'predominant purpose' of the internal investigation was to conduct business or to [provide] legal advice."  (Order at PageID 14262–63).  The Court explained that whether "the internal investigation's purpose was primarily business or human resources-related is *crucial* in determining whether the privilege exists, because the investigation's predominant purpose must be legal for the privilege to apply."  (*Id.* (emphasis added).)  The Court then agreed with the Special Master that, as with the work-product doctrine, FirstEnergy could not meet its burden under the attorney-client privilege by

-13-

"pointing to impending lawsuits," since the other business purposes at play might have supplied the "company's motivation[]" for the investigations. (Order at PageID 14263–64.[5])

        This Court's legal conclusion that the "crucial" factor in determining whether an internal investigation is privileged is whether its "purpose was primarily business or human resources-related" again meets the criteria for interlocutory review.

        1.    *First,* as above, the Court's statement addresses a pure question of law that is "controlling" because it led the Court to require disclosure of information claimed to be privileged, which could practically and legally affect the course of this litigation. *See supra* at 4–6, 10.

        2.    *Second*, there is substantial ground for difference of opinion on whether an internal investigation's "predominant purpose must be legal for the privilege to apply." (Order at PageID 14263.) Indeed, FirstEnergy is aware of no case supporting that proposition. Rather, courts have repeatedly held that the critical question is not the "company's motivation[]" for seeking advice (Order at PageID 14264), but instead whether—whatever the motivation—the client sought "*legal* advice" or "*business* advice." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (Kavanaugh, J.) (emphasis added); *see Carhartt, Inc.* v. *Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019) (looking to whether advice has a "legal nature" or "business character"); Paul R. Rice et al., *Primary Purpose of Consultation, Generally*, *1 Attorney-Client Privilege in the U.S.* § 7:6 (Dec. 2023) ("The fact that the client may use the lawyer's services for business purposes is . . . not dispositive. Many times, an attorney's legal advice will have valuable business implications."). And that makes sense. A company that seeks

---

5     Here again, although the Court at one point noted that "having a business purpose does not 'undercut' a claim of privilege" (Order at PageID 14263), the Court's actual holding and the substance of its legal analysis embraced the opposite approach.

*legal* advice so that it may successfully launch an IPO, close a deal, or terminate an executive is plainly protected by the attorney-client privilege, even though the advice is intended to be used for business purposes. If it were otherwise, there would be almost nothing left of the privilege in the corporate setting.[6]

For that reason, courts consistently apply the privilege to attorney-client communications seeking legal advice in the context of a "business [or] employment decision." (Order at PageID 14263.) *See, e.g.*, *Carhartt*, 333 F.R.D. at 117 (finding in-house counsel's communications regarding a recall were privileged because her "advice and communications were predominantly legal" even though her advice may have been ultimately "factored in [with] business-related considerations"); *Kellogg*, 756 F.3d at 758–59 ("So long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney privilege applies, even if there were also other purposes for the investigation."); *Fletcher* v. *ABM Bldg. Value*, 2017 WL 1536059, at *3 & n.4 (S.D.N.Y. Apr. 18, 2017) (communications providing legal

---

[6]     At points, this Court suggested that FirstEnergy was required, in order to establish that at least *some* "communications within the internal investigation are privileged," to provide specific documents in which "attorneys [were] acting as . . . legal advisors," not "as business or human resources advisors." (Order at PageID 14263–64.)   That just repeats the same erroneous conception of the privilege. The Court appeared to believe that such evidence was required because FirstEnergy "used the internal investigations for many purposes, including business and employment decisions." (*Id.*) But again, a client's business *use* of an attorney's advice has nothing to do with whether the advice itself was legal in nature. Given the record evidence that Squire and Jones Day were hired in immediate response to extraordinary legal risks, it is self-evident that both firms provided legal advice. As multiple courts have explained, clients "retain lawyers to perform investigative work because they want the benefit of a lawyer's expertise and judgment"—in other words, because they want legal advice. *Sandra T.E.*, 600 F.3d at 620 (quoting *In re Allen*, 106 F.3d 582, 604 (4th Cir. 1997)).

advice regarding personnel decisions were "clearly legal and privileged" even though company "ultimately ma[d]e a business decision having received [that] legal advice").[7]

## II.    AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION.

The final requirement of Section 1292(b)—whether an appeal from the district court's order may materially advance the ultimate termination of the litigation—is "closely tied to the requirement that the order involve a controlling question of law."  *Newsome* v. *Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012); *see* 16 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 3930 (3d ed. 2023) (same).  Here, immediate appeal of the Court's Order will "materially advance the litigation" because, as shown above, "a ruling on whether the documents [at issue here] are privileged is likely to alter the course of the litigation on the merits." *irth Sols.*, 2018 WL 1870140, at *2.

Moreover, an immediate appeal will "save judicial resources and litigant expense." *West Tenn. Chapter of Associated Builders and Contractors* v. *City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000); *see In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022) (third Section 1292(b) criterion is satisfied where appeal will avoid "potentially unnecessary protracted and expensive litigation").  Absent appeal (or mandamus) now, FirstEnergy may obtain appellate review of this Court's privilege decision only from an adverse final judgment.  If successful, such appeal would almost certainly require "a second trial" without the use of "privileged information

---

[7]    *See also FTC* v. *Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) (privilege applied even though "decision whether and at what price to settle ultimately was a business decision"); *Elec. Data Sys. Corp.* v. *Steingraber*, 2003 WL 21653414, at *3 (E.D. Tex. 2003) ("The fact that the attorneys may have been hired to facilitate a business decision does not mean that such a decision was devoid of legal consequences."); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 601 (N.D. Tex. 1981) ("Information gathered in such a manner as to be privileged does not become discoverable solely because management makes other business use of the information.").

[that] would have been improperly revealed." *Henriquez-Disla*, 2014 WL 3887750, at *5.  "Before the parties and the Court invest [the] time and resources" to litigate this case using testimony and documents that may eventually be excluded as privileged, "it makes sense, at this juncture, for the Sixth Circuit to have the opportunity to decide" the legal questions presented by the Court's Order. *Gionis* v. *Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 873 (S.D. Ohio 2005) (certifying order for appeal under Section 1292(b)).

## III.    THE COURT SHOULD STAY ITS ORDER PENDING APPELLATE REVIEW.

Given the significance of the Order, this Court should ensure that it does not go into effect until the Sixth Circuit has had a chance to consider the important issues here, whether or not it certifies under Section 1292(b).  Thus, in the event the Court lifts the stay of all discovery that is currently in place, which it should not do, it should at a minimum impose a separate, temporary stay of the Order pending further appellate review either under Section 1292(b) (if this Court grants the instant Motion) or a potential petition for a writ of mandamus.  *See Mohawk*, 558 U.S. at 111 (explaining that both Section 1292(b) and mandamus are appropriate means of seeking appellate relief in important privilege disputes).

*First*, there are "at least serious questions going to the merits." *Family Trust Found. of Ky., Inc.* v. *Ky. Judicial Conduct Comm'n,* 388 F.3d 224, 227 (6th Cir. 2004).  As district courts have recognized, while a Section 1292(b) movant's "likelihood of success on appeal" is necessarily "speculative" (because the district court has already ruled against the movant), the relevant question is whether "there are substantial grounds for differences of opinions on the issues raised." *Traylor* v. *United Servs. Auto. Ass'n*, 2022 WL 20840917, at *7 (S.D. Ohio Jan. 14, 2022).  For the reasons given above, that is the case here.

*Second*, FirstEnergy would suffer serious, irreparable harm absent a stay. "[T]he general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough." *In re Lott*, 139 F. App'x 658, 662 (6th Cir. 2005) (granting stay pending resolution of mandamus petition raising attorney-client privilege and work-product protection); *Kellogg*, 756 F.3d at 761 ("[P]ost-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents.").

Here, that harm is particularly acute, as without a stay FirstEnergy will be required by the Order to turn over many pages of sensitive documents, and witnesses will be required to provide testimony about communications with their lawyers. That harm is irreparable because "appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials." *In re Lott*, 139 F. App'x at 662 (quoting *In re Ford Motor Co.,* 110 F.3d 954, 962–64 (3d Cir. 1997); *see In re Profs. Direct. Ins. Co*., 578 F.3d 432, 438 (6th Cir. 2009) (A "court cannot restore confidentiality to documents after they are disclosed.").

A temporary stay will also prevent any irreversible prejudice to FirstEnergy in related cases, in which the plaintiffs may seek to obtain the same materials covered by the Order. Indeed, FirstEnergy has already received one such request in an ongoing regulatory matter—even though an adjudicator in that matter previously determined that certain materials covered by this Court's Order were "*clearly* prepared in reasonable anticipation of litigation" and "protected from disclosure by both attorney-client privilege and the attorney-work-product doctrine." *See* Ex. A to the Declaration of Hilary M. Williams ¶¶ 20, 28 (Oct. 12, 2021 Attorney Examiner Entry, Case No. 17-974-EL-UNC) (emphasis added). Not even an appeal from final judgment in related cases could remedy the harm flowing from an erroneous privilege ruling in this case.

*Third*, these harms to FirstEnergy significantly outweigh the minimal (if any) prejudice to Plaintiffs, Dowling, and Jones that would result from a temporary stay of the Order. For one thing, as FirstEnergy has already explained, the currently pending appeal under Rule 23(f) of this Court's class-certification decision is likely to require a significant overhaul of the scope and timing of discovery in this action. (*See* FirstEnergy's Motion to Stay, ECF No. 574 at PageID 12413–14.) There is no reason to race to complete fact discovery by forcing FirstEnergy to produce potentially privileged information before the Sixth Circuit provides more clarity. Further, a stay pending appeal would align with the parties' longstanding approach to the case schedule. Under the governing order by Magistrate Judge Jolson, the fact discovery deadline automatically extends until after "final resolution" of a motion to compel, "*including any appellate proceedings*." (June 5, 2023 Order, ECF No. 474 at PageID 10374 (emphasis added).) The stay sought here follows that approach.

*Finally*, the public interest strongly favors a temporary stay of the Order. A stay would provide the Sixth Circuit the chance to review the Court's privilege ruling before FirstEnergy is required to produce the covered materials to Dowling and Jones, who no doubt intend to use them to assist in their defenses to ongoing criminal prosecutions. Because the court overseeing those prosecutions would be unable to unwind the disclosure of materials claimed to be privileged in this case—prejudicing not only FirstEnergy, but also the government—there is a significant public interest in appellate review before FirstEnergy turns over those materials or witnesses testify about them.

Moreover, absent a stay, the ability of every company to investigate wrongdoing and engage in full and frank communications with their attorneys could be hampered. As the Sixth Circuit has explained, given the strong public-policy justifications for both the attorney-client

privilege and work-product doctrine, the public interest "requires that the courts endeavor to clearly delineate the creation, scope, and dissolution of [both] privileges." *In re Lott*, 139 F. App'x at 662. "An uncertain privilege—or one which purports to be certain, but rests in widely varying applications by the courts—is little better than no privilege." *Id*. By resolving several fundamental questions regarding the operation of both privileges in a manner that is open to dispute, the Order threatens to sow such uncertainty. A temporary stay here would help to prevent that outcome by facilitating immediate appellate review.

## CONCLUSION

For the foregoing reasons, the Court should certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b), and ensure that the Order remains temporarily stayed pending appellate review.

Dated: May 22, 2024

Respectfully submitted,

*/s/ Paul J. Schumacher*
Paul J. Schumacher, Trial Attorney (0014370)
DICKIE, MCCAMEY & CHILCOTE, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio 44114
Telephone: (216) 685-1827
pschumacher@dmclaw.com

Richard J. Silk, Jr. (0074111)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 W. Broad Street, Suite 1950
Columbus, Ohio 43215
Telephone: (614) 258-6000
rsilk@dmclaw.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)

Hilary M. Williams (*pro hac vice*)
Tasha N. Thompson (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on May 22, 2024. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Paul J. Schumacher*
Paul J. Schumacher (0014370)

*Counsel for Defendant FirstEnergy Corp.*