# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION )<br>)<br>) | No. 2:20-cv-03785-ALM-KAJ<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS )<br>)<br>)<br>)<br>)<br>) | Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson |
| MFS Series Trust I, et al.,<br><br>     Plaintiffs,<br><br>    vs.<br><br>FirstEnergy Corp., et al.,<br><br>     Defendants. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:21-cv-05839-ALM-KAJ |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al.,<br><br>     Plaintiffs,<br><br>    vs.<br><br>FirstEnergy Corp., et al.,<br><br>     Defendants. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:22-cv-00865-ALM-KAJ |

**REPLY IN SUPPORT OF FIRSTENERGY'S MOTION
FOR CERTIFICATION OF AN ORDER FOR INTERLOCUTORY
APPEAL UNDER 28 U.S.C. § 1292(b) AND FOR STAY
PENDING APPELLATE REVIEW**

**PRELIMINARY STATEMENT**

For almost a year, Plaintiffs have aggressively litigated this major privilege dispute over the discoverability of internal investigations conducted by Jones Day and Squire Patton Boggs into the very matters at issue in this securities litigation. Yet in their Opposition, Plaintiffs suddenly announce that the discovery that they have fought so hard for makes no difference "whatsoever" to the outcome of this case. (Pls. Opp., ECF No. 664, at PageID 14422.) Rather, Plaintiffs now say that they already possess "overwhelming evidence" to prove liability "regardless of the Court's decision" ordering FirstEnergy to turn over the materials at issue. (*Id.*) Thus, Plaintiffs assert, interlocutory review is not warranted because the Court's Order will not have any impact on this litigation.

At every level, Plaintiffs' argument is wrong. FirstEnergy has admitted only to making improper political contributions, *not* to committing securities fraud. And as a matter of common sense, if it really were true that forcing FirstEnergy to turn over the investigative materials would have "***no*** impact" on Plaintiffs' chances of winning this case (Pls. Opp. at PageID 14434), Plaintiffs and their experienced lawyers would never have moved to compel, let alone spent substantial resources litigating the issue before this Court, Magistrate Judge Jolson and the Special Master. This Court should be asking: why did Plaintiffs wait nearly a year to say that this dispute, over which so much time and so many resources have been spent, does not matter to the resolution of this case?

Plaintiffs could end this dispute now and move along with their case without seeking access to extensive materials created by their adversaries' outside counsel and avoid further litigation, including an interlocutory appeal or mandamus petition by FirstEnergy to the Sixth Circuit. But Plaintiffs presumably have not taken that step because they believe that gaining access to their adversaries' factual and legal analyses of the issues in this litigation—including

those of Jones Day, which represented FirstEnergy for over two years and still represents most of the director defendants—would hamper Defendants' ability to defend this case. That is why the Special Master agreed with FirstEnergy that he could not "imagine a more critical discovery issue than this one." (Dec. 21, 2023 Conference Tr., ECF No. 610 at PageID 13320–21.)

The few additional arguments raised by Plaintiffs, as well as Charles Jones and Michael Dowling, actually confirm why this Court should certify its Order for interlocutory appeal. Plaintiffs claim that none of the three questions of law raised by FirstEnergy are open to reasonable dispute. But on the interpretation of Section 1746, Plaintiffs ignore the many cases that FirstEnergy cited coming out the other way, which, by definition, support a finding of substantial grounds for disagreement. And on the legal frameworks for analyzing attorney-client privilege and work product, Plaintiffs (and Jones and Dowling) distort the Special Master's reasoning. Try as they might, they cannot avoid that the Special Master erroneously (i) analyzed attorney-client privilege using the very same test governing work-product; and (ii) decided that the Jones Day and Squire investigations were not conducted in response to litigation and government investigations following the arrest of then-Ohio House Speaker Larry Householder based on some of the company's later business uses of the results of those investigations.

At bottom, Plaintiffs wrongly contend that FirstEnergy is trying to "defy" the Supreme Court's precedent in *Mohawk Indus.* v. *Carpenter*, 558 U.S. 100 (2009), by seeking interlocutory review of a privilege decision. But *Mohawk* explained—no fewer than three times— that it was declining to create an *automatic* right of appealability in part *because* it expected that district courts would certify important privilege issues under Section 1292(b). *See id.* at 103, 110– 11, 114. The Court's Order here is precisely the kind of "particularly injurious" privilege ruling that, under *Mohawk*, "district courts should not hesitate to certify [for] interlocutory appeal." *Id.*

-2-

at 110–11.

This Court should grant certification and temporarily stay the effect of its Order to preserve FirstEnergy's right to seek the Sixth Circuit's review.

## ARGUMENT

I. **PLAINTIFFS ARE WRONG ON BOTH THE LAW AND FACTS ON THE IMPACT OF IMMEDIATE APPEAL HERE.**

In opposing certification of this Court's Order for interlocutory appeal, Plaintiffs' main argument is that this entire privilege dispute has been a waste of time, even though the parties have filed more than 450 pages of briefs and declarations, and the Court and Special Master between them have written 80 pages of decisions. Remarkably, Plaintiffs now say that the disclosures ordered by the Special Master and affirmed by this Court "***could not*** have any impact whatsoever on the viability of any claim" in this case (Pls. Opp. at PageID 14422), because Plaintiffs already have "overwhelming evidence regardless of the Court's decision," (*see id.* at PageID 14422; *id.* at PageID 14434 (arguing that the Order "has ***no*** impact on the viability of ***any*** claims")). As a result, Plaintiffs maintain, FirstEnergy cannot show that the Order involves a "controlling question of law," or that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because those two factors "require proof that the outcome of the appeal would have a nearly dispositive impact on the litigation," (Pls. Opp. at PageID 14423; *see id.* at PageID 14434–36). Plaintiffs are wrong on both the law and the facts.

A. **The First and Third Section 1292(b) Factors Do *Not* Require That Immediate Appeal Would Dispose of the Case.**

Neither the first nor the third Section 1292(b) factor requires FirstEnergy to demonstrate that "reversal of the district court's order would terminate the action," "be

-3-

substantively dispositive," or "effectively end the litigation," (Pls. Opp. at 14430, 14433), as Plaintiffs claim. To the contrary, as FirstEnergy has already explained (citing Sixth Circuit law that Plaintiffs studiously ignore), the "resolution of an issue *need not* necessarily terminate an action . . . to be 'controlling'" and thus satisfy the first factor. *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (emphasis added). "Rather, all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation." *Id.*

As for the third factor, which is "closely tied" to the first, *Newsome* v. *Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012), the question is whether appeal "may *materially advance*" the "ultimate termination" of the litigation, not whether appeal may literally end the litigation, 28 U.S.C. § 1292(b) (emphasis added). An order "fulfill[s] that criterion . . . where, absent review, potentially unnecessary protracted and expensive litigation will ensue." *In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022); *see U.S. ex rel. Elliott* v. *Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 871 (S.D. Ohio 2012) ("An interlocutory appeal will materially advance the litigation if it will save substantial judicial resources and litigant expense."). Plaintiffs at least cite *Elliott* (Pls. Opp. at PageID 14430), but they misdescribe its analysis. They argue that the court found the third factor not satisfied because "an immediate appeal would not materially advance the ultimate *termination* of the litigation." *Id.* (quoting 845 F. Supp. 2d at 871)). But the court held the opposite: it concluded that the third factor *was* satisfied because, even though an appeal would *not* end the case, it would cause "the course of discovery [to] change dramatically," "and the litigation would necessarily be simplified." 845 F. Supp. 2d. at 871–72. *Elliott* thus rejected the precise proposition for which Plaintiffs cite it.

**B.      Immediate Appeal Could Both Materially Affect the Outcome of This Case and Avoid Unnecessary Litigation.**

1.      There is no doubt that immediate appeal and reversal of the Order could materially affect this litigation. Plaintiffs may claim that the investigative materials will make no difference, but actions speak louder than words. If Plaintiffs had already assembled "overwhelming evidence" that FirstEnergy engaged in *securities fraud* (as opposed to making improper political contributions) (Pls. Opp. at PageID 14422), Plaintiffs and their experienced counsel would not have spent significant resources litigating this privilege dispute, or they could drop it even now. It is no mystery why they want these materials—to learn as much as they can about opposing counsel's legal and factual analyses of the issues in this litigation, and to glean whatever insight Plaintiffs can into their strategy.[1]

Gaining access to opposing counsel's legal and factual analyses could make a significant difference to the outcome of this litigation, even if Plaintiffs think that they already have enough to prove their securities case (which they do not). That is why, in *Mohawk*, the Supreme Court emphasized that the "controlling question of law" factor is "most likely to be satisfied when a privilege ruling involves a new legal question *or is of special consequence*." 558 U.S. at 110–11 (emphasis added). And it is why lower courts have found that significant privilege rulings implicate controlling questions of law. *See, e.g.*, *Coleman* v. *Sterling*, 2012 WL 12952831,

---

[1]     Plaintiffs claim that FirstEnergy has "cite[d] no evidence whatsoever to support th[e] assertion" that the materials at issue here contain such insights. (Pls. Opp. at PageID 14439.) Again, the fact that Plaintiffs sought and continue to seek to compel them is a good indication. Regardless, Plaintiffs ignore the O'Neil Declaration. (*See* ECF No. 511-1 at PageID 10940–41 (discussing "Squire's investigative findings, legal analysis, and assessments of potential criminal and civil liability"); *id.* at PageID 10942–43 (explaining that Jones Day "advise[d] the Company on its response to the SEC investigation").) Although this Court found that the O'Neil Declaration may not be considered, that is one of the holdings that FirstEnergy seeks to appeal, and the question here is the effect on the litigation if that appeal is successful.

at *3 (S.D. Cal. Feb. 21, 2012) (noting that "significant strategic decisions" can be made using privileged materials and that the "persisting prejudice that may result from an erroneous privilege ruling . . . could even materially affect [the case's] outcome"); *irth Sols., LLC* v. *Windstream Commc'ns, LLC*, 2018 WL 1870140, at *1 (S.D. Ohio Apr. 19, 2018) ("Production of these documents is likely to affect the course of the litigation, both practically and on the legal merits.").[2]

This Court need not take FirstEnergy's word that the privilege ruling here may be significant to the outcome of the litigation. The Special Master himself said so. Because Plaintiffs argue that FirstEnergy "misleading[ly] . . . parsed" the relevant statement (Pls. Opp. at PageID 14435), it is worth quoting in full:

> [MR. GIUFFRA:] I would not ordinarily, you know, litigate an issue of a discovery dispute like this one unless it was a very important issue and this one happens to be a very important issue.
>
> SPECIAL MASTER JUDGE: I get it. I mean **it's a huge issue**. You know, I said **potentially it's case dispositive**. That may be overstating it a bit but it is **certainly the biggest discovery issue I think in the case** and I **can't imagine a more critical discovery issue** than this one, so I get why you're concerned.

(Dec. 21, 2023 Conference Tr., ECF No. 610 at PageID 13320–21(emphasis added).)

2. Interlocutory appeal of the Court's privilege order also may materially advance this litigation because such an appeal may "save judicial resources and litigant expense" by avoiding a second trial if FirstEnergy were to succeed on a post-judgment appeal. (Mot., ECF

---

[2]  Plaintiffs' efforts to distinguish *Coleman* and *irth Solutions* fall flat. They argue that *Coleman* is "inapt factually" because the defendants there had not admitted liability. (Pls. Opp. at PageID 14436 n.4.) But FirstEnergy has not admitted liability here either, much as Plaintiffs try to conflate the DPA's discussion of improper political contributions with securities fraud. As for *irth Solutions*, Plaintiffs are correct that the Section 1292(b) motion was unopposed, but that did not relieve the district court of its obligation to determine that the statutory criteria were met. Indeed, the Sixth Circuit accepted the appeal after determining that the defendant "ha[d] established that" the privilege issue presented was "a controlling question of law." Order at 2, *In re Windstream Commc'ns, LLC*, No. 18-305 (6th Cir. Aug. 7, 2018), ECF No. 17.

No. 661-1 at PageID 14384); *see Coleman*, 2012 WL 12952831 at *5 ("[T]he Court finds that post-judgment appeal on this point is highly probable. Resolving this issue now, before trial, may ultimately serve the interests of efficiency."); Order at 2, *In re Windstream Commc'ns, LLC*, No. 18-305 (6th Cir. Aug. 7, 2018), ECF No. 17 (concluding that appeal on privilege issue "may materially advance the termination of the litigation" because a "later appeal could require a second jury trial" (citing *Baker & Getty*, 954 F.2d at 1172)).

In response, Plaintiffs prophesize that even if the Sixth Circuit were to conclude on appeal from final judgment that the materials at issue here were wrongly compelled, it would find that the error was harmless in light of the overwhelming other evidence, and decline to require a new trial. (Pls. Opp. at PageID 14435 n.3.) But again, Plaintiffs cannot avoid interlocutory appeal by making bald, speculative assertions. Even if Plaintiffs had strong evidence on liability, which they do not, pointing to statements made by FirstEnergy's own lawyers and employees in what they assumed was a confidential and privileged setting likely would have a powerful effect on a jury. It is impossible to predict whether such evidence would be deemed harmless in advance.

Plaintiffs cite a number of cases that found the third Section 1292(b) factor lacking, but none helps them. In two cases, the court denied certification both because (i) discovery had already closed, such that an appeal would "prolong the trial date," and (ii) appeal would not have affected at least one significant pending claim. *Martin* v. *JBS Techs., LLC*, 2007 WL 9733710, at *2 (S.D. Ohio Mar. 6, 2007); *Binger* v. *Alpont Transp. LLC*, 2019 WL 8331431, at *4 (S.D. Ohio Nov. 18, 2019). Neither of those circumstances is present here. *First*, this case is not trial-ready: the Court's Order will likely *extend*, not shorten, the fact-discovery timeline; expert discovery has not begun; and the pending Rule 23(f) appeal may vacate class certification, requiring a new round

of class-certification briefing, discovery, and argument. *Second*, the materials covered by the Order may materially affect *all* of Plaintiffs' claims, including those under the Securities Act.

Plaintiffs' other two cases are also inapposite. In *Geary* v. *Green Tree Servicing LLC*, the issue was how to calculate a statutory damages cap, and "neither party ha[d] signaled to the Court in briefing or otherwise that the course of the litigation hinge[d] on" the issue. 2018 WL 7360570, at *1 (S.D. Ohio Oct. 11, 2018). And in *In re AEP Erisa Litigation*, the question presented concerned only "ancillary" claims in the case, not the "gravamen of the Consolidated Amended Complaint." 2005 WL 6342716, at *4 (S.D. Ohio Mar. 31, 2005). As such, resolution of that question would not have "affect[ed] the amount or scope of discovery" or "evidence to be introduced at trial," and it could not have "materially impact[ed] liability or damages issues." *Id.* The opposite is true here on each of those factors.

3. Finally, Plaintiffs repeatedly suggest that an interlocutory appeal would not affect the outcome of the litigation because FirstEnergy has waived any privilege or work-product protection. (*See* Pls. Opp. at PageID 14425–26, 14433, 14436, 14440.) But neither the Special Master nor this Court has ruled on Plaintiffs' waiver arguments. The Court cannot reject appellate review of the questions it *did* resolve by pointing to the questions it did *not*.

II. **PLAINTIFFS ALL BUT ADMIT THE EXISTENCE OF SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ON THE QUESTIONS PRESENTED.**

   A. **There Is Substantial Grounds for Disagreement with the Special Master's Interpretation of Section 1746.**

To begin, it is difficult to imagine a clearer example of a question of law on which there is substantial grounds for difference of opinion than the Special Master's interpretation of Section 1746. Between FirstEnergy's Objections and its Section 1292(b) motion, the company cited no fewer than nine decisions—including from the Second Circuit—rejecting the argument

that a declaration fails to comply with Section 1746 if it omits the words "true and correct." (*See* ECF No. 607-1 at PageID 13187–88 & n.8; ECF No. 661-1 at PageID 14374 & n.3.)  Both the Special Master and this Court correctly recognized that different opinions on this issue exist. (*See* Order Overruling FirstEnergy's Objs., ECF No. 653 at PageID 14252 ("Order"); Order on Motion to Compel, ECF No. 571 at PageID 12381 ("SM Order").)

Plaintiffs, however, say nothing about any of those cases.  Instead, they argue that there are no grounds for difference of opinion because, according to them, the Sixth Circuit definitively embraced the Special Master's interpretation of Section 1746 in *Milczak* v. *General Motors, LLC*, 102 F.4th 772, 781 (6th Cir. 2024). (*See* Pls. Opp. at PageID 14436.)  That is wrong.  The first declaration at issue in *Milczak* was not attested "under penalty of perjury," and the second "was not signed, dated, [or] sworn to under the penalty of perjury."  102 F.4th at 781.  The Court thus said nothing about the issue here:  whether a declaration that *is* signed, dated, and declared under penalty of perjury "necessarily represent[s] that what [the declarant] was saying was true," and therefore "is in substantial compliance with the requirements" of Section 1746.  *Callahan* v. *Emory Healthcare, Inc.*, 2019 WL 12405937, at *3 (N.D. Ga. Dec. 20, 2019).

Plaintiffs' argument that exclusion of evidence is reviewed for "abuse of discretion" is a red herring.  (Pls. Opp. at PageID 14436.)  It is a *per se* abuse of discretion to "improperly appl[y] the law or use[] an erroneous legal standard."  *United States* v. *Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (discussing review of evidentiary decision).  Here, the Court's privilege order concluded that the Special Master "properly followed *the law* . . . in disregarding" the O'Neil Declaration, because the "declaration lacked an essential element" "under the language of the statute."  (Order at PageID 14252 (emphasis added).)  That interpretation of the statute is the controlling question of law, on which there is ample ground for disagreement.

      **B.**      **There Is Substantial Grounds for Disagreement with the Special Master's Approach to Attorney-Client Privilege in Internal Investigations.**

Notably, Plaintiffs say even less about the attorney-client privilege issue than they do about Section 1746—and for good reason. They do not dispute that the Special Master "applied the same test for assessing the work-product issue to the separate attorney-client privilege question." (Mot. at PageID 14381 (citing SM Order at PageID 12384–86).) They do not dispute that this Court approved that approach. (*See id.* (citing Order at PageID 14262–63).) Nor do they ever engage with FirstEnergy's actual argument—that courts cannot use the exact same test for both work product and privilege, because "the motivations behind the internal investigation" matter for assessing work product but do not matter for the privilege analysis. (Order at PageID 14263.) As FirstEnergy has explained throughout this dispute, the attorney-client privilege question comes down to the *nature* of the advice at issue: if it is legal in nature, it does not matter whether the client had a business motivation for requesting that legal advice. (Mot. at PageID 14382.) Companies request legal advice in response to business needs every day, and those communications are privileged.

Rather than address this critical legal point at all, Plaintiffs say that some cases analyze whether "the predominant purpose of [a] communication [was] to render or solicit legal advice." (Pls. Opp. at PageID 14438 (citation omitted).) Even if that were correct,[3] neither the Special Master nor this Court considered the purpose or nature of the communications at issue. They instead asked whether business considerations "motivat[ed]" FirstEnergy and its Board to

---

[3]     As Plaintiffs acknowledge (Pls. Opp. at PageID 14438), there is a split among the federal courts of appeals, with some looking to whether legal advice is the "predominant purpose" of a communication and others looking to whether legal advice is a "significant purpose." *Compare In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) ("significant purpose"), *with In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021) ("predominant purpose"). The Sixth Circuit has not weighed in on this circuit conflict in a published opinion.

hire lawyers to conduct the investigations in the first place, and ruled against FirstEnergy because it "used the internal investigations for . . . business and employment decisions." (Order at PageID 14263.) Again, that was the wrong question as a matter of law. Even assuming that the Board, for example, wanted to determine only whether it had cause to terminate any executives, the reason to "retain lawyers to perform investigative work" in that kind of circumstance is to "benefit [from] a lawyer's expertise and judgment" in making that employment decision. *In re Allen*, 106 F.3d 582, 604 (4th Cir. 1997). Courts have uniformly found that such legal advice is privileged, so there is at least substantial grounds for difference of opinion. (*See* Mot. at PageID 14382–84.)

      C.    **There Is Substantial Grounds for Disagreement with the Special Master's Approach to Work Product in Internal Investigations.**

Plaintiffs' defense of the Special Master's hindsight-based legal framework for analyzing work product fares no better. Indeed, Plaintiffs do not even attempt to argue that it is appropriate to determine the precipitating cause of an internal investigation by looking to the client's later business "uses of the investigation." (Order at PageID 14377 (quoting SM Order at PageID 12384–85).) Instead, they advance the counterfactual narrative that the Special Master did not proceed that way. (Pls. Opp. at PageID 14437.) They are wrong. Plaintiffs quote the Special Master's statement that Plaintiffs "present[ed] an analytic chain that firmly and predominantly grounds the early investigation in the business necessity and human resources/public relations arena." (*Id.* (quoting SM Order at PageID 12384).) But that proves the point. To the extent Plaintiffs offered any "analytic chain," it worked *backwards*, as the only links in the "chain" are FirstEnergy's later business uses of the investigations.

Consider the evidence supporting the three supposed "business needs" that the Special Master concluded were the driving forces behind the Jones Day and Squire investigations. The first supposed need, "human resources," turns on FirstEnergy's eventual decision to terminate

-11-

or separate certain executives based on what the investigations revealed. (*See* SM Order at PageID 12384.) That is clearly analysis by hindsight—so much so that Plaintiffs do not even rely on that purported "business need" in defending the Special Master's analysis. (*See* Pls. Opp. at PageID 14437–38.) The second, the supposed need to "appease PwC" (FirstEnergy's independent auditor), derives from the fact that the Squire law firm met with PwC and shared certain information as its investigation was ongoing (*see* ECF No. 529 at PageID 11437)—as is routinely done with an external auditor when a company investigates potential wrongdoing. Plaintiffs offered no evidence from *before* the investigations to suggest that FirstEnergy's need to provide information to PwC caused it to initiate either investigation.[4] Thus, again, the Special Master took a common *later* business use of an internal investigation and treated it as proof that the need to satisfy FirstEnergy's auditor was the cause.

Third and finally, Plaintiffs claim that FirstEnergy had a preexisting need to "strik[e] a bargain with the government." (Pls. Opp. at PageID 14425.) That is just an oblique way of saying that FirstEnergy hired outside lawyers to defend and potentially resolve litigation with DOJ. It is settled law, however, that materials prepared with an eye toward settling litigation are protected work product. *See Fair Isaac Corp.* v. *Experian Inc.*, 2008 WL 11348223, at *5–8 (D. Minn. Nov. 3, 2008) ("courts have consistently held" that "processes and analyses used by a party to arrive at [a] settlement are protected by the work product doctrine"); *United States* v. *Adlman*, 134 F.3d 1194, 1198–1202 (2d Cir. 1998) (documents analyzing "the likelihood of settlement and its expected cost" do not lose protection just because they also serve "a business purpose").

---

[4] Moreover, Plaintiffs have never argued that the Jones Day investigation, as opposed to the Squire investigation, was commenced to satisfy PwC or any accounting requirements.

Plaintiffs also note that this Court's Order at one point stated the correct high-level test for work-product protection: whether the investigations would have been conducted in the same manner regardless of litigation. (Pls. Opp. at PageID 14437.) But as FirstEnergy explained in its opening brief, although the Court mentioned the correct legal standard in the abstract, in substance it adopted the Special Master's erroneous, hindsight-based framework. (Mot. at PageID 14378.) Many courts have rejected that exact approach to the work-product doctrine because it would swallow the protection: companies frequently, if not always, use the results of an internal investigation to make business decisions. (*See id.* at PageID 14379–80.) Accordingly, there is substantial grounds for difference of opinion on the legal framework for work product adopted by this Court.

### III. JONES AND DOWLING ARE INCORRECT TO CLAIM THAT THE COURT'S OPINION INVOLVES NO CONTROLLING QUESTIONS OF LAW.

For their part, Mr. Jones and Mr. Dowling assert that none of the three issues raised in FirstEnergy's motion qualifies as a controlling question of law. They are wrong on all counts.

*First*, Jones and Dowling say that the Court's interpretation of Section 1746 would not "affect the outcome" of this dispute, and is therefore not controlling, because this Court made an "alternative finding" that the O'Neil Declaration should be disregarded on other grounds. But the Court made no such finding—unsurprisingly, since it spent eight pages of the Order analyzing Section 1746-related issues. (Order at PageID 14249–58.)

Jones and Dowling point to two statements to support their assertion, but they misinterpret both. They first cite the Court's statement that the O'Neil Declaration "*may* be unreliable." (*Id.* at PageID 14253 (emphasis added); *see* Jones & Dowling Opp., ECF No. 667 at PageID 14469.) But the Court made that statement in rejecting FirstEnergy's additional argument that, even if the O'Neil Declaration failed to satisfy Section 1746, the Declaration should still be

-13-

deemed reliable and thus considered. (*See* Order at PageID 14252–53.) The Court was not saying that it would have disregarded the O'Neil Declaration as unreliable even if it had satisfied the statutory requirements.

Jones and Dowling next claim that the Court described the O'Neil Declaration as "conclusory." (Jones & Dowling Opp. at PageID 14469.) But in context, the Court was discussing a single statement made in FirstEnergy's brief, which in turn quoted one sentence in the O'Neil Declaration. (*See* Order at PageID 14267.) The Court never said, and could not realistically have said, that the *entire* O'Neil Declaration as a whole contains *only* conclusory statements. The O'Neil Declaration contains seven pages of explanation regarding the background and details of both the Jones Day and Squire investigations. (*See* ECF No. 511-1.)

*Second*, Jones and Dowling are wrong in claiming that this Court's decisions on the work-product and privilege issues are fact-bound rather than legal. On privilege, Jones and Dowling merely echo the Special Master and the Court's conclusions that FirstEnergy did not satisfy its burden to establish privilege because the investigations "also served business purposes." (Jones & Dowling Opp. at PageID 14470.) Again, that conclusion is based on applying the work-product standard to the attorney-client privilege question, which is the precise legal error FirstEnergy seeks to have the Sixth Circuit review.

On work product, Jones and Dowling claim that there is a factual dispute regarding whether the investigations were "'prompted' by litigation." (*Id.* at PageID 14469.) But it is *undisputed* that FirstEnergy and its Board retained the Jones Day and Squire law firms to conduct the investigations immediately after receiving word of the commencement of multiple litigations and government enforcement actions. (*See* Mot. at PageID 14377–78.) Plaintiffs have conceded that "[o]bviously no internal investigations would have taken place *but for the Department of*

*Justice investigation.*" (ECF No. 529 at PageID 11438 (emphasis added).) The question here is whether FirstEnergy's uses of that investigation for other purposes, which are also undisputed, change the legal outcome. That question, among the two others FirstEnergy presented, should be the subject of an immediate appeal. *See Elliott*, 845 F. Supp. 2d at 864 (question of law is one on which court of appeals can rule "without having to delve beyond the surface of the record in order to determine the facts").

### IV. A TEMPORARY STAY PRESERVING FIRSTENERGY'S ABILITY TO APPEAL IS WARRANTED.

Finally, neither Plaintiffs nor Jones and Dowling offer any good reason why this Court should not preserve the status quo while FirstEnergy seeks appellate review of the Order by temporarily staying its effect, if necessary.[5] No party contests that FirstEnergy will suffer irreparable harm if it is forced to disclose materials that the Sixth Circuit later determines are privileged. Nor do Plaintiffs or Jones and Dowling contend that a stay pending appeal will cause them significant prejudice, or dispute FirstEnergy's point that a stay will not appreciably affect the overall case schedule in light of the pending Rule 23(f) appeal and current discovery stay. They thus effectively concede that two of the four stay factors strongly militate in FirstEnergy's favor.

That leaves the merits and public interest factors. On the merits, Plaintiffs assert that the Court's Order "does not present a close call regarding [its] appealability" under Section 1292(b). (Pl. Opp. at PageID 14439.) For the reasons given above and in FirstEnergy's opening brief, that is wrong.

---

[5] FirstEnergy's position remains that all discovery should remain stayed pending the Sixth Circuit's resolution of the pending Rule 23(f) class-certification appeal. Argument has been set for July 17, 2024, a little over a month from now.

On the public interest, both Plaintiffs and Jones and Dowling scoff at the notion that the Court's Order "creates doubt and uncertainty" as to the applicability of both privilege and work-product protection to internal investigations. (*See* Pls. Opp. at PageID 14440; Jones & Dowling Opp. at PageID 14470–71.) But that argument just repeats the incorrect claim that this case involves nothing more than the application of settled law. The Special Master's decision, affirmed by this Court, turns on several highly contestable legal propositions—propositions that, at a minimum, may "*potentially* upend certain settled understandings and practices" related to internal investigations. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 762 (D.C. Cir. 2014) (emphasis added). As FirstEnergy explained in its opening brief, such "uncertainty matters in the privilege context, for the Supreme Court has told us that 'an uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Id.* at 763 (quoting *Upjohn Co.* v. *United States*, 449 U.S. 383, 393 (1981)); *see In re Lott*, 139 F. App'x 658, 662 (6th Cir. 2005) (explaining that the "public interest requires that the courts endeavor to clearly delineate the creation" of both the attorney-client privilege and work-product doctrines). Neither Plaintiffs nor Jones and Dowling respond to that point.

## CONCLUSION

For the reasons set forth above and in FirstEnergy's opening brief, the Court should certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b), and ensure that the Order remains temporarily stayed pending appellate review.

Dated: June 14, 2024                                     Respectfully submitted,

                                                         */s/ Paul J. Schumacher*
                                                         Paul J. Schumacher, Trial Attorney (0014370)

-16-

        DICKIE, MCCAMEY & CHILCOTE, P.C.
        600 Superior Avenue East
        Fifth Third Center, Suite 2330
        Cleveland, Ohio  44114
        Telephone:  (216) 685-1827
        pschumacher@dmclaw.com

        Richard J. Silk, Jr. (0074111)
        DICKIE, MCCAMEY & CHILCOTE, P.C.
        10 W. Broad Street, Suite 1950
        Columbus, Ohio  43215
        Telephone:  (614) 258-6000
        rsilk@dmclaw.com

        Robert J. Giuffra, Jr. (*pro hac vice*)
        Sharon L. Nelles (*pro hac vice*)
        David M.J. Rein (*pro hac vice*)
        Beth D. Newton (*pro hac vice*)
        Nicholas F. Menillo (*pro hac vice*)
        Hilary M. Williams (*pro hac vice*)
        Tasha N. Thompson (*pro hac vice*)
        SULLIVAN & CROMWELL LLP
        125 Broad Street
        New York, New York  10004
        Telephone:  (212) 558-4000

        Kamil R. Shields (*pro hac vice*)
        SULLIVAN & CROMWELL LLP
        1700 New York Avenue, N.W.
        Suite 700
        Washington, D.C.  20006
        Telephone:  (202) 956-7040

        *Counsel for Defendant FirstEnergy Corp.*

## DECLARATION OF SERVICE

I certify that the foregoing was filed electronically on June 14, 2024.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Paul J. Schumacher*
Paul J. Schumacher (0014370)

*Counsel for Defendant FirstEnergy Corp.*
