# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

## **OPINION & ORDER**

This matter is before this Court on Defendant First Energy's Motion for Certification of an Interlocutory Appeal and Stay Pending Appellate Review. (ECF No. 661). In its Motion, FirstEnergy seeks to have three questions regarding the discoverability of internal investigations certified to the Sixth Circuit for review. For the reasons that follow, the Motion is **DENIED**.

## I. BACKGROUND

This Court has previously summarized the facts giving rise to this action and, as a result, will do so only briefly here. (*See* ECF No. 435 at 1-13). Lead Plaintiff Los Angeles County Employees Retirement Association brought this now-consolidated suit on behalf of a putative class of investors, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"). (*Id.* at 1). Specifically, Plaintiffs allege that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history," while issuing SEC filings that failed to disclose the scheme, and once FirstEnergy's role was revealed, "the price of FirstEnergy stock plummeted." (ECF No. 72 at ¶¶ 3, 9, 101).

After Former Ohio House Speaker Larry Householder was arrested for his part in the scheme, FirstEnergy retained Squire Patton Boggs and Jones Day to conduct internal investigations, although the parties often treated the two internal investigations as one in briefing before this Court. (*See* ECF

No. 571 at 16). Plaintiffs and Defendants Michael J. Dowling and Charles E. Jones moved this Court to compel documents and information related to the internal investigations. (ECF No. 489). FirstEnergy opposed the Motion to Compel, asserting that the documents were protected by the work product doctrine and attorney-client privilege because the investigations were conducted in anticipation of litigation and for the purpose of legal advice (ECF No. 510), but Movants argued that FirstEnergy did not meet its burden to merit protection under those doctrines (ECF No. 489).

To support its arguments that the documents were protected, FirstEnergy submitted a declaration from James O'Neil (the "O'Neil Declaration" or "Declaration"), a member of FirstEnergy's Board of Directors. (ECF No. 511-1 at 1-7). He asserted that "the investigations were conducted because FirstEnergy was facing sudden and extraordinary legal risk from government investigations and litigations." (ECF No. 510 at 12). Aside from the O'Neil Declaration, FirstEnergy presented little other evidence, making only general references to lawsuits that the company faced and its cooperation with government entities. (*Id.* at 21-26; *see also* 607-1 at 64-67).

Following oral arguments and several rounds of briefing, the Special Master issued a decision in which he *sua sponte* raised a deficiency in the O'Neil Declaration: although the Declaration is signed and dated "under penalty of perjury," it does not affirm that its content is declared "as true." (ECF No. 571 at 8-9). The Special Master concluded that the deficiency was fatal to the Declaration's evidentiary value, pursuant to 28 U.S.C. § 1746, which sets forth parameters for the submission of declarations that are not notarized. (*Id.* at 9-13). In light of the dearth of other evidence supporting FirstEnergy's invocations of protection and privilege—FirstEnergy declined to maintain privilege logs or submit the investigations for *in camera* review—the Special Master granted the Motion to Compel. (*Id.* at 16).

FirstEnergy then requested a stay "pending final judicial resolution of FirstEnergy's

2

objections" to the decision (ECF Nos. 573, 574), and filed objections (ECF No. 607). This Court considered those objections in a thirty-page order, ultimately determining that the Special Master neither abused his discretion with respect to the O'Neil Declaration and the application of the work product doctrine, nor erroneously rejected the invocation of attorney-client privilege. (ECF No. 653).

Now, FirstEnergy moves this Court to certify three questions stemming from its earlier order for interlocutory appeal to the Sixth Circuit. (ECF No. 661). Both Plaintiffs and Defendants Jones and Dowling responded (ECF Nos. 664, 667), and FirstEnergy replied (ECF No. 671). The Motion is now ripe for review.

## II. LAW & ANALYSIS

Ordinarily, discovery decisions are not appealable because they are not final judgments that dispose of all issues in a case. *See* C. Wright. A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23 (hereinafter Wright & Miller) ("[T]he rule remains settled that most discovery rulings are not final"). But 28 U.S.C. § 1292(b) "provides for appeals on concurrent permission of the district court and the court of appeals." Wright & Miller § 3920. The statute provides that:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....

28 U.S.C. § 1292(b). In other words, "[t]he district court may certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '[1] the order involves a **controlling question of law** to which there is [2] **substantial ground for difference of opinion** and . . . [3] **an immediate appeal may materially advance the termination of the litigation.**'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting § 1292(b)). Requests under § 1292(b) are to be "granted sparingly." *In*

*re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

The first requirement—that a movant demonstrate that the question it seeks to certify is a controlling question of law—is best conceived of as a two-part inquiry. *See Binger v. Alpont Trans. LLC,* 2019 WL 8331431, at *2 (S.D. Ohio, Nov. 18, 2019) (Marbley, J.). The question must be both: (1) a pure question of law; and (2) controlling. *Id.* "A pure question of law should not require a close review of the record to decide it." *Id.* Indeed, "[t]he statutory language naturally suggests an opposition between a question of law and 'a question of fact or matter for the discretion of the trial court.'" Wright & Miller § 3930 (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970)). Because discovery decisions are generally left to the discretion of the trial court, they do not often create a legal question certifiable for interlocutory appeal. *See In re City of Memphis*, 293 F.3d at 351. Nonetheless, the Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" when "a privilege ruling involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

A controlling issue of law is one that "could materially affect the outcome of the case." *Id.* at 351. Certainly, "a question of law is controlling if reversal of the district court's order would terminate the action." *Binger*, 2019 WL 8331431, at *2. On the other end of the spectrum, a question is not controlling if the litigation would continue essentially in the same manner no matter how the question was decided. *Id.* Questions that inhabit the space between these two poles may be controlling, given that "'[t]he resolution of an issue need not *necessarily* terminate an action' or 'have precedential value for a number of pending cases' to be 'controlling.'" *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (1992) (emphasis added).

The second requirement—that there be a substantial ground for difference opinion—is comparatively straightforward. A party seeking to appeal an interlocutory order must show that there

is: (1) an actual difference of opinion within the controlling circuit; (2) a circuit split; or (3) that the question is a difficult issue of first impression. *See U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 866 (S.D. Ohio 2012).

The third requirement—that appeal of the question would materially advance the termination of the litigation—"is closely tied to the requirement that the order involve a controlling question of law." Wright & Miller § 3930. Indeed, the leading treatise on federal practice and procedure has observed that "[t]he choice to emphasize the 'controlling question of law' requirement or to emphasize instead the 'materially advance' requirement often seems a matter of chance." *Id.* Ultimately, "[a]n interlocutory appeal materially advances the litigation if it 'save[s] substantial judicial resources and litigant expense.'" *Binger*, 2019 WL 8331431, at *4 (quoting *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 851 (W.D. Tenn. 2010)).

### A. O'Neil Declaration

Given that exclusion of the O'Neil Declaration undergirds this Court's decisions on work product protection and attorney-client privilege, this Court begins with application of the § 1292(b) requirements to FirstEnergy's request to appeal the following question: must declarants aver that their statements are "true and correct under penalty of perjury" or is "under penalty of perjury" sufficient under 28 U.S.C. § 1746?

This Court must first decide whether FirstEnergy's proposed question is a pure and controlling question of law. Under this Court's Local Civil Rules, "evidence in support or opposition to a motion shall be presented in the form of 'affidavits, declarations pursuant to 28 U.S.C. § 1746, admissions, verified interrogatory answers, and other documentary exhibits.'" *Enigwe v. Diversity City Media*, No. 2:07-CV-250, 2008 WL 11352583, at *1 (S.D. Ohio June 2, 2008) (quoting S.D. Ohio Local Civ. R. 7.2(e)). "While an 'affidavit' is required to be sworn to by the affiant in front of an 'officer

5

authorized to administer oaths,'" or in modern parlance, notarized, "28 U.S.C. § 1746 allows for 'unsworn declarations under penalty of perjury.'" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (quoting Black's Law Dictionary 54 (5th ed. 1979)). Given that the O'Neil Declaration was not notarized, the Special Master examined whether it complied with 28 U.S.C. § 1746 such that it could be considered evidence. Section 1746 provides that whenever a sworn declaration or affidavit is required to support "any matter":

> Such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is **subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:**
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

28 U.S.C. § 1746 (emphasis added). The O'Neil Declaration is bookended by the following statements:

> I, James F. O'Neil, III, hereby declare under penalty of perjury as follows:

> Executed on July 26, 2023.
>
> /s/
> James F. O'Neil, III

Because Mr. O'Neil only acknowledged that he made the declaration "under penalty of perjury" but did not declare the contents of the declaration to be true, the Special Master concluded that the document was "just a document and not a declaration constituting evidence that a factfinder

6

and a federal court can credit under 28 U.S.C. § 1746." (ECF No. 571 at 9). The Special Master acknowledged that the Sixth Circuit has not weighed in on this precise issue—whether a document without language affirming its truth can be "substantially" in the form laid out in § 1746—but looked to persuasive authority from district courts and other circuits in reaching his conclusion. (*See id.* at 9-12). Even though the Special Master was of the view that "[a] minority of courts reviewed might accept the O'Neil declaration," he concluded that those courts inappropriately read the word "true" out of 28 U.S.C. § 1746. (*Id.* at 11-12). He reasoned that "the 'true' verification and the 'under penalty of perjury' verification convey two related but distinct concepts: a declarant can state falsehoods while recognizing he or she is under penalty of perjury because the declarant has not declared the statement to be true." (*Id.* at 12). And to account for the fact that the text of § 1746 allows declarants to make their verifications in "substantially" the form laid out in the statute, the Special Master explained that while "each ingredient can be expressed in different ways," "the recipe for a sufficient declaration remains fixed." (*Id.* at 12-13). A declarant must "expressly state that he or she is alleging the contents of the declaration *to be true* while acknowledging he or she risks the legal consequences of committing perjury." (*Id.*). And in the Special Master's view, "FirstEnergy's argument falls apart without the O'Neil Declaration." (*Id.* at 15). Accordingly, the Special Master granted the Motion to Compel the internal investigations.

FirstEnergy objected to the Special Master's Order, arguing that § 1746 "require[s] only substantial compliance" with its terms, and that the O'Neil Declaration meets that threshold. (ECF No. 607-1 at 29-34). This Court reviewed the Special Master's conclusion for abuse of discretion, despite FirstEnergy's contention that it ought to be reviewed *de novo*, and concluded that the Special Master did not err under either standard. (ECF No. 653 at 8).

Having already concluded that the Special Master did not err in excluding the O'Neil

7

Declaration, it is not this Court's role to revisit the merits now. Instead, this Court is charged with determining whether the decision to exclude based on non-compliance with § 1746 is appropriate for interlocutory certification. FirstEnergy asserts that because the interpretation of a statute is a question of law, this Court ought to ask the Sixth Circuit to interpret § 1746 and decide whether the "as true" attestation is essential. Plaintiffs, on the other hand, argue that the decision to exclude the Declaration was an example of the Special Master and this Court exercising discretion to govern the discovery process. Such exercises of discretion are not typically reviewable on interlocutory appeal. *See In re City of Memphis*, 293 F.3d at 350 ("An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under § 1292(b)."); *Atlantic City Elec. Co. v. A. B. Chance Co.*, 313 F.2d 431, 434 (2d Cir. 1963) ("Questions of this sort, involving the discretion of the judge in conducting pre-trial discovery proceedings, should not be reviewed by an appellate court at this stage of a litigation except where there has been a manifest abuse of discretion."); *see also* 9 J. Moore, Moore's Federal Practice ¶ 110.22[5] (2d ed. 1986) (noting that review for abuse of discretion is generally not suited to § 1292(b) appeals because there is no controlling question of law). FirstEnergy replies that Plaintiffs' invocation of the "abuse of discretion" standard is a "red herring" because it is always an abuse of discretion when a court applies the wrong legal standard. (ECF No. 671 at 10).

FirstEnergy is correct that "[a]lthough a court is afforded broad discretion when deciding discovery matters, the court abuses its discretion when its decision is based on an erroneous view of the law." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011). And "the questions of law that guide the exercise of discretion are as suitable for interlocutory review as any other questions of law." Wright & Miller § 3930.

Nonetheless, on multiple occasions, the Sixth Circuit has explained that district courts are merely exercising their discretion when they decide to admit or exclude declarations pursuant to §

8

1746. Before turning to those cases, surveying a few others helps set the stage. In *Bonds v. Cox*, the Sixth Circuit addressed a party's argument that the district court "should have reconsidered its grant of summary judgment" when she submitted new declarations in support of her motion. 20 F.3d 697, 702 (6th Cir. 1994). But the Sixth Circuit rejected the argument because the declarations she submitted were undated, and therefore, "technically deficient." *Id.* In so doing, the Court explained that "[g]iven the explicit language of the statute," which explains that "[u]nsworn declarations are permitted to be used as evidence only if 'subscribed . . . as true under penalty of perjury, *and dated*,'" undated declarations "must therefore be excluded from consideration." *Id.*

But in *Peters v. Lincoln Elec. Co.*, the Sixth Circuit responded to the plaintiff's argument that the district court committed reversible error by considering an undated declaration. 285 F.3d 456, 475 (6th Cir. 2002). There, the court reasoned that extrinsic evidence in the case was "more than sufficient" to "demonstrate the 'period' in which [the declarant] signed the document," and that the district court's consideration of it was proper. *Id.* at 476. The court also noted that the declarant submitted a revised, dated declaration upon realizing his mistake. *Id.*

Then, in *Counts v. Kraton Polymers, U.S. LLC*, a litigant relied on the decision in *Peters* to argue that the district court erred in rejecting an undated declaration "based on its belief that it was **required** to strike, *sua sponte*, each of his three separate declarations as undated, '[p]ursuant to the binding precedent' of *Bonds v. Cox*." 260 F. App'x 825, 829 (6th Cir. 2008). With respect to the applicable standard of review, the court explained that "[e]videntiary issues such as a district court's refusal to consider an affidavit are reviewed for abuse of discretion." *Id.* at 829. Applying the abuse of discretion standard to the district court's application of § 1746, the Sixth Circuit concluded that "the district court did not abuse its discretion in striking the declarations" because "this court in *Peters* did not overturn the decision in *Bonds*" and § 1746 "requires that unsworn declarations be dated." *Id.*

9

The court then elaborated further on the applicable standard of review. Because the proponent of the undated declarations pointed to "a number of district court decisions which he contends reject the rigid approach of the court below," the court took care to explain that those decisions were simply "examples of district courts exercising their discretion." *Id.* at n.1. The Sixth Circuit unambiguously conceived of its task as "determin[ing] whether the district court abused its discretion." *Id.*

Several published Sixth Circuit opinions have applied the same standard of review to district courts' decisions to exclude a declaration pursuant to § 1746. In *Blount v. Stanley Eng'g Fastening*, the court noted that it reviews "a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard," including the "review of a district court ruling on a motion to strike an affidavit." 55 F.4th 504, 515 (6th Cir. 2022). The court went on to hold that the district court did not abuse its discretion in excluding the unsworn, electronically signed declaration in question because it "was not a proper declaration under 28 U.S.C. § 1746." *Id.* And most recently, the court in *Milczak v. Gen. Motors, LLC* reviewed the exclusion of a purported declaration pursuant to § 1746 for abuse of discretion. 102 F.4th 772, 781 (6th Cir. 2024) (Bloomekatz, J.), *reh'g denied Milczak v. Gen. Motors, LLC*, 2024 WL 3205990 (6th Cir. June 17, 2024).[1]

As explained above, "[a]n allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under § 1292(b)." *In re City of Memphis*, 293 F.3d at 350. This is "not only because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts generally should not interfere." Wright & Miller, § 3930. Indeed, "[a]ppellate courts frequently note the inappropriateness of interlocutory review of most

---

[1] Indeed, on the merits, *Milczak* broke down § 1746's requirements into four prongs, distinguishing between an attestation of truth and an acknowledgement of penalty of perjury: "Under that statute, [the declarant] must, at the very least, (1) sign the declaration, (2) declare its contents as true, (3) swear under the penalty of perjury, and (4) provide a date." *Id.* The distinction between the truth attestation and the perjury acknowledgment was essential to the court's conclusion in *Milczak*: the declarant there had stated the document was true but had not sworn it under penalty of perjury.

discretionary orders." *Id.* Absent a manifest abuse of discretion and in light of the Sixth Circuit's clarity on the discretion afforded to courts applying § 1746 to exclude or accept a declaration, this Court sees no reason to deviate from that principle here.

This Court understands and has given a great deal of thought to FirstEnergy's contention that the Special Master's and this Court's application of § 1746 is nonetheless a question of law, certifiable for interlocutory appeal. It is true that certain discovery decisions, like the application of attorney-client privilege, are reviewed *de novo*. *In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251, 253 (6th Cir. 1996) (reviewing attorney-client privilege questions *de novo* because the court believed them to be "legal questions, not questions of fact"). And as mentioned above, "the questions of law that guide the exercise of discretion are as suitable for interlocutory review as any other questions of law." Wright & Miller § 3930. For example, a district court in the Southern District of Mississippi certified a question about interpretation of an immigration statute, reasoning that "[a]lthough a contrary resolution of [the interpretation of the statute] would alter the Court's ultimate discovery order, the question itself is a preliminary determination of law." *Cazorla v. Koch Foods of Mississippi, LLC*, 2015 WL 3970606, at *2 (S.D. Miss. June 30, 2015). When that case reached the Fifth Circuit, the court "review[ed] the district court's statutory interpretation de novo and its Rule 26 balancing analysis for abuse of discretion." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 547 (5th Cir. 2016). These lines of reasoning have some persuasive force.

But ultimately, the Sixth Circuit has held that a district court validly exercises its discretion when it requires all elements laid out in § 1746 to be present for a document to take on evidentiary value.[2] *Blount*, 55 F.4th at 515. Even though the Sixth Circuit has only applied this principle to

---

[2] The Sixth Circuit has acknowledged that some discovery issues that might otherwise seem to be issues of law are nonetheless reviewed for abuse of discretion. In *United States v. Roxworthy*, a litigant argued that *de novo* review should apply to claims of work product protection because *de*

11

undated declarations and those without perjury language, there is no reason to conclude that a district court has any less discretion to require that the phrase "true and correct" appear in the declaration.[3]

Given that the Sixth Circuit has found, on multiple occasions, that a decision to exclude or include a declaration under § 1746 is up to the district court's discretion, this court identifies no question of law appropriate for certification. As a result, it need not explore the remainder of the § 1292(b) inquiry: whether such a question would be controlling, whether there are substantial grounds for disagreement, or whether resolving it at this juncture would materially advance the termination of the litigation.

### B. Work Product Doctrine

This Court turns now to FirstEnergy's related contention regarding the application of the work product doctrine. FirstEnergy requests that this Court certify the following question for interlocutory review: does work product created by outside counsel during an internal investigation prompted by government enforcement actions and the filing of numerous lawsuits lose work-product protection if the client also later relies on some of those materials to make business decisions?

To show that a document is protected by work-product doctrine, the party invoking the privilege—here, FirstEnergy—must show that the document was "created because of a party's . . .

---

*novo* review applied to questions of attorney-client privilege. 457 F.3d 590, 593 n.1 (6th Cir. 2006) (Cole, J.). But the Sixth Circuit explained that "[t]he discrepancy in standards of review for these two privilege issues exists because, in establishing the abuse-of-discretion standard of review for work product privilege claims, we focused on the fact that privilege issues are discovery-related, and applied the deferential review typically accorded to district court decisions about the scope of discovery," but "in establishing the standard of review for attorney-client privilege claims, we focused on whether privilege was a question of law or fact, and, upon concluding it was a question of law, applied de novo review." *Id.* Just like the Sixth Circuit in *Roxworthy*, "we are bound by the earliest existing published precedent" establishing that § 1746 decisions are reviewed for abuse of discretion. *See Blount*, 55 F.4th at 515.

[3] This Court understands that FirstEnergy believes that the phrase "true and correct" is less essential than a date or perjury language. But it is not this Court's role to wade into those merits here. Instead, its role is to determine whether the question is a legal one appropriate for certification, or one for which district courts have discretion.

anticipation of litigation, as contrasted with an ordinary business purpose." *Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Not only must a party show that the document was indeed prepared because of their subjective anticipation of litigation, but also that their subjective anticipation was objectively reasonable. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). Even if documents are used in both the ordinary course of business and in anticipation of litigation, they may retain work-product protection, so long as they "were prepared or obtained because of the prospect of litigation." *McNeil v. Mount Carmel Health Sys.*, 2:20-cv-258, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021).

Having set aside the O'Neil Declaration, the Special Master concluded that "FirstEnergy has failed to carry its burden to demonstrate it would not have commissioned substantially similar investigations to determine which employees were involved in a massive criminal corruption scheme but for the possibility of litigation." (ECF No. 571 at 14). FirstEnergy contended in its objections to the Special Master's order that he erred in using a "primary or sole purpose" test, as opposed to the "obtained because of the prospect of litigation" standard. (ECF No. 607-1 at 44). In other words, FirstEnergy believes that the Special Master erroneously focused on the eventual uses of the investigations, not whether they would have been created but for litigation. Upon review of the order, this Court concluded that the Special Master applied the correct standard and did not abuse his discretion in determining that FirstEnergy failed to meet its burden by simply referencing lawsuits against the company. (ECF No. 653 at 22-23).

Again, under § 1292(b), this Court must first determine whether FirstEnergy presents a controlling issue of law. And again, FirstEnergy's argument falters at the first step. Most fundamentally, FirstEnergy's proposed question of law does not have relevance to this Court's earlier order, and for that reason, it cannot be "controlling." *See Mohawk*, 558 U.S. at 111 (explaining that

13

a controlling issue of law is one that "could materially affect the outcome of the case."). To ask the Sixth Circuit to decide whether "work product created by outside counsel during an internal investigation prompted by government enforcement actions and the filing of numerous lawsuits loses work-product protection if the client also later relies on some of those materials to make business decisions" relies on an erroneous predicate. The Special Master concluded that FirstEnergy failed to present evidence that the investigations were produced in anticipation of litigation, and this Court found that the decision was not an abuse of discretion. Indeed, this Court held that "FirstEnergy did not provide specific, non-conclusory evidence to establish that litigation was the 'driving force behind the preparation' of the disputed materials," particularly since it did not utilize a privilege log or "submit documents to the Special Master for in camera review." (ECF No. 653). To premise a "pure question of law" on a predicate that contradicts this evidentiary conclusion is, at best, logically fallacious, and at worst, an unwelcome attempt at a sleight of hand. As Defendants Jones and Dowling put it, certifying FirstEnergy's suggested question would be "academic," given its irrelevance to the facts of this case.

Moreover, it is unambiguous that courts review work product privilege issues for abuse of discretion. *Roxworthy*, 457 F.3d at 592. Absent a "manifest abuse of discretion," this Court declines to certify for interlocutory review an issue within the trial court's broad discretion to manage the discovery process. *See Atl. City Elec. Co.*, 313 F.2d at 434 ("Questions of this sort, involving the discretion of the judge in conducting pretrial discovery proceedings, should not be reviewed by an appellate court at this stage of a litigation except where there has been a manifest abuse of discretion."). Given that this Court already determined that the Special Master did not abuse its

14

discretion, there is no question to certify.

### C. Attorney Client Privilege

Finally, FirstEnergy requests that this Court certify the following question pertaining to attorney client privilege: do attorney-client communications made during the course of an internal investigation to facilitate legal advice lose their privileged status if the request for legal advice was also motivated by business purposes? FirstEnergy alternatively phrases the question as "whether an internal investigation's predominant purpose must be legal for the attorney-client privilege to apply." (ECF No. 661-1 at 18). The alternate phrasings of the question highlight different issues with respect to different prongs of the § 1292(b) test.

As this Court has laid out before, "[w]here a client seeks legal advice from a professional legal advisor, the communications relating to that purpose made in confidence are protected by the attorney-client privilege." *In re OM Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005). Claims of attorney-client privilege are "narrowly construed," since the privilege "reduces the amount of information discoverable during the course of a lawsuit." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293-94 (6th Cir. 2002). That is, only disclosures "necessary to obtain informed legal advice" and which "might not have been made absent the privilege" are protected. *Fisher v. United States*, 425 U.S. 391, 403 (1976). "When a communication involves both legal and non-legal matters," such as business considerations, courts within the Sixth Circuit "'consider whether the predominant purpose of the communication is to render or solicit legal advice.'" *United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 867 (2024) (quoting *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015)). Attorney-client privilege questions are mixed questions of law and fact that are reviewed *de novo*. *Id.*

Because the application of attorney-client privilege is a mixed question of law and fact, this

15

question is the only one of the three proposed that can be conceived of us as a question of law, potentially suitable for interlocutory appeal. But FirstEnergy's first framing of the question—whether attorney-client communications made during the course of an internal investigation *to facilitate legal advice* lose their privileged status *if the request for legal advice* was also motivated by business purposes—highlights the fact that it suffers from the same logical infirmity as FirstEnergy's proffered question regarding work product doctrine. As Defendants Jones and Dowling astutely point out, the question is predicated on an evidentiary conclusion contrary to the one reached by the Special Master and this Court. (ECF No. 667 at 3). Specifically, the question presupposes that the documents FirstEnergy seeks to protect were indeed created to facilitate legal advice. But as this Court explained when it conducted a *de novo* review of the Special Master's privilege determination, "pointing to impending lawsuits does not establish that individual communications and documents are privileged because within those materials, attorneys could be acting as business or human resources advisors and not as legal advisors." (ECF No. 653). As a result, the question is not relevant to this litigation, and therefore is not controlling.

The second framing of the question—whether an internal investigation's predominant purpose must be legal for the attorney-client privilege to apply—highlights a second issue: there is no "substantial ground for difference of opinion" regarding the predominant purpose test, as required by § 1292(b). First, FirstEnergy insists that it is "aware of no case supporting" the proposition that "an internal investigation's 'predominant purpose must be legal for the privilege to apply.'" (ECF No. 661-1 at 19 (quoting ECF No. 653 at 19)). Then, when confronted with Plaintiffs' citation to *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015), which explains that "we 'consider whether the predominant purpose of the communication is to render or solicit legal advice,'" FirstEnergy pivots to asserting that "the Sixth Circuit has not weighed in on" the circuit conflict

16

regarding use of the phrase "predominant purpose" or "significant purpose" in a published opinion. (ECF No. 671 at 11 n.3). But it has. *See United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 867, 218 L. Ed. 2d 55 (2024) ("When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.'"). There is no need to ask the Sixth Circuit whether an internal investigation's predominant purpose must be legal for the attorney-client privilege to apply; it has already told us. Whether other circuits phrase the test somewhat differently is of no moment.

And this Court reviewed the Special Master's order *de novo*, determining that FirstEnergy simply did not meet its burden.[4] Simply put, FirstEnergy did not present this Court with any evidence to support its contention that the internal investigations were predominantly for legal advice. Parties invoking the privilege have an "obligation to identify with particularity the privileged documents and why these documents are privileged." *In Rospatch Sec. Litig.*, 1991 WL 574963, at *8 (W.D. Mich. Mar 14, 1991). But there is no privilege log, nor any request for *in camera* review. And were this Court to have accepted FirstEnergy's suggestion that documents produced by law firms are privileged because one generally seeks legal advice from lawyers (ECF No. 671 at 11-12), it would have undermined all nuance to the attorney-client privilege doctrine.

\* \* \*

In sum, neither FirstEnergy's proposed question regarding the O'Neil Declaration's deficiency, nor the application of the work product doctrine are controlling questions of law certifiable for interlocutory appeal. And with respect to the third question, the issue of law is not relevant to the

---

[4] Any quibbles FirstEnergy may have with the attorney-client privilege standard applied in the Special Master's order are no longer relevant as this Court reviewed the application of attorney-client privilege *de novo*, and determined that it did not shield the internal investigations from disclosure. FirstEnergy seeks certification of questions relevant to this Court's earlier order, not the Special Master's order. Therefore, the legal standards applied in the Special Master's analysis only remain relevant for the portions of his order that this Court reviewed for abuse of discretion.

facts of this litigation, and there are no substantial grounds for disagreement.

### III. CONCLUSION

For the foregoing reasons, Defendant FirstEnergy's Motion for Certification of an Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Stay Pending Appeal (ECF No. 661) is **DENIED**.

**IT IS SO ORDERED.**

Date: July 12, 2024

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**