UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | CLASS ACTION |
| This Document Relates To: | ) | Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson |
| ALL ACTIONS. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY INDUSTRIAL ENERGY USERS-OHIO TO PRODUCE DOCUMENTS

**[REDACTED]**

MURRAY MURPHY MOUL
+ BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com

Class Counsel

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....... 1

II. RELEVANT FACTUAL BACKGROUND ....... 2

A. FirstEnergy Admits that It Entered Into a Side Deal with IEU-Ohio ....... 2

B. The PUCO, USAO, and Ohio AG Further Acknowledge FirstEnergy and IEU-Ohio's Fraudulent Side Deal ....... 3

III. LEGAL STANDARD ....... 5

A. The Withholding Party Bears the Burden of Establishing Any Asserted Privilege or Protection, Which Must Be Described with Particularity ....... 5

B. The Crime-Fraud Exception Overrides Any Protection ....... 6

IV. ARGUMENT ....... 7

A. IEU-Ohio Has Failed to Substantiate Its Claims ....... 7

B. The Material Sought Is Subject to the Crime-Fraud Exception ....... 9

V. CONCLUSION ....... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Biegas v. Quickway Carriers, Inc.*,
573 F.3d 365 (6th Cir. 2009) ....................5

*Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*,
2016 WL 11580593 (E.D. Mich. Dec. 22, 2016) ....................8

*Cooey v. Strickland*,
269 F.R.D. 643 (S.D. Ohio 2010) ....................7

*Drummond Co., Inc. v. Conrad & Scherer, LLP*,
885 F.3d 1324 (11th Cir. 2018) ....................13

*In re the 2020 Review of the Delivery Cap. Recovery Rider of Oh. Edison Co., the Cleveland Elec. Illuminating Co., and the Toledo Edison Co.*,
No. 20-1629-EL-RDR (PUCO Dec. 15, 2021) ....................3

*In re Antitrust Grand Jury*,
805 F.2d 155 (6th Cir. 1986) ....................6

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
293 F.3d 289 (6th Cir. 2002) ....................6

*In re FirstEnergy Corp. Sec. Litig.*,
2022 WL 17075838 (S.D. Ohio Nov. 18, 2022),
*objections overruled*, 2023 WL 142078
(S.D. Ohio Jan. 10, 2023) ....................4, 7, 11

*In re FirstEnergy Corp. Sec. Litig.*,
2023 WL 8100096 (S.D. Ohio Nov. 20, 2023),
*objections overruled*, 2024 WL 579744 (S.D. Ohio Feb. 13, 2024)....................9, 13

*In re Grand Jury 2021 Subpoenas*,
87 F.4th 229 (4th Cir. 2023) ....................13

*In re Grand Jury Subpoenas*,
454 F.3d 511 (6th Cir. 2006) ....................6

*In re Haynes*,
577 B.R. 711 (Bankr. E.D. Tenn. 2017) ....................5

*In re Impounded Case (Law Firm)*,
879 F.2d 1211 (3rd Cir. 1989) ....................13

**Page**

*McNeil v. Mount Carmel Health Sys.*,
2021 WL 5235103 (S.D. Ohio Nov. 10, 2021)....................6

*Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*,
2020 WL 1917837 (E.D. Va. Apr. 20, 2020) ....................13

*Oberthaler v. Ameristep Corp.*,
2010 WL 1506908 (N.D. Ohio Apr. 13, 2010)....................8

*Ohio Consumers' Counsel v. Pub. Utils. Comm'n*,
856 N.E.2d 213 (2006)....................11

*Reed v. Baxter*,
134 F.3d 351 (6th Cir. 1998) ....................5

*State v. Dowling*,
No. CR-2024-02-0473-B (Summit C.P.) ....................4

*State v. IEU-Ohio Administration Co. LLC*,
No. CR-2024-02-0473-D (Summit C.P.)....................1, 3, 4, 11

*State v. Jones*,
No. CR-2024-02-0473-C (Summit C.P.) ....................4

*State v. Sustainability Funding Alliance of Ohio, Inc.*,
No. CR-2024-02-0473-E (Summit C.P.) ....................4

*United States v. Coffman*,
2011 WL 1466298 (E.D. Ky. Apr. 18, 2011) ....................6

*United States v. Collis*,
128 F.3d 313 (6th Cir. 1997) ....................6, 9, 13

*United States v. Dakota*,
197 F.3d 821 (6th Cir. 1999) ....................5

*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012) ....................11

*Zigler v. Allstate Ins. Co.*,
2007 WL 1087607 (N.D. Ohio Apr. 9, 2007)....................6

**STATUTES, RULES, AND REGULATIONS**

Ohio Revised Code
§4928.145....................3, 10, 13

**Page**

Ohio Civil Rules of Procedure
Rule 26.1(a) .......... 5

Federal Rule of Civil Procedure
Rule 26(b)(5) .......... 5
Rule 45 .......... 2

Plaintiffs respectfully submit this memorandum of law in support of their Motion to Compel Non-Party Industrial Energy Users-Ohio ("IEU-Ohio") to Produce Documents.[1]

## I. INTRODUCTION

Samuel Randazzo – a man with whom FirstEnergy has admitted conspiring – served as general counsel for IEU-Ohio, a trade-group of Ohio energy users, from 1992 until his appointment as Chairman of the Public Utilities Commission of Ohio ("PUCO") in 2019. IEU-Ohio is withholding over 100 relevant documents from discovery, yet it has failed to meet its initial burden to establish that any privilege or protection applies as its privilege logs are devoid of basic (necessary) information and are comprised of conclusory assertions related to the mere financial terms of the agreement.

Even if IEU-Ohio had provided sufficient information to enable Plaintiffs and the Court to evaluate the applicability of the claimed privilege or protection, such claims would be subject to the crime-fraud exception. FirstEnergy has admitted in its Deferred Prosecution Agreement ("DPA") that it paid $4.3 million to Randazzo's shell entity, Sustainability Funding Alliance of Ohio, Inc. ("SFAO"), to bribe Randazzo. *See* Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6033-34. FirstEnergy's $4.3 million bribe "represented the remaining payment amounts designated in the [unsigned 2015] amended consulting agreement [between SFAO and FirstEnergy] from 2019 through 2024." *Id.* at PageID 6034. "The 2015 amendment ***coincided with and was made in exchange for [Randazzo]'s industrial group, [IEU-Ohio,] withdrawing its opposition to a 2014 PUCO Electric Security Plan settlement package [ESP-IV]***." *Id.* at

[1] "Plaintiffs" refers to Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund.

6033-34.[2] Thereafter, from 2016 to 2018, IEU-Ohio received millions of dollars from FirstEnergy through SFAO. And while "Ohio law requires disclosure of such [side] agreements," FirstEnergy and IEU-Ohio's *quid-pro-quo* agreement was never disclosed in ESP-IV.[3] Accordingly, the crime-fraud exception applies to any communications and/or work-product related to entering into, performing, or otherwise furthering this fraudulent agreement.

Thus, Plaintiffs respectfully request that the Court issue an order finding that IEU-Ohio has failed to carry its burden as to the highlighted documents identified in Exhibit 1 and/or that all communications and/or work product related to the undisclosed agreement are subject to the crime-fraud exception and must be produced.[4]

## II. RELEVANT FACTUAL BACKGROUND

### A. FirstEnergy Admits that It Entered Into a Side Deal with IEU-Ohio

On July 20, 2021, FirstEnergy admitted: (i) it "paid $4.3 million dollars to [Randazzo] through his consulting company [SFAO] in return for [him] performing official action in his capacity as [PUCO] Chairman to further FirstEnergy Corp.'s interests" (Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6016); (ii) its "consulting agreement [with SFAO] was subsequently

---

[2] "ESP-IV" refers to certain FirstEnergy utilities' Electronic Security Plan ("ESP") application filed before PUCO. Although the evidence to date confirms that FirstEnergy's $4.3 million payment was intended as a bribe for Randazzo's benefit, certain defendants, including Jones and Dowling, have portrayed the payment as a final settlement payment for IEU-Ohio. *See, e.g.*, Status Report, ECF 438 at PageID 9896-97. Additionally, unless otherwise noted, citations are omitted and emphasis added.

[3] *See* Press Release, *PUCO expands FirstEnergy utility rate audit: Commission expands its ongoing proceeding*, PUCO (Dec. 15, 2021), available at https://puco.ohio.gov/news/fe-dcr-3.

[4] Plaintiffs' Exhibit 1, attached to the Declaration of Rachel A. Cocalis in Support of Plaintiffs' Motion to Compel Non-Party IEU-Ohio to Produce Documents (the "Cocalis Decl."), filed concurrently herewith, is a compilation of IEU-Ohio's eight privilege logs produced in response to Plaintiffs' February 8, 2023 Second Subpoena for Documents and defendant Charles Jones's May 9, 2022 Subpoena for Documents pursuant to Federal Rule of Civil Procedure 45. Highlighted entries represent documents that Plaintiffs allege are improperly withheld.

amended in 2015" and provided for payments to SFAO through 2024 (*id.* at PageID 6033); (iii) "[t]he 2015 amendment ***coincided with and was made in exchange for [Randazzo]'s industrial group [IEU-Ohio] withdrawing its opposition to a 2014 PUCO Electric Security Plan settlement package [ESP-IV]***" (*id.* at PageID 6033-34); and (iv) its $4.3 million bribe to Randazzo "represented the remaining payment amounts designated in the [2015] amended consulting agreement from 2019 through 2024. FirstEnergy Corp. was under no legal obligation to make the payment at that time." *Id.* at PageID 6034.

### B. The PUCO, USAO, and Ohio AG Further Acknowledge FirstEnergy and IEU-Ohio's Fraudulent Side Deal

On December 15, 2021, PUCO expanded its utility rate investigation and audit of FirstEnergy in connection with FirstEnergy's House Bill ("HB6") corruption scheme to include the issue of whether FirstEnergy improperly failed to disclose its "side deal" with IEU-Ohio because of FirstEnergy's admissions and the fact that "records of communications and other documents from [FirstEnergy] . . . corroborat[ed] that there was a side agreement" that was not disclosed under Ohio R.C. §4928.145.[5]

On November 29, 2023, the United States Attorney's Office for the Southern District of Ohio (the "USAO") indicted Randazzo for conspiracy to commit travel act bribery, travel act bribery, honest services wire fraud, and making illegal monetary transactions in connection with defendants' HB6 bribery scheme. *See* Plaintiffs' Response, Ex. 1 (Federal Indictment), ECF 579-2. The Federal Indictment noted that Randazzo carried out his and defendants' criminal scheme, in part, through the following methods and means:

---

5 *In re the 2020 Review of the Delivery Cap. Recovery Rider of Oh. Edison Co., the Cleveland Elec. Illuminating Co., and the Toledo Edison Co.*, No. 20-1629-EL-RDR, Entry at 1-6 (PUCO Dec. 15, 2021) (the "PUCO Order"), available at https://dis.puc.state.oh.us/ViewImage.aspx?CMID=A1001001A21L15B44634G00105.

- "Through [FirstEnergy], co-conspirators [Charles Jones and Michael Dowling] caused a $4,333,333 payment of money to SFA[O] for RANDAZZO's benefit with the intent and for the purpose that, in return, RANDAZZO would perform official action in his capacity as a public official on PUCO, as requested and as opportunities arose. . . . Randazzo used the $4,333,333 payment from [FirstEnergy] Service Co. to SFA[O] for his own personal benefit." Plaintiffs' Response, Ex. 1 (Federal Indictment), ECF 579-2 at PageID 12759.

- "It was part of the scheme that the defendant, SAMUEL RANDAZZO, entered into agreements and arrangements on behalf of [IEU-Ohio] and its members, which resulted in companies making payments ('settlement payments') to [IEU-Ohio] and its members." *Id.* at PageID 12771.

On February 9, 2024, the Ohio Attorney General's Office ("Ohio AG") indicted Dowling, Jones, Randazzo, and Randazzo's shell entities, SFAO and IEU-Ohio Administration Company, LLC ("IEU-Ohio Admin.") for defendants' criminal conduct, including the allegations at the center of this case. *See* Plaintiffs' Position Statement, Ex. 6 (Ohio AG Criminal Cases Indictment), ECF 691-7 at PageID 14711-60; *id.*, Ex. 7 (Ohio AG Criminal Cases Supplemental Indictment), ECF 691-8 at PageID 14762-97.[6] The Supplemental Indictment includes the following allegations:

- "The plan of [defendants' corrupt] Enterprise and its function was to further the interests and profits of FirstEnergy Corp. and to corrupt and enrich Samuel C. Randazzo, first as general counsel for Industrial Energy Users of Ohio and later, as Chairman of [PUCO]." Plaintiffs' Position Statement, Ex. 7 (Supplemental Indictment), ECF 691-8 at PageID 14765.

- "One of the primary tools used to further the schemes of the enterprise was a spurious 2015 amended 'consulting agreement' between [FirstEnergy] and [SFAO] . . . Instead of consulting services, however, ***the amended 'consulting agreement' was a subterfuge for Randazzo and [FirstEnergy] to conceal a cash 'side deal' between Randazzo's client, [IEU-Ohio] and FirstEnergy companies in [ESP-IV]***. . . . . IEU-Ohio intervened in the ESP-IV to object to FirstEnergy's rate proposals on behalf its members. By settling with IEU-Ohio, FirstEnergy removed a significant roadblock to achieving its goals of beneficial pricing in ESP-IV. ***Although FirstEnergy did file a stipulated agreement with the PUCO in ESP-IV describing a settlement between IEU-Ohio and FirstEnergy for favorable rate terms as part of a 'pilot project,' the stipulation made no mention of the cash***

[6] "Ohio AG Criminal Cases" refers to the following cases: (1) *State v. Dowling*, No. CR-2024-02-0473-B (Summit C.P.); (2) *State v. Jones*, No. CR-2024-02-0473-C (Summit C.P.); (3) *State v. IEU-Ohio Administration Co. LLC*, No. CR-2024-02-0473-D (Summit C.P.); and (4) *State v. Sustainability Funding Alliance of Ohio, Inc.*, No. CR-2024-02-0473-E (Summit C.P.).

***payments for IEU-Ohio*** that Randazzo negotiated with FirstEnergy." *Id.* at PageID 14766.

- "Because FirstEnergy Corp. was able to pay IEU-Ohio and Randazzo to withdraw IEU-Ohio's opposition to ESP IV, FirstEnergy Corp. was able to obtain a favorable outcome before the PUCO. IEU-Ohio's members and Randazzo obtained cash payments under the guise of a 'consulting agreement.'" *Id.* at PageID 14758.

- "Between 2016 and 2019, FirstEnergy paid [sic] $13,152,639.94 to Randazzo's two shell companies. Of that total, Randazzo gave $7,756[,]903.84 to his IEU-Client and kept $5,395,736.10 for himself." *Id.* at PageID 14768.

## III. LEGAL STANDARD

### A. The Withholding Party Bears the Burden of Establishing Any Asserted Privilege or Protection, Which Must Be Described with Particularity

> The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). "The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Similarly, parties who claim work product protection must also bear the burden to show "'that the material was prepared in anticipation of litigation or for trial.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009). A proponent must assert the privilege or work product protection "with particularity for each document" it seeks to withhold. *In re Haynes*, 577 B.R. 711, 740 (Bankr. E.D. Tenn. 2017); *see also* S.D. Ohio Civ. R. 26.1(a) ("A privilege log shall list . . . [materials] withheld in an organized and logical order ***and must contain sufficient information to enable an opposing party and the Court to evaluate the applicability of the claimed privilege or protection***."); Fed. R. Civ. P. 26(b)(5) (proponent must describe the withheld materials so "other parties [can] assess the claim").

Further, because "[c]laims of attorney-client privilege are 'narrowly construed,'" "[t]he privilege 'applies only where necessary to achieve its purpose and ***protects only those communications necessary to obtain legal advice***.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). A proponent must establish that the communications "have the '***primary*** purpose of soliciting legal, rather than business, advice.'" *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) (emphasis in original). Likewise, if withheld documents "'would have been prepared in substantially the same manner, regardless of [any] anticipated litigation,'" the work-product doctrine "'does not apply.'" *McNeil v. Mount Carmel Health Sys.*, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021) (Jolson, Mag. J.).

**B. The Crime-Fraud Exception Overrides Any Protection**

"Neither attorney-client nor work-product privilege is absolute . . . . Both privileges may be overridden, for instance, by the so-called crime-fraud exception." *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). "A communication is excepted from the attorney-client privilege [or work product doctrine] if it is undertaken for the purpose of committing or continuing a crime or fraud." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997). The party asserting the crime-fraud exception must establish: (1) a "'prima facie showing that a sufficiently serious crime or fraud occurred'"; and (2) "'some relationship between the communication [or work-product] at issue and the prima facie violation.'" *Id.*; *see also United States v. Coffman*, 2011 WL 1466298, at *1 n.1 (E.D. Ky. Apr. 18, 2011) (applying standard to work-product). A prima facie showing "need not be as strong as that needed to effect an arrest or secure an indictment." *In re Antitrust Grand Jury*, 805 F.2d 155, 165-66 (6th Cir. 1986). Rather, a party makes a prima facie showing if a "'prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.'" *Collis*, 128 F.3d at 321 (alteration in original).

## IV. ARGUMENT

### A. IEU-Ohio Has Failed to Substantiate Its Claims

IEU-Ohio has failed to meet its burden to assert the privilege or protection with particularity because its revised privilege logs fail to provide sufficient information from which Plaintiffs (or the Court) can assess their claims. For example, numerous entries do not include required information, such as the date, author, and/or recipient of the document. *See, e.g.*, Cocalis Decl., Ex. 1 (Priv. Log ID No. 6387cf618f08bbc5be3ce232) at 96; *id.* (Priv. Log ID No. 6387cf638f08bbc5be3ce24a) at 98; *id.* (Priv. Log ID No. 6387ce928f08bbc5be3cd841) at 98; *id.* (Priv. Log ID No. 6387cf628f08bbc5be3ce239) at 103; *see also Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (holding this information is required to substantiate a party's claim of privilege or protection).[7]

In addition, although Magistrate Judge Jolson already "reiterate[d]" to IEU-Ohio in this action that "'conclusory statements are insufficient to meet an objecting party's evidentiary burden'" in the Sixth Circuit (Order, ECF 344 at PageID 7600), IEU-Ohio's privilege logs are comprised of vague and conclusory statements. *See, e.g.*, Cocalis Decl., Ex. 1 (Priv. Log ID No. 6387cf938f08bbc5be3ce482) at 342 ("McNees Wallace & Nurick 2/25/19 email to IEU-Ohio member re FE settlement impact."); *id.* (Priv. Log ID No. 63fd0d094f0c6f3d35c6bf57) at 289 ("Work Product: McNees Wallace & Nurick redline draft 7/9/15 Member Meeting Agenda."); *see also In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 17075838, at *5 (S.D. Ohio Nov. 18, 2022)

---

[7] Because IEU-Ohio recently revised its privilege logs to purportedly include this required information, they have waived any claim of privilege or protection and the Court should not provide them with another opportunity to revise their privilege logs (and further delay production). Further, IEU-Ohio's privilege logs misleadingly purport to identify a withheld or redacted document's Bates number. However, all Bates numbers with the prefix "EX" have ***not*** been produced in this action. Rather, those documents were produced by McNees Wallace & Nurick LLC (Randazzo's former law firm) to IEU-Ohio, but withheld from Plaintiffs in their entirety.

(Jolson, Mag. J.) (holding that non-party's privilege log was insufficient where it seemingly "withheld [a document] if it: (1) involve[d] an attorney; and (2) is represented to be 'legal advice[]' [on a subject] . . . [as] this is precisely the sort of conclusory statement of privilege the Sixth Circuit deems insufficient"), *objections overruled*, 2023 WL 142078 (S.D. Ohio Jan. 10, 2023).

Further, IEU-Ohio's conclusory statements often concern the financial – not legal – terms of its fraudulent deal with FirstEnergy. *See, e.g.*, Cocalis Decl., Ex. 1 (Priv. Log ID No. 61e063894f0c7c2c1b18adf0) at 338 ("July 1, 2016 emails between Sam Randazzo and Angela Rhynard at Lincoln Electric regarding FE Settlement payment."); *id.* (Priv. Log ID No. 61e063884f0c7c2c1b18addd) at 117 ("McNees Wallace & Nurick 7/1/16 email to IEU-Ohio member re: FE settlement distribution."); *id*. (Priv. Log ID No. 6387cee18f08bbc5be3cdc1d) at 341 ("McNees Wallace & Nurick 6/6/18 email to IEU-Ohio member re: FE ESP IV settlement.").[8] Yet it is well-settled that "'amounts and terms of the settlement agreement are discoverable" and "not privileged." *Oberthaler v. Ameristep Corp.*, 2010 WL 1506908, at *2 (N.D. Ohio Apr. 13, 2010); *see also Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 2016 WL 11580593, at *2 (E.D. Mich. Dec. 22, 2016) (granting motion to compel as "courts within this Circuit have compelled the disclosure of settlement agreements, including a breakdown of the claims actually settled and the settlement amounts"). Likewise, communications conveying past, present, future, and/or expected payment amounts would be simple (unprotected) business communications. Accordingly, because IEU-Ohio has failed to meet its burden to establish the privilege or protection, the withheld documents must be produced.

---

8 *See also* Cocalis Decl., Ex. 1 (Priv. Log ID No. 6387cee18f08bbc5be3cdc20) at 104, 342 (same); *id*. (Priv. Log ID No. 6387cf938f08bbc5be3ce482) at 342 ("McNees Wallace & Nurick 2/25/19 email to IEU-Ohio member re FE settlement impact."); *id*. (Priv. Log ID No. 6387cf998f08bbc5be3ce4c6) at 103, 342 (same); *id*. (Priv. Log ID No. 6387cf838f08bbc5be3ce3c1) at 103, 342 (same); *id*. (Priv. Log ID No. 6387cf928f08bbc5be3ce46e) at 101, 342 (same).

### B. The Material Sought Is Subject to the Crime-Fraud Exception

Even if IEU-Ohio had properly substantiated its privilege and protection claims (it has not), the documents are subject to the crime-fraud exception. For the crime-fraud exception to apply, Plaintiffs must establish: (1) a "'prima facie showing that a sufficiently serious crime or fraud occurred'"; and (2) "'some relationship between the communication [or work-product] at issue and the prima facie violation.'" *Collis*, 128 F.3d at 321 (applying the reasonable basis standard).

Plaintiffs have made a prima facie showing that FirstEnergy and IEU-Ohio had an undisclosed side agreement in violation of Ohio law. FirstEnergy has admitted to striking such an agreement "***in exchange for [them] withdrawing its opposition to a 2014 PUCO Electric Security Plan settlement package [ESP-IV]***." Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6033-34.[9] Further, as PUCO found, "records of communications and other documents from [FirstEnergy] provide additional corroboration that there was a side agreement." PUCO Order at 1-6.

Moreover, the evidence is clear that FirstEnergy paid millions of dollars per this side agreement. *See, e.g.*, Cocalis Decl., Ex. 2 (Dep. MWE 007) at 8433; *id.*, Ex. 3 (Dep. Ex. MWE 008) at 590; *id.*, Ex. 4 (Dep. Ex. MWE 009) at 8522; *id.*, Ex. 5 (Dep. Ex. MWE 010) at 4072; *id.*, Ex. 6 (Dep. Ex. MWE 013) at 8608; *id.*, Ex. 7 (Dep. Ex. MWE 014) at 2830 ([REDACTED]). So the existence of a side agreement between FirstEnergy and IEU-Ohio cannot genuinely be contested.

---

[9] *See also In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 8100096, at *6 (S.D. Ohio Nov. 20, 2023) ("*FirstEnergy II*") (finding Plaintiffs made a prima facie showing, in part, where "the [DPA] by itself supports that [the non-party] was a direct participant in the execution of that fraud"), *objections overruled*, 2024 WL 579744 (S.D. Ohio Feb. 13, 2024).

Ohio law unequivocally requires disclosure of such side agreements upon request in an ESP case. *See* Ohio R.C. §4928.145; PUCO Order at 3.[10] It is apparent from the "evidentiary record in the ESP IV Case" that "the Ohio Consumers' Counsel" ("OCC"), which represents Ohio consumers, made "'an appropriate discovery request'" for all side agreements. PUCO Order at 5 & n.2 (taking "administrative notice of OMAEG Ex. 24" on the ESP-IV docket). Nevertheless, it is equally clear that neither IEU-Ohio nor FirstEnergy disclosed their side agreement to the OCC or PUCO (or anyone else). *Id.* As such, there is a reasonable basis to conclude that a violation of Ohio R.C. §4928.145 occurred.

In addition to being unlawful, IEU-Ohio and FirstEnergy's backroom deal was a fraud on the OCC and PUCO. To determine whether to approve FirstEnergy's "Stipulated ESP-IV," PUCO utilized a three-part test, the first factor of which considered whether "the settlement [was] a product of serious bargaining among capable knowledgeable parties?" Cocalis Decl., Ex. 8 (Dep. Ex. 565) at -805. In its March 31, 2016 Opinion and Order approving Stipulated ESP-IV, PUCO found that this factor was satisfied over the OCC's objections, in part, because "based upon the record before the Commission, all provisions of the Stipulations and any other agreements among the parties were fully and adequately disclosed pursuant to R.C. 4928.145." *Id.* at -809. Accordingly, FirstEnergy and IEU-Ohio defrauded PUCO by withholding a fact that was material to its evaluation of Stipulated ESP-IV. In fact, Asim Haque, PUCO's Chairman in March of 2016, has since testified that the non-disclosure of a side agreement "changes, then, conceivably the net result of the three-part test." *Id.*, Ex. 9 (Haque Dep. Tr.) at 114:8-115:5; *see also id.* at 116:2-9

[10] Ohio R.C. §4928.145 states that "[d]uring a proceeding under sections 4928.141 to 4928.144 of the Revised Code and ***upon submission of an appropriate discovery request, an electric distribution utility shall make available to the requesting party every contract or agreement that is between the utility or any of its affiliates and a party to the proceeding, consumer***, electric services company, or political subdivision and that is relevant to the proceeding . . . ."

(testifying that he "would have mentioned it" in his concurrence to the March 31, 2016 Opinion and Order if he was aware that "there had been a side agreement between IEU-Ohio and FirstEnergy"); *Ohio Consumers' Counsel v. Pub. Utils. Comm'n*, 856 N.E.2d 213, 234-35 (2006) (rejecting IEU-Ohio's argument that side agreements are "irrelevant" to PUCO's valuation of a stipulation and the "serious bargaining" factor as "[a]ny such concessions or inducements apart from the terms agreed to in the stipulation might be relevant to deciding whether negotiations were fairly conducted"). Similarly, FirstEnergy and IEU-Ohio defrauded the OCC by concealing from it a fact that was material to its objections to the Stipulated ESP-IV. *See Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 801-05 (6th Cir. 2012) (upholding Ohio electric utility consumers class action complaint for violations of the Robinson-Patman Act of 1936 and The Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO) in which plaintiffs alleged that the "non-disclosure of [utility's] side-agreements constitutes fraud").

The Federal and Ohio AG Criminal Cases Indictments, which require probable cause determinations by the respective grand juries, further bolster Plaintiffs' prima facie showing. *See* Plaintiffs' Response, Ex. 1 (Federal Indictment), ECF 579-2 at PageID 12771 ("It was part of the scheme that the defendant, SAMUEL RANDAZZO, entered into agreements and arrangements on behalf of [IEU-Ohio] and its members, which resulted in companies making payments ('settlement payments') to [IEU-Ohio] and its members."); *see also* Plaintiffs' Position Statement, Ex. 7 (Ohio AG Criminal Cases Supplemental Indictment), ECF 691-8 at PageID 14764-69 (acknowledging "***the amended 'consulting agreement' was a subterfuge for Randazzo and [FirstEnergy] to conceal a cash 'side deal' between Randazzo's client, [IEU-Ohio,] and FirstEnergy companies***"); *id.* at PageID 14782 ("The secret cash 'side deal' between FirstEnergy and IEU-Ohio was a 2015 monetary settlement . . . . The undisclosed cash 'side deal' involved FirstEnergy

making cash payments to IEU-Ohio in exchange for IEU-Ohio withdrawing its opposition to FirstEnergy's [ESP IV]."); *see also id.* at PageID 14755, 14768.

Finally, contemporaneous communications confirm that IEU-Ohio members were aware that FirstEnergy was paying IEU-Ohio millions of dollars in connection with an undisclosed cash deal in ESP-IV. *See* Cocalis Decl., Ex. 10 (IEU-Ohio-010786) at -877 (Matt Brakey – IEU-Ohio's treasurer, who is also an Ohio energy consultant (with a law degree) who has served as an expert witness in energy litigation – stating [REDACTED]).[11] These communications also provide powerful circumstantial evidence that IEU-Ohio members used Randazzo to secure this secret cash haul, going so far as to title an email to Randazzo as a "***Letter to Santa***." Cocalis Decl., Ex. 1 (Priv. Log ID No. 63fd0c664f0c4b9ac2b44c9f) at 292 (January 28, 2015 email from Brakey to Randazzo titled "Letter to Santa" regarding his "desired terms related to FE ESP IV settlement."); *see also id.*, Ex. 11 (SCR_0011647) at 648-52 (Renee Ramboo, IEU-Ohio's chairman, [REDACTED]).

As explained above, because neither the agreement to make these payments nor the payments themselves were disclosed to the OCC or PUCO, despite the OCC's appropriate

[11] *See also* https://www.brakeyenergy.com/team-members/matt-brakey/.

discovery request, there is a reasonable basis to conclude that there was not only a violation of Ohio R.C. §4928.145, but that IEU-Ohio and FirstEnergy defrauded PUCO and the OCC. *FirstEnergy II*, 2023 WL 8100096, at *6 (finding Plaintiffs made a prima facie showing that non-party engaged in a fraud or crime based in part on the DPA and contemporaneous communications). Thus, Plaintiffs have made a prima facie showing that a fraud or crime occurred.

Plaintiffs have also established "'some relationship between the communication [or work-product] at issue and the prima facie violation.'" *Collis*, 128 F.3d at 321. All the documents that Plaintiffs seek relate to FirstEnergy's undisclosed settlement with IEU-Ohio. *See, e.g.*, Cocalis Decl., Ex. 1 (Priv. Log ID No. 63fd0bbe4f0c4b9ac2b3f691) at 301 ("notes re: FirstEnergy ESP IV settlement meeting on 11/23/15"); *id.* (Priv. Log ID No. 61e063884f0c7c2c1b18add9) at 333 ("Work-product notes of Sam Randazzo regarding First Energy and IEU-Ohio settlement term sheet discussions."); *id.* (Priv. Log ID No. 61e0638a4f0c7c2c1b18ae05) at 339 ("May 6, 2015 emails between employees of [M]cNees, Wallace & Nurick regarding First Energy settlement breakdown distributions between IEU-Ohio members."). IEU-Ohio has not seriously argued (nor could it) that there is no relationship between the documents sought and the undisclosed agreement.

In sum, Plaintiffs have established that the crime-fraud exception applies, and thus, the withheld documents highlighted in Exhibit 1 must be produced.[12]

---

[12] Even if the Court finds that IEU-Ohio was unaware of Randazzo's criminal conduct, the documents should nevertheless be produced as "an attorney may not exploit work product protection when she engages in illegal conduct or a fraud upon the court even if her client is innocent." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1338 (11th Cir. 2018); *see also In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 255 (4th Cir. 2023) (citing Circuit court cases and finding the district court correctly ordered the production of opinion work-product based on attorney's illegal activities as "'[t]he work product rule recognizes the lawyer's services as an indispensable part of the judicial scheme, but it was not designed as a fringe benefit for protecting lawyers who, for their personal advantage, abuse it'"); *In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213 (3rd Cir. 1989) ("[i]t is not apparent to us what interest is truly served by permitting an attorney to prevent this type of investigation of his own alleged criminal conduct by asserting an innocent client's privilege"); *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, 2020 WL 1917837, at *6 (E.D. Va. Apr. 20, 2020) ("the crime-fraud exception can apply [to communications] where,

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order compelling IEU-Ohio to produce the highlighted documents identified in Exhibit 1, as it has failed to substantiate its burden and all communications/work product assisting, facilitating, or concealing the fraudulent agreement are subject to the crime-fraud exception.

DATED: November 15, 2024

Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney
(0063373)

s/ Joseph F. Murray
JOSEPH F. MURRAY

1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
RACHEL A. COCALIS (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com
rcocalis@rgrdlaw.com

Class Counsel

as here, the attorney alone purportedly committed a crime or fraud of which the client was a victim”).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, I electronically filed the foregoing with the Clerk of the Court by using the e-Filing system, which will send a notice of electronic filing to all counsel of record in this case.

/s/ Joseph F. Murray
Joseph F. Murray