# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) ) | Judge Algenon L. Marbley Magistrate Judge Kimberly A. Jolson Special Master Shawn K. Judge |
| MFS Series Trust I, et al., | ) ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) ) | |

# FIRSTENERGY'S OPPOSITION TO DEFENDANTS CHARLES JONES' AND MICHAEL DOWLING'S MOTION FOR A SECOND AMENDED PROTECTIVE ORDER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND .......................................................................................... 5

A.  FirstEnergy's Subpoena and Cooperation Obligations ..................... 5

B.  Movants' Proposed Amendments to the Protective Order ................. 7

STANDARD OF REVIEW ........................................................................... 9

ARGUMENT ............................................................................................. 10

I.  MOVANTS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR
   THEIR SWEEPING MODIFICATIONS TO THE PROTECTIVE
   ORDER ............................................................................................ 10

   A.  Movants' Concerns Can Be Addressed Through Far Less
       Restrictive Means. .................................................................. 10

   B.  There Is No Good Cause To Impair FirstEnergy's Ability To
       Abide by Its Obligations to Government Agencies. .................. 11

   C.  Movants Improperly Seek To Restrict the Parties' Control Over
       Their Own Documents.. ............................................................ 15

   D.  Movants Fail To Establish Good Cause for Their Overbroad
       Definition of Confidential Information. .................................... 15

   E.  There Is No Good Cause To Amend the Procedure for Seeking
       Court Approval To Disclose Confidential Information. .............. 17

CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

*Page(s)*

*State ex rel. Cincinnati Enquirer* v. *Sage*,
  31 N.E.3d 616 (Ohio 2015) .............................................................. 2, 14, 16

*D Stadtler Tr. 2015 Tr.* v. *Gorrie*,
  2023 WL 2708575 (D. Ariz. Mar. 30, 2023) ........................................... 16

*State ex rel. Findlay Publ'g Co.* v. *Hancock Cnty. Bd. of Comm'rs*,
  684 N.E.2d 1222 (Ohio 1997) ............................................................... 12

*Info-Hold, Inc.* v. *Muzak Holdings LLC*,
  2012 WL 3061024 (S.D. Ohio July 26, 2012) ........................................... 9

*Millwrights' Loc. 1102 Supplemental Pension Fund* v. *Merrill Lynch,
  Pierce, Fenner & Smith, Inc.*,
  2010 WL 2772443 (E.D. Mich. July 13, 2010) ....................................... 17

*N.T. by & through Nelson* v. *Child.'s Hosp. Med. Ctr.*,
  2017 WL 3314660 (S.D. Ohio Aug. 3, 2017) ........................................... 19

*In re Nat'l Prescription Opiate Litig.*,
  927 F.3d 919 (6th Cir. 2019) ................................................................. 14

*In re Ohio Execution Protocol Litig.*,
  845 F.3d 231 (6th Cir. 2016) ................................................................... 9

*Playa Marel, P.M., S.A.* v. *LKS Acquisitions, Inc.*,
  2007 WL 756697 (S.D. Ohio Mar. 8, 2007) .................................... 9, 10, 15

*Premier Dealer Servs., Inc.* v. *Allegiance Admins., LLC*,
  2021 WL 266327 (S.D. Ohio Jan. 27, 2021) ......................................... 9, 14

*Roe* v. *Puig*,
  2021 WL 4557229 (C.D. Cal. Aug. 13, 2021) ......................................... 17

*Teodecki* v. *Litchfield Twp.*,
  38 N.E.3d 355 (Ohio Ct. App. 2015) ....................................................... 11

**Statutes**

Ohio Admin. Code §§ 4901-1-25(G) ........................................................... 11

Ohio Public Records Act .......................................................................*passim*

Ohio Rev. Code § 4903.02 ........................................................................ 7

**Other Authorities**

*FirstEnergy & HB 6 Related Cases*, PUCO,
      https://puco.ohio.gov/utilities/electricity/resources/hb-6-related-
      investigations.................................................................................. 6

*Two-Tier Protective Order*, S. Dist. of Ohio,
      https://www.ohsd.uscourts.gov/protective-orders ................................. 18

## PRELIMINARY STATEMENT

Since Defendants Charles Jones and Michael Dowling ("Movants") first proposed amending the protective order (ECF No. 411, "Protective Order"), FirstEnergy's position has been clear and consistent: no amendment should interfere with its ongoing cooperation and other obligations to federal and state government agencies. Yet Movants propose sweeping changes to the Protective Order that will adversely impact FirstEnergy's cooperation obligations with the Ohio AG, the U.S. Department of Justice ("DOJ"), and the Public Utilities Commission of Ohio ("PUCO").

Movants wrongly claim that the Protective Order must be amended to close a "pipeline" that has purportedly allowed Confidential Information to be made public through proceedings before the PUCO. (Mem., ECF No. 719 at PageID 16459, 16466–67.) To the contrary, the Protective Order already addresses this purported concern—before producing confidential documents or depositions in response to a law enforcement or regulatory subpoena, a party must notify the designating party so that it can take steps to preserve confidentiality. This is by far the most common procedure in federal court practice, and aligns with the Southern District of Ohio's standard form protective order. Indeed, when FirstEnergy notified Mr. Jones that deposition testimony he had designated as confidential was going to be produced to the parties in the PUCO proceedings, Mr. Jones was able to redact the transcript before production. And in any event, Movants' purported concerns about public disclosures do not remotely justify restricting disclosure of

Confidential Information to DOJ, SEC, or the Ohio AG, which have not publicly disclosed any such materials.

Nevertheless, to allay Movants' concerns, FirstEnergy is willing to amend the Protective Order—as set forth in Exhibits 1 and 2 hereto[1]—to require it to notify *all* parties prior to producing (i) confidential materials received in this action from another party or non-party (but not FirstEnergy's own historical documents); or (ii) deposition testimony and exhibits designated confidential, unless the receiving entity enters into an agreement restricting public disclosure. FirstEnergy further agrees to provide all parties with notice in the event that FirstEnergy is informed of a related public records request. Once on notice, Movants may seek a protective order in the appropriate forum to restrict disclosure on the basis of their right to a fair trial, which is a recognized exception to public disclosure under Ohio's Public Records Act. *See State ex rel. Cincinnati Enquirer* v. *Sage*, 31 N.E.3d 616, 623 (Ohio 2015) ("[W]here 'release of the records would prejudice the right of a criminal defendant to a fair trial, such information would be exempt from disclosure pursuant to R.C. 149.43(A)(1) during the pendency of the defendant's criminal proceeding.'" (citation omitted)). There is no good cause for Movants' more drastic changes to the Protective Order.

---

[1] Exhibit 1 shows FirstEnergy's proposal as compared to Movants' Exhibit B proposal and Exhibit 2 shows FirstEnergy's proposal as compared to the current Protective Order.

Movants, who are defendants in criminal proceedings brought by the State of Ohio, offer two alternative and equally unacceptable proposals. Movants' "Exhibit A" proposal would massively expand the scope of what may be designated "Confidential Information," while imposing a wholesale ban on disclosure of such Confidential Information, with virtually no exceptions. Their Exhibit A proposal would even allow other parties to designate FirstEnergy's own historical documents as confidential. There is simply no law to support giving Jones and Dowling a say in what FirstEnergy can do with its own historical documents. Movants' "Exhibit B" proposal recognizes that parties should not be allowed to designate another party's historical documents as confidential. But their Exhibit B proposal includes the same problematic expansion to the scope for confidentiality designations, as explained below. It would also prohibit disclosure of Confidential Information to law enforcement and regulatory agencies unless those agencies (i) submit to this Court's jurisdiction, (ii) enter into a confidentiality agreement filed *in camera* with this Court, and (iii) agree that they will not publicly disclose the Confidential Information, including in response to requests under the Ohio Public Records Act.

DOJ and the Ohio AG, each of which have pending criminal investigations relating to H.B. 6, have already objected to Movants' proposals because they would directly interfere with FirstEnergy's cooperation obligations under its July 22, 2021 deferred prosecution agreement ("DPA") with DOJ, and its August 12, 2024 non-prosecution and settlement agreement with the Ohio AG. Both proposals would also directly interfere with FirstEnergy's ability to comply

with its cooperation obligations under its September 12, 2024 settlement agreement with the U.S. Securities and Exchange Commission. And both proposals would restrict FirstEnergy's ability to comply with a pending subpoena (ECF No. 644-2) issued by the PUCO in related ongoing regulatory proceedings.

Moreover, Movants' expanded definition of Confidential Information (in both their Exhibit A and B proposals) now includes (1) anything that they determine "in good faith" might "affect their right to a fair trial," which is standardless and impossible to police; and (2) any documents "created or received by" law enforcement agencies, which is vague and overbroad. The first can be fixed by incorporating the objective standard recognized by Ohio law, while the second can be fixed by limiting confidential treatment to documents that the agency itself designated confidential (or that were designated confidential when originally produced to the agency).

Finally, Movants offer no justification to change the Protective Order's provision on disclosure by court order (¶ 20) to require the producing party to move for leave to produce confidential materials. That is backwards. The party who designated the materials as confidential bears the burden of establishing that the materials are entitled to protection, and thus should be able to move for a protective order.

For all these reasons, the Court should deny the Motion or adopt FirstEnergy's proposal in Exhibits 1 and 2 hereto.

-4-

## BACKGROUND

### A.    FirstEnergy's Subpoena and Cooperation Obligations

Since July 2021, FirstEnergy has resolved several H.B. 6-related government investigations and enforcement actions and is obligated under the terms of those resolutions to cooperate with the government agencies' ongoing investigations. The July 22, 2021 DPA with DOJ, entered by this Court (Black, J.), requires that FirstEnergy produce documents, information or data "in FirstEnergy Corp.'s possession, custody, or control" that may be "requested by the government in connection with [DOJ's] investigation or prosecution." (DPA, ECF No. 259-5 at PageID 6002.) Under the DPA, FirstEnergy is required to continue cooperating with DOJ's ongoing investigation, and the criminal case against FirstEnergy will remain pending before Judge Black, until DOJ completes all related investigations and prosecutions, including of former senior FirstEnergy executives. (*See id.* at PageID 6001, 6008.) All parties were, of course, on notice of the DPA obligations when they agreed to the original protective order in this case, which was entered on August 18, 2021, one month later. (*See* Stipulated Protective Order, ECF No. 203 at PageID 4636.)

On June 29, 2023, the Ohio Organized Crime Investigations Commission ("OCIC") served FirstEnergy a subpoena seeking information relating to the conduct described in the DPA. The August 12, 2024 non-prosecution and settlement agreement with the Ohio Attorney General requires FirstEnergy to "promptly provide to the State of Ohio, upon request, any and all non-privileged documents, records, information, or other tangible evidence . . . related to the

conduct described in the [DPA] Statement of Facts." (*See* Ex. 3 at § II(8)(a).)[2] All disputes over compliance with the Ohio Attorney General agreement must be resolved "in the Court of Common Pleas of Summit County." (*Id.* at § V(20).)

Under the September 12, 2024 settlement with the SEC, FirstEnergy must "cooperate [with the SEC] in a related enforcement action." (*See* https://www.sec.gov/files/litigation/admin/2024/33-11302.pdf at § IV(D).) On September 12, 2024, the SEC filed fraud charges against Mr. Jones in the Northern District of Ohio. *See Sec. & Exchange Commission* v. *Jones*, No. 5:24-cv-01560 (N.D. Ohio).

On September 15, 2020, the PUCO initiated the first of four regulatory proceedings against FirstEnergy's Ohio-based utilities relating to H.B. 6, which remain pending.[3] Upon a motion filed by the Office of the Ohio Consumers' Counsel ("OCC"), the PUCO issued a non-party subpoena to FirstEnergy Corp. calling for "[a]ll documents produced, provided, or received by FirstEnergy [] in the course of litigation against FirstEnergy [] arising out of the HB 6 bribery scheme, including any deposition testimony." (OCC Subpoena ECF No. 644-2 at PageID 14053.) FirstEnergy's production obligations in response to that subpoena remain ongoing.

---

[2] Unless otherwise stated, all exhibits are exhibits to the Declaration of Nicholas F. Menillo, dated November 25, 2024.

[3] *See FirstEnergy & HB 6 Related Cases*, PUCO, https://puco.ohio.gov/utilities/electricity/resources/hb-6-related-investigations.

Disputes over compliance with the PUCO subpoena are to be resolved by the Ohio "court of common pleas of any county." Ohio Rev. Code Ann. § 4903.02.

### B. Movants' Proposed Amendments to the Protective Order

Although Movants submitted two proposed amended protective orders with extensive tracked changes, the key substantive changes fall into four categories (*see* ECF Nos. 719-1, 719-2):

1. ***Disclosures Required by Agencies.*** In line with this Southern District's standard form protective order, the current Protective Order requires (at ¶ 11) any party who receives a subpoena from a law enforcement or regulatory agency to give the designating party "as much advance notice as possible . . . to facilitate that party's efforts to preserve the confidentiality of the material, if warranted" before producing confidential information. Movants offer two alternatives to this standard language. Their Exhibit A version of ¶ 11 would bar any disclosure, even if commanded by law or required by subpoena. Exhibit B's version would permit disclosure only if the requesting government agency (i) "submit[s] to the Court *in camera* a written agreement . . . that [they] will not publicly disclose (or cause to be publicly disclosed) the Confidential Information, including in response to a request for records under the Ohio Public Records Act," and (ii) "assent[s] to the jurisdiction of this Court for purposes of enforcing the Protective Order and the terms of the written agreement."

2. ***Definition of "Confidential Information.***" The current definition of Confidential Information (¶ 4(a)) is "information that the Producing Entity asserts in good faith is protected from disclosure by statute or common law, including, but not limited to, confidential personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that

is not publicly available." In both proposals, Movants seek to expand that definition to also include (1) "any documents, testimony, written responses, or other materials produced, and designated as Confidential discovery material" in the Summit County criminal case; (2) "any deposition testimony taken in or produced into the Actions" that the designating party believes in "good faith . . . will undermine [their] ability to obtain a fair trial in any related proceeding"; and (3) all "material[s] created by or received from" a regulatory or law enforcement agency. Paragraph 2 is also amended to add "protecting . . . the fundamental fairness" of the criminal proceedings against Movants as one of the "purpose[s]" of the Protective Order.

3.   ***Party's Own Documents***.   A party's control over its own historical documents is treated inconsistently in Movants' two proposals. Under Exhibit A, any party can designate "any other part[y's]" documents as confidential. In combination with Movants' changes to ¶ 11, this proposal would allow Movants (and any other party) to prevent FirstEnergy from producing its own historical documents to government agencies, even when requested to do so by those agencies pursuant to FirstEnergy's existing cooperation obligations. Under Exhibit B, Movants add the following clarification in ¶ 11 that is missing from Exhibit A: "[t]his Protective Order does not apply to or restrict a party's use or disclosure of its own pre-existing information."

4.   ***Court Review.***   The Protective Order currently provides (at ¶ 20) that if a "party wishes to disclose any Confidential Information beyond the terms of this Order," and another party opposes that disclosure, "then a party may petition the Court for a determination of these issues." In both proposals, Movants seek to amend ¶ 20 so that "the party that wishes to disclose the Confidential Information must petition the Court for a determination of" whether disclosure is permitted.

-8-

Movants also seek to remove the language allowing "interested member[s] of the public" to "challenge the designation of any material as Confidential."

## STANDARD OF REVIEW

A party that seeks to modify a protective order "has the burden of establishing good cause for the modification." *Info-Hold, Inc.* v. *Muzak Hldgs LLC*, 2012 WL 3061024, at *3 (S.D. Ohio July 26, 2012). Good cause requires a showing that "'specific prejudice or harm will result' from the absence of a protective order," and must be established by a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). Courts also consider (1) "the nature of the protective order," (2) "the foreseeability of the modification requested at the time of issuance of the order," and (3) "the parties' reliance on the order." *Playa Marel, P.M., S.A.* v. *LKS Acquisitions, Inc.*, 2007 WL 756697, at *4 (S.D. Ohio Mar. 8, 2007). The moving party "may bear a heightened burden" when seeking to modify a protective order to which they previously agreed. *Premier Dealer Services, Inc.* v. *Allegiance Administrators, LLC*, 2021 WL 266327, at *2 (S.D. Ohio Jan. 27, 2021).

Here, "the nature of the protective order" weighs against modification because it "was stipulated to by the parties and approved by the Court," rather than "court-imposed." *Playa Marel*, 2007 WL 756697, at *4–5. Movants stipulated to entry of the protective order, "[t]herefore, by its nature, the protective order should not be readily modified." *Id.*, at *5.

## ARGUMENT

### I.  MOVANTS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR THEIR SWEEPING MODIFICATIONS TO THE PROTECTIVE ORDER.

#### A.  Movants' Concerns Can Be Addressed Through Far Less Restrictive Means.

To present the Court with reasonable solutions, FirstEnergy proposes revisions to Paragraph 11 that address the only arguably valid concern Movants have raised:  that they may not receive sufficient advance notice of the public disclosure of information they regard as confidential if they are not the "designating" party.  To that end:

- FirstEnergy proposes to amend the Protective Order to require parties to give notice to *all* parties—rather than just the designating party—prior to producing confidential information (other than the party's own historical documents) in response to a subpoena from a regulatory or law enforcement body or request pursuant to a cooperation obligation, unless the receiving entity first enters into an agreement restricting public disclosure.

- FirstEnergy can also agree to give notice to all parties in the event that it is informed that confidential information (other than its own historical documents) is the subject of a public records request.

FirstEnergy's specific proposed revisions to Paragraph 11 are tracked in Exhibits 1 and 2.  These changes would allow Movants to consider whether any anticipated public disclosure of confidential information—whether they were the designating party or not—might raise concerns, and seek recourse in an appropriate forum.  As explained above, if Movants can establish that the public disclosure of

-10-

particular information would impact their right to a fair trial, the Ohio Public Records Act exempts that information from public disclosure.  But the burden should be Movants' to carry.

### B. There Is No Good Cause To Impair FirstEnergy's Ability to Abide by Its Ongoing Obligations to Government Agencies.

FirstEnergy's cooperation and subpoena obligations are critically important and binding components of FirstEnergy's negotiated resolutions with the federal and state agencies.  FirstEnergy's compliance with those obligations assists pending federal and state investigations and enforcement actions.  The State of Ohio opposes Movants' Exhibit A because it "would require FirstEnergy to violate its cooperation obligations with the State of Ohio."  (Ohio AG Opp., ECF No. 720 at PageID 16615.)  It similarly opposes Movants' Exhibit B because "[r]equiring the State of Ohio . . . to submit to the jurisdiction of the federal court to obtain and use evidence in a criminal case is a bridge too far" and would raise "federalism and comity concerns."  (*Id.* at PageID 16616.)  DOJ objects to any limitation on FirstEnergy's cooperation obligations.  (Menillo Decl. ¶ 10.)  And PUCO staff have indicated that the PUCO as a public agency "cannot enter into enforceable promises of confidentiality regarding public records."  *State ex rel. Findlay Publ. Co.* v. *Hancock Cnty. Bd. of Comm'rs*, 684 N.E. 2d 1222, 1225 (Ohio 1997); *Teodecki* v. *Litchfield Twp.*, 38 N.E. 3d 355, 363 (Ohio Ct. App. 2015) ("Because the confidentiality clause . . . would violate RC 149.43 [*i.e.*, Ohio's Public Records Act] if enforced, that provision is void *ab initio*.").  (*See also* Menillo Decl. ¶ 9.)

All of these agencies raised valid and serious concerns about Movants' proposals. Exhibit A would prohibit *any* "disclos[ure] of any Confidential Information to any state or federal law enforcement or regulatory agency." (Exhibit A, ECF No. 719-1 at PageID 16492, ¶ 11.) Exhibit B purports to gesture toward accommodating law enforcement and regulatory interests by allowing disclosure under Paragraph 11, but only under conditions unacceptable to the affected agencies. The relevant agencies have already rejected any requirement that they submit to the jurisdiction of this Court, and the PUCO has indicated that it cannot enter into a confidentiality agreement as a matter of Ohio law, so the result is effectively the same as under Exhibit A. Thus, either of Movants' proposals would place FirstEnergy in an untenable position of having to choose whether to obey this Court's protective order or to comply with a conflicting obligation in a government settlement agreement or subpoena. Failure to comply with a PUCO subpoena could result in PUCO seeking a compulsion order from an Ohio state court. *See* Ohio Admin. Code §§ 4901-1-25(G). FirstEnergy cannot predict whether a federal court order would be sufficient to avoid sanctions for non-compliance. Movants entirely ignore all of this, blithely asserting that "there is no prejudice to the nonmoving parties" from their Proposals. (ECF No. 719, Mem. at PageID 16463 n.1.)

Movants lack good cause for the additional reason that the "harm" they might suffer does not justify the sweeping changes they propose.

*First*, Movants' theory of "specific prejudice or harm"—the supposed "pipeline" through which confidential information from this case "has been publicly disclosed" through the PUCO subpoena (ECF No. 719, Mem. at PageID 16466)—is entirely speculative. To date, the parties have successfully managed confidentiality concerns raised by the PUCO subpoena using the notice procedure under the existing Protective Order. For example, when the OCC requested Steven Strah's deposition transcript, a portion of which Mr. Jones had designated confidential, FirstEnergy notified Mr. Jones's counsel, and the OCC allowed Mr. Jones to redact the confidential information from the transcript prior to its production to the OCC. (Menillo Decl. ¶ 6.) The transcript of Jason Lisowski's deposition—cited by Movants as an example of confidential information that can now be accessed publicly as a result of the PUCO subpoena—was downgraded to non-confidential by Mr. Lisowski's counsel before FirstEnergy produced it outside of this action. (*Id.* ¶ 5)

*Second*, although it has not happened to date, if the OCC refuses to accommodate Movants' confidentiality concerns, Movants have recourse: they can move for a protective order in an appropriate forum. The Ohio Supreme Court has recognized that the Ohio Public Records Act exempts "records whose release 'would prejudice the right of a criminal defendant to a fair trial . . . during the pendency of the defendant's criminal proceedings." (ECF No. 719, Mem. at PageID 16466–67 (citing *Sage*, 31 N.E.3d at 623).) Thus, Movants can vindicate their interests without a wholesale ban on disclosure. Blanket restrictions of the type Movants propose are heavily disfavored in this Circuit. Indeed, the Sixth Circuit overturned

a protective order that categorically prohibited disclosure of information designated as confidential in response to Ohio public records requests. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 931 (6th Cir. 2019). The Sixth Circuit instructed the district court "not [to] enter a blanket, wholesale ban on disclosure pursuant to state public records requests." *Id.* at 938. Yet Movants' Exhibit B does just that, and Exhibit A goes even further by barring any disclosure to anyone, including all government agencies.

*Third*, Movants' concern about the risk of public disclosure—again, the only harm they cite—is based only on the PUCO subpoena. In no way does this risk justify Movants' broad restrictions against disclosure of confidential information to DOJ, the Ohio AG, or the SEC pursuant to FirstEnergy's cooperation obligations. Movants, who carry the burden to show good cause for every change, present no facts or evidence to suggest that these agencies have disclosed or will disclose any documents publicly. Moreover, FirstEnergy's cooperation obligations to the DOJ were not only foreseeable, they were public knowledge when the original protective order was entered in August 2021, as the DPA was publicly filed one month prior. Movants' three-year "delay in raising this issue therefore weighs against modifying the Protective Order." *Premier Dealer Servs., Inc.* v. *Allegiance Adm'rs, LLC*, 2021 WL 266327, at *2 (S.D. Ohio Jan. 27, 2021); *see Playa Marel*, 2007 WL 756697, at *5 (denying motion to amend protective order to permit disclosure of Attorneys' Eyes Only document to party because "at the time the Defendants entered into the

Agreed Protective Order, they could easily have foreseen the need to share the [document] with their clients").

### C. Movants Improperly Seek To Restrict the Parties' Control Over Their Own Historical Documents.

Throughout multiple meet-and-confer calls and status conferences on this topic, all parties have consistently agreed that the Protective Order should not place limitations on what a party can do with its own documents. But Movants' Exhibit A does exactly that—it permits parties to designate as confidential documents produced by "any other party." (Exhibit A, ECF No. 719-1 at PageID 16479, ¶ 4(a); *accord* Exhibit B, ECF No. 719-2 at PageID 16502, ¶ 4(a).) Movants do not cite any precedent to allow cross-designation of another party's historical documents, and there is no good cause to do so here. Movants' Exhibit B appears to attempt to accommodate this concern by stating: "Confidential Information is limited to documents and information the parties *obtain* through the Actions. It does not include any documents or information a party possessed or generated prior to the Actions." (Exhibit B, ECF No. 719-2, at PageID 16515, ¶ 11.) But the solution is not to carve a party's own materials out of the definition of Confidential Information, which would confusingly strip it of any protections. The solution is to include clear language that nothing in the Protective Order shall be construed to restrict a party from controlling, disclosing, and publicizing any documents, including deposition transcripts, it had in its possession, custody, or control other than as a result of receiving it from this litigation. Proposed language is attached. (*See* Ex. 1 at ¶ 11; Ex. 2 at ¶ 11.)

-15-

**D.    Movants Fail To Establish Good Cause for Their Overbroad Definition of Confidential Information.**

Movants' proposal to expand the definition of "Confidential Information" to include "any deposition testimony taken in or produced into the Actions that any party has a good faith belief will undermine a party's ability to obtain a fair trial in any related proceeding" is unworkable.  (Exhibit A, ECF No. 719-1 at PageID 16479–80, ¶ 4(a); *accord* Version B, ECF No. 719-2 at PageID 16502–03, ¶ 4(a).)  By definition, this is not an objective standard, but instead turns on each party's subjective "good faith."  *See D Stadtler Tr. 2015 Tr.* v. *Gorrie*, 2023 WL 2708575, at *4 (D. Ariz. Mar. 30, 2023) (no good cause to allow party to "designate a document as 'Confidential' if the party concluded in good faith that 'the unrestricted disclosure of such information could be harmful" to the party's "interests," which "is so broad and vague as to be practically devoid of meaning" and would "allow parties to designate materials as confidential that fall outside the parameters of Rule 26(c)").  If Movants wish to invoke their right to a fair trial as a basis to designate materials as confidential, they should at least be held to the objective standard recognized by Ohio law, *see Sage*, 31 N.E.3d at 623–24 (setting forth standard for Sixth Amendment exception to Ohio public records law), not their

own good faith whims. A proposed edit to incorporate this standard is attached. (*See* Ex. 1, at ¶ 4(a); Ex. 2, at ¶ 4(a).)[4]

Movants' proposed expanded definition of Confidential Information also includes the overbroad category "any material created by or received from a regulatory entity, the Securities and Exchange Commission, or a law enforcement agency, including but not limited to the Ohio Organized Crime Commission." (Exhibit A, ECF No. 719-1 at PageID 16480, ¶ 4(a); *see* Exhibit B, ECF No. 719-2 at PageID 16503, ¶ 4(a) (same, except replacing "regulatory entity" with "regulatory agency").) The mere fact that material was created by or received from a government agency raises no Sixth Amendment concern. *See Millwrights' Local 1102 Supplemental Pension Fund* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 WL 2772443, at \*4 (E.D. Mich. July 13, 2010) (rejecting provision in proposed protective order that would treat all "regulatory" material as confidential because "Defendant's definition of confidential material . . . . becomes overly broad by including 'regulatory' material, which is not included within Rule 26(c)(1)(G)"). The sole case Movants cite is not to the contrary: in *Roe* v. *Puig*, 2021 WL 4557229, at \*1 (C.D. Cal. Aug. 13, 2021), the court permitted only "'investigative records' generated by or obtained from law enforcement agencies" to be designated confidential. FirstEnergy would not object to that narrower language, or language

---

[4]    To be clear, FirstEnergy offers these proposed changes as a concession to Movants, and is willing to accept these changes only if FirstEnergy's other proposed changes are accepted.

that requires confidential treatment to be given to materials that the agency itself designated as confidential.  (*See* Ex. 1 at ¶ 4(a); Ex. 2 at ¶ 4(a).)

### E.  There Is No Good Cause To Amend the Procedure for Seeking Court Approval To Disclose Confidential Information.

Movants do not even try to justify their proposed changes to the provision governing disclosure of confidential information outside of the terms of the Protective Order.  The current Paragraph 20 states that if a party wishes to disclose Confidential Information beyond the terms of the Order, it must "provide all other parties with reasonable notice in writing of its request to so disclose the materials." (Protective Order at PageID 9474, ¶ 20.)  It further states that absent all-party consent, "a party may petition the Court for a determination of these issues."  (*Id.* at PageID 9474–75, ¶ 20.)  This language tracks the District's model protective order. *See  Two-Tier  Protective  Order  ¶ 20,  S.  Dist.  of  Ohio,* https://www.ohsd.uscourts.gov/protective-orders.  Movants'  Exhibits  propose amending this language to require that "the party that wishes to disclose the Confidential Information must petition the court" in the event of a dispute.  (Exhibit A, ECF No. 719-1 at PageID 16495, ¶ 20; *accord* Exhibit B, ECF No. 719-2 at PageID 16519, ¶ 20.)  But the Motion does not identify any concern with the current language, let alone tie it to any "specific prejudice or harm."

Moreover, the proposed amendment is inconsistent with Paragraph 12 of the Protective Order, which states that (i) "the burden to properly maintain the designations shall, at all times, remain with the person or entity that made the designation to show that said document or information should remain protected,"

and (ii) in the event of a disagreement over the application of a confidentiality designation "the designating person or entity" must file a motion for a protective order (Protective Order at PageID 9472, ¶ 20; *accord* Movants' Exhibit A, ECF No. 719-1 at PageID 16495, ¶ 20 and Exhibit B, ECF No. 719-2 at PageID 16518–19, ¶ 20). *See also N.T. by & through Nelson* v. *Children's Hosp. Med. Ctr.*, 2017 WL 3314660, at *6 (S.D. Ohio Aug. 3, 2017) (citing cases in support of the holding that "the burden is on the producing party to justify its designation" (emphasis omitted)).

## CONCLUSION

For the foregoing reasons, FirstEnergy respectfully requests the Special Master deny Movants' request to modify the Protective Order. However, FirstEnergy would agree to certain modifications to the Protective Order as reflected in Exhibits 1 and 2 to the Menillo Declaration.

Dated:  November 25, 2024

Respectfully submitted,

*/s/ Paul J. Schumacher*
Paul J. Schumacher, Trial Attorney
(0014370)
DICKIE, MCCAMEY & CHILCOTE, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio  44114
Telephone:  (216) 685-1827
pschumacher@dmclaw.com

Richard J. Silk, Jr. (0074111)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 W. Broad Street, Suite 1950
Columbus, Ohio  43215
Telephone:  (614) 258-6000
rsilk@dmclaw.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
David M.J. Rein (*pro hac vice*)
Beth D. Newton (*pro hac vice*)
Nicholas F. Menillo (*pro hac vice*)
Hilary M. Williams (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

Kamil R. Shields (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040

*Counsel for Defendant FirstEnergy Corp.*

## DECLARATION OF SERVICE

I certify that the foregoing was filed electronically on November 25, 2024. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Paul J. Schumacher*
Paul J. Schumacher (0014370)

*Counsel for Defendant FirstEnergy Corp.*