**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, | : | Case No. 2:20-cv-03785 |
| This document relates to: | : | Judge Algenon L. Marbley |
| ALL ACTIONS. | : | Magistrate Judge Kimberly A. Jolson |

| | | |
|---|---|---|
| MFS SERIES I TRUST, et al., | : | Case No. 2:21-cv-05839 |
| Plaintiffs, | : | Judge Algenon L. Marbley |
| v. | : | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP., et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| BRIGHTHOUSE FUNDS TRUST II: – MSF VALUE PORTFOLIO, et al., | : | Case No. 2:22-cv-00865 |
| Plaintiffs, | : | Judge Algenon L. Marbley |
| v. | : | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP., et al., | : | |
| Defendants. | : | |

**ORDER AND REPORT AND RECOMMENDATION BY SPECIAL MASTER**

On June 6, 2022, Plaintiffs filed a motion for class certification in Case No. 2:20-cv-03785. (Motion, ECF No. 293.) Following a period of extended briefing and a March 17, 2023 hearing, the Court issued a March 30, 2023 Opinion & Order in which Chief Judge Marbley granted the motion and certified a class under Federal Rule of Civil Procedure 23(b)(3). (Order, ECF No. 435.) Thereafter, FirstEnergy and various defendants filed a total of five petitions to appeal the

certification order under Federal Rule of Civil Procedure 23(f). The Sixth Circuit granted permission to appeal on November 16, 2023. (Order, ECF No. 559.) The appeal currently remains pending.

In the interim, the parties have engaged in limited discovery. The consolidated captioned matters are before the undersigned for consideration of various disputes that have arisen during the course of this discovery. Most of the following decisions have been conveyed to the parties in the form of oral decisions previously announced, but they are memorialized here along with the disposition of more recent issues to afford the parties a written analysis and to enable the filing of any objections.[1]

**DESIGNATION OF EXHIBIT 486**

Class Plaintiffs challenge the designation and consequent sealing of Exhibit 486 (Charles R. Jones April 2020 Email Chain), which was discussed at length during the 6/6/24 Status Conference. They seek to alter the designation so the exhibit is not under seal but is available on the public docket.

Although he opposes re-designation, Jones has proposed a series of redactions as a compromise measure. Some of these redactions are ultimately excessive. For example, redaction of the existence of a trust is unnecessary; there is no disclosure of the value or assets necessitating redaction.

The undersigned agrees that it appears there is no information at issue in Exhibit 486 that is not in the public domain or the result of math based on available numbers except for the dollar

[1] Unless otherwise expressly indicated, all references to documents filed on the docket shall be to the numbered document in Case No. 2:20-cv-03785. The parties should understand these references to refer to the corresponding documents filed in Case Nos. 2:21-cv-05839 and 2:22-cv-00865 when appropriate.

figure contained in the second paragraph, line one of the first email. It is questionable whether this outdated or stale account balance is protectable, but Class Plaintiffs have agreed to redaction of the figure if the docket were re-designated and unsealed. (6/6/24 Conference Tr. at 8:16-18, 9:24-25.) Similar redactions should apply to the personal email addresses contained in the exhibit. Construing Class Plaintiffs' June 5, 2024 Position Statement as a motion, the undersigned **GRANTS** the motion (ECF No. 668) and **ORDERS** that the account balance and emails be redacted and that the exhibit should then be filed on the docket unsealed.

## MOTION TO STRIKE

On November 18, 2024, Defendants Jones and Dowling filed their Motion for a Second Amended Protective Order. (Motion, ECF No. 719.) Multiple parties subsequently filed memoranda in opposition to the motion: limited intervenor the State of Ohio on November 19, 2024 (Memo Opp, ECF No. 720), Class Plaintiffs on November 20, 2024 (Memo Opp, ECF No. 723), and Defendant FirstEnergy on November 25, 2024 (Memo Opp, ECF No. 725). On November 27, 2024, the State of Ohio then filed a document titled "Reply to Plaintiffs' Opposition to Jones and Dowling's Motion to Modify Protective Order." (Reply, ECF No. 727.) Class Plaintiffs subsequently filed a motion to strike the reply brief. (Motion, ECF No. 728.)

The State of Ohio's reply brief is a curiosity. Although captioned as such, it is not technically a reply brief; as Class Plaintiffs correctly note in their briefing, "[r]eply briefs are for movants, not respondents." (Memo in Support, ECF No. 728-1 at PageID 16997.) Instead, the document is a supplemental brief containing additional argument to the State of Ohio's prior memorandum in opposition and an entirely new argument not previously raised. Such supplemental briefing requires leave of court. *See* S.D. Ohio Civ. R. 7.2(a)(2). Because the State of Ohio failed to obtain leave of court and simply proceeded to file an impermissible additional

brief, its "reply" brief is in violation of the Local Civil Rules. Accordingly, the undersigned **GRANTS** the motion to strike. (ECF No. 728.) The State of Ohio's Reply to Plaintiffs' Opposition to Jones and Dowling's Motion to Modify Protective Order is stricken. (Reply, ECF No. 727.)

## MOTION TO COMPEL

Class Plaintiffs have filed a motion to compel non-party Industrial Energy Users-Ohio ("IEU-Ohio") to produce over 100 documents withheld on the basis of attorney-client privilege or the work product doctrine. (Motion, ECF No. 718.) They assert two arguments in support of their motion: one, that IEU-Ohio failed to establish that either privilege or protection applies, and two, that even if IEU-Ohio established the a privilege or protection, the crime-fraud exception applies. Both assertions are well taken.

Magistrate Judge Jolson has previously explained the standard governing a motion to compel in this very case:

> Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 45, for its part, provides that when a subpoena has been objected to, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.' " *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

*In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2022 WL 17075838, at *2 (S.D. Ohio Nov. 18, 2022), *objections overruled*, No. 2:20-CV-3785, 2023 WL 142078 (S.D. Ohio Jan. 10, 2023).

The first argument is that because IEU-Ohio's privilege logs fail to provide sufficient information from which the privilege claims can be assessed, the documents cannot be regarded as protected under attorney-client privilege. This proposition invokes the requirements for a sufficient privilege log that have been well set out in this District. One judicial officer held that a privilege log must contain:

> 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> 2. The date upon which the document was prepared;
> 3. The date of the document (if different from # 2);
> 4. The identity of the person(s) who prepared the document;
> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
> 7. The number of pages of the document;
> 8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
> 9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D.Kan. 2005)).

That same judicial officer explained the need for such detail:

> The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice. *In re Search Warrant Executed at Law Offices of Stephen Garea,* No. 97–4112, 1999 WL 137499, at *2, 1999 U.S.App. LEXIS 3861, at *7 (6th Cir. Mar. 5, 1999). The party asserting the privilege must make "at least a minimal showing that the communication contained legal matters," but that showing need not be "onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Id.* at *2, 1999 U.S.App. LEXIS 3861, at *5–6. However, merely conclusory statements may not be enough to satisfy this minimal standard. *Id.* at *2, 1999 U.S.App. LEXIS 3861, at *6. A "cryptic privilege log" does not satisfy this standard if "review of the documents themselves fails to reveal whether they were produced or transmitted in the course of legal representation." *Id.* at *2, 1999 U.S.App. LEXIS 3861, at *7. *See also United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996) ("if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege, his claim will be rejected") (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 471 (S.D.N.Y.1993)).

*Cooey*, 269 F.R.D. at 649. Applying these requirements here, the undersigned agrees with that IEU-Ohio's privilege logs are often insufficient.

Multiple entries in the submitted logs fail to include the date, author, or recipient of the document. But as Magistrate Judge Jolson noted earlier in this case, "[a] party asserting privilege must provide sufficient information to allow a court to determine whether the communications in question were in fact confidential communications relating to legal advice." *In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 17075838, at *5. Other entries are wholly conclusory or vague so as to be essentially meaningless. Again, per Magistrate Judge Jolson: "[W]hen it comes to assertions of privilege, 'conclusory statements are insufficient to meet an objecting party's evidentiary burden.'" *Id.* (quoting *Cox v. Franklin Cty. Bd. of Comm'rs*, No. 2:18-cv-1631, 2019 WL 6711388, at *4 (S.D. Ohio Dec. 10, 2019) (Jolson, M.J.)).

The undersigned need not parse each entry and provide a sufficiency analysis here, however, because even assuming *arguendo* that the logs were sufficient to present the privilege, the documents at issue are subject to the crime/fraud exception, which constitutes Class Plaintiffs'

second ground in their motion to compel. The Sixth Circuit has explained how this exception works:

> A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud. This court has articulated a two-part test for applying the crime/fraud exception: "First, the government must make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the government must establish some relationship between the communication at issue and the prima facie violation." *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir.1986). To satisfy its prima facie showing, the evidence presented by the government must be such that "a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." *Id.* at 166.

*United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997). Class Plaintiffs have met this standard here.

The undersigned has reviewed the public filings and exhibits submitted *in camera* and concludes that Class Plaintiffs' briefing (ECF No. 718-1) accurately sets forth a *prima facie* showing of a sufficiently serious crime or fraud occurring and that the communications at issue were involved in that violation of the law. It appears beyond serious debate that, for purposes of today's analysis, FirstEnergy paid millions to Samuel Randazzo's Sustainability Funding Alliance of Ohio, Inc., that that entity in turn funneled this money to IEU-Ohio, and that this bought-and-paid-for side deal or settlement directly informed proceedings before the Public Utilities Commission of Ohio ("PUCO")—*i.e.*, IEU-Ohio withdrew its opposition to FirstEnergy's plan pending before PUCO. It appears beyond serious debate that, for purposes of today's analysis, this side deal was in violation of Ohio Revised Code § 4928.145 and effectuated a fraud upon PUCO. It appears beyond serious debate that, for purposes of today's analysis, the crime-fraud exception applies here.[2]

---

[2] These conclusions regarding Class Plaintiffs' *prima facie* showing should not be misread as either conclusive factfinding or even as concluding that IEU-Ohio was fully aware of the

In light of the foregoing, the undersigned concludes that IEU-Ohio has failed to sufficiently assert or maintain privilege regarding the documents at issue. Accordingly, the undersigned **GRANTS** the motion to compel (Motion, ECF No. 718) and **ORDERS** that within 14 days from entry of this order, IEU-Ohio must produce the documents highlighted in ECF No. 718-3 because it has failed to meet its burden to establish that any attorney-client privilege or work-product doctrine applies. In addition, within 14 days from entry of this order, IEU-Ohio must produce all documents, including those identified in ECF No. 718-3, improperly withheld on the basis of attorney-client privilege or work-product doctrine related to the undisclosed side agreement as these documents are subject to the crime-fraud exception.

## MODIFICATION OF PROTECTIVE ORDER

Defendants Jones and Dowling have filed a Motion for a Second Amended Protective Order in which they seek to amend the applicable protective order to prohibit what they describe as the ongoing public dissemination of Confidential Information in this litigation. (Motion, ECF No. 719.) Specifically, they assert that (1) information is being designated as Confidential Information under the terms of the operative protective order, (2) the information is then also disclosed to prosecuting attorneys or regulatory agencies as permitted under the protective order, (3) the Confidential Information is then disclosed publicly via public records requests or otherwise, and (4) such disclosure which risks prejudicing their rights to a fair criminal trial or fair trial in other proceedings.

When a party presents good cause for modification of a protective order, a court may indeed implement necessary modifications. *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Lititg.*, 664

---

apparent criminal conduct. The undersigned expresses no opinion on these ultimate issues of fact.

F.2d 114, 118 (6th Cir. 1981); *M.A. v. Wyndham Hotel & Resorts, Inc.*, No. 2:19-cv-00849, 2020 WL 5417560, at *2 (S.D. Ohio Sept. 10, 2020).

Class Plaintiffs, the State of Ohio, and Jones and Dowling all appear to agree or at least accept that the public dissemination of Confidential Information from this litigation is problematic. It neither offends common sense nor requires much imagination to reach a similar position. But it is certainly a close call whether Jones and Dowling have presented good cause to modify the existing protective order. Their contention of prejudice via the release of information to the public—the inability to have a fair trial—is in part conclusory as opposed to presenting specific facts that demonstrate or prove the likelihood of their being harmed.

This aspect of the argument has troubled the undersigned, but prudence and pragmatism lean in favor of modifying the protective order before a leak or disclosures occurs that cannot be unrung and that will harm Jones and Dowling's rights to a fair trial or the State of Ohio's right to a fair state-court prosecution.

After much discussion and a series of meet and confers involving the parties and even the undersigned, the parties could not come to agreement on what language would adequately address the concerns. The current protective order provides in relevant part:

> 11. **No Voluntary Disclosure to Other Entities.** The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in these Actions as set forth in Paragraph 6 of this Order or as otherwise commanded by law or provided in this Order. Nothing in this Order shall prevent a party from providing information in its possession in response to a valid order or subpoena from a law enforcement or regulatory agency requiring the production of such information, except that, prior to such production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as confidential to facilitate that party's efforts to preserve the confidentiality of the material, if warranted.

(Order, ECF No. 411 at PageID .) The language "Nothing in this Order shall prevent a party from providing information in its possession ***in response to a valid order or subpoena from a law enforcement or regulatory agency*** requiring the production of such information" leaves open a pipeline through which Confidential Information can spread to the media and the public at large through public records requests. (Emphasis added.)

Several options have been proposed. Class Plaintiffs do not oppose amendment of the operative protective order. They endorse the Court issuing a protective order that prohibits the production of Confidential Information to any entity or individual outside this federal litigation with no exceptions for court orders or subpoenas. (10/31/24 Conference Tr. at 46:21-47:3.)

Defendant FirstEnergy disagrees with such an approach, objecting to any modification that would prohibit the company from producing Confidential Information to a regulatory or law enforcement agency requiring such production. FirstEnergy casts itself in part as a victim, noting that the company has production requirements to agencies that a protective order with iron-clad nondisclosure provisions would disturb or contradict.

The undersigned is not unsympathetic to this set of circumstances. But the undersigned is also cognizant that a non-prosecution agreement should not be a shield to the efficient and effective prosecution of a federal civil action by plaintiffs who have been allegedly wronged by the defendant(s) who willingly enter into that agreement with the government. A protective order in a state court criminal proceeding should not be a shield to the efficient and effective prosecution of a federal civil action by plaintiffs who have been allegedly wronged by the defendant(s) who are being prosecuted. FirstEnergy's predicament, in part a scenario of its own creation, is thus not dispositive of the issue. That said, some attempt at accommodation should inform any modification—and it does, as discussed below.

Jones and Dowling helpfully propose multiple approaches. In one, they seek to expressly identify preventing prejudice in the state criminal proceedings as a purpose of the protective order, to expand the definition of Confidential Information, and to protect designated Confidential Information from being produced to any state or federal agency, even in response to a subpoena or cooperation agreement. Alternatively, in an effort to satisfy FirstEnergy's concerns over required responses to a subpoena or production requirements to agencies, Jones and Dowling propose an additional amendment permitting disclosure only if the agency submits an in camera written agreement indicating that the agency will not disclose the Confidential Information, even in response to a public records request, and that the agency submits to the jurisdiction of the Court for purposes of enforcement.

Finally, the State of Ohio has proposed the following modification to the protective order, with its proffered changes in bold (except for the section heading, which was in bold originally):

> 11. **No Voluntary Disclosure to Other Entities.** The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in these Actions as set forth in Paragraph 6 of this Order or as otherwise commanded by law or provided in this Order. Nothing in this Order shall prevent a party from providing information in its possession in response to a valid order or subpoena ~~**from a law enforcement or regulatory agency**~~ requiring the production of such information, except that, prior to such production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as confidential to facilitate that party's efforts to preserve the confidentiality of the material, if warranted.
>
> **The Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney, the two state agencies who represent the State of Ohio in pending state criminal matters, agree that they are separately bound by the terms of the April 24, 2024 Protective Order issued by the Summit County Court of Common Pleas. The Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney further agree that that they shall give any material from this case bearing a "Confidential Information" designation a reciprocal "Confidential Discovery" designation under the terms of the state court's April 24, 2024 Protective Order, and handle such**

> **material accordingly. Nothing in this court's order shall be construed to limit, constrain or prevent the State of Ohio or the courts of the State of Ohio from using or entering as evidence any material bearing a "Confidential Information" designation in any state criminal proceeding. Further, nothing in this order shall be construed to limit, constrain or prevent defendants Jones and Dowling from complying with their Oh. Crim. R. 16(H) reciprocal discovery obligations in the state criminal case**.

(Memo Opp, ECF No. 720 at PageID 16617.) This is perhaps the most pragmatic proposal, but it lacks a component addressing the public records loophole or pipeline that has proven troubling.

This loophole needs closed. The mechanism necessary has been suggested; it appears that Jones and Dowling are correct when they assert that Ohio law exempts from disclosure (at least during the pendency of a trial) records that, if released, would prejudice a criminal defendant's right to a fair trial. *See State ex rel. Cincinnati Enquirer v. Sage*, 31 N.E.3d 616, 623 (Ohio 2015). Accordingly, a combination of proposal elements suggested by Jones and Dowling and the State of Ohio will yield a workable modification to the protective order.

The undersigned **RECOMMENDS** modification of the protective order to read as follows:

> 11. **No Voluntary Disclosure to Other Entities.** The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in these Actions as set forth in Paragraph 6 of this Order or as otherwise commanded by law or provided in this Order. Nothing in this Order shall prevent a party from providing information in its possession in response to a valid order or subpoena from a law enforcement or regulatory agency requiring the production of such information provided the following three conditions are met.
>
> First, prior to such disclosure or production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as Confidential Information to facilitate that party's efforts to preserve the confidentiality or non-production of the material, if warranted.
>
> Second, disclosure or production to an agency is permitted only if the agency submits a written agreement to the Court indicating that the agency will not disclose the Confidential Information during the pendency of this federal litigation, even in response to a public records request, and that the agency submits to the jurisdiction of the Court for purposes of enforcement.

> Third, if the agency involved is the Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney, the two state agencies (that represent the State of Ohio in pending state criminal matters) must agree that they are separately bound by the terms of the April 24, 2024 Protective Order issued by the Summit County Court of Common Pleas. The Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney further agree that that they shall give any material from this case bearing a "Confidential Information" designation a reciprocal "Confidential Discovery" designation under the terms of the state court's April 24, 2024 Protective Order, and handle such material accordingly. Nothing in this court's order shall be construed to limit, constrain or prevent the State of Ohio or the courts of the State of Ohio from using or entering as evidence any material bearing a "Confidential Information" designation in any state criminal proceeding. Further, nothing in this order shall be construed to limit, constrain or prevent defendants Jones and Dowling from complying with their Oh. Crim. R. 16(H) reciprocal discovery obligations in the state criminal case.

**MOTION TO STAY AND THE DEPOSITIONS OF RICHLOVSKY AND FANELLI**

The State of Ohio has intervened for the limited purpose of filing a motion to stay portions of discovery. (Motion, ECF No. 694.) The State seeks to stay two components of this litigation: (1) the production of the discovery materials designated confidential in the state-court criminal proceedings against Defendants Jones and Dowling, and (2) the taking of six depositions (Ebony Yeboah Amankwah, Robert Reffner, Josh Rubin, Brad Bingaman, Matthew Brakey, and Steven Staub) related to this withheld material.

Defendants Jones and Dowling seek to take the depositions of Matthew Richlovsky, Santino Fanelli, and Steve Staub. Defendant FirstEnergy requests that the undersigned delay the taking of these depositions until FirstEnergy has obtained and reviewed the information to which Jones and Dowling have had access but that has been withheld from FirstEnergy as a result of the state court criminal proceedings and the protective order in place in that case discussed above.

A wrinkle in regard to the depositions of Richlovsky and Fanelli is the representation by Jones and Dowling that "[n]either Mr. Richlovsky nor Mr. Fanelli was interviewed by the State in

connection with the criminal case. Neither individual has been subpoenaed, produced documents, or testified in connection with the criminal case. Simply put, Mr. Jones and Mr. Dowling received no information relating to Mr. Richlovsky or Mr. Fanelli in the criminal proceedings that creates an 'imbalance' vis-à-vis FirstEnergy or any other party to this litigation." (Position Statement, ECF No. 747 at PageID 17333.)

The facts that have led to the foregoing requests can be summarized as follows: Defendants Jones and Dowling had various documents and/or audio recordings that were subject to production via Judge Marbley's order. The material was not marked confidential in the state court case, was therefore not considered confidential in that case, and was identified in the state court case as not being confidential. Again, Jones and Dowling were obligated to produce them here. Instead of doing so, they withheld the documents, contacted the Ohio Attorney General's Office, and obtained that office's cooperation in retroactively designating the documents to be confidential. Citing the state court protective order, Jones and Dowling then declined to produce the documents in this federal litigation. Despite this nondisclosure, they now wish to proceed with taking select depositions that may be informed by these documents. The remaining parties aptly characterize this series of events as creating an "information imbalance" that should preclude the taking of the depositions until remedied.

Jones and Dowling argue that there is no meaningful information imbalance because, at least in the case of Richlovsky and Fanelli, FirstEnergy has access to its own current employees at any time. They also note that discovery proceeds in cases all the time where one party knows more than another. And Jones and Dowling assure the undersigned that the withheld documents are "underwhelming"—in other words, they would be of limited value in this federal litigation. (10/31/24 Conference Tr. at 27:2-8; 2/27/25 Conference Tr. at 18:22-23.)

Defendants Jones and Dowling have access to information from their state criminal cases that other parties in the consolidated federal actions do not have. No one has provided this Court with that information, despite being invited multiple times to do so. The State of Ohio, for example, has elected not to provide the Court with information for in camera review, but asks the Court to accept that disclosure could harm the prosecution of Jones and Dowling as well as unidentified and unexplained ongoing investigations into someone, somewhere.

The undersigned finds the circumstances surrounding the sealing of the state court materials to be discomforting, to put a polite label on it. It reeks of litigation gamesmanship if not odd collusion, and the Ohio Attorney General's Office's willingness to indulge in this handling of the undisclosed material is confounding and deeply concerning.

*Trust us*, Jones and Dowling assert without making any *in camera* proffer or providing necessary context and insight, *the material involved is underwhelming*.

*Trust us*, the Ohio Attorney General's Office asserts while declining to provide any *in camera* proffer or necessary context and insight, *the material involved is important enough that its disclosure could disrupt an ongoing state investigation into and prosecution related to the largest public corruption scandal Ohio has ever known*.

It is an unlikely scenario that would permit both representations to be true at the same time.

Fairness dictates that the parties who have not been able to review the withheld material should be able to review it and determine for themselves its utility, if any. It is beyond question that Jones and Dowling are entitled to a fair criminal trial. But it is equally beyond dispute that the other litigations in the three captioned cases are also entitled to a fair civil trial. And it is frankly ridiculous that Jones and Dowling and the State of Ohio ask this Court to accept their actions and the consequences of those actions on blind trust.

Blind trust does not satisfy the standard for staying a federal court from conducting its business for an indeterminate amount of time. Blind trust and decision making untethered from principles of decency, fairness, and public interest are perhaps what created the underlying corruption mess in the first place. Fair transparency, meeting legal standards, and the effective and efficient prosecution of legal rights is what is needed here. The business of the Court is administering justice, and that task calls for applying the Federal Rules of Civil Procedure toward the just, speedy, and inexpensive determination of these three cases. *See* Fed. R. Civ. P. 1.

The undersigned **ORDERS** that, within 14 days from the date of this Order and Report and Recommendation, Jones and Dowling submit a complete account of their actions in regard to the withheld material, explaining their actions and providing copies of all communications with the Ohio Attorney General's Office related to the agreement to designate the withheld material confidential. This submission should include affidavits or declarations executed by the counsel involved. In addition, Jones and Dowling should submit a brief addressing why they think sanctions are not appropriate for violating Judge Marbley's order. All of this material should be submitted *ex parte* for *in camera* review. The undersigned recognizes that some of this material is already before the Court, but notes that Jones and Dowling and their counsel will likely not want to stan don the current record. This procedure affords them the opportunity to put everything together, in context, with ample explanation and argument.

Also ordered: Within 14 days from the date of this Order and Report and Recommendation, Jones and Dowling must also provide the withheld material to the undersigned. This material should be submitted *ex parte* for *in camera* review.

The undersigned further **ORDERS** that, within 14 days from the date of this Order and Report and Recommendation, the Ohio Attorney General's Office submit a complete account of

its actions in regard to the withheld material, explaining its actions and providing copies of all communications with counsel for Jones and Dowling related to the agreement to designate the withheld material confidential. This submission should include affidavits or declarations executed by the counsel involved. All of this material should be submitted *ex parte* for *in camera* review.

Also ordered: Within 14 days from the date of this Order and Report and Recommendation, the State of Ohio must also provide the undersigned with a letter either (1) explaining specifically why disclosure of the withheld material and/or the lack of a stay would harm its prosecution or ongoing investigation or (2) declining to provide that information to the Court. Said letter should be submitted *ex parte* for *in camera* review. *See U.S. v. Smith*, 985 F. Supp. 2d 506, 530-31 (S.D.N.Y. 2013).

Upon review of the letter, the undersigned will make a final recommendation to the Court regarding the propriety of an ongoing stay. Until then, the undersigned **GRANTS IN PART** the State of Ohio's motion to stay, holding the ultimate disposition of that motion in abeyance. Under this temporary stay, Jones and Dowling are able to withhold the documents and there is a stay of the taking of the six depositions at issue. In addition, the depositions of Richlovsky and Fanelli are stayed. These two individuals are included in the limited stay out of an abundance of caution until the upcoming submissions provide the undersigned with necessary context and either confirm or refute the representation of Jones and Dowling.

The temporary stay will last until an order is filed lifting the stay. This approach tracks the prior caution exercised in this litigation. At the urging of the undersigned and by agreement, the parties elected not to proceed with any of the six depositions until after the motion for a stay was decided. This preservation of the status quo allowed for time to address the mess that has been

created. Because the information ordered above will inform final disposition of that mess, the status quo in regard to mandated disclosure and the depositions of the six individuals will continue.

This stay is limited. Note that all other depositions not previously stayed (*i.e.*, the experts) may proceed. This includes any deponents who might be caught in what was deemed the "downstream effect" during the briefing and conferences on these issues. In other words, the six depositions directly involved will be held in abeyance until the information imbalance is corrected or otherwise resolved, while the depositions of other individuals who might be incidentally affected by the information imbalance can proceed. To the extent that the eventual disclosure of the withheld materials would justifiably necessitate reopening a deposition that will be or has already been taken, such reopening would be permitted.

**REQUEST TO MODIFY THE DEPOSITION PROTOCOL, PART I**

The applicable deposition protocol limits each side to 65 total depositions, split into 42 party depositions and up to 23 non-party depositions per side. (Order, ECF No. 309 at PageID 6731.) In a December 4, 2024 filing, various defendants[3] jointly request that the deposition protocol be modified to eliminate the limit of 23 non-party depositions and allow each side to allocate their total 65 depositions as they see fit. (Joint Submission, ECF No. 734.) Various defendants seek to depose some or all of 16 investment managers or advisors identified by Plaintiffs, in addition to lobbying analysts (*i.e.*, consultants who report on lobbying) and former employees of FirstEnergy or the Direct Action Plaintiffs. Of the three to four groups identified by

[3] The moving defendants are FirstEnergy Corp., Steven E. Strah, K. Jon Taylor, Jason J. Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, Leslie M. Turner, Dennis M. Chack, James F. Pearson, Robert P. Reffner, Donald R. Schneider, Leila L. Vespoli, and John Judge. *See* Joint Submission, ECF No. 734 at PageID 17058 n.1.

the parties, the moving defendants state that "[i]t's really the investment advisors that are driving the numbers here"—in other words, that the desire to depose a large number of the investment managers or advisors is primarily what is motivating the modification request. (12/12/24 Conference Tr. at 13:20-21.) The moving defendants state that the defense strategies of the 41 total defendants have diverged so as to necessitate the requested modification.

Defendant Jones supports the request for modification, echoing that his defense strategy has diverged significantly from other defendants. For example, where FirstEnergy has admitted wrongdoing, Jones and Defendant Dowling deny any wrongdoing. These two defendants therefore seek an alternative modification that would afford them their own non-party depositions. Initially, they agreed that 23 would mirror the existing protocol, but stated that 23 "is probably in excess of what we need." (12/12/24 Status Conference Tr. at 16:16-19.) More recently, they have stated that they would like to take 25 non-party depositions. (4/10/25 Conference Tr. at 7-10.)

Class Plaintiffs oppose both suggested modifications, asserting that the two most fundamental bases for the modifications – that defenses have diverged and investment advisors are involved –were known or should have been obvious to the parties at the time the deposition protocol was established, if not before. Thus, Plaintiffs argue, the moving defendants lack good cause for modifying the protocol and are simply trying to exert pressure on investment advisors who would in turn put pressure on Plaintiffs for being subjected to depositions. In sum, Plaintiffs take the position that "we shouldn't fix something with no evidence of it being broken." (12/12/24 Conference Tr. at 22:24-25 to 23:1.)

The Direct Action Plaintiffs are aligned with Plaintiffs' argument. (12/12/24 Conference Tr. at 29:7-10.) They note that both the Court and the moving defendants were well aware of their

likely participation in discovery prior to the deposition protocol being implemented and that, consequently, their participation now hardly warrants accommodation through modification.

During the December 12, 2024 Status Conference, the undersigned issued an oral ruling on these issues that will now be memorialized here. Such a ruling in the form of an Order as opposed to a Report and Recommendation is Consistent with Judge Marbley's prior decisions in this litigation. Previously, Judge Marbley wrote:

> [U]nder his Appointment Order, the Special Master is charged with "address[ing] pretrial matters," including establishing discovery schedules, resolving discovery disputes, overseeing docket management, and generally supervising formal discovery. (*See* Doc. 541 at 3–4). Managing depositions is soundly within his duties. (*See id.* at 541 (stating the Special Master has the authority from the Court to carry out these duties)); *see also Accusoft Corp.*, 237 F.3d at 58 ("During the performance of his duties, a master is functionally indistinguishable from a trial judge."). Thus, the Special Master has the authority to manage depositions.

*In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-03785-ALM-KAJ, 2024 WL 1984802, at *16 (S.D. Ohio May 6, 2024), *motion to certify appeal denied*, No. 2:20-CV-03785-ALM-KAJ, 2024 WL 3384864 (S.D. Ohio July 12, 2024).

Exercising this delegated authority, the undersigned concludes there is a significant lack of good cause to support either suggested modification here. The moving defendants and Defendants Jones and Dowling predicate their requests largely on hypothetical facts—we hope to uncover ***abc*** from a non-party deposition, which will demonstrate a need for more non-party depositions to uncover x***yz***—all the while lacking concrete facts, data, or evidence to support their assumptions and hypotheticals. They have proposed solutions without sufficiently establishing a problem necessitating action at this juncture.

The undersigned therefore **DENIES WITHOUT PREJUDICE** the requests to modify the deposition protocol. This leaves the issue of modification open for being revisited. For example, a party seeking modification of the deposition protocol in regard to non-party depositions may take

one or more of those depositions and then seek to present facts establishing that good cause exists to modify the deposition protocol to permit a reworked number of such non-party depositions. Or a party seeking modification could pursue an alternative route to good cause. The key is to argue with evidence and examples and not with mere conjecture based on hypotheticals.

**SUBPOENAS SERVED ON GOVERNOR DEWINE AND SENATOR HUSTED**

Prior status conferences involved a number of subpoenas served by Plaintiffs on Governor Mike DeWine and Senator Jon Husted. At the February 13, 2025 Status Conference, the undersigned directed that Governor DeWine and Senator Husted engage in a rolling production with all documents that they were going to produce be produced by February 28, 2025. It appears there has been no disagreement over that production. As a reminder, pursuant to the undersigned's direction at the February 3, 2025 Status Conference, Governor DeWine and Senator Husted shall submit (if they have not done so already) a revised privilege log that is sufficient under the Federal Civil Rules and Southern District of Ohio guidance.

**SCOPE OF DEFENDANTS' NON-PARTY DEPOSITIONS**

Class Plaintiffs seek to preclude Defendants—essentially FirstEnergy, the defendant that has noticed such depositions—from taking additional investment manager or advisor depositions. Class Plaintiffs primarily argue that the limited number of such depositions already taken have produced no information valuable to Defendants, that because this is not a direct reliance case this type of deposition will likely not yield any relevant or valuable information, and that the depositions are being noticed for the purpose of harassment. In the absence of an outright bar to the depositions or stipulations negating the need for the depositions, Class Plaintiffs have offered that the investment managers and advisers could respond to written deposition questions.

FirstEnergy in turn argues that it is simply entitled to take multiple investment manager or advisor depositions under the governing protocol, that no plaintiff can determine relevance or utility for a defendant's depositions, and that it deems the deposition at issue to be necessary. FirstEnergy has repeatedly emphasized on the record that it will not seek to reopen any of the depositions at issue regardless of what the Sixth Circuit may hold in the outcome of the pending Rule 26(f) appeal. (4/10/25 Tr. at 19, 28.)

Both sides to this dispute over the scope of the depositions appear to agree with the foundational precept that a litigant is permitted to pursue his, her, or its litigation strategy, specifically a deposition strategy, regardless of whether it is sound, foolish, or a mixed bag of both, provided the conduct of such depositions remains within the guidelines embodied in the Federal Rules of Civil Procedure. Those rules do not support precluding investment manager depositions based on the limited circumstances before the undersigned. There may be redundancy; that is permitted. There may be inconvenience; it falls far short from rising to the level of harassment that would preclude a deposition. There may or may not be essential utility to the line of questioning pursued; even in the parties' dispute over what needs to be proven at trial and how it can be proven, there remains the fact that the depositions cannot readily be dismissed as pointless. Even Class Plaintiffs' offered alternative of substituting written questions or arriving at stipulations inherently recognizes that wholesale preclusion is not warranted.

The undersigned declines to preclude Defendants from taking additional investment manager depositions and **DENIES** the request for such an order.

**<u>REQUEST TO MODIFY THE DEPOSITION PROTOCOL, PART II</u>**

The multiple-party debate over party and non-party depositions that Defendants may take under the agreed-upon deposition protocol extends not only to the scope (*i.e.*, who) but also (again)

to the number of permissible depositions. Previously, the undersigned orally denied requests for modifying or eliminating the deposition caps at the December 12, 2024 Status Conference. The parties' subsequent and most recent dispute seeks to revisit that oral order, which is memorialized above. As with most sequels, this next chapter tells the same story as the original.

As noted above, the protocol provides for 42 party depositions and 23 non-party depositions. Of these available depositions, Defendant FirstEnergy has taken 7 party depositions and 6 non-party depositions. It is important to note at the outset of this discussion that FirstEnergy reasonably points out that it is ***not*** requesting that the number of party or non-party depositions be modified. In fact, FirstEnergy emphasizes, it is far below the number of non-party depositions permitted by the agreed-upon protocol. Notably, FirstEnergy advances the position that because in its estimation it is the principal or primary defendant –essentially, the defendant who would bear the largest share of (if not all of) the cost of a losing judgment or settlement—it should be entitled to the lion's share of the limited number of depositions available. (4/10/25 Conference Tr. at 23.) FirstEnergy has offered, however, that it is "prepared to work with Jones and Dowling and see how many depositions they have and who their people are." (4/10/25 Conference Tr. at 21:16-18.) And FirstEnergy has indicated that it would be in agreement with lifting or abolishing the party/non-party caps, with each side getting a total of 65 depositions to use as that side deems fit, or giving Jones and Dowling a specified number of depositions.

Defendants Jones and Dowling disagree with much of FirstEnergy's argument. They argue that their interests and defenses have diverged from FirstEnergy since agreeing to the deposition protocol and suggest that abolishing the distinction between party and non-party depositions would enable them to take an additional 25 non-party fact depositions that they want to take. When questioned, they did not offer a list of all 25 proposed non-party deponents, instead naming several

individuals or places where individuals worked and confirming that at least some if not all of the "information imbalance" potential deponents discussed above would fall into the 25. (4/10/25 Conference Tr. at 7-10.)

These defendants stopped conferring on how to split the depositions and the representation was made that "no one was willing to offer their list up for comparison." (4/10/25 Conference Tr. at 10.) Counsel represented to the undersigned that given the divergence in defenses and interests, "the likelihood that we have individuals on our list who we need to depose in order to gather the evidence we need to defend our clients are also on FirstEnergy's list is slim to none." (4/10/25 Conference Tr. at 12:4-8.)

Class Plaintiffs support maintaining the agreed-upon caps set forth in the deposition protocol, in part because they view the caps as self-regulating of Defendants' deposition choices (*i.e.*, defendants are less likely to squander limited depositions on depositions of little or no litigation value).

The Direct Action Plaintiffs perhaps summed it up best when their counsel stated that "given that FirstEnergy is not seeking – at least at this time – to expand the number of depositions under the protocol or eliminating the party versus nonparty distinction – . . . then I don't think there's a live issue on that." (4/10/25 Conference Tr. at 40:2-8.)

The undersigned is not unsympathetic to the argument by Jones and Dowling that if FirstEnergy consumes non-party depositions with investment manager or advisor depositions, then there may be sufficient justification for expansion of the deposition cap or a remixing of the cap configurations. But potentialities are at best possibilities and not even probable outcomes necessitating immediate action. As before, there is again no apparent reason necessitating expansion or other modification of the permitted depositions at this time. The number and

categorization of party and non-party depositions allotted to Defendants under the deposition protocol will remain unchanged. This determination arises from the current circumstances and the current detail provided to the undersigned. In other words, any defendant may pursue expansion or other modifications under sufficient qualifying circumstances in the future. Defendants also remain free and are encouraged to discuss compromises and how to avoid needless redundancies.

**DEPOSITION OF GRABEL**

Jonathan Grabel is LACERA's chief investment officer. FirstEnergy seeks to depose him as to what he understood about the investing strategy and what he understood the investment managers were doing during the relevant time period involved in this case. There are two extant issues related to his potential deposition: one, should FirstEnergy be permitted to depose Grabel, and, two, if FirstEnergy is permitted to depose Grabel, whether his deposition should count as a party or non-party deposition.

Class Plaintiffs seek to preclude FirstEnergy from taking the deposition of Grabel. They argue that because a Rule 30(b)(6) deposition and other evidence already indicate that LACERA does not exercise any discretion regarding the purchase and sale of securities, the only real purpose of deposing Grabel is to engage in harassment. Class Plaintiffs also assert that Grabel's testimony would be irrelevant because what an individual investment manager says does not inform materiality.

FirstEnergy counters that there is no rule that it has to accept LACERA's 30(b)(6) witness testimony or other evidence as dispositive and that it can test 30(b)(6) testimony against other testimony on the same issue. The company points out that it is under the deposition caps (regardless of what party/non-party count Grabel's would apply to) and that the same reasons that support the taking of multiple investment manager or advisor depositions noted above of course

apply to Grabel. Moreover, FirstEnergy has expressly stated on the record that it "will not seek to reopen Mr. Grabel's deposition . . . regardless of what the Sixth Circuit does [in the Rule 23(f) appeal]." (4/10/25 Conference Tr. at 28:1-5.)

There is no formal motion for a protective order or other motion before the undersigned, but the same standard applicable to such a motion governs the analysis today. The parties' briefing and oral argument has addressed the relevant standard and facts, and the form with which this issue has been addressed is sufficient to present the issue for disposition even if there is technically no formal motion to grant or deny.

During the April 10, 2025 conference, counsel for FirstEnergy argued:

> I don't think [Class Plaintiffs] have a basis to prohibit us from taking [Grabel's deposition] because under the discovery protocol which they agreed to, without seeking leave, meaning we could take what Mr. Forge thinks is a silly deposition but we think is an important deposition, and that's sort of the way the litigation system works. We can take his deposition.

(4/10/25 Conference Tr. at 26:8-16.) The undersigned agrees. There is no apparent need to prohibit the deposition of Grabel, with the assertions of harassment more conclusory than concrete based on what has been presented. The inherent simple inconvenience that attaches to any deposition does not rise to the level of harassment precluding a deposition. There is also a basis for concluding that the deposition could yield relevant testimony, even if its ultimate value might accurately be kindly categorized as of limited or tangential relevance. The undersigned also agrees that, in light of FirstEnergy's binding representation that it will not seek to reopen Grabel's deposition, there is little if any apparent benefit to pushing the deposition back as a compromise measure.

FirstEnergy is permitted to take the deposition of Grabel.

This leaves the issue of whether Grabel's deposition should count against Defendants' party cap or the non-party cap. The undersigned's analysis can readily be summarized by this line from the Direct Action Plaintiffs' briefing: "an individual or entity not named as a party to a lawsuit is, by definition, a 'non-party.'" (ECF No. 782 at PageID 18044.) Even more concise is this statement from Class Plaintiffs' briefing: "someone who is not a party is a non-party." (ECF No. 781 at PageID 18021.)

There is a distinction between a party's officer and the officer of an agent of a party for purposes of classifying that officer. For example, in *Columbus Life Insurance Company v. Wilmington Trust, N.A.*, a federal court addressed a motion to compel aimed at three investment advisor or consulting firms. 344 F.R.D. 207, 212 (D. New Jersey 2023). The firms were designated as ***non-parties*** by the district court and had been served with Rule 45 subpoenas. *See id.* at 213. The court held that the non-party firms were considered agents of the defendant trust for purposes of New Jersey's attorney-client privilege. *See id.* at 221. Notably, this analysis never involved re-designating any of the firms ***to be a party***.

The parties have expended a fair amount of ink, time, energy, and money on this essentially inconsequential debate. Grabel's deposition is a non-party deposition under the deposition protocol, which links the party versus non-party status of an individual or entity to whether that individual or entity is a litigant. *See* Order, ECF No. 309 at PageID 6732, 6733, 6734. And to avoid future debate: the parties are those individuals and entities designated as named Plaintiffs and Defendants on the pleadings and listed on the docket, with all others constituting non-parties.

**<u>SUMMARY OF ORDERS AND RECOMMENDATIONS</u>**

The following orders and recommendations extend to the same issues, to the extent the issues are extant or arise, in the Direct Action cases, Case Nos. 2:21-cv-05839 and 2:22-cv-00865.

The undersigned issues the following Orders:

- Class Plaintiffs' motion to re-designate (Motion, ECF No. 668) is **GRANTED**. The account balance and emails must be redacted as discussed herein and the exhibit should then be filed on the docket unsealed.

- Class Plaintiffs' motion to strike is **GRANTED**. (Motion, ECF No. 719.)

- Class Plaintiffs' motion to compel **is GRANTED**. (Motion, ECF No. 718.) Within 14 days from entry of this order, IEU-Ohio must produce the documents highlighted in ECF No. 718-3 and all documents, including those identified in ECF No. 718-3, improperly withheld on the basis of attorney-client privilege or work-product doctrine related to the undisclosed side agreement.

- Within 14 days from the date of this Order and Report and Recommendation, Jones and Dowling must submit *ex parte* the ordered materials regarding the material withheld pursuant to the state protective order for *in camera* review.

- Within 14 days from the date of this Order and Report and Recommendation, Jones and Dowling must also provide the withheld material to the undersigned. This material should be submitted *ex parte* for *in camera* review

- Within 14 days from the date of this Order and Report and Recommendation, the Ohio Attorney General's Office must submit *ex parte* the ordered materials regarding the material withheld pursuant to the state protective order for *in camera* review.

- Within 14 days from the date of this Order and Report and Recommendation, the State of Ohio must submit *ex parte* the ordered letter regarding the alleged harm to the prosecution and any ongoing investigations for *in camera* review.

- The State of Ohio's motion to stay is **GRANTED** insofar as a temporary stay of the taking of the six "information imbalance" depositions exists until further order. The same limited stay applies to the depositions of Richlovsky and Fanelli. All other depositions not previously stayed may proceed.

- Defendants' initial requests to modify the deposition protocol are **DENIED WITHOUT PREJUDICE**.

- Class Plaintiffs' request to limit or preclude additional depositions of investment managers is **DENIED**.

- Jones and Dowling's subsequent request to modify the number of party and non-party depositions allotted to Defendants under the deposition protocol is **DENIED WITHOUT PREJUDICE**. The protocol will remain unchanged at

this time, with any defendant remaining able to pursue modifications under sufficient circumstances.

- Class Plaintiffs' request to preclude the deposition of Grabel is **DENIED**. FirstEnergy is permitted to take the deposition of Grabel, and Grabel's deposition will count as a non-party deposition against Defendants' caps.

The undersigned also issues the following recommendations:

- The Court should **GRANT IN PART** the motion to modify the protective order to adopt the recommended language detailed herein.

**IT IS SO ORDERED.**

*/s/ Shawn K. Judge*
SHAWN K. JUDGE (0069493)
SPECIAL MASTER