UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) ) | No. 2:20-cv-03785-ALM-KAJ <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | ) ) ) ) ) ) ) | Judge Algenon L. Marbley <br> Magistrate Judge Kimberly A. Jolson |

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
W. SCOTT DALRYMPLE

MURRAY MURPHY MOUL
 + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com




Liaison Counsel

ROBBINS GELLER RUDMAN
 & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com


Class Counsel

4914-7585-9594.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARDS ..........................................................................................2

    A. Class-Certification Requires Only a *Methodology* for Calculating Classwide Damages, Not Actual Damages Calculations..........................................2

    B. The Straightforward Requirements for Admitting Expert Testimony....................2

    C. Juries, Not Experts, Determine Damages ...............................................................3

III. BACKGROUND ....................................................................................................4

    A. Plaintiffs' Theory of Liability and Dalrymple's Methodology Are Old News ......................................................................................................................4

    B. Defendants' "New Theory" Rhetoric Fails.............................................................5

        1. Defendants Have Had Dalrymple's Event Study for Years.........................5

        2. Since Day One, Plaintiffs Have Alleged FirstEnergy's Conversion to a Criminal Enterprise ..............................................................................7

    C. Defendants Mischaracterize Plaintiffs' Theory of the Case ...................................9

    D. Defendants Mischaracterize FirstEnergy's Confession and the Corresponding Crimes .........................................................................................9

    E. Defendants Mischaracterize Dalrymple's Testimony...........................................11

IV. ARGUMENT........................................................................................................12

    A. The Admissibility of Dalrymple's Methodology Cannot Be Reasonably Contested..............................................................................................................12

    B. Defendants' Arguments Ring Hollow ..................................................................14

        1. Dalrymple's View Reliably Applies to the Facts of This Case .................14

        2. Dalrymple's "Expectation" of Relatively Constant Inflation Is Sensible......................................................................................................15

        3. Dalrymple's Statements Comply with Rules 26 and 37 ............................18

V. CONCLUSION....................................................................................................20

4914-7585-9594.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cline v. Rountree*,
236 F.2d 412 (6th Cir. 1956) ........................................................................................3

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)........................................................................................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...................................................................................................1, 13

*Drayton v. Jiffee Chem. Corp.*,
591 F.2d 352 (6th Cir. 1978) ........................................................................................3

*Eastman Kodak Co. of N.Y. v. Southern Photo Materials Co.*,
273 U.S. 359 (1927)........................................................................................................3

*Edwards v. McDermott Int'l, Inc.*,
2024 WL 1769325 (S.D. Tex. Apr. 24, 2024) ...........................................................2

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)........................................................................................................2

*Evans v. Cardinal Health*,
2020 WL 8459004 (E.D. Mich. Nov. 19, 2020)........................................................19

*Ferris v. Wynn Resorts Ltd.*,
2023 WL 2337364 (D. Nev. Mar. 1, 2023) ................................................................2

*Grae v. Corr. Corp. of Am.*,
2021 WL 1100431 (M.D. Tenn. Mar. 17, 2021) .......................................................13

*Heller v. District of Columbia*,
952 F. Supp. 2d 133 (D.C. Cir. 2013)........................................................................19

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
2022 WL 1037210 (S.D. Cal. Apr. 6, 2022)...............................................................13

*Hill v. Spiegel, Inc.*,
708 F.2d 233 (6th Cir. 1983) ..................................................................................3, 18

*In re Acuity Brands, Inc. Sec. Litig.*,
2020 WL 5088092 (N.D. Ga. Aug. 25, 2020) ............................................................2

*In re DVI, Inc. Sec. Litig.*,
2010 WL 3522090 (S.D.N.Y. Sep. 3, 2010)..............................................................13

4914-7585-9594.v1

**Page**

*In re E. Palestine Train Derailment*,
2025 WL 326040 (N.D. Ohio Jan. 29, 2025)........................................................................15

*In re FirstEnergy Corp. Sec. Litig.*,
149 F.4th 587 (6th Cir. 2025) ...............................................................................2, 8, 9, 13

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003) ..............................................................................13

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ...................................................................................2, 3, 12, 13

*In re Upstart Holdings, Inc. Sec. Litig.*,
348 F.R.D. 612 (S.D. Ohio 2025).........................................................................................2

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. June 13, 2014)....................................................................15

*Kirkbride v. Kroger Co.*,
349 F.R.D. 160 (S.D. Ohio 2025).......................................................................................17

*Little v. City of Morristown, Tenn.*,
2023 WL 2769446 (E.D. Tenn. Mar. 31, 2023) .................................................................19

*Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*,
493 F.3d 160 (D.C. Cir. 2007)............................................................................................19

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018),
*rev'd*, 64 F.4th 731 (6th Cir. 2023)....................................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
585 F. Supp. 2d 568 (D. Del. 2008)....................................................................................19

*Shupe v. Rocket Cos., Inc.*,
752 F. Supp. 3d 689 (E.D. Mich. 2024)..............................................................................13

*Shupe v. Rocket Cos., Inc.*,
752 F. Supp. 3d 735 (E.D. Mich. 2024)................................................................................2

*Strougo v. Tivity Health, Inc.*,
2025 WL 1415896 (M.D. Tenn. May 15, 2025)..................................................................15

*Taylor v. GEICO Indem. Co.*,
663 Fed. App'x 740 (11th Cir. 2016) ............................................................................17, 19

4914-7585-9594.v1

**Page**

*Texaco Inc. v. Hasbrouck*,
496 U.S. 543 (1990)................................................................................................3

*Thompson v. Doane Pet Care Co.*,
470 F.3d 1201 (6th Cir. 2006) ........................................................................19, 20

*United States v. Cui*,
_ F.4th _, 2026 WL 73014 (7th Cir. Jan. 9, 2026)...............................................10

*United States v. Hills*,
27 F.4th 1155 (6th Cir. 2022) ..............................................................................10

*United States v. Householder*,
137 F.4th 454 (6th Cir. 2025), *petition for cert. filed*,
*Householder v. United States*, No. 25-756 (2025),
*and Borges v. United States*, No. 25-757 (2025) ..................................................10

*United States v. Rich*,
14 F.4th 489 (6th Cir. 2021) ................................................................................10

*Vrakas v. U.S. Steel Corp.*,
2019 WL 7372041 (W.D. Pa. Dec. 31, 2019)........................................................2

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)................................................................................2, 9

*Weiner v. Tivity Health, Inc.*,
334 F.R.D. 123 (M.D. Tenn. 2020) ..........................................................2, 13, 15

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C
§1343......................................................................................................................10
§1346......................................................................................................................10
§1349......................................................................................................................10
§1962(d).................................................................................................................10

Federal Rule of Civil Procedure
Rule 23(b)(3).....................................................................................................2, 13
Rule 26 ......................................................................................................7, 18, 19
Rule 37 .............................................................................................................7, 18

Federal Rules of Evidence
Rule 702 ......................................................................................................1, 2, 12
Rule 702(d) ...........................................................................................................14

4914-7585-9594.v1

**Page**

## STATUTES, RULES, AND REGULATIONS

7 Newberg and Rubenstein on Class Actions (6th ed.)
§22:81 ..................................................................................................................14

4914-7585-9594.v1

## I.    INTRODUCTION

Plaintiffs' theory of liability is that corrupt conduct in which the Defendants engaged and omitted from their statements caused FirstEnergy's stock to trade at an inflated level and revelations of that previously concealed information caused the inflation to dissipate through share-price drops. Rooted in his 2022 reports and deposition testimony, Plaintiffs' expert, W. Scott Dalrymple, CFA, explained throughout a full-day evidentiary hearing that he would measure damages on a classwide basis using the event-study methodology (produced to Defendants in 2022) and refined through standard valuation tools.  Given that courts in and outside the Sixth Circuit universally recognize the propriety of the event-study methodology to calculate damages in cases such as this one, Defendants did not move to exclude Dalrymple's opinions or testimony in 2022 in accordance with the Court's Scheduling Order (ECF 255).  Thus, Defendants' Motion to Exclude Plaintiffs' Expert W. Scott Dalrymple (ECF 949) (the "Motion") is untimely and their arguments are waived.

Regardless, Defendants' Motion largely parrots their post-remand brief and is similarly dependent on mischaracterizations of the record and inapt cases.  Defendants fail to identify a single methodology that rivals the event study's reliability here, let alone exceeds it.  In fact, the thrust of their Motion has nothing do with the class-action status of this case, as the same methodology would yield the same answers based on the same evidence for the three class representatives as it would for the entire class.  In short, Defendants ask this Court to defy years of precedent, unanimous academic and expert opinions, and common sense, as excluding Dalrymple would amount to a determination that there is simply no way to measure damages caused by dissipated stock-price inflation.

The parallel reliability requirements in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, ensure an expert has "'good grounds'" for his views.  *Daubert*, 509 U.S. at 590.  Dalrymple plainly does.  Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion.

- 1 -

4914-7585-9594.v1

## II.     LEGAL STANDARDS[1]

### A.     Class-Certification Requires Only a *Methodology* for Calculating Classwide Damages, Not Actual Damages Calculations

At the class-certification stage, Plaintiffs need only "set forth a methodology for calculating damages on a classwide basis that is susceptible of measurement across the entire class and satisfies the predominance requirement of Rule 23(b)(3)." *In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587, 622 (6th Cir. 2025).  The Supreme Court has made clear that it is erroneous to require a plaintiff to prove loss causation, let alone calculate damages the fraud caused, at the class-certification stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011); *see also In re Upstart Holdings, Inc. Sec. Litig.*, 348 F.R.D. 612, 630 (S.D. Ohio 2025).  Likewise, every court to consider the issue has held it is premature at the class-certification stage to require plaintiffs to show how they could account for *potential* time-varying inflation or overreactions.[2]

### B.     The Straightforward Requirements for Admitting Expert Testimony

The standard for admitting expert testimony is straightforward and readily met here:

[A] proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements.  First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702.  Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*  Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id.*

---

[1]     All capitalized terms not defined herein have the same meaning as in Plaintiffs' Post Remand Brief (ECF 947).  Unless otherwise noted, all emphasis is added and citations are omitted.

[2]     *See, e.g.*, *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017); *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 735, 784 (E.D. Mich. 2024); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 138 (M.D. Tenn. 2020); *Edwards v. McDermott Int'l, Inc.*, 2024 WL 1769325, at *13 (S.D. Tex. Apr. 24, 2024); *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *12 (D. Nev. Mar. 1, 2023); *In re Acuity Brands, Inc. Sec. Litig.*, 2020 WL 5088092, at *10 (N.D. Ga. Aug. 25, 2020); *Vrakas v. U.S. Steel Corp.*, 2019 WL 7372041, at *10 (W.D. Pa. Dec. 31, 2019).

4914-7585-9594.v1

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).

### C.      Juries, Not Experts, Determine Damages

Ultimately, juries determine damages, not experts.  The experts' role is to assist, not dictate. "[A] jury is entitled to award damages in an antitrust case *based on* expert testimony."  *Scrap Metal*, 527 F.3d at 533; *see also Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 572 (1990) (holding that "expert testimony . . . provided a sufficient basis for an acceptable *estimate* of the amount of damages"). Even outside the class-certification context, courts do not require plaintiffs' experts' damages opinions or calculations to account for every possible permutation *defendants* can concoct.  Nor do courts require the level of precision Defendants demand here: "Once the existence of damages is shown with reasonable certainty, 'the precise amount is necessarily left to the discretion of the finder of fact, to be exercised reasonably and within the range of the proofs in the case.'"  *Hill v. Spiegel, Inc.*, 708 F.2d 233, 238 (6th Cir. 1983); *see also Drayton v. Jiffee Chem. Corp.*, 591 F.2d 352, 366 (6th Cir. 1978) ("It has often been held that mere difficulty of assessing damages should not preclude an award where the fact of injury clearly appears and certain elements of damages are capable of no precise calculation.  In such circumstances the precise amount is necessarily left to the discretion of the finder of fact . . . .").

Many decades ago, the Sixth Circuit rejected the notion that damages from a defendant's misconduct must be measured with exactness:

> Escape from damages cannot be had because of difficulty in making the proof of amount thereof.  Only reasonable certainty is required in the assessing of damages. Damages are not rendered uncertain because they cannot be calculated with absolute exactness; it is sufficient if a reasonable basis of computation is afforded, although the result be only approximate; and a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684.

*Cline v. Rountree*, 236 F.2d 412, 413 (6th Cir. 1956).

- 3 -

4914-7585-9594.v1

## III.    BACKGROUND

### A.    Plaintiffs' Theory of Liability and Dalrymple's Methodology Are Old News

Since day one, Defendants have known that Plaintiffs' theory of liability is that Defendants' concealed corrupt conduct caused FirstEnergy's stock to trade at an inflated price throughout the Class Period and that revelations of Defendants' corruption, beginning in July 2020, caused this inflation to dissipate, damaging investors. *See, e.g.*, Complaint, ECF 72 at PageID 1547-49 (¶¶3-9). Defendants have known *for over three years* that Plaintiffs would be using an event study to calculate these inflationary damages.  Likewise, *over three years ago*, Plaintiffs disclosed to Defendants Dalrymple's entire event study – share and indices' pricing data, dummy variables, adjustments, and regression analysis – comprising everything necessary to simply plug in the price drops alleged in the Complaint and confirm the $20 ballpark figure for share-price inflation. 12/12/25 Hr'g Tr., ECF 936 at PageID 24162-63, 24167, 24186, 24191, 24197.  For years, Defendants have had every component of the event study, including the following:

- The independent variables: the S&P 500 Total Return Index and a comparable industry index (the S&P 500 Utilities Sector GICS Level 1 Index).  *Id.* at PageID 24159.

- The pricing data for these indices and FirstEnergy's stock price.  *Id.* at PageID 24160.

- The adjustments made to these pricing data to yield a complete data set.  *Id.* at PageID 24161-62.

- The resulting regression analysis, meaning the statistical relationship between FirstEnergy's share price movements and the price movements of the two indices (the difference in these returns is known as the *abnormal return*).  *Id.* at PageID 24163-65.

Defendants have never contested, and still do not contest, the appropriateness or reliability of the event-study methodology to measure share-price inflation.  Nor could they given its universal

acceptance.  Nor have Defendants ever contested the appropriateness or reliability of any of the components comprising Dalrymple's event study.

In fact, in their opposition to class certification, Defendants did not dispute that FirstEnergy's common stock traded in an efficient market throughout the Class Period (Class Cert. Reply, Ex. P (Marietta-Westberg Depo. Tr.), ECF 346-10 at PageID 8239 (172:4-7)) or the *Basic* presumption of reliance's applicability to FirstEnergy's common stock (Class Cert. Opp., ECF 339 at PageID 7199). Nor did Defendants dispute the reliability of the event-study/out-of-pocket methodology or its consistency with Plaintiffs' theory of liability.  To the contrary, Defendants' expert, a former Chair of the Securities and Exchange Commission's ("SEC") Investment Advisory Committee and former Deputy Director and Deputy Chief Economist at the SEC's Division of Economic and Risk Analysis (Class Cert. Opp., ECF 339 at PageID 7186), testified that the SEC has used *the same methodology for measuring damages*.  Class Cert. Reply, Ex. P (Marietta-Westberg Depo. Tr.), ECF 346-10 at PageID 8208 (46:23-47:1); *see also id.* at PageID 8224 (113:11-14) ("Q.  [A]re you opining that [Jones' and Dalrymple's] proposed damages methodologies are not consistent with Plaintiffs' theory of liability?  A.  *No.*").

Nevertheless, Defendants seek to exclude Dalrymple's opinion and testimony.  Their request is untimely and waived because it appears nowhere in Defendants' opposition to class certification, which the Court's Scheduling Order (ECF 255) required to be filed in August 2022.  Regardless, Defendants' Motion – full of false narratives and misleading or unfounded claims – fails.

**B.      Defendants' "New Theory" Rhetoric Fails**

**1.      Defendants Have Had Dalrymple's Event Study for Years**

Much of Defendants' non-*Daubert* effort to exclude Dalrymple's testimony rests on the premise that the event study he discussed was "'a new analysis to provide new support.'"  Motion, ECF 949-1 at PageID 24758.  In reality, *over three years ago*, Plaintiffs disclosed to Defendants the

entire event study – share and indices' pricing data, dummy variables, adjustments, and regression analysis – comprising everything necessary to simply plug in the price drops alleged in the Complaint and confirm the $20 ballpark figure for share-price inflation. 12/12/25 Hr'g Tr., ECF 936 at PageID 24162-63, 24167, 24186, 24191, 24197. This purported lack of awareness carried over to the evidentiary hearing and even to Defendants' Supplemental Post-Remand Brief (ECF 948), as Defendants consistently demonstrated no familiarity with, let alone command of, the actual event study they had been provided over three years ago and that served as the basis for Dalrymple's explanation of how he would use an event study to measure damages on a classwide basis here.[3] This event study not only demonstrates the exact same *methodology* for calculating damages here, but it is also the same event study that will be used to calculate damages, needing only a simple download of additional pricing data spanning the alleged price drops. 12/12/25 Hr'g Tr., ECF 936 at PageID 24197-98.

Defendants' possession of the event study (for years) also disproves their claim that they were "sandbag[ed]" by testimony about it. Motion, ECF 949-1 at PageID 24758-59. Sandbagged would mean Defendants did not know these points could come up. Yet even apart from their possession of his study (everything they needed to confirm a $20 ballpark for total per-share price inflation), Plaintiffs provided this estimate on November 6, 2025. 11/6/25 Hr'g Tr., ECF 914 at PageID 23811. *Defendants* themselves acknowledged this notice and the possibility of such testimony *10 days before Dalrymple testified*,[4] and on December 2, 2025, Plaintiffs *reminded*

---

[3]     *See, e.g.*, 12/12/25 Hr'g Tr., ECF 936 at PageID 24184 (44:12-14) (Ignoring that Defendants have had the actual event study here for over three years: "The concept of an event study, there's lots of kinds of event studies. You have to look at the event study and do the actual allegations.").

[4]     Complaining about the *expectation* that Dalrymple would testify "some undisclosed 'event study shows . . . about $20 of inflation' [and] 'inflation is the same' throughout the class period." ECF 924-1 at PageID 23942 (ellipsis in original) (quoting 11/6/25 Hr'g Tr., ECF 914 at PageID 23812-14).

4914-7585-9594.v1

Defendants that the $20 estimate is based on the Complaint's alleged price drops "and the same event study Dalrymple's [2022] reports and prior testimony describe." Pltfs' Opp. to Defs' Mtn. for Order, ECF 926 at PageID 23998-99. The Court cited the pages of Plaintiffs' papers discussing the $20 "ballpark" when it wrote that "the Court is sure Mr. Dalrymple will not offer 'new opinions' in his direct testimony outside the methodology he has already provided[, and i]t does not appear that Plaintiffs anticipate Mr. Dalrymple doing otherwise." Order re Procedures, ECF 928 at PageID 24020 (citing ECF 926 at 5-6 (PageID 23995-96, 23998-99)). In sum, because Dalrymple's testimony and opinion are old news – not new – Defendants' argument that Dalrymple's testimony violates Federal Rules of Civil Procedure 26 and 37 fails.

### 2. Since Day One, Plaintiffs Have Alleged FirstEnergy's Conversion to a Criminal Enterprise

Laced throughout Defendants' Motion is the fabricated charge that in November 2025, Plaintiffs "debuted" "a new theory of liability" "that at the start of the proposed class period, FirstEnergy became 'a criminal enterprise' with no 'legitimate business services.'" Motion, ECF 949-1 at PageID 24747. Two primary problems doom this claim. First, Plaintiffs have never said or suggested FirstEnergy did "no" legitimate business. What Plaintiffs stated was the following: "The bottom line is, in no later than March of 2017 – I would submit in February of 2017, they had converted the *primary* function of this business from one of legitimate operations to a criminal enterprise." 11/6/25 Hr'g Tr., ECF 914 at PageID 23812-13 (42:23-43:5). And second, the "criminal enterprise" description came straight from the Complaint filed in 2021 – as well as its existence *throughout* the Class Period. In fact, these allegations highlight half of the Complaint's first eight paragraphs:

- *Throughout the Class Period*, FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history. Complaint, ECF 72 at PageID 1547 (¶3).

4914-7585-9594.v1

- *Corruption became a fundamental aspect of the Company's business model* as the key to unlocking $2 billion in critical subsidies and overcoming the Company's most pressing operational challenges. *Id*. at PageID 1547 (¶4).

- This *corruption-based business model* exposed FirstEnergy to catastrophic risks (and now the reality) of financial, regulatory, legal, and reputational loss, and FirstEnergy and its senior insiders went to great lengths during the Class Period to conceal these risks from investors. *Id*. at PageID 1548 (¶6).

- The Criminal Complaint detailed how *FirstEnergy (identified as 'Company A') had served as the criminal enterprise's corrupt corporate kingpin*, financing its illegal operations and closely coordinating with the criminal defendants to ensure the passage of HB6 and, later, thwart a democratic referendum to repeal the bill. *Id*. at PageID 1549 (¶8).

The Complaint has likewise made clear the pervasiveness of FirstEnergy's corruption:

> FirstEnergy's scheme to corrupt the political process and suborn the regulatory framework was not the work of rogue employees, but personally overseen and facilitated by the senior echelon of Company management, including FirstEnergy's then-Chief Executive Officer ("CEO") Charles E. Jones and numerous other executives responsible for FirstEnergy's regulatory affairs, legal compliance, financial reporting and investor disclosures.

Complaint, ECF 72 at PageID 1547 (¶4). Defendants' misrepresentation that this is a "new" theory is even more perplexing, considering FirstEnergy's *confession* to the accuracy of these allegations. *See, e.g.*, DPA, ECF 259-5 at PageID 6014-42. FirstEnergy's top executives, top officers, and top lawyers all perpetrated, facilitated, and/or covered up a corruption scheme to address FirstEnergy's "'top priority.'"[5] FirstEnergy has likewise admitted that the entire company had a material weakness in internal controls by virtue of this widespread corruption, "as our senior management failed to set an appropriate tone at the top." Complaint, ECF 72 at PageID 1612 (¶192).

---

[5] *See, e.g.*, DPA, ECF 259-5 at PageID 6018 ("'Our top priority is the preservation of our two nuclear plants in the state and legislation for a zero emission nuclear program is expected to the be introduced soon.'"); Complaint, ECF 72 at PageID 1580 (¶103), 1607-08 (¶¶172-177), 1632 (¶237) (terminating CEO Jones and senior officer Michael Dowling for violations FirstEnergy later confessed included conspiring with it to engage in political corruption); *id.* at PageID 1610 (¶184) (terminating two top lawyers, Robert Reffner and Ebony Yeboah-Amankwah, for what FirstEnergy later confessed was facilitating a bribe payment and a lack of candor during investigation).

- 8 -

### C.  Defendants Mischaracterize Plaintiffs' Theory of the Case

Not only do Defendants falsely accuse Plaintiffs of making new allegations, they do the inverse and falsely attribute to Plaintiffs a theory of the case that Plaintiffs have not expressed. Trying to breathe life into their legally dead contention that any methodology described by Dalrymple for class certification must account for potential variations in inflation throughout the Class Period (*see Waggoner*, 875 F.3d at 106), Defendants say Dalrymple "ma[kes] no attempt to account for the evolving conduct and risk alleged in the Complaint." Motion, ECF 949-1 at PageID 24745; *see also id.* at PageID 24742, 24746, 24749, 24751, 24754, 24757. But Plaintiffs have never alleged any sort of "evolving conduct and risk" theory and instead have objected to Defendants' efforts to redefine Plaintiffs' theory of liability as anything other than the omission of the same value-relevant information would cause the same inflation throughout the Class Period. *See, e.g.*, 12/12/25 Hr'g Tr., ECF 936 at PageID 24337, 24349; 11/6/25 Hr'g Tr., ECF 914 at PageID 23812-13; *FirstEnergy*, 149 F.4th at 612-18 (nowhere throughout the Sixth Circuit's comprehensive analysis of Defendants' statements (or anywhere else) did the court describe Defendants' corrupt conduct as "evolving" or otherwise materially changing from what it was at inception). Rather, the value-relevant information Defendants concealed from shareholders at the start of the Class Period was materially the same as at the end: "*[t]hroughout* the Class Period," Defendants were engaged in an unprecedented political-corruption scheme to address FirstEnergy's top priorities. Complaint, ECF 72 at PageID 1547 (¶3).

### D.  Defendants Mischaracterize FirstEnergy's Confession and the Corresponding Crimes

Repeating a pervasive theme of their post-remand brief (Defs' Supp. Mem., ECF 948 at PageID 24514, 24522-23), Defendants' Motion mischaracterizes their bribes as "political contributions" and claims they "grew from only $250,000 in early 2017." Motion, ECF 949-1 at

PageID 24742.  In truth, they were bribes,[6] and FirstEnergy's conspiracy and bribery crimes began with its *agreement* to pay *$1 million* throughout 2017 in exchange for Householder "further[ing] FirstEnergy Corp.'s efforts to save the [nuclear] power plants."  DPA, ECF 259-5 at PageID 6020; *see also id.* at PageID 6015.  Defendants agreed to this $1 million bribe in the January-February 2017 timeframe.  *United States v. Householder*, 137 F.4th 454, 464, 476 (6th Cir. 2025), *petition for cert. filed*, Petition for Writ of Certiorari, *Householder v. United States*, No. 25-756 (2025), *and* Petition for Writ of Certiorari, *Borges v. United States*, No. 25-757 (2025).  Conspiracies under the Racketeer Influenced and Corrupt Organizations Act statutes and fraud statutes are complete upon agreement.[7]  Likewise, a bribe is complete upon *offer* of money or property in exchange for official action.[8]  Although Defendants try to downplay the significance of what was a $1 million conspiracy/bribery from the outset, they cite no larger corruption case in the history of the State of Ohio to support their dismissiveness.  Indeed, for 2017, the year Defendants committed their $1

---

[6]     FirstEnergy has admitted that all the money it paid into Larry Householder's sham 501(c)(4) entity (which included the initial agreement for $1 million) was paid "in return for [Householder] pursuing nuclear legislation for FirstEnergy Corp.'s benefit in his capacity as a public official." DPA, ECF 259-5 at PageID 6016.  That is bribe money, not a "political contribution." *See, e.g.*, *United States v. Hills*, 27 F.4th 1155, 1185 (6th Cir. 2022) ("Honest services fraud (like Hobbs Act bribery) requires proof that the bribe or kickback was solicited in exchange for an 'official act.'").  Defendants made a similar argument nearly four years ago, and the Court's words then hold true today: "this framing by Defendants woefully miscasts the issue.  Covertly funneling bribes through a 501(c)(4) organization, as Defendants are alleged to have done, is not an innocent act of political participation.  It is illegal, deceptive, and offensive to democracy."  Opinion & Order, ECF 219 at PageID 4741.

[7]     Householder was convicted of an 18 U.S.C. §1962(d) violation (*Householder*, 137 F.4th at 469-70) and FirstEnergy has confessed to conspiring to commit honest services wire fraud in violation of 18 U.S.C. §§1343, 1346, 1349 (DPA, ECF 259-5 at PageID 6000).  Both are inchoate crimes that are complete upon agreement, even without an act in furtherance of them. *United States v. Rich*, 14 F.4th 489, 494 (6th Cir. 2021) ("Section 1962(d) by contrast, has 'no requirement' of an overt act, and '*is even more comprehensive*' than [18 U.S.C §]371.") (emphasis in original).

[8]     *See, e.g.*, *United States v. Cui*, _ F.4th _, 2026 WL 73014, at *5 (7th Cir. Jan. 9, 2026) ("'"crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe"'").

- 10 -

million bribery offense, the median bribe amount for *federal bribery convictions* was $64,500,[9] which puts their $1 million bribe at 1,500% greater than the median. And FirstEnergy's own internal records recognized that a mere indictment, let alone conviction, for a serious felony would likely lead FirstEnergy's creditors to declare default and accelerate its obligation to pay its debts, also eliminating its access to capital. J-D's Mot. to Compel FirstEnergy Depo., Ex. 11, ECF 319-12 at PageID 6929 (FE_CIV_SEC_0479857). Such a scenario would have meant bankruptcy – a corporate death sentence.

### E. Defendants Mischaracterize Dalrymple's Testimony

During the evidentiary hearing that Defendants had repeatedly demanded, Dalrymple testified that the event study is the primary damages methodology and specified the techniques (DCF, market multiples, and scaling factors) available to refine the event-study results, including to adjust for changes in inflation, if any, earlier in the Class Period. 12/12/25 Hr'g Tr., ECF 936 at PageID 24233-34, 24351.[10] Grasping at straws, Defendants resort to misconstruing Dalrymple's testimony to blur the line between his primary damages methodology and the techniques he would use to adjust for potential variations or other possible complications, such as confounding information or a structural change in the company. For example, Defendants quote only the first line

---

[9]    United States Sentencing Commission, *Quick Facts: Bribery Involving Public Officials (FY 2017)*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Bribery _FY17.pdf (last visited Jan. 22, 2026).

[10]    Q. . . . You have not developed the event study that you would use in this case to calculate damages across the class. Isn't that correct?

   A. Well, I would not agree with that. I have identified an event study in my expert report that identifies the market index, the industry index, certain indicator variables, and I've also identified a number of variations on that event study; so alternative indices, alternative estimation windows. And that was all provided as part of my expert report.

12/12/25 Hr'g Tr., ECF 936 at PageID 24254-55 (114:16-115:1); *see also id*. at PageID 24256-58, 24293.

- 11 -

of what was a 7-line answer.  *Compare* Motion, ECF 949-1 at PageID 24752, *with* 12/12/25 Hr'g

Tr., ECF 936 at PageID 24252 (Defendants omit everything emphasized below):

> A.  I have not settled on a specific technique.  *So, for instance, if I say – we talked earlier about earnings multiples and DCF.  I would expect to look at the evidence I have in relation to those, as well as any other evidence I have in relation to value, and that is something I would use in my analysis of inflation.  But I have not determined which specific technique is, say, most appropriate.*

12/12/25 Hr'g Tr., ECF 936 at PageID 24252 (112:19-25).  Defendants likewise omit Dalrymple's

earlier testimony responding to the Court's questioning, explaining that he would expect to use the

DCF and scaling factors techniques in tandem with his event study.  *Id*. at PageID 24225.

Throughout the evidentiary hearing, Dalrymple identified and explained each technique he

would use to refine his primary methodology (the event study), including that he will not know

which refining technique will be the most reliable under the specific circumstances of this case until

he performs his ultimate calculations.  The hearing transcript disproves Defendants' inaccurate

assertion that Dalrymple merely made "vague" references to his methodology and techniques.[11]

## IV.    ARGUMENT

### A.    The Admissibility of Dalrymple's Methodology Cannot Be Reasonably Contested

The Motion, once stripped of falsehoods and misrepresentations, is baseless and should be

denied.  Dalrymple's opinion and testimony must simply meet three requirements to be admissible.

"First, the witness must be qualified by 'knowledge, skill, experience, training, or education.'

Fed.R.Evid. 702.  Second, the testimony must be relevant, meaning that it 'will assist the trier of fact

to understand the evidence or to determine a fact in issue.'  *Id.*  Third, the testimony must be

---

[11]    *Compare, e.g.*, 12/12/25 Hr'g Tr., ECF 936 at PageID 24151-52, 24157, 24160, 24162-64, 24166, 24168-69, 24205-08, 24215-19, 24226-34, *with* Defs' Supp. Mem., ECF 948 at PageID 24515-16, 24518-19.

4914-7585-9594.v1

reliable." *Scrap Metal*, 527 F.3d at 529; *see also Daubert*, 509 U.S. at 590 (reliable ultimately means expert must have "'good grounds'" for his opinion). All three are readily satisfied here.

*First*, Defendants do not dispute Dalrymple's qualifications. *See, e.g.*, 12/12/25 Hr'g Tr., ECF 936 at PageID 24148 (8:9-11). Nor could they. Dalrymple is an economist whom courts have routinely qualified to opine on questions on damages in securities class actions. Indeed, multiple courts – including those in this Circuit – have rejected attempts to exclude Dalrymple's opinions based on erroneous contentions similar to Defendants here. *Grae v. Corr. Corp. of Am.*, 2021 WL 1100431, at *9-*10 (M.D. Tenn. Mar. 17, 2021) (rejecting contention that Dalrymple "merely assumed that the plaintiffs' theory of the case is true" and holding that "[t]here is, however, nothing wrong with Dalrymple's limiting his analysis to some, but not other, of the aspects of [plaintiff's] case . . . Dalrymple's qualification of his conclusion in this regard is, if anything, welcome"); *Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *14-*16 (S.D. Cal. Apr. 6, 2022) (rejecting contention that Dalrymple's analysis should be excluded as unreliable).

*Second*, Defendants do not dispute that Dalrymple's opinion is relevant to determining whether there is "a methodology for calculating damages on a classwide basis that is susceptible of measurement across the entire class and satisfies the predominance requirement of Rule 23(b)(3)" – the lone issue within the scope of the Sixth Circuit's limited remand. *FirstEnergy*, 149 F.4th at 622.

*Third*, Defendants do not dispute that an event study – the damages methodology that Dalrymple provided nearly three years ago – is universally recognized as a reliable way of measuring share-price inflation.[12] And Defendants do not dispute the appropriateness or reliability

---

[12]    The event-study methodology has withstood years of litigation pressure testing to be considered the "'standard'" (*Weiner*, 334 F.R.D. at 137), and "'almost obligatory'" way to determine inflation in stock price and investor loss caused by misrepresentations or omissions. *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *13 (S.D.N.Y. Sep. 3, 2010). The process is "unquestionably" reliable (*Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 722 (E.D. Mich. 2024)), to the point that courts have found experts "deficient for failure" to use or suggest it. *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003) (collecting cases). More decisions

- 13 -

of any of the components comprising the event study that Dalrymple constructed here. All this means Defendants' Motion is not well taken. Instead, it serves two functions. First, it is just another instrument of delay, a last-ditch attempt to again gum up this litigation by postponing the Court's resolution of the lone issue on remand. And second, it is a contrivance that allows Defendants to override the Court's post-remand briefing schedule and page limits – the frequency with which Defendants misrepresent the record and cite inapt cases counsels for great caution when the Court considers the "last word" reply brief this contrivance has afforded Defendants. Plaintiffs incorporate by this reference all their post-remand submissions and arguments, including, but not limited to, their Post-Remand Brief (ECF 947), and their Reply to Defendants' Post-Remand Brief (ECF 960). In sum, because all three requirements are readily satisfied, Defendants' Motion should be denied.

### B. Defendants' Arguments Ring Hollow

#### 1. Dalrymple's View Reliably Applies to the Facts of This Case

Citing the requirement that Dalrymple's opinion must more likely than not reflect reliable application to the facts of the case (Fed. R. Evid. 702(d)), Defendants incorrectly claim Dalrymple has only "assur[ed] that he can design a [damages methodology] that would sufficiently grapple with the known complexities" in this case when he must "build [the] model" that does so. Motion, ECF 949-1 at PageID 24750. For one thing, the "known complexities" imagined by Defendants either rest on their fabrications (that the Complaint bases liability on "evolving" conduct and risk) or considerations that courts have uniformly said need not be accounted for at class certification (potential time-varying inflation).

---

making this point are in Plaintiffs' Post-Remand Brief (ECF 947 at PageID 24496-97 & n.7); *see also* 7 Newberg and Rubenstein on Class Actions §22:81 (6th ed.) ("most courts utiliz[e] an 'out of pocket' damage measurement that . . . applies across the class" in section 10(b) cases, so "[s]ecurities class actions rarely have trouble complying with [the] command" of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).

4914-7585-9594.v1

For another, Dalrymple has already "built the model" and given it to Defendants over three years ago. It shows the same methodology and the same event study that will be used to calculate damages, just with additional pricing data. 12/12/25 Hr'g Tr., ECF 936 at PageID 24197-98. In fact, Defendants implicitly acknowledged its reliability by not disputing Dalrymple's conclusion that FirstEnergy's stock traded in an efficient market. Class Cert. Opp., ECF 339 at PageID 7199. That Defendants have had the study for years and never identified any reliability concerns in its methodology speaks volumes.[13]

### 2. Dalrymple's "Expectation" of Relatively Constant Inflation Is Sensible

The Motion alternatively seeks more narrowly to exclude Dalrymple's "opinion" that "inflation in FirstEnergy's stock price held constant . . . throughout the class period." Motion, ECF 949-1 at PageID 24754-55. This argument, too, interweaves multiple misleading and unfounded assertions (that the criminal enterprise allegation is new, Plaintiffs say FirstEnergy did "no"

---

[13] Defendants' belated (and waived) argument is based on inapposite authority. Dalrymple's specific descriptions of the steps he would follow (Pltfs' Post-Remand Brief, ECF 947 at PageID 24493) and the thousands of pages of data he provided showing what he already did make this nothing like *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) (expert *failed to prove market efficiency*, he relied on unprecedented single-day event study), *rev'd*, 64 F.4th 731 (6th Cir. 2023), and other cases Defendants cite. Motion, ECF 949-1 at PageID 24752-53 (also citing *In re E. Palestine Train Derailment*, 2025 WL 326040, at *3-*4 (N.D. Ohio Jan. 29, 2025) (expert did not explain and obfuscated about how simulation results supported his conclusions); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *20 (N.D. Cal. June 13, 2014) (among other things, obvious problems with one comparator expert selected, product to be compared had multiple lines and varieties and expert did not identify how to find comparator for each or if that was possible, and expert did not know if data needed for control variables existed)). Defendants reach even further by citing *Strougo v. Tivity Health, Inc.*, 2025 WL 1415896 (M.D. Tenn. May 15, 2025), which bears no resemblance whatsoever to the circumstances here. Motion, ECF 949-1 at PageID 24753. In *Tivity*, the court found no error with Dalrymple's use of an event study. Rather, the exclusion turned primarily on Dalrymple's handling of two categories of "*confounding information*" (one of which arose as a result of the court's award of partial summary judgment) for his final damages calculation. *Tivity*, 2025 WL 1415896, at *5-*7. In contrast, Defendants have never alleged the existence of any confounding information here and there appears to be none. 12/12/25 Hr'g Tr., ECF 936 at PageID 24173-79. Moreover, we are far from summary judgment motions and final damages calculations.

4914-7585-9594.v1

legitimate business once it converted into a corrupt enterprise, the Complaint bases liability on evolving conduct, the bribes were political contributions).

But with those falsehoods put aside, Defendants' contention boils down to their belief Dalrymple's view is "absurd." Motion, ECF 949-1 at 24755. The absurdity, however, is Defendants analogizing FirstEnergy's crime at the outset to speeding 5 mph over the limit and, at the end, 45 mph over the limit. Defs' Supp. Mem., ECF 948 at PageID 24514. Defendants' $1 million bribery of Larry Householder was unprecedented from inception in 2017 and carried the same ominous risks of indictment, bankruptcy, and the like as at the end. The conduct was even more unprecedented by 2020 because the bribes had grown to $60 million, involved others, and spanned years. But the appropriate speeding analogy would be 201 mph versus 260 mph. Either way, the conduct was so unprecedented and potentially damaging for the company that, whether the market learned about the $1 million bribe at the beginning or the $60 million in bribes at the end, it likely would see the company, its value, and risks to its value much the same. Dalrymple's view is sensible, not absurd.

Saying Dalrymple expressed his view "on redirect examination," Defendants argue his opinion is inadmissible because it improperly "mak[es] assumptions 'to align with Lead Plaintiff's theory of liability.'" Motion, ECF 949-1 at PageID 24755. The first part of Defendants' claim is misleading. While Dalrymple later reiterated his view on redirect, 12/12/25 Hr'g Tr., ECF 936 at PageID 24349 (209:15-23), it was FirstEnergy that first elicited the point on cross. FirstEnergy's counsel tried to get Dalrymple to agree that it would "be fair to say that, if a company is engaged in a $250,000 illegal contribution, that the risks that the company faces are different than those if the company makes a $50 million cumulative amount of illegal campaign contributions." *Id.* at PageID 24296 (156:10-14). Dalrymple cautioned that he had not done the analysis and then said:

> [I]t's possible. It's also possible and, again, consistent with economic principles that, once a company commits a crime, that – of this magnitude or of a magnitude of even $250,000 of the first million dollar payment, that has – that carries a lot of weight with investors. So I would not – I have not done the analysis to try to determine

- 16 -

> whether – the impact of that adjusts by some degree, but *I would not expect it to adjust substantially with those particular details coming to light*.

*Id.* (156:15-24) (emphasis added to reflect what Defendants seek to exclude); Motion, ECF 949-1 at PageID 24755.  In other words, FirstEnergy seeks rescue from its own questioning.  A party, however, "cannot obtain relief based on the admission of testimony that it elicited from [an] expert on cross-examination." *Taylor v. GEICO Indem. Co.*, 663 Fed. App'x 740, 745 (11th Cir. 2016).  In any event, the Court afforded Defendants the opportunity to re-cross Dalrymple after re-direct and Defendants declined.  12/12/25 Hr'g Tr., ECF 936 at PageID 24355.

Further, Defendants claim Dalrymple improperly offered "'his client's opinion as his own.'" Motion, ECF 949-1 at PageID 24755.  The record refutes Defendants' contention:

> Well, to be clear, I don't have an obligation to support something that plaintiffs' counsel said.  If I am asked to conduct the analysis, I do feel like I have an obligation to take into consideration all of the relevant economic conditions that might affect inflation on each day of the class period.

12/12/25 Hr'g Tr., ECF 936 at PageID 24331-32 (191:25-192:4).  Defendants' fact-defying accusation rests entirely on their incorrect belief that the assertion is absurd (and, apparently, anyone who disagrees with them cannot truly believe what they say).  And even if Dalrymple's opinion did rest on factual assumptions provided by counsel, at the class-certification stage, when the expert's mandate is just to opine whether a methodology is capable of measuring damages classwide consistent with Plaintiffs' liability case, "it is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion." *Kirkbride v. Kroger Co.*, 349 F.R.D. 160, 177-78 (S.D. Ohio 2025) (Marbley, J.).  Indeed, "experts may permissibly rely on assumptions about underlying facts that are stated to them by the client," and any "difference in opinion about [the] assumptions should be resolved by a jury and is not a proper basis to strike his opinions." *Id.*

Again, we are here on class certification, not trial.  Yet, even if we were at trial, the Sixth Circuit has held for decades that "[o]nce the existence of damages is shown with reasonable

- 17 -

certainty, 'the precise amount is necessarily left to the discretion of the finder of fact, to be exercised reasonably and within the range of the proofs in the case.'" *Hill*, 708 F.2d at 238. As Plaintiffs have explained, Dalrymple's event study will reliably give the jury the corruption inflation – and Defendants are free to argue that the jury should find less inflation from FirstEnergy's initial concealed, unprecedented corruption than from its later still-concealed, still-unprecedented corruption. *See, e.g.*, 11/6/25 Hr'g Tr., ECF 914 at PageID 23814-15 (44:9-45:4); 12/12/25 Hr'g Tr., ECF 936 at PageID 24351 (211:13-17). But this final determination is *for the jury at trial*, not for an expert and the Court to resolve at class certification.

### 3. Dalrymple's Statements Comply with Rules 26 and 37

Defendants' last argument to exclude Dalrymple's testimony rests again on multiple false premises, *e.g.*, the criminal enterprise allegation is new and Defendants were "sandbag[ed]" by Dalrymple's testimony. Motion, ECF 949-1 at PageID 24759. Rid of those claims (discredited above), what is left is Defendants' contention that Dalrymple offered three "new opinions" in his testimony: (1) he received a result of "roughly" $20 per share inflation upon entering into his event study FirstEnergy's stock price drops from July, October, and November 2020; (2) his expectation that inflation would remain the same during the Class Period; and (3) "his attempt to repurpose his market efficiency event study to measure damages." Motion, ECF 949-1 at PageID 24758-59. Defendants also assert Dalrymple previously "disclaimed offering any opinion on these issues." Motion, ECF 949-1 at PageID 24758 & n.4 (emphasis omitted).

But none of these is an opinion. Nor is any new, as set forth above. The $20 figure is just an estimate that Defendants could have mechanically generated themselves over three years ago – and one that Plaintiffs pointed out over a month before the evidentiary hearing. The second is just an expectation – one consistent with the understanding that Dalrymple expressed in his September 2022 Rebuttal Report (Class Cert. Reply, Ex. I, ECF 346-3 at PageID 7750 (¶13)) – that he expressed in

- 18 -

direct response to Defendants' questioning, so they cannot complain about it.  *Taylor*, 663 Fed. App'x at 745.  And the third, like the first, is just another manifestation of Defendants' years-long failure to see what was right before their eyes (perhaps due to FirstEnergy abruptly switching counsel after class certification briefing but before argument): Dalrymple's entire event study.  There is no rational basis for why it would be appropriate, let alone necessary, to use different event studies to calculate damages and determine market efficiency (other than including additional pricing data), as the two go hand in hand.  Defendants have failed to cite *any* cases supporting such a perspective.  In any event, it is the existence of a *methodology* Plaintiffs must establish at class certification, not the actual model – Plaintiffs have gone much farther by providing an actual event study.

As the Court explained to Defendants, testifying experts are not limited to repeating what their reports already say.  12/12/25 Hr'g Tr., ECF 936 at PageID 24213.  The Sixth Circuit made this clear 20 years ago in *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006), holding that Federal Rule of Civil Procedure 26 "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."  As such, it is "clear error" to prohibit a testifying expert from doing just that.  *Id.* at 1202.  In *Thompson*, the district court prohibited an accounting expert from "explain[ing] and elaborat[ing] on his written report in his direct examination" and prohibited the expert from testifying regarding "generally accepted accounting principles" because the phrase was "'not in his report.'"  *Id.* at 1202-03.  The Sixth Circuit rejected the argument Defendants make here – that an expert is "limited simply to reading his report" or must "expressly use . . . magic words" before being permitted to testify about the subject at trial.  *Id.* at 1203.  Other courts are in accord.[14]

---

[14]     *See, e.g.*, *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 138-39 (D.C. Cir. 2013); *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167-68 (D.C. Cir. 2007); *Little v. City of Morristown, Tenn.*, 2023 WL 2769446, at *5 (E.D. Tenn. Mar. 31, 2023); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008); *Evans v. Cardinal Health*, 2020 WL 8459004, at *5 (E.D. Mich. Nov. 19, 2020).  In short,

- 19 -

Finally, Defendants nonsensically claim Plaintiffs want to "have it both ways" by offering Dalrymple's testimony while opposing their recent attempt to offer supplementary expert testimony. Motion, ECF 949-1 at PageID 24760. Dalrymple is Plaintiffs' original damages expert for this case. His reports and event study were provided in 2022 in compliance with the Court's Scheduling Order. He was deposed long ago. His latest testimony was only provided at the absolute insistence of Defendants and was appropriately confined to the 2022 record. Defendants, by comparison, sought to admit for the first time – after they conceded Plaintiffs had established the *Basic* presumption of reliance applied based in part on Dalrymple's event study, after they didn't challenge the applicability of the *Basic* presumption before the Sixth Circuit, and after the Sixth Circuit's limited remand – thousands of pages of reports and materials from two new experts with no prior involvement in this case. *See generally* Supplement Mot. Opp., ECF 921. The situations are opposite, not the same.

## V.  CONCLUSION

The Motion to Exclude Dalrymple's testimony should be denied.

DATED:  January 23, 2026

Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)

_____
    s/ Joseph F. Murray
    JOSEPH F. MURRAY

---

Dalrymple's "expectation" that inflation would not "adjust substantially" based on the bribe amounts (12/12/25 Hr'g Tr., ECF 936 at PageID 24296 (156:15-24)) appropriately "explain[ed]" and "elaborate[d] upon" (*Thompson*, 470 F.3d at 1203) his 2022 expressed understanding that Plaintiffs' theory of liability is *not* premised on time-varying inflation (Class Cert. Reply, Ex. I (Rebuttal Report), ECF 346-3 at PageID 7750 (¶13)).

4914-7585-9594.v1

1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com

Class Counsel

- 21 -

4914-7585-9594.v1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on January 23, 2026.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ Joseph F. Murray<br>
JOSEPH F. MURRAY (0063373)