Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

IN RE:  FIRSTENERGY CORP.      CIVIL ACTION NO.
        SECURITIES LITIGATION     2:20-cv-3785

THIS DOCUMENT RELATES TO:

ALL ACTIONS.

_____

STATUS CONFERENCE HELD BEFORE

SPECIAL MASTER SHAWN JUDGE

Monday, April 20, 2026

11:00 A.M.

Taken remotely via Zoom videoconference

REPORTER:  PAMELA S. GREENFIELD, CRR, RDR

JOB NO:  8028487

```
                                                            Page 2
```

APPEARANCES OF COUNSEL (REMOTE):

For the Class Plaintiffs:

    ROBBINS GELLER RUDMAN & DOWD LLP
    BY:  JASON FORGE, ESQ.
    BY:  RACHEL COCALIS, ESQ.
    BY:  KEVIN S. SCIARANI, ESQ.
    BY:  MARK CONOVER, ESQ.
    BY:  JEREMY DANIELS, ESQ.
    BY:  HILLARY STAKEM, ESQ.
    BY:  PETER KO, ESQ.
    BY:  FRANCIS KARAM, ESQ.
    BY:  STEVEN PEPICH, ESQ.
    655 West Broadway
    San Diego, California 92101
    jforge@rgrdlaw.com
    rcocalis@rgrdlaw.com
    kscariani@rgrdlaw.com
    mconover@rgrdlaw.com
    jdaniels@rgrdlaw.com
    hstakem@rgrdlaw.com
    pko@rgrdlaw.com
    fkaram@rgrdlaw.com
    spepich@rgrdlaw.com

    -and-

    MURRAY MURPHY MOUL + BASIL LLP
    BY:  JOSEPH F. MURRAY, ESQ.
    BY:  BRIAN MURPHY, ESQ.
    1114 Dublin Road
    Columbus, Ohio 43215
    Murray@mmmb.com
    murphy@mmmb.com

For the Direct-Action Plaintiffs:

    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP:
    BY:  RICHARD HEIMANN, ESQ.
    BY:  MICHAEL MIARMI, ESQ.
    250 Hudson Street
    Eighth Floor
    New York, New York 10013
    Rheimann@lchb.com
    Mmiarmi@lchb.com

Page 3

APPEARANCES OF COUNSEL (REMOTE) (CONTINUED):
For Defendant First Energy:
        SULLIVAN & CROMWELL LLP
        BY:  ROBERT J. GIUFFRA, JR., ESQ.
        BY:  DAVID M. J. REIN, ESQ.
        BY:  HILARY M. WILLIAMS, ESQ.
        BY:  BETH D. NEWTON, ESQ.
        BY:  SHEEVA L. NESVA, ESQ.
        125 Broad Street
        New York, New York 10004
        GiuffraR@sullcrom.com
        ReinD@sullcrom.com
        WilliamsH@sullcrom.com
        NewtonB@sullcrom.com
        NesvaS@sullcrom.com

        -and-

        DICKIE, MCCAMEY & CHILCOTE, P.C.
        BY:  PAUL J. SCHUMACHER, JR., ESQ.
        600 Superior Avenue East
        Suite 2330
        Cleveland, Ohio 44114-2614
        PSchumacher@DMCLaw.com

For Defendants Steven Strah; K. Jon Taylor;
Jason J. Lisowski; George M. Smart; Paul T.
Addison; Michael J. Anderson; Steven J.
Demetriou; Julia L. Johnson; Donald T. Misheff;
Thomas N. Mitchell; James F. O'Neil III;
Christopher D. Pappas; Sandra Pianalto; Luis A.
Reyes; Jerry Sue Thornton and Leslie M. Turner;

        JONES DAY:
        BY:  GEOFFREY J. RITTS, ESQ.
        901 Lakeside Avenue
        Cleveland, Ohio 44114
        gjritts@jonesday.com
        -and-
        BY:  MARJORIE P. DUFFY, ESQ.
        325 John H. McConnell Boulevard
        Suite 600
        Columbus, Ohio 43216
        mpduffy@jonesday.com

Page 4

APPEARANCES OF COUNSEL (REMOTE) (CONTINUED):

For Defendant Charles E. Jones:

        BAKER & HOSTETLER
        BY:  RACHAEL L. ISRAEL, ESQ.
        BY:  JONATHAN BARR, ESQ.
        Key Tower Suite 2000
        127 Public Square
        Cleveland, Ohio 44114
        RIsrael@bakerlaw.com
        JBarr@bakerlaw.com

For Defendant Robert Reffner:

        MCDERMOTT WILL & EMERY LLP
        BY:  PAUL M.G. HELMS, ESQ.
        444 West Lake Street, Suite 4000
        Chicago, Illinois 60606
        phelms@mwe.com

For Defendant Donald Schneider:

        ORRICK, LLP
        BY:  PRESTON BURTON, ESQ.
        1152 15th Street NW
        Columbia Center
        Washington, D.C. 20005
        PBurton@orrick.com
        -and-
        SANTEN & HUGHES
        BY:  BRIAN P. O'CONNOR, ESQ.
        600 Vine Street
        Suite 700
        Cincinnati, Ohio 45202
        Bpo@santenhughes.com

For Defendant Leila Vespoli:

        ARNOLD & PORTER
        BY:  AARON F. MINER, ESQ.
        250 West 55th Street
        New York, New York 10019-9710
        aaron.miner@arnoldporter.com

Page 5

APPEARANCES OF COUNSEL (REMOTE) (CONTINUED):

For Defendant Michael Dowling:

    TUCKER ELLIS LLP
    BY:  JOHN F. McCAFFREY, ESQ.
    BY:  JOHN A. FAVRET, ESQ.
    950 Main Avenue
    Suite 1100
    Cleveland, Ohio 44113
    john.mccaffrey@tuckerellis.com
    john.favret@tuckerellis.com

    -and-

    WINSTON & STRAWN
    BY:  STEVEN GRIMES, ESQ.
    35 W Wacker Drive
    Chicago, Illinois 60601
    Sgrimes@winston.com

For Defendant John Judge:

    VORYS, SATER, SEYMOUR AND PEASE LLP
    BY:  ANDREW P. GURAN, ESQ.
    50 S. Main Street
    Suite 1200
    Akron, Ohio 44308
    apguran@vorys.com

For Defendant James Pearson:

    BALLARD SPAHR LLP
    BY:  DAVID AXELROD, ESQ.
    BY:  JOSEPH J. BAILEY, ESQ.
    1735 Market Street, 51st Floor
    Philadelphia, Pennsylvania 19103
    axelrodd@ballardspahr.com
    baileyj@ballardspahr.com

For Defendant Dennis Chack:

    MORGAN, LEWIS LLP
    BY:  CASSIDY DUCKETT BRITT, ESQ.
    1701 Market Street
    Philadelphia, Pennsylvania 19103
    Cassidy.Britt@morganlewis.com

Page 6

APPEARANCES OF COUNSEL (REMOTE) (CONTINUED):

For The Underwriter Defendants:

DAVIS POLK & WARDWELL LLP
BY: ERIC M. KIM, ESQ.
450 Lexington Avenue
New York, New York 10017
Eric.Kim@davispolk.com
-and-
PORTER, WRIGHT, MORRIS & ARTHUR LLP
BY:  HELEN M. FITE, ESQ.
41 South High Street
Suite 2900
Columbus, Ohio 43215
HFite@porterwright.com

ALSO PRESENT:
Michael Koslen, Esq., FirstEnergy

Page 7

P R O C E E D I N G S

SPECIAL MASTER JUDGE: Let's go on the record.

Good morning everyone. It's April 20th at 11:02 a.m. Eastern Standard Time. We're gathered for another status conference in the consolidated FirstEnergy matters. A number of items on the agenda today primarily with the parties' various proposals regarding a case schedule, the scope of fact discovery, a potential stay for Jones and Dowling with a bifurcation associated with that and any other matters that we need to take up today.

I appreciate the parties' submissions that I received last week and reviewed over the weekend. I have a few questions but I want to get to the various proposals and see if we can hammer out a case schedule.

I will be discussing scheduling matters with the Court tomorrow which I would anticipate by the end of the week then we should have an omnibus order on with the

Page 8

various report recommendations that I need to make as well as some content on a case schedule.

Mr. Forge, let's start with you. For plaintiffs' proposed case schedule, I have two questions for you right off the bat.

One is have there been any more discussions between the parties since their written proposals to me?

MR. FORGE:  No, there haven't.

SPECIAL MASTER JUDGE:  And I mean there are a number of differences but I was struck by plaintiffs proposed I believe August 31st, FirstEnergy proposed October 31st.  That's fairly close in time but there were a few wrinkles in defendants' submission that I was interested in.  One is, that jumped out at me is defendants' I'll call it an extrapolation or analysis that the request for the written discovery, it could be potentially 800 where they had an estimated 800 more -- let me look at my notes here.  Yeah, that if -- Defendant FirstEnergy's positing that if your plan

Page 9

were adopted, you would be permitted 800 written discovery requests? I'm assuming that's not what you were pursuing.

MR. FORGE: That's correct. It's not what we're pursuing and it's kind of a classic example of how misleading things can be when parties jump the gun on raising issues with you.

We were in the course of discussing what started out as a proposal from plaintiffs to have an exchange system where in exchange for a deposition, instead of taking deposition, there would be 20 written discovery requests so it could be a combination of interrogatories and request for admission.

Now, that's a pretty modest trade-off for an entire deposition especially because anytime we want we can proceed with the deposition by way of written questions, so we could ask 500 questions for each deposition if we wanted but just again to put in perspective how manipulative FirstEnergy is being about this, in the very first discussion we had

regarding that exchange rate I said:  Hey we're not wed to the 20.  You know, we could do 10.  Just give me a number and of course they don't, they didn't give me a number.  They just drag their feet, which is what they always do.  They're incapable of candor, they're incapable of directness.

So what I eventually explained to them was that:  Look, let's face reality here.  At the, near the start of this litigation there was discussion about the deposition limit and the fact that obviously that would have to change given the size and complexity of this case, so we wound up with slightly more than four times the number of depositions that the rules allow.

Okay.  That's a reasonable proportion and I said so all we want is the same thing for the interrogatories and the RFAs.  The same proportional increase, four times.

Now, again, to put that in perspective, one of the reasons why I want it to be a fairly high number is because I don't want us to wind up having to bicker

Page 11

over whether any given interrogatory should count as one interrogatory or two interrogatories or four interrogatories so I wanted to put the number out there to disincentivize the parties to bicker and litigate over counting.

I also wanted to -- and as I explained to FirstEnergy and explain now, I wasn't suggesting and in fact I explicitly said that of course FirstEnergy would still retain the ability to object that a specific request is disproportionate or objectionable on any other basis and so to me that was -- and therefore they're really not agreeing to anything other than compressing the dispute schedule over an interrogatory or a request for additional interrogatories.

So, for example, if plaintiffs said we want to ask these five additional interrogatories, okay? We have to file a motion for that. They file a response, we file a reply, we then, it would go through this lengthy dance that we've been doing for several years and we get to, basically down to the same question we would have if we

just posed the interrogatory and FirstEnergy objected. Is there good cause for this, is it relevant, is it proportionate to the needs of this case.

So it's really just a, it's a way of expediting things and that's kind of our overarching theme today is rule 1 of the Federal Rules of Civil Procedure is look, let's figure out ways to do things more efficiently not ways to do things less efficiently and so that's, again, so to bottom line it, it's simply a request to increase the number in the same proportion that we did with the depositions. That's it.

If we had done this, if we had covered written discovery back at the time of the deposition protocol, I am sure we would have gotten that same proportion because it just doesn't make sense otherwise. It doesn't make sense that the number of depositions would be quadrupled, more than quadrupled, but we'd keep the same number of interrogatories and requests for admission.

Page 13

And I would say that the other reason why this is now a focus for the plaintiffs is, look, let's face reality. The criminal trial against Jones and Dowling took six weeks. Six weeks. We cannot schedule and complete a single deposition in this case, a single deposition in six weeks, we can't. That's just not, it's not possible given the way -- I think we might have lost the Special Master.

SPECIAL MASTER JUDGE: My video went out and I got a thing that they're making a quick update, but I'm here.

MR. FORGE: Okay. So the depositions have not proved to be a particularly efficient way of completing discovery in this case.

The other lesson we learned from the criminal trial is that even with just a fraction, a fraction of the evidence that we have and that will be admitted in this case, the AG's office came within two jurors who my understanding is simply violated their oath by refusing to base a decision on circumstantial evidence.

Page 14

They came within two jurors who violated their oath of convicting Jones and Dowling beyond a reasonable doubt on a fraction of the evidence we have here. So it's kind of a I have to just get over myself type of situation and realize that while I am very confident that, in the merits of every discovery position we've taken in this case, it's just not worth it. The juice is just not worth the squeeze, so let's get through fact discovery, let's get through fact discovery without five carve-outs that make the deadline completely meaningless, which is exactly what they did.

Again, they're not capable of candor so they call it a deadline but they put so many carve-outs in it as to render it absolutely meaningless. So let's set a hard deadline. Let's be realistic about this.

If they want to show good cause for something more, knock themselves out. They can try to do so; but if the entire case against Jones and Dowling could be tried in six weeks, we should be able to wrap up fact discovery by end of August.

Page 15

And another thing that we have to bear in mind, and this is something that we all acknowledged a year ago, over a year ago.

Each time we have these criminal trials, that streamlines things for us.  The knowledge that both sides -- and I almost should say all sides because I kind of feel like there's more than two sides of this case.

The knowledge that everybody gains from these criminal trials is really impossible to quantify.

It's certainly worth a heck of a lot more than a half dozen depositions and ten interrogatories and so we're going to have two more of those.  We're going to have two more of those criminal trials.

There's just nothing really left to discover after all that.  There's nothing left to discover.  There are witnesses that are outside the Court's subpoena power.  There's nothing we can do about that.  We've got to lock in that testimony but I don't think anyone can credibly say after all

Page 16

that's happened, after all that is going to happen before this case goes to trial, I don't think anybody can credibly say, yes, we truly need additional discovery. It's one thing that, you know, what we're doing, posing interrogatories, RFAs to get certain facts established to avoid the need for a deposition, to avoid the need for certain witnesses at trial.

We're talking about, these are -- we're using these written discovery methods for evidentiary purposes. We're not using them for a fishing expedition. These are very targeted and these are very specific and, again, they're all in the same proportion, what we're requesting is they just be set in the same proportion that we set the additional depositions.

SPECIAL MASTER JUDGE: Let me ask you this because it is one part that in trying to map this out, my whiteboard on my wall, it looks like the scrawlings of a serial killer or something, you know, that you see in a TV show where it's all over the place, but the one thing that poses a

Page 17

problem to me is I can't reconcile in my mind, I don't disagree with FirstEnergy and Mr. Giuffra that setting a firm dispositive motion deadline and a trial deadline date, you know, we could do it but that seems aspirational to me.  I know you proposed, I think it was April of next year and either September or October of next year for a trial date or September of next year for a trial date.

I mean you would agree with me, wouldn't you, that that's aspirational? There's no way we can really nail that down right now.  There's just too much, too many balls in the air.

MR. FORGE:  Well, I do disagree and here's why:

Number one, under their logic we can never set any deadline because the entire argument, the entire argument boils down to we shouldn't set these deadlines because we might have to move them.

There's not a single deadline in this case that we might not have to move, so I've, actually I've never encountered a

situation where everybody is so skeptical of the District Court's ability to enter a valid order that we're actually anticipating there's such a high likelihood that it won't be valid that we won't even, we won't even set a deadline.

I mean there's, I think this is, this is probably the epitome of how we're, you know, mistreating rule 1 in this litigation.  There is absolutely no objective reason why we should expect, expect that we won't be able to do dispositive motions by April of next year.

There is no objective reason why we shouldn't be able to expect that we can get this case to trial by September of next year.

I don't -- look.  You heard me grouse about this before.  I think one of the fundamental problems with our system is that we have all of these deadlines for the parties but the courts don't have any deadlines.  None.  So we wait weeks, months, years for decisions.

So I don't know when we're going

Page 19

to get the class certification order.  I don't know, it took the Sixth Circuit eight months last time just to decide whether to grant the 23(f) petition and then another eternity after that to decide it once it was argued.  So, look, as we said in our papers, it is absolutely essential to try to get this case done.

As I said before, the only thing we can guarantee is that we won't get things done by a date certain if we don't try to get things done by a date certain and so, look, everything's aspirational.

This, having this status conference today at 8, you know, at 11:00 a.m. Eastern/8:00 a.m. Pacific, that was aspirational.  We've changed our status conferences before.

Everything is at bottom aspirational if it's occurring in the future but what's more important than that is what is reasonable.  What is reasonably realistic because, look, again I've been brutally wrong in my hopes for the timing of things before and so I could very well be brutally

wrong with this again; but assuming we get some sort of a class certification order sometime before the summer, let's say, and it's just it's unbelievable to me that I'm even saying let's say sometime in June, which is just stunning. I thought we were going to have this by the end of February/early March, but let's say it's June. Let's be pessimistic. Let's say it's June.

They have 14 days or we, depending on who loses, 14 days to file a 23(f) petition. The Sixth Circuit could deny that the same month. They could deny it in June. They could deny it in July. There's no reason -- and I think it's completely inappropriate and completely disrespectful to assume the Sixth Circuit is going to grant either side's 23(f) petition. It is a highly deferential standard. It was granted before I still believe because of what amounted to a typographical error in the order that just screamed that there was, you know, some sort of disconnect with the damages methodology.

Page 21

I have absolutely no doubt that will not recur in this new class certification order or whatever we're calling it, post remand order, and so I believe that there's not going to be any additional class certification litigation once Judge Marbley enters his order.

The Sixth Circuit could take six months to say no.

Why would we put this, why would we put off setting these deadlines for what I view as being unlikely possibilities?  It doesn't make any sense to me.

But then even more importantly, we can make this trial date hold irrespective of what the Sixth Circuit does. No matter what they do, we've made it very clear we're going to trial on this case so if we have to peel off one of the class reps, you know, to take the case to trial, we will do that.

We have the direct action or opt-out plaintiffs, they will go to trial. We will go to trial in September of 2027 and FirstEnergy can squawk all they want.  We

Page 22

had a discussion about that. Mr. Giuffra tried to explain his Seventh Amendment argument and he got so tongue-tied there was literally nothing comprehensible that came out in terms of a explanation.

They will have a full-blown trial. They will be able to raise every defense the Rules of Evidence allow them to raise and that's it. That's all they're entitled to and of course after that if there are findings against them, then there would be offensive collateral estoppel for that for any other similarly situated class members or plaintiffs if the case is certified at a later date.

So that's why I mean, everything is arguably or is technically aspirational if it occurs after this minute, but this is not -- we do not have the degree of uncertainty that comes close to rivalling the benefits of, number one, giving people the incentive and the requirement to get things done on time.

Number two, getting everybody's schedules in order. One of the reasons why

Page 23

we cannot possibly schedule and complete a single deposition in the length of time it would take to try this case is because we have so many lawyers, so many witnesses and so many schedules that we are juggling. Well, that all goes by the wayside if we have a set date, a set date well in advance because it doesn't add up to say:  Well, we'll set that date and on the off chance that the Sixth Circuit grants the 23(f) petition and on the more likely chance that if they do, they won't make a decision until sometime in 2027, well then sometime in 2027 we'll set a trial date.

No.  Because that's the other thing about this:  They could grant the petition, they could entertain argument about it and they could affirm the class certification decision all before September of 2027 and so but if that doesn't happen until July of 2027, what are the chances we're going to be able to herd all these cats and get a trial set in two months?  We won't.  We won't.

You know, it's turning the

Page 24

Titanic around, and that's just not going to happen, so there is tremendous upside of setting these dates.  There is literally no downside whatsoever to setting the dates.  The worst case scenario if we set these dates is we have to move them.  That's it.  It costs no money.  It takes up no resources.  We just wind up having to move the dates.  So what?

In the meantime we will have forced people to wrap up discovery.  We will have forced people to get their dispositive motions ready and we will have sent the clear message to the Sixth Circuit that, hey, we need to get this case tried.  So if you want to look at it again, please do so a little more expeditiously than the last time around.

MR. GIUFFRA:  Mr. Judge, can I respond?  Or do you have more questions for Mr. Forge?

SPECIAL MASTER JUDGE:  Let's jump over to you.  I have some comments and questions for everyone at the end but, Mr. Giuffra, if you, I mean start with

Page 25

Mr. Forge's metaphysical argument that everything is aspirational, but the one, the piece of it that troubles me is I can arguably see setting everything up through a dispositive motion deadline regardless of whether there's an appeal and what the Sixth Circuit does and how long it takes them.  I think we can get through all of that.

Setting a trial date is troubling to me because we're putting a deadline on the District Court in order to get dispositive motions done by a certain time and, you know, I know very much my role here versus what Judge Marbley's schedule is and what I dictate and what I do not dictate and, but talk to me about you said there are too many uncertainties in your papers to set a dispositive motion deadline.

In light of what Mr. Forge is saying and my thoughts on it, tell me why I'm wrong.

MR. GIUFFRA:  I think actually, Mr. Judge, you're right in the following respects:  We proposed something that I thought was eminently reasonable and, you

Page 26

know, and we'll talk about it.  We proposed dates.  We proposed a fact discovery cutoff. We proposed a date for expert reports.  We proposed a date for the end of expert discovery.  What we thought was, should be determined because if -- later because of too many uncertainties was dispositive motion date and a trial date.  We were trying to work with the Court and with plaintiffs and, you know, I was biting my tongue but I just, I can't help myself.

You know, Mr. Forge loves to go on about saying things like incapable of candor, disrespectful.

The only thing I've heard that's disrespectful of the Court is Mr. Forge's harangue and complaint about timing.  Like if we go to talk about the Sixth Circuit decision.  The Sixth Circuit decision was not about a typo.  They wrote a 50-plus page decision that they described as being, you know, a landmark decision on class certification in this circuit.

In other cases, including the Goldman case, which Mr. Forge's firm is

quite aware of, there were three 23(f) petitions and we went to the U.S. Supreme Court.  That could happen in this case.  The same issue that we have with respect to Comcast is being argued I believe in early May in the Fourth Circuit.  It's also being argued in the Seventh Circuit so these are important issues.

To some extent we're here because of what plaintiffs decided to do.  After the last class cert decision, we offered everyone the opportunity to put forward new expert reports, a little bit of discovery.  Mr. Forge said no no no no no.  I'm resting on what I put forward.  No new expert report.  I'm going to rest on my expert who said I haven't made up my mind about what methodology I'm going to use, and he said well, I might do this, I might do that, I might do something else.

So we're here because of Mr. Forge's strategic decisions, not anybody else's; and had he gotten a new expert, Chief Judge Marbley obviously is trying to make sense of the record as it currently

exists and he's entitled to take the time because these are important issues.

This is a securities class action. It's not a one-off case with one plaintiff, and everyone on this Zoom call knows that.

In addition he made a comment before, oh, it was near a guilty plea in a case against Jones and Dowling. Last I looked that case has nothing to do with -- it was not a securities fraud case.

So what we really think, and I'm happy to go through it with the Court, we proposed a fact discovery deadline and this is talking to all the defendants, herding all the cats and, you know, they propose one four-and-a-half months, we said six-and-a-half months so it's not like we're not trying to do something.

We're trying to do a reasonable cutoff. I believe that each side had, you know, more than 40 depositions left. Even if you did one, noticed it today, it wouldn't occur until probably May or June at the earliest given the current deposition

protocol requiring advanced notice and the like.

Plaintiffs have served ten new discovery requests in the last two months. Now they've proposed, you know, that we do another 260 and on that we have an agreement I thought with them that we were putting in a separate position statement on their request to increase written discovery and we were going to put it in by 5:00 on Wednesday and then you would deal with it at the next conference; but, you know, not being satisfied to have like an orderly process, you know, Mr. Forge goes off on, you know, tangents about that.

So, look, we made a proposal. The proposal on their side on fact discovery is August 31, ours is October 31 and we have some caveats in it like no severance.

To the extent there's an information imbalance because Jones and Dowling have access to, you know, interview summaries that we don't have and that plaintiffs don't have, we have to deal with that. Then we have to deal with, you know,

Page 30

no broad expansion of written discovery because if he serves 260 complicated interrogatories, that will take a long time to respond to and then we also said, and something we stand by, that we reserve our right to conduct post class trial -- post trial individual discovery on things like on reliance.

On the expert reports what we said, they proposed September 30. We said let's do it 45 days after fact discovery is over and that class cert reports would be done 45 days, you know, either the later of 45 days after the close of fact discovery or 45 days after we had a final class cert decision and that's because for certain expert reports until you have a class cert decision, you don't know the full scope of the expert reports. So we have made a proposal. We even made a proposal for rebuttal reports and reply reports, all of that.

So I don't know what more we can do but try to be reasonable but, you know, clearly let's just be candid about

Page 31

everything:  The class cert process is important in this case.  It's important in every securities class action.  This is an area of law I've spent my career dealing with, including with Mr. Forge's firm, and we're in the position we are on class certification because of strategic decisions that were made by plaintiffs not to provide an updated class certification report but to stand on an expert report and an expert's opinion that was complete meaningless, and I'm highly confident that if were Chief Judge Marbley to rubber stamp what plaintiffs would like, we'll go to the Sixth Circuit and we'll end up with another class certification decision.  I could be wrong but I've got a pretty good track record in predicting outcomes on appellate rulings, and so that's what I think will happen.

But we are trying to be cooperative.  We really are.  I'm a professional.  I've done this a long time and I don't like it when someone is accusing us of incapable of candor because that's just not true, and so like I said, we've

proposed a fact discovery cutoff, we've proposed expert discovery cutoffs and I think you should just decide what you want to do based on the two proposals and cut out the ad hominem attacks.

SPECIAL MASTER JUDGE:  Thank you, Mr. Giuffra.  Two quick follow-up questions.

One, in terms of setting a dispositive motion deadline, you shake your head.  Explain why.

MR. GIUFFRA:   It's not possible because we have no idea what's going to happen on class cert.  So if Chief Judge Marbley grants it, issues a decision today, okay, on class cert, the loser will seek review.

If he -- in my view if Chief Judge Marbley goes down the road that plaintiffs have urged, which is to grant class cert on this record in light of the fact that what the court wanted -- the Sixth Circuit wanted was a real expert report as opposed to something where someone says: Well I might do this and I might do that, I think we'll be back up in the Sixth Circuit.

Page 33

I can't predict how long that will take.  I can't predict how long scheduling that will take.  I can't predict how long the decision will take, and then it will be back down. Then we'll have to do exactly what we urged plaintiffs to do last fall, which is to put in a new expert report, have expert depositions and then we'll go through the whole process again and until that's over, you don't have a class certified here, okay?

So, and then you can't have a trial date because you need to have class notice and I think that's like a 90-day process.  I'm dealing with that in another case and you can't have a trial unless you give people the opportunity to opt out.

So, I mean what we're trying to do -- look, I agree with one thing:  The class cert ruling is something that we all need to wait for and we're in this position because of plaintiffs' strategic judgments and we're prepared to propose dates for fact discovery and expert reports and there's no point in putting in a date for dispositive motions when the dispositive motion date

could be in 2028 for all we know.  I mean the Goldman Sachs --

SPECIAL MASTER JUDGE:  Do you agree with me that a dispositive motion deadline would have to come after class notice and an opportunity to opt out, et cetera?

MR. GIUFFRA:  It certainly would have to come after the end of expert discovery and you'd have to have some period of time between the end of expert discovery and dispositive motions.

I think realistically as a theoretical matter, one could have dispositive motions, you know, during, you know, while the opt-out period is going on.  That is possible.  I've seen that in other cases.

SPECIAL MASTER JUDGE:  I've seen it.  I've been part of that.  I think it's a prob --

MR. GIUFFRA:  It's a mess.

SPECIAL MASTER JUDGE:  Yeah yeah. It's a mess because then you also end up with a decision that's not necessarily

binding on people.

It makes more sense to me to have the class and then have, you know, dispositive motions because then you end up with something that's binding.

MR. GIUFFRA:  I agree with that. Look, I think what we proposed is, you know, you can look at the two proposals, evaluate them.  I mean, getting a schedule to the end of expert discovery with the carve-outs for discovery that's affected by class certification I think is a pretty reasonably proposal.  I don't think we're doing anything that, you know, that's, you know, that's in any way, you know, not work, trying to work with you or with plaintiffs and I think this idea that we're going to set a trial date is preposterous actually.

SPECIAL MASTER JUDGE:  Let me ask my second follow-up question then, which is you mentioned some back and forth about a position statement that you would submit to me Wednesday before our conference on the 23rd.

Tell me about that.  This is the

Page 36

first I've heard of that I think.

MR. GIUFFRA:  My understanding is we reached agreement with the plaintiffs that we would put in a separate position statement on their proposal for written discovery, that we would do so by Wednesday at 5:00 and then you would deal with it at the next conference, so I don't think there's a reason for you to address something out of order and again even on that, we want to be reasonable.

I mean, if the proposed numbers that they're talking about are into the hundreds, you know, if they send us 100 really detailed interrogatories, that's going to be a lot of work to respond to.  It just will be.

You know, my own experience has been that interrogatories often are not very helpful in cases.  Sometimes they are but again, you know, Mr. Forge has said he's got all this discovery from these trials and the criminal case so I would think, you know, he doesn't need all this fact, all these interrogatories.  I mean, there's a deferred

Page 37

prosecution agreement that we entered into with a fact statement attached to it but, look, that's a separate issue.  I think we should stick with the issue that was I thought before the Court today which was the schedule.

So our position is no objection to setting a fact discovery deadline, no objection to setting an expert report -- expert discovery deadline as long as there's caveats and the caveats that we think need to be in both of those, both of those deadlines and cutoffs are laid out in our position statement and on fact discovery it's, you know, no severance of Jones and Dowling; that the information imbalance be resolved; that we're not going to be, you know, reopening depositions and that there's no massive expansion of written discovery and that we reserve our rights to conduct, if there is a trial here, discovery into individualized issues like reliance.

And then on the expert reports the carveout would be for expert reports like damages and loss causation that would

Page 38

be affected by any ruling by the Sixth Circuit or Judge Marbley or, you know, we could go up there again on class certification.

As I said, in the Goldman Sachs case we went to the Second Circuit three times.  In the Halliburton case three times.  That was Fifth Circuit.  So I mean I think what we're proposing is reasonable.  I think setting, you know, dispositive motion dates that are beyond aspirational in '27 or '28, we don't know and again, and I'll conclude with one comment:

Mr. Forge could have simplified class certification had he had his expert agree and decide on a methodology, proposed it, put it in a new expert report and moved forward, but instead he just determined to rely on the old expert report.

SPECIAL MASTER JUDGE:  Thank you, Mr. Giuffra.

Mr. Forge, two questions.  You can take them up in whichever order you prefer.

One, my discussion with

Page 39

Mr. Giuffra just now over class notice, you know, the proposed case schedule did not include a class notice provision, understanding that an appeal to the Sixth Circuit that was successful could result in a stay, disruption of the case schedule, et cetera; but you would agree with me, wouldn't you, that class notice before a dispositive motion deadline makes more sense.

And, two, I want your thoughts on the position statement by Wednesday that Mr. Giuffra was talking about.

MR. FORGE:   So on the first one, I do not agree that it makes sense for two reasons:

Number one, the statute of repose has passed in this case.  Okay?  No one's opting out.  No one significant.  There might be some, who knows, maybe some random people who just have some sort of idealogical opposition to class certifications just to opt out to make some sort of political statement.

There aren't going to be

Page 40

significant opt-outs period.  That's not happening.

Number two, even if there were going to be, even if there was a potential for significant opt-outs, why not give people more information before they decide whether to opt out?

Why not -- remember the dispositive motions deadline -- if this wasn't clear, I want to clarify -- that's to file the dispositive motions.  That's the opening briefs.  Then we've got oppositions, we've got replies and then we have a decision.

So the, we will have 90 days even after that date for the replies -- I'm sorry, for the oppositions, the replies and we still won't have a decision, so that will given class members more time, not --- and have a more educated, not less educated, information to make that decision.  But again nobody's opting out.  Nobody with meaningful losses is opting out.  That's just burning money.

So, no, I don't agree that that

Page 41

should wait; but even if it should, FirstEnergy screwed up.

They made a proposal that exposes the insincerity of their arguments because what do they say in the, in this proposal? Okay?  They make a proposal in terms of the expert reports for this category 2 for experts:  For experts whose opinions are contingent on the issues to be resolved in the pending class certification issues, the later of 45 days after the fact discovery cutoff or 45 days after final adjudication of class certification in any appellate proceedings.  Now why was that a screw-up?

It was a screw-up because it demonstrates that we can build a schedule around this uncertainty.  We can just have -- we can do something like this.  It doesn't have to be the same number of days.

If you are sufficiently concerned about the dispositive motion -- you know, the timing of the deadline for dispositive motions and the class notice, we can ensure -- look, we know that there's going to be, there's at least from the time the

Page 42

dispositive motions are filed until the reply briefs are filed, we know there's going to be at least 45 days, at least.

And it will be more than that; but we know it's going to be at least 45 days. So why don't we use a mechanism like this to do the dispositive motion deadline and the trial date?

So, for example, it would be that the, for any, and we could also -- for any dispositive motion issues concerning class certification, the deadline is, you know, X number of days after final adjudication of class certification. So why not do that?

The point is they demonstrate in their own proposal that we can set deadlines, we can set those deadlines as pivoting off of the final resolution of class certification but we can absolutely set those deadlines. He literally is incapable of explaining why we can't.

Because there's too much uncertainty, what does that mean?

For him to say it's preposterous to set a trial date, that is the exact same

Page 43

thing as him saying it is preposterous to think Judge Marbley can issue a valid order. That's what he's saying.  That's what he's saying and that's what I mean by lack of candor:  Say what you mean.  Say what you mean.  Insult the judge because that's what you're doing.

MR. GIUFFRA:  You keep --

MR. FORGE:  You insult Judge Marbley.  You --

MR. GIUFFRA:  -- saying that. Let's stop --

MR. FORGE:  -- insult the --

SPECIAL MASTER JUDGE:  Gentlemen. Gentlemen, please.

MR. FORGE:  Because you're saying it is preposterous.  It is preposterous that he will enter an order that the Sixth Circuit will not take up.

Because if it's not preposterous, if that scenario is not preposterous, then the trial date is not preposterous.

If instead of being so skeptical of Judge Marbley's abilities, we are actually respectful of his abilities and we

Page 44

view it as a likelihood that Judge Marbley is going to enter an order that the Sixth Circuit doesn't take up, then it would be preposterous not to set a trial date because we'd be putting it off for something that is unlikely to occur.

So that's the first -- so the first question is we can absolutely set the dispositive, the opening briefs to be filed before class notice goes out. We could have the opening briefs to be filed during the opt-out period. That's a second option. We could also set the dispositive motion deadline to be based upon a certain number of days after class certification issues have been resolved. Any of those three scenarios enable us, would enable us to set a deadline for dispositive motions.

Now on the second question. The second question goes right to my point of the incapability of candor.

There was an agreement, Mr. Special Master, there was an agreement that we would alert you to this issue today and then we would tell you that we're going

Page 45

to file our position statements on Wednesday and then on Thursday we'd take it up.

What did they do? Instead they raised the arguments in their scheduling order position statement. They're the ones who put this on the agenda for argument today so much so that you asked me about it, that your opening remarks asked me to address the arguments they made completely misleading about the state of play regarding these additional written discovery requests. So I didn't bring this up. They improperly put it in their papers knowing we had already had an agreement not to address it in writing until Wednesday at 5:00.

This is what they do. They do it all the time. They're incapable of playing it straight. They're always doing this.

The issue, not only did they violate the agreement, but they did so in a misleading way. It is another tactic that they use. They describe something inaccurately in the papers but then they include the emails that conflict with it and they say oh, what's deceptive about that?

Page 46

You could have read through all these emails and figured out that we're not talking about 800, we're talking about the same proportion as the depositions.

SPECIAL MASTER JUDGE:  Is there any substantive argument countering their position papers?  I think it's section 3(b) of their paper.

Is there any substantive argument that you would have made in Wednesday's position statement written to me that you haven't made already today?

MR. FORGE:  No.  I mean I would dress it up with, you know, obviously, with case law, you know, and things like that but substantive argument, no, because it makes, it makes eminent sense what we're proposing, you know, and I would go through the exercise of showing what the deposition protocol did with the number of depositions. I would go through the exercise of showing what we're allowed to do with written, proceeding by deposition by way of written questions.  I would line up the numbers to show that what we're actually asking is more

modest than what we're already entitled to do under the rules. I would give you examples of the targeted interrogatories that we are posing which is contrary to what Mr. Giuffra described, either targeted interrogatory requests, these are targeted requests for admissions.

So substantively I don't think it's different but we would put a lot more meat on the bones so you could see that what we are doing is pursuing a more efficient path and not a less efficient path and we're getting the case ready for trial. There are some loose ends to tie up to make sure we can admit evidence, but that's what we're trying to do.

MR. GIUFFRA: Response, sir?

SPECIAL MASTER JUDGE: Yes, please, appreciate it.

MR. GIUFFRA: Again the ad hominem attacks continue, insincere, more the incapable of candor.

Chief Judge Marbley can enter an order on class certification that the Sixth Circuit will not review and that would be to

deny class certification on the record that Mr. Forge was prepared to rest on.  So no one is saying he can't enter an order here.

Our view is he should deny class certification and require Mr. Forge to go back and submit a proper expert report.

Now, what Mr. Forge is ignoring is, like I said, we've proposed a fact discovery cutoff, an expert discovery cutoff and a reason why.  We reference briefly the issue with respect to written discovery in our position statement is that our proposed fact discovery deadline is conditioned on not having a, you know, massive expansion, 280 interrogatories which we'll have to go out and answer and go to our clients and write all that stuff up and do all that work.

Now, just on a baseline and in fact, Special Master Judge, you were correct, in the Sixth Circuit, the law is the following:  If you do summary judgment after class certification but before the notice process is final, the summary judgment decision binds only the named

Page 49

plaintiffs. Case cite: Farber versus Choix, C-I-O-X, Health, 944 F.3d 593, pages 602 to 05. Sixth Circuit 2019.

So all we're asking for is to follow the rules and we've, again no one's engaging in anything that's incapable of candor or insincerity or anything like that.

We made a proposal. I thought it was a fair proposal and, again, unwilling to even, you know, let's deal with like fact discovery. Let's deal with expert reports. Mr. Forge is demanding a trial date be set, demanding dispositive motion dates be set even though were the Court to do so before class certification and before we get all these other things done, it makes no sense and in fact inviting dispositive motions before class notice is done won't be binding on anyone other than the named plaintiff, full stop.

So I think what we really should do is let's set a fact discovery deadline. The only thing we should be arguing about, which he doesn't want to, is what carve-outs there are on it, you know, the severance

issue, how big of an expansion of written discovery which is why we addressed that issue. Same thing with expert reports. If you want to have, if you want to have -- we'll give you, we'll agree to a deadline which I thought was reasonable 45 days after post -- after fact discovery because you need to finish fact discovery before you finalize your reports because things happen in fact discovery. Oftentimes there are depositions at the very end of fact discovery and they affect the expert reports and so all we're saying is that if there is something that affects -- that if expert reports are affected by class cert rulings, let's get -- that needs to be carved out. That's an eminently reasonable position.

So I mean, this idea that we have to, must set a trial date is nothing more than a tactic. Mr. Forge knows it and everyone on this call knows it. I think we should -- if we want to move the case forward, the way to do it is to decide on our fact discovery cutoff with appropriate carve-outs and do the same with the expert

Page 51

report with carve-outs.

SPECIAL MASTER JUDGE:  Thank you, Mr. Giuffra.

Direct action plaintiffs.  I don't want to ignore you.

Any thoughts to add on this matter?

MR. HEIMANN:  Yes, Mr. Judge, this is Richard Heimann.  We've of course submitted our thoughts on the case schedule in writing.  I don't have any real comments on that.

But the one thing I do want to mention is this:  Presumably most folks have been assuming that the opt-out case would be tried jointly with the class case once we get to that point, but I want to make sure people understand that we're not waiving our right to seek a trial date independent in the class case and in particular if Mr. Giuffra's prediction turns out to be correct that we get tied up or the class gets tied up in an appeal to the Sixth Circuit, we will almost certainly be asking the trial judge to set our case down for

Page 52

trial at an early date and so I just want to make sure that that potential is not assumed away by all the conversation on the class issues.

SPECIAL MASTER JUDGE:  I appreciate that.  Thank you.

Counsel for Jones or Dowling, either one first, Mr. McCaffrey, Ms. Israel.

MS. ISRAEL:  Thank you, Special Master Judge.

Our position is included in the position statement that FirstEnergy filed.

The only place where we differed is we wanted to make sure that non class related expert reports be pushed out a little bit so that they're not due while we're still in the criminal trial which is currently scheduled this fall, so we asked for I think a January 15th deadline just so that we were, got a little bit of time after the trial and avoiding the holidays at the end of the year.

The only other thing that I will address is that, as you know, we object to any discovery situation where Jones and

Page 53

Dowling would be either barred or limited in their ability to engage in the discovery process along with all other parties. Otherwise I'm not going to address the other issues that were raised today.

SPECIAL MASTER JUDGE:  Thank you.

MR. McCAFFREY:   I have nothing to add.  We join in exactly what Ms. Israel has outlined.

SPECIAL MASTER JUDGE:  Thank you, Mr. McCaffrey.

And for both of you, I know that you had requested the opportunity to brief the issue of the bifurcation and stay if I felt it was necessary.

You know, I'm correct, am I not, that you join FirstEnergy in that you oppose plaintiffs' proposal for bifurcation and stay?

MS. ISRAEL:   We do and we are only interested in briefing it if it would be helpful to you and because the plaintiffs did present some case law.  We don't want that to go unanswered if this is something that you are considering but we also don't

Page 54

feel the need to file additional paper

unless it would be helpful to you.

SPECIAL MASTER JUDGE:  I

appreciate that.  At this time let's have no

additional briefing.  If during the course

of my research and drafting of a report and

recommendation I need additional information

from you, I will solicit briefing.

MS. ISRAEL:   Thank you.

SPECIAL MASTER JUDGE:  Any other

issues we need to take up in regard to a

case schedule?  A lot of these issues are

intertwined with what's going on in the

state criminal proceedings and the case

schedule itself, the certification

proceedings but I think we could fashion an

order or at least a recommended report to

Judge Marbley that deals with many of these

issues.  I just need to sit down in the time

today and tomorrow and try to work some of

these out and see how the puzzle fits

together.

Mr. Forge, anything from you?

MR. FORGE:   Well, the one thing

that we haven't mentioned yet and I think

Page 55

bears significant consideration is the notion of a trial on liability and as you heard Mr. Giuffra, his exclusively fighting class certification on damages and the experts. Experts experts experts. That's just damages.

Now, obviously from a plaintiffs perspective I would rather have the same jury determine liability that determines damages because they know what such, you know, how bad actors these guys are and the extensiveness of their misconduct and that would inform their damages decision; but we could absolutely bifurcate the trial and again, that would preserve the date. We just have a trial on liability. That would -- liability as to the class.

That would satisfy the direct action plaintiffs because they could put on their damages presentation at that same trial and so there could be a damages determination as to the opt-outs, but not as to the class and yet we would have a liability determination as to the entire class.

That is perfectly acceptable to us and there's really no reason not to do it.

You didn't ask me to address the Jones and Dowling issue. I would like to address that if I may because I do think that there are two absolutely critical questions and frankly I think Ms. Israel has already answered one of them in the negative.

SPECIAL MASTER JUDGE: Is this new content that we haven't previously discussed or is not on the briefing that I already have?

MR. FORGE: It is -- let's see, let me see is this in the briefing.

Well, let me just tell you what the questions are and you can tell me if you think it's in the briefing.

SPECIAL MASTER JUDGE: Okay.

MR. FORGE: Are Jones and Dowling, if they're not willing to stipulate to a joint trial in which the DPA and all of FirstEnergy's admissions are admissible at a joint trial, that should end the issue right

Page 57

there.

We know that they want the case severed, period. We know that. Number one, that's the number one question.

Number two, if they are not willing to stipulate that they will never again seek any sort of delay of any aspect of this case due to their criminal trials, then they are implicitly conceding that we need to severe them and she just did that. They did that in their papers. They're literally trying to move this schedule around to accommodate the first of their upcoming criminal trials and they're just demonstrating it, so, and then the third point, which is not in the papers, I know, is this we have given them a clear path to potentially be done with this case without ever having to do anything else in it.

If, as I've explained before, we try the case against FirstEnergy. In the meantime their criminal cases move forward. If they wind up convicted and thus basically uncollectible and we obtain a joint and several verdict against FirstEnergy, there's

not going to be a need to move forward with Jones and Dowling.  So look, they've got a realistic path to be done with this case without doing anything more but they're fighting like the dickens to stay in this case.  When is the last time you've heard a defendant fight like heck to stay in a case?  Why?  Why?

There's only one explanation. They want to use the discovery in this case to help with their criminal defense.  There is -- it's been over a year.  It's been over a year since you made these findings, okay, that the various Defendants Jones and Dowling had various documents and/or audio recordings that were subject to production via Judge Marbley's order.

"Again Jones and Dowling were obligated to produce them here.  The undersigned finds the circumstances surrounding the sealing of the state court materials to be discomforting.  To put a polite label on it:  It wreaks of gamesmanship if not odd collusion and the Ohio Attorney General's office's willingness

Page 59

to indulge in this handling of the undisclosed material is confounding and deeply concerning.  Last, Jones and Dowling should submit a brief addressing why they think sanctions are not appropriate for violating Judge Marbley's order."

It's been over a year, Mr. Special Master.  It's been over a year and we still don't have those documents.  We still don't have a sanctions order and this is what I mean by the death of rule 1 in this litigation.  There's no, there's no point to continuing with this.

We -- they've won the litigation battle.  Okay?  And I'm distinguishing between litigation and trial on the merits.  They've won it, they've won it.  They've bogged down this case in incessant delays and outright defiance of court orders and the Rules of Civil Procedure and they've succeeded in obtaining the delays that they want, and for Jones and Dowling with that track record to be demanding that they get to participate in discovery in this case when we all know the only appropriate thing

would be for them to be sanctioned because they've cost this case well over a year with that ridiculous gamesmanship and they're still doing it, unlike what Ms. Israel promised you, she did not go into Court, into Summit County Court the next time after our last conference, our prior to the last conference and ask the judge about producing documents.  It didn't come up.  Didn't come up.

They're not trying to produce those documents.  They want the information imbalance.  They want to create a misleading record and to use the civil discovery for their criminal case.

The answer is so simple.  Just cut them off.  Just cut them off.

If we wind up having to do something additionally after all of those things, again, state criminal trial, another one.  Federal criminal trial and this trial, a liability trial at the least against FirstEnergy.  If after all of those things the case against Jones and Dowling here still needs to go forward, which is, number

one, a highly unlikely scenario, but if it needs to go forward after all of that and they can show any good cause after all that happens for additional discovery, so be it.

Otherwise we can't be held hostage with this criminal -- these criminal cases anymore. We tried. You were accommodating. You let the state go first even though they went second in terms of charging. They took their shot. They didn't get the conviction. They didn't resolve the case, so now we're here again.

We've got to cut them loose and I'm, if you want briefing on that, so be it but I would give you the same answer that you asked regarding the written discovery. Is it substantively going to be different? No, it's not substantively going to be different. It's a discretionary issue. The facts are the facts. They're not going to change. There's absolutely no risk, none whatsoever, no risk of prejudice for them. None. Because they are not foreclosing either. They're not cutting off the possibility of later discovery at all in any

Page 62

way, shape or form.  I am not suggesting that.  So there's no risk of prejudice to them.

So if they won't commit to a joint trial where all the evidence against FirstEnergy comes in where they're at trial, which they won't.  If they won't commit to that, if they won't commit to never again using the state or federal criminal proceedings as a reason to postpone anything in this case, just cut them loose.  Cut them loose.  We'll be done with fact discovery. We'll be done with expert discovery.  We'll be done with dispositive motions at least as to liability.  We'll take this case to trial as to liability for the class and as to everything for the opt-outs without any risk from class certification and this case will be resolved in 2027.

So that the liability aspect of this, the bifurcation aspect of this is something that I'd really hope you will consider as a backup plan if you don't go with us on the whole proposal.

MR. GIUFFRA:  Mr. Judge, can I

Page 63

respond to this?

I mean, this is the problem with this case.  He's now proposing something, and I again hate to keep saying this:  I've been doing this for literally decades.

I'm not aware of any securities class action case ever going to trial with a separate liability jury and then a damages jury.

Now, he could propose that if he wants but let's do it in a normal way:  File a piece of paper with the Court.  But he doesn't want to do that.  He just throws concepts out.  That would be inviting massive error into this case.

Now, again, on class cert, when he keeps talking about delays and putting the onus on us, he's the movant, he's the one that filed the papers that don't.

And then let me make one other point clear because it goes to the liability point.  Class cert is relevant to both damages and also to what statements are in the case and they're basic.  That's the whole issue about price impact that we were

Page 64

jousting about back in December.

So they are interrelated.  It relates to both what statements are in the case and also damages and the last thing I'd like to just get clarification on:  In this district, if you want to get more interrogatories and you want to get more RFAs, the burden is on the party that wants to get more RFAs and more interrogatories and I thought we had a process:  We would file something on Wednesday and you could decide it.

The only reason we even reference it, reference the interrogatory issue and the issue of the RFAs was because it would obviously affect the deadline on fact discovery because if they were going to get hundreds more of them, we'd have to get more time on the fact discovery so all we'd like from you would be guidance as to how you want us to deal with that issue and again if Mr. Forge wants to have the Court propose, you know, some sort of bifurcation of liability and damages or if the opt-out plaintiffs want to propose, you know, their

own little separate trial, let's brief that in an orderly way rather than have concepts just being thrown out.

SPECIAL MASTER JUDGE:  Ms. Israel, any closing thoughts?

MS. ISRAEL:  Yes.  Thank you.

I have real concerns that Mr. Forge keeps raising arguments regarding a partial stay against Jones and Dowling only or a bifurcation of this case and trial without briefing before you.  So he keeps making arguments in writing and orally.  I understood from what you just said a moment ago that you are not going to be considering those arguments right now.

If you are, we absolutely need an opportunity to brief them.  It is not --

SPECIAL MASTER JUDGE:  What I said was I'm considering their arguments and I didn't think your briefing was necessary.

MS. ISRAEL:  Okay.  So then I am going to request that you allow us to brief it because the case law and the arguments that Mr. Forge is making are, we would disagree with them and we would like to

Page 66

present our own position.

There is no legitimate basis on which to stay discovery against only Mr. Jones and Mr. Dowling. There is no legitimate basis for requiring parties to this litigation to have to show good cause to engage in discovery. Okay?

That's not what the Federal Rules require. There's also no -- his continued representations that we are continuing to violate an order requiring the production of these documents is just wrong.

As you know, we submitted these documents to you in camera a year ago just as you requested. We are not violating anything. We are not continuing to withhold documents. We have done exactly what you asked. Okay?

And so to act as if this last year has been us continuing to withhold documents is just not appropriate and there are just so many things that Mr. Forge has said that I disagree with, and it's very hard to address them in an orderly way if he's just allowed to continue talking for 45

minutes.

So if you're going to consider either a partial stay or a bifurcation of the case, I would like to, the opportunity to brief it on behalf of my clients.

I know that Mr. Giuffra has also indicated that he would like to brief the issue of a possible bifurcation because of the issues that it raises for FirstEnergy. So if this is an issue, then we would like a briefing schedule so that we can address it.

SPECIAL MASTER JUDGE: How soon can you have a brief in?

MS. ISRAEL: A week from today.

SPECIAL MASTER JUDGE: How much quicker than that can you get a brief in?

MS. ISRAEL: I mean I have -- I would like a week, your Honor. I mean, it's only fair. That's why we raised this last week and asked for one week to respond to this issue which has been raised numerous times but has never really been addressed in writing.

SPECIAL MASTER JUDGE: Mr. Giuffra, would you request additional

briefing as well?

MR. GIUFFRA: I, I'm a little unclear, to be candid, on the precise issue that the briefing would be on.

Is it the bifurcation of Jones and Dowling? We would want to brief that.

If this issue is this idea about doing a bifurcated liability and damages process, we would want to brief that.

SPECIAL MASTER JUDGE: It would be the bifurcation or a stay of Jones and Dowling.

MR. GIUFFRA: We would want to brief that because that raises issues under the PSLRA and also the Seventh Amendment.

SPECIAL MASTER JUDGE: And how long would you need to prepare a brief?

MR. GIUFFRA: We would do a brief the same track as Jones and Dowling would do it. I want to be reasonable. We can obviously put things together relatively quickly.

But again I want to go back to where we started. I --

SPECIAL MASTER JUDGE: That was

my only question.

MR. GIUFFRA:  -- the schedule here.

SPECIAL MASTER JUDGE:  Mr. McCaffrey, do you agree as well, you would like briefing and a week to do it?

MR. McCAFFREY:  Yes, I would, Mr. Judge and I'm about ready to head to a deposition for the next two days, Tuesday and Wednesday.  So, yes, I would appreciate some time and the deposition is one that was scheduled in this case of Charles Moore.

And I would just note that one of the options that Mr. Forge has to all the chaos that Jones and Dowling is creating is he can dismiss us.  He's the one that has elected to sue us.  He is the one that has elected to keep us in this case.  He can easily dismiss the case against us rather than having, trying to get the Court to do it.

SPECIAL MASTER JUDGE:  Thank you, Mr. McCaffrey.

Here's the schedule:  You can have the requested additional briefing.

Page 70

Today is the 20th.  I'd like the additional briefs filed by close of business on the 27th.

MR. Forge, can you have a reply brief to me by the 29th close of business?

MR. FORGE:  Sure.

SPECIAL MASTER JUDGE:  I appreciate that.

MR. GIUFFRA:  This is just on the Jones and Dowling bifurcation from the case?

SPECIAL MASTER JUDGE:  Just on the bifurcation from the case of Jones and Dowling.

MR. GIUFFRA:  Okay.  Understood. Thank you very much.

SPECIAL MASTER JUDGE:  I, the parties requested additional briefing.  You know, I would encourage everyone to go back and read the transcript and see how you missed reading the tea leaves so poorly; but additional briefing on the 27th, reply on the 29th.  That's going to hold up the case schedule order until probably May 1st then because I'm going to roll this all into one

Page 71

order.

Any other issues we need to pick up today or that we can wait until Thursday?

Mr. Forge?

MR. FORGE:  No, but I do want to just make sure do you want the position statements on the additional written discovery or have you heard enough and you're just going to go ahead and make the decision on that?

SPECIAL MASTER JUDGE:  I think I've heard enough.  I encourage the parties to keep talking about it because it, you know, it seems like it's silly there can't be an agreement on that.

If you can't come to an agreement, I mean I understand.  I think I've heard enough.  We can discuss it again Thursday after I work through it and come up with my plan a little bit.

I don't think I need more from you unless there are points that have not already been made.

MR. FORGE:  No.  The only -- I just want to make sure you're clear.

Our position is not what FirstEnergy put in their papers.  Our position is what I actually expressed.

SPECIAL MASTER JUDGE:  Earlier.

MR. FORGE:  Exactly.

MR. GIUFFRA:  So hold it.  Now I can't under -- see, I actually think, Mr. Judge, because it will involve, you know, hundreds of thousands of dollars legal time potentially responding to his written discovery, it would be very good to have him articulate in writing exactly what he wants because it seems like we're dealing with, you know, moving positions, so I don't even know sitting here today and maybe my head is spinning from all of the various proposals that have been made, but our position would be it would make sense and would benefit you because at least when it's in writing, it's in writing.

SPECIAL MASTER JUDGE:  Okay.

MR. FORGE:  I put it in writing, Mr. Special Master.  I put it in writing. They have it in writing.  They attached it as an exhibit to their position statement.

Page 73

Mr. Giuffra is just not aware of his own filings.

MR. GIUFFRA: That's not true.

MR. FORGE: We put it in writing.

MR. GIUFFRA: So we'll put in our response.

SPECIAL MASTER JUDGE: Okay. Position statements of no more than five pages explaining the contours of what each side is proposing and how you would approach it.

No responses. No replies. Those are filed by close of business Eastern Time on the 22nd so we can discuss it Thursday if needed then.

Anything else from anyone?

MR. FORGE: Not from plaintiffs.

SPECIAL MASTER JUDGE: All right. I appreciate it. We're off the record.

- - - -

(Proceedings concluded at 12:20 p.m.)

- - - -

Page 74

C E R T I F I C A T E

I, Pamela S. Greenfield, a Notary Public within and for the State of Ohio, do hereby certify that I attended the foregoing proceedings in their entirety, that I wrote the same in stenotypy, and that this is a true and correct transcript of my stenotype notes.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office, at Cleveland, Ohio, this 20th day of April, 2026.

Pamela S. Greenfield, CRR, RDR
Notary Public, State of Ohio
My commission expires July 2, 2028

**[& - aaron.miner]**

| & | 2 | 3 | 55th 4:24 |
|---|---|---|---|

**&** 2:3,21 3:3,11 4:3,9,18,23 5:8 6:4,8

**2** 41:7 74:20
**20** 1:14 9:13 10:2
**2000** 4:4
**20005** 4:15
**2019** 49:3
**2026** 1:14 74:14
**2027** 21:24 23:13,13,20,21 62:19
**2028** 34:1 74:20
**20th** 7:6 70:1 74:14
**22nd** 73:14
**23** 19:4 20:13 20:19 23:10 27:1
**2330** 3:13
**23rd** 35:24
**250** 2:23 4:24
**25705** 74:19
**260** 29:6 30:2
**27** 38:11
**27th** 70:3,22
**28** 38:11
**280** 48:15
**2900** 6:9
**29th** 70:5,23
**2:20** 1:5

**3** 46:7
**30** 30:10
**31** 29:18,18
**31st** 8:15,16
**325** 3:23
**35** 5:9
**3785** 1:5

**55th** 4:24
**593** 49:2
**5:00** 29:10 36:7 45:15

**6**

**600** 3:12,23 4:19
**602** 49:3
**60601** 5:10
**60606** 4:10
**655** 2:8

**7**

**700** 4:19

**8**

**8** 19:15
**800** 8:22,23 9:1 46:3
**8028487** 1:23
**8:00** 19:16

**9**

**90** 33:13 40:15
**901** 3:20
**92101** 2:9
**944** 49:2
**950** 5:4

**a**

**a.m.** 1:14 7:6 19:16,16
**aaron** 4:23
**aaron.miner** 4:25

**0**

**05** 49:3

**1**

**1** 12:7 18:9 59:11
**10** 10:3
**100** 36:14
**10004** 3:6
**10013** 2:24
**10017** 6:5
**10019-9710** 4:24
**1100** 5:5
**1114** 2:17
**1152** 4:14
**11:02** 7:6
**1200** 5:14
**125** 3:6
**127** 4:5
**12:20** 73:21
**14** 20:11,12
**15th** 4:14 52:19
**1701** 5:24
**1735** 5:19
**19103** 5:19,24
**1st** 70:24

**4**

**40** 28:22
**4000** 4:10
**41** 6:9
**43215** 2:17 6:10
**43216** 3:24
**44113** 5:5
**44114** 3:21 4:5
**44114-2614** 3:13
**44308** 5:14
**444** 4:10
**45** 30:11,13,14 30:15 41:11,12 42:3,5 50:6 66:25
**450** 6:5
**45202** 4:20

**5**

**50** 5:13 26:20
**500** 9:21
**51st** 5:19

**[abilities - april]**

**abilities** 43:24 43:25
**ability** 11:11 18:2 53:2
**able** 14:24 18:12,15 22:7 23:22
**absolutely** 14:18 18:10 19:7 21:1 42:19 44:8 55:14 56:7 61:21 65:16
**acceptable** 56:1
**access** 29:22
**accommodate** 57:13
**accommodati...** 61:8
**accusing** 31:23
**acknowledged** 15:3
**act** 66:19
**action** 1:5 2:20 21:22 28:4 31:3 51:4 55:19 63:7
**actions** 1:8
**actors** 55:11
**actually** 17:25 18:3 25:22 35:18 43:25 46:25 72:3,7

**ad** 32:5 47:20
**add** 23:8 51:6 53:8
**addison** 3:16
**addition** 28:7
**additional** 11:17,19 16:4 16:18 21:6 45:11 54:1,5,7 61:4 67:25 69:25 70:1,18 70:22 71:7
**additionally** 60:19
**address** 36:9 45:9,14 52:24 53:4 56:4,6 66:24 67:11
**addressed** 50:2 67:22
**addressing** 59:4
**adjudication** 41:12 42:13
**admissible** 56:24
**admission** 9:16 12:25
**admissions** 47:7 56:24
**admit** 47:15
**admitted** 13:21
**adopted** 9:1

**advance** 23:7
**advanced** 29:1
**affect** 50:12 64:16
**affected** 35:11 38:1 50:15
**affects** 50:14
**affirm** 23:18
**ag's** 13:22
**agenda** 7:9 45:6
**ago** 15:3,4 65:14 66:14
**agree** 17:11 33:18 34:4 35:6 38:16 39:7,15 40:25 50:5 69:5
**agreeing** 11:14
**agreement** 29:6 36:3 37:1 44:22,23 45:14 45:20 71:15,17
**ahead** 71:9
**air** 17:15
**akron** 5:14
**alert** 44:24
**allow** 10:16 22:8 65:22
**allowed** 46:22 66:25
**amendment** 22:2 68:15

**amounted** 20:22
**analysis** 8:20
**anderson** 3:16
**andrew** 5:13
**answer** 48:16 60:16 61:15
**answered** 56:9
**anticipate** 7:24
**anticipating** 18:3
**anybody** 16:3 27:22
**anymore** 61:7
**anytime** 9:19
**apguran** 5:15
**appeal** 25:6 39:4 51:23
**appearances** 2:1 3:1 4:1 5:1 6:1
**appellate** 31:18 41:13
**appreciate** 7:16 47:19 52:6 54:4 69:10 70:8 73:19
**approach** 73:10
**appropriate** 50:24 59:5,25 66:21
**april** 1:14 7:6 17:7 18:13

[april - briefing]                                                    Page 3

74:14
**area** 31:4
**arguably** 22:17
25:4
**argued** 19:6
27:5,7
**arguing** 49:23
**argument**
17:20,20 22:3
23:17 25:1
45:6 46:6,9,16
**arguments**
41:4 45:4,9
65:8,12,15,19
65:23
**arnold** 4:23
**arnoldporter....**
4:25
**arthur** 6:8
**articulate**
72:12
**asked** 45:7,8
52:18 61:16
66:18 67:20
**asking** 46:25
49:4 51:24
**aspect** 57:7
62:20,21
**aspirational**
17:6,12 19:13
19:17,20 22:17
25:2 38:11
**associated** 7:14

**assume** 20:18
**assumed** 52:2
**assuming** 9:2
20:1 51:15
**attached** 37:2
72:24
**attacks** 32:5
47:21
**attended** 74:8
**attorney** 58:25
**audio** 58:15
**august** 8:15
14:25 29:18
**avenue** 3:12,20
5:4 6:5
**avoid** 16:7,8
**avoiding** 52:21
**aware** 27:1
63:6 73:1
**axelrod** 5:18
**axelrodd** 5:20

**b**

**b** 46:7
**back** 12:17
32:25 33:4
35:21 48:6
64:1 68:23
70:19
**backup** 62:23
**bad** 55:11
**bailey** 5:18
**baileyj** 5:20

**baker** 4:3
**bakerlaw.com**
4:6,6
**ballard** 5:17
**ballardspahr....**
5:20,20
**balls** 17:15
**barr** 4:4
**barred** 53:1
**base** 13:24
**based** 32:4
44:14
**baseline** 48:19
**basic** 63:24
**basically** 11:24
57:23
**basil** 2:15
**basis** 11:13
66:2,5
**bat** 8:7
**battle** 59:15
**bear** 15:2
**bears** 55:1
**behalf** 67:5
**believe** 8:14
20:21 21:5
27:5 28:21
**benefit** 72:18
**benefits** 22:21
**bernstein** 2:21
**beth** 3:5
**beyond** 14:3
38:11

**bicker** 10:25
11:5
**bifurcate** 55:14
**bifurcated** 68:8
**bifurcation**
7:13 53:14,18
62:21 64:23
65:10 67:3,8
68:5,11 70:10
70:13
**big** 50:1
**binding** 35:1,5
49:18
**binds** 48:25
**bit** 27:13 52:16
52:20 71:20
**biting** 26:10
**blown** 22:6
**bogged** 59:18
**boils** 17:20
**bones** 47:10
**bottom** 12:12
19:19
**boulevard** 3:23
**bpo** 4:20
**brian** 2:16 4:18
**brief** 53:13
59:4 65:1,17
65:22 67:5,7
67:13,16 68:6
68:9,14,17,19
70:5
**briefing** 53:21
54:5,8 56:13

**[briefing - choix]** Page 4

56:16,19 61:14 65:11,20 67:11 68:1,4 69:6,25 70:18,22

**briefly** 48:10

**briefs** 40:12 42:2 44:9,11 70:2

**bring** 45:12

**britt** 5:23

**broad** 3:6 30:1

**broadway** 2:8

**brutally** 19:23 19:25

**build** 41:16

**burden** 64:8

**burning** 40:24

**burton** 4:14

**business** 70:2,5 73:13

**c**

**c** 7:1 49:2 74:4 74:4

**cabraser** 2:21

**california** 2:9

**call** 8:20 14:16 28:5 50:21

**calling** 21:4

**camera** 66:14

**candid** 30:25 68:3

**candor** 10:7 14:16 26:14

31:24 43:5 44:21 47:22 49:7

**capable** 14:15

**career** 31:4

**carve** 14:13,17 35:10 49:24 50:25 51:1

**carved** 50:16

**carveout** 37:24

**case** 7:11,21 8:2,5 10:14 12:4 13:7,17 13:21 14:9,23 15:10 16:2 17:24 18:16 19:8 21:18,20 22:14 23:3 24:5,15 26:25 27:3 28:4,9,10 28:11 31:2 33:15 36:23 38:6,7 39:2,6 39:18 46:15 47:13 49:1 50:22 51:10,15 51:16,20,25 53:23 54:12,14 57:2,8,18,21 58:3,6,7,10 59:18,24 60:2 60:15,24 61:12 62:11,15,18 63:3,7,15,24

64:4 65:10,23 67:4 69:12,18 69:19 70:11,13 70:23

**cases** 26:24 34:18 36:20 57:22 61:7

**cassidy** 5:23

**cassidy.britt** 5:25

**category** 41:7

**cats** 23:23 28:16

**causation** 37:25

**cause** 12:2 14:20 61:3 66:6

**caveats** 29:19 37:11,11

**center** 4:15

**cert** 27:11 30:12,15,17 31:1 32:13,15 32:20 33:19 50:15 63:16,22

**certain** 16:6,8 19:11,12 25:12 30:16 44:14

**certainly** 15:14 34:8 51:24

**certification** 19:1 20:2 21:3 21:6 23:19

26:23 31:7,9 31:16 35:12 38:4,15 41:10 41:13 42:12,14 42:19 44:15 47:24 48:1,5 48:23 49:15 54:15 55:4 62:18

**certifications** 39:23

**certified** 22:15 33:10

**certify** 74:8

**cetera** 34:7 39:7

**chack** 5:22

**chance** 23:9,11

**chances** 23:21

**change** 10:13 61:21

**changed** 19:17

**chaos** 69:15

**charging** 61:10

**charles** 4:2 69:12

**chicago** 4:10 5:10

**chief** 27:24 31:12 32:13,17 47:23

**chilcote** 3:11

**choix** 49:2

**christopher** 3:18

**cincinnati** 4:20

**circuit** 19:2 20:13,18 21:8 21:16 23:10 24:14 25:7 26:18,19,23 27:6,7 31:15 32:22,25 38:2 38:6,8 39:5 43:19 44:3 47:25 48:21 49:3 51:24

**circumstances** 58:20

**circumstantial** 13:25

**cite** 49:1

**civil** 1:5 12:8 59:20 60:14

**clarification** 64:5

**clarify** 40:10

**class** 2:2 19:1 20:2 21:2,6,19 22:13 23:18 26:22 27:11 28:3 30:6,12 30:15,17 31:1 31:3,6,9,15 32:13,15,20 33:10,12,19 34:5 35:3,11

38:3,15 39:1,3 39:8,22 40:19 41:10,13,23 42:11,14,19 44:10,15 47:24 48:1,4,23 49:15,18 50:15 51:16,20,22 52:3,14 55:4 55:17,23,25 62:16,18 63:7 63:16,22

**classic** 9:6

**clear** 21:18 24:14 40:10 57:17 63:21 71:25

**clearly** 30:25

**cleveland** 3:13 3:21 4:5 5:5 74:13

**clients** 48:16 67:5

**close** 8:16 22:20 30:14 70:2,5 73:13

**closing** 65:5

**cocalis** 2:4

**collateral** 22:12

**collusion** 58:24

**columbia** 4:15

**columbus** 2:17 3:24 6:10

**combination** 9:15

**comcast** 27:5

**come** 34:5,9 60:9,9 71:16 71:19

**comes** 22:20 62:6

**comment** 28:7 38:13

**comments** 24:23 51:11

**commission** 74:20

**commit** 62:4,7 62:8

**complaint** 26:17

**complete** 13:6 23:1 31:11

**completely** 14:13 20:17,17 45:9

**completing** 13:16

**complexity** 10:14

**complicated** 30:2

**comprehensi...** 22:4

**compressing** 11:15

**conceding** 57:9

**concepts** 63:14 65:2

**concerned** 41:20

**concerning** 42:11 59:3

**concerns** 65:7

**conclude** 38:12

**concluded** 73:21

**conditioned** 48:13

**conduct** 30:6 37:20

**conference** 1:11 7:8 19:15 29:12 35:23 36:8 60:7,8

**conferences** 19:18

**confident** 14:7 31:12

**conflict** 45:24

**confounding** 59:2

**conover** 2:5

**consider** 62:23 67:2

**consideration** 55:1

**considering** 53:25 65:14,19

**[consolidated - deadlines]**

**consolidated** 7:8

**content** 8:2 56:12

**contingent** 41:9

**continue** 47:21 66:25

**continued** 3:1 4:1 5:1 6:1 66:9

**continuing** 59:13 66:10,16 66:20

**contours** 73:9

**contrary** 47:4

**conversation** 52:3

**convicted** 57:23

**convicting** 14:2

**conviction** 61:11

**cooperative** 31:21

**corp** 1:5

**correct** 9:4 48:21 51:22 53:16 74:11

**cost** 60:2

**costs** 24:7

**counsel** 2:1 3:1 4:1 5:1 6:1 52:7

**count** 11:2

**countering** 46:6

**counting** 11:6

**county** 60:6

**course** 9:9 10:3 11:10 22:10 51:9 54:5

**court** 1:1 7:23 25:11 26:9,16 27:3 28:13 32:21 37:5 49:14 58:21 59:19 60:5,6 63:12 64:22 69:20

**court's** 15:22 18:2

**courts** 18:22

**covered** 12:17

**create** 60:13

**creating** 69:15

**credibly** 15:25 16:3

**criminal** 13:4 13:19 15:5,12 15:18 36:23 52:17 54:14 57:8,14,22 58:11 60:15,20 60:21 61:6,6 62:9

**critical** 56:7

**cromwell** 3:3

**crr** 1:20 74:19

**current** 28:25

**currently** 27:25 52:18

**cut** 32:4 60:17 60:17 61:13 62:11,11

**cutoff** 26:2 28:21 32:1 41:12 48:9,9 50:24

**cutoffs** 32:2 37:13

**cutting** 61:24

**cv** 1:5

**d**

**d** 3:5,18 7:1

**d.c.** 4:15

**damages** 20:25 37:25 55:4,6 55:10,13,20,21 63:8,23 64:4 64:24 68:8

**dance** 11:23

**daniels** 2:6

**date** 17:4,9,10 19:11,12 21:15 22:15 23:7,7,9 23:14 25:9 26:3,4,8,8 33:12,24,25 35:18 40:16

42:8,25 43:22 44:4 49:12 50:19 51:19 52:1 55:15

**dates** 24:3,4,6,9 26:2 33:22 38:10 49:13

**david** 3:4 5:18

**davis** 6:4

**davispolk.com** 6:6

**day** 3:19 33:13 74:14

**days** 20:11,12 30:11,13,14,15 40:15 41:11,12 41:19 42:3,6 42:13 44:15 50:6 69:9

**deadline** 14:13 14:16,19 17:4 17:4,19,23 18:6 25:5,10 25:18 28:14 32:9 34:5 37:8 37:10 39:9 40:9 41:22 42:7,12 44:14 44:18 48:13 49:22 50:5 52:19 64:16

**deadlines** 17:21 18:21,23 21:11 37:13 42:17,17

42:20

**deal** 29:11,24
29:25 36:7
49:10,11 64:21

**dealing** 31:4
33:14 72:13

**deals** 54:18

**death** 59:11

**decades** 63:5

**december** 64:1

**deceptive** 45:25

**decide** 19:3,5
32:3 38:16
40:6 50:23
64:12

**decided** 27:10

**decision** 13:24
23:12,19 26:19
26:19,21,22
27:11 30:16,18
31:16 32:14
33:3 34:25
40:14,18,21
48:25 55:13
71:10

**decisions** 18:24
27:22 31:7

**deeply** 59:3

**defendant** 3:2
4:2,8,12,22 5:2
5:11,16,22
8:24 58:7

**defendants**
3:15 6:3 8:17

8:19 28:15
58:14

**defense** 22:8
58:11

**deferential**
20:20

**deferred** 36:25

**defiance** 59:19

**degree** 22:19

**delay** 57:7

**delays** 59:18,21
63:17

**demanding**
49:12,13 59:23

**demetriou** 3:17

**demonstrate**
42:15

**demonstrates**
41:16

**demonstrating**
57:15

**dennis** 5:22

**deny** 20:14,14
20:15 48:1,4

**depending**
20:12

**deposition** 9:12
9:13,18,20,22
10:12 12:18
13:6,7 16:8
23:2 28:25
46:19,23 69:9
69:11

**depositions**
10:16 12:14,22
13:15 15:15
16:18 28:22
33:8 37:18
46:4,20 50:11

**describe** 45:22

**described**
26:21 47:5

**detailed** 36:15

**determination**
55:22,24

**determine** 55:9

**determined**
26:6 38:18

**determines**
55:9

**dickens** 58:5

**dickie** 3:11

**dictate** 25:15
25:15

**diego** 2:9

**differed** 52:13

**differences**
8:13

**different** 47:9
61:17,19

**direct** 2:20
21:22 51:4
55:18

**directness** 10:7

**disagree** 17:2
17:16 65:25
66:23

**discomforting**
58:22

**disconnect**
20:24

**discover** 15:20
15:21

**discovery** 7:12
8:21 9:2,14
12:17 13:17
14:8,11,12,25
16:4,11 24:11
26:2,5 27:13
28:14 29:4,9
29:17 30:1,7
30:11,14 32:1
32:2 33:23
34:10,11 35:10
35:11 36:6,22
37:8,10,14,19
37:21 41:11
45:11 48:9,9
48:11,13 49:11
49:22 50:2,7,8
50:10,12,24
52:25 53:2
58:10 59:24
60:14 61:4,16
61:25 62:12,13
64:17,19 66:3
66:7 71:8
72:11

**discretionary**
61:19

**discuss** 71:18 73:14
**discussed** 56:13
**discussing** 7:22 9:10
**discussion** 9:25 10:11 22:1 38:25
**discussions** 8:9
**disincentivize** 11:5
**dismiss** 69:16 69:19
**dispositive** 17:3 18:13 24:12 25:5,12,18 26:7 32:9 33:24,25 34:4 34:12,15 35:4 38:10 39:9 40:9,11 41:21 41:22 42:1,7 42:11 44:9,13 44:18 49:13,17 62:14
**disproportion...** 11:12
**dispute** 11:15
**disrespectful** 20:18 26:14,16
**disruption** 39:6
**distinguishing** 59:15

**district** 1:1,2 18:2 25:11 64:6
**division** 1:3
**dmclaw.com** 3:14
**document** 1:7
**documents** 58:15 59:9 60:9,12 66:12 66:14,17,21
**doing** 11:23 16:5 35:13 43:7 45:18 47:11 58:4 60:4 63:5 68:8
**dollars** 72:9
**donald** 3:17 4:12
**doubt** 14:3 21:1
**dowd** 2:3
**dowling** 5:2 7:13 13:4 14:3 14:23 28:9 29:22 37:16 52:7 53:1 56:5 56:22 58:2,15 58:18 59:3,22 60:24 65:9 66:4 68:6,12 68:19 69:15 70:10,14

**downside** 24:4
**dozen** 15:15
**dpa** 56:23
**drafting** 54:6
**drag** 10:5
**dress** 46:14
**drive** 5:9
**dublin** 2:17
**duckett** 5:23
**due** 52:16 57:8
**duffy** 3:22

**e**

**e** 4:2 7:1,1 74:4 74:4
**earlier** 72:4
**earliest** 28:25
**early** 20:8 27:5 52:1
**easily** 69:19
**east** 3:12
**eastern** 1:3 7:6 19:16 73:13
**educated** 40:20 40:20
**efficient** 13:16 47:11,12
**efficiently** 12:10,11
**eight** 19:2
**eighth** 2:23
**either** 17:7 20:19 30:13 47:5 52:8 53:1

61:24 67:3
**elected** 69:17 69:18
**ellis** 5:3
**else's** 27:23
**emails** 45:24 46:1
**emery** 4:9
**eminent** 46:17
**eminently** 25:25 50:17
**enable** 44:17,17
**encountered** 17:25
**encourage** 70:19 71:12
**ends** 47:14
**energy** 3:2
**engage** 53:2 66:7
**engaging** 49:6
**ensure** 41:24
**enter** 18:2 43:18 44:2 47:23 48:3
**entered** 37:1
**enters** 21:7
**entertain** 23:17
**entire** 9:18 14:22 17:20,20 55:24
**entirety** 74:9
**entitled** 22:10 28:1 47:1

**[epitome - fighting]**

**epitome** 18:8
**eric** 6:4
**eric.kim** 6:6
**error** 20:22
  63:15
**especially** 9:19
**esq** 2:4,4,5,5,6
  2:6,7,7,8,16,16
  2:22,22 3:3,4,4
  3:5,5,12,20,22
  4:3,4,9,14,18
  4:23 5:3,4,9,13
  5:18,18,23 6:4
  6:8,13
**essential** 19:7
**established**
  16:7
**estimated** 8:23
**estoppel** 22:12
**et** 34:6 39:6
**eternity** 19:5
**evaluate** 35:8
**eventually** 10:8
**everybody**
  15:11 18:1
**everybody's**
  22:24
**everything's**
  19:13
**evidence** 13:20
  13:25 14:4
  22:8 47:15
  62:5

**evidentiary**
  16:12
**exact** 42:25
**exactly** 14:14
  33:5 53:8
  66:17 72:5,12
**example** 9:6
  11:18 42:9
**examples** 47:3
**exchange** 9:11
  9:12 10:1
**exclusively**
  55:3
**exercise** 46:19
  46:21
**exhibit** 72:25
**exists** 28:1
**expansion** 30:1
  37:19 48:14
  50:1
**expect** 18:11,12
  18:15
**expediting** 12:6
**expedition**
  16:13
**expeditiously**
  24:17
**experience**
  36:18
**expert** 26:3,4
  27:13,15,16,23
  30:9,17,19
  31:10 32:2,22
  33:7,7,23 34:9

34:11 35:10
  37:9,10,23,24
  38:15,17,19
  41:7 48:6,9
  49:11 50:3,12
  50:14,25 52:15
  62:13
**expert's** 31:10
**experts** 41:8,8
  55:5,5,5,5
**expires** 74:20
**explain** 11:8
  22:2 32:10
**explained** 10:8
  11:8 57:20
**explaining**
  42:21 73:9
**explanation**
  22:5 58:9
**explicitly** 11:9
**exposes** 41:3
**expressed** 72:3
**extensiveness**
  55:12
**extent** 27:9
  29:20
**extrapolation**
  8:20

**f**

**f** 2:16 3:17 4:23
  5:3 19:4 20:13
  20:19 23:10
  27:1 74:4

**f.3d** 49:2
**face** 10:9 13:3
**fact** 7:12 10:12
  11:9 14:11,12
  14:25 26:2
  28:14 29:17
  30:11,14 32:1
  32:21 33:22
  36:24 37:2,8
  37:14 41:11
  48:8,13,20
  49:10,17,22
  50:7,8,10,11,24
  62:12 64:16,19
**facts** 16:7
  61:20,20
**fair** 49:9 67:19
**fairly** 8:16
  10:24
**fall** 33:6 52:18
**farber** 49:1
**fashion** 54:16
**favret** 5:4
**february** 20:8
**federal** 12:8
  60:21 62:9
  66:8
**feel** 15:8 54:1
**feet** 10:5
**felt** 53:15
**fifth** 38:8
**fight** 58:7
**fighting** 55:3
  58:5

**[figure - go]**

**figure** 12:9
**figured** 46:2
**file** 11:20,21,22
  20:12 40:11
  45:1 54:1
  63:11 64:11
**filed** 42:1,2
  44:9,11 52:12
  63:19 70:2
  73:13
**filings** 73:2
**final** 30:15
  41:12 42:13,18
  48:24
**finalize** 50:9
**findings** 22:11
  58:13
**finds** 58:20
**finish** 50:8
**firm** 17:3 26:25
  31:5
**first** 3:2 9:25
  36:1 39:14
  44:7,8 52:8
  57:13 61:8
**firstenergy** 1:5
  6:13 7:8 8:15
  9:24 11:8,10
  12:1 17:2
  21:25 41:2
  52:12 53:17
  57:21,25 60:23
  62:6 67:9 72:2

**firstenergy's**
  8:25 56:24
**fishing** 16:13
**fite** 6:8
**fits** 54:21
**five** 11:19
  14:12 73:8
**fkaram** 2:13
**floor** 2:23 5:19
**focus** 13:2
**folks** 51:14
**follow** 32:7
  35:20 49:5
**following** 25:23
  48:22
**forced** 24:11,12
**foreclosing**
  61:23
**foregoing** 74:8
**forge** 2:4 8:4,11
  9:4 13:14
  17:16 24:21
  25:19 26:12
  27:14 29:14
  36:21 38:14,22
  39:14 43:9,13
  43:16 46:13
  48:2,5,7 49:12
  50:20 54:23,24
  56:15,21 64:22
  65:8,24 66:22
  69:14 70:4,6
  71:4,5,24 72:5
  72:22 73:4,17

**forge's** 25:1
  26:16,25 27:22
  31:5
**form** 62:1
**forth** 35:21
**forward** 27:12
  27:15 38:18
  50:23 57:22
  58:1 60:25
  61:2
**four** 10:15,20
  11:3 28:17
**fourth** 27:6
**fraction** 13:20
  13:20 14:4
**francis** 2:7
**frankly** 56:8
**fraud** 28:11
**full** 22:6 30:18
  49:20
**fundamental**
  18:20
**future** 19:20

**g**

**g** 7:1
**gains** 15:12
**gamesmanship**
  58:24 60:3
**gathered** 7:7
**geller** 2:3
**general's** 58:25
**gentlemen**
  43:14,15

**geoffrey** 3:20
**george** 3:16
**getting** 22:24
  35:9 47:13
**giuffra** 3:3 17:3
  22:1 24:19,25
  25:22 32:7,11
  34:8,22 35:6
  36:2 38:21
  39:1,13 43:8
  43:11 47:5,17
  47:20 51:3
  55:3 62:25
  67:6,25 68:2
  68:13,18 69:2
  70:9,15 72:6
  73:1,3,5
**giuffra's** 51:21
**giuffrar** 3:7
**give** 10:3,4
  33:16 40:5
  47:2 50:5
  61:15
**given** 10:13
  11:1 13:9
  28:25 40:19
  57:17
**giving** 22:21
**gjritts** 3:21
**go** 7:3 11:22
  21:23,24 26:12
  26:18 28:13
  31:14 33:8
  38:3 46:18,21

**[go - implicitly]**

48:5,15,16
53:24 60:5,25
61:2,8 62:23
68:23 70:19
71:9
**goes** 16:2 23:6
29:14 32:18
44:10,20 63:21
**going** 15:16,17
16:1 18:25
20:7,19 21:5
21:18 23:22
24:1 27:16,18
29:10 32:12
34:16 35:17
36:16 37:17
39:25 40:4
41:24 42:3,5
44:2,25 53:4
54:13 58:1
61:17,18,20
63:7 64:17
65:14,22 67:2
70:23,25 71:9
**goldman** 26:25
34:2 38:5
**good** 7:5 12:2
14:20 31:17
61:3 66:6
72:11
**gotten** 12:19
27:23
**grant** 19:4
20:19 23:16

32:19
**granted** 20:21
32:14
**grants** 23:10
32:14
**greenfield** 1:20
74:6,19
**grimes** 5:9
**grouse** 18:19
**guarantee**
19:10
**guidance** 64:20
**guilty** 28:8
**gun** 9:7
**guran** 5:13
**guys** 55:11

**h**

**h** 3:23
**half** 15:15
28:17,18
**halliburton**
38:7
**hammer** 7:20
**hand** 74:13
**handling** 59:1
**happen** 16:2
23:20 24:2
27:3 31:19
32:13 50:9
**happened** 16:1
**happening** 40:2
**happens** 61:4
**happy** 28:13

**harangue**
26:17
**hard** 14:18
66:24
**hate** 63:4
**head** 32:10
69:8 72:15
**health** 49:2
**heard** 18:18
26:15 36:1
55:3 58:6 71:8
71:12,18
**heck** 15:14 58:7
**heimann** 2:21
2:22 51:8,9
**held** 1:11 61:5
**helen** 6:8
**helms** 4:9
**help** 26:11
58:11
**helpful** 36:20
53:22 54:2
**herd** 23:22
**herding** 28:15
**hereunto** 74:12
**hey** 10:1 24:15
**hfite** 6:10
**high** 6:9 10:24
18:4
**highly** 20:20
31:12 61:1
**hilary** 3:4
**hillary** 2:6

**hold** 21:15
70:23 72:6
**holidays** 52:21
**hominem** 32:5
47:21
**honor** 67:18
**hope** 62:22
**hopes** 19:24
**hostage** 61:6
**hostetler** 4:3
**hstakem** 2:12
**hudson** 2:23
**hughes** 4:18
**hundreds**
36:14 64:18
72:9

**i**

**idea** 32:12
35:17 50:18
68:7
**idealogical**
39:22
**ignore** 51:5
**ignoring** 48:7
**iii** 3:17
**illinois** 4:10
5:10
**imbalance**
29:21 37:16
60:13
**impact** 63:25
**implicitly** 57:9

**[important - jousting]**

**important** 19:21 27:8 28:2 31:2,2

**importantly** 21:14

**impossible** 15:13

**improperly** 45:12

**inaccurately** 45:23

**inappropriate** 20:17

**incapability** 44:21

**incapable** 10:6 10:7 26:13 31:24 42:21 45:17 47:22 49:6

**incentive** 22:22

**incessant** 59:18

**include** 39:3 45:24

**included** 52:11

**including** 26:24 31:5

**increase** 10:20 12:13 29:9

**independent** 51:19

**indicated** 67:7

**individual** 30:7

**individualized** 37:22

**indulge** 59:1

**inform** 55:13

**information** 29:21 37:16 40:6,21 54:7 60:12

**insincere** 47:21

**insincerity** 41:4 49:7

**insult** 43:6,9,13

**interested** 8:18 53:21

**interrelated** 64:2

**interrogatories** 9:15 10:19 11:3,3,17,20 12:24 15:16 16:6 30:3 36:15,19,25 47:3 48:15 64:7,9

**interrogatory** 11:1,2,16 12:1 47:6 64:14

**intertwined** 54:13

**interview** 29:22

**inviting** 49:17 63:14

**involve** 72:8

**irrespective** 21:16

**israel** 4:3 52:8 52:9 53:8,20 54:9 56:8 60:4 65:5,6,21 67:14,17

**issue** 27:4 37:3 37:4 43:2 44:24 45:19 48:11 50:1,3 53:14 56:5,25 61:19 63:25 64:14,15,21 67:8,10,21 68:3,7

**issues** 9:8 27:8 28:2 32:14 37:22 41:9,10 42:11 44:15 52:4 53:5 54:11,12,19 67:9 68:14 71:2

**items** 7:9

**j**

**j** 3:3,4,12,16,16 3:16,20 5:18

**james** 3:17 5:16

**january** 52:19

**jason** 2:4 3:16

**jbarr** 4:6

**jdaniels** 2:11

**jeremy** 2:6

**jerry** 3:18

**jforge** 2:9

**job** 1:23

**john** 3:23 5:3,4 5:11

**john.favret** 5:6

**john.mccaffrey** 5:6

**johnson** 3:17

**join** 53:8,17

**joint** 56:23,25 57:24 62:5

**jointly** 51:16

**jon** 3:15

**jonathan** 4:4

**jones** 3:19 4:2 7:13 13:4 14:2 14:23 28:9 29:21 37:15 52:7,25 56:5 56:21 58:2,14 58:18 59:3,22 60:24 65:9 66:4 68:5,11 68:19 69:15 70:10,13

**jonesday.com** 3:21,24

**joseph** 2:16 5:18

**jousting** 64:1

**[jr - likely]**

**jr** 3:3,12
**judge** 1:12 5:11
  7:3 8:12 13:11
  16:19 21:7
  24:19,22 25:14
  25:23 27:24
  31:13 32:6,13
  32:18 34:3,19
  34:23 35:19
  38:2,20 43:2,6
  43:9,14,24
  44:1 46:5
  47:18,23 48:20
  51:2,8,25 52:5
  52:10 53:6,10
  54:3,10,18
  56:11,20 58:17
  59:6 60:8
  62:25 65:4,18
  67:12,15,24
  68:10,16,25
  69:4,8,22 70:7
  70:12,17 71:11
  72:4,8,21 73:7
  73:18
**judgment**
  48:22,25
**judgments**
  33:21
**juggling** 23:5
**juice** 14:10
**julia** 3:17
**july** 20:15
  23:21 74:20

**jump** 9:7 24:22
**jumped** 8:19
**june** 20:5,9,10
  20:15 28:24
**jurors** 13:22
  14:1
**jury** 55:9 63:8
  63:9

**k**

**k** 3:15
**karam** 2:7
**keep** 12:23 43:8
  63:4 69:18
  71:13
**keeps** 63:17
  65:8,11
**kevin** 2:5
**key** 4:4
**killer** 16:23
**kim** 6:4
**kind** 9:5 12:6
  14:5 15:8
**knock** 14:21
**know** 10:2 16:5
  16:23 17:5,6
  18:9,25 19:2
  19:15 20:24
  21:20 23:25
  25:13,13 26:1
  26:10,12,22
  28:16,22 29:5
  29:12,14,14,22
  29:25 30:13,18

30:23,24 34:1
34:15,16 35:3
35:7,14,14,15
36:14,18,21,23
37:15,18 38:2
38:10,12 39:2
41:21,24 42:2
42:5,12 46:14
46:15,18 48:14
49:10,25 52:24
53:12,16 55:10
55:11 57:2,3
57:16 59:25
64:23,25 66:13
67:6 70:19
71:14 72:9,14
72:15
**knowing** 45:13
**knowledge**
  15:7,11
**knows** 28:6
  39:20 50:20,21
**ko** 2:7
**koslen** 6:13
**kscariani** 2:10

**l**

**l** 3:5,17 4:3
**label** 58:23
**lack** 43:4
**laid** 37:13
**lake** 4:10
**lakeside** 3:20

**landmark**
  26:22
**law** 31:4 46:15
  48:21 53:23
  65:23
**lawyers** 23:4
**lchb.com** 2:24
  2:25
**learned** 13:18
**leaves** 70:21
**left** 15:19,21
  28:22
**legal** 72:9
**legitimate** 66:2
  66:5
**leila** 4:22
**length** 23:2
**lengthy** 11:23
**leslie** 3:18
**lesson** 13:18
**lewis** 5:23
**lexington** 6:5
**liability** 55:2,9
  55:16,17,24
  60:22 62:15,16
  62:20 63:8,21
  64:24 68:8
**lieff** 2:21
**light** 25:19
  32:20
**likelihood** 18:4
  44:1
**likely** 23:11

**[limit - meaningless]**

**limit** 10:12

**limited** 53:1

**line** 12:12 46:24

**lisowski** 3:16

**literally** 22:4 24:3 42:20 57:12 63:5

**litigate** 11:6

**litigation** 1:5 10:11 18:10 21:6 59:12,14 59:16 66:6

**little** 24:17 27:13 52:16,20 65:1 68:2 71:20

**llp** 2:3,15,21 3:3 4:9,13 5:3 5:12,17,23 6:4 6:8

**lock** 15:24

**logic** 17:18

**long** 25:7 30:3 31:22 33:1,2,3 37:10 68:17

**look** 8:23 10:9 12:8 13:3 18:18 19:6,13 19:23 24:16 29:16 33:18 35:7,8 37:3 41:24 58:2

**looked** 28:10

**looks** 16:22

**loose** 47:14 61:13 62:11,12

**loser** 32:15

**loses** 20:12

**loss** 37:25

**losses** 40:23

**lost** 13:10

**lot** 15:15 36:16 47:9 54:12

**loves** 26:12

**luis** 3:18

**m**

**m** 3:4,4,16,18 6:4,8

**m.g.** 4:9

**made** 21:17 27:17 28:7 29:16 30:19,20 31:8 41:3 45:9 46:10,12 49:8 58:13 71:23 72:17

**main** 5:4,13

**make** 8:2 12:20 12:21 14:13 21:13,15 23:12 27:25 39:23 40:21 41:6 47:14 51:17 52:2,14 63:20 71:6,9,25

72:18

**makes** 35:2 39:9,15 46:16 46:17 49:16

**making** 13:13 65:12,24

**manipulative** 9:24

**map** 16:21

**marbley** 21:7 27:24 31:13 32:14,18 38:2 43:2,10 44:1 47:23 54:18

**marbley's** 25:14 43:24 58:17 59:6

**march** 20:8

**marjorie** 3:22

**mark** 2:5

**market** 5:19,24

**massive** 37:19 48:14 63:15

**master** 1:12 7:3 8:12 13:10,11 16:19 24:22 32:6 34:3,19 34:23 35:19 38:20 43:14 44:23 46:5 47:18 48:20 51:2 52:5,10 53:6,10 54:3 54:10 56:11,20

59:8 65:4,18 67:12,15,24 68:10,16,25 69:4,22 70:7 70:12,17 71:11 72:4,21,23 73:7,18

**material** 59:2

**materials** 58:22

**matter** 21:17 34:14 51:7

**matters** 7:9,14 7:23

**mccaffrey** 5:3 52:8 53:7,11 69:5,7,23

**mccamey** 3:11

**mcconnell** 3:23

**mcdermott** 4:9

**mconover** 2:11

**mean** 8:12 17:11 18:7 22:16 24:25 33:17 34:1 35:9 36:12,25 38:8 42:23 43:4,5,6 46:13 50:18 59:11 63:2 67:17,18 71:17

**meaningful** 40:23

**meaningless** 14:14,18 31:11

**meat** 47:10
**mechanism** 42:6
**members** 22:14 40:19
**mention** 51:14
**mentioned** 35:21 54:25
**merits** 14:8 59:16
**mess** 34:22,24
**message** 24:14
**metaphysical** 25:1
**methodology** 20:25 27:18 38:16
**methods** 16:11
**miarmi** 2:22
**michael** 2:22 3:16 5:2 6:13
**mind** 15:2 17:2 27:17
**miner** 4:23
**minute** 22:18
**minutes** 67:1
**misconduct** 55:12
**misheff** 3:17
**misleading** 9:6 45:10,21 60:13
**missed** 70:21
**mistreating** 18:9

**mitchell** 3:17
**mmiarmi** 2:25
**mmmb.com** 2:18,18
**modest** 9:17 47:1
**moment** 65:13
**monday** 1:14
**money** 24:7 40:24
**month** 20:14
**months** 18:23 19:3 21:9 23:23 28:17,18 29:4
**moore** 69:12
**morgan** 5:23
**morganlewis....** 5:25
**morning** 7:5
**morris** 6:8
**motion** 11:21 17:4 25:5,18 26:8 32:9 33:25 34:4 38:10 39:9 41:21 42:7,11 44:13 49:13
**motions** 18:13 24:13 25:12 33:25 34:12,15 35:4 40:9,11 41:23 42:1 44:18 49:17

62:14
**moul** 2:15
**movant** 63:18
**move** 17:22,24 24:6,8 50:22 57:12,22 58:1
**moved** 38:17
**moving** 72:14
**mpduffy** 3:24
**murphy** 2:15 2:16,18
**murray** 2:15,16 2:18
**mwe.com** 4:11

**n**

**n** 3:17 7:1
**nail** 17:13
**named** 48:25 49:19
**near** 10:10 28:8
**necessarily** 34:25
**necessary** 53:15 65:20
**need** 7:15 8:1 16:4,7,8 24:15 33:12,20 36:24 37:11 50:8 54:1,7,11,19 57:10 58:1 65:16 68:17 71:2,21

**needed** 73:15
**needs** 12:4 50:16 60:25 61:2
**negative** 56:10
**nesva** 3:5
**nesvas** 3:9
**never** 17:19,25 57:6 62:8 67:22
**new** 2:24,24 3:6 3:6 4:24,24 6:5 6:5 21:2 27:12 27:15,23 29:3 33:7 38:17 56:12
**newton** 3:5
**newtonb** 3:8
**nobody's** 40:22
**non** 52:14
**normal** 63:11
**notary** 74:6,20
**note** 69:13
**notes** 8:24 74:11
**notice** 29:1 33:13 34:6 39:1,3,8 41:23 44:10 48:24 49:18
**noticed** 28:23
**notion** 55:2
**number** 7:9 8:13 10:3,4,15

[number - pages]

10:24 11:4
12:13,22,24
17:18 22:21,24
39:17 40:3
41:19 42:13
44:14 46:20
57:3,4,5 60:25
**numbers** 36:12
46:24
**numerous**
67:21
**nw** 4:14

**o**

**o** 7:1 49:2
**o'connor** 4:18
**o'neil** 3:17
**oath** 13:24 14:2
**object** 11:11
52:24
**objected** 12:2
**objection** 37:7
37:9
**objectionable**
11:12
**objective** 18:11
18:14
**obligated** 58:19
**obtain** 57:24
**obtaining**
59:21
**obviously**
10:12 27:24
46:14 55:7

64:16 68:21
**occur** 28:24
44:6
**occurring**
19:20
**occurs** 22:18
**october** 8:15
17:8 29:18
**odd** 58:24
**offensive** 22:12
**offered** 27:11
**office** 13:22
74:13
**office's** 58:25
**oftentimes**
50:10
**oh** 28:8 45:25
**ohio** 1:2 2:17
3:13,21,24 4:5
4:20 5:5,14
6:10 58:25
74:7,13,20
**okay** 10:17
11:20 13:14
32:15 33:10
39:18 41:6
56:20 58:13
59:15 65:21
66:7,18 70:15
72:21 73:7
**old** 38:19
**omnibus** 7:25
**once** 19:5 21:7
51:16

**one's** 39:18
49:5
**ones** 45:5
**onus** 63:18
**opening** 40:12
44:9,11 45:8
**opinion** 31:11
**opinions** 41:8
**opportunity**
27:12 33:16
34:6 53:13
65:17 67:4
**oppose** 53:17
**opposed** 32:23
**opposition**
39:22
**oppositions**
40:12,17
**opt** 21:23 33:16
34:6,16 39:23
40:1,5,7 44:12
51:15 55:22
62:17 64:24
**opting** 39:19
40:22,23
**option** 44:12
**options** 69:14
**orally** 65:12
**order** 7:25 18:3
19:1 20:2,23
21:3,4,7 22:25
25:11 36:10
38:23 43:2,18
44:2 45:5

47:24 48:3
54:17 58:17
59:6,10 66:11
70:24 71:1
**orderly** 29:13
65:2 66:24
**orders** 59:19
**orrick** 4:13
**orrick.com**
4:16
**outcomes** 31:18
**outlined** 53:9
**outright** 59:19
**outs** 14:13,17
35:10 40:1,5
49:24 50:25
51:1 55:22
62:17
**outside** 15:22
**overarching**
12:7
**own** 36:18
42:16 65:1
66:1 73:2

**p**

**p** 3:22 4:18
5:13 7:1
**p.c.** 3:11
**p.m.** 73:21
**pacific** 19:16
**page** 26:20
**pages** 49:2 73:9

**[pamela - potentially]** Page 17

pamela 1:20 74:6,19
paper 46:8 54:1 63:12
papers 19:6 25:17 45:13,23 46:7 57:11,16 63:19 72:2
pappas 3:18
part 16:20 34:20
partial 65:9 67:3
participate 59:24
particular 51:20
particularly 13:16
parties 7:10,16 8:9 9:7 11:5 18:22 53:3 66:5 70:18 71:12
party 64:8
passed 39:18
path 47:12,12 57:17 58:3
paul 3:12,16 4:9
pburton 4:16
pearson 5:16
pease 5:12

peel 21:19
pending 41:10
pennsylvania 5:19,24
people 22:21 24:11,12 33:16 35:1 39:21 40:6 51:18
pepich 2:8
perfectly 56:1
period 34:10,16 40:1 44:12 57:3
permitted 9:1
perspective 9:23 10:23 55:8
pessimistic 20:9
peter 2:7
petition 19:4 20:13,19 23:11 23:17
petitions 27:2
phelms 4:11
philadelphia 5:19,24
pianalto 3:18
pick 71:2
piece 25:3 63:12
pivoting 42:18
pko 2:12

place 16:25 52:13
plaintiff 28:5 49:19
plaintiffs 2:2 2:20 8:5,14 9:11 11:18 13:3 21:23 22:14 26:10 27:10 29:3,24 31:8,14 32:19 33:6,21 35:16 36:3 49:1 51:4 53:18,22 55:7 55:19 64:25 73:17
plan 8:25 62:23 71:20
play 45:10
playing 45:17
plea 28:8
please 24:16 43:15 47:19
plus 26:20
point 33:24 42:15 44:20 51:17 57:16 59:13 63:21,22
points 71:22
polite 58:23
political 39:24
polk 6:4
poorly 70:21

porter 4:23 6:8
porterwright.... 6:10
posed 12:1
poses 16:25
posing 16:6 47:4
positing 8:25
position 14:8 29:8 31:6 33:20 35:22 36:4 37:7,14 39:12 45:1,5 46:7,11 48:12 50:17 52:11,12 66:1 71:6 72:1 72:3,17,25 73:8
positions 72:14
possibilities 21:12
possibility 61:25
possible 13:9 32:11 34:17 67:8
possibly 23:1
post 21:4 30:6 30:6 50:7
postpone 62:10
potential 7:12 40:4 52:2
potentially 8:22 57:18

72:10
**power** 15:22
**precise** 68:3
**predict** 33:1,2
  33:3
**predicting**
  31:18
**prediction**
  51:21
**prefer** 38:24
**prejudice**
  61:22 62:2
**prepare** 68:17
**prepared** 33:22
  48:2
**preposterous**
  35:18 42:24
  43:1,17,18,20
  43:21,22 44:4
**present** 6:12
  53:23 66:1
**presentation**
  55:20
**preserve** 55:15
**preston** 4:14
**presumably**
  51:14
**pretty** 9:17
  31:17 35:12
**previously**
  56:12
**price** 63:25
**primarily** 7:10

**prior** 60:7
**prob** 34:21
**probably** 18:8
  28:24 70:24
**problem** 17:1
  63:2
**problems** 18:20
**procedure** 12:8
  59:20
**proceed** 9:20
**proceeding**
  46:23
**proceedings**
  41:14 54:14,16
  62:10 73:21
  74:9
**process** 29:13
  31:1 33:9,14
  48:24 53:3
  64:10 68:9
**produce** 58:19
  60:11
**producing** 60:8
**production**
  58:16 66:11
**professional**
  31:22
**promised** 60:5
**proper** 48:6
**proportion**
  10:18 12:13,19
  16:16,17 46:3
**proportional**
  10:20

**proportionate**
  12:3
**proposal** 9:10
  29:16,17 30:20
  30:20 35:13
  36:5 41:3,5,6
  42:16 49:8,9
  53:18 62:24
**proposals** 7:11
  7:20 8:10 32:4
  35:8 72:16
**propose** 28:16
  33:22 63:10
  64:22,25
**proposed** 8:5
  8:14,15 17:6
  25:24 26:1,2,3
  26:4 28:14
  29:5 30:10
  32:1,2 35:7
  36:12 38:16
  39:2 48:8,12
**proposing** 38:9
  46:17 63:3
  73:10
**prosecution**
  37:1
**protocol** 12:18
  29:1 46:20
**proved** 13:15
**provide** 31:8
**provision** 39:3
**pschumacher**
  3:14

**pslra** 68:15
**public** 4:5 74:6
  74:20
**purposes** 16:12
**pursuing** 9:3,5
  47:11
**pushed** 52:15
**put** 9:23 10:22
  11:4 14:17
  21:10,11 27:12
  27:15 29:10
  33:6 36:4
  38:17 45:6,13
  47:9 55:19
  58:22 68:21
  72:2,22,23
  73:4,5
**putting** 25:10
  29:7 33:24
  44:5 63:17
**puzzle** 54:21

**q**

**quadrupled**
  12:22,23
**quantify** 15:13
**question** 11:25
  35:20 44:8,19
  44:20 57:4
  69:1
**questions** 7:19
  8:6 9:21,22
  24:20,24 32:7
  38:22 46:24

56:8,18
**quick** 13:13
  32:7
**quicker** 67:16
**quickly** 68:22
**quite** 27:1

**r**

**r** 7:1 74:4
**rachael** 4:3
**rachel** 2:4
**raise** 22:7,9
**raised** 45:4
  53:5 67:19,21
**raises** 67:9
  68:14
**raising** 9:8 65:8
**random** 39:20
**rate** 10:1
**rather** 55:8
  65:2 69:19
**rcocalis** 2:10
**rdr** 1:20 74:19
**reached** 36:3
**read** 46:1 70:20
**reading** 70:21
**ready** 24:13
  47:13 69:8
**real** 32:22
  51:11 65:7
**realistic** 14:19
  19:22 58:3
**realistically**
  34:13

**reality** 10:9
  13:3
**realize** 14:6
**really** 11:14
  12:5 15:12,19
  17:13 28:12
  31:21 36:15
  49:21 56:2
  62:22 67:22
**reason** 13:2
  18:11,14 20:16
  36:9 48:10
  56:2 62:10
  64:13
**reasonable**
  10:17 14:3
  19:22 25:25
  28:20 30:24
  36:11 38:9
  50:6,17 68:20
**reasonably**
  19:22 35:12
**reasons** 10:23
  22:25 39:16
**rebuttal** 30:21
**received** 7:17
**recommendat...**
  54:7
**recommendat...**
  8:1
**recommended**
  54:17
**reconcile** 17:1

**record** 7:4
  27:25 31:17
  32:20 48:1
  59:23 60:14
  73:19
**recordings**
  58:16
**recur** 21:2
**reference** 48:10
  64:13,14
**reffner** 4:8
**refusing** 13:24
**regard** 54:11
**regarding** 7:11
  10:1 45:10
  61:16 65:8
**regardless** 25:5
**rein** 3:4
**reind** 3:7
**related** 52:15
**relates** 1:7 64:3
**relatively** 68:21
**relevant** 12:3
  63:22
**reliance** 30:8
  37:22
**rely** 38:19
**remand** 21:4
**remarks** 45:8
**remember** 40:8
**remote** 2:1 3:1
  4:1 5:1 6:1
**remotely** 1:17

**render** 14:17
**reopening**
  37:18
**replies** 40:13
  40:16,17 73:12
**reply** 11:22
  30:21 42:2
  70:4,22
**report** 8:1
  27:16 31:9,10
  32:22 33:7
  37:9 38:17,19
  48:6 51:1 54:6
  54:17
**reporter** 1:20
**reports** 26:3
  27:13 30:9,12
  30:17,19,21,21
  33:23 37:23,24
  41:7 49:11
  50:3,9,12,15
  52:15
**repose** 39:17
**representations**
  66:10
**reps** 21:20
**request** 8:21
  9:15 11:12,16
  12:12 29:9
  65:22 67:25
**requested**
  53:13 66:15
  69:25 70:18

**[requesting - screwed]**

**requesting** 16:16

**requests** 9:2,14 12:24 29:4 45:11 47:6,7

**require** 48:5 66:9

**requirement** 22:22

**requiring** 29:1 66:5,11

**research** 54:6

**reserve** 30:5 37:20

**resolution** 42:18

**resolve** 61:12

**resolved** 37:17 41:9 44:16 62:19

**resources** 24:8

**respect** 27:4 48:11

**respectful** 43:25

**respects** 25:24

**respond** 24:20 30:4 36:16 63:1 67:20

**responding** 72:10

**response** 11:21 47:17 73:6

**responses** 73:12

**rest** 27:16 48:2

**resting** 27:14

**result** 39:5

**retain** 11:11

**review** 32:16 47:25

**reviewed** 7:18

**reyes** 3:18

**rfas** 10:20 16:6 64:8,9,15

**rgrdlaw.com** 2:9,10,10,11,11 2:12,12,13,13

**rheimann** 2:24

**richard** 2:22 51:9

**ridiculous** 60:3

**right** 8:6 17:14 25:23 30:6 44:20 51:19 56:25 65:15 73:18

**rights** 37:20

**risk** 61:21,22 62:2,17

**risrael** 4:6

**ritts** 3:20

**rivalling** 22:20

**road** 2:17 32:18

**robbins** 2:3

**robert** 3:3 4:8

**role** 25:13

**roll** 70:25

**rubber** 31:13

**rudman** 2:3

**rule** 12:7 18:9 59:11

**rules** 10:16 12:8 22:8 47:2 49:5 59:20 66:8

**ruling** 33:19 38:1

**rulings** 31:18 50:15

**s**

**s** 1:20 2:5 5:13 7:1 74:6,19

**sachs** 34:2 38:5

**san** 2:9

**sanctioned** 60:1

**sanctions** 59:5 59:10

**sandra** 3:18

**santen** 4:18

**santenhughes...** 4:20

**sater** 5:12

**satisfied** 29:13

**satisfy** 55:18

**saying** 20:5 25:20 26:13

43:1,3,4,11,17 48:3 50:13 63:4

**says** 32:23

**scenario** 24:5 43:21 61:1

**scenarios** 44:17

**schedule** 7:11 7:21 8:3,5 11:16 13:6 23:1 25:14 35:9 37:6 39:2 39:6 41:16 51:10 54:12,15 57:12 67:11 69:2,24 70:24

**scheduled** 52:18 69:12

**schedules** 22:25 23:5

**scheduling** 7:22 33:2 45:4

**schneider** 4:12

**schumacher** 3:12

**sciarani** 2:5

**scope** 7:12 30:18

**scrawlings** 16:22

**screamed** 20:23

**screw** 41:14,15

**screwed** 41:2

**[seal - special]**                                                      Page 21

| | | | |
|---|---|---|---|
| **seal**  74:13 | **served**  29:3 | 61:3 66:6 | 32:21,25 38:1 |
| **sealing**  58:21 | **serves**  30:2 | **showing**  46:19 | 39:4 43:19 |
| **second**  35:20 | **set**  14:18 16:17 | 46:21 | 44:2 47:24 |
| 38:6 44:12,19 | 16:18 17:19,21 | **side**  28:21 | 48:21 49:3 |
| 44:20 61:9 | 18:6 23:7,7,9 | 29:17 73:10 | 51:23 |
| **section**  46:7 | 23:14,23 24:5 | **side's**  20:19 | **size**  10:13 |
| **securities**  1:5 | 25:17 35:18 | **sides**  15:7,8,9 | **skeptical**  18:1 |
| 28:3,11 31:3 | 42:16,17,20,25 | **signature**  74:19 | 43:23 |
| 63:6 | 44:4,8,13,17 | **significant** | **slightly**  10:15 |
| **see**  7:20 16:24 | 49:12,13,22 | 39:19 40:1,5 | **smart**  3:16 |
| 25:4 47:10 | 50:19 51:25 | 55:1 | **solicit**  54:8 |
| 54:21 56:15,16 | 74:12 | **silly**  71:14 | **soon**  67:12 |
| 70:20 72:7 | **setting**  17:3 | **similarly**  22:13 | **sorry**  40:17 |
| **seek**  32:15 | 21:11 24:3,4 | **simple**  60:16 | **sort**  20:2,24 |
| 51:19 57:7 | 25:4,9 32:8 | **simplified** | 39:21,24 57:7 |
| **seems**  17:5 | 37:8,9 38:10 | 38:14 | 64:23 |
| 71:14 72:13 | **seventh**  22:2 | **simply**  12:12 | **south**  6:9 |
| **seen**  34:17,19 | 27:7 68:15 | 13:23 | **southern**  1:2 |
| **send**  36:14 | **several**  11:24 | **single**  13:6,7 | **spahr**  5:17 |
| **sense**  12:20,21 | 57:25 | 17:23 23:2 | **special**  1:12 7:3 |
| 21:13 27:25 | **severance** | **sir**  47:17 | 8:12 13:10,11 |
| 35:2 39:10,15 | 29:19 37:15 | **sit**  54:19 | 16:19 24:22 |
| 46:17 49:16 | 49:25 | **sitting**  72:15 | 32:6 34:3,19 |
| 72:18 | **severe**  57:10 | **situated**  22:13 | 34:23 35:19 |
| **sent**  24:13 | **severed**  57:3 | **situation**  14:6 | 38:20 43:14 |
| **separate**  29:8 | **seymour**  5:12 | 18:1 52:25 | 44:23 46:5 |
| 36:4 37:3 63:8 | **sgrimes**  5:10 | **six**  13:5,5,7 | 47:18 48:20 |
| 65:1 | **shake**  32:9 | 14:24 21:8 | 51:2 52:5,9 |
| **september**  17:8 | **shape**  62:1 | 28:18 | 53:6,10 54:3 |
| 17:9 18:16 | **shawn**  1:12 | **sixth**  19:2 | 54:10 56:11,20 |
| 21:24 23:19 | **sheeva**  3:5 | 20:13,18 21:8 | 59:8 65:4,18 |
| 30:10 | **shot**  61:10 | 21:16 23:10 | 67:12,15,24 |
| **serial**  16:23 | **show**  14:20 | 24:14 25:6 | 68:10,16,25 |
| | 16:24 46:25 | 26:18,19 31:14 | 69:4,22 70:7 |

**[special - tangents]** Page 22

70:12,17 71:11 72:4,21,23 73:7,18

**specific** 11:11 16:14

**spent** 31:4

**spepich** 2:13

**spinning** 72:16

**square** 4:5

**squawk** 21:25

**squeeze** 14:10

**stakem** 2:6

**stamp** 31:13

**stand** 30:5 31:10

**standard** 7:6 20:20

**start** 8:4 10:10 24:25

**started** 9:10 68:24

**state** 45:10 54:14 58:21 60:20 61:8 62:9 74:7,20

**statement** 29:8 35:22 36:5 37:2,14 39:12 39:24 45:5 46:11 48:12 52:12 72:25

**statements** 45:1 63:23 64:3 71:7 73:8

**states** 1:1

**status** 1:11 7:7 19:14,17

**statute** 39:17

**stay** 7:12 39:6 53:14,19 58:5 58:7 65:9 66:3 67:3 68:11

**stenotype** 74:11

**stenotypy** 74:10

**steven** 2:8 3:15 3:16 5:9

**stick** 37:4

**stipulate** 56:22 57:6

**stop** 43:12 49:20

**strah** 3:15

**straight** 45:18

**strategic** 27:22 31:7 33:21

**strawn** 5:8

**streamlines** 15:6

**street** 2:23 3:6 4:10,14,19,24 5:13,19,24 6:9

**struck** 8:14

**stuff** 48:17

**stunning** 20:6

**subject** 58:16

**submission** 8:18

**submissions** 7:17

**submit** 35:22 48:6 59:4

**submitted** 51:10 66:13

**subpoena** 15:22

**substantive** 46:6,9,16

**substantively** 47:8 61:17,18

**succeeded** 59:21

**successful** 39:5

**sue** 3:18 69:17

**sufficiently** 41:20

**suggesting** 11:9 62:1

**suite** 3:13,23 4:4,10,19 5:5 5:14 6:9

**sullcrom.com** 3:7,7,8,8,9

**sullivan** 3:3

**summaries** 29:23

**summary** 48:22 48:24

**summer** 20:3

**summit** 60:6

**superior** 3:12

**supreme** 27:2

**sure** 12:18 47:14 51:17 52:2,14 70:6 71:6,25

**surrounding** 58:21

**system** 9:11 18:20

**t**

**t** 3:16,17 74:4,4

**tactic** 45:21 50:20

**take** 7:15 21:8 21:20 23:3 28:1 30:3 33:1 33:3,4 38:23 43:19 44:3 45:2 54:11 62:15

**taken** 1:17 14:9

**takes** 24:7 25:7

**talk** 25:16 26:1 26:18

**talking** 16:10 28:15 36:13 39:13 46:2,3 63:17 66:25 71:13

**tangents** 29:15

**[targeted - trials]**

**targeted** 16:14 47:3,5,6
**taylor** 3:15
**tea** 70:21
**technically** 22:17
**tell** 25:20 35:25 44:25 56:17,18
**ten** 15:16 29:3
**terms** 22:5 32:8 41:6 61:9
**testimony** 15:24
**thank** 32:6 38:20 51:2 52:6,9 53:6,10 54:9 65:6 69:22 70:16
**theme** 12:7
**theoretical** 34:14
**thing** 10:19 13:12 15:1 16:5,25 19:9 23:16 26:15 33:18 43:1 49:23 50:3 51:13 52:23 54:24 59:25 64:4
**things** 9:7 12:6 12:9,10 15:6 19:10,12,24 22:23 26:13

30:7 46:15 49:16 50:9 60:20,23 66:22 68:21
**think** 13:9 15:25 16:3 17:7 18:7,19 20:16 25:8,22 28:12 31:19 32:3,25 33:13 34:13,20 35:7 35:12,13,17 36:1,8,23 37:3 37:11 38:8,9 43:2 46:7 47:8 49:21 50:21 52:19 54:16,25 56:6,8,19 59:5 65:20 71:11,17 71:21 72:7
**third** 57:15
**thomas** 3:17
**thornton** 3:18
**thought** 20:6 25:25 26:5 29:7 37:5 49:8 50:6 64:10
**thoughts** 25:20 39:11 51:6,10 65:5
**thousands** 72:9
**three** 27:1 38:6 38:7 44:16

**thrown** 65:3
**throws** 63:13
**thursday** 45:2 71:3,19 73:14
**tie** 47:14
**tied** 22:3 51:22 51:23
**time** 7:7 8:16 12:17 15:5 19:3 22:23 23:2 24:17 25:12 28:1 30:3 31:22 34:11 40:19 41:25 45:17 52:20 54:4,19 58:6 60:6 64:19 69:11 72:10 73:13
**times** 10:15,21 38:7,7 67:22
**timing** 19:24 26:17 41:22
**titanic** 24:1
**today** 7:10,15 12:7 19:15 28:23 32:14 37:5 44:24 45:7 46:12 53:5 54:20 67:14 70:1 71:3 72:15
**together** 54:22 68:21

**tomorrow** 7:23 54:20
**tongue** 22:3 26:11
**took** 13:5 19:2 61:10
**tower** 4:4
**track** 31:17 59:23 68:19
**trade** 9:18
**transcript** 70:20 74:11
**tremendous** 24:2
**trial** 13:4,19 16:2,9 17:4,9 17:10 18:16 21:15,18,20,23 21:24 22:7 23:14,23 25:9 26:8 30:6,7 33:12,15 35:18 37:21 42:8,25 43:22 44:4 47:13 49:12 50:19 51:19,25 52:1,17,21 55:2,14,16,21 56:23,25 59:16 60:20,21,21,22 62:5,6,15 63:7 65:1,10
**trials** 15:6,12 15:18 36:22

57:8,14
**tried** 14:24
22:2 24:15
51:16 61:7
**troubles** 25:3
**troubling** 25:9
**true** 31:25 73:3
74:10
**truly** 16:4
**try** 14:22 19:7
19:11 23:3
30:24 54:20
57:21
**trying** 16:21
26:9 27:24
28:19,20 31:20
33:17 35:16
47:16 57:12
60:11 69:20
**tucker** 5:3
**tuckerellis.com**
5:6,6
**tuesday** 69:9
**turner** 3:18
**turning** 23:25
**turns** 51:21
**tv** 16:24
**two** 8:6 11:2
13:22 14:1
15:9,17,18
22:24 23:23
29:4 32:4,7
35:8 38:22
39:11,15 40:3

56:7 57:5 69:9
**type** 14:6
**typo** 26:20
**typographical**
20:22

**u**

**u.s.** 27:2
**unanswered**
53:24
**unbelievable**
20:4
**uncertainties**
25:17 26:7
**uncertainty**
22:20 41:17
42:23
**unclear** 68:3
**uncollectible**
57:24
**under** 17:18
47:2 68:14
72:7
**undersigned**
58:20
**understand**
51:18 71:17
**understanding**
13:23 36:2
39:4
**understood**
65:13 70:15
**underwriter**
6:3

**undisclosed**
59:2
**united** 1:1
**unwilling** 49:9
**upcoming**
57:14
**update** 13:13
**updated** 31:9
**upside** 24:2
**urged** 32:19
33:5
**use** 27:18 42:6
45:22 58:10
60:14
**using** 16:11,12
62:9

**v**

**valid** 18:3,5
43:2
**various** 7:10,19
8:1 58:14,15
72:16
**verdict** 57:25
**versus** 25:14
49:1
**vespoli** 4:22
**video** 13:11
**videoconfere...**
1:17
**view** 21:12
32:17 44:1
48:4

**vine** 4:19
**violate** 45:20
66:11
**violated** 13:23
14:2
**violating** 59:6
66:15
**vorys** 5:12
**vorys.com** 5:15

**w**

**w** 5:9
**wacker** 5:9
**wait** 18:23
33:20 41:1
71:3
**waiving** 51:18
**wall** 16:22
**want** 7:19 9:19
10:18,23,25
11:19 14:20
21:25 24:16
32:3 36:11
39:11 40:10
49:24 50:4,4
50:22 51:5,13
51:17 52:1
53:23 57:2
58:10 59:22
60:12,13 61:14
63:13 64:6,7
64:21,25 68:6
68:9,13,20,23
71:5,6,25

**[wanted - zoom]**

**wanted**  9:22
 11:4,7 32:21
 32:22 52:14
**wants**  63:11
 64:8,22 72:12
**wardwell**  6:4
**washington**
 4:15
**way**  9:20 12:5
 13:9,16 17:13
 35:15 45:21
 46:23 50:23
 62:1 63:11
 65:2 66:24
**ways**  12:9,10
**wayside**  23:6
**we've**  11:23
 14:8 15:23
 19:17 21:17
 31:25 32:1
 40:12,13 48:8
 49:5 51:9
 61:13
**wednesday**
 29:10 35:23
 36:6 39:12
 45:1,15 64:11
 69:10
**wednesday's**
 46:10
**week**  7:17,24
 67:14,18,20,20
 69:6

**weekend**  7:18
**weeks**  13:5,5,7
 14:24 18:23
**went**  13:12
 27:2 38:6 61:9
**west**  2:8 4:10
 4:24
**whatsoever**
 24:4 61:22
**whereof**  74:12
**whichever**
 38:23
**whiteboard**
 16:21
**williams**  3:4
**williamsh**  3:8
**willing**  56:22
 57:6
**willingness**
 58:25
**wind**  10:25
 24:8 57:23
 60:18
**winston**  5:8
**winston.com**
 5:10
**withhold**  66:16
 66:20
**witness**  74:12
**witnesses**  15:21
 16:9 23:4
**won**  59:14,17
 59:17

**work**  26:9
 35:15,16 36:16
 48:18 54:20
 71:19
**worst**  24:5
**worth**  14:9,10
 15:14
**wound**  10:14
**wrap**  14:25
 24:11
**wreaks**  58:23
**wright**  6:8
**wrinkles**  8:17
**write**  48:17
**writing**  45:15
 51:11 65:12
 67:23 72:12,19
 72:20,22,23,24
 73:4
**written**  8:10,21
 9:2,14,21
 12:17 16:11
 29:9 30:1 36:5
 37:19 45:11
 46:11,22,23
 48:11 50:1
 61:16 71:7
 72:10
**wrong**  19:24
 20:1 25:21
 31:16 66:12
**wrote**  26:20
 74:9

**x**

**x**  42:12 49:2

**y**

**yeah**  8:24
 34:23,23
**year**  15:3,3
 17:7,8,9 18:13
 18:17 52:22
 58:12,13 59:7
 59:8 60:2
 66:14,20
**years**  11:24
 18:24
**york**  2:24,24
 3:6,6 4:24,24
 6:5,5

**z**

**zoom**  1:17 28:5