# APPENDIX

#1

2024 WL 620721

2024 WL 620721
Only the Westlaw citation is currently available.
United States District Court, D. Nebraska.

Ezequiel Olivares ABARCA, et al., individually and on behalf of all those similarly situated,

and

William Smith, on behalf of himself and all others similarly situated, and on behalf of the general public,

and

Brian Vester and Joel Morales, individually and on behalf of all others similarly situated,

and

Daniel Bryant, individually and on behalf of all others similarly situated, Plaintiffs,

v.

WERNER ENTERPRISES, INC., et al., Defendants.

8:14CV319, 8:15CV287, 8:17CV145, 8:20CV227
|
Signed February 14, 2024

**Attorneys and Law Firms**

David A. Borgen, Pro Hac Vice, James Kan, Pro Hac Vice, Laura L. Ho, Pro Hac Vice, Raymond A. Wendell, Pro Hac Vice, Andrew P. Lee, Pro Hac Vice, Mengfei Sun, Pro Hac Vice, Goldstein, Borgen Law Firm, Oakland, CA, Justin L. Swidler, Richard S. Swartz, Swartz, Swidler Law Firm, Cherry Hill, NJ, for Plaintiffs Ezequiel Olivares Abarca, Alfredo Alesna, Jr., David Cagle, Stephen L. Davis, Frank Eads, Kenneth J. Surman in 8:14CV319.

David A. Borgen, Raymond A. Wendell, Goldstein, Borgen Law Firm, Oakland, CA, David T. Mara, Jamie K. Serb, Pro Hac Vice, Mara Law Firm, San Diego, CA, Justin L. Swidler, Swartz, Swidler Law Firm, Cherry Hill, NJ, for Plaintiff William Smith in 8:15CV287.

Elizabeth A. Culhane, Kathryn A. Dittrick, Sarah L. McGill, Paul M. Shotkoski, Fraser, Stryker Law Firm, Omaha, NE,

Patrick S. Cooper, Inserra, Kelley Law Firm, Omaha, NE, for Defendants Werner Enterprises, Inc., Drivers Management, LLC in 8:14CV319, 8:15CV287.

Grace E. Parasmo, Pro Hac Vice, Yitzchak H. Lieberman, Pro Hac Vice, Parasmo, Lieberman Law Firm, Los Angeles, CA, for Plaintiffs in 8:17CV145.

Elizabeth A. Culhane, Sarah L. McGill, Paul M. Shotkoski, Fraser, Stryker Law Firm, Omaha, NE, Patrick S. Cooper, Inserra, Kelley Law Firm, Omaha, NE, for Defendants Werner Enterprises, Inc., Drivers Management, LLC in 8:17CV145, 8:20CV227.

Gregory E. Mauro, Pro Hac Vice, James R. Hawkins, Pro Hac Vice, Michael J.S. Calvo, Pro Hac Vice, James Hawkins APLC, Irvine, CA, for Plaintiffs in 8:20CV227.

**ORDER**

Michael D. Nelson, United States Magistrate Judge

**\*1** This matter is before the Court following a discovery dispute conference held by telephone before the undersigned magistrate judge on February 5, 2024. The parties presented two issues to the Court. First, the parties dispute whether Plaintiffs have exceeded the number of permissible interrogatories including subparts served upon Defendants in the merits phase of this litigation. Second, the parties requested the Court resolve Defendants' twenty outstanding objections to Plaintiffs' Rule 30(b)(6) deposition topics for Werner's deposition scheduled for February 22 and 23, 2024. The Court anticipated ruling on the disputes by Order following the conference. On February 13, 2024, counsel for Defendants requested leave to file a motion for protective order regarding their objections to the Rule 30(b)(6) deposition topics, and to continue the deposition until the objections are resolved because there is inadequate time to prepare their Rule 30(b)(6) witnesses with their objections outstanding. Because the Rule 30(b)(6) deposition issue requires further proceedings in light of Defendants' February 13 email, at this time, the Court will only address the parties' dispute over interrogatories.

Rule 33(a)(1) of the Federal Rule of Civil Procedures provides, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to

Abarca v. Werner Enterprises, Inc., Not Reported in Fed. Supp. (2024)
2024 WL 620721

the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 33(a)(1).

Defendants assert the six *Abarca* plaintiffs have served 130 separate interrogatories including subparts during the merits phase of discovery. Defendants recognize Rule 33(a)(1) provides that each "party" may serve 25 interrogatories, but contend the plaintiffs are nominally separate and should be treated as a single party because they represent a certified class, are represented by the same counsel, claim to be similarly situated, and are pursuing identical claims. During the telephone conference on this issue, defense counsel represented that they answered Plaintiffs' first set of interrogatories containing 26 numbered interrogatories served sometime in 2020, although Defendants calculate they actually answered 32 interrogatories including discrete subparts. Defendants have not answered the 50 additional numbered interrogatories served upon them, and ask the Court to deny Plaintiffs' request to compel Defendants to answer more than 25 interrogatories.

Plaintiffs contend the plain language of Rule 33(a)(1) provides that each party plaintiff is allowed 25 interrogatories, and the plaintiffs have not exceeded that number because they have only served a total of 76 numbered interrogatories, and dispute Defendants' tabulation of discrete subparts. In Plaintiffs' letter, they contend Defendants themselves treated each plaintiff as a separate party for their own interrogatories, serving each plaintiff with fifteen interrogatories for a total of 90 interrogatories.[1] Plaintiffs further argue that a 25 interrogatory limit is inappropriate in this case given the complexity of this litigation involving a certified class of nearly 100,000 members.

[1] During the telephone conference, Defendants clarified they served 9 identical interrogatories in the merits phase and 6 identical interrogatories during the class certification phase to all plaintiffs.

**\*2** After review, the Court is persuaded that, although Rule 33(a)(1) plainly provides that each "party" may serve 25 interrogatories, when separate parties are represented by the same counsel, act in unison to pursue the same claims under the same legal theories, respond or propound demands as a unit in discovery or otherwise consistently act in a manner demonstrating they are "aligned," they may be considered as one "party" for Rule 33(a) purposes

despite being "nominally separate." See *Gonzalez v. United States*, No. 222CV3370OEMJMW, 2023 WL 7102162, at \*5 (E.D.N.Y. Oct. 27, 2023) (discussing development of the "common interest doctrine" under Rule 33(a)(1)); *Stiles v. Walmart*, No. 2:14-CV-2234-MCE-DMC, 2020 WL 264420, at \*4 (E.D. Cal. Jan. 17, 2020) (citing *Gucci Am., Inc. v. Exclusive Imports Int'l*, No. 99-cv-11490 (RCC) (FM), 2002 WL 1870293, at \*16-17(S.D.N.Y. Aug. 13, 2002)) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories.").

Here, the Court is persuaded that Plaintiffs are so aligned such that they should be considered as one party under Rule 33(a)(1). They are represented by the same attorneys, are pursuing identical claims under identical legal theories on a classwide basis, claim to be similarly situated, and have otherwise acted in unison throughout this litigation. Permitting each plaintiff to serve Defendants with 25 interrogatories would result in duplicative and "abusive" discovery obligations upon Defendants. See *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) ("In this case, even if the interrogatories do not exceed the number permitted by rule, they are abusive."). However, the Court also agrees with Plaintiffs that a 25 interrogatory limit is inappropriate in this case, given the size and complexity of this litigation. Under the circumstances, the Court will permit Plaintiffs to withdraw their previously served and unanswered interrogatories and give them leave to re-serve Defendants with an additional total of 50 interrogatories, including discrete subparts. See NECivR. 33.1(c) (In determining the number of interrogatories, including subquestions, each inquiry seeking a discrete item of information is counted as one interrogatory. For example, the following question is counted as 3 interrogatories: "Please state the name, address, and telephone number of any witness to the accident set forth in the complaint.").

**IT IS ORDERED** that Plaintiffs may withdraw their previously served and unanswered interrogatories and are given leave to serve Defendants with an additional total of 50 interrogatories, including discrete subparts.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 620721

2024 WL 620721

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

#2

American Council of Blind of Metropolitan Chicago v. City..., Not Reported in Fed....

2021 WL 5140475

2021 WL 5140475
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

AMERICAN COUNCIL OF the BLIND
OF METROPOLITAN CHICAGO,
Ann Brash, Maureen Henegha, and Ray
Campbell, on behalf of themselves and
all others similarly situated, Plaintiff's,
v.
CITY OF CHICAGO, Defendant.

No. 19 C 6322
|
Signed 11/04/2021

**Attorneys and Law Firms**

Nigel F. Telman, Edward Chester Young, Holly Renae Morris, Proskauer Rose LLP, Jelena Kolic, Disability Rights Advocates, Chicago, IL, Christina Brandt-Young, Pro Hac Vice, Disability Rights Advocates, Michelle Anne Caiola, Phillips & Associates, New York, NY, for Plaintiffs.

Andrew S. Mine, Peter Hardt Cavanaugh, City of Chicago, Law Department, Laura Elizabeth Caplin, Matthew Scot Payne, Fox Rothschild LLP, Chicago, IL, John C. Hansberry, Pro Hac Vice, Nathan J. Marketich, Pro Hac Vice, Fox Rothschild LLP, Pittsburgh, PA, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Jeffrey Cole, UNITED STATES MAGISTRATE JUDGE

*1 The City filed a motion for a protective order on September 17, 2021, asking that it not be obligated to respond to any further interrogatories, including a set of fifteen interrogatories plaintiff, Heneghan, served on August 19, 2021. [Dkt. #98]. Judge Bucklo held a hearing on the motion on September 23, 2021, but opted to set a briefing schedule, which was not completed until October 21, 2021, and indicated she would issue a ruling on October 26, 2021. [Dkt. #101]. She then referred this motion to me for a ruling on November 1, 2021. [Dkt. #109]. For the following reasons, the City's motion [Dkt. #98] is granted.

There are four named plaintiffs in this putative class action, all represented by the same five attorneys. On July 22, 2020, they served nine interrogatories seeking eleven years' worth of information. The City answered them. On January 26, 2021, Plaintiff, American Council of The Blind of Metropolitan Chicago, and Plaintiff, Brash, each served a set of interrogatories again seeking eleven years' worth of information. The American Council of The Blind of Metropolitan Chicago set included eight interrogatories with forty-three separate subparts. The Brash set included thirteen interrogatories with a total of one-hundred and thirty subparts. The City objected, understandably, but answered them. Plaintiff Heneghan then issued the set of interrogatories currently at issue on August 19th. This set has another fifteen interrogatories one of which has thirty-two supbarts.

Fed.R.Civ.P. 33(a)(1) allows a party to serve "no more than 25 written interrogatories, including all discrete subparts" without stipulation or court order. While attorneys love to argue over counting interrogatories, versus subparts versus discrete subparts, any way one looks at this, we are well beyond twenty-five. The plaintiffs feel each one of them, hoping to represent a class, should get twenty-five separate interrogatories. But, where as here, separate parties are represented by the same counsel and are acting in unison, they may be treated as one "party" for purposes of the limit on interrogatories. *See Stiles v. Walmart, Inc.*, 2020 WL 264420, at *4 (E.D. Cal. 2020); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117, at *8 n.7 (S.D.N.Y. 2007); *Beeman v. Anthem Prescription Mgmt., Inc.*, 2017 WL 5564535, at *3 (C.D. Cal. 2017); *Gucci Am., Inc. v. Exclusive Imports Int'l*, 2002 WL 1870293, at *5 (S.D.N.Y. 2002) Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 Number of Interrogatories, 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.)("The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation."). As with any discovery dispute that the parties are unable to resolve, this one is committed to the broad discretion of the court. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). And, in this instance, I find that the plaintiffs have exceeded the Rule 33(a)(1) limit. It is inconceivable that this Federal Rule was not known to plaintiffs' experienced counsel.

*2 Review of their forty-five – at least – interrogatories shows they are not asking questions specific to each one

**American Council of Blind of Metropolitan Chicago v. City..., Not Reported in Fed....**

2021 WL 5140475

of them, but "acting in unison" to evade the twenty-five question limit. This is not a "bright-line" rule, as the plaintiffs complain; to so argue is to misunderstand the concept of discretion in the resolution of routine discovery disputes. There are, in essence, no bright line rules, or rulings. *See LKQ Corp. v. Gen. Motors Co.*, No. 20 C 2753, 2021 WL 4125097, at *1 (N.D. Ill. Sept. 9, 2021). Plaintiffs' attorneys might have opted to be more conservative in their drafting of interrogatories to get information regarding intersection locations and construction time, and they might have chosen to opt for some give-and-take during the Local Rule 37.2 negotiations over their interrogatories, as the City did. *See, e.g., Chicago Regal Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Gunn v.*

*Stevens Security & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("... adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2."). But plaintiffs' counsel chose a different strategy. Review of the parties' submissions, however, leads me to the conclusion that plaintiffs have gone a bit too far. Accordingly, the City's motion for a protective order [Dkt. #98] is granted.

## All Citations

Not Reported in Fed. Supp., 2021 WL 5140475

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#3

2023 WL 4142009

2023 WL 4142009
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

FATE THERAPEUTICS, INC.; and Whitehead
Institute for Biomedical Research, Plaintiffs,
v.
SHORELINE BIOSCIENCES,
INC., Defendant.

Case No.: 22-cv-00676-H-MSB
|
Signed June 22, 2023

**Attorneys and Law Firms**

Aimee Housinger, Pro Hac Vice, Greenberg Traurig, LLP, Houston, TX, Brent Douglas Sokol, Lisa Christine McCurdy, Greenberg Traurig LLP, Los Angeles, CA, Danielle Marie Zapata, Pro Hac Vice, Giancarlo Luca Scaccia, Pro Hac Vice, Jeffrey Ray Colin, Pro Hac Vice, Jonathan David Ball, Pro Hac Vice, Rose Cordero Prey, Pro Hac Vice, Greenberg Traurig, P.A., New York, NY, Daniel Doft, Duane Morris LLP, San Diego, CA, Joseph Thomas Ergastolo, Wright, L'Estrange & Ergastolo, San Diego, CA, for Plaintiffs.

Drew Alan Hillier, Eric Martin Acker, Brian M. Kramer, Sarah Jane Vandervalk, Wesley W.l. Chen, Morrison & Foerster LLP, San Diego, CA, Jose Luis Ramos, Hooper, Lundy & Bookman, P.C., San Diego, CA, Michael Allen Jacobs, Morrison and Foerster LLP, San Francisco, CA, for Defendant.

**ORDER:**

**(1) GRANTING JOINT MOTIONS FOR DETERMINATION OF DISCOVERY DISPUTES;**

**(2) DENYING PLAINTIFFS' MOTION TO COMPEL; AND**

**(3) DENYING DEFENDANT'S MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORTS**

MARILYN L. HUFF, District Judge

**\*1** On June 20, 2023 and June 21, 2023, the parties filed two joint motions for determination of discovery disputes. (Doc. Nos. 275, 276.) The Court addresses these two discovery disputes in turn below.

In the first discovery dispute, Plaintiffs Fate Therapeutics, Inc. ("Fate") and Whitehead Institute for Biomedical Research ("Whitehead") request that the Court compel Defendant Shoreline Biosciences, Inc. to provide responses to Fate's Interrogatory Nos. 1-5 and Requests for Admission Nos. 11-12, 15, 17-22. (Doc. No. 275 at 3.) In response, Shoreline argues that it does not need to respond to these specific interrogatories and RFAs because the relevant rules limit Plaintiffs to 25 total interrogatories and RFAs, and Shoreline has already answered the first 25 interrogatories and RFAs served by Plaintiffs. (Id.)

Federal Rule of Civil Procedure 33(a)(1) provides: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1); see also Civ. L.R. 33.1(a) ("No party will serve on any other party interrogatories which, including discrete subparts, number more than twenty-five interrogatories without leave of Court."). Civil Local Rule 36.1(a) provides: "No party will serve on any other party requests for admission which, including subparagraphs, number more than twenty-five requests for admission without leave of Court." Civ. L.R. 36.1(a).

Plaintiffs argue that under these rules, they are entitled to serve a total of up to fifty interrogatories and fifty requests for admission because they are two "parties" – Fate and Whitehead. (Doc. No. 275 at 3.) In response, Shoreline argues that Plaintiffs should be considered one "party" for the purpose of the above discovery limits. (Id.) The Court agrees with Shoreline.

District courts have applied the 25-interrogatory limit as a "per side" rule when the "parties to an action are nominally separate. Parties may be considered nominally separate when represented by a single attorney, when there is a unity of action, or when there is a legal relationship between the parties." Gaby's Bags, LLC v. Mercari, Inc., No. 20CV00734WHATSH, 2021 WL 857695, at \*1 (N.D. Cal. Mar. 8, 2021) (quoting 21X Cap. Ltd. v. Werra, No. C06-04135 JW (HRL), 2007 WL 2852367, at \*1 (N.D. Cal.

Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc., Not Reported in Fed. Supp. (2023)
2023 WL 4142009

Oct. 2, 2007)); see Freedom Found. v. Sacks, No. 3:19-CV-05937-RBL, 2020 WL 1914902, at *3 (W.D. Wash. Apr. 20, 2020); Zito v. Leasecomm Corp., 233 F.R.D. 395, 399 (S.D.N.Y. 2006); Vinton v. Adam Aircraft Indus., Inc., 232 F.R.D. 650, 664 (D. Colo. 2005); see also Stiles v. Walmart, Inc., No. 2:14-CV-2234-MCE-DMC, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories."). Here, Plaintiffs are only nominally separate. Fate and Whitehead are represented by the same counsel, and they have a legal relationship through their exclusive license agreement. (See Doc. No. 162, First Supp. FAC ¶ 19 ("Whitehead Institute is the owner and assignee of the Asserted Patents and exclusively licensed the Asserted Patents to Fate Therapeutics.").) Further, for the most part, they have acted in unison in this action, including, for example, jointly filing motions, opposition briefs, and claim construction briefs and jointly serving infringement contentions and expert reports. As such, the Court, exercising its sound discretion, applies the 25-interrogatory limit and the 25-RFA limit set forth in the relevant rules on a "per side" basis in this action, and, thus, the Court denies Plaintiffs' motion to compel.

**\*2** In the second discovery dispute, Shoreline requests that the Court strike the second supplemental expert report on infringement and the first supplemental rebuttal expert report on invalidity from Plaintiffs' technical expert, Dr. Kathrin Plath. (Doc. No. 276 at 1.) Shoreline argues that these supplemental expert reports should be struck because they were served after the deadlines for opening expert reports (May 2, 2023) and for rebuttal expert reports (May 23, 2023) set forth in the Court's scheduling order, and they were served a mere 30 minutes before the discovery cutoff in this case on June 13, 2023. (Id.; see Doc. No. 115 at 5-6.) In response, Plaintiffs argue that they properly supplemented Dr. Plath's prior expert reports pursuant to Federal Rule of Civil Procedure 26(e)(2) to include new discovery obtained after her original expert reports had been served. (Doc. No. 276 at 1.) Plaintiffs further assert that Shoreline has not been prejudiced by the supplementations because the supplementations only add new evidence; they do not add any new opinions. (Id.)

Federal Rule of Civil Procedure 26(e) provides:

(e) Supplementing Disclosures and Responses.

(1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

(2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

After considering the parties' competing arguments, the Court declines to strike the supplemental expert reports. Under Rule 26(e), Plaintiffs are permitted to supplement their expert reports in light of new information obtained during the discovery process. Nevertheless, in an effort to ameliorate any potential prejudice to Shoreline, the Court grants Shoreline leave to conduct an additional 2-hour supplemental deposition of Dr. Plath limited to the new material in the supplemental expert reports, and the Court grants Shoreline leave to serve a supplemental rebuttal expert report on infringement. Shoreline's supplemental rebuttal expert report on infringement must be limited to addressing the new material in Dr. Plath's second supplemental expert report on infringement. The supplemental deposition of Dr. Plath must be completed by **Wednesday, July 5, 2023**, and Shoreline's supplemental rebuttal report on infringement must be served by **Wednesday, July 5, 2023**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4142009

**Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc., Not Reported in Fed. Supp. (2023)**

2023 WL 4142009

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S.
Government Works.

**Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc., Not Reported in Fed. Supp. (2023)**

2023 WL 4142009

---

#4

2020 WL 264420

2020 WL 264420
Only the Westlaw citation is currently available.
United States District Court, E.D. California.

Sharidan STILES, et al., Plaintiffs,

v.

WALMART, INC., et al., Defendants.
And Related Counter-Actions

No. 2:14-CV-2234-MCE-DMC
|
Signed 01/17/2020

**Attorneys and Law Firms**

Andrew Williamson, Pro Hac Vice, Pierce Bainbridge Beck Price & Hecht LLP, Washington, DC, Yavar Bathaee, David L. Hecht, Pro Hac Vice, Pierce Bainbridge Beck Price and Hecht LLP, New York, NY, Dan Terzian, Erick Kees Kuylman, Maximillian Wolden Hirsch, Brian James Dunne, Pierce Bainbridge Beck Price & Hecht LLP, Los Angeles, CA, Jamie Lynne Miller, Joseph M. Alioto, Alioto Law Firm, Harmeet Kaur Dhillon, Dhillon Law Group, Inc., San Francisco, CA, for Plaintiffs.

Bryan Alexander Merryman, Catherine Susan Simonsen, White & Case LLP, Los Angeles, CA, Hallie Elizabeth Kiernan, Jeremy Kent Ostrander, Bijal Vijay Vakil, White & Case LLP, Palo Alto, CA, Laura L. Chapman, Sheppard Mullin Richter & Hampton LLP, Dylan Ballard, San Francisco, CA, Stefan M. Mentzer, Pro Hac Vice, White & Case, LLP, New York, NY, Zachary Thomas Page, Conkle, Kremer & Engel, Santa Monica, CA, for Defendants.

ORDER

DENNIS M. COTA, UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiffs, who are proceeding with retained counsel, bring this civil action alleging intellectual property and antitrust claims. Pending before the court are the following five discovery motions:

Motions Filed by Plaintiffs

ECF No. 279 Motion to compel Walmart to provide further responses to:

- Requests for production, set one (served August 17, 2018).

- Interrogatories, set one (served January 8, 2019).

ECF No. 288 Motion for leave to take deposition in excess of ten.

ECF No. 308 Motion to compel Walmart to provide further responses to interrogatories, set two (served November 5, 2019).

Motions Filed by Walmart

ECF No. 280 Motion to compel Plaintiffs to provide further responses to requests for production, set one (served March 21, 2019).

ECF No. 281 Motion to compel Plaintiffs to provide further responses to interrogatories, set one (service date not provided).

The parties have filed the following joint statements regarding the discovery disputes:

ECF No. 284, 297 Joint statement and plaintiffs' supplement related to ECF No. 279 (plaintiffs' motion to compel further responses to requests for production and interrogatories, set one).

ECF Nos. 283, 313 Joint statements related to ECF No. 280 (Walmart's motion to compel further responses to requests for production, set one).

ECF Nos. 282, 314 Joint statements related to ECF No. 281 (Walmart's motion to compel further responses to interrogatories, set one).

ECF No. 317 Joint statement related to ECF No. 288 (plaintiffs' motion for leave to take deposition in excess of ten) and ECF No. 308 (plaintiffs' motion to compel further responses to interrogatories, set two).

A number of documents, largely consisting of specific discovery responses subject to a protective order, have been filed on the public docket with redactions and/or conditionally under seal and are the subject of various requests for leave to file documents under seal. See ECF Nos. 285, 289, 293, 294, 295, 296, 298, 315, 318, 319, 320, and 321 (Notices of Requests to Seal and responses thereto). These requests to seal and responses thereto will be addressed by separate order.

2020 WL 264420

The court heard arguments relating to plaintiff's motion to compel Walmart to provide further responses to requests for production, set one, on December 11, 2019, and issued its order on December 19, 2019. See ECF No. 302 (Clerk's Minutes of Hearing) and 307 (Order). Since the December 19, 2019, hearing, plaintiffs have presented no arguments or briefing concerning the need for further court intervention with respect to their requests for production, set one.

## I. BACKGOUND

### A. Summary of Plaintiffs' Factual Allegations

This action proceeds on plaintiffs' fourth amended complaint. See ECF No. 142. As set forth by plaintiffs in the various joint statements, plaintiffs claim Stiles is the inventor of the Stiles Razor, a narrow-width-blade razor used for "detailed shaving applications." See e.g. ECF No. 284, pg. 12. In 2003, Stiles began courting Walmart as a potential buyer of the Stiles Razor. See id. Ultimately, Walmart agreed to a test run of the Stiles Razor, which was successful. See id. Walmart places the Stiles Razor in about 2,000 Walmart stores and sales were outstanding. See id. Defendants, however, colluded with plaintiffs' competitors and used its market power to eliminate the Stiles Razor from the market in favor of a knock-off version of the Stiles Razor. See id.

### B. Summary of Plaintiffs' Legal Claims

**\*2** Plaintiffs allege the following legal theories:

First Claim Violation of the Sherman Act, 15 U.S.C. § 1.

Second Claim Violation of California's Cartwright Antitrust Act.

Third Claim Patent infringement (the '468 patent).

Fourth Claim Patent infringement (the '329 patent).

Fifth Claim Trade dress infringement in violation of the Lanham Act.

Sixth Claim False advertising and false association in violation of the Lanham Act.

Seventh Claim Intentional interference with prospective economic advantage.

See ECF No. 142, pgs. 31-38.

### C. Summary of Relevant Procedural History

On August 10, 2018, the court issued a stipulated discovery and scheduling order. See ECF No. 146 (Stipulated Order). Pursuant to that order, fact discovery was set to close on July 10, 2019, and dispositive motions were set to be filed within 150 days after the close of fact discovery. See id. at 3-4. On June 18, 2019, the District Judge issued an order extending all operative case deadlines, as outlined in the court's August 10, 2018, discovery and scheduling order, by six months to January 10, 2020. See ECF No. 229. Pursuant to further stipulation, the time to conduct fact witness depositions has been extended to and including February 15, 2020. See ECF No. 291 (Stipulated Order). The docket does not reflect any requests for or orders approving further modification of the August 10, 2018, scheduling order.

Thus, all fact discovery, except fact depositions, closed on or about January 10, 2020. The time to conduct fact depositions has been extended to February 15, 2020.

## II. ISSUES PRESENTED

### A. Plaintiffs' Motions (ECF Nos. 279, 288, and 308)

1. Motion to Compel Walmart to Provide Further Responses to equests for Production, Set One, and Interrogatories, Set One

Plaintiffs seek resolution of the following six issues:

Issues Relating to Requests for Production, Set One

One: Whether Walmart should be compelled to provide further responses and documents relating to plaintiffs' requests for production nos. 4, 7-8, 10-12, 13, 15, 20-21, 25-26, 30-31, and 44.

Two: Whether Walmart should be compelled to produce documents withheld from plaintiffs due to an agreement between counsel limiting discovery.

Three: Whether redactions to produced documents based on relevancy or business confidentiality are proper.

Four: Whether Walmart should be compelled to produce supplemental responses to state the bases for withholding documents relating to plaintiffs' requests for production nos. 1-2, 4-16, 20-21. 25-31, 39-44, 49, and 55-56.

Stiles v. Walmart, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 264420

Issues Relating to Interrogatories, Set One

Five: Whether Walmart should be compelled to supplement their responses to plaintiffs' interrogatories nos. 4 and 5.

Six: Whether Walmart should be compelled to supplement their responses to plaintiffs' interrogatories nos. 7-11 and 13-15.

See ECF No. 279, pg. 2 (Notice of Motion); see also ECF No. 284 (Joint Statement).

Plaintiffs have withdrawn their motion with respect to issue three. See ECF No. 292. Issues relating to plaintiffs' interrogatories, set one – issues five and six – are currently before the court. See id. The remaining issues relating to requests for production – issues one, two, and four – were the subject of a hearing held on December 11, 2019. Plaintiffs' motion as to these issues was addressed in the court's December 19, 2019, order, see ECF No. 307, and appears to be resolved.

2. Motion to Compel Walmart to Provide Further Responses to Interrogatories, Set Two

**\*3** Plaintiffs seek an order compelling Walmart to provide substantive response to three interrogatories – Nos. 16, 17, and 18 – they served as set two. See ECF No. 380 (Notice of Motion); see also ECF No. 317 (Joint Statement).

3. Motion for Leave to Take Depositions in Excess of Ten

Plaintiffs seek an order authorizing them to take more than the maximum ten deposition allowed under the Federal Rules of Civil Procedure without leave of court. See ECF No. 288 (Notice of Motion); see also ECF No. 317 (Joint Statement).

**B. Walmart's Motions (ECF Nos. 280 and 281)**

1. Motion to Compel Plaintiffs to Provide Further Responses to Requests for Production, Set One

Walmart identifies the following remaining issues:

One: Whether plaintiffs should be compelled to produce tax records.

Two: Whether plaintiffs should be compelled to produce financial data. See ECF No. 280 (Notice of Motion); see also ECF Nos. 283, 313 (Joint Statements).

2. Motion to Compel Plaintiffs to Provide Further Responses to Interrogatories, Set One

Walmart identifies the following remaining issues:

One: Whether plaintiffs should be compelled to provide further supplemental responses to interrogatory nos. 15-18 regarding an alleged agreement between Walmart and defendant American International Industries, Inc.

Two: Whether plaintiffs should be compelled to provide a further supplemental response to interrogatory no. 20 regarding the product market alleged in the complaint

Three: Whether plaintiffs should be compelled to provide further supplemental responses to interrogatory nos. 5-7, 10, and 21 regarding sales of the Stiles Razor.

Four: Whether plaintiffs' assertion of a global privilege objection violates Federal Rule of Civil Procedure 33(b)(4) requiring objections to be stated with specificity.

Five: Whether plaintiffs should be precluded from offering or relying on information or facts responsive to interrogatory nos. 1-14 and 19-21 that has not been provided in any of their responses to these interrogatories.

See ECF No. 281 (Notice of Motion); see also ECF Nos. 282, 314 (Joint Statements).

**III. DISCUSSION**

**A. Plaintiffs' Motion to Compel Walmart to Provide Further Responses to Interrogatories, Set One (ECF No. 279)**

Plaintiffs identify two issues relating to Walmart's responses to interrogatories, set one. See ECF No. 279, pg. 2 (Notice of Motion); see also ECF No. 284 (Joint Statement). Specifically, the following questions are before the court (identified as issues five and six in plaintiffs' motion and issues five, six, and seven in the parties' joint statement):

*Stiles v. Walmart, Inc.*, Not Reported in Fed. Supp. (2020)

2020 WL 264420

Five: Whether Walmart should be compelled to supplement their responses to plaintiffs' interrogatories nos. 4 and 5.

Six: Whether Walmart should be compelled to supplement their responses to plaintiffs' interrogatories nos. 7-11 and 13-15.

See id.

Plaintiffs propounded interrogatories, set one, including interrogatory nos. 4-5, 7-11, and 13-15, on January 8, 2019. See ECF No. 284, pg. 9. Walmart responded on February 7, 2019. See id. at 9, 92-93. On April 15, 2019, Walmart provided supplemental responses. See id. at 9, 97. Plaintiffs argue Walmart's responses to interrogatory nos. 4 and 5 are incomplete. Plaintiffs ask the court to direct Walmart to supplement its responses to interrogatory nos. 4-5, 7-11, and 13-15. Walmart states that, on December 2, 2019, it informed plaintiffs' counsel that it will supplement Walmart's responses to address plaintiff's concerns on or before December 13, 2019. See ECF No. 284, pgs. 95, 98, and 105.

**\*4** Given Walmart's representation that supplemental responses would be served on or before December 13, 2019, given counsel's representation at the hearing that supplemental responses were indeed served on December 13, 2019, and that they are acceptable to plaintiffs, and given the lack of any follow-up motion to compel or joint statement concerning supplemental responses, plaintiffs' motion with respect to Walmart's responses to their first set of interrogatories is resolved and will be denied as moot.

## B. Plaintiffs' Motion to Compel Walmart to Provide Further Responses to Interrogatories, Set Two (ECF No. 308)

Plaintiffs seek an order compelling Walmart to provide substantive response to three interrogatories – Nos. 16, 17, and 18 – plaintiffs served as set two. See ECF No. 380 (Notice of Motion); see also ECF No. 317 (Joint Statement).

As outlined in the parties' joint statement, plaintiffs served interrogatories, set two, on Walmart on November 5, 2019. See ECF No. 317, pg. 8. While the parties do not provide the court with copies of the actual discovery requests and responses at issue, according to the joint statement the dispute concerns interrogatory nos. 16, 17, and 18. See id. at 45-46. In these interrogatories, plaintiffs seek the following discovery:

INTERROGATORY NO. 16: IDENTIFY all category advisors to Walmart for any categories related to Plaintiffs for Plaintiffs' products, including but not limited to the wet shave category and the beauty accessories category, at any time during the period of January 1, 2002, to the present.

INTERROGATORY NO. 17: DESCRIBE Walmart's document or data retention policy, including but not limited to how documents or data are organized and/or categorized for purposes of the policy, when the policy was initiated, and the length of time that each type of document is retained and how it is retained.

INTERROGATORY NO. 18: IDENTIFY all DOCUMENTS and tangible things that (1) were requested from Walmart by Plaintiffs in this action which (2) Walmart believes were deleted.

ECF No. 317, pgs. 45-46.

Walmart did not provide any substantive responses, arguing instead that plaintiff's interrogatories, set two, exceed the 25 interrogatories allowed under the Federal Rules of Civil Procedure. See id. at 55-59. According to Walmart, plaintiffs' have with their first set of 15 interrogatories exceeded the maximum of 25. The first set of interrogatories contained 15 items, four of which were withdrawn by plaintiffs. Of the remaining 11 interrogatories, including discreet subparts, Walmart contends interrogatory nos. 5, 11, and 14 are each one interrogatory (total of 3), interrogatory no. 3 is two interrogatories (total of 2), interrogatory no. 4 is six interrogatories (total of 6), interrogatory nos. 7, 8, 13, and 15 each are two interrogatories (total of 8), and interrogatory nos. 9 and 10 each are three interrogatories (total of 6). See id. at 56-59.

Under Federal Rule of Civil Procedure 33(a)(1), "a party" may serve up to 25 written interrogatories without stipulation or leave of court. Subparts to a single interrogatory are only counted as one interrogatory "if they are logically or factually subsumed within and necessarily related to the primary question." Johnson v. Chau, 2019 U.S. Dist. LEXIS 15011, at \*8-9 (E.D. Cal. Jan. 30, 2019) (citation omitted). Discrete or separate questions should be counted as separate interrogatories. See Kendall v. GES Exposition Servs., 174 F.R.D. 684, 685-86 (D. Nev. 1997). Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one "party" for purposes of the limit on interrogatories. See Gucci Am., Inc. v. Exclusive Imps.

2020 WL 264420

Int'l, 2002 U.S. Dist. LEXIS 14837, at *16-17 (S.D.N.Y. Aug. 12, 2002); see also Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., Inc., 2017 U.S. Dist. LEXIS 191720, 2017 WL 5564535, at *10 (C.D. Cal. Nov. 17, 2017).

**\*5** Plaintiffs contend they are in fact two "parties" – Sharidan Stiles and Stiles 4-U, Inc. – and, as such, may together propound a total of 50 interrogatories, a number which the parties agree has not been exceeded. Walmart contends plaintiffs are acting as one "party" under the rules and, as one party, have with set two exceeded the allowable number of interrogatories without leave of court or stipulation to do so.

Plaintiffs' contention that they are two distinct parties for purposes of limitations on discovery is unpersuasive and inconsistent with the position plaintiffs previously took in this case. Specifically, in the context of plaintiffs' motion for an order seeking elimination of an "attorney eyes only" provision in Walmart's proposed protective order concerning discovery, plaintiffs took the position that plaintiff Stiles' participation in the action was essential to the overall prosecution of the case. See ECF No. 168, pgs. 12-16. Moreover, since the inception of this case, plaintiffs have been working in unison, first pro se and now with the same counsel. Thus, the 25-interrogatory limit applies.

As to the number of interrogatories that were asked in plaintiffs' set one, the court agrees with Walmart's conclusion that plaintiffs asked at least 25 question in the 11 interrogatories and subparts thereto served as set one. "Parties cannot evade th[e] presumptive limitation [of 25 interrogatories] through the device of joining as subpart questions that seek information about discreet subjects." Johnson v. Chau, 2019 U.S. Dist. LEXIS 15011, at *8 (E.D. Cal. Jan. 30, 2019). Subparts are counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question. See id. at *8-9. A review of plaintiffs' interrogatories, set one, reflects that, as Walmart contends, a number of interrogatories contain numerous subparts, raising the total count of interrogatories propounded in set one to at least 25, if not more.

Because plaintiffs met or exceeded the 25 allowable interrogatories with set one, and because plaintiffs did not seek leave to propound additional interrogatories before serving set two, Walmart's objection is sustained and plaintiffs' motion to compel Walmart to respond to interrogatories, set two, will be denied.

### C. **Plaintiffs' Motion for Leave to Take Depositions in Excess of Ten (ECF No. 288)**

Plaintiffs seek an order authorizing them to take more than the maximum ten deposition allowed under the Federal Rules of Civil Procedure without leave of court. See ECF No. 288 (Notice of Motion); see also ECF No. 317 (Joint Statement). In the notice of motion, plaintiff states they seek to take a total of 13 depositions. See ECF No. 288, pg. 4. In the joint statement, plaintiffs state they seek to take a total of 18 depositions. See ECF No. 317, pg. 21. To date, plaintiffs have not taken any depositions.

Parties are limited to no more than ten depositions without leave of court or stipulation. See Fed. R. Civ. P. 30(a)(2)(A)(i); see also Nevis v. Rideout Mem'l Hosp., 2019 U.S. Dist. LEXIS 188550, 2019 WL 5596938, at *5-6 (E.D. Cal. Oct. 30, 2019). The party seeking more than ten depositions bears the burden of making a particularized showing of the need for additional depositions. See Rideout Mem'l Hosp., 2019 U.S. Dist. LEXIS 188550, 2019 WL 5596938, at *5-6. Where the action is complex, parties are not required to exhaust the ten allowable deposition prior to seeking leave to take additional depositions. See Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc., 2018 WL 5993585 at *1 (E.D. Cal. Nov. 6, 2018); see also Del Campo v. American Corrective Counseling Servs., Inc., 2007 WL 3306496 at *6 (N.D. Cal. Nov. 6, 2007) ("[I]t would be prejudicial to require Plaintiffs to choose the ten depositions to take before they know whether they will be granted more"). Finally, once a showing has been made, the court may relieve parties of the limitations on depositions. See Fed. R. Civ. P. 26(b)(2)(A).

**\*6** Here, the court finds plaintiffs have made the necessary showing as to the 18 deponents listed in the parties' joint statement and will grant plaintiff's motion for leave to take 18 depositions. While leave is hereby granted to take up to the 18 depositions designated by plaintiff, the depositions are to be completed by the previously stipulated deadline of February 15, 2020. As Defendant Walmart has indicated that defendant has depositions yet to be completed by that same deadline, the parties are directed to cooperate in the scheduling and coordination of **all** remaining depositions, including but not limited to scheduling depositions to proceed on concurrent schedules, in multiple venues to be covered by multiple counsel, other than just lead counsel, and depositions scheduled outside ordinary business hours, including early mornings, evenings and weekends.

**D. Walmart's Motion to Compel Plaintiffs to Provide Further Responses to Requests for Production, Set One (ECF No. 280)**

In its notice of motion and the parties' first joint statement concerning its requests for production, set one, Walmart identifies the following issues:

One: Whether plaintiffs failed to serve a privilege log.

Two: Whether plaintiffs failed to collect responsive documents from all relevant custodians.

Three: Whether plaintiffs failed to produce certain responsive documents, or confirm such documents do not exist, in eight categories:

- Tax filings.

- Comprehensive sales financial data.

- Contracts.

- Documents relating to actual or contemplated patent agreements.

- Communications with third parties.

- Documents concerning patents.

- Documents concerning "razor-related products."

- Documents concerning manufacture of the Stiles Razor.

See ECF No. 280 (Notice of Motion); see also ECF No. 283 (First Joint Statement).

Following the prior hearing at which the court encouraged the parties to engage in good-faith meet-and-confer efforts to resolve as many of the pending discovery disputes as possible, over the course of December 2019 and the first week of January 2020, plaintiffs supplemented their responses and produced additional documents as well as a privilege log. See ECF No. 313, pgs. 3-5 (Second Joint Statement). Walmart continues to argue plaintiffs' "document production in response to Walmart's RFPs remains deficient." Id. at 14. Walmart's contentions, however, are now narrowed to two issues: (1) whether plaintiffs should be compelled to produce further tax records in response to request for production no. 87; and (2) whether plaintiffs should be compelled to produce other financial data in response to request for production nos. 69, 75, 79, 81-84, and 93. See id. at 14-16.

Regarding tax records, Walmart contends:

Walmart's RFP No. 87 seeks all documents regarding the value or valuation of the Stiles Razor, including local, state, and federal tax filings. Plaintiffs responded that they will search for relevant, non-privileged or private documents and produce such documents on a rolling basis. *See* Kiernan Decl., Ex. 1 at 94-95. Plaintiffs have produced two documents regarding a profit loss statement from 2008 and a tax return history report from 2013. *Id.*, ¶ 34. Other than these two documents, plaintiffs have not produced documents responsive to RFP No. 87. *Id.*, ¶ 17. Walmart needs the information to assess the value of the Stiles Razor and defend itself against Stiles' claim for damages. Plaintiffs claim they have "produced ***all responsive documents*** within our clients' possession, custody, or control as of the date of the last production, except for privileged/work product documents, which we have properly logged on a privilege log," Kiernan Decl., Ex. 5, but it is simply not credible that a small business owner does not have in her possession, custody, or control, any of her tax filings related to a product she purportedly patented and sold for years at Walmart and elsewhere. *See Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) ("Thus, actual possession of the requested documents is not required. A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.") (citation omitted). When asked during the parties' meet and confer call what plaintiffs did to search for documents responsive to Walmart's RFPs —specifically, plaintiffs' tax records—plaintiffs' counsel refused to respond, claiming the information was "work product." Simonsen Decl., ¶ 3.

**\*7** To be clear, plaintiffs' qualified privilege objection to producing their tax returns is meritless. Plaintiffs concede that "[o]rdering production of tax returns requires both that 'they are relevant' and that 'there is a compelling need for them because the information sought is not otherwise available.' " ECF No. 283 at 16 (quoting *Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 497– 98 (N.D. Cal. 2003)). As discussed below, there are significant gaps in the financial and revenue data produced by plaintiffs. Accordingly, the information about plaintiffs' sales of their product contained in their tax returns "is not otherwise available," and accordingly plaintiffs' tax returns are discoverable.

Stiles v. Walmart, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 264420

The Court should order plaintiffs to produce the responsive tax records or, if they claim they cannot find the records or the records do not exist, to "produce a declaration signed under penalty of perjury... explaining the specific efforts and methods used to locate these records," to the extent they "conclude[ ] that [they] [are] not in possession, custody, or control of any such records." *Berger v. Home Depot United States, Inc.*, 2010 U.S. Dist. LEXIS 152830, 2010 WL 11558000, at *15 (C.D. Cal. Oct. 7, 2010); *see Coppola v. Smith*, 2016 U.S. Dist. LEXIS 22066, 2016 WL 726903, at *9, *11 (E.D. Cal. Feb. 23, 2016) ("In responding to discovery requests, a reasonable inquiry must be made.... To comply with the discovery rules, the [responding party] must confirm that a thorough search was conducted with due diligence....") (emphasis added).

ECF No. 313, pgs. 14-15.

Regarding financial data, Walmart contends:

Walmart's RFP Nos. 69, 75, 79, 81-84, and 93 seek comprehensive financial data for sales of the Stiles Razor, including sales through third party retailers. *See* Kiernan Decl., Ex. 1 at 81-82, 86, 88-89, 90-92, & 98-99. In response, plaintiffs have produced limited financial data from Walmart and Crossmark, Inc., as well as a screen shot of an account payable summary for Stiles from Target Corp. Following the parties' November meet and confer, plaintiffs made three document productions. Those document productions contained purchase orders and invoices for Stiles' products at Target, Walmart, Amazon, Big Lots, and Body 4 Real. Plaintiffs also produced order forms and invoices for the manufacturing of plaintiffs' products and shipment of plaintiffs' products to retailers. *See* Kiernan Decl., ¶¶ 18, 33. Plaintiffs have not produced any internal financial reporting or data, let alone comprehensive financial data for sales of the Stiles Razor through retailers other than Walmart or any other financial data by which Walmart can ascertain the sales amounts. *Id.* Walmart needs this information to prepare a defense to plaintiffs' claims for damages. Again, plaintiffs' claim that they have produced all responsive, non-privileged documents is simply not credible, and plaintiffs have refused to provide any information about what they did to search for responsive documents. Simonsen Decl., ¶ 3. The Court should order plaintiffs to produce comprehensive and complete financial data for sales of the Stiles Razor or, if they claim they cannot find any other records or no other records exist, to "produce a declaration signed under

penalty of perjury... explaining the specific efforts and methods used to locate these records," to the extent they "conclude[ ] that [they] [are] not in possession, custody, or control of any such records" beyond what they have produced. *Berger*, 2010 U.S. Dist. LEXIS 152830, 2010 WL 11558000, at *15.

Id. at 15-16.

**\*8** According to plaintiffs, during the course of the meet-and-confer process, they repeatedly informed Walmart that all responsive documents in their custody, possession, or control had been produced. See ECF No. 313, pgs. 16-18. The gravamen of Walmart's argument is its apparent disbelief in plaintiffs' representations. Walmart seeks an order consistent with Berger requiring plaintiffs to submit a declaration under penalty of perjury regarding efforts plaintiffs took to locate and produce responsive tax records and financial data.

At the hearing, Walmart's counsel represented that plaintiff had produced additional tax and financial records just the night prior. Plaintiffs' method of document production in response to request for production no. 87 suggests a lack of diligence and good faith, though the court does not so find at this time. Plaintiffs will be directed to serve a supplemental response to request for production no. 87 and to produce all responsive documents which have not already been produced. If there are no more responsive documents to produce, plaintiffs shall so state.

The court declines to require plaintiffs' counsel to submit a declaration consistent with Berger. Ordinarily, counsel's representations that a diligent search has been made and that responsive documents have been produced is sufficient. See e.g. Goethe v. Cal. DMV, 2009 U.S. Dist. LEXIS 105292, 2009 WL 3568624, at *2-4 (E.D. Cal. Oct. 27, 2009). Walmart has not presented any evidence to suggest that plaintiffs' counsel is not being truthful or that there are concerns of spoliation of evidence, as was the situation in Berger, cited by Walmart.

Both parties are reminded that any documents that would have been responsive to proper discovery, but which was not produced, will not be admitted at the time of trial.

**E. Walmart's Motion to Compel Plaintiffs to Provide Further Responses to Interrogatories, Set One (ECF No. 281)**

Stiles v. Walmart, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 264420

In November and December 2019, the parties engaged in meet-and-confer efforts. See ECF No. 314, pgs. 5-9 (Second Joint Statement). As a result of these efforts, plaintiffs served supplemental responses and objections to Walmart's interrogatories, set one, on December 15, 2019. See id. at 6. Following plaintiffs' supplementation, Walmart continues to assert plaintiffs' responses to certain interrogatories remain deficient and that the court should order further responses. See id. at 18-50. Walmart's motion is now limited to the following issues: (1) whether plaintiffs should be compelled to provide further supplemental responses to interrogatory nos. 15-18 regarding an alleged agreement between Walmart and defendant American International Industries, Inc. (AI); (2) whether plaintiffs should be compelled to provide a further supplemental response to interrogatory no. 20 regarding the product market alleged in the complaint; (3) whether plaintiffs should be compelled to provide further supplemental responses to interrogatory nos. 5-7, 10, and 21 regarding sales of the Stiles Razor; (4) whether plaintiffs' assertion of a global privilege objection violates Federal Rule of Civil Procedure 33(b)(4) requiring objections to be stated with specificity; and (5) whether plaintiffs should be precluded from offering or relying on information or facts responsive to interrogatory nos. 1-14 and 19-21 that has not been provided in any of their responses to these interrogatories. See id.

1. Sufficiency of Substantive Responses

**\*9** In its first three contentions, Walmart challenges the sufficiency of plaintiffs' supplemental substantive responses to interrogatory nos. 5-7, 10, 15-18, 20, and 21. Plaintiffs served their supplemental responses on December 15, 2019. See ECF No. 314-8.

i. Interrogatory Nos. 5-7, 10, and 21

In supplemental response to interrogatory nos. 5-7 and 21, plaintiffs state: "... Stiles identifies the documents in Exhibits 1 and 2, a subset of which will contain the information responsive to this interrogatory." Id. at 14-17, 133. Exhibits 1 and 2 consist, respectively, of lists of 773 and 1,400 discovery documents previously produced. See id. at 135-184. In supplemental response to interrogatory no. 10, plaintiffs state: "... Stiles identifies the documents in Exhibit 3, a large subset of which will contain the information responsive to this interrogatory." See ECF No. 314-8, pg. 21. Exhibit 3 consists

of a list of 837 documents. See id. at 185-204. Walmart asserts this method of responding to its interrogatories is deficient.

Federal Rule of Civil Procedure 33(d)(1) permits reference to business records in response to interrogatories provided "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records..., and if the burden of deriving or ascertaining the answer will be substantially the same for either party...." Fed. R. Civ. P. 33(d)(1). A responding party citing such records must specify the record that must be reviewed in sufficient detail to enable to interrogating party to locate and identify them as readily as the responding party could...." Id. A repeated reference to a block of documents does not constitute compliance. See E. & J. Gallo Winery v. Rallo, 2006 U.S. Dist. LEXIS 84048, 2006 WL 3251830, at *11-12 (E.D. Cal. Nov. 8, 2006); see also Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., 2014 U.S. Dist. LEXIS 131109, at *25-27 (E.D. Cal. Sep. 16, 2014) ("A citation to thousands of pages of documents in an insufficient response to interrogatories"). If a responding party provides a voluminous reference to business records, the party must also include an index guiding the interrogating party to the specific responsive documents. See Carolina Cas. Ins. Co., 2014 U.S. Dist. LEXIS 131109, at *27.

Here, as Walmart notes, plaintiffs have in essence directed Walmart to lists of numerous documents, a subset of which contain responsive information, and said "good luck." Plaintiffs have failed to provide any meaningful way for Walmart to discern from the volumes of documents cited which specific documents contain responsive information. As such, plaintiffs' method of responding under Rule 33(d)(1) is insufficient and plaintiffs will be ordered to provide further supplemental responses. If responsive information are within the universe of records identified by plaintiffs in exhibits 1, 2, and 3, plaintiffs shall identify the specific documents containing such responsive information.

ii. Interrogatory Nos. 15-18

Walmart seeks the following discovery:

INTERROGATORY NO. 15: Identify every Communication and meeting, including any Document related to such Communications and meetings, which you contend Relates to any alleged unlawful agreement between Walmart and American International, including

2020 WL 264420

but not limited to the individuals that you contend were involved in each such Communication or meeting, whether the Communication or meeting was in person or over the phone, and the place where the Communication or meeting occurred.

**\*10** INTERROGATORY NO. 16: Identify all facts and Documents You contend support Your allegations that Walmart and American International entered into the unlawful agreement allege din the Fourth Amended Complaint.

INTERROGATORY NO. 17: Identify all facts and Documents that You contend support Your allegations in paragraph 129 of the Fourth Amended Complaint that "before May 30, 2012, American Industries began discussing the creation of the Salon Perfect Micro Razor with Walmart."

INTERROGATORY NO. 18: Identify all facts and Documents that You contend support Your contention that Walmart's 2012 line review of American International's product line occurred earlier than July of 2012, including when You contend such line review occurred.

ECF No. 314-8, pgs. 28, 61, 94, 107.

Plaintiffs served lengthy and virtually identical initial and supplemental responses to these interrogatories. See id. at 28-127.

Walmart contends plaintiffs' responses are deficient because they incorporate arguments relating to new allegations and claims contained in a proposed fifth amended complaint the District Judge did not grant leave to file. Walmart seeks an order compelling plaintiffs to provide substantive responses to interrogatory nos. 15-18 which are based solely on the allegations contained in the operative fourth amended complaint. A review of plaintiffs' responses to interrogatory nos. 15-18 reflects that they are indeed ambiguous and confusing. Plaintiffs' responses consist largely of arguments relating to various legal theories, some of which Walmart contends are not at issue in this action. Plaintiffs will be directed to serve supplemental responses to interrogatory nos. 15-18 which are more directly responsive and applicable to the facts plaintiffs allege support their various legal theories.

### iii Interrogatory No. 20

Walmart seeks the following discovery:

INTERROGATORY NO. 20: Identify every razor (by make and model) from January 1, 2007, to present that You contend falls within the Disposable Personal Styling Razors product market alleged in the Fourth Amended Complaint.

ECF No. 314-8, pg. 129.

Walmart persuasively argues that plaintiffs' supplemental response to Interrogatory 20 is deficient in the inclusion of qualifying terms such as "some or all," "without limitation," and "may", which limiting language is elusive and fail to respond with sufficient specificity to a request to identify "every razor" within the designated category. See Fed. R. Civ. P. 33(b)(3) (requiring full answers) and 33(d)(1) (regarding reference to business records). Plaintiffs will be ordered to provide a further supplemental response to Walmart's interrogatory no. 20.

### 2. Privilege Objection

Walmart contends plaintiffs' assertion of a boilerplate global objection based on privilege fails to comply with Federal Rule of Civil Procedure 33(b)(4). Under Rule 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity." "Whe[n] a responding party states a general objection to an entire discovery document on the basis of privilege,... the resulting 'blanket objection' is decidedly improper." Eureka Fin. Corp. v. Hartford Acci. & Indem. Co., 136 F.R.D. 179, 182 (E.D. Cal. 1991). According to Walmart, none of plaintiffs' responses to Walmart's interrogatories, set one, state whether plaintiffs have withheld information on the grounds of privilege." ECF No. 314, pg. 49. Walmart seeks an order compelling plaintiffs to so state. See id.

**\*11** Plaintiffs state in the second joint statement filed regarding Walmart's interrogatories, set one, that they are "not withholding an information on behalf of any privilege objection." Id. at 55. Because plaintiffs have not formally stated this in writing, and because Walmart is entitled to a formal response to its interrogatories, set one, indicating that no information is being withheld on the basis of privilege, Walmart's motion will be granted and plaintiffs will be required to serve a supplemental response indicating that no information is being withheld in response to Walmart's interrogatories, set one, on the basis of privilege. To the extent any privilege is being asserted, plaintiff shall identify the

**Stiles v. Walmart, Inc., Not Reported in Fed. Supp. (2020)**

2020 WL 264420

specific privilege, and shall serve a privilege log as required by statute.

3. Future Use of Undisclosed but Responsive Information

Relying solely on Tumbling v. Merced Irrigation Dist., 2010 U.S. Dist. LEXIS 101404, 2010 WL 11450406, at *60-61 (E.D. Cal. Sep. 27, 2010), Walmart argues the court should enter an order precluding plaintiffs from offering or using at any time in the future of this litigation any information responsive to its discovery requests but which has not been disclosed in any responses to interrogatory nos. 1-14 and 19-21. As plaintiffs note, this request for relief is not ripe until and unless plaintiffs attempt to offer evidence which is responsive but was not disclosed. In Tumbling, the court concluded in ruling on a motion for summary judgment that the plaintiff's retaliation claim was limited to the facts in his answer to interrogatory no. 21. See id. Thus, the issue before the court was whether evidence that was sought to be used could actually be used. In this case, plaintiffs have not yet sought to offer or otherwise use information which Walmart claims is responsive to its interrogatories but was previously undisclosed. Until this happens, Walmart's request is premature. It could be that plaintiff will never seek to use such information. If plaintiffs do, the issue should be decided in the context the information is offered, such as in considering a motion for summary judgment or at trial. Walmart's premature motion for a preclusion order will be denied.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to compel (ECF No. 279) is denied;

2. Plaintiffs' motion to compel (ECF No. 308) is denied;

3. Plaintiff's motion for leave to take depositions in excess of ten (ECF No. 288) is granted;

4. Walmart's motion to compel (ECF No. 280) is granted in part;

5. Plaintiffs shall serve supplemental responses to Walmart's request for production no. 87 on or before January 21, 2020;

6. Walmart's motion to compel (ECF No. 281) is granted in part; and

7. Plaintiffs shall serve supplemental responses to Walmart's interrogatory nos. 5-7, 10, 15-18, 20, and 21 on or before January 27, 2020, such supplemental responses to indicate, as represented by counsel at the hearing, that no information is being withheld on the basis of privilege.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 264420

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#5

Gucci America, Inc. v. Exclusive Imports Intern., Not Reported in F.Supp.2d (2002)

2002 WL 1870293

🚩 KeyCite Yellow Flag

Distinguished by Skinner v. Liller, D.Md., December 8, 2023

2002 WL 1870293
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

GUCCI AMERICA, INC., Plaintiff,

v.

EXCLUSIVE IMPORTS INTERNATIONAL,
Cyril Israelson, Innopex, Ltd, Aaron
Wexel, Joshua Frankel, Boruch Abraham
Teitelbaum, Imperial Trading Ltd.,
and John Does 1–10, Defendants.

No. 99 Civ.11490 RCC FM.
|
Aug. 13, 2002.

**Synopsis**

Trademark holder for watch brought action against alleged infringer. Counterclaims were filed. Following discovery dispute, the District Court, Casey, J., reviewed rulings of Frank Maas, United States Magistrate Judge, and held that: (1) preclusion of evidence that defendant allegedly tampered with plaintiff's watches was not clearly erroneous; (2) determination that distribution of allegedly counterfeit watches to Canadian corporation lacked nexus with United States, and thus were not relevant, was not clearly erroneous; (3) magistrate did not clearly err in upholding plaintiff's refusal to respond to third set of interrogatories; (4) denial of motion to compel plaintiff to answer deposition question as to costs incurred in watch production was not clear error; (5) failure to sanction plaintiff for having human resources vice president verify interrogatories was not clear error; and (6) magistrate did not clearly err in determining that plaintiff's designated deponent was adequate.

Ordered accordingly.

West Headnotes (10)

**[1]**    **Trademarks** 🔑 Infringement in general

Magistrate's preclusion of evidence that alleged infringer allegedly tampered with several of

trademark holder's watches, while watches were in possession of defense counsel, during trademark infringement action, was not clearly erroneous; if trademark holder were allowed to accuse opposing counsel, during trial, of tampering with evidence, without first finding basis for accusation, new trial could be warranted.

**[2]**    **Trademarks** 🔑 Infringement in general

Magistrate's determination that distribution of allegedly counterfeit watches to Canadian corporation lacked nexus with United States and thus were not relevant in trademark holder's trademark infringement action was not clearly erroneous; no evidence showed that the Canadian sales were "processed" through Washington state or that such as alleged would have supported a Lanham Act claim. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[3]**    **Evidence** 🔑 Particular crimes, wrongs, or acts

Determination that alleged Canadian sales of infringing watch were not in violation of federal trademark laws, and thus that Canadian sales did not constitute a similar act under evidentiary rule governing admission of other acts, was not clearly erroneous; for conduct to be admissible other acts evidence, it would have to have been adjudicated a violation of Canadian law, requiring the trial of both an American and Canadian case. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[4]**    **Trademarks** 🔑 Amended and supplemental pleadings

Global amended pleading of alleged infringers, in trademark action, was proper as to one alleged infringer, although it was improper as to two other alleged infringers; the first alleged infringer's initial answer and counterclaims were never answered by counterclaim defendants, but other infringers had not sought permission

Gucci America, Inc. v. Exclusive Imports Intern., Not Reported in F.Supp.2d (2002)

2002 WL 1870293

to amend. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[5] Federal Civil Procedure** Number, Form and Importance

Magistrate did not clearly err in upholding plaintiff's refusal to respond to third set of interrogatories in trademark infringement action; although there were six defendants, defendants were acting in unison, and plaintiff had already responded to 45 interrogatories, more than the 25 permitted under governing procedural rule. Fed.Rules Civ.Proc.Rule 33(a), 28 U.S.C.A.

7 Cases that cite this headnote

**[6] Federal Civil Procedure** Relevancy and materiality

Magistrate's denial of alleged infringer's motion to compel trademark holder to answer deposition question as to trademark holder's costs incurred in producing its watches was not clear error, in trademark infringement action; whether or not trademark holder's aim was to root out rogue suppliers who sold outside trademark holder's chain of distribution had little connection to trademark holder's cost of producing watches.

**[7] Federal Civil Procedure** Failure to Comply; Sanctions

Magistrate's acceptance of trade mark holder's explanation that it had conducted diligent search for expert's notes, and, to extent any expert's notes existed, they had been destroyed long ago, was not abuse of discretion; representation was made by trademark holder's counsel on the record.

**[8] Privileged Communications and Confidentiality** In camera review

Magistrate acted within discretion in directing trademark holder's counsel to describe content of documents, which were allegedly protected from discovery by privilege, on the record, and ruling on the privilege assertions on that basis;

magistrate was not required to evaluate the documents in camera.

**[9] Federal Civil Procedure** Failure to Answer; Sanctions

Magistrate's failure to sanction trademark holder for having human resources vice president verify interrogatories was not clear error; although, when deposed, vice president admitted she had no knowledge of substantive truth of response and had not independently verified the facts in interrogatories; alleged infringer was not prejudiced by vice president's lack of personal knowledge, and vice president had relied upon discussion with counsel as her basis for making verifications. Fed.Rules Civ.Proc.Rule 33(b), 28 U.S.C.A.

1 Case that cites this headnote

**[10] Federal Civil Procedure** Officers and employees of corporations

Magistrate did not clearly err in determining that corporation's designated deponent was adequate; deponent was not required to have personal knowledge on issues related to trademark infringement suit, so long as he could convey information known to the corporation, and corporation represented that the knowledge of deponent was sum of all knowledge known to corporation and its affiliates. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

10 Cases that cite this headnote

OPINION AND ORDER

CASEY, J.

**\*1** Plaintiff Gucci America, Inc. ("Gucci") filed this action against defendants Exclusive Imports International ("Exclusive"), Imperial Trading, Ltd. ("Imperial"), Innopex, Ltd. ("Innopex"), Cyril Israelson ("Israelson"), Joshua Frankel ("Frankel") and Aaron Wagschal ("Wagschal").[1]

2002 WL 1870293

Gucci claims, *inter alia,* that defendants infringed its trademark by engaging in the distribution of counterfeit Gucci watches. Defendants hotly contest Gucci's claims, and discovery has been particularly contentious. Now before the Court are the parties' objections to several rulings of Magistrate Judge Maas, who is currently supervising pre-trial proceedings.[2]

1    Defendant Teitelbaum was dismissed from the case by stipulation dated April 27, 2001.

2    This is not the first time that the parties have brought their discovery disputes to this Court. *See Gucci America, Inc. v. Exclusive Imports Int'l,* No. 99 Civ. 11490(RCC), 2001 WL 21253 (S.D.N.Y. Jan.9, 2001). Familiarity with the Court's earlier opinion is presumed.

DISCUSSION

The district court may reverse a Magistrate's findings as to non-dispositive matters only if they are clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). Magistrates have broad discretion in resolving discovery disputes and those decisions are reviewed under an "abuse of discretion" standard. *See Moss v. Enlarged City School Dist. of City of Amsterdam,* 166 F.Supp.2d 668, 670 (N.D.N.Y.2001) ( "[M]agistrate judges are given broad discretion with respect to pre-trial discovery issues and reversal is warranted only when that discretion is abused.") (citations omitted); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990). With respect to dispositive matters, the district court undertakes a de novo review. *See* Fed.R.Civ.P. 72(b).

The Court will address in turn the orders entered by Judge Maas.

I. *The January 31, 2001 Orders*
On January 31, 2001, Judge Maas held a conference during which he made a number of oral rulings. Gucci objects to two of those orders.[3] First, Judge Maas precluded Gucci from arguing at trial that certain evidence, consisting of several Gucci watches, was tampered with while in the possession of defendants' counsel. Judge Maas concluded that Gucci had waived this argument by moving for defense counsel's disqualification and a hearing and then withdrawing the motion. (Transcript dated January 31, 2001 ("1/31/01 Tr."), at 3.) Second, Judge Maas denied Gucci's request to take

discovery regarding the sale of counterfeit Gucci watches by a Canadian retailer, Costco Canada, Inc. ("Costco Canada"). Costco Canada was supplied with the allegedly counterfeit goods by defendant Innopex and its principal, defendant Joshua Frankel. Judge Maas held that, because there was insufficient proof of a nexus with the United States, discovery as to the Canadian transactions would be "tangential and beyond the appropriate scope of discovery in this case." (*Id.* at 12.) Judge Maas also concluded that the Canadian activity did not constitute a "similar act" for purposes of Federal Rule of Evidence 404(b). (*Id.* at 11.)

3    Gucci also objected to a third ruling requiring Gucci to produce its expert for further deposition. That issue is now moot because Gucci's expert did in fact provide the additional testimony. (Letter to the Court from Milton Springut dated March 4, 2002, at 2.)

A. *The Tampering Issue*
 **[1]**    Gucci argues that preclusion of evidence as to the tampering deprives Gucci of its right to a jury trial because it calls its expert's credibility into question. At deposition, Gucci's expert, Jean Michel Guerry, had identified certain genuine watches as counterfeit, and vice versa. Gucci alleged that the reason for the identification difficulty was that the watches were tampered with while in the possession of defense counsel. Defendants denied that any tampering had occurred and offered to provide testimony to that effect.

 **\*2**    Judge Maas ordered a hearing on the issue and directed the parties to submit written statements as to their respective positions. However, by letter dated January 16, 2001, plaintiff withdrew its disqualification motion and request for a hearing, but purported to reserve the issue for trial.[4] Judge Maas rejected plaintiff's reservation:

4    Gucci determined that it was no longer in its interest to pursue the disqualification motion at a hearing. Gucci proffered the following reasons for its reversal: (1) defense counsel already had viewed the most sensitive discovery in the case; (2) a hearing would involve considerable expense and inconvenience; (3) the issue of credibility was one for the jury; and (4) disqualification would delay the case. (Plaintiff's Objections dated February 14, 2001, at 4.)

In my view, Mr. Springut, by withdrawing the request to have this heard pretrial, you are waiving the opportunity to challenge or to present the case that the watches that are in

2002 WL 1870293

the possession of counsel were tampered with while in the possession of counsel, and will not be able to raise that at trial because you'd be sandbagging the defendant who then would have no way of responding without voucher, so at a minimum in my view that is moved out of the case for trial. (1/31/01 Tr. at 3.)

Judge Maas' ruling was not clearly erroneous. First, Gucci cites no authority for its proposition that its right to a jury trial has been undermined by Judge Maas' ruling. Rather, it is well settled that courts have the discretion to rule on evidentiary matters pre-trial, particularly those that may involve an abuse of the judicial process. *See Gonzalez v. Trinity Marine Grp., 117 F.3d 894, 898 (5th Cir.1997)* (affirming use of pre-trial hearing in order to address allegations of evidence tampering and noting that such a decision is "wholly within the discretion of the district court and does not deprive Plaintiff of his right to a jury trial on his claims"). Indeed, if the Court were to allow plaintiff to accuse opposing counsel during trial of tampering with evidence, without first finding some basis for the accusation, a new trial might be warranted. *See, e.g., Draper v. Airco, Inc., 580 F.2d 91, 94–96 (3d Cir.1978)* (reversing jury verdict where plaintiff implied that defense counsel had engaged in misconduct by withholding evidence).

Gucci simply has not provided any grounds for overturning Judge Maas' ruling. Therefore, pursuant to that ruling, Gucci may not argue or present a case during trial that the watches were tampered with while in the possession of defense counsel.

### B. *The Canadian Discovery*

**[2]** Gucci also appeals Judge Maas' decision to deny discovery regarding the alleged distribution of counterfeit watches to Costco Canada. First, Gucci takes issue with Judge Maas' determination that the Canadian transactions lack a nexus with the United States and therefore are not relevant. Specifically, Gucci claims that an adequate nexus exists because some of the watches were processed through Costco's office in Washington State.

Alternatively, Gucci argues that discovery as to the Canadian sales should be permitted because, contrary to Judge Maas' conclusion, such evidence is admissible on the issue of willfulness under Fed.R.Evid. 404(b). Specifically, Gucci argues that willfulness can be shown because Innopex and Frankel were supplying Costco Canada at the same time they were on notice that the watches they had sold in New York were counterfeit.

**\*3** Although this issue is a close one, this Court cannot say that Judge Maas' resolution of it was clearly erroneous. First, although Gucci contends that certain Canadian sales were "processed" through Costco's corporate office in Washington State, Gucci submitted no evidentiary support for that allegation and, in contrast, defendants submitted documents to contradict it. Judge Maas specifically found that plaintiff's proof was insufficient to justify discovery. (1/31/01 Tr. at 12.) Nor is it clear in any event that such "processing" would support a Lanham Act claim. *See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir.1956)* (dismissing Lanham Act claims against a Canadian defendant for sales that occurred in Canada). Therefore, the Court cannot conclude that Judge Maas abused his discretion in denying discovery on that basis.

**[3]** Second, Judge Maas did not clearly err in concluding that, because the Canadian sales were "not a violation of the U.S. trademark laws," they did not constitute a similar act under Fed R. Evid. 404(b). (1/31/01 Tr. at 11–12.) Although evidence regarding contemporaneous infringing conduct in the United States probably would be admissible on the issue of willfulness, *see, e.g., International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S . A., Inc., 80 F.3d 749, 754 (2d Cir.1996)*, at issue here is conduct occurring outside this country which is subject only to Canadian law.

On this appeal, Gucci has submitted excerpts of Canadian statutes and asks this Court to make a determination that defendants' conduct was unlawful thereunder. As a preliminary matter, it should be noted that those legal authorities were not presented to the Magistrate Judge. Moreover, Gucci is in essence asking this Court to try two cases—in other words, to first determine whether defendants' conduct in Canada violated Canadian law and then to use that finding in assessing liability and damages in the instant case. The Court has found no case law, and Gucci has cited to none, requiring it to undertake such a process.[5] Therefore, Gucci has failed to show that the Magistrate's decision to disallow the requested discovery was clearly erroneous. Consequently, Judge Maas' determination will be upheld.

5    This is not a situation where defendants have been found guilty by Canadian authorities or had a judgment entered against them by a Canadian court. Indeed, according to the record before the Court, an investigation by the Royal Canadian Mounted Police concluded that "there was no evidence to suggest that [defendants]

Gucci America, Inc. v. Exclusive Imports Intern., Not Reported in F.Supp.2d (2002)

2002 WL 1870293

had the requisite knowledge or intent to traffic in counterfeit watches." (Defendants' Response to Plaintiff's Objections dated March 5, 2001, Ex. 4.)

II. *The February 21, 2001, and March 6, 2001 Orders*
Gucci next objects to an oral ruling made by Judge Maas on February 21, 2001, which was memorialized in writing on March 6, 2001. At issue is whether Judge Maas correctly ruled that Gucci Group, N.V. ("Gucci Group"), plaintiff's indirect parent corporation, remains in this action as a counterclaim defendant.[6]

6    Plaintiff Gucci is a wholly owned subsidiary of Gucci North America Holdings, Inc., a Delaware corporation, which is a wholly owned subsidiary of Gucci Group, a Netherlands corporation.

This Court, in its earlier Opinion and Order, struck the Amended Answer and Counterclaims filed on December 11, 2000, by defendants Imperial and Exclusive, which contained, among other things, certain antitrust allegations against Gucci Group. 2001 WL 21253, at *5. This Court so ruled because defendants had failed to obtain the prior permission of the Court to amend their pleadings as required by Rule 15 of the Federal Rules of Civil Procedure. (*Id.*)[7] This Court also determined that leave to amend would be denied because, *inter alia,* the antitrust counterclaims would inject delay into the case and were factually remote from the counterfeiting issues. (*Id.* at *6.) Given its decision to strike the pleadings of those defendants, it was this Court's assumption that no counterclaims against Gucci Group remained in the case and that therefore Gucci Group was no longer a party to the action. The Court based this assumption on the fact that Innopex, the only other defendant asserting counterclaims against Gucci Group, had apparently dropped those claims by not including them in its amended answer. (*Id.* at *5 n. 5.)[8]

7    Imperial also had amended its answer and counterclaims once before without permission, on April 3, 2000.

8    Innopex asserted counterclaims in its initial answer on April 3, 2000, but dropped them in its subsequent amended answer filed on December 11, 2000.

 **\*4**  Relying on this Court's decision, Judge Maas ruled in January 2001 that Mr. Tom Ford, a high-level executive of Gucci Group, need not be produced for deposition but instead would have to be subpoenaed under Rule 45. (1/31/01 Tr. at 30.) However, on February 21, 2001, Judge Maas orally

reversed that ruling, holding that Gucci Group remained a party to this action based on Innopex's counterclaims. Judge Maas therefore ruled that Mr. Ford could be deposed. Gucci moved for reconsideration, which was denied by Judge Maas in a written Order dated March 6, 2001 (the "March 6, 2001 Order").

In sum, Judge Maas held that, by virtue of Gucci having prevailed on its application to strike the December 11, 2000 Amended Answer and Counterclaims, that pleading was rendered a nullity and therefore the counterclaims raised by Innopex in its initial answer, other than the antitrust counterclaims, were reinstated. (*See* March 6, 2001 Order at 4.)

 **[4]**    Judge Maas' decision is based on an incorrect reading of this Court's Opinion and Order. The December 11, 2000 Amended Answer and Counterclaims constituted a global pleading filed on behalf of defendants Imperial, Innopex, Frankel, Wagschal, Exclusive and Israelson. This Court did not exclude that pleading in its entirety; rather, its decision struck the Amended Answer and Counterclaims only as it pertained to defendants Imperial and Exclusive, because those entities did not have permission, either by the Federal Rules or by order of this Court, to file amended pleadings at such a late date. This accords with the language employed by this Court, holding that "the amended answers and counterclaims *filed by defendants* Imperial Trading and Exclusive Imports are hereby stricken...." 2001 WL 21253, at *7 (emphasis added).

In contrast, the amended pleading was proper as to defendant Innopex. Because Innopex's initial answer and counterclaims, filed on April 3, 2000, were never answered by counterclaim defendants, Innopex was entitled under the Federal Rules to amend its pleading once before a response was served. *See* Fed.R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...."). Innopex did so by joining the December 11, 2000 pleading but asserting no counterclaims on its behalf. Therefore, Innopex's withdrawal of those counterclaims was proper.

Innopex now argues that it withdrew its counterclaims in reliance on Exclusive and Imperial pursuing those same claims. This statement appears to be nothing more than an after-the-fact rationalization. As Gucci correctly notes, there is no basis in the Federal Rules for a withdrawal of claims conditionally, or in reliance on the pleadings of other parties, nor did Innopex ever indicate at that time that its amendment

2002 WL 1870293

was so conditioned. Moreover, if Innopex believed that it suffered some actionable injury by virtue of Gucci's conduct, it has an obligation to press the claim on its own behalf, rather than relying on the claims of others.

**\*5** Therefore, Innopex's counterclaims are no longer in the case, and the Court perceives no basis for reinstating them. Consequently, the only counterclaims remaining in this action are the claims for tortious interference and declaratory judgment asserted by defendant Imperial against Gucci in its pleading of January 26, 2000.

III. *The July 6, 2001 Orders*

Defendants object to certain discovery rulings of Judge Maas issued on the record on July 6, 2001. Specifically, defendants claim that Judge Maas erred by disallowing certain discovery pertaining primarily to Gucci's watch sources, parts, costs and expert notes thereon. Defendants argue that these items are highly relevant to their defense, which rests on contentions that defendants bought and sold genuine Gucci watches made by Gucci assemblers. According to defendants, this parallel sale of genuine products, while admittedly unauthorized by Gucci, does not violate the Lanham Act under the case of *Polymer Tech. Corp. v. Mimram,* 37 F.3d 74 (2d Cir.1994). However, for the reasons set forth below, none of Judge Maas' rulings are clearly erroneous and therefore his orders must be upheld.

A. *Defendants' Third Set of Interrogatories*

**[5]** On or about March 2, 2001, Gucci made statements in discovery acknowledging that certain unidentified Gucci watch parts were "uniquely styled" for Gucci, while admitting that other parts were not. In addition, Gucci stated that it was aware of "persons or entities other than Gucci" to whom suppliers have "sold components or parts identical or substantially the same as those sold to Gucci." (Defendants' Objections dated July 20, 2001, at 5–6.)

Defendants, in an attempt to identify these persons and parts, served a Third Set of Interrogatories and a Third Request for Documents on April 4, 2001. Plaintiff refused to respond on the grounds that it had already answered 45 interrogatories, more than the 25 permitted pursuant to Fed.R.Civ.P. 33(a), and that defendants had ample opportunity to obtain that information at deposition. Judge Maas upheld plaintiff's position and did not require plaintiff to answer the interrogatories or to produce the documents.

That decision is not clearly erroneous. Defendants now contend that they are entitled to serve 150 interrogatories because there are six defendants in this action. However, where, as here, the parties are acting in unison and are represented by the same counsel, they may be treated as one party for purposes of the interrogatory limits. *See* Wright & Miller, 8A Fed. Prac. & Proc. Civ.2d § 2168.1 (2002). Nor is there anything in the Federal Rules which would entitle defendants to more interrogatories simply because the Magistrate had extended the 25–interrogatory limit once before. In denying the requested discovery, Magistrate Judge Maas properly exercised his discretion to put an end to an already extensive discovery period.

B. *Gucci's Watch Costs*

**[6]** During deposition, plaintiff's expert Mr. Guerry refused to answer questions as to Gucci's costs incurred in producing its watches. Defendants moved to compel that information, arguing that evidence as to Gucci's costs is relevant to show that an alleged counterfeiter, who purchased the same parts at the same cost, probably received those parts from a genuine Gucci source. Judge Maas did not find the requested information to be sufficiently relevant:

**\*6** It seems to me that had your questions during the discovery period been, and where do you buy your cases, where do you buy your backs, where do you buy your own component parts ... that is relevant to the question of whether or not the watches are counterfeit.

It seems to me costs, if it is conceivably relevant, is relevant only to the motivation or intent of various players in this case, your argument being why would we spend almost as much money to buy a counterfeit watch or perhaps as much money to buy a counterfeit watch as we would spend to buy in the grey market a genuine Gucci watch ...

But as to that, Gucci's costs of production as opposed to the price at which a genuine Gucci watch may be available on the chain of distribution strikes me as not really relevant. It may well be that Gucci pays less because Gucci buys in volume.

So as to this request, although I'm certainly not pleased that Mr. Guerry apparently without prompting chose not to answer, I am not going to compel answers at this point.

(Transcript dated July 6, 2001 ("7/6/01 Tr."), at 3.) at 19–20.)

Again, Judge Maas' ruling was not in clear error. Gucci's own costs have no bearing on whether an alleged counterfeiter

Gucci America, Inc. v. Exclusive Imports Intern., Not Reported in F.Supp.2d (2002)
2002 WL 1870293

would find it economical to buy genuine or counterfeit watch components.[9] However, defendants now argue that such costs are relevant to Gucci's motive in bringing this suit, which they allege is to identify rogue Gucci suppliers who sell outside the Gucci chain of distribution in order to cut off discount sales. Whether or not Gucci's aim is to root out such suppliers has little, if any, connection to the cost to Gucci of producing watches. Again, there is simply no basis for overturning Judge Maas' use of his discretion in determining what discovery is appropriate and relevant.

[9]      Nor did Gucci "open the door" on this issue by inquiring of defendants' expert Mr. Lewand as to whether it was economical for a counterfeiter to make high quality watches. Gucci was entitled to cross-examine Mr. Lewand about statements he had made on that subject in his expert report.

### C. *Gucci's Expert Notes*

[7]      Defendants next take issue with Gucci's claim that it cannot produce the notes taken by its experts, because it has no such notes. According to defendants, this answer is "too pat" and "untrustworthy." (Defendants' Objections dated July 20, 2001, at 11.) Specifically, defendants claim that various evidence and inferences support the conclusion that Jean Martin, Mr. Guerry's assistant, took notes when he aided Mr. Guerry in examining certain watches for Mr. Guerry's expert report. (*Id.* at 12.)

However, Gucci did not represent to Judge Maas that Mr. Martin did not take such notes. Rather, Gucci represented that it undertook a diligent search and that, to the extent the notes ever existed, they were destroyed long ago. (*See* 7/6/01 Tr. at 26–27.) Judge Maas found this explanation acceptable:

> I am satisfied. I am not going to require anything further with respect to the notes of Mr. Guerry or Mr. Martin, despite the fact that those notes may have existed and have now been destroyed or lost. If Mr. Guerry testifies at the trial I would think that would be certainly grist for the mill....

**\*7** (*Id.* at 27–28.)

Defendants argue that Judge Maas should have ordered further inquiries, and allowed defendants to question Mr. Martin as to whether he retained such notes in his personal files. However, Judge Maas obviously was satisfied with Gucci's representations that no notes existed and there was no

abuse of discretion in accepting counsel's statements on the record.[10]

[10]      Defendants suggest that Mr. Martin should be precluded from trial because he was not produced for deposition. This issue is premature. The Court will address it prior to trial after receiving the parties' witness lists.

[8]      Defendants also argue that Judge Maas erred by not requiring plaintiff to produce certain documents that Mr. Guerry had reviewed in connection with his supplemental report. Defendants contend that Judge Maas, at the very least, should have evaluated those documents *in camera* before accepting plaintiff's privilege assertions. However, defendants cite no authority for the proposition that Judge Maas was obligated to conduct a hands-on review. Judge Maas acted within his discretion in directing plaintiff's counsel to described the content of those documents on the record, and so ruling on that basis. Again, defendants have failed to make any showing of clear error here.

### D. *Interrogatory Verifications*

[9]      Gucci at various times served five verifications to interrogatory responses signed by Karen Lombardo, the Gucci Vice President of Human Resources. Defendants took Ms. Lombardo's deposition, allegedly because they suspected she was "merely a figurehead 'primed' by counsel to sign for plaintiff." (Defendants' Objections dated July 20, 2001, at 14.) At the deposition, Ms. Lombardo testified that she had no knowledge of the substantive truth of the interrogatory responses and had taken no independent verification of the facts asserted, but had instead relied upon information furnished by counsel. Defendants now claim that Ms. Lombardo's lack of personal knowledge runs afoul of Fed.R.Civ.P. 33(b).

Judge Maas declined to impose sanctions, stating first that the purpose of the verification requirement is primarily so that the answering party is bound by its responses. (*See* 7/6/01 Tr. at 9.) Judge Maas went on to observe that:

> [A]s a practical matter here a lot of the information that was requested had to come from different sources, some which [sic] were not even Gucci America because of the internecine relationships among various Gucci corporations such that counsel may well have been the only person who could coordinate the information.

I know that a lot of this is consistent with [defendants'] theory that [plaintiff's counsel], in effect, is the director of copyright enforcement or trademark enforcement for Gucci. But even if that were the case, that certainly is an option that Gucci has available to it, so long as a corporate officer who felt that he or she could reasonably rely on [counsel's] representations did it and the responses are signed in appropriate form....

(*Id.* at 9–10.)

There was no clear error in Judge Maas' decision to reject defendants' request for sanctions. First and foremost, defendants make no allegation that the substance of the responses was untrue, thus they have not been prejudiced by Ms. Lombardo's lack of personal knowledge. Moreover, defendants could, and did, ask for the identities of those persons who provided the information contained in the interrogatory responses.

 **\*8** Secondly, defendants cite no case law which would preclude a corporate representative from relying on counsel's efforts in gathering information and drafting appropriate interrogatory responses. Indeed, as one Court of Appeals has noted:

Federal Rule of Civil Procedure 33 expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by furnishing such information as is available to the party. Of course, the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate. The representative may accomplish this through whatever internal process the corporation has chosen, including discussions with counsel.

*Shepherd v. ABC, Inc.,* 62 F.3d 1469, 1482 (D.C.Cir.1995) (internal citations omitted). Therefore, it cannot be said that Judge Maas' ruling was clearly erroneous.

### E. *Gucci's Rule 30(b)(6) Witness*

 **[10]** Similar to the above situation, defendants complain that Gucci designated Robert Artelt as its Rule 30(b)(6) witness, despite Mr. Artelt's lack of familiarity with the noticed subjects, in order to avoid producing a witness with actual knowledge, and because Mr. Artelt was already a named deponent.[11] Defendants argue that Mr. Artelt had no personal knowledge of the Rule 30(b)(6) subject matters, but instead based his testimony on information provided by

plaintiff's counsel prior to deposition. Defendants therefore contend that Mr. Artelt's testimony was inadequate, especially with respect to (1) the chain of custody of certain alleged counterfeit watches and (2) the sources known to Gucci of those watches and parts.

11    Mr. Artelt is the Managing Director of Gucci Timepieces America, an affiliate of plaintiff.

Judge Maas rejected defendants' argument, holding that the Rule 30(b)(6) witness need not be the most knowledgeable and finding that "on balance [Mr. Artelt] was marginally adequate." Again, there is no clear error here. Because Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject, so long as they are able to convey the information known to the corporation. *See Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995) ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.") (citing *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)); *see also Cruz v. Coach Stores, Inc.,* No. 96 Civ. 8099, 1998 WL 812045, at \*4 n. 3 (S.D.N.Y. Nov.18, 1998) ("Rule 30(b)(6) does not require a party to produce someone who is 'most knowledgeable' but only someone whose testimony is binding on the party."), *aff'd in part, vacated in part on other grounds,* 202 F.3d 560, 573 (2d Cir.2000).

 **\*9** Moreover, plaintiff has represented that the knowledge imparted to Mr. Artelt is the sum of all knowledge known to both Gucci and its affiliates. Thus there is simply no basis for overturning Judge Maas' ruling in this respect.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Orders of January 31, 2001, and July 6, 2001, are upheld in all respects. The Magistrate Judge's Orders of February 21, 2001, and March 6, 2001, are vacated and remanded, in light of this Opinion and Order, for consideration as to what, if any, discovery should be available from Gucci Group and/or other non-parties. Furthermore, the parties are directed to appear before this Court on September 20, 2002, at 9:30 a.m. for the scheduling of their requested summary judgment motions.

2002 WL 1870293

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1870293

---

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

#6

🚩 KeyCite Yellow Flag

Declined to Follow by Pouliot v. Paul Arpin Van Lines, Inc., D.Conn., June 14, 2004

168 F.R.D. 448
United States District Court, D. Connecticut.

Charles R. McCARTHY,
Jr., and Connell Medley,
v.
PAINE WEBBER GROUP, INC.,
Painewebber Incorporated, and Malcom Corp.

Civil No. 3:92–cv–301 (WWE).
|
July 22, 1996.

**Synopsis**

Corporation which had been named as one of multiple defendants in civil action under Racketeer Influenced and Corrupt Organizations Act (RICO) moved to compel response to interrogatories in which it sought to elicit contentions and allegations of plaintiffs. The District Court, Eginton, Senior District Judge, held that motion to compel was premature.

Motion denied.

West Headnotes (5)

**[1]** **Federal Civil Procedure** 👉 Motion for leave to submit, and proceedings thereon

Corporation which had been named along with other entities as defendant in civil Racketeer Influenced and Corrupt Organizations Act (RICO) action, and which sought to propound interrogatory consisting of 26 subparts, was required to seek leave of court before propounding interrogatories regardless of whether or not corporation as individual defendant had previously propounded interrogatories. Fed.Rules Civ.Proc.Rule 33, 28 U.S.C.A.

5 Cases that cite this headnote

**[2]** **Federal Civil Procedure** 👉 Adverse party's case; contention interrogatories

Term "contention interrogatories" refers to several types of questions; such interrogatories may ask another party to indicate what it contends, to state all facts on which it bases its contentions, to state all evidence on which it bases its contentions, or to explain how law applies to facts, and are distinct from interrogatories that request identification of witnesses or documents that bear on allegations. Fed.Rules Civ.Proc.Rule 33(c), 28 U.S.C.A.

41 Cases that cite this headnote

**[3]** **Federal Civil Procedure** 👉 Adverse party's case; contention interrogatories

While contention interrogatory is not necessarily objectionable merely because answer to it involves opinion or contention that relates to fact or application of law to fact, because of their nature, such interrogatories are more appropriate after substantial amount of discovery has been conducted. Fed.Rules Civ.Proc.Rule 33(c), 28 U.S.C.A.

39 Cases that cite this headnote

**[4]** **Federal Civil Procedure** 👉 Adverse party's case; contention interrogatories

Interrogatories seeking to elicit party's contentions at time of trial are not objectionable, as responses to such questions will help narrow issues to be tried. Fed.Rules Civ.Proc.Rule 33(c), 28 U.S.C.A.

9 Cases that cite this headnote

**[5]** **Federal Civil Procedure** 👉 Adverse party's case; contention interrogatories

Interrogatories submitted by corporation which had been named as defendant in civil action under Racketeer Influenced and Corrupt Organizations Act (RICO) in which corporation sought to elicit contentions and allegations of plaintiffs were premature, and corporation's motion to compel responses by plaintiffs was

denied, where substantial discovery remained to be completed and corporation had made no showing as to why any relevance of information sought outweighed burden its collection would impose on plaintiffs while discovery was ongoing. Fed.Rules Civ.Proc.Rule 33(c), 28 U.S.C.A.

4 Cases that cite this headnote

## Attorneys and Law Firms

**\*449** Richard A. Bieder, Richard A. Fuchs, Elizabeth Koskoff, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, Herbert E. Milstein, Andrew N. Friedman, Theresa Crumpler Anzaldua, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Arthur M. Schwartzstein, Washington, DC, for Charles R. McCarthy, Jr., Connell Medley.

John R. Snyder, Bingham Dana & Gould, Boston, MA, James Scott Rollins, Bingham, Dana & Gould, Hartford, CT, for Paine Webber Group, Inc., Painewebber Inc.

John R. Snyder, Bingham Dana & Gould, Boston, MA, Carol A. Fantozzi, James Scott Rollins, Bingham Dana & Gould, Hartford, CT, for Malcom Corp., John F. Perkowski, William C. Bush.

*RULING ON MOTION TO COMPEL PLAINTIFFS' RESPONSES TO INTERROGATORIES*

EGINTON, Senior District Judge.

This is a class action brought by a class of limited partners alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and related state law claims. Defendant Malcom Corporation moves to compel plaintiffs to answer its "First Set of Interrogatories" which are substantially the same as the statements required by the Standing Order in Civil RICO Cases of the District of Connecticut. Plaintiffs object to the interrogatories on the grounds that (1) defendant should not be permitted to "evade" the interrogatory limit set forth in Fed.R.Civ.P. 33; and (2) as contention interrogatories, they should be propounded, if at all, only after the close of discovery. For the following reasons, the motion will be denied.

In an endorsement order dated November 29, 1995, this court denied a "Motion For An Order Requiring Plaintiffs to File a RICO Case Statement or in the Alternative to Increase Defendants' Interrogatory Limit" that was brought by all defendants. In denying the motion, the court ruled that this District's Standing Order in Civil RICO Cases did not apply retroactively and that, should defendants wish to propound more than the twenty-five (25) interrogatories permitted by the Federal Rules of Civil Procedure, the interrogatories should be submitted to the court for review.

**[1]** Defendant argues that it was not necessary to submit the interrogatories at issue here for review because it, as an individual defendant, has not exceeded the twenty-five interrogatory limit. As a preliminary matter, the proposed interrogatories consist of twenty-six (26) subparts. Therefore, defendant was required to seek leave of this court before propounding the interrogatories regardless of whether he, as an individual defendant, **\*450** has not previously propounded interrogatories. Fed.R.Civ.P. 33.

Furthermore, defendant's argument is disingenuous. Rule 33 of the Federal Rules of Civil Procedure provides that "each party" may submit up to twenty-five interrogatories "including all discrete subparts" without leave of court. However, in this case, all defendants have been represented by the same law firm since May 1993, and have jointly filed and responded to all motions since that time. In fact, all defendants brought the previously mentioned motion to compel answers to the same type of interrogatories that are at issue here. The motion was denied. However, in the interests of judicial economy, the court will construe the present motion as a request for review of the proposed interrogatories.

**[2]** Plaintiffs argue that the answers to the proposed interrogatories should not be compelled at this time, if at all, because they are contention interrogatories. The term "contention interrogatories" refers to several types of questions. They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations. *In re Convergent Technologies Securities Lit.,* 108 F.R.D. 328, 332–33 (N.D.Cal.1985).

**[3]** **[4]** A contention interrogatory is not "necessarily objectionable merely because an answer to it involves an

opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(c). However, because of their nature, they "are more appropriate after a substantial amount of discovery has been conducted." *Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 95 (E.D.Pa.1992) (citations omitted). "Interrogatories seeking to elicit a party's contentions at the time of trial are not objectionable, as responses to these questions will help narrow the issues to be tried." *Leksi, Inc. v. Federal Ins. Co.,* 129 F.R.D. 99, 107 (D.N.J.1989). Therefore, the court has the discretion to order that a contention interrogatory not be answered until after designated discovery has been completed, until a pre-trial conference has been held, or until some other later time. Fed.R.Civ.P. 33(c).

**[5]** The proposed interrogatories in this case seek to elicit the contentions and allegations of plaintiffs. Defendant argues that their relevance to plaintiffs' claims and to defendant's defenses is "validated by the RICO standing order" and that they are therefore "presumptively appropriate and unobjectionable." Defendant has not indicated why this information is needed at this time or how it is calculated to lead to the discovery of admissible evidence. Plaintiffs do not seriously deny that any of the information sought is relevant, but argue that, even if the information is relevant, the interrogatories are premature.

This court agrees with plaintiffs. The inquiry into the propriety of the proposed interrogatories at this time neither begins nor ends with the fact that they substantially track the Standing Order in Civil RICO Cases. The issue here is timing. Plaintiffs' contentions are clearly relevant at the outset of litigation and defendant has a right to their revelation.

The Standing Order in Civil RICO Cases, requiring the filing of certain information within twenty (20) days of the filing of the complaint, was promulgated for that reason. Such information might also be relevant at the close of discovery or at the pre-trial stage, as recognized in Rule 33(c), in order to narrow the issues for trial. However, defendant has not shown why any relevance of the information that is sought by these interrogatories outweighs the burden its collection would impose on plaintiffs at this time while discovery is ongoing.

It cannot be said that the parties are at the end of the discovery stage in this litigation. Defendant does not dispute plaintiffs' contention that "substantial discovery ... remains to be completed." At the present time, factual discovery is scheduled to be completed by September 18, 1996. Plaintiffs state that they have taken only one deposition and have received a "very limited number of documents." Plaintiffs' motion to compel production of documents from a third **\*451** party is pending before the United States District Court, Southern District of New York. This court has ordered that the depositions of five third parties not be taken until after that motion is ruled on.

Accordingly, defendant's Motion to Compel Plaintiffs' Responses to Interrogatories [176] is DENIED without prejudice to renew.

**All Citations**

168 F.R.D. 448

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#7

2020 WL 1666787

2020 WL 1666787
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Ira KLEIMAN, as personal representative
of the estate of David Kleiman, and W&K
Info Defense Research, LLC, Plaintiffs,

v.

Craig WRIGHT, Defendant.

CASE NO. 18-CIV-80176-Bloom/Reinhart
|
Signed 04/03/2020

**Attorneys and Law Firms**

Devin Freedman, Constantine Philip Economides, Roche Cyrulnik Freedman LLP, Andrew Scott Brenner, Stephen N. Zack, Laselve Elijah Harrison, Boies Schiller Flexner LLP, Miami, FL, Joseph M. Delich, Pro Hac Vice, Kyle Roche, Roche Freedman LLP, Brooklyn, NY, Maxwell V. Pritt, Pro Hac Vice, Boies Schiller Flexner LLP, San Francisco, CA, Stephen Lagos, Pro Hac Vice, Roche Cyrulnik Freedman LLP, New York, NY, for Plaintiff Ira Kleiman.

Joseph M. Delich, Pro Hac Vice, Roche Freedman LLP, Brooklyn, NY, Maxwell V. Pritt, Pro Hac Vice, Boies Schiller Flexner LLP, San Francisco, CA, Andrew Scott Brenner, Stephen N. Zack, Boies Schiller & Flexner, Constantine Philip Economides, Devin Freedman, Roche Cyrulnik Freedman LLP, Miami, FL, Stephen Lagos, Pro Hac Vice, Roche Cyrulnik Freedman LLP, New York, NY, for Plaintiff W&K Info Defense Research, LLC.

Andres Rivero, Alan H. Rolnick, Amanda Marie McGovern, Schneur Zalman Kass, Rivero Mestre LLP, Coral Gables, FL, Bryan Lee Paschal, Zaharah R. Markoe, Rivero Mestre LLP, Miami, FL, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO LIMIT PLAINTIFFS' INTERROGATORIES (DD 443)**

BRUCE REINHART, UNITED STATES MAGISTRATE JUDGE

**\*1** Currently before the Court is the parties' Joint Discovery Memorandum (DE 443), which I construe as Defendant's

Motion for a Protective Order. On March 11, 2020, Plaintiff W&K Info Defense Research, LLC served thirteen interrogatories on Defendant. DE 443-8. Defendant objects to the interrogatories as excessive, claiming that Plaintiffs should be precluded from propounding any additional interrogatories because the Court should view the two Plaintiffs as a single party for purposes of Rule 33. Plaintiffs argue that since Rule 33 permits service of 25 interrogatories per party, they are entitled to serve a total of 50 interrogatories on Defendant. Fed. R. Civ. P. 33(a)(1). I heard oral argument of this dispute on April 1, 2020.

Pursuant to Rule 26(c), the Court may issue a protective order upon a showing of "good cause" to limit the scope of discovery upon motion of a party. *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, No. 16-20212-CIV, 2018 WL 4963245, at \*2 (S.D. Fla. Sept. 28, 2018) (J. Torres) (citing *Patterson v. United States Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990)) ("Matters pertaining to discovery are committed to the sound discretion of the district court.").

Rule 33(a)(1) states in pertinent part, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete parts." Although the court orders authorized by this Rule generally expand the number of allowable interrogatories, the Rule also contemplates a court order reducing the number of allowable interrogatories. *See also* Fed. R. Civ. P. 1. (Rules to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Notwithstanding Rule 33's allowance of 25 interrogatories per party, in certain circumstances courts will use their discretion to impose a 25-interrogatory limit per side when parties to an action are only "nominally separate." *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 (2d ed. 1994) ("As the Advisory Committee put it, '[t]he aim is not to prevent needed discovery, but to provide some judicial scrutiny before parties make potentially excessive use of this discovery device.' "). Parties may be considered nominally separate when represented by a single attorney, when there is unity of action, or when there is a legal relationship between parties. *Id.*

Here, Plaintiff Kleiman is the corporate representative of Plaintiff W&K. Both Plaintiffs are represented by the same attorneys and their interests are aligned. Therefore, I find that they are only nominally separate parties and that there

is good cause to limit the number of interrogatories Plaintiffs may serve on Defendant.[1] *See United States ex rel. Woodruff v. Hawai'i Pac. Health*, No. CV 05-00521 JMS-LEK, 2008 WL 11420075, at *3 (D. Haw. Feb. 29, 2008) (court found plaintiffs, who were two doctors in a *qui tam* action, were only nominally separate parties, and thus, were only entitled to serve a total of twenty-five written interrogatories) (citing *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (finding a limit 25 interrogatories per side to be "a more sensible approach")). *Cf. Auther v. Oshkosh Corp.*, No. 09-CV-00527(A)(M), 2010 WL 1404125, at *4 (W.D.N.Y. Mar. 30, 2010) (while plaintiffs' claims arose from the same incident, court found they were "more than nominally separate" because husband's negligence and products liability claims were distinct from wife's loss of consortium claim and thus discovery should not be limited).

1     Moreover, as I stated during the telephonic hearing, the proposed interrogatories are contention interrogatories that ask Defendant to give the basis for his affirmative defenses. Plaintiffs have deposed Defendant for 20 hours and have had adequate opportunity to question him about the subject of these interrogatories. Allowing further inquiry at this late stage is disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

**\*2** Therefore, Defendant's Motion for a Protective Order (DE 443) is **GRANTED** and the thirteen interrogatories propounded by Plaintiff W&K at Exhibit H are stricken.

**DONE AND ORDERED** in Chambers this 3rd day of April 2020, at West Palm Beach in the Southern District of Florida.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1666787

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#8

2022 WL 831432

2022 WL 831432
Only the Westlaw citation is currently available.
United States District Court, E.D.
Tennessee, Northern Division,
At Knoxville.

KNOX TRAILERS, INC., and Post
Trailer Repairs, Inc., Plaintiffs,
v.
Jeff CLARK, et al., Defendants.

No. 3:20-CV-137-TRM-DCP
|
Signed 03/18/2022

**Attorneys and Law Firms**

Angelique Weaver, Mayfield Law Firm, LLP, Lubbock, TX, Joseph Mark Parsons, Tod Mayfield, Mayfield Rahlfs Weaber & Parsons LLP, Amarillo, TX, Peter R. Ginsberg, Moskowitz & Book, LLP, New York, NY, for Plaintiffs.

Jeffrey E. Farrell, Cynthia Oghenovo Akatugba, Dominique Stafford, Office of the Attorney General, Austin, TX, for Defendants.

**MEMORANDUM AND ORDER**

Debra C. Poplin, United States Magistrate Judge

**\*1** This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel the Discovery Responses of Defendants Titan Trailer Repair and Sales, LLC, Billy Maples, and Amanda Maples ("Motion to Compel") [Doc. 170]. The Motion is ripe for adjudication. Accordingly, for the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion [**Doc. 170**].

Plaintiffs' Motion alleges many deficiencies with respect to the discovery responses of Defendant Titan Trailer Repair and Sales, LLC ("Titan Trailer"), Billy Maples, and Amanda Maples (collectively, "Defendants"). Plaintiffs primarily assert that Defendants have not sufficiently responded to their interrogatories and requests for production. Federal Rule

of Civil Procedure 26 governs discovery. Specifically, Rule 26(b)(1) provides as follows:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at \*1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Further, Rule 26(b)(2)(C)(i) provides as follows:

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

With respect to requests for production, Rule 34(b)(2)(E) states that a party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Further, "a[n] objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

**\*2** The parties' briefs have addressed each issue by topic. The Court will address the topics in the order in which they appear in the parties' briefs, unless otherwise noted.[1]

Case: 2:20-cv-03785-ALM-KAJ Doc #: 1016-1 Filed: 04/28/26 Page: 43 of 97 PAGEID #: 25917

Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)

2022 WL 831432

1      For ease of reference, the Court will refer to Plaintiffs' Request for Production of Documents as "RFP." The Court also notes that Plaintiffs have served multiple rounds of discovery requests in this case. Thus, the Court will refer to Plaintiffs' first round of discovery requests to Defendants as "First," second round of discovery requests as "Second," and so forth (*e.g.*, First Interrogatory, First RFP, Second Interrogatory).

**1. Titan Trailer's and Billy Maples's Supplementation of Discovery Responses**

Plaintiffs argue that the Chief District Judge admonished Titan Trailer and Billy Maples regarding their evasive discovery responses in his Memorandum and Order [Doc. 123] granting Plaintiffs' request for a preliminary injunction. Plaintiffs state that Titan Trailer and Billy Maples supplemented their responses, but the supplementation fails to conform to the truth and are evasive. Titan Trailer and Billy Maples respond that their answers to the discovery requests are complete, and they deny that the responses are evasive.

Specifically, at dispute are Titan Trailer's responses to First Interrogatory No. 22, First RFP No. 9, and Second Interrogatory No. 1, and Billy Maples's responses to First Interrogatory Nos. 11 and 22 and Third RFP Nos. 4, 8, and 10. The Court has reviewed the discovery responses and will not require Defendants to provide further supplementation. Plaintiffs only provide two examples of an alleged evasive discovery response, which are Billy Maples's responses to Interrogatory Nos. 11 and 22. Interrogatory No. 11 seeks information regarding what property Billy Maples took from Plaintiffs. The Court finds that Plaintiffs' objections to Billy Maples's responses to Interrogatory Nos. 11 and 22 are essentially rendered moot given that the Court sanctioned Billy Maples and Titan Trailer in the form of establishing the following fact: To the extent that Plaintiffs can show that their Southware databases are trade secrets, Titan Trailer and Billy Maples misappropriated such trade secrets by improperly acquiring and using them. *See* [Doc. 252].

In any event, Plaintiffs' complaint relates to Billy Maples's denial that customer or vendor history was transferred off the USB drive or accessed for use by him or Titan Trailer. Plaintiffs argue that Billy Maples's denial is contradicted by the Chief District Judge's Memorandum and Order. The Court disagrees. The Chief District Judge found that Billy Maples "*likely* also used" this information. [Doc. 123 at 15] (emphasis added). This finding was based on Billy Maples not being able to testify whether Plaintiffs' customer information was loaded into Titan Trailer's database; Billy Maples's testimony that he imported Plaintiffs' customer information, vendor information, and inventory into Titan Trailer's system; and his testimony that he was unsure of the extent of Plaintiffs' customizations that Titan Trailer is using today. [*Id.* at 15]. The Chief District Judge's finding that Billy Maples "likely also used" the information does not equate to a definitive finding that he did use the information.

**\*3** Plaintiffs also argue that Billy Maples objects to the word "belonging" in the interrogatory, arguing that the Chief District Judge found that it was highly likely that this information did belong to Plaintiffs. For similar reasons as above, the Court finds Plaintiffs' argument not well taken. While Plaintiffs state that Billy Maples cannot now assert objections in response to the interrogatories, the Court notes that Billy Maples provides detailed (some of which the Court acknowledges is irrelevant and unnecessary) responses to Interrogatory Nos. 11 and 22. In summary, Billy Maples acknowledges he downloaded Plaintiffs' Southware operating system and claims he only transferred customer and vendor information but not history details. Should Plaintiffs have documents or other evidence to rebut Billy Maples's responses, the jury should weigh and determine.

The Court declines to go through the remaining discovery responses and determine how such responses are evasive and contrary to the testimony at the preliminary injunction hearing given that Plaintiffs did not. Accordingly, the Court finds Plaintiffs' request on this point not well taken.

**2. Production After March 5, 2020**

Plaintiffs argue that they have served a number of discovery requests relating to Defendants' conduct that occurred after they resigned their employment with Plaintiffs on March 5, 2020. Plaintiffs state that Defendants have arbitrarily cut out production of information and documents after March 5, 2020. Plaintiffs argue that Defendants' tortious conduct did not stop on March 5, 2020, making information after this date relevant.

Defendants state that they did produce documents that were dated after March 5, 2020, and they include a list of examples of such documents. Defendants state that after Plaintiffs filed their motion, Plaintiffs submitted an expert report using Titan Trailer's financial data from March 1, 2020, to March 31, 2021. Defendants contend any additional requests for documents dated after March 5, 2020, seeks information not relevant to the issues in this lawsuit.

2022 WL 831432

Plaintiffs reply that they are concerned with the complete absence of several categories of documents that occurred after March 5, 2020, including communications between certain individuals.

Contrary to Defendants' contention, the Court finds that generally the fact that an event occurred after March 5, 2020, when many Defendants left Plaintiffs' employ, does not necessarily make it irrelevant. The Court, however, will address the discovery requests individually. Specifically, at dispute are Titan Trailer's responses to First Interrogatory Nos. 4 and 7, First RFP Nos. 3 and 7, and Second RFP No. 8, and Billy Maples's responses to First Interrogatory No. 9, First RFP Nos. 1, 4, 8, and Second RFP Nos. 5, 7, and 8. With respect to the discovery responses served on Titan Trailer, the Court finds as follows:

**First Interrogatory No. 4**: Please list all current and past members of Titan Trailer[ ] Repairs & Sales, LLC, and for any changes in membership, please list the date(s) the member became a member or left the membership of Defendant.

**Ruling:** The Court **ORDERS** Titan Trailer to supplement its response with information after March 5, 2020, to the present, **within fourteen (14) days** of the instant Memorandum and Order.

**First Interrogatory No. 7**: Please state which of your employees were solicited from Plaintiffs' companies to work for you.

**Ruling:** The Court **ORDERS** Titan Trailer to supplement its response with information after March 5, 2020, to the present, **within fourteen (14) days** of the instant Memorandum and Order.

**First RFP No. 3**: Please produce any and all contracts signed by employees, managers, owners, or independent contractors of Titan Trailer[ ] Repair and Sales, LLC.

**Ruling:** The Court finds RFP No. 3 overbroad and will not require Titan Trailer to supplement. Specifically, this RFP is too broad as it is not limited in temporal scope or subject matter.

**\*4 First FRP No. 7**: Please produce the complete records for any phone referenced in Interrogatory No. 20.

**Ruling:** The Court has addressed this RFP in section 4 below.

**Second RFP No. 8**: Produce all emails, text messages, or other form of communications between Mr. Maples, or any other representative or agent of Titan Trailer, and any customer or vendor of Plaintiffs, or any of their affiliates, agents or employees, at any time regarding the formation of Titan Trailer, any entity by which Titan Trailer was formerly known and/or any business or completed enterprise which is in the same line of business as either of Plaintiffs.

**Ruling:** The Court **ORDERS** Titan Trailer to supplement with information occurring after March 5, 2020, to the present **within fourteen (14) days** of this Memorandum and Order.

With respect to the discovery requests served on Billy Maples, the Court finds as follows:

**First Interrogatory No. 9**: Please state if you have ever solicited Plaintiffs' employees to work for or at Titan Trailer[ ], and if you have solicited Plaintiffs' employees, provide names of which employees solicited and the date you solicited each such employee(s).

**Ruling:** The Court **ORDERS** Billy Maples to supplement with information occurring after March 5, 2020, to the present **within fourteen (14) days** of this Memorandum and Order.

**First RFP No. 1:** Please produce any correspondence exchanged by and between you and the other listed Defendants relating to Titan Trailer[ ].

**Ruling:** The Court has addressed this request in section 8 below.

**First RFP No. 4**: The parties did not include this discovery request in their filings.

**Ruling:** The Court declines to make any findings as to this discovery request given that it does not have a copy of First RFP No. 4.

**First RFP No. 8:** Please produce any and all communication between you and others you solicited to work at Titan Trailer[ ].

2022 WL 831432

**Ruling:** The Court will address this request in section 8 below.

**Second RFP No. 5:** Produce all emails, text messages, or other form of communications between Mr. Maples and any other investor or prospective investor in Titan Trailer regarding the formation or creation of Titan Trailer, any entity by which Titan Trailer was formerly known, or any business or contemplated enterprise which is in the same line of business as either of Plaintiffs.

**Ruling:** The Court **ORDERS** Billy Maples to supplement with information occurring up to the time when Titan Trailer began its operations **within fourteen (14) days** of this Memorandum and Order.

**Second RFP No. 7**: Produce all emails, text messages, or other form of communications between Mr. Maples, or any other representative or agent of Titan Trailer, and Great Dane, or any of Great Dane's affiliates, agents, or employees, at any time.

**Ruling**: The Court **ORDERS** Billy Maples to produce all emails, text messages, or other forms of communications between him or agents of Titan Trailer and Great Dane or its agents relating to Titan Trailer's attempts to solicit Great Dane's business from Plaintiffs.

**Second RFP No. 8:** Produce all emails, text messages, or other form of communications between Mr. Maples, or any other representative or agent of Titan Trailer, and any customer or vendor of Plaintiffs, or any of their affiliates, agents, or employees, at any time regarding the formation of Titan Trailer, any entity by which Titan Trailer was formerly known and/or any business or contemplated enterprise which is in the same line of business as either of Plaintiffs.

**\*5 Ruling:** The Court **ORDERS** Billy Maples to supplement with information occurring after March 5, 2020, to the present **within fourteen (14) days** of this Memorandum and Order.

**3. Documents Relating to the Planning of Titan Trailer**

Plaintiffs state that in response to discovery requests relating to the formation of Titan Trailer and when the planning began, Titan Trailer and Billy Maples provided evasive responses. Plaintiffs state that Titan Trailer and Billy Maples refused to provide earlier documents about the planning or when that planning of Titan Trailer began.

Defendants argue that Plaintiffs have misunderstood and misused Tennessee law on preparing to compete and fiduciary duties. In any event, Defendants state that Billy Maples and Titan Trailer have described their preparations to compete and turned over documents ad nauseum.

In reply, Plaintiffs state that on December 4, 2019, Billy Maples emailed Heath Brownlee a comprehensible breakdown of potential costs for their new business endeavor, and Billy Maples explained what they would need. Plaintiffs state despite this communication, Billy Maples asks this Court to believe that he took no planning actions before this December 4 email. Plaintiffs maintain that Titan Trailer and Billy Maples should supplement their discovery responses and produce all corresponding documents.

Specifically, Plaintiffs seek an order compelling Titan Trailer to provide complete responses to Plaintiffs' First Interrogatory Nos. 13-15 and Billy Maples to provide complete responses to First Interrogatory Nos. 6, 13, and 19. In addition, Plaintiffs seek an order compelling Titan Trailer and Billy Maples to produce any related documents or to affirmatively state that all responsive documents have been produced. These discovery requests are provided below:

**Interrogatory No. 13 (Titan Trailer):** Please state when Defendant first began planning to open to the public, steps Defendant took to open such business, and list all individuals involved in planning such opening.

**Interrogatory No. 14 (Titan Trailer):** Please state all plans to open Defendant's business which occurred while any of the Defendants in this matter were still employed by Plaintiffs.

**Interrogatory No. 15 (Titan Trailer):** Please state whether any part of your business was planned by any of the co-Defendants in this matter while the co-Defendants were still being paid by Plaintiffs.

**Interrogatory No. 6 (Billy Maples):** Please describe, in detail, how you learned about Titan Trailers Repairs & Sales, LLC ("Titan Trailers"), and the approximate date that you first heard about Titan Trailers.

**Interrogatory No. 13 (Billy Maples):** Please state how long you had been planning to begin the business Titan Trailers.

**Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)**

2022 WL 831432

**Interrogatory No. 19 (Billy Maples):** Please state your role in starting and building the business of Titan Trailers.

The Court has reviewed the responses to these discovery request and will not require further supplementation. Titan Trailer responds that Billy Maples and Heath Brownlee began having conversations in "late 2019 or possibly early January 2020." Defendants have produced the email from Billy Maples dated December 4, 2019, outlining the projected costs along with the filing acknowledgments in early 2020. Such evidence comports with Defendants' responses that the planning began in late 2019. It appears that Billy Maples is taking the position that while he took some steps in late 2019, he was not fully committed to the idea until 2020. Any discrepancies with his testimony and the documentary evidence can be addressed during depositions or at trial. The Court declines to order supplementation of the above discovery responses. The Court, however, will **ORDER** Titan Trailer and Billy Maples, if they have not already done so, to produce any corresponding documents, even if they originated prior to December 2019, **within fourteen (14) days** of this Memorandum and Order. If no other responsive documents exist, Titan Trailer and Billy Maples **SHALL** so state.

#### 4. Telephone Records

**\*6** Plaintiffs have requested that Titan Trailer "produce the complete records for any phone" on which Titan Trailer's business is conducted. Plaintiffs state that this discovery request includes Heath Brownlee, Billy Maples, Amanda Maples, Paul Henegar, Jeff Clark, Amy Clark, and Roy Bailey. Plaintiffs state that they need logs and communications to identify when Titan Trailer was functional and such discovery would reveal those individuals involved in the conspiracy to steal Plaintiffs' information and trade secrets and unfairly complete. Plaintiffs state that this information would also show which employees, customers, and vendors Billy Maples and others improperly contacted.

Defendants state that Plaintiffs' objection is moot because AT&T responded to a subpoena issued by Titan Trailer on November 23, 2021, for detailed phone records. Defendants state that such production will resolve this point with respect to the phone records. Defendants state that they have complied with regard to text messages.

Plaintiffs reply that its request is not completely moot. Plaintiffs state that Titan Trailer has not produced any of the requested phone records related to communications. Plaintiffs maintain that they have requested the complete records for any phone on which Titan Trailer's business is conducted. Plaintiffs argue that if Titan Trailer can subpoena their phone record logs, it can also subpoena their correspondence on the requested phones. Plaintiffs state that Titan Trailer should be required to provide all of the requested phone records, including text messages and any other communications.

Specifically, in the instant matter, Plaintiffs seek an order compelling Titan Trailer to respond to First RFP No. 7, which states:

**First RFP No. 7:** Please produce the complete records for any phone referenced in Interrogatory No. 20.

Interrogatory No. 20 states: "Please list the complete information, including, but not limited to the phone number and carrier information, for any phone, personal or otherwise, used for any business activity for Defendant or any of Defendant's employees, managers, owners, or independent contractors." The Court finds RFP No. 7 is entirely too broad as there is no limit on the subject matter or temporal scope of this request. Accordingly, the Court declines to order Titan Trailer to supplement its response to this discovery request.

#### 5. Financial Account Information

Plaintiffs argue that Titan Trailer's and Amanda Maples's financial account information show when their tortious behavior began and the identities of all tortfeasors. In addition, Plaintiffs argue that such information is necessary in addressing a punitive damages award. Plaintiffs state that Defendants have refused to produce information relating to when their planning of Titan Trailer began, and this information will show when it began paying employees. Plaintiffs argue that such is relevant because Billy Maples, for example, will have breached his fiduciary duty when he was being paid by two companies to compete against the other. Plaintiffs state that Amanda Maples's bank statements are also needed. Plaintiffs argue that Amanda Maples has attempted to distance herself from the conspiracy, but Plaintiffs are aware that she received payments from third parties shortly before the formation and opening of Titan Trailer. Plaintiffs believe that she has received additional payments that were intended to help Titan Trailer and Billy Maples improperly compete with Plaintiffs. Plaintiffs finally submit that Amanda Maples's bank statements would also show if she has been paid by Titan Trailer, when those payments began, and when she began breaching her fiduciary duty to Plaintiffs.

**\*7** Defendants argue that they have provided Plaintiffs' expert with full administrative user access to their system on April 15, 2021. Defendants state that the expert gathered the detailed financial information. Defendants state that this access showed Plaintiffs all financial transactions made by Titan Trailer from its inception and all transactions with Amanda Maples. Defendants state that they produced a copy of a check to Amanda Maples, reflecting the only payment Titan Trailer ever made to her. Defendants state that they have no idea what Plaintiffs are referencing when they allege that Amanda Maples received payments from third parties shortly before the formation and opening of Titan Trailer. Defendants claim Plaintiffs' argument regarding punitive damages is pretext because Plaintiffs have not taken any discovery for punitive damages purposes. Defendants state that Plaintiffs have treated Amanda Maples as an afterthought in this case, suing her merely because she is married to Billy Maples. Defendants state that pursing punitive damages is not Plaintiffs' true basis for seeking Amanda Maples's bank accounts.

Plaintiffs reply that they are entitled to see Titan Trailer's and Amanda Maples's full financial accounts. Plaintiffs argue that Southware contains a limited overview of the financial information and nothing about Amanda Maples's financial information. Plaintiffs state that Southware will not show (1) any individuals that contributed to Titan Trailer before March 5, 2020, which Plaintiffs need to identify potential tortfeasors, (2) Titan Trailer's profits, which are relevant to damages, or (3) anything about Amanda Maples. Plaintiffs state that they are not required to rest on Amanda Maples's assurances that she has only received one paycheck from Titan Trailer and that such financial information will also show whether any other payments she received was from someone who is associated with Titan Trailer. Plaintiffs argue that Defendants have essentially conceded that Titan Trailer's financial information is relevant for punitive damages by failing to address this issue.

In the instant matter, the disputed discovery requests served on Titan Trailer and Amanda Maples provide, respectively, as follows:

> **First FRP No. 8 (Titan Trailer):** Please produce the records for any and all financial accounts for Titan Trailer[ ] Repairs and Sales, LLC, from its inception to date. This is to include any former names associated with Titan Trailer[ ].

> **First FRP No. 8 (Amanda Maples):** Please produce any and all of your personal bank statements from the last four (4) years.

The Court will start with First FRP No. 8 to Titan Trailer. Plaintiffs state that they need this information because Titan Trailer has refused to produce information relating to when the planning of Titan Trailer began and when it began paying employees. In light of Plaintiffs' stated purpose, First FRP No. 8 requesting "any and all financial accounts" from the date of Titan Trailer's inception to the present is entirely overbroad and seeks irrelevant information. Stated in a different way, Titan Trailer's financial information in 2022 would not reveal when certain parties began to take steps to form Titan Trailer or when Titan Trailer began paying its employees.

With respect to punitive damages, however, net worth and general financial circumstances are relevant. As the undersigned explained in *Allen v. Wyndham*, "a defendant's financial affair, financial condition, and net worth," are relevant in determining the amount of punitive damages. *Allen v. Wyndham Vacation Resorts, Inc.*, No. 3:18-CV-259-TAV-DCP, 2021 WL 2434355, at \*4 (E.D. Tenn. Mar. 18, 2021) (citing *Hodges v. S.C. Toof & Co.* 833 S.W.2d 896, 901 (Tenn. 1992)).

The Court notes, however, First RFP No. 8, which seeks "records for any and all financial accounts" seems rather broad, but the parties have not provided specifics on what such a request would encompass. *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 409 (N.D. Ohio 2011) ("Requests seeking 'all financial reports' or 'all documents concerning financial condition or market performance' are overly broad.") (other citations omitted). Accordingly, the Court orders the parties to engage in a meaningful meet and confer, by video conferencing or in person, to determine the proper scope of this request as it pertains to punitive damages. The parties **SHALL** conduct their meet and confer **within fourteen (14) days** of this Memorandum and Order. If the parties cannot agree following their meet and confer, they may bring this matter to the attention of the Court.

**\*8** The Court will now turn to Plaintiffs' request for the past (4) years of bank statements from Amanda Maples. Plaintiffs claim that Amanda Maples received payments from third parties shortly before the formation and opening of Titan Trailer, while Defendants contend that they do not have any idea of what Plaintiffs are referencing.[2] Plaintiffs also claim

Case: 2:20-cv-03785-ALM-KAJ Doc #: 1016-1 Filed: 04/28/26 Page: 48 of 97 PAGEID #: 25922

Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)
2022 WL 831432

that the bank statements would show if Amanda Maples has been paid by Titan Trailer and when those payments began. Plaintiffs state that the bank statements are also relevant for punitive damages.

[2]     The Court notes that Plaintiffs have not explained this allegation or provided the Court with any support thereof.

Again, Plaintiffs have requested a broad set of records to prove that something occurred within a few months' time. It is unclear to the Court why Plaintiffs would need Amanda Maples's bank statements from 2016 to 2020.[3] Accordingly, the Court finds that Amanda Maples **SHALL** produce her bank statements from September 2019 (*i.e.*, six months before Titan Trailer began operating) to April 2020 (*i.e.*, the month after she left Plaintiffs' employment). The Court finds the remaining bank statements not relevant or proportional to the needs of this case.

[3]     Plaintiffs served the discovery requests in 2020.

With respect to punitive damages, the Court finds the bank statements from 2016 to 2020 irrelevant. Many courts have explained that the scope of such discovery is limited to a defendant's current financial condition. *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07-2657 MA/P, 2008 WL 839745, at *3 (W.D. Tenn. Mar. 27, 2008) ("[T]he scope of discovery should be limited to the defendant's current financial condition and net worth.") *aff'd*, No. 07-2657, 2008 WL 11417501 (W.D. Tenn. Dec. 9, 2008). The discovery request does not seek records relevant to her current or even recent financial condition. Accordingly, the Court does not find such records are relevant to Plaintiffs' request for punitive damages.

### 6. Interrogatory Limit

Plaintiffs state that Titan Trailer refuses to respond to Knox Trailers's Second Interrogatory Nos. 2-6 and has posed an objection that the number of interrogatories has exceeded the limit in Rule 33. Plaintiffs state that Titan Trailer's objection fails to take into account that there are two Plaintiffs, and therefore, each Plaintiff has twenty-five (25) interrogatories. Plaintiffs acknowledge that the first twenty-four (24) interrogatories were from both Plaintiffs but submits counting these twenty-four (24) interrogatories would elevate form over substance. Plaintiffs state that to the extent the Court disagrees, they request leave to serve an additional five (5) interrogatories.

Defendants assert that Plaintiffs have exceeded their limit on interrogatories. Defendants state that Plaintiffs served twenty-four (24) interrogatories on Titan Trailer and used some of the interrogatories to require Titan Trailer to respond to each Plaintiff, citing Interrogatory No. 7 as an example. Defendants argue that Plaintiffs' verbiage shows that they intended to gain responses to those interrogatories for both Plaintiffs.

Plaintiffs reply that they have served a combined total of thirty (30) interrogatories to Titan Trailer, which is proportional to the needs of the case.

As both parties acknowledge, Rule 33 limits the number of interrogatories a party may serve to no more than twenty-five (25). Fed. R. Civ. P. 33(a)(1). Some courts find that the rule expressly limits each party to 25 interrogatories, meaning that two plaintiffs can serve a total of fifty interrogatories. *St. Paul Fire and Marine Insurance Company v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003) (finding that Rule 33(a) limits each *party* to 25 interrogatories, meaning that the three defendants could serve up to 75 interrogatories without leave of court); *Bradfield v. Donahue*, No. 13-1310-JDT-EGB, 2016 WL 5661855, at *2 (W.D. Tenn. Sept. 29, 2016) ("There are six individual Plaintiffs in this case, and each of them was entitled to serve up to 25 interrogatories.").

**\*9** Other courts have interpreted Rule 33(a)(1)'s limit in terms of sides and not parties. *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) ("The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation."); *see also Gray v. Price*, No. CV 19-10383, 2020 WL 12721645, at *5 (E.D. Mich. Feb. 12, 2020) (explaining the split of authority and exercising the court's authority under Rule 26(b)(2), finding that even if defendants could serve more than 25 interrogatories, such would be expensive and time consuming); *L. v. Stevens Transp., Inc.*, No. 2:12-CV-544, 2013 WL 941435, at *2 (S.D. Ohio Mar. 8, 2013) (applying Rule 33(a)(2) as written because the parties asserted sufficiently distinct claims but noting "in some instances nominally separate parties are considered one party for purpose of the 25—interrogatory limitation"); *Allen v. Sch. Bd. for Santa Rosa Cty., Fla.*, No. 3:10CV142/MCR/CJK, 2011 WL 1831764, at *3 (N.D. Fla. May 12, 2011) (finding *Zito's* reasoning persuasive).

Case: 2:20-cv-03785-ALM-KAJ Doc #: 1016-1 Filed: 04/28/26 Page: 49 of 97 PAGEID #: 25923

Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)
2022 WL 831432

The Court will not require Titan Trailer to respond to the additional interrogatories. During discovery, Plaintiffs have acted as a single, unified entity in serving their requests. Plaintiffs acknowledged that the first twenty-four (24) interrogatories were from both Plaintiffs, but they now submit that counting these interrogatories against Plaintiffs would elevate form over substance. Form, however, is important given the split of authority above. In addition, Plaintiffs used verbiage, at least in one interrogatory, suggesting that they intended Titan Trailer to respond as to both Plaintiffs (*e.g.*, First Interrogatory No. 7).

In their reply brief, Plaintiffs state that even if they are over the limit of interrogatories, thirty (30) interrogatories are proportional to the needs of this case. While the amount of interrogatories may seem proportional, a party requesting leave to serve additional discovery requests must make a "particularized showing" to establish a need for those additional requests. *St. Ann v. McLean*, No. 5:15-CV-11770, 2017 WL 5732991, at *2 (E.D. Mich. Nov. 28, 2017) (collecting cases). Plaintiffs have not met their burden, and the Court will not require Titan Trailer to respond to the additional interrogatories.

**7. Access to Southware Information**

Plaintiffs state that they served requests to discover the exact scope of the theft and to ensure compliance with the Court's injunction. Plaintiffs state that the current customer information as contained in Southware, DSi's software, or Exerve's software will shed light on the exact scope of Titan Trailer's trade secret misappropriation. Plaintiffs argue that such information can be compared to Plaintiffs' version of Southware from the time Billy Maples downloaded it to the USB device. Further, Plaintiffs state that the current breadth of the requested customer information will show the ways in which Defendants have harmed Plaintiffs and will shed light on the nature of the misappropriation and the amount of damages. Plaintiffs assert that communications involving Southware, DSi, and Exerve will reveal at least three relevant facts: (1) when the Defendants first stole Plaintiffs information and when that theft occurred, (2) the cost associated with setting up Titan Trailer's system, which is partially indicative of the amount of damages that Plaintiffs are entitled to stemming from the theft of trade secrets, and (3) whether Titan Trailer and Billy Maples complied with this Court's injunction.

Defendants state that they have fully responded to these discovery requests and that there are no additional responsive documents. Defendants further state that with respect to Third FRP No. 8, Titan Trailer provided Plaintiffs with a login and password to remotely sign in with the full administrative user access to the system on April 15, 2021.

**\*10** Plaintiffs disagree that Defendants have fully responded. Plaintiffs state that they need the customer, vendor, and inventory information as contained in Southware, DSi's software, or Exerve's software to understand whether, and to what extent, Titan Trailer is continuing to use Plaintiffs' trade secrets and to ensure that Titan Trailer is complying with the injunction.

Specifically, Plaintiffs seek an order compelling Titan Trailer to fully respond to Knox Trailer's Third RFP Nos. 4, 8, and 10 and Fourth RFP Nos. 1-4, which request the following:

**Third FRP No. 4:** Produce all documents created, used, or maintained by Titan Trailer derived in whole or in part from documents used by or created by either Plaintiff. **RESPONSE:** Documents responsive to this request are attached bearing Bates Nos. Titan 164-168.

**Third FRP No. 8:** Produce current version and any backup copies of Titan Trailer's Southware operating system files, including all Titan Trailer user files. To avoid doubt, this request seeks all of Titan Trailer's files saved in the Southware operating system directory on Titan Trailer's server. For the further avoidance of doubt, this request seeks all files in the corresponding directory on Titan Trailer's servers to the directory on Knox Trailer[s]'s server that Mr. Maples saved to a USB drive on February 20, 2020. **RESPONSE:** Titan agrees to produce the requested files subject to agreement upon reimbursement of Titan's expenses associated with such production.

**Third RFP No. 10:** Produce all documents and communications related to Titan Trailer's implementation, organization, setup, and use of the Southware operating system. **RESPONSE:** Titan objects to this request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous and not calculated to lead to the discovery of admissible evidence in this action.

**Fourth RFP No. 1:** Please produce any and all documents or correspondence related to the research, acquisition, purchase, and/or implementation of your new software program(s) which replaced any of the functionality

2022 WL 831432

of SouthWare. **RESPONSE**: Objection. Any "research, acquisition, purchase, and/or implementation" of software Titan purchased over a full year after the Plaintiffs commenced this litigation has nothing to do with any claim or defense in this case. Subject to and without waiving any objection, see documents Titan produces at TITAN 0178-387.

**Fourth RFP No. 2:** Please produce any and all documents and communications related to DSi's provision of software, products, and/or services to Titan Trailer. **RESPONSE:** See response to Request 1, above.

**Fourth RFP No. 3:** Please produce any and all documents and communications related to Exerve's provision of software, products and/or services to Titan Trailer. **RESPONSE**: Objection. This request seeks documents that are not relevant to any claim or defense in this case. Subject to and without waiving any objection, see documents Titan produces at TITAN 0388-466.

**Fourth RFP No. 4:** Please produce any and all documents and communications related to Titan Trailer[']s use of SouthWare. **RESPONSE**: See response to Request 3, above.

As outlined above, Plaintiffs claim that Defendants did not produce all responsive documents, while Defendants claim that they produced everything. Such arguments are difficult to address given that the undersigned is not familiar with the universe of documents. With respect to the Third RFP No. 4, however, Titan Trailer produced a policy regarding substance abuse and a policy regarding employees who drive. Plaintiffs seek information relating to current customers, vendors, and inventory to understand the extent Titan Trailer is continuing to use Plaintiffs' information. Accordingly, Titan Trailer **SHALL** supplement its response to Third RFP No. 4 **within fourteen (14) days** of this Memorandum and Order and produce the documents that it created, used, or maintained that were derived from documents created by Plaintiffs, including customer, vendor, and inventory information that Billy Maples has acknowledged he downloaded. If Titan Trailer does not have additional responsive documents, it **SHALL** so state.

 **\*11** With respect to Third RFP No. 8, it is unclear to the Court what additional information is needed given that Titan Trailer provided Plaintiffs with a login and password to remotely sign into its system and provided Plaintiffs with full

administrative access thereto. Accordingly, the Court will not order Titan Trailer to supplement its response to this RFP.

Finally, with respect to the remaining RFPs, the responses do not comply with the Rules. As mentioned above, if a party objects to a request for production, the party must state whether it withheld documents on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(C). Accordingly, **within fourteen (14) days** of this Memorandum and Order, Titan Trailer **SHALL** supplement its responses to the remaining RFPs above in accordance with Rule 34. After this supplementation, if the parties have further issues, they may contact Chambers to set an in-person hearing.

### 8. Communications between co-Defendants

Plaintiffs assert that Titan Trailer and Billy Maples refuse to identify Plaintiffs' employees whom they solicited to work for Titan Trailer and their communications with other co-Defendants. Plaintiffs seek the identity of those employees solicited both before and after Billy Maples's resignation. Plaintiffs state that they also requested communications, but Defendants have produced few communications.

Defendants incorporate their argument in response to Topic 2 (*i.e.*, documents after March 5, 2020, are not relevant) and further argue that Plaintiffs' discovery requests seeking communications between the co-Defendants at any time is overbroad. Defendants state that Plaintiffs have not justified their request for communications after March 5, 2020.

In reply, Plaintiffs state that Titan Trailer and Billy Maples failed to identify the employees whom they solicited and they failed to produce communications between co-conspirators. Plaintiffs state that in fact, Defendants have not produced any text messages involving Paul Henegar, one of the primary conspirators.

Plaintiffs filed a supplemental brief, stating that no Defendant has produced a single communication between Billy Maples and Jeff Clark; Billy Maples and Paul Henegar; or Billy Maples and Roy Bailey. Plaintiffs state that Billy Maples produced text messages between himself and other co-Defendants during the relevant timeframe. When Plaintiffs asked Billy Maples why he had not produced any text messages between himself and these co-Defendants, Billy Maples testified that he switched phones; however, Plaintiffs argue that this switch happened in December 2019. Plaintiffs state that Billy Maples did not produce any messages for the months following. Plaintiffs state that a co-

Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)

2022 WL 831432

Defendant testified that he deleted messages before leaving Plaintiffs' employment. Plaintiffs state for the first time, some Defendants during their depositions claimed that the communications were subject to a joint defense doctrine. Finally, Plaintiffs assert that several text messages have been digitally modified.

In response to Plaintiffs' Supplemental Brief, Defendants claim that Plaintiffs have submitted false statements to the Court. For instance, Defendants assert that while Plaintiffs claim that they do not possess any communications between Billy Maples and the co-Defendants on or after March 5, 2020, Defendants have produced fifty-seven (57) pages of text messages with Defendant Powell, the latest of them dated March 29, 2020. Defendants also maintain that Plaintiffs filed 10 of these pages, containing over 60 messages between Billy Maples and Defendant Powell dated after March 5, 2020, earlier in this case. Second, Defendants state that Titan Trailer raised the joint defense doctrine on April 9, 2021. Third, Defendants state that Plaintiffs have no evidence that text messages have been digitally modified. Defendants assert that Billy Maples as well as co-Defendants Henegar and Clark objected to the relevance of communications after March 5, 2020, thus placing a limit on the scope of communications to be produced. In short, Defendants assert that the text exchange cited by Plaintiffs as proof of their modification claim ends with a text dated March 4, 2020, which aligns with the explained parameter on production.

**\*12** Defendants go on to state that Plaintiffs themselves had previously produced modified text messages, claiming that they culled irrelevant messages. Defendants argue that when Plaintiffs produced the messages again in response to the Court's order, they made additional redactions. Defendants maintain that while they selected an end-date for relevant documents and informed Plaintiffs of that parameter, Plaintiffs' redactions are not the standard. Finally, Defendants argue that Plaintiffs deposed Billy Maples and never asked him about text messages and that the question of whether the communications among co-Defendants are privileged is not properly before the Court because Plaintiffs raised it in their supplemental brief.

As an initial matter, the Court has already ordered Titan Trailer and Billy Maples to identify Plaintiffs' employees who were solicited by Titan Trailer and Billy Maples, even if the solicitation occurred after March 5, 2020. *See supra* section 4. Specifically, the remaining discovery requests at issue relate to communications and provide as follows:

**First RFP No. 1 (Billy Maples):** Please produce any correspondence exchanged by and between you and the other listed Defendants relating to Titan Trailers.

**First RFP No. 8 (Billy Maples)** Please produce any and all communication between you and others you solicited to work at Titan Trailers.

**Third RFP No. 17 (Titan Trailer):** Produce all communications with any codefendant about this lawsuit.

As mentioned above, the Court agrees with Plaintiffs that Defendants' March 5, 2020 cut-off date is arbitrary. The glaring problem with First RFP Nos. 1 and 8, however, is that they are entirely too broad. For instance, First RFP No. 8 is not limited by subject matter or in temporal scope. *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) ("Because it seeks production of *all* documents, including *any* communication between Plaintiff's employees (without even specifying which types of employees' communication is subject to this request), the burden associated with this request outweighs any potential benefit upon production to Defendants."). The Court notes that RFP No. 1 contains somewhat of a limitation (*i.e.*, relating to Titan Trailer), but the Court finds this limitation is not enough. Correspondence that simply relates to Titan Trailer does not make such correspondence relevant to the issues in this case. The Court has reviewed the letters exchanged by counsel, and it does not appear that Plaintiffs agreed to narrow the discovery requests. Accordingly, the Court will not require Billy Maples to supplement his responses to these discovery requests.

The Court notes that the Third RFP No. 17 is somewhat limited in subject matter (*i.e.*, the lawsuit) and temporal scope as the lawsuit was filed in March 2020. In response to Third RFP No. 17, Titan Trailer states that the request seeks communications between signatories to a Joint Defense Agreement and that all Defendants have signed this agreement other than Defendant Powell. [Doc. 170-8 at 5-6]. Plaintiffs do not mention Titan Trailer's objection other than to claim in their supplemental brief, "Defendants have never asserted this doctrine in any of their discovery responses, communications with the undersigned, or court pleadings in response to the Motions, nor have they served a privilege log." [Doc. 250 at 2].

In light of above issues, the Court cannot render a ruling at this juncture.[4] The Court finds the most appropriate course of action is for Titan Trailer, if it has not done so already, to

Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)

2022 WL 831432

provide a privilege log as required by Rule 26(b)(5) within **fourteen (14) days** of this Memorandum and Order. Once Titan Trailer has provided a privilege log, if there is a specific communication Plaintiffs seek, the parties **SHALL** conduct a **meaningful** meet and confer. If the parties are not able to resolve the issue, they may contact Chambers to set an in-person hearing. Any requests for an in-person hearing shall also include an explanation of the parties' meet and confer efforts.

4      Titan Trailer's discovery response asserts the joint defense agreement, but its brief states that it "raised the joint defense or common interest privilege in responding." [Doc. 254 at 2]. Some courts have noted that these doctrines are different. For example, the "common-interest rule applies where the parties are represented by separate attorneys but share a common legal interest." *Polylok, Inc. v. Bear Onsite, LLC,* No. 312CV00535DJHCHL, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017) (quotations omitted). The joint-defense doctrine "allows communications between one client (*e.g.*, a defendant) and his attorney to be shared with a co-defendant without waiving the privilege where both are represented by the same attorney." *Id.* (quotations are omitted). Other courts have explained that the common interest privilege may apply in three situations: (1) when a single attorney represents multiple clients in the same matter, (2) when parties share a common defense, or (3) when two or more clients shares a common legal or common interest and share legal advice with respect to the common interest. *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219-220 (W.D. Ky. 2006).

**\*13** In Plaintiffs' Supplemental Brief, they assert that several text messages have been digitally modified. Plaintiffs state that during Billy Maples's deposition, he testified to giving his counsel unmodified text messages. Plaintiffs state that the copies defense counsel produced were cut off without explanation. Plaintiffs argue that when relevant messages have been modified without explanation, the producing party shall (1) produce a log explaining each modification, or (2) produce the unmodified communications. Plaintiffs rely on the Court's previous Memorandum and Order directing Plaintiffs to provide the log when Defendants accused Plaintiffs of deleting text messages.

The Court is troubled by both counsels' careless accusations regarding unethical conduct against one another. In January 2022, the Court ruled on a similar issue when Defendants accused Plaintiffs of digitally modifying text messages. At that time, Plaintiffs put forward what the Court found to be an innocent explanation, similar to the reasons Defendants have put forward here (*i.e.*, Defendants did not produce what they believe are irrelevant text messages). Arguing whether evidence is relevant is fair but accusing another attorney, apparently without discussing what happened with opposing counsel, is not. Should counsel continue to engage in accusations against one another, the Court will consider sanctions against the attorney who made such accusations without a basis to do so or sanction the attorney who modified evidence without a basis to do so.

Turning to the instant matter, Plaintiffs point to [Doc. 250-1] stating that the text messages have been digitally modified. Defendants claim that they did not produce the additional text messages because communications beyond March 5, 2020, are irrelevant. As the Court previously noted, a general cut-off date of March 5, 2020, for discovery is arbitrary; however, because the Court cannot review the deleted text messages, the undersigned will order Billy Maples to produce a log **within fourteen (14) days** of this Memorandum and Order to Plaintiffs containing information about the deleted text messages, including the author, recipient, time, date, and general subject matter. Once Plaintiffs have reviewed the log, if there is a certain text message that Plaintiffs believe warrant production, the partis **SHALL** meet and confer, and if their meet and confer efforts fails, they may seek relief with the Court. In the alternative, Defendants may simply produce the deleted text message. *See* [Doc. 224] (ordering Plaintiffs to do the same).

**9. Information and Documents related to Credit Card Purchases**

Plaintiffs state that they have uncovered hundreds of instances in which Billy Maples plainly used his company-issued credit card for his own benefit. Plaintiffs state that they need to discover the information and documents Billy Maples possesses regarding his credit card usage.

Billy Maples responds that he does not have responsive documents. Billy Maples state that to the extent Plaintiffs seek credit card statements, Plaintiffs possess such documents. Plaintiffs do not believe Billy Maples.

The discovery at issue and Billy Maples's responses thereto provide as follows:

**First Interrogatory No. 15:** Please state whether you used your company card for personal use while at Knox

**Knox Trailers, Inc. v. Clark, Not Reported in Fed. Supp. (2022)**

2022 WL 831432

Trailers. If your company card was used for personal use, please describe the personal use including dates, other individuals aware of such use, amounts of the personal use and whether you reimbursed the Plaintiffs for such personal use. **RESPONSE:** For several years during his tenure as General Manager Mr. Maples was authorized by Knox Trailers, Inc.'s ownership to use a company credit card issued to him for certain personal expenditures. This practice was discussed with and well known by Knox Trailers, Inc.'s owners Ray Jones and Steve Fultz.

 **\*14 First RFP No.** 7: Please produce any and all documents related to your purchases on your company credit card while employed for Plaintiff. **RESPONSE:** Mr. Maples objects to this request on the grounds that it seeks documents belonging to Plaintiffs and which are therefore more readily available to Plaintiffs than Mr. Maples. Without waiving the foregoing objection and subject thereto, Mr. Maples has no documents responsive to this request in his possession.

As an initial matter, Plaintiffs presumably are aware of any alleged unauthorized personal expenditures purchases given that they have access to their own credit card statements. *See* [Doc. 67 at ¶¶ 44-45] (Amended Complaint) (stating that Billy Maples charged personal expenses for meals, fuel, family vacations to Florida, hunting trips, and house maintenance, spending over $2,000 per month). The Court observes that the practical problem with First Interrogatory No. 15 is that if Billy Maples really spent $2,000 per month, it may be difficult, if not impossible, to respond to this interrogatory fully. By way of illustration, if Billy Maples purchased gas three years ago and paid with Plaintiffs' credit card, he may not recall that detail or the date he purchased the gas.

Despite this issue with the interrogatory, the Court finds that Billy Maples did not sufficiently respond. Interrogatory No.

15 specifically asks: 1) whether Billy Maples used the credit card for personal expenditures, 2) description of the personal use, 3) the dates of such use, 4) whether other individuals were aware, 5) the amounts of the personal use, and 6) whether Billy Maples reimbursed Plaintiffs. Accordingly, the Court **ORDERS** Billy Maples to supplement his response to First Interrogatory No. 15 to (1) generally describe his personal use of Plaintiffs' credit cards, (2) any dates, if he can recall, that he made purchases, (3) any other person who had knowledge that he used Plaintiffs' credit cards for personal expenditures, and (4) whether he ever reimbursed Plaintiffs.

With respect to the requested documents, the Court is not surprised that Billy Maples does not have any documents in response to this request (*e.g.*, receipts for meals or gas purchases); however, his response is qualified with an objection. Accordingly, Billy Maples **SHALL** supplement his response to First RFP No. 7 to provide whether he is withholding any documents based on his objection as required by Rule 34. If Billy Maples does not have responsive documents, he **SHALL** so state. The Court **ORDERS** Billy Maples to supplement his responses **within fourteen (14) days** of this Memorandum and Order.

## II. CONCLUSION

Accordingly, for the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Compel the Discovery Responses of Defendants Titan Trailer Repair and Sales, LLC, Billy Maples, and Amanda Maples [**Doc. 170**].

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 831432

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#9

2020 WL 12721645

2020 WL 12721645
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Thoeddeus GRAY, as Personal
Representative of the Estate of
Theoddeus R. Gray, Deceased, Plaintiff,
v.
Officer Tom PRICE, et al., Defendants.

Civil Action No.: 19-10383
|
Signed 02/12/2020

**Attorneys and Law Firms**

Attilio V. Colella, Victor Balta, Moss & Colella P.C.,
Southfield, MI, Steven F. Fishman, Detroit, MI, for Plaintiff
Tracy Jenkins.

Timothy S. Ferrand, Cummings, McClorey, Clinton
Township, MI, for Defendants.

**OPINION AND ORDER GRANTING IN PART AND
DENYING DEFENDANTS' MOTION TO COMPEL
PLAINTIFF TO ANSWER DISCOVERY, AND
DENYING WITHOUT PREJUDICE DEFENDANTS'
MOTION TO SERVE PLAINTIFF WITH MORE THAN
25 INTERROGATORIES [ECF NO. 19]**

ELIZABETH A. STAFFORD, United States Magistrate
Judge

**I. Introduction and Background**

 *1 In November 2018, Theoddeus R. Gray was fatally shot
by officers of the St. Clair Shores Police Department. [ECF
No. 1]. Gray's father, Plaintiff Theoddeus Gray, the personal
representative of his son's estate, sues those officers and the
City of St. Clair Shores under 42 U.S.C. § 1983 and state
law. [*Id.*]. Plaintiff alleges that the officers used excessive
force; that the City's unconstitutional policies, practices and
customs caused the officers to use deadly force; that the
officers engaged in assault and battery; and that the officers
were grossly negligent. [*Id.*].

In their April 2019 Rule 26(f) plan and status report, the
parties wrote that they did "not currently seek leave to
serve in excess of twenty-five (25) interrogatories, including
subparts. However, the parties reserve the right to bring a
motion to allow additional interrogatories ... as needed." [ECF
No. 15, PageID.71]. In October 2019, defendants served
plaintiff with a first set of interrogatories, which purported to
have 23 separate interrogatories.[1] [ECF No. 19-3]. Plaintiff
objected to four of the interrogatories that had subparts,
stating, "Objection, the interrogatory request is overbroad,
vague, unduly burdensome and in violation of FRCP 33 and
the 26(f) plan agreed upon by the parties as it exceeds the 25
interrogatory limits, 'including all discreet subparts.' " [ECF
No. 19-3, PageID.159-167].

[1]     Some of the interrogatories are mis-numbered; two
        interrogatories are identified as "19" and two are shown
        as "20." [ECF No. 19-3, PageID.159-165]. So, although
        the last interrogatory is identified as "21," there are a
        total of 23 numbered interrogatories. Because of the
        mis-numbering in defendants' interrogatories, the Court
        will identify the interrogatories in contention by subject
        matter and page number.

Defendants thus move to compel plaintiff to answer the four
interrogatories with subparts or, alternatively, for an order
allowing defendants to exceed the 25-interrogatory limit.
[ECF No. 19]. Plaintiff opposes both requests. [ECF No. 22].

**II. Analysis**

**A.**

Under the rule governing interrogatories, "Unless otherwise
stipulated or ordered by the court, a party may serve on any
other party no more than 25 written interrogatories, including
all discrete subparts." Fed. R. Civ. P. 33(a)(1). If a subpart
to an interrogatory "can stand alone, independent of the
first question, then it is discrete" and should be counted as
a separate interrogatory. *Hemlock Semiconductor Corp. v.
SolarWorld Indus. Sachsen GmbH*, No. 13-CV-11037, 2016
WL 7239484, at *7 (E.D. Mich. Dec. 15, 2016). "[W]hen
the primary question can be answered fully and completely
without answering the second question, the questions will
be considered distinct." *Perez v. KDE Equine, LLC*, No.
3:15-CV-00562-CRS, 2017 WL 56616, at *3 (W.D. Ky. Jan.
4, 2017). On the other hand, "[i]f a subpart is logically
or factually subsumed within and necessarily related to the
primary question, then the subpart should not be counted

**Gray v. Price, Not Reported in Fed. Supp. (2020)**

2020 WL 12721645

separately." *Hemlock*, 2016 WL 7239484 at *7 (citations and quotation marks omitted).

 **\*2** So, for example, an interrogatory with subparts all directed to the plaintiff's identity constitutes a single interrogatory. *Barkovic v. Shelby*, No. 2:10-CV-10962, 2010 WL 11541857, at *1 (E.D. Mich. Aug. 16, 2010). Or when the interrogatory asks a single question and has subparts that merely "clarify the categories contained in the original question," the subparts are not discrete. *Hemlock*, 2016 WL 7239484 at *8.

The Court may grant "[l]eave to serve additional interrogatories" if doing so is "consistent with Rule 26(b)(1) and (2)." Rule 33(a)(1). Federal Rule of Civil Procedure 26(b)(1) addresses the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," except that the Court must consider proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1) was amended in 2015 to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Rule 26, Advisory Committee Notes (2015).

Discovery overuse is also discouraged in Rule 26(b)(2)(C), which requires a court to limit discovery if:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

With these rules in mind, the Court denies defendants' motion to compel except that plaintiff must answer the interrogatory about his municipal liability claim (on ECF No. 19-3, PageID.162).

**B.**

In an interrogatory related to the excessive force count, defendants include 25 lettered subparts that ask the plaintiff to identify each act attributed to each defendant that constitutes excessive force (subparagraphs a-e); the name, address and telephone number of each witness supportive of each of the excessive force claims against each defendants (subparagraphs g-k)[2]; each injury sustained by the decedent because of each act of excessive force attributable to each officer (subparagraphs l-p); "each act, action, and occurrence attributable to Plaintiff-decedent immediately prior to each act of excessive force which" plaintiff attributes to each defendant (subparagraphs q-u); and "the name, address, and telephone number each person with knowledge and or information regarding each act and action attributable to Plaintiff-decedent prior to the use of force by"[3] each defendant (subparagraphs w-z). [ECF No. 19-3, PageID.159-161].

[2]    There is no subpart "f".

[3]    The typos in the quotes of defendants' interrogatories are in the original.

In contrast to opinions describing an interrogatory with a primary question followed by subparts, this interrogatory includes no primary question. Nor does this interrogatory ask a single question with subparts that clarify the original question. Instead, this interrogatory identifies the count of the complaint at issue and then asks multiple independent questions that could stand alone. [*Id.*]. The subparts are not all related to a discrete subject, such as a person's identity. Rather, the interrogatory requests information about specific acts, witnesses, injuries, the decedent's actions, and then more questions about witnesses. [ECF No. 19-3, PageID.159-161]. It should seem obvious that an interrogatory with 25 subparts would not constitute a single interrogatory.

 **\*3** The interrogatory related to the excessive force count is also unreasonably cumulative, as Interrogatory 17 requested information about all witnesses to the decedent's encounter with the police, as well as "[e]ach person with knowledge or information regarding events which occurred prior to November 4, 2018 which caused or led to the events of November 4, 2018." [*Id.*, PageID.157]. Plaintiff answered with a list of witnesses. [*Id.*, PageID.158].

The interrogatory is also unnecessary burdensome. As plaintiff notes, defendants' themselves objected to an interrogatory requesting details about the decedent's actions, reasoning:

Case: 2:20-cv-03785-ALM-KAJ Doc #: 1016-1 Filed: 04/28/26 Page: 57 of 97 PAGEID #: 25931

Gray v. Price, Not Reported in Fed. Supp. (2020)

2020 WL 12721645

The interrogatory seeks a narrative response, which would require a culmination of information and observations gathered from audio and video recordings and multiple witnesses. The Defendants cannot recapture or detail all actions allegedly taken by Mr. Gray and instead, refers Plaintiff to the audio, video, police reports, witness statements, and investigative record regarding Mr. Gray's actions.

[ECF No. 22-5, PageID.252]. Defendants hypocritically ask plaintiff for exacting detail of each of their actions and exacting detail about the decedent's actions when defendants could also rely on the audio, video, police reports' witness statements and investigative record. Defendants do have a right to discover the bases of plaintiff's claims against each defendant; each defendants' action must be assessed individually, and mere presence at the scene is insufficient. *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010). But because it may be "exceedingly difficult" for a plaintiff to identify precisely the actions of each defendant in an excessive force case, *id.*, the details demanded by defendants are unwarranted.

### C.

The next interrogatory at issue relates to plaintiff's municipal liability count. [ECF No. 19-3, PageID.162]. In this interrogatory, defendants ask plaintiff to identify the City's policy, practice, custom or procedure that violates the U.S. Constitution; to identify all witnesses who will support plaintiff's claim of an unconstitutional policy, practice, custom or procedure; and to describe how the City's unconstitutional policy, practice, custom or procedure caused the events at issue in plaintiff's complaint. [*Id.*].

This interrogatory asks two discrete questions: (1) the basis of plaintiff's municipal liability claim and (2) the witnesses to support this claim. But even if it is counted as two interrogatories, defendants will not have exceeded their 25-interrogatory limit because the Court is disallowing the other interrogatories in contention. The questions in the interrogatory about plaintiff's municipal liability claim are also not repetitive of other questions in defendants' first set of interrogatories, and the detail requested is not excessive. The Court will compel plaintiff to answer the interrogatory about his municipal liability claim. [ECF No. 19-2, PageID.162].

### D.

In an interrogatory about plaintiff's assault and battery count, defendants ask plaintiff to identify each act attributed to each defendant that constitutes assault and battery (subparagraphs a-e); the name, address and telephone number of each witness supportive of the assault and battery claims against each of the defendants (subparagraphs f-j); "each act and action of Plaintiff-decedent immediately prior to the alleged assault and battery committed by" each defendant (subparagraphs k-o); and the "name, address and telephone number each person with knowledge or information regarding each act, action, and conduct of Plaintiff-decedent prior to each act of assault and battery committed by" each defendant (subparagraphs p-t). [ECF No. 19-3, PageID.163-164].

*4 As with the interrogatory about the excessive force count, the interrogatory about the assault and battery count includes no primary question and does not ask a single question with clarifying subparts. Instead, the interrogatory identifies the count of the complaint at issue and then asks multiple independent questions that could stand alone. [*Id.*]. The subparts are not all related to a discrete subject; they request information about specific acts, witnesses, the decedent's actions and then more questions about witnesses. [*Id.*]. Again, it seems obvious that an interrogatory with 20 subparts would not constitute a single interrogatory.

The interrogatory related to the assault and battery count is also unreasonably cumulative, both of Interrogatory 17 and the interrogatory about the excessive force count. [*Id.*, PageID.157-161]. And it would be exceedingly difficult for plaintiff to identify precisely the actions of each defendant that amounted to assault and battery.

### E.

The last interrogatory in dispute relates to plaintiff's gross negligence count. In 20 subparts, defendants ask plaintiff to identify each act attributed to each defendant that constitutes gross negligence (subparagraphs a-e); the name, address and telephone number of each witness supportive of the gross negligence claims against each of the defendants (subparagraphs f-j); "each act and action taken by Plaintiff-decedent prior to each act of gross negligence committed by" each defendant (subparagraphs k-o); and the "name, address and telephone number each person with knowledge and or

**Gray v. Price, Not Reported in Fed. Supp. (2020)**

2020 WL 12721645

information regarding each act and action Plaintiff-decedent immediately prior to each act of gross negligence allegedly committed by" each defendant (subparagraphs p-t). [ECF No. 19-3, PageID.165-166].

As with the interrogatories about the excessive force and the assault and battery counts, the interrogatory about the gross negligence count includes no primary question. The interrogatory about the gross negligence count does not ask a single question with subparts that clarify the original question, but instead identifies the count and then asks multiple independent questions that could stand alone. [*Id.*]. The subparts are not all related to a discrete subject, but instead request information about specific acts, witnesses, the decedent's actions and then more questions about witnesses. [*Id.*]. It is obvious that an interrogatory with 20 subparts is not a single interrogatory.

The interrogatory related to the gross negligence count is also unreasonably cumulative of Interrogatory 17, the interrogatory about the excessive force count and the interrogatory about the assault and battery count. [*Id.*, PageID.157-161, 163-164]. And again, it would be exceedingly difficult for plaintiff to identify precisely the actions of each defendant that amounted to gross negligence.

**F.**

As alternative relief, defendants request leave to serve more than 25 interrogatories. They note that plaintiff sues multiple defendants and argue that they should not be limited to a single set of 25 interrogatories. [ECF No. 19, PageID.107]. Defendants assert, "The fact that those individual [defendants] are represented by a single attorney should not serve as a *de facto* limit on discovery." [*Id.*]. Defendants cite no supporting authority and plaintiff's response does not address this argument.

This Court's research found that the issue is unsettled, but that there is some support for a finding that defendants are allowed up to 25 interrogatories each. *See St. Paul Fire and Marine Insurance Company v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003) (finding that Rule 33(a) limits each *party* to 25 interrogatories, meaning that the three defendants could serve up to 75 interrogatories without leave of court); *Bradfield v. Donahue*, No. 13-1310-JDT-EGB, 2016 WL 5661855, at *2 (W.D. Tenn. Sept. 29,

2016) ("There are six individual Plaintiffs in this case, and each of them was entitled to serve up to 25 interrogatories.").

**\*5** Other courts disagree, particularly when one side with multiple parties is represented by the same attorneys. *See, e.g., McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (rejecting as disingenuous the argument of the defendants, who were represented by the same firm, that they were allowed to serve 25 interrogatories a piece); *Allen v. Sch. Bd. for Santa Rosa Cty., Fla.*, No. 3:10CV142/MCR/CJK, 2011 WL 1831764, at *3 (N.D. Fla. May 12, 2011) (rejecting argument that three defendants could serve 75 interrogatories). In *Zito v. Leasecomm Corp.*, the court noted that *St. Paul Fire and Marine Insurance Company's* reading of Rule 33(a)(1) meant that the eleven defendants could have served more than 5,000 interrogatories. 233 F.R.D. 395, 399 (S.D.N.Y. 2006). The *Zito* court considered a "more sensible approach" than that applied in *St. Paul Fire and Marine Insurance Company*:

'The limitation on number of depositions ... speaks in terms of 'sides' rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation.'

*Id.* (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 at 261 (2d ed.1994)).

The court in *Zito* declined to decide whether the defendants should be considered one party because "even if the interrogatories do not exceed the number permitted by rule, they are abusive. The defendants have, in essence, divided the issues in this case into numerous subparts and then demanded that each plaintiff identify witnesses and documents relevant to each separate subpart." *Id.* Citing Rule 26(b)(2), the court said, "Here the plaintiffs have disclosed the names of potential witnesses and are in the process of producing relevant documents. Requiring them to respond individually

**Gray v. Price, Not Reported in Fed. Supp. (2020)**

2020 WL 12721645

to the highly detailed interrogatories would provide little additional benefit but would be extremely expensive and time-consuming." *Id.*

The same conclusion is true here. As noted, plaintiff has disclosed the names of potential witnesses and defendants have witness statements, audio and video recordings, investigative records and other evidence. Requiring plaintiff to respond to defendants' highly-detailed and cumulative interrogatories about the excessive force, assault and battery, and gross negligence counts would be unreasonably time-consuming. So even if defendants should be allowed more than 25 interrogatories in total, the Court relies on Rule 26(b)(2) to deny defendants' motion to compel answers to those interrogatories.

**III. Conclusion**

As discovery continues, defendants may find a need to serve more than 25 interrogatories, so the Court **DENIES** defendants motion for leave to serve more than 25 interrogatories **WITHOUT PREJUDICE**. As to defendants' first set of interrogatories, the Court **DENIES** defendants' motion to compel answers to the interrogatories about plaintiff's excessive force, assault and battery, and gross negligence counts, but **GRANTS** the request to compel answers to the interrogatory about the municipal liability count.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 12721645

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #10

2013 WL 941435
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Benjamin LAWS, Jr., et al., Plaintiffs,

v.

STEVENS TRANSPORT,

INC., et al., Defendants.

No. 2:12–cv–544.
|
March 8, 2013.

**Attorneys and Law Firms**

Michael L. Wright, Wright & Vannoy, Jonathan Clay Turner, Dayton, OH, David Allen Brose, James Kent Emison, Langdon & Emison, Lexington, MO, for Plaintiffs.

Robert Charles Buchbinder, Columbus, OH, for Defendants.

*OPINION AND ORDER*

TERENCE P. KEMP, United States Magistrate Judge.

**\*1** This is a personal injury case arising out of a motor vehicle accident which occurred on June 4, 2010. According to the parties, the accident occurred in Lima, Ohio when plaintiff Benjamin Laws' rental car and a truck owned by defendant Stevens Transport and driven by defendant Charles G. Dunn, III collided.

Pursuant to this Court's direction following a telephonic discovery conference held on February 7, 2013, defendants Stevens Transport, Inc., Stevens Transport CD, Inc., Stevens Transport T L, Inc., and Charles G. Dunn III (collectively "defendants") filed a "Motion Opposing Plaintiff Chandra Laws' First Set of Interrogatories to Defendant Stevens Transport, Inc. and Motion to Strike Certain 'Areas of Inquiry' Set Forth in Plaintiffs' 30(b)(6) Deposition Notice." (Doc. # 46). Plaintiffs Benjamin Laws, Jr. and Chandra Laws filed a "Motion to Compel Discovery Regarding Preventable Accident Determination/Investigation and Remedial Training/Discipline." (Doc. # 47). The motions are ripe for consideration.

The first issue the parties address is whether Chandra Laws' interrogatories should be stricken on the ground that they exceed the maximum number allowable under Fed.R.Civ.P. 33(a). The second issue is whether Fed.R.Evid. 407 bars discovery pertaining to Mr. Dunn's post-accident remedial training and discipline. Finally, the Court will determine whether plaintiffs should be denied discovery pertaining to post-accident investigations and "preventability" determinations on the ground that the information is protected by the attorney-client privilege.

I. *Plaintiff Chandra Laws' First Set of Interrogatories*

In January 2013, plaintiff Chandra Laws served the following first set of interrogatories on defendant Stevens Transport, Inc.:

*INTERROGATORY NO. 1:* Identify each person who participated in the determination or investigation of the subject occurrence being a preventable accident as described by Dunn in his deposition at pg. 53–56.

*INTERROGATORY NO. 2:* Identify each document created in connection with the determination or investigation of the subject occurrence being a preventable accident as described by Dunn in his deposition at pg. 53–56.

*INTERROGATORY NO. 3:* Identify each person who was involved in remedial training provided to Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg. 41–49.

*INTERROGATORY NO. 4:* Identify each document created or provided to Dunn in connection with the remedial training provided to Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg. 41–49.

*INTERROGATORY NO. 5:* Identify each person within Stevens Transport who met with Charles Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg.40–49.

*INTERROGATORY NO. 6:* Identify each document created in connection with meetings between Dunn and employees/representatives of Stevens Transport as described by Dunn in his deposition at pg. 40–49.

**\*2** (Doc. # 46, Ex. 1). Defendants argue that these interrogatories should be stricken because they exceed

Laws v. Stevens Transport, Inc., Not Reported in F.Supp.2d (2013)

90 Fed. R. Evid. Serv. 1168

the maximum allowable number of interrogatories under Fed.R.Civ.P. 33(a) when combined with the interrogatories served by plaintiff Benjamin Laws, Jr. (*Id.* at 2–3). In particular, defendants assert that plaintiffs Chandra Laws and Benjamin Laws, Jr. "should be treated as a single, unified entity" for discovery purposes, and plaintiff Chandra Laws should not be entitled to serve a separate set of interrogatories. (*Id.* at 3). Defendants claim that plaintiffs should be treated this way because "Chandra Laws has asserted merely a derivative loss of consortium claim." (*Id.* at 4).

Fed.R.Civ.P. 33(a)(1) provides, in pertinent part, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including discrete subparts." Although Fed.R.Civ.P. 33(a)(1) allows 25 written interrogatories per party, as opposed to per side, in some instances nominally separate parties are considered one party for purposes of the 25–interrogatory limitation. *See Vinton v. Adam Aircraft Indus., Inc.,* 232 F.R.D. 650, 664 (D.Colo.2005) (quoting 8A Wright, Miller and Marcus, Federal Practice and Procedure, Civil 2d § 2168.1).

It is within this Court's broad discretion to determine the proper scope of discovery, including the number of interrogatories any party may serve. *See Karl v. Bizar,* No. 2:09–CV–34, 2009 WL 3418676, at *2 (S.D.Ohio Oct. 19, 2009). Here, the Court finds that an application of the plain language of Fed.R.Civ.P. 33(a) (1) is warranted. The same result was reached in *Auther v. Oshkosh Corp.,* No. 09–CV–00527, 2010 WL 1404125, at *3–4 (W.D.N.Y. Mar. 30, 2010), a case in which a plaintiff husband brought negligence and products liability claims for injuries he sustained from an exploding tire on a military vehicle, and his wife brought a claim for loss of consortium based on the same incident. While acknowledging that both the husband and wife brought claims arising from the same incident, the court determined that they should be considered separate parties for purposes of the 25–interrogatory limitation. *Id.* Hence, the parties were found to be more than nominally separate parties for purposes of determining the appropriate number of interrogatories. *Id.* Here, as in *Auther,* plaintiffs Benjamin Laws, Jr. and Chandra Laws have asserted claims that are sufficiently distinct so as to allow them to be considered separate parties for purposes of the 25–interrogatory limitation. Even were that not so, it does not appear that defendants will be unduly burdened by having to answer these particular interrogatories. Consequently, the Court, in its discretion, will deny defendants' motion to strike the interrogatories of Chandra Laws on the ground that they

exceed the maximum allowable number under Fed.R.Civ.P. 33(a).

II. *Requests for Re–Training and Discipline Information*

**\*3** Defendants likewise seek to strike Chandra Laws' interrogatory nos. 3–6 on the ground that they "improperly seek discovery relating to Defendant Dunn's post-accident remedial training." (Doc. # 46 at 5). Defendants also contend that "Plaintiffs' 30(b) (6) deposition notice to Defendants' corporate representatives ... improperly requests discovery regarding, among other things, the post-accident training (including any retraining or remedial training) of Defendant Dunn." *Id.* Defendants argue that post-accident personnel actions, such as counseling and supplemental training, are subsequent remedial measures under Fed.R.Evid. 407 and are inadmissible to prove negligence or culpable conduct. *Id.* at 5–6. Consequently, defendants argue that the information sought is not discoverable on the grounds that it is irrelevant to the liability issues and constitutes inadmissible evidence at trial.

In the motion to compel, plaintiffs argue that they are entitled to discovery relating to the remedial training and discipline of Mr. Dunn after the accident. (Doc. # 47 at 1–2). Plaintiffs state that defendants "employ the wrong standard" in seeking to avoid the discovery by requesting "that the Court make an evidentiary ruling without allowing [them] the opportunity to develop what evidence would be through discovery." *Id.* at 4. Further, the plaintiffs contend that the re-training and discipline information sought is discoverable because it is reasonably calculated to lead to the discovery of admissible evidence under Fed.R.Civ.P. 26(b)(1). *Id.*

The liberal discovery policies of the federal courts are based upon a desire for full disclosure before trial. *See Vardon Golf, Co., Inc. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 650 (N.D.Ill.1994). Consequently, evidence which may be inadmissible at trial may still be discoverable if the information appears to be reasonably calculated to lead to the discovery of admissible evidence. *See id.* Stated another way, "[t]he touchstone of the relevancy of documents is not whether the discovery is evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Sonnino v. University of Kansas Hosp. Auth.,* 220 F.R.D. 633, 646 (D.Kan.2004) (quoting Fed.R.Civ.P. 26(b) (1)).

Fed.R.Evid. 407 provides that when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of those subsequent measures is not admissible to prove negligence or culpable conduct. Even if the re-training and discipline of a driver involved in an accident are subsequent remedial measures under Fed.R.Evid. 407, discovery of such evidence may still be permitted because Fed.R.Evid. 407 does not require the exclusion of evidence that is offered for another purpose, "such as impeachment or —if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed.R.Evid. 407. It is certainly possible that plaintiffs will wish to use this evidence for one of these purposes—but they will not know that until they take discovery on the issue. Because Fed.R.Evid. 407 governs the admissibility of evidence and does not control pretrial discovery, the objections to discovery based on this evidentiary rule will be overruled. *See Bernat v. California City,* No. 1:10–cv–00305, 2010 WL 4008361, at *5 (E.D.Cal. Oct.12, 2010) (stating that "though the evidence discovered may not, ultimately, be admitted at trial, this is no basis for refusing to disclose it during discovery").

III. *Requests for Investigations and "Preventability" Determinations*

 **\*4** Next, defendants assert that plaintiffs should be denied discovery pertaining to "post-accident actions, including internal audits, safety review determinations and 'preventability' determinations" because that information is protected by the attorney-client privilege. (Doc. # 46 at 10–15). Defendants state that defense counsel:

> was retained within hours of the June 4, 2010 accident to undertake an investigation of this personal injury accident in anticipation of possible litigation. Defense counsel immediately undertook an investigation to assess liability and damages. Thereafter, any internal investigation conducted by or on behalf of Stevens Transport, Inc., including 'preventability' determinations enabled defense counsel to give sound legal advice. It is precisely for this reason that defense counsel was retained.

*Id.* at 11. On this basis, defendants claim that the information sought is protected by the attorney-client privilege. *Id.*

In the motion to compel, plaintiffs argue that defendants' claim of privilege is wholly without merit. (Doc. # 47 at 5). Plaintiffs state that there is no claim that defense

counsel was involved in "the determination/investigation of the subject collision being a preventable accident...." *Id.* Rather, plaintiffs assert that the investigation and related preventability determinations were undertaken in the normal course of business in accordance with the Federal Motor Carrier Safety Regulations. *Id.* at 6. Thus, according to plaintiffs, "[t]hat [d]efendants had retained counsel with respect to the subject collision is of no consequence, and provide [sic] no protection." *Id.* at 6.

The burden of establishing the protection of the attorneyclient privilege rests with the person or entity asserting it. *See United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999). Like all privileges, the attorney-client privilege is to be construed narrowly because it operates in derogation of the truth-seeking process. *See United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In this case, the question is whether an internal investigation of the accident, including a "preventability" determination, which defense counsel claims "enabled" him "to give sound legal advice" can be protected from disclosure based upon the attorney-client privilege. (Doc. # 46 at 11).

A similar issue arose in *Byrd v. Wal–Mart Transp., LLC,* No. CV609–014, 2009 WL 3055303, at *1 (S.D.Ga. Sept.23, 2009), which involved a fatal accident between a Wal–Mart tractortrailer and a minivan. The court explained that "due to the severity of the accident," counsel became involved "immediately." *Id.* A discovery dispute arose relating to plaintiffs' request to explore Wal–Mart's post-accident investigation. *Id.* The court described that Wal–Mart's investigation of serious accidents involved gathering documents and photographs, which were then forwarded to Wal–Mart's Serious Accident Review ("SAR") committee. *Id.* Upon review of the material, the committee then issued an opinion finding that the accident was either "preventable" or "non-preventable." *Id.*

 **\*5** During Wal–Mart's corporate deposition, plaintiffs' counsel asked whether Wal–Mart had ever attributed any fault to its driver for the accident. *Id.* Wal–Mart's counsel instructed the deponent not to answer the question, which prompted plaintiffs to file a motion to compel an answer to the fault-attribution question. *Id.* In denying plaintiffs' motion to compel, the court noted that plaintiffs' counsel improperly sought protected work product in the form of "a legal conclusion on one of the ultimate issues of the case." *Id.* at *2. Consequently, the court held that "[a]ny subjective evaluation by Wal–Mart of its *legal* responsibility

for the accident (i.e., its failure to maintain some legally mandated standard of conduct) necessarily steps into the mental impressions of the merits of the case." *Id.* (emphasis in original).

In reaching its decision, the court made clear that had plaintiffs' counsel instead sought unprotected facts uncovered during the investigation or information about the precise criteria used to determine whether the accident could have been prevented, such information would have been discoverable. *Id.* at *1–2. The court stated, "[w]hile Wal–Mart apparently concedes that its SAR committee assessment was prepared in the ordinary course of business and thus enjoys no special work product protection, the Court is satisfied that plaintiffs' line of questioning as to fault impermissibly sought—through the 30(b)(6) deponent's reasonably expected answers—protected mental impressions prepared in anticipation of litigation." *Id.* at *2. Consistent with that finding, the court determined that "[i]f the SAR committee applies a uniform methodology in making preventability assessments, that information (the how and why of its methodology) should be discoverable." *Id.* at *3.

Unlike the plaintiffs in *Byrd,* plaintiffs have not sought to obtain counsel's mental impressions concerning defendants' legal responsibility for the accident. Consistent with *Byrd,* however, an investigation or preventability determination conducted by defendants in the ordinary course of business is not subject to such protection. *See id.* at *2; *see also Smith v. Marten Transp., Ltd.,* No. 10–cv–293, 2010 WL 5313537, at *4 (D.Colo. Dec.17, 2010) (holding that original investigation report was not privileged when produced in the ordinary course of business to investigate multi-car accident involving one of defendant's trucks and drivers); *Sajda v. Brewton,* 265 F.R.D. 334, 340 (N.D.Ind.2009) (finding that company's accident report and computer template used to compile accident information were discoverable when generated in the ordinary course of business and forwarding the information to counsel did "not cloak it in attorney-client privilege"); *cf. Carlson v. Freightliner LLC,* 226 F.R.D. 343, 366 (D.Neb.2004) (stating that "risk management documents prepared by investigators" are not protected from discovery as privileged, unless they disclose "the individual case reserves for files and any mental impressions, thoughts, and conclusions in evaluating a legal claim"). The record evidence in this case suggests that the information at issue was gathered in the ordinary course of business which, according Mr. Dunn, was then reviewed by "a driver review board...." (Doc. # 47, Ex. 2 at 5). The fact that defendants had retained counsel at the time that this information was generated, or that they informed him of the results of the process, does not alter this conclusion. *See, e.g., Heavin v. Owens–Corning Fiberglass,* No. 02–2572, 2004 WL 316072, at *3 (D. Kansas Feb. 3, 2004) (noting that the attorneyclient privilege applies to communications only and not to facts). Plaintiffs may not inquire as to what defendants communicated to counsel, or what advice he gave in response, but they are entitled to discover the facts which the investigation uncovered and any conclusion reached by defendants' personnel.

**\*6** The burden of establishing the protection of the attorneyclient privilege rests with defendants, and they have failed to satisfy that burden. Consequently, this Court will not deny plaintiffs discovery pertaining to post-accident investigations and "preventability" determinations.

IV. *Order*

For the reasons set forth above, the Court grants plaintiffs' "Motion to Compel Discovery Regarding Preventable Accident Determination/Investigation and Remedial Training/Discipline" (Doc. # 47) and denies defendants' "Motion Opposing Plaintiff Chandra Laws' First Set of Interrogatories to Defendant Stevens Transport, Inc. and Motion to Strike Certain 'Areas of Inquiry' Set Forth in Plaintiffs' 30(b)(6) Deposition Notice" (Doc. # 46).

V. *Procedure for Reconsideration*

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

90 Fed. R. Evid. Serv. 1168

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 941435, 90 Fed. R. Evid. Serv. 1168

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #11

Allen v. School Bd. for Santa Rosa County, Fla., Not Reported in F.Supp.2d (2011)

2011 WL 1831764

⚑ KeyCite Yellow Flag

Distinguished by Skinner v. Liller, D.Md., December 8, 2023

2011 WL 1831764
Only the Westlaw citation is currently available.
United States District Court, N.D. Florida,
Pensacola Division.

Mary E. ALLEN, et al., Plaintiffs,

v.

SCHOOL BOARD FOR SANTA ROSA
COUNTY, FLORIDA, et al., Defendants.

No. 3:10cv142/MCR/CJK.
|
May 12, 2011.

**Attorneys and Law Firms**

Stephen M. Crampton, Liberty Counsel, Lynchburg, VA, Horatio G. Mihet, Liberty Counsel, Orlando, FL, for Plaintiffs.

Michael Patrick Spellman, Robert Jacob Sniffen, Todd David Engelhardt, Sniffen & Spellman PA, Tallahassee, FL, Paul R. Green, Johnson, Green & Miller, PA, Milton, FL, Benjamin James Stevenson, Benjamin Stevenson Esq., Pensacola, FL, Daniel Mach, Heather Weaver, American Civil Liberties Union, Washington, DC, Maria Kayanan, Randall C. Marshall, ACLU of Florida, Miami, FL, for Defendants.

**ORDER ON PENDING DISCOVERY ISSUES**

CHARLES J. KAHN, JR., United States Magistrate Judge.

**\*1** Before the Court is Defendants' Emergency Motion to Compel Discovery Responses and Motion for Sanctions. (Doc. 162). Plaintiffs have filed their Memorandum in Opposition to Defendants' Motion to Compel Discovery. (Doc. 172). I have also considered, in reaching this ruling, Plaintiffs' Emergency Motion for Reconsideration of Discovery Order. (Doc. 169). The matter was heard before me in a telephone hearing on May 12, 2011, at 10:00 A.M.

When the three defendants, whom I will collectively refer to in this order as School Board, filed their Motion to Compel Discovery, I entered an interim order (doc. 165), primarily addressing the issues created by the School Board's failure to attach two exhibits to its combined discovery requests. *Allen v. School Bd. for Santa Rosa County, Fla.,* No. 3:10cv142/MCR/CJK, 2011 WL 1661600 (N.D.Fla. May 2, 2011). I required the School Board, under an expedited time schedule, to correct this oversight and further required the 23 plaintiffs to immediately respond to those requests that had been left unanswered because of the lack of attached exhibits. I am advised that the matters concerning the attached exhibits have now been resolved by the parties and will not require further ruling by the court. I am further advised that the School Board's motion insofar as it concerns plaintiffs' failure to use a verified oath with notarization on the interrogatories has also been resolved based upon the plaintiffs' reliance (justifiable in my view) on 28 U .S.C. § 1746. I have advised the parties, that, but for the resolution of this matter, I would have ruled in favor of the plaintiffs and found that the form of declaration they have used is acceptable. This leaves for resolution three issues. First are the interrogatories requesting information on the Santa Rosa School District schools attended by the four student plaintiffs. Next is the response of student plaintiff Riley to interrogatory 2(d)(1). The final issue concerns the number of interrogatories the School Board defendants should be allowed to propound.

*School Board Interrogatory—Schools Attended*

By interrogatory 2(a) to each student plaintiff, the School Board asked these plaintiffs to "identify each and every Santa Rosa school district school you attended, including but not limited to, the name of each school, the date of attendance for each school, the highest grade completed at each school, your current grade in school ." (Doc. 162 at 6). The School Board filed a Motion to Compel as to the objection raised by the current and former student plaintiffs, representing to the court that these plaintiffs responded, "objection; overly broad, unduly burdensome, lack of relevance." (Doc. 162 at 6). Plaintiffs, in their Memorandum in Opposition, have admitted that they responded to the interrogatory with the previously quoted sentence. Plaintiffs, however, also informed the court that they went on, in the same responses, to provide the following, "without waiving any objection: I attended the following schools in Santa Rosa County: Berryhill Elementary (kindergarten-fifth grade); Hobbs Middle School (sixth-eighth grade); and Milton High School (ninth-twelfth grade). I graduated from high school in 2010." This quoted language actually came from student plaintiff Riley's interrogatory answers, and the plaintiffs represent that each of the other four student plaintiffs

Allen v. School Bd. for Santa Rosa County, Fla., Not Reported in F.Supp.2d (2011)

2011 WL 1831764

provided substantially similar responses reflecting their own educational histories in Santa Rosa County. (Doc. 172 at 10).

**\*2** I find that the defendant School Board's Motion with regard to these interrogatories is unjustified. Moreover, the School Board, whether out of intent or oversight, failed to notify the court of the true substance of the answers to interrogatory 2(a). Plaintiffs have explained that their objection was concerning the "including but not limited to" verbage included in the interrogatories. I am unable to determine why the School Board included this verbage in the interrogatories, but I need not consider this, because, as it stands now, in my view, no justiciable objection remains. The only question is whether the answers provided to interrogatory 2(a) are sufficient. They are. The defendant's Motion will be denied as to interrogatory 2(a).

*School Board Interrogatory—Identify Prohibitory Directive*
The next issue involves student plaintiff Riley's answer to interrogatory 2(d)(1) requesting him to "identify with particularity the date the directive prohibiting you from including the phrase 'God Bless' in your letter to the student body was issued, the name of the relevant district personnel who issued it, the content of the directive, the context in which it arose, and any names and contact information to any witnesses to its issuance." (Doc. 162 at 8). Rather than responding to this interrogatory, plaintiff Riley referred to certain paragraphs of the Complaint and one two-page exhibit appended to the Complaint. As plaintiffs point out, Mr. Riley has now been deposed, and was asked a number of questions concerning the subject matter. Plaintiffs therefore conclude that Mr. Riley should not be required to further respond to the interrogatory. The School Board proffers that a response in the form of an interrogatory answer should be required.

Under Federal Rule of Civil Procedure 33(b)(3), each interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath." The School Board defendants express their desire to have an interrogatory answer for further use in these proceedings, rather than being limited to relying upon the deposition answers given by Mr. Riley, which, of course, are not before me. On balance, this argument goes to the School Board. Good tactical reasons exist why a party would want to have a straight-forward interrogatory answer for use at further proceedings, including summary judgment and cross-examination at trial. I therefore find that Mr. Riley has not fully answered the subject interrogatory and should be required to do so within seven (7) days.

*School Board Interrogatories—Number Allowed*
The final issue for resolution involves application of Rule 33(a)(1) of the Federal Rules of Civil Procedure. This Rule provides, in relevant part: "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." School Board defendants now move this court to compel answers to interrogatories that exceed the rule limitation. The sole argument raised by the School Board in the motion to compel is that each defendant is entitled to propound 25 interrogatories for a total of 75. At the hearing on this matter, counsel for the School Board candidly admitted that this was the School Board's position. This position would, considering that there are 23 individual plaintiffs in this matter, result in license for the School Board to propound 1,725 interrogatories.

**\*3** Although counsel for the School Board argued at the hearing that there are other reasons to allow an excessive number of interrogatories, besides the School Board's interpretation of the Rule, such argument was never made in the motion before me, and I will not consider the argument at this time. In the motion actually filed by the School Board, these defendants relied upon a mechanistically literal reading of the Rule, arguing that because plaintiffs brought the action against three separate entities, these entities should each be allowed to propound a full set of interrogatories to each plaintiff. The School Board relies upon *St. Paul Fire and Marine Insurance Company v. Birch, Stewart, Kolasch & Birch, LLP,* 217 F.R.D. 288 (D.Ma.2003). In *St. Paul,* the court read the interrogatory limit to apply to individual parties on each side of the dispute, and not to each side in the aggregate. *Id.* at 289. Plaintiffs respond that the School Board defendants have consistently litigated this case as a single unit, "united in a single, common and unitary purpose ...." (Doc. 172 at 14). The School Board defendants have consistently filed their motions, notices, and discovery matters as one unit. I take the plaintiffs' argument to suggest that the School Board defendants may not, at this stage of the conflict, now decamp into three regiments, in order to gain some advantage in the skirmish lawyers call discovery. Also, as noted by the plaintiffs, even as late as the May 12, 2011 hearing, the School Board defendants have not moved the court for leave to exceed the 25 interrogatory limitation.

In *McCarthy v. Paine Webber Group, Inc.,* multiple defendants were represented by the same law firm and throughout that litigation had jointly filed and responded to

**Allen v. School Bd. for Santa Rosa County, Fla., Not Reported in F.Supp.2d (2011)**

2011 WL 1831764

motions. *See* 168 F.R.D. 448 (D.Conn.1996). After the court denied a joint motion by all three defendants to increase the Rule 33(a) interrogatory limit, one of the three defendants filed its own set of interrogatories. *See id* . at 449. Plaintiffs objected and relied upon the numerical limitation in the Rule, among other issues. The *Paine Webber* defendants argued they were not bound by the 25 interrogatory limitation because there were, in fact, three defendants. The court saw the situation otherwise:

> [D]efendant's argument is disingenuous. Rule 33 of the Federal Rules of Civil Procedure provides that 'each party' may submit up to twenty-five interrogatories 'including all discrete subparts' without leave of court. However, in this case, all defendants have been represented by the same law firm since May 1993, and have jointly filed and responded to all motions since that time. In fact, all defendants brought the previously mentioned motion to compel answers to the same type of interrogatories that are at issue here. The motion was denied.

*Id.* at 450.

Also, in *Zito v. Leasecomm Corp.,* a large group of defendants jointly served a single set of interrogatories totaling 169 separate questions in all. *See* 233 F.R.D. 395 (S.D.N.Y.2006). The District Court, in denying the Defendants' Motion to Compel Interrogatory Answers, questioned the conclusion reached by *St. Paul Fire and Marine Insurance Company,* noting that in the *Zito* case, applying the *St. Paul* reasoning, the plaintiffs would be entitled to propound 5,000 interrogatories. *See id.* at 399. I also am not persuaded by the *St. Paul Fire* reasoning, which here would lead to a ruling that the School Board defendants could propound over 1,700 interrogatories. This is an important case, but the scope of this litigation is not so lacking in circumscription as to suggest this breadth of discovery, and I will not allow it. The School Board's Motion to Compel, asking the court to overrule the

plaintiffs' objection concerning the number of interrogatories, will be denied.

**\*4** Accordingly, it is ORDERED and ADJUDGED:

1. The Defendants' Motion to Compel (doc. 162) with regard to the question of declaration versus notarization of interrogatories is DENIED by agreement of the parties.

2. The Defendants' Motion to Compel concerning answer to interrogatory 2(a) is DENIED, as I find that the student plaintiffs have fully answered the questions.

3. Interrogatory 2(d)(1) propounded to student plaintiff Riley, concerning the use of "God Bless" in a letter to the student body, will be answered by Mr. Riley within seven (7) days, and accordingly this portion of the Motion to Compel is GRANTED.

4. The defendants' apparent attempt to exceed the 25 interrogatory limit of Federal Rule of Civil Procedure 33(a)(1) is DENIED, as more completely explained above.

5. No sanctions or attorneys' fees will be allowed at this time.

6. As I have previously explained in the order setting today's hearing, any further discovery disputes will be heard by me on an expedited basis, and I will absolutely require counsel for all parties to be present in person at the United States Courthouse in Pensacola on 24 hours notice to explain their positions in such proceedings, which are, for the present time, purely hypothetical.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1831764

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #12

2021 WL 347750
Only the Westlaw citation is currently available.
United States Court of Federal Claims.

CITY OF FRESNO, et al., Plaintiffs,

v.

The UNITED STATES of America, Defendant,

and

San Luis & Delta-Mendota Water Authority,
et al., and Central California Irrigation
District, et al. Defendant-Intervenors.

No. 16-1276C
|
(Filed: February 1, 2021)

**OPINION AND ORDER**

KAPLAN, Judge.

Plaintiffs in this action include the City of Fresno, California, and seventeen irrigation districts in California that have entered contracts with the Bureau of Reclamation to receive water supplied by the Friant Division of the Central Valley Project ("CVP") (hereinafter "the Plaintiffs"). They allege that in 2014, in the wake of water shortages caused by a severe drought, Reclamation breached certain water supply contracts between itself and the Plaintiffs when it "appropriated all of the water of the Friant Division of the [CVP] to satisfy what it determined to be a contractual requirement to provide this water as substitute water under a 1939 Contract ... to a group of water users referred to as the Exchange Contractors." Pl.'s 2d Am. Compl. ¶ 32, ECF No. 128-1.

Presently before the Court are 1) a motion to compel Plaintiffs to provide additional responses to the first set of interrogatories served by defendant-intervenors, the Exchange Contractors ("the Intervenors"),[1] see Intervenors' Mot. to Compel, ECF No. 182; and 2) Plaintiffs' Motion to Compel Defendant-Intervenors, the Exchange Contractors, to Produce Daniel Steiner for Deposition under Rule 30(b)(1) ("Pl.'s Mot. to Compel"), ECF No. 189. For the reasons set forth below, Intervenors' motion to compel is **GRANTED-IN-PART** and **DENIED-IN-PART.** Plaintiffs' motion to compel the deposition of Mr. Steiner is **GRANTED**.

[1] As discussed in this Court's March 25, 2020 Opinion ruling on the government's and the intervenors' motions to dismiss, ECF No. 163 at 3 n.3, there are two sets of defendant-intervenors in this case: 1) San Luis & Delta-Mendota Water Authority along with its member districts (the "District Intervenors") and 2) Central California Irrigation District, San Luis Canal Company, Firebaugh Canal Water District, Columbia Canal Company, and the San Joaquin River Exchange Contractors Water Authority (the "Exchange Contractor Intervenors").

**DISCUSSION**

**I. Intervenors' Motion to Compel**

As noted, the Exchange-Contractor Intervenors have filed a motion to compel Plaintiffs to respond to the set of fifty interrogatories that Intervenors served on them on October 21, 2020. Intervenors' Mot. to Compel. Intervenors complain that Plaintiffs failed to respond to fifteen of the first twenty-five interrogatories and/or "evaded response by mischaracterizing the information sought under the interrogatory." Id. at 2. In addition, Intervenors challenge Plaintiffs' assertion that they have no duty to respond at all to Interrogatory Nos. 26–50 because Rule 33 of the Rules of the Court of Federal Claims ("RCFC") provides that "a party may serve on any other party no more than 25 written interrogatories." See Intervenors' Reply at 6, ECF No. 184.

Before turning to the Motion to Compel, the Court observes that it found a number of Intervenors' first twenty-five interrogatories difficult to understand as written. Further, the explanations of the interrogatories that Intervenors' counsel provided Plaintiffs' counsel in a December 4, 2020 letter were not especially helpful. See Intervenors' Mot. to Compel Ex. 2. Nonetheless, for the reasons set forth below, the Court will grant Intervenors' motions to compel additional responses to Interrogatory Nos. 8, 9, 10, and 24. While those interrogatories were also not a model of clarity, the Court has concluded that they merit more fulsome responses than Plaintiffs have so far provided. Otherwise, Intervenors' motion to compel is denied.

**A. Motion to Compel Additional Responses to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 17, 18, 19, and 24**

**\*2** The Rules of the Court of Federal Claims provide that parties may serve written interrogatories that "relate to any

City of Fresno v. United States, Not Reported in Fed.Cl. (2021)

2021 WL 347750

matter that may be inquired into under RCFC 26(b)." RCFC 33(a)(2). Rule 26(b), in turn, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." RCFC 26(b)(1).

The first twenty-five interrogatories that Intervenors served on Plaintiffs are so-called contention interrogatories. In general, the purpose of contention interrogatories is to ascertain the theories underlying a party's case and the facts that support those theories. Exxon Research & Eng'g Co. v. United States, 44 Fed. Cl. 597, 601 (1999); see also Ian D. Johnston & Robert G. Johnston, Contention Interrogatories in Federal Court, 148 F.R.D. 441, 442 (1993) ("[C]ontention interrogatories seek to discover the factual basis for the allegations raised in the complaint, answer or counterclaim."). A party may be precluded from relying on theories that it disavows in its responses to contention interrogatories. See, e.g., Dairyland Power Co-op. v. United States, No. 04-106 C, 2008 WL 5122339, at *7 (Fed. Cl. June 20, 2008). Therefore, it is especially important that such interrogatories be "intelligible, specific and carefully tailored for each case." Contention Interrogatories in Federal Court, 148 F.R.D. at 446–47.

The party on whom an interrogatory is served "must provide true, explicit, responsive, complete, and candid answers" which should be provided "directly and without evasion in accordance with information that the answering party possesses after due inquiry." Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 132 (2009) (citations omitted). However, a party is "under no obligation to decipher" vague or incomprehensible interrogatories. Rucker v. Wabash R. Co., 418 F.2d 146, 154 (7th Cir. 1969). Indeed, as one district court judge put it, "vague and argumentative questions usually contain a built-in penalty." Pressley v. Boehlke, 33 F.R.D. 316, 317 (W.D.N.C. 1963). For while "[e]vasive or cryptic answers are ordinarily insufficient," "a cryptic question invites an inscrutable answer." Id.

**1. Interrogatory Nos. 1–6**

Interrogatory No. 1 reads as follows:

> Do you contend that any water released or delivered by the United States to the Exchange Contractors in 2014 from the San Joaquin River flows or from stored water of the San Joaquin River was water that the Exchange Contractors

rights to water, preexisting the receipt by the United States of the rights granted under Decision 935 of the SWRCB, did not attach to?

Pl.'s Resp. to Intervenors' Mot. to Compel ("Pl.'s Resp.") Ex. 1, at 1–2, ECF No. 183-1. Interrogatory No. 4 appears to cover the same topic. It states:

> Do you contend that in 2014 the United States possessed rights to divert and store San Joaquin River water with priority ahead of and senior to any rights to water of the Exchange Contractors under California law which were granted to the United States by Decision 935 of the State Water Resources Control Board and exercised by the United States to make the deliveries of water to the Exchange Contractors described in your answer to Interrogatory Nos. 1 and/or 2?

Id. at 4.

Plaintiffs interpreted Interrogatory Nos. 1 and 4 as requests that they identify what they claimed were the sources of Reclamation's rights to divert and store San Joaquin River water in 2014. Id. at 2, 4. In response, Plaintiffs explain that it was their contention that Reclamation's rights to use San Joaquin River water were based on the Second Amended Contract for Exchange of Waters and not on any state-granted water rights. Id. In their response to the Motion to Compel, Plaintiffs clarify that they interpreted the interrogatory to ask whether the Intervenors were entitled as a matter of state water rights law to the water that Reclamation delivered to them in 2014, and that their intent was to answer that question "no." Pl.'s Resp. at 8; see also id. at 10 (clarifying Plaintiffs' answer to Interrogatory No. 4).

**\*3** An answer stating that the responding party does not make the contention presented in a contention interrogatory is a sufficient answer to that interrogatory. Roberts v. Heim, 130 F.R.D. 424, 426 (N.D. Cal. 1989) ("As Plaintiffs apparently make no such claim, it is not an issue in this lawsuit and Defendants have no need for this answer."). Further, the Court is satisfied that Plaintiffs made a good faith attempt to respond to Interrogatory Nos. 1 and 4, as best those interrogatories could be understood. The Court cannot require Plaintiffs to embrace or reject a contention whose meaning is unclear. It therefore rejects Intervenors' argument that Plaintiffs' responses to Interrogatory Nos. 1 and 4 are inadequate on the grounds that they mischaracterized the question that Intervenors were attempting to pose.[2]

2    The explanation of the Interrogatories that is provided in Intervenors' reply brief only makes their meaning more uncertain. See Intervenors' Reply at 2–3, ECF No. 184 (stating that "Interrogatory Nos. 1 and 4 ask whether, in 2014, the United States misconstrued the underlying water rights of the Exchange Contractors relied upon for the performance of the Exchange Contract and, if so, on what days and from which source or facilities was San Joaquin River water or water from other substitute supplies delivered, either intentionally or in error, by the United States in 2014, even though the Exchange Contract terms did not so require it.").

Further, Interrogatory Nos. 2, 3, 5 and 6 only applied to the extent that Plaintiffs answered Interrogatory Nos. 1 and 4 in the affirmative. Because Plaintiffs denied that they were making the contentions set forth in Interrogatory Nos. 1 and 4, as they understood them, they had no obligation to provide further answers to Interrogatory Nos. 2, 3, 5 and 6. The Court therefore declines to compel Plaintiffs to provide further responses to Interrogatory Nos. 1–6.

## 2. Interrogatory Nos. 7–9

Intervenors' motion to compel Plaintiffs to provide further responses to Interrogatory Nos. 7–9 is more persuasive. Interrogatory No. 7 reads as follows:

Do you contend that notwithstanding Article 3 of the Second Amended Exchange Contract which states:

"Substitute Water Defined. The term 'substitute water' as used herein means all water delivered hereunder at the points of delivery hereinafter specified to the Contracting Entities, regardless of source."

that water delivered by the United States to the Exchange Contractors (Contracting Entities) in 2014 was not "substitute water" as described and defined in that quoted provision of the Second Amended Exchange Contract?

Plaintiffs' answer to this Interrogatory was unresponsive. They stated that "[u]nder the Second Amended Exchange Contract, 'substitute water' is a contract term designating water provided by Reclamation in exchange for the right to use the Exchange Contractors' reserved rights to flows in the San Joaquin River." In addition, Plaintiffs observe, "[t]he Exchange Contractors are only entitled to this San Joaquin River [water] when substitute water from other sources is not available." Pl.'s Resp. Ex. 1, at 6; see also Pl.'s Resp. at 11–12.

Although not explicitly stated, the Court interprets Plaintiffs' response to this Interrogatory to state that, in their view, any water Reclamation supplied to the Exchange Contractors from the San Joaquin River in 2014 was not "substitute water" to which the Exchange Contractors had a contractual right, because there was water from other sources available to meet Reclamation's obligations to Intervenors.

But despite effectively responding in the affirmative to Interrogatory No. 7, Plaintiffs objected to answering Interrogatory Nos. 8 and 9, which requested that Plaintiffs supply the facts and documents supporting their contention. Plaintiffs objected to these interrogatories on the grounds that they were "burdensome" or "not proportional to the needs of the case." They observed that their position that the water supplied was not "substitute water" was based on the terms of the Second Amended Contract, and that "facts concerning the lengthy history and operation of the contract arrangement are irrelevant—and are better known by the Exchange Contractors than by [Plaintiffs]." Pl.'s Resp. Ex. 1, at 6.

 *4  "The use of broad or boilerplate objections is insufficient to justify withholding information" requested in discovery. Kansas City Power & Light Co. v. United States, 139 Fed. Cl. 546, 565 (2018). Further, the Court does not understand the Intervenors to be asking for facts supporting Plaintiffs' interpretation of the term "substitute water" in the Exchange Contract. Instead, the Court understands Intervenors to be asking for facts that support Plaintiffs' contention that the water supplied to the Exchange Contractors did not fit within Plaintiffs' understanding of the term "substitute water." In other words, they request facts and documents supporting the assertion that Reclamation could have supplied the Exchange Contractors with water from some source other than the San Joaquin River. Intervenors' objections to Interrogatory Nos. 8 and 9 are therefore without merit, and Plaintiffs must provide more fulsome responses to those interrogatories.

## 3. Interrogatory No. 10

Interrogatory No. 10 reads as follows:

If your "facts" provided in answer to Interrogatory Nos. 7 and/or 8 includes any water stored in Millerton Reservoir or in any other reservoir storing San Joaquin River water for any period of time in 2014 as "a fact" supporting your contention described in your answers to Interrogatory Nos.

2021 WL 347750

7 and/or 8, describe the facts supporting the claim that the rights of the Exchange Contractors to the water entering or released from any reservoir on the San Joaquin River in 2014 were not permitted to be used by the United States as "substitute water" as defined in the Second Amended Exchange Contract (quoted in Interrogatory No. 7 above) to supply the Exchange Contractors in 2014?

Pl.'s Resp. Ex. 1, at 7. The Court finds this run-on sentence difficult to decipher. Plaintiffs interpreted the question posed to be "whether water stored in Millerton Lake or an upstream reservoir is substitute water, under the terms of the Second Amended Contract." Id. They then went on to answer the question by repeating that "substitute water is a contract term designating water provided by Reclamation in exchange for the right to use the Exchange Contractors' reserved rights to flows in the San Joaquin River," and that "[t]he Exchange Contractors are only entitled to San Joaquin River water when substitute water from other sources is not available." Id. To the extent that Plaintiffs are asserting that the water drawn from the San Joaquin River and stored in Millerton Lake or an upstream reservoir is not substitute water because water from other sources was available, Plaintiffs were asked to provide the facts supporting that assertion. As with Interrogatory Nos. 8 and 9, they failed to do so. Therefore, the Court directs Plaintiffs to provide a more complete response to Interrogatory No. 10.

#### 4. Interrogatory No. 14

Interrogatory No. 14 reads as follows:

Do you contend that because the United States did not order the waters retained in storage by Southern California Edison and/or Pacific Gas & Electric under the terms of the Power Contracts for any period of time, those released waters from upstream reservoirs of Southern California Edison and Pacific Gas & Electric upon entering Millerton Reservoir became exempted from or excused from the requirements of Paragraph 9(a) of the Purchase Contract that the waters of the San Joaquin – whether flowing into Millerton Reservoir instantaneously or stored herein – be delivered downstream to the Exchange Contractors in conditions of shortage?

Pl.'s Resp. Ex. 1, at 9. Plaintiffs objected to this Interrogatory because they found it "unintelligible" and because it allegedly mischaracterized Paragraph 9(a) of the Purchase Contract. Id. The Court agrees that the Interrogatory as written is impenetrable. The explanation of the Interrogatory contained

in Intervenors' December 4, 2020 letter to counsel for Plaintiffs is also of no assistance. Intervenors' Mot. to Compel Ex. 2, at 4. The Court will not direct Plaintiffs to provide a further response that signals agreement or disagreement with a contention whose meaning cannot be readily ascertained.

#### 5. Interrogatory Nos. 17–19

*5 Interrogatory No. 17 reads as follows:

Do you contend that Paragraph 11(a) of the Purchase Contract which requires that the United States administer and exercise the rights of the Exchange Contractors' Power Contracts after 1939, stating: "... provided always, that said rights privileges or benefits shall not at any time be exercised by the United States so as to diminish the water supply of the beneficiaries of Schedule One (1)..." was not, in 2014, a prior condition to the obligation of the United States to deliver water to the Plaintiffs pursuant to their Contract terms with the United States through the provisions of Paragraph 3(N) and/or the requirement of Paragraph 12(b) that the United States meet legal obligations?

Pl.'s Resp. Ex. 1, at 10–11. Plaintiffs objected to this Interrogatory on the grounds that it was unintelligible. The Court again agrees and again finds the lengthy attempt on counsel's part in the December 4, 2020 letter to explain what Intervenors were asking even more incomprehensible. Intervenors' Mot. to Compel Ex. 2, at 4. The Court again declines to require Plaintiffs to state whether or not they agree with a contention so complicated that it defies explanation.

#### 6. Interrogatory No. 24

Interrogatory No. 24 states as follows:

Do you contend that any of the Plaintiffs (1) gave notice in writing to the United States of their objection to transfers of CVP water proposed in the 2014 calendar year by the Exchange Contractors to be approved by the United States, and (2) that any of the Plaintiffs met and conferred with the United States and gave written notice of any grounds of objection to approval of transfers by the Exchange Contractors, before commencing any legal action as required by Paragraph 33 of the Plaintiffs' Contracts with the United States?

City of Fresno v. United States, Not Reported in Fed.Cl. (2021)

2021 WL 347750

Pl.'s Resp. Ex. 1, at 13–14. Plaintiffs objected to Interrogatory No. 24 on the grounds that "it mischaracterizes the provision of Article 33 of Friant's contracts, making it impossible to provide a meaningful response." Id. at 14. In addition, they objected to the Interrogatory on the grounds that it requested information not relevant to any claim or issue in the case given "that there is no condition precedent for the filing of Friant's breach-of-contract claims as set forth in Plaintiffs' Second Amended Complaint." Id.

The Court agrees with Plaintiffs that the Interrogatory improperly cites Article 33 of the contract, entitled "Severability," which concerns suits brought by persons or entities that are not parties to the contract. Pl.'s 2d Am. Compl. Ex. 5, at 66–67, ECF No. 128-6. It is Article 34, entitled "Resolution of Disputes," that sets forth the parties' obligations to meet and confer and to provide notice thirty days before filing suit. Id. at 67–68.

In paragraph 44 of their second amended complaint, Plaintiffs assert that prior to filing suit they "participated in an extensive meet and confer process in an attempt to resolve this dispute" and that "[a]t all material times in 2014 Plaintiffs had complied with all requirements of their water-supply contracts." Pl.'s 2d Am. Compl. ¶ 44. The Court takes Plaintiffs' statement that there was no condition-precedent to the filing of their breach of contract claims in this case as a statement that they do not believe that a failure to provide notice or engage in a meet and confer process would be a bar to their suit here. Nonetheless, the Court believes that it is reasonable to expect Plaintiffs to respond to Interrogatory No. 24 with the understanding that the reference to Article 33 was in error, and that the relevant contractual provision is Article 34.

### B. Intervenors' Second Twenty-Five Interrogatories

**\*6** Intervenors also ask the Court to compel Plaintiffs to respond to Interrogatory Nos. 26–50. Intervenors' Mot. to Compel at 2. Plaintiffs objected to answering these interrogatories on the grounds that RCFC 33 states that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." See Pl.'s Resp. at 5. In this case, the Intervenors argue, their group consists of five parties, each entitled to serve twenty-five interrogatories. Therefore, in theory, according to Intervenors, they could have served a total of 125 interrogatories without running afoul of the numerical limitation set forth in RCFC 33.

The Court declines to compel Plaintiffs to respond to Interrogatory Nos. 26–50. The twenty-five interrogatory limit is imposed, in part, to increase the efficiency of the interrogatory practice and to avoid burdening the opposing party with excessive discovery requests. Fed. R. Civ. P. 33(a)(1) (1993 Advisory Committee Notes); see also Capacchione v. Charlotte-Mecklenburg Sch., 182 F.R.D. 486, 492 (W.D.N.C. 1998) (noting that "the limit also serves to force parties to make prudent and constructive use of this discovery device.").[3] "There is a split of opinion," however, "as to whether Rule 33(a)(1) provides each 'party' with authority to serve twenty-five interrogatories on any other party, or whether Rule 33(a)(1) limits each 'side' to twenty-five interrogatories." Compare Atl. Sounding Co. v. Townsend, No. 3:05-CV-649-J-20JRK, 2010 WL 11508296, at *1 (M.D. Fla. Feb. 16, 2010) (citing St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff") with Zito v. Leasecomm Corp., 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (the "more sensible approach" is to impose limitation based on "sides" rather than "parties"); see also David S. Yoo, Rule 33(a)'s Interrogatory Limitation: by Party or by Side?, 75 U. Chi. L. Rev. 911 (2008)).

[3]    Interpretation of the Rules of the Court of Federal Claims "will be guided by case law and the Advisory Committee Notes that accompany the [Federal Rules of Civil Procedure]." RCFC Rules Committee Note (2002). The interpretation of the Federal Rules "informs the Court's analysis" of the corresponding Rule in the Court of Federal Claims. Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006).

The Court need not decide in this case whether RCFC 33 limits the number of interrogatories based on party or on side because, in its view, there is no justification for treating the Intervenors as more than one party for purposes of discovery. All five of the parties that make up the group of Exchange Contractor Intervenors requested leave to intervene together in a single motion, are represented by the same counsel, have identical interests, signed on to the same motion to dismiss, and served their interrogatories collectively as a group. Therefore, the Court concludes that the best result in this case is to treat these "nominally separate parties" as "one party for purposes of the 25–interrogatory limitation." Vinton v. Adam Aircraft Industries, Inc., 232 F.R.D. 650, 664 (D. Colo. 2005) (citing 8A Wright, Miller and Marcus, Federal Practice and Procedure, Civil 2d § 2168.1). This is especially

2021 WL 347750

appropriate given that Plaintiffs in this case have the burden of responding to discovery from the defendant, the United States, and also potentially from another set of defendant-intervenors (the District Intervenors).

## II. Plaintiffs' Motion to Compel Deposition of Daniel Steiner

**\*7** As noted above, in addition to Intervenors' motion to compel, the Court also has before it a motion filed by the Plaintiffs seeking to compel the deposition of Daniel Steiner. See Pl.'s Mot. to Compel. According to a declaration by Mr. Steiner that the Exchange Contractors filed in support of their motion to intervene, he "participated with Bureau of Reclamation personnel" in analyzing the hydrology and operation of the San Joaquin River in 2014. Pl.'s Mot. to Compel Ex. 2, Decl. of Daniel Steiner ("Steiner Decl.") ¶ 2; see also Pl.'s Mot. to Compel at 1–2. Mr. Steiner is therefore an important fact witness.

Plaintiffs noticed Mr. Steiner's deposition on November 20, 2020. See Pl.'s Mot. to Compel Ex. 4, ECF No. 189-4. In the email accompanying the deposition notice, Plaintiffs requested that Intervenors provide a date and time that Mr. Steiner would be available. Pl.'s Mot. to Compel Ex. 5, at 1–2, ECF No. 189-5. On January 7, 2021, after receiving no response to that email or two follow-up communications sent in December, Plaintiffs' counsel requested that the parties meet-and-confer to discuss the scheduling of the deposition. Pl.'s Mot. to Compel Ex. 1, at 2, ECF No. 189-1.

Counsel for the Exchange Contractors responded that day. He confirmed that Mr. Steiner was a fact witness in the case because of his involvement in the events and decisions in 2014 that gave rise to this lawsuit. Id. at 1. He further advised Plaintiffs' counsel that Intervenors also intended to rely on Mr. Steiner as an expert witness. Counsel for Plaintiffs agreed to stipulate that she would limit her questions to matters that Mr. Steiner learned as a participant in the events that led up to this lawsuit, and save for the expert discovery portion of the case any questions about the opinions he has formed based on information he obtained since this litigation was initiated. Id.

Because Intervenors' email response of January 7 did not provide the requested date for Mr. Steiner's deposition, on January 8 counsel for Plaintiffs advised counsel for the Intervenors that she intended to file a motion to compel. Pl.'s Mot. to Compel Ex. 7, at 1–2, ECF No. 189-7.

Intervenors' counsel responded the same day, again asking for confirmation that the deposition would be limited to factual issues and expressing concern about whether it might be better to hold off on deposing Mr. Steiner until the expert discovery phase of the case. Id. at 1. Nonetheless, he stated, he would "proceed to get some available dates from Mr. Steiner." Id.

On January 15, because no date had yet been supplied for Mr. Steiner's deposition, Plaintiffs filed the motion to compel that is currently before the Court. The Intervenors responded to the motion to compel on January 22, 2021. ECF No. 190. They contend that the motion to compel "is a meritless attempt to distract the Court from the Defendant-Intervenors' Motion to Compel Further Responses to Special Interrogatories." Id. at 2. Further, they argue that the Court "should deny the Motion as moot or, alternatively, enter an order authorizing the deposition so long as Plaintiffs refrain from asking questions that infringe on Mr. Steiner's expert knowledge, opinion, or judgments." Id.

The Court is not sure why Intervenors would think that the Court might be "distracted" from deciding their motion to compel by the Plaintiffs filing a motion of their own. And in any event, another two weeks has passed since Plaintiffs filed their Motion to Compel and—so far as the Court knows—Intervenors have apparently still not proposed dates for Mr. Steiner's deposition. The motion to compel is therefore not moot.

**\*8** Therefore, the Court directs Intervenors to provide counsel for Plaintiffs with several proposed dates for a deposition of Mr. Steiner to take place within fourteen days of the date of this Order. During that deposition, Mr. Steiner may be required to answer questions regarding the services he provided to the Intervenors in 2014 during the drought, including questions about his interactions with the United States and other parties to this litigation. The parties are directed to Emerson Elec. Co. v. Suzhou Cleva Elec., No. 4:13-CV-01043 SPM, 2014 WL 5529152 (E.D. Mo. Nov. 3, 2014), for guidance regarding the appropriate scope of Mr. Steiner's deposition.

The Court urges the parties to do their best to resolve any disputes that may arise about the scope of the deposition on their own, and without the need for intervention by the Court.

**CONCLUSION**

In view of the foregoing, Intervenors' Motion to Compel, ECF No. 182, is **GRANTEDIN-PART**. Plaintiffs shall respond to Interrogatory Nos. 8, 9, 10, and 24 within thirty days, consistent with the Court's opinion. Intervenors' Motion to Compel is otherwise **DENIED**.

Plaintiffs' Motion to Compel Defendant-Intervenors to Produce Daniel Steiner for Deposition under Rule 30(b)(1), ECF No. 189, is **GRANTED**. Intervenors are directed to provide Plaintiffs' counsel with several proposed dates for a deposition of Mr. Steiner to take place within fourteen days of the date of this Order, unless the parties mutually agree otherwise.

Finally, upon consideration of the parties' joint status report filed on January 12, 2021, ECF No. 187, the Court sets the following revised schedule for the completion of discovery in this case, as proposed by the government:

> **April 15, 2021** Fact discovery shall be completed.
>
> **May 14, 2021** Expert disclosures shall be exchanged.
>
> **June 14, 2021** All discovery shall close.
>
> **June 28, 2021** The parties shall file a joint post-discovery status report.

The government shall cooperate with Plaintiffs in setting dates for depositions, so that no further extensions of the discovery schedule will be required.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed.Cl., 2021 WL 347750

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #13

Layani v. Ouazana, Not Reported in Fed. Supp. (2024)

2024 WL 3233999

2024 WL 3233999
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Gerard LAYANI, et al., Plaintiffs,
v.
Isaac OUAZANA, et al., Defendants

Action No. 20-cv-420-SAG
|
Signed June 28, 2024

**Attorneys and Law Firms**

Jamil Zouaoui, Mizene PLLC, Washington, DC, for Plaintiffs Kandy, LLC, Mrs. Henya Karniel, Mr. Yonason S. Keyak, Mrs. Devora A. Keyak, 4802 Frankford Ave, LLC, Mr. Yosef Keyak, Issac Krausz, Gerard Layani, Britt Investment Baltimore LLC, Yehuda Ragones, RDNA Investments LLC.

William Carlos Parler Jr., The Law Offices of William C. Parler, Jr., LLC, Maryland, MD, for Defendants Isaac Ouazana, Benjamin S. Ouazana, I&B Capital Investments LLC, WAZ-Brothers, LLC, WAZ-Investments, LLC, WAZ-Management, LLC.

**MEMORANDUM OPINION**

Adam B. Abelson, United States Magistrate Judge

**\*1** This case arises from claims by Plaintiffs[1] that their investments in certain real properties in the Baltimore area were the product of fraud. *See* ECF No. 42. They have sued Defendants[2] for damages and injunctive relief. *See id.*; *see also Layani v. Ouazana*, 2022 WL 294286, ECF No. 58 (D. Md. Feb. 1, 2022); *Layani v. Ouazana*, 2021 WL 805405, ECF No. 38 (D. Md. March 3, 2021). The parties appeared on June 11, 2024, for a hearing on various discovery disputes, including the sequence, schedule, length, and cost allocation of fact discovery. The rulings on these disputes have been memorialized by written order dated June 20, 2024. ECF No. 188.

[1]    Gerard Layani, Britt Investment Baltimore, LLC, Yehuda Ragones, RDNA Investments, LLC, Kandy, LLC, Henya Karniel, Yonason S. Keyak, Devora A.

Keyak, 4802 Frankford Ave, LLC, Yosef Keyak, and Issac Krausz.

[2]    Isaac Ouazana and Benjamin Ouazana, along with those defendants' companies, I&B Capital Investments LLC, WAZ-Brothers, LLC, WAZ Investments, LLC, WAZ-Management, LLC, and yet unidentified parties "John and Jane Doe(s) and John Doe Entities" (collectively "Defendants")

A significant point of disagreement at the June 11 hearing, however, involved interrogatories. Specifically, the parties disputed (1) which of Defendants' interrogatories Plaintiffs must answer, and (2) whether Plaintiffs' delay in producing documents and/or in answering interrogatories merits monetary sanctions. As set forth in the June 20 order, Plaintiffs must respond to Interrogatories 1–7, 17, 19, 20, and 22, and Defendants' motions for sanctions are denied. This memorandum opinion explains the Court's reasoning on those two issues.

**I. Defendants' Interrogatories**

On September 11, 2023, Defendants served 39 interrogatories on Plaintiffs. ECF No. 185-1. Plaintiffs refused to respond, and only began serving answers to Defendants' interrogatories on June 10, 2024. ECF No. 185-3 at 5. Even as of the Court's most recent discovery hearing, two sets of plaintiffs—the Kayak and Krausz plaintiffs—had still entirely failed to serve answers to any interrogatories, a failure for which Plaintiffs offered no justification but which Plaintiffs' counsel represented would be cured promptly. In response to Plaintiffs' objection that Defendants had exceeded the 25-interrogatory limit set forth in Federal Rule 33, Defendants withdrew their interrogatories above #23 before the hearing. But Plaintiffs still refused to answer interrogatories beyond #5, contending that those interrogatories and sub-parts total the maximum that Defendants may serve under the rule. The parties also dispute whether the interrogatory limit under Rule 33 applies to Defendants individually or collectively. Finally, Defendants contend that even as to the interrogatories that Plaintiffs purported to answer, Plaintiffs have not discharged their obligation to actually "answer[ ] ... fully" those interrogatories. *See* Fed. R. Civ. P. 33(b)(3).

For the following reasons, the Court ordered that Plaintiffs respond to Interrogatories 1–7, 17, 19, 20, and 22. ECF No. 188.

**A. Interrogatory Subparts**

Layani v. Ouazana, Not Reported in Fed. Supp. (2024)
2024 WL 3233999

**\*2** Federal Rule 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Plaintiffs contend that each of Defendants' interrogatories, and separately each sub-part, should count toward the limit, and on these grounds have refused to answer interrogatories beyond the first five, which each contains an introductory question, followed by four sub-parts. For example, Interrogatory No. 1 incorporates Defendants' Request for Admission No. 1, and reads as follows:

**REQUEST FOR ADMISSION NO. 1**

Plaintiff has no evidence that any acts or omissions of any of the Defendants caused or contributed to the Plaintiff sustaining any damages.

**INTERROGATORY NO. 1**

If Plaintiff's response, in whole or in part, to the foregoing Request for Admission is other than an unqualified admission, state in full each and every reason for Plaintiff's response; and (1) describe in detail all facts supporting Plaintiff's response; (2) identify any and all documents supporting Plaintiff's response or answer to the subparts of this interrogatory; (3) identify any and all persons with knowledge supporting Plaintiff's response; and (4) if Plaintiff's response is based on a lack of sufficient information to admit or deny, describe Plaintiff's efforts to obtain information responsive to this Request.

*See* ECF No. 185-1 at 2. Plaintiffs contend that that interrogatory, and the various others structured like it, should be counted as five interrogatories for purposes of the 25-interrogatory limit.

To determine whether interrogatory sub-parts should count as multiple interrogatories, courts generally look to whether the subparts are "directed at eliciting details concerning the common theme" or instead whether they "inquir[e] into discrete areas." *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 572–73 (D. Md. 2010). Put differently, "most courts have followed what is sometimes referred to as the 'related question approach,' " meaning they look to whether subparts are "logically or factually subsumed within and necessarily related to the primary question." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194-97 (E.D. Tex. 2016); *see also Mezu*, 269 F.R.D. at 573 (describing the inquiry as generally turning on whether "the first question is primary and subsequent questions are secondary to the primary question") (quoting *Kendall v. GES Exposition*

*Servs.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997)). For example, the Federal Rules Advisory Committee explained that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the times, place, persons present, and contents be stated separately for each such communication." *Notes of Advisory Committee on Rules—1993 Amendment*. In contrast, in the *Kendall* case, one example of "independent questions being improperly combined into one interrogatory" was the following: "Identify fully the minimum qualifications for an employee to be hired onto 'freight,' including, but not limited to, the ability to drive heavy machinery, experience in the industry, and all other criteria used by Defendants. Also, identify any document in which these qualifications are articulated." 174 F.R.D. at 686. The *Kendall* court held that, in that example,

[T]he first question asks for a description of qualifications. The second question asks for a description of documents. The first question can be answered fully and completely without answering the second question. The second question is totally independent of the first and not "factually subsumed within and necessarily related to the primary question."

**\*3** *Id.* (citation omitted).

The Court finds the distinctions drawn by those courts persuasive in the context of this case and these interrogatories. The "pragmatic approach" reflected in those cases balances the "competing purposes of Rule 33(a)(1): allowing reasonable latitude in formulating an inquiry to elicit as complete an answer as possible, while at the same time not allowing the multiplication of interrogatories to the point that it defeats the purposes underlying the 25-interrogatory limit." *Erfindergemeinschaft Uropep GbR*, 315 F.R.D. at 196-97.

Applying the principles reflected in *Mezu*, *Kendall*, and the Advisory Committee Notes, the Court finds that Defendants' interrogatories 1 through 7, which are set forth in full at ECF No. 185-1, each comprise four independent interrogatories, namely the four sub-parts. The introductory language ("If Plaintiff's response, in whole or in part, to the foregoing Request for Admission is other than an unqualified admission, state in full each and every reason for Plaintiff's response") and the first subpart ("describe in detail all facts supporting Plaintiff's response") are not independent, and thus the Court rejects Plaintiffs' contention that each of those interrogatories constitutes five separate interrogatories. Accordingly, each Plaintiff must respond at least to interrogatories 1 through 6, and the first subpart of interrogatory 7.

### B. The 25-Interrogatory Limit: Per "Side" Or Per "Party"?

But resolving which sub-parts comprise separate interrogatories does not fully resolve the dispute over which interrogatories Plaintiffs must answer, because Defendants contend that even if the sub-parts of their interrogatories must be separately counted for purposes of the 25-interrogatory limit, each of the six defendants is entitled to a set of interrogatories, and thus Defendants are collectively permitted a total of 150 interrogatories.

Courts and commentators have taken different approaches to interpreting Rule 33's limit on the number of interrogatories where there are multiple parties on a particular "side" of a litigation. Three potential constructions have emerged. The first provides that because Rule 33 permits "a party" to serve "no more than 25 written interrogatories," the total interrogatories permitted by one "side" equals the number of parties multiplied by 25, which here would total 150. *See, e.g.,* *St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass 2003). In support of that approach, it has been noted that the 1993 amendments to the Federal Rules addressed, among other things, limitations on both depositions and interrogatories, and whereas Rule 30 limited each *side* ("by the plaintiffs, or by the defendants, or by the third-party defendants") to ten depositions, *see* Fed. R. Civ. P. 30(a)(2)(A)(i), Rule 33 limited each "party" to 25 interrogatories. Fed. R. Civ. P. 33(a)(1).

The second approach, which one commentator has called the "alternate construction," David S. Yoo, *Rule 33(a)'s Interrogatory Limitation: by Party or by Side?*, 75 U. Chi. L. Rev. 911, 916 (2008), construes Rule 33 to count the 25-interrogatory limit as a "per side" limitation. Under this approach, "nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation." 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.). *See also, e.g., Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (calling a per-side construction of Rule 33 a "more sensible approach" and noting that if the per-party interpretation were applied literally in that case, where there were 200 individual plaintiffs, "the plaintiffs would be entitled to propound more than 5,000 interrogatories").

**\*4** But there is also a third approach, reflecting a middle ground between the first two. Under this interpretation of Rule 33, the answer to whether the 25-interrogatory limit applies to each side or each party boils down to "it depends"—

as informed by the Federal Rules' focus on relevance and proportionality. Those central concepts are articulated principally in Rule 26(b)(1), which provides that discovery extends to

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The concept of proportionality also is articulated in Rule 26(b)(2)(C), which provides that the "frequency or extent of discovery" should *not* extend to where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

As applied to the per-party vs. per-side interrogatory number-cap debate, those principles counsel that courts should be "guided by the [Rules'] proportionality considerations," with due regard to factors such as "whether there is some articulable reason for the need to send more interrogatories," 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.), as well as whether particular interrogatories are "unreasonably cumulative or duplicative," whether the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive," and whether the party seeking leave to propound (or demand answers to) more than 25 interrogatories "has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). Other relevant factors include whether the propounding parties are represented by common counsel or separate counsel, *see, e.g., Stiles v. Walmart*, No. 2:14-CV-2234-MCE-DMC, 2020 WL 264420, at \*4 (E.D. Cal. Jan. 17, 2020) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories."), as well as whether the propounding parties are aligned or share a common interest, or instead have sufficiently distinct involvement or roles in the events at issue that separate sets of interrogatories, or some number greater than 25 for their side, are justified and appropriate. *See e.g., Skinner v. Liller*, No. CV TDC-17-3262, 2023 WL 8520240, at \*3 (D. Md. Dec. 8, 2023) (authorizing 177 interrogatories

Layani v. Ouazana, Not Reported in Fed. Supp. (2024)

2024 WL 3233999

upon finding that the "Individual Defendants performed different roles and/or exercised different responsibilities," and counsel "crafted the interrogatories based on her review of the Amended Complaint with each Individual Defendant and his/her roles and duties in mind.").

Here, some of those factors counsel in favor of permitting Defendants to propound more than 25 total interrogatories: Plaintiffs chose to sue multiple defendants; Plaintiffs were dilatory in producing documents, and in answering interrogatories; the case involves numerous transactions; and the parties on both sides have repeatedly professed a lack of understanding of the facts the other side relies on for their claims and defenses, such that there is value in Plaintiffs being compelled to spend time answering interrogatories in writing rather than Defendants being constrained to learning information through documents and depositions.

**\*5** Other factors counsel in favor of a per-side limit. Defendants are represented by common counsel, and have not proffered any unique interests among them to justify additional sets of interrogatories. Moreover, here, as in *Zito*, "[t]he defendants have, in essence, divided the issues in this case into numerous subparts and then demanded that each plaintiff identify witnesses and documents relevant to each separate subpart." 233 F.R.D. at 399. And many of those interrogatories are cumulative or duplicative. For example, Interrogatory 5 seeks facts supporting Plaintiffs' contention that they "sustained ... damages due to the negligence of any Defendant." ECF No. 185-1 at 3. Interrogatory 6 is identical in that it seeks information about damages allegedly suffered by Plaintiffs, except that it seeks facts supporting Plaintiffs' contention that they sustained damages "due to the Common Law Fraud of any Defendant"—and down the line. Interrogatories 7, 8, 9, 10, 11, 12, 13 and 14 are also all damages-focused contention interrogatories, differing only in the cause of action to which Plaintiffs' alleged damages are attributed. Other interrogatories are similarly cumulative or duplicative. *See, e.g.*, Interrogatories 15 & 19; 16 & 22. And interrogatory 18 is not intelligible as it does not have a corresponding request for admission. *Id.* at 8. Moreover, here, also as in *Zito*, Plaintiffs "have disclosed the names of potential witnesses" as far as they know now, *see* 233 F.R.D. at 399, and are under an ongoing obligation to supplement that information. *See* Fed. R. Civ. P. 26(e). And Plaintiffs state that they have produced all responsive documents in their possession, custody and control, and Defendants will imminently be deposing Plaintiffs and their other witnesses.

For these reasons, the Court need not decide whether a per-party or per-side construction of Rule 33 is correct because regardless, courts deciding the appropriate scope of discovery for a particular case are "to be guided by the proportionality considerations now contained in Rule 26(b)(2)(C)," including "whether there is some articulable reason for the need to send more interrogatories" than the default 25-interrogatory limit. 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.); *see also, e.g., Adlerstein v. United States Customs & Border Prot.*, 342 F.R.D. 269, 272–74 (D. Ariz. 2022) (adopting the "per-party" approach, but then permitting Plaintiffs to propound more than 25 interrogatories, in light of the discovery needs of the case). Having closely reviewed Defendants' interrogatories in the context of those relevance and proportionality considerations, the Court concludes that Plaintiffs shall answer Defendants' Interrogatories 1–7, 17, 19, 20, and 22, including each subpart of those interrogatories.

**C. The Adequacy of Plaintiffs' Interrogatory Answers**

Finally, Defendants contend that insofar as Plaintiffs have served responses (to interrogatories 1 through 5), those interrogatory answers are incomplete. For example, each of those interrogatories, and several of the additional interrogatories the Court has now found Plaintiffs shall answer, request not only a statement of "all facts" for why the Defendant denies the corresponding request for admission, but also request that Plaintiffs "(2) identify any and all documents supporting Plaintiff's response or answer to the subparts of this interrogatory; (3) identify any and all persons with knowledge supporting Plaintiff's response; and (4) if Plaintiff's response is based on a lack of sufficient information to admit or deny, describe Plaintiff's efforts to obtain information responsive to this Request." *E.g.*, ECF No. 185-1 at 3.

"A party responding to an interrogatory 'must furnish information that is available to it and that can be given without undue labor and expense.' " *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 357 (D. Md. 2012) (quoting 8B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2174 (3d ed. 2012)). "Put differently, a party must 'provide relevant facts reasonably available to it but should not be required to enter upon independent research in order to acquire information merely to answer interrogatories.' " *Id.* (quoting 8B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2174 (3d ed. 2012)). Here, at least as of the hearing, Plaintiffs had entirely failed to respond to sub-parts (2), (3) and (4) of those interrogatories. At the hearing, Plaintiffs' counsel suggested that their failure to respond to those sub-sections is justified

2024 WL 3233999

because there may be *additional* information responsive to those sub-parts that depositions or other discovery might reveal. To the extent Plaintiffs possess information responsive to those sub-parts, they must respond to them to the best their present knowledge and information permits—and then if they learn additional information to render their responses incomplete, they must supplement those responses as required by Rule 26(e).

## II. Sanctions

**\*6** Where a party has filed a motion to compel and it has been granted, a court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "But the court must *not* order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make

an award of expenses unjust." *Id.* (emphasis added). For purposes of Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Defendants filed two motions for sanctions, ECF Nos. 169, 173, both premised on Plaintiffs' failure to produce documents. That failure was not remedied until June 6, 2024, following this Court's entry of a discovery confidentiality order. *See* ECF Nos. 178, 179. Plaintiffs should have produced documents sooner, and the request for an order permitting confidentiality designations should have been made sooner. Nonetheless, the Court finds that Defendants' motions were filed prematurely and Plaintiffs' (belated) request to delay production until entry of a protective order was at least partially justified. Accordingly, Defendants' request for sanctions in connection with Plaintiffs' document productions is denied.

## All Citations

Not Reported in Fed. Supp., 2024 WL 3233999

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

#14

**Zito v. Leasecomm Corp., 233 F.R.D. 395 (2006)**

63 Fed.R.Serv.3d 1261

---

🚩 KeyCite Yellow Flag

Distinguished by Skinner v. Liller, D.Md., December 8, 2023

233 F.R.D. 395
United States District Court,
S.D. New York.

Thomas ZITO, et al., Plaintiff,

v.

LEASECOMM CORPORATION,
Microfinancial Incorporated, Cardservice
International, Inc., E-Commerce Exchange,
Inc., On-Line Exchange, Richard Karn Wilson
a/k/a Richard Karn, Patrick Rettew, Peter
R. Von Bleyleben, Richard F. Latour, Carol
Salvo, Paul Schneider, Metrak Corporation,
Charles Burtzloff a/k/a Chuck Burtzloff,
John Doe and Eddy Roe, the last two being
fictitious names, the real names of said
Defendants being presently unknown to
Plaintiffs, said fictitious names being intended
to designate persons who are acting in
concert with the Defendants, Defendants.

No. 02 Civ. 8074 GEL/JCF.
|
Feb. 10, 2006.

**Synopsis**
**Background:** Plaintiffs brought civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products. They moved for protective order in response to discovery request.

**Holdings:** The District Court, Francis, United States Magistrate Judge, held that:

[1] plaintiffs were not entitled to substitute deposition upon written questions for oral depositions;

[2] plaintiffs without claims for intentional infliction of emotional distress (IIED) were entitled to appear for deposition by telephone or videoconference;

[3] plaintiffs with IIED claims were required to appear in New York for their depositions; and

[4] defendants' interrogatories were abusive.

Motion granted in part and denied in part.

West Headnotes (7)

**[1]** **Federal Civil Procedure** 🔑 Written Interrogatories, Proceedings for Depositions on

Plaintiffs were not entitled to substitute deposition upon written questions for oral depositions sought by defendants in civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products; the plaintiffs proffered no persuasive reason to disregard the presumption in favor of oral depositions.

9 Cases that cite this headnote

**[2]** **Federal Civil Procedure** 🔑 Examination in General

**Federal Civil Procedure** 🔑 Time and Place of Examination

Plaintiffs without claims for intentional infliction of emotional distress (IIED) were entitled to appear for deposition by telephone or videoconference within fifty miles of home in civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products; it would be a hardship for many plaintiffs to travel to distant cities to be deposed on claims that in some instances had very modest monetary value, the defendants would also save expenses by taking these depositions telephonically, but if the defendants desired to view the demeanor of a plaintiff, they could pay and make arrangements for video deposition.

9 Cases that cite this headnote

---

**[3]** **Federal Civil Procedure** 🔑 Examination in General

Telephone depositions are a presumptively valid means of discovery.

14 Cases that cite this headnote

**[4]** **Federal Civil Procedure** 🔑 Examination in General

Authorization to take telephonic depositions does not depend upon a showing of hardship by the applicant.

9 Cases that cite this headnote

**[5]** **Federal Civil Procedure** 🔑 Time and Place of Examination

Plaintiffs with claims for intentional infliction of emotional distress (IIED) were required to appear in New York for their depositions in civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products; their claims could dwarf the claims of other plaintiffs and would be required to appear in New York for medical examinations in any event.

**[6]** **Federal Civil Procedure** 🔑 Scope

Defendants' single set of interrogatories consisting of 169 separate questions was abusive in civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products; the defendants demanded that each plaintiff identify witnesses and documents relevant to each separate subpart, and since the plaintiffs disclosed the names of potential witnesses and were in the process of producing relevant documents, requiring them to respond individually to the highly detailed interrogatories would provide little additional benefit, but would be extremely expensive and time-consuming. Fed.Rules Civ.Proc.Rule 26(b)(2), 28 U.S.C.A.

11 Cases that cite this headnote

**[7]** **Federal Civil Procedure** 🔑 Depositions and Discovery

Plaintiffs in civil racketeering action to recover for fraudulent scheme involving the leasing of e-commerce services and products could not limit defendants' discovery to proceeding first with some twenty bellwether cases and then continuing, one after another, with plaintiffs who sought only to have their credit rating cleared, who sought monetary damages in the nature of restitution, who sought compensatory damages, and who alleged intentional infliction of emotional distress (IIED); plaintiffs advanced no basis for the selection of the specific bellwether cases, did not articulate what issues might be decided preclusively on the basis of the bellwether cases, and failed to explain how proceeding in stages would produce efficiencies rather than delay.

2 Cases that cite this headnote

**\*396** *MEMORANDUM AND ORDER*

FRANCIS, United States Magistrate Judge.

This is a civil RICO action brought by more than 200 individual plaintiffs who allege that they suffered injury as the result of a fraudulent scheme involving the leasing of e-commerce services and products. In the broadest terms, the plaintiffs assert that defendant Leasecomm Corporation "formed an **\*397** enterprise with various dealers who used unscrupulous and deceptive marketing tactics to lure unsuspecting victims into signing contracts with Leasecomm. These contracts contained unconscionable terms that allowed members of the enterprise to 'reap unconscionable profits' through extreme collection tactics." *Zito v. Leasecomm Corp.,* No. 02 Civ. 8074, 2004 WL 2211650, at \*1 (Sept. 30, 2004) (*"Leasecomm II"*).[1]

---

[1]  A full summary of the plaintiffs' factual allegations is found in *Leasecomm II* as well as in *Zito v. Leasecomm Corp.,* No. 02 Civ. 8074, 2003 WL 22251352 (Sept. 30, 2003) (*"Leasecomm I"*).

Zito v. Leasecomm Corp., 233 F.R.D. 395 (2006)
63 Fed.R.Serv.3d 1261

The plaintiffs have filed what they characterize as an "omnibus" motion for a protective order, seeking relief with respect to several aspects of discovery. First, they ask that certain of the plaintiffs be permitted to respond to written questions in lieu of appearing in person for deposition, or, in the alternative, that these plaintiffs be deposed by telephone or videoconference. Other plaintiffs seek to be relieved of the obligation of appearing in New York for deposition. Second, the plaintiffs request that they not be required to provide individualized responses to the defendants' interrogatories. And, finally, the plaintiffs propose that a bellwether structure be imposed on this litigation such that only certain representative cases proceed initially through discovery and trial.

I will address each application in turn.

*Depositions*

Throughout the discovery planning process, the parties have distinguished between plaintiffs who assert claims of intentional infliction of emotional distress (the "IIED plaintiffs") and those who do not (the "non-IIED plaintiffs"). For example, in a prior conference before the Honorable Gerald E. Lynch, U.S.D.J., counsel discussed the possibility of deposing the IIED plaintiffs in New York and the non-IIED plaintiffs in several locations throughout the country. The Court issued no ruling at that time with respect to the location or format of any deposition. However, in a case management plan dated January 13, 2005, Judge Lynch directed that IIED plaintiffs appear for depositions and independent medical examinations in New York; again, he withheld ruling with respect to non-IIED plaintiffs. (Civil Case Management Plan (the "CMP"), attached as Exh. C to Affidavit of María D. Meléndez dated Sept. 29, 2005 ("Meléndez Aff."), ¶ 6(c)(vi)).

The defendants then served notices of deposition for all plaintiffs, designating New York as the location for the IIED plaintiffs and one of seven different cities as the location for each non-IIED plaintiff.[2] (Meléndez Aff., Exh. I). The plaintiffs objected to the notices, and all discovery disputes were referred to me for resolution. In the meantime, the parties embarked on settlement negotiations, and discovery was held in abeyance. No agreement was reached, however, and the deposition issues are now ripe for determination.

[2]    The cities designated for non-IIED plaintiffs were San Francisco, Denver, Chicago, Dallas, Orlando, Atlanta, and New York.

[1]    The proposal that the non-IIED plaintiffs be subject to deposition upon written questions is without merit. Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored. *See Horvath v. Deutsche Lufthansa, AG,* No. 02 Civ. 3269, 2004 WL 241671, at *3-4 (S.D.N.Y. Feb. 9, 2004); *Sadowski v. Technical Career Institutes, Inc.,* No. 93 Civ. 455, 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 549 (S.D.N.Y.1989). Here, the plaintiffs have proffered no persuasive reason why the presumption in favor of oral depositions should be disregarded. Indeed, their complaint that it is unduly burdensome for them to provide individual answers to the defendants' interrogatories seems inconsistent with their purported preference for depositions upon written questions. Accordingly, all plaintiffs shall appear for oral deposition.

[2]    [3]    [4]    The argument that the non-IIED plaintiffs should be permitted to appear for **\*398** deposition by telephone or videoconference is more persuasive. Telephone depositions are a "presumptively valid means of discovery." *Normande v. Grippo,* No. 01 Civ. 7441, 2002 WL 59427, at *2 (S.D.N.Y. Jan. 16, 2002). Moreover, "[a]uthorization to take telephonic depositions does not depend upon a showing of hardship by the applicant." *Advani Enterprises, Inc. v. Underwriters at Lloyds,* No. 95 Civ. 4864, 2000 WL 1568255, at *2 (S.D.N.Y. Oct. 19, 2000). Indeed, in this case, it would be a hardship for many of the non-IIED plaintiffs to travel to distant cities to be deposed on claims that in some instances have very modest monetary value. By contrast, there is little prejudice to the defendants, who would also save expenses by taking these depositions telephonically. The depositions of the non-IIED plaintiffs shall therefore be conducted by telephone. However, to the extent that the defendants consider it important to view the demeanor of such a plaintiff during a deposition, the defendants may conduct the examination by videoconference provided that they bear the expense and make arrangements for the plaintiff to appear within 50 miles of the plaintiff's residence. I reserve the right to order a follow-up in-person deposition in any instance where the defendants can demonstrate that they were unable to conduct a meaningful deposition by telephone or videoconference. *See Normande,* 2002 WL 59427, at *2.

[5]    Eight IIED plaintiffs have applied to be relieved of the obligation of appearing in New York for their depositions.[3]

---

(Declaration of John C. Klotz dated Aug. 30, 2005 ("Klotz Decl."), Exhs. E, F, G, H, I, J, K, L). Their requests are based primarily on issues of health and lack of financial resources. However, they have offered no persuasive reason for me to reconsider Judge Lynch's prior order directing that all IIED plaintiffs be deposed in New York. These plaintiffs have claims that could potentially dwarf the claims of the non-IIED plaintiffs, and they would be required to appear in New York for medical examinations in any event. And, while the costs of travel may not be insignificant, plaintiffs' counsel are permitted to advance the expenses of litigation to their clients, provided the plaintiffs remain ultimately liable for such costs. New York Code of Professional Responsibility DR 5-103. The application of the IIED plaintiffs is therefore denied. The defendants shall, however, coordinate the depositions of these plaintiffs with the independent medical examinations so that the plaintiffs need travel to New York only once prior to trial.

3      These plaintiffs are Kevin Pirnie, Eugene Sokol, Tammy Sokol, Mary Scott, David Scott, Patrick Curran, Cynthia Haase (a/k/a Cynthia Gunderson), and Christopher Nguti Ndakwe.

*Interrogatories*

**[6]**     The defendants served a single set of interrogatories consisting of 169 separate questions. (Defendants' (Other Than Richard Karn Wilson a/k/a Richard Karn and Patrick Rettew) First "Master" Set of Interrogatories to Plaintiff Thomas Zito and Each of the Plaintiffs Whose Name and Address Appear on Schedule One to the Second Amended Complaint, attached as Exh. L to Meléndez Aff.). The plaintiffs responded with a single set of answers, objecting to certain interrogatories, providing some answers, and directing the defendants to information provided in the plaintiffs' initial disclosure pursuant to Rule 26(a)(1). (Plaintiffs' Response to Defendants' First Set of Interrogatories, attached as Exh. M to Meléndez Aff.). The defendants then complained that the responses were inadequate because, among other things, they failed to provide the requested information with respect to each individual plaintiff. The defendants later expressed a willingness to accept general answers to certain interrogatories so long as the answers were submitted-and verified or sworn to-by every plaintiff, and so long as each plaintiff provided specific answers to interrogatories having to do with individualized issues.[4] (Meléndez Aff., Exh. N). The plaintiffs would not agree, and they note that if each individual plaintiff's response were equal in length to the collective response already submitted, a total of more than 13,000 **\*399** pages would be generated. (Klotz Decl., ¶ 41).

4      The defendants identified Interrogatories Nos. 1, 3-13, 23-47, 49-51, 53-65, 67-69, 71-95, 106-113, and 118-120 as requiring individualized specific responses.

At the outset, I am doubtful that the defendants' discovery demand complies with the limitation on the number of interrogatories imposed by the Federal Rules. Pursuant to Rule 33(a), absent stipulation or permission of the court, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts[.]" One court has read the term "parties" literally, finding that three defendants were each entitled to serve 25 interrogatories on the plaintiff, for a total of 75 questions. *See St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP,* 217 F.R.D. 288, 289 (D.Mass.2003). On this reading of the rule, the defendants' interrogatories were proper, since eleven defendants joined in their submission. By the same reasoning, the plaintiffs would be entitled to propound more than 5,000 interrogatories.

A more sensible approach is advocated in one of the leading civil procedure treatises:

> The limitation on number of depositions ... speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation.

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 at 261 (2d ed.1994).

I need not decide, however, whether the plain language of Rule 33(a) must be strictly applied in all circumstances. In this case, even if the interrogatories do not exceed the number permitted by rule, they are abusive. The defendants have, in essence, divided the issues in this case into numerous subparts and then demanded that each plaintiff identify witnesses and documents relevant to each separate subpart. Under Rule

26(b)(2), "[t]he frequency or extent of use of the discovery methods otherwise permitted ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative ... or (iii) the burden or expense of the proposed discovery outweighs its likely benefit[.]" Here the plaintiffs have disclosed the names of potential witnesses and are in the process of producing relevant documents. Requiring them to respond individually to the highly detailed interrogatories would provide little additional benefit but would be extremely expensive and time-consuming.

The defendants are, however, entitled to know when the plaintiffs have produced all documents responsive to their requests, and I will establish a date for the plaintiffs to represent that their production is complete. Further, to the extent that the defendants become aware during deposition that any plaintiff possesses relevant documents that were not previously disclosed, that plaintiff will appear for continued deposition after the additional documents are produced.

*Case Management*

 **[7]**   Finally, the plaintiffs propose proceeding first with some twenty bellwether cases and then continuing, one after another, with the following categories of plaintiffs: those who seek only to have their credit rating cleared, those who seek monetary damages in the nature of restitution, those who seek compensatory damages, and those who assert IIED claims. (Klotz Decl., ¶¶ 78, 95-102). This proposal is largely incoherent. The plaintiffs have advanced no basis for the selection of the specific bellwether cases; they have not articulated what issues might be decided preclusively on the basis of the bellwether cases; and they have not explained how proceeding in stages will produce efficiencies rather than delay. I will not, therefore, structure discovery along the **\*400** lines suggested by the plaintiffs. Whether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery.

In light of the rulings here and the delay occasioned by the unsuccessful settlement negotiations, the case management plan is modified as follows:

1. By February 28, 2006, the plaintiffs shall produce all documents required to be disclosed pursuant to Rule 26(a)(1) or responsive to any outstanding discovery requests and shall certify the completeness of the production.

2. By March 3, 2006, counsel shall agree on a schedule for depositions of all parties, failing which they shall present any disputes to the Court for resolution.

3. All fact discovery shall be completed by June 30, 2006.

4. The plaintiffs shall submit any expert reports and related expert disclosure by July 31, 2006, and the depositions of the plaintiffs' experts shall be completed by August 31, 2006.

5. The defendants shall submit any expert reports and related expert disclosure by September 29, 2006, and the depositions of the defendants' experts shall be completed by October 31, 2006.

6. The pretrial order shall be submitted by November 30, 2006, unless any dispositive motion is filed by that date. If such a motion is filed, the pretrial order shall be due thirty days after the motion is decided.

*Conclusion*

For the reasons discussed, the plaintiffs' motion for a protective order is granted to the extent that depositions of the non-IIED plaintiffs shall be conducted telephonically or by videoconference, and the plaintiffs need not respond further to the defendants' interrogatories. However, all IIED plaintiffs shall appear for deposition in New York, and the Court will not designate bellwether cases or structure discovery in stages. The case management order is amended as set forth above.

SO ORDERED.

**All Citations**

233 F.R.D. 395, 63 Fed.R.Serv.3d 1261

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #15

2023 WL 5058889

2023 WL 5058889
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

IN RE: XYREM (SODIUM OXYBATE)
ANTITRUST LITIGATION

Case No. 20-md-02966-RS
|
Signed July 7, 2023

ORDER DENYING IN PART AND REMANDING
IN PART MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER FROM
MAGISTRATE JUDGE

RICHARD SEEBORG, Chief United States District Judge

**\*1** Plaintiffs have filed a motion under Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, seeking relief from a nondispositive magistrate judge order. *See* Dkt. 515 ("Mot."). Specifically they seek to compel Defendants Jazz and Hikma to answer three pairs of interrogatories: one pair involving Defendants' subjective beliefs, and two pairs involving the bases for their affirmative defenses. The magistrate judge denied the motions to compel in a written order, and the present motion followed. Defendants have filed an opposition. *See* Dkt. 521 ("Opp."). As discussed below, the motion is denied in part and remanded in part.

A magistrate judge's factual determinations are reviewed for clear error, while legal conclusions are reviewed "to determine whether they are contrary to law." *Bair v. BlackRock Inst. Tr. Co., N.A.*, No. 17-cv-01892-HSG, 2019 WL 11499520, at \*1 (N.D. Cal. Oct. 16, 2019). Nondispositive orders from a magistrate judge are afforded "great deference," *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001), and the district court "may not simply substitute its judgment for that of the deciding court," *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

### A. Interrogatories 30 & 32

In Interrogatory 30 to Hikma and Interrogatory 32 to Jazz, Plaintiffs request the following information: "Identify all subjective beliefs and all testimony concerning internal,

nonpublic company processes — whether already provided or anticipated in the future — that You wish to reserve the right to introduce at trial." Dkt. 506 ("Letter Brief"), at 1. Defendants objected to these interrogatories on several bases, including that they were vague and overbroad, and that they exceeded the number of permitted interrogatories. The magistrate judge sustained these objections, noting the requests were "without one iota of specificity or definition as to 'beliefs' or 'processes' " and thus "utterly fail[ed] the 'reasonable particularity requirement' required by the Federal Rules." *See* Dkt. 507-1 ("Order"), at 2, 7. Ruling on the question of the correct number of interrogatories per side/ party was reserved for clarification by the undersigned in the first instance. *Id.* at 3, 8.

Plaintiffs argue these interrogatories are relevant to preempt the issue of implied waiver of attorney-client privilege. While they do not seek a ruling of implied waiver, *see* Letter Brief at 3, they note that, if Defendants seek to rely at trial "on their or their employees' views as to why they settled the patent litigations to the Court or to the jury, they will raise significant issues regarding implicit waiver of attorney-client privilege." Mot. at 2. They cite several cases in which plaintiffs served similar interrogatories to address the waiver issue. They further argue the magistrate judge applied the wrong standard in reviewing the interrogatories, because Rule 34(b)(1)(A) applies to document requests, not interrogatories. Finally, they suggest they are well within the limit on interrogatories, which is determined based on the number of parties. Defendants dispute each of these arguments, distinguishing the cited cases and noting that other courts have applied the Rule 34 "reasonable particularity" standard to interrogatories. *See, e.g., Shuckett v. Dialamerica Mktg., Inc.*, No. 17cv2073-LAB(KSC), 2018 WL 4350123, at \*11 (S.D. Cal. Sept. 10, 2018).

**\*2** The motion is denied as to these two interrogatories. First, Plaintiffs are correct to note that Rule 34(b)(1)(A), cited by the magistrate judge, clearly applies to document requests, rather than to interrogatories or to all discovery requests generally. *See* Fed. R. Civ. P. 34 ("Producing Documents, Electronically Stored Information, and Tangible Things ..."); *Carbon v. Seattle Reprod. Med. Inc. PS*, 219CV01491RAJJRC, 2020 WL 4339253, at \*5 (W.D. Wash. July 28, 2020). However, even if the "reasonable particularity" standard does not apply under the Rules, courts are nonetheless empowered to deny discovery requests where interrogatories are vague, overbroad, or unduly burdensome. Indeed, they routinely do so. *See, e.g., Mailhoit*

2023 WL 5058889

*v. Home Depot U.S.A., Inc.*, CV1103892DOCSSX, 2012 WL 12884129, at *2 (C.D. Cal. Sept. 4, 2012); *CG Roxane LLC v. Fiji Water Co. LLC*, C07-02258 RMW (HRL), 2008 WL 2276403, at *2 (N.D. Cal. May 30, 2008). Thus, notwithstanding that the magistrate judge cited an inapplicable Federal Rule, the conclusion that the interrogatories are overbroad and vague is not contrary to law.

Second, while it is true that the Federal Rules permits a party to serve up to twenty-five interrogatories "on any other party," this does not necessarily mean that each named entity on one side of the *v* may serve each named entity on the opposing side. Otherwise, as Defendants point out, nearly 2,000 interrogatories would be permitted in this case. Rather, courts often treat parties that are only "nominally separate" as one party for the purposes of Rule 33. *See Gaby's Bags, LLC v. Mercari, Inc.*, No. x, 2021 WL 857695, at *1 (N.D. Cal. Mar. 8, 2021). To clarify, then, the interrogatory limit provided in Dkt. 240 applies to each *side*, rather than to each *party*. This is without prejudice to future alteration on motion or by stipulation if and when fact discovery is reopened.

Third, and finally, Plaintiffs' concern as to the specter of implied waiver is not without merit. Indeed, it would be preferable to clarify waiver ahead of trial, rather than resort to "innumerable side bars" during trial. *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-md-2836, 2022 WL 4354620, at *5 (E.D. Va. Aug. 15, 2022). Seeing as Plaintiffs are not seeking a ruling at this time, however, that issue can be clarified in a ruling on a future motion, and Defendants could be compelled at that time to disclose the information Plaintiffs seek (or a subset of it). *E.g., In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 WL 4191612, at *1 (N.D. Cal. Aug. 9, 2016); *In re Namenda Direct Purchase Antitrust Litig.*, 15 Civ. 7488 (CM) (JCF), 2017 WL 22265961, at *5–6 (S.D.N.Y. May 19, 2017).

**B. Interrogatories 12, 13, 16, and 17: Bases for Affirmative Defenses**

In Interrogatories 12 and 13, Plaintiffs request Defendants provide the factual basis for their twelfth affirmative defense; and in Interrogatories 16 and 17, Plaintiffs request Defendants provide the factual basis for their seventeenth affirmative defense. The magistrate judge denied the motion to compel as untimely, based on a representation in the parties' letter brief noting there was "no party agreement or Court order extending the time to raise issues" with these interrogatories. Letter Brief at 1. Plaintiffs argue this conclusion was in error, as neither party had raised the issue of timeliness in the letter

brief before the magistrate judge and, in any event, the motion was timely.

Examining this issue requires sorting through the multiple shifting discovery deadlines to which the parties stipulated. To recap, Plaintiffs served these four interrogatories in June 2022, and Defendants responded to them in August 2022. *See* Mot. at 4; *accord* Opp. at 5. Plaintiffs were unsatisfied with these responses, though Defendants noted they reserved the right to supplement their answers as necessary after expert discovery. *See* Letter Brief at 10. In December 2022, the parties stipulated that the last day to serve written discovery under Rules 33 and 36 would be set for January 30, 2023, the same day as the close of fact discovery. *See* Dkt. 367. The same stipulation set two deadlines for discovery-related motions. For those motions relating to written discovery responses served *on or before* January 30, the deadline was set as February 4, 2023; for those motions relating to responses served *after* January 30, the deadline was set for seven days after service of response and later modified to May 25, 2023. *See id.*; Dkt. 497. In their motion, Plaintiffs claim that, on January 30, in addition to serving new interrogatories, they requested in writing that Defendants "provide substantive responses to the interrogatories to which they had previously objected." Mot. at 4.

**\*3** In sum, then, the timeliness dispute turns on whether these supplemental requests are properly considered interrogatories "served on January 30, 2023" — because if so, Plaintiffs' motion was timely filed on May 25. Defendants argue they are not, since the mere fact that Plaintiffs sent an email asking for supplemental responses "does not transform [them] into discovery served on January 30." Opp. at 5. The implication would seem to be that because the interrogatories and responses were served in the summer of 2022, any supplemental requests and responses would not be "served" in January 2023. The answer to this question is not readily apparent from reviewing the record in which the issue of timeliness is not addressed. Thus, the issue is remanded to the magistrate judge to determine in the first instance whether Plaintiffs' supplemental written requests qualify as "written discovery under Rules 33 and 36 served on January 30, 2023" within the meaning of the parties stipulation at Dkt. 367. *Cf. United States v. Lopp*, No. 15-cr-03373-YGR-1, 2015 WL 5139367, at *1 (N.D. Cal. Sept. 1, 2015) (remanding to magistrate judge "for additional consideration in light of new information that has emerged in this case").

**IT IS SO ORDERED.**

2023 WL 5058889

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5058889

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# #16

2009 WL 3668038

🚩 KeyCite Yellow Flag

Distinguished by Marfork Coal Co., Inc. v. Smith, S.D.W.Va., January 13, 2011

2009 WL 3668038
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia.

FELMAN PRODUCTION, INC.,
a Delaware corporation, Plaintiff,

v.

INDUSTRIAL RISK INSURERS, an
unincorporated association, et al., Defendants.

Civil Action No. 3:09–0481.
|
Nov. 3, 2009.

**Attorneys and Law Firms**

James E. Gray, Alex J. Brown, Venable, Baltimore, MD, Michael W. Carey, S. Benjamin Bryant, Carey Scott Douglas & Kessler, Charleston, WV, for Plaintiff.

Christopher J. Sears, John F. McCuskey, William R. Slicer, Heather B. Osborn, Jason Eric Wandling, Shuman McCuskey & Slicer, Charleston, WV, James V. Chin, James A. Kitces, Jane E. Warring, Robert W. Fisher, Robins Kaplan Miller & Ciresi, Atlanta, GA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

ROBERT C. CHAMBERS, District Judge.

**\*1** Pending before the Court are Defendants Industrial Risk Insurers ("IRI"), Westport Insurance Company ("Westport") and Swiss Reinsurance America Corporation's ("Swiss Reinsurance") Motion For Reconsideration of Court's Amendment of Scheduling Order (Doc. 68) and Motion For Rule 16 Interim Pretrial Conference (Doc. 64). For the reasons set forth below, both motions are **DENIED.**

**Background**

Plaintiff, Felman Production, Inc. ("Felman") owns and operates a metals plant ("Plant") in New Haven, West Virginia, which produces silicon-manganese for resale to steelmakers. On February 23, 2008, Felman purchased a commercial property insurance policy ("Policy") for the Plant from Industrial Risk Insurers ("IRI"), an unincorporated association. The Policy was effective from February 23, 2008, until February 28, 2009, and covered, in pertinent part, property damage and business interruption loss associated with the Plant's operations.

Felman currently seeks coverage under the Policy for a transformer failure that occurred at the Plant on or about April 27, 2008. As defendants in the suit, Felman names IRI, Swiss Reinsurance, and Westport, claiming that each of the entities is directly liable to it for: (1) breach of the insurance contract, and (2) damages arising out of bad faith failure and/or refusal to discharge its responsibilities under the Policy.

Swiss Reinsurance and Westport, are two of the two member companies of IRI's unincorporated association. The parties agree that IRI issued the underlying policy to Felman and that Wesport is an original insurer under the contract. The parties disagree, however, as to whether Swiss Reinsurance constitutes an original insurer under, or a reinsurer of, Felman's policy. Accordingly, on June 8, 2009, Swiss Reinsurance filed a motion to be dismissed from this action on the grounds that it is the reinsurer of IRI's insurance contract with Felman, not the original insurer. In a Memorandum Opinion and Order entered on October 19, 2009, the Court denied Swiss Reinsurance's motion; finding that the terms of Felman's insurance contract are ambiguous as to Swiss Reinsurance's role under the Policy and that Swiss Reinsurance is therefore an appropriate defendant in the instant litigation. All three defendants are represented by William R. Slicer, Christopher J. Sears, and Heather B. Osborn of Shuman, McCuskey & Slicer, PLLC, of Charleston, West Virginia.

**Defendants' Motion For Reconsideration of Court's Amendment of Scheduling Order**

Defendants request the Court reconsider the amendment to the August 26, 2009, Scheduling Order (Doc. 31) that it entered on October 26, 2009 (Doc. 67). The Order, a response to Plaintiff's Motion For Clarification of Scheduling Order (Doc. 66), amended the Scheduling Order, which originally read:

Each *party* may conduct or submit 15 depositions of fact witnesses; 20 interrogatories; and 20 requests for

Felman Production, Inc. v. Industrial Risk Insurers, Not Reported in F.Supp.2d (2009)

2009 WL 3668038

admission. Parties may exceed these limits only by agreement or with leave of the Court;

**\*2** to read:

Each *side* may conduct or submit 15 depositions of fact witnesses; 20 interrogatories; and 20 requests for admission. Parties may exceed these limits only by agreement or with leave of the Court.

Such amendment—as explained by the Court—was consistent with the Court's original intent.

The Federal Rules of Civil Procedure govern discovery in the instant case. Rule 26(b) outlines the permissible scope of discovery, including limitations on the frequency and extent of discovery, *See* Fed.R.Civ.P. 26(b)(1) & (b)(2), and Rules 30 and 33, respectively, provide the number of depositions and interrogatories that may be taken or served without leave of the Court.[1] *See* Fed.R.Civ.P. 30(a) & 33(a)(2). Specifically, Rule 30(a) provides that "a party" may depose up to ten persons without leave of the Court, Fed.R.Civ.P. 30(a), and Rule 33(a)(1) provides that "a party" may serve on any other party up to 25 written interrogatories, unless otherwise stipulated or order by the Court. Fed.R.Civ.P. 33(a).

[1]    There is no numerical limit for requests for admission set in the federal rules. *See* Fed.R.Civ.P. 36.

The question presented by Defendants' motion for reconsideration is whether, when drafting the original August 26, 2009, Scheduling Order, the Court intended its limitations on the numbers of depositions, interrogatories and requests for admission to serve as per-party or per-side limits. In its motion, Defendants cite the transcript of the August 24, 2009, Scheduling Conference as evidence that the aforementioned amendment to the Scheduling Order, which establishes per-side limits, is inconsistent with the Court's comments regarding the complexity of the case and/or the federal rules. *See Defs.' Mot. For Recons.,* ¶ 1 & 5. The Court, however, is unconvinced.

**Depositions**

Rule 30(a)(1) provides that "[a] party may ... depose any person ... without leave of the court except as provided in Rule 30(a)(2)," which states that "[a] party must obtain leave of the court ... if the parties have not stipulated to the deposition and ... the deposition would result in more than 10 depositions being taken[.]" Fed.R.Civ.P. 30(a)(1) & (a)(2). Defendants argue that, based on the plain language of the rule, each

defendant is entitled to a total of 10 depositions, meaning the defendants would be entitled to 30 depositions collectively. *See Defs.' Mot. For Recons.,* ¶ 4 & 5. Therefore, Defendants argue that interpreting the "a party" language in the original scheduling order to create a per-side limit would (1) reduce the number of depositions below the standard set in the federal rules and (2) be contrary to the Court's acknowledgment that the instant case is a complex and requires additional discovery. *Id.* at ¶ 1 & 5. Defendants, however, misconstrue the "a party" language used in the federal rules and repeated by this Court in the original scheduling order.

As amended in 1993, Rule 30(a)(2)(A) set a limit of ten depositions per side, not per party. *See, e.g.,* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2104 (3d ed.) ("Rule 30(a)(2)(A) now sets out a limit of ten depositions per side [.]"); Fed.R.Civ.P. 30 advisory committee's note (1993) ("Subdivision (a) ... Paragraph (2)(A) is new. It provides a limit on the number of depositions the parties may take, absent leave of court or stipulation with other parties. One aim of this revision is to assure judicial review under the standards stated in Rule 26(b)(2) before *any side* will be allowed to take more than ten depositions in a case without agreement of the other parties.") (emphasis supplied). This per-side limit reflects the federal rules' policy of promoting cost-effective discovery; a policy which explicitly seeks to minimize the burden and expense imposed by discovery by avoiding unreasonable duplication and/or other cumulative efforts. *See, e.g.,* FRCP 26(b)(2)(C); Fed.R.Civ.P. 30 advisory committee's note (1993) ("In multi-party cases, the parties on any side are expected to confer and agree as to which depositions are most needed, given the presumptive limit on the number of depositions they can take without leave of court.").

**\*3** All three defendants in this case are sufficiently related to warrant a per-side limitation on depositions, interrogatories and requests for admission. *See, e.g.,* Wright, Miller & Marcus, *supra,* § 2104 ("[In] most cases it should not be difficult to determine which parties are considered to be a "side" for purposes of this rule ... one sensible interpretation is to look to whether the parties on a given "side" are so aligned, at least in terms of the issues raised and their positions on those issues (as distinguished from strategic considerations) that they could not be expected to cooperate on a common discovery strategy."). Here, all three defendants share a corporate relationship and are party—either as an original insurer, a reinsurer or both—to the contract at issue.

Felman Production, Inc. v. Industrial Risk Insurers, Not Reported in F.Supp.2d (2009)

2009 WL 3668038

All three defendants share counsel. Further, it appears to the Court that the complexity inherent in this case depends, in large part, upon the difficulty of determining Plaintiff's business loss damages; an issue where all defendants' interests are aligned. *Id.* Each of these factors support per-side limits with respect to discovery. Moreover, these factors were considered by the Court when drafting its original scheduling order and when devising the per-side limits established therein. These per-side limits are consistent with the Court's authority to alter the limits on the number of depositions allowed, *see* Fed.R.Civ.P. 26(b)(2)(A), as well as with the policy considerations established by the federal rules. *See* Fed.R.Civ.P. 26(b)(2)(C). Accordingly, Defendants' motion for reconsideration with regard to the number of depositions provided for in the amended scheduling order is **DENIED.** If either side seeks additional depositions, it must do so by leave of the Court, on an as-needed basis.

### Interrogatories and Requests for Admission

Similar to its authority to limit the number and length of depositions, the Court possesses the discretion to limit the numbers of interrogatories and requests for admission allowed in given case. *See* Fed.R.Civ.P. 26(b)(2)(A). In the original scheduling order, the Court exercised such authority and established a per-side limit on both discovery tools. Such limits are consistent with the text and policy of the federal rules. *See* Wright, Miller & Marcus, *supra,* § 2168.1 ("The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation."). Accordingly, and for the reasons set forth above, Defendants' motion for reconsideration with regard to the number of interrogatories and requests for admission provided for in the amended scheduling order is **DENIED.** If either party seeks additional interrogatories or requests, it must do so by leave of the Court, on an as-needed basis.

### Defendants' Motion For Rule 16 Interim Pretrial Conference

Defendants' motion for an interim pretrial conference is **DENIED** as premature. The Court **ORDERS** the parties to continue to work to resolve discovery disputes without court intervention and expects both sides to comply with the time and numerical limitations established in the August 26, 2009, Scheduling Order, as amended on October 28, 2009. Any specific discovery issues the parties are unable to resolve by mutual agreement shall be brought to the Court's attention by formal motion.

**\*4** The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 3668038

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.