**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) ) ) | Judge Algenon L. Marbley |
| | | Magistrate Judge Kimberly A. Jolson |
| | ) | Special Master Shawn K. Judge |
| MFS Series Trust I, et al., | ) ) | Case No. 2:21-cv-05839-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) | |
| Brighthouse Funds Trust II – MFS Value Portfolio, et al., | ) ) ) | Case No. 2:22-cv-00865-ALM-KAJ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FirstEnergy Corp., et al., | ) ) | |
| Defendants. | ) ) | |

**DIRECT ACTION PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**APRIL 27, 2026 SUBMISSIONS REGARDING SEVERANCE OF CLAIMS**
**<u>AGAINST DEFENDANTS CHARLES JONES AND MICHAEL DOWLING</u>**

Plaintiffs in the *MFS* and *Brighthouse* actions[1] ("Direct Action Plaintiffs") join the legal arguments in Class Plaintiffs' April 29, 2026 response to the submission by Defendant FirstEnergy Corp., related individuals, and underwriters (ECF No. 1014), as well as the separate submission by Defendants Charles Jones and Michael Dowling (ECF No. 1013), opposing the severance or bifurcation of claims against Jones and Dowling.[2] We write separately to address Defendants' Seventh Amendment arguments.

As an initial matter, however, Defendants mischaracterize Direct Action Plaintiffs' position regarding severance. We have proposed that "the Court should *either* (a) order that Jones and Dowling are subject to the pretrial and trial schedule proposed [in Direct Action Plaintiffs' April 16, 2026 submission (ECF No. 1001)]—with no further delays based on their pending or future criminal proceedings—and will be tried jointly with the other defendants; *or* (b) stay Plaintiffs' claims against Jones and Dowling and order that they be tried separately." ECF No. 1001 at PageID 25575. Defendants disregard the disjunctive nature of this request, focusing solely on the latter alternative. Direct Action Plaintiffs maintain their position that the Court should *either* hold Jones and Dowling to the schedule that applies to all other parties, regardless of any criminal proceedings, *or* sever the claims against Jones and Dowling.

In any event, Defendants are wrong that severing claims against Jones and Dowling would contravene the Seventh Amendment's mandate that "no fact tried by a jury, shall be otherwise

---

[1] *MFS Trust I, et al. v. FirstEnergy Corp., et al.*, No. 21-cv-05839; *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp., et al.*, No. 22-cv-00865. Unless otherwise indicated, all emphasis in this submission is added and all internal citations and quotation marks have been omitted.

[2] While Direct Action Plaintiffs' April 16, 2026 submission references bifurcation of claims under Federal Rule of Civil Procedure 42(b), Class Plaintiffs and Defendants also refer to severance under Rule 21. Because courts employ similar standards in evaluating whether to sever or bifurcate claims, Direct Action Plaintiffs' arguments apply to both severance and bifurcation. For convenience, we refer below to both concepts together as "severance."

reexamined in any court of the United States, than according to the rules of the common law" (the "Reexamination Clause").  The Amendment protects a party from reexamination of facts that were previously tried by a jury in addressing *claims against that party*.  It does not preclude the examination of facts by a second jury in a separate trial of Defendants B and C (here, Jones and Dowling) where those facts were also at issue in an earlier trial of Defendant A (FirstEnergy).

For the same reason, contrary to Defendants' contention, nothing about the Private Securities Litigation Reform Act's ("PSLRA") proportionate fault provision raises any Seventh Amendment concerns in severing claims against Jones and Dowling.  Further, because FirstEnergy will be responsible for the entirety of any damages regardless of whatever percentage of fault the respective juries allocate in separate trials, there is no prospect that FirstEnergy would be subject to "two competing and contradictory verdicts" (ECF No. 1014 at PageID 25857).  Nor would any other defendant, as each of them would be subject to only one judgment (FirstEnergy, et al. in the first trial, and Jones and Dowling in the second trial).

## I.    The Seventh Amendment Does Not Preclude Separate Juries from Examining Similar Facts Against Different Defendants.[3]

Defendants complain that if the Court severs claims against Jones and Dowling, then "[a]fter a jury makes findings in a trial against FirstEnergy and other Defendants, a separate jury would have to re-examine the same issues and make its own findings in a trial against *only* Jones and Dowling."  ECF No. 1014 at PageID 25853 (emphasis in original).  But the fact that FirstEnergy would be tried separately from Jones and Dowling is precisely why the Seventh

---

[3] Defendants make much of class counsel's prior references to potential "'Seventh Amendment issues'" that could arise as a result of severance of claims against Jones and Dowling.  *See* ECF No. 1014 at PageID 25850 (quoting Jan. 16, 2025 Conf. Tr., ECF No. 900 at PageID 23356 (12:4)).  Class counsel did not concede that the Seventh Amendment precludes severance here, but in any event Direct Action Plaintiffs made *no* statements regarding the Amendment.

Amendment does *not* pose an impediment to severance.  *See, e.g.*, *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 232 (N.D.N.Y. 2002) (following the trials of state defendants, explaining that in the event of "subsequent trials against the non-State defendants, a violation of the Seventh Amendment would not necessarily follow because . . . those [non-State] defendants would not be bound by Phases I and II wherein the State was the only participating defendant").

The decisions on which Defendants rely address the prospect of separate juries examining the same facts with respect to claims against *the same defendant*.  In *Matter of Rhone-Poulenc Rorer, Inc.*, for example, the Seventh Circuit rejected the district court's plan to impanel multiple juries where it had certified a class only as to particular issues.  The district judge "implied that he did not envisage the entry of a final judgment but rather the rendition by a jury of a special verdict that would answer a number of questions bearing, perhaps decisively, on whether the defendants [we]re negligent under either of the . . . theories" of liability plaintiffs alleged.  51 F.3d 1293, 1297 (7th Cir. 1995).  If the jury found negligence, "individual members of the class would then file individual tort suits in state and federal district courts around the nation and would use the special verdict, in conjunction with the doctrine of collateral estoppel, to block relitigation of the issue of negligence."  *Id.*

The Seventh Circuit determined the district court's plan was "inconsistent with the principle that the findings of one jury are not to be reexamined by a second, or third, or *n*th jury." *Id.* at 1303.  Specifically, the first jury "[would] not determine liability" but rather "merely whether one or more of the defendants was negligent under one of the two theories," and while that jury "may go on to decide the additional issues with regard to the named plaintiffs," it "[would] not decide them with regard to the other class members." *Id.*  Other juries would then "have to decide, in individual follow-on litigation by class members not named as plaintiffs," issues such as

- 3 -

comparative negligence and proximate causation, both of which "overlap the issue of the defendants' negligence." *Id.* Those subsequent factfinders thus might render different findings bearing on *those same defendants'* negligence, which could result in an inescapable "inconsistency between juries." *Id.*

Here, by contrast, one jury would make a determination as to FirstEnergy's liability and resulting damages, and another jury would make a determination as to Jones and Dowling's liability and resulting damages. Thus, unlike in *Rhone-Poulenc*, there is no danger of separate juries rendering inconsistent verdicts with respect to claims against the same defendant.

The additional cases Defendants cite do not hold otherwise. The question in *Olden v. LaFarge* was whether the district court could properly "bifurcate the issue of liability from the issue of damages," i.e., issues bearing on the same claims against the same defendant. 383 F.3d 495, 509 (6th Cir. 2004). While noting bifurcation "might" violate the defendant's Seventh Amendment right to a jury trial, the court of appeals explained that "if done properly, bifurcation will not raise any constitutional issues." *Id.* at 509 n.6. *Olden* is thus factually inapposite and does not endorse any general rule against bifurcation. The same is true of Defendants' other authorities. *See, e.g.*, *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 150 n.27 (2d Cir. 2015) ("To the extent the trial plan here contemplates that the Phase III jury (or juries) or the district court would have to reassess the reprehensibility of Nextel's conduct in order to determine the appropriateness of a punitive damages award, such a plan could run afoul of the Seventh Amendment.");[4] *Blyden v. Mancusi*, 186 F.3d 252, 257 (2d Cir. 1999) (case involving multiple defendants was bifurcated into liability and damages phases, where the jury in the liability trial would "resolve each

---

[4] *Johnson*'s passing reference to the Seventh Amendment, moreover, is dicta. *See id.* ("Because the trial plan as currently structured fails the predominance and superiority criteria of Rule 23(b)(3), we need not address any potential Seventh Amendment problem with the plan . . . .").

defendant's liability or non-liability to the entire class" and separate juries would "determin[e] the damages suffered by each individual plaintiff").[5]  Defendants offer no caselaw supporting their erroneous interpretation of the Reexamination Clause, and we have found none. Their constitutional challenge to severance fails.

While the above considerations are dispositive as to Defendants' Seventh Amendment arguments, severing Plaintiffs' claims against FirstEnergy from those against Jones and Dowling would also avoid any question regarding the admissibility, for example, of FirstEnergy's deferred prosecution agreement ("DPA") as to the respective defendants.  *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 440 (7th Cir. 2004) (holding "[n]o rule, principle, precedent, statute, regulation, or other source of limitations on the power of district judges" precluded the district court from "impaneling two juries to hear the case, one to decide ADM's liability and the other to decide the liability of the other defendants," where "[v]ery damaging evidence arising from criminal proceedings against ADM would be admissible against ADM but not against the other defendants").  In opposing severance, FirstEnergy ignores this issue, and Jones and Dowling merely suggest that at an undefined "appropriate time" the Court "will consider how an eventual trial will be structured and how evidentiary issues such as the admissibility of the FirstEnergy DPA will be handled."  ECF No. 1013 at PageID 25842.  But unless Jones and Dowling will stipulate now that the DPA is admissible as to them as well as FirstEnergy, this uncertainty supports severance.

---

[5] *See also In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (addressing bifurcation of trial of same defendants into two phases); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 738 (5th Cir. 1996) (addressing a proposed "four-phase trial plan" that would separate various factual issues and damages); *In re Innotron Diagnostics*, 800 F.2d 1077, 1084, 1086 (Fed. Cir. 1986) (addressing district court's separation of patent issues and issues raised in patent-related antitrust counterclaim, and holding Seventh Amendment challenge was "without merit").

## II.     The PSLRA's Proportionate Fault Provision Does Not Preclude Severance.

Defendants further contend the (non-existent) Seventh Amendment "problem" is "exacerbated by" the PSLRA's proportionate fault provision.  ECF No. 1014 at PageID 25851.  Once again, they are mistaken.  As detailed above, the Seventh Amendment does not prohibit separate juries from evaluating claims against different defendants, even where those claims arise from the same set of facts.  This principle alone commands that having separate juries decide different defendants' proportionate fault, even if those juries come to different determinations, does not violate the Reexamination Clause.

Further, any difference in the proportionate fault a jury in FirstEnergy's trial might allocate to Jones and Dowling versus what a jury in Jones and Dowling's trial might allocate to them is irrelevant because FirstEnergy is fully responsible for all damages caused by Jones, Dowling, or any other individual defendant.

The PSLRA makes clear that nothing in its proportionate fault provision "shall be construed to create, affect, or in any manner modify, the standard for liability associated with any action arising under the securities laws."  15 U.S.C. 78u-4(f)(1).  With respect to claims under Section 10(b) of the Securities Exchange Act of 1934 and corresponding SEC Rule 10b-5, "when [a]ny high managerial agent or member of the board of directors acts with the necessary scienter, their state of mind can be imputed to the corporation." *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 816 (6th Cir. 2022) (alteration in original).  Indeed, "'[c]orporations have no state of mind of their own; rather, the scienter of their agents must be imputed to them.'" *Frank v. Dana Corp.*, 646 F.3d 954, 963 (6th Cir. 2011) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010)).  The imputation of a corporation's scienter through its senior executives derives from the fundamental precept that "a corporation is an artificial legal entity that may act only through its officers and agents." *N.L.R.B. v. Judd*

- 6 -

*Contracting, Inc.*, 76 F. App'x 651, 652 (6th Cir. 2003); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2003 WL 230688, at *7 (S.D. Tex. Jan. 28, 2003) ("'[W]hile a corporation does have a noncorporeal and independent existence, it can conduct its affairs only through its officers and employees.'") (alteration in original) (quoting *Stop & Shop Cos. v. Fed. Ins. Co.*, 136 F.3d 71, 74 (1st Cir. 1998)).

Consistent with these principles, FirstEnergy has admitted that "through the acts of its officers, employees, and agents," the Company "conspired with public officials and other individuals and entities to pay millions of dollars to and for the benefit of public officials in exchange for specific official action for FirstEnergy Corp.'s benefit." *United States v. FirstEnergy Corp.*, No. 1:21-cr-00086-TSB (S.D. Ohio), ECF No. 3 at PageID 75.  Likewise, in evaluating Class Plaintiffs' scienter allegations, this Court analyzed the mental state of each of the executive defendants—including Jones and Dowling—and held: "Because Plaintiffs have adequately pleaded scienter as to [corporate officers,] they have also pleaded scienter as to [the company]." *In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 681320, at *22 n.28 (S.D. Ohio Mar. 7, 2022) (alterations in original).

In the same vein, at trial Plaintiffs will seek to prove FirstEnergy's liability through the actions and state of mind of senior FirstEnergy executives, in particular Jones and Dowling. Because the Company's mental state derives from that of Jones, Dowling, and any other current or former FirstEnergy officer or director included as a defendant at trial, the jury's determination as to whether the Company knowingly or recklessly made false or misleading statements of material fact will turn on those individuals' knowledge or recklessness.  Accordingly, regardless whether the jury finds that defendants acted knowingly or recklessly, and regardless of any

allocation of fault, FirstEnergy will be liable for all damages attributed to Jones, Dowling, or any other individual defendant.

To distinguish between FirstEnergy's responsibility for damages and its substantive liability would vitiate the above precepts of corporate identity, agency, and securities law—which the PSLRA expressly does not "create, affect, or in any manner modify." 15 U.S.C. § 78u-4(f)(1). In this regard, the proportionate fault provision directs that in determining a defendant's percentage of responsibility, the factfinder must consider "the nature of the conduct of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs" and "the nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff or plaintiffs." *Id.* § 78u-4(f)(3)(C). Because FirstEnergy can only engage in "conduct" through its officers, directors, employees, and agents, conduct by any of those individuals—including Jones and Dowling—that "caused or contributed to" Plaintiffs' losses is by definition attributable to FirstEnergy.[6] *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 0:07-cv-61542-UU (S.D. Fla.), ECF No. 635 (Jury Instructions) at 11 ("If you find that an individual Defendant violated Section 10(b), then you will have found that Bancorp also violated Section 10(b) to the same extent as that individual, because a corporation can only act through its agents or employees."); ECF No. 665 (Verdict Form) at 46 (asking "With respect to Statement 19, do you find that either of the following [Bancorp executive] Defendants (and therefore Bancorp) violated Section 10(b)," and assigning 50% of the responsibility to each of those executive defendants).[7]

---

[6] This might not be the case if FirstEnergy executives were not acting within the scope of their authority in making the allegedly false or misleading statements at issue or in otherwise engaging in the acts detailed in Plaintiffs' complaints. But FirstEnergy does not assert that here.

[7] The court in *BankAtlantic Bancorp* ultimately granted defendants' motion for judgment as a matter of law, but not based on the jury's apportionment of responsibility for damages. *See In re*

- 8 -

The PSLRA's legislative history further confirms that the proportionate fault provision does not negate corporate defendants' responsibility for the entirety of the damages caused by their executives' actions within the scope of their authority. The Statement of Managers submitted with the report of the House and Senate conference committee explains that the "fair share" rule of proportionate liability included in the Act addresses what the committee deemed "[o]ne of the most manifestly unfair aspects of the [then-]current system of securities litigation," i.e., "its imposition of liability on one party for injury actually caused by another." H.R. REP. No. 104-369, at 37 (1995), available at https://www.congress.gov/104/crpt/hrpt369/CRPT-104hrpt369.pdf. The managers further asserted the then-existing system of joint and several liability "create[d] coercive pressure for entirely innocent parties to settle meritless claims rather than risk exposing themselves to liability for a grossly disproportionate share of the damages in the case." *Id.* at 37-38. Because corporations can only speak and act through their officers, directors, employees, and other agents, imposing liability on the corporation based on its agents' acts does not constitute holding one party responsible for "injury actually caused by another." By the same token, the corporation is not an "entirely innocent part[y]"; to the contrary, it bears the mental state of the individuals who act on its behalf.[8]

In light of the above considerations, it does not matter whether "Jones and Dowling are . . . present as defendants" at FirstEnergy's trial (ECF No. 1014 at PageID 25853) or whether a second jury evaluating claims only against Jones and Dowling allocates fault differently than the jury in

---

*BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at \*14-24 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

[8] Congress was focused on companies' inability "to attract qualified persons to serve as outside directors" given the "unlimited and unfair risk" imposed by automatic joint and several liability. *Id.* at 38. "Accordingly," the conference committee "reformed the traditional rule of joint and several liability." *Id.* The managers' statement expresses no concern about maintaining corporations' full responsibility for damages caused by its executives or directors.

the FirstEnergy trial.  Because FirstEnergy is liable for all damages caused by its executives' conduct, the Company will be responsible for all damages allocated to those individuals at its trial. That the jury in Jones and Dowling's trial might allocate fault differently does not render the verdicts inconsistent, because if FirstEnergy had been included in the second trial it would bear full responsibility no matter what proportion of fault the jury were to allocate to Jones and Dowling (or any other FirstEnergy executive or director)—whether it be 1%, 50%, or 100%.

Finally, Defendants' reliance on *Crown Cork & Seal Co. Master Retirement Trust v. Credit Suisse First Boston Corp.* is misplaced.  The court there concluded "judicial economy w[ould] be served by [individual defendant] Poulsen's inclusion in the trial" involving Credit Suisse because "[t]he same jury should determine the issues of Credit Suisse's liability, Poulsen's liability, and, if either is found liable, the apportioned share of responsibility of each liable defendant and of the settling defendants."  288 F.R.D. 331, 334-35 (S.D.N.Y. 2013).  The court did not mention the Seventh Amendment, let alone hold that it applied.  Further, Credit Suisse sought severance to avoid prejudice associated with including Poulsen, a convicted felon, in its trial.  *Id.* at 335. Plaintiffs here seek severance to avoid further delays in this already years-long litigation as a result of Jones and Dowling's continuing criminal proceedings.  The balancing of considerations under Rule 21 or Rule 42 is thus meaningfully different than in *Crown Cork & Seal*.  Additionally, because Poulsen did not serve as Credit Suisse's agent, his liability and resulting damages were not imputable to the company, whereas FirstEnergy will be responsible for all damages resulting from Jones and Dowling's acts regardless whether they appear in the same trial.  *Crown Cork & Seal*'s reasoning is thus inapposite.

Dated: April 29, 2026

Respectfully submitted,

By: /s Matthew L. Fornshell

Matthew L. Fornshell (0062101),

Trial Attorney
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215-7509
Tel.:  (614) 462-1061
Fax:  (614) 222-3692
matthew.fornshell@icemiller.com

Steven E. Fineman (*pro hac vice*)
Daniel P. Chiplock (*pro hac vice*)
Michael J. Miarmi (*pro hac vice*)
John T. Nicolaou (*pro hac vice*)
Gabriel A. Panek (*pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.:  (212) 355-9500
Fax:  (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
jnicolaou@lchb.com
gpanek@lchb.com

Richard M. Heimann (*pro hac vice*)
Bruce W. Leppla (*pro hac vice*)
Michael K. Sheen (*pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.:  (415) 956-1000
Fax:  (415) 956-1008
rheimann@lchb.com
bleppla@lchb.com
msheen@lchb.com

*Counsel for Direct Action Plaintiffs*

- 11 -