# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION, | : | Case No. 2:20-cv-03785 |
| | : | |
| This document relates to: | : | Judge Algenon L. Marbley |
| | : | |
| ALL ACTIONS. | : | Magistrate Judge Kimberly A. Jolson |

---

| | | |
|---|---|---|
| MFS SERIES I TRUST, et al., | : | |
| | : | Case No. 2:21-cv-05839 |
| Plaintiffs, | : | |
| | : | Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP., et al., | : | |
| | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| BRIGHTHOUSE FUNDS TRUST II: – MSF VALUE PORTFOLIO, et al., | : | |
| | : | Case No. 2:22-cv-00865 |
| Plaintiffs, | : | |
| | : | Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP., et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER AND REPORT AND RECOMMENDATION BY SPECIAL MASTER

The consolidated cases are before the undersigned for disposition of multiple discovery and case-management issues that have arisen during the course of this litigation.  Some of the following decisions have been conveyed to the parties in the form of oral decisions previously

announced.  These decisions are memorialized here along with the disposition of other previously unresolved issues to afford the parties a written analysis and to enable the filing of any objections.[1]

**INTERROGATORY NO. 10**

The discovery requests served on FirstEnergy include Interrogatory No. 10, which is concerned with the internal investigation that the company had conducted that previously drew much debate and attention before the undersigned, the Court, and the Sixth Circuit.[2]  Interrogatory No. 10 sought the start and stop dates of that investigation, the amount billed for the investigation, and the numbers of lawyers and non-lawyers involved in the investigation.  Initially, the scope of the parties' dispute over Interrogatory No. 10 involved multiple subparts and encompassed parts 10(A), (B), (C), (D), and (E).  During a conference with the undersigned, the parties clarified that only subpart (C) remains in dispute, with FirstEnergy agreeing to provide the other information sought.  *See* 4/8/26 Conf. Tr, ECF No. 996 at PageID 25439 lines 19-25 to PageID 25440 lines 1, 23-25 to PageID 25441 lines 1-3.  The extant issue is thus whether discovery of the amount billed for the investigation is discoverable.

Plaintiffs have presented their argument in a written position statement (ECF No. 992) and oral argument (4/8/26 Conf. Tr, ECF No. 996).  They assert that the cost information sought is not

---

[1]     Unless otherwise expressly indicated, all references to documents filed on the docket shall be to the numbered document in Case No. 2:20-cv-03785.  The parties should understand these references to refer to the corresponding documents filed in Case Nos. 2:21-cv-05839 and 2:22-cv-00865 when appropriate.

[2]     For ease of discussion, the investigation is referenced here as one investigation, but it was actually two investigations often lumped together throughout this litigation.  At the April 8, 2026 status conference on the interrogatory issue, FirstEnergy's counsel explained that the company was "prepared to give [plaintiffs' lead counsel] this stuff within the next week or so for both investigations, give him everything he needs, the number of lawyers, the number of non-lawyers, the start and end dates."  (4/8/26 Conf. Tr, ECF No. 996 at PageID 25442 lines 15-19.)

privileged and is relevant to ascertaining the legitimacy of the investigation conducted (and, presumably, by extension the consequent actions of various defendants).

FirstEnergy has also presented its argument in a written position statement (ECF No. 993) and oral argument (4/8/26 Conf. Tr, ECF No. 996). The company posits that the cost of the investigation is not relevant to the claims at issue in this litigation and states that the company will not place the investigation at issue at trial. The company also suggests that, to its knowledge, Jones and Dowling will not place the investigation at issue. (4/8/26 Conf. Tr, ECF No. 996 at PageID 25441 lines 14-23.)

During the status conference involving this dispute, the undersigned explained that the investigation has relevance

> because it goes to an issue not necessarily raised in the case but may be raised in the case. And I'm not going to ask Jones and Dowling or anyone else to disclose their trial strategy or their theory of the case. But, to me, it's clear that the amount at least provides context to the length and scope of the investigation.
>
> The Sixth Circuit has shut down any inquiry into the investigation itself, but that's based on privilege[] grounds. They didn't find it to be [ir]relevant. They found it to be privileged. There's no indication that this -- the amount is privileged. In fact, the case law says it's not here. . . . I'm going to order disclosure.

(4/8/26 Conf. Tr, ECF No. 996 at PageID 25444 lines 19-25 to PageID 25445 lines 1-10.) Both the two key points remain dispositive.

First, the discovery definition of relevance is extremely broad. Under Federal Rule of Civil Procedure 26(b)(1), information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case." FirstEnergy offers no evidence to support a proportionality argument here, and the question of admissibility is irrelevant to whether the cost amount is relevant.

In regard to what is relevant, case law then teaches that "[t]he term 'relevant' has been 'construed broadly to encompass any matter that bears on . . . any issue that is or may be in the

3

case." *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-CV-02052, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Two judicial officers in this District have concluded that information is relevant "if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action." *Doe 162 v. Ohio State Univ.*, Nos. 2:23-cv-2991, 2:23-cv-2993, 2:23-cv-2994, 2:23-cv-2996 & 2:23-cv-3051, 2026 WL 216813, at *7 (S.D. Ohio Jan. 28, 2026) (citing *Braun v. Norton Healthcare, Inc.*, No. 3:24-CV-00039-DJH-CHL, 2025 WL 3680326, at *2 (W.D. Ky. Dec. 18, 2025)). Recognizing "the liberal scope of discovery," Magistrate Judge Jolson in particular has explained:

> Importantly, "[t]he concept of relevance during discovery is necessarily broader than at trial." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *3 (S.D. Ohio July 23, 2010). Rule 26's plain language allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," even if that evidence is not admissible at trial. Fed. R. Civ. P. 26(b)(1). Time and again, courts have held that the scope of discovery reaches information related to "any of the myriad of fact-oriented issues that arise in connection with litigation." *See, e.g.*, *Guinn*, 2010 WL 2927254, at *3.

*Zuspan v. Holzer Health Sys.*, No. 2:24-cv-4001, 2025 WL 3525311, at *2 (S.D. Ohio Dec. 9, 2025).

Any party other than FirstEnergy can use the cost information here to target any of a number of issues, including the legitimacy and therefore reliability of the internal investigation. Jones and Dowling have already argued to the undersigned multiple times that their interests diverge from FirstEnergy, which means it is not improbable that the propriety of the investigation will become an issue at trial. This certainly satisfies the requisite "any possibility" to establish relevance.

Second, although FirstEnergy raises only relevance, it bears noting that the information sought is neither privileged nor work product.  Interrogatory No. 10 provides that FirstEnergy respond "[w]ithout disclosing the substance of any work performed or any other privileged or protected information."  Ex. A, ECF No. 992-2 at PageID 25354.

Because the information sought is discoverable, the undersigned **ORDERS** FirstEnergy to answer Interrogatory No. 10(C) in regard to the full investigation(s)—the investigation led/conducted by Squire Patton Boggs and the investigation led/conducted by Jones Day.

### STATE COURT MATERIALS

A long-gestating issue in this litigation has been what Plaintiffs characterize as an "information imbalance" created by the fact that Jones and Dowling have received various materials in the state court criminal trial that other parties have not been able to obtain.[3]  This means that various depositions would be problematic because Jones and Dowling could theoretically be in a superior position than other parties in taking or assessing testimony.

The undersigned has previously summarized the facts related to whether various materials designated confidential in the state court criminal proceedings against Jones and Dowling should be produced in the consolidated federal litigation.  Jones and Dowling had various criminal investigation documents, summaries, and audio recordings (the "state materials") that were subject to production via Judge Marbley's June 14, 2021 Opinion and Order.  *See* Opinion and Order, ECF No. 175; *see also In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785, 2021 WL 2414763 (S.D. Ohio June 14, 2021).  The material was not initially marked confidential in the state court case,

---

[3]     Counsel for Jones has correctly pointed out that the asserted imbalance is "not just a Jones and Dowling issue" because "FirstEnergy was present at numerous witness interviews.  They had lawyers there.  They took notes.  There's, there's nothing special about Jones and Dowling as far as the information imbalance goes."  (4/6/26 Conf. Tr., ECF No. 996 at PageID 25458, lines 19-25.)

was therefore not considered confidential in that case, and was identified in the state court case as not being confidential.  This meant that Jones and Dowling were obligated to produce them here.

Instead of doing so, Jones and Dowling withheld the discovery material despite the stay being lifted, contacted the Ohio Attorney General's Office, and obtained that office's cooperation in *retroactively* designating the documents as confidential.  The account of these events as provided by the State of Ohio in its Limited Motion to Intervene and Limited Motion to Stay Portions of Discovery Proceedings is not flattering to Jones and Dowling and their counsel:

> On September 30, 2024, counsel for Jones and Dowling contacted the  [assistant Ohio Attorney General involved] to notify the State of Ohio that counsel for the lead plaintiffs in this action had filed a Request for Documents to All Defendants in this case, and that the plaintiff's discovery demand was not publicly available on the court's docket. … Counsel for Dowling then provided the State of Ohio with a copy of the lead plaintiff's discovery demand. During the September 30, 2024 meeting, Counsel for Jones and Dowling that the lead plaintiffs demand for documents included an obligation that Jones and Dowling turn over in civil discovery nearly all the state Crim.R.16 discovery materials that the two men obtained as a result of state criminal proceedings against them.
>
> During the September 30, 2024 meeting, counsel for Jones and Dowling stated that their obligation to provide a response to the Plaintiff's Request for Production of Documents was imminent, based on recent discussions they had during weekly status meetings with the Special Master in this case.  Counsel for Jones and Dowling indicated that if the State retroactively designated the Discovery Materials as Confidential Discovery Materials under the terms of an April 24, 2024 Protective Order in the state criminal case, that designation would allow them to refuse to turn over the  discovery  that they have received in the State criminal case. During a subsequent conversation on October 1, 2024, counsel for Jones stated her belief that providing the state criminal discovery to the parties in the civil case (along with the likelihood that those discovery materials would be made publicly available while the criminal case is pending) would affect the fairness and integrity of the state criminal proceeding.
>
> As a result of the September 30, 2024 meeting with counsel for Jones and Dowling, the State wrote a letter to counsel for all parties in the criminal case retroactively designating criminal  discovery materials  as Confidential  Discovery Material under the terms of the state court protective order.

(Int. Motion, ECF No. 694 at PageID 14863-14864 (references to exhibits and footnotes omitted).)

6

Citing the state court protective order, Jones and Dowling have long declined to produce the state material in this federal litigation.  In other words, Jones and Dowling retained and continue to retain information from their state criminal cases that other parties in the consolidated federal actions do not have.

Despite the nondisclosure, Jones and Dowling wanted to take select depositions that may be informed by these documents.  The remaining parties characterized this series of events as using these civil proceedings for *de facto* criminal discovery and for creating an "information imbalance" in the federal litigation that should preclude the taking of the depositions (or at least participation by Jones and Dowling) until production occurred.

Jones and Dowling argued that there was no meaningful information imbalance because FirstEnergy has access to its own current employees at any time.  They also noted that discovery proceeds in cases all the time where one party knows more than another.  And, downplaying any prejudice to Plaintiffs, Jones and Dowling assured the undersigned that the withheld documents are "underwhelming"—in other words, they would be of limited value in this federal litigation. They also note that much of the information would likely be inadmissible at trial.

In response to the foregoing events, the undersigned ordered Jones and Dowling to submit a complete account of their actions in regard to the withheld material, explaining their actions and providing copies of all communications with the Ohio Attorney General's Office related to the agreement to designate the withheld material confidential.  Similarly, the undersigned ordered the Ohio Attorney General's Office to submit a complete account of its actions in regard to the withheld material, explaining its actions and providing copies of all communications with counsel for Jones and Dowling related to the agreement to designate the withheld material confidential. The State of Ohio was also to provide the undersigned with a letter either (1) explaining

specifically why disclosure of the withheld material and/or the lack of a stay would harm its prosecution or ongoing investigation or (2) declining to provide that information to the Court.

In regard to Jones and Dowling, the undersigned has reviewed their joint *ex parte* submissions *in camera*. In their briefing, Jones and Dowling remain adamant that they have not violated Judge Marbley's June 14, 29021 Order. They take the position that the Order was not "self-executing" in regard to the production of documents. In other words, they explain, the Order lifting the PSLRA stay simply allowed LACERA (this was pre-certification, now Class Plaintiffs) to issue document requests but did not direct any party to produce anything.

Jones and Dowling further insist that they simply reached out to the Ohio Attorney General's Office in good faith so that the State could "clarify its confidentiality obligations" and to inform the State that if successful in their discovery pursuits, Plaintiffs would obtain the state material (which, Jones and Dowling reason, would mean that Ohio Criminal Rule 16 material would become public records subject to public consumption and tainting the state jury pool).

This account turns on no duty to supplement obviating the need for a specific judicial order compelling production of the materials sought. Jones and Dowling argue that there was no duty to produce the state material as supplemental production at the time of Judge Marbley's Order. They note that failed discussions in July 2024 between the parties suggest that everyone understood the scope of requisite supplementation excluded the state materials. For their part, Class Plaintiffs have pointed out that supplemental productions occurred in March 2022, April 2022, and September 2022. (2/13/26 Conf. Tr., ECF No. 981 at PageID 25096, lines 5-10.) This would suggest Jones and Dowling variously understood their duty to supplement. Class Plaintiffs' counsel suggested "There is no question they understood their discovery obligations are ongoing."

(*Id.* at lines 11-13.) Jones and Dowling in turn assert that there was no duty to supplement because there was not yet a duty to disclose.

Jones and Dowling also note that Plaintiffs did not depend on the duty to supplement until after they were unsuccessful in obtaining the state material through additional requests to multiple parties or entities. Of course, the duty under Federal Rule of Civil Procedure 26(e) exists by operation of rule regardless of whether or when a plaintiff recognizes it; nothing in the language of the rule makes it contingent on a plaintiff reading the rule properly or in a timely fashion. The "Plaintiffs found religion belatedly" is a misbegotten sideshow to whether Jones and Dowling violated their duty to supplement and, if they did, whether such violation warrants sanctions.

Equally uncompelling is the argument presented by Jones and Dowling that this was the understanding adopted by all defendants at the time. Nothing in Judge Marbley's Order is contingent on how many parties read it a certain way, and Rule 26(e) does not contain a "strength in numbers" caveat to its meaning or implementation. The duty of supplementation either exists or not apart from party or non-party acknowledgment.

Jones and Dowling have also offered a reading of Judge Marbley's June 14, 2021 Order that limits the universe of documents involved so as to exclude the state materials. That reading is less persuasive than they would hope and, again, ignores a duty to supplement. In any event, it is afforded some limited weight here.

After Judge Marbley lifted the discovery stay in August 2024 that had been in place for nearly a year, Jones and Dowling explain, Plaintiffs issued a document request that they state they think was intended to target the state material in the criminal case. But, Jones and Dowling note, the definitions section failed to capture the criminal case and included only a civil state court case pending in another state court. On September 23, 2024, the same time that Jones and Dowling

9

responded to that request (and did not produce the criminal case material they think the request sought), Jones and Dowling contacted the Ohio Attorney General's Office (which declined to produce the material involved directly to Plaintiffs sometime around this time).

The next events, even as recounted by Jones and Dowling, are at best only of meager help to their cause. They explain that on September 27, 2024, Plaintiffs asserted for the first time that a June 2021 document request (No. 2) required production of the state material. Jones and Dowling requested that the issue be taken up with the undersigned at a status conference that, due to a holiday, fell to October 8, 2024. Prior to that conference, Jones and Dowling emailed the State of Ohio on September 30, 2024. Their counsel attests that they did not collude with the Ohio Attorney General's Office in any way but simply informed them of the discovery dispute and of how they read the 2021 RFP No. 2. They also explained their position that if Jones and Dowling were required to produce the state material, it would become a public record and be publicly available. With all concerned for a fair criminal trial, Jones and Dowling explain, they sought and obtained clarification as to what was intended to be confidential. According to Jones and Dowling, the assistant attorney general had intended for more to be confidential than was marked, and he indicated he would seek modification of the state protective order to allow him to designate select material as confidential. Counsel for Jones then reportedly advised the assistant attorney general that the protective order already had a mechanism that would enable such designation even after initial production.

Apparently, no one paused to consider whether any of this should be brought to the undersigned's attention at the status conference to be held regarding the required scope of production, the reach of the 2021 RFP, the nature of Judge Marbley's June 2021 Order, and the scope of the duty to supplement.

In any event, the state court later approved the State's designations regarding the state material. Plaintiffs assert it was a rubber stamp, while Jones and Dowling assert it was not.

After recounting the foregoing events, Jones and Dowling argue that they met with the State of Ohio as they did pursuant to their state-court duty to meet and confer on discovery issues. In their *ex parte* submission they then curiously suggest that the undersigned would instead have had them "turn[] a blind eye to the confidentiality marking on the State's investigate reports" and that the undersigned would have had their counsel "ignore[] what their decades of experience in criminal matters told them to be true: when government prosecutors produce their investigative files to criminal defendants—which they are required to do under both state and federal rules— they expect those files to be used only for that criminal case and certainly do not anticipate that they will be made public before trial."

Sometimes the best defense is a good offense. Sometimes a defense is just silly.

As much as Jones and Dowling might spin the undersigned's concerns, the fact remains that their (after-the-fact?) characterization, however ill considered, is neither justified nor a justification. They could not be more incorrect. Regardless, the point is largely tangential to the sanctions issue here. Instead, the takeaway for future application is that discussion with the parties and the undersigned might be more beneficial the next time around than presuming the absolute worst and creating an unnecessary set of problems for all involved. ***Related to that point:*** today's Order and Report and Recommendation addresses in part the state materials at issue. It does *not* address the federal criminal materials in the criminal case against Jones and Dowling. If that material needs to be addressed, the parties should bring the issue to the undersigned in a timely manner, hopefully before creating more problems involving multiple protective orders and

11

multiple productions. Nothing concluded here is intended to decide issues regarding the federal criminal material.

Returning to the events involved in the production issue (and consequently, the sanctions issue), the State of Ohio changed its position in September 2025. In a September 29 letter to counsel for Jones and Dowling (and copying counsel for Class Plaintiffs and the undersigned), the State indicated: "As a result of you asking the State for a retroactive designation, we agreed on October 1, 2024 to designate the following categories of items to be considered Confidential Discovery Material . . . ." The State continued, explaining that it has engaged in the retroactive designation of materials to safeguard the integrity and fairness of the criminal case. The State then explained that the passage of time and the more amended federal protective order has lessened its concerns. Deeming the material involved as "over-designated," the State then noted it was withdrawing its confidentiality designation.

In the subsequent October 6, 2025 status conference held by the undersigned, the author of the letter for the State of Ohio indicated that "[t]he letter recognizes a change in circumstances that we think has warranted us to reconsider our earlier position." (10/6/25 Conf. Tr., ECF No. 862 at PageID 20393, lines 3-5.) He explained that Ohio has chosen to rescind the request made by Jones and Dowling that the State retroactively designate all discovery material as confidential. (*Id.* at PageID 20394, lines 1-5.) Given the amendment to the governing protective order that had occurred, counsel continued, "the retroactive designation" was "a solution in search of a problem" and "[t]here's nothing that would warrant such an overbroad designation any longer, to the extent there was in the first place." (*Id.* at PageID 20394, lines 6-15.) He concluded with the statement that "we are now of the opinion that there's, there's no longer justification for the position we took last year." (*Id.* at PageID 20395, lines 4-6.)

The foregoing set of circumstances and developments presents what is, thankfully, an atypical issue: whether to compel production in this federal litigation regardless of the state court protective order. Magistrate Judge Jolson has previously summarized the standard governing a motion to compel:

> Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). . . . "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.' " *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

*In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2022 WL 17075838, at *2 (S.D. Ohio Nov. 18, 2022), *objections overruled*, No. 2:20-CV-3785, 2023 WL 142078 (S.D. Ohio Jan. 10, 2023).

Whether treated as a motion to compel or the pursuit of correcting noncompliance with previously mandated production, the consequent issue presented by the state court protective order invokes concerns regarding federalism, comity, and courtesy. *See Tucker v. Ohtsu Ture & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Maryland 2000). It is important to note that

> [t]hese principles, while unquestionably important, are not absolute, and courts asked to issue discovery orders in litigation pending before them also have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified.

*Id.* at 499-500. Because other courts' protective orders need not control federal discovery conduct and orders, federal courts have considered various factors to guide decision making when it comes to discovery that involves protective orders from other courts.

13

These factors include "the nature of the protective order issued by the first court" because "[t]here is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the court, than an action directed by the court after a full consideration of the merits of a fully briefed dispute." *Id.* at 501. Here, Jones and Dowling and the State of Ohio entered into an agreement to retroactively designate material as within the scope of the state protective order and then presented that agreement to the state court. This tracks the state protective orders at issue in *Tucker* and *LeBlanc v. Broyhill*, 123 F.R.D. 527 (W.D.N.C. 1988). In those cases, the state protective order involved "had been negotiated by counsel, and once they had agreed on its terms, it had been presented to the court to sign." *Tucker*, 191 F.R.D. at 500. Thus, the federal court in each case "viewed the order as being more akin to a private 'contract' between counsel than an order issued by the court, following a fair briefing of issues, and a deliberate consideration by the court." *Id.* (citing *LeBlanc*, 123 F.R.D. at 531). The State of Ohio's subsequent abandonment of the retroactive designation, although a technicality, nonetheless carries some weight here. The party unity and joint belief in the designation brought to the state court no longer exist even if the effects of that designation remain a vestige that has survived. The specific circumstances of how the state materials came within the scope of the protective order therefore justify ordering production here despite the ongoing nature of that protective order.

Courts have also considered "the identity of the party from whom discovery is sought." *Id.* at 501. On one hand, this factor weighs partially in favor of not ordering production because Jones and Dowling were recipients of the material in the state court as opposed to the initial source of the documents in the state court. *See id.* On the other hand, Jones and Dowling are the source of the federal-state tension here because, faced with a federal obligation and order for production,

14

they worked the state system to erect a potential barrier to production in this federal litigation. The taint on Jones and Dowling would make blind adherence to the state court protective order here an absurd result.

Also considered by courts is "whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the plaintiffs if they are required to file a new action in the [state] court simply to seek modification of the Order issued there." *Id.* The state criminal proceedings against Jones and Dowling remain pending. Plaintiffs here cannot intervene in that criminal proceeding to obtain modification of the protective order. And Jones and Dowling have shown little interest or perceived action to obtain a modification in the state court that would obviate the issues presented here. Resolving the dispute in this Court appears to be the most viable option.

Finally, courts consider "whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the [state] court." *Id.* at 501. Here, the Court has already modified the language of the federal protective order to provide greater protections. Although Jones and Dowling disagree that the amendments taken are sufficient, the undersigned and, more importantly, Judge Marbley and Magistrate Judge Jolson, have already rejected these arguments.

Informing the production decision is Plaintiffs' need for the material sought. *See City of Rome v. Hotels.com. LP*, 2011 WL 13232091, at *3 (N.D. Ga. Sep. 12, 2011). It defies logic to permit depositions to go forward with Jones and Dowling (and FirstEnergy) being in a superior position to Plaintiffs in terms of information. It would also arguably be unfair to wholesale exclude a party such as Jones and Dowling from a deposition because of an uncorrected information imbalance, even if it is one they essentially created. Both sides benefit from production of the

15

material sought, and all parties benefit from the fact that production of this material will help move this litigation forward so as to mitigate the realities of prejudicial delay.

Thus, having researched the issue, having reviewed the *in camera* submissions, and having considered extensive arguments by the parties and counsel involved, the undersigned is convinced of three fundamental propositions.

*First*, Jones and Dowling either misunderstood (less likely) or ignored (more likely) federal discovery obligations and orders to strategically use the state court proceedings to create or inflame discovery problems here.

*Second*, Jones and Dowling were initially aided in their scheme by the State of Ohio, which was either (*so easily?*) a dupe or a willing conspirator in the circumvention of the federal obligations of Jones and Dowling, favoring the perceived interests of the state proceedings while either downplaying—or perhaps hoping to cause—the effects on these federal proceedings.

*Third*, ordering production now even in light of the state protective order is essential to promoting justice and mitigating the unfair prejudice presented by discovery-related delay.

As previously noted, the undersigned finds the circumstances surrounding the initial sealing of the state court materials to be discomforting, to put a polite label on it. It reeks of litigation gamesmanship if not odd collusion, and the Ohio Attorney General's Office's initial willingness to indulge in this handling of the undisclosed material remains confounding and deeply concerning. Then the State of Ohio changed its mind, either because it realized it was initially wrong, because circumstances made its initial position no longer valid or necessary, or, perhaps worst of all, because it perceived a strategic advantage in turning on the deal it made and pointing blame at Jones and Dowling. It does not matter for purposes of the production aspect of this issue

16

so much why or how the State of Ohio attorneys found religion.  Assessing blame and what that means is an issue for the sanctions inquiry, addressed below.

What matters at this juncture is whether to order production or continue delay.  Concerns over comity and pragmatism have encouraged slow-walking resolving the issue of the state court materials.  But after waiting for a notably significant amount of time, the criminal trial ended in a mistrial.  Jury selection for the next state court trial is now set to commence in September 2026, a date selected even before new June 3, 2026 Indictment against Jones and Dowling came down. (4/9/26 Conf. Tr., ECF No. 997 at PageID 25499, lines 14-15.)  The effect of these dates on this federal litigation does not appear to inform the state court's prior orders or the prior designations; according to counsel involved in both cases, the state court judge and the parties and counsel "didn't specifically talk about the criminal discovery materials" at the state court's April 8, 2026 pretrial or status conference.  (*Id.* at PageID 25499, lines 20-25, PageID 25500, lines 1-5.)  A second trial will take an extended period, pushing substantial progress in the consolidated federal litigation ever further and further out.

Meanwhile, Jones and Dowling do not appear to have done anything to address the production issue with the state court.  Instead, they have told the undersigned that the state court protective order remains as is and that modification of that order to address the issues presented here simply do not "come up" during state status conferences.  Failing to "bring it up" or to expressly request modification of the state court protective order suggests that Jones and Dowling do not appear to be in a hurry to resolve the federal-state issue.

Continuing to wait for the state court proceedings to conclude simply does not present a viable path toward a just and timely resolution of these federal proceedings.  Pursuing fairness and justice here means compelling production.

That decision takes into account whether proceeding with this civil litigation, including requiring Jones and Dowling to meet their federal discovery obligations, could theoretically prejudice Jones and Dowling or the State of Ohio in the state criminal proceedings. In regard to Jones and Dowling, tainting a jury pool is unlikely; there has already been a criminal trial that received a great deal of media coverage, and Jones and Dowling have presented absolutely no evidence that an abstract fear of taint is anything more than untethered speculation. In regard to the State of Ohio, the state's articulated concern at intervention was that it "believe[d] it would be unfair for Jones and Dowling to use the civil depositions as a pretext to depose and cross-examine prosecution witnesses about statements made to criminal investigators or statements made during state criminal proceedings before those witnesses have testified during the state criminal trial." (Int. Motion, ECF No. 10/10/24 at PageID 14865.) Again, however, the first criminal trial has taken place, mitigating this concern for the second criminal trial. And again, the State of Ohio has withdrawn support of the retroactive designation. There is no reason to think that production would harm the State of Ohio at retrial.

There are substantial reasons to conclude, however, that further extended delay of federal discovery risks the loss of evidence and potentially damages the parties' claims and defenses in the captioned cases. This is always true as an abstract possibility. It is also an unfortunate reality of this litigation. The particular history of this litigation has taught all involved that evidence has been and will likely continue to be lost.

Literally over half a decade ago, Judge Marbley accurately highlighted the very concern that lost time presents prejudice to Class Plaintiffs, stating:

> This case presents additional circumstances that add to the weight of this conclusion. First, one of the key witnesses indicted in the Criminal Complaint, Neil Clark, died from a gunshot wound on or about March 15, 2021. (ECF No. 145 at 3; Polychron Decl. Ex. E, ECF No. 145-7). Mr. Clark was reportedly in the process

18

of publishing a "tell all" book about the bribery scheme at the time of his death. (*Id.*). Before his death, Mr. Clark was also a confidential source for an Ohio reporter, providing "background and context" about the scandal. (ECF No. 145 at 3; Polychron Decl. Ex. F, ECF No. 145-8). Second, FirstEnergy terminated and sued a whistleblower who produced "57 unique files of FirstEnergy's confidential information relating to internal controls" to the SEC. *FirstEnergy Corp. v. Pircio*, No. 1:20-cv-01966-JPC (N.D. Ohio) (ECF No. 14 at 10). As Judge J. Philip Calabrese recently stated in a Show Cause Opinion, "the Court has a grave concern that the actions of FirstEnergy ... used the Court to obstruct justice, engage in witness tampering, or otherwise interfere with ongoing criminal and civil investigations." *FirstEnergy Corp. v. Pircio*, 2021 WL 1588705, at \*4 (N.D. Ohio Apr. 23, 2021) (noting that the court did not draw a conclusion on these issues). Together, these events could have a chilling effect on other potential witnesses. LACERA has therefore demonstrated that is faces unique undue prejudice without having access to documents that have already been produced in other proceedings.

*In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785, 2021 WL 2414763, at \*6 (S.D. Ohio June 14, 2021). Adding to this list is the death of Defendant Samuel Randazzo that occurred after Judge Marbley's foregoing summary. Thus, at least two core witnesses have died during the course of this litigation.

In 2024, Judge Marbley and Magistrate Judge Jolson again expressed concern over the prejudice arising from delayed discovery:

> The Court shares the Special Master's concern that there is a substantial risk of injury to Plaintiffs claims (and also to Defendants' defenses) considering the risk of lost evidence due to death and fading memories. (Doc. 638 at 6); *see Compound Prop. Mgmt. LLC*, 2023 WL 3004148, at \*4 ("Further delay could substantially harm Plaintiffs in that witnesses move, parties die, and memories fade."); *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 12591692, at \*4 ("The longer a merits adjudication is delayed, the more likely it is (according to the old axiom) that witness memories will fade."). The sole case Defendants cite for the notion that "the prospect of fading memories does not make this case any more compelling than other cases" noted that no specific examples were provided of fading memoires to support a substantial injury. (Doc. 646 at 19 (cleaned up and internal quotation marks omitted)); *see Chao v. Fleming*, 498 F. Supp. 2d 1034, 1040 (W.D. Mich. 2007). In contrast, the record here shows that witnesses are forgetting details related to this case. (*See* Ex. B (Dowling Depo. Tr. Vol. 1) at 23:13-24:2, 57:13-16; Ex. C (Lisowski Depo. Tr. Vol. 2) at 512:9-513:10; Ex. D (Pearson Depo. Tr. Vol. 1) at 43:7-10, 64:20-65:6; Ex. E (Strah Depo. Tr. Vol. 2) at 495:23-25; 570:12-16, 572:2-12). This is unsurprising, as this litigation has been pending for four years, and some of the events at issue date back to 2017.

19

(Order, ECF No. 675 at PageID 14545-14546.)  The same prudent concerns remain extant.

It is also particularly telling that *even Jones and Dowling* recognize the negative effect of continued delay.  During an April 6, 2026 status conference, counsel for Jones stated:

> We are already in a position where numerous witnesses have died or been diagnosed with terminal illnesses in the five years since these -- six, almost six years since these events took place.  A stay as to our clients only would unfairly prejudice their ability to defend themselves in this litigation, which is what we're trying to do in this litigation.

(4/6/26 Conf. Tr., ECF No. 996 at PageID 25457, lines 17-25.)  Counsel for Dowling subsequently joined in the foregoing statement on behalf of his client.  (*Id.* at PageID 25461, lines 4-5.)

Although counsel was objecting to a stay of the federal proceedings against Jones and Dowling, the same core rationale presented against a stay as to some defendants presents the rationale for recognizing that the interests of multiple parties in advancing this federal litigation— that the interests of justice—now demand disclosure of the state court materials.  Such disclosure would obviate the information imbalance and enable at least partial mitigation of continuing prejudice to all parties in this federal forum.  In contrast, further extended delay would unquestionably prejudice the rights of the federal litigants in this litigation, particularly Class Plaintiffs and Direct Action Plaintiffs, as well as offend notions of fundamental fairness.

When the undersigned asked counsel how the same "no stay due to delay" argument she was making on behalf of Jones did not constitute the reasons for no longer waiting for the state protective order to be lifted or modified, counsel responded with a conclusory, "Well, I think those are two separate issues."  (*Id.* at PageID 25458, lines 1-10.)  They may be theoretically distinct issues, but realistically they invariably overlap—and the rationale Jones offered logically and inescapably must inform both the stay and the compelled production issues.  In other words, neither Jones nor Dowling can have it both ways, using the effects of continued delay as both a sword and

shield to pursue whatever desired outcome they seek in the moment on any particular issue.  Either there is a profound risk of prejudice presented by delay or there is not.  The answer is *there is*.

Consideration of a threading-the-needle approach yields little relief and would only serve to create new problems.  For example, Plaintiffs have suggested severing Jones and Dowling into a bifurcated track and/or not permitting these two individuals to participate in depositions affected by the information imbalance.  But as discussed in the Stay/Bifurcation section below, a stay of these federal civil proceedings toward Jones and Dowling only opens a can of worms presenting likely unintended complications.  So too does bifurcation.  And barring Jones and Dowling from participating in select depositions here while requiring them to otherwise participate in this federal litigation would present multiple issues, including the obvious lack of fairness to two individuals who are entitled to mount a defense.

Such inelegant solutions would not resolve the problems sufficiently or fairly.  Fairness dictates that the parties who have not been able to review the withheld material should be able to review it and determine for themselves its utility, if any.  Fairness also dictates that Jones and Dowling participate in this litigation.  Hand in hand with these fundamental propositions is the fact that it is also beyond question that Jones and Dowling are entitled to a fair criminal trial.  But it is equally beyond dispute that the other litigations in the three captioned federal cases are also each entitled to a fair civil trial—and that fairness compels that the ongoing prejudice presented by escapable delay be extinguished.

The business of the Court is administering justice, and that task calls for applying the Federal Rules of Civil Procedure toward the just, speedy, and inexpensive determination of these three cases.  *See* Fed. R. Civ. P. 1.  Moreover, a federal court has the inherent authority and obligation to manage its own docket to promote the fair and just resolution of its cases.

21

The rights of parties *in this federal forum*, including those belonging to Jones and Dowling here, cannot be sacrificed or risked indefinitely based on state court proceedings.  A balance must be had, and that balancing requires that it is time for this federal litigation to proceed as unimpeded as possible and as efficiently as pragmatism allows.

That balance mandates ordering production of the withheld materials.  In so doing, it should be noted that in managing discovery matters before it, it is not the business of a federal district court to instruct other courts, especially state courts, on how to operate their own discovery. *Brakebill v. Moncier*, No. 3:14-CV-105-TAV-CCS, 2015 WL 7281664, at *1 (E.D. Tenn. Nov. 17, 2015).  Moreover, the undersigned joins Judge Marbley and Magistrate Judge Jolson in holding the utmost respect for Ohio's judicial officers and the state court system.  It is with no small degree of reluctance then that the undersigned concludes that compelling production is essential despite the state court protective order.

The undersigned **ORDERS** that Jones and Dowling must produce the Rule 16 material (including witness interviews, transcripts, agent summaries), in addition to any similar material held by them that should have been produced as part of their ongoing duty to supplement under Rule 26(e).  The existing, operative protective order is sufficient to deal with that material, with the undersigned and, again more notably, the Court have already rejecting the arguments made by Jones and Dowling as to why the amended protective order remains insufficient in their view.

Two additional related requests necessitate attention.

First, Jones and Dowling have requested the undersigned stay the effect of this production order if production were indeed ordered until disposition of any objections.  Among their apparent justifications is that Jones and Dowling assert there is uncertainty as to whether Ohio's Public Records Law would provide protection for some of the material involved (*see* ECF No. 881 at

22

PageID 20844), their proffered solution (essentially to turn responsibility for handling of this material over to the state court) amounts to an abdication of the Court maintaining its docket and managing this federal litigation. But the potential uncertainty asserted is speculative and insufficient grounds to continue delay of a proper production. Given the sufficiency of protection afforded the material, the undersigned **DENIES** the understandable request by Jones and Dowling that the production be stayed while any objection is considered by the Court. Jones and Dowling remain free to seek an immediate stay from the Court prior to the objection proceedings, but unless the Court orders, the obligation to produce immediately exists.

Second, via their *ex parte* sanctions briefing and again in an email also copied to lead counsel, Jones and Dowling have requested that if the undersigned orders the disclosure of any of the material submitted *ex parte* for *in camera* review (including without limitation the Criminal Rule 16 Discovery Material, the brief and affidavits submitted *ex parte*, and all exhibits attached to those affidavits), the undersigned stay the order until judicial disposition of their forthcoming objections. Because the brief and affidavits submitted *ex parte*, as well as the exhibits to those affidavits, that are not part of the state materials are not subject to the ordered production, there is no production order to stay. Jones and Dowling and their counsel are reminded, however, that this material is not part of the docket and if an objection is filed regarding the ordered production and/or the recommendation regarding sanctions, they must file this material on the docket under seal or as otherwise instructed by the Court to present a complete record for judicial consideration.

### RESUMPTION OF DEPOSITIONS

In connection with the informational imbalance/document production issue discussed above, a number of depositions have been held in abeyance. Additional potential deponents were in essentially limbo status. More specifically, to allow *in camera* examination of relevant material

and until a decision was reached, the undersigned granted in part the State of Ohio's motion to stay, holding the ultimate disposition of that motion in abeyance. Under this temporary stay, Jones and Dowling were able to withhold the documents and a stay existed of the taking of six specific depositions (Ebony Yeboah Amankwah, Robert Reffner, Josh Rubin, Brad Bingaman, Matthew Brakey, and Steven Staub). In addition, at least two other depositions were stayed, with these latter depositions included in the limited stay out of an abundance of caution until subsequent submissions providing the undersigned with necessary context to either confirm or refute the representations of Jones and Dowling. With today's filing, the undersigned **VACATES** the temporary stay of select depositions and **DENIES** the motion for a stay.

The undersigned will discuss the planned deposition of Scott Elisar at the next scheduled status conference.

## WRITTEN DISCOVERY

Federal Rule of Civil Procedure 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." S.D. Ohio Civ. R. 36.1 provides that "[u]nless there has been agreement of the responding party or leave of Court has first been obtained, no party shall serve more than forty requests for admission (including all subparts) upon any other party." Accordingly, each "party" is afforded a default of 25 interrogatories and 40 requests for admission.

Plaintiffs seek clarification on the amount of written discovery available to them. (Position Statement, ECF No. 1008; 4/23/26 Conf. Tr., ECF No. 1012.) They note that "[b]etween the class and opt-out cases, there are 19 plaintiff-parties," which by their calculations means they are entitled to collectively serve up to 475 interrogatories and 760 requests for admission on each defendant. (Position Statement, ECF No. 1008 at PageID 25742.)

24

Defendants oppose Plaintiffs' reading of the discovery rules and argue that Plaintiffs are not seeking clarification but an enlargement of the amount of written discovery properly available to them. (Position Statement, ECF No. 1007.) This argument hinges on reading the use of "party" in Rule 33 and Local Rule 35.1 to mean "side."

At the undersigned's direction, in addition to their position statements, both sides have submitted citations to supplemental authority regarding interpretation of the applicable rules. (Plaintiffs' Authorities, ECF No. 1015; Defendants' Authorities, ECF No. 1016.)

The crux of the debate is whether the limitations on written discovery set forth in the Rule 33 and Local Rule 36.1 apply "per side" or "per party." In other words, if Plaintiffs are correct that "party" means "party," then they are entitled cumulatively to 475 interrogatories and 760 requests for admission. If Defendants are correct that "party" means "side," then Plaintiffs are cumulatively limited to 25 interrogatories and 40 requests for admission.[4]

FirstEnergy's counsel was of course correct when he stated that the issue was premature. *See* 4/23/26 Conf. Tr., ECF No. 1012 at PageID 25790. But part of the reason for the multiple status conferences in this litigation is to mitigate or head off discovery other disputes when possible so that issues do not snowball into derailing sideshows or otherwise avoidable briefing consuming much time and expense. Although today's analysis is technically advisory, then, it is warranted in this situation.

The interpretation debate is not conclusively settled, with cases going both ways. *See Gay v. Price*, No. 19-10383, 2020 WL 12721645, at *4-5 (E.D. Mich. Feb. 12, 2020) (noting that "This

---

[4] Plaintiffs note in a footnote that because the Federal Rules of Civil Procedure do not contain a limitation on the number of requests for admission that are permitted, the Local Rule imposing a limitation may be inconsistent and therefore unenforceable. *See* Position Statement, ECF No. 1008 at PageID 25743 n.4. Because Plaintiffs neither actually make this argument nor ask for a decision on the matter, the enforceability of the Local Rule is not before the undersigned.

Court's research found that the issue is unsettled, but that there is some support for a finding that defendants are allowed up to 25 interrogatories each" and that "[o]ther courts disagree, particularly when one side with multiple parties is represented by the same attorneys").

Under the plain language of Rule 33 and Local Rule 36.1, Plaintiffs' interpretation is correct. "Party" means party.

Plaintiffs' interpretation is also consistent with authority from this District that has addressed this issue. *See, e.g.*, *Laws v. Stevens Transport, Inc.*, No. 2:12-cv-544, 2013 WL 941435, at *2 (S.D. Ohio Mar. 8, 2013). *Cf. West v. Hilton*, No. 3:10-cv-284, 2012 WL 1186007, at *1 (S.D. Ohio Apr. 9, 2012) (citing without expressly adopting case standing for the per party versus per side interpretation).

Perhaps some reinforcement for Plaintiffs' interpretation comes from the fact that FirstEnergy previously deposed multiple class members separately and served discovery on them separately, which indicates treatment of the plaintiffs as separate parties—*i.e.*, treatment on a per-party and not on a per-side basis. The utility of this fact is largely tempered by the truism that a party's interpretation of a rule does not mean the rule's meaning is that interpretation. A rule means what it means; a party's interpretation as evinced by past practice is simply non-binding, meager support for that meaning.

The undersigned concludes that Plaintiffs' interpretation is correct. Two points attach to this conclusion.

First, none of the foregoing means that, should Plaintiffs actually serve a permitted but under-the-circumstances unreasonable number of interrogatories and requests for admission, Defendants cannot argue for limits on such grounds as the number is abusive or that the common interest doctrine applies to Rule 33(a)(1) and Local Rule 36.1 to impose practical modifications.

26

*See, e.g.*, *Abarca v. Werner Enters., Inc.*, Nos. 8:14CV319, 8:15CV287, 8:17CV145 & 8:20CV227, 2024 WL 620721, at *2 (D. Neb. Feb. 14, 2024). The unresolved issue of Rule 26(b)(2) modifications is not ripe and therefore need not be addressed today.

Second, should the issue become ripe, the parties are reminded that no motions practice is permitted on the issue because it should first be taken up with the undersigned at the earliest possible time. As Class Plaintiffs' counsel indicated at the status conference on this issue, a productive discussion and narrowing on the spot of interrogatories and requests for admission could save substantial time and briefing. (4/23/26 Conf. Tr., ECF No. 1012 at PageID 25789.) FirstEnergy's counsel laudably stated that "this is the sort of issue that there really ought to be a compromise. There is no reason that this should be . . . the focus of litigation on . . . exactly how may RFAs." (*Id.* at PageID 25795, lines 24025 to PageID 25796, lines 1-3.) He concluded that "what I hope is that . . . we could work with you and would hope [Class Plaintiffs' counsel] will agree to come up with some number that makes sense and move forward instead of wasting more time on this question." (*Id.* at PageID 25797.)

## REQUEST FOR SANCTIONS

Another long-pending issue in this consolidated litigation is whether the Court should sanction Jones and Dowling and/or their counsel for violating a prior discovery order by withholding material subject to production. This is a distasteful issue that is reached out obligation.

The Sixth Circuit has explained that "[d]iscovery sanctions may be appropriate when a party fails to obey an order to provide or permit discovery." *Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (internal quotation marks omitted). Courts use a four-factor test when considering sanctions under Federal Rule of Civil Procedure 37:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was

27

prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).

In regard to the first factor, there is arguably a clear record of delay or contumacious conduct. The better reasoned view suggests Jones and Dowling and their counsel have long been on notice of the need to produce the discovery sought. This conclusion is tempered to a notably limited degree by their account of the events involved and their reading of Judge Marbley's June 2021 Order. What is clear is that at some point, whether in 2021 or 2024, but certainly by 2024, Jones and Dowling were convinced they were going to have to produce the material and they acted in such a way that stopped that production.

Counsel for Jones and Dowling have painted a picture in which they were simply following their state-driven duties and after informing the State of Ohio of the situation, the State did what the State did. The account from the Ohio Attorney Generals' Office paints a far more damning picture in which counsel for Jones and Dowling drove the designations that the State later abandoned. On one hand, there are attorneys facing sanctions and on the other hand there is an assistant attorney general that had no federal discovery duty, and their accounts diverge and shift responsibility. Resolving credibility on the papers is difficult, and a hearing would be a sideshow that turns a discovery dispute into a deeper rabbit hole than perhaps common sense supports.

Assuming for the moment problematic conduct, the question then becomes whether Jones and Dowling *and/or* their counsel were engaging in willful disobedience, acting in bad faith, simply inept, or perhaps too-clever-by-half in their brainstorming.

28

Whether Jones and Dowling appreciated the obligations involved and signed off on the path of noncompliance is not readily clear from this record.  What is clear is that the Sixth Circuit has explained that "[s]trict compliance with orders of a district court is an important duty of counsel." *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).  The court of appeals has also recognized the general proposition that a party "should not be penalized for the conduct of an inept attorney." *Freeland*, 103 F.3d at 1278.  These last two points matter given that what is at issue here is non-production based on interpretations of discovery rules and discovery orders.  In other words, functions that fall onto the lawyers involved, not the clients.

Four propositions become relevant.  First, "when a failure to comply with a discovery rule or order occurs," a district court proceeding under Rule 37 may hold responsible the party failing to act, the party's specific counsel, or both.  *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 382-83 (6th Cir. 2022).  Second, proceeding not under Rule 37 but under its inherent power, a district court may sanction the entire law firm involved if appropriate.  *Id.* at 383-84.  Third, a court need not precisely articulate the factual basis for sanctions against each individual attorney involved; it is enough to set forth the violative conduct when each counsel of record is responsible for compliance with discovery orders.  *Id.* at 378-81.  Fourth, counsel's conduct is only "substantially justified" if it raises an issue about which there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.  *Id.* at 381-82.

Given the nature of the allegedly violative conduct here, recommending sanctions against counsel for Jones and Dowling and *not* against Jones and Dowling is allowed.  Sanctioning the firm involved is also allowed under the inherent authority of the Court, while sanctioning the individual attorneys involved is permitted under Rule 37.  Any such judicial action need not be based on specific acts by specific attorneys when all counsel of record has assumed responsibility

29

here.  This leaves the issue of whether the explanation for noncompliance offered by counsel substantially justifies their conduct—in other words, whether reasonable people could find that the explanation makes any sense, or at least enough sense to avoid sanctions.

The first factor weighs slightly in favor of sanctions.

In regard to the second factor, actual prejudice to Plaintiffs is limited.  This is not to diminish the frustration involved, the delay accompanying motions practice and waiting for a decision, and the possibility of lost evidence that has occurred by delaying depositions that would potentially utilize the discovery sought.  This litigation has too often been characterized by delays both avoidable and unavoidable, whether due to incessant motions practice and objections, lengthy appeals, remands, and the like.  And the delay involved here is accompanied by Plaintiffs having to jump through at least more hurdles than ought to have been necessary to obtain production, a result of maneuvering in the state proceedings that introduced complications that were likely avoidable.  This distinguishes the lack-of-cooperation steps undertaken here from typical steps that are expected in litigation, serving to establish additional prejudice to Plaintiffs.  *See D&R Servs., LLC v. Mesa Underwriters Specialty Ins. Co.*, 2024 WL 2830660, at *5 (6th Cir. June 4, 2024).  Although there is thus some prejudice, it is qualified in tangible degree with the rest largely speculative.  The second factor is thus essentially of limited weight as well.

In regard to the third factor, Jones and Dowling argue that they were not notified enough that they could be sanctioned for noncompliance.  This may indeed be a technical argument against the actual imposition of sanctions, but what an argument to make: *we can't be sanctioned because you let us get aware with it too much*.  At least counsel for Jones and Dowling likely were well aware that failure to cooperate with their discovery duties could lead to sanctions.  The third factor is also qualified then.

In regard to the fourth factor, the sanction of dismissal is of course not appropriate here, and less drastic sanctions, if sanctions be imposed, must be considered.  To state the obvious, even if Jones and Dowling and their counsel have failed to meet their discovery obligations and have failed to adhere to the discovery orders of this Court, an error is not necessarily sanctionable. Moreover, blanket as opposed to targeted sanctions may be inappropriate given that "[t]he Sixth Circuit has further observed that a particularly close analysis of the four-factor test should be undertaken before sanctions are imposed if the fault for the offending conduct rests solely with counsel rather than the party." *Taber v. Lowes Home Centers, LLC*, No. 2:24-CV-149, 2025 WL 2792568, at *3 (E.D. Tenn. July 9, 2025) (citing *Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997)).

To be certain, discovery is not a game of hide-and-seek.  The Court's Orders are not suggestions of aspirational conduct but are mandates to be followed.  And the letter as well as the spirit of the Civil Rules and related discovery orders are not to be ignored in favor of strained readings that at best suggest poorly considered elections into defying iron-clad obligations, if not outright gamesmanship.  Accordingly, using the most charitable phrasing, one view of the conduct of Jones and Dowling and their counsel can suggest anything from disturbing inability to ill-considered strategy animating poor decision making.

Also certain is that formal sanctions are often a harsh consequence.  Of not inconsiderable weight is the fact that "[u]sing sanctions that are the least harsh necessary to effectively address the conduct at issue as a starting point is an approach which is favored by the Sixth Circuit." *Taber*, 2025 WL 2792568, at 4 (citing *Freeland*, 103 F.3d at 1280).

Cognizant of the serious, ongoing consequences that even meager sanctions can carry, perhaps some measure of grace is warranted—or more colloquially, giving Jones and Dowling and

31

their counsel *the benefit of the doubt* that their wandering into adopting arguably tortured readings of their obligations was more unintended misadventure than intentional disregard for litigation and professional duties. Zealous advocacy is not a license to engage in nonsense. Multiple parties and counsel in this litigation have too often promoted interpretations of rules and orders and motives that are illogical and even absurd.

Consequent to the foregoing analysis, the undersigned declines to recommend that the Court sanction Jones and Dowling or their counsel related to the discovery order and their ongoing discovery obligations. This is not to excuse what is at its most fundamental some notably ill-considered conduct. Some of the readings given to the operative discovery order and even more so the approach taken to the duty to supplement are notably strained, and "accidently" pursuing, promoting, initiating, prompting the retroactive designations—whatever description is applied— *while* a federal discovery dispute was in progress seems to be at least reckless behavior. It may have been gamesmanship or some form of strategy, but it needlessly complicated these proceedings and its timing (and essentially later disavowal by the State) do not look good. All that said, the line to sanctions is not as clear here as Plaintiffs suggest. A measured approach is called for that tracks those cases in which admonishments or warnings have been used instead of initial or additional sanctions. *See, e.g., Taber*, 2025 WL 2792568, at *4-5.

No sanctions are recommended, and if the Court adopts the following recommendation, no counsel involved would have to declare that they have been sanctioned (on a *pro hac vice* application, to name but one example). The undersigned **RECOMMENDS** that the Court adopt the following findings and warning:

> The Court finds that Jones and Dowling and their lead counsel have at best violated the spirit of this Court's discovery orders and their discovery obligations. Some evidence suggests a reasonable inference that these parties and their counsel intentionally engaged in strategic gamesmanship to avoid or complicate discovery

> and perhaps pursue advantages in the state-court criminal proceedings and in this federal civil litigation. Other evidence suggests that they pursued what they believed to be a reasonable course of conduct. Sanctions are therefore not imposed. Instead, Jones and Dowling and their counsel are formally cautioned for their reckless if not injudiciousness discovery conduct. Future evasive or dilatory tactics will not be tolerated and may result in any and all appropriate sanctions.

Plaintiffs will likely protest that such an admonishment is too little, too gentle, for the alleged discovery tactics set forth herein that snowballed into larger issues. This is understandable. All counsel involved in this litigation, however, should pause to consider the number of times passions have flared during oral or written arguments, how many times debates over law or disagreements into facts have swerved unnecessarily into the personal, and how both sides have made and even conducted themselves in accordance with misguided arguments or interpretations of decisions— all of this without recourse that would follow them throughout their careers.

No party or counsel in this litigation should mistake the foregoing analysis and result as a free pass to engage in future problematic or poorly defensible discovery conduct.

### IEU-OHIO'S PRODUCTION

A dispute existed regarding certain documents possessed by the Ohio Energy Leadership Counsel ("OELC"), formerly known as Industrial Energy Users-Ohio ("IEU-Ohio"). Plaintiffs had filed a motion to compel production, which the undersigned granted. (ECF No. 784.) OELC objected (ECF No. 791), but before the objection was fully briefed, the Court ordered that all of the documents at issue be turned over for *in camera* review (ECF No. 798). The Court then recommitted the issue to the undersigned for review of the *in camera* review and preparation of a supplemental order. (Order, ECF No. 818, at PageID 19290.)

As a result of discussions held during two status conferences (2/12/26 Conf. Tr., ECF No. 981; 3/5/26 Conf. Tr., ECF No. 988) and in compliance with a February 26, 2026 Order by the

33

undersigned (Order, ECF No. 985), OELC produced the documents in the proper form. The issue is **MOOT**, negating the need for a substantive supplemental order.

### SEVERANCE: PARTIAL STAY OR BIFURCATION

Plaintiffs have requested a partial stay or bifurcation of this litigation that would mean the cases proceed against all the defendants but for Jones and Dowling.[5] Class Plaintiffs have briefed the request. (Position Statement/Reply, ECF No. 1018.) Direct Action Plaintiffs have submitted a joint position statement on the request. (Position Statements, ECF Nos. 1019.) FirstEnergy opposes the request, as does Jones and Dowling, and these defendants have submitted position statements on the issue. (Position Statements, ECF Nos. 1013, 1014.)

It is important to note at the outset that "'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quoting *S.E.C. v. Novaferon Labs, Inc.*, No. 91-3102, 941 F.2d 1210, 1991 WL 158757, at *2 (6th Cir. Aug. 14, 1991)). Rather, such a discretionary stay falls within the inherent authority of a court, and it warrants noting that "'[a] stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy.'" *Id.* (quoting *United States v. Ogbazion*, No. 3:12-cv-95, 2012 WL 4364306, at *1 (S.D. Ohio Sept. 24, 2012)).

The Sixth Circuit has set forth the following factors to be considered in determining whether a stay is warranted:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously

---

[5] To be clear, the use of the term "bifurcation" here targets severance employing separate trials with separate juries in the Federal Rule of Civil Procedure 42(b) sense, not a phased approach using *one* jury in somehow otherwise bifurcated proceedings. In other words, under the proposal, one finder of fact would decide the claims against all defendants but for Jones and Dowling in one trial and a second finder of fact would then decide the claims against Jones and Dowling in a subsequent, separate trial.

weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* at 627. Inherent in this inquiry is the extent to which the fifth amendment rights of Jones and Dowling are implicated. *Id.* And of concern is "'whether granting the stay will further the interest in economical use of judicial time and resources.'" *Id.* at 628 (quoting *Int'l Bd. of Elec. Workers v. AT&T Network Sys.*, No. 88-3895, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)).

The parties disagree over Plaintiffs' suggestion of a partial stay or bifurcation of Jones and Dowling from this litigation in order to avoid the complications created by the ongoing state criminal proceedings and the federal criminal proceedings against these two defendants.

Plaintiffs' request seeks progress through outside-the-box thinking. The undersigned understands Plaintiffs' frustration with the pace at which much of this federal litigation has proceeded. A great deal of that plodding pace is intrinsic to the process—delays associated with necessary briefing, for example, or waiting on the court of appeals to consider and then resolve the appeal of the first certification order, or the simple need to consider various motions and issues here while simultaneously considering multiple issues across a robust case docket. Complicated litigation takes time, especially where, as often here, discovery dispute after discovery dispute and objection after objection add to the length of the litigation. In this case in particular, the parties' own disagreements, incessant unwillingness to compromise, and proclivity toward fighting over issues at every stage available to them (including multiple objections) has resulted in increased delay. In other words, this has been a lengthy litigation—with much of the time consumed often necessary given the nature of the case and the litigation process itself and other time consumed most likely unnecessarily by fights of debatable utility and even sideshows bordering on folly.

35

Four points inform the stay factors and weigh against Plaintiffs' well-intentioned but flawed proposal.

First, even if the proposal avoids some constitutional concerns, it simply replaces those concerns with other constitutional issues. Paramount is the fact that parties have rights and the ability to exercise those rights as permitted, even when a more considered strategy might counsel otherwise. These rights include those considerations presented by the Seventh Amendment, which to the undesigned remain largely dispositive of the partial stay or severance/bifurcation proposal. *See* 1/16/25 Conf. Tr., ECF No. 900 at PageID 23374. As one court of appeals has held, "[t]he right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact."[6] *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). The proposal would arguably violate this constitutional precept.

Plaintiffs disagree, linking the reexamination issue only to a first jury finding facts and addressing claims against that party so as to prohibit a second jury from revisiting those facts and claims against the same party. In other words, if Jones and Dowling are not part of a first jury trial against FirstEnergy, then anything found in that trial would not be reexamined by the second jury.

The soundness of this argument is doubtful, especially given that it ignores the statutorily mandated apportionment of liability that is discussed next. In any event—and cognizant that

---

[6] The citation to *Matter of Rhone-Poulenc Rorer, Inc.* here is for purposes of summarizing the Seventh Amendment concern only. It is not intended as indicating the undersigned's agreement with, disagreement with, or adoption of the analysis applied in that case. The Sixth Circuit has not adopted that decision's analysis wholesale and has in fact emphasized that bifurcation can be appropriate and avoid Seventh Amendment issues under the right circumstances. *See Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n.6 (6th Cir. 2004).

constitutional issues should be avoided if such an undertaking is not necessary—the Seventh Amendment debate need not be conclusively resolved in light of the weight of the factors against a stay or bifurcation.

Second, the proposal wades into statutory issues unnecessarily. Related to the Seventh Amendment concern is 15 U.S.C. § 78u-4(f)(3)(A) and its requirement that "the jury" (absent the judge serving a finder of fact) proportion liability among multiple defendants. Without needing to decide the interpretive issue conclusively, the undersigned notes that the lack of any statutory provision contemplating multiple finders of fact in multiple proceedings is telling. Having a second jury revisit the liability findings of the first jury is a quagmire that need not be created given that much of the same facts and evidence will be involved in the claims against FirstEnergy and Jones and Dowling.

Third, the proposal contravenes pragmatic reasoning previously applied in this litigation. The undersigned's January 2025 discussion of potential severance with the parties underscored the problems with the ideal, not the least of which is that the claims against Jones and Dowling are arguably inseparable from the claims against FirstEnergy so as to present a Rule 42(b) hurdle to staggered civil proceedings.[7] The issues and claims against the multiple defendants are simply too interrelated or overlapping.

Perhaps recognizing the considerable constitutional, statutory, and rule complications, even Plaintiffs formerly acknowledged the better course of proceeding with one jury deciding the claims against all Defendants, including Jones and Dowling, despite their latest proposal to use

---

[7] The parties also focus on severance under Federal Rule of Civil Procedure 21. Any distinction without a difference here. The problematic considerations that weigh against separate trials under Rule 42(b) inform and prove dispositive of a Rule 21 severance as well.

multiple juries in multiple proceedings. *See* 1/16/25 Conf. Tr., ECF No. 900 at PageID 23356. Frustration, however understandable, is no cause to abandon prudence.

Fourth, the multi-faceted proposal is essentially a solution now bereft of its animating problem. Notably informing resolution of the stay/bifurcation issue is the fact that correction of the information imbalance as discussed above *and* the prior amendment of the protective order afford the parties fundamental fairness and protection of their rights so that the reasons likely compelling the request for a stay of bifurcation have been sufficiently mitigated and even likely mooted. There is an absence of a sufficient need for a stay or bifurcation, and a stay or bifurcation would simply lead to needless redundancies in discovery and fostering litigation and judicial inefficiencies.

All of this means that the weight of the stay factors goes against granting the requested stay. The issues in the criminal proceedings overlap with those presented in the civil case in terms of the core facts and determining responsibility for the bribery scheme involved. The new indictment presents new theories but likely no new factfinding needed. The mistrial and new trial are not dispositive; Jones and Dowling have already been down this road, the evidence has already been presented against them, and the information is out in the public from the criminal proceedings, which diminishes the risk of impact that participation in this federal civil litigation might have on them. There is also no reason to think that the new criminal proceedings will be resolved quickly given the complexity of the issues and the track record involved.

The remaining parties here need Jones and Dowling participating here and now, whether the parties admit it or not, if this litigation is to advance due to the Seventh Amendment concerns. Plaintiffs' interests in recovering their lost funds as quickly as possible, if appropriate, matters. *See F.T.C.*, 767 F.3d at 629 ("Many of Defendants' customers suffered hefty losses after paying

for services that they never received. This factor weighs heavily in favor of denying the motion for a stay of proceedings because these individuals are desperate to recover their lost funds as quickly as possible."). Moreover, the parties' interests in this federal litigation proceeding as expeditiously as possible outweigh the speculative and unproven risk to Jones of Dowling of any impact on their fifth amendment rights. Even Jones and Dowling have conceded that delay risks prejudicial loss of evidence, with counsel for both agreeing that the following litany of prejudice is true:

> We are already in a position where numerous witnesses have died or been diagnosed with terminal illnesses in the five years since these -- six, almost six years since these events took place. A stay as to our clients only would unfairly prejudice their ability to defend themselves in this litigation, which is what we're trying to do in this litigation.

(4/6/26 Conf. Tr., ECF No. 996 at PageID 25457, lines 17-25 (Jones); PageID 25461, line 4-5 (Dowling).)

There are also substantial judicial efficiencies to be gained by managing and resolving all aspects of this case once as opposed to in staggered phases that would only serve to create redundancies and present multiple substantive and procedural issues. Finally, the public-interest factor favors the just and expedient resolution of this litigation. As a general proposition, the Sixth Circuit has recognized that "[t]he public interest is furthered where individuals' injuries are remedied in a timely manner." *F.T.C.*, 767 F.3d at 629. More specifically, as the undersigned previously noted, "[t]he Court has already recognized that the public has an interest in the substance of this case, which means that the public also has an undeniable interest in this case being resolved in as expedited and efficient a manner as possible." (Report & Recommendation, ECF No. 638 at PageID 13954.) In fact, the Court has recognized such a public interest more than once. *See* Order, ECF No. 675 at PageID 14546-14547.

39

Given today's result regarding a stay request or, alternatively, bifurcation, there is no need at this time to wade into Class Plaintiffs' murky "backup plan" proposal of whether bifurcation of liability from class damages (but not direct action damages) is warranted. *See* 4/20/26 Conf. Tr., ECF No. 1004 at PageID 25666, 25673. The litigation may proceed as one at this point. Any such request for bifurcation as described must be made via formal motion and briefed accordingly.

In sum, the likely gross inefficiencies, constitutional problems, statutory interpretation issues, and Civil Rules prohibitions that would be introduced by the requested partial stay or bifurcation are significant and unnecessary. Therefore, the undersigned **RECOMMENDS THAT THE COURT DENY** Plaintiffs' request for a partial stay or bifurcation in regard to Jones and Dowling.[8]

## CASE SCHEDULE

Considerable debate has taken place regarding the setting of a new case schedule. In addition to multiple oral arguments on the issue (4/6/26 Conf. Tr., ECF No. 996; 4/9/26 Conf. Tr., ECF No. 997; 4/20/26 Conf. Tr., ECF No. 1004), the parties have submitted proposed scheduling orders (Proposals, ECF Nos. 1001, 1002, 1003). Since those April 2026 submissions, the second certification order has issued. (Opinion & Order, ECF No. 1020.) Rule 23(f) petitions related to the certification order are currently pending before the Sixth Circuit.

The parties disagree on what effect, if any, those petitions should have on setting a case schedule, especially prior to the Sixth Circuit deciding on whether to take up the second certification order. Generally speaking, Plaintiffs have advocated for setting a concrete case

---

[8] Multiple defendants have requested that if the undersigned issued an order on the stay/bifurcate proposal, as opposed to making a recommendation, the undersigned stay the order until the Court resolved any subsequent objections. *See* Defendants' Position Statement, ECF No. 1014 at PageID 25860 n.7. Because today's decision is in the form of a recommendation, the request for a stay is moot.

40

schedule that would include all deadlines (except damages expert deadlines) through a trial date, while Defendants have advocated for a less complete case schedule that avoids what could amount to some aspirational deadlines should the court of appeals grant review of the new certification order.

Having considered the proposed schedules, the work yet to be accomplished in this litigation, the parties' past practices, and the history of these consolidated cases, the undersigned **ORDERS** that the following partial case schedule shall control:

(1) **Fact Discovery Deadline:** December 1, 2026.  No post-criminal-trial discovery into absent class members' reliance as proposed by FirstEnergy.

(2) **Primary "Non-Certification" Expert Reports Deadline:** January 15, 2027 (for experts whose opinions *are not* contingent on certification).

(3) **Rebuttal Expert Reports Deadline:** March 15, 2027.

(4) **Reply Expert Reports Deadline:** May 15, 2027.

(5) **"Non-Certification" Expert Discovery Cutoff:** June 26, 2027.

(6) **"Certification" Expert Reports:** January 15, 2027, *or* 45 days from adjudication of the class certification appeal, whichever is later **(**for experts whose opinions *are* contingent on certification, such as damages experts).

(7) **Rebuttal "Certification" Expert Reports:** 60 days from "Certification" Expert Reports deadline.

(8) **Reply "Certification" Expert Reports:** 60 days from Rebuttal "Certification" Expert Reports deadline.

(9) **"Certification" Expert Discovery Cutoff:** 6 weeks from Reply "Certification" Expert Reports deadline.

***A word of caution in regard to this schedule:*** although all case schedules are subject to modification as appropriate, any party seeking to modify the case schedule will need to demonstrate the requisite good cause for such modification. The undersigned has generally adopted the parties' pacing between deadlines, and the schedule already enlarges the amount of time for fact discovery beyond that even requested by the parties. Moreover, the schedule accommodates the request by Jones and Dowling that the expert reports deadline for experts whose opinions are not contingent on class certification be no earlier than January 15, 2027. *See* Proposal, ECF No. 1003 at PageID 25597-25588 n.1; 4/20/26 Conf. Tr., ECF No. 1004 at PageID 25663, lines 11-25 to PageID 25664, lines 1-9.

The schedule accommodation affords Jones and Dowling and their counsel ample time to prepare for the second state court trial *and* to coordinate work to meet the foregoing deadlines. In other words, holidays are already accommodated and time for alterations to schedules in other proceedings or sudden problems are built into the new schedule. This bears mentioning because Jones' counsel previously told the undersigned during a status conference that she did not "think it's reasonable for you to ask us to [produce documents daily] in the middle of an ongoing criminal trial." (2/12/26 Conf. Tr., ECF No. 981 at PageID 25100, lines 21-23.) The timing of production issue was resolved, but the exchange is referenced here for why this next, specific caution is given: using being busy in the state court proceedings as an excuse to ignore federal obligations and orders will be a hard sell.

The parties should not count on extensions or modifications to the case schedule.

As a final issue, some but not all of the parties seek a complete case schedule. Cognizant of what has been referred to the undersigned under the Court's order of appointment, the undersigned is wholly without the authority to set such a schedule. *See* Order Appointing Special

Master, ECF No. 541 at PageID 11684-11685 (outlining duties); *see also In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-03785-ALM-KAJ, 2024 WL 1984802, at *16 (S.D. Ohio May 6, 2024) ("[U]nder his Appointment Order, the Special Master is charged with 'address[ing] pretrial matters,' including establishing discovery schedules, resolving discovery disputes, overseeing docket management, and generally supervising formal discovery."). Instead, the Court sets its own schedule. All that the undersigned can do is make mere suggestions to Judge Marbley and Magistrate Judge Jolson regarding the remainder of the case schedule.

Recognizing some utility in having additional deadlines, even ones subject to change, the undersigned therefore **RECOMMENDS** that the Court adopt the following for the remainder of the case schedule:

(1) **Notice:**[9] The proposed Notice (which should include an opt-out deadline) is to be submitted to the Court, if the Rule 23(f) petitions are denied, within 30 days of the denial. If the petitions are granted, the proposed Notice is to be submitted to the Court, if certification remains, within 30 days of resolution of the Rule 23(f) appeal. If the petitions are granted and there is no certification, the Court will hold a status conference with the parties.

(2) **Dispositive Motions Deadline:** 60 days from "Certification" Expert Discovery Cutoff.

(3) ***Daubert* Motions Deadline:** 60 days from "Certification" Expert Discovery Cutoff.

---

[9] Although the Notice can go out to the Class Members prior to resolution of the certification appeal, the risk of potential multiple notices and unnecessary costs plus potential class member confusion compel recommending that the Notice be sent once the certification issued is settled and the Class is definitive.

43

**(4) Final Pretrial Conference:** TBD.

**(5) Trial Date:** TBD.

It must be noted that Direct Action Plaintiffs have indicated that if the Sixth Circuit takes up the certification appeal, Direct Action Plaintiffs will likely ask the Court to set their trials separate and in advance of the Class Plaintiffs' trial date. (4/20/26 Conf. Tr., ECF No. 1004 at PageID 25662-25663.)

## SUMMARY OF ORDERS AND RECOMMENDATIONS

The following orders and recommendations extend to the same issues, to the extent the issues are extant or arise, in the Direct Action cases, Case Nos. 2:21-cv-05839 and 2:22-cv-00865.

The undersigned **ORDERS:**

- FirstEnergy must answer Interrogatory No. 10(C) in regard to the full investigation(s), meaning the investigation led/conducted by Squire Patton Boggs *and* the investigation led/conducted by Jones Day.

- Jones and Dowling must produce all state court materials and comply with their duty to supplement.

- The request by Jones and Dowling that the state materials production be stayed while any objection is filed with the Court is denied. Unless the Court orders otherwise, the obligation to produce immediately exists.

- The stay of select depositions if vacated. All previously stayed depositions may take place.

- Plaintiffs' interpretation that Federal Rule of Civil Procedure 33(a)(1) and S.D. Ohio Local Rule 36.1 both impose "per party" and not "per side" limitations is correct.

- Because OELC produced the documents it was required to produce in the proper form, the discovery dispute in regard to those documents is moot and there is no need for a substantive supplemental order/report and recommendation.

- The parties must adhere to the following case schedule: (1) Fact Discovery Deadline: December 1, 2026; (2) Primary "Non-Certification" Expert Reports Deadline: January 15, 2027 (for experts whose opinions *are not* contingent on certification); (3) Rebuttal Expert Reports Deadline: March 15, 2027; (4) Reply

Expert Reports Deadline: May 15, 2027; (5) "Non-Certification" Expert Discovery Cutoff: June 26, 2027; (6) "Certification" Expert Reports: January 15, 2027, *or* 45 days from adjudication of the class certification appeal, whichever is later (for experts whose opinions *are* contingent on certification, such as damages experts); (7) Rebuttal "Certification" Expert Reports: 60 days from "Certification" Expert Reports deadline; (8) Reply "Certification" Expert Reports: 60 days from Rebuttal "Certification" Expert Reports deadline; (9) "Certification" Expert Discovery Cutoff: 6 weeks from Reply "Certification" Expert Reports deadline.

The undersigned **RECOMMENDS:**

- The Court deny Plaintiffs' request for a partial stay or bifurcation in regard to Jones and Dowling.

- The Court deny the request for sanctions against Jones and Dowling and their counsel and instead adopt the following warning:

> The Court finds that Jones and Dowling and their lead counsel have at best violated the spirit of this Court's discovery orders and their discovery obligations. Some evidence suggests a reasonable inference that these parties and their counsel intentionally engaged in strategic gamesmanship to avoid or complicate discovery and perhaps pursue advantages in the state-court criminal proceedings and in this federal civil litigation. Other evidence suggests that they pursued what they believed to be a reasonable course of conduct. Sanctions are therefore not imposed. Instead, Jones and Dowling and their counsel are formally cautioned for their reckless if not injudiciousness discovery conduct. Future evasive or dilatory tactics will not be tolerated and may result in any and all appropriate sanctions.

- The Court adopt the following case schedule: (1) Notice: The proposed Notice (which should include an opt-out deadline) is to be submitted to the Court, if the Rule 23(f) petitions are denied, within 30 days of the denial. If the petitions are granted, the proposed Notice is to be submitted to the Court, if certification remains, within 30 days of resolution of the Rule 23(f) appeal. If the petitions are granted and there is no certification, the Court will hold a status conference with the parties. (2) Dispositive Motions Deadline: 60 days from "Certification" Expert Discovery Cutoff. (3) *Daubert* Motions Deadline: 60 days from "Certification" Expert Discovery Cutoff. (4) Final Pretrial Conference: To be determined by the Court. (5) Trial Date: To be determined by the Court.

45

The parties are reminded of the objections period and that, absent a stay from the undersigned or the Court, all orders set forth herein remain in effect regardless of the filing of objections.

**IT IS SO ORDERED.**

/s/  Shawn K. Judge
SHAWN K. JUDGE (0069493)
SPECIAL MASTER