**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |
| MFS SERIES TRUST I, ET AL.,<br><br>PLAINTIFFS,<br><br>V.<br><br>FIRSTENERGY CORP., ET AL.,<br><br>DEFENDANTS. | Case No. 2:21-cv-05839-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |
| BRIGHTHOUSE FUNDS TRUST II – MFS VALUE PORTFOLIO, ET AL.,<br><br>PLAINTIFFS,<br><br>V.<br><br>FIRSTENERGY CORP., ET AL.,<br><br>DEFENDANTS. | Case No. 2:22-cv-00865-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

**OPINION & ORDER**

Defendants' objections to the Special Master's June 24, 2026 Order and Report and Recommendation are before this Court. (Docs. 1043, 1044). Also before this Court are certain objections to the Special Master's April 15, 2025 Order and Report and Recommendation. (Doc.

794). For the following reasons, the objections are not well taken and are **OVERRULED**. This Court **ADOPTS** the Special Master's recommendations.

## I. BACKGROUND

Elsewhere, this Court has summarized the allegations underlying this action. (*See*, *e.g.*, Docs. 175, 219, 461). In brief, Plaintiffs assert that First Energy Corp. ("FirstEnergy") and "its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history," and once FirstEnergy's role was revealed, "the price of FirstEnergy stock plummeted." (Doc. 72 at ¶¶ 3, 9).

At issue now are Special Master Shawn K. Judge's April 15, 2025 and June 24, 2026 Orders and Reports and Recommendations. (Docs. 784, 1033; *see also* Doc. 1034 (nunc pro tunc order)). Among other things, the Special Master recommended this Court issue a warning to former FirstEnergy executives Charles Jones and Michael Dowling and their attorneys; ordered a fact discovery deadline of December 1, 2026, with "[n]o post-trial discovery into absent class members' reliance as proposed by FirstEnergy"; and affirmed Plaintiffs' interpretation that Federal Rule of Civil Procedure 33(a)(1) and S.D. Ohio Local Rule 36.1 both impose "per party" and not "per side" limitations on discovery. (Docs. 784, 1033, 1034).

Jones and Dowling objected to both of the Special Master's Orders and Reports and Recommendations. (Docs. 794, 1044; *see also* Docs. 804, 1049 (Plaintiffs' responses)). FirstEnergy, joined by certain other Defendants[1] (collectively, the "FirstEnergy Defendants"),

[1] The Defendants joining FirstEnergy's objection are Steven E. Strah, K. Jon Taylor, Jason J. Lisowski, George M. Smart, Paul T. Addison, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Jerry Sue Thornton, Leslie M. Turner, Donald R. Schneider, Leila L. Vespoli, Dennis M. Chack, James F. Pearson, John Judge, Robert P. Reffner, Barclays Capital Inc., BofA Securities, Inc., Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Mizuho Securities USA LLC, PNC Capital Markets LLC, RBC Capital Markets, LLC, Santander, Investment Securities Inc., Scotia Capital (USA) Inc., SMBC Nikko Securities America, Inc., CIBC World Markets Corp., KeyBanc Capital Markets Inc., TD Securities (USA) LLC, U.S. Bancorp Investments, Inc., and MUFG Securities Americas Inc.

objected to the second. (Doc. 1043; *see also* Doc. 1049). All the objecting Defendants request oral argument on their objections. (Doc. 1043 at 1; Doc. 1044 at 32); *see* S.D. Ohio Civ. R. 7.1(b)(2). This Court finds the briefing sufficient and **DENIES** their request.

## II. STANDARD

Rule 53 of the Federal Rules of Civil Procedure provides that a reviewing court must consider *de novo* all objections to findings of fact and conclusions of law made or recommended by a special master and may set aside a "ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(3)–(5). This Court's Order of Appointment adopts Rule 53's standard of review language in full. (Doc. 541 at 6–7). Under that standard, this Court reviews Jones and Dowling's objection to the Special Master's word choice for abuse of discretion. The rest of the objections take aim at the Special Master's findings of fact and conclusions of law. This Court reviews those objections *de novo*.

## III. DISCUSSION

This Court addresses only the parts of the Special Master's Orders and Reports and Recommendations to which the parties objected, starting with Jones and Dowling's objections before turning to the FirstEnergy Defendants'.

### A. Jones and Dowling's Objections

To begin, the Special Master addressed a long-pending issue about Jones and Dowling's actions taken in connection with state court discovery materials. This Court briefly explains the lead-up to this issue before considering Jones and Dowling's objections.

#### *1. Relevant Background*

On June 14, 2021, this Court partially lifted a Private Securities Litigation Reform Act ("PSLRA") discovery stay in this litigation (the "June 2021 Order"). (Doc. 175). The June 2021

Order permitted discovery to proceed with respect to a request for the production of documents ("RFP No. 2"), which directed certain defendants to produce "all documents that [D]efendants have produced or provided to, or received from, any regulatory or government agency, federal or state law enforcement agency, or legislative body or representative in connection with the [House Bill 6 ("HB 6")] bribery scheme, including any deposition testimony." (*Id.* at 6–7). In doing so, this Court explained Plaintiffs would "face unique undue prejudice without having access to documents that have already been produced in other proceedings." (*Id.* at 12; *see also id.* at 11 ("[W]ithout allowing access to already-produced discovery, LACERA could find itself in a significantly different position from most of the other litigants related to this matter.")). A couple weeks later, Plaintiffs served on Jones and Dowling RFP No. 2. (Docs. 691-4, 691-5). They objected. (*Id.*). Still, without waiving the stated objections, Jones and Dowling indicated they would produce non-privileged, non-duplicative, responsive documents in their possession, custody, or control. (Doc. 691-4 at 7; Doc. 691-5 at 7).

Years passed. In that time, this Court denied all of Defendants' motions to dismiss, and discovery commenced in full. (Docs. 219, 255). As required, Jones and Dowling supplemented their RFP No. 2 responses many times. (*See* Doc. 981 at 12; *see also, e.g.*, Doc. 691-6 at 4 ("We will produce to Lead Plaintiff any additional documents received from or provided to the government under our continuing discovery obligations in this case.")). In December 2023, this Court stayed discovery in this action pending resolution of an interlocutory appeal. (Doc. 578). The fact discovery stay remained in place until August 20, 2024. (Doc. 675).

Parallel to these proceedings, a Summit County, Ohio grand jury indicted Jones and Dowling in 2024 for, among other things, engaging in a pattern of corrupt activity, bribery, money laundering, telecommunications fraud, and conspiracy related to the passage of HB 6. (*See* Doc.

691-7, 691-8).[2] Per the usual course, Jones and Dowling received rolling discovery material from the State of Ohio as part of the criminal action. *See State of Ohio v. Michael Dowling and Charles E. Jones*, Case No. CR-2024-02-473 B & C. The parties entered into an agreement by which they could designate discovery material as confidential ("State Protective Order"). (Doc. 691-9 (dated April 24, 2024)). The State Protective Order directed that confidential materials must be "clearly designated." (*Id.* (stating the material should be stamped or printed with "CONFIDENTIAL" where possible)). It also gave the parties the option to retroactively designate as confidential discovery materials produced prior to the entry of the Order. (*Id.* (also noting that absent actual prejudice, failure to designate upon initial production does not waive the producing party's right to subsequently do so)).

Some of the discovery materials the State produced both concerned witnesses relevant to this action and were responsive to RFP No. 2. *See, e.g.*, *State of Ohio v. Michael Dowling and Charles E. Jones*, Case No. CR-2024-02-473 B & C (April 1, 2024 responses to request for discovery; April 11 and 18 supplemental responses; May 17 supplemental responses; June 17 and 18 supplemental responses; August 24 supplemental response; September 16 and 18 supplemental responses); (*see also* Doc. 691-10). At the time of production, the State did not designate much of this discovery as confidential. (*See* Doc. 691-12). In other words, the State Protective Order alone did not provide Jones and Dowling justification to keep these documents concealed.

Plaintiffs were aware of the potentially relevant discovery but waited until this Court restarted discovery to raise the issue. On September 27, 2024, roughly five weeks after this Court lifted the discovery stay, counsel for Plaintiffs emailed Jones's and Dowling's attorneys about the

[2] Both men were tried in the Summit County Court of Common Pleas in early 2026, *State of Ohio v. Michael Dowling and Charles E. Jones*, Case No. CR-2024-02-473 B & C. The state court declared a mistrial after the jury was unable to reach a verdict. *Id.* Both have again been indicted, and trial is scheduled for early 2027, *State of Ohio v. Michael Dowling and Charles E. Jones*, CR-2026-06-1594 A & B.

discovery. (Doc. 691-11). Plaintiffs reiterated the language of RFP No. 2, noting Jones and Dowling's production obligation was "ongoing." (*Id.*). They asked that Jones and Dowling turn over responsive material not designated as confidential. (*Id.*).

In response, Jones and Dowling quickly asked the Special Master to address the matter at the upcoming October 8 status conference. (Doc. 1033 at 10). But instead of waiting for the Special Master's guidance, Jones and Dowling got to work. Before the week's end, they approached the State and "suggested" the State retroactively designate categories of the criminal discovery as confidential under the terms of the State Protective Order. (Doc. 691-2 at 3). According to the State, in doing so, counsel for Jones and Dowling acknowledged the obligation to provide responses to Plaintiffs' discovery requests. (*See* Doc. 694 at 2–3). But, says the State, counsel "indicated that if the State retroactively designated" the materials as confidential, they would be able to "refuse to turn over the discovery that they [had] received in the State criminal case." (*Id.* at 3).

Although Jones and Dowling say their communications simply informed the State of the discovery dispute and clarified their confidentiality obligations, the reality is Jones and Dowling tendered a neat solution to their production problem. And the State—apparently without question—took them up on it. The very next day, the State of Ohio "agreed" with Jones and Dowling's suggestion and designated the relevant materials confidential "in the form of a letter to all parties in the criminal case on October 1, 2024." (Doc. 692-2 at 3; *see also* Doc. 691-12). In justifying the retroactive designation, the State cited fairness, integrity, and witness cooperation concerns—which were apparently concerns the State had only after Jones and Dowling contacted them. (Doc. 691-2 at 3).

The discovery issue finally came before the Special Master at the October 8 status conference. (Doc. 893). It was also relevant to the State's motion to intervene, filed two days later.

(Doc. 694). Of particular note, in responding to that motion, Plaintiffs asked that this Court impose a "meaningful sanction" on Jones and Dowling for shirking their discovery obligations. (Doc. 704 at 24; *see also* Doc. 723-2 at 51–57).

The Special Master neatly summarized how the sequence of events impacted this litigation—and in particular the parties' progress taking depositions—in his April 15, 2025 Order and Report and Recommendation:

> Defendants Jones and Dowling had various documents and/or audio recordings that were subject to production via Judge Marbley's [June 2021 Order]. The material was not marked confidential in the state court case, was therefore not considered confidential in that case, and was identified in the state court case as not being confidential. Again, Jones and Dowling were obligated to produce them here. Instead of doing so, they withheld the documents, contacted the Ohio Attorney General's Office, and obtained that office's cooperation in retroactively designating the documents to be confidential. Citing the state court protective order, Jones and Dowling then declined to produce the documents in this federal litigation. Despite this nondisclosure, they now wish to proceed with taking select depositions that may be informed by these documents. The remaining parties aptly characterize this series of events as creating an "information imbalance" that should preclude the taking of the depositions until remedied.

(Doc. 784 at 14). The Special Master observed that "the circumstances surrounding the sealing of the state court materials [are] discomforting, to put a polite label on it." (*Id.* at 15). He further noted that the situation "reeks of litigation gamesmanship if not odd collusion, and the Ohio Attorney General's Office's willingness to indulge in this handling of the undisclosed material is confounding and deeply concerning." (*Id.*). He then ordered Jones and Dowling to "submit a complete account of their actions in regard to the withheld material, explaining their actions and providing copies of all communications with the Ohio Attorney General's Office related to the agreement to designate the withheld material confidential." (*Id.* at 16). The Special Master did not yet order Jones and Dowling to produce any documents. (*Id.* at 17).

Then, in a complete about-face, the State of Ohio withdrew its confidentiality designations

on the relevant materials in September 2025, citing the "passage of time" and the updated protective order in this case. (*See* Doc. 862 at 9–10, 107). The State subsequently appeared at a status conference before the Special Master to explain. (*Id.* at 8–12). The State's counsel stated the State believed that Jones and Dowling "abused the State's broad confidentiality designation[s]" to violate rules in the criminal action and that generally the designations were "overbroad." (*Id.*). He concluded that there was "no longer justification for the position [the State] took last year" about the confidentiality of the materials. (*Id.* at 11).

Several months later, the Special Master returned to the issue of Jones and Dowling's actions in his June 24, 2026 Order and Report and Recommendation. (Doc. 1033 at 5–23, 27–33). He found Jones and Dowling either misunderstood or ignored federal discovery obligations and orders "to strategically use the state court proceedings to create or inflame discovery problems"; Jones and Dowling were aided in this scheme by the State of Ohio; and ordering production of the state discovery materials was essential to promoting justice and mitigating unfair prejudice. (*Id.* at 7–16). He ordered Jones and Dowling to produce the material "as part of their ongoing duty to supplement under Rule 26(e)." (*Id.* at 22).

Ultimately, the Special Master declined to recommend that this Court sanction Jones, Dowling, or their counsel. (*Id.* at 32). Instead, he recommended this Court adopt the following findings and warnings:

> The Court finds that Jones and Dowling and their lead counsel have at best violated the spirit of this Court's discovery orders and their discovery obligations. Some evidence suggests a reasonable inference that these parties and their counsel intentionally engaged in strategic gamesmanship to avoid or complicate discovery and perhaps pursue advantages in the state-court criminal proceedings and in this federal civil litigation. Other evidence suggests that they pursued what they believed to be a reasonable course of conduct. Sanctions are therefore not imposed. Instead, Jones and Dowling and their counsel are formally cautioned for their reckless if not injudiciousness discovery conduct. Future evasive or dilatory tactics will not be tolerated and may result in any and all appropriate sanctions.

(*Id.* at 32–33).

After the Special Master's decision, Jones and Dowling fulfilled their discovery obligations. (Doc. 1044 at 6 n.3).

### 2. *Prior Objections*

Before considering Jones and Dowling's most recent objections, this Court briefly addresses their objections to the Special Master's April 15, 2025 Order. (Docs. 784, 794). This Court previously found the objections not ripe considering the Special Master's intention to supplement his findings after reviewing their *ex parte* submission. (Doc. 823). Now, they are ready. (*See also* Doc. 1044 at 7 ("re-assert[ing] and incorporat[ing]" the previous objection)). Jones and Dowling's objection is two-fold.

First, they say the Special Master impermissibly found they violated this Court's June 2021 Order. (Doc. 794 at 18–28). This Court finds much of this objection moot in light of the Special Master's supplemental June 24 decision and Jones and Dowling's recent production. To the extent their arguments remain relevant, this Court considers them alongside the newer objection.

Second, Jones and Dowling object to some of the Special Master's word choices. (*Id.* at 794 at 28–31). They take issue with the following passage:

> And it is frankly ridiculous that Jones and Dowling and the State of Ohio ask this Court to accept their actions and the consequences of those actions on blind trust . . . . Blind trust and decision making untethered from principles of decency, fairness, and public interest are perhaps what created the underlying corruption mess in the first place.

(Doc. 784 at 15–16). They specifically ask this Court to strike this language because it is "inappropriate" and could "potentially prejudice the jury pool here and in Mr. Jones and Mr. Dowling's upcoming criminal trials." (Doc. 794 at 28). Jones and Dowling also classify the comments as making an impermissible finding of "underlying corruption." (*Id.*).

This Court does not read this portion of the Special Master's Order as finding facts, let alone facts that go to the merits of this case. His use of the phrase "perhaps what created the underlying corruption mess in the first place" does not, standing alone or in context, denote prejudgment. Rather, this Court reads this passage as a general commentary on the events surrounding the passage of House Bill 6. It is an accurate commentary in characterizing the allegations at issue here. *See, e.g.*, *In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587, 597 (6th Cir. 2025) (outlining the allegations that "FirstEnergy and its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history."); (*see also, e.g.*, Doc. 259-5 at 16–64 (FirstEnergy Corp.'s July 2021 deferred prosecution agreement under which FirstEnergy paid a $230 million penalty and "admit[ted], accept[ed], and acknowledge[d] that it is responsible under United States law for the acts as charged in the Information and as set forth in the Statement of Facts"—including that it "conspired with public officials and other individuals and entities to pay millions of dollars to and for the benefit of public officials in exchange for specific official action for FirstEnergy Corp.'s benefit.")); Case No. 1:20-cr-77 at Doc. 63 (plea agreement as to Juan Cespedes); Doc. 64 (plea agreement as to Jeffery Longstreth); Doc. 288 (judgment entered against former Speaker of the Ohio House of Representatives Larry Householder for Racketeer Influenced and Corruption Organizations (RICO) Conspiracy for actions taken related to the passage of HB 6); *Firstenergy Corp.*, S.E.C. Release No. 4519, 2024 WL 4170268 (Sep. 12, 2024) (outlining a "political corruption scheme" related to HB 6 and ordering FirstEnergy Corp. to pay a civil penalty of $100 million to the Securities and Exchange Commission pursuant to an accepted offer of settlement).

Additionally, it is fairly disingenuous for Jones and Dowling to point to a single line in the Special Master's Order as being the straw that breaks the camel's back regarding jury pool taint. This Court observes that the general public in Ohio is highly aware of events surrounding the

allegations in this case. *See, e.g.*, Morgan Trau, *Everything You Need to Know about the FirstEnergy Trial if you Haven't Been Paying Attention*, Ohio Capital Journal (Feb. 18, 2026), https://ohiocapitaljournal.com/2026/02/18/everything-you-need-to-know-about-the-firstenergy-trial-if-you-havent-been-paying-attention/; Julie Carr Smyth, *Ex-FirstEnergy Executives Reindicted in Ohio in $60 Million Corruption Scheme*, Associated Press (June 4, 2026), https://apnews.com/article/bribery-investigation-ohio-firstenergy-jones-dowling-reindicted-178788fd31aa625bfa8af7818485a204; Jessie Balmert, *New HBO Documentary Digs into Ohio Bribery Scandal as Case Study for Dark Money Corruption*, The Columbus Dispatch (Apr. 7, 2025), https://www.dispatch.com/story/news/politics/2025/04/16/dark-money-game-what-happened-to-neilclark-and-larry-householder/83114310007/.

In the end, though this Court has considered Jones and Dowling's arguments, it is not persuaded that this language should be struck. This Court finds the Special Master's language in the April 15, 2025 Order does not amount to an abuse of discretion. For these reasons, this Court rejects Joned and Dowling's prior objections (Doc. 794).

*3. Current Objection*

Turning now to the more recent objection. Because Jones and Dowling produced the relevant discovery to Plaintiffs, the only issue before this Court is consideration of the Special Master's recommended warning and related findings. (Doc. 1033 at 5–23, 27–33). Jones and Dowling's objection rests on the dual premises that (1) they did not violate this Court's 2021 Order; and (2) and it was not improper for them to confer with the State of Ohio about the confidentiality designation of the discovery material. (*See generally id.*; *see also* Doc. 794). This Court agrees with the Special Master's read of the record.

The June 2021 Order permitted Plaintiffs to serve RFP No. 2 on Jones and Dowling and

denoted the prejudice Plaintiffs would have without having access to documents that have been produced in other proceedings. (Doc. 175 at 5–12). Coupled with Plaintiffs' service of RFP No. 2, Jones's and Dowling's responses to it, and Federal Rule of Civil Procedure 26(e)'s duty to supplement discovery, Jones and Dowling were under a continuing obligation to produce at least some of the state discovery "in a timely manner" after receipt.[3] *See* Fed. R. Civ. P. 26(e); (*compare also* Doc. 675 (lifting the case-wide fact discovery stay on August 20, 2024) *with* Doc. 691-11 (Plaintiffs' counsel's email about the state materials more than thirty days later)).

This duty was not new or surprising to Jones or Dowling—they had previously supplemented production for RFP No. 2 several times. (*See* Doc. 981 at 12). Still, they did not initially produce the documents, opting instead to run to the State rather than work with Plaintiffs or the Special Master within the framework of the Federal Rules. In the end, Plaintiffs waited over a year and had to litigate the matter to receive the discovery.

On this record, the Special Master's observation that by not producing the materials, Jones, Dowling, and their lead counsel have "at best violated the spirit of this Court's discovery orders and their discovery obligations" is apt. (Doc. 1033 at 33). This observation is bolstered by the timing of Jones and Dowling's conference with the State about retroactively designating the materials at issue confidential. In particular, the State did not believe the discovery warranted the confidential designation when it produced the material. Importantly, neither did Jones nor Dowling. The materials sat without extra protection for months. Only after this Court lifted this case's fact discovery stay did they act. It took a mere three days for Jones and Dowling to contact the State after Plaintiffs reached out about their continuing discovery obligations, and only one day more for

[3] Jones and Dowling quibble over exactly what materials from the state court discovery were initially deemed or intended to be deemed confidential. (*See, e.g.*, Doc. 1044 at 20 (acknowledging certain recordings were not marked confidential)). That misses the point. It is enough that not all the materials at issue were marked confidential at the start.

the State to accommodate Jones and Dowling. No matter how Jones and Dowling justify approaching the State—or how the State explains away its acquiescence—the end result was what Jones and Dowling wanted: the documents shielded from Plaintiffs' eyes by virtue of the State Protective Order. This sequence of events is suspect at the least and, as the Special Master observed, strategic gamesmanship at the most.

At the same time, Jones and Dowling submit reasons they thought the discovery at issue was not covered by the June 2021 Order or their federal discovery obligations. (*See, e.g.*, Doc. 1044 at 25–32). They further represent that their September and October 2024 communications with the State about designations were, among other non-nefarious reasons, made to ensure they did not share more with Plaintiffs than they should. (*Id.* at 20–23). Given their subsequent production, this Court need not address the specifics of the former. As to the latter—and despite deep reservations about the motivation behind the actions of both Defendants and the State of Ohio—this Court will give Jones, Dowling, and their counsel the benefit of this Court's many doubts. In the end, it is enough to say that based on the record, the objections, and this Court's independent review, this Court agrees with the Special Master's finding that some evidence suggests Jones, Dowling, and their attorneys believed their conduct to be reasonable under the circumstances.

Against this backdrop, this Court aligns with the Special Master in finding that sanctions against Jones, Dowling, or their counsel are not warranted either under Federal Rule of Civil Procedure 37 or this Court's inherent authority. Still, given the sequence of events described above, a warning putting Jones, Dowling, and their attorneys on notice that future evasive or dilatory tactics will not be tolerated and may result in sanction is appropriate. As such, this Court **ADOPTS** the Special Master's recommended findings and warning. Jones and Dowling's objections are overruled.

### B. The FirstEnergy Defendants' Objections

Next, the FirstEnergy Defendants object to two portions of the Special Master's June 24, 2026 Order and Report and Recommendation. First, they argue part of the case schedule the Special Master set—which includes a bar of post-trial discovery into absent class members' reliance as the FirstEnergy Defendants proposed—amounts to an error. (Doc. 1043 at 13–20). Second, they assert the Special Master clearly erred in offering an "impermissible 'advisory' opinion" about interrogatories and requests for admission. (*Id.* at 20–24). This Court considers each in turn.

#### *1. Post-Trial Discovery*

The Special Master set a fact discovery deadline of December 1, 2026, and specified "[n]o post-trial discovery into absent class members' reliance as proposed by FirstEnergy." (Doc. 1033 at 41; Doc. 1034 at 2). The proposal rejected was the FirstEnergy Defendants' suggestion that the Special Master should adopt a specific discovery cutoff only alongside a caveat that they reserve their rights "to take post-trial discovery of absent class members to address individualized defenses." (Doc. 1003 at 4–6).

The FirstEnergy Defendants contend that the Special Master wrongly barred them from engaging in post-trial discovery into absent class members' reliance. (Doc. 1043 at 13–14). They submit that they have consistently reserved their right to take this type of post-trial discovery, and the law supports their right to do so. (*Id.* at 9–10, 14–17). They say the Special Master should not have ruled on this issue because he was appointed solely for pretrial management matters. (*Id.* at 17). Further, the Special Master's failure to explain the ruling was an abuse of discretion. (*Id.* at 18). And the issue was not ripe, anyway. (*Id.*). The FirstEnergy Defendants ask that this Court reverse the Special Master's order and rule that they have reserved their rights to post-trial reliance discovery. (*Id.* at 19–20).

This Court finds this objection is not ripe for review. Because the objection involves events that are far down the road, judicial economy favors litigating this issue later. Even more, the FirstEnergy Defendants do not sufficiently articulate why having this issue resolved now is necessary for the efficient completion of fact discovery. Without such an argument, and with other judicial economy concerns weighing in their favor, a definitive answer about post-trial discovery can wait. Consequently, the FirstEnergy Defendants' objection is overruled **without prejudice**, and they may revive their objection following trial. For now, this Court will not disturb this portion of the Special Master's Order.

*2. Written Discovery*

Next, the Special Master observed that Federal Rule of Civil Procedure 33(a)(1) permits each "party" to serve 25 interrogatories on any other party; and Local Rule 36.1 permits each party to serve 40 requests for admission upon any other party. (Doc. 1033 at 24–27). He concluded the Rules' use of the term "party" affords the nineteen Plaintiffs 25 interrogatories and 40 requests for admission each. (*Id.* at 24–25 ("'Party' means party.")). At the same time, the Special Master noted that Defendants have available to them legal methods to limit interrogatories or requests for admission that are "unreasonable" under the circumstances. (*Id.* at 26–27 (citing Federal Rule of Civil Procedure 26(b)).

Even with the caveat, the FirstEnergy Defendants object to the Special Master's interpretation of the Federal and Local Rules for two reasons. (Doc. 1043 at 20–24). First, they say the Special Master issued an impermissible advisory opinion because Plaintiffs have not yet exhausted their written discovery limits. (*Id.* at 20–22). Second, the FirstEnergy Defendants argue the Special Master's interpretation of the Rules was incorrect and complain that the Special Master ignored caselaw they presented that supports their position that Plaintiffs are entitled to far fewer

written requests. (*Id.* at 22–24; *see also* Doc. 1016). The FirstEnergy Defendants ask that this Court overturn the Special Master's order and rule that each "side" that acts in unison may propound 25 interrogatories under Rule 33 and 40 requests for admission under Local Rule 36.1. (Doc. 1043 at 23–24).

Taking the FirstEnergy Defendants' qualms in turn, this Court begins by finding that the Special Master's Order is not an impermissible advisory opinion. The story goes like this: Several months ago, Plaintiffs approached Defendants about ways to make discovery more efficient. (Doc. 1008). Plaintiffs proposed that they would forgo some depositions if Defendants accepted additional written discovery requests. (*Id.*; *see also* Docs. 1003-2, 1003-3). Defendants rejected Plaintiffs' specific proposal and proposed their own solution. (Doc. 1007; *see also* Doc. 1003-3). Unable to come to an agreement, the parties submitted position statements on the issue to the Special Master. (Docs. 1007, 1008). In their statement, Plaintiffs contended that they do not need to seek leave of Court to collectively pose up to 475 interrogatories and 760 requests for admission on each Defendant under the Federal and Local Rules. (Doc. 1008 at 2). And they asked the Special Master to confirm they were entitled to pose the 100 interrogatories and 160 requests for admission that they had in mind. (Doc. 1008 at 6). Defendants' position was that Plaintiffs would need to make a particularized showing for their requests when they exhausted their written discovery limits, as the majority of the proposed requests would exceed the limits of Federal Rule of Civil Procedure 33 and Local Rule 36.1. (Doc. 1007 at 2–3 (commenting that 100 interrogatories and 160 requests for admission were four times the "applicable default limits on written discovery")).

Though in a different context, the Supreme Court has advised that a controversy fit for judicial determination must be "definite and concrete, touching the legal relations of parties having adverse legal interests . . . It must be a real and substantial controversy admitting of specific relief

through a decree of conclusive character." *Aetna Life Ins. Co. of Hartford. v. Haworth*, 300 U.S. 227, 240–41 (1937) (citations omitted). This is exactly the sort of controversy evident in the parties' position statements. Plaintiffs submitted that they were entitled to a certain number of written discovery requests under the Federal and Local Rules. (Doc. 1008 at 2–3; *see also* Doc. 1015). Defendants disagreed, arguing the written discovery Plaintiffs sought exceed the limits of those same Rules. (Doc. 1007 at 2; *see also* Doc. 1016). The parties' opposing interpretation of the Rules was definite, concrete, and touched the legal relations between the two sides. The Special Master could—and did—provide them "relief through a decree of conclusive character" by interpreting the Rules. Even if this issue did not come before the Special Master by way of a formal motion, the facts present a classic controversy.

Additionally, this Court rejects the contention that this issue would become ripe only after Plaintiffs "exhausted" their written discovery limits as defined by the FirstEnergy Defendants. (Doc. 1043 at 20–21). Looking beyond the irrelevance of the caselaw the FirstEnergy Defendants use to support their argument (*id.* at 21), this route would function simply to put off an otherwise apt answer from the Special Master. But the circumstances here do not weigh in favor of waiting. Consequently, this Court finds this portion of the Special Master's Order was not premature or impermissibly advisory. And it, in fact, addressed a live dispute between the parties that required his guidance.

Substantively, the Special Master's Order did not constitute an error. As noted, the Special Master found that "party" in the relevant Rules means "party." (Doc. 1033 at 24–27). Said another way, he found every plaintiff-party is entitled to the 25 interrogatories discussed in Federal Rule of Civil Procedure 33; and every plaintiff-party is entitled to the 40 requests for admission envisioned in Local Rule 36.1. (*Id.*). The Special Master acknowledged that the issue of whether "party" in

these Rules means "party" or "side" was not conclusively settled, and there are "cases going both ways." (*Id.* at 25). But he ultimately found Plaintiffs' interpretation consistent with the plain language of the Rules and with this Court's jurisprudence. (*Id.* at 26 (citing *Laws v. Stevens Transport, Inc.*, No. 2:12-cv-544, 2013 WL 941435, at *2 (S.D. Ohio Mar. 8, 2013) and *West v. Hilton*, No. 3:10-cv-284, 2012 WL 1186007, at *1 (S.D. Ohio Apr. 9, 2012))).

The FirstEnergy Defendants object that the Special Master's conclusion does not appropriately consider the fact of this case being a class action. (Doc. 1043 at 21–22). They also say the Special Master did not address the cases they compiled that support their position. (*Id.*; *see also* Doc. 1016). These arguments are noted and rejected.

"[C]ourts must begin their interpretation of the Federal Rules, as with other laws, 'with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017 (6th Cir. 2005) (citation omitted); *cf. Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 553 (6th Cir. 2015) ("[T]hese [Federal Rules] were not made to be 'tempered'; they were made to be 'technical.'") (considering Federal Rule of Civil Procedure 45). It follows that this Court should abide by this general directive when interpreting the Local Rules as well. Both Federal Rule of Civil Procedure 33 and Local Rule 36.1 use the term "party" when discussing written discovery limits. Fed. R. Civ. P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories"); S.D. Civ. R. 36.1 ("no party shall serve more than forty requests for admission (including all subparts) upon any other party"). The FirstEnergy Defendants do not—and cannot—explain why the drafters of these Rules would use the term "party" when they meant "side." As another example, *Black's Law Dictionary* defines a "party" as "anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment." Party,

*Black's Law Dictionary* (12th ed. 2024) (also "[o]ne by or against whom a lawsuit is brought). This definition does not cabin a "party" by representation or interest as the FirstEnergy Defendants advocate. (Doc. 1043 at 22). The Special Master's plain language observations were not erroneous.

Beyond the plain language, the Special Master is also correct that this Court has previously interpreted at least the Federal Rule to envision interrogatories per discrete plaintiff. In *Laws v. Stevens Transport, Inc.*, this Court rejected that Rule 33 allowed only 25 interrogatories per side and endorsed a "plain language application" of the Rule. No. 2:12-CV-544, 2013 WL 941435, at *2 (S.D. Ohio Mar. 8, 2013); *see also Bradfield v. Donahue*, No. 13-1310-JDT-EGB, 2016 WL 5661855, at *2 (W.D. Tenn. Sept. 29, 2016) ("Rule 33(a)(1) by its terms does not limit multiple defendants or multiple plaintiffs in a case to a combined total of only 25 interrogatories."). Although this Court noted that "in some instances nominally separate parties are considered one party for purposes of the 25-interrogatory limitation," *Laws* does not suggest the Special Master was required to undertake a "nominally separate" inquiry to interpret the Rule.[4] 2013 WL 941435, at *2. Nor was the Special Master required to specifically address by reference the cases the FirstEnergy Defendants submitted that support their position. (Doc. 1016). As he acknowledged, there are cases on both sides of this issue. (Doc. 1033 at 25–26). The Special Master's well-reasoned decision to fall on one side of the debate was not unreasonable. After independent review, this Court agrees with his conclusion.

As a final note, the FirstEnergy Defendants suggest that the guardrails the Special Master enumerated to address overburdensome or duplicative discovery requests cannot sufficiently address all of their concerns. (Doc. 1043 at 23–24). In other words, they are special. Yet, parties have been using Federal Rule of Civil Procedure 26(b) for decades to address unreasonable written

[4] The Special Master did not engage in this inquiry or definitively answer this question, so this Court need not and will not follow either analytic path at this juncture.

discovery requests. This Court trusts the FirstEnergy Defendants will work collaboratively with Plaintiffs and the Special Master to bring about an expedient and cost-effective close to discovery.

**C. Other Recommendations**

Additionally, the Special Master issued two other recommendations. He first recommended this Court deny Plaintiffs' request for a partial stay or bifurcation in regard to Jones and Dowling. (Doc. 1033 at 34–40). And he recommended this Court adopt certain deadlines. (*Id.* at 43–44). No party objected to either recommendation, and the deadline to do so has expired. Finding no clear error, this Court generally **ADOPTS** the Special Master's recommendations while, accounting for recent Sixth Circuit activity in the case schedule. (*See* Doc. 1066). All other orders in the Special Master's Order and Report and Recommendation not specifically addressed above stand undisturbed and remain in effect.

**D. Case Schedule**

Finally, this Court reiterates the operative case schedule deadlines.

- **Fact Discovery Deadline:** December 1, 2026.
- **Primary "Non-Certification" Expert Reports Deadline:** January 15, 2027.
- **Rebuttal Expert Reports Deadline:** March 15, 2027.
- **Reply Expert Reports Deadline:** May 15, 2027.
- **"Certification" Expert Reports:** 45 days from adjudication of the class certification appeal.
- **Rebuttal "Certification" Expert Reports Deadline:** 60 days from "certification" expert reports deadline.
- **Reply "Certification" Expert Reports:** 60 days from rebuttal "certification" expert reports deadline.
- **"Certification" Expert Discovery Deadline:** 6 weeks from reply "certification" expert reports deadline.

- **Notice Deadline:** The proposed Notice (which should include an opt-out deadline) is to be submitted to this Court, if certification remains, within 30 days of resolution of the Rule 23(f) appeal. If the petitions are granted and there is no certification, this Court will hold a status conference with the parties.

- **Dispositive Motions Deadline:** 60 days from "certification" expert discovery deadline.

- **Daubert Motions Deadline:** 60 days from "certification" expert discovery deadline.

- **Final Pretrial Conference:** TBD.

- **Trial Date:** TBD.

The parties should look to the Special Master's Order for more details and guidance on these dates. (*See* Doc. 1033 at 41–44). As the Special Master noted there, the parties should not count on extensions or modification to the case schedule.

## IV. CONCLUSION

For the foregoing reasons, the relevant objections (Docs. 794, 1043, 1044) are not well taken and are **OVERRULED**. This Court **ADOPTS** the Special Master's recommendations.

IT IS SO ORDERED.

Date: October 26, 2026

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE